| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | billion SR. *See* Ex. 102 (Abdullah al Rajhi Exhibit 32) (chart of 287 IIRO accounts at ARB). | (3) In particular, Plaintiffs' statement concerning the purported amount of money transferred through IIRO KSA's accounts at the Bank does not show intentional, tortious conduct by the Bank.<br><br>(4) Plaintiffs' averment shows that Al Rajhi Bank provided nothing more than routine banking services to a large charitable organization.<br><br>(5) In addition, immaterial because, of the purported deposits and withdrawals averred in this paragraph, Plaintiffs' Averment does not show that a single dollar reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br><u>Disputed as vague; unsupported by evidence:</u><br><br>(1) Plaintiffs' reference to "IIRO" is vague. Al Rajhi Bank only held accounts for IIRO KSA, and did not hold accounts for any IIRO branch outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>(2) Plaintiffs' assertion that Al Rajhi Bank "facilitated" deposits is vague, conclusory, and unsupported. Plaintiffs' evidence shows that Al Rajhi Bank provided IIRO KSA nothing more than routine banking services. *See* ARB Ex. 2 (Hobayb Rep.) at 22-30. | |
| 214 | 3 billion SR would convert to approximately $800 million, using the long term SR- USD exchange rate, and would represent nearly $1.4 billion in current (2023) dollars, based on a conservative | 214.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) In particular, Plaintiffs' statement concerning the purported amount of money transferred through IIRO KSA accounts at the | 214.<br><br><u>Pls. Ex. 4 at 107:</u><br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing charity work and routine banking services that |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | inflation calculator. *See* Ex. 4, Winer Report at 107. | Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States.<br><br>(3) In addition, immaterial because, of the "3 billion SR" averred in this paragraph, Plaintiffs' Averment does not show that a single dollar reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(4) Plaintiffs' reference to the figure in 2023 U.S. dollars is immaterial, as the relevant period is 1998-2002. | has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 215 | Thus, between the AHIF and IIRO accounts alone, ARB facilitated the movement of approximately $1.3 billion, corresponding to roughly $2.3 billion in 2023 dollars, between 1998-2002, when those two purported charities were operating as al Qaeda's most important fronts and financial engines. *See id.* | 215.<br><br><u>Immaterial for the reasons discussed above in response to Section VIII (heading) and ¶¶ 206-214.</u><br><br>(1) In particular, Plaintiffs' statement concerning the purported amount of money transferred through Al Haramain KSA and IIRO KSA accounts at the Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States.<br><br>(2) Plaintiffs' conclusory averment that "AHIF and IIRO" were "operating as" al Qaeda's "most important fronts and financial engines," even if credited, is immaterial, as Plaintiffs have no evidence that Al Rajhi Bank knew of these charities' purported ties to terrorism.<br><br>(3) In addition, immaterial because, of the "approximately $1.3 billion" averred in this paragraph, Plaintiffs' Averment does not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(4) Plaintiffs' reference to the figure in 2023 U.S. dollars is immaterial, as the relevant period is 1998-2002.<br><br><u>Disputed as vague; unsupported by evidence:</u> | 215.<br><br><u>Pls. Ex. 4 at 107:</u><br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' references to "AHIF" and "IIRO" are vague. Al Rajhi Bank did not hold accounts for any IIRO or Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. | |
| | | Disputed as conclusory; controverted by the evidence: | |
| | | (1) Plaintiffs' statement that "AHIF and IIRO" were "operating as al Qaeda's most important fronts and financial engines" is unsupported and controverted by the evidence. | |
| | | (2) Al Haramain KSA and IIRO KSA were widely recognized as charitable organizations that provided legitimate humanitarian aid. *See* Pls. Ex. 44 (9/11 Staff Monograph) at 115 (discussing various humanitarian works done by Al Haramain); *see also* ARB Ex. 23 (June 7, 1999 Ltr. From Prince of Tabuk) at ARB-00038699 (letter in Al Haramain's KYC files describing Al Haramain as a "humanitarian" organization engaged in "relief efforts."); ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); *see also* ARB Ex. 29 ( Cert. fr. Min. of Foreign Affs.) at ARB-00013683 (Certificate from Saudi Arabian Ministry of Foreign Affairs recognizing IIRO as an NGO meant to provide relief to "refugees, children and victims of wars and disasters world-wide"); *id.* at ARB-00013692 (letter from Muslim World League stating IIRO's purpose is to provide relief to the poor, orphans, widows, and to develop hospitals and schools); *see also* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 146:3-147:7 (acknowledging that IIRO provided humanitarian relief to Muslims around the world). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) During the relevant period, Al Haramain KSA and IIRO KSA were licensed by the relevant authorities in Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18; ARB Ex. 41 (Ltrs. From Deputy Minister of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-00038586 (stating Al-Haramain operates under its supervision); *see also* Pls. Ex. 3 (Galloway Dep. Tr.) and Errata at 232:19; ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-00013679-80 (letter from Deputy Prime Minister approving decisions and recommendations relating to formation of IIRO); *id.* at ARB-00013683 (Certificate from Saudi Arabian Ministry of Foreign Affairs recognizing IIRO as an NGO); ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545; ARB Ex. 25 (Ltr. From Al Rajhi Bank Gen. Mgr. to Gov. of SAMA, Jan. 26, 2004) at ARB-00014546 (noting that IIRO KSA was licensed by appropriate Saudi authorities).<br><br>(4) Plaintiffs have no evidence that IIRO KSA was ever designated under any sanctions regime for connections to terrorism. Al Haramain KSA was not designated during the relevant time period. *See* Pls. Ex. 60 (*Treasury Designates Al Haramain Islamic Foundation* (June 19, 2008)) (Designation of Al Haramain KSA in 2008). | |
| 216 | As with the AHIF accounts, the IIRO accounts at ARB were used to send funds to IIRO's branch offices outside Saudi Arabia, a fact that was well known to ARB. *See, e.g.* Ex. 38, Kohlmann Report at 16; *See* Ex. 78, Transcript, February 21, 2019 | 216.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading). | 216.<br><br>Pls. Ex. 38, p. 16:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Deposition of Adnan Basha ("Basha Deposition"), at 265-278. | (2) Immaterial for the reasons discussed with respect to the Al Haramain Islamic Foundation and its officials and IIRO in Section V (heading).<br><br>(3) Any purported knowledge that Al Rajhi Bank had of IIRO transactions outside of Saudi Arabia was immaterial because the evidence shows only that, prior to the 9/11 Attacks, IIRO KSA was publicly known as a government-licensed charity doing charitable works.  ARB Ex. 41 (Ltrs. From Deputy Minister of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-00038586 (stating Al-Haramain works under their supervision).<br><br>(4) Plaintiffs have no evidence that Al Rajhi Bank knew of any alleged connections between IIRO and terrorism when the Bank processed transactions for IIRO KSA in the relevant period.<br><br>(5) The Saudi headquarters of IIRO was never designated and no IIRO branch was designated before the 9/11 Attacks.  *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 140:6-13 (acknowledging that IIRO KSA never received a sanctions designation); Pls. Ex. 170 (*Treasury Designates Director, Branches of [IIRO]*, Aug. 3, 2006)) (showing first sanctions designations of IIRO branches were in 2006).<br><br><u>Disputed as vague; unsupported by evidence:</u><br><br>(1) Plaintiffs' references to "AHIF" and "IIRO" are vague for the reasons discussed above in response to ¶ 215. | has no link to Al Qaeda and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403<br><br><u>Pls. Ex. 78:</u><br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lack of personal knowledge. *See* Fed. R. Evid. 901.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 217 | Those included branch offices located in locations where al Qaeda was known to be operating, and conflict zones where al Qaeda and jihadists associated with al Qaeda were known to be fighting. | 217.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading) and ¶ 216. | 217.<br><br><u>Pls. Ex. 38, p. 16:</u><br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | *See, e.g.* Ex. 38, Kohlmann Report at 16. | (2) Immaterial because processing transactions to "conflict zones where al Qaeda and jihadists associated with al Qaeda were known to be fighting, including Chechnya, Bosnia, and Kosovo" does not indicate any tortious conduct by Al Rajhi Bank related to the United States or the 9/11 Attacks.<br><br>(3) Immaterial because there was no prohibition on Al Rajhi Bank processing transactions to "conflict zones." Further, it was not surprising or unusual for Islamic charities to send funds to conflict zones. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 356:16-19 and Errata 356:16-18 (testifying that "SAMA did not restrict overseas transfers from charity accounts" until "May 2003."); ARB Ex. 58 (Telegram from KSA Prime Minister's Office) at ARB-00014555–56 (discussing providing relief and donations to Kosovo refugees); ARB Ex. 1 (Dean Rep.) at 15-16 (explaining that charities supporting relief efforts in conflict zones were not deemed to be supporters of terrorism); *see also* Pls. Ex. 4 (Winer Rep.) at 179 (acknowledging that "legitimate humanitarian activities" took place in areas of "active, armed conflict"). Therefore, Plaintiffs' averment shows nothing more than Al Rajhi Bank providing routine banking services to IIRO KSA. | routine banking services that has no link to Al Qaeda and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403 |
| 218 | While limited jurisdictional discovery as to ARB's relationships with al Qaeda's charity fronts was generally limited to the accounts it held for AHIF and IIRO, documents relating to ARB's post-9/11 dealings with SAMA show that it also maintained accounts for the following additional charities that | 218.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to the WAMY, the Saudi High Commission for Bosnia-Herzegovina, and Lajnat al-Birr al-Islamiah, as discussed above in response to Section V (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | provided funding and logistical support to al Qaeda: Muslim World League ("MWL"); World Assembly of Muslim Youth ("WAMY"); Saudi Joint Relief Committee for Kosovo and Chechnya ("SJRC"); Saudi High Commission for Bosnia-Herzegovina; and Lajnat al-Birr al-Islamiah (a/k/a Benevolence International Foundation). | (3) In addition, immaterial because Plaintiffs have no evidence that the charity customers of the Bank identified in Plaintiffs' Averment — including Al Haramain Islamic Foundation, International Islamic Relief Organization, Muwaffaq Foundation, World Assembly of Muslim Youth, Muslim World League, Saudi Joint Relief Committee for Kosovo and Chechnya, Saudi High Commission for Bosnia-Herzegovina, and Lajnat al-Birr al-Islamiah — used accounts at Al Rajhi Bank to support terrorism. *See* ARB Aver. ¶ 40. Plaintiffs have no evidence that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. *See* ARB Aver. ¶147. <br><br> (4) Further immaterial because even if Plaintiffs' averments were credited, Plaintiffs have no evidence showing that Al Rajhi Bank knew that the charities listed in this averment were purportedly using accounts at the Bank to facilitate terrorism. The charities were properly licensed during the relevant time period and were known to be engaged in legitimate humanitarian work. *See, e.g.*, ARB Aver. ¶¶ 44-45, 56-57. <br><br> <u>Disputed as conclusory and unsupported by the evidence:</u> <br><br> (1) Plaintiffs cite no evidence in support of their conclusory averments in this paragraph. <br><br> (2) Conclusory and vague as to "fronts" for Al Qaeda. Plaintiffs have no evidence that the charity-customers of the Bank identified in Plaintiffs' Averment were "fronts" or "moved money" for Al Qaeda. <br><br> (3) None of the Bank's charity customers Plaintiffs reference was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* ARB. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Ex 28 (Winer Dep. Tr. and Errata) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."). (4) Instead, evidence shows that these charities were licensed and authorized to operate before the 9/11 Attacks and that, at most, Al Rajhi Bank provided routine financial services to them. *See, e.g.*, Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 232:19, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18 (discussing charity licenses). <u>Disputed as vague; unsupported by evidence:</u> (1) Plaintiffs' references to "AHIF" and "IIRO" are vague for the reasons discussed above in response to ¶ 215. Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | |
| 219 | Separate discovery proceedings as to WAMY indicate that ARB maintained over 115 accounts for WAMY, again during periods when WAMY was operating as a key front for al Qaeda. *See, e.g.*, Ex. 103, Declaration of Omar T. Mohammedi, ECF No. 4465, at 8-12 (identifying numerous WAMY bank accounts at ARB); Ex. 104, Exhibit 19 to Declaration of Omar T. Mohammedi, ECF No. 4465-19 (identifying 116 WAMY bank | 219. <u>Immaterial:</u> (1) Immaterial for the reasons discussed above in response to Section VIII (heading). (2) Immaterial for the reasons discussed with respect to WAMY as discussed above in response to Section V (heading). (3) Immaterial to the extent that Plaintiffs imply that Al Rajhi Bank should not have held 115 separate accounts for WAMY. Plaintiffs' contentions as to the number of accounts held for WAMY do not show intentional, tortious conduct by the Bank. | 219. <u>Pls. Ex. 103:</u> - Inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802. - Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. <u>Pls. Ex. 104:</u> |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | accounts at ARB); Ex. 105, WAMYSA 15516 (identifying additional WAMY accounts at ARB); Ex. 4, Winer Report at 204. | Rather, they show that Al Rajhi Bank provided WAMY routine banking services.<br><br>(4) As permitted by law in the relevant time period, charities in Saudi Arabia had multiple accounts serving different projects and branches. After the 9/11 Attacks, the Saudi Arabian Monetary Authority (SAMA), the sole regulator of Saudi Arabian banks, did not ban this practice, but instead required that secondary accounts be consolidated under one account. *See* ARB Ex. 2 (Hobayb Rep.) at 10-11, 25. Maintaining multiple accounts for the same charitable organization was common banking practice for large Islamic banks during the relevant time period. *See id.* at 25.<br><br>(5) Immaterial because even if Plaintiffs' characterization of WAMY as a "front for al Qaeda" is credited, Plaintiffs have no evidence that Al Rajhi Bank had knowledge of these purported affiliations, particularly where WAMY was licensed by the government of Saudi Arabia. *See* ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545.<br><br>Disputed as conclusory and unsupported by the evidence:<br><br>(1) Plaintiffs' characterization of WAMY as a "key front" for Al Qaeda is conclusory and unsupported by the evidence. WAMY has never been designated by the United States as a sponsor of terrorism. ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 165:11-12 (acknowledging that WAMY never received a sanctions designation); *see generally* ARB Ex. 59 (Office of Foreign Assets Control, *Specially Designated Nationals and Blocked Persons List*, U.S. Dept. of Treas. (May 3, 2024)). | - Inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 105<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda.<br><br>Pls. Ex. 4 at 204:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) WAMY was licensed by the government of Saudi Arabia. *See* ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545. | |
| 220 | In the context of that prior discovery, WAMY requested that ARB provide copies of its account statements for periods at issue in that discovery, so that WAMY could produce them to the 9/11 MDL Plaintiffs, but ARB refused to do so. *See* Ex. 106, Declaration of Ibrahem Alshalan, ECF No. 4466, at 8. | 220.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to WAMY in response to Section V (heading).<br><br>Disputed as controverted by evidence; misleading; and incomplete:<br><br>(1) Al Rajhi Bank was one of four banks that did not provide WAMY with bank statements. Saudi Arabian law allows for a bank to "refrain from issuing any bank statement that exceeds the bank's document retention period, which is ten years." *See* Pls. Ex. 106 (Declaration of Ibrahem Alshalan, Apr. 1, 2019, ECF No. 4466) at 8. | 219.<br><br>Pls. Ex. 106:<br><br>- Inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 221 | In the case of Lajnat al-Birr al-Islamiah, the incidental information Plaintiffs received in discovery, contained in a document relating to a Self-Supervisory Committee established by SAMA to engage with ARB and other Saudi banks on terrorist financing issues after 9/11, indicate that ARB opened and operated unauthorized accounts for that al Qaeda front. *See* Ex. 107, ARB 39582-39585 | 221.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to Lajnat al-Birr al-Islamiah in response to Section V (heading).<br><br>(3) Immaterial to the extent that Plaintiffs imply that Al Rajhi Bank should not have held multiple separate accounts for Lajnat al-Birr al-Islamiah. Plaintiffs' contentions as to the number of accounts held for Lajnat al-Birr al-Islamiah do not show intentional, tortious conduct by the Bank. Maintaining multiple accounts for the same charitable organization was common | 221.<br><br>Pl. Ex. 4 at 59, 72, 168-169, 211-213:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | (meeting notes of Self-Supervisory Committee, with notation "Al Birr Islamic Committee," followed by the sentence: "We authorized Al Rajhi to open one account; they opened many accounts."); *id.* at 39584 ("17 accounts with Al Rajhi"). *See also* Ex. 4, Winer Report at 168-169 (discussing ARB 39582-39585); *id.* at 59, 72, 211-213 (discussing Lajnat al-Birr); Ex. 108, United Nations Sanctions Committee designation summary for Benevolence International Foundation (discussing Lajnat al Birr); Ex. 45, *Saudi-Based Financial Support for Terrorist Organizations*, November 14, 2002, CIA_00143-158 at 151 (stating that Lajnat al Birr offices in Pakistan and Saudi Arabia are linked to terrorist and Islamic extremist activity); Ex. 85, *U.S. Treasury Designates Two Individuals With Ties to Al Qaida, UBL Former BIF Leader and Al-Qaida Associate Named Under E.O. 13224*, December 21, 2004, at 1-2 (stating that Lajnat al Birr "provided financial and operational support to mujahideen elements in Afghanistan and | banking practice for large Islamic banks during the relevant time period. *See* ARB Ex. 2 (Hobayb Rep.) at 25.<br><br>(4) As permitted by law in the relevant time period, charities in Saudi Arabia had multiple accounts serving different projects and branches, and in fact, after the 9/11 Attacks, the Saudi Arabian Monetary Authority (SAMA), the sole regulator of Saudi Arabian banks, did not ban this practice, but instead required that secondary accounts be consolidated under one account. *See* ARB Ex. 2 (Hobayb Rep.) at 10-11. Maintaining multiple accounts for the same charitable organization was common banking practice for large Islamic banks during the relevant time period. *See* ARB Ex. 2 (Hobayb Rep.) at 25.<br><br>(5) Immaterial where, even if Plaintiffs' characterization of Lajnat al-Birr al-Islamiah is credited, Plaintiffs have no evidence that Al Rajhi Bank had knowledge of these purported affiliations. | has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 45:<br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | around the world" and "later joined al Qaida"); Ex. 4, Winer Report at 169, 212. | | |
| 222 | The scope of these relationships with AHIF, IIRO, WAMY, and al Qaeda's charity fronts, as described above, confirms that ARB was the "bank of choice" for al Qaeda's charity partners before 9/11. | 222.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Plaintiffs' averment that Al Rajhi Bank was the "bank of choice" for Al Qaeda's charity partners is immaterial where this allegation arose from a 1997 CIA report which, to the extent admissible, used caveats and equivocal language in explaining that extremists use the Bank for "convenience" rather than due to any purported involvement by the Al Rajhi family in terrorist finance. *See* Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000744 (emphasis added); *see also* ARB Ex. 4 (Lormel Rep.) at 16 (explaining that the 1997 CIA report underscores a banking purpose for extremists to have purportedly used Al Rajhi Bank, that is, convenience and cross border access which other banks in Saudi Arabia did not offer at the time).<br><br>(3) Even if Plaintiffs' conclusory averment that Al Rajhi Bank was Al Qaeda's "bank of choice" is credited, such statement does not show that the Bank expressly directed intentional, tortious conduct at the United States. This statement shows only that Al Rajhi Bank adhered to Sharia banking principles, and as such, was attractive to devout Muslims for a business purpose. *See* Ex. 4 (Lormel Rep.) at 7, 16.<br><br>Disputed as vague, conclusory, and unsupported:<br><br>(1) Plaintiffs' averment as to the "scope of these relationships" is vague, conclusory, and unsupported. The evidence shows that | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Al Rajhi Bank provided these charities with nothing more than routine banking services. *See* ARB Ex. 2 (Hobayb Rep.) at 22-30. | |
| | | (2) Plaintiffs' characterization of the charities as "partners" of Al Qaeda is conclusory and unsupported. Plaintiffs have no evidence that any money transferred through accounts at Al Rajhi Bank, from the charities or otherwise, reached Al Qaeda or financed the 9/11 Attacks. *See* ARB Aver. ¶ 147. | |
| | | Disputed as vague; unsupported by evidence: | |
| | | (1) Plaintiffs' references to "AHIF" and "IIRO" are vague for the reasons discussed above in response to ¶ 215. | |
| 223. | ARB also provided access to the international banking system to al Qaeda's most important individual financial facilitators, including senior officials of al Qaeda's most important charity fronts. | 223. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section VIII (heading). <br><br> (2) In addition, Plaintiffs' averments regarding Al Rajhi Bank's services to "individual financial facilitators," even if credited, are immaterial because Plaintiffs have no evidence that the Bank knew of any individual's purported connections to Al Qaeda when their accounts were opened. Instead, Plaintiffs' statements only show routine banking services on the part of Al Rajhi Bank. <br><br> Disputed as vague, conclusory, and unsupported by evidence: <br><br> (1) Plaintiffs' statement is an unsupported legal conclusion to which no response is required. <br><br> (2) Plaintiffs' characterization of the charities as "charity fronts" is a legal conclusion unsupported by evidence. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Plaintiffs' characterization of individual account holders as "al Qaeda's most important individual financial facilitators" is vague, conclusory, and unsupported by evidence. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) Plaintiffs' characterization of individual Al Rajhi Bank customers as "al Qaeda's most important individual financial facilitators" is controverted by the evidence, as explained in ¶¶ 224-47 below.  Plaintiffs' evidence does not show that any of the individuals discussed in their Averment were "al Qaeda's most important individual financial facilitators." <br><br> (2) Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks.  *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |
| 224 | SDGT and close bin Laden associate Wa'el Hamza Jelaidan maintained a longstanding banking relationship with ARB, opening accounts in 1986 and 1988, during the period that Jelaidan served as the key financial facilitator for contributions to bin Laden's participation in the Afghan jihad, and Suleiman al Rajhi was supporting bin Laden in that campaign. *See, e.g., See* Ex. 4, Winer Report at 38, 86; Ex. 109, ARB 974-1019; Ex. 110, ARB 1183-1216; Ex. 111, ARB 1217-1226; Ex. 112, ARB 14465- | 224. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading). <br><br> (2) In particular, Plaintiffs' averments as to accounts at the Bank maintained by Jelaidan do not show intentional, tortious conduct by the Bank.  Plaintiffs' averment, if credited, shows nothing more than routine banking services.  Plaintiffs have no evidence that Al Rajhi Bank had any knowledge of Jelaiden's purported connections to Bin Laden. <br><br> (3) Plaintiffs' reference to support for the Afghan jihad is immaterial as it has no connection to the United States or the 9/11 Attacks. *See* ARB Ex. 1 (Dean Rep.) at 10-12, 14-16 (explaining that "alleged support for armed resistance against the Russians and Russian-backed forces in Afghanistan" does not equate to | 224. <br><br> <u>Pls. Ex. 4 at 38, 86:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing conduct that is not sufficiently similar to the conduct at issue and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 113</u> |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 14466; Ex. 113, Federal Office of Criminal Investigation, Expert Report Concerning the Third World Relief Agency ("TWRA Audit"), at 13-15 (identifying millions of dollars in transfers from Jelaidan to the TWRA); Ex. 40, 9/11 Commission Report at 58 (indicating that Bin Laden used the TWRA to provide financial and other support for terrorist activities). | support for Al Qaeda, much less support for "al-Qaeda's terrorism against civilians in the United States"). <br><br> (4) Plaintiffs' averment as to Jelaidan's purported connections to Bin Laden in 1986-1988 are immaterial where Bin Laden was not publicly known be affiliated with terrorism during this time period. Bin Laden was not designated until 1998, over ten years *after* Plaintiffs aver Jelaidan opened accounts at Al Rajhi Bank. *See* ARB Ex. 73 (Exec. Order No. 13,099, 63 Fed. Reg. 45,167 (Aug. 20, 1998)). <br><br> Disputed as incomplete; controverted by the evidence: <br><br> (1) Plaintiffs' averment as to Sulaiman bin Abdulaziz Al Rajhi's purported support of "bin Laden" is controverted by the evidence. <br><br> - Sulaiman bin Abdulaziz Al Rajhi, a founder of the Bank, and the Bank's Chairman during the relevant period, has never met Osama bin Laden or supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism at all. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 351:3-352:2, 352:18-353:5, 354:17-355:3 and Errata 350:5, 350:19 (stating that to the best of his knowledge Sulaiman bin Abdulaziz Al Rajhi has never supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form). <br><br> (2) The document cited by Plaintiffs in this paragraph shows that Al Rajhi Bank monitored Wa'el Jelaidan's account. *See* Pls. Ex. 112 (Accounts Statements requested by SAMA) at ARB-00014465-66. Further, Al Rajhi Bank promptly froze Wa'el Jelaidan's accounts when he was jointly designated by Saudi Arabia and the United States in September 2002 under Executive Order 13224. *See* ARB Ex. 74 (Wael Jelaidan's statement of | – Hearsay to which no exception applies. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for presenting evidence of conduct that is not sufficiently similar to the conduct at issue and discussing transactions outside the relevant period. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | active account at Al Rajhi Bank, Jan. 1, 1998-Dec. 31 2002) at ARB-00001017 (showing last transaction was in August 2002); *see also* ARB Ex. 75 (Wael Jelaidan's statement of dormant account at Al Rajhi Bank, Jan. 1, 1998-Dec. 31 2002 at ARB-00001018-19) (showing no transactions between Jan. 1, 1998 to Dec. 31, 2002); ARB Ex. 7 (Al Rajhi Bank's fax to SAMA reporting they had frozen Wael Jelaidan's accounts) at ARB-00014524. | |
| 225 | ARB allowed and enabled Jelaidan to use his accounts at ARB to carry out financial transactions bearing hallmarks of money laundering, until after the September 11ᵗʰ attacks, as further discussed below. *See* Ex. 109, ARB 974-1019 (referencing various deposits of "collection" checks and checks added from "clearinghouse"); *id.* at 999 (deposit of "Saudi Joint Committee" [SJRC] collection check). | 225. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading). <br><br> (2) In particular, Plaintiffs' averments as to accounts at the Bank maintained by Jelaidan do not show intentional, tortious conduct by the Bank. Plaintiffs' averment, if credited, shows nothing more than routine banking services. Plaintiffs have no evidence that Al Rajhi Bank had any knowledge of Jelaidan's purported connections to Bin Laden. <br><br> Disputed as conclusory; controverted by the evidence: <br><br> (1) Plaintiffs' averment as to "transactions bearing hallmarks of money laundering" is conclusory and not supported by the evidence. <br><br> (2) To the extent Plaintiffs suggest that references to "collection" checks is a "hallmark of money laundering," this characterization is unsupported. <br><br> (3) In particular, to the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence: | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | - Plaintiffs have no evidence that SAMA's audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations, including those related to anti-money laundering. *See* ARB Ex. 3 (Pasley Rep.) at 11 ("As far as I have seen, SAMA never determined that the Bank was materially noncompliant with SAMA's requirements."); ARB Ex. 2 (Hobayb Rep.) at 4 (noting that SAMA was a "rigorous regulator" that subjected Saudi banks to "robust anti-money laundering controls on par with global standards."); Pls. Ex. 184 (Hobayb Dep. Tr.) at 36:12-13 (testifying that Saudi "banks are required to comply with [their] regulator [SAMA] and its regulations.").<br><br>- Plaintiffs have no evidence that routine internal or external audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations or the Bank's internal policies. *See* ARB Ex. 2 (Hobayb Rep.) at 18 ("I have not seen anything to indicate that Al Rajhi Bank … was noncompliant with auditing and regulatory standards and procedures."); *id.* at 20 (noting "no evidence has been presented that these external auditors flagged noncompliance by Al Rajhi Bank"); ARB Ex. 3 (Pasley Rep.) at 9 ("The fact that these audits failed to reveal significant issues is evident from the Bank's Annual Reports, which are public, and which discuss the audits."); *id.* ("Presumably — given no evidence to the contrary — these audits did not uncover any significant noncompliance."); *see also, e.g.*, Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Rep.) at PDF p. 72 , Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Rep.) at PDF p. 77, Pls. Ex. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | 8 (2000 Al Rajhi Bank Ann. Rep.) at PDF p. 42 and ARB Ex. 16 (2001 Al Rajhi Bank Ann. Rep.) at PDF p. 74 (external auditors' reports for 1998-2001 identifying no noncompliance by the Bank with its internal policies or local law). | |
| | | (4) Al Rajhi Bank promptly froze Wa'el Jelaidan's accounts when he was jointly designated by Saudi Arabia and the United States in September 2002 under Executive Order 13224. *See* ARB Ex. 74 (Wael Jelaidan's statement of active account at Al Rajhi Bank, Jan. 1, 1998-Dec. 31 2002) at ARB-00001017 (showing last transaction was in August 2002); *see also* ARB Ex. 75 (Wael Jelaidan's statement of dormant account at Al Rajhi Bank, Jan. 1, 1998-Dec. 31 2002 at ARB-00001018-19) (showing no transactions between Jan. 1, 1998 to Dec. 31, 2002); ARB Ex. 7 (Al Rajhi Bank's fax to SAMA reporting they had frozen Wael Jelaidan's accounts) at ARB-00014524. | |
| 226 | Throughout this period, Jelaidan was one of al Qaeda's most important funders and financial facilitators. *See* Ex. 38, Kohlmann Report at 19; Ex. 49, *Treasury Department Statement on the Designation of Wa'el Hamza Julidan*, September 6, 2022 at 1 ("Julaidan has been the head of various non-governmental organizations providing financial and logistical support to the al-Qa'ida network."); Ex. 80, *Usama Bin Ladin: Al-Qa'ida's Financial Facilitators [REDACTED]*, October 18, 2001, CIA_000500- | 226.  Immaterial:  (1) Immaterial for the reasons stated above in response to Section VIII (heading) and ¶¶ 223-26.  (2) Plaintiffs' averment is immaterial to the extent that it relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and are otherwise conclusory and unsupported.  (3) Immaterial and irrelevant as to references to the Golden Chain for the reasons stated in Al Rajhi Bank's response to Section XIII (heading).  (4) In particular, Plaintiffs' averments as to accounts at the Bank maintained by Jelaidan do not show intentional, tortious conduct | 226.  Pls. Ex 38, p. 19:  - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.  - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability by guilt-by-association. *See* Fed. R. Evid. 403.  Pls. Ex. 80: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | 563, 544 (describing how Jelaidan used his high-ranking positions in the Saudi da'wah organizations to divert money to al Qaeda); Ex. 81, Tareekh Osama "Golden Chain," FED-PEC0134953-134955 at 134954 (Jelaidan was designated to receive contributions from members of al Qaeda's Golden Chain, including Suleiman al Rashid, Abdel Qader Bakri, Salah al Din Abdel Jawad, and Abdel Hadi Taher). | by the Bank. Plaintiffs' averment, if credited, shows nothing more than routine banking services. Plaintiffs have no evidence that Al Rajhi Bank had any knowledge of Jelaiden's purported connections to Bin Laden.<br><br>(5) Plaintiffs' averments as to Jelaidan are immaterial because they have no evidence that Jelaidan was connected to the 9/11 Attacks. Plaintiffs instead focus on the Afghan jihad, which is immaterial to the United States or the 9/11 Attacks, and in any event shows no intentional, tortious conduct by the Bank expressly directed at the United States.<br><br><u>Disputed as vague, conclusory, unsupported by the evidence, and misleading:</u><br><br>(1) Plaintiffs' averment that Jelaidan was one of Al Qaeda's "most important funders and financial facilitators" is vague, conclusory, and not supported by the evidence.<br><br>(2) The sources cited by Plaintiffs do not support their averment that Jelaidan was one of Al Qaeda's "most important funders and financial facilitators." The cited sources do not attempt to compare sources of al Qaeda funding with respect to relative importance or amount.<br><br>(3) Plaintiffs mislead by omitting that Pls. Ex. 80 (CIA Rep. Oct. 18, 2001, at CIA_000500-563) <u>does not</u> state this as a fact but as a possibility: "*may be* using his position and influence at these organizations to divert funds and resources to al-Qa'ida" (emphasis added). *Id.* at CIA-000544. | - Inadmissible hearsay, as noted in response to Section VI (heading).<br><br><u>Pls. Ex. 81:</u><br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 227 | ARB was also the bank of choice of AHIF Director and SDGT Aqil al Aqil, who held five accounts at ARB. *See, e.g.,* account statements at Ex. 114 (ARB | 227.<br><br><u>Immaterial:</u> | 227.<br><br><u>Pls. Ex. 4, p. 205:</u><br><br>- Should be excluded under Rule 403 for confusing the |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | 41454-41463); Ex. 115 (ARB 41464-41501); Ex. 116 (ARB 41502-41503); Ex. 117 (ARB 41506-41507). *See also* Ex. 4, Winer Report at 205; Ex. 118, Plaintiffs' Summary Spreadsheet of Al Rajhi Bank Customer Account Transactions (ARB Tranche 21). | (1) Immaterial for the reasons stated in response to Section VIII (heading).<br><br>(2) Additionally immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading).<br><br>- Aqil was the Director of Al Haramain, a reputable and licensed charity that collected donations and responded to humanitarian crises around the world. *See* Pls. Ex. 44 (Staff Monograph) at 115 (discussing various humanitarian works done by Al Haramain); *see also* ARB Ex. 23 (Letter from Prince of Tabuk) at ARB-00038699 (letter in Al Haramain's KYC files describing Al Haramain as a "humanitarian" organization engaged in "relief efforts."); ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research).<br><br>- Communications with Aqil in his official capacity show that Al Rajhi Bank had knowledge of Aqil's position with Al Haramain. *See* Pls. Ex. 100 (Ltr. from Aqil al Aqil to the Gen. Mgr. of the Al Olaya Branch of Al Rajhi Bank) at ARB-00038534-35; *see also* ARB Ex. 2 (Hobayb Rep.) at 30-31 (explaining that Aqil transactions would not have raised suspicion because of his affiliation with a known charity); *see also* ARB Ex. 41 (Ltrs. from Deputy Minister of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997 at ARB-00038585 (asking to transfer certain accounts into the name of Al-Haramain Islamic Foundation and keep Aqil Al-Aqil as the signatory). | issue and unfair prejudice for discussing charity work and routine banking services that have no link to Al Qaeda and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 118:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Improper Summary Exhibit. *See* Fed. R. Evid. 1006. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Aqil was not designated under any sanctions regime for connections to terrorism until the United States designated him as an SDGT on June 2, 2004, in connection with his support to militants in Chechnya. *See* Pls. Ex. 48 (*Additional Al Haramain Branches, Former leader Designated by Treasury* (June 2, 2004)) (showing Aqil was not designated until June 2, 2004). | |
| | | (4) In particular, Plaintiffs' averment as to accounts at the Bank maintained by Aqil al Aqil do not show intentional, tortious conduct by the Bank. Plaintiffs' averment, if credited, shows nothing more than routine banking services. Plaintiffs have no evidence that Al Rajhi Bank had any knowledge of Aqil al Aqil's purported connections to terrorism. | |
| | | (5) Plaintiffs' averment that Al Rajhi Bank was the "bank of choice" for Al Qaeda's charity partners is immaterial where this allegation arose from a 1997 CIA report which, to the extent admissible, used caveats and equivocal language in explaining that extremists "probably denotes convenience rather than Al Rajhi family involvement in financing radical groups." use the Bank for "convenience" rather than due to any purported involvement by the Al Rajhi family in terrorist finance. *See* Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_00744 (emphasis added); see also ARB Ex. 4 (Lormel Rep.) at 16 (explaining that the 1997 CIA report underscores a banking purpose for extremists to have purportedly used Al Rajhi Bank, that is, convenience and cross border access which other banks in Saudi Arabia did not offer at the time). | |
| | | Disputed as vague; unsupported by evidence: | |
| | | (1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 215. | |
| | | Disputed as controverted by the evidence and misleading: | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (1) Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); Pls. Ex. 56 (*Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations* (Mar. 11, 2002)). Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 48 (*Additional Al Haramain Branches, Former leader Designated by Treasury* (June 2, 2004)) (showing Aqil was not designated until June 2, 2004). <br><br> (2) Al Rajhi Bank did not process any transaction knowing that its customer or the transaction had any connection to Al Qaeda. *See* generally Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 357:11-17. | |
| 228 | Between 1998-2002, Aqil used two principal accounts at ARB to carry out financial transactions. *See* Ex. 114, ARB account ending with the four digits 3412 (the "3412 Account"); Ex. 115, ARB account ending with the four digits 5920 (the "5920 Account"). *See* Ex. 4, Winer Report at 112. | 228. <br><br> Immaterial: <br><br> (1) Plaintiffs' averment is immaterial for the reasons stated in response to Section VIII (heading). <br><br> (2) Plaintiffs' averments as to Aqil al Aqil are immaterial for the reasons stated in response to Section IX (heading). <br><br> (3) In particular, Plaintiffs' averment as to accounts of Aqil al Aqil at the Bank do not show intentional, tortious conduct by the Bank. Plaintiffs' averment shows nothing more than routine banking services. | 228. <br> Pls. Ex. 4, p. 112: <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as incomplete:<br><br>(1) Al Rajhi Bank understood Aqil to be using the "3412" account as an Al Haramain account.<br><br>   – The Customer Information Files of a separate Al Haramain account contains a letter dated September 1994 that lists eleven Al-Haramain accounts with Al Rajhi Bank. Pls. Ex. 100 (Ltr. from Aqil al Aqil to the Gen. Mgr. of the Al Olaya Branch of Al Rajhi Bank) at ARB-00038534-35.<br><br>   – The first account on that list is the "General Account" for Al Haramain, which has the account number "2▮341." Pls. Ex. 100 (Ltr. from Aqil al Aqil to the Gen. Mgr. of the Al Olaya Branch of Al Rajhi Bank) at ARB-00038535.<br><br>   – Under the Bank's account numbering system "2▮341" and "▮3412" would be the same account.<br><br>(2) The Bank knew that Saudi government officials had explicitly urged potential donors to provide aid directly "to Aqil" for an Al Haramain fundraising effort. ARB Ex. 5 (Ltr. from KSA Gen. Pres. of Scholarly Research) at ARB-38775. | |
| 229 | The 3412 Account at ARB, purportedly opened and operated by Aqil as an individual for personal banking, facilitated deposits of just over 19,848,169.00 SR, or roughly $5.29 million (corresponding to about $9.4 million in 2023 dollars); and distributed nearly all of that money in withdrawals (leaving about 57,668 SR or | 229.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated in response to Section VIII (heading).<br><br>(2) Additionally immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading).<br><br>(3) In particular, Plaintiffs' averment as to accounts at the Bank maintained by Aqil al Aqil do not show intentional, tortious | 229.<br><br>Pls. Ex. 4, p. 112:<br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda and for |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | $15,375 not withdrawn), during this period. *See id.*; Ex. 118, Plaintiffs' Summary Spreadsheet of Al Rajhi Bank Customer Account Transactions (ARB Tranche 21). | conduct by the Bank. Plaintiffs' averment shows nothing more than routine banking services.<br><br>(4) Plaintiffs' averment concerning the purported amount of money transferred through Aqil al Aqil's accounts at the Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States.<br><br>Disputed as controverted by the evidence and misleading:<br><br>(1) Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); Pls. Ex. 56 (AHIF Designation (Somalia, Bosnia) (March 11, 2002)) (Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations).<br><br>(2) Moreover, in a letter from a Saudi official discussing fundraising efforts for Muslims in Kashmir, the official instructs potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774-75. Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 48 (*Additional Al Haramain Branches, Former leader Designated by Treasury* (June 2, 2004)) (showing Aqil was not designated until June 2, 2004). | attempting to impute liability through guilt-by-association.<br><br><u>Pls. Ex. 118:</u><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Improper Summary Exhibit. *See* Fed. R. Evid. 1006. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (3) Plaintiffs' description of Aqil's account activity is misleading to the extent it is used to suggest suspicious activity.  As described by Al Rajhi Bank's expert Fawzi Al-Hobayb, Plaintiffs "do[] not point to any evidence or context that would lead [him] to believe that the transactions in Aqil's accounts were used for any illegal purposes, let alone terrorist financing." ARB Ex. 2 (Hobayb Rep.) at 30-31; *see also* ARB Ex. 3 (Pasley Rep.) at 10 (concluding that none of the transactions involving Aqil appear suspicious). | |
| | | (4) Al Rajhi Bank understood Aqil to be using the "3412" account as an Al Haramain account. | |
| | | – The Customer Information Files of a separate Al Haramain account contains a letter dated September 1994 that lists eleven Al-Haramain accounts with Al Rajhi Bank. Pls. Ex. 100 (Ltr. from Aqil al Aqil to the Gen. Mgr. of the Al Olaya Branch of Al Rajhi Bank) at ARB-00038534-35. | |
| | | – The first account on that list is the "General Account" for Al Haramain, which has the account number "2█341." Pls. Ex. 100 (Ltr. from Aqil al Aqil to the Gen. Mgr. of the Al Olaya Branch of Al Rajhi Bank) at ARB-00038535. | |
| | | – Under the Bank's account numbering system "2█341" and "█3412" would be the same account. | |
| 230 | These included concentrated large value cash deposits during an intensive approximate two month period exceeding 14 million SR, a one time check deposit of 5 million SR during the same period, followed by single-event | 230.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Additionally immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading). | 230.<br><br>Pls. Ex. 4 at 112-113:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | withdrawals of 2,726,500.00 SR and 16,900,000.00 SR. *See* Ex. 114, ARB 41454-41463 at 41455-41461; Ex. 4, Winer Report at 112-113. | (3) In particular, Plaintiffs' averment as to accounts at the Bank maintained by Aqil al Aqil do not show intentional, tortious conduct by the Bank. Plaintiffs' statement shows nothing more than routine banking services.<br><br>(4) In addition, immaterial because, of the transactions averred in this paragraph, Plaintiffs' Averment does not show that a single dollar reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as conclusory and unsupported by the evidence:<br><br>(1) Plaintiffs' characterization of cash deposits during an approximate two-month period as "intensive" is conclusory and unsupported by the evidence.<br><br>Disputed as controverted by the evidence and misleading:<br><br>(1) Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774-75; Pls. Ex. 56 (Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations (Mar. 11, 2002)).<br><br>(2) Moreover, in a letter from a Saudi official discussing fundraising efforts for Muslims in Kashmir, the official instructs potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank. See ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774-75.<br><br>(3) Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. See Pls. Ex. 48 (Additional Al Haramain Branches, Former leader | routine banking services that has no link to Al Qaeda and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Designated by Treasury (June 2, 2004)) (showing Aqil was not designated until June 2, 2004).<br><br>(4) Plaintiffs' description of Aqil's account activity is misleading to the extent it is used to suggest suspicious activity. As described by Al Rajhi Bank's expert Fawzi Al-Hobayb, Plaintiffs "do[] not point to any evidence or context that would lead [him] to believe that the transactions in Aqil's accounts were used for any illegal purposes, let alone terrorist financing." ARB Ex. 2 (Hobayb Rep.) at 30-31; see also ARB Ex. 3 (Pasley Rep.) at 10 (concluding that none of the transactions involving Aqil appear suspicious). | |
| 231 | During the 1998-2002 time period, ARB's 5920 Account for Aqil took in 21,640,672.00 SR in total deposits, and Aqil withdrew 21,809,050.49 SR. These amounted to roughly $5.77 million in additional transactions through individual accounts that ARB opened and operated for Aqil's alleged personal banking activities (corresponding to about $10.27 million in 2023 dollars). *See* Ex. 118, Plaintiffs' Summary Spreadsheet of Al Rajhi Bank Customer Account Transactions (ARB Tranche 21); Ex. 4, Winer Report at 112-13. | 231.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Additionally immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading).<br><br>(3) In particular, Plaintiffs' averment as to accounts at the Bank maintained by Aqil al Aqil do not show intentional, tortious conduct by the Bank. Plaintiffs' statement shows nothing more than routine banking services.<br><br>(4) Plaintiffs' averment concerning the purported amount of money transferred through Aqil al Aqil's accounts at the Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States.<br><br>(5) In addition, immaterial because, of the transactions averred in this paragraph, Plaintiffs' Averment does not show that a single dollar reached Al Qaeda or was used to finance the 9/11 Attacks. | 231.<br><br>Pls. Ex. 118:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Improper Summary Exhibit. *See* Fed. R. Evid. 1006.<br><br><br>Pls. Ex. 4 at 112-113:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Disputed as controverted by the evidence and misleading: | |

(1) Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); Pls. Ex. 56 (*Remarks by Treasury Secretary Paul O'Neill on New U.S.*-Saudi Arabia Terrorist Financing Designations (Mar. 11, 2002)).

(2) Plaintiffs' averments as to Aqil's "alleged personal banking activities" is misleading and unsupported by the evidence. In a letter from a Saudi official discussing fundraising efforts for Muslims in Kashmir, the official instructs potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex.5 (Ltrs. from Al Haramain's KYC files re: humanitarian activities of Al-Haramain) at ARB-00038775 (letter from Grand Mufti of Saudi Arabia describing some of Al Haramain's works).

(3) Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 48 (Additional Al Haramain Branches, Former leader Designated by Treasury (June 2, 2004)) (showing Aqil was not designated until June 2, 2004).

(4) Plaintiffs' description of Aqil's account activity is misleading to the extent it is used to suggest suspicious activity. As described by Al Rajhi Bank's expert Fawzi Al-Hobayb, Plaintiffs "do[] not point to any evidence or context that would lead [him] to believe that the transactions in Aqil's accounts were used for any illegal

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | purposes, let alone terrorist financing." ARB Ex. 2 (Hobayb Rep.) at 30-31; *see* also ARB Ex. 3 (Pasley Rep.) at 10 (concluding that none of the transactions involving Aqil appear suspicious). | |
| 232 | Thus, through the two accounts ARB opened and operated for Aqil's purported personal banking activities, ARB faciliated transfers totaling roughly $11 million over the five year period, an amount equivalent to about $19.5 million today.[1]  Ex. 4, Winer Report at 112-113. | 232.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading). Additionally immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading).<br><br>(2) In particular, Plaintiffs' averment as to accounts at the Bank maintained by Aqil al Aqil do not show intentional, tortious conduct by the Bank. Plaintiffs' statement shows nothing more than routine banking services.<br><br>(3) Plaintiffs' averment concerning the purported amount of money transferred through Aqil al Aqil's accounts at the Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States.<br><br>(4) In addition, immaterial because, of the "roughly $11 million" averred in this paragraph, Plaintiffs' Averment does not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as controverted by the evidence and misleading:<br><br>(1) Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs.  Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing | 232.<br><br>Pls. Ex. 4 at 112-113:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

---

[1]   Plaintiffs use a figure of 1.78 as an inflation calculator for US dollar equivalents.  See https://www.usinflationcalculator.com/.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); Pls. Ex. 56 (*Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations* (Mar. 11, 2002)). | |
| | | (2) Plaintiffs' averments as to Aqil's "purported personal banking activities" is misleading and unsupported by the evidence. In a letter from a Saudi official discussing fundraising efforts for Muslims in Kashmir, the official instructs potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research). Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 48 (*Additional Al Haramain Branches, Former leader Designated by Treasury* (June 2, 2004)) (showing Aqil was not designated until June 2, 2004). | |
| | | (3) Plaintiffs' description of Aqil's account activity is misleading to the extent it is used to suggest suspicious activity. *See* ARB Ex. 2 (Hobayb Rep.) at 30-31 (noting that Plaintiffs' expert "does not point to any evidence or context that would lead [him] to believe that the transactions in Aqil's accounts were used for any illegal purposes, let alone terrorist financing."); ARB Ex. 3 (Pasley Rep.) at 10 (concluding that none of the transactions involving Aqil appear suspicious). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 233 | A considerable portion of this financial activity occurred in a concentrated period in 1999 and 2000, after AHIF had been publicly implicated in al Qaeda's bombing of the U.S. embassies in Kenya and Tanzania, and when AHIF was under international scrutiny for its support of al Qaeda. *See supra* at [_] 103; Ex. 4, Winer Report at 40, 180. | 233<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Plaintiffs' averments as to Al Haramain Islamic Foundation are immaterial for the reasons stated in response to Section V (heading).<br><br>(3) Additionally immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading).<br><br>(4) In particular, Plaintiffs' averment is immaterial because Al Rajhi Bank did not maintain accounts for "AHIF." Al Rajhi Bank held accounts for Al Haramain KSA, and not for any of Al Haramain's branches. *See* Pls. Ex. 3 (Galloway Dep. Tr.) 247:14-17 and Errata at 144:23, 247:14-17.<br><br>(5) Even if Plaintiffs' averment were credited, it is still immaterial because Aqil al Aqil was publicly known as Director of Al Haramain KSA, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); Pls. Ex. 56 (*Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations* (Mar. 11, 2002)).<br><br>(6) Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 48 (*Additional Al Haramain Branches, Former leader* | 233.<br><br>Pls. Ex. 4, p. 40,180:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing conduct that is not sufficiently similar to conduct at issue, such as discussing support for Bosnia, Chechnya, or Palestine. *See* Fed R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | *Designated by Treasury* (June 2, 2004)) (showing Aqil was not designated until June 2, 2004). | |

(7) Plaintiffs' averment as to accounts at the Bank maintained by Aqil al Aqil do not show intentional, tortious conduct by the Bank. Plaintiffs' averment shows nothing more than routine banking services.

<u>Disputed as vague; unsupported by evidence:</u>

Plaintiffs' references to "AHIF" and "IIRO" are vague for the reasons discussed above in response to ¶ 215.

<u>Disputed as misleading and controverted by the evidence:</u>

(1) Plaintiffs' averment that "AHIF had been publicly implicated" in the embassy bombings is misleading and controverted by the evidence. Even though Plaintiffs misleadingly conflate Al Haramain KSA and Al Haramain Islamic Foundation's branches globally, Al Haramain KSA was never implicated nor associated with the embassy bombings. Only the Nairobi, Kenya branch was associated with the embassy bombings before the 9/11 Attacks, but as explained by Plaintiffs' expert Jonathan Winer, "in 1999, AHF (Kenya) successfully contested deregistration in the courts and resumed operations the following year, in 2000." Pls. Ex. 4 (Winer Rep.) at 37 n.87. And Al Haramain Kenya was not even designated until 2002. *See* Pls. Ex. 60 (*Treasury Designates of Al Haramain Islamic Foundation* (June 19, 2008)) (Designation of Al Haramain KSA in 2008 and noting designation of Al Haramain branches started in 2002).

(2) At the time of the 2002 designation by the United States of Al Haramain branches outside of Saudi Arabia for connections to terrorism, U.S. Treasury Secretary Paul O'Neill stated that Al Haramain KSA, by contrast, "is dedicated to promoting

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Islamic teachings." Pls. Ex. 56 (AHIF Designation (Somalia, Bosnia) (Mar. 11, 2002)) (Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations); Plaintiffs' description of Aqil's account activity is misleading to the extent it is used to suggest suspicious activity. *See* ARB Ex. 2 (Hobayb Rep.) at 30-31 (noting that Plaintiffs' expert "does not point to any evidence or context that would lead [him] to believe that the transactions in Aqil's accounts were used for any illegal purposes, let alone terrorist financing."); ARB Ex. 3 (Pasley Rep.) at 10 (concluding that none of the transactions involving Aqil appear suspicious). <br><br> Disputed as conclusory; unsupported by the evidence: <br><br> (1) Plaintiffs' characterization of AHIF as "publicly implicated" is conclusory and not supported by the evidence. The documents cited do not show that AHIF was publicly implicated at the time. | |
| 234 | As discussed below, ARB allowed and enabled Aqil to use his accounts at ARB to carry out financial transactions bearing hallmarks of money laundering, until after the September 11[th] attacks. | 234. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading). <br><br> (2) Additionally immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading). <br><br> (3) In particular, Plaintiffs' averment as to accounts at the Bank maintained by Aqil al Aqil do not show intentional, tortious conduct by the Bank. Plaintiffs' statement shows nothing more than routine banking services. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (4) Plaintiffs' averment concerning the purported amount of money transferred through Aqil al Aqil's accounts at the Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States.<br><br>Disputed as controverted by the evidence and misleading:<br><br>(1) Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); Pls. Ex. 56 (*Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations* (Mar. 11, 2002)).<br><br>(2) Plaintiffs' averments as to Aqil's "purported personal banking activities" is misleading and unsupported by the evidence. In a letter from a Saudi official discussing fundraising efforts for Muslims in Kashmir, the official instructs potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research).<br><br>(3) Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 48 ((*Additional Al Haramain Branches, Former leader Designated by Treasury* (June 2, 2004)) (showing Aqil was not designated until June 2, 2004). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (4) Plaintiffs' characterization of Aqil's account activity as "bearing hallmarks of money laundering" is vague, conclusory, and contravened by other evidence. *See* ARB Ex. 2 (Hobayb Rep.) at 30-31 (noting that Plaintiffs' expert "does not point to any evidence or context that would lead [him] to believe that the transactions in Aqil's accounts were used for any illegal purposes, let alone terrorist financing."); ARB Ex. 3 (Pasley Rep.) at 10 (concluding that none of the transactions involving Aqil appear suspicious). | |
| | | (5) In fact, cash transactions were the norm in Saudi Arabia during the relevant period, when the country's economy was almost entirely cash-based. Resp. to Pls. Aver. ¶ 234; *see also* ARB Ex. 2 (Hobayb Rep.) at 30 (explaining prevalence of cash transactions in Saudi society during 1990s, especially for charities); Pls. Ex. 1 (Abdullah bin Sulaiman Rajhi Dep. Tr.) at 218:7-17 (explaining that during the relevant period, Saudi Arabia was "very much [a] cash transaction country."). | |
| | | (6) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence:<br><br>- Plaintiffs have no evidence that SAMA's audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations, including those related to anti-money laundering. *See* ARB Ex. 3 (Pasley Rep.) at 11 ("As far as I have seen, SAMA never determined that the Bank was materially noncompliant with SAMA's requirements."); ARB Ex. 2 (Hobayb Rep.) at 4 (noting that SAMA was a "rigorous regulator" that subjected Saudi banks to "robust anti-money laundering controls on par with global standards."); Pls. Ex. 184 (Hobayb | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Dep. Tr.) at 36:12-13 (testifying that Saudi "banks are required to comply with [their] regulator [SAMA] and its regulations."). | |
| | | - Plaintiffs have no evidence that routine internal or external audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations or the Bank's internal policies. *See* ARB Ex. 2 (Hobayb Rep.) at 18 ("I have not seen anything to indicate that Al Rajhi Bank … was noncompliant with auditing and regulatory standards and procedures."); *id.* at 20 (noting "no evidence has been presented that these external auditors flagged noncompliance by Al Rajhi Bank"); ARB Ex. 3 (Pasley Rep.) at 9 ("The fact that these audits failed to reveal significant issues is evident from the Bank's Annual Reports, which are public, and which discuss the audits."); *id.* ("Presumably — given no evidence to the contrary — these audits did not uncover any significant noncompliance."); *see also, e.g.*, Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Rep.) at PDF p. 72, Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Rep.) at PDF p. 77, Pls. Ex. 8 (2000 Al Rajhi Bank Ann. Rep.) at PDF p. 42 and ARB Ex. 16 (2001 Al Rajhi Bank Ann. Rep.) at PDF p. 74 (external auditors' reports for 1998-2001 identifying no noncompliance by the Bank with its internal policies or local law). | |
| 235 | Throughout this period, Aqil was one of al Qaeda's most important funders and financial facilitators. *See* Ex. 4, Winer Report at 111-121 (discussing the E.O. 13224 designation of Al Haramain's | 235.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading). | 235.<br><br>Pls. Ex. 4 at 111-121:<br><br>- Should be excluded to the extent expert testimony is used |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | leader, Aqil al Aqil, who "was responsible for all AHF activities, including its support for terrorism"); Ex. 48 (Lormel Exhibit 18) (June 2, 2004 designation of Al Haramain's branches in Afghanistan, Albania, Bangladesh, Ethiopia, and the Netherlands, including Aqil al Aqil), Ex. 48 (Lormel Exhibit 18), *Additional Al-Haramain Branches, Former Leader Designated by Treasury as Al Qaida Supporters, Treasury Marks Latest Action in Joint Designation with Saudi Arabia*, June 2, 2004, at 3 ("Under Al Aqil's leadership of AHF, numerous AHF field offices and representatives operating throughout Africa, Asia, Europe and North America appeared to be providing financial and material support to the al Qaida network."); Ex. 38, Kohlmann Report at 12; *See* Ex. 62, TREASURY00017-29 at 27 (stating that Aqil was an "Al Qaida supporter that handled the collection of funds for 'freedom fighters' in areas including Afghanistan, Bosnia, Chechnya, Kosovo, and Somalia, [REDACTED]"). | (2) Additionally immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading). <br><br> (3) Further, Plaintiffs' averment, even if credited, does not show that Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States. In particular, Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know of Aqil's purported connection to Al Qaeda or terrorism. *See* ARB Aver. ¶¶ 35-36. <br><br> (4) Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); Pls. Ex. 56 (AHIF Designation (Somalia, Bosnia) (March 11, 2002)) (Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations). <br><br> (5) Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 48 (*Additional Al Haramain Branches, Former leader Designated by Treasury* (June 2, 2004)) (showing Aqil was not designated until June 2, 2004). <br><br> (6) Immaterial as to branches of AHIF that were designated. During the relevant period, Al Haramain branches outside of Saudi Arabia did not hold any accounts at Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. <br><br> <u>Disputed as unsupported by the evidence:</u> | as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 38 at 12:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802 <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 62:</u> <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' evidence does not show that Aqil was "one of al Qaeda's most important funders and financial facilitators." The cited sources do not attempt to compare sources of al Qaeda funding with respect to relative importance or amount. | discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |
| 236 | ARB also maintained accounts and facilitated financial activities for several of AHIF's other most senior officers, including SDGT Soliman al Buthe, Mansour al Kadi, Abdullah Mohamad al Mohithif, Mohamed bin Marzuq al Harthi, Hussein bin Abdullah al Yami, Faisal bin Fayez al Ahmadi, Zayd Attia al Harithi, and Abdullah bin Salim al Shahri (in addition to Abdullah al Misfer, who worked for both AHIF and Suleiman al Rajhi's committee/foundation).[2] | 236.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Plaintiffs' averments with respect to Al Haramain and Al Haramain officials are immaterial for the reasons discussed in Section V (heading).<br><br>(3) Plaintiffs' averments with respect to Aqil al Aqil are immaterial for the reasons stated in response to Section IX (heading).<br><br>(4) Plaintiffs' averments with respect to Mansour al Kadi and Abdullah al Misfer are immaterial for the reasons stated in response to Section X (heading).<br><br>(5) In particular, Plaintiffs' averments concerning charity officials show no knowledge or purposeful direction on part of the Bank. Al Rajhi Bank never processed any transaction for any customer identified in Plaintiffs' Averment that was designated by the United States, the United Nations, or any other governmental body at the time of the transaction. *See* | |

---

2    Plaintiffs know that ARB held accounts in the name or names of al Mohithif, al Harthi, al Yami, al Ahmadi, al Harithi, and al Shahri, because the limited documents ARB produced from AHIF's KYC/customer information file indicate that accounts held in the name or names of those AHIF officials were converted to accounts in the name of AHIF. Plaintiffs have not had the opportunity to obtain discovery of the financial activities in the accounts of those individuals, while held in their own names.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 126:12-13, 130:21-131:2, 132:23-133:5 and Errata at 131:1; ARB. Ex 28 (Winer Dep. Tr. and Errata) at 57:8-12; ARB Ex. 3 (Pasley Rep.) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda"). | |
| | | <u>Disputed as vague; unsupported by evidence:</u> | |
| | | (1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 215. | |
| | | <u>Disputed as contravened by the evidence, misleading, incomplete:</u> | |
| | | (1) Averments concerning Abdullah al Misfer's account transactions, even if credited, do not show that those accounts were being used for terrorist financing, or that Al Rajhi Bank had reason to know that that they were being used for that purported purpose. Plaintiffs have no evidence showing that Al Misfer was publicly connected with Al Qaeda when the Bank processed transactions through those accounts. | |
| | | (2) Additionally, Yassin Kadi was removed from the SDGT list in 2014. *See* ARB Ex. 45 (OFAC Counter Terrorism Designation Removals, Dept. of Treas., Nov. 26, 2014) at 1 (showing Yassin Kadi de-designation). | |
| 237 | As discussed below, ARB allowed and enabled al Buthe to use his accounts at ARB to carry out financial transactions bearing hallmarks of money laundering, until after the September 11th attacks. | 237. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading). <br><br> (2) Immaterial because Plaintiffs' averments regarding Soliman al Buthe do not show that Al Rajhi Bank took any tortious act | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | related to Al Qaeda, the 9/11 Attacks, or the United States. Plaintiffs' averments show only routine banking services.<br><br>Disputed as controverted by the evidence:<br><br>(1) Soliman al Buthe was publicly known as an official of Al Haramain, a well-known and respected charity before the 9/11 Attacks. Al Buthe was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 50 (Designation of Soliman al Buthe) (showing al Buthe was not designated until September 9, 2004). Even if Plaintiffs' averment is credited, Plaintiffs have no evidence that Al Rajhi Bank knew otherwise prior to the 9/11 Attacks.<br><br>(2) Plaintiffs *also* fail to include that al Buthe was designated for his actions pertaining to donations to Chechnya, which is not at issue in this litigation. *See* Pls. Ex. 50 (*U.S.-Based Branch of Al Haramain Foundation Linked to Terror, Treasury Designates U.S. Branch Director*, Sept. 9, 2004) (showing al Buthe was not designated until September 9, 2004 and alleging that "individuals associated with the branch tried to conceal the movement of funds intended for Chechnya by omitting them from tax returns and mischaracterizing their use, which they claimed was for the purchase of a prayer house in Springfield, Missouri.").<br><br>(3) In particular, to the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence:<br><br>- Plaintiffs have no evidence that SAMA's audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations, including those related to anti-money laundering. *See* ARB Ex. 3 (Pasley Rep.) at | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | 11 ("As far as I have seen, SAMA never determined that the Bank was materially noncompliant with SAMA's requirements."); ARB Ex. 2 (Hobayb Rep.) at 4 (noting that SAMA was a "rigorous regulator" that subjected Saudi banks to "robust anti-money laundering controls on par with global standards."); Pls. Ex. 184 (Hobayb Dep. Tr.) at 36:12-13 (testifying that Saudi "banks are required to comply with [their] regulator [SAMA] and its regulations."). | |
| | | - Plaintiffs have no evidence that routine internal or external audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations or the Bank's internal policies. *See* ARB Ex. 2 (Hobayb Rep.) at 18 ("I have not seen anything to indicate that Al Rajhi Bank … was noncompliant with auditing and regulatory standards and procedures."); *id.* at 20 (noting "no evidence has been presented that these external auditors flagged noncompliance by Al Rajhi Bank"); ARB Ex. 3 (Pasley Rep.) at 9 ("The fact that these audits failed to reveal significant issues is evident from the Bank's Annual Reports, which are public, and which discuss the audits."); *id.* ("Presumably — given no evidence to the contrary — these audits did not uncover any significant noncompliance."); *see also, e.g.*, Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Rep.) at PDF p. 72, Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Rep.) at PDF p. 77, Pls. Ex. 8 (2000 Al Rajhi Bank Ann. Rep.) at PDF p. 42 and ARB Ex. 16 (2001 Al Rajhi Bank Ann. Rep.) at PDF p. 74 (external auditors' reports for 1998-2001 identifying no noncompliance by the Bank with its internal policies or local law). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (4) Plaintiffs' description of al Buthe's account activity is misleading to the extent it is used to suggest suspicious activity or wrongdoing on part of the Bank. *See* ARB Ex. 2 (Hobayb Rep.) at 24 (noting that al Buthe's transactions do not suggest noncompliance by Al Rajhi Bank."); ARB Ex. 3 (Pasley Rep.) at 10 ("Winer presents no evidence as to why the Bank should have suspected al Buthe pre-9/11."). | |
| 238 | Throughout this period, al Buthe was one of al Qaeda's most important funders and financial facilitators, and specifically engaged in using funds distributed via his account at ARB to support al Qaeda in the United States. *See* Ex. 4, Winer Report at 97, 174-177 (discussing Al Haramain official Soliman al Buthe's E.O. 13224 designation in connection with his provision of military support to Chechen militants from an Al Haramain branch in the United States); Ex. 38, Kohlmann at 15-16; Ex. 50, *U.S.-Based Branch of Al Haramain Foundation Linked to Terror, Treasury Designates U.S. Branch, Director*, September 9, 2004, at 1 (indicating that under Soliman al Buthe's leadership of Al Haramain, "funds that were donated to AHF with the intention of supporting Chechen refugees | 238. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed in response to Section VIII (heading) and ¶ 237. <br><br> (2) In addition, Plaintiffs have no evidence that Al Rajhi Bank knew or had reasons to know of Al Buthe's purported connection to terrorism before the 9/11 Attacks. At the time of the transactions, Buthe was an official of Al Haramain, a reputable and licensed charity that collected donations and responded to humanitarian crises around the world. See Pls. Ex. 44 (Staff Monograph) at 115 (discussing various humanitarian works done by Al Haramain); see also ARB Ex. 23 (Letter from Prince of Tabuk) at ARB-00038699 (letter in Al Haramain's KYC files describing Al Haramain as a "humanitarian" organization engaged in "relief efforts."); ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774-75. <br><br> <u>Disputed as conclusory; misleading; incomplete; unsupported by the evidence:</u> <br><br> (1) Plaintiffs' description of al Buthe's account activity is misleading to the extent it suggests suspicious activity or wrongdoing on the part of the Bank. *See* ARB Ex. 2 (Hobayb Rep.) at 24 (noting that al Buthe's transactions do "not suggest noncompliance by Al Rajhi | 238. <br><br> <u>Pls. Ex. 4 at 174-177:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing issues not sufficiently similar to the conduct at issue, such as support for Chechnya and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 38 at 15-16:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | were diverted to support mujahideen, as well as Chechen leaders affiliated with the al Qaida network"). | Bank."); ARB Ex. 3 (Pasley Rep.) at 10 ("Winer presents no evidence as to why the Bank should have suspected Al Buthe pre-9/11."). <br><br> Disputed as unsupported by the evidence: <br><br> (1) Plaintiffs' evidence does not show that al Buthe was "one of al Qaeda's most important funders and financial facilitators." The cited sources do not attempt to compare sources of al Qaeda funding with respect to relative importance or amount. | and confusing the issues for discussing issues not sufficiently similar to the conduct at issue, such as support for Chechnya and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |
| 239 | ARB maintained five accounts for Mansour al Kadi, AHIF's deputy director, which were used to facilitate transfers totaling 48,188,573.59 SR, and aggregate withdrawals in the amount of 46,462,688.08 SR. *See* Ex. 4, Winer Report at 204, 205, 207, 208; and SDGT Aqil al Aqil, who held five accounts at ARB. *See* Ex. 4, Winer Report at 205; Ex. 118, Plaintiffs' Summary Spreadsheet of Al Rajhi Bank Customer Account Transactions (ARB Tranche 21). *See also* Ex. 62, TREASURY00017-29 at 21 (stating that Kadi, "al-Aqil's deputy and one of AHF's main leaders," is "implicated in | 239. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading). <br><br> (2) In particular, Plaintiffs' averments concerning Mansour al Kadi and Aqil show no knowledge or purposeful direction on part of the Bank. Al Rajhi Bank never processed any transaction for any customer identified in Plaintiffs' Averment that was designated by the United States, the United Nations, or any other governmental body at the time of the transaction. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 126:12-13, 130:21-131:2, 132:23-133:5 and Errata at 131:1; ARB. Ex 28 (Winer Dep. Tr. and Errata) at 57:8-12; ARB. Ex. 3 (Pasley Rep.) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda"). | 239. <br><br> <u>Pls. Ex. 4 at 204-205, 207-208:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 118:</u> <br><br> - Lacks authentication. *See* Fed. R. Evid. 802. <br><br> - Improper Summary Exhibit. See Fed. R. Evid. 1006. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | working with al Aqil to support al Qaida terrorist activity"). | (3) In addition, immaterial because, of the transactions averred in this paragraph, Plaintiffs' Averment does not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> Disputed as vague; unsupported by evidence: <br><br> (1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 215. | Pls. Ex. 62: <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |
| 240 | ARB also operated two accounts for SDGT Abdul Hamid bin Sulaiman bin Muhammed al Mujil, the IIRO official described as the "million dollar man" for his role in collecting and distributing funds to al Qaeda and affiliated terrorists. *See* Ex. 4, Winer Report at 19, 87, 124, 125, 208 (discussing Abd al Hamid Sulaiman al Mujil, Executive Director of IIRO's Eastern Province branch, and his E.O. 13224 designation for using his | 240. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading). <br><br> (2) Plaintiffs' averments as to Abd al Hamid Sulaiman al Mujil's accounts at the Bank do not show Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States. Plaintiffs' averments show only routine banking services. <br><br> (3) Moreover, even if Plaintiffs' averments concerning al Mujil are credited, Plaintiffs have no evidence that Al Rajhi Bank knew or | 240. <br> Pls. Ex. 4 at 19, 87, 124-125, 208: <br> - Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded for unfair prejudice for imputing liability through guilt-by-association *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 38 at 26-28: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | position "to bankroll the al Qaida network in Southeast Asia"); Ex. 38, Kohlmann Report at 26-28; Ex. 170 (Abdullah al Rajhi Exhibit 28) (August 3, 2006 designation of IIRO's branches in the Philippines and Indonesia, including And al Hamid Sulaiman al Mujil); Ex. 75, *Additional Designations Pursuant to E.O. 13224: Dr. Abd Al Hamid Sulaiman Al-Mujil and International Islamic Relief Organization Philippines and Indonesia Branches,* TREASURY00102-121. | had reason to know of any purported connection of al Mujil to terrorism or al Qaeda before the 9/11 Attacks.<br><br>(4) Al Rajhi Bank did not operate accounts for Mujil while he was an SDGT. Mujil was not designated under any sanctions regime for connections to terrorism, until the United States designated him as an SDGT on August 3, 2006, several years after the 9/11 Attacks. *See* Pls. Ex. 170 (*Treasury Designates Director, Branches of [IIRO]* (Aug. 3, 2006)) (showing first sanctions designations of IIRO branches were in 2006 in the Philippines and Indonesia, including al Hamid Sulaiman al Mujil).<br><br>(5) In addition, even if Plaintiffs' averments concerning Sulaiman al Mujil are credited, al Mujil's actions in Southeast Asia have no nexus to the 9/11 Attacks or the United States.<br><br>Disputed as vague; unsupported by evidence:<br><br>(1) Plaintiffs' reference to "IIRO" is vague for the reasons discussed above in response to ¶ 215. | - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.- Should be excluded under Rule 403 for confusing the issue and unfair prejudice for discussing charity operations in Philippines and Indonesia, which have no link to Al Rajhi Bank and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 75:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 241 | Here again, the activity in both accounts involved numerous red flag transactions indicative of money laundering or other illicit activity, including after the September 11th attacks, as further discussed below. *See* Ex. 4, Winer Report at 87; Ex. 119, ARB 745-787; Ex. 120, ARB 788-810. | 241.<br><br>Immaterial for the reasons stated above in response to Section VIII (heading) and ¶ 240.<br><br>Disputed as conclusory; controverted by the evidence:<br><br>(1) Plaintiffs' characterization of al Mujil's account activity as involving "red flag transactions indicative of money laundering or other illicit activity" is conclusory and controverted by the evidence. *See* ARB Ex. 2 (Hobayb Rep.) at 23 (noting that al Mujil's transactions do not suggest violations by Al Rajhi Bank).<br><br>(2) In particular, to the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 225, 334, 337. | 241.<br><br>Pls. Ex. 4 at 87:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |
| 242 | This activity occurred at a time when Mujil was responsible for collecting donor funds for distribution to al Qaeda and associated terrorist organizations. *See* Ex. 4, Winer Report at 19, 87, 124, 125, 208; Ex. 38, Kohlmann Report at 26-28; Ex. 170 (Abdullah al Rajhi Exhibit 28) (August 3, 2006 designation of IIRO's branches in the Philippines and Indonesia, including And al Hamid Sulaiman al Mujil); Ex. 75, *Additional Designations Pursuant to E.O. 13224: Dr. Abd Al Hamid Sulaiman Al-Mujil and International Islamic Relief* | 242.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading) and ¶ 240.<br><br>(2) In addition, immaterial because Al Rajhi Bank never processed any transaction for any customer identified in Plaintiffs' Corrected Averment that was designated by the United States, the United Nations, or any other governmental body at the time of the transaction. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 126:12-13, 130:21-131:2, 132:23-133:5 and Errata at 131:1; ARB. Ex 28 (Winer Dep. Tr. and Errata) at 57:8-12; ARB Ex. 3 (Pasley Rep.) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda"). | 242.<br><br>Pls. Ex. 4 at 19, 87, 124-125, 208:<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 38 at 26-28:<br><br>- Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *Organization Philippines and Indonesia Branches*, TREASURY00102-121. | (3) In addition, Plaintiffs have no evidence tracing any funds from Mujil's accounts at Al Rajhi Bank to Al Qaeda or the 9/11 Attacks. | - Should be excluded under Rule 403 for confusing the issue and unfair prejudice for discussing charity operations in Philippines and Indonesia, which have no connection to Al Rajhi Bank and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 75:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. *See* Fed. R. Evid 403. |
| 243 | IIRO official and bin Laden brother-in-law Mohamed Jamal Khalifa opened an account at ARB in 1987, granting power of attorney to Mohammed bin Laden, | 243.<br><br><u>Immaterial:</u> | 243.<br><br><u>Pls. Ex. 4 at 88:</u><br>- Should be excluded under Rule 403 for unfair prejudice |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | a relative of Osama bin Laden. *See* Ex. 4, Winer Report at 88; *See* Ex. 121, ARB 1098-1105 at 1104. | (1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in Section V (heading).<br><br>(3) Plaintiffs' averment as to Mohamed Jamal Khalifa's accounts at the Bank are immaterial because Bin Laden was not publicly known be affiliated with terrorism during this time period. Bin Laden was not designated until 1998, over ten years *after* Plaintiffs aver Khalifa opened accounts at Al Rajhi Bank. *See* ARB Ex. 73 (Exec. Order No. 13,099, 63 Fed. Reg. 45,167 (Aug. 20, 1998)).<br><br>(4) In addition, immaterial because Osama Bin Laden had over 50 siblings, and Plaintiffs do not show that Mohamed Jamal Khalifa, specifically, had any connection to Al Qaeda. *See* ARB Ex. 12 (Affidavit of Abdullah Awad Bin Laden, Nov. 19, 2005) at ¶ 2 (testifying that bin Laden was one of 54 children).<br><br>(5) Plaintiffs omit the fact that Muhammad Jamal Khalifa did not have a *single* transaction in his account during the relevant period, January 1, 1998 – December 31, 2002. ARB Ex. 86 (Muhammad Jamal Khalifa statement of accounts) at ARB-00000841-42). Thus, Plaintiffs' averment shows nothing more than routine banking services provided outside the relevant period and *no* banking services provided during the relevant period.<br><br>(6) Plaintiffs' averment as to Khalifa, an IIRO official, is additionally immaterial where the Bank knew IIRO KSA to be a well-known, respected, and government-licensed charity. *See* Pls. Ex. 3 (Galloway Dep. Tr.) and Errata at 232:19; ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-00013679-80 (Ltr. from Deputy Prime Minister) | for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | approving decisions and recommendations relating to formation of IIRO); *id.* at ARB-00013683 (Cert. fr. Min. of Foreign Affs. recognizing IIRO as an NGO); ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545; ARB Ex. 25 (Ltr. from Al Rajhi Bank Gen. Mgr. to Gov. of SAMA, Jan. 26, 2004) at ARB-00014546 (noting that IIRO KSA was licensed by appropriate Saudi authorities). | |
| | | (7) Moreover, IIRO KSA, the only branch for which the Bank held accounts, was never designated under any sanctions regime for connection to terrorism. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. No branch of IIRO was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 170 (*Treasury Designates Director, Branches of [IIRO]* (Aug. 3, 2006)) (showing first sanctions designations of IIRO branches began in 2006); *see also* ARB. Ex 28 (Winer Dep. Tr. and Errata) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."); ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 140:6-13 (acknowledging that IIRO KSA never received a sanctions designation). | |
| | | Disputed as vague; unsupported by evidence: | |
| | | (1) Plaintiffs' reference to "IIRO" is vague for the reasons discussed above in response to ¶ 215. | |
| | | (2) Plaintiffs incorrectly identify the power of attorney as being granted to "Mohammed bin Laden." However, the form clearly identifies the power of attorney being granted to "Shikhah Mohammed Bin Laden," which would be a different individual." *See* Pls. Ex. 121, ARB 1098-1105 at 1104. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 244 | The Khalifa account was opened near the end of the Afghan jihad, during which Khalifa was known to have worked alongside bin Laden, and specifically approved by Abdullah al Rajhi. *See* Ex. 121, ARB 1098-1105 at 1104. | 244.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in Section VIII (heading) and ¶ 243.<br><br>(2) In addition, immaterial because "near the end of the Afghan jihad" has no nexus to the United States, Al Qaeda, or the 9/11 Attacks.<br><br>Disputed as conclusory; controverted by prevailing evidence; and misleading:<br><br>(1) Plaintiffs misrepresent the cited document by stating that the Muhammad Jamal Khalifa account was "specifically approved by Abdullah al Rajhi." No individual with the name "Abdullah Al Rajhi" approved the account opening, instead the account's power of attorney form was approved by "Abdullah **A.** [Additional initial cut off in scan] Al Rajhi." *See* Pls. Ex. 121 (Khalifa Account at Al Rajhi Bank) at ARB-00001104 (emphasis added). The Chairman and former General Manager/CEO of Al Rajhi Bank is Abdullah bin **Sulaiman** Al Rajhi. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 14:12 (emphasis added). | |
| 245 | The opening of this account occurred at or around the time that Khalifa opened an IIRO office in the Philippines, to support the nascent al Qaeda organization. Ex. 38, Kohlmann Report at 24-27. | 245.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading) and ¶ 243.<br><br>(2) In addition, immaterial because the Philippines has no nexus to the United States, Al Qaeda, or the 9/11 Attacks.<br><br>Disputed as vague; unsupported by evidence: | 245.<br><br>Pls. Ex. 38, p. 24-27:<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability by guilt-by-association. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' reference to "IIRO" is vague for the reasons discussed above in response to ¶ 215. <br><br> _Disputed as conclusory; misleading; controverted by the evidence:_ <br><br> (1) Plaintiff' suggestion that the IIRO office was opened "to support the nascent al Qaeda organization" is conclusory and unsupported by the cited evidence. <br><br> (2) Plaintiffs' averment is also misleading because, as Plaintiffs' expert concedes, the IIRO office in Zamboanga, Philippines was opened in 1992 and the Manila office in 1991, both several years after the first IIRO KSA account at Al Rajhi Bank was opened in 1987. _See_ Pls. Ex. 38 (Kohlmann Rep.) at 24. | |
| 246 | According to the United States: "The Philippine branches of the IIRO were founded sometime in the late 1980s or early 1990s by Muhammad Jamal Khalifah, who is Usama bin Laden's brother-in-law and has been identified as a senior al Qaida member. . . While working as the director of IIRO-PHL, Khalifah maintained close connections with al Qaida through his relations with senior al Qaida supporters, including Specially Designated Global Terrorist (SDGT) Wa'el Hamza Julaidan." _See_ Ex. 170 (Abdullah al Rajhi Exhibit 28), August 3, 2006 designation of IIRO's branches in the Philippines and Indonesia, including And al Hamid Sulaiman | 246. <br><br> _Immaterial:_ <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading) and ¶¶ 243, 245. <br><br> (2) In addition, immaterial because Indonesia, the Philippines, and Pakistan have no nexus to the United States, Al Qaeda, or the 9/11 Attacks. <br><br> (3) Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in Section V (heading). <br><br> _Disputed as vague; unsupported by evidence:_ <br><br> (1) Plaintiffs' reference to "IIRO" is vague for the reasons discussed above in response to ¶ 215. | 246. <br><br> _Pls. Ex. 75:_ <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. _See_ Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing attacks and theatres not at issue in this litigation and for descriptions of charity branches allegedly engaging in extremism with no connection to Al Rajhi Bank. _See_ Fed. R. Evid 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | al Mujil); Ex. 75, *Additional Designations Pursuant to E.O. 13224: Dr. Abd Al Hamid Sulaiman Al-Mujil and International Islamic Relief Organization Philippines and Indonesia Branches*, TREASURY00102-121; Ex. 4, Winer Report at 88; id. at 31, 38, 39, 50, 52, 61, 75, 88, 203, 211, Ex. 38, Kohlmann Report at 24-26, 29. *See also* Ex. 45, *Saudi-Based Financial Support for Terrorist Organizations*, November 14, 2002, CIA_00143-158 at 149 (Khalifa "was based in the Philippines from 1988 to 1995 and was involved in recruiting Muslims for training in Pakistan as mujahidin fighters.") | | <u>Pls. Ex. 4 at 31, 38-39, 50, 52, 61, 75, 88, 203, 211:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 38 at 24-26, 29:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid 802. <br> - Should be excluded under rule 403 for unfair prejudice for attempting to impute liability by guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 45:</u> |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | | - Inadmissible hearsay, as noted in response to Section VI (heading). |
| 247 | ARB also operated accounts for Wa'el Jelaidan, one of al Qaeda's premier financial facilitators, again processing large and high volume transactions during period when he was financing al Qaeda. *See supra* at 224-226 and documents cited therein. | 247.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading) and ¶¶ 224-26.<br><br>(2) Further, Plaintiffs' averments regarding purported "large and high volume transactions" is immaterial because Saudi Arabia was, and remains, a cash-based society, and large cash deposits were not unusual during the relevant period. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 240:2-20, 247:7-10 and Errata at 240:3; *see also* ARB Ex. 2 (Hobayb Rep.) at 30 (explaining the prevalence of cash transactions in Saudi society during the 1990s, especially for charities and their officials).<br><br>Disputed as conclusory:<br><br>(1) Plaintiffs' characterization of Jelaidan as "one of al Qaeda's premier financial facilitators" is conclusory.<br><br>Disputed as misleading; incomplete.<br><br>(1) Wa'el Jelaidan was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 49 (*Treasury Dept. Statement on the Designation of Wa'el Hamza Julidan* (Sept. 6, 2002)) (showing that Jelaidan was designated in 2002).<br><br>(2) Al Rajhi Bank never processed any transaction for any customer identified in Plaintiffs' Averment that was designated by the United States, the United Nations, or any other governmental body at the time of the transaction. *See* ARB Ex. 93 (Kohlmann | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Dep. Tr. and Errata) at 126:12-13, 130:21-131:2, 132:23-133:5 and Errata at 131:1. ARB. Ex 28 (Winer Dep. Tr. and Errata) at 57:8-12; ARB Ex. 3 (Pasley Rep.) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda"). | |
| | | (3) Moreover, Al Rajhi Bank promptly froze Wa'el Jelaidan's accounts when he was jointly designated by Saudi Arabia and the United States in September 2002 under Executive Order 13224. *See* ARB Ex. 74 (Wael Jelaidan's statement of active account at Al Rajhi Bank, Jan. 1, 1998-Dec. 31 2002) at ARB-00001017 (showing last transaction was in August 2002); *See also* ARB Ex. 75 (Wael Jelaidan's statement of dormant account at Al Rajhi Bank, Jan. 1, 1998-Dec. 31 2002 at ARB-00001018-19) (showing no transactions between Jan. 1, 1998 to Dec. 31, 2002); ARB Ex. 7 (Al Rajhi Bank's fax to SAMA reporting they had frozen Wael Jelaidan's accounts) at ARB-00014524. | |
| 248 | ARB also maintained and operated an account for its Founder and Chairman Suleiman al Rajhi's own "charity" committee/foundation, and for the individual officers of that committee/foundation who carried out its operations and financial activities under Suleiman al Rajhi's direction. | 248. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated in response to Section VIII (heading). <br><br> (2) Additionally immaterial as to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation as stated in response to Sections IV (heading) and X (heading). <br><br> (3) In particular, immaterial because the undisputed admissible evidence establishes that the Sulaiman bin Abdulaziz al Rajhi Charitable Foundation had no "relationship" with Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | the foundation has never been a parent, subsidiary, or affiliate of the bank."). | |
| | | <u>Disputed as ambiguous; vague:</u> | |
| | | (1) Plaintiffs' reference to Suleiman al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. | |
| 249 | The Suleiman al Rajhi "charity" committee/foundation used its account at ARB to transfer large sums to AHIF, including transfers directly to Aqil al Aqil. *See* Ex. 122, ARB 38079-38107 and ARB 39948-39959; Ex. 123, ARB 39960; Ex. 124, ARB 39961; Ex. 125, ARB 42183-42184; Ex. 126, ARB 42179-42180; Ex. 127, ARB 42181-42182; Ex. 29 (Galloway Exhibit 22), NL 15578, 15043-15046. | 249. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated in response to Section VIII (heading). <br><br> (2) Plaintiffs' averments with respect to Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are immaterial for the reasons discussed in Section IV (heading). <br><br> (3) Plaintiffs' averments with respect to Al Haramain Islamic Foundation and Al Haramain Islamic Foundation officials are immaterial for the reasons discussed in Section V. Plaintiffs' averments with respect to Aqil al Aqil are immaterial for the reasons discussed in response to Section IX (heading). <br><br> (4) To the extent Plaintiffs contend that the personal charitable donations of Sulaiman bin Abdulaziz Al Rajhi were made with knowledge of Al Haramain's purported connection to terrorism (a point which Plaintiffs do not establish), such averments are immaterial, as Plaintiffs may not impute a chairman or senior official's knowledge onto the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any | 249. <br> <u>Pls. Ex. 29:</u> <br> - Lack authentication. *See* Fed. R. Evid. 901. <br> - Hearsay to which no exception applies. *See* Fed. R. Evid 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). | |
| | | (5) Any purported knowledge that Al Rajhi Bank had of Al Haramain KSA transactions is immaterial because the evidence shows only that, prior to the 9/11 Attacks, Al Haramain KSA was publicly known as a government-licensed charity doing charitable works. ARB Ex 41 (Ltrs. from Deputy Minister of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-00038585-86. (Letter from Deputy Minister of Islamic Affairs, Da'wah, and Guidance stating Al-Haramain works under their supervision). Plaintiffs have no evidence that Al Rajhi Bank knew of any alleged connections between Al Haramain KSA and terrorism when the Bank processed transactions for Al Haramain KSA in the relevant period. Not even any Al Haramain branch was designated before the 9/11 Attacks. *See* Pls. Ex. 60 (*Treasury Designates Al Haramain Islamic Foundation* (June 19, 2008) (Designation of A Haramain KSA in 2008 and noting designation of Al Haramain branches started in 2002). | |
| | | (6) Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. *See* ARB Ex. 5 (Ltrs. Describing Al-Haramain KSA's humanitarian projects and good works) at ARB-00038774 (Ltr. from Aqil al Aqil in Al Haramain's KYC files describing some of Al Haramain's works) and ARB-00038775 (Ltr. from KSA Gen. Pres. of Scholarly Research); Pls. Ex. 56 (*Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations* (Mar. 11, 2002)). | |
| | | (7) Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | 48 (*Additional Al Haramain Branches, Former leader Designated by Treasury* (June 2, 2004)) (showing Aqil was not designated until June 2, 2004).<br><br>(8) Even if Plaintiffs' averment is credited, no specific transaction from any Al Rajhi Bank account has been traced to funding for Al Qaeda. *See* ARB Aver. ¶ 147; *see also generally* Pls. Aver. (identifying no specific transaction from any Al Rajhi Bank account to support Al Qaeda); Pls. Ex. 4 (Winer Rep.) (same); Pls. Ex. 38, (Kohlmann Rep.) (same).<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh .<br><br>(2) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 215.<br><br>Disputed as conclusory; unsupported; misleading:<br><br>(1) To the extent that Plaintiffs' use of "charity" in quotation marks implies that Al Rajhi Bank and Al Rajhi family members' charitable endeavors were not solely charitable in nature, or that Al Rajhi Bank and members of the Al Rajhi family had ulterior motives in engaging with charities, such an implication is conclusory and unsupported by any evidence Plaintiffs set forth. | |
| 250 | These were payments from Suleiman al Rajhi's own funds, and the transfers occurred while he was the head of both his own | 250.<br><br>Immaterial: | 250.<br><br>Pls. Ex 128: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | committee/foundation and ARB itself. *See* checks to AHIF signed by Suleiman al Rajhi at Ex. 128, NL 10086 (150,000 SR), NL 10088 (300,000 SR), NL 10094 (12,500), NL 10245 (187,500 SR). | (1) Immaterial and disputed for the reasons stated above in response to Section VIII (heading) and ¶ 249.<br><br>(2) In particular, immaterial because the undisputed admissible evidence establishes that the Sulaiman bin Abdulaziz al Rajhi Charitable Foundation had no "relationship" with Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank.").<br><br>(3) To the extent Plaintiffs contend that the personal charitable donations of Sulaiman bin Abdulaziz Al Rajhi were made with knowledge of Al Haramain's purported connection to terrorism (a point which Plaintiffs do not establish), such averments are immaterial, as Plaintiffs may not impute a chairman or senior official's knowledge onto the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh .<br><br>(2) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 215. | - Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 251 | Plaintiffs were not afforded discovery as to transactions | 251. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | carried out through the Suleiman al Rajhi charity committee/foundation account generally-- ARB; disclosed only transactions specifically benefitting AHIF or IIRO-- and Plaintiffs thus have not had an opportunity to obtain discovery from ARB concerning all transactions initiated from that account and in favor of al Qaeda fronts and affiliates. | <u>Immaterial and disputed for the reasons stated above in response to Section VIII (heading).</u><br><br><u>Disputed as ambiguous; vague; conclusory; unsupported by evidence:</u><br><br>(1) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>(2) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 215.<br><br>(3) Plaintiffs' vague and unsupported reference to "al Qaeda fronts and affiliates" is a legal conclusion to which no response is required.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) In jurisdictional discovery, the Bank produced 508 statements of accounts, including 440 charity customer accounts.  *See* Erb Decl. ¶ 5.  Plaintiffs have no evidence that any of these account statements shows any transaction that has been traced to Al Qaeda or to the financing, planning, or carrying out of any terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI; Pls. Ex. 4 (Winer Rep.) at § 11.<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of purportedly lacking discovery, for the reasons discussed above in response to the averments in Section III. | |
| 252 | Even in respect to AHIF and IIRO, the transactions from the Suleiman al Rajhi charity/foundation account do not capture the full scope of Suleiman | 252.<br><br><u>Immaterial:</u><br><br>Immaterial for the reasons stated in response to Section VIII (heading). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | al Rajhi's support for those entities through accounts at ARB, as discovery confirms that Suleiman al Rajhi carried out extensive financial activities through accounts held in the names of the individual officials of his charity committee/foundation, a practice that defies innocent explanation for a sophisticated international banker like Suleiman al Rajhi. | (1) Plaintiffs' averments with respect to Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are immaterial for the reasons discussed in Section IV (heading). <br><br> (2) Immaterial with respect to Plaintiffs' averments as to Al Haramain Islamic Foundation and IIRO as stated in response to Section V (heading). <br><br> (3) Immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). <br><br> Disputed as ambiguous; vague; conclusory; unsupported by evidence: <br><br> (1) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. <br><br> (2) Plaintiffs' references to "AHIF and IIRO" are vague for the reasons discussed above in response to ¶ 215. <br><br> Disputed as conclusory and vague; unsupported by evidence: <br><br> (1) Plaintiffs' characterization of the purported "full scope of Suleiman al Rajhi's support" is vague, conclusory, and unsupported by evidence. <br><br> (2) Plaintiffs' characterization regarding "extensive financial activities" is vague and conclusory. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Plaintiffs' characterization of a "practice that defies innocent explanation" is conclusory.<br><br>(4) Plaintiffs' statement that "discovery confirms" that Sulaiman bin Abdulaziz Al Rajhi "carried out extensive financial activities" is legally conclusory and unsupported by evidence.<br><br>(5) Plaintiffs' characterization of Sulaiman bin Abdulaziz Al Rajhi as a "sophisticated international banker" is conclusory and unsupported by evidence.<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments and heading in Section III. | |
| 253 | ARB handled some twenty individual and joint accounts belonging to committee/foundation officials Abdul Rahman Al Rajhi, Saleh al Habdan, and Abdullah al Misfer, which had 187,181,580.14 SR in deposits and 174,974,641.36 SR in withdrawals over the five year period of January 1, 1998-December 31, 2002. *See, e.g.*, Ex. 129, ARB 40860-41153; Ex. 130, ARB 41176-41184; Ex. 131, ARB 41185-41278; Ex. 132, ARB 42185-42186; Ex. 133, ARB 42187-42188; Ex. 115, ARB 41464-41501; Ex. 134, ARB 41668-41720; Ex. 135, ARB 41441-41442; Ex. 136, ARB | 253.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to the Al Haramain Islamic Foundation and its officials in Section V (heading).<br><br>(3) Immaterial for the reasons discussed with respect to the Abdul Rahman Al Rajhi, Saleh al Habdan, and Abdullah Al Misfer in Section X (heading). Plaintiffs' averment concerning the purported amount of money transferred through the individuals' accounts at the Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States.<br><br>(4) Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, | Pls. Ex. 4 at 204:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 118:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Improper Summary Exhibit. *See* Fed. R. Evid. 1006. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 41279-41283. *See also* Ex. 4, Winer Report at 204; Ex. 118, Plaintiffs' Summary Spreadsheet of Al Rajhi Bank Customer Account Transactions (ARB Tranche 21). | carrying out, or financing of the 9/11 Attacks or any other terrorism. *See* ARB Aver. ¶ 147; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.).<br><br>Disputed as ambiguous; vague; conclusory; unsupported by evidence:<br><br>(1) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. | |
| 254 | 180 million SR equates to about $48 million, corresponding to approximately $85 million in 2023 dollars. | 254.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) In addition, immaterial because, of the "about $48 million" averred in this paragraph, Plaintiffs' Averment does not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(3) Plaintiffs' reference to the figure in 2023 U.S. dollars is immaterial, as the relevant period is 1998-2002. | |
| 255 | The scale and value of these transfers clearly indicates that they represented transfers of Suleiman al Rajhi's funds, and not those of his employees. | 255.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>Disputed as conclusory; does not cite supporting evidence: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | |
| | | (1) Plaintiffs cite no evidence for their conclusory assertion that the transfers "clearly" represent transfers of "Suleiman al Rajhi's funds." | |
| 256 | ARB's statements for these accounts include details directly confirms that the accounts were being used to carry out transactions for Suleiman al Rajhi and his charity committee/foundation. *See, e.g.*, Ex. 129, ARB 40860-41153 at 40928, 40931, 40942, 40947, 40966, 40977, 40983, 40987, 40989, 40991, 41019, 41023, 41073, 41074, 41084, 41085, 41141, 41142, and 41143 (Abdul Rahman al Rajhi account documents including internal ARB notations confirming transactions undertaken for Suleiman al Rajhi committee/foundation). | 256. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading). <br> (2) Immaterial for the reasons discussed with respect to Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi in Section IV (heading). <br> (3) Immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). <br> (4) Immaterial for the reasons discussed with respect to Abdul Rahman Al Rajhi for the reasons stated in response to Section X (heading). Abdul Rahman Al Rajhi was never an employee or official of the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). <br><br> <u>Disputed as ambiguous; vague; conclusory; unsupported by evidence:</u> <br><br> (1) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. | |
| 257 | This use of nominee accounts by ARB's Founder and Chairman Suleiman al Rajhi, to distribute funds on his behalf but obscuring his status as the originating party, presents a quintessential money laundering paradigm.    Ex. 4, Winer Report at 154. | 257. <br><br> _Immaterial:_ <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading). <br><br> (2) Immaterial for the reasons discussed with respect to Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi in Section IV (heading). <br><br> _Disputed as conclusory and unsupported by the evidence:_ <br><br> (1) Plaintiffs' characterization regarding the use of "nominee accounts" and their purpose is conclusory and unsupported by evidence. <br><br> (2) Plaintiffs provide no evidence to suggest that the use of nominee accounts obscured Sulaiman bin Abdulaziz al Rajhi's status as the originating party, or that this presents a quintessential money laundering program.  The cited section of the Plaintiffs' Exhibit 4 discusses the SAMA guidelines and FATF recommendations relating to anonymous accounts and accounts where the true identity of the customer is not known. In this instance, the customers were known. | 257. <br><br> _Pls. Ex. 4 at 154:_ <br><br> - Expert is not qualified to offer opinion on Saudi Banking regulations. _See_ Fed. R. Evid. 702. |
| 258 | While the statements for these accounts do not identify the beneficiaries for many (indeed most) of the outgoing transfers, several do include notations | 258. <br><br> _Immaterial:_ | 258. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | showing that they involved transfers to or from AHIF, WAMY, and other entities and individuals closely associated with al Qaeda. *See* Ex. 129, ARB 40860-41153 at 40887 and 41116 (AHIF), 40901 (WAMY). | (1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi in Section IV (heading).<br><br>(3) Plaintiffs' averments concerning Al Haramain Islamic Foundation, Al Haramain Islamic Foundation officials, and WAMY are immaterial for the reasons stated above in response to Section V (heading).<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 215.<br><br>Disputed as controverted by the evidence, misleading, incomplete:<br><br>(1) Plaintiffs' assertion that "AHIF," "WAMY," and "other entities and individuals" were "closely associated with al Qaeda" is controverted by the evidence.<br><br>   - During the relevant period, the Bank held accounts for Al Haramain KSA, which was not designated under any sanctions regime for connections to terrorism until it was designated by the United States in 2008, several years after the 9/11 Attacks. Pls. Ex. 60 (*Treasury Designates Al Haramain Islamic Foundation* (June 19, 2008) (Designation of A Haramain KSA in 2008 and noting designation of Al Haramain branches started in 2002).<br><br>   - Al Haramain KSA was publicly known as a government-licensed charity doing charitable works. ARB Ex. 41 (Ltrs. from Deputy Minister of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-00038586 (stating Al-Haramain works under their | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | supervision). Plaintiffs have no evidence that Al Rajhi Bank knew of any alleged connections between Al Haramain KSA and terrorism when the Bank processed transactions for Al Haramain KSA in the relevant period. Not even any Al Haramain branch was designated before the 9/11 Attacks. *See* Pls. Ex. 60 (*Treasury Designates Al Haramain Islamic Foundation* (June 19, 2008)) (Designating Al Haramain KSA in 2008 and noting designation of Al Haramain branches started in 2002). | |
| | | - At the time of the 2002 designation by the United States of Al Haramain branches outside of Saudi Arabia for connections to terrorism, U.S. Treasury Secretary Paul O'Neill stated that Al Haramain KSA, by contrast, "is dedicated to promoting Islamic teachings." Pls. Ex. 56 (*Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations* (Mar. 11, 2002)). | |
| | | - WAMY has never been designated by the United States as a sponsor of terrorism. ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 165:11-12. | |
| | | - WAMY was adequately licensed by the government of Saudi Arabia. *See* ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545. | |
| | | (2) Plaintiffs have no evidence tracing any transaction made through Al Rajhi Bank to Al Qaeda or to planning, carrying out, or financing any terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI; Pls. Ex. 4 (Winer Rep.) at § 11; *see also* ARB Ex. 4 (Lormel Rep.) at 7 (explaining that FBI investigated CIA intelligence leads | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | concerning Al Rajhi Bank but could not verify or prove any allegation that the Bank provided support to Al Qaeda). | |
| 259 | Further, during the time period of this stunning financial activity through these accounts, Al Misfer was, in addition to his role as an official of Suleiman al Rajhi's charity committee/foundation, also an official of AHIF, serving as head of its Palestine Committee. | 259.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi in Section IV (heading).<br><br>(3) Immaterial as to Abdullah Al Misfer's purported roles for the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and the Palestine Committee of Al Haramain Islamic Foundation where Plaintiffs have no evidence showing that Abdullah Al Misfer was publicly connected to Al Qaeda during this time period.<br><br>(4) In addition, immaterial because the "Palestine Committee" has no nexus to the United States or the 9/11 Attacks.<br><br>Disputed as ambiguous; vague; conclusory; unsupported by evidence:<br><br>(1) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>Disputed as conclusory; controverted by the evidence; misleading:<br><br>(1) Plaintiffs' characterization of financial activity as "stunning" is conclusory and unsupported. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) Plaintiffs' averment is misleading to the extent Plaintiffs contend that Abdallah al Misfer is the same individual as the one with a similar name who allegedly worked for the Sulaiman al Rajhi Foundation. The extent of Plaintiffs' evidence is a press release where an Al-Haramain official had the same first and last name as a SAAR official. There is no mention of Abdullah Al-Misfer's middle name in the article or any other evidence that the SAAR official with the name "Abdullah Ibrahim al Misfer" and the Al Haramain official with the name "Abdullah al Misfer" are the same person. *See* Pls. Ex. 73 (Al Jazirah and Al Minbar articles) (naming an "Abdullah Al Misfer" as an Al-Haramain official); *See* ARB Ex. 85 (Misfer account opening files) at ARB-00041951-52 (one of Abdullah Ibrahim Abdullah Al Misfer's account opening files with his legal name included on his state ID). Plaintiffs have already misidentified two individuals with similar first and last names. *See infra* at ¶¶ 244, 260. | |
| 260 | In addition, Aqil's account records indicate that he received a total of 1,188,000 SR from Abdul Rahman Al Rajhi, equivalent to about $317,000 then and just under $564,000 today. *See* Ex. 115, ARB 41464-41501; Ex. 4, Winer Report at 113. | 260.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading) and ¶¶ 227-35.<br><br>(3) Even if credited, Plaintiffs' statement concerning the purported amount of money transferred through Aqil's accounts at the Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States. | 260.<br><br>Pls. Ex. 4 at 113:<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (4) In addition, immaterial because, of the transactions averred in this paragraph, Plaintiffs' Averment does not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(5) Immaterial as to Abdul Rahman Al Rajhi for the reasons stated in response to Section X (heading). Abdul Rahman Al Rajhi was never an employee or agent of the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). | |
| 261 | The Aqil 5920 Account at ARB also facilitated withdrawals to Abdul Rahman Al Rajhi in an even greater amount during this period, totalling 2,495,917 SR, equivalent to more than $665,000 then, and approximately $1.18 million today. *See* Ex. 115, ARB-00041464-41501; Ex. 4, Winer Report at 113. | 261.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Immaterial as to Aqil al Aqil for the reasons stated in response to Section IX (heading) and ¶¶ 227-35.<br><br>(3) In addition, immaterial because, of the "2,495,917 SR" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(4) Immaterial as to Abdul Rahman Al Rajhi for the reasons stated in response to Section X (heading). Abdul Rahman Al Rajhi was never an employee or agent of the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank.").<br><br>(5) Additionally, Plaintiffs' statement concerning the purported amount of money transferred through Aqil's accounts at the | 261.<br><br>Pls. Ex. 4 at 113:<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States.<br><br>(6) Immaterial as to "approximately $1.18 million today" because the relevant period is 1998-2002. | |
| 262 | Documents obtained from other parties in discovery also show that Suleiman al Rajhi frequently issued checks for large sums to officials of his charity committee/foundation, through ARB accounts, which those officials could then simply cash and distribute to unidentified recipients. *See* Ex. 4, Winer Report at 120-22. | 262.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Immaterial with respect to Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation as stated in response to Section IV (heading).<br><br>(3) Even if credited, Plaintiffs' averment is immaterial because Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); ARB Aver. ¶ 147. Moreover, Plaintiffs have no evidence that any Al Rajhi Bank official or principal or Al Rajhi family member had any relationship with members of Al Qaeda, the 9/11 hijackers, or any other terrorists. *See* ARB Aver. ¶ 7.<br><br><u>Disputed as ambiguous; vague; conclusory; unsupported by evidence:</u><br><br>(1) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. | 262.<br><br><u>Pls. Ex 4, p. 120-22:</u><br><br> - Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay (NL documents). *See* Fed. R. Evid. 802.<br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing charity work and routine banking services that have no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 263 | These include, by way of example, the following (*see* Ex. 4, Winer Report at 120-22): January 12, 1999 payment by ARB check to Abdullah bin Ibrahim al Misfer, 20,000, Account 6006, Currency S.R. Payor: Suleiman al Raji (listed on document as "Shiekh Suleiman al Abdel Aziz al Rajhi.")[3] February 6, 1999 payment by ARB check to Abdullah bin Ibrahim al Misfer, 5000, with purpose indicated in handwriting, "to be handed to propagator Qassim Mohamed from Mali." Account 6006, Currency S.R. Payor: Suleiman al Raji.[4] February 6, 1999 payment by ARB check to Abdullah bin Ibrahim al Misfer, 9375, with | 263. Immaterial: (1) Immaterial for the reasons stated above in response to Section VIII (heading). (2) Immaterial for the reasons discussed with respect to Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi in Section IV (heading). (3) Immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). (4) Immaterial with respect to Abdullah al Misfer for the reasons discussed in response to Section X (heading). (5) Plaintiffs' averments concerning Abdullah al Misfer's account transactions, even if credited, do not show that those accounts were being used for terrorist financing, or that Al Rajhi Bank had reason to know that that they were being used for that purported purpose. Plaintiffs have no evidence showing that Al Misfer was publicly connected with Al Qaeda when the Bank processed transactions through those accounts. (6) Even if credited, Plaintiffs' averment is immaterial because Plaintiffs do not trace any transaction from accounts at Al | 263. Pls. Ex 4, p. 120-22: - Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay (NL documents). *See* Fed. R. Evid. 802. - Should be excluded under Rule 403 for unfair prejudice for discussing charity work and routine banking services that have no link to Al Qaeda. *See* Fed. R. Evid. 403. Pls. Ex. 203: - Lacks authentication. *See* Fed. R. Evid. 901. |

---

3   NL 0010327.

4   NL 0010348.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | purpose indicated in handwriting, "received for the benefit of propagators in Sierra Leone." Account 6006 Currency S.R. Payor: Suleiman al Raji.[5]<br><br>February 6, 1999 payment by ARB check to Abdullah bin Ibrahim al Misfer, 72,000, with handwritten note, "I received the check - Abdullah Ibrahim al Misfer," Account 6006 Currency S.R. Payor: Suleiman al Raji.[6]<br><br>April 5, 1999 payment by ARB check to Abdullah bin Ibrahim al Misfer, 23,375, with handwritten note, "The check was received - to be handed to Brother Abdullah al Misfer." Account 6006, | Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); ARB Aver. ¶ 147. Moreover, Plaintiffs have no evidence that any Al Rajhi Bank official or principal or Al Rajhi family member had any relationship with members of Al Qaeda, the 9/11 hijackers, or any other terrorists. *See* ARB Aver. ¶ 7.<br><br>(7) Plaintiffs' statement concerning the purported amount of money transferred through accounts at the Bank does not show that Al Rajhi Bank took any intentional, tortious conduct expressly directed at the United States. | |

---

5   NL 0010349.

6   NL 0010350.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Currency S.R. Payor: Suleiman al Raji.[7] | | |
| | May 22, 1999 payment by ARB check to Abdullah bin Ibrahim al Misfer, 235,000, with handwritten note, "Accounts Division - I handed a copy to Omar - hand the check to Brother al Misfer." Account 6006, Currency S.R. Payor: Suleiman al Raji.[8] | | |
| | [Date Truncated Number] 1999, payment by ARB check to Abdullah bin Ibrahim al Misfer, 104000, with handwritten note, "the check was received - to be handed to Brother Abdullah 8-11/13." Account 6006, Currency S.R. Payor: Suleiman al Raji.[9] | | |
| | *See* Ex. 203. | | |

7   NL 0010145.

8   NL 0010423.

9   NL 0010194.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 264 | As discussed below, throughout the period ARB facilitated international banking activities for its Founder and Chairman Suleiman al Rajhi, his committee/foundation, and the officials of his committee/foundation, they were deeply involved in channeling resources to al Qaeda and affiliated anti-American jihadists, including through ARB's Payable Through account at Chase Manhattan bank. *See infra* at § IX-X. | 264.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Immaterial for the reasons discussed with respect to Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi in Section IV (heading).<br><br>(3) Immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>(4) Immaterial with respect to Al Rajhi Bank's payable-through account as stated in response to Section XI (heading).<br><br>(5) Immaterial because Plaintiffs do not show that any money transferred through Al Rajhi Bank's U.S. correspondent account was used to finance terrorism.<br><br>(6) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32.<br><br>Disputed as ambiguous; vague; conclusory; unsupported by evidence:<br><br>(1) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. | |
| | | <u>Disputed as conclusory; misleading; controverted by the evidence:</u> | |
| | | (1) Plaintiffs' statements as to individuals "deeply involved in channeling resources to al Qaeda and affiliated anti-American jihadists" is conclusory and unsupported by evidence. | |
| | | (2) Abdullah Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank testified that his father, Sulaiman bin Abdulaziz Al Rajhi, had never been a supporter of al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported al Qaeda, Osama Bin Laden or terrorism in any form. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 354:17-355:8. | |
| 265 | ARB also maintained and operated accounts for seven of the 9/11 hijackers, as well as Sheikh Soliman Nassir Abdullah al Alwan, a radical cleric who recruited several of the 9/11 hijackers. | 265. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading). <br><br> (2) Immaterial with respect to the hijackers for the reasons stated in response to Section XIII (heading). <br><br> (3) Immaterial where none of the hijackers, including those who held accounts at the Bank, was designated before the 9/11 Attacks. ARB Aver. ¶ 95. <br><br> (4) Immaterial because the Bank had no reason to be suspicious of the hijackers who held accounts at the Bank before the 9/11 Attacks. *See, e.g.*, Pls. Ex. 44 (Staff Monograph) at 140-41 ("No one at SunTrust or any other financial institution thought, or had any reason to think, that the hijackers were criminals, let alone | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | terrorists bent on mass murder, and no financial Institution had any reason to report their behavior to the government."). | |

(5) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21.

Disputed as vague and conclusory:

(1) Plaintiffs' averment as to "several of the 9/11 hijackers" is vague and cites to no supporting evidence.

(2) Plaintiffs' averment cites to no evidence for, and is conclusory as to, its assertion that Sheikh Soliman Nassir Abdullah Al Alwan is a "radical cleric," or that he "recruited several of the 9/11 hijackers."

Disputed as controverted by the evidence and misleading:

(1) Plaintiffs' assertions are further misleading as only one of the hijackers had transactions in his accounts after November 2000. *See* ARB Ex. 79 (Abdulaziz Al-Omari statement of account) at ARB-0000004; ARB Ex. 80 (Wael Shehri statement of account) at ARB-00000960-973; ARB Ex. 81 (Saeed al Ghamdi statement of account) at ARB-00000850-855); ARB Ex. 82 (Saeed al Ghamdi Statement of account) at ARB-00000856-857; ARB Ex. 83 (Majed Moqed statement of account) at ARB-00000836-840; ARB Ex. 84 (Ahmed al Ghamdi statement of account) at ARB-00000811-814.

(2) Plaintiffs' averment is misleading since Abdulaziz al Omari, the only hijacker to make any transactions through his Al Rajhi Bank account while in the United States, conducted just two transactions totaling SAR 875.59, or U.S. $233.43. ARB Ex. 79

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (Abdulaziz Al-Omari Statement of Account) at ARB-0000004 (showing two transactions after Al-Omari's June 29, 2001 arrival in the USA: a credit of 706.86 SAR and a debit of 168.76 SAR). | |
| | | (3) The Omari statement of accounts controvert Plaintiffs' assertions to the Second Circuit (*see* Pls. 2d Cir. Br. 46), that "September 11th hijacker al Omari . . . received a wire transfer on September 7, 2001 from ARB," and that "Mohammed Atta himself made a transfer to this account held by Omari." Omari did not receive a wire transfer through the Bank on September 7, 2001, and Atta did not make any transfer to Omari through the Bank during the relevant period. ARB Ex. 79 (Abdulaziz Al-Omari Statement of Account) at ARB-0000004 | |
| | | (4) Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); ARB Aver. ¶ 147. Moreover, Plaintiffs have no evidence that any Al Rajhi Bank official or principal or Al Rajhi family member had any relationship with members of Al Qaeda, the 9/11 hijackers, or any other terrorists. *See* ARB Aver. ¶ 7. | |
| 266 | Al Alwan opened six separate accounts in the fall of 2000; three accounts on September 12, and another three accounts on October 9. | <u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan.<br><br>Disputed as conclusory; does not cite evidence:<br><br>(1) Plaintiffs' averment cites to no evidence for its assertion as to Sheikh Soliman Nassir Abdullah al Alwan's purported accounts at the Bank. | |
| 267 | The al Alwan accounts were not within the scope of jurisdictional discovery - Plaintiffs know of them only as a result of incidental references in post-9/11 communications with SAMA, indicating that they were the subject of interest after 9/11. | 267.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21.<br><br>(3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan.<br><br>(4) Plaintiffs' characterization of Al Alwan's accounts as purportedly "of interest," even if credited, does not show that his accounts at Al Rajhi Bank were ever found to have been related to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism.<br><br>Disputed as conclusory; does not cite evidence:<br><br>(1) Plaintiffs' averment cites to no evidence for its assertion as to Sheikh Soliman Nassir Abdullah al Alwan's purported accounts at the Bank. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as controverted by the evidence; misleading: | |
| | | (1) Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); ARB Aver. ¶ 147. Moreover, Plaintiffs have no evidence that any Al Rajhi Bank official or principal or Al Rajhi family member had any relationship with members of Al Qaeda, the 9/11 hijackers, or any other terrorists. *See* ARB Aver. ¶ 7. | |
| | | (2) The reporting of the al Alwan accounts by Al Rajhi Bank to SAMA directly undermines Plaintiffs' point that the Bank was turning a blind eye to money laundering and terrorism financing, the context of the document is that the accounts are being sent to SAMA. *See* ARB Ex. 78 (Jan. 26, 2003 Fax to SAMA) ARB-00039724-27). | |
| | | Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | |
| 268 | While Plaintiffs did not obtain discovery as to the particular usage of those accounts, the opening of six separate accounts by an individual in such a concentrated period is itself a red flag for money laundering and criminal activity. *See infra* at ^ 301 (discussing money laundering red flags). | 268. Immaterial: (1) Immaterial for the reasons stated above in response to Section VIII (heading). (2) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan. <u>Disputed as conclusory:</u> (1) Plaintiffs' characterization of Al Alwan's account activity as a "red flag for money laundering and criminal activity" is an improper legal conclusion unsupported by evidence. <u>Disputed as controverted by the evidence; misleading:</u> (1) In particular, to the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 225, 334, 337. (2) In jurisdictional discovery, the Bank produced 508 statements of accounts, including 440 charity customer accounts. *See* Erb Decl. ¶ 5. Plaintiffs have no evidence that any of these account statements shows any transaction that has been traced to Al Qaeda or to the financing, planning, or carrying out of any terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI; Pls. Ex. 4 (Winer Rep.) at § 11. Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | |
| 269 | As late as 2003, reporting indicates that al Alwan spewed violent anti-American rhetoric to an audience of hundreds *at the Al Rajhi Mosque*, funded and named for Suleiman al Rajhi, telling | 269. <u>Immaterial:</u> (1) Immaterial for the reasons stated above in response to Section VIII (heading). | No exhibit number, but reliance on Los Angeles Times article is inadmissible hearsay. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | listeners "America and their allies, hell is their destination for the crimes they have committed," and calling them "invaders and colonists." *"Young Saudis Eager to Battle Americans,"* Kim Murphy, Los Angeles Times, April 5, 2003. | (2) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21.<br><br>(3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan.<br><br>(4) Plaintiffs' averment as to Al Alwan's purported statements, even if credited, is immaterial where the statements post-date the opening of his accounts and the date of the article cited by Plaintiffs (April 5, 2003) post-dates his reporting to SAMA by ARB (January 26, 2003). *See* ARB Ex. 78 (Jan. 26, 2003 Fax to SAMA) ARB-00039724-27.<br><br>(5) Plaintiffs' averment as to Al Rajhi Mosque is immaterial to show intentional, tortious act on behalf of Al Rajhi Bank or Sulaiman bin Abdulaziz Al Rajhi. Plaintiffs provide no evidence showing that Sulaiman bin Abdulaziz Al Rajhi or Al Rajhi Bank controlled who spoke at the mosque, or contributed further than potentially providing funds for the mosque's construction. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 41:5-18 (conceding that Sulaiman bin Abdulaziz al Rajhi may have only provided the funds for the mosque's construction and may also have no control over who may preach there).<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | |
| 270 | Osama bin Laden himself opened an account at ARB in 1991, and | 270. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | the limited documents provided by ARB indicate that he held as many as four accounts at ARB in total, including one that was used to hold U.S. dollars. | <u>Immaterial:</u><br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) The undisputed, admissible evidence shows that any accounts at Al Rajhi Bank held in the name of Osama bin Laden had been frozen since at least 1994, when the Saudi government "fr[oz]e his financial assets and revoke[d] his citizenship. Pls. Ex. 40 (9/11 Comm'n. Rep.) at 57; *see also* ARB Aver. ¶ 4; ARB Ex. 8 (Ltr. from Al Rajhi Bank to SAMA, Nov. 16, 2002) at ARB-00039559 (showing all Bin Laden accounts "blocked"). During the relevant period, Bin Laden thus had no access to his accounts or assets at the Bank, and he could not (and did not) make any transfers or receive any funds through his accounts at the Bank. ARB Aver. ¶ 93.<br><br>(3) Plaintiffs' own experts concede that Bin Laden did not use, and could not have used, his accounts at all after his citizenship was revoked and his assets were frozen in 1994. *See* ARB. Ex 28 (Winer Dep. Tr. and Errata) at 53:5-55:2; ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 17:1-25; 208:15-18, 209:2-4.<br><br>(4) Moreover, Bin Laden was not designated when he opened his accounts at Al Rajhi Bank in 1991. *See* ARB Aver. ¶ 36. Indeed, he was not designated until 1998, years after his Al Rajhi Bank accounts were frozen. *See* ARB Ex. 73 (Exec. Order No. 13,099, 63 Fed. Reg. 45,167 (Aug. 20, 1998)).<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 271 | The fact that bin Laden chose ARB to open an account at ARB in 1991 is significant, as it coincided with bin Laden's early efforts to build al Qaeda into a global terrorist organization, and bin Laden was by that time already advocating for jihad against the United States. | 271.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading) and ¶ 270.<br><br>(2) In addition, Plaintiffs' assertion that Bin Laden's account openings "coincided" with his early efforts to build Al Qaeda into a global terrorist organization, even if credited, is immaterial to show any knowledge or intentional, tortious act by the Bank.<br><br>Disputed as conclusory; does not cite evidence:<br><br>(1) Plaintiffs' characterization of the timing of Bin Laden's account opening as "significant" is conclusory and unsupported by evidence.<br><br>(2) Plaintiffs do not provide evidence for their assertion that "bin Laden was by that time already advocating for jihad against the United States," or that, even if this were true, the Bank would have been aware of such advocacy.<br><br>Disputed as controverted by the evidence; misleading:<br><br>(1) Plaintiffs' averment that "[t]he fact that bin Laden chose ARB to open an account . . . in 1991 is significant" is misleading where Plaintiffs put forth no evidence that Bin Laden would have chosen Al Rajhi Bank for any reason other than the fact that Al Rajhi Bank was the largest fully Sharia-compliant Bank in Saudi Arabia during the relevant time period.<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, |  |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | for the reasons discussed above in response to the averments in Section III. | |
| 272 | Moreover, bin Laden's status as a militant jihadist was already well known in Saudi Arabia and to ARB and its principals at that time, including to Suleiman al Rajhi, who had provided financial support to bin Laden during the jihad against the Soviet Union. | 272. <br><br> _Immaterial:_ <br><br> (1) Immaterial for the reasons stated above in response to Section VIII (heading) and ¶ 270. <br><br> (2) Plaintiffs' averments as to support for the Afghan jihad are unrelated to the 9/11 Attacks and are immaterial to show that Al Rajhi Bank expressly directed intentional, tortious conduct at the United States. _See_ ARB Ex. 1 (Dean Rep.) at 10-12, 14-16 (explaining that "alleged support for armed resistance against Russian and Russian-backed forces in Afghanistan" does not equate to support for Al Qaeda, much less support for "al-Qaeda's terrorism against civilians in the United States"). <br><br> _Disputed as conclusory; does not cite to supporting evidence:_ <br><br> (1) Plaintiffs provide no evidence in support of their conclusory averment that Al Rajhi Bank and "its principals," including Sulaiman bin Abdulaziz al Rajhi's "provided financial support to bin Laden during the jihad against the Soviet Union." <br><br> _Disputed as controverted by the evidence; misleading:_ <br><br> (1) No Al Rajhi Bank officer or director has ever supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form. _See_ Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 355:4-8. <br><br> (2) In particular, Sulaiman bin Abdulaziz Al Rajhi, a founder of the Bank, and the Bank's Chairman during the relevant | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | period, and Abdullah bin Sulaiman Al Rajhi, the Bank's current Chairman, who served as the Bank's General Manager and Managing Director during the relevant period have never met Osama bin Laden or supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism at all. See Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 351:3-352:2, 352:16-353:5, 354:17-355:3 and Errata at 351:5, 351:19 (stating that to the best of his knowledge Sulaiman bin Abdulaziz Al Rajhi has never supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | **Section IX.** | |
| IX. | **ARB Broadly Violated International AML, CFT, and KYC Standards (¶¶ 273-389)** | **IX. (heading)**<br><br>Disputed as conclusory; not supported by the evidence:<br><br>(1) This section heading is an unsupported legal conclusion to which no response is required.<br><br>(2) Plaintiffs' reference to "broadly violated" is vague, conclusory, and unsupported by the evidence.<br><br>Immaterial:<br><br>Plaintiffs' averments in Section IX are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.<br><br>(1) The averments in Section IX, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its officers or directors supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States.<br><br>(2) Plaintiffs' averments that Al Rajhi Bank did not follow FATF recommendations, even if credited, are immaterial because Al Rajhi Bank had no obligation to comply with FATF | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | recommendations. *See* ARB Ex. 3 (Pasley Rep.) at 12 ("FATF recommendations are not the appropriate standard by which to evaluate the Bank; Saudi banking law is."); *see also* ARB Ex. 28 (Winer Dep. Tr.) at 94:16-19 (agreeing that "the FATF recommendations were designed as recommendations for implementation at the state level").<br><br>– The FATF Guidelines are a set of recommendations, rather than binding regulations, which are considered to be the "gold standard" of banking best practices. ARB Ex. 3 (Pasley Rep.) at 4, 12. No country or bank implements all the recommendations. *See id.* at 13.<br><br>– Further, before the 9/11 Attacks, international banking standards focused on the prevention of money laundering. *See* ARB Ex. 2 (Hobayb Rep.) at 6; *see also* ARB Ex. 63 (History of the Financial Action Task Force) ("In [October] 2001, the FATF expanded its mandate to [. . .] combat terrorist financing."); ARB Ex. 3 (Pasley Rep.) at 12 (discussing a shift into focus to combatting terrorist financing following the 9/11 Attacks); ARB Ex. 28 (Winer Dep. Tr.) at 110:15-18 ("I agree that in 2001, the FATF gave much more explicit guidance on how to address terrorist finance because of what happened with the 9/11 attacks.").<br><br>(3) Plaintiffs' averments that the Bank repeatedly ignored red flags, even if credited, does not show intentional tortious conduct or conduct by the Bank aimed at the United States because Plaintiffs fail to show a single "red flag" transaction through Al Rajhi Bank involving Al Qaeda or the 9/11 Attacks or other terrorism against the United States, or that the Bank handled any such "red flags" with knowledge or intent to support Al Qaeda or support the | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States.<br><br>(4) The number of accounts held by Al Haramain-KSA and IIRO KSA do not show any intentional tortious conduct by the Bank because the Bank understood the different charity accounts to be dedicated to different charitable projects, and at the time, SAMA did not prohibit the number of accounts a charity could hold. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 82:2-8 and Errata at 82:2; *see also* ARB Ex. 2 (Hobayb Rep.) at 24-25.<br><br>– The Bank's chairman testified that "it's not unusual to have that big number of accounts for a charity." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 79:15-18.<br><br>– In fact, post-9/11, SAMA instructed banks to consolidate all of a charity's "secondary accounts" under a main, primary account, but still did not restrict the number of secondary accounts a single charity could have at one bank. *See* ARB Ex. 2 (Hobayb Rep.) at 24-25.<br><br>(5) None of Plaintiffs' averments regarding transactions through charity officials' accounts shows the Bank's purported intent to support Al Qaeda, the 9/11 Attacks or other terrorism against the United States, when none of the charity officials or charities they served was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* ARB Ex. 3 (Pasley Rep.) at 6 (noting that Plaintiffs' experts only identify "post-9/11 sanctions designations against NGOs and individuals for alleged ties to terrorism and Al Qaeda"); *see also, e.g.*, Pls. Ex. 4 (Winer Rep.) at § 9 (stating he reviewed customer information files, but failing to identify any connections between any customer and terrorism before 9/11). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | – Plaintiffs have no evidence that Al Rajhi Bank processed any transaction knowing that its customer or the transaction had any connection to Al Qaeda, the 9/11 Attacks, or terrorism in any form, including against the United States. *See* ARB Aver. ¶ 38; *see also* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 351:3-353:10, 354:17-355:8; 356:4-10 (testifying that neither he nor his father (the Bank's former Chairman) knew or supported bin Laden, and that no one at the Bank supported bin Laden, Al Qaeda, or terrorism in any form); ARB Ex. 3 (Pasley Rep.) at 16 ("Given my experience with banking practices and regulations pre-9/11, I find it is very plausible that a bank would not know if its NGO customer accounts were being used for terrorism financing."); *see also generally* Pls. Aver. § VIII (failing to put forward any evidence that the Bank processed any transaction knowing that its customer had any connection to Al Qaeda or terrorism, including terrorism against the United States).<br><br>(6) Plaintiffs do not cite any evidence showing that any cash transactions through the accounts of charity officials and charities ever reached Al Qaeda or supported the 9/11 Attacks or other terrorism against the United States.<br><br>– Saudi Arabia was, and remains, a cash-based society, and large cash deposits were not unusual during the relevant period. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 240:2-20, 247:7-10; *see also* ARB Ex. 2 (Hobayb Rep.) at 30 (explaining the prevalence of cash transactions in Saudi society during the 1990s, especially for charities and their officials).<br><br>– In particular, charities like Al Haramain KSA and IIRO KSA routinely handled countless cash donations in connection with their worldwide humanitarian effort. ARB Ex. 2 (Hobayb Rep.) at 30 ("For Saudi banking auditors such as myself, and | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | other individuals familiar with Saudi society, large cash transactions in accounts associated with charities would not have raised alarms before 9/11."); *id.* (explaining that before 9/11, charities in Saudi Arabia often provided their officials with charity funds to disburse).<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' averment that Al Rajhi Bank "broadly violated AML, CFT, and KYC standards" is controverted by evidence.<br><br>   – Plaintiffs have no evidence that SAMA's audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations, including those related to antimoney laundering. *See* ARB Ex. 3 (Pasley Rep.) at 11 ("As far as I have seen, SAMA never determined that the Bank was materially noncompliant with SAMA's requirements."); ARB Ex. 2 (Hobayb Rep.) at 4 (noting that SAMA was a "rigorous regulator" that subjected Saudi banks to "robust anti-money laundering controls on par with global standards."); Pls. Ex. 184 (Hobayb Dep. Tr.) at 36:12-13 (testifying that Saudi "banks are required to comply with [their] regulator [SAMA] and its regulations.").<br><br>   – Plaintiffs have no evidence that routine internal or external audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations or the Bank's internal policies. *See* ARB Ex. 2 (Hobayb Rep.) at 18 ("I have not seen anything to indicate that Al Rajhi Bank . . . was noncompliant with auditing and regulatory standards and procedures."); *id.* at 20 (noting "no evidence has been presented that these external auditors flagged noncompliance by Al Rajhi Bank"); ARB Ex. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | 3 (Pasley Rep.) at 9 ("The fact that these audits failed to reveal significant issues is evident from the Bank's Annual Reports, which are public, and which discuss the audits."); *id.* ("Presumably — given no evidence to the contrary — these audits did not uncover any significant noncompliance."); *see also, e.g.*, Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Rep.) at PDF p. 72; Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Rep.) at PDF p. 77; Pls. Ex. 8 (2000 Al Rajhi Bank Ann. Rep.) at PDF p. 42; ARB Ex. 16 (2001 Al Rajhi Bank Ann. Rep.) at PDF p. 74 (external auditors' reports for 1998-2001 identifying no noncompliance by the Bank with its internal policies or local law).<br><br>(2) Al Rajhi Bank was routinely audited by internal and external auditors and SAMA. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 112:2-5, 113:13-114:4 and Errata at 112:5 (testifying that the Bank regularly audited its branches and that SAMA conducted "surprise and short-notice audits" as well as "thematic audits" for a "particular area of interest"); ARB Ex. 2 (Hobayb Rep.) at 5 (discussing variety of tools used by SAMA, "including self-reporting, document collection, special inspections into topics under SAMA's authorities, full-fledged inspections, as well as inspections of individuals or accounts the purpose of which were not disclosed to the bank").<br><br>   – In particular, Al Rajhi Bank had an internal audit control system and regularly conducted internal audits to ensure its policies and procedures were being implemented. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 104:20-105:12, 105:18-106:3 (explaining that Al Rajhi Bank's internal control system included regular audits); *see also, e.g.*, ARB Ex. 19 (Al Rajhi Bank Internal Audit Plan for FY 1999) at PDF p. 7; ARB Ex. 20 (Al Rajhi Bank Internal Audit Plan for FY 2001) at PDF pp. 11-12 (including action items to examine and evaluate the Bank's internal control system; verify the Bank's compliance | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | with its policies and procedures; evaluate the Bank's supervisory and operational controls; conduct audits of the Bank's branches; and evaluate corrective procedures taken); ARB Ex. 3 (Pasley Rep.) at 9 (explaining that the Bank's internal audit plans "show very comprehensive procedures for audits to protect the Bank from violations of laws, rules and regulations and to ensure the proper operation of its branches"); *id*. (concluding that the Bank's "comprehensive" internal audit plans "illustrate that the Bank had procedures for preventing and detecting noncompliance with internal banking policies"); ARB Ex. 2 (Hobayb Rep.) at 18-19 (discussing the "Internal Audit Committee" which "oversaw regular audits of the Bank" and "continuously monitored the Bank's compliance with relevant internal and governmental rules and procedures").<br><br>– Following SAMA guidelines, Al Rajhi Bank had an AML Unit focused on developing AML procedures and monitoring AML compliance across the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 106:6-9 and Errata at 106:6-8; Pls. Ex. 189 (Al Rajhi Bank AML Guide) at ARB-00000736 (explaining that AML Unit "[u]pdate[d] anti-money laundering policies and procedures" in accordance with "developments in the methods, processes, and activities that may be used in money laundering activity."); *see also* ARB Ex. 2 (Hobayb Rep.) at 20 (explaining AML Unit's role in preventing money laundering).<br><br>– The Bank's Internal Audit Department, which functioned independently from the Bank's executive and operational functions, evaluated and enforced adherence to internal policies and procedures, and applicable law, across the Bank. *See* ARB Ex. 17 (Al Rajhi Bank General Policies and Authorizations Guide) at 3-4, 8; *see also, e.g.*, ARB Ex. 19 (Al | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Rajhi Bank Internal Audit Plan for FY 1999); ARB Ex. 20 (Al Rajhi Bank Internal Audit Plan for FY 2001); ARB Ex. 2 (Hobayb Report) at 18 ("[T]he audit committee continuously monitored the Bank's compliance with relevant internal and governmental rules and procedures. The audit committee also considered the reports of external auditors and discussed those reports with them."). | |
| | | – Further, as required by Saudi law, Al Rajhi Bank had two independent external auditors, whose responsibilities included "examin[ing] the bank's policies, procedures and internal control systems aimed at combating money laundering activities" and "test[ing] the enforcement of such policies, and procedures." *See* Pls. Ex. 58 (1995 SAMA AML Guidelines) at PDF p. 14; *see also* ARB Ex. 22 (Royal Decree No. M/5 of June 11, 1966)) at 11-12 (requiring Saudi banks to have two external auditors); Pls. Ex. 3 (Galloway Dep. Tr.) at 109:16-110:5, 345:19-23 and Errata at 109:18, 109:21-22, 110:4, 345:22; *see also, e.g.*, Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Rep.) at PDF p. 77 (external auditors' report signed by Al Rashed Certified Public Accounts and Al Juriad & Company (Member of PricewaterhouseCoopers)). | |
| | | – Al Rajhi Bank had "zero tolerance for any deviations" from the Bank's policies and applicable law. Pls. Ex. 3 (Galloway Dep. Tr.) at 105:18-106:3. If any audit or SAMA inspection uncovered any such "deviations," the deviating branches were required to take "corrective action" within a "time-bound window." *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 105:18-106:3; *see also* ARB Ex. 21 (Al Rajhi Bank Authorities of the Audit Committee Manual) at ¶ 27 (stating that the "Audit Committee discusses the external auditors' reports with them, whether their audit has revealed no violations of the Banking Control Law or the other laws and regulations, their certificates on the | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | audit of the provision for doubtful debts, and their conclusions regarding the adequacy of this provision."). | |
| 273 | ARB extensively violated international AML, CFT, and KYC standards, as well as SAMA guidelines and ARB's own (nominal) protocols, in relation to its opening, maintenance, and operation of accounts of al Qaeda's charity fronts, financial facilitators, and Suleiman al Rajhi's own "charity" committee/foundation and its employees. Ex. 4, Winer Report at 130-203. | 273. <br><br> <u>Immaterial for the reasons discussed above in response to Section IX (heading).</u> <br><br> <u>Disputed as conclusory and vague:</u> <br><br> (1) Plaintiffs' assertion that Al Rajhi Bank "extensively violated" AML, CFT, and KYC standards is vague and conclusory and does not cite to supporting evidence. <br><br> (2) Plaintiffs' characterization of "al Qaeda's charity fronts" and "financial facilitators" also are vague and conclusory. Plaintiffs do not identify any entities or individuals to whom these terms purportedly apply. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) Plaintiffs' averment that Al Rajhi Bank "extensively violated international AML, CFT, and KYC standards, as well as SAMA guidelines and ARB's own (nominal) protocols" is controverted by the evidence for the reasons discussed above in Section IX (heading). <br><br> (2) To the extent that Plaintiffs aver that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was not actually a charitable organization, that is controverted by evidence supporting that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was licensed to operate and actually carried out charitable works. <br><br> – In 2000, Sulaiman bin Abdulaziz Al Rajhi acquired a license to create a charity foundation, the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, which allowed him to: (1) raise | 273. <br><br> <u>Pls. Ex. 4, p. 130-203:</u> <br><br> - Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | money for charity by collecting donations from others, and (1) disburse those funds to charitable causes. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 257:9-258:11 and Errata at 257:12-13, 257:16, 257:18.<br><br>– Although he has tried to never tout his philanthropy, Sulaiman bin Abdulaziz Al Rajhi has been reported to be one of the most generous people in the world. *See* ARB Ex. 37 ("20 Most Generous People in the World"). | |
| 274 | In carrying out financial transactions for those al Qaeda partners, ARB consistently ignored obvious red flags indicative of money laundering, terrorist financing, and other serious crimes, again in violation of international standards and other obligations ARB was required to follow. Ex. 4, Winer Report at 130-203. | 274.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as conclusory and vague:<br><br>(1) Plaintiffs' statements that Al Rajhi Bank "consistently ignored" red flags and Plaintiffs' characterization of those "red flags" as "obvious" are vague and conclusory and Plaintiffs do not cite evidence supporting those assertions.<br><br>(2) Plaintiffs' statement regarding "al Qaeda partners" also is vague and conclusory. Plaintiffs do not identify any specific entity or individual to whom these terms apply.<br><br>(3) Plaintiffs' statement regarding "other obligations" also is vague and conclusory. Plaintiffs do not identify any specific obligations.<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' averment that Al Rajhi Bank "consistently ignored obvious red flags indicative of money laundering, terrorist financing, and other serious crimes, again in violation of international standards and other obligations ARB was required to | 274.<br><br>Pls. Ex. 4, p. 130-203:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | follow" is controverted by evidence as discussed above in response to Section IX (heading). | |
| 275 | Viewed collectively and in light of the other available evidence, ARB's treatment of these accounts and customers indicates that ARB knew that its accounts were being used to launder funds for al Qaeda and associated terrorists, and knowingly afforded al Qaeda's principal sponsors and financial facilitators unfettered license to use their accounts to engage in highly irregular transactions and activities, thus facilitating al Qaeda's access to the global financial system in ways that would not have been possible via accounts at other banks. | 275.<br><br>Disputed as unsupported by evidence; does not cite supporting evidence:<br><br>(1) Plaintiffs' averment is an unsupported legal conclusion to which no response is required.<br><br>(2) Plaintiffs' averment is unsupported by the evidence because Plaintiffs do not trace any funds from accounts at Al Rajhi Bank to Al Qaeda or the 9/11 Attacks.<br><br>(3) Further, Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know, before the 9/11 Attacks, that any individual or charity customer that held accounts at Al Rajhi Bank during the relevant period had any connection to Al Qaeda, the 9/11 Attacks, or terrorism. | |
| 276 | As a corollary, the manner in which the accounts were used by al Qaeda's principal sponsors and financial facilitators shows that they had absolute confidence that ARB would not report their highly irregular financial activities to regulators or authorities, and that they viewed ARB to be a trusted partner. *See* Ex. 9, *Funding Islamic Extremist Movements: The Role of Islamic Financial* | 276.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and Section VIII (heading).<br><br>(2) In addition, immaterial because the purported mental state of "al Qaeda's principal sponsors and financial facilitators" is not attributable to the Bank and does not show that the Bank expressly aimed any intentional, tortious conduct at the United States. | 276.<br><br>Pls. Ex. 9:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *Institutions*, CIA_000720-804 at 736 (al Qaeda's choice of banks based on "personal contacts at the banks and security concerns."); *id.* at 746 ("Islamic militants similarly bank with financial institutions that provide assurance that their deposits and financial activities will not be scrutinized by government or enforcement authorities."). | (3) In addition, immaterial because, even if credited, Plaintiffs' averments do not trace any funds from accounts at Al Rajhi Bank to Al Qaeda or the 9/11 Attacks and do not show intentional, tortious conduct by the Bank expressly aimed at the United States.<br><br>(4) The averment that Al Rajhi Bank provided financial services to "al Qaeda's principal sponsors and financial facilitators" is also immaterial because, even if credited, it does not show that the Bank had knowledge of any customers' alleged affiliations with terrorism, or any customers' alleged bad acts.<br><br>Disputed as vague; conclusory; does not cite supporting evidence:<br><br>(1) Plaintiffs' averment that "al Qaeda's principal sponsors and financial facilitators . . . had absolute confidence that ARB would not report their highly irregular financial activities to regulators or authorities, and that they viewed ARB to be a trusted partner" is riddled with conclusory, vague, and undefined terms and is a legal conclusion to which no response is required.<br><br>(2) The source on which Plaintiffs rely does not support Plaintiffs' conclusory averment. Specifically, the source does not state that "al Qaeda's principal sponsors and financial facilitators . . . had absolute confidence that ARB would not report their highly irregular financial activities to regulators or authorities, and that they viewed ARB to be a trusted partner."<br><br>    – Even if admissible, the cited source does not support Plaintiffs' averment, because it acknowledges that Al Rajhi Bank was attractive to customers throughout the Middle East because of its adherence to Islamic banking principles and because of its vast network within the Middle East. Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000744, CIA_000748.<br><br>Disputed as misleading; incomplete: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs selectively quote the CIA report. The report also says, "Al Rajhi financial ties to Islamists is inconclusive" and acknowledges that the use of Al Rajhi Bank "by extremists . . . probably denotes convenience rather than Al Rajhi family involvement in financing radical groups." *Id.* at CIA_000744.<br><br>(2) The report goes on to discuss that Al Rajhi Bank's "dominance of the foreign remittance business, couple with strong financial links to Africa and the Asian subcontinent, probably make [Al Rajhi Bank] the only choice for transferring funds to some regions." *Id.*<br><br>(3) The report also acknowledges that Al Rajhi Bank was attractive to customers because it was the only Shariah-compliant Bank in Saudi Arabia during the relevant period. *Id.* at CIA_000748.<br><br>Disputed as controverted by the evidence; misleading; does not cite supporting evidence:<br><br>(1) The averments that Al Rajhi Bank was among "al Qaeda's choice of banks based on 'personal contacts at the banks and security concerns'" is not supported by the evidence. In fact, Plaintiffs' use of the underlying source is misleading.<br><br>  – The quote refers to Osama bin Ladin, and not Al Qaeda generally, and his choice of banks in Sudan, not Saudi banks, let alone Al Rajhi Bank. In fact, the next sentence discusses the Sudanese National Islamic Front (NIF).<br><br>  – Specifically, the full quote, which is heavily caveated, states: "Bin Ladin's choice of financial institutions in Sudan and abroad is based on personal contacts at the banks and security concerns. NIF cadre dominate bank boards and the top management positions at the Islamic banks in Sudan and | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | probably are business associates or sympathizers to Bin Ladin's cause." <br><br> <u>Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.</u> | |
| 277 | As noted previously, ARB was, throughout the decade and years immediately preceding the September 11th attacks, a large financial institution which engaged in international financial activities, through correspondent banking relationships with counterparty financial institutions throughout the world. *See supra* at ¶¶ 35-39. | 277. <br><br> <u>Immaterial for the reasons discussed in response to Section IX (heading) and Sections X (heading) and XI (heading).</u> <br><br> <u>Disputed as vague:</u> <br><br> (1) "[E]ngaged in international financial activities" is vague. | |
| 278 | As an international bank with extensive correspondent relationships, including with banks in the United States, ARB was required to adopt and implement effective anti-money laundering and counter-terrorism financing protocols to prevent the financing of terrorism and other illicit financial activity through purported charities. Ex. 4, Winer Report at 42-48; *see also id.* at 28-42.; *see also* Ex. 9, *Funding Islamic Extremist Movements:* | 278. <br><br> <u>Immaterial for the reasons discussed above in response to Section IX (heading).</u> <br><br> <u>Disputed as vague:</u> <br><br> (1) "[E]xtensive correspondent relationships" is vague and unsupported by the evidence. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) Disputed to the extent Plaintiffs suggest that Al Rajhi Bank was obligated to comply with any banking regulations or guidelines outside of those issued by its regulator SAMA. | 278. <br><br> <u>Pls. Ex. 4, p. 42-48:</u> <br><br> - Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. <br><br> <u>Pls. Ex. 4, p. 28-42:</u> <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing attacks in Africa, terrorist activity in other countries and by other |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
|  | *The Role of Islamic Financial Institutions*, CIA_000720-804 at 723-24, 736, 738 (explaining that terrorists and their sponsors actively seek out sympathetic partners in the banking sector to open accounts and thereby gain access to the international financial system, to move and launder funds for terrorist operations). | (2) Disputed to the extent that Plaintiffs suggest that Al Rajhi Bank did not "adopt and implement effective" policies and procedures as required by SAMA.<br><br>–    In line with SAMA's requirements, Al Rajhi Bank had anti-money laundering policies and procedures as discussed above in response to Section IX (heading).<br><br>Disputed as incomplete:<br><br>(1) To the extent Plaintiffs' aver that the cited CIA report states that "terrorists and their sponsors" actively sought out Al Rajhi Bank as a "sympathetic partner[]" in order to "move and launder funds for terrorist operations," that is controverted by the evidence.<br><br>(2) Instead, the report says, "Al Rajhi financial ties to Islamists is inconclusive" and acknowledges that the use of Al Rajhi Bank "by extremists . . . probably denotes convenience rather than Al Rajhi family involvement in financing radical groups." Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000744.<br><br>(3) The report goes on to discuss that Al Rajhi Bank's "dominance of the foreign remittance business, couple with strong financial links to Africa and the Asian subcontinent, probably make [Al Rajhi Bank] the only choice for transferring funds to some regions." *Id.*<br><br>(4) The report, even if admissible, also acknowledges that Al Rajhi Bank was attractive to customers because it was the only Shariah-compliant Bank in Saudi Arabia during the relevant period. *Id.* at CIA_000748.<br><br>Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | organizations that are not at issue in this litigation. *See* Fed. R. Evid. 403.<br><br>- Should be excluded as needless presentation of cumulative evidence.- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 9:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 279 | At the global level, these obligations were set by the Financial Action Task Force ("FATF"), which established global standards for banks operating internationally as well as for countries participating in the FATF, which included ARB's home country of Saudi Arabia through the Gulf Cooperation Council ("GCC"), which represented Gulf countries in the FATF before the 9/11 attacks. Ex. 4, Winer Report at 42-48. | 279.<br><br>Immaterial for the reasons discussed above in response to Section IX.<br><br>Disputed as controverted by the evidence; misleading:<br><br>(1) Disputed to the extent Plaintiffs suggest that Al Rajhi Bank was obligated to comply with FATF recommendations.<br><br>– Al Rajhi Bank was obligated to adhere to SAMA guidelines and regulations, not international standards. *See* ARB Ex. 3 (Pasley Rep.) at 12.<br><br>(2) Plaintiffs' characterization of FATF recommendations as "obligations" is controverted by the evidence.<br><br>– The FATF Guidelines are a set of recommendations, rather than binding regulations, which are considered to be the "gold standard" of banking best practices. ARB Ex. 3 (Pasley Rep.) at 4, 12. No country or bank implements all the recommendations. *Id.* at 13. | 279.<br><br>Pls. Ex. 4, p. 42-48:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |
| 280 | International banks needed to meet these standards in order to maintain their correspondent banking relationships, such as ARB's one with the Chase Manhattan Bank, to avoid the risk that their correspondent banks would be facilitating money laundering or terrorist finance if ARB failed to meet its obligations in this field. Ex. 4, Winer Report at 26-27. | 280.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as conclusory; vague; does not cite to supporting evidence:<br><br>(1) Plaintiffs' reference to "international banks" is vague.<br><br>(2) Plaintiffs' statements regarding "these standards" and "this field" and what's required of international banks is vague and conclusory.<br><br>(3) Plaintiffs cite no supporting evidence showing or discussing standards for correspondent banking during the relevant period. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 281 | These international AML and KYC standards and best practices were, in turn, adopted within Saudi Arabia by SAMA, ARB's regulator, which issued "Guidelines for Prevention and Control of Money Laundering Activities" in 1995 ("the 1995 Guidelines"). *See* Ex. 58, (Pasley Ex. 8), SAMA Guidelines for the Prevention of Money Laundering ("1995 Guidelines"). | 281.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as conclusory; does not cite to supporting evidence:<br><br>(1) Plaintiffs' reference to "these international AML and KYC standards and best practices" is vague and conclusory as Plaintiffs do not discuss any specific standards. | |
| 282 | The 1995 Guidelines were distributed by SAMA to the General Managers of all banks in the Kingdom, which, in ARB's case, was Abdullah al Rajhi (who reads and speaks English). *Id.* at 130.[1] | 282.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading). | |
| 283 | During the years preceding the September 11th attacks, banks engaged in international financial activities, like ARB, were required to adhere to and implement these international (and in ARB's case, Saudi) KYC and AML standards and protocols to prevent all serious crimes, including the financing of | 283.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as vague:<br><br>(1) "[E]ngaged in international financial activities" is vague.<br><br>Disputed as incomplete and controverted by the evidence:<br><br>(1) Al Rajhi Bank was only "required to adhere to and implement these international . . . KYC and AML standards and protocols" to the | 283.<br><br>Pls. Ex. 4, p. 42-48:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

---

[1]    The 1995 Guidelines include handwritten page numbers, beginning with 130.  The page numbers used in this Averment refer to these handwritten page numbers.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | terrorism. Ex. 4, Winer Report at 23-28, 42-48. | extent that those standards were reflected in SAMA guidelines and regulations.<br><br>(2) SAMA's regulations and international banking standards did not focus primarily on counterterrorism financing until after the 9/11 Attacks. *See* ARB Ex. 2 (Hobayb Rep.) at 6 (explaining that combatting terrorism financing was not a "top concern" for international banking regulators before the 9/11 Attacks).<br><br>(3) Before the 9/11 Attacks, international banking standards focused on the prevention of money laundering. *See* ARB Ex. 2 (Hobayb Rep.) at 6; *see also* ARB Ex. 63 (History of the Financial Action Task Force) ("In [October] 2001, the FATF expanded its mandate to [. . .] combat terrorist financing."); ARB Ex. 3 (Pasley Rep.) at 12 (discussing a shift into focus to combatting terrorist financing following the 9/11 Attacks).<br><br>(4) After 9/11, Saudi banking oversight procedures likewise shifted to focus more on combating terrorism financing. *See* ARB Ex. 64 (Ltr. from Managing Director of Arab National Bank to SAMA Director) at ARB-00039373 (creating self-supervisory committee in response to the "Executive Order of the Office of Foreign Assets Control of the U.S. Treasury," dated Sept. 26, 2001); *see also* ARB Ex. 65 (Oct. 7, 2001 Meeting Minutes for Banks' Self-Supervisory Committee) at ARB-00039586 (citing compliance with a UN resolution on terrorism that was circulated by SAMA); ARB Ex. 66 (SAMA Circular 12872-MAT-120, Sept. 29, 2001) at ARB-00014391. | |
| 284 | Indeed, the Introduction section of the 1995 Guidelines expressly states, in the first paragraph of the document, as follows: | 284.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as incomplete; misleading: | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | By all accounts, world-wide money laundering activities, particularly those related to drugs, now constitute a multi-billion dollar business annually. However, money laundering could also encompass funds derived from theft, blackmail, extortion, ***terrorism*** [emphasis added], and other criminal activities. It is inconceivable and unlikely that such large amounts of money can be stored or moved without the cooperation or unwitting participation of many international banks and banking systems.<br><br>*See* Ex. 58, 1995 Guidelines at 134; Ex. 4, Winer Report at 133. | (1) The document cited by Plaintiffs includes the official guidelines in Arabic, as well as an English portion, which is not a certified translation of the Arabic text. *Compare* Pls. Ex. 58 (1995 SAMA Guidelines) *and* ARB. Ex. 67 (Certified Translation of 1995 SAMA Guidelines) (showing differences between the English portions and an English translation of the Arabic portions).<br><br>– The Arabic portion contained the official, binding text. *See* ARB Ex. 50 (Hobayb Dep. Tr.) at 94:10-20.<br><br>– The official Arabic portion of the text does not include the word "terrorism." *Compare* Pls. Ex. 58 (1995 SAMA Guidelines) at PDF p. 5 *and* ARB. Ex. 67 (Certified Translation of 1995 SAMA Guidelines) at 5.<br><br>(2) The main focus of the 1995 SAMA Guidelines, which tracked international standards, was the prevention of money laundering in relation to the illegal narcotics trade. *See* Pls. Ex. 184 (Hobayb Dep. Tr.) at 60:17-24 (explaining that "anti-money laundering pre-9/11 was focusing only on source of funds and mainly activities associated with drugs").<br><br>– In a letter attached to the 1995 SAMA Guidelines and addressed to Saudi banks, SAMA stated: "As you are aware, money laundering activities particularly those related to drugs are a major concern." Pls. Ex. 58 (1995 SAMA Guidelines) at PDF p. 3. | |
| 285 | Underscoring the threat posed by terrorist financing and the need to take effective steps to prevent the financing of terrorism, the UN General Assembly issued several resolutions prior to September 11, | 285.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 2001, including through purported charitable organizations. *See* Ex. 4, Winer Report at 23-27. | | |
| 286 | On January 16, 1997, the UN General Assembly, issued a new Resolution on "Measures to eliminate international terrorism," which included the commitment to "take steps to prevent and counteract, through appropriate domestic measures, the financing of terrorists and terrorist organizations, whether such financing is direct or indirect through organizations which also have or claim to have charitable, social or cultural goals." *See* Ex. 192, UN Resolution Adopted by the General Assembly [on the report of the Sixth Committee (A/51/631)], Fifty-first session, Agenda Item 151, January 16, 1997; Ex. 4, Winer Report at 23-24. | 286. <br><br> <u>Immaterial for the reasons discussed above in response to Section IX (heading).</u> | 286. <br><br> <u>Pls. Ex. 192:</u> <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 287 | On January 19, 1998, the UN reiterated the January 16, 1997 measures to eliminate international terrorism, and on January 26, 1999, the UN authorized the prompt development of a comprehensive international convention to | 287. <br><br> <u>Immaterial for the reasons discussed above in response to Section IX (heading).</u> | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | provide a common set of requirements for its member states to stop terrorist financing, as an addition to the existing international instruments dealing with international terrorism. *See* Ex. 4, Winer Report at 23-24. | | |
| 288 | Thereafter, on December 9, 1999, the UN General Assembly adopted its "International Convention for the Suppression of the Financing of Terrorism" ("Terrorist Finance Convention"). *See* Ex. 4, Winer Report at 24-25; Ex. 193, Terrorist Finance Convention, Adopted by the General Assembly of the United Nations in resolution 54/109 of December 9, 1999. | 288.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading). | |
| 289 | These prominent actions by the UN, and related pronouncements of international bodies, underscored that terrorist financing was a serious concern at the international level well before 9/11, which financial institutions were required to guard against, through effective AML and KYC practices. *See* Ex. 4, Winer Report at 23-27. | 289.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as conclusory; vague:<br><br>(1) Plaintiffs' characterizations of "prominent actions" and "serious concern" are vague and conclusory.<br><br>(2) Plaintiffs' description of "related pronouncements of international bodies" is vague and conclusory. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as misleading; incomplete: | |
| | | (1) International standards, which Al Rajhi Bank was only obligated to follow to the extent they were reflected in SAMA guidelines and regulations, did not focus primarily on counter-terrorism financing until after the 9/11 Attacks. *See* ARB Ex. 2 (Hobayb Rep.) at 6; *see also* ARB Ex. 63 (History of the Financial Action Task Force) ("In [October] 2001, the FATF expanded its mandate to [. . .] combat terrorist financing."); ARB Ex. 3 (Pasley Rep.) at 12 (discussing a shift into focus to combatting terrorist financing following the 9/11 Attacks). | |
| | | (2) Before the 9/11 Attacks, international banking standards focused on the prevention of money laundering. *See* ARB Ex. 50 (Hobayb Dep. Tr.) at 60:17-24 (explaining that "anti-money laundering pre-9/11 was focusing only on source of funds and mainly activities associated with drugs"); ARB Ex. 2 (Hobayb Rep.) at 6 (explaining that combatting terrorism financing was not a "top concern" for international banking regulators before the 9/11 Attacks). | |
| 290 | In addition, there was significant public reporting, prior to 9/11, on the involvement of purported charitable organizations, including AHIF and IIIRO in particular, in supporting terrorism. *See* Ex. 4, Winer Report at 32-40; Ex. 38, Kohlmann Report at 12-13, 14, 21-22, 25; Ex. 171, Transcript, January 11, 2024 Deposition of Evan F. Kohlmann ("Kohlmann Deposition"), at 92-93, 124-25 (discussing | 290. Immaterial: (1) Immaterial for the reasons discussed above in response to Section IX (heading) and Section V (heading). (2) In addition, purported "public reporting" about the international branches of Al Haramain and IIRO is immaterial and irrelevant because Al Rajhi Bank did not hold accounts for any IIRO or Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. – With respect to "AHIF," Al Rajhi Bank only held accounts for Al Haraiman KSA, which was a government-licensed charity. | 290. Pls. Ex 4, 32-40: - Should be excluded under FRE 403 for unfair prejudice, for discussion of attacks, organizations, and locations that are not at issue in this litigation. *See* Fed. R. Evid. 403. Pls. Ex 38, 12-13,14,21-22,25: - Should be excluded under Rule 403 for unfair prejudice, |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | information about charities available in Saudi Arabia). | *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18; ARB Ex. 41 (Ltrs. from Ministry of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-38586 (stating that Al Haramain operates under the supervision of the Saudi Ministry of Islamic Affairs); *see also* Pls. Ex. 44 (Staff Monograph) at 12 ("At least two Saudi government officials have supervisory roles (nominal or otherwise) over al Haramain."); ARB Ex. 24 (Ltr. from Al Rajhi Bank Gen. Mgrs. to Governor of SAMA, Jan. 4, 2004) at ARB-00014545; ARB Ex. 25 (Ltr. from Al Rajhi Bank Gen. Mgr. to Governor of SAMA, Jan. 26, 2004) at ARB-00014546; Pls. Ex. 59 (Ltr. from Al Rajhi Bank Gen. Mngr. to Ministry of Islamic Affairs) at ARB-39945-ARB-39946 (Al Rajhi Bank confirming post-9/11 that Al Haramain KSA continued to be a licensed charity); ARB Ex. 26 (Mar. 13, 2004 Ltr. from Ministry of Islamic Affairs, Mar. 13, 2004) at ARB-39505 (confirming that Al-Haramain KSA was permitted to engage in charitable work in the Kingdom and that there were no objections to Al-Haramain opening an account at Al Rajhi Bank); ARB Ex. 27 (Mar. 21, 2004 Ltrs. from Ministry of Justice) at ARB-00039410 (statement confirming that Al-Haramain KSA was "legally established in . . . Saudi Arabia and are permitted to operate under its laws and regulations"); ARB Ex. 56 (Ltr. from the Gov. of Yanbu, June 1, 1999) at ARB-00038818 (urging cooperation with the newly opened Al-Haramain office in the region); ARB Ex. 44 (Business License for Al-Haramain offices in Jubail Municipality) at ARB-00038837 (granting a business storefront license for the Al Haramain office in Jubail Municipality); ARB Ex.43 (Ltr. from the Gen. Mngr. of the Eastern Province of the Ministry of Islamic Affairs, July 14, 1998) at ARB-38741 (noting Al-Haramain is under the supervision of the Ministry of Islamic Affairs and | for conflating support for jihad in Bosnia with support for Al Qaeda's terrorism against the United States. *See* Fed. R. Evid. 403.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 171, pgs. 92-93, 124-25:<br><br>- Expert is not qualified to opine on Saudi culture or charities. *See* Fed. R. Evid. 702.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussion of attacks, organizations, and locations that are not at issue in this litigation. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | asking for cooperation and in its missionary and humanitarian work); ARB Ex. 42 (Ltr. from Dep. Minister of Islamic Affairs, Jan. 29, 1997) at ARB-0038613 (permitting the operation of an Al Haramain account at Al Rajhi Bank branch); ARB Ex. 41 (Ltrs. from Ministry of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-38585 (asking to transfer certain accounts into the name of Al-Haramain Islamic Foundation and keep Aqeel Al-Aqeel as the signatory).<br><br>– With respect to "IIRO," Al Rajhi Bank only held accounts for IIRO KSA, which was a government-licensed charity. *See* Pls. Ex. 3 (Galloway Dep. Tr.) 231:24-232:19 and Errata at 232:19; ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-00013679-88, ARB-00013691, ARB-00013696 (recognizing the founding or IIRO by the Deputy Prime Minister of Saudi Arabia and the Ministry of Foreign Affairs); ARB Ex. 24 (Ltr. from Al Rajhi Bank Gen. Mgr. to Governor of SAMA, Jan. 4, 2004) at ARB-00014545; ARB Ex. 25 (Ltr. from Al Rajhi Bank Gen. Mgr. to Governor of SAMA) at ARB-00014546 (noting that IIRO KSA was licensed by appropriate Saudi authorities); ARB Ex. 40 (Ltrs. from the Ministry of Interior in the Emirate of Asir) at ARB-00037502-511 (discussing the opening of IIRO office in the Emirate of Asir in 1990); ARB Ex. 39 (Ltr. from the Governor of the Asir Emirate to the Chairman of the Imam Muhammad ibn Saud Islamic University) at ARB-00037838-39 (affirming the opening of an IIRO office in the region, dated September 20, 1989); ARB Ex. 38 (Business License in Jubail Municipality) at ARB-00013527 (permitting IIRO to collect donations, dated January 26, 1994).<br><br>(3) In addition, Al Haramain-KSA, which was not designated under any sanctions regime for connections to terrorism until it was designated by the United States in 2008, several years after the | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | 9/11 Attacks.  Pls. Ex. 60 (Treasury Designates Al Haramain Islamic Foundation KSA). | |

(4) IIRO KSA was never designated under any sanctions regime for connections to terrorism.  *See* ARB Aver. ¶ 61; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* Pls. Ex. 171 (Kohlmann Dep. Tr.) at 140:6-13 (acknowledging that IIRO KSA never received a sanctions designation).

Disputed as conclusory; misleading, and unsupported by evidence:

(1) Plaintiffs' averment regarding "significant public reporting" is conclusory.

(2) Plaintiffs cite no evidence showing that purported "information" linking charities to terrorism was "available in Saudi Arabia," in the 1990s, especially English-language reports from American and European newspapers.

Disputed as controverted by the evidence:

(1) Plaintiffs' averment that "there was significant public reporting, prior to 9/11, on the involvement of purported charitable organizations, including AHIF and [IIRO] in particular, in supporting terrorism" is controverted by the evidence.

(2) Plaintiffs' purported experts cite to intelligence reports, which do not qualify as "public reporting." *See, e.g.*, Pls. Ex. 4 (Winer Rep.) at 32 (discussing unspecified "press reporting" referenced in CIA reports).

– Banks have no obligation to operate as intelligence agencies to uncover the purported terrorist schemes or affiliations of its customers. *See* ARB Ex. 3 (Pasley Rep.) at 6.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (3) Of the public reporting on which Plaintiffs' rely, Plaintiffs fail to establish that that reporting actually would have been available to Al Rajhi Bank, especially in the 1990s before widespread publication of news on the internet. | |
| | | (4) Plaintiffs also fail to show that those reports were republished in Arabic. | |
| | | (5) Further, many of the public reports cited by Plaintiffs' experts do not discuss charities at all or do not identify specific charities. *See, e.g.*, Pls. Ex. 4 (Winer Rep.) at 34 (discussing "Islamic organizations"). | |
| 291 | Significantly, the public reporting concerning terrorists' use of ostensible charities to raise and launder funds for terrorism included a high profile 1997 Associated Press article *which implicated one of Suleiman al Rajhi's own alleged charities in financing terrorism. See* Ex. 190, *U.S.-Raised Money Plays Big Role in Financing Terror*, Richard Cole, Associated Press, May 26, 1997. | 291. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section IX and Section IV. <br><br> (2) In addition, immaterial because allegations regarding Sulaiman bin Abdulaziz Al Rajhi's knowledge, even if credited, are insufficient to establish personal jurisdiction where Plaintiffs may not impute a chairman or senior official's knowledge onto the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). <br><br> (3) In addition, immaterial because the United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi family member for connections to terrorism. *See* Pls. Ex. 12 (Winer Dep. | 291. <br><br> Pls Ex 190: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Tr.) at 160:10-15; 172:19-22; *see also* Pls. Ex.171 (Kohlmann Dep. Tr.) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>– No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing.<br><br>– Further, in 2021, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-000011.<br><br>(4) Plaintiffs' averments regarding Sulaiman Abdulaziz Al Rajhi's "committee" and the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation fail to show that the Bank expressly aimed intentional, tortious conduct at the United States, or that the Bank had any knowledge of its customers' alleged affiliations with terrorism or its customers' alleged bad acts. The undisputed admissible evidence establishes that the Sulaiman bin Abdulaziz al Rajhi Charitable Foundation had no "relationship" with Al Rajhi Bank. Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank.").<br><br>(5) The conduct of the SAAR Foundation is irrelevant and not attributable to the Bank. Plaintiffs have never alleged and have no evidence of any "relationship" between the Bank and the SAAR | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Foundation. *See* Order (Nov. 22, 2021), ECF 7378 at 15-16 (noting Plaintiffs have not alleged "any direct connection between ARB and the SAAR Network" and finding a "lack of a reasonable connection between ARB and the SAAR Network"). | |
| | | – In addition, while the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated under any sanctions regime for connections to terrorism. *See* Pls. Ex. 12 (Winer Dep. Tr.) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9. | |
| | | – Further, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See In re: Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). | |
| | | Disputed as vague and conclusory; does not cite to supporting evidence: | |
| | | (1) Plaintiffs' description of the Associated Press article as "high profile" is vague and unsupported by any evidence. | |
| | | (2) The cited article does not mention Sulaiman bin Abdulaziz Al Rajhi. | |
| 292 | The report discussed evidence that the International Institute for Islamic Thought ("IIIT"), one of the entities comprising the SAAR | 292. Immaterial: | 292. Pls Ex 190: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Foundation's complex web of "overlapping companies with parallel ideologies, personal relationships, and financial associates," *supra* at ¶ 48, was part of an "international ring to financing Islamic terrorists," and noted that the U.S. had deported one of IIIT's officers after discovering he was an Islamic Jihad leader. *See* Ex. 190, *U.S.-Raised Money Plays Big Role in Financing Terror*, Richard Cole, Associated Press, May 26, 1997. | (1) Immaterial for the reasons discussed above in response to Section IX (heading) and Section IV (heading). <br><br> (2) In addition, immaterial because Plaintiffs' averment regarding the conduct of the SAAR Foundation, even if credited, is not attributable to the Bank. <br><br> – The SAAR Foundation was not a parent, subsidiary, or affiliate of the Bank. <br><br> – While the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated as an SDGT by the United States. *See* Pls. Ex. 12 (Winer Dep. Tr.) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9. <br><br> – And, in 2021, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-000011. <br><br> – Further, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See In re: Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in | - Hearsay to which no exception applies. *See* Fed. R. Evid. 802 |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | unison. None of the Defendants can be held liable based on such allegations alone."). <br><br> Disputed as conclusory; does not cite to supporting evidence: <br><br> (1) Plaintiffs cite no evidence supporting that IIIT was part of the SAAR Foundation. <br><br> (2) The quote refers to a different organization, named WISE, and states that "Customs suspects that WISE under cover of its affiliation with the unsuspecting University of South Florida was at the center of an international ring financing Islamic terrorists . . . but investigators have failed to find a shred of evidence that WISE or its top officials did anything illegal." Pls. Ex. 190 (*U.S.- Raised Money Plays Big Role in Financing Terror*, Richard Cole, Associated Press, May 26, 1997). <br><br> (3) The article goes on to link WISE to "a Saudi Arabian financed think tank called the International Institute of Islamic Thought, or IIIT." *Id.* <br><br> (4) The article does not definitively link either organization to terrorism financing, but says "[t]he foundations insist the money they raise is legally collected for orphans and the families of 'martyrs' to the Islamic cause. In practice, investigators suspect – but so far cannot prove – that means organized terrorist groups in the Middle East." *Id.* | |
| 293 | As discussed below, Suleiman al Rajhi and Abdullah al Rajhi responded to this reporting, implicating their charities in financing terrorism, by initiating steps to move the SAAR Foundation operation to the Isle of | 293. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section IX (heading) and Sections IV (heading) and X (heading). | 293. <br><br> Pls. Ex. 4, p. 184-200: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Man, a notorious bank secrecy haven, confirming both their specific awareness of the reporting, and intent to exploit vulnerabilities in the international banking system to avoid further scrutiny of their financing activities. *See infra* at ¶¶ 400-407; Ex. 4, Winer Report at 184-200. | (2) In addition, immaterial because averments regarding the purported knowledge or intent of Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi, even if credited, are insufficient to establish personal jurisdiction where Plaintiffs may not impute a chairman or senior official's knowledge onto the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>(3) In addition, immaterial because the conduct of the SAAR Foundation, even if credited, not attributable to the Bank.<br><br>– The SAAR Foundation was not a parent, subsidiary, or affiliate of the Bank.<br><br>– While the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated as an SDGT by the United States. *See* Pls. Ex. 12 (Winer Dep. Tr.) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9.<br><br>– Further, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See In re: Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone.").<br><br><u>Disputed as misleading:</u> | hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (1) Plaintiffs' reference to "their charities" vague. | |
| | | (2) Plaintiffs' reference to "their charities" also is misleading to the extent Plaintiffs incorrectly aver that Abdullah bin Sulaiman Al Rajhi founded the SAAR Foundation and the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation with his father, Sulaiman bin Abdulaziz Al Rajhi. | |
| | | Disputed as vague and conclusory: | |
| | | (1) Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi took "steps to move the SAAR Foundation operation to the Isle of Man" does not show that the SAAR Foundation was involved in terrorism financing. | |
| | | (2) Plaintiffs' characterization of the Isle of Man as "a notorious bank secrecy haven" is conclusory, and Plaintiffs do not cite to supporting evidence. | |
| | | (3) Plaintiffs' averment that such action "confirm[ed] both their specific awareness of the reporting, and intent to exploit vulnerabilities in the international banking system to avoid further scrutiny of their financing activities" is an unsupported legal conclusion to which no response is required. | |
| | | Disputed as not supported by evidence: | |
| | | (1) To the extent Plaintiffs aver that discussions about possibly moving the SAAR Foundation were solely motivated by "reporting, implicating their charities in financing terrorism," that assertion is unsupported by the evidence. | |
| 294 | Further still, Suleiman al Rajhi was a prominent donor to bin Laden's organization during the jihad in Afghanistan, who funded | 294. Immaterial: | 294. Pls. Ex. 66: |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | jihad through contributions to the MAK. *See, e.g.*, Ex. 66, *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact*, January 11, 1999, CIA_00807-848 at 830. Suleiman al Rajhi was thus specifically aware of bin Laden's longstanding use of ostensible charities to support his jihadist activities from the outset. | (1) Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) In addition, immaterial because Plaintiffs' averment regarding purported contributions to "the jihad in Afghanistan," even if credited does not show that Al Rajhi Bank knowingly or intentionally aimed tortious conduct at the United States. *See* ARB Ex. 1 (Dean Rep.) at 10-12, 14-16 (explaining that "alleged support for armed resistance against Russian and Russian-backed forces in Afghanistan" does not equate to support for Al Qaeda, much less support for "al-Qaeda's terrorism against civilians in the United States").<br><br>(4) In addition, immaterial because Plaintiffs' averment regarding Sulaiman bin Abdulaziz Al Rajhi's purported "awareness," even if credited, is insufficient to establish personal jurisdiction where Plaintiffs may not impute a chairman or senior official's knowledge to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>Disputed as conclusory; does not cite to supporting evidence:<br><br>(1) The cited source does not support the conclusion that Sulaiman bin Abdulaziz Al Rajhi was "prominent donor to bin Laden's organization during the jihad in Afghanistan." | - Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (2) The heavily redacted and caveated report, to the extent it is even admissible, says the "Al Rajhi family . . . <u>probably</u> are a source of financial support for Usama's al-Qa'ida organization. [Redacted] a 'Shaykh Rajhi' — [redacted] —deposited [redacted] into the [redacted] bank accounts of Maktab al-Khidamat." Pls. Ex. 66 (*Usama Bin Ladin: Some Saudi Financial Ties Probably Intact*, Jan. 11, 1999) at CIA_000830 (emphasis added). The redactions make this passage particularly unclear and the report is therefore too ambiguous to support Plaintiffs' averment.<br><br>(3) The report does not identify any specific individual of the Al Rajhi family or say that any such individual intentionally provided financial support to Osama bin Laden. | |
| 295 | ARB and its principals, including Suleiman al Rajhi and Abdullah al Rajhi, were thus well aware, prior to the September 11ᵗʰ attacks, of the risk of terrorist financing through purported Islamic charities, and ARB's obligations to guard against that activity through faithful adherence to international and domestic AML and KYC protocols. | 295.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and Section IV (heading).<br><br>(2) In addition, to the extent Plaintiffs contend that the personal charitable donations of Sulaiman bin Abdulaziz Al Rajhi or Abdullah bin Sulaiman Al Rajhi were made with knowledge of charities' alleged connection to terrorism (a point which Plaintiffs do not establish), such averments are immaterial, as Plaintiffs have not established any basis to impute a chairman or senior official's knowledge onto the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br><u>Disputed as controverted by the evidence:</u> | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank testified that no one at Al Rajhi Bank, including himself and his father, Sulaiman bin Abdulaziz Al Rajhi, has ever been a supporter of al Qaeda or Osama Bin Laden and to the best of his knowledge no one at the Bank ever supported al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah Al Rajhi Dep. Tr.) at 353:7-10, 354:17-355:8, 356:4-10.<br><br>(2) To the extent Plaintiffs aver that Sulaiman bin Abdulaziz Al Rajhi was not genuinely philanthropic and did not make legitimate charitable donations, those assertions are controverted by the evidence.<br><br>– Although he has tried to never tout his philanthropy, Sulaiman bin Abdulaziz Al Rajhi has been reported to be one of the most generous people in the world. *See* ARB Ex. 37 ("20 Most Generous People in the World").<br><br>– Paragraph 50 of Plaintiffs' own Averment acknowledges that Sulaiman bin Abdulaziz Al Rajhi donated "millions of dollars . . . to a range of Islamic causes throughout the world." *See* Pls. Aver. at ¶ 50.<br><br>– Sulaiman bin Abdulaziz Al Rajhi made donations to respected charities that were government-licensed and known for doing good works. *See generally, e.g.*, Pls. Ex. 122 (Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation Donations to Al Haramain-KSA); *see also, e.g.*, Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18 (discussing that Al Haramain was licensed); ARB Ex. 41 (Ltrs. from Ministry of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-00038586 (stating Al-Haramain operates under its | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | supervision); Pls. Ex. 44 (Staff Monograph) at 115 (discussing various humanitarian works done by Al Haramain); *see also* ARB Resp. to § V (heading) (explaining that Al Haraiman was a well-known, respected, and government-licensed charity, whose legitimate humanitarian efforts were widely publicized before the 9/11 Attacks).<br><br>– The Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was licensed as a bona fide charitable organization that (1) raised money for charity by collecting donations from others, and (1) disbursed those funds to charitable causes. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 257:9-258:11 and Errata at 257:12-13, 257:16, 257:18.<br><br>(3) Plaintiffs have no evidence that Al Rajhi Bank failed to comply with applicable SAMA guidelines for AML policies and procedures for the reasons discussed above in response to Section IX (heading). | |
| 296 | As noted, these AML and KYC requirements included those embodied in the FATF's 40 Recommendations, which SAMA implemented through the requirements of the 1995 Guidelines. | 296.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading).</u><br><br><u>Disputed as misleading; controverted by the evidence:</u><br><br>(1) Disputed to the extent Plaintiffs suggest that Al Rajhi Bank was obligated to comply with FATF recommendations for the reasons discussed above in response to ¶¶ 279, 283. | |
| 297 | In issuing the 1995 Guidelines, SAMA described their principal purposes as follows:<br><br>      In recognition of international legal and | 297.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading).</u> | 297.<br><br><u>Pls. Ex. 4, p. 132-137:</u><br>- Expert is not qualified to offer opinion on Saudi |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | supervisory efforts to combat the spread of money-laundering, the Agency has prepared these Money Laundering Control Guidelines which provide basic information on the subject, along with information on measures to be taken for prevention, control, and detection of money laundering activities. Banks are required to make these Guidelines an integral part of their own systems and procedures aimed at detecting and controlling such illegal activities. The objectives of the Agency in issuing these Guidelines are as follows:<br><br>To help Saudi Banks to comply with the Banking Control Law and SAMA regulations.<br><br>To prevent Saudi Banks from being exploited as channels for passing illegal transactions arising from money-laundering | <u>Disputed as incomplete; misleading for the reasons discussed above in response to ¶ 284.</u> | Banking regulations. *See* Fed. R. Evid. 702.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | and other criminal activity.<br><br>To maintain and enhance the credibility of the Saudi Banking System.<br><br>*See* Ex. 58, 1995 Guidelines at 134; Ex. 4, Winer Report at 132-137. | | |
| 298 | The 1995 Guidelines then explained the process of money laundering generally, and set forth specific policy requirements for Saudi banks to follow and implement, to prevent their accounts from being used to launder funds for criminal activities. *See* Ex. 58, 1995 Guidelines at 134-146; Ex. 4, Winer Report at 132-137. | 298.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading). | 298.<br><br>Pls. Ex. 4, p. 132-137:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. |
| 299 | The requirements of the 1995 Guidelines are set forth in full in the Guidelines themselves, and discussed at length in the expert report of Jonathan Winer. They include the following obligations: | 299.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as misleading:<br><br>(1) Jonathan Winer, who does not speak or read Arabic and lacks expertise on Saudi banking regulations, did not "discuss[] at length" the 1995 SAMA Guidelines in his report. *See* Pls. Ex. 12 (Winer Dep. Tr.) at 119:22-23 ("I do not read Arabic. I do not write Arabic. I don't speak Arabic."). Instead, Winer's report | 299.<br><br>Pls. Ex. 4, p. 132-137:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible |

**"General Policy Requirements."**

"Detection and Prevention: Saudi Banks should train and educate their employees to enhance their understanding of money-laundering and its relationship with criminal activities. As employees become familiar with such activity, they can play an effective role in combating money laundering through prevention and detection measures."

"Deposit of Fund Taking[:] Saudi Banks should take care when accepting deposits or other funds. If it is suspected that a deposit is, or forms part of funds obtained through illegal activities, then these funds should be accepted in the normal manner, following correct procedures. Under no circumstances should the customer be alerted to any suspicion. The suspicious deposit should be

copied verbatim excerpts from the English portion of the Guidelines.

(2) To the extent that Plaintiffs do rely on Winer's opinions about Saudi banking regulations, Winer's opinions about that topic are not reliable and should not be credited.

Disputed as incomplete:

(1) The document cited by Plaintiffs includes the official guidelines in Arabic, as well as an English portion, which is not a certified translation of the Arabic text. *Compare* Pls. Ex. 58 (1995 SAMA Guidelines) *and* ARB. Ex. 67 (Certified Translation of 1995 SAMA Guidelines) (showing differences between the English portions and an English translation of the Arabic portions).

(2) The Arabic portion contained the official, binding text. *See* ARB Ex. 50 (Hobayb Dep. Tr.) at 94:10-20.

–  The official Arabic text of the SAMA Guidelines includes materially different language. For example, The official Arabic portion of the section titled "Internal Control Systems" does not include the following language: "A Bank should use specialized software that is available in the market to detect unusual patterns of transactions and trends to indicate criminal activities." ARB Ex. 67 (Certified Translation of 1995 SAMA Guidelines) at 6.

hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | reporting to the Police and SAMA and no transfers or withdrawals should be allowed from account until authorized by the Police or SAMA."<br><br>"Cooperation: Saudi Banks should cooperate locally and internationally to combat money-laundering through exchange of information with banking supervisors and appropriate law enforcement agencies, when they discover or suspect money laundering transactions. However, at the same time they must follow the legal and regulatory procedures that are aimed to protect customer confidentiality and banking secrecy."<br><br>**Specific Policies and Guidelines**<br><br>**"Internal Control Systems."**<br><br>"A Bank should design and develop internal | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | control systems to combat money laundering transactions. Such system should include detailed written policies and procedures for preventing the use of the Bank's branches and operations by money launderers and for detecting such transactions."

"These policies and procedures should include special instructions on money [l]aundering and in particular emphasize the "know your customer" principle."

A Bank should develop a system for internal reporting of transactions and account movements that could facilitate detection of such transactions. A Bank should use specialized software that is available in the market to detect unusal patterns of transactions and trends to indicate criminal activities. These | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | normally include the following:<br><br>***<br><br>Signfiicant Transactions Report: This should include all telegraphic transfers affected via telex, Swift, and other means. The amount, currency, correspondent banks, and the beneficiary must be noted. The report should highlight number of transactions, and values for each correspondent bank, and highlight any trends etc.<br><br>Singificant Transactions Report: These should include all transactions which exceed SR 100,000. Significant transactions report should identify accounts to which these transactions are related and the sources of these large amounts. | | |

**"Know Your Customer."**

"In general, this principle is aimed at ensuring that Banks are fully knowledgeable about their customers and are aware of their bank dealings. The application of this principle should not affect the relationship of a Bank with its reputable customers. Banks should apply the following procedure for implementing this principle."

"No account should be opened or banking services provided for customers without proper identification or under fictitious names."

"Identify any client who opens a new account or has a business relationship with the Bank."

"Identification should be made by reference to proper official documents in accordance with previous SAMA Circulars

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | regarding customer identification." "Identification is not limited to customers that have accounts with the banks; it should also include those who benefit from other bank services such as renting of safety deposit boxes and large cash transfers and foreign exchange transactions. . . ." "The follow procedures should be followed as a minimum where opening a Personal Account for an individual (emphasis in original): "The Bank should obtain proper identification of the customer as stipulated by SAMA Directives." "The Bank should seek information on the customer's business, or job title and ascertain the accuracy of such information." "The Banks [sic] should seek information on a customer's dealings with | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | other banks with which he deals and seek information from such banks about their dealing with the customer. . . ." "Procedures to be followed when opening a Current Account or a Joins [sic] account for a Business Entity:" "The Bank should obtain original documents or authenticated copies which identify the legal identity of the customer, details about its activities etc. as prescribed in the customer agreement." "The Bank should collect direct or indirect information about the business enterprise from other banks and sources . . ." "The Bank should know the sources of deposits, specially large cash deposits when an account is being opened." | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | The Bank should obtain the following information when an enterprise is opening a significant account: | | |
| | The financial structure of the enterprise and its annual financial statements. | | |
| | Description of the services and business | | |
| | List of significant suppliers, customers, and their locations. | | |
| | Description of the geographical coverage where the enterpise carries out its activities. | | |
| | Transactions with internal entities. | | |
| | **"Referral of Business."** | | |
| | "It is a recognized business objective that the Bank will cross-refer and cross-sell business, but this must be done in such a way as to comply with any local rules regarding | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | "know your customer". These rules ordinarily require each office to[:]" | | |
| | "Take all reasonable steps to identify fully customers bonafides, including beneficial customers." | | |
| | "Take all reasonable steps to enable suspicious transactions to be recognized." | | |
| | "Reasonable steps to enable suspicious transactions to be recognized will include:" | | |
| | "Obtaining a reasonable understanding of the normal character of | | |
| | the customer's business; and" | | |
| | "Having a reasonable understanding of the commercial basis of the transaction to be undertaken or the service to be provided. What is a reasonable understanding will depend upon the complexity of the business | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | and transactions concerned. For example high value or high volume transactions, especially if the transactions or the customer type is one regarded as high risk from a laundering viewpoint will require customer and transaction information in considerable detail." *See* Ex. 58, 1995 Guidelines at 134-142; Ex. 4, Winer Report at 132-137. | | |
| 300 | The 1995 Guidelines also set forth key examples of money laundering indicators or "red flags," requiring specific action and investigation. These included: **General Indicators** The transaction whose general form is indicative of illegitimate or unknown purpose. Existence of movements in the customer's account | 300. <u>Immaterial for the reasons discussed above in response to Section IX (heading).</u> | |

not related to his activities such as:

- Continuous cash deposits in companies and establishment's accounts.

- Abnormal purchase of cashiers cheques and payments orders against cash.

- Withdrawal of cash amounts after a short time of its deposit.

- Large deposits of cheques, incoming drafts and payment orders that are inappropriate to the nature of customer's activity.

- Large withdrawals or deposits inconsistent with customers activities.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | • Transactions for unknown objectives which do not adhere to activity of the company or its branches.<br><br>*See* Ex. 58, 1995 Guidelines at 150-151. | | |
| 301 | Additional indicators of money laundering identified in the 1995 Guidelines included "[c]ash deposits of large amounts whose source is apparently one of the banks in the same region;" "[d]eposit of large number of cheques or cash amounts by the customer or others without any withdrawals;" "[o]pening of more than one account by a customer in his name in the same bank without a clear reason, and existence of inter account transfer among these accounts;" and "[p]ayments or transfers by many persons to a single account whether in cash or through internal drafts;" and "[c]ash transfers in large amounts;" and "[t]he bank is doubtful about the customer's identification for any reason." *See* | 301.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as incomplete:<br><br>(1) The document cited by Plaintiffs includes the official guidelines in Arabic, as well as an English portion, which is not a certified translation of the Arabic text. *Compare* Pls. Ex. 58 (1995 SAMA Guidelines) *and* ARB. Ex. 67 (Certified Translation of 1995 SAMA Guidelines) (showing differences between the English portions and an English translation of the Arabic portions).<br><br>(2) The Arabic portion contained the official, binding text. *See* ARB Ex. 50 (Hobayb Dep. Tr.) at 94:10-20.<br><br>(3) Instead of "[c]ash deposits of large amounts whose source is apparently one of the banks in the same region," the official Arabic portion states "[c]ash deposits of large amounts whose source is *clearly* one of the banks in the same region." ARB Ex. 67 (Certified Translation of 1995 SAMA Guidelines) at 19 (emphasis added). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
|  | Ex. 58, 1995 Guidelines at 151-153. | (4) Further, the SAMA Guidelines do not indicate that all cash transactions were suspicious or indicators of money laundering. Saudi Arabia was, and remains, a cash-based society, and large cash deposits were not unusual during the relevant period. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 240:2-20, 247:7-10; *see also* ARB Ex. 2 (Hobayb Rep.) at 30 (explaining the prevalence of cash transactions in Saudi society during the 1990s, especially for charities and their officials). |  |
| 302 | The 1995 Guidelines were effective as of the date of their distribution to Abdullah al Rajhi and the other General Managers of banks in Saudi Arabia. *Id.* at 146. | 302.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as incomplete:<br><br>(1) The Guidelines state they are "effective from the date of the accompanying circular." Pls. Ex. 58 (1995 AML Guidelines) at PDF p. 17. The Arabic language "Circular to All Commercial Banks Operating in the Kingdom" is dated January 15 1996 / 24/08/1416 Hijri. ARB. Ex. 67 (Certified Translation of 1995 SAMA Guidelines) at 29. |  |
| 303 | At least nominally, ARB implemented the 1995 Guidelines principally through sections of its Branch Manual ("ARB Branch Manual") that issued on January 1, 1997, and an Anti-Money Laundering Procedure Guide ("ARB AML Guide") issued in November 1998. *See* Ex. 188, ARB Branch Manual, Ex. 189, ARB AML Guide; Ex. 4, Winer Report at 137. | 303.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as conclusory; unsupported by evidence:<br><br>(1) Plaintiffs' statement that Al Rajhi Bank "implemented the 1995 [SAMA] Guidelines" "[a]t least nominally" is an unsupported legal conclusion to which no response is required.<br><br>Disputed as controverted by the evidence: | 303.<br><br>Pl. Ex. 4, p. 137:<br><br>- Expert is not qualified to opine on SAMA regulations. *See* Fed. R. Evid. 702. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (1) Al Rajhi Bank implemented the 1995 SAMA Guidelines more than "nominally." *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 105:13-21, 106:6-9 and Errata at 105:15-16, 106:6-8; *see also* ARB Ex. 2 (Hobayb Rep.) at 8-15 (discussing Al Rajhi Bank's implementation of policies and procedures consistent with SAMA's instructions). | |
| | | (2) Al Rajhi Bank's 1997 Branch Instructions Manual, which guided the activities and procedures of the Bank's branches during the relevant period, followed SAMA guidelines on anti-money laundering. *See* Pls. Ex. 188 (Al Rajhi Bank Branch Manual) at ARB-0000164, ARB-0000266; ARB Ex. 2 (Hobayb Rep.) at 8-12 (highlighting provisions of the 1997 Al Rajhi Bank Branch Instructions Manual that reflect standards established in FATF Recommendations and the 1995 SAMA AML Guidelines). | |
| | | (3) Following SAMA guidelines, Al Rajhi Bank had an AML Unit focused on developing AML procedures and monitoring compliance across the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 106:6-9 and Errata at 106:6-8; Pls. Ex. 189 (Al Rajhi Bank AML Guide) at ARB-00000736 (explaining that AML Unit "[u]pdate[d] anti-money laundering policies and procedures [] according to developments in the methods, processes, and activities that may be used in money laundering activity"); *see also* ARB Ex. 2 (Hobayb Rep.) at 20 (explaining AML Unit's role in preventing money laundering). | |
| | | (4) Al Rajhi Bank trained its employees in protocols focused on anti-money laundering, combatting the financing of terrorism, and identifying suspicious transactions. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 31:23-32:8; *see also* Pls. Ex. 189 (Al Rajhi Bank AML Guide) at ARB-00000736 (explaining AML Unit's responsibility to "[c]oordinat[e with the various units on] the preparation and implementation of the necessary training and | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | guidance programs to the company's employees and providing the necessary advice regarding all aspects related to money laundering"). | |
| 304 | The requirements of the ARB Branch Manual and ARB AML Guide are set forth in full in those documents, and discussed at length in the expert report of Jonathan Winer. *See* Ex. 4, Winer Report at 137-146; Ex. 188, ARB Branch Manual, Ex. 189, ARB AML Guide. | 304.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as misleading:<br><br>(1) Jonathan Winer, who does not speak or read Arabic and lacks expertise on Saudi banking regulations, did not "discuss[] at length" Al Rajhi Bank's Branch Manual and AML Guide in his report. Instead, Winer's report copied verbatim excerpts from Al Rajhi Bank's Branch Manual and AML Guide, translated into English.<br><br>(2) To the extent that Plaintiffs do rely on Winer's opinions about Al Rajhi Bank, Winer's opinions about that topic are not reliable and should not be credited. | 304.<br><br>Pl. Ex. 4, p. 137-146:<br><br>- Should be excluded as needless presentation of cumulative evidence for quoting ARB Branch Manual and ARB AML Guide. *See* Fed. R. Evid. 403.<br><br>- Should be excluded to the extent expert testimony is a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |
| 305 | Among other processes and requirements, the AML Guide indicated that ARB had implemented an automated suspicious activity reporting software program, as required by the 1995 Guidelines, which reported suspicious transactions to the AML Unit. Reported transactions were subject to mandatory investigations, and recordkeeping requirements. Ex. 189, ARB AML Guide at 737-738. | 305.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as incomplete:<br><br>(1) Al Rajhi Bank's Saudi banking expert, Fawzi Al Hobayb, testified that the AML Unit did not flag every transaction exceeding 100,000 SAR given the prevalence of large cash transactions. Instead, the automated system flagged the first instance of a transaction over 100,000 SAR through a customer's account. After an investigation by bank personnel into the source of funds for the transfer, the AML Unit would "de-flag" similar future | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | transactions. *See* ARB Ex. 50 (Hobayb Dep. Tr.) at 198:15-199:13.<br><br><u>Disputed as conclusory:</u><br><br>(1) The cited source does not state that "[r]eported transactions were subject to mandatory investigations." | |
| 306 | ARB consistently and extensively failed to comply with the basic AML and KYC requirements imposed by international standards and the 1995 Guidelines, as well as ARB's own (nominal) procedures, in relation to the opening and operation of its accounts for al Qaeda's financial facilitators, charity fronts, Suleiman al Rajhi's committee/foundation, and the individual officials of the charities and committee/foundation. *See* Ex. 4, Winer Report at 146-203. | 306.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading).</u><br><br><u>Disputed as vague and conclusory:</u><br><br>(1) Plaintiffs' assertion that Al Rajhi Bank "consistently and extensively failed to comply with the basic AML and KYC requirements imposed by international standards and the 1995 Guidelines, as well as ARB's own (nominal) procedures" are conclusory and do not cite to evidence supporting that assertion.<br><br>(2) Plaintiffs' averments regarding "al Qaeda's financial facilitators" and "charity fronts" also are vague and conclusory. Plaintiffs do not identify any specific entity or individual to whom these terms apply or provide evidence supporting those characterizations.<br><br><u>Disputed as unsupported by evidence:</u><br><br>(1) Disputed to the extent that Plaintiffs' citation to nearly 60 pages of Winer's report does not cite to "particular parts of materials in the record." *See* Fed. R. Civ. P. 56(c); *see also* Committee Note to Local Rule 56.1 (explaining that each statement "must be supported by citations to specific evidence"). | 306.<br><br><u>Pls. Ex. 4, p. 146-203:</u><br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

<u>Disputed as ambiguous; vague:</u>

(1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.

<u>Disputed as controverted by the evidence:</u>

(1) Plaintiffs' characterization of Al Rajhi Bank's procedures as "nominal" is controverted by the evidence for reasons discussed above in response to ¶ 303.

(2) Plaintiffs' averment that Al Rajhi Bank "consistently and extensively failed to comply with the basic AML and KYC requirements imposed by international standards and the 1995 Guidelines, as well as ARB's own (nominal) procedures" is controverted by the evidence.

(3) Following SAMA guidelines, Al Rajhi Bank had an AML Unit focused on developing AML procedures and monitoring compliance across the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 106:6-9 and Errata at 106:6-8; Pls. Ex. 189 (Al Rajhi Bank AML Guide) at ARB-00000736 (explaining that AML Unit "[u]pdate[d] anti-money laundering policies and procedures according to developments in the methods, processes, and activities that may be used in money laundering activity"); *see also* ARB Ex. 2 (Hobayb Rep.) at 20 (explaining AML Unit's role in preventing money laundering).

(4) The Bank's Internal Audit Department, which functioned independently from the Bank's executive and operational functions, evaluated and enforced adherence to internal policies and procedures, and applicable law, across the Bank. *See* ARB Ex. 17 (Al Rajhi Bank Gen. Policies and Authorizations Guide) at 3-4, 8; *see also, e.g.*, ARB Ex. 19 (Al Rajhi Bank Internal Audit Plan for FY 1999); ARB Ex. 20 (Al Rajhi Bank Internal Audit Plan for

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | FY 2001); *see also* ARB Ex. 3 (Pasley Rep.) at 9 (explaining that the Bank's internal audit plans "show very comprehensive procedures for audits to protect the Bank from violations of laws, rules and regulations and to ensure the proper operation of its branches"); *id.* (concluding that the Bank's "comprehensive" internal audit plans "illustrate that the Bank had procedures for preventing and detecting noncompliance with internal banking policies"); ARB Ex. 2 (Hobayb Rep.) at 18-19 (discussing the "Internal Audit Committee" which "oversaw regular audits of the Bank" and "continuously monitored the Bank's compliance with relevant internal and governmental rules and procedures."). <br><br>(5) Further, as required by Saudi law, Al Rajhi Bank had two independent external auditors, whose responsibilities included "examin[ing] the bank's policies, procedures and internal control systems aimed at combating money laundering activities" and "testing the enforcement of such policies, and procedures." *See* ARB Ex. 22 (Banking Control Law (Royal Decree No. M/5 of June 11, 1966)) at 11-12 (requiring Saudi banks to have two external auditors); *see also* Pls. Ex. 3 (Galloway Dep. Tr.) at 109:16-110:5, 345:19-23 and Errata at 109:18, 109:21-22, 110:4, 345:22; Pls. Ex. 58 (1995 SAMA AML Guidelines) at p. 12 (outlining responsibilities of external auditors); *see also, e.g.*, Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Rep.) at PDF p. 77 (external auditors' report signed by Al Rashed Certified Public Accounts and Al Juriad & Company (Member of PricewaterhouseCoopers)). <br><br>(6) Al Rajhi Bank had "zero tolerance for any deviations" from the Bank's policies and applicable law. Pls. Ex. 3 (Galloway Dep. Tr.) at 105:18-106:3. If any audit or SAMA inspection uncovered any such "deviations," the deviating branches were required to take "corrective action" within a "time-bound window." *See id.*; *see also* ARB Ex. 21 (Al Rajhi Bank Authorities of the Audit Committee Manual) at ¶ 27 (stating that the "Audit Committee | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | discusses the external auditors' reports with them, whether their audit has revealed no violations of the Banking Control Law or the other laws and regulations, their certificates on the audit of the provision for doubtful debts, and their conclusions regarding the adequacy of this provision"). | |
| | | (7) Plaintiffs have no evidence that SAMA's audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations, including those related to antimoney laundering. *See* ARB Ex. 3 (Pasley Rep.) at 11 ("As far as I have seen, SAMA never determined that the Bank was materially noncompliant with SAMA's requirements."); ARB Ex. 2 (Hobayb Rep.) at 4 (noting that SAMA was a "rigorous regulator" that subjected Saudi banks to "robust anti-money laundering controls on par with global standards."); Pls. Ex. 184 (Hobayb Dep. Tr.) at 36:12-13 (testifying that Saudi "banks are required to comply with [their] regulator [SAMA] and its regulations"). | |
| | | (8) Plaintiffs have no evidence that routine internal or external audits of Al Rajhi Bank during the relevant period ever found the Bank was materially noncompliant with SAMA's guidelines and regulations or the Bank's internal policies. *See* ARB Ex. 2 (Hobayb Rep.) at 18 ("I have not seen anything to indicate that Al Rajhi Bank . . . was noncompliant with auditing and regulatory standards and procedures."); *id.* at 20 (noting "no evidence has been presented that these external auditors flagged noncompliance by Al Rajhi Bank"); ARB Ex. 3 (Pasley Rep.) at 9 ("The fact that these audits failed to reveal significant issues is evident from the Bank's Annual Reports, which are public, and which discuss the audits."); *id.* ("Presumably — given no evidence to the contrary — these audits did not uncover any significant noncompliance."); *see also, e.g.*, Pls. Ex. 6 (1998 Al Rajhi Bank Ann. Rep.) at PDF p. 72; Pls. Ex. 7 (1999 Al Rajhi Bank Ann. Rep.) at PDF p. 77; Pls. Ex. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | 8 (2000 Al Rajhi Bank Ann. Rep.) at PDF p. 42; ARB Ex. 16 (2001 Al Rajhi Bank Ann. Rep.) at PDF p. 74 (external auditors' reports for 1998-2001 identifying no noncompliance by the Bank with its internal policies or local law). | |
| 307 | As Plaintiffs' expert Jonathan Winer explains in his expert report, "[i]nstead of adhering to its regulatory obligations and its own policies and procedures, ARB permitted Da'wah organizations and principals of those entities to engage in a broad range of financial activities that presented obvious red flags and terrorism financing concerns, with essentially no limitations or meaningful protections." *See* Ex. 4, Winer Report at 131; *id.* at 130-202. | 307.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX.<br><br>(2) Immaterial, in particular, because even if credited, Plaintiffs do not trace any transactions through accounts at Al Rajhi Bank to terrorism financing, Al Qaeda, or the 9/11 Attacks.<br><br>Disputed as unsupported by evidence:<br><br>(1) Disputed to the extent that Plaintiffs' citation to over 70 pages of Winer's report does not satisfy Rule 56's requirement to cite to "particular parts of materials in the record." *See* Fed. R. Civ. P. 56(c); *see also* Committee Note to Local Rule 56.1 (explaining that each statement "must be supported by citations to specific evidence").<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' averment is controverted by evidence for the reasons discussed above in response to ¶¶ 303, 306. | 307.<br><br>Pls. Ex. 4, p. 130-202:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |
| 308 | Jonathan Winer describes the nature and scope of these AML and KYC violations in detail in his expert report, which, as described more fully therein, include the following systematic departures | 308.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as conclusory; unsupported by evidence: | 308.<br><br>Pls Ex. 4, p. 146-203:<br><br>- Expert is not qualified to offer opinion on Saudi |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | that enabled the use of ARB's accounts for financing of al Qaeda. *See* Ex. 4, Winer Report at 146-203. | (1) Plaintiffs do not cite to any evidence supporting that Al Rajhi Bank made "systematic departures" from applicable AML and KYC standards, let alone those that "enabled the use of [Al Rajhi Bank]'s accounts for financing of al Qaeda."<br><br>(2) Plaintiffs do not cite to any evidence supporting that any account at Al Rajhi Bank was used for the "financing of al Qaeda."<br><br>– In jurisdictional discovery, the Bank produced 508 statements of accounts, including 440 charity customer accounts. *See* Erb Decl. ¶¶ 3-5. Plaintiffs have no evidence that any of these account statements shows any transaction that has been traced to Al Qaeda or to the financing, planning, or carrying out of any terrorism or plot of terrorism against the United States, including the 9/11 Attacks. *See, e.g.*, Pls. Aver. §§ X, XI; Pls. Ex. 4 (Winer Rep.) at § 11.<br><br>(3) Disputed to the extent that Plaintiffs' citation to over 70 pages of Winer's report does not satisfy Rule 56's requirement to cite to "particular parts of materials in the record." *See* Fed. R. Civ. P. 56(c); *see also* Committee Note to Local Rule 56.1 (explaining that each statement "must be supported by citations to specific evidence").<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' averment is controverted by evidence for the reasons discussed above in response to ¶¶ 303, 306. | Banking regulations. *See* Fed. R. Evid. 702. |
| 309 | For instance, in relation to its opening of nearly 100 separate accounts for AHIF and over 300 separate accounts for IIRO, ARB failed to comply with even the most basic account opening and | 309.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as vague; unsupported by evidence: | 309.<br><br>Pls. Ex. 4, p. 146-148, 150-154:<br><br>- Expert is not qualified to offer opinion on Saudi |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | KYC requirements. *See* Ex. 4, Winer Report at 146-148, 150-154. | (1) Plaintiffs' references to "AHIF" and "IIRO" are vague. Al Rajhi Bank did not hold accounts for any IIRO or Al Haramain branches outside of Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13.<br><br>Disputed as conclusory; incomplete; controverted by the evidence:<br><br>(1) Plaintiffs averments that Al Rajhi Bank "failed to comply with even the most basic account opening and KYC requirements" is vague and conclusory. Plaintiffs do not identify any specific requirements that Al Rajhi Bank purportedly violated.<br><br>(2) In fact, Al Rajhi Bank did comply with account opening and KYC requirements for charities, which had to be licensed by the government of Saudi Arabia in order to open and maintain accounts at Saudi banks.<br><br>   – With respect to "AHIF," Al Rajhi Bank only held accounts for Al Haraiman KSA and maintained records showing that Al Haramain KSA was a government-licensed charity. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18; ARB Ex. 41 (Ltrs. from Ministry of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-00038586 (stating that Al Haramain operates under the supervision of the Saudi Ministry of Islamic Affairs); *see also* Pls. Ex. 44 (Staff Monograph) at 12 ("At least two Saudi government officials have supervisory roles (nominal or otherwise) over al Haramain."); ARB Ex. 24 (Ltr. from Al Rajhi Bank Gen. Mgr. to Governor of SAMA, Jan. 4, 2004) at ARB-00014545; ARB Ex. 25 (Ltr. from Al Rajhi Bank Gen. Mgr. to Governor of SAMA) at ARB-00014546; Pls. Ex. 59 (Ltr. from Al Rajhi Bank Gen. Mngr. to Ministry of Islamic Affairs) at ARB-39945-ARB-39946 (Al Rajhi Bank confirming post-9/11 that Al Haramain KSA continued to be a licensed charity); ARB | Banking regulations. *See* Fed. R. Evid. 702. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Ex. 26 (March 13, 2004 Ltr. from Ministry of Islamic Affairs) at ARB-39505 (confirming that Al-Haramain KSA was permitted to engage in charitable work in the Kingdom and that there were no objections to Al-Haramain opening an account at Al Rajhi Bank); ARB Ex. 27 (Ltrs. from Ministry of Justice) at ARB-00039410 (statement confirming that Al-Haramain KSA was "legally established in . . . Saudi Arabia and are permitted to operate under its laws and regulations"); ARB Ex. 56 (Ltr. from the Gov. of Yanbu, June 1, 1999) at ARB-00038818 (urging cooperation with the newly opened Al-Haramain office in the region); ARB Ex. 44 (Business License for Al-Haramain offices in Jubail Municipality) at ARB-00038837 (granting a business storefront license for the Al Haramain office in Jubail Municipality); ARB Ex. 43 (Ltr. from the Gen. Mngr. of the Eastern Province of the Ministry of Islamic Affairs, July 14, 1998) at ARB-38741 (noting Al-Haramain is under the supervision of the Ministry of Islamic Affairs and asking for cooperation and in its missionary and humanitarian work); ARB Ex. 42 (Ltr. from Dep. Minister of Islamic Affairs, Jan. 29, 1997) at ARB-0038613 (permitting the operation of an Al Haramain account at Al Rajhi Bank branch); ARB Ex. 41 (Ltrs. from Ministry of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-38585 (asking to transfer certain accounts into the name of Al-Haramain Islamic Foundation and keep Aqeel Al-Aqeel as the signatory). <br><br> – With respect to "IIRO," Al Rajhi Bank only held accounts for IIRO KSA and maintained records showing that IIRO KSA was a government-licensed charity. *See* Pls. Ex. 3 (Galloway Dep. Tr.) 231:24-232:19 and Errata at 232:19; ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-00013679-88, ARB-00013691, ARB-00013696 (recognizing the founding or IIRO by the Deputy Prime | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Minister of Saudi Arabia and the Ministry of Foreign Affairs); ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545; ARB Ex. 25 (Ltr. from Al Rajhi Bank Gen. Mgr. to Gov. of SAMA, Jan. 26, 2004) at ARB-00014546 (noting that IIRO KSA was licensed by appropriate Saudi authorities); ARB Ex. 40 (Ltrs. from the Ministry of Interior in the Emirate of Asir) at ARB-00037502-511 (discussing the opening of IIRO office in the Emirate of Asir in 1990); ARB Ex. 39 (Ltr. from the Governor of the Asir Emirate to the Chairman of the Imam Muhammad ibn Saud Islamic University) at ARB-00037838-39 (affirming the opening of an IIRO office in the region, dated September 20, 1989); ARB Ex. 38 (Business license in Jubail Municipality) at ARB-00013527 (permitting IIRO to collect donations, dated January 26, 1994).<br><br>(3) Plaintiffs do not cite to any evidence showing that a charity holding multiple accounts violated applicable banking law and standards during the relevant period.<br><br>– In fact, the Bank understood the different charity accounts to be dedicated to different charitable projects, and at the time, SAMA did not prohibit the number of accounts a charity could hold. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 82:2-8 and Errata at 82:2; *see also* ARB Ex. 2 (Hobayb Rep.) at 24-25.<br><br>– The Bank's chairman testified that "it's not unusual to have that big number of accounts for a charity." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 79:15-18.<br><br>– In fact, post-9/11, SAMA instructed banks to consolidate all of a charity's "secondary accounts" under a main, primary account, but still did not restrict the number of secondary | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | accounts a single charity could have at one bank. *See* ARB Ex. 2 (Hobayb Rep.) at 24-25. | |
| 310 | Indeed, to the extent ARB was even able to provide account opening documents for its ARB and IIRO accounts, the forms typically included only the minimal elements of providing contact information, such as an address to send mail, and a telephone number, and frequently omitted required data field such as "occupation," and "legal status." The level of care given the data entry for such fields was minimal. *Id.* at 146. | 310.<br><br>_Immaterial for the reasons discussed above in response to Section IX (heading)._<br><br>(1) Moreover, Plaintiffs do not and cannot explain why it would be necessary even in the context of AML and KYC practice to repeatedly collect identification documentation about the same customer, particularly when the customer was a prominent charity organization well known to the Bank.<br><br>_Disputed as vague:_<br><br>(1) Plaintiffs' reference to "ARB and IIRO accounts" is vague.<br><br>(2) In particular, "IIRO accounts" is vague for the reasons discussed above in response to ¶ 309.<br><br>_Disputed as conclusory; controverted by the evidence:_<br><br>(1) Plaintiffs' averment that Al Rajhi Bank collected "minimal" information at account opening is conclusory and vague.<br><br>(2) Plaintiffs do not measure Al Rajhi Bank's purported conduct against any specific and applicable AML or KYC requirement.<br><br>(3) In fact, Plaintiffs' averment shows Al Rajhi Bank did comply with SAMA regulations related to account opening, which required Saudi banks to open an account for any customer with valid identification documents. *See* ARB Ex. 2 (Hobayb Rep.) at 14-15, 25 (discussing SAMA regulations related to account opening during the relevant period). | 310.<br><br>_Pls. Ex. 4, p. 146:_<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (4) Plaintiffs' averment that "required" information was "frequently omitted" is conclusory and does not cite to supporting evidence. | |
| 311 | Many AHIF accounts had no identifier to differentiate the use of any particular account as being for any specific project, or activity. Instead, the ARB documents are generally silent about the purposes of any new accounts opened by AHIF, and the uses to which funds flowing through them would be put. *Id.* at 147. | 311.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as conclusory and vague:<br><br>(1) Plaintiffs' characterizations of "[m]any AHIF accounts" and that Al Rajhi Bank documents are "generally silent" are vague and conclusory.<br><br>(2) In particular, "AHIF accounts" is vague for the reasons discussed above in response to ¶ 309.<br><br>(3) Plaintiffs do not identify specific accounts that purportedly lacked information related to "any specific project, or activity."<br><br>(4) Plaintiffs do not identify any applicable law requiring that all charity accounts be labeled with a "specific project." | 311.<br><br>Pls. Ex. 4, p. 147:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |
| 312 | Occasionally, the documents indicate that ARB did receive incidental information concerning a proposed new account. A handful of documents showed that some of the accounts related to broad areas of foreign activity, such as "Africa," or "Asia," or "Europe," and these sometimes listed non-inclusive examples of countries within that region, without defining the precise activities that would be | 312.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>(2) In addition, immaterial because Plaintiffs do not identify any applicable law or regulation requiring that all charity accounts be labeled with a specific project and "precise activities."<br><br>Disputed as conclusory and vague: | 312.<br><br>Pls. Ex. 4, p. 150-152:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | undertaken in these specific countries. *Id.* at 150-152. | (1) Plaintiffs' averments contain vague and imprecise terms, including "[o]ccasionally," "incidental information," "handful of documents," "foreign activity," and "precise activities." | |
| 313 | For example, a document dated September 26, 1994, from al-Aqil as Director General of Al-Haramain advises the director of the ARB branch at Al Olaya Street that there are eleven accounts at his branch, which include the accounts for Al-Haramain's "General Account," "Europe Committee," "Africa Committee," "Zakat," "Continuous Alms (Inside the Saudi Kingdom), "Indian Subcontinent Committee," "Mosques Committee," "Middle East Committee," "Iftar of Fasting People Committee," "Sponsorships Committee," and "Islamic Book Publishing Committee." *Id.* at 150; Ex. 100, ARB 38534-38535. | 313.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 312. | 313.<br><br>Pls. Ex. 4, p. 150:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |
| 314 | In another undated document from the ARB customer information file pertaining to AHIF, and AHIF official reports to ARB that AHIF then held at least 15 accounts at ARB, and affirmed that a number of them were being used for activities outside of Saudi Arabia. | 314.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 312.<br><br>Disputed as vague: | 314.<br><br>Pls. Ex. 4, p. 151-152:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | *See* Ex. 99 (Lormel Exhibit 20), ARB 38816 (undated AHIF document from ARB files that specifies 15 Committees associated with AHIF for which accounts were maintained at ARB); Ex. 4, Winer Report at 151-152. | (1) Plaintiffs' references to "AHIF" are vague for the reasons discussed above in response to ¶ 309. |  |
| 315 | These included, for the Asia Committee, funding to Palestine and Chechnya, two conflict zones; miscellaneous activities that included animal sacrifice and vows; book printing Da'Wah; Institute sponsorship; Quran memorization; heath clinics; propagators, and orphans' sponsorship.  For the Africa Committee, there were similar categories of projects, plus chastity belts, but no country was mentioned.  For Europe, similar categories of activities were listed, and three countries:  Albania, Bosnia and Kosovo - again areas of active armed conflict where al Qaeeda was active in the mid and late 1990s.  For the Zakat Committee, the entry merely listed "Zakat outside of the Saudi Kingdom."  *See* Ex. 4, Winer | 315.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 312.<br><br>Disputed as misleading; incomplete:<br><br>(1) Even if credited, Plaintiffs' assertion that Al Haramain KSA had accounts dedicated to efforts in "areas of active armed conflict where al Qaeda was active in the mid and late 1990s," ignores that those "areas of active armed conflict" were also areas where humanitarian crises occurred and where legitimate humanitarian charitable organizations also operated "in the mid and late 1990s." Pls. Ex. 99 (Al Haramain Account Numbers) (describing the humanitarian activities Al Haramain engaged in around the world); *see also* Pls. Ex. 4 (Winer Rep.) at 179 (acknowledging that "legitimate humanitarian activities" took place in areas of "active, armed conflict"); Pls. Ex. 3 (Galloway Dep. Tr.) at 114:11-17 (discussing the Bank's knowledge of the charitable activities done by licensed charities). | 315.<br><br>Pls. Ex. 4, p. 151-152:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Report at 151-152; Ex. 99 (Lormel Exhibit 20), ARB 38816. | | |
| 316 | ARB did not conduct required diligence or verification inquiries concerning the use or necessity of these accounts, despite the fact that the information available to ARB confirmed that these accounts were to be used to send money to foreign jurisdictions, including jurisdictions that raised particular money laundering and terrorist financing concerns. These included jurisdictions with lax or ineffective AML regulations and oversight, areas were terrorists were known to be active, and conflict regions. *See* Ex. 4, Winer Report at 151-156. | 316.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 312.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "required diligence or verification inquiries concerning the use or necessity of these accounts" is vague. Plaintiffs do not measure Al Rajhi Bank's purported failure to act against any specific and applicable AML or KYC requirement.<br><br>(2) Plaintiffs' reference to "foreign jurisdictions, including jurisdictions that raised particular money laundering and terrorist financing concerns" is vague.<br><br>(3) Plaintiffs' reference to "lax or ineffective AML regulations and oversight" is vague.<br><br>(4) Plaintiffs' reference to "areas w[h]ere terrorists were known to be active, and conflict regions" is vague.<br><br>Disputed as misleading; incomplete:<br><br>(1) To the extent "foreign jurisdictions" refers to "areas w[h]ere terrorists were known to be active, and conflict regions," even if credited, Plaintiffs' assertion ignores that those jurisdictions were also areas where humanitarian crises occurred and where legitimate humanitarian charitable organizations also operated during the relevant period. *See* Pls. Ex. 99 (Al Haramain Account Numbers) (describing the humanitarian activities Al Haramain engaged in around the world); *see also* Pls. Ex. 4 (Winer Rep.) at 179 (acknowledging that "legitimate humanitarian activities" took place in areas of "active, armed conflict"); Pls. Ex. 3 (Galloway | 316.<br><br>Pls. Ex. 4, p. 151-156:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Dep. Tr.) at 114:11-17 (discussing the Bank's knowledge of the charitable activities done by licensed charities). | |
| | | <u>Disputed as controverted by the evidence:</u> | |
| | | (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 317 | Moreover, to the limited extent ARB's records indicated that it received any information about the alleged purpose of its accounts for AHIF and IIRO, the descriptions of the purposes for many of the accounts were identical, raising obvious questions about the necessity and true purpose of the accounts, which ARB was required to inquire about and resolve before opening and operating the accounts. *See* Ex. 78, Transcript, February 21, 2019 Deposition of Adnan Basha ("Basha Deposition"), at 265-278. | 317. <br><br> <u>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 312.</u> <br><br> <u>Disputed as vague:</u> <br><br> (1) Plaintiffs' reference to "accounts for AHIF and IIRO" is vague for the reasons discussed above in response to ¶ 309. <br><br> <u>Disputed as conclusory:</u> <br><br> (1) The cited source, the deposition testimony of an individual with no affiliation with Al Rajhi Bank, does not reveal any conduct by the Bank and does not support any part of Plaintiffs' statement. <br><br> (2) Plaintiffs do not identify any specific regulation or guideline supporting the averment that Al Rajhi Bank "was required to inquire about and resolve" the "necessity and true purpose" of accounts before "opening and operating them." Further, Plaintiffs cite no evidence supporting the Al Rajhi Bank did not make such inquiries. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, | 317. <br><br> <u>Pls. Ex. 78:</u> <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lack of personal knowledge. *See* Fed. R. Evid. 602. <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 318 | In addition, the records produced by ARB indicate that it did not even obtain required copies of original or authenticated licenses verifying the charities' legal status and activities they were authorized to conduct, as required at the time of establishing customer relationships, opening any new account, and every three years thereafter. *See* Ex. 4, Winer Report at 111, 147-148. | 318.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as controverted by the evidence:<br><br>(1) During the relevant period, Al Haramain was a charity licensed by the relevant authorities in Saudi Arabia, and Al Rajhi Bank took efforts to confirm the Al Haramain's authorization to operate in Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18; ARB Ex. 41 (Ltrs. from Ministry of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-00038586 (stating that Al Haramain operates under the supervision of the Saudi Ministry of Islamic Affairs); *see also* Pls. Ex. 44 (Staff Monograph) at 12 ("At least two Saudi government officials have supervisory roles (nominal or otherwise) over al Haramain."); ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545; ARB Ex. 25 (Ltr. from Al Rajhi Bank Gen. Mngr. to Governor of SAMA) at ARB-00014546; Pls. Ex. 59 (Ltr. from Al Rajhi Bank Gen. Mngr. to Ministry of Islamic Affairs) at ARB-39945-ARB-39946 (Al Rajhi Bank confirming post-9/11 that Al Haramain KSA continued to be a licensed charity); ARB Ex. 26 (March 13, 2004 Ltr. from Ministry of Islamic Affairs) at ARB-39505 (confirming that Al-Haramain KSA was permitted to engage in charitable work in the Kingdom and that there were no objections to Al-Haramain opening an account at Al Rajhi Bank); ARB Ex. 27 (Ltrs. from Ministry of Justice) at ARB-00039410 (statement confirming that Al-Haramain KSA was "legally established in . . . Saudi Arabia and are permitted to operate under its laws and regulations"); ARB | 318.<br><br>Pls. Ex. 4, p. 147-148:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Ex. 56 (Ltr. from the Gov. of Yanbu, June 1, 1999) at ARB-00038818 (urging cooperation with the newly opened Al-Haramain office in the region); ARB Ex. 44 (Business License for Al-Haramain offices in Jubail Municipality) at ARB-00038837 (granting a business storefront license for the Al Haramain office in Jubail Municipality); ARB Ex. 43 (Ltr. from the Gen. Mngr. of the Eastern Province of the Ministry of Islamic Affairs, July 14, 1998) at ARB-38741 (noting Al-Haramain is under the supervision of the Ministry of Islamic Affairs and asking for cooperation and in its missionary and humanitarian work); ARB Ex. 42 (Ltr. from Dep. Minister of Islamic Affairs, Jan. 29, 1997) at ARB-0038613 (permitting the operation of an Al Haramain account at Al Rajhi Bank branch); ARB Ex. 41 (Ltrs. from Ministry of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-38585 (asking to transfer certain accounts into the name of Al-Haramain Islamic Foundation and keep Aqeel Al-Aqeel as the signatory).<br><br>(2) During the relevant period, IIRO also was a charity licensed by the relevant authorities in Saudi Arabia, and the Bank confirmed that IIRO was authorized to operate in the Saudi Arabia. *See* Pls. Ex. 3 (Galloway Dep. Tr.) 231:24-232:19 and Errata at 232:19; ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-00013679-88, ARB-00013691, ARB-00013696 (recognizing the founding or IIRO by the Deputy Prime Minister of Saudi Arabia and the Ministry of Foreign Affairs); ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545; ARB Ex. 25 (Ltr. from Al Rajhi Bank Gen. Mgr. to Gov. of SAMA, Jan. 26, 2004) at ARB-00014546 (noting that IIRO KSA was licensed by appropriate Saudi authorities); ARB Ex. 40 (Ltrs. from the Ministry of Interior in the Emirate of Asir) at ARB-37502-511 (discussing the opening of IIRO office in the Emirate of Asir in 1990); ARB Ex. 39 (Ltr. from the Governor of the Asir Emirate to the Chairman of the | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Imam Muhammad ibn Saud Islamic University) at ARB-00037838-39 (affirming the opening of an IIRO office in the region, dated September 20, 1989); ARB Ex. 38 (Business license in Jubail Municipality) at ARB-00013527 (permitting IIRO to collect donations, dated January 26, 1994). | |
| 319 | Instead, ARB's internal records and communications with the Saudi government indicate that it sought to obtain those licenses only after the September 11th attacks, amidst the heightened scrutiny of the charities' and ARB's roles in financing terrorism. *See* Ex. 4, Winer Report at 159-162; Ex. 1, Al Rajhi Deposition at 133-139; Ex. 59, (Abdullah al Rajhi Exhibit 33) ARB 39945-39946. | 319.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as controverted by the evidence:<br><br>(1) Al Rajhi Bank's "internal records and communications with the Saudi government" show that Al Rajhi Bank received confirmation that its charity customers were licensed and authorized to operate before the 9/11 Attacks. *See* ARB Ex. 56 (Ltr. from the Governor of Yanbu, June 1, 1999) at ARB-00038818 (urging cooperation with the newly opened Al Haramain office); ARB Ex. 44 (Business License for Al-Haramain offices in Jubail Municipality) at ARB-00038837 (granting a business storefront license for the Al-Haramain offices in Jubail Municipality); ARB Ex. 43 (Ltr. from the General Manager of the Eastern Province of the Ministry of Islamic Affairs) at ARB-38741 (noting Al Haramain is under the supervision of the Ministry of Islamic Affairs and discussing Al Haramain's missionary and humanitarian work, dated July 14, 1998); ARB Ex 42 (Ltr. from the Vice Minister to Islamic Affairs to General Director at ARB-0038613 (permitting the operation of an Al Haramain account at Al Rajhi Bank branch); ARB Ex. 40 (Ltrs. from the Ministry of Interior in the Emirate of Asir) at ARB-37502-511 (discussing the opening of IIRO office in the Emirate of Asir in 1990); ARB Ex. 39 (Ltr. from the Governor of the Asir Emirate to the Chairman of the Imam Muhammad ibn Saud Islamic University) at ARB-00037838-39 (affirming the opening of an IIRO office in the region, dated September 20, 1989); ARB Ex. 38 | 319.<br><br>Pls. Ex. 4, p. 156-162:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (Business license in Jubail Municipality) at ARB-00013527 (permitting IIRO to collect donations, dated January 26, 1994); ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-00013679-88, 13696 (recognizing the founding of IIRO by Deputy Prime Minister of Saudi Arabia and the Ministry of Foreign Affairs in 1979). <br><br> <u>Disputed as incomplete:</u> <br><br> (1) Following the post-9/11 designations of some of Al Haramain's branches and these new regulatory mandates concerning charities licenses, Al Rajhi Bank sought confirmation from the Saudi government about Al Haramain-KSA's authorization to maintain bank accounts. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18; Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep.Tr.) at 137:6-138:15 and Errata at 137:12, 137:16, 137:22, 137:23, 138:2. <br><br> (2) On January 4, 2004, Al Rajhi Bank's General Manager, Abdullah bin Sulaiman Al Rajhi, wrote to SAMA seeking guidance on whether the Bank was authorized to continue maintaining accounts for Al Haramain-KSA. In his letter, Abdullah bin Sulaiman Al Rajhi noted that Al Haramain-KSA was licensed by the Minister of the Interior. *See* ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545. <br><br> (3) Abdullah bin Sulaiman Al Rajhi also asked whether the Bank was authorized to continue dealing with IIRO KSA. In his letter, Abdullah bin Sulaiman Al Rajhi noted that IIRO KSA was licensed by appropriate Saudi authorities. *See* ARB Ex. 24 (Jan. 4, 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-00014545. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (4) A few weeks later, on January 26, 2004, Abdullah bin Sulaiman Al Rajhi wrote another letter to SAMA, following up on his previous letter in light of "recently-published news" about the designations of Al Haramain branches. In this second letter to SAMA, Abdullah bin Sulaiman Al Rajhi reiterated his request for guidance on whether the Bank could continue dealing with Al Haramain-KSA. *See* ARB Ex. 25 (Ltr. from Al Rajhi Bank Gen. Mgr. to Governor of SAMA, Jan. 26, 2004) at ARB-00014546. | |
| | | (5) In addition to his letters to SAMA, Abdullah bin Sulaiman Al Rajhi wrote separately to the Ministry of Islamic Affairs in February 2004, to confirm the status of Al Haramain's license under paragraph 300-1-5-2. Pls. Ex. 59 (Ltr. from Al Rajhi Bank Gen. Mgr. to Minister of Islamic Affairs) at ARB-39945-ARB-39946 (Al Rajhi Bank confirming post-9/11 that Al Haramain-KSA continued to be a licensed charity). | |
| | | (6) On March 13, 2004, the Minister of Islamic Affairs confirmed that Al-Haramain KSA was permitted to engage in charitable work in the Kingdom and that there were no objections to Al-Haramain opening an account at Al Rajhi Bank. ARB Ex. 26 (March 13, 2004 Letter from Minister of Islamic Affairs) at ARB-39505 (confirming that Al-Haramain KSA was permitted to engage in charitable work in the Kingdom and that there were no objections to Al-Haramain opening an account at Al Rajhi Bank) | |
| | | (7) Further on March 21, 2004, the Minister of Islamic Affairs confirmed that Al-Haramain KSA was "legally established in . . . Saudi Arabia and permitted to operate under its laws and regulations." *See* ARB Ex. 27 (Ltr. from Minister of Justice) at ARB-00039409 (Minister of Justice statement confirming legitimacy of Al Haramain and other charities). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 320 | Overall, the limited account opening and KYC information ARB did possess for the AHIF and IIRO accounts shows that:<br><br>ARB failed to update the data of account holders periodically and continuously, or at least every three years prior to the 9/11 attacks, as required by ARB's policies and procedures.<br><br>ARB failed to obtain the licensing documents of the charities prior to the 9/11 attacks.<br><br>ARB failed to inquire about the charities with other banks or any other sources.<br><br>ARB did occasionally receive authorization from Saudi government ministries, including the Ministry of Islamic Affairs, regarding AHIF being approved to open a particular new account, indicating that ARB was aware of the need for such | 320.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading).</u><br><br><u>Disputed as conclusory; unsupported:</u><br>(1) Conclusory and unsupported as to supposedly "limited" account opening and KYC information.<br><br><u>Disputed as vague:</u><br>(1) Plaintiffs' reference to "AHIF and IIRO" is vague for the reasons discussed above in response to ¶ 309.<br><br><u>Disputed as controverted by the evidence:</u><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | 320.<br><br><u>Pls Ex. 4, p. 152-153:</u><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | authorization, but failed to obtain such authorizations in most cases.<br><br>ARB failed to verify any data given by the charities when opening accounts, such as verifying the address or visiting the headquarters of the organizations.<br><br>ARB failed to undertake any verification to know the sources of the funds deposited by the charities at the time of opening accounts for them, or later, including when there were cash deposits.<br><br>ARB failed to obtain information on the charities financial structure and annual financial statements.<br><br>ARB failed to obtain any concrete information about the actual services the charities were providing and the actual uses of the funds that they | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | were moving through ARB. ARB failed to obtain a list of the charities' most important suppliers, dealers, contractors, or business locations. ARB failed to obtain information about the charities' dealings with related parties. ARB was in possession of information confirming that its accounts were being used to support activities of the charities in particular continents, as reflected in instances where the charities labeled the accounts with such names as "Africa" "Asia" and "Europe," and occasionally, specifying countries and purported activities, but ARB nonethless failed to conduct due diligence or to verify whether the funds in these accounts | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | were being used for the described purposes.<br><br>ARB failed to obtain information on the actual foreign operations of the Da'Wah organizations.<br><br>*See* Ex. 4, Winer Report at 152-153. | | |
| 321 | ARB also did not undertake any monitoring of public reporting concerning the charities, despite the known risks of terrorist financing through ostensible Islamic charities. | 321.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading).</u><br><br>(1) In addition, immaterial because Plaintiffs do not identify any applicable law or regulation requiring that Al Rajhi Bank "undertake any monitoring of public reporting" concerning its customers.<br><br><u>Disputed as vague; does not cite to supporting evidence:</u><br><br>(1) Plaintiffs' reference to "public reporting" is vague.<br><br>(2) Plaintiffs' reference to "the charities" is vague.<br><br>(3) Plaintiffs' reference to "known risks of terrorist financing" is vague.<br><br>(4) Plaintiffs' reference to "ostensible Islamic charities" is vague.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 322 | Had ARB accessed readily available public reporting, that basic due diligence would have confirmed that AHIF's and IIRO's accounts presented high risks for terrorist financing. *Id.* at 153, 28-42. | 322.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 321.<br><br>Disputed as vague and conclusory:<br><br>(1) Plaintiffs' reference to "AHIF's and IIRO's accounts" is vague for the reasons discussed above in response to ¶ 309.<br><br>(2) Plaintiffs' assertion contains vague and conclusory statements, such as "readily available public reporting," "basic due diligence" and "high risks for terrorist financing."<br><br>(3) Plaintiffs cite no supporting evidence showing that purported "information" linking Al Haramain and IIRO to terrorism was "readily available" to Al Rajhi Bank before the 9/11 Attacks, particularly English-language reports from American and European newspapers.<br><br>Disputed as controverted by the evidence:<br><br>(1) Neither Al Haramain-KSA nor IIRO KSA nor any of their branches was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 170 (*Treasury Designates Director, Branches of [IIRO]*, Aug. 3, 2006)) (showing first sanctions designations of IIRO branches began in 2006); Pls. Ex. 60 (Treasury Designates of Al Haramain Islamic Foundation KSA) (showing designation of Al Haramain branches started in 2002); *see also* Pls. Ex. 12 (Winer Dep. Tr.) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 | 322.<br><br>Pls. Ex. 4, p. 153:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702.<br><br>Pls. Ex. 4, p. 28-42:<br><br>- Should be exclude to the extent expert testimony is used a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing attacks in Africa and terrorist activity in other countries and by other organizations that are not at issue in this litigation. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | because terrorist designations were originally limited to terrorist organizations."). <br><br> (2) The information that was "readily available" to Al Rajhi Bank showed that Al Haramain-KSA and IIRO KSA were well-respected charities that were licensed to operate, as discussed above in response to ¶ 319, and were doing good works. <br><br> – Al Haramain KSA was widely recognized as a reputable charitable organization that provided bona fide benevolent and humanitarian work in the form of the sponsorship of orphans and refugees, the provision of medicine, food, and clothing to those in need in conflict areas, and the development of educational programs. *See* Pls. Ex. 44 (Staff Monograph) at 115 (stating that Al Haramain "provides meals and assistance to Muslims around the world, distributes books and pamphlets, pays for potable water projects, sets up and equips medical facilities, and operates more than 20 orphanages"); *see also* ARB Ex. 23 (June 7, 1999 Ltr. from Prince of Tabuk) at ARB-00038699 (letter in Al Haramain KSA's KYC files describing Al Haramain KSA as a "humanitarian" organization engaged in "relief efforts"); ARB Ex. 5 (Ltrs. from Al Haramain KSA's KYC files, May 21, 1998 and Dec. 13, 1996) at ARB-00038774-75 (letters describing Al Haramain KSA's humanitarian projects and good works); ARB Ex. 1 (Dean Rep.) at 8 (describing the widespread recognition of Al Haramain for good works and humanitarian efforts); Pls. Ex. 56 ("Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations") (referring to Al Haramain and stating that "the Saudi headquarters for this private charitable entity is dedicated to promoting Islamic teachings"). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | – IIRO KSA was widely recognized as a reputable charitable organization that provided bona fide benevolent work such as educational programs, healthcare, and cash and in-kind donations to Muslims in need, and supported social and economic development worldwide. *See* ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-00013683 (certificate in IIRO KYC files certifying IIRO as a "humanitarian non-governmental body" whose "main concern is to care for the refugees, children and the victims of wars and disasters"); *id.* at ARB-00013692 (letter in IIRO KYC files stating IIRO's purpose is to provide relief to the poor, orphans, widows, and to develop hospitals and schools); *see also* ARB Ex. 93 (Kohlmann Dep. Tr.) at 146:3-147:7 (acknowledging that IIRO provided humanitarian relief to Muslims around the world); ARB Ex. 1 (Dean Rep.) at 8 (describing the widespread recognition of IIRO for good works and humanitarian efforts). <br><br> (3) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 323 | In reality, such steps were unnecessary to apprise ARB of the involvement of AHIF, IIRO, and Suleiman al Rajhi's own committee/foundation in supporting al Qaeda and terrorism: ARB's principals were expressly aware of those terrorist activities, by virtue of Suleiman al Rajhi's own central role in supporting al Qaeda and militant | 323. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed in response to Section IX (heading) and Sections IV (heading), V (heading), and XIV (heading). <br><br> (2) To the extent Plaintiffs contend that the personal charitable donations of Sulaiman bin Abdulaziz Al Rajhi or Abdullah bin Sulaiman Al Rajhi were made with knowledge of charities' alleged connection to terrorism (a point which Plaintiffs do not establish), | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Islamic causes, including through his charity committee/foundation and the U.S.-based SAAR Foundation; and Suleiman al Rajhi's close ties to AHIF, IIRO, WAMY and their leadership. *See infra* at § XIV. | such averments are immaterial, as Plaintiffs have not established any basis to impute a chairman or senior official's knowledge onto the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). <br><br> Disputed as vague and conclusory: <br><br> (1) Plaintiffs' reference to "AHIF's and IIRO's accounts" is vague for the reasons discussed above in response to ¶ 309. <br><br> (2) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. <br><br> (3) Plaintiffs' reference to "involvement of AHIF, IIRO, and Suleiman al Rajhi's own committee/foundation in supporting al Qaeda and terrorism" is vague and conclusory. <br><br> (4) Plaintiffs' references to "principals", "close ties", and "militant Islamic causes" are vague, conclusory, and unsupported by evidence. <br><br> (5) Plaintiffs' reference to Sulaiman bin Abdulaziz Al Rajhi's purported "central role in supporting" Al Qaeda is vague and conclusory. <br><br> Disputed as controverted by the evidence: | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (1) Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi had a "central role in supporting" Al Qaeda is controverted by the evidence.<br><br>  – Abdullah bin Sulaiman Al Rajhi, the current Chairman and former General Manager/CEO of Al Rajhi Bank testified that his father, Sulaiman bin Abdulaziz Al Rajhi, has never been a supporter of al Qaeda or Osama Bin Laden and that he was unaware that anyone at the Bank ever supported al Qaeda, Osama Bin Laden, or terrorism in any form. *See* Pls. Ex. 1 (Abdullah Al Rajhi Dep. Tr.) at 354:17-355:8.<br><br>  – Abdullah bin Sulaiman Al Rajhi also testified that Sulaiman bin Abdulaziz Al Rajhi does not follow extremist ideology. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 352:13-21.<br><br>(2) Plaintiffs' assertion regarding Sulaiman bin Abdulaziz Al Rajhi purported "close ties to AHIF, IIRO, WAMY and their leadership" is controverted by the evidence for the reasons discussed in response to Sections V (heading) and XIV (heading).<br><br>(3) Plaintiffs' assertion that Al Rajhi Bank's "principals were expressly aware of those terrorist activities" is an unsupported legal conclusion to which no response is required. | |
| 324 | These risks were known to Abdullah al Rajhi as well, through his direct involvement with the U.S.-based SAAR Foundation, including the initiative to move its operations to the Isle of Man following the public reporting implicating IIIT in funding | 324.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed in response to Section IX (heading) and Sections IV (heading) and X (heading).<br><br>(2) In addition, immaterial because Plaintiffs' assertions concerning Abdullah Al Rajhi are insufficient to establish personal jurisdiction where Plaintiffs may not impute a chairman or senior official's | 324.<br><br>Pls. Ex. 4, p. 198-199:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | terrorism.  *See* Ex. 1, Al Rajhi Deposition at 295-300; Ex. 4, Winer Report at 198-199. | knowledge onto the Bank.  *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). <br><br> (3)  In addition, immaterial because, while the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated as an SDGT by the United States.  *See* Pls. Ex. 12 (Winer Dep. Tr.) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9. <br><br> – Further, in 2021, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-000011. <br><br> – Further, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim.  *See In re: Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). <br><br> Disputed as vague; conclusory; unsupported: | - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs cite no evidence supporting that IIIT was part of the SAAR Foundation.<br><br>(2) Plaintiffs' references to "these risks", "direct involvement", and "the initiative to move its operations to the Isle of Man" are vague.<br><br>(3) Plaintiffs' reference to "the public reporting implicating IIIT in funding terrorism" is vague. | |
| 325 | The circumstances thus indicate that ARB's lack of diligence and departure from AML and KYC requirements, with respect to the charities' accounts, was by design. | 325.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading).</u><br><br><u>Disputed as vague; does not cite to supporting evidence:</u><br><br>(1) Plaintiffs' reference to "[t]he circumstances" is vague.<br><br>(2) Plaintiffs' reference to Al Rajhi Bank's "lack of diligence and departure from AML and KYC requirements" is vague and does not cite to evidence.<br><br>(3) Plaintiffs' reference to "the charities' accounts" is vague.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 326 | As Jonathan Winer explains in his expert report, "the ocean of anonymous, minimally documented transactions, including the apparent use of cash and couriers by the Da'Wah | 326.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 310.</u><br><br><u>Disputed as conclusory; not supported by evidence:</u> | 326.<br><br><u>Pls. Ex. 4, p. 154:</u><br><br>- Expert is not qualified to offer opinion on Saudi |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Organizations to transfer funds, meant that in reality, the accounts that ARB were providing to the Da'Wah Organizations functioned as anonymous accounts, in being able to provide funds throughout the world to people and for purposes that were not documented by ARB. ARB's failure to respond to this risk by taking the measures described by FATF is a further example of it not adhering to Know Your Customer Anti-Money Laundering, and Counter Terrorism best practices and international standards prior to the 9/11 attacks." *See* Ex. 4, Winer Report at 154. | (1) Disputed as conclusory and controverted by the evidence for the reasons discussed above in response to ¶ 310.<br><br>(2) Plaintiffs do not identify specific accounts that "functioned as anonymous accounts."<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306.<br><br>(2) To the extent Plaintiffs aver that Al Rajhi Bank was obligated to comply with FATF recommendations, that is controverted by the evidence for the reasons discussed above in response to ¶ 279. | Banking regulations. *See* Fed. R. Evid. 702. |
| 327 | Meanwhile, ARB was also specifically aware that AHIF, IIRO, Suleiman al Rajhi's committee/foundation, and the officers of those entities, were improperly using personal accounts of the officials to carry out financial activities unrelated to their personal affairs, a practice that masked the true origin of funds transferred from those accounts and embodied a classic mechanism for carrying out financial crimes. *See* Ex. 4, Winer Report at 204-205. | 327.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and Sections IV (heading) and V (heading).<br><br>(2) In addition, immaterial because, during the relevant period, charity officials routinely collected donations and handled charitable funds on behalf of charities for which they were officers. *See* ARB Ex. 2 (Hobayb Rep.) at 30-31.<br><br>– For example, a letter from a Saudi official instructs potential donors to provide aid directly "to the said Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially | 327.<br><br>Pls. Ex. 4, p. 204-205:<br><br>- Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay (NL Documents, CIA reports). *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex. 5 (Ltr. from KSA Gen. Pres. of Scholarly Research, May 21, 1998 and Dec. 13, 1996) at ARB-00038774-75.<br><br>Disputed as vague and conclusory:<br><br>(1) Plaintiffs' reference to "AHIF" and "IIRO" is vague for the reasons discussed above in response to ¶ 309.<br><br>(2) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>(3) Plaintiffs' reference to "the officers of those entities" and "the officials" is vague and conclusory.<br><br>(4) Plaintiffs' assertion about "the true origin of funds" is vague, conclusory, and not supported by the evidence.<br><br>(5) Plaintiffs' characterization regarding "a classic mechanism for carrying out financial crimes" is vague and conclusory.<br><br>(6) Plaintiffs' assertion that customers with accounts at Al Rajhi Bank "were improperly using personal accounts" is vague and conclusory.<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' averment that the practice of charity officials collecting donations and handled charitable funds on behalf of charities for which they were officers "masked the true origin of funds transferred from those accounts" is controverted by the evidence. For example, a letter from a Saudi official instructing potential | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | donors to provide aid directly "to the said Aqil" rather than through Al Haramain, shows that the practice discussed by Plaintiffs in this paragraph was routine and transparent. | |
| 328 | In a series of communications between 1998 and 2001, AHIF officials expressly notified ARB that they had been using certain personal or joint personal accounts at ARB, to conduct financial activities of AHIF. *See* Ex. 101, ARB 38998-39000; Ex. 172, ARB 38920; Ex. 173, ARB 38885; Ex. 174, ARB 38878; Ex. 175, ARB 38994; Ex. 176, ARB 38995; Ex. 177, ARB 39001; Ex. 178, ARB 38996; Ex. 179, 38978; Ex. 180, ARB 38979; Ex. 181, ARB 39077; Ex. 182, ARB 38486. *See also* Ex. 4, Winer Report at 164-168. | 328. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327. <br><br> (2) In addition, immaterial this paragraph does not show that Al Rajhi Bank knowingly or intentionally aimed tortious conduct at the United States. <br><br> Disputed as vague and conclusory: <br><br> (1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309. | 328. <br><br> Pls. Ex. 4, p. 164 – 168: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 329 | For reasons that remain unclear, the AHIF officials requested that the accounts referenced in those letters be converted to accounts in the name of AHIF, even though they continued to conduct financial activities of AHIF through other, personal accounts, as discussed below. *See* Ex. 4, Winer Report at 164-168. | 329. <br><br> Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327. <br><br> Disputed as vague and conclusory: <br><br> (1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309. | 329. <br><br> Pls. Ex. 4, p. 164 – 168: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802 <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services and charity work that |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 330 | These requests to transfer the accounts in to the name of AHIF contravened ARB's own rules, and in at least several cases, were referred to senior ARB officials, including the Head of the Legal Affairs Section and/or Abdullah al Rajhi's Deputy. *See id.* | 330. <br><br> <u>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327.</u> <br><br> <u>Disputed as vague and conclusory:</u> <br><br> (1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) The requests convert the names of Al Haramain accounts did not "contravene[]" Al Rajhi Bank's "own rules." <br><br> (2) The evidence shows that Al Rajhi Bank followed its policies with respect to account conversions. <br><br> – In particular, as Plaintiffs concede, these requests "were referred to senior ARB officials, including the Head of the Legal Affairs Section and/or Abdullah al Rajhi's Deputy." <br><br> – Al Rajhi Bank consulted its legal department, which outlined procedures to be followed consistent with Al Rajhi Bank's Branch Instructions Manual. *See* Pls. Ex. 188 (Al Rajhi Bank Branch Manual) at ARB-0000173; *see also* ARB Ex. 2 (Hobayb Rep.) at 28. <br><br> (3) In any event, Jonathan Winer acknowledged that he has seen no evidence that the requests were actually carried out. *See* Pls. Ex. 4 (Winer Rep.) at 165 ("The documents I have reviewed do not show whether [Al Rajhi Bank] did or did not carry out these requests. . . . | 330. <br><br> <u>Pls. Ex. 4, p. 164 – 168:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services and charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Therefore, I do not know for certain whether [Al Rajhi Bank carried out these requests.]"). | |
| 331 | In seeking special approval for one of the requests, an ARB branch manager asked ARB's Deputy Director General to endorse the request because the "donors" were familiar with the existing account number and because AHIF "is a distinguished client." *See* Ex. 179, 38978; Ex. 4, Winer Report at 167. | 331.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327.<br><br>Disputed as vague and conclusory:<br><br>(1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309.<br><br>(2) Plaintiffs' reference to "special approval" is vague.<br><br>Disputed as incomplete:<br><br>(1) Disputed as incomplete for the reasons discussed above in response to ¶ 318.<br><br>(2) In particular, the Bank knew Al Haramain to be a licensed, reputable charity that was authorized to operate by the Kingdom of Saudi Arabia. Al Haramain KSA. Further, Al Haramain KSA was widely recognized as a reputable charitable organization that provided bona fide benevolent and humanitarian work in the form of the sponsorship of orphans and refugees, the provision of medicine, food, and clothing to those in need in conflict areas, and the development of educational programs. *See* Pls. Ex. 44 (Staff Monograph) at 115 (stating that Al Haramain "provides meals and assistance to Muslims around the world, distributes books and pamphlets, pays for potable water projects, sets up and equips medical facilities, and operates more than 20 orphanages"); *see also* ARB Ex. 23 (June 7, 1999 Ltr. from Prince of Tabuk) at ARB-00038699 (Ltr. in Al Haramain KSA's KYC files describing Al Haramain KSA as a "humanitarian" organization engaged in "relief efforts"); ARB Ex. 5 (Ltrs. from Al Haramain KSA's KYC | 331.<br><br>Pls. Ex. 4, p. 167:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | files, May 21, 1998 and Dec. 13, 1996) at ARB-00038774-75 (letters describing Al Haramain KSA's humanitarian projects and good works); ARB Ex. 1 (Dean Rep.) at 8 (describing the widespread recognition of Al Haramain for good works and humanitarian efforts); Pls. Ex. 56 ("Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations") (referring to Al Haramain and stating that "the Saudi headquarters for this private charitable entity is dedicated to promoting Islamic teachings"). | |
| 332 | These multiple requests to convert accounts held in the names of AHIF officials into accounts in the name of AHIF provided express notice to ARB that AHIF and its officials were using personal accounts to conduct financial transactions of AHIF, including the collection and distribution of funds. *See* Ex. 4, Winer Report at 164-168; *see also* Ex. 101, ARB 38998-39000; Ex. 172, ARB 38920; Ex. 173, ARB 38885; Ex. 174, ARB 38878; Ex. 175, ARB 38994; Ex. 176, ARB 38995; Ex. 177, ARB 39001; Ex. 178, ARB 38996; Ex. 179, 38978; Ex. 180, ARB 38979; Ex. 181, ARB 39077; Ex. 182, ARB 38486. | 332.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX and ¶ 327.<br><br>(2) In addition, immaterial because Al Rajhi Bank would not have had a reason to suspect Al Haramain KSA's accounts at Al Rajhi Bank would be used for improper purposes because Al Haramain was a prominent, reputable charity. ARB Ex. 2 (Hobayb Rep.) at 31 ("[I]t defies belief that a bank aware of the charitable reputation of Al-Haramain and its leaders would be inclined to suspect that those accounts were associated with wrongdoing, particularly prior to 9/11.").<br><br>Disputed as vague and conclusory:<br><br>(1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309.<br><br>(2) Plaintiffs' reference to "express notice" is vague. | 332.<br><br>Pls. Ex. 4, p. 164 – 168:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 333 | The content of ARB's account statements for its accounts for Aqil al Aqil, Soliman al Buthe, | 333.<br><br>Immaterial: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | and Mansour al Kadi, and the nature of the transactions they reflect, further confirm this pattern of using personal accounts to carry out financial activities of AHIF. | (1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327.<br><br>(2) In addition, immaterial because the charity officials identified in this averment were not designated under any sanctions regime for connections to terrorism until years after the 9/11 Attacks. *See* ARB Aver. ¶¶ 5, 35-39; see also Responses to Headings and Averments in Section V.<br><br>(3) Just as the Bank knew its charity customers to be government-licensed, reputable humanitarian organizations, the Bank knew these charity officials for their roles in those Charities. *See* Responses to Headings and Averments in Section V.<br><br>(4) And just as Plaintiffs do not point to any other evidence connecting any of the charity customers to Al Qaeda before 9/11, Plaintiffs likewise do not put forward any evidence connecting the charity officials to Al Qaeda before the 9/11 Attacks.<br><br>Disputed as vague and conclusory:<br><br>(1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309. | |
| 334 | As noted above, the sheer size of the funds ARB was depositing into and transferring from these accounts made clear to ARB that they were not personal funds of the account holders. *See supra* at 231-32, 239. | 334.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 231-32, 239, 327.<br><br>(2) In addition, immaterial because, of the "sheer size" of funds averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Disputed as conclusory; vague: | |
| | | (1) Plaintiffs' assertion regarding the "sheer size" of funds is vague and conclusory. | |
| | | (2) Plaintiffs' assertion regarding what was "made clear" to Al Rajhi Bank is conclusory. | |
| 335 | More directly, the statement for Aqil's 3412 account includes express notations that numerous of the large cash deposits into his personal account during the period of intensive and abnormal deposit activity in 1999 were from "Al Haramain Islamic Foundation." *See* Ex. 114, ARB 41454-41463 at 41456 (cash deposit of 443,836 SR from "Al Haramain Islamic Foundation"); *id.* at 41459-41460 (10 additional cash deposits from AHIF). | 335. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327. <br><br> (2) Further, given that Al Haramain-KSA routinely handled countless cash donations dedicated to its worldwide humanitarian efforts, such large cash transactions would not have raised red flags. ARB Ex. 2 (Hobayb Rep.) at 30 ("For Saudi banking auditors such as myself, other individuals familiar with Saudi society, large cash transactions in accounts associated with charities would not have raised alarms before 9/11."); *id.* (explaining that before 9/11, charities in Saudi Arabia often provided their officials with charity funds to disburse). <br><br> (3) In addition, immaterial because, of the "numerous" "large cash deposits" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> Disputed as vague and conclusory: <br><br> (1) Plaintiffs' references to "Al Haramain Islamic Foundation" and "AHIF" are vague for the reasons discussed above in response to ¶ 309. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) Plaintiffs' characterization regarding "intensive and abnormal deposit activity" is conclusory. | |
| | | <u>Disputed as incomplete:</u> | |
| | | (1) Al Rajhi Bank understood Aqil to be using the "3412" account as an Al Haramain account. | |
| | |    – The Customer Information Files of a separate Al Haramain account contains a letter dated September 1994 that lists eleven Al-Haramain accounts with Al Rajhi Bank. Pls. Ex. 100 (Ltr. from Aqeel al Aqeel to the Gen. Mgr. of the Al Olaya Branch of Al Rajhi Bank) at ARB-38534-ARB-38535. | |
| | |    – The first account on that list is the "General Account" for Al Haramain, which has the account number "2█341." Pls. Ex. 100 (Ltr. from Aqeel al Aqeel to the Gen. Mgr. of the Al Olaya Branch of Al Rajhi Bank) at ARB-38535. | |
| | |    – Under the Bank's account numbering system "2█341" and "█3412" would be the same account. | |
| | | (2) The Bank knew that Saudi government officials had explicitly urged potential donors to provide aid directly "to Aqil" for an Al Haramain fundraising effort. ARB Ex. 5 (Ltr. from KSA Gen. Pres. of Scholarly Research) at ARB-00038775. | |
| 336 | Aqil' 3412 account also received a 5,000,000 SR deposit of apparent AHIF funds via a check designated in the notes as a "collection check" and "Check of Head Office." *See* Ex. 114, ARB 41454-41463 at 41456. | 336.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section IX and ¶¶ 327, 335. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  |  | (2) In addition, immaterial because, of the "5,000,000 SR deposit" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as vague and conclusory:<br><br>(1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309.<br><br>Disputed as incomplete for reasons discussed above in response to ¶ 335. |  |
| 337 | Al Buthe's account ending in 9206 was similarly used to deposit funds from "Harameen Charity" and additional funds from "collection check," along with several large cash deposits that were plainly inconsistent with al Buthe's individual financial activities. *See, e.g.*, Ex. 187, ARB 858-959 at 882 (reflecting deposits from "Harameen Charity" and "collection check," cash deposit of 187,750 SR, traveler's checks deposit of 292,500 SR); *id.* at 900 (cash deposits of 184,795 and 70,000 SR); *Id.* at 901 (cash deposits of 101,385; 78,729; and 20,000 SR). | 337.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX and ¶¶ 327, 335.<br><br>(2) In addition, immaterial because, of the "funds" and "several large cash deposits" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as conclusory:<br><br>(1) Plaintiffs' averment that certain transactions were "plainly inconsistent with al Buthe's individual financial activities" is conclusory and does not cite to supporting evidence. |  |
| 338 | This practice presented clear money laundering and terrorist financing risks, including the risk that officials of the charities were | 338.<br><br>Immaterial: | 338.<br><br>Pls. Ex. 4, p. 165-168, 178, 183: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | using their personal accounts to prevent scrutiny of AHIF's financial activities when sending money abroad, and the potential diversion of funds by officials of AHIF to support terrorism and other crimes. Ex. 4, Winer Report at 165-168, 178, 183. | (1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.<br><br>(2) In addition, immaterial because, of the "money [sent] abroad" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br><u>Disputed as vague and conclusory:</u><br><br>(1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. *See* ARB Ex. 2 (Hobayb Rep.) at 18 ("I have not seen anything to indicate that Al Rajhi Bank . . . was noncompliant with auditing and regulatory standards and procedures."); ARB Ex. 3 (Pasley Rep.) at 11 ("As far as I have seen, SAMA never determined that the Bank was materially noncompliant with SAMA's requirements."). | - Expert is not qualified to offer opinion on Saudi Banking regulations.<br><br>- Should be excluded under Rule 403 for unfair prejudice and for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| 339 | In fact, CIA reporting specifically confirms the use by AHIF and AHIF officials of personal accounts to circumvent scrutiny of AHIF's financial activities and "prevent the money from being identified or seized by foreign officials." *See* Ex. 69, *Al-Haramain: Support for Extremists and Terrorists* | 339.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327.<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI, and is otherwise conclusory and unsupported. | 339.<br><br><u>Pls. Ex. 69:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *[REDACTED]*, August 28, 2002, CIA-SUB 0007-19 at 13. | (3) In addition, immaterial because the CIA report relied on by Plaintiffs in this paragraph, even if credited, describes Al Haramain's purported conduct *after* the 9/11 Attacks, not at the time of the transactions discussed in Plaintiffs' Averment.<br><br>– The report makes no claim that Al Haramain or its officials used accounts at Al Rajhi Bank, before the 9/11 Attacks or "since 11 September [2001]," to "prevent the money from being identified or seized by foreign officials." *See* Pls. Ex. 69 (*Al-Haramain: Support for Extremists and Terrorists [REDACTED]*, Aug. 28, 2002) at CIA-SUB_0013.<br><br>(4) The CIA's claim that "HIF employees' accounts in Albania previously received money from an HIF official account at al-Rajhi Bank," even if credited, does not allege any wrongdoing by Al Rajhi Bank, but shows the provision of only routine banking services by Al Rajhi Bank.<br><br><u>Disputed as vague and conclusory:</u><br><br>(1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309. | |
| 340 | This tool for hiding terrorist financing activities was directly and knowingly enabled and facilitated by ARB. | 340.<br><br><u>Immaterial:</u><br><br>(2) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327.<br><br>(3) In particular, immaterial to support the legal conclusion that the Bank expressly aimed intentional, tortious conduct at the United States.<br><br><u>Disputed as vague and conclusory; does not cite to supporting evidence:</u> | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' reference to "[t]his tool" is vague.<br><br>(2) Plaintiffs' assertion that Al Rajhi Bank "directly and knowingly enabled and facilitated" activities aimed at "hiding terrorist financing" is an unsupported legal conclusion to which no response is required.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 341 | ARB's account records for the accounts it operated for SDGT and IIRO official al Mujil indicate that IIRO and Mujil similarly used al Mujil's "personal" accounts at ARB to carry out financial activities of IIRO, again with the knowledge and active assistance of ARB. | 341.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327.<br><br>(2) In addition, immaterial because the transactions Plaintiffs describe below occurred before the 9/11 Attacks, when IIRO was known as a reputable charity, and before any branch of IIRO was designated under any sanctions regime for connections to terrorism. IIRO KSA was widely recognized as a reputable charitable organization that provided bona fide benevolent work such as educational programs, healthcare, and cash and in-kind donations to Muslims in need, and supported social and economic development worldwide. *See* ARB Ex. 29 (MWL documents relating to the founding of IIRO in 1978) at ARB-00013683 (certificate in IIRO KYC files certifying IIRO as a "humanitarian non-governmental body" whose "main concern is to care for the Refugees, Children and the victims of wars and disasters"); *id.* at ARB-00013692 (letter in IIRO KYC files stating IIRO's purpose is to provide relief to the poor, orphans, widows, and to develop hospitals and | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | schools); *see also* ARB Ex. 93 (Kohlmann Dep. Tr.) at 146:3-147:7 (acknowledging that IIRO provided humanitarian relief to Muslims around the world); ARB Ex. 1 (Dean Rep.) at 8 (describing the widespread recognition of IIRO for good works and humanitarian efforts). | |
| | | <u>Disputed as vague and conclusory; does not cite to evidence:</u> | |
| | | (1) Plaintiffs' reference to "IIRO" is vague for the reasons discussed above in response to ¶ 309. | |
| | | (2) Plaintiffs' reference to Al Rajhi Bank's purported "active assistance" is vague and conclusory. | |
| | | <u>Disputed as controverted by the evidence:</u> | |
| | | (1) Al Rajhi Bank did not operate accounts for Mujil while he was an SDGT. Mujil was not designated under any sanctions regime for connections to terrorism, until the United States designated him as an SDGT on August 3, 2006, several years after the 9/11 Attacks. *See* Pls. Ex. 170 (*Treasury Designates Director, Branches of [IIRO]*, Aug. 3, 2006)) (designation of IIRO's branches in the Philippines and Indonesia, including And al Hamid Sulaiman al Mujil). | |
| 342 | Again by way of example, Al Mujil's account ending in 4608 reflects numerous large check deposits referencing IIRO specifically, myriad deposits from an apparent IIRO "clearinghouse," and a host of other transactions that plainly did not correspond to al Mujil's personal financial activities. *See* | 342. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335. <br><br> (2) In addition, immaterial because, of the "numerous large check deposits," "myriad deposits," "host of other transactions" averred in this paragraph, Plaintiffs' Corrected Averment does not show | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Ex. 119, ARB 745-787 (al Mujil 4608 extracted account information for 1998-2002); *id.* at 776 (120,000 SR check deposit from "Islamic Relief Organization"); *id.* at 781 (50,000 SR "clearinghouse" check deposit from "the Relief Organization"); *id.* at 784 (3,089,475 SR check deposit from "the Relief Organization"); *id.* at 745-755 (various check deposits from "clearinghouse"); *id.* at 752 (80,000 SR "collection" check deposit); *id.* at 772 (cash deposit of 100,000 SR); *id.* at 773 (check deposit of 355,000 SR); *id.* at 780 (200,000 SR "clearinghouse" check deposit). | that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as vague and conclusory; does not cite to evidence:<br>(1) Plaintiffs' reference to "IIRO" is vague for the reasons discussed above in response to ¶ 309. | |
| 343 | Throughout this period, ARB was also operating an account for the Suleiman al Rajhi charity committee/foundation, despite the fact that it had no legal existence prior to 2000, and ARB therefore was not permitted to open and operate an account in its name. *See* Ex. 4, Winer Report at 162. | 343.<br><br>Immaterial:<br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and Section IV (heading).<br>(2) In addition, immaterial because the Sulaiman bin Abdulaziz Al Rajhi Foundation was not a parent, subsidiary, or affiliate of Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). | 343.<br><br>Pls. Ex. 4, p. 162:<br>- Should be excluded to the extent expert testimony is used a conduit for inadmissible hearsay. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) In addition, immaterial because Plaintiffs' averments show the Bank provided only routine banking services to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and do not support the conclusion that the Bank took any intentional, tortious conduct aimed against the United States.<br><br>Disputed as vague and conclusory; does not cite supporting evidence:<br><br>(1) Plaintiffs' reference to "charity committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>(2) To the extent "the Suleiman al Rajhi charity committee/foundation" refers to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, Plaintiffs do not cite evidence that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation "had no legal existence prior to 2000," or at any point.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs' assertion that the "charity committee/foundation" "had no legal existence" is meant to suggest the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was not authorized to operate in the Kingdom of Saudi Arabia at any point, that is controverted by the deposition testimony of the Bank's current chairman, Abdullah bin Sulaiman Al Rajhi.<br><br>(2) Plaintiffs are incorrect that Al Rajhi Bank "was not permitted to open and operate an account in its name." In 2000, Sulaiman bin Abdulaziz Al Rajhi acquired a license to create a charity foundation, the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, which allowed him to: (1) raise money for charity by | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | collecting donations from others, and (1) disburse those funds to charitable causes. Before 2000, Sulaiman bin Abdulaziz Al Rajhi donated his own money to charitable causes and, because he was not collecting donations from others, he did not need a license. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 257:9-258:11 and Errata at 257:12-13, 257:16, 257:18. | |
| 344 | Meanwhile, the statements for ARB's alleged "personal" accounts for Suleiman al Rajhi charity/foundation officials Abdul Rahman al Rajhi, Saleh bin Sulaiman al Habdan, and Abdullah bin Ibrahim al Misfer, similarly reflect that Suleiman al Rajhi, ARB's Founder and Chairman, was abusing those personal accounts to distribute massive amounts of money throughout the world, thereby obscuring the fact that he was the actual source of the funds and circumventing oversight of his financial activities. *See supra* at ^ 253. | 344.  <br><br>Immaterial:  <br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading), Section IV (heading), and ¶¶ 253, 327, 335, 343.  <br><br>(2) In addition, immaterial because, of the "massive amounts of money" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.  <br><br>Disputed as vague and conclusory:  <br><br>(1) Plaintiffs' averments regarding Sulaiman bin Abdulaziz Al Rajhi's purported actions and motives are conclusory and do not cite to supporting evidence.  <br><br>(2) Plaintiffs' reference to "charity/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.  <br><br>(3) Plaintiffs' characterization regarding "abusing those personal accounts" is vague and conclusory.  <br><br>(4) Plaintiffs' assertion regarding "actual source of the funds" is vague and conclusory. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (5) Plaintiffs' assertions regarding "oversight" and "financial activities" are vague. | |
| 345 | Most obviously, as a sophisticated international businessman, billionaire, and founder and chairman of an international bank, Suleiman al Rajhi knew explicitly that his use of the personal accounts of the officers of his committee/foundation to carry out Suleiman al Rajhi's financial activities involved a classic money laundering tactic, which violated governing AML and CFT laws and standards. | 345.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 291, 327.<br><br>Disputed as conclusory; does not cite to supporting evidence; vague:<br><br>(1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>(2) Plaintiffs' assertion about what Sulaiman bin Abdualaziz Al Rajhi purportedly "knew explicitly" is conclusory and Plaintiffs do not any supporting cite evidence.<br><br>(3) Plaintiffs' characterization of Al Rajhi Bank as "an international bank" is vague.<br><br>(4) Plaintiffs' characterization regarding "a classic money laundering tactic" is vague.<br><br>(5) Plaintiffs' reference to "financial activities" is vague.<br><br>(6) Plaintiffs' assertion that "governing AML and CFT laws and standards" were "violated" is vague and conclusory. | |
| 346 | Many of the individual transactions and patterns of transactions ARB facilitated through those "personal" accounts raised obvious additional red flags for money laundering as well, | 346.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | beyond the use of those accounts to carry out transactions for third parties. | (2) In addition, immaterial because, of the "individual transactions and patterns of transactions" that purportedly "raised obvious additional red flags," Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as vague and conclusory; does not cite to supporting evidence:<br><br>(1) Plaintiffs' reference to "obvious additional red flags for money laundering" is vague.<br><br>(2) Plaintiffs' reference to "the use of those accounts" is vague.<br><br>(3) Plaintiffs' reference to "facilitated" is vague.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 347 | The concentrated pattern of transactions carried out through Aqil's 3412 account between May of 1999 and August of 2000 are emblematic of this alarming activity facilitated by ARB. *See* Ex. 114, ARB 41454-41463. | 347.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.<br><br>(2) In addition, immaterial because, of the "concentrated pattern of transactions" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(3) In addition, immaterial because, during the relevant period, charity officials routinely collected donations and handled charitable | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | funds on behalf of charities for which they were officers. *See* ARB Ex. 2 (Hobayb Rep.) at 30-31.<br><br>Disputed as conclusory; vague; unsupported by evidence:<br><br>(1) Plaintiffs' characterizations of transactions as a "concentrated pattern," "emblematic" and "alarming activity" is conclusory, vague, and unsupported.<br><br>Disputed as incomplete for the reasons discussed above in response to ¶ 335. | |
| 348 | During the period before May 1999 for which account information is available (January 1998-April 1999), the account reflects modest transaction activity, never exceeding 30,000 SR and dropping to as low as a negative balance of 1207 SR. *See* Ex. 114, ARB 41454-41463 at 41454-41455. | 348.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.<br><br>Disputed as conclusory; unsupported by evidence:<br><br>(1) Plaintiffs' characterization of "modest transaction activity" is conclusory and does not cite to supporting evidence. | |
| 349 | Then, suddenly and without reasonable explanation, deposit activity in the account exploded, beginning with a 440,792 SR cash deposit (about $117,500) on May 5, 1999. *Id.* at 41455. | 349.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.<br><br>Disputed as conclusory:<br><br>(1) Plaintiffs' characterization that account activity "exploded," "suddenly and without reasonable explanation" is conclusory and does not cite to supporting evidence.<br><br>Disputed as incomplete; controverted by the evidence: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Disputed as incomplete for the reasons discussed above in response to ¶ 335.<br><br>(2) Plaintiffs ignore other context relevant to evaluating these transactions and assessing whether a "reasonable explanation" existed.<br><br>– Saudi Arabia was, and remains, a cash-based society, and large cash deposits were not unusual during the relevant period. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 240:2-20, 247:7-10; *see also* ARB Ex. 2 (Hobayb Rep.) at 30 (explaining the prevalence of cash transactions in Saudi society during the 1990s, especially for charities and their officials).<br><br>– At the time of the transactions, Aqil was the Director of Al Haramain, a reputable and licensed charity that collected donations and responded to humanitarian crises around the world. *See* Pls. Ex. 44 (9/11 Staff Monograph) at 115 (discussing various humanitarian works done by Al Haramain); *see also* ARB Ex. 23 (June 7, 1999 Ltr. from Prince of Tabuk) at ARB-00038699 (Ltr. in Al Haramain's KYC files describing Al Haramain as a "humanitarian" organization engaged in "relief efforts."); ARB Ex. 5 (Letters from Al Haramain's KYC files, May 21, 1998 and Dec. 13, 1996) at ARB-38774-75 (letter describing Al Haramain's humanitarian projects and good works).<br><br>– Communications with Aqil in his official capacity show that Al Rajhi Bank had knowledge of Aqil's position with Al Haramain. *See* Pls. Ex. 100 (Ltr. from Aqeel al Aqeel to the Gen. Mgr. of the Al Olaya Branch of Al Rajhi Bank) at ARB-38535; *see also* ARB Ex. 2 (Hobayb Rep.) at 30-31 (explaining that Aqil transactions would not have raised suspicion because of his affiliation with a known charity); *see* | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | *also* ARB Ex. 41 (Ltrs. from Ministry of Islamic Affairs, Sept. 26, 1998 and Oct. 17, 1997) at ARB-38585 (asking to transfer certain accounts into the name of Al-Haramain Islamic Foundation and keep Aqil al-Aqil as the signatory). | |
| | | – For example, a letter from a Saudi official instructs potential donors to provide aid directly "to the said Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex. 5 (Ltr. from KSA Gen. Pres. of Scholarly Research) at ARB-00038774-75. | |
| 350 | Over the next two months, Aqil made near daily cash deposits of huge sums into his account, including a single cash deposit on May 8, 1999 of nearly 1.3 million SR, and numerous individual cash deposits in excess of 600,000 SR (among others). *Id.* at 41455-41460. | 350.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.<br><br>(2) Saudi Arabia was, and remains, a cash-based society, and large cash deposits were not unusual during the relevant period. Pls.' Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 240:2-20, 247:7-10; *see also* ARB Ex. 2 (Hobayb Rep.) at 30 (explaining the prevalence of cash transactions in Saudi society during the 1990s, especially for charities and their officials).<br><br>(3) In addition, immaterial because, of the "nearly 1.3 million SR, and numerous individual cash deposits in excess of 600,000 SR" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as conclusory: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' characterization of cash deposits as "numerous" and comprised of "huge sums" is vague and conclusory.<br><br>Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349. | |
| 351 | Over the course of the roughly two month period (May 4, 1999-July 14, 1999), Aqil made 63 separate cash deposits into his 3412 account, totaling 14,773,760 SR, as well as a 5,000,000 SR check deposit. *Id.* | 351.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.<br><br>(2) In addition, immaterial because, of the "14,773,760 SR, as well as a 5,000,000 SR check deposit" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349. | |
| 352 | The 19,773,760 SR deposited into the account equates to approximately $5.72 million, or roughly $9.3 million in 2023 dollars. *See* Ex. 4, Winer Report at 107 (providing formulas for SR-USD conversion and inflation calculator). | 352.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX and ¶¶ 327, 335.<br><br>(2) In addition, immaterial because, of the "approximately $5.72 million" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349. | |
| 353 | During the same period, Aqil did not withdraw any funds from the | 353. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | account at all, and the balance swelled (from a negative balance of -1207.11 SR to 19,772,552.89 SR on July 14, 1999. *See* Ex. 114, ARB 41454-41463 at 41455-41460. | Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335. <br><br>Disputed as conclusory: <br><br>(1) Plaintiffs' averment that the balance "swelled" is conclusory and vague. <br><br>Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349. | |
| 354 | Then, suddenly and again without reasonable explanation, the flow of transactions largely reversed, beginning with a single event check withdrawal of 2,726,500 SR on July 27, 1999. *Id.* at 41460. | 354. <br><br>Immaterial: <br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335. <br><br>(2) In addition, immaterial because, of the "2,726,500 SR" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br>Disputed as conclusory; unsupported by the evidence: <br><br>(1) Plaintiffs' characterization that account activity "largely reversed," "suddenly and again without reasonable explanation" is conclusory and does not cite to supporting evidence. <br><br>(2) The Bank understood the account to be used as an Al Haramain account, and further knew that Saudi government officials had explicitly urged potential donors to provide aid directly "to Aqil" for an Al Haramain fundraising effort. ARB Ex. 5 (Ltr. from KSA Gen. Pres. of Scholarly Research) at ARB-00038775. Plaintiffs' contention of a lack of a "reasonable explanation" for the transactions is entirely speculative, and unsupported by the evidence given the unique needs and fundraising efforts of a charitable organization. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349. | |
| 355 | The bulk of the funds were then withdrawn via a single check, to an unknown beneficiary, in the amount of 16,900,000 SR, on August 20, 2000. *Id.* at 41455-41460. | 355. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section IX and ¶¶ 327, 335. <br><br> (2) In addition, immaterial because, of the "16,900,000 SR" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349. | |
| 356 | These transactions presented myriad money laundering and illicit activity red flags, including dozens of large cash transactions that did not correspond with Aqil's personal finances; serial deposits without any corresponding withdrawal activity; and transactions for unknown purposes that do not correspond to the customer's own finances. *See* Ex. 58, 1995 Guidelines at 150. | 356. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335. <br><br> (2) In addition, immaterial because purported transactions averred in this section do not show intentional, tortious conduct by the Bank, conduct expressly aimed at the United States, or funds reaching Al Qaeda, let alone for the 9/11 Attacks. <br><br> Disputed as incomplete for the reasons discussed above in response to Section IX and ¶¶ 335 and 349. <br><br> Disputed as vague; conclusory; and unsupported by evidence: <br><br> (1) Plaintiffs' characterization of "myriad money laundering and illicit activity red flags," "large cash transactions" and the averment that that the transactions were "for unknown purposes that do not | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | correspond to the customer's own finances" are vague; conclusory; and unsupported by evidence.<br><br>– In particular, as Al Rajhi Bank's expert Robert Pasley stated, "there is nothing to indicate that these intermittent transactions were in fact problematic or used for wrongdoing." ARB Ex. 3 (Pasley Rep.) at 10.<br><br>– Moreover, Plaintiffs' understanding of Aqil's "personal finances" is at best incomplete, as they have no evidence as to whether Aqil al Aqil's accounts at Al Rajhi Bank were his only accounts or assets.<br><br>– Further, Saudi government officials had explicitly urged potential donors to provide aid directly "to Aqil" for an Al Haramain fundraising effort, suggesting his account could be used for varying charitable purposes. ARB Ex. 5 (Ltr. from KSA Gen. Pres. of Scholarly Research) at ARB-00038775.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 357 | These red flags would have been obvious to ARB's managers and employees who directly interacted with Aqil at the time of the deposits, and plainly would have required "further investigation" in the event ARB was applying AML | 357.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading).</u><br><br><u>Disputed as vague and conclusory:</u><br><br>(1) Plaintiffs' assertions as to what "would have been obvious to [Al Rajhi Bank]'s managers and employees" and what was "plainly" required are vague and conclusory. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | and CFT requirements to the charities and their officials. *Id.* | (2) Plaintiffs' reference to "AML and CFT requirements" is vague.<br><br>(3) Plaintiffs' reference to "red flags" is vague.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306.<br><br>   –  In particular, as Al Rajhi Bank's expert Robert Pasley stated, "there is nothing to indicate that these intermittent transactions were in fact problematic or used for wrongdoing." ARB Ex. 3 (Pasley Rep.) at 10.<br><br><u>Disputed as incomplete:</u><br><br>(1) Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349.<br><br>(2) Further, AML regulations at the time, including the SAMA Guidelines, focused on combatting drug-trafficking and transactions involving a reputable charity and its official would not have implicated drug-trafficking risks at the time. *See* Pls. 58 (SAMA Guidelines) at 132, 134 (explaining that drug-trafficking presented the primary money laundering risk); ARB Ex. 2 (Hobayb Rep.) at 6. | |
| 358 | While the money laundering red flags are obvious from the sheer value and concentration of the cash transactions, an understanding of what deposits on this scale would have looked like to the ARB personnel processing | 358.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 335.</u><br><br><u>Disputed as conclusory:</u> | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | them helps underscore just how remarkable they were. | (1) Plaintiffs' assertions as to that certain transactions are "obvious" "red flags" and "remarkable" are vague, conclusory, and unsupported.<br><br>(2) Plaintiffs' reference to "the sheer value and concentration of the cash transactions" is vague.<br><br><u>Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349.</u><br><br><u>Disputed as controverted by the evidence:</u><br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 359 | To this end, attached as Annexes 2-4 to the Declaration of Ben T. Railsback, are images providing digital representations of what the nearly 1.3 million SR cash deposit on May 8, 1999 into Aquil's account would have looked like, under five deposit scenarios: a deposit comprised entirely of 500 SR notes; a deposit comprised entirely of 100 SR notes; a deposit compromised entirely of 50 SR notes, as well as two other views including: (1) a combination of this same amount in an even split of 50 and 100 SR notes, and (2) a combination of this same amount in an even three-way split of 50, | 359.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.<br><br>(2) In addition, immaterial because, of the "nearly 1.3 million SR cash deposit" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br><u>Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349.</u> | 359.<br><br><u>Pls. Ex. 183:</u><br><br>-This Declaration should be excluded for the reasons stated in Al Rajhi Bank's Motion to Strike. *See* ECF No. 9772. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | 100 and 500 SR notes.  These images in Annexes 2-4 provide different views and angles of what a bank teller would see in front of them when this large cash deposit occurred.  *See* Ex. 183, Declaration of Ben T. Railsback, Annexes 2-4 and Exhibits thereto. | | |
| 360 | Using the same scenarios, Annex 5 to the Declaration of Ben T. Railsback provides digital representations of what the aggregate of the total cash deposits of 14,798,020 SR into Aqil's account between May 4, 1999 through July 14, 1999 would have looked like under five deposit scenarios:  a deposit comprised entirely of 500 SR notes; a deposit comprised entirely of 100 SR notes, a deposit compromised entirely of 50 SR notes, as well as two other views including:  (1) a combination of this same amount in an even split of 50 and 100 SR notes, and (2) a combination of this same amount in an even three-way split of 50, 100 and 500 SR notes.  *See* Ex. 183, Declaration of Ben T. | 360.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.<br><br>(2) In addition, immaterial because, of the "total cash deposits of 14,798,020 SR" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349. | 360.<br><br>Pls. Ex. 183:<br><br>-This Declaration should be excluded for the reasons stated in Al Rajhi Bank's Motion to Strike. *See* ECF No. 9772. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Railsback, Annex 5, and Exhibits thereto. | | |
| 361 | As these physical depictions convey, there is no way the ARB personnel who handled the case deposits into Aqil's account and interacted with him could have ignored the staggering money laundering and terrorism financing risks presented by those transactions. | 361. <br><br> <u>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.</u> <br><br> <u>Disputed as incomplete:</u> <br><br> (1) Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349. <br><br> (2) In particular, as Al Rajhi Bank's expert Robert Pasley stated, "there is nothing to indicate that these intermittent transactions were in fact problematic or used for wrongdoing." ARB Ex. 3 (Pasley Rep.) at 10. <br><br> (3) Further, AML regulations at the time, including the SAMA Guidelines, focused on combatting money laundering through drug-trafficking so transactions involving a reputable charity and its official would not have implicated drug-trafficking risks at the time. *See* Pls. 58 (SAMA Guidelines) at 132, 134 (explaining that drug-trafficking presented the primary money laundering risk); ARB Ex. 2 (Hobayb Rep.) at 6. <br><br> (4) In addition, Al Rajhi Bank's Saudi banking expert, Fawzi Al Hobayb, testified that the AML Unit did not flag every transaction exceeding 100,000 SAR given the prevalence of large cash transactions. Instead, the automated system flagged the first instance of a transaction over 100,000 SAR through a customer's account. After an investigation by bank personnel into the source of funds for the transfer, the AML Unit would "de-flag" similar future transactions. *See* ARB Ex. 50 (Hobayb Dep. Tr. and Errata) at 198:15-199:13. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as conclusory:<br><br>(1) Plaintiffs' assertions regarding the mental state of Al Rajhi Bank personnel are conclusory and not supported by evidence.<br><br>(2) Plaintiffs' characterization of the cash deposits as "staggering" is unsupported by evidence where Plaintiffs do not (and cannot) show that such deposits were abnormal in Saudi Arabia at the time.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 362 | Further still, under the 1995 Guidelines and ARB AML Guide, each of the Aqil transactions exceeding 100,000 SR (and certainly the very large deposits) should have been reported to ARB's AML Unit "through the unit's available automated programs," resulting in a required investigation concerning the client's historical volume of transactions and inquiry "to identify the client's sources of income and how the executed operations match with the client's activity." *See* Ex. 189, ARB AML Guide at ARB 738; *See* Ex. 184, Transcript, February 9, 2024 Deposition of Fawzi Al-Hobayb | 362.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX and ¶¶ 327, 335.<br><br>(2) In addition, the SAMA Guidelines explicitly state that "[t]he existence of one or more of these indicators does not necessarily mean that a money laundering transaction is taking place but it should raise some concerns and lead to further investigations." *See* Pls. 58 (SAMA Guidelines) at 150.<br><br>Disputed as conclusory:<br><br>(1) Plaintiffs' characterization of "very large deposits" is vague.<br><br>Disputed as incomplete:<br><br>(1) Disputed as incomplete for the reasons discussed above in response to ¶¶ 335 and 349. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | ("Hobayb Deposition"), at 197-203. | (2) In addition, Al Rajhi Bank's Saudi banking expert, Fawzi Al Hobayb, testified that the AML Unit did not flag every transaction exceeding 100,000 SAR given the prevalence of large cash transactions. Instead, the automated system flagged the first instance of a transaction over 100,000 SAR through a customer's account. After an investigation by bank personnel into the source of funds for the transfer, the AML Unit would "de-flag" similar future transactions. *See* ARB Ex. 50 (Hobayb Dep. Tr.) at 198:15-199:13. <br><br> Disputed as controverted by the evidence: <br><br> (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306 | |
| 363 | The ARB AML Guide further requires that all records relating to any suspicious activity report or inquiry be maintained, and states that the AML Unit had in place a program to retrieve information on such reports and inquiries without the need to paper search the archive files. *See* Ex. 189, ARB AML Guide at 737. | 363. <br><br> Immaterial for the reasons discussed above in response to Section IX (heading). <br><br> Disputed as controverted by the evidence: <br><br> (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 364 | ARB was required to produce any suspicious activity reports or documents relating to money laundering investigations of the accountholders and accounts with the scope of discovery, and did not | 364. <br><br> Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 335 and 349. <br><br> Disputed as controverted by the evidence: | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | produce any, indicating they do not exist (whether for Aqil or any of the other accountholders in issue). | (1) With respect to the category of suspicious activity reports, Plaintiffs only requested suspicious activity reports relating to the "Da'wah organizations and their employees," not all "accountholders and accounts within the scope of discovery." Pls. 1st Mot. Compel Ex. A (Jul. 30, 2021), ECF No. 6996-3 ¶ 1.<br><br>(2) Plaintiffs' request for money laundering investigations was limited to those undertaken with the United States government. *See* Pls. 1st Mot. Compel Ex. A (Jul. 30, 2021), ECF No. 6996-3 ¶ 52. Still, Al Rajhi Bank produced 209 documents reflecting internal investigations and communications between the Bank and SAMA. *See* Erb Decl. ¶¶ 3-5. None of these documents shows that the Bank was out of compliance with SAMA's guidelines or regulations, let alone that the Bank intended to support terrorism.<br><br>(3) To the extent Plaintiffs' averment suggests that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306.<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of supposedly limited or incomplete jurisdictional discovery, for the reasons discussed above in response to Section III. | |
| 365 | The record thus confirms that ARB took no action, and made no inquiry, with respect to the Aqil transactions, or the transactions involving other accountholders discussed below, in contravention of the 1995 Guidelines and ARB's own (nominal) AML procedures. | 365.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 335 and 349.<br><br>Disputed as conclusory; does not cite to supporting evidence:<br><br>(1) The record does not confirm that Al Rajhi Bank "took no action, and made no inquiry, with respect to the Aqil transactions" or other accountholders. During discovery, Al Rajhi Bank conducted a reasonable search for suspicious activity reports for | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | accountholders identified in Plaintiffs' discovery requests and found no records of suspicious activity reports. *See* Erb Decl. ¶¶ 3-5. The fact that Al Rajhi Bank was unable to locate records from over two decades ago does not prove that Al Rajhi Bank "ARB took no action, and made no inquiry, with respect to the Aqil transactions, or the transactions involving other accountholders discussed below." <br><br>Disputed as controverted by the evidence: <br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 366 | A series of transactions ARB executed through the personal account of another of AHIF's designated officials, Soliman al Buthe, provides additional examples of ARB's facilitation of highly suspicious transactions for one of al Qaeda's key financial facilitators. *See* Ex. 4, Winer Report at 174-177. | 366. <br><br>Immaterial: <br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327. <br><br>(2) Saudi Arabia was, and remains, a cash-based society, and large cash deposits were not unusual during the relevant period. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 240:2-20, 247:7-10; *see also* ARB Ex. 2 (Hobayb Rep.) at 30 (explaining the prevalence of cash transactions in Saudi society during the 1990s, especially for charities and their officials). <br><br>(3) Plaintiffs have no evidence that Al Rajhi Bank knew or had reasons to know of Al Buthe's purported connection to terrorism before the 9/11 Attacks. At the time of the transactions, Buthe was an official of Al Haramain, a reputable and licensed charity that collected donations and responded to humanitarian crises around the world. *See* Pls. Ex. 44 (Staff Monograph) at 115 (discussing various humanitarian works done by Al Haramain); *see also* ARB Ex. 23 | 366. <br><br>Pls. Ex. 4, 174-177: <br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services and equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the United States. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (Ltr. from Prince of Tabuk) at ARB-00038699 (Ltr. in Al Haramain's KYC files describing Al Haramain as a "humanitarian" organization engaged in "relief efforts."); ARB Ex. 5 (Letters from Al Haramain's KYC files, May 21, 1998 and Dec. 13, 1996) at ARB-38774-75 (letter describing Al Haramain's humanitarian projects and good works). <br><br> Disputed as vague and conclusory: <br><br> (1) Plaintiffs' reference to "AHIF" is vague for the reasons discussed above in response to ¶ 309. <br><br> Disputed as conclusory: <br><br> (1) Plaintiffs' characterization of transactions as "highly suspicious" is conclusory and does not cite to supporting evidence. <br><br> (2) Plaintiffs' characterization of Buthe as "one of al Qaeda's key financial facilitators" is also conclusory and vague. <br><br> Disputed as misleading; controverted by the evidence: <br><br> (1) Soliman al Buthe was not one of "AHIF's designated officials" at the time of these transactions, or at any point during the relevant period. <br><br>    –   Soliman al Buthe was not designated under any sanctions regime for connections to terrorism until the United States designated him as an SDGT on September 9, 2004, in connection with his support to militants in Chechnya. *See* Pls. Ex. 50 (*U.S.-Based Branch of Al Haramain Foundation Linked to Terror, Treasury Designates U.S. Branch, Director*, Sept. 9, 2004). | |
| 367 | On June 20, 1999, al Buthe made a "cash deposit" of 187,750 SR in | 367. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | an account he had at ARB, and simultaneously deposited a "collection check" in the amount of 60,000 SR, suddenly increasing his funds on deposit from 21,779.37 SR to 269,529.37 SR - an increase of more than ten fold or 1000%. Al Buthe then immediately converted those funds into traveler's checks on the same date of June 20. 1999, leading to a debit to his ARB account of 300,000 SR - or more than the total funds he had in total on deposit. *See* Ex. 187, ARB 858-959 at 882. | Immaterial:<br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366.<br>(2) In addition, immaterial because, of the transactions averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 368 | The large deposit of cash, exceeding the 1995 Guidelines' significant transaction threshold of 100,000 SR, and its immediate conversion into traveler's checks, raised obvious money laundering and suspicious activity red flags, particularly as al Buthe had never held nearly that much in his account, with historical balances typically in the thousands or tens or thousands of Saudi riyals, not in the hundreds of thousands. *See* Ex. 4, Winer Report at 174-176. | 368.<br><u>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327 and 335.</u><br><u>Disputed as conclusory:</u><br>(1) Plaintiffs' averment regarding "obvious money laundering and suspicious activity red flags" are conclusory and vague.<br>(2) Plaintiffs' averment regarding the "historical balances" of Buthe's account and that he "never held nearly that much in his account," based on a snapshot within the relevant period, is conclusory and does not cite to supporting evidence.<br>(3) Plaintiffs' averments regarding the use of traveler's checks is conclusory. Plaintiffs do not identify specific regulations prohibiting the use of traveler's checks. | 368.<br><u>Pls. Ex. 4, 174-177:</u><br>- Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity, equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the United States. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Disputed as incomplete for the reasons discussed above in response to ¶ 362. Disputed as controverted by the evidence: (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 369 | Then, ten days later, al-Buthe redeposited traveler's checks (presumably the same ones) of nearly the full amount he had withdrawn, that is 292,500 SR, on June 30, 1999, and then immediately withdrew most of these funds, totalling 247,630 SR, through a "telex entry debit note," or a bank-to-bank wire transfer, once again on the same day. | 369. Immaterial: (1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366. (2) In addition, immaterial because, of the "247,630 SR" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 370 | These inexplicable, and in certain respects circular, transactions were highly abnormal and plainly required money laundering investigation under the 1995 Guidelines and the ARB AML Guide. Once again, however, in the case of an AHIF official, ARB did nothing (aside from facilitating the abnormal transactions). *See* Ex. 4, Winer Report at 174-76; Ex. 58, 1995 | 370. Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366. Disputed as conclusory: (1) Plaintiffs' characterizations of transactions in Buthe's accounts as "inexplicable," "circular" and "highly abnormal" are conclusory and unsupported. (2) Plaintiffs' averment that Al Rajhi Bank "did nothing (aside from facilitating the abnormal transactions" is conclusory and unsupported. Al Rajhi Bank conducted a reasonable search of such | 370. Pls. Ex. 4, 174-177: - Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity, equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Guidelines at 150 (indicators of money laundering include large deposits inconsistent with customer's activities, and abnormal purchase of cashier's checks and payment orders against cash). | records and a failure to locate such records after 20 years does not confirm that Al Rajhi Bank "did nothing" to investigate. *See* Opp. Pls. 2d Mot. to Compel 11 (Mar. 17, 2023), ECF No. 8935 (describing Bank's search for documents relating to post-9/11 investigations and audits, and communications between the Bank and SAMA); Opinion & Order (July 11, 2023), ECF 9210 (finding Bank's search "reasonable"). <br><br>Disputed as controverted by the evidence: <br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | United States. *See* Fed. R. Evid. 403. |
| 371 | ARB executed another set of overtly suspicious transactions for al Buthe the following year, in March and April. | 371. <br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335. <br><br>Disputed as conclusory; vague: <br><br>(1) Plaintiffs' characterization of transactions in Buthe's accounts as "overtly suspicious" is conclusory and vague. | |
| 372 | At that time, ARB records indicate that al Buthe made a "cash deposit" of 184,795.00 SR on March 22, 2000, and a second "cash deposit" on March 27, 2000, of 70,000 SR, together rapidly increasing his balance from 311.39 SR (or less than $100) on March 21 to 236,358.39 on March 27, equivalent to a bit more than $63,000 (about $112,000 in 2023 | 372. <br><br>Immaterial: <br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366. <br><br>(2) In addition, immaterial because, of the transaction averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br>(3) Immaterial as to Plaintiffs' reference to 2023 dollars. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | dollars), and thus more than sixty-three times as much money as was previously held in the account. *See* Ex. 189, ARB 858-959 at 900-901. | | |
| 373 | A week later, on April 3, 2000, al Buthe transferred nearly half of those funds, 101,315 SR, via a "telex transfer" to an unspecified recipient - and then had slightly more than that amount - 101,385 SR deposited in his acccount the following day, thereby replenishing it. *Id.* | 373.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366.<br><br>(2) In addition, immaterial because, of the transactions averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 374 | Five days after that, al Buthe received another "cash deposit" in the amount of 78,729 SR, characterized as coming from "external collections." *Id.* | 374.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366.<br><br>(2) In addition, immaterial because, of the "78,729 SR" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 375 | These transactions coincide with the period when al Buthe was alleged by the U.S. government to have returned to Saudi Arabia from the United States, illegally carrying $130,000 in American Express traveler's checks and a $20,000 bank check provided to | 375.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366.<br><br>(2) In addition, immaterial because the transactions described do not show intentional, tortious conduct by the Bank expressly aimed at | 375.<br><br>Pls. Ex. 4, 176:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | him by the AHIF branch in Oregon. *See* Ex. 4, Winer Report at 176. | the United States, let alone for the 9/11 Attacks.  Plaintiffs cite to the report of Jonathan Winer, which says that the transactions "were actual evidence of possible terrorist finance for Chechnya." Pls. Ex. 4 (Winer Rep.) at 176.<br><br>(3)  In addition, immaterial because the "AHIF branch in Oregon" was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks, until the United States designated the entire Al Haramain organization in 2008.  Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know about AHIF Oregon's purported connections to terrorism before the 9/11 Attacks.<br><br><u>Disputed as conclusory:</u><br><br>(1)  Plaintiffs cite no evidence supporting that Buthe carried traveler's checks "illegally." | - Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity, equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the United States.  *See* Fed. R. Evid. 403. |
| 376 | Here again, the transactions ARB executed through al Buthe's personal account raised obvious red flags, as they involved large and inexplicable deposits and withdrawals that were inconsistent with al Buthe's personal finances, and withdrawals very shortly after deposit of the funds. *Id.*; *see also* Ex. 58, 1995 Guidelines at 150. | 376.<br><br><u>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366.</u><br><br><u>Disputed as conclusory:</u><br><br>(1)  Plaintiffs' characterizations of transactions in Buthe's accounts as "inexplicable," "inconsistent" and "rais[ing] obvious red flags" are conclusory.<br><br><u>Disputed as controverted by the evidence:</u><br><br>(1)  To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | 376.<br><br><u>Pls. Ex. 4, 174-177:</u><br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity, equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the United States.  *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 377 | Within just one month of the previous set of suspicious transactions, al Buthe again made two unusually large "cash deposits" in his account at ARB, on May 9, 2000. The first was for 40,000 SR. The second was for 1,032,900 SR, equivalent to about $275,000 (corresponding to about $490,000 in 2023 dollars), an amount that dramatically exceeded the normal value of deposits and account activity. *See* Ex. 187, ARB 858-959 at 903. | 377. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366. <br><br> (2) In addition, immaterial because, according to Plaintiffs' expert, Jonathan Winer "[t]he money was deposited into Al-Haramain's Bank of America account in Ashland and put toward the purchase of a building for Al-Haramain in Spring[f]ield, Missouri." Pls. Ex. 4 (Winer Rep.) at 176-77. The money did not reach Al Qaeda, let alone support the 9/11 Attacks. <br><br> (3) In addition, immaterial because, of purportedly "unusually large 'cash deposits'" averred in this paragraph, Plaintiffs does not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 378 | Four days later, on May 13, 2000, ARB's account for the al Buthe statement shows a "Debit Entry Note" with a "Traveler's Check Discount." The amount deducted was 1,125,000 SR, which converts using 2000 exchange rates to about $275,000 - a match between ARB's production and the amount specified in the federal search warrant pertaining to al Buthe. | 378. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366. <br><br> (2) In addition, immaterial because, according to Plaintiffs' expert, Jonathan Winer "[t]he was deposited into Al-Haramain's Bank of America account in Ashland and put toward the purchase of a building for Al-Haramain in Spring[f]ield, Missouri." The money did not reach Al Qaeda, let alone for the 9/11 Attacks. Pls. Ex. 4 (Winer Rep.) at 176-77. <br><br> (3) In addition, immaterial because, of purportedly "$275,000'" averred in this paragraph, Plaintiffs does not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as conclusory: <br><br> (1) Plaintiffs' characterizations of transactions in Buthe's accounts as "unusually large" and "dramatically exceeded the normal value of deposits and account activity" are conclusory and unsupported. | |
| 379 | The sequence contains several money laundering and terrorist financing red flags. *See* Ex. 4, Winer Report at 177; Ex. 58, 1995 Guidelines at 150. | 379. <br><br> <u>Immaterial for the reasons discussed above in response to Section IX (heading).</u> <br><br> <u>Disputed as vague and conclusory:</u> <br><br> (1) Plaintiffs' averments regarding "the sequence" and that it contained "several money laundering and terrorist financing red flags" is conclusory and vague. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | 379. <br><br> <u>Pls. Ex. 4, p. 176:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity, equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the United States. *See* Fed. R. Evid. 403. |
| 380 | First, al Buthe made exceptionally large cash deposits, given the ordinary size of funds he maintained at ARB. *See* Ex. 4, Winer Report at 177; Ex. 58, 1995 Guidelines at 150. | 380. <br><br> <u>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366.</u> <br><br> (1) In particular, immaterial because, of purportedly "exceptionally large cash deposits" averred in this paragraph, Plaintiffs' Averment does not show that a *single dollar* from Buthe's accounts reached Al Qaeda or was used to finance the 9/11 Attacks. | 380. <br><br> <u>Pls. Ex. 4, p. 176:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as conclusory: <br><br> (1) Plaintiffs' characterization of transactions in Buthe's accounts as "exceptionally large" is vague and conclusory. <br><br> (2) Plaintiffs' assertion regarding "the ordinary size of funds [Buthe] maintained" in accounts at Al Rajhi Bank is conclusory and vague. | for discussing routine banking services provided to a charity, equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the United States. *See* Fed. R. Evid. 403. |
| 381 | Second, he created a balance that was a substantial multiple of the average balance he had maintained over months and years. *Id.* | 381. <br><br> Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366. <br><br> Disputed as conclusory: <br><br> (1) Plaintiffs' characterization of a "substantial multiple" is vague and conclusory. | 381. <br><br> Pls. Ex. 4, p. 176: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity, equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the United States. *See* Fed. R. Evid. 403. |
| 382 | Third, most of the funds remained in al Buthe's account at ARB for a period of just five days. *Id.* | 382. <br><br> Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366. | 382. <br><br> Pls. Ex. 4, p. 176: <br><br> - Should be excluded to the extent expert testimony is used |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | as a conduit for inadmissible hearsay. *See* Fed R. Evid. 802. |
| | | | - Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity, equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the United States. *See* Fed. R. Evid. 403. |
| 383 | Fourth, the funds - a great deal of money for an individual whose average account balances were far lower - were converted into traveler's checks. *Id.* | 383.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335, 366.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' averments regarding "a great deal of money" and "far lower" are conclusory and vague. | 382.<br><br>Pls. Ex. 4, p. 176:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services provided to a charity, equating all theaters, including support for Chechnya, as support for Al Qaeda's terrorist agenda against the United States. *See* Fed. R. Evid. 403. |
| 384 | Here again, ARB took none of the required AML actions with | 384. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | respect to the extraordinary transactions it executed for one of al Qaeda's key financial facilitators. | Immaterial for the reasons discussed above in response to Section IX (heading).<br><br>Disputed as conclusory; vague; lacks supporting evidence:<br><br>(1) Plaintiffs' assertion that Al Rajhi Bank "took none of the required AML actions" is vague and conclusory.<br><br>– Plaintiffs do not define "required AML actions."<br><br>– Plaintiffs do not cite supporting evidence showing that Al Rajhi Bank failed to take actions required under applicable AML policies.<br><br>(2) Plaintiffs' characterization of "extraordinary transactions" is vague.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 385 | The activity ARB facilitated through al Mujil's account reflect similar money laundering red flags involving large transactions that did not correspond to al Mujil's personal finances (many of which exceeded 100,000 SR and should have been flagged for further inquiry by ARB's automated AML software); and transactions with no apparent purpose that fit with al Mujil's | 385.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IX (heading) and ¶ 327.<br><br>(2) Further, given that IIRO KSA routinely handled countless cash donations dedicated to its worldwide humanitarian efforts, such large cash transactions would not have raised red flags. ARB Ex. 2 (Hobayb Rep.) at 30 ("For Saudi banking auditors such as myself, other individuals familiar with Saudi society, large cash transactions in accounts associated with charities would not have | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | personal finances and activities. *See supra* at ¶ 342 (listing abnormal transactions in al Mujil account); Ex. 58, 1995 Guidelines at 150; Ex. 189, ARB AML Guide at 738. | raised alarms before 9/11."); *id.* (explaining that before 9/11, charities in Saudi Arabia often provided their officials with charity funds to disburse).<br><br>Disputed as incomplete for the reasons discussed above in response to ¶ 362.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 386 | Throughout the time periods that ARB was enabling and facilitating these illicit and improper transactions via the accounts of Aqil, al Buthe, and al Mujil, they were serving as three of al Qaeda's most important funders and financial facilitators. *See supra* at 235, 238, 240. | 386.<br><br>Immaterial for the reasons discussed above in response to Section IX (heading) and ¶¶ 327, 335.<br><br>Disputed as conclusory:<br><br>(1) Plaintiffs' characterization of transactions as "illicit and improper" is conclusory and does not cite to supporting evidence.<br><br>Disputed as incomplete:<br><br>(1) None of the individuals discussed in this averment were known publicly or by Al Rajhi Bank as among "al Qaeda's most important funders and financial facilitators" before the 9/11 Attacks, including while the transactions discussed in this section occurred.<br><br>– Aqil was not designated under any sanctions regime for connections to terrorism until the United States designated him as an SDGT on June 2, 2004, in connection with his support to militants in Chechnya. *See* Pls. Ex. 50 (*U.S.-Based Branch of* | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | *Al Haramain Foundation Linked to Terror, Treasury Designates U.S. Branch, Director*, Sept. 9, 2004). | |
| | | – Buthe was not designated under any sanctions regime for connections to terrorism until the United States designated him as an SDGT on September 9, 2004, in connection with his support to militants in Chechnya. *See* Pls. Ex. 50 (*U.S.-Based Branch of Al Haramain Foundation Linked to Terror, Treasury Designates U.S. Branch, Director*, Sept. 9, 2004). | |
| | | – Mujil was not designated under any sanctions regime for connections to terrorism, until the United States designated him as an SDGT on August 3, 2006, five years after the 9/11 Attacks. *See* Pls. Ex. 170 (*Treasury Designates Director, Branches of [IIRO]*, Aug. 3, 2006)) (designation of IIRO's branches in the Philippines and Indonesia, including Abd al Hamid Sulaiman al Mujil). | |
| | | Disputed as controverted by the evidence: | |
| | | (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 387 | The same money laundering red flags were raised and ignored in relation to the transactions ARB facilitated through the individual accounts of Abdul Rahman al Rajhi, Saleh bin Sulaiman al Habdan, and Abdullah bin Ibrahim al Misfer. *See supra* at 253, 256. | 387. <br><br> Immaterial for the reasons discussed above in response to Section IX (heading), Section IV (heading), and ¶¶ 253, 256. <br><br> Disputed as conclusory: <br><br> (1) Plaintiffs' averment that Al Rajhi Bank "ignored" money laundering red flags is conclusory. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) Plaintiffs' averment that transactions through the accounts of accounts of Abdul Rahman al Rajhi, Saleh bin Sulaiman al Habdan, and Abdullah bin Ibrahim al Misfer "raised" money laundering red flags is conclusory and unsupported. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 388 | In addition to those discussed above, Jonathan Winer's expert report surveys a number of additional money laundering and terrorist financing red flags that were conspicuously ignored by ARB, involving and arising from the transfer of funds by the charities to areas where extremist and terrorist entities were known to have a substantial presence, *see* Ex. 4, Winer Report at 179-181; the existence of reliable information indicating that the charities and/or their representatives such as Aqil, were linked to third parties that were supporting or engaged in terrorist activity, *id.* at 181-82; the use of cash couriers to transfer funds from the charities into areas with known conflict and/or terrorist | 388. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section IX (heading). <br><br> (2) Plaintiffs' expert Jonathan Winer even acknowledged that "there would be legitimate humanitarian activities taking place in some areas to be undertaken by charities for such purposes as caring for injured people or helping orphans." Pls. Ex. 4 (Winer Rep.) at 179. <br><br> <u>Disputed as conclusory:</u> <br><br> (1) Plaintiffs' averment that Al Rajhi Bank "conspicuously ignored" money laundering red flags is conclusory. <br><br> (2) Plaintiffs' averment regarding the presence of "money laundering and terrorist financing red flags" is conclusory. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, | 388. <br><br> <u>Pls. Ex 4, p. 179-184:</u> <br><br> - Expert is not qualified to offer opinion on Saudi Banking regulations. <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing routine banking services and locations that are not related to Al Qaeda's attacks against the United States (Bosnia, Chechnya, Kosovo, Israel/Palestine). *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | activit; *id.* at 182; actual direct evidence that customer funds were being used for improper purposes, such as providing support for armed jihadists, *id.*; large amounts of funds withdrawn by the charities in cash, minimizing the evidentiary trail of the uses of the cash, *id.* at 182-83; and publications or statements of the charities expressly supporting paramilitary jihadist action, raising the question of whether the organizations are providing support for armed confict or terrorism. *Id.* at 183-84. | that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | |
| 389 | Collectively, ARB's conspicuous and systematic disregard for AML, CFT, and KYC standards and requirements, including ARB's own (nominal) procedures, in relation to the opening, maintenance, and operation of the accounts for the charities and their officials, and the accounts of Suleiman al Rajhi's own committee/foundation and its officials, reflects a conscious decision by ARB to exempt them from those standards and requirements, and support the use of those accounts without | 389. <u>Immaterial for the reasons discussed above in response to Section IX (heading).</u> <u>Disputed as ambiguous; vague:</u> (1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. <u>Disputed as controverted by the evidence:</u> (1) To the extent Plaintiffs aver that Al Rajhi Bank failed to comply with applicable anti-money laundering policies and procedures, | 389. <u>Pls. Ex. 4, p. 130-203:</u> - Expert is not qualified to offer opinion on Saudi Banking regulations. - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. - Should be excluded as needless presentation of cumulative evidence. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | limitations or restrictions. *See* Ex. 4, Winer Report at 131, *id.* at 130-203 (discussing myriad examples of ARB's KYC, AML and CFT violations and disregard of red flags). | that is controverted by the evidence for the reasons discussed above in response to ¶¶ 303, 306. | - Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Section X. | |
| X. | **Section X: ARB's Facilitation of Terrorist Financing In and Through the United States (¶¶ 390-428)** | **X. (heading)** <br><br> <u>Disputed as conclusory:</u> <br><br> (1) Plaintiffs' statement that Al Rajhi Bank facilitated "terrorist financing in and through the United States" is an unsupported legal conclusion to which no response is required. <br><br> (2) Plaintiffs' use of the word "facilitation" is vague and ambiguous. <br><br> <u>Immaterial:</u> <br><br> Plaintiffs' averments in Section X are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. <br><br> (1) The averments in Section X, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or any terrorism against the United States, including the 9/11 Attacks. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the planning, financing, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its principals supported the planning, financing, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the planning, financing, or carrying out of any terrorism against the United States, including the 9/11 Attacks. <br><br> (2) Averments concerning transactions through the Bank of the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, Abdul Rahman al Rajhi, Saleh bin Sulaiman al Habdan, and Abdullah bin Ibrahim al Misfer, even if credited, | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  |  | do not show that those transactions were intended for or used for terrorist financing, or to support Al Qaeda or any terrorism against the United States, including the 9/11 Attacks, or that Al Rajhi Bank knew or had reason to know that such transactions were intended for or used for any such purported purposes. Plaintiffs have no evidence showing that these customers were publicly connected with Al Qaeda or terrorism when they processed transactions through accounts at Al Rajhi Bank.<br><br>(3) Further, as discussed in response to Section IV (heading), the purported conduct of the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation is irrelevant as it is not attributable to the Bank. The Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was not a parent, subsidiary, or affiliate of Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 279:3-7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). Plaintiffs do not and cannot establish any basis for its conduct to be attributed to the Bank.<br><br>- Notwithstanding its lack of affiliation with Al Rajhi Bank, averments with respect to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are also immaterial as neither the Foundation nor Abdul Rahman al Rajhi, Saleh bin Sulaiman al Habdan, nor Abdullah bin Ibrahim al Misfer, were ever designated or otherwise sanctioned under U.S. or any other sanctions regime for connections to terrorism.<br><br>(4) Further, as discussed in response to Section IV (heading), the purported conduct of the U.S.-based SAAR Foundation is irrelevant as it is not attributable to the Bank. The U.S.-based SAAR Foundation was not a parent, subsidiary, or affiliate of the Bank. Plaintiffs do not and cannot establish any basis for attributing its conduct to the Bank. Plaintiffs have never alleged and have no evidence of any "relationship" between the Bank and |  |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | the SAAR Foundation. *See* Order 15-16 (Nov. 22, 2021), ECF 7378 (noting Plaintiffs have not alleged "any direct connection between ARB and the SAAR Network" and finding a "lack of a reasonable connection between ARB and the SAAR Network").<br><br>- Notwithstanding the SAAR Foundation's lack of affiliation with Al Rajhi Bank, Plaintiffs' averments with respect to the SAAR Foundation are also immaterial.  The FBI, USCS, and IRS investigated the SAAR Foundation for several years, and no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9.<br><br>- Further, in 2021, the FBI concluded, "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011.<br><br>- Moreover, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See Terrorist Attacks V*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). | |

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (5) Plaintiffs' averments show that the Bank provided only routine banking services to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, and do not support the conclusion that the Bank took any intentional, tortious conduct aimed at the United States by processing transactions involving those entities. | |

(6) Plaintiffs' averments related to Al Rajhi Bank's correspondent banking account at Chase Manhattan Bank are immaterial and irrelevant because they fail to trace a single transaction through Al Rajhi Bank's U.S. correspondent account to Al Qaeda, terrorism, the 9/11 Attacks or any other attack against the United States.

(7) Plaintiffs' averments related to the Humana Charitable Trust are immaterial and irrelevant because they do not show that Humana was a customer of the Bank, and consequently do not concern any conduct by the Bank.

- Plaintiffs' averments regarding purported discussions about moving the SAAR Foundation to the Isle of Man do not show any conduct by Al Rajhi Bank, let alone any intentional, tortious conduct by Al Rajhi Bank directed at the United States.

(8) To the extent Plaintiffs contend that the personal charitable donations of Sulaiman bin Abdulaziz Al Rajhi or Abdullah bin Sulaiman Al Rajhi were made with knowledge of charities' purported connection to terrorism (a point which Plaintiffs do not establish), such averments are immaterial, because Plaintiffs have not established any basis to impute a chairman or senior official's knowledge to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 390 | As discussed above, ARB maintained accounts and executed highly suspicious and improper transactions for Suleiman al Rajhi's committee/foundation, including during periods when it did not have any legal existence, and for individual officials of Suleiman al Rajhi's committee/foundation, including Abdul Rahman al Rajhi, Saleh bin Sulaiman al Habdan, and Abdullah bin Ibrahim al Misfer. *See supra* at 236, 248-53. | 390.<br><br>Immaterial for the reasons discussed above in response to Section X (heading).<br><br>Disputed as conclusory; not supported by the evidence:<br><br>(1) Plaintiffs do not cite evidence that Al Rajhi Bank "executed highly suspicious and improper transactions" for the Suleiman bin Abdulaziz Al Rajhi Charitable Foundation or the affiliated "officials." Plaintiffs reference ¶¶ 236, 248-253, which also fail to cite any evidence supporting Plaintiffs' conclusory allegations.<br><br>(2) Plaintiffs' reference to "the committee/foundation" is ambiguous and vague. To the extent "Suleiman al Rajhi's committee/foundation" refers to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, Plaintiffs do not cite evidence that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation "did not have any legal existence."<br><br>(3) To the extent "Suleiman al Rajhi's committee/foundation" refers to the U.S.-based SAAR Foundation, there is no basis to conflate the SAAR Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Saudi Arabia.<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs' statement that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation "did not have legal existence" is meant to suggest that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was not authorized to operate in the Kingdom of Saudi Arabia at any point, that statement is controverted by the deposition testimony of the Bank's current chairman, Abdullah bin Sulaiman Al Rajhi.<br><br>- In 2000, Sulaiman bin Abdulaziz Al Rajhi acquired a license to create a charity foundation, the Sulaiman bin Abdulaziz Al | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Rajhi Charitable Foundation, which allowed him to: (1) raise money for charity by collecting donations from others, and (2) disburse those funds to charitable causes. Before 2000, Sulaiman bin Abdulaziz Al Rajhi donated his own money to charitable causes and, because he was not collecting donations from others, he did not need a license. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 257:9-258:15 and Errata at 257:12-13, 257:16, 257:18. | |
| 391 | Plaintiffs have not yet been afforded discovery as to the financial activity carried out through the committee/foundation account at ARB generally, and therefore do not know the full extent of its use to finance al Qaeda and its intertwined charity fronts and financial facilitators, including through the United States. | 391. <br><br> Immaterial for the reasons discussed above in response to Section X (heading). <br><br> Disputed as ambiguous; vague: <br><br> (1) Plaintiffs' reference to "the committee/foundation" is ambiguous and vague. To the extent the "committee/foundation" refers to the U.S.-based SAAR Foundation, there is no basis to conflate the SAAR Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. <br><br> Disputed as controverted by the evidence: <br><br> (1) To the extent "the committee/foundation" refers to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, Plaintiffs' averment that Plaintiffs did not obtain discovery from Al Rajhi Bank into the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation's accounts at Al Rajhi Bank is incorrect. <br><br> - Even though the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation is a wholly distinct entity from Al Rajhi Bank, the Bank produced the available account records for three alleged officials of the Foundation, Abdullah bin Ibrahim al Misfer, Saleh Habdan, and Abdul Rahman Al Rajhi. *See, e.g.*, Pls. Ex. 129 (Abdul Rahman Al Rajhi Statements of Account), ARB 40860-41153; Pls. Ex. 130 (Abdul Rahman Al | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Rajhi and Saleh Al Habdan Statements of Account), ARB 41176-41184; Pls. Ex. 131 (Abdul Rahman Al Rajhi and Saleh Soliman Statements of Account), ARB 41185-41278; Pls. Ex. 132 (Abdul Rahman Al Rajhi and Saleh Al Habdan Statements of Account), ARB 42185-42186; Pls. Ex. 133 (Abdul Rahman Al Rajhi Statements of Account), ARB 42187-42188; Pls. Ex. 134 (Saleh Habdan Statements of Account), ARB 41668-41720; Pls. Ex. 135 (Abdullah bin Ibrahim al Misfer Statements of Account), ARB 41441-41442; Pls. Ex. 136 (Abdullah bin Ibrahim al Misfer and Abdel Rahman Mohamed Al Aqil Statements of Account), ARB 41279-41283.<br><br>- The Bank also produced records of 23 charitable donations from the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation.<br><br>(9) The rest of Plaintiffs' statement contains unsupported legal conclusions to which no response is required.**Error! Hyperlink reference not valid.** | |
| 392 | However, discovery Plaintiffs received from defendant ▮▮▮ confirms that Suleiman al Rajhi, Abdullah al Rajhi, and ARB extensively coordinated the alleged "charitable" activities and transactions of Suleiman al Rajhi and his committee/foundation, with and through the U.S.-based SAAR Foundation enterprise, established by Suleiman al Rajhi, using ARB's Payable Through Account at Chase Manhattan. *See* Ex. 4, Winer Report at 184-203. | 392.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section IV (heading) and Section X (heading).<br><br>(2) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32-33.<br><br>Disputed as conclusory; ambiguous; vague: | 392.<br><br>Pls. Ex. 4, p. 184-209:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). See Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing charity work that |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' reference to "his committee/foundation" is ambiguous and vague. | has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| | | (2) To the extent "his committee/foundation" refers to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, Plaintiffs' allegation that Al Rajhi Bank "extensively coordinated" the charitable activities of Sulaiman bin Abdulaziz Al Rajhi, the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, or the SAAR Foundation is vague and conclusory. | |
| | | (3) Plaintiffs' reference to the "U.S.-based SAAR Foundation enterprise" is ambiguous, vague and conclusory. Plaintiffs fail to cite evidence showing what entities comprise this purported "enterprise." | |
| | | Disputed as controverted by the evidence: | |
| | | (1) The cited portions of Jonathan Winer's report on which Plaintiffs rely, to the extent admissible, do not support the assertion that Al Rajhi Bank "extensively coordinated" the charitable activities of Sulaiman bin Abdulaziz Al Rajhi, and the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, or "with and through the U.S.-based SAAR Foundation enterprise." | |
| | | (2) The record evidence shows only that the extent of Al Rajhi Bank's involvement in the charitable endeavors of Sulaiman bin Abdulaziz Al Rajhi and the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Saudi Arabia was the Bank's provision of arms-length routine financial services such as maintaining accounts and processing transactions. *See, e.g.*, Pls. Ex. 122 (Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation Statements of Accounts) at ARB-38079-38107, ARB-39948-39959. | |
| 393 | As the FBI and CIA concluded in their December 2004 Joint | 393. | 393. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | *Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States* the U.S.-based SAAR Foundation and its associated entities were "a complex web of overlapping companies with parallel ideologies, personal relationships, and financial associates that has exhibited numerous affiliations with entities known to support terrorism." *See* Ex. 26 (Lormel Exhibit 9), *Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States*, December 2004, EO14040-003414-3442-UPDATED. | Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading). <br><br> (2) Immaterial and irrelevant because the FBI and CIA assessment on which Plaintiffs rely, to the extent admissible, does not show any conduct or intent by Al Rajhi Bank. Even if such statements assert that affiliates of the U.S.-based SAAR Foundation purportedly supported terrorism, the statements do not assert that the SAAR Foundation or Al Rajhi Bank supported Al Qaeda or any terrorism against the United States, including the 9/11 Attacks. <br><br> Disputed as vague and conclusory: <br><br> (1) The quoted sentence from the FBI and CIA assessment is not supported by specific factual detail or evidence. Such vague and non-specific assertions are insufficient to show that Al Rajhi Bank knowingly supported Al Qaeda or any terrorism against the United States, including the 9/11 Attacks. | Pls. Ex. 26: <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |
| 394 | Suleiman al Rajhi began establishing this web of entities in the United States in the 1980's, deliberately creating an opaque and convoluted structure of intertwined companies, think tanks, foundations, and alleged charitable entities, the structure and financial activities of which defied logical explanation or legitimate purpose. *Id*.; Ex. 4, Winer Report at 185-189; *see also* Ex. 27, Kane Affidavit. | 394. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading). <br><br> (2) Immaterial because Plaintiffs do not show that any of the purported "intertwined companies, think tanks, foundations, and alleged charitable entities" was a parent, subsidiary, or affiliate of Al Rajhi Bank. <br><br> Disputed as conclusory: | 394. <br><br> Pls. Ex. 27: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802 <br><br> Pls. Ex. 4: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (1) Plaintiffs' characterization of Sulaiman bin Abdulaziz Al Rajhi's actions as "deliberate[]" is a legal conclusion unsupported by admissible evidence.<br><br>(2) Plaintiffs' characterization of the SAAR Foundation's early structure as "opaque," "convoluted," and "def[ying] logical explanation or legitimate purpose," likewise, are legal conclusions unsupported by the evidence cited. | docs) (e.g., direct quotes of Pls. Ex. 27). *See* Fed. R. Evid. 802.<br><br>- Should be excluded as needless presentation of cumulative evidence. |
| 395 | Records filed with the Commonwealth of Virginia show that Suleiman al Rajhi established several of the entities comprising this web in connection with other members of al Qaeda's Golden Chain, and senior officials of IIRO and MWL. *See* Ex. 24, SANA-BELL 0001-10 at 7, Articles of Incorporation of the SANA-BELL, Inc., July 28, 1999 reflecting that initial Board of Trustees included Suleiman al Rajhi ("Solayman Alsalih Alrajhi"), Saleh Kamel and Ibrahim Afandi ( "Golden Chain"), Dr. Farid Yasin Qurashi (IIRO's Secretary General), Dr. Abdulrahim al Saati (MWL/IIRO official), ▬▬▬▬ (MWL). | 395.<br><br><u>Immaterial</u>:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 393-394.<br><br>(2) Immaterial because the "Golden Chain" theory to connect anyone to Al Qaeda has been repeatedly debunked, by this Court and others. *See, e.g., In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 817-18 (S.D.N.Y. 2005)* (finding document had "serious foundational flaws," concluding that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters"); *United States v. Arnaout*, No. 02 Cr. 892, 2003 WL 255226, at *2 (N.D. Ill. Feb. 4, 2003) (rejecting the proffered list as inadmissible hearsay).<br><br>- Furthermore, the purported "Golden Chain" does not name the Bank, or Sulaiman bin Abdulaziz Al Rajhi, or even "Rajhi," but instead the word on the document properly translates to "*Raji*," a different name. *See* ARB Ex. 54 (Al Rajhi Bank's Certified Translation of Plaintiffs' Exhibit 81).<br><br>- Further, the purported "Golden Chain" document pre-dates the formation of Al Qaeda, and more likely is related to desired | 395.<br><br><u>Pls. Ex. 24:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | support for Afghan Rebels fighting Russians in Afghanistan. ARB Ex. 4 (Lormel Rep.) at 25-26.<br><br>(3) Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi established entities in connection with senior officials of IIRO and MWL in 1999 is immaterial because neither of those entities was designated under any sanctions regime for connections to terrorism at that time or at any point before the 9/11 Attacks.<br><br><u>Disputed as conclusory; lacking supporting evidence as to the purported Golden Chain:</u><br><br>(1) Plaintiffs do not cite evidence connecting the purported "Golden Chain" to Al Qaeda.<br><br>(2) Plaintiffs do not cite evidence connecting Sulaiman bin Abdulaziz Al Rajhi, Saleh Kamel, or Ibrahim Afandi to the purported "Golden Chain." | |
| 396 | These and other records and evidence also confirm Abdullah al Rajhi's active involvement in the U.S. SAAR Foundation enterprise. *See* Ex. 25 (Abdullah al Rajhi Exhibit 57), 1991-1994 Annual Reports for the SAAR Foundation, Inc. (identifying principal officers and directors); Ex. 1, Al Rajhi Deposition at 311 (confirming that the "Abdullah S. Al-Abdulaziz" on the second page of the 1994 Annual Report is him); *id.* at 295-296, 316-319, 324-325 (confirming correspondence with ███████ and involvement in matters discussed in that correspondence); | 396.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading) and ¶ 393.<br><br>(2) Immaterial because Plaintiffs have no evidence that the activities of the purported "U.S. SAAR Foundation enterprise" were conducted by or for Al Rajhi Bank, and Plaintiffs do not and cannot establish any basis for attributing "U.S. SAAR Foundation" activities to the Bank.<br><br><u>Disputed as vague:</u><br><br>(1) Plaintiffs' characterization of the purported "U.S. SAAR Foundation enterprise" is ambiguous, vague, and conclusory. Plaintiffs fail to cite evidence showing what entities comprise this purported "enterprise." | 396.<br><br><u>Pls. Ex. 25:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br><u>Pls. Exs. 30-37:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Ex. 4, Winer Report at 189-93, 196-200 (discussing Abdullah al Rajhi involvement). *See also* Exs. 30-37. | Disputed as misleading; incomplete: <br><br> (1) Plaintiffs' selective citation of certain inadmissible documents is misleading. Abdullah bin Sulaiman Al Rajhi testified, and Plaintiffs' other similarly inadmissible documents, if admitted, would corroborate, that communications between his office and ▮▮▮▮▮▮ were not communications directed to or from Abdullah bin Sulaiman Al Rajhi or Al Rajhi Bank, but reflected communications between ▮▮▮▮▮▮ and Sulaiman bin Abdulaziz Al Rajhi, as ▮▮▮▮▮ did not read or speak Arabic and Sulaiman bin Abdulaziz Al Rajhi did not read or speak English. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 317:7-318:11 and Errata 317:9, 317:11, 317:16, 318:3, 318:8; *see, e.g.*, Pls. Ex. 29 (letter from Abdullah S. Al Rajhi's email but containing a letter from Sulaiman A. Al Rajhi) at NL 0015578, NL 0015043. | Pls. Ex. 4, p. 189-93, 196-200: <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs) (e.g., direct quotes of Pls. Ex. 27). *See* Fed. R. Evid. 802. <br><br> - Should be excluded as needless presentation of cumulative evidence. |
| 397 | As also noted above, Suleiman al Rajhi and Abdullah al Rajhi took deliberate steps to obscure and conceal their roles and involvement in the SAAR Foundation web of companies, including by intentionally and illegally using various false or misspelled names and fictitious addresses on official documents filed with the Commonwealth of Virginia. *See supra* at ^ 47. | 397. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading) and paragraphs 47 and 394. <br><br> (2) Immaterial because Plaintiffs do not show that the SAAR Foundation or any of the purported "SAAR Foundation web of companies" was a parent, subsidiary, or affiliate of Al Rajhi Bank, and Plaintiffs provide no basis to attribute any conduct of those separate entities to Al Rajhi Bank. <br><br> Disputed as conclusory; lacking supporting evidence: <br><br> (1) Plaintiffs cite no evidence to support the legal conclusion that Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi used aliases "illegally." | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Disputed as controverted by the evidence; for the reasons discussed in response to paragraph 47: <br><br>(1) To the extent Plaintiffs aver that Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi used aliases to "obscure and conceal their roles and involvement" in purported illegal activity, that is controverted by the evidence. <br><br>- As discussed in response to paragraph 47 of Plaintiffs' averment, Abdullah bin Sulaiman Al Rajhi testified that he and his father used aliases on SAAR Foundation documents for "privacy and security" reasons. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 311:5-312:22. | |
| 398 | U.S. counterterrorism officials assessed, and Plaintiffs' experts have opined, that the SAAR Foundation enterprise was established and operated to launder funds in support of terrorist causes. *See* Ex. 4, Winer Report at 184-203; Ex. 26 (Lormel Exhibit 9), *Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States*, EO14040-003438; Ex. 27, Kane Affidavit at 7 ("I have seen evidence of the transfer of large amounts of funds from the *Safa* [SAAR Foundation] *Group* organizations directly to terrorist-front organizations since the early 1990's;"); *id.* at 8 ("The FBI, USCS, and IRS agents involved in this investigation at | 398. <br><br>Immaterial: <br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading). <br><br>(2) In addition, Plaintiffs' statement is immaterial and irrelevant because the FBI and CIA assessment on which Plaintiffs rely, to the extent admissible, does not show any conduct or intent by Al Rajhi Bank. Even if affiliates of the SAAR Foundation purportedly supported terrorism, Plaintiffs do not show that the SAAR Foundation supported Al Qaeda or any terrorism against the United States, including the 9/11 Attacks. *See* Pls. Ex. 26 (FBI-CIA Joint Assessment) at EO14040-003438 ("[Redacted] the SAAR Foundation, in concert with its subsidiary companies, provided monetary support and other assistance to organizations linked to the Palestinian Islamic Jihad and HAMAS."). <br><br>(3) Immaterial because Plaintiffs do not show that the SAAR Foundation or any part of the purported "SAAR Foundation enterprise" was a parent, subsidiary, or affiliate of Al Rajhi Bank, | 398. <br><br>Pls. Ex. 4, p. 184-203: <br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. <br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. <br><br>Pls. Ex. 26: <br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | various times since 1998 suspect that, as a result of the 1995 searches in Tampa, the *Safa* [SAAR Foundation] *Group* engaged in the money laundering tactic of "layering" to hide from law enforcement authorities the trail of its support for terrorists. There appears to be no innocent explanation for the use of layers and layers of transactions between *Safa* [SAAR Foundation] *Group* companies and charities other than to throw law enforcement authorities off the trail."). | and Plaintiffs provide no basis to attribute any conduct of such "enterprise" to Al Rajhi Bank.<br><br>Disputed as conclusory; lacking supporting evidence:<br><br>(4) Plaintiffs cite no evidence to support the legal conclusion that the SAAR Foundation was established and operated for the purpose of "launder[ing] funds in support terrorist causes."<br><br>Disputed as misleading; incomplete:<br><br>(5) While the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated under any sanctions regime for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9.<br><br>(6) Further, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See Terrorist Attacks V*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). | - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 27:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 399 | This conclusion is strengthened by the evidence that, following the investigations and public reporting implicating IIIT, one of the SAAR Foundation entities, in the financing of terrorism in 1997, Suleiman al Rajhi and Abdullah al Rajhi (then the most senior officials of ARB), initiated steps | 399.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading) and ¶ 398.<br><br>(2) In particular, Plaintiffs have no evidence that the activities of the SAAR Foundation and/or its purported related entities, including | 399.<br><br>Pls. Ex. 4, p. 196-199:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | to remove the SAAR Foundation and the related Humana Trust from the United States, as Abdullah al Rajhi acknowledged in his deposition. *See* Ex. 4, Winer Report at 198-99; *id.* at 196-97 (discussing communication about and Abdullah al Rajhi awareness of IRS investigation); Ex. 1, Al Rajhi Deposition at 294-300. | IIT, were conducted by or for Al Rajhi Bank, and Plaintiffs have no basis to attribute such conduct to the Bank." <br><br> <u>Disputed as conclusory; lacks supporting evidence contravened by the supporting evidence:</u> <br><br> (1) Plaintiffs' assertion that IIT was "implicated" by "investigations and public reporting" is vague, a legal conclusion, and unsupported by the cited evidence.  The record contains no evidence of charges or indictments ever brought against IIT, and IIT was never designated under any sanctions regime for connections to terrorism.   Plaintiffs, moreover, cite no evidence of "investigations" or "public reporting" of IIT, let alone "implicat[ing]" IIT. <br><br> (2) Purported discussions about "the SAAR Foundation and the related Humana Trust from the United States" do not "strengthen[]" Plaintiffs' unsupported conclusion that the SAAR Foundation was created to support terrorism. <br><br> (3) Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi took steps to "remove . . . the Humana Trust from the United States" lacks support, and is controverted by the evidence. <br><br>    - Abdullah bin Sulaiman Al Rajhi explained that "idea was from SAAR [Foundation] team" to create the Humana Charitable Trust in the Isle of Man; it was not moved from the United States.  *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 303:5-14 and Errata 303:7, 303:12. <br><br> (4) To the extent Plaintiffs aver that discussions about possibly moving the SAAR Foundation were solely motivated by "investigations and public reporting implicating IIIT," that assertion is not supported by evidence, including for the reasons in Al Rajhi Bank's response to ¶¶ 406, 407. | hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | - Abdullah bin Sulaiman Al Rajhi explained that his father Sulaiman bin Abdulaziz Al Rajhi became "disappointed about the performance" of SAAR Foundation, which had been created "to make an investment and use the proceed[s] of the investment to do charity work"; Sulaiman bin Abdulaziz Al Rajhi concluded that SAAR Foundation "did not have the right principal investment strategy." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 294:17-22; 296:8-14. | |
| 400 | The documentary evidence indicates that Suleiman al Rajhi and Abdullah al Rajhi initiated steps to move the SAAR Foundation web of companies' principal operations, via Humana Trust, to the Isle of Man, a notorious bank secrecy haven, and that such steps did in fact occur. *See* Ex. 4, Winer Report at 184-202, *id.* at 192 (discussing use of shell in Isle of Man); Ex. 27, Kane Affidavit at FED-PEC0001249 (discussing money disappearing to Isle of Man); Ex. 140 (showing movement of funds to Isle of Man accounts by Sulieman al Rajhi, Humana, and SAAR Foundation in this time period). | 400.<br><br>Immaterial for the reasons discussed above in response to Section X (heading) and paragraphs 398-399.<br><br>Disputed as vague; conclusory; lacks supporting evidence; controverted by the evidence:<br><br>(1) Plaintiffs' reference to the "SAAR Foundation web of companies' principal operations" is vague and conclusory. Plaintiffs do not identify any particular companies or their link to the SAAR Foundation in the United States. Plaintiffs also do not identify any particular operations, let alone principal operations, of any company.<br><br>(2) Plaintiffs cite no evidence for the assertion that any operations of any particular company "move[d] . . . to the Isle of Man."<br><br>(3) Plaintiffs cite no evidence for the assertion that the Isle of Man is "a notorious bank secrecy haven."<br><br>(4) The evidence Plaintiffs cite does not show movement of funds to Isle of Man accounts by Sulaiman bin Abdulaziz al Rajhi. The funds transfers involving Sulaiman bin Abdulaziz Al Rajhi shown in Plaintiffs' Exhibit 140, to the extent admissible, are to Chase Manhattan Private Bank (Jersey) Channel Islands, not to the Isle of Man; from Humana Charitable Trust, not to Humana Charitable Trust; for the benefit of Sulaiman bin Abdulaziz Al Rajhi, not from | 400.<br><br>Pls. Ex. 4, p. 184-202:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 27:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 140: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Sulaiman bin Abdulaziz Al Rajhi. *See* Pls. Ex. 140 (Mar-Jac Litigation Exhibits). <br><br> (5) To the extent admissible, Winer cites no evidence for his legal conclusions that any transactions referenced in Ex. 140 were undertaken with intent to "hide or disguise transactions or accounts to make them harder to trace," or his assertion that the transactions were accomplished "without applying normal banking procedures." Pls. Ex. 4 (Winer Report) at 184. | - Lacks Authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for discussing. *See* Fed. R. Evid. 403. |
| 401 | Available evidence indicates that financial steps towards this move were undertaken via ARB's Payable Through Account at Chase Manhattan, as discussed below. *See infra* at 429-453; Ex. 27, Kane Affidavit at FED-PEC0001249 (discussing movement of money to Isle of Man); Ex. 140 (showing movement of funds to Isle of Man accounts by Sulieman al Rajhi, Humana, and SAAR Foundation in this time period). | 401. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading) and paragraph 392. <br><br> (2) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32-33. <br><br> <u>Disputed as conclusory; lacking supporting evidence; and controverted by the evidence:</u> <br><br> (1) Plaintiffs do not cite evidence demonstrating that Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank was used as a payable-through account to initiate steps toward moving the operations of the SAAR Foundation. <br><br> (2) The portion of the Kane affidavit relied on by Plaintiffs, to the extent admissible, makes no reference to transfers to the Isle of Man. The cited portion also makes no reference to Al Rajhi Bank, let alone references to transactions through Al Rajhi Bank's | 401. <br><br> <u>Pls. Ex. 27:</u> <br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> <u>Pls. Ex. 140:</u> <br> - Lacks Authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | correspondent banking account with Chase Manhattan Bank. *See* Pls. Ex. 27 (Kane Affidavit) at FED-PEC0001249.<br><br>(3) The funds transfers involving Sulaiman bin Abdulaziz Al Rajhi shown in Plaintiffs' Exhibit 140, to the extent admissible, are to Chase Manhattan Private Bank (Jersey) Channel Islands, not to the Isle of Man; from Humana Charitable Trust, not to Humana Charitable Trust; for the benefit of Sulaiman bin Abdulaziz Al Rajhi, not from Sulaiman bin Abdulaziz Al Rajhi. *See* Pls. Ex. 140 (Mar-Jac Litigation Exhibits).<br><br>(4) Plaintiffs' Exhibit 140, to the extent admissible, does not show any transactions through Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank. None of the account numbers shown in Plaintiffs' Exhibit 140 matches the account number for Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank. *See* Pls. Ex. 140 (Mar-Jac Litigation Exhibits); *see also, e.g.*, Pls. Ex. 138 (JP Morgan Production) at JPMC 0017, 0034, 0040-41, 0154-57 (showing Al Rajhi Bank's account number was ▮▮▮▮7794). | |
| 402 | Abdullah al Rajhi testified that the proposal to move the enterprise to the Isle of Man was not approved, and that a decision was instead made to move it "back to Saudi." *See* Ex. 1, Al Rajhi Deposition at 299-300. | 402.<br>Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 398-399.<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "the enterprise" is vague.<br><br>Disputed as incomplete:<br><br>(1) To the extent the "enterprise" refers to the charitable work of the SAAR Foundation, the evidence Plaintiffs cite does not support the averment.<br><br>- Abdullah bin Sulaiman Al Rajhi explained that the "idea was from SAAR [Foundation] team" to create the Humana | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Charitable Trust in the Isle of Man.  *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 303:5-14 and Errata 303:7, 303:12.<br><br>- Abdullah bin Sulaiman Al Rajhi acknowledged that the Humana Charitable Trust was in fact "created" in the Isle of Man. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 303:13-23 and Errata at 303:21, 22.<br><br>- Abdullah bin Sulaiman Al Rajhi further testified that Sulaiman bin Abdulaziz Al Rajhi's "final decision" was to "not accept the suggestion of going to Isle of Man" and instead determined that the charitable work of SAAR Foundation should go "back to Saudi." *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 300:5-8; *id.* at 303:2-14 and Errata at 303:7, 12 (explaining that Sulaiman bin Abdulaziz Al Rajhi wanted the assets "to be under his foundation here in Saudi").<br><br>- By 2000, Sulaiman bin Abdulaziz Al Rajhi acquired a license to create a charity foundation, the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, which allowed him to: (1) raise money for charity by collecting donations from others, and (2) disburse those funds to charitable causes.  Before 2000, Sulaiman bin Abdulaziz Al Rajhi donated his own money to charitable causes and, because he was not collecting donations from others, he did not need a license. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 257:9-258:11 and Errata at 257:12-13, 257:16, 257:18. | |
| 403 | As Jonathan Winer discusses in his expert report, Abdullah al Rajhi's testimony on this point is inconsistent with the documentary evidence, and apparently true only insofar as the Suleiman Bin Abdul | 403.<br><br><u>Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 398-399, 402.</u><br><br><u>Disputed as vague:</u> | 403.<br><br><u>Pls. Ex. 4, p. 198-199:</u><br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Aziz al Rajhi Foundation was formally established in Saudi Arabia on June 19, 2000. *See* Ex. 4, Winer Report at 198-99; *supra* at 400-402, *see also supra* at ^ 41 (discussing creation of Foundation in Saudi Arabia in 2000). | (1) Plaintiffs' averment that Abdullah bin Sulaiman Al Rajhi's testimony is "apparently true only insofar as the Suleiman Bin Abdul Aziz al Rajhi Foundation was formally established in Saudi Arabia on June 19, 2000" is vague and unexplained.  <u>Disputed as controverted by the evidence:</u>  (1) The Winer Report on which Plaintiffs rely mischaracterizes the testimony of Abdullah bin Sulaiman Al Rajhi. *See* Pls. Ex. 4, (Winer Report) at 199. Abdullah bin Sulaiman Al Rajhi's testimony aligns with the "documentary evidence."  - Abdullah bin Sulaiman Al Rajhi explained that the "idea was from SAAR [Foundation] team" to create the Humana Charitable Trust in the Isle of Man and start a charitable foundation in Saudi Arabia. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 303:5-14 and Errata 303:7.  - Abdullah bin Sulaiman Al Rajhi acknowledged that the Humana Charitable Trust was in fact "created" in the Isle of Man. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 303:13-23 and Errata at 303:21, 22.  - Abdullah bin Sulaiman Al Rajhi further testified, however, that Sulaiman bin Abdulaziz Al Rajhi's "final decision" was to "not accept the suggestion of going to Isle of Man" and instead determined that the charitable work of SAAR Foundation should go "back to Saudi." *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 300:5-8; *id.* at 303:2-14 and Errata at 303:7, 12 (explaining that Sulaiman bin Abdulaziz Al Rajhi wanted the assets "to be under his foundation here in Saudi").  - By 2000, Sulaiman bin Abdulaziz Al Rajhi acquired a license to create a charity foundation, the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, which allowed him to: (1) raise | - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802.  - Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | money for charity by collecting donations from others, and (2) disburse those funds to charitable causes.  Before 2000, Sulaiman bin Abdulaziz Al Rajhi donated his own money to charitable causes and, because he was not collecting donations from others, he did not need a license. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 257:9-258:11 and Errata at 257:12-13, 257:16, 257:18. | |
| 404 | In any case, the documentary and other evidence confirms that Suleiman al Rajhi and his charity committee/foundation in Saudi Arabia used the U.S.-based SAAR Foundation as a proxy, conduit, and shell, to facilitate funds transfers throughout the world that were initiated by ARB and, in many cases, carried out through ARB's Payable Through Account at Chase Manhattan in New York. | 404.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 392, 401.<br><br>(2) Immaterial because, even if credited, Plaintiffs do not allege any conduct by Al Rajhi Bank other than providing routine banking services to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation.  Plaintiffs have no evidence that the Bank provided any financial services to the U.S.-based SAAR Foundation.<br><br>(3) Immaterial because Plaintiffs have not established any basis for imputing the purported knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>(4) Immaterial to the extent Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | <u>Disputed as conclusory; misleading; vague; lacking supporting evidence:</u><br><br>(1) Plaintiffs do not cite evidence for their vague, legal conclusions that Sulaiman bin Abdulaziz Al Rajhi or the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation used the SAAR Foundations "as a proxy, conduit, and shell."<br><br>(2) Plaintiffs do not cite evidence for their vague and misleading assertion that Al Rajhi Bank "initiated" funds transfers for the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation or the SAAR Foundation.<br><br>(3) Plaintiffs do not cite evidence that Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank was used as a payable-through account.<br><br>(4) Plaintiffs do not cite evidence that "in many cases" transfers of funds by the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation or the SAAR Foundation were "carried out" through Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank. | |
| 405 | Abdullah al Rajhi acknowledged at his deposition, and the documentary evidence shows, that Suleiman al Rajhi established the U.S.-based SAAR Foundation as a vehicle to carry out his alleged charitable activities, and that Suleiman al Rajhi was the major source of the SAAR Foundation's funding. *See* Ex. 1, Al Rajhi Deposition at 294-295; Ex. 29 | 405.<br><br><u>Immaterial for the reasons discussed above in response to Section X (heading).</u><br><br><u>Disputed as misleading; incomplete:</u><br><br>(1) Plaintiffs' characterization that Abdullah bin Sulaiman Al Rajhi "acknowledged" that Sulaiman bin Abdulaziz Al Rajhi "established the U.S.-based SAAR Foundation as a vehicle to carry out his alleged charitable activities, and that Suleiman al Rajhi was the major source of the SAAR Foundation's funding" is misleading and incomplete. | 405.<br><br><u>Pls. Ex. 29:</u><br><br>- Lacks Authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | (Galloway Exhibit 22), NL 15578, 15043-15046. | - Specifically, Abdullah bin Sulaiman Al Rajhi testified that Sulaiman bin Abdulaziz Al Rajhi created the SAAR Foundation "to make an investment and use the proceed[s] of the investment to do charity work" and that Sulaiman bin Abdulaziz Al Rajhi was a "major contributor" to the SAAR Foundation. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 294:17-22; 295:11-12.<br><br>(2) To the extent Plaintiffs suggest that Sulaiman bin Abdulaziz Al Rajhi's "alleged charitable activities" were anything other than bona fide charitable activities, Plaintiffs have no supporting evidence. | |
| 406 | Following the investigations and derogatory reporting implicating SAAR Foundation, through IIT, in the financing of terrorism, steps were initiated in approximately 1997 to transfer the U.S.-based SAAR Foundation's assets to Humana Trust, and to relocate Humana Trust to the Isle of Man. *See* Ex. 4, Winer Report at 190-92; Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625); Ex. 1, Al Rajhi Deposition at 302-303. | 406.<br><br>Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 399, 402-03.<br><br>Disputed as vague and conclusory; controverted by the evidence:<br><br>(1) Plaintiffs' assertion that "SAAR Foundation, through IIT," was "implicat[ed] . . . in the financing of terrorism" by "investigations and derogatory reporting" is vague, a legal conclusion, and unsupported by the cited evidence.<br><br>- The record contains no evidence of charges or indictments ever brought against SAAR Foundation or IIT, and neither SAAR Foundation nor IIT was ever designated or otherwise sanctioned under any sanctions regime for connections to terrorism. Plaintiffs, moreover, cite no evidence of "investigations" or "derogatory reporting" of SAAR Foundation or IIT, let alone "implicat[ing]" SAAR Foundation.<br><br>- While the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR | 406.<br><br>Pls. Ex. 4, 190-92:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 14:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Foundation was never designated or otherwise sanctioned under any sanctions regime for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9. | |
| | | - Further, in 2021, the FBI concluded, "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000010. | |
| | | - Moreover, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See Terrorist Attacks V*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory allegations against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). | |
| | | (2) To the extent Plaintiffs aver that discussions about possibly moving the SAAR Foundation were solely motivated by "derogatory reporting implicating SAAR Foundation through IIT," that assertion incomplete and controverted by the evidence. | |
| | | - Abdullah bin Sulaiman Al Rajhi explained that his father Sulaiman bin Abdulaziz Al Rajhi became "disappointed about the performance" of SAAR Foundation, which had been created "to make an investment and use the proceed[s] of the investment to do charity work"; Sulaiman bin Abdulaziz Al | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Rajhi concluded that SAAR Foundation "did not have the right principal investment strategy." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 294:17-22; 296:8-14. Abdullah bin Sulaiman Al Rajhi further testified that Sulaiman bin Abdulaziz Al Rajhi's "final decision" was to "not accept the suggestion of going to Isle of Man" and instead determined that the charitable work of SAAR Foundation should go "back to Saudi." *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 300:5-8; *id.* at 303:2-14 and Errata at 303:7, 12 (explaining that Sulaiman bin Abdulaziz Al Rajhi wanted the assets "to be under his foundation here in Saudi").<br><br>(3) Plaintiffs' assertion that steps were taken "to relocate Humana Trust to the Isle of Man" is controverted by the evidence.<br><br>- Abdullah bin Sulaiman Al Rajhi acknowledged that the Humana Charitable Trust was "created" in the Isle of Man, not the United States. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 303:13-23 and Errata at 303:21, 22. | |
| 407 | These steps were prompted by a desire on the part of Suleiman al Rajhi to insulate himself from "potential other risk, you know, liability" following the public reporting implicating his alleged charity arms in supporting terrorism. *See* Ex. 1, Al Rajhi Deposition at 303; Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625) (SAAR Foundation/Humana business record stating "The donors became very concerned about linked to terrorist activities, of | 407.<br><br>Immaterial for the reasons discussed above in response to Section X (heading).<br><br>Disputed as vague:<br><br>(1) Plaintiffs' characterization of "his alleged charity arms" is vague and undefined.<br><br>(2) Plaintiffs' assertion that public reporting "implicat[ed]" any charity affiliated with Sulaiman bin Abdulaziz Al Rajhi is vague and unsupported by the evidence, including for the reasons set for the in Al Rajhi Bank's response to ¶ 406.<br><br>Disputed as controverted by the evidence: | 407.<br><br>Pls. Ex. 14:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 4, 189-200:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | course with which they had nothing to do. A question was asked, "why do we want to continue to be in U.S.A.?" The trustees then decided to "re-locate" its operations. After seeking appropriate legal advice, steps were taken to create Human Chairtable Trust on 12th day of November 1997 as an Isle of Man trust. Saar Foundation then made a charitable contribution of assets to Humana to be used solely for charitable purposes. Dr. Cherif Sedky, which lives in Saudi Arabia and ▮▮▮▮▮▮ who lives in U.S.A. became the trustees of Humana."); Ex. 4, Winer Report at 189-200. | (1) To the extent Plaintiffs aver that any steps were solely "prompted" by "public reporting implicating [any such] charity arms in supporting terrorism," that assertion incomplete and controverted by the evidence.<br><br>- Plaintiffs misrepresent the testimony of Abdullah bin Sulaiman Al Rajhi, who explained that part of the reason Sulaiman bin Abdulaziz Al Rajhi wanted the charitable work of SAAR Foundation to go "back to Saudi," and the assets "to be under his foundation here in Saudi" was because of "*reputational* risk" and "other liability." *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 300:5-8; 303:2-14 and Errata at 303:7, 12 (emphasis added).<br><br>- Abdullah bin Sulaiman Al Rajhi further explained that his father Sulaiman bin Abdulaziz Al Rajhi became "disappointed about the performance" of SAAR Foundation, which had been created "to make an investment and use the proceed[s] of the investment to do charity work"; Sulaiman bin Abdulaziz Al Rajhi concluded that SAAR Foundation "did not have the right principal investment strategy." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 294:17-22; 296:8-14.<br><br>- Further, the record contains no evidence of charges or indictments ever brought against any "charitable arm" affiliated with Sulaiman bin Abdulaziz Al Rajhi, and Plaintiffs do not aver or cite evidence that any such entity was ever designated or otherwise sanctioned under any sanctions regime for connections to terrorism. Plaintiffs, moreover, cite no evidence of "public reporting implicating [any such] charity arms in supporting terrorism."<br><br>(2) To the extent Plaintiffs refer to the SAAR Foundation in referring to purported "public reporting implicating his alleged charity arms | - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br>- Should be excluded as needless presentation of cumulative evidence. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | in supporting terrorism," the averment is incomplete and controverted by the evidence. | |
| | | - If admissible, the unsigned, undated, incomplete draft letter Plaintiffs cite does not state or show that SAAR Foundation was linked to terrorism. *See* Pls. Ex. 14. | |
| | | - The deposition testimony of Abdullah bin Sulaiman Al Rajhi does not state or show that the SAAR Foundation was linked to terrorism. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) and Errata, at 303. | |
| | | - While the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated or otherwise sanctioned under any sanctions regime for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.) at 9. | |
| | | - Further, in 2021, the FBI concluded, "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011. | |
| | | - Moreover, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. See *Terrorist Attacks V*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory allegations against a large group of defendants, whom | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). | |
| 408 | During this same time period, in approximately 1997-1998, Suleiman al Rajhi and Abdullah al Rajhi then orchestrated an unusual arrangement, under which funds distributed by Suleiman al Rajhi and his committee/foundation in Saudi Arabia via accounts at ARB, and selected exclusively by Suleiman al Rajhi and his committee/foundation, would be attributed, after the fact, to Humana, as though Humana had made the contributions. *See* Ex. 29 (Galloway Exhibit 22), NL 15578, 15043-15046; Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625); Ex. 145, NL 15572 (October 31, 2000 email from ███████ regarding IRS inquiry and indicating that Humana Trust did not know identity of beneficiaries); Ex. 4, Winer Report at 189-200; Ex. 1, Al Rajhi Deposition at 320-321 (acknowledging that payments from Suleiman al Rajhi charity committee/foundation made through ARB). | 408. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading). <br><br> (2) Immaterial because, even if credited, Plaintiffs do not allege any conduct by Al Rajhi Bank other than providing routine banking services to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation. Plaintiffs have no evidence that the Bank provided any financial services to the U.S.-based SAAR Foundation. <br><br> (3) Immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). <br><br> (4) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32-33. <br><br> Disputed as ambiguous, vague, and conclusory: <br><br> (1) Plaintiffs' reference to "Suleiman al Rajhi charity committee/foundation" is ambiguous and vague. | 408. <br><br> Pls. Ex. 29: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lack authentication. *See* Fed. R. Evid 901. <br><br> Pls. Ex. 14: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lacks authentication *See* Fed. R. Evid. 901. <br><br> Pls. Ex. 145: <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. See Fed. R. Evid. 802. <br><br> Pls. Ex. 4, p. 189-200: <br><br> - Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) Plaintiffs' use of the term "attributed" is vague and a legal conclusion. | - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. |
| | | <u>Disputed as conclusory; lacking supporting evidence:</u> | |
| | | (1) Plaintiffs' characterization of actions by Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi as "unusual" is conclusory and not supported by evidence. | - Should be excluded under Rule 403 for unfair prejudice and confusing the issues, for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. |
| | | (2) Plaintiffs' assertion that under the purported arrangement the funds would be "attributed" to Humana "as though Humana had made the contributions" is vague, a legal conclusion to the extent Plaintiffs allege illegal or improper conduct, is not supported by the cited evidence, and is controverted by the evidence. | |
| | | - Exhibit 29 does not evidence an arrangement to deceive regarding any funds transfers. If admissible, Exhibit 29 shows an arrangement made in July 1998 under which Humana would "join in and pay part of" charitable contributions made by Sulaiman bin Abul Aziz Al Rajhi; Humana would do this by "reimburs[ing]" Sulaiman bin Abul Aziz Al Rajhi "for [Humana's] part of the contribution" after such contributions were made. *See* Pls. Ex. 29 (correspondence regarding Humana contributions). | |
| | | - Exhibit 14 does not evidence an arrangement to deceive regarding any funds transfers. If admissible, Exhibit 14 shows that Humana's funds were to be "used solely for charitable purposes," but that, "rather than setting up a new office" to make charitable contributions, Humana would "work[] with" the "Charity office" in "Riyadh, Saudi Arabia." *See* Pls. Ex. 14. | |
| | | - Exhibit 145 does not evidence an arrangement to deceive regarding any funds transfers. If admissible, Exhibit 145 merely shows that the IRS requested further contact | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | information to identify the recipients of donations to which Humana contributed. The record contains no evidence that the IRS ever found Humana's documentation to be misleading. *See* Pls. Ex. 145; Pls. Ex. 35 (duplicate of Ex. 145). Although immaterial in any event, nor does Exhibit 145 "indicat[e] that Humana Trust did not know identity of beneficiaries" to which Humana contributed. Rather, if admissible, Exhibit 145 merely shows that Humana did not have the specific contact information requested by the IRS for the recipients of nine contributions to which Humana contributed. *See* Pls. Ex. 145. | |
| 409 | ▮▮▮▮▮ produced a number of business records of SAAR Foundation and Humana Trust (including documents reflecting communications among Suleiman al Rajhi, Abdullah al Rajhi, ▮▮▮▮ and representatives of Suleiman al Rajhi and Abdullah al Rajhi) reflecting this arrangement. *See* Ex. 29 (Galloway Exhibit 22), NL 15578, 15043-15046; Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625); Ex. 145, NL 15572 (October 31, 2000 email from ▮▮▮▮▮▮ regarding IRS inquiry and indicating that Humana Trust did not know identity of beneficiaries); Ex. 4, Winer Report at 189-200; Ex. 1, Al Rajhi Deposition at 320-321 (acknowledging that payments from Suleiman al Rajhi charity | 409.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading).<br><br>(2) Immaterial because, even if credited, Plaintiffs do not allege any conduct by Al Rajhi Bank other than providing routine banking services to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation. Plaintiffs have no evidence that the Bank provided any financial services to the U.S.-based SAAR Foundation.<br><br>Disputed as ambiguous; vague; lacking supporting evidence:<br><br>(1) To the extent Plaintiffs assert that the cited documents qualify as "business records" under the hearsay exception in Rule 803(6) of the Federal Rules of Evidence, this is a legal conclusion for which Plaintiffs cite no evidence.<br><br>(2) To the extent Plaintiffs refer to the "arrangement" described in ¶ 408 of Plaintiffs' Averment, the cited documents do not evidence such an "arrangement," for the reasons stated in Al Rajhi Bank's response to paragraph 408. | 409.<br><br>Pls. Ex. 4, p. 189-200:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues, for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br>Pls. Exs. 29-37:<br><br>- Lacks Authentication. *See* Fed. R. Evid. 901. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | committee/foundation made through ARB); Exs. 30-37. | (3) Plaintiffs' reference to "Suleiman al Rajhi's committee/foundation" is ambiguous and vague.<br><br>(4) Plaintiffs' reference to "payments from Suleiman al Rajhi charity committee/foundation made through ARB" is vague.<br><br>(5) To the extent "made through ARB" is meant to suggest the Bank provided more than routine banking services to the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Saudia Arabia, that statement is not supported by the evidence. Plaintiffs have no evidence that the Bank provided any financial services to the U.S.-based SAAR Foundation. | - Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br><u>Pls. Ex. 14:</u><br><br>- Lacks Authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br><u>Pls. Ex. 145:</u><br><br>- Lacks Authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 410 | These include a typewritten document, with handwritten edits made by ███, concerning a set of arrangements resulting from a 1998 in-person visit by Suleiman al Rajhi to the United States, in furtherance of the reordering of SAAR Foundation's affairs. *See* Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625). | 410.<br><br><u>Immaterial for the reasons discussed above in response to Section X (heading).</u><br><br><u>Disputed as conclusory; lacks supporting evidence:</u><br><br>(1) Plaintiffs cite no evidence demonstrating that handwritten edits in the document relied on by Plaintiffs, if admissible were, in fact, written by ███<br><br>- The document has the name "Manzoor Qureshi" at the very top, with handwritten edits that are not attributed to any individual. The letter document contains a blank "Prepared by" line with the name and title "████████" below it; | 410.<br><br><u>Pls. Ex. 14:</u><br><br>- Lacks Authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | however it is unsigned.  *See* Pls. Ex. 14 (correspondence concerning Humana location) at NL 9625.<br><br>(2)  Further, Plaintiffs cite no evidence that the letter was ever sent or distributed. | |
| 411 | The original typewritten text reads as follows:<br><br>*The donors became very concerned about linked to terrorist activities, of course with which they had nothing to do.  A question was asked, '"why do we want to continue to be in U.S.A.?" The trustees then decided to "relocate" its operations.* After seeking appropriate legal advice, steps were taken to create Human Charitable Trust on 12th day of November 1997 as an Isle of Man trust. Saar Foundation then made a charitable contribution of assets to Human to be used solely for charitable purposes.  Dr. Cherif | 411.<br><br>Immaterial:<br><br>(1)  Immaterial for the reasons discussed above in response to Section X (heading).<br><br>(2)  Immaterial because Plaintiffs cite no evidence that ▮▮▮▮▮, let alone Sulaiman bin Abdulaziz Al Rajhi or Abdullah bin Sulaiman Al Rajhi, acknowledged the contents of the incomplete, draft, unsigned document referenced by Plaintiffs.<br><br>(3)  Immaterial because, even if admissible and credited as acknowledged by Sulaiman bin Abdulaziz Al Rajhi or Abdullah bin Sulaiman Al Rajhi, Plaintiffs cannot impute a chairman or senior official's knowledge to the Bank.  *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>Disputed as incomplete; controverted by the evidence:<br><br>(1)  To the extent Plaintiffs aver that discussions about possibly moving the SAAR Foundation were solely motivated by public reporting related to allegations of terrorism financing, that conclusion is controverted by the evidence, including for the reasons in Al Rajhi Bank's responses to ¶¶ 406 and 407. | 411.<br><br>Pls. Ex. 14:<br><br>- Lacks Authentication.  *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 4, p. 189-200:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs).  *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br>- Should be excluded as needless presentation of cumulative evidence |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Sedky, which lives in Saudi Arabia and ▋▋ ▋▋▋▋▋ who lives in U.S.A. became the trustees of Humana.<br><br>Shaikh Sulaiman during his visit to U.S.A. in July 1998 made the suggestion to the trustees that to optimize the grant making process we should consider working with the Charity office already in existence rather than setting up a new office. The offer was welcome because banks in Europe were not very cooperative in writing a lot of checks, and also because the committee overseeing the Charity office in Riyadh has the set up to receive requests from various charities located throughout the world and then to review, investigate, and decide if a charitable | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | contribution will be made.<br><br>*Currently the Charity office is managed by Abdul Rahman Bin Abdullah Al Rajhi, Saleh Bin Sulaiman Al-Hadbad and Abudalla I. Al-Misfer. In accordance with the established practice of the Charity office, as explained in the third paragraph of this statement, the checks are processed without showing the contributor's name. These are processed by Al Rajhi Banking and Investment Corporation, having its account with Chase Manhattan and other correspondent banks.*<br><br>*See* Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625) (emphasis supplied); Ex. 4, Winer Report at 191-92 (discussing text and identifying handwritten edits). | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 412 | Under the arrangement, Suleiman al Rajhi and his charity committee/office distributed funds from ARB accounts, including ARB's own Payable Through Account at Chase Manhattan in New York, to beneficiaries throughout the world, without any awareness or even knowledge of Humana, which were then attributed to Humana after the fact. *See* Ex. 29 (Galloway Exhibit 22), NL 15578, 15043-15046; Ex. 14 (Abdullah al Rajhi Exhibit 56) (NL 9625); Ex. 145, NL 15572 (October 31, 2000 email from ▇▇▇▇ regarding IRS inquiry and indicating that Humana Trust did not know identity of beneficiaries); Ex. 4, Winer Report at 189-200; Ex. 1, Al Rajhi Deposition at 320-321 (acknowledging that payments from Suleiman al Rajhi charity committee/foundation made through ARB); Exs. 30-37. | 412.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 392, 401, 404.<br><br>(2) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32-33.<br><br>(3) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent from the Bank, given that the use of payable-through accounts were common during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32-33 (discussing the prevalence and convenience of payable-through accounts during the relevant period).<br><br>(4) Immaterial because, whatever Humana knew about the beneficiaries of charitable donations to which Humana contributed says nothing about the knowledge or intent of Al Rajhi Bank.<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "Suleiman al Rajhi charity committee/foundation" is ambiguous and vague.<br><br>Disputed as conclusory; unsupported by the evidence:<br><br>(1) The inadmissible letter relied on by Plaintiffs in Plaintiffs Exhibit 14 is unsigned and Plaintiffs cite no evidence demonstrating the letter was ever sent or distributed. *See* Pls. Ex. 14 (correspondence concerning Humana location) at NL 9625. | 412.<br><br>Pls. Ex. 29:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 14:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 145:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 4. p. 189-200:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) To the extent Plaintiffs aver that "Humana Trust did not know identity of beneficiaries" to assert that the identity of the beneficiaries was hidden from Humana by "Suleiman al Rajhi and his charity committee/office," that assertion is not supported by the cited evidence. <br><br> (3) Plaintiffs' characterization of Exhibit 145 as "indicating that Humana Trust did not know identity of beneficiaries" is conclusory and not supported by the cited evidence. If admissible, Exhibit 145 clearly lists the names of beneficiaries, and merely shows that Humana did not have the specific contact information requested by the IRS for the recipients of nine contributions made by Humana. *See* Pls. Ex. 145; Pls. Ex. 35 (duplicate of Ex. 145). | hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. <br><br> - Should be excluded under FRE 403 for unfair prejudice and confusing the issues, for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403. <br><br> - Should be excluded as needless presentation of cumulative evidence. <br><br> <u>Pls. Ex. 30-37:</u> <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 413 | The scheme resulted in a crisis in 2000, when the IRS sought information from Humana Trust concerning its alleged charitable activities, and ▉▉▉ lacked basic knowledge about the distributions or documents necessary to respond. *See* Exs. 30-37,. Ex. 4, Winer Report at 196-197. See Ex. 15551, 15572, 15573-15576, 15042 | 413. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 392, 401, 404. <br><br> (2) Immaterial because, whatever ▉▉▉ knew about the beneficiaries of charitable donations to which Humana contributed says nothing about the knowledge or intent of Al Rajhi Bank. <br><br> <u>Disputed as conclusory; lacking supporting evidence:</u> <br><br> (1) Plaintiffs' references to a "crisis" and assertion that "▉▉▉ lacked basic knowledge" about charitable donations are unsupported by the cited documents, which discuss the IRS inquiry but provide no | 413. <br><br> <u>Pls. Ex. 30-37:</u> <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> <u>Pls. Ex. 4, p. 196-197:</u> |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | evidence sufficient to conclude that ▇▇▇ "lacked basic knowledge." | - Expert is not qualified to offer opinion on Saudi Banking regulations. <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. <br><br> - Should be excluded as needless presentation of cumulative evidence. <br><br> <u>Pls. Exs. 34-37 ("Ex. 15551, 15572, 15573-15576, 15042"):</u> <br><br> - Lacks Authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 414 | In response, ▇▇▇ sent an "urgent" request to Abdullah al Rajhi to provide information requested by the IRS concerning Humana Trust's alleged distributions, which had in fact been undertaken by Suleiman al Rajhi and his charity committee/office in Saudi Arabia, through ARB and its Payable Through Account at Chase Manhattan. *See* Ex. 34, NL 15551 | 414. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 392, 401, 404. <br><br> (2) Immaterial because, even if credited, Plaintiffs aver that Al Rajhi Bank provided only routine banking services to the Sulaiman bin Abdulaziz Al Rajhi Foundation in Saudi Arabia and to Sulaiman bin Abdulaziz Al Rajhi by processing transactions through their accounts at Al Rajhi Bank or through Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank. | 414. <br><br> <u>Pls. Exs. 34-37:</u> <br><br> - Lacks Authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | (June 22, 2000 email from ▮ to Abdullah al Rajhi stating that they "have received many more questions and requests from IRS to produce various documents" and that the IRS is starting a field audit next week, and asks Abdullah to "please send us supporting documents for disbursement made to Saudi institutions as soon as practicable."); Ex. 35, NL 15572 (October 31, 2000 email from ▮ to Abdullah al Rajhi explaining that the IRS is requesting address and contact information for certain organizations who received contributions); Ex. 36, NL 15573-15576 (November 9, 2000 fax from ▮ to Abdullah al Rajhi ("Abu Sultan") asking for copies of checks for contributions to a number of beneficiaries in 1999); Ex. 37, NL 15042 (February 14, 2001 email from_____ to Abdullah al Rajhi referencing the "on going audit by the IRS" and stating " [t]hat is why I suggest and you have agreed to make contributions from Humana's account directly to charities of choice, rather than thru Shaikh | (3) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent from the Bank, given that the use of payable-through accounts were common during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32-33 (discussing the prevalence and convenience of payable-through accounts during the relevant period).<br><br>Disputed as conclusory; lacking supporting evidence:<br><br>(1) Plaintiffs' reference to "Humana Trust's alleged distributions, which had in fact been undertaken by Suleiman al Rajhi and his charity committee/office in Saudi Arabia," to the extent Plaintiffs suggest Humana did not contribute to the charitable donations about which the IRS requested information, is not supported by the cited evidence, and is controverted by evidence Plaintiffs rely on.<br><br>(2) The documents Plaintiffs rely on, if admissible, would show that Humana agreed to "join in and pay part of" the charitable contributions made by Sulaiman bin Abul Aziz Al Rajhi; Humana would do this by "reimburs[ing]" Sulaiman bin Abul Aziz Al Rajhi "for [Humana's] part of the contribution" after such contributions were made. *See* Pls. Ex. 29 (correspondence regarding Humana contributions).<br><br>(3) The documents Plaintiffs rely on, if admissible, would show that Humana's funds were to be "used solely for charitable purposes," but that, "rather than setting up a new office" to make charitable contributions, Humana would "work[] with" the "Charity office" in "Riyadh, Saudi Arabia." *See* Pls. Ex. 14 (correspondence concerning Humana location).<br><br>(4) The documents Plaintiffs rely on, if admissible, would show that that the IRS requested further contact information to identify the recipients of donations to which Humana contributed, and that Humana did not have the specific contact information for nine | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Sulaiman's account which may be questioned as IRS is raising doubts if Humana is really a charitable organization."). | beneficiaries to which Humana contributed. The record contains no evidence that the IRS ever found Humana's documentation to be misleading. *See* Pls. Ex. 35 (correspondence requesting contact information) (duplicate of Ex. 145). | |
| 415 | The documents ▮▮▮▮ SAAR Foundation, and Humana at some point received, concerning the distributions attributed to Humana Trust, included a list of "Foreign and Domestic Distributions for the Year 1419-1420," (encompassing one distribution in August 1998 and numerous donations between January-September 1999), and a selection of distribution checks issued by ARB via its Payable Through Account at Chase Manhattan in New York. *See* Ex. 29 (Galloway Exhibit 22), NL 15578, 15043-15046; Ex. 1, Al Rajhi Deposition at 315-335 (questioning concerning distributions through SAAR Foundation/Humana via ARB account and ARB Chase Manhattan Payable Through account). | 415. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 392, 401, 404. <br><br> (2) Immaterial because, even if credited, Plaintiffs aver that Al Rajhi Bank provided only routine banking services to the Sulaiman bin Abdulaziz Al Rajhi Foundation in Saudi Arabia and to Sulaiman bin Abdulaziz Al Rajhi by processing transactions through their accounts at Al Rajhi Bank or through Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank. <br><br> (3) Immaterial to the extent Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32-33. <br><br> Disputed as conclusory; unsupported by evidence: <br><br> (1) Plaintiffs' characterization of charitable donations through the SAAR Foundation as "concerning" is conclusory and unsupported by evidence. <br><br> (2) None of the documents Plaintiffs rely on shows any distribution from the SAAR Foundation going through Al Rajhi Bank's correspondent banking account at Chase Manhattan Bank. | 415. <br><br> Pls. Ex. 29: <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (3) Contrary to Plaintiffs' assertion, Abdullah bin Sulaiman Al Rajhi did not testify that charitable donations from the SAAR Foundation or Humana Charitable Trust were made through Al Rajhi Bank's correspondent banking account at Chase Manhattan Bank. Abdullah bin Sulaiman Al Rajhi testified that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Saudi Arabia had an account at Al Rajhi Bank and made transfers through that account. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 322:12-17 and Errata at 322:17. | |
| 416 | The payments reflected in those documents relate to distributions of Suleiman al Rajhi funds, under the auspices of his alter-ego charity office/foundation, from accounts at ARB and ARB's Payable Through Account at Chase Manhattan, which were being attributed to SAAR Foundation and Humana Trust after the fact. *See* Ex. 29 (Galloway Exhibit 22), NL 15578, 15043-15046; Ex. 1, Al Rajhi Deposition at 315-335 (questioning concerning distributions through SAAR Foundation/Humana via ARB account and ARB Chase Manhattan Payable Through account); Ex. 4, Winer Report at 194-202. | 416. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 392, 401, 404. <br><br> (2) Immaterial because, even if credited, Plaintiffs aver that Al Rajhi Bank provided only routine banking services to the Sulaiman bin Abdulaziz Al Rajhi Foundation in Saudi Arabia and to Sulaiman bin Abdulaziz Al Rajhi by processing transactions through their accounts at Al Rajhi Bank or through Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank. <br><br> (3) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent from the Bank, given that the use of payable-through accounts were common during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32-33 (discussing the prevalence and convenience of payable-through accounts during the relevant period). <br><br> <u>Disputed as conclusory; unsupported by evidence:</u> <br><br> (1) Plaintiffs' statement that donations from the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation were "attributed to SAAR Foundation and Humana Trust after the fact," is conclusory | 416. <br><br> <u>Pls. Ex. 29:</u> <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 4, p. 194-202:</u> <br><br> - Expert is not qualified to offer opinion on Saudi Banking regulations. <br><br> - Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 403. <br><br> - Should be excluded as needless presentation of cumulative evidence. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | and unsupported by evidence, including for the reasons in Al Rajhi Bank's response to ¶ 408. | |
| | | (2) Plaintiffs' characterization of charitable donations through the SAAR Foundation as "concerning" is conclusory and unsupported by evidence. | |
| | | (3) Plaintiffs' characterization of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation as an "alter-ego" of Sulaiman bin Abdulaziz Al Rajhi is an unsupported legal conclusion. | |
| | | (4) None of the documents Plaintiffs cite show any distribution from the SAAR Foundation going through Al Rajhi Bank's correspondent banking account at Chase Manhattan Bank. | |
| | | (5) Contrary to Plaintiffs' assertion, Abdullah bin Sulaiman Al Rajhi did not testify that charitable donations from the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation were made through Al Rajhi Bank's correspondent banking account at Chase Manhattan Bank. Abdullah bin Sulaiman Al Rajhi testified that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation had an account at Al Rajhi Bank and made transfers through that account. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 322:12-17 and Errata at 322:17. | |
| 417 | The beneficiaries identified in those documents further corroborate that the SAAR Foundation and Humana Trust enterprise were established to move funds to terrorist fronts and causes, including key al Qaeda fronts, via structures that insulated Suleiman al Rajhi's involvement. | 417. <br><br> <u>Immaterial for the reasons discussed above in response to Section X (heading) and ¶¶ 399-400, 401, 406-409, 411-417, 424.</u> <br><br> <u>Disputed as conclusory; cites no evidence:</u> <br><br> (1) Plaintiffs' statement contains unsupported legal conclusions to which no response is required. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 418 | Initially, the list of distributions and other business records reflect large contributions via the SAAR Foundation mechanism to AHIF (600,000 SR and $17,333). *See* Ex. 29 (Galloway Exhibit 22), at NL 15045, 15046; *see also* Ex. 128, NL 10245 (187,500 SR check, signed by Suleiman al Rajhi, to AHIF). | 418. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading). <br><br> (2) Immaterial as to donations to AHIF, which was a reputable charity at the time, and at the time of the referenced transactions was not designated by the United States for supporting terrorism. Pls. Ex. 56 ("Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations") (Treasury Secretary Paul O'Neill stating "the Saudi headquarters [of Al-Haramain] is dedicated to promoting Islamic teachings"). <br><br> (3) No specific transaction from any Al Rajhi Bank account has been traced to funding for Al Qaeda. *See* ARB Aver. ¶¶ 1-2, 37-39; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep). <br><br> <u>Disputed as controverted by evidence; misleading; unsupported:</u> <br><br> (1) The cited documents reflect donations to Al Haramain from the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, not from the SAAR Foundation. Plaintiffs' conflation of the two distinct charitable entities is misleading and unsupported by evidence. | 418. <br><br> <u>Pls. Ex. 29:</u> <br><br> - Lacks Authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> <u>Pls. Ex. 128:</u> <br><br> - Lacks Authentication. *See* Fed. R. Evid. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies *See* Fed. R. Evid. 802.. |
| 419 | They also reflect several donations to WAMY, at least one of which was made payable to a WAMY official directly. *See* Ex. 29 (Galloway Exhibit 22), NL 15044-10546 (37,500 SR and 338,500 SR donations to WAMY); Ex. 185, NL 10068 ($120,000 check payable to Dr. Maneh al Johani); Ex. 185, NL | 419. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section X (heading). <br><br> (2) Immaterial as to donations to WAMY, which was a reputable charity at the time. WAMY has never been designated by the United States for supporting terrorism. See Pls. Ex. 171 (Kohlmann Dep.) at 165:11-12. | 419. <br><br> <u>Pls. Ex. 29:</u> <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 10384 (112,500 SR check payable to Dr. Maneh al Johani); Ex. 186, NL 10333 (check from Suleiman al Rajhi payable to WAMY for 75,000 riyals). | (3) No specific transaction from any Al Rajhi Bank account has been traced to funding for Al Qaeda. *See* ARB Aver. ¶¶ 1-2, 37-39; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | <u>Pls. Ex. 185:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br><u>Pls. Ex. 186:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901. |
| 420 | The list of distributions also reflects a 2,215,000 SR payment to MWL, the parent of IIRO. *See* Ex. 29 (Galloway Exhibit 22), NL 10546. | 420.<br><br><u>Immaterial</u>:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading).<br><br>(2) Immaterial as to donations to MWL, which was a reputable charity at the time. MWL has never been designated by the United States as a sponsor of terrorism. *See generally* ARB Ex. 59 (Office of Foreign Asset Control, Specially Designated and Blocked Persons List, U.S. Dept. of Treas. (May 3, 2024), https://www.treasury.gov/ofac/downloads/sdnlist.pdf).<br><br>(3) No specific transaction from any Al Rajhi Bank account has been traced to funding for Al Qaeda. *See* ARB Aver. ¶¶ 1-2, 37-39; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.) (same); Pls. Ex. 38, (Kohlmann Rep.) (same). | 420.<br><br><u>Pls. Ex. 29:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 421 | Suleiman al Rajhi also provided support through the U.S.-based SAAR Foundation mechanism to Dar al Hijra Association in the Philippines, a front for the Abu Sayyef Group, a key al Qaeda affiliate. *See* Ex. 29 (Galloway | 421.<br><br><u>Immaterial</u>:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading).<br><br>(2) Immaterial as to donations to Dar al Hijra Association, which has never been designated by the United States for supporting terrorism. | 421.<br><br><u>Pls. Ex. 29:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Exhibit 22), NL 15043-10546; Ex. 38, Kohlmann Report at 30. | (3) No specific transaction from any Al Rajhi Bank account has been traced to funding for Al Qaeda. *See* ARB Aver. ¶¶ 1-2, 37-39; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.) (same); Pls. Ex. 38 (Kohlmann Rep.) (same); *see* Pls. Ex. 171 (Kohlmann Dep.) at 206:12-207:13 (same). <br><br>Disputed as incomplete; unsupported by evidence: <br><br>(1) Plaintiffs cite no evidence showing purported connections between Dar al Hijra and Al Qaeda at the time Sulaiman bin Abdulaziz Al Rajhi made donations to Dar Al Hijra. Plaintiffs cite to Page 30 of the report of Evan Kohlmann, which cites press reports dated only after the 9/11 Attacks. *See* Pls. Ex. 38 (Kohlmann Rep.) at 30. <br><br>(2) The report of Evan Kohlmann, to the extent admissible, does not support that Dar al Hijra was "a front for the Abu Sayyef Group, a key al Qaeda affiliate." Evan Kohlmann's report states only that Dar al Hijra was "a suspected financial conduit to Abu Sayyaf." Pls. Ex. 38 (Kohlmann Rep.) at 30. | Pls. Ex. 38: <br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing conduct in Bosnia, which is unrelated to Al Qaeda's terrorist attacks against the United States. *See* Fed. R. Evid. 403. <br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802. |
| 422 | Taibah International Aid Association also received an apparent 100,000 SR contribution from Suleiman al Rajhi, via ARB and the U.S.-based SAAR Foundation. *See* Ex. 29 (Galloway Exhibit 22), NL 15043-10546. | 422. <br><br>Immaterial: <br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading). <br><br>(2) Immaterial because contributions from Sulaiman bin Abdulaziz al Rajhi via Al Rajhi Bank do not show intentional, tortious acts by the Bank. Plaintiffs' averment shows nothing more than routine banking services to Sulaiman bin Abdulaziz Al Rajhi in Saudi Arabia, and Plaintiffs cannot impute any actions by officers of the Sulaiman al Rajhi Charitable Foundation to the Bank. Moreover, Plaintiffs have no evidence that the Bank provided any financial services to the U.S.-based SAAR Foundation. | 422. <br><br>Pls. Ex. 29: <br><br>- Lacks authentication. *See* Fed. R. Evid. 901. <br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing donations to charities and conduct concerning Bosnia, which is unrelated to Al Qaeda's |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>Disputed as controverted by evidence:<br><br>(1) The cited documents reflect donations to "Taiba Charitable Foundation," not the not the "Taibah International Aid Association," as Plaintiffs assert. Plaintiffs' conflation of two organizations that use the name "Taiba," is misleading and unsupported by evidence.<br><br>(2) The cited document reflects donations from the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, not from the U.S.-based SAAR Foundation. Plaintiffs' conflation of the two distinct charitable entities is misleading and unsupported by evidence. | terrorist attacks against the United States. *See* Fed. R. Evid. 403. |
| 423 | Taibah's branch in Falls Church, VA, the apparent recipient of the contribution, was co-founded by Abdullah bin Laden, Osama bin Laden's nephew. Taibah also had extensive ties to al Qaeda. Ex. 93, *Taibah: Linking Extremists in the Balkans and the United States, December 12, 2002*, at CIA-SUB_0031-33; Ex. 38, Kohlmann Report at 30-31. | 423.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading).<br><br>(2) In addition, immaterial because Osama Bin Laden had over 50 siblings. *See* ARB Ex. 12 (Aff. of Abdullah Awad Bin Laden (ECF 1505-2)) at 1. Abdullah Bin Laden has never been designated by the United States for supporting terrorism.<br><br>(3) Immaterial to the extent that this averment relies on Exhibit 93, which is inadmissible hearsay for the reasons discussed in the | 423.<br><br>Pls. Ex. 38, p. 30-31:<br><br>- Should be excluded under Rule 403 for unfair prejudice for discussing conduct in Bosnia has, which is unrelated to Al Qaeda's terrorist attacks against the United States. *See* Fed. R. Evid. 403.<br><br>- Should be excluded to the extent expert testimony is used |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>Disputed as unsupported by evidence:<br><br>(1) The cited documents do not show that an entity in Falls Church, VA received the contribution referenced in paragraph 423, and the assertion is additionally unsupported for the reasons stated in response to ¶ 422. | as a conduit for inadmissible hearsay. *See* Fed. R. Evid. 802.<br><br>Pls. Ex. 93:<br><br>- Inadmissible hearsay for the reasons discussed in response to Section VI (heading). |
| 424 | The list of Suleiman al Rajhi's 1999 distributions attributed to SAAR Foundation/Humana Trust also reflects a July 12, 1999 payment of 45,000 SR to Kosovo Caravan. *See* Ex. 29 (Galloway Exhibit 22), at NL 15045. | 424.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading).<br><br>(2) Immaterial as to donations to Kosovo Caravan, which has never been designated by the United States for supporting terrorism.<br><br>(3) No specific transaction from any Al Rajhi Bank account has been traced to funding for Al Qaeda. *See* ARB Aver. ¶¶ 1-2, 37-39; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.).<br><br>Disputed as controverted by evidence:<br><br>(1) The cited document, to the extent admissible, reflects donations to Kosovo Caravan from the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, not from the SAAR Foundation. Plaintiffs' conflation of the two distinct charitable entities is misleading and unsupported by evidence. | 424.<br><br>Pls. Ex. 29:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 425 | Sometimes spelled "Karavan," this company was owned by SDGT Yassin al Qadi. According to the Office of Foreign Asset Controls ("OFAC"): "In 1996, | 425.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading). | 425.<br><br>Pls. Ex. 82:<br><br>- Hearsay to which no exception applies given heavy |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
|  | AL-QADI promoted Karavan's Egyptian engineer, Amr Abd' al-Wahab Selem al-Zaii to be the director of Karavan and AL-QADI's financial representative in Albania. AL-QADI had al-Zaini provide unlimited support to Bin Ladin associate SDGT Julaidan during his visit to Albania for the Laprake hospital construction project in the late 1990s, according to information available to the US government. According to OFAC, Karavan also provided support to the Saudi Joint Relief Committee while under Jelaidan's leadership. *See* Ex. 82, Department of Treasury Memorandum to R. Richard Newcomb regarding the E.O. 13224 Designation of Yassin al Kadi at 9-10. | (2) Immaterial as to donations to "Karavan," which has never been designated by the United States for supporting terrorism.<br><br>(3) No specific transaction from any Al Rajhi Bank account has been traced to funding for Al Qaeda. *See* ARB Aver. ¶¶ 1-2, 37-39; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see* Pls. Ex. 171 (Kohlmann Dep.) at 206:12-207:13.<br><br><u>Disputed as conclusory; lacking supporting evidence:</u><br><br>(1) Plaintiffs cite no evidence that Kosovo caravan is "[s]ometimes spelled 'Karavan.'"<br><br><u>Disputed as incomplete:</u><br><br>(1) Even if these two entities were the same entity, Yassin Kadi was removed from the SDGT list in 2014. *See* ARB Ex. 45 (Yassin Kadi De-Designation) at 1. | redactions, lack of sourcing, reliance on hearsay within hearsay. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |
| 426 | The 1999 distribution also reflects a 50,000 SR payment to the al Noor Mosque (more commonly al Nur Mosque) in Berlin, a facility favored by the al Qaeda Hamburg cell that included 9/11 hijackers Mohammed Atta, Marwan al Shehhi, and Ziad Jarrah. *See* Ex. 29 (Galloway Exhibit 22), NL 15043-10546; Ex. 72, David | 426.<br><br><u>Immaterial for the reasons discussed above in response to Section X (heading).</u><br><br><u>Disputed as lacking supporting evidence:</u><br><br>(1) Plaintiffs cite no evidence supporting that Marwan al Shehhi or Ziad Jarrah ever visited the al Noor Mosque. | 426.<br><br><u>Pls. Ex. 29:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br><u>Pls. Ex. 72:</u> |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Crawford, *How a Diplomat From Saudi Arabia Spread His Faith*," Wall Street Journal (September 10, 2003). | | - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 427 | Suleiman al Rajhi's contributions through this mechanism, during the brief window for which documents are available, also encompassed contributions to the head of the "Da'wah" Office of the Ministry of Islamic Affairs in the Saudi Embassy, and American Open University, as discussed in further detail below. *See infra* at 472, 480. | 427.<br><br>Immaterial for the reasons discussed above in response to Section X (heading).<br><br>Disputed as conclusory; lacks cited evidence:<br><br>(1) Disputed as to the unsupported and conclusory assertion that the period for which documents are available is "brief."  *See* Order 7-8 (Nov. 22, 2021) ECF No. 7378 (setting "a reasonable point to start the investigation of ARB's alleged support"). | |
| 428 | In sum, while the documents from ▮▮▮▮▮ provide only a brief and partial window into the entities supported by Suleiman al Rajhi, via payments originating from ARB and channeled through the U. S-based SAAR Foundation layering mechanism, even that limited picture shows his systematic and expansive support for al Qaeda fronts and support entities, in and through the States. | 428.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section X (heading).<br><br>(2) In addition, immaterial because, even if credited, Plaintiffs only aver that Al Rajhi Bank provided routine banking services to the Sulaiman bin Abdulaziz Al Rajhi Foundation in Saudi Arabia and to Sulaiman bin Abdulaziz Al Rajhi by processing transactions through their accounts at Al Rajhi Bank.<br><br>Plaintiffs' statement contains unsupported legal conclusions to which no response is required. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | **Section XI.** | |
| XI. | **ARB Established and Systematically Used a Payable Through Account in the United States, Including to Carry Out Terrorist Financing Transactions For Suleiman Al Rajhi (¶¶ 429-488)** | **XI. (heading)** <br><br> <u>Disputed as conclusory; not supported by the evidence; controverted by the evidence:</u> <br><br> (1) This section heading is an unsupported legal conclusion to which no response is required. <br><br> (2) Plaintiffs' reference to "systematically" is vague, conclusory, and unsupported by the evidence. <br><br> (3) Plaintiffs' assertion that Al Rajhi Bank "used a payable through account in the United States" to "carry out terrorist financing transactions for Suleiman Al Rajhi" is unsupported by the evidence because Plaintiffs do not trace a single transaction through Al Rajhi Bank or its purported U.S. payable-through account to terrorism financing. <br><br> <u>Immaterial:</u> <br><br> <u>Plaintiffs' averments in Section XI are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.</u> <br><br> (1) The averments in Section XI, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its principals supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States.<br><br>(2) Plaintiffs' averments regarding the Bank's U.S. correspondent or "payable through" bank account fails to establish personal jurisdiction over the Bank, because Plaintiffs do not show that their injuries from the 9/11 Attacks arose from actual, specific transactions through the Bank's U.S. correspondent or purported "payable through" account. Indeed, Plaintiffs do not trace a single transaction through the Bank's U.S. correspondent account to terrorism, much less show that a single transaction reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(3) Plaintiffs' averments in Section XI are immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32 (discussing the prevalence and convenience of payable-through accounts during the relevant period). Moreover, Plaintiffs have no evidence that any funds in Al Rajhi Bank's correspondent account at Chase Manhattan were used for an improper purpose, including planning, carrying out, or financing terrorism against the United States. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |
| 429 | From 1992 and continuing until at least 2015, ARB had a correspondent banking | 429.<br><br><u>Immaterial for the reasons discussed above in response to Section XI (heading).</u> | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | relationship with Chase Manhattan Bank, New York. | | |
| 430 | As noted above, ARB's correspondent banking account with Chase Manhattan Bank is what is known as a "Payable Through Account." | 430.<br><br>Immaterial for the reasons discussed above in response to Section XI (heading). | |
| 431 | A "*payable-through account*" means a correspondent account maintained by a U.S. financial institution for a foreign financial institution by means of which the foreign financial institution permits its customers to engage, either directly or through a subaccount, in banking activities usual in connection with the business of banking in the United States." *See* 31 C.F.R. 561.307; *see also* Ex. 4, Winer Report at 200. | 431.<br><br>Immaterial for the reasons discussed above in response to Section XI (heading). | |
| 432 | A payable through account (hereinafter "PTA") is a specialized correspondent banking relationship where a U.S.-based correspondent bank (Chase Manhattan Bank) provides checking writing privileges directly to the customers of the respondent bank (ARB). | 432.<br><br>Immaterial for the reasons discussed above in response to Section XI (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 433 | Starting in 1995, U.S. banking regulators, including the Federal Deposit Insurance Corporation ("FDIC") recognized that PTAs posed an increased hazard of money laundering and illicit criminal activity. *See* Ex. 137, Financial Institution Letter, FDIC Guidelines on the Use of Payable Through Accounts, FIL-30-95, March 30, 1995. | 433.<br><br>Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>Disputed as incomplete:<br><br>(1) The document cited by Plaintiffs states that the onus is on American banks to do their due diligence, explaining that some U.S. banks "are not exercising the same degree of care with respect to payable through accounts." Pls. Ex. 137 (Financial Institution Letter, FDIC Guidelines on the Use of Payable Through Accounts, FIL-30-95, March 30, 1995) at 1.<br><br>Disputed as misleading; controverted by the evidence:<br><br>(1) As explained by Al Rajhi Bank's expert, the long-time use of payable-through accounts in the United States was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Report) at 32. | |
| 434 | According to the FDIC: "The recent use of payable through accounts as an account service being offered by U.S. banking entities to foreign banks involves the U.S. banking entity opening a checking account for the foreign bank. The foreign bank then solicits customers that reside outside of the United States who, for a fee, are provided with the means to conduct banking transactions in the United States through the foreign bank's | 434.<br><br>Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>Disputed as incomplete for the reasons discussed above in response to ¶ 433. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | account at the U.S. banking entity. Typically, the foreign bank will provide its customers, commonly referred to as 'sub-account holders,' with checks that enable the sub-account holder to draw on the foreign bank's account at the U.S. banking entity. The group of sub-account holders, which may number several hundred for one payable through account, all become signatories on the foreign bank's account at the U.S. banking entity. This results in individuals and businesses, who may not have been subject to the same requirements imposed on U.S. citizens or residents for opening an account at a U.S. banking entity, possessing the ability to write checks and make deposits at a U.S. banking entity, as if such individuals and businesses were the actual account holders at the U.S. banking entity." *Id.* | | |
| 435 | The FDIC also warned that the "traditional use of payable through accounts by financial organizations in the United States (i.e., credit unions and investment companies) has not been a cause for concern by bank regulators. | 435. <br><br> Immaterial for the reasons discussed above in response to Section XI (heading). <br><br> Disputed as misleading; controverted by the evidence: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | These organizations are regulated by federal or state agencies, or are otherwise subject to established industry standards; and they appear to have adopted adequate policies and procedures to establish the identity of, and monitor the activity of, sub-account holders--in essence the credit union's depositors or the investment company's mutual fund account holders. The same types of safeguards do not appear to be present in some U.S. banking entities that provide payable through account services to foreign banks. The agencies are concerned that the use of payable through accounts by foreign banks at U.S. banking entities may facilitate unsafe and unsound banking practices and other misconduct, including money laundering and related criminal activities. Unless a U.S. banking entity is able to identify adequately, and understand the transactions of, the ultimate users--all or most of whom are off-shore--of the foreign bank's account maintained at the U.S. | (1) As explained by Al Rajhi Bank's expert, the long-time use of payable-through accounts in the United States was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Report) at 32. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | banking entity, there is a potential for serious illegal conduct." *Id.* | | |
| 436 | As highlighted by the FDIC in 1995, PTAs pose a heightened risk of money laundering and other illicit activity because PTAs provide terrorist organizations and their fundraising proxies access to USD dollars and the US banking system while at the same obscuring the sources and recipients of those dollars. *See* Ex. 4, Winer Report at 200-202. | 436. <br><br> <u>Immaterial for the reasons discussed above in response to Section XI (heading).</u> <br><br> <u>Disputed as incomplete; controverted by the evidence:</u> <br><br> (1) As explained by Al Rajhi Bank's expert, the long-time use of payable-through accounts in the United States was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Report) at 32. <br><br> <u>Disputed as lacking supporting evidence:</u> <br><br> (1) The 1995 FDIC guidelines, which Plaintiffs' Averment does not even cite in support of this paragraph, make no reference to terrorism or the financing of terrorism. *See generally* Pls. Ex. 137 (Financial Institution Letter, FDIC Guidelines on the Use of Payable Through Accounts, FIL-30-95, Mar. 30, 1995) at 1-2. <br><br> (2) The cited portion of the Winer Report does not discuss the 1995 FDIC guidelines. | 436. <br><br> <u>Pls. Ex 4 at 200-202:</u> <br><br> - Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. <br><br> - Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies (e.g. NL docs). *See* Fed. R. Evid. 802. |
| 437 | The use of PTAs as a way of avoiding regulatory oversight was a well-known strategy for money laundering since the 1990's, because it allows foreign banks to use their correspondent banking relationship with U.S. banks to provide services to their customers without having those customers being subjected to U.S. | 437. <br><br> <u>Immaterial for the reasons discussed above in response to Section XI (heading).</u> <br><br> <u>Disputed as conclusory; unsupported by the evidence:</u> <br><br> (1) Plaintiffs' expert Jonathan Winer cites no evidence to support his conclusion that use of payable through accounts "as a way of | 437. <br><br> <u>Pls. Ex 4 at 200-202:</u> <br><br> - Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. <br><br> - Should be excluded to the extent expert testimony is used |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | money laundering controls. *Id.* at 201. | avoiding regulatory oversight was a well-known strategy." *See* Pls. Ex. 4 (Winer Rep.) at 201.<br><br>Disputed as incomplete; controverted by the evidence:<br><br>(1) As explained by Al Rajhi Bank's expert, the long-time use of payable-through accounts in the United States was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Report) at 32. | as a conduit for hearsay to which no exception applies (e.g. NL docs). *See* Fed. R. Evid. 802. |
| 438 | ARB's PTA account with Chase Manhattan Bank was established no later than 1992. *See* Ex. 113, TWRA Audit at 36-37 (showing transfer of sums by ARB to Third World Relief Agency in 1992 using ARB's PTA account); Ex. 40, 9/11 Commission Report at 58 (indicating that Bin Laden used the TWRA to provide financial and other support for terrorist activities). | 438.<br><br>Immaterial:<br><br>(1) Disputed as immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, Plaintiffs' averments regarding transactions from 1992-1997 are immaterial because they fall outside the relevant period.<br><br>(3) In addition, Plaintiffs' averment that an audit showed "transfer of sums by ARB to Third World Relief Agency in 1992 using ARB's PTA account" is immaterial to Plaintiffs' assertion that Al Rajhi Bank expressly aimed intentionally tortious conduct at the United States because:<br><br>– Plaintiffs do not aver that Al Rajhi Bank had any knowledge of any purported "use[]" of TRWA by Bin Laden.<br><br>– A purported "transfer of sum" to TRWA in Vienna, Austria in 1992 is too remote in time and geography to establish any nexus to the 9/11 Attacks. *See* Pls. Ex. 113 (TWRA Audit) at 36-37.<br><br>Disputed as incomplete; unsupported by the evidence: | 438.<br><br>Pls. Ex. 113:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under FRE 403 for unfair prejudice and confusing the issue for presenting evidence of conduct that is not sufficiently similar to the conduct at issue and discussing transactions outside the relevant period. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
|  |  | (1) Plaintiffs' citation to Plaintiffs' Exhibit 113 is incomplete and misleading because Plaintiffs omit important context. The document states that "[a] suspicion [of Al Rajhi's relationship to 'Islamic terrorism'] could not be substantiated thus far." Pls. Ex. 113 (TWRA Expert Rep.) at 37.<br><br>(2) Plaintiffs' reference to the 9/11 Commission Report is misleading because the Report never mentions Al Rajhi Bank or accounts held at Al Rajhi Bank.<br><br>– With respect to TWRA, the 9/11 Commission Report states only that Osama Bin Laden "also made use of the already-established Third World Relief Agency (TWRA) headquartered in Vienna[, Austria], whose branch office locations included Zagreb[, Croatia] and Budapest[, Hungary]." Pls. Ex. 40 (9/11 Commission Rep.) at 58. |  |
| 439 | ARB continued to systematically use its PTA with Chase Manhattan Bank until at least 2015. *See* Ex. 138, JPMC 0001-228 at 199 (showing thousands of ARB's transactions using ARB's PTA with Chase Manhattan Bank in February and March of 2005). | 439.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, Plaintiffs' averments regarding transactions *after* the 9/11 Attacks are immaterial because Plaintiffs' injuries necessarily did not arise from any such transactions through Al Rajhi Bank's U.S. correspondent bank account.<br><br>Disputed as unsupported by the evidence:<br><br>(1) The cited page of the Plaintiffs' Exhibit 138 showing account activity in March 2005 does not support Plaintiffs' averment that Al Rajhi Bank "continued to systematically use its PTA with Chase Manhattan Bank until at least 2015." |  |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | | |
| 440 | ARB maintained its relationship with Chase Manhattan Bank until at least 2020. *See id.* at JPMC 224-226 (communications between ARB and Chase Manhattan Bank concerning ARB's annual KYC renewal, KYC requirements, and concerns relating to penalties imposed on the bank by SAMA). | 440.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, Plaintiffs' averments regarding transactions *after* the 9/11 Attacks are immaterial because Plaintiffs' injuries necessarily did not arise from any such transactions through Al Rajhi Bank's U.S. correspondent bank account.<br><br>Disputed as conclusory and incomplete; misstates document:<br><br>(1) Plaintiffs' averment regarding "concerns relating to penalties imposed on the bank by SAMA" misstates the document, which does not express any "concerns," but rather asks for information.<br><br>– Plaintiffs' averment is also incomplete, because it omits the Bank's response, which explained that the violations were minor, were "identified timely," and "Compliance Group took [a] number of actions to ensure that such issue will not occur again . . . ." Pls. Ex. 138 (JP Morgan Chase Production 0001-228) at JPMC 225.<br><br>– Plaintiffs' averment also omits that the document makes clear that the violations related to onboarding procedures for a "few accounts" in 2002, 2007, 2008, and 2009, "but not AML related regulations." *Id.* | |
| 441 | From 1998 until at least 2005, ARB used its PTA with Chase Manhattan Bank to move billions of dollars via tens of thousands of transactions. *See id.* at JPMC 19 (showing monthly balances | 441.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | between 1999 and 2001); *id.* at JMPC 118-120, 199-208 (showing thousands of transactions each month). | (2) In particular, of the "tens of thousands of transactions" averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 442 | In 2000, ARB's PTA with Chase Manhattan Bank had 9500 credit transactions for an average of 791 credit transactions per month. *See id.* at JPMC 26. | 442.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, of the "9500 credit transactions" in 2000 averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 443 | For the month of September 2001, $550,638,901.79 in debit transactions and $546,124,219.77 in credit transactions were made using ARB's PTA with Chase Manhattan Bank. *See id.* at JPMC 18. | 443.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, of the "$550,638,901.79 in debit transactions and $546,124,219.77 in credit transactions" in September 2001 averred in this paragraph, Plaintiffs' Averment does not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(3) In particular, Plaintiffs' averments regarding transactions *after* the 9/11 Attacks are immaterial because Plaintiffs' injuries necessarily did not arise from any such transactions through Al Rajhi Bank's U.S. correspondent bank account. | |
| 444 | In the first six months of 2001, tens of millions of dollars were | 444. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | transferred in and out of ARB's PTA with Chase Manhattan Bank. *See id.* at JPMC 120. | Immaterial: (1) Immaterial for the reasons discussed above in response to Section XI (heading). (2) In particular, of the "tens of millions of dollars" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 445 | In June 2001, ARB maintained an average daily balance of $14,691,150.00 in its main PTA with Chase Manhattan Bank. *See id.* | 445. Immaterial: (1) Immaterial for the reasons discussed above in response to Section XI (heading). (2) In particular, of the "average daily balance of $14,691,150.00" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 446 | In June 2001, ARB processed 966 travelers checks, 208 commercial checks, 2567 paid checks, and over 5000 Swift transactions through its PTA with Chase Manhattan Bank. *See id* at JMPC 118-119. | 446. Immaterial: (1) Immaterial for the reasons discussed above in response to Section XI (heading). (2) In particular, of the "966 travelers checks, 208 commercial checks, 2567 paid checks, and over 5000 Swift transactions" averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 447 | In the six month period, from January 2001 until June 2001, ARB processed 135,480 travelers checks, 1,356 commercial checks, | 447. Immaterial: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 15,418 paid checks and over 25,000 Swift transactions using its PTA with Chase Manhattan Bank. *See id.* | (1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, of the "135,480 travelers checks, 1,356 commercial checks, 15,418 paid checks and over 25,000 Swift transactions" averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 448 | ARB continued to systematically use its PTA with Chase Manhattan Bank after the 9/11 attacks with ARB, processing 12,987 travelers checks transactions and 88 commercial check transactions using its Chase Manhattan Bank for the month of February of 2005. *See id.* at JMPC 221. | 448.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, of the "12,987 travelers checks transactions and 88 commercial check transactions" averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(3) Plaintiffs' averments regarding transactions *after* the 9/11 Attacks are immaterial because Plaintiffs' injuries necessarily did not arise from any such transactions through Al Rajhi Bank's U.S. correspondent bank account. | |
| 449 | As detailed above, from 1992 through at least 2005, ARB repeatedly and systematically used its PTA correspondent bank account with Chase Manhattan Bank in New York to access New York's dependable and transparent banking system. | 449.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, Plaintiffs' averments regarding transactions *after* the 9/11 Attacks are immaterial because they necessarily fail to show | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | that Plaintiffs' injuries arose from any actual, specific transaction through Al Rajhi Bank's U.S. correspondent bank account.<br><br>(3) In addition, Plaintiffs' averments regarding transactions from 1992-1997 are immaterial, because they fall outside the relevant period.<br><br>(4) Immaterial to the extent that Plaintiffs allege that processing transactions through a payable-through account at Chase Manhattan reveals improper intent of the Bank, given that the long-time use of payable-through accounts in the United States indicates it was "a normal banking practice" during the relevant period. *See* ARB Ex. 2 (Hobayb Report) at 32. Moreover, Plaintiffs have no evidence that any funds in Al Rajhi Bank's correspondent account at Chase Manhattan were used for an improper purpose, including planning, carrying out, or financing terrorism against the United States. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.).<br><br>Disputed as conclusory:<br><br>(1) Plaintiffs' characterization of New York's "banking system" as "dependable and transparent" is conclusory. Plaintiffs cite no supporting evidence evaluating New York's "banking system," particularly with respect to correspondent banking accounts. | |
| 450 | ARB authorized and provided Suleiman al Rajhi, his committee/foundation, and employees acting on his and its behalf, with check writing privileges for ARB's PTA with Chase Manhattan Bank. | 450.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading), and Sections IV (heading) and X (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) In addition, immaterial because, even if credited, Plaintiffs' averment shows that Al Rajhi Bank provided only routine banking services.<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "his committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>Disputed as conclusory; does not cite to evidence:<br><br>(1) Plaintiffs' statement contains unsupported legal conclusions to which no response is required. | |
| 451 | ARB authorized and provided the SAAR Foundation with check writing privileges for ARB's PTA with Chase Manhattan Bank. | 451.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading), and Sections IV (heading) and X (heading).<br><br>(2) In addition, immaterial because, even if credited, Plaintiffs' averment shows that Al Rajhi Bank provided only routine banking services.<br><br>Disputed as conclusory; does not cite to evidence:<br><br>(1) Plaintiffs' statement contains unsupported legal conclusions to which no response is required. | |
| 452 | ARB authorized and provided Abdullah Rahman al Rajhi with check writing privileges for | 452.<br><br>Immaterial: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | ARB's PTA with Chase Manhattan Bank. | (1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In addition, immaterial because, even if credited, Plaintiffs' averment shows that Al Rajhi Bank provided only routine banking services.<br><br><u>Disputed as conclusory; does not cite to evidence:</u><br><br>(1) Plaintiffs' statement contains unsupported legal conclusions to which no response is required. | |
| 453 | ARB authorized and provided the IIRO with check writing privileges to the IIRO for ARB's PTA with Chase Manhattan Bank. *See* Ex. 139, IIRO 109118-109119. | 453.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading) and Section V (heading).<br><br>(2) In particular, immaterial because the cited document does not show any transaction reaching Al Qaeda or the 9/11 Attacks, but reflects an "allocated donation . . . for the benefit of securing the required medical supplies and equipment for Fatma Al-Zahraa Hospital in Jalalabad, Afghanistan." Pls. Ex. 139 (IIRO Donation) at IIRO 109118-109119.<br><br>(3) In addition, immaterial because IIRO was a well-known, respected, and government-licensed charity, and Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew or had reason to know of any purported connections IIRO had to terrorism. *See* Pls. Ex. 3 (Galloway Dep. Tr.) and Errata at 232:19; ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13679-ARB-13681 (letter in IIRO KYC files approving decisions and recommendations relating to formation of IIRO); ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13683 (certificate in IIRO | <u>Pls. Ex. 139:</u><br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 801. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | KYC files recognizing IIRO as an NGO); ARB Exs. 24, 25 (Ltrs. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545-ARB-14546 (noting that IIRO KSA was licensed by appropriate Saudi authorities).<br><br>(4) In addition, immaterial because, even if credited, Plaintiffs' averment shows that Al Rajhi Bank provided only routine banking services. | |
| 454 | As noted previously, Plaintiffs have not had an opportunity to conduct discovery as to ARB's PTA generally, or for that matter any discovery of ARB concerning its use by Suleiman al Rajhi, his charity committee/foundation, and the employees of that office. | 454.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading), and Sections IV (heading) and X (heading).<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "his charity committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>Disputed as controverted by the evidence; does not cite supporting evidence:<br><br>(1) In particular, disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of a supposed lack of "opportunity to conduct discovery," for the reasons discussed above in response to Section III.<br><br>(2) In addition, Plaintiffs' allegation that they "have not had an opportunity to conduct discovery as to ARB's PTA generally," or "any discovery of ARB concerning its use by Suleiman al Rajhi, | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | his charity committee/foundation, and the employees of that office" is controverted by the evidence. | |
| | | – Plaintiffs elected not to pursue discovery related to Al Rajhi Bank's correspondent banking relationship with Chase Manhattan in their first requests for production. *See generally* Pls. 1st Mot. to Compel Ex. A (Jul. 30, 2021), ECF No. 6996-3 (Plaintiffs' First Set of Consolidated Jurisdictional Requests for Production of Documents Directed to Al Rajhi Bank). | |
| | | – Plaintiffs issued a broad subpoena to JPMorgan Chase for "[a]ny and all records concerning all accounts at JPMorgan Chase Bank established or held in the name of, on behalf of, and/or for the benefit of Al Rajhi Banking & Investment Corporation" as well as "[a]ny and all records concerning all accounts at JPMorgan Chase Bank" for Sulaiman Abdulaziz Al Rajhi's accounts as well as for the "Suleiman Abdul Aziz Al Rajhi Charitable Foundation in Saudi Arabia." *See* Pls. Letter in Opp. to ARB's Motion to Quash Ex. A (Jul. 15, 2022), ECF No. 8909-1, at 6-7. The total documents produced in response to the subpoena are encompassed in Plaintiffs' Exhibit 138. | |
| | | – Plaintiffs again forewent discovery regarding Al Rajhi Bank's correspondent banking relationship in their second set of requests for production. *See generally* Pls. 3d Mot. to Compel Ex. 1 (Apr. 19, 2023), ECF No. 9040-1 (Plaintiffs' Second Set of Consolidated Jurisdictional Requests for Production of Documents Directed to Al Rajhi Bank). | |
| 455 | However, the limited information available from the discovery provided by ███████ and Plaintiffs' independent investigations indicates that the | 455.<br><br>Immaterial: | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | PTA was used to facilitate transfers by Suleiman al Rajhi, under the auspices of his alter-ego charity committee/foundation, to support terrorist causes in and outside of the United States, including individuals and entities associated with al Qaeda and the September 11th hijacker support network. | (1) Immaterial for the reasons discussed above in response to Section XI (heading), and Sections IV (heading) and X (heading).<br><br>(2) Immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>Disputed as conclusory; cites no evidence:<br><br>(1) Plaintiffs' allegation that Al Rajhi Bank's payable through account "was used to facilitate transfers by Suleiman al Rajhi, under the auspices of his alter-ego charity committee/foundation, to support terrorist causes in and outside of the United States, including individuals and entities associated with al Qaeda and the September 11th hijacker support network" cites to no evidence and is wholly conclusory.<br><br>(2) Although vague and imprecise, to the extent that Plaintiffs' reference to the "charity committee/foundation" refers to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, their allegation that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was an "alter-ego" of Sulaiman bin Abdulaziz Al Rajhi | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | is a legal conclusion for which Plaintiffs provide no evidence in support.<br><br>Disputed as unsupported; controverted by the evidence:<br><br>(1) Plaintiffs' allegation that Sulaiman bin Abdulaziz Al Rajhi contributed to Al Qaeda is controverted by the evidence. The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi or any Al Rajhi family member for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>(2) No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing.<br><br>(3) Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014).<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments and heading in Section III. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 456 | The limited information available from the discovery provided by ███████ and ARB's al Buthe account statements further indicate that the PTA was used to facilitate al Qaeda terrorist financing transfers by al Buthe. | 456.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading), and Sections V (heading) and VIII (heading).<br><br>(2) In particular, despite the statements in this paragraph, Plaintiffs' Averment does not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(3) In addition, immaterial because Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew or had reason to know of any purported connections al Buthe had to terrorism.<br><br>   – Soliman al Buthe was publicly known as an official of Al Haramain, a well-known and respected charity before the 9/11 Attacks. Buthe was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 50 (Designation of Soliman al Buthe) (showing Buthe was not designated until September 9, 2004).<br><br>Disputed as conclusory; does not cite evidence:<br><br>(1) Plaintiffs' statement contains unsupported legal conclusions to which no response is required.<br><br>Disputed as controverted by the evidence for the reasons discussed above in response to ¶ 454.<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments and heading in Section III. | |
| 457 | The limited information available from the discovery provided by | 457. | |