| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | ███████ and documents produced by the IIRO also indicate that the PTA was used to facilitate transfers by IIRO to its operations in Afghanistan, which were extensively intertwined with al Qaeda. | _Immaterial:_<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading) and Section V (heading).<br><br>(2) In addition, immaterial because IIRO was a well-known, respected, and government-licensed charity, and Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew or had reason to know of any purported connections IIRO had to terrorism. _See_ Pls. Ex. 3 (Galloway Dep. Tr.) and Errata at 232:19; ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13679-ARB-13681 (letter in IIRO KYC files approving decisions and recommendations relating to formation of IIRO); ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13683 (certificate in IIRO KYC files recognizing IIRO as an non governmental body); ARB Ex. 25 (Ltrs. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545-ARB-14546 (noting that IIRO KSA was licensed by appropriate Saudi authorities).<br><br>(3) In addition, immaterial because, even if credited, Plaintiffs' averment shows that Al Rajhi Bank provided only routine banking services.<br><br>(4) Immaterial because Plaintiffs do not show how humanitarian "operations in Afghanistan" are connected to the 9/11 Attacks.<br><br>_Disputed as vague:_<br><br>(1) Plaintiffs' averment in this paragraph is vague as to timing.<br><br>(2) Plaintiffs' reference to "operations in Afghanistan" is vague.<br><br>(3) Plaintiffs' characterization of "extensively intertwined with al Qaeda" is vague. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Disputed as conclusory; does not cite evidence: <br><br> (1) Plaintiffs cite no evidence to support Plaintiffs' characterization of how IIRO purportedly "used" Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank. <br><br> (2) Plaintiffs cite no evidence supporting that humanitarian "operations in Afghanistan" "were extensively intertwined with al Qaeda." <br><br> Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments and heading in Section III. | |
| 458 | The limited information available from the discovery provided by ██████████ and declassified pursuant to E.O. 14040 also indicates that the PTA was used to facilitate transfers to additional persons involved in the September 11th hijackers' support network. | 458. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading). <br><br> (2) In addition, immaterial because, even if credited, Plaintiffs' averment shows that Al Rajhi Bank provided only routine banking services. <br><br> (3) Immaterial because, of the purported transfers averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> Disputed as vague: <br><br> (1) Plaintiffs' averment in this paragraph is vague as to timing. <br><br> (2) Plaintiffs' reference to "additional persons involved in the September 11th hijackers' support network" is vague. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as conclusory; does not cite evidence: | |
| | | (1) Plaintiffs cite no evidence to support Plaintiffs' characterization of how Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank was purportedly "used" by unspecified "additional persons." | |
| | | Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to averments and heading in Section III. | |
| 459 | The earliest information available to Plaintiffs concerning the use of ARB's correspondent account at Chase Manhattan to support al Qaeda is found in the investigative and audit report of Germany's Federal Office of Criminal Investigation, conducted in response to a request for judicial assistance from the Office of the Prosecutor for the International Criminal Tribunal for the Former Yugoslavia ("TWRA Audit"), concerning the finances of the TWRA | 459.<br><br>Disputed as immaterial for the reasons discussed above in response to Section XI (heading) and ¶ 438.<br><br>Disputed as unsupported by the evidence:<br><br>(1) Plaintiffs' reference to the TWRA audit is misleading because Plaintiffs omit important context. The document does not show that Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank were used to "support al Qaeda."<br><br>(2) Instead, the document states that "[a] suspicion [of Al Rajhi's relationship to 'Islamic terrorism'] could not be substantiated thus far." Pls. Ex. 113 (TWRA Expert Rep.) at 37. | |
| 460 | The TWRA was an important al Qaeda front during the early 1990's. | 460.<br><br>Immaterial for the reasons discussed above in response to Section XI (heading) and ¶ 438.<br><br>Disputed as conclusory; does not cite to evidence: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' statement contains unsupported legal conclusions to which no response is required. | |
| 461 | As the 9/11 Commission found, bin Laden "made use of the already-established Third World Relief Agency (TWRA) headquartered in Vienna, whose branch office locations included Zagreb and Budapest." *See* Ex. 40, 9/11 Commission Report at 58. | 461.<br><br>Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>Disputed as incomplete:<br><br>(1) Plaintiffs cite the 9/11 Commission Report, but neglect to mention that the 9/11 Commission Report never referred to Al Rajhi Bank. *See generally* Pls. Ex. 40 (9/11 Commission Rep.). | |
| 462 | The TWRA Audit revealed multiple donations to TWRA specifically attributable to Suleiman al Rajhi and other al Rajhi family members, along with a host of other prominent al Qaeda donor and financial facilitators, including Wa'el Jelaidan, Taibah International, and WAMY. *See* Ex. 113, TWRA Audit at 20-21 (Suleiman al Rajhi and family members); *id.* at 13-15 (Wa'el Hamza Jelaidan); *id.* at 46 (Taibah International Aid Association); *id.* at 58 (WAMY). | 462.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading), and Sections IV (heading), V (heading), and X (heading).<br><br>(2) In particular, immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g.*, *Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>Disputed as vague:<br><br>(1) Plaintiffs' reference to "other al Rajhi family members" is vague. | 462.<br><br>Pls. Ex. 113:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for presenting evidence of conduct that is not sufficiently similar to the conduct at issue outside the relevant period. *See* Fed. R. Evid. 403. |

Disputed as incomplete; unsupported by the evidence:

(1) Plaintiffs' reference to the TWRA audit is misleading because Plaintiffs omit important context. The document does not show that Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank were used to "support al Qaeda."

  – Instead, the document states that "[a] suspicion [of Al Rajhi's relationship to 'Islamic terrorism'] could not be substantiated thus far." Pls. Ex. 113 (TWRA Expert Rep.) at 37. In addition, Plaintiffs' Exhibit 113 does not provide evidence that the account used for the transactions is the same account that Plaintiffs allege is an "ARB's PTA." *See* Pls. Ex. 113 (TWRA Expert Rep.) at 37-38.

  – Plaintiffs' Exhibit 113 also shows that the majority of donations came from a prominent Saudi official, indicating the legitimacy of the organization. *See* Pls. Ex. 113 (TWRA Expert Rep.) at 11-12.

(2) Plaintiffs cite to no evidence supporting that "Wa'el Jelaidan, Taibah International, and WAMY" were among a "host of other prominent al Qaeda donor and financial facilitators."

Disputed as controverted by the evidence:

(1) Plaintiffs' allegation that Sulaiman bin Abdulaziz Al Rajhi contributed to Al Qaeda is controverted by the evidence. The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi or any Al Rajhi family member for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.

(2) No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (3) Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014). | |
| 463 | The TWRA Audit also revealed two transfers from ARB itself, as payor, in favor of TWRA, via ARB's account at Chase Manhattan Bank, in 1992 and 1993, and an additional 1992 transfer initiated by ARB via its Chase Manhattan Bank correspondent account, from a sender identified as Ibrahim Ahmed al Sulaiman, of nearly $300,000. *See id.* at 36-37. | 463. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading) and ¶ 438. <br><br> (2) In particular, of the transactions averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. | 463. <br><br> Pls. Ex. 113: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for presenting evidence of conduct that is not sufficiently similar to the conduct at issue outside the relevant period. *See* Fed. R. Evid. 403. |
| 464 | Dr. Ahmed Totonji, a founding member of the SAAR Foundation in the United States, *see* Ex. 19, PEC-BARZ-13145-13160 at 13158, also used ARB's correspondent account with Chase Manhattan Bank, to transfer over 5.7 million Austrian Schillings (approximately $460,000.00 | 464. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading), and Sections IV (heading) and X (heading). <br><br> (2) In particular, of the "approximately $460,000.00 USD" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | 464. <br><br> Pls. Ex. 113: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice for presenting evidence of conduct that is not sufficiently |

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | USD) to the TRWA in 1992. *See id.* at 56. | (3) In addition, immaterial because, even if credited, Plaintiffs' averment shows that Al Rajhi Bank provided only routine banking services. | similar to the conduct at issue outside the relevant period. *See* Fed. R. Evid. 403. |
| 465 | Plaintiffs do not have information concerning the use of ARB correspondent accounts at Chase Manhattan during the period after those payments until the beginning of the jurisdictional discovery period, because of a lack of discovery, but the SAAR Foundation/Humana Trust business records produced by ▮▮▮▮▮▮ reflect extensive use of ARB's Payable Through Account to execute transactions on behalf of Suleiman al Rajhi, under the auspices of his charity committee/foundation and the SAAR Foundation mechanism in the United States. *See* Ex. 4, Winer Report at 102, 103, 188, 191, 192, 200-203. | 465. <br><br> <u>Immaterial for the reasons discussed above in response to Section XI (heading), and Sections IV (heading) and X (heading).</u> <br><br> <u>Disputed as ambiguous; vague:</u> <br><br> (1) Plaintiffs' reference to "his charity committee/foundation" is ambiguous and vague.  There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. <br><br> (2) Plaintiffs' characterization of "extensive use" is conclusory and vague. <br><br> (3) Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of an alleged "lack of discovery," for the reasons discussed above in response to Section III. | 465. <br><br> <u>Pls. Ex. 4 at 102:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies (NL docs). *See* Fed. R. Evid. 802. <br><br> <u>Pls. Ex. 4 at 103:</u> <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 4 at 188, 191-192, 202:</u> <br><br> - Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. <br><br> <u>Pls. Ex. 4 at 200-203:</u> |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | | - Expert is not qualified to opine on banking regulations. *See* Fed. R. Evid. 702. |
| 466 | Moreover, Suleiman al Rajhi and ███, in furtherance of their money laundering scheme, used ARB's Chase Manhattan account to move $24,000,000.00 from banks in the United States and Switzerland to Suleiman al Rajhi's private account with Chase in the Channel Islands after the Al Rajhi's charity/foundation activities came under scrutiny for terror finance connections. *See* Ex. 140; Ex. 4, Winer Report at 184-203. | 466. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading) and Sections IV (heading) and X (heading). <br><br> (2) In particular, of the "$24,000,000.00" averred in this paragraph, Plaintiffs' Averment does not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> <u>Disputed as ambiguous; vague:</u> <br><br> (1) Plaintiffs' reference to "Al Rajhi's charity/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. <br><br> <u>Disputed as controverted by the evidence for the reasons discussed in response to ¶ 407:</u> <br><br> (1) Plaintiffs' references to purported "scrutiny for terror finance connections" is incomplete and controverted by the evidence: <br><br> &ndash; While the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated under any sanctions regime for connections to terrorism. *See* ARB. Ex. 28 (Winer Dep. Tr. And Errata) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 185-87; ARB Ex. 4 (Lormel Rep.) at 9. | 466. <br><br> <u>Pls. Ex. 4 at 184-203:</u> <br><br> - Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702. <br><br> - Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | – Further, in 2021, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'"  ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011.<br><br>– Moreover, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim.  *See In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone.").<br><br>(2) To the extent Plaintiffs aver that Sulaiman bin Abdulaziz Al Rajhi financed terrorism, that is unsupported and controverted by the evidence.<br><br>– Plaintiffs do not trace any donation or transaction from Sulaiman bin Abdulaziz Al Rajhi to Al Qaeda or the 9/11 Attacks.<br><br>– The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi or any Al Rajhi family member for connections to terrorism.  *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | — No governmental body anywhere has ever sanctioned or taken any action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing.<br><br>— Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014). | |
| 467 | Those records show that Abdul Rahman al Rajhi, Suleiman al Rajhi's relative and a full time employee of his committee/foundation, issued at least 20 payments written on ARB Chase Manhattan PTA checks between February and September 1999. *See* Ex. 141, NL0010447, 10455, 10456, 10457, 10458, 10460, 10462, 10463, 10464, 10466, 10467, 10470, 10471, 10472, 10473, 10474, 10475, 10483, 10485, 10491. | 467.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading) and Section IV (heading).<br><br>(2) In particular, Plaintiffs' averments regarding Abdul Rahman al Rajhi are irrelevant as to Al Rajhi Bank because Abdul Rahman Al Rajhi was never an employee of the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank.").<br><br>(3) In particular, of the "at least 20 payments" averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "his committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin | 467.<br><br>Pls. Ex. 141:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | | |
| | | Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. | |
| 468 | As discussed above, these payments, which totaled in excess of $235,000.00, issued pursuant to the scheme orchestrated by Suleiman al Rajhi and Abdullah al Rajhi, to use the U.S.-based SAAR Foundation and Humana Charitable Trust to launder funds provided by Suleiman al Rajhi, in support of terrorist and extremist causes, in and through the United States. | 468.<br><br>_Immaterial:_<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading) and Sections IV (heading) and X (heading).<br><br>(2) In particular, of the "$235,000.00" averred in this paragraph, Plaintiffs do not show that _a single dollar_ reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(3) In particular, immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. _See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick_, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>_Disputed conclusory; does not cite to evidence:_<br><br>(1) Plaintiffs cite no evidence supporting that Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi "orchestrated" a "scheme" to "launder funds . . . in support of terrorist and extremist causes."<br><br>_Disputed as controverted by the evidence for the reasons discussed in response to paragraphs 407, 466:_<br><br>(1) Plaintiffs' averment that the SAAR Foundation supported "terrorist and extremist causes" is controverted by the evidence: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | &ndash; While the FBI, USCS, and IRS investigated the SAAR Foundation for several years, no charges or indictments were ever brought against the organization, and the SAAR Foundation was never designated under any sanctions regime for connections to terrorism. *See* ARB. Ex. 28 (Winer Dep. Tr. And Errata) at 143:13-18; Pls. Ex. 4 (Winer Rep.) at 185-87; ARB Ex. 4 (Lormel Rep.) at 9. | |
| | | &ndash; Further, in 2021, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011. | |
| | | &ndash; Moreover, this Court previously dismissed Plaintiffs' claims as to the SAAR Network Defendants for failure to state a claim. *See In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 523 (S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory assertions against a large group of defendants, whom plaintiffs have independently concluded to be related and operating in unison. None of the Defendants can be held liable based on such allegations alone."). | |
| | | (2) To the extent Plaintiffs aver that Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi supported terrorism, that is controverted by the evidence. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | – Plaintiffs do not trace any donation or transaction from Sulaiman bin Abdulaziz Al Rajhi to Al Qaeda or the 9/11 Attacks.<br><br>– The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi family member for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>– No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing.<br><br>– Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014). | |
| 469 | The beneficiaries of these payments included entities in the United States, Pakistan, India, the Philippines, and Kenya. *See* Ex. 141, NL0010447, 0010455, 0010456, 0010457, 0010458, 0010460, 0010462, 0010463, 0010464, 0010466, 0010467, 0010470, 0010471, 0010472, | 469.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading), and Sections IV (heading) and X (heading). | 469.<br><br>Pls. Ex. 141:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 0010473, 0010474, 0010475, 0010483, 0010485, 0010491. | (2) In particular, of the payments averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| 470 | Given the extent of ARB's correspondent relationships, there does not appear to have been any need or legitimate reason to route payments for at least certain of those foreign beneficiaries through the United States. *See* Ex. 4, Winer Report at 202. | 470.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading), and Sections IV (heading) and X (heading).<br><br>Disputed as conclusory; unsupported by the evidence:<br><br>(1) Plaintiffs' allegation that "there does not appear to have been any need or legitimate reason to route payments . . . through the United States" is premised on speculation, conclusory, and unsupported by the evidence cited.<br><br>(2) Plaintiffs' citation to the Winer Report does not support such a speculative conclusion. *See* Pls. Ex. 4 (Winer Rep.) at 202. | 470.<br><br>Pls. Ex. 4 at 202:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies (e.g., Kane Aff., NL docs). *See* Fed. R. Evid. 802. |
| 471 | Several of the beneficiaries of those ARB PTA have documented connections to terrorism, including al Qaeda operations in the United States and individuals associated with the support network for the 9/11 hijackers. | 471.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, Plaintiffs' Averment does not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>Disputed as conclusory; does not cite to evidence: | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (1) Plaintiffs' statement contains unsupported legal conclusions to which no response is required. | |
| 472 | For example, Abdul Rahman al Rajhi used the PTA at Chase Manhattan to send payments on behalf of Suleiman al Rajhi, to Khalid al Sowailem, the head of the Ministry of Islamic Affairs Da'wah Office in the Saudi Embassy in Washington, D.C. *See* Ex. 142, NL 10485 ($5,000.00 check, dated July 7, 1999, payable to "Khaled Bin Ibrahim A-Swailem;" "Amount from Abdul Rahman Al Rajhi" and "Drawn on Chase Manhattan Bank, 55 Water Street, New York, NY 10041."). | 472.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading) and Section IV (heading).<br><br>(2) In addition, immaterial because, even if credited, Plaintiffs' averment shows that Al Rajhi Bank provided only routine banking services.<br><br>(3) In particular, of the purported payments averred in this paragraph Plaintiffs' Averment does not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(4) In particular, Plaintiffs' averments regarding Abdul Rahman al Rajhi are irrelevant as to Al Rajhi Bank because Abdul Rahman Al Rajhi was never an employee of the Bank.  *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). | 472.<br><br>Pls. Ex 142:<br><br>- Lacks authentication.  *See* Fed. R. Evid. 901. |
| 473 | The payment was one of several distributions Suleiman al Rajhi made in favor of al Sowailem and/or the Embassy's Ministry of Islamic Affairs offices during this time period.  See, e.g., Ex. 143, KSA 1685 ($726.67 check, dated December 11, 1998, payable to "Khaled I.  Al- Sowailem;" "Drawn on  Chase  Manhattan | 473.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading) and ¶ 472.<br><br>(2) In particular, of "several distributions" averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. | 473.<br><br>Pls. Ex. 143:<br><br>- Lacks authentication.  *See* Fed. R. Evid. 901.<br><br>Pls. Ex. 144:<br><br>- Lacks authentication.  *See* Fed. R. Evid. 901. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Bank, 55 Water Street, New York, NY 10041."); Ex. 144, KSA 1687 ($398.14 check, dated December 14, 1998, payable to "Khaled I. Al-Sowailem;" "Drawn on Chase Manhattan Bank, 55 Water Street, New York, NY 10041."); Ex. 145, NL 15572 (October 31, 2000 email from ███████ identifying a February 16, 1999 transfer to "The Propagation Office in America (Khalid Ibrahim Swelim)"); Ex. 146, NL 10468 (ARB "Outward Payment Order" of $25,000.00 to the "Royal Embassy of Saudi Arabia IFTA #5," Riggs National Bank, Washington, D.C.). *See also* Ex. 29 (Galloway Exhibit 22), NL 15578, 15043-15046 at 15044 (93,750 SR contribution, dated February 16, 1999 to the "Dawah Office in America, Khaled Ibrahim al Suwailem"); *id.* at 15045 (18,750 SR contribution, dated July 7, 1999, to "Dawah Office in America"). | | Pls. Ex. 145: <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> Pls. Ex. 146: <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> Pls. Ex. 29: <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 474 | At the time of those payments, the offices of the Ministry of Islamic Affairs in the United States were extensively involved in funding terrorism in the United States, | 474. <br><br> Immaterial: | Pls. Ex. 26: <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
|  | including elements of al Qaeda. *See* Ex. 26 (Lormel Exhibit 9), *Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States*, December 2004, EO14040- 003414-3442 at 3416, 3430-3432; Ex. 51, FBI Report, *Connections to the Attacks of September 11, 2001*, July 23, 2021, EO14040-003478-3608-UPDATED. | (1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>(3) In addition, even if credited, Plaintiffs have no evidence that Al Rajhi Bank had reason or reason to know about the Ministry of Islamic Affairs' alleged involvement "in funding terrorism in the United States."<br><br>Disputed as unsupported by the evidence and incomplete:<br><br>(1) Plaintiffs offer no support for their allegation that the Ministry was "involved in funding terrorism in the United States, including elements of al Qaeda."<br><br>   – Plaintiffs' citation to Plaintiffs' Exhibit 26 (*Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States*, Dec. 2004, EO14040- 003414-3442 at 3416), to the extent admissible, is incomplete and missing important context. On the page Plaintiffs cite, the report states, "There is no evidence that either the Saudi Government or members of the Saudi royal family knowingly provided support for the attacks of 11 September 2001 or that they had foreknowledge of terrorist operations in the Kingdom or elsewhere." Pls. Ex. 26 (*Assessment of Saudi Arabian Support to Terrorism and the* | hearsay within hearsay. *See* Fed. R. Evid 802. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 51:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | *Counterintelligence Threat to the United States*, Dec. 2004) at EO14040-003416. | |
| 475 | Al Sowailem was, in turn, the direct supervisor of Fahad al Thumairy, an extremist Saudi government imam employed by the Ministry of Islamic Affairs, who, along with another Saudi agent named Omar al Bayoumi, is known to have provided substantial assistance to the 9/11 hijackers. *See* Ex. 147, 2012 FBI Summary Report (MDL ECF No. 6292-1) at 3-4. | 475.<br><br>Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>Disputed as unsupported by the evidence:<br><br>(1) Plaintiffs' averment that Al Sowailem was "the direct supervisor of Fahad al Thumairy" is unsupported by the evidence cited. The document cited by Plaintiffs as Exhibit 147 does not mention Al Sowailem. *See* Pls. Ex. 147 (2012 FBI Summary Rep.).<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' averment that Thumairy and Bayoumi "provided substantial assistance to the 9/11 hijackers" is controverted by the evidence.<br><br>(2) In 2021, the FBI closed its investigation into both Thumairy and Bayoumi, concluding "that insufficient evidence existed to prosecute Thumairy, Bayoumi, and Al-Jarrah for wittingly conspiring to assist the AQ hijackers in furtherance of the 9/11 attack." ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000010.<br><br>(3) Further, in the same closed report, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the | Pls. Ex. 147:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011. | |
| 476 | Bayoumi also received four payments via ARB's PTA at Chase Manhattan himself. *See* Ex. 167, ARB 39329; Ex. 168, ARB 13761, 13762, 1376; Ex. 169, ARB 13754-13755. | 476. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading). <br><br> (2) In particular, of the purported payments averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> (3) In addition, immaterial because, in 2021, the FBI closed its investigation into Bayoumi, concluding "that insufficient evidence existed to prosecute Thumairy, Bayoumi, and Al-Jarrah for wittingly conspiring to assist the AQ hijackers in furtherance of the 9/11 attack." ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000010. <br><br> (4) Further, in the same closed report, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011. <br><br> Disputed as vague: <br><br> (1) Plaintiffs' averment in this paragraph is vague as to timing. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 477 | In addition to his role in providing support for the hijackers, the FBI determined that Bayoumi had extensive ties to al Qaeda. Ex. 51, FBI Report, *Connections to the Attacks of September 11, 2001*, July 23, 2021, EO14040-003478-3608-UPDATED. | 477.<br><br>Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>Disputed as incomplete; controverted by the evidence:<br><br>(1) Plaintiffs' averment that "the FBI determined that Bayoumi had extensive ties to al Qaeda" is incomplete because it ignores the FBI's ultimate conclusion with respect to Bayoumi.<br><br>(2) In 2021, the FBI closed its investigation into Bayoumi, concluding "that insufficient evidence existed to prosecute Thumairy, Bayoumi, and Al-Jarrah for wittingly conspiring to assist the AQ hijackers in furtherance of the 9/11 attack." ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000010.<br><br>(3) Further, in the same closed report, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011. | Pls. Ex. 51:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. |
| 478 | Although not necessary for jurisdiction, the evidence indicates that Suleiman al Rajhi, and thus ARB, knew well the terrorist nature of the Ministry of Islamic Affairs enterprise in the United States, at the time of the payments to Sowailem, the MOIA | 478.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Office in the Saudi Embassy, and Bayoumi. | (2) In particular, of the purported payments averred in this paragraph, Plaintiffs' Averment does not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. | |
| | | (3) In particular, immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). | |
| | | (4) Further, immaterial because, in 2021, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011. | |
| | | Disputed as conclusory; does not cite evidence: | |
| | | (1) Plaintiffs' allegations in this paragraph are entirely conclusory and insufficient to support their claims against Al Rajhi Bank where they cite to no evidence to support their statements. | |
| | | (2) Plaintiffs' allegation that Sulaiman bin Abdulaziz Al Rajhi "knew well the terrorist nature of the Ministry of Islamic Affairs enterprise in the United States" is a legal conclusion for which no evidence is provided. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Plaintiffs provide no evidence for their conclusory characterization of the "terrorist nature" of the Ministry of Islamic Affairs.<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' allegations concerning Omar al-Bayoumi are incomplete and controverted by the evidence. The FBI concluded its investigation into Bayoumi by determining it had "insufficient evidence" that Bayoumi "wittingly conspir[ed] to assist [Al Qaeda] hijackers in furtherance of the 9/11 Attacks." ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-00010.<br><br>(2) The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, any Al Rajhi family member, or any Al Rajhi Bank officer for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>(3) No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing. *See* ARB Aver. ¶ 7; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.).<br><br>(4) Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (5) Plaintiffs' conclusory characterization of the "terrorist nature" of Ministry of Islamic Affairs is controverted by the evidence.<br><br>– Plaintiffs' Exhibit 26 states: "There is no evidence that either the Saudi Government or members of the Saudi royal family knowingly provided support for the attacks of 11 September 2001 or that they had foreknowledge of terrorist operations in the Kingdom or elsewhere." Pls. Ex. 26 (*Assessment of Saudi Arabian Support to Terrorism and the Counterintelligence Threat to the United States*, Dec. 2004) at EO14040-003416. | |
| 479 | Beyond the overall nature and extensiveness of Suleiman al Rajhi's connections to terrorism and militant jihadism, both Bayoumi and Thumairy were in telephone contact with Abdul Rahman al Rajhi and Abdullah al Misfer, two of the permanent employees of Suleiman al Rajhi's charity committee/foundation. *See* Ex. 204, Winer Report (FBI Protected Information Version) at 103, 104; Ex. 205, AT&T telephone records for Omar al Bayoumi; Ex. 206, NL 18775 (telephone directory identifying telephone numbers associated with Abdul Rahman al Raji and Abdullah al Misfer); Ex. 207, FBI 573-580 (telephone records for Fahad al Thumairy); Ex. 208, | 479.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading) and Sections IV (heading) and X (heading).<br><br>(2) In particular, Plaintiffs' averments regarding Abdul Rahman al Rajhi and Abdullah al Misfer are irrelevant as to Al Rajhi Bank because neither Abdul Rahman Al Rajhi nor Abdullah al Misfer was ever an employee of the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank.").<br><br>(3) In particular, immaterial because Plaintiffs have not established any basis for imputing the knowledge of Sulaiman bin Abdulaziz Al Rajhi to the Bank . *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). | 479.<br><br>Pls Ex. 204:<br><br>- *See* Objections to Pls. Ex. 4.<br><br>Pls. Ex. 205:<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association and purported connections with individuals. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 206:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>Pls. Ex. 207:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Kohlmann Report (FBI Protected Information Version) at 9-10. | (4) Further, immaterial because, in 2021, the FBI closed its investigation into Bayoumi, concluding "that insufficient evidence existed to prosecute Thumairy, Bayoumi, and Al-Jarrah for wittingly conspiring to assist the AQ hijackers in furtherance of the 9/11 attack."  ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000010.<br><br>(5) The FBI also concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000011.<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "Suleiman al Rajhi's charity committee/foundation" is ambiguous and vague.  There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>Disputed as conclusory; unsupported by the evidence:<br><br>(1) Plaintiffs' allegation that Sulaiman bin Abdulaziz Al Rajhi had "extensive" connections to terrorism is legally conclusory and unsupported by the evidence.<br><br>Disputed as incomplete; controverted by the evidence:<br><br>(1) Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi has "connections to terrorism" is controverted by the evidence. | - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 208:<br><br>- *See* Objections to Pls. Ex. 38. |

646

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | |
| | | – The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, any Al Rajhi family member, or any Al Rajhi Bank officer for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5. | |
| | | – No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing. *See* ARB Aver. ¶ 7; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |
| | | – Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014). | |
| 480 | Abdul Rahman al Rajhi's checks via the PTA at Chase Manhattan also included a payment to American Open University. *See* Ex. 141, NL 10475. According to the FBI, American Open University "is connected to the Moslem Brotherhood and arranges for paramilitary training in Pakistan." 3563. *See* Ex. 51, | 480. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading). <br><br> (2) In particular, Plaintiffs' averments regarding Abdul Rahman al Rajhi are irrelevant as to Al Rajhi Bank because Abdul Rahman Al Rajhi was never an employee of the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity | Pls. Ex. 51: <br><br> - Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for unfair prejudice |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | FBI Report, *Connections to the Attacks of September 11, 2001*, July 23, 2021, EO14040-003478-3608-UPDATED at 3563. | Foundation officials] had any role at the bank, and the foundation has never been a parent, subsidiary, or affiliate of the bank."). <br><br> (3) In addition, Plaintiffs' averment does not show that the purported transaction averred in this paragraph reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> (4) Even if credited, Plaintiffs have no evidence that Al Rajhi Bank knew or had reason "to know American Open University "is connected to the Moslem Brotherhood and arranges for paramilitary training in Pakistan." <br><br> <u>Disputed as vague:</u> <br><br> (1) Plaintiffs' averment in this paragraph is vague as to timing. | for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. <br><br> <u>Pls. Ex. 141</u>: <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. |
| 481 | Jaafar Idris, who worked out of the Ministry of Islamic Affairs' office in the Saudi Embassy in Washington, D.C. and also served as American Open University's president, is described by the FBI as "a close associate of jihadi groups operating with the U.S." *See id.* at 3562. | 481. <br><br> <u>Immaterial</u>: <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading) and ¶ 480. <br><br> (2) Even if credited, Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know a Jaafar Idris was "a close associate of jihadi groups operating with the U.S." <br><br> <u>Disputed as vague:</u> <br><br> (1) Plaintiffs' averment in this paragraph is vague as to timing. <br><br> <u>Disputed as misleading; does not cite to supporting evidence:</u> <br><br> (1) The source cited by Plaintiffs is silent as to Jaafar Idris' work, and the cited page is wholly absent of assertions that he worked at the Ministry of Islamic Affairs' office in the Saudi Embassy in Washington D.C. or that he was the President of American Open | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | university. *See* Pls. Ex. 51 (FBI Report, *Connections to the Attacks of September 11, 2001,* Jul. 23, 2021) at EO14040-003562-UPDATED. | |
| 482 | In addition, between January 22, 2001 and March 14, 2001, Soliman al Buthe, a SDGT, executed six transactions totaling $45,000.00 via ARB's PTA at Chase Manhattan. *See* Ex. 148, ARB 39154, 39156, 39158, 39160, 39162, 39164. | 482. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading). <br><br> (2) In particular, of the transactions averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> Disputed as incomplete: <br><br> (1) Plaintiffs describe Soliman al Buthe as an SDGT, but omit important context. Al Buthe was not designated under any sanctions regime for connections to terrorism at the time of the transactions averred in this paragraph. <br><br> (2) Soliman al Buthe was publicly known as an official of Al Haramain, a well-known and respected charity before the 9/11 Attacks. Al Buthe was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* Pls. Ex. 50 (Designation of Soliman al Buthe) (showing al Buthe was not designated until September 9, 2004). <br><br> (3) Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew or had reason to know of any purported connections al Buthe had to terrorism. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility objections |
|---|---|---|---|
| 483 | Two of those payments specifically identified AHIF in Oregon as the beneficiary. *See id.* | 483.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In particular, of the transactions averred in this paragraph, Plaintiffs' Averment does not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(3) In addition, immaterial because Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew or had reason to know of any purported connections al Buthe had to terrorism.<br><br>   – Soliman al Buthe was publicly known as an official of Al Haramain, a well-known and respected charity before the 9/11 Attacks. Al Buthe was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. See Pls. Ex. 50 (Designation of Soliman al Buthe) (showing al Buthe was not designated until September 9, 2004).<br><br>(4) In addition, immaterial because Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew or had reason to know of any purported connections al Buthe had to terrorism.<br><br>   – AHIF USA in Oregon was not designated under any sanctions regime for connections to terrorism until it was designated in 2008, several years after the 9/11 Attacks. *See* Pls. Ex. 60 (Press Release, *Treasury Designates Al Haramain Islamic Foundation*, Jun. 19, 2008).<br><br>   – Before its designation, AHIF USA in Oregon was known as a reputable charity and operated as a 501(c)(3) organization. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 93:22-94:3. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Disputed as vague: | |
| | | (1) Plaintiffs' averment in this paragraph is vague as to timing. | |
| 484 | As discussed already, throughout the time of those transfers, al Buthe was a key al Qaeda financial facilitator, who was engaged in financing al Qaeda operations via AHIF's Oregon office, which was itself an al Qaeda front. *See* Ex. 50, *U.S.-Based Branch of Al Haramain Foundation Linked to Terror, Treasury Designates U.S. Branch, Director*, September 9, 2004, at 1 (indicating that under Soliman al Buthe's leadership of Al Haramain, "funds that were donated to AHF with the intention of supporting Chechen refugees were diverted to support mujahideen, as well as Chechen leaders affiliated with the al Qaida network"). | 484. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading) and Section X (heading). <br><br> (2) Even if credited, Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know that al Buthe had connections to terrorism. <br><br>   &ndash;  Al Buthe was not designated under any sanctions regime for connections to terrorism until September 9, 2004, years after the 9/11 Attacks. *See* Pls. Ex. 50 (Designation of Soliman al Buthe). <br><br> (3) In addition, immaterial because al Buthe's designation discusses his purported support to "Chechen leaders," not any support for the 9/11 Attacks or any terrorism aimed at the United States. <br><br> Disputed as incomplete: <br><br> (1) Plaintiffs' characterization of AHIF USA as "an al Qaeda front" is incomplete. Before its designation AHIF USA in Oregon was a reputable charity and operated as a 501(c)(3) organization. See ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 93:22-94:3. <br><br> (2) AHIF USA in Oregon was not designated under any sanctions regime for connections to terrorism until it was designated in 2008, several years after the 9/11 Attacks. *See* Pls. Ex. 60 (Press Release, *Treasury Designates Al Haramain Islamic Foundation*, Jun. 19, 2008). | 484. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 485 | In addition to the payments by al Buthe to AHIF via ARB's PTA with Chase Manhattan Bank, al Buthe also made payments using ARB's PTA at Chase Manhattan to Datapact, Inc. and Midway Networks, *see* Ex. 148, ARB 39154, 39156, 39158, which are internet service provider networks established by al Buthe and his AHIF partner, Pete Seda, on behalf of AHIF to facilitate password protected communications and a website know as Islam Today, which was used by radical clerics in the Middle East, including Salman al-Awdaha, a well-known cleric who issued fatwas advocating violence against the United States and whose imprisonment by Saudi Arabia in 2004 prompted Osama bin Laden to take up arms against the United States. *See* Ex. 149, August 22, 2007 Transcript of Pretrial Detention Hearing for Pirouz Sedahaty (a/k/a Pete Seda), U.S. v. Pirouz Sedaghaty, Case No. 6:05-cr-60008-AA, Dkt. No. 46, September 19, 2007, at 8, 61, 62, 63, 71, 88, 89, 92 and 93. | 485. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XI (heading). <br><br> (2) In particular, of the purported payments averred in this paragraph, Plaintiffs do not show that *a single transaction* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> (3) Even if credited, Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know that al Buthe had connections to terrorism. <br><br> (4) Al Buthe was not designated under any sanctions regime for connections to terrorism until September 9, 2004, years after the 9/11 Attacks. *See* Pls. Ex. 50 (Designation of Soliman al Buthe). <br><br> (5) In addition, immaterial because Buthe's designation discusses his purported support to "Chechen leaders," not any support for the 9/11 Attacks or any terrorism aimed at the United States. <br><br> (6) In addition, immaterial because, even if credited, Plaintiffs aver an extraordinarily attenuated connection between (1) an individual with no apparent connection to the 9/11 Attacks, (2) two internet services providers, and (3) and Al Buthe and his partner, neither of whom was designated before the 9/11 Attacks. This averment shows no conduct by the Bank beyond the provision of routine banking services. | 485. <br><br> Pls. Ex. 149: <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Should be excluded under Rule 403 for confusing the issue and unfair prejudice to the extent Plaintiffs attempt to impute liability through connections with individuals. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 486 | Finally with respect to ARB's correspondent and PTA at Chase Manhattan, discovery provided by the IIRO indicates that ARB authorized IIRO to issue a check via the PTA at Chase Manhattan, for the benefit of the Fatima al Zahraa Hospital in Jalalabad, Afghanistan. *See* Ex. 139, IIRO 109118-109119; Ex. 150, ARB 2477-2572 at 2543 (ARB account statement for Islamic Relief Organization-Health, identifying an August 19, 2001 transaction, 125,500.00 SR debit, "Issuance of bank checks."). | 486.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading) and Section V (heading).<br><br>(2) In particular, immaterial because the cited document does not show any transaction reaching Al Qaeda or the 9/11 Attacks, but reflects an "allocated donation . . . for the benefit of securing the required medical supplies and equipment for Fatma Al-Zahraa Hospital in Jalalabad, Afghanistan." Pls. Ex. 139 (IIRO Donation) at IIRO 109118-109119.<br><br>(3) In addition, immaterial because IIRO was a well-known, respected, and government-licensed charity, and Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew or had reason to know of any connections IIRO had to terrorism. *See* Pls. Ex. 3 (Galloway Dep. Tr.) and Errata at 232:19; ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13679-ARB-13681 (letter in IIRO KYC files approving decisions and recommendations relating to formation of IIRO); ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13683 (certificate in IIRO KYC files recognizing IIRO as an NGO); ARB Exs. 24, 25 (Letters from Al Rajhi Bank General Manager to Governor of SAMA) at ARB-14545-ARB-14546 (noting that IIRO KSA was licensed by appropriate Saudi authorities). | |
| 487 | The Fatima al Zahraa Hospital was an asset of the IIRO itself, and the IIRO's offices in Pakistan/Afghanistan were deeply tied to al Qaeda operations. *See* Ex. 151, IIRO 215526-215529; | 487.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading) and Section V (heading). | 487.<br><br>Pls. Exs. 151-158:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Ex. 152, IIRO 126173-126176; Ex. 153, IIRO 112761-112762; Ex. 154, IIRO 112745-112748; Ex. 155, IIRO 59410-59411; Ex. 156, IIRO 108937; Ex. 157, IIRO 105986; Ex. 158 (Basha Exhibit 134), IIRO 212-330 at 278. *See also* Ex. 66, *Usama Bin Ladin: Some Saudi Financial Ties Probably Intact*, January 11, 1999, CIA_00807-848 at 818 (stating that Osama bin Laden "has extensive contact with Afghani and Pakistani offices of the IIRO"); *See also* Ex. 84, FBI Report, *Co-operating Witness Interview*, June 2, 2004, at 1 (indicating that al Qaeda members in the IIRO office in Peshawar, Pakistan, headed by Wa'el Jelaidan, were responsible for purchasing weapons). | (2) Immaterial to the extent that this averment relies on a CIA report, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI <u>(heading)</u>, and is otherwise conclusory and unsupported.<br><br>(3) In addition, immaterial because, even if credited, Plaintiffs' averment does not show that the Fatima al Zahraa Hospital was connected to terrorism.<br><br>– In fact, the cited documents show that the hospital was used for genuine humanitarian purposes. *See* Pls. Ex. 151 (IIRO Hospital Administration Forms) at IIRO 215526-215529 (showing that "special nourishment" was provided to patients, meals were provided to patients, doctors, nurses and other staff).<br><br>– In addition, immaterial because IIRO was a well-known, respected, and government-licensed charity, and Plaintiffs have no evidence that, before the 9/11 Attacks, Al Rajhi Bank knew or had reason to know of any connections IIRO had to terrorism. *See* Pls. Ex. 3 (Galloway Dep. Tr.) and Errata at 232:19; ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13679-ARB-13681 (letter in IIRO KYC files approving decisions and recommendations relating to formation of IIRO); ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13683 (certificate in IIRO KYC files recognizing IIRO as an NGO); ARB Exs. 24, 25 (Ltrs. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545-ARB-14546 (noting that IIRO KSA was licensed by appropriate Saudi authorities).<br><br>(4) In particular, immaterial because the cited document does not show any transaction reaching Al Qaeda or the 9/11 Attacks, but reflects an "allocated donation . . . for the benefit of securing the required medical supplies and equipment for Fatma Al-Zahraa Hospital in | - Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br><u>Pls Ex. 66:</u><br>- Inadmissible hearsay, as noted in response to Section VI.<br><br><u>Pls. Ex. 84:</u><br>- Hearsay, to which no exception applies. *See* Fed. R. Evid. 802.<br>- Should be excluded under Rule 403 for confusing the issue and unfair prejudice by attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | | |
| | | Jalalabad, Afghanistan." Pls. Ex. 139 (IIRO Donation) at IIRO 109118-109119.<br><br><u>Disputed as incomplete, misleading, and unsupported by the evidence:</u><br><br>(1) The CIA report cited does not mention the Fatima al Zahraa Hospital or otherwise connect the hospital to the 9/11 Attacks or the United States. | |
| 488 | Confirming this close connection, Ayman al Zawahiri conducted eye surgeries at Fatima al Zahraa Hospital, which was located in close proximity to an al Qaeda funded jihad camp, at some point after 1996. *See* Ex. 159, Transcript, February 8, 2024 Deposition of Aimen Dean ("Dean Deposition"), at 308-309. | 488.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section XI (heading).<br><br>(2) In addition, immaterial because, even if credited, "proximity to an al Qaeda funded jihad camp" does not show that the hospital was in fact connected to Al Qaeda or that the Al Rajhi Bank knew or had reason to know of the alleged connection.<br><br><u>Disputed as unsupported by the evidence; misleading:</u><br><br>(1) Al Rajhi Bank's expert Aimen Dean did not "confirm[]" a "close connection" between the Fatima al Zahraa Hospital and Al Qaeda's operations.<br><br>(2) Aimen Dean did not state with certainty that Zawahiri performed eye-surgeries at that hospital, but instead testified that "it was a well-established knowledge and a common knowledge that Ayman al-Zawahiri visited several hospitals around Afghanistan to perform eye surgeries. Some of them might have been performed at Fatima al-Zahra Hospital." Pls. Ex. 159 (Dean Dep. Tr.) at 308:20-309:2. | |

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (3) Even if credited, the provision of eye surgeries at a hospital does not show a connection to Al Qaeda's operations, terrorism financing, or the 9/11 Attacks. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Section XII. | |
| XII. | Section XII: ARB's Disturbing Connections to the 9/11 Hijackers and Support Network (¶¶ 489 – 508) | XII. (heading)<br><br>Disputed as conclusory; unsupported by the evidence:<br><br>(1) This section heading is an unsupported legal conclusion to which no response is required.<br><br>(2) Plaintiffs' reference to "disturbing connections" is inflammatory, vague, conclusory, and unsupported by the evidence.<br><br>(3) Plaintiffs' reference to "support network" is vague, conclusory, and unsupported by the evidence.<br><br>(4) Plaintiffs have no evidence that any Al Rajhi Bank officer or director or Al Rajhi family member had any relationship with members of Al Qaeda or the 9/11 hijackers.<br><br>(5) To the extent Plaintiffs imply that Al Rajhi Bank had "connections to the 9/11 hijackers and support network" via Towayan al Towayan, this is controverted by the evidence.<br><br>- The evidence shows that Towayan did not cross paths with the hijackers in San Diego. The FBI's full reporting, along with the 9/11 Commission Report, makes clear that Towayan did not arrive at the San Diego apartment complex until after the hijackers had left. *See* Pls. Ex. 209 (FBI Rep.) at EO14040-002858-EO14040-002859 (describing rental records that show Towayan lived in San Diego apartment complex beginning April 6, 2001); ARB Ex. 11 (FBI Rep.) at EO14040-002209 (rental records showing that al Qaeda operatives Mihdar and Hazmi vacated Parkwood Apartments in May 2000); *id.* ("No records have been found that confirm Hanjour's presence at the apartment complex."); Pls. Ex. 40 (9/11 Comm'n Rep.) at 220 (stating that Mihdar moved back to Yemen on June 9, 2000); *id.* at 223-27 (explaining that after Hanjour's Dec. 8, | |

2000 arrival, "Hazmi and Hanjour left San Diego almost immediately and drove to Arizona," and they then arrived in Falls Church, Virginia on April 4, 2001, two days *before* Towayan arrived in San Diego). Plaintiffs' averments about Towayan ignore that "the FBI's investigation has not revealed any evidence that any person in the United States knowingly provided any funding to the hijackers," and "[e]xtensive investigation" by the 9/11 Commission staff "revealed nothing to the contrary." Pls. Ex. 44 (Staff Monograph) at 138.

- The Bank approved Towayan's request for full-time, six-month leave to study English, on the express condition "that all expenses including travel, housing, living expenses, and study are at his personal expense." ARB Ex. 6 (Approval of Towayan's Request for Leave) at ARB-40369. Neither his request nor the approval of his request even mentions the United States. *Id.* He thus was not "sent" to the United States by the Bank, nor was he acting in his capacity as a Bank employee while he was in the United States.

- Towayan was never designated or otherwise sanctioned by the United States or the United Nations, and the FBI concluded its investigation without charging Towayan. *See* ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO1404-00011 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged").

(6) To the extent Plaintiffs imply that Al Rajhi Bank had "connections to the 9/11 hijackers and support network" via Saleh Al Hussayen, this is controverted by the evidence.

- The evidence shows that Hussayen, a former unpaid advisor on the Bank's Shariah Board, had no role at the Bank after 1999. *See* ARB Ex. 46 (ARB Dec. 17, 2021 Ltr. to Pls.) at 3; ARB Ex. 47 (Jan. 14, 2022 Ltr. to Pls.) at 3-4.

- Moreover, Plaintiffs do not put forward any evidence showing that Hussayen had any connection to the hijackers.

- Hussayen had no position or affiliation with Al Rajhi Bank after 1999 and neither the Bank nor any of its officers would have had any knowledge of Hussayen's September 2001 trip, much less any role in facilitating his travel. *See* ARB Ex. 46 (ARB Dec. 17, 2021 Ltr. to Pls.) at 3; ARB Ex. 47 (Jan. 14, 2022 Ltr. to Pls.) at 3-4.

- Hussayen was never designated or charged in connection with terrorism by the United States, United Nations, or any other governmental entity and the FBI concluded its investigation without charging Hussayen. *See* ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO1404-00011 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged").

(7) At bottom, Plaintiffs aver that: (1) Towayan, an employee on leave from the Bank, lived at an apartment complex where, a year earlier, two of the hijackers had apparently lived; and (2) sometime in September 2001, a former unpaid advisor to the Bank, who had no role at the Bank after 1999, stayed at the same hotel as one of the hijackers. Plaintiffs do not aver that either individual had any contact with any hijacker, much less provided any support to any hijacker, for the 9/11 Attacks or otherwise. Even if Plaintiffs could show that any such contacts occurred, Plaintiffs still do not aver that the Bank knew, intended, or directed any contact between either Towayan or Hussayen and any hijackers.

Immaterial:

Plaintiffs' averments in Section XII are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States.

(1) The averments in Section XII, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing,

planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its officers or directors supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States.

(2) The averments in this section identify attenuated and unsupported chains of so-called "connections" between "ARB and its founder" and "persons," who were in turn in "contact" with 9/11 hijackers and "support network." Even if such connections are credited, they do not show that Al Rajhi Bank took any tortious acts related to Al Qaeda, the 9/11 Attacks, or terrorism against the United States.

- Plaintiffs' averments about Towayan al Towayan do not show that the Bank aimed any intentional, tortious conduct at the United States for the reasons discussed immediately above. Namely, the Bank did not send Towayan to the United States and Towayan was not acting in his capacity as a Bank employee while he was in the United States. Plaintiffs do not aver that the Bank directed Towayan to contact the hijackers or their "support network," or that the Bank even knew of any contacts Towayan may have had in the United States. Nor do Plaintiffs aver that Towayan provided any support to the hijackers, much less any support received from or directed by the Bank. Towayan was never designated or otherwise sanctioned by the United States or the United Nations, and the FBI concluded its investigation without charging Towayan. *See* ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO1404-00011 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged").

<table>
<tr>
<td></td>
<td></td>
<td>

- Plaintiffs' averments about Saleh al Hussayen do not show that the Bank aimed any intentional, tortious conduct at the United States for the reasons discussed immediately above. Namely, even if credited, the averments regarding the actions of Saleh al Hussayen cannot be imputed to the bank because Hussayen was never a paid employee or official of the Bank, and he had no role at the Bank at all after 1999. *See* ARB Ex. 46 (ARB Dec. 17, 2021 Ltr. to Pls.) at 3; ARB Ex. 47 (Jan. 14, 2022 Ltr. to Pls.) at 3-4. The Bank had no role in his September 2001 travel. *See* ARB Ex. 46 (ARB Dec. 17, 2021 Ltr. to Pls.) at 3; ARB Ex. 47 (Jan. 14, 2022 Ltr. to Pls.) at 3-4. Plaintiffs do not establish that Hussayen had any contact with, or provided any support to, the 9/11 hijackers. Hussayen was never designated or charged in connection with terrorism by the United States, United Nations, or any other governmental entity and the FBI concluded its investigation without charging Hussayen. *See* ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO1404-00011 (stating that "[a]fter nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged").

(3) Plaintiffs' averments about the Sulaiman Abdulaziz al Rajhi Charitable Foundation and the SAAR Foundation are immaterial for the reasons discussed in Section IV.

</td>
<td></td>
</tr>
<tr>
<td>489</td>
<td>

The FBI's investigations into the support network for the September 11th hijackers and limited discovery of ARB have revealed disturbing connections between ARB and its Founder and Chairman, Suleiman al Rajhi, and persons in close contact with the September 11th hijackers and support network.

</td>
<td>

489.

Immaterial for the reasons stated above in response to Section XII (heading).

Disputed as conclusory, vague, and unsupported by the evidence:

(1) Plaintiffs' references to "support network," "disturbing connections," and "persons in close contact" are vague, conclusory, and unsupported by evidence.

(2) Plaintiffs' reference to purported "connections" between the Bank and Sulaiman bin Abdulaziz Rajhi and "persons in close contact with" the September 11th hijackers and "support network" are

</td>
<td></td>
</tr>
</table>

| | | | |
|---|---|---|---|
| | | conclusory. Plaintiffs do not aver facts to support their assertion that any such connections exist or that any such "close contact" occurred.<br><br>Disputed as misleading:<br><br>(1) Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments and heading in Section III.<br><br>(2) In particular, disputed to the extent Plaintiffs' averment implies that jurisdictional discovery into Towayan and Hussayen was somehow deficient. In fact, the Court granted each of Plaintiffs' three requests for documents relating to Hussayen, *see* Order 16-17 (Nov. 22, 2021), ECF No. 7378 and each of Plaintiffs' five requests for documents relating to Towayan, *see* Order 16 (July 11, 2023), ECF No. 9210. The Bank's Rule 30(b)(6) representative was also prepared to answer questions on Plaintiffs' noticed topics concerning Towayan and Hussayen. *See* Ltr. 1 (May 10, 2023), ECF No. 9079; *see also* Mot. for Prot. Order Ex. 1 at Topics 16, 35. | |
| 490 | According to the FBI, an ARB employee named Towayan al Towayan "had significant direct and indirect contacts with several subjects and active participants in the World Trade Center (WTC) attacks," including Omar al Bayoumi and hijacker Hani Hanjour. *See* Ex. 160, FBI Report, September 27, 2001, EO14040-002857-2863 at 2857. *See also* Ex. 209, FBI Report, September 27, 2001, EO14040-002857-2863-MDL at 2857; Ex. 208, Kohlmann Report (FBI | 490.<br><br>Immaterial for the reasons stated above in response to Section XII (heading).<br><br>Disputed as conclusory; unsupported by evidence:<br><br>(1) Plaintiffs' characterization of al Bayoumi as an "active participant[]" in the 9/11 attacks is conclusory and unsupported.<br><br>(2) Plaintiffs' Exhibit 160, even if admissible, identifies several hijackers and other individuals, but does not characterize Bayoumi as an "active participant" in 9/11.<br><br>(3) Plaintiffs' reference to "significant direct and indirect contacts" is vague and conclusory. | 490.<br><br>Pls. Ex. 209:<br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, hearsay within hearsay. *See* Fed. R. Evid 802.<br><br>Pls. Ex. 208:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies (e.g., Kane Aff., NL docs, |

| Protected Information Version) at 10-11. | <u>Disputed as controverted by the evidence; incomplete:</u> | Golden Chain). *See* Fed. R. Evid. 802. |
|---|---|---|
| | (1) To the extent Plaintiffs attempt to suggest guilt-by-association through a relationship between Bayoumi and Towayan, this is controverted by the FBI's comprehensive *re*-investigation over twelve years — 2007 – 2016 and 2019 – 2020, (*see* ARB Ex. 7, May 27, 2021 FBI Electronic Comm. at EO14040-000008-EO14040-000009) — which did not find Bayoumi culpable of all evidence collected by U.S. government agencies. The FBI ultimately concluded that insufficient evidence existed to prosecute Bayoumi "for wittingly conspiring to assist the AQ hijackers in furtherance of the 9/11 attack," noting that this "is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-000010- EO14040-000011. | - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability on the basis of guilt-by-association and for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br><u>Pls. Ex. 160</u>:<br><br>- Hearsay to which no exception applies given redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid 802. |
| | (2) Plaintiffs' description of Towayan as "an ARB employee" is incomplete and misleading. While apparently in the United States, Towayan was on a leave of absence from his role at ARB. The Bank approved Towayan's request for full-time, six-month leave to study English, on the express condition "that all expenses including travel, housing, living expenses, and study are at his personal expense." ARB Ex. 6 (Approval of Towayan's Request for Leave) at ARB-40369. Neither the request for Towayan's leave nor the Bank's approval even mention the United States. ARB Ex. 6 (Approval of Towayan's Request for Leave) at ARB-40369. | |
| | (3) Plaintiffs' averment that Towayan had contacts with Hani Hanjour is controverted by the evidence, which shows that Towayan did not cross paths with the hijackers in San Diego. The FBI's full reporting, along with the 9/11 Commission Report, make clear that Towayan did not arrive at the San Diego apartment complex until after the hijackers had left. *See* ARB Ex. 11 (FBI Rep.) at EO14040-002209 (rental records showing that al Qaeda operatives | |

<table>
<tr>
<td></td>
<td></td>
<td>

Mihdar and Hazmi vacated Parkwood Apartments in May 2000); *id.* ("No records have been found that confirm Hanjour's presence at the apartment complex."); Pls. Ex. 40 (9/11 Comm'n. Rep.) at 220 (stating that Mihdar moved back to Yemen on June 9, 2000); *id.* at 223-27 (explaining that after Hanjour's Dec. 8, 2000 arrival, "Hazmi and Hanjour left San Diego almost immediately and drove to Arizona," and they then arrived in Falls Church, Virginia on April 4, 2001, two days *before* Towayan arrived in San Diego).

(4) Plaintiffs' averment ignores that "the FBI's investigation has not revealed any evidence that any person in the United States knowingly provided any funding to the hijackers," and "[e]xtensive investigation" by the 9/11 Commission staff "revealed nothing to the contrary." Pls. Ex. 44 (Staff Monograph) at 138.

</td>
<td></td>
</tr>
<tr>
<td>491</td>
<td>

Nominally, Towayan was sent to the United States to study English, pursuant to an August 6, 2000 recommendation of Mohamed bin Saud al Osaimi, the Director of ARB's Shariah Supervision Division and a member of the ARB Shariah Board. *See* Ex. 161, ARB 40369.

</td>
<td>

491.

<u>Immaterial for the reasons discussed above in response to Section XII (heading).</u>

<u>Disputed as controverted by the evidence:</u>

(1) Plaintiffs' averment is controverted by the evidence to the extent Plaintiffs aver that Towayan's travel was only "[n]ominally" for English study but in fact was for some other purpose. The evidence does not show any other purpose for Towayan's travel to the United States other than to study English. The letter from the Director of the Sharia Supervision Division refers to the Towayan's request for leave "*to study English,*" and no other purpose. ARB Ex. 6 (Approval of Towayan's Request for Leave) (emphasis added) at ARB-40369. The letter also refers to the Director's request that the Assistant General Director of the Shariah Supervision Division would "approve the release of Brother Towayan bin Abdullah al Towayan *to study English,*" and no other purpose. *Id.* (emphases added).

(2) Plaintiffs' averment is further controverted by the evidence to the extent Plaintiffs aver that the Bank "sent" Towayan "to the United States," or anywhere. Plaintiffs cite no evidence that Towayan

</td>
<td></td>
</tr>
</table>

| | | | |
|---|---|---|---|
| | | "was sent" by anyone, much less by the Bank.  The letter from the Director of the Sharia Supervision Division that is Plaintiffs' only cited evidence indicates that it was the "request[] of Brother Towayan bin Abdullah Towayan […] to study English."  *See* ARB Ex. 6 (Approval of Towayan's Request for Leave) at ARB-40369. The Bank approved Towayan's request for full-time, six-month leave to study English, on the express condition "that all costs related to travel, accommodation, living, and study are at his personal expense."  *Id.*  Neither his request nor the approval of his request even mention the United States. *Id.*  He thus was not "sent" to the United States by the Bank. | |
| 492 | The study period was designated to begin just three weeks later, "from the beginning of September." *Id.* | 492.<br><br>Immaterial for the reasons discussed above in response to Section XII (heading).<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs' averment suggests that the study period was "designated" *by the Bank*, the evidence contravenes that suggestion. The letter from the Director of the Sharia Supervision Division is unambiguous that the study was requested by Mr. Towayan, supported by the Director of the Sharia Supervision Division, and approved by the Bank — not "designated" by the Bank.  *See* ARB Ex. 6 (Approval of Towayan's Request for Leave) at ARB-40369. | |
| 493 | The ARB administrator who approved the deployment did so on condition that "all costs related to travel, accommodation, living, and study are at his personal expense," *id.*, but a series of unusual financial transactions between Towayan and Osaimi indicate a different arrangement. | 493.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XII (heading).<br><br>(2) In particular, Plaintiffs provide no evidence that the Bank knew about the apparent loans from Osaimi's personal funds to Towayan, much less that the funds were used to support the hijackers or terrorism.<br><br>Disputed as conclusory, controverted by the evidence, and misleading: | |

| | | | |
|---|---|---|---|
| | | (1) Plaintiffs' characterization of financial transactions as "unusual" is conclusory, vague, and unsupported. | |
| | | (2) Plaintiffs' reference to "a different arrangement" is conclusory, vague, and unsupported. | |
| | | (3) Plaintiff's averment is controverted by the evidence to the extent Plaintiffs' use of the term" deployment" implies that the Bank "deploy[ed]" Towayan to the United States. Plaintiffs cite no evidence that Towayan was "deploy[ed]" by anyone, much less by the Bank. The letter from the Director of the Sharia Supervision Division that is Plaintiffs' only cited evidence indicates that it was the "request[] of Brother Towayan bin Abdullah Towayan […] to study English." *See* ARB Ex. 6 (Approval of Towayan's Request for Leave) at ARB-40369. The Bank approved Towayan's request for full-time, six-month leave to study English, on the express condition "that all expenses including travel, accommodation, living expenses, and study are at his personal expense." *Id*. Neither his request nor the approval of his request even mention the United States. *Id*. He thus was not "deploy[ed]" by the Bank to the United States. | |
| | | (4) Plaintiffs' averment is misleading and controverted by the evidence to the extent Plaintiffs imply that the apparent loans from Osaimi's personal account somehow "indicate" that the Bank paid for Towayan's "costs related to travel, accommodation, living, and study." Plaintiffs put forward no evidence that the Bank knew about or directed these loans from Osaimi's personal account. The statements of accounts of Towayan and Osaimi establish that the loans were repaid, and that the pattern of borrowing and repaying money both predated and continued after Towayan's travel to the United States. ARB Exs. 48, 49 (Osaimi statements of account); Pls. Exs. 162, 163 (Towayan statements of account). | |
| 494 | The day following approval of the study request, Osaimi transferred 100,000 SR into Towayan's ARB account, and Towayan then | 494. <br><br> Immaterial: | |

| | | | |
|---|---|---|---|
| | withdrew the entire amount the following day. *See* Ex. 162, ARB 42189-42216 at 42194. These transaction were suspicious on several levels, given the amount of money in issue and its immediate withdrawal. | (1) Immaterial for the reasons discussed above in response to Section XII (heading).<br><br>(2) In particular, Plaintiffs provide no evidence that the Bank knew about the apparent loans from Osaimi's personal funds to Towayan, much less that the funds were used to support the hijackers or terrorism.<br><br><u>Disputed as conclusory; controverted by the evidence:</u><br><br>(1) Plaintiffs' characterization of the transaction as "suspicious on several levels" is conclusory and unsupported. Plaintiffs cite no evidence or any other basis to demonstrate that the referenced transactions were "suspicious" because of the "amount of money in issue" or the "immediate withdrawal" of the amount received by Towayan.<br><br>(2) Plaintiffs' conclusory averment that the transaction is "suspicious" is controverted by the statements of accounts of Towayan and Osaimi, which establish that the loans were repaid, and that the pattern of borrowing and repaying money both predated and continued after Towayan's travel to the United States. ARB Exs. 48, 49 (Osaimi statements of account); Pls. Ex. 162, 163 (Towayan statements of account). | |
| 495 | Towayan had received a separate 90,000 SR transfer from Osaimi a few weeks earlier, into a different account, which he then transferred immediately back to Osaimi four days later, another suspicious set of transactions. *See* Ex. 163, ARB 42217-42218 at 42217. | 495.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section XII (heading).<br><br>(2) In particular, Plaintiffs provide no evidence that the Bank knew about the apparent loans from Osaimi's personal funds to Towayan, much less that the funds were used to support the hijackers or terrorism.<br><br><u>Disputed as conclusory; controverted by the evidence:</u><br><br>(1) Plaintiffs' characterization of the set of transactions as "suspicious" is conclusory and unsupported. Plaintiffs cite no | |

| | | | |
|---|---|---|---|
| | | evidence or any other basis for finding that the referenced transactions were "suspicious." | |
| | | (2) Plaintiffs' conclusory averment that the transaction is "suspicious" is controverted by the statements of accounts of Towayan and Osaimi, which establish that the loans were repaid, and that the pattern of borrowing and repaying money both predated and continued after Towayan's travel to the United States.  ARB Exs. 48, 49 (Osaimi statements of account); Pls. Ex. 162, 163 (Towayan statements of account). | |
| 496 | Osaimi made a final 200,000 SR transfer to Towayan in June 13, 2002, which Towayan distributed to an unknown recipient via a payment order the same day. Once again, these transactions bore red flags for money laundering.  *See* Ex. 162, ARB 42189-42216 at 42211. | 496.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XII (heading).<br><br>(2) In particular, Plaintiffs provide no evidence that the Bank knew about the apparent loans from Osaimi's personal funds to Towayan, much less that the funds were used to support the hijackers or terrorism.<br><br>Disputed as conclusory; controverted by the evidence:<br><br>(1) Plaintiffs' assertion that "these transactions bore red flags for money laundering" is conclusory.  Plaintiffs cite no evidence or any other basis for finding that the referenced transactions "bore red flags for money laundering."<br><br>(2) Plaintiffs' conclusory averment that the transactions "bore red flags for money laundering" is controverted by the statements of accounts of Towayan and Osaimi, which establish that the loans were repaid, and that the pattern of borrowing and repaying money both predated and continued after Towayan's travel to the United States.  ARB Exs. 48, 49 (Osaimi statements of account); Pls. Exs. 162, 163 (Towayan statements of account). | |
| 497 | Towayan apparently spent time in Oregon after arriving in the United States, residing at a location in | 497.<br><br>Immaterial: | 497.<br><br>Pls. Ex. 160: |

| | | |
|---|---|---|
| close proximity to the Oregon offices of AHIF. A witness interviewed by the FBI reported that he had a conversation with Towayan during this time, during which "Al- Towayan advised that the U.S. will never catch Bin Laden and that he would support the 'holy war' if it occurred. Al-Towayan stated that if this war became imminent, he would get on the next flight home and fight alongside his people..." *See* Ex. 160, FBI Report, September 27, 2001, EO14040-002857-2862 at 2861. | (1) Immaterial for the reasons discussed above in response to Section XII (heading).<br><br>(2) Plaintiffs' averments with respect to Al Haramain are immaterial for the reasons discussed in Section V (heading). In particular, Plaintiffs' averments in this relating to Al Haramain Oregon are immaterial where the Bank did not hold accounts or provide services to the Oregon offices of Al Haramain.<br><br>(3) Plaintiffs' averment that Towayan "resid[ed] at a location in close proximity to the Oregon offices of AHIF" is particularly immaterial, as Plaintiffs do not aver that he had any contact with Al Haramain whatsoever, much less that the Bank intended or directed him to have such contact or live in such "proximity."<br><br><u>Disputed as vague, conclusory, unsupported, misleading, incomplete:</u><br><br>(1) Plaintiffs' averment that Towayan "apparently spent time" at a "location in close proximity to the Oregon offices of AHIF" is conclusory, unsupported, and vague.<br><br>(2) Further, Plaintiffs' averment is disputed as unsupported and misleading to the extent Plaintiffs imply that Towayan had any connection to the Oregon offices of Haramain. Plaintiffs do not aver that he had any such contacts at all, much less that the Bank intended or directed Towayan to have such contact or live in such "proximity." Plaintiffs' attempt to establish Towayan's guilt-by-geographical "proximity" is particularly egregious.<br><br>(3) Plaintiffs omit the statement, made by the same witness Plaintiffs quote, that "Al-Towayan did not support terrorism." Pls. Ex. 160 (FBI Rep.) at EO14040-002861. | - Hearsay to which no exception applies given lack of sourcing, redactions, hearsay within hearsay. *See* Fed. R. Evid 802. |
| 498 | Towayan's whereabouts for the next several months are unclear, but he arrived in San Diego in approximately early 2001, moving into the same apartment complex where Omar al Bayoumi lived and where hijackers Nawaf al Hazmi | 498.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section XII (heading).<br><br>(2) Plaintiffs' averment that Towayan moved into the same apartment complex where Omar al Bayoumi lived and where hijackers Nawaf | 498.<br><br><u>Pls. Ex. 209:</u><br><br>- Hearsay to which no exception applies given heavy redactions, lack of sourcing, |

| | | |
|---|---|---|
| and Khalid al Mihdhar had resided the prior year. See Ex. 209, FBI Report, September 27, 2001, EO14040-002857-2863-MDL at 2858. | al Hazmi and Khalid al Mihdhar had resided the prior year, if proven, could not show or make it more probable that the Bank expressly aimed intentional support for terrorist attacks against the United States, or that Plaintiffs' injuries arose from such conduct. Such statements do not show that Towayan had any role in planning, funding, or otherwise facilitating the 9/11 Attacks, and certainly do not show any intentional, tortious acts by Al Rajhi Bank. Plaintiffs do not aver that the Bank knew, intended, or directed that Towayan live in this complex, or that the Bank knew that Bayoumi lived there in 2001, much less that the Bank knew that Hazmi and Mihdhar had lived there "the prior year." | hearsay within hearsay. *See* Fed. R. Evid 802. |

Disputed as controverted by the evidence; incomplete; misleading:

(1) To the extent Plaintiffs attempt to suggest guilt-by-association based on the fact that Bayoumi and Towayan resided in the same apartment complex, this is controverted by the FBI's comprehensive *re*-investigation over twelve years — 2007 – 2016 and 2019 – 2020 (*see* ARB Ex. 7, May 27, 2021 FBI Electronic Comm. at EO14040-000008- EO14040-000009) — which did not find Bayoumi culpable for the 9/11 Attacks. The FBI ultimately concluded that insufficient evidence existed to prosecute Bayoumi "for wittingly conspiring to assist the AQ hijackers in furtherance of the 9/11 attack," noting that this "is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-000010- EO14040-000011.

(2) To the extent Plaintiffs imply that Al Rajhi Bank had "connections to the 9/11 hijackers" based on the fact that Towayan lived in this San Diego Apartment complex, this is controverted by the evidence. As Plaintiffs concede in this averment, and for the reasons discussed in the Bank's response to Section XII (heading), Hazmi and Mihdhar did not live in the complex at the same time as Towayan.

| | | | |
|---|---|---|---|
| | | (3) Plaintiffs' averment that Towayan "arrived in San Diego in approximately *early 2001*, moving into the same apartment complex" as Bayoumi is controverted by the evidence, which shows Towayan did not move into the San Diego apartment complex until April 6, 2001. *See* Pls. Ex. 209 (FBI Rep.) at EO-14040-002858 (describing rental records that show Towayan lived in San Diego apartment complex beginning April 6, 2001). | |
| | | (4) Plaintiffs' averment ignores that "the FBI's investigation has not revealed any evidence that any person in the United States knowingly provided any funding to the hijackers," and "[e]xtensive investigation" by the 9/11 Commission staff "revealed nothing to the contrary." Pls. Ex. 44 (Staff Monograph) at 138. | |
| 499 | Shortly before arriving in San Diego, Towayan received another 100,000 SR payment into one of his accounts at ARB, which he transferred to Osaimi three weeks later. *See* Ex. 163, ARB 42217-42218 at 42217. | 499. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XII (heading). <br><br> (2) In particular, Plaintiffs provide no evidence that the Bank knew about the apparent loans from Osaimi's personal funds to Towayan, much less that the funds were used to support the hijackers or terrorism. Plaintiffs' averment concedes that this apparent loan was repaid to Osaimi, and thus that the funds did not reach Al Qaeda and were not used to finance the 9/11 Attacks. <br><br> (3) Plaintiffs' averment ignores that "the FBI's investigation has not revealed any evidence that any person in the United States knowingly provided any funding to the hijackers," and "[e]xtensive investigation" by the 9/11 Commission staff "revealed nothing to the contrary." Pls. Ex. 44 (Staff Monograph) at 138. | |
| 500 | On June 23, 2001, Bayoumi vacated his apartment in San Diego, and submitted a change of address directing that future mail | 500. <br><br> Immaterial: | 500. <br><br> Pls. Ex. 160: |

| | | | |
|---|---|---|---|
| | deliveries to him be forward to Towayan's apartment. *See* Ex. 160, FBI Report, September 27, 2001, EO14040-002857-2863 at 2858. | (1) Immaterial for the reasons discussed above in response to Section XII (heading).<br><br>(2) In particular, Plaintiffs do not aver that Towayan knew that Bayoumi had submitted a change of address directing that future mail deliveries be forwarded to Towayan's apartment, or that Towayan had agreed to such an agreement.  Nor do Plaintiffs aver that the Bank knew, intended, or directed that such a change-of-address form be submitted.<br><br>(3) Moreover, Plaintiffs do not aver that Towayan in fact *received* any mail deliveries meant for Bayoumi, much less that any such deliveries were ultimately intended for Al Qaeda or had any nexus to the 9/11 attacks.<br><br>Disputed as controverted by the evidence; incomplete; misleading:<br><br>(1) To the extent Plaintiffs attempt to suggest guilt-by-association through a purported mail-forwarding relationship between Bayoumi and Towayan, this is controverted by the FBI's comprehensive *re*-investigation over twelve years — 2007 – 2016 and 2019 – 2020 (*see* ARB Ex. 7, May 27, 2021 FBI Electronic Comm. At EO14040-000008- EO14040-000009) — which did not find Bayoumi culpable of all evidence collected by U.S. government agencies.  The FBI ultimately concluded that insufficient evidence existed to prosecute Bayoumi "for wittingly conspiring to assist the AQ hijackers in furtherance of the 9/11 attack," noting that this "is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-000010- EO14040-000011. | - Hearsay to which no exception applies given redactions, lack of sourcing, and hearsay within hearsay. *See* Fed. R. Evid 802. |
| 501 | A witness interviewed by the FBI reported seeing Towayan with an individual who resembled 9/11 hijacker Hani Hanjour during this | 501.<br><br>Immaterial: | 501.<br><br>Pls. Ex. 160: |

| | | |
|---|---|---|
| time period, moving a desk from Bayoumi's apartment to Towayan's apartment. *See id.* at 2859. | (1) Disputed as immaterial for the reasons discussed above in response to Section XII (heading).<br><br>(2) That a resident of Towayan's apartment may have received a desk previously in the apartment of Bayoumi, and that a person "who resembled" hijacker Hanjour helped move the desk, even if credited, could not show that the Bank expressly aimed intentional support for terrorist attacks against the United States, or that Plaintiffs' injuries arose from such conduct.<br><br>Disputed as controverted by the evidence; incomplete; misleading:<br><br>(1) To the extent Plaintiffs attempt to suggest guilt-by-association through a purported desk-moving relationship between Bayoumi and Towayan, this is controverted by the FBI's comprehensive *re-*investigation over twelve years — 2007 – 2016 and 2019 – 2020 (*see* ARB. Ex. 7, May 27, 2021 FBI Electronic Comm. at EO14040-000008-EO14040-00009) — which did not find Bayoumi culpable of all evidence collected by U.S. government agencies. The FBI ultimately concluded that insufficient evidence existed to prosecute Bayoumi "for wittingly conspiring to assist the AQ hijackers in furtherance of the 9/11 attack," noting that this "is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-000010- EO14040-000011.<br><br>(2) The inference that Hanjour in fact moved a desk from Bayoumi's apartment to Towayan's apartment during this time period — i.e., "June 2001" (*see* Pls. Ex. 160, FBI Rep. at EO14040-002859) — is controverted by the evidence:<br><br>(3) The FBI report that is Plaintiffs' only cited evidence states: "No records have been found that confirm Hanjour's presence at the apartment complex." Pls. Ex. 160 (FBI Rep.) at EO14040-002858.<br><br>(4) The 9/11 Commission Report confirms that Hanjour had already left San Diego long before June 2001. *See* Pls. Ex. 40 (9/11 | - Should be excluded to the extent this exhibit is used as a conduit for hearsay within hearsay. *See* Fed. R. Evid. 802. |

| | | | |
|---|---|---|---|
| | | Comm'n. Rep.) at 226 (confirming that after Hanjour's Dec. 8, 2000 arrival, "Hazmi and Hanjour left San Diego almost immediately and drove to Arizona"); *id.* at 227 (Hanjour and Hanzi arrived in Falls Church, VA on Apr. 4, 2001). | |
| 502 | As noted above, Bayoumi had telephone contacts with Abdul Rahman al Rajhi and Abdullah al Misfer, indicating a relationship with Suleiman al Rajhi's charity committee/foundation. *See* Ex. 4, Winer Report at 103, 104; Ex. 38, Kohlmann Report at 9. | 502. | 502. |

502.

Disputed as ambiguous; vague:

(1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.

Immaterial:

(1) Immaterial for the reasons discussed above in response to Section XII (heading).

(2) In addition, Plaintiffs' averments about the Sulaiman bin Abdulaziz al Rajhi Charitable Foundation and the SAAR Foundation are immaterial for the reasons discussed in response to Section IV (heading).

Disputed as controverted by the evidence; not supported by evidence; conclusory; misleading:

(1) Plaintiffs' reference to a purported "relationship" is vague and unsupported by the evidence. Plaintiffs' averment of a "relationship" is based on two calls: one lasting 25 seconds and the other lasting 12 minutes, and the evidence does not prove that Bayoumi actually made the phone calls. *See* Pls. Ex 4 at 103, n. 347; Pls. Ex. 38 at 9 n. 25.

(2) To the extent Plaintiffs attempt to suggest guilt-by-association through a purported relationship between Bayoumi and Towayan, this is controverted by the FBI's comprehensive *re*-investigation over twelve years — 2007 – 2016 and 2019 – 2020 (*see* ARB. Ex. 7, May 27, 2021 FBI Electronic Comm. at EO14040-000008-EO14040-000009) — which did not find Bayoumi culpable of all

502.

Pls. Ex. 4 at 103-104:

- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802.

- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for attempting to impute liability on the basis of guilt-by-association. *See* Fed. R. Evid. 403.

Pls. Ex. 38 at 9:

- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802.

- Should be excluded under Rule 403 for unfair prejudice, confusing the issues for attempting to impute liability on the basis of guilt-by-association. *See* Fed. R. Evid. 403.

| | | | |
|---|---|---|---|
| | | evidence collected by U.S. government agencies. The FBI ultimately concluded that insufficient evidence existed to prosecute Bayoumi "for wittingly conspiring to assist the AQ hijackers in furtherance of the 9/11 attack," noting that this "is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the Individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Electronic Comm.) at EO14040-000010-EO14040-000011.<br><br>(3) Plaintiffs' averments about Towayan and Bayoumi ignore that "the FBI's investigation has not revealed any evidence that any person in the United States knowingly provided any funding to the hijackers," and "[e]xtensive investigation" by the 9/11 Commission staff "revealed nothing to the contrary." Pls. Ex. 44 (Staff Monograph) at 138. | |
| 503 | Not long after the events involving Towayan, Saleh al Hussayen, the long-time advisor to Suleiman al Rajhi's charity committee/foundation, who previously also served on the Shariah Board of ARB, arrived in the United States to visit the Muslim World League office at 360 S. Washington Street, Falls Church, VA,[1] the World Assembly of Muslim office in Falls Church, VA, including entities associated with the SAAR Foundation. *See* Ex. 164, Susan Schmidt, *Spreading Saudi Fundamentalism in the U.S.*, | 503.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section XII (heading).<br><br>(2) In addition, Plaintiffs' averments about the SAAR Foundation and the Sulaiman bin Abdulaziz Charitable Foundation are immaterial for the reasons discussed in response to Section IV (heading).<br><br>(3) Plaintiffs' averments about the Muslim World League ("MWL") and the World Assembly of Muslim (presumably, World Assembly of Muslim *Youth*) ("WAMY") are immaterial for the reasons discussed in response to Section VIII (heading). In particular, Plaintiffs' averments about MWL and WAMY are immaterial because: | 503.<br><br>Pls. Ex. 164:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice to the extent it uses prejudicial and accusatory rhetoric such as: "Hussayen, who was unavailable for comment, is accused of no wrongdoing. The Purpose of his meetings remains, in fact, a mystery." *See* Fed. R. Evid. 403. |

---

[1]    The IIRO also shared office space at the 360 S. Washington address.

| | | | |
|---|---|---|---|
| Washington Post (October 2, 2003); Ex. 165, Transcript, October 21, 2019 Deposition of Ibrahim Abdullah ("Ibrahim Deposition"), at 207-209 (Ibrahim Abdullah, who served as the head of the WAMY office in Virginia, testified that he met with Hussayen in the U.S. just prior to the September 11th attacks). | (4) Neither entity was ever designated, either before or after 9/11. *See* ARB Aver. ¶¶ 67-68, 74.<br><br>(5) Plaintiffs do not show that the Bank knew, before 9/11, of any purported connection between MWL or WAMY and terrorism.<br><br>(6) Plaintiffs do not trace any transaction through Al Rajhi Bank from WAMY or MWL to terrorism or Al Qaeda, much less the 9/11 Attacks.<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>Disputed as conclusory; unsupported; controverted by the evidence; incomplete; and misleading:<br><br>(1) Conclusory, vague, and unsupported as to "long-time advisor to Suleiman al Rajhi's charity committee/foundation." Plaintiffs do not aver evidence showing that Hussayen was a "long-time advisor" to either the SAAR Foundation or the Sulaiman bin Abdulaziz Charitable Foundation. Plaintiffs do not cite any evidence for this point in this paragraph of their Averment. In paragraph 44, Plaintiffs cite to the deposition of the Bank's Chairman. But the Bank's Chairman did *not* testify that Hussayen was a "long-time advisor to Suleiman al Rajhi's charity committee/foundation," as Plaintiffs aver here, nor did he testify that Hussayen was an "advisor" on the Chairman's father's "committee." To the contrary, when asked by Plaintiffs' counsel if Hussayen "was ever involved with either the charity office or the foundation," the Bank's Chairman answered, "It could be . . . . it could be he worked on one of those committees for a time." When asked specifically if he knew who the members of the committee were, he answered, "No." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 271:12-272:8 and Errata 271:25. | | Pls. Ex. 165:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lack of personal knowledge. *See* Fed. R. Evid. 602. |

<table>
<tr><td></td><td></td><td>

(2) Plaintiffs' reference to "entities associated with the SAAR foundation" is conclusory, vague, unsupported, and contrary to the evidence. Plaintiffs do not point to any evidence showing that Hussayen visited any "entities associated with the SAAR Foundation." Plaintiffs do not show that MWL or WAMY were "entities associated with the SAAR Foundation."

(3) Plaintiffs misrepresent Plaintiffs' Exhibit 164. Plaintiffs' Exhibit 164 reads that according to "sources" Hussayen was "scheduled to visit officials at the Muslim World League," but does not say whether Hussayan did meet with officials of the Muslim World League or whether that was the purpose of the trip. *See* Pls. Ex. 164 (Susan Schmidt, *Spreading Saudi Fundamentalism in the U.S.*, Washington Post (October 2, 2003)) at 3.

</td><td></td></tr>
<tr><td>504</td><td>

The focus of the visit indicates his trip related to the U.S.-based SAAR Foundation's activities.

</td><td>

504.

Immaterial:

(1) Immaterial for the reasons stated above in response to Section XII (heading).

(2) In addition, Plaintiffs' averments about the SAAR Foundation and the Sulaiman bin Abdulaziz Charitable Foundation are immaterial for the reasons discussed in response to Section IV (heading).

Disputed as conclusory; unsupported; controverted by the evidence; incomplete; and misleading:

(1) Plaintiffs cite no evidence to support their conclusion that the "focus of the visit indicates his trip related to the U.S.-based SAAR Foundation's activities."

(2) Plaintiffs' reference to "SAAR Foundation's activities" is conclusory and vague.

(3) Plaintiffs' averment is controverted by Plaintiffs' own evidence and Plaintiffs' own averments. Plaintiffs aver that Hussayen met with officials of WAMY and MWL; even if credited, those meetings do not support an inference that his trip "related to the U.S.-based SAAR Foundation's activities," because Plaintiffs do

</td><td></td></tr>
</table>

| | | | |
|---|---|---|---|
| | | not aver, much less show with supporting evidence, that Hussayen held any meetings with any SAAR Foundation officials or any "entities associated with the SAAR Foundation." Plaintiffs do not aver, much less show with supporting evidence, the MWL or WAMY were "entities associated with the SAAR Foundation." | |
| 505 | On the night before the September 11th attacks, Hussayen suddenly switched hotels, moving to the same hotel where 9/11 hijackers Nawaf al Hazmi, Khalid al Mihdhar, and Hani Hanjour were staying. *See* Ex. 166, Part Four of the Joint Congressional Inquiry Into Intelligence Community Activities Before and After the Terrorist Attacks of September 11, 2001 ("the 28 Pages"), at 430-431. | 505. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons stated above in response to Section XII (heading). <br><br> (2) Even if credited, Plaintiffs' averment that Hussayen stayed at the same hotel as Nawaf al Hazmi, Khalid al Mihdhar, and Hani Hanjour does not show that he had any such knowledge or that he interacted with them, much less that the Bank knew, intended, or directed that he had any such interaction. <br><br> Disputed as controverted by the evidence, incomplete; misleading: <br><br> (1) Plaintiffs misrepresent the evidence in stating that, "*the night before* the September 11th attacks, Hussayen *suddenly switched* hotels, moving to the same hotel where 9/11 hijackers Nawaf al Hazmi, Khalid al Mihdhar, and Hani Hanjour were staying." The FBI report cited by Plaintiffs says no such thing. Instead, it states that "*during September 2001*, an individual named Saleh al-Hussayen *stayed at the same hotel* in Herndon, Virginia where al-Hazmi was staying at the time." *See* Pls. Ex. 166 (Part Four of the Joint Congressional Inquiry Into Intelligence Community Activities Before and After the Terrorist Attacks of Sept. 11, 2001 ("the 28 Pages"), at 430 (emphases added). | |
| 506 | When interviewed by the FBI immediately after, Hussayen claimed not to know the hijackers, by the interviewing agents believed he was being deceptive. *See id.* | 506. <br><br> Immaterial for the reasons stated above in response to Section XII (heading). <br><br> Disputed as conclusory; unsupported: | |

| | | | |
|---|---|---|---|
| | | (1) Plaintiffs' averment that the interview took place "immediately after" is vague, conclusory, and unsupported. The FBI report cited by Plaintiffs does not state when the interview took place. | |
| | | (2) Plaintiffs' averment that the "interviewing agents believed [Hussayen] was being deceptive" is conclusory and unsupported by the evidence. The FBI report states that "agents in the FBI's Washington Field Office believed [Hussayen] was being deceptive," but does not indicate whether the agents purportedly holding that belief were the same agents who interviewed Hussayen. Pls. Ex. 166 ("the 28 Pages") at 431. | |
| 507 | The interview was terminated when Hussayen feigned a seizure. When he was released from the hospital, he fled the United States despite law enforcement efforts to re-interview him. *See id.* at 431. | 507.<br><br>Immaterial for the reasons stated above in response to Section XII (heading).<br><br>Disputed as incomplete and misleading:<br><br>(1) Plaintiffs misrepresent and exaggerate the evidence in stating that "[t]he interview was terminated when Hussayen feigned a seizure." In full, the FBI report states that "[t]he interview was terminated when al-Hussayen *either passed out* or feigned a seizure *requiring medical treatment*." Pls. Ex. 166 ("the 28 Pages") at 431 (emphases added). The document also states that Hussayen was not released from the hospital until "several days later," further undermining Plaintiffs conclusion.<br><br>(2) Plaintiffs further mispresent and exaggerate the evidence in stating that "[w]hen [Hussayen] was released from the hospital, he *fled* the United States." In fact, the FBI report merely states that after being released from the hospital "several days later," Hussayen "managed to depart the United States." Pls. Ex. 166 ("the 28 Pages") at 431. | |
| 508 | This collection of unusual contacts between individuals associated with ARB on the one hand, and the 9/11 hijackers and persons who provided support to them on the | 508.<br><br>Immaterial for the reasons stated above in response to Section XII (heading). | |

| | | |
|---|---|---|
| other, coupled with the unusual financial transactions involving Towayan and ARB's broader connections to terrorism, indicates a connection between ARB and the support network for the hijackers. | (1) At bottom, Plaintiffs aver that: (1) Towayan, an employee on leave from the Bank, lived at an apartment complex where, a *year earlier*, two of the hijackers had apparently lived; and (2) sometime in September 2001, a former unpaid advisor to the Bank, who had no role at the Bank after 1999, stayed at the same hotel as one of the hijackers.  Plaintiffs do not aver that either individual had any contact with any hijacker, much less provided any support to any hijacker, for the 9/11 Attacks or otherwise.  Even if Plaintiffs did aver that any such contacts occurred, Plaintiffs still do not aver that the Bank knew, intended, or directed any contact between either Towayan or Hussayen and any hijackers.<br><br>Disputed as vague, conclusory, unsupported, controverted by the evidence<br><br>(1) This paragraph of Plaintiffs' Averment is entirely conclusory, citing to no evidence, and no response is required.<br><br>(2) Plaintiffs fail to show that Towayan had *any* contacts with the hijackers, much less "unusual contacts."  As discussed above in response to Section XII (heading), the FBI reporting and 9/11 Commission Report make clear that Towayan did *not* cross paths with the hijackers in San Diego.<br><br>(3) As discussed above in the Bank's response to Section XII (heading), Plaintiffs do not show that Hussayen had any contacts with the hijackers, much less "unusual contacts."<br><br>(4) As discussed in response to Section XII (heading), Plaintiffs' averment that Husssayen was "associated with ARB" is controverted by the evidence, because Hussayen was previously an unpaid advisor, but had no role at the Bank at all after 1999.<br><br>(5) Plaintiffs do not show that the apparent loans to Towayan were "unusual," or that they had any connection to terrorism.<br><br>(6) Plaintiffs' averment that the Bank had "broader connections" to terrorism is conclusory and unsupported. | |

|  |  | (7) Plaintiffs' conclusory statement that purported conduct by either Towayan or Hussayen somehow "indicates a connection between ARB and the support network for the hijackers" lacks any support. |  |
|--|--|--|--|

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | **Section XIII.** | |
| XIII. | **ARB Provided Essential and Extensive Assistance to Al Qaeda (¶¶ 509 – 534)** | **XIII. (heading)** <br><br> <u>Disputed as conclusory; not supported by the evidence:</u> <br><br> (1) This section heading is an unsupported legal conclusion to which no response is required. <br><br> (2) Plaintiffs' reference to "essential and extensive assistance" is vague, conclusory, and unsupported by the evidence. <br><br> (3) Plaintiffs' averment that Al Rajhi Bank provided "essential and extensive assistance to Al Qaeda" is inflammatory, unsupported and controverted by the evidence because: <br><br> - In jurisdictional discovery, the Bank produced 508 statements of accounts, including 440 charity customer accounts. *See* Erb Decl. ¶ 5. Plaintiffs have no evidence that any of these account statements shows any transaction that has been traced to Al Qaeda or to the financing, planning, or carrying out of any terrorism or plot of terrorism against the United States, including the 9/11 Attacks. See, e.g., Pls. Aver. §§ X, XI; Pls. Ex. 4 (Winer Report) at § 11. <br><br> - Plaintiffs' averment does not trace a single donation by Al Rajhi Bank, any Al Rajhi Bank officer or director, any Al Rajhi family member, the SAAR Foundation, or the Sulaiman bin Abdulaziz Charitable Foundation to Al Qaeda or the 9/11 Attacks or any other terrorism against the United States. See, e.g., Pls. Aver. § IV; Pls. Ex. 4 (Winer Report) at § 11; *see also* ARB Ex. 4 (Lormel Report) at 32-34 (explaining that the FBI's investigations into the SAAR Foundation, Al Rajhi Bank, and members of the Al Rajhi family found no credible evidence of links to terrorism, and that Plaintiffs' experts allegations as to | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are likewise insufficient to show terrorist finance). | |
| | | - The undisputed evidence establishes that Osama bin Laden's accounts at the Bank were frozen since at least 1994, so the Bank did not provide him any services in the relevant period. *See* Resp. to Pls. Aver. § V (heading). | |
| | | - The undisputed evidence establishes that none of the hijackers who held accounts at the Bank were known extremists before the 9/11 Attacks; the Bank provided them only with routine services; their accounts at the Bank had low balances and scant activity. *See* Resp. to Pls. Aver. § VIII (heading) and ¶ 265. | |
| | | <u>Immaterial:</u> | |
| | | Plaintiffs' averments in Section XIII are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States. | |
| | | (1) The averments in Section XIII, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its officers or directors supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (2) Plaintiffs' averments about the Sulaiman Abdulaziz al Rajhi Charitable Foundation and the SAAR Foundation are immaterial for the reasons discussed in response to Section IV (heading).<br><br>- In particular, Plaintiffs' averments as to Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi are immaterial to support a finding of personal jurisdiction because Plaintiffs have not established any basis to impute either individual's knowledge to the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO).<br><br>(3) Plaintiffs' averments with respect to the so-called "Golden Chain" document are immaterial because:<br><br>- The so-called "Golden Chain" document has been repeatedly debunked, by this Court and others. *See, e.g., In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 817-18 (S.D.N.Y. 2005) (finding document had "serious foundational flaws," concluding that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters"); *United States v. Arnaout*, No. 02 Cr. 892, 2003 WL 255226, at *1-2 (N.D. Ill. Feb. 4, 2003) (rejecting the proffered list as inadmissible hearsay).<br><br>- Moreover, the so-called "Golden Chain" document does not name "Al Rajhi Bank," any Al Rajhi family member, or even the name "Rajhi." The name on the document instead translates to "Raji," which without the " ‿ " is a different | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | name in Arabic. *See* ARB Ex. 54 (ARB's Certified Translation of Pls.' Ex. 81). | |

- Further, the so-called "Golden Chain" document pre-dates the formation of Al Qaeda, and instead relates to desired support for Afghan rebels fighting the Russians in Afghanistan in the late 1980s. ARB Ex. 4 (Lormel Rep.) at 25.

(4) Plaintiffs' averments in Section XIII regarding Al Qaeda's purported "charity fronts" "facilitators" or "donors" show that the Bank provided only routine banking services to the charity and charity-official customers (including Al Haramain KSA, IIRO KSA, WAMY, the Saudi-based Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, Aqil, Mujil, and Buthe) and do not show that the Bank took any intentional, tortious conduct aimed against the United States.

- Plaintiffs' averments with respect to Al Haramain and Al Haramain officials are immaterial for the reasons discussed in response to Section V (heading).

- Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in response to Section V (heading).

- Plaintiffs' averments about the Sulaiman Abdulaziz al Rajhi Charitable Foundation and the SAAR Foundation are immaterial for the reasons discussed in response to Sections IV and X (headings).

(5) Plaintiffs' averment that Al Rajhi Bank was the "bank of choice" for Al Qaeda's fronts and facilitators is immaterial for the reasons stated in response to Section VIII (heading).

(6) Plaintiffs' averments that Al Rajhi Bank violated applicable AML, CFT, and KYC standards are immaterial for the reasons stated in response to Section IX (heading).

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 509 | Through the activities and assistance described above, ARB provided essential and extensive assistance to al Qaeda, in support of its declared targeting of the United States. | 509.<br><br>Immaterial for the reasons discussed above in response to Section XIII (heading) and for the reasons stated in response to Sections VIII (heading), IX (heading), X (heading), XI (heading), and XII (heading).<br><br>Disputed as conclusory; does not cite supporting evidence:<br><br>(1) Plaintiffs' averment is an unsupported legal conclusion to which no response is required.<br><br>Disputed as unsupported by the evidence:<br><br>(1) Plaintiffs do not trace any transaction through any account at Al Rajhi Bank to funding for Al Qaeda.<br><br>(2) Al Rajhi Bank never processed any transaction for any customer that was designated by any government or the United Nations at the time of the transaction. *See* ARB Aver. ¶ 37.<br><br>(3) Al Rajhi Bank never made its charitable donations to any of the charities that Plaintiffs allege were "fronts" for Al Qaeda. *See* ARB Aver. ¶ 102.<br><br>(4) Al Rajhi Bank never gave any support — directly or indirectly — to al Qaeda or to known extremist operatives, never targeted the United States in any way, and never had any knowledge that any of its customers supported al Qaeda. *See* ARB Aver. ¶¶ 38, 105-06. | |
| 510 | As reflected in the 9/11 Commission's findings, CIA assessments, and countless statements of U.S. counterterrorism officials, al Qaeda's strength and global strike capabilities leading up the September 11th attacks were made | 510.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIII (heading) and Section V (heading).<br><br>(2) In addition, immaterial because Plaintiffs do not aver any conduct by the Bank. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | possible by its tremendous fundraising capabilities and the financial network that collected and delivered funds to al Qaeda. | (3) In addition, immaterial because, even if credited, Plaintiffs do not show that any transaction through any account at Al Rajhi Bank went to funding for Al Qaeda.<br><br>(4) In addition, immaterial because the 9/11 Commission Report does not mention Al Rajhi Bank.<br><br>(5) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(6) In addition, immaterial because the United States government has never sanctioned or taken any other action against Al Rajhi Bank or any Al Rajhi family member for involvement in terrorist financing. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15, 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>Disputed as vague; does not cite supporting evidence:<br><br>(1) Plaintiffs' references to "tremendous fundraising capabilities" and "financial network" are vague.<br><br>(2) Further, aside from vaguely referencing the "9/11 Commission's findings, CIA assessments, and countless statements of U.S. counterterrorism officials," Plaintiffs cite no specific evidence to support their allegations in this paragraph. | |
| 511 | This funding, to the tune of $30 million per year, enabled al Qaeda to sustain its relationship with the Taliban and safe haven in Afghanistan; fund jihad camps to train, house, and indoctrinate terrorist operatives; pay salaries to and fund needs of al Qaeda | 511.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIII (heading) and Section V (heading).<br><br>(2) In addition, immaterial because Plaintiffs do not aver any conduct by the Bank. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | members; develop and test plots; fund travel of operatives carrying out those plots and attacks; support like-minded terrorist organizations, thereby expanding al Qaeda's own reach and strike capabilities; and support myriad other activities essential to its unwavering efforts to attack the United States. | (3) In addition, immaterial because, even if credited, Plaintiffs do not show that any transaction through any account at Al Rajhi Bank went to funding for Al Qaeda. <br><br> <u>Disputed as conclusory; not supported by evidence:</u> <br><br> (1) Plaintiffs cite to no evidence supporting any of the statements and characterizations made in this paragraph. | |
| 512 | These funds were provided principally by donors (primarily in the Gulf) who supported al Qaeda's global jihad, well-placed financial facilitators who raised funds for al Qaeda, and diversions of funds by Islamic charities that supported al Qaeda's cause. *See supra* at ^ 64. | 512. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section XIII (heading) and Section V (heading). <br><br> (2) In addition, immaterial because Plaintiffs do not aver any conduct by the Bank. <br><br> (3) In particular, Plaintiffs' reference to donors "primarily in the Gulf," even if credited, does not show that Al Rajhi Bank assisted Al Qaeda. Plaintiffs do not show that any transaction through any account at Al Rajhi Bank went to funding for Al Qaeda. <br><br> Disputed as vague: <br><br> (1) Plaintiffs' references to "financial facilitators" and "Islamic charities" are vague. | |
| 513 | As noted previously, this financial network included the key donors comprising al Qaeda's "Golden Chain," among them Suleiman al Rajhi. *See supra* at ^ 65. | 513. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section XIII (heading) and Section V (heading). | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) In particular, even if credited, to the extent Plaintiffs contend that the personal charitable donations of Sulaiman bin Abdulaziz Al Rajhi were made with knowledge of charities' alleged connection to terrorism (a point which Plaintiffs do not establish), such averments are immaterial, as Plaintiffs may not impute a chairman or senior official's knowledge onto the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). | |
| | | (3) Plaintiffs' averments with respect to the so-called "Golden Chain" document are immaterial because: | |
| | | - The so-called "Golden Chain" document has been repeatedly debunked, by this Court and others. *See, e.g., In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 817-18 (S.D.N.Y. 2005) (finding document had "serious foundational flaws," concluding that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters"); *United States v. Arnaout*, No. 02 Cr. 892, 2003 WL 255226, at *1-2 (N.D. Ill. Feb. 4, 2003) (rejecting the proffered list as inadmissible hearsay). | |
| | | - Moreover, the so-called "Golden Chain" document does not name "Al Rajhi Bank," any Al Rajhi family member, or even the name "Rajhi." The name on the document instead translates simply to "Raji," which without the " ﺡ " is a different name in Arabic. *See* ARB Ex. 54 (ARB's Certified Translation of Pls.' Ex. 81). | |
| | | - Further, the so-called "Golden Chain" document pre-dates the formation of Al Qaeda, and instead relates to desired support | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | for Afghan rebels fighting the Russians in Afghanistan in the late 1980s. *See* ARB Ex. 4 (Lormel Rep.) at 25.<br><br>Disputed as conclusory; lacking supporting evidence:<br><br>(1) Plaintiffs do not cite evidence connecting Sulaiman bin Abdulaziz Al Rajhi to the purported "Golden Chain."<br><br>Disputed as incomplete; unsupported by the evidence:<br><br>(1) Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi contributed to Al Qaeda is unsupported by the evidence. Plaintiffs fail to mention the fact that the United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi or any Al Rajhi family member for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15, 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>(2) No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing. *See* ARB Aver. ¶ 123.<br><br>(2) Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), cert denied 134 S. Ct. 2870 (2014). | |
| 514 | For many years leading up to 9/11, ARB was the bank of choice for al Qaeda's most important charity fronts and financial facilitators, including AHIF, IIRO, Suleiman | 514.<br><br>Immaterial: | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | al Rajhi's own charity/committee, and officials of those enterprises. *See supra* at 204-205. | (1) Immaterial for the reasons discussed above in response to Section XIII (heading) and Section VIII (heading). <br><br> (2) In addition, immaterial because Plaintiffs' averment shows that the Bank provided only routine banking services to the charity and charity-official customers and does not support the conclusion that the Bank took any intentional, tortious conduct aimed against the United States. <br><br>   - Plaintiffs' statement with respect to Al Haramain and Al Haramain officials is immaterial for the reasons discussed in response to Section V (heading). <br><br>   - Plaintiffs' statement with respect to IIRO and IIRO officials is immaterial for the reasons discussed in response to Section V (heading). <br><br>   - Plaintiffs' statements about the Sulaiman Abdulaziz al Rajhi Charitable Foundation and the SAAR Foundation are immaterial for the reasons discussed in response to Section IV (heading). <br><br> (3) While not the subject of discovery, Plaintiffs' averments as to other purported "charity fronts" are immaterial because no charity identified in Plaintiffs' Averment was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* ARB Aver. ¶ 40; *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."). <br><br> <u>Disputed as conclusory; vague; unsupported by the evidence.</u> <br><br> (1) Plaintiffs' use of the phrase "bank of choice" is vague, conclusory, and unsupported by the evidence, as discussed in response to Section VIII (heading). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (2) Plaintiffs' reference to "financial facilitators" is vague and unsupported. | |
| | | (3) Plaintiffs' reference to "al Qaeda's most important charity fronts and financial facilitators" is vague, and Plaintiffs cite no evidence supporting their characterization of "most important." | |
| | | (4) Plaintiffs have no evidence that Al Rajhi Bank knew or should have known that any customer of the Bank was a purported "front" for Al Qaeda before the 9/11 Attacks. | |
| | | (5) Plaintiffs' reference to "charity/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. | |
| 515 | The evidence documents that ARB maintained at least 94 accounts for AHIF and at least 287 accounts for IIRO in the five year period of January 1, 1998-December 31, 2002. More than five billion Saudi riyals moved into and out of these accounts-some $660 million annually, amounting to more than $130 million per year in 2000 dollars, equivalent to about $230 million per year in 2023 dollars. *See supra* at 206-207, 213. | 515.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIII (heading) and Sections V, VIII, and IX (headings).<br><br>(2) In particular, the number of accounts held by Al Haramain and IIRO are immaterial to because they do not show any intentional tortious conduct by the Bank aimed at the United States.<br><br>(3) In addition, of the "more than $130 million per year in 2000 dollars" averred in this paragraph, Plaintiffs' Averment does not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(4) Plaintiffs' reference to the figure in 2023 U.S. dollars is immaterial, as the relevant period is 1998-2002. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Disputed as controverted by the evidence, misleading, and incomplete: | |
| | | (1) Plaintiffs' references to "AHIF" and IIRO are misleading to the extent that Plaintiffs refer to the entire Al Haramain or IIRO organizations, including branches outside of Saudi Arabia, because only those charities' Saudi headquarters ("Al Haramain KSA" and "IIRO-KSA") had accounts at Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. | |
| | | (2) The Bank understood the different charity accounts to be dedicated to different charitable projects, and at the time, SAMA did not prohibit the number of accounts a charity could hold. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 82:2-8 and Errata at 82:2; *see also* ARB Ex. 2 (Hobayb Rep.) at 24-25. | |
| 516 | The accounts at ARB were the principal vehicle AHIF and IIRO used to distribute funds throughout the world, and necessarily operated those charities primary vehicles to distribute funds to al Qaeda and finance operations of branch offices supporting al Qaeda. *See supra* at *'*' 212-217. | 516. <br><br> Disputed as immaterial for the reasons discussed above in response to Sections XIII, Sections V, VIII, and IX (headings). <br><br> Disputed as conclusory; unsupported by the evidence: <br><br> (1) Plaintiffs' averment that the Al Haramain and IIRO's accounts at Al Rajhi Bank were "those charities['] primary vehicles to distribute funds to al Qaeda and finance operations of branch offices supporting al Qaeda" is conclusory and unsupported by the evidence cited. <br><br> (2) Plaintiffs cite no evidence to show that accounts at Al Rajhi Bank "were the principal vehicle "AHIF and IIRO" used to distribute funds throughout the world." Al Rajhi Bank did not even hold accounts for any of Al Haramain and IIRO's branches. <br><br> - Only Al Haramain KSA and IIRO had accounts at Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Plaintiffs' Averment does not show that a single transaction from Al Haramain KSA or IIRO KSA's accounts at Al Rajhi Bank reached Al Qaeda or was used for the 9/11 Attacks. *See generally* Pls. Aver. | |
| 517 | The evidence documents that ARB also maintained 116 accounts for WAMY from 1992-2002, indicating that ARB also served as WAMY's principal bank and vehicle for moving funds, while WAMY was also serving as a key conduit for support to al Qaeda. *See supra* at ^ 219. | 517. <br><br> <u>Disputed as immaterial for the reasons discussed above in response to Sections XIII, V, VIII, and IX (headings):</u> <br><br> (1) In particular, even if credited, Plaintiffs do not show that Al Rajhi Bank knew or had any reason to know before the 9/11 Attacks of WAMY's purported "support to al Qaeda." *See* ARB Aver. ¶ 71. This averment shows only routine banking services. <br><br> <u>Disputed as conclusory; does not cite to supporting evidence:</u> <br><br> (1) Plaintiffs cite no evidence supporting their averment that Al Rajhi Bank "served as WAMY's principal bank and vehicle for moving funds." <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) Plaintiffs' averment that WAMY served as a "key conduit for support to al Qaeda" is controverted by the evidence. <br><br> (2) WAMY has never been designated by the United States as a sponsor of terrorism. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 165:11-12. <br><br> <u>Disputed as misleading; incomplete:</u> <br><br> (1) The Bank understood the different charity accounts to be dedicated to different charitable projects, and at the time, SAMA did not prohibit the number of accounts a charity could hold. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 82:2-8 and Errata at 82:2; *see also* ARB Ex. 2 (Hobayb Rep.) at 24-25. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 518 | In addition, the evidence documents that ARB provided accounts to and enabled highly irregular fianncial transactions for senior al Haramain officials, including Aqil al Aqil, Mansour al Kadi, and Soliman al Buthe. The Aqil and al Kadi accounts enabled them to move an additional 89 million SR in deposits and 88 million SR in withdrawals between 1998-2002 – amounting to approximately another $23.5 million, or about $4.9 million per year, while they and AHIF were providing support to al Qaeda. *See supra* at 231-232, 236-239. | 518.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Sections XIII, V, VIII, and IX (headings).<br><br>(2) In addition, of the "about $4.9 million per year" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks.<br><br>(3) Immaterial because Plaintiffs have no evidence that during the relevant period Al Rajhi Bank provided non-routine banking services to any individual accountholder at Al Rajhi Bank. *See* ARB Aver. ¶ 100; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 204:14-206:11.<br><br>Disputed as conclusory:<br><br>(1) Plaintiffs cite no evidence to support their characterization of financial transactions as "highly irregular."<br><br>(2) Plaintiffs' statement that "they and AHIF were providing support to al Qaeda" is an unsupported legal conclusion to which no response is required.<br><br>Disputed as controverted by the evidence, misleading, and incomplete:<br><br>(1) Plaintiffs' reference to "AHIF" is misleading to the extent that Plaintiffs refer to the entire Al Haramain organization, including branches outside of Saudi Arabia, because only Al Haramain's Saudi headquarters ("Al Haramain KSA") had an account at Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 77:13-17, 348:12-14, 350:13-16 and Errata at 77:17, 348:12-13. | |
| 519 | ARB similarly executed highly improper transactions on behalf of SDGT and IIRO official Abd al | 519.<br><br>Immaterial: | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Hamid Sulaiman al Mujil, while he was acting as al Qaeda's "million dollar man." *See supra* at ^ 240. | (1) Immaterial for the reasons discussed above in response to Sections XIII, V, VIII, and IX (headings).<br><br>(2) Immaterial because Plaintiffs have no evidence that during the relevant period Al Rajhi Bank provided more than routine banking services to any individual accountholder at Al Rajhi Bank. See generally Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); see also ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 204:14-206:11.<br><br>(3) Immaterial because Al Rajhi Bank did not operate accounts for Mujil while he was an SDGT. Mujil was not designated under any sanctions regime for connections to terrorism until the United States designated him as an SDGT on August 3, 2006, many years after the 9/11 Attacks. *See* Pls. Ex. 170 (Abdullah al Rajhi Ex.28) (August 3, 2006 designation of IIRO's branches in the Philippines and Indonesia, including Abd al Hamid Sulaiman al Mujil).<br><br>Disputed as conclusory:<br><br>(1) Plaintiffs cite no evidence to support their characterization of financial transactions as "highly improper."<br><br>(2) The only source Plaintiffs rely upon for this paragraph, Plaintiffs' Averment ¶ 240, does not show that any banking services Al Rajhi Bank provided to Abd al Hamid Sulaiman al Mujil were improper or anything other than routine. | |
| 520 | ARB also provided accounts and executed transactions for Suleiman al Rajhi's charity committee/foundation, including when it lacked any legal existence, and some 20 accounts for the individual officials who operated that committee/foundation under Suleiman al Rajhi's direction, | 520.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIII, Sections IV, and X (headings), and ¶¶ 510-513.<br><br>(2) In addition, immaterial because averments concerning the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and Abdul Rahman al Rajhi's, Saleh bin Sulaiman al Habdan's, and | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | while Suleiman al Rajhi was himself a "major donor" to al Qaeda, per the CIA and other sources. *See supra* at 176, 253, 343. | Abdullah bin Ibrahim al Misfer's account transactions, even if credited, do not show that those accounts were being used for terrorist financing, or that Al Rajhi Bank had reason to know that those accounts were being used for that purported purpose. Even if credited, Plaintiffs have no evidence showing that these customers were publicly connected with Al Qaeda when the Bank processed transactions through those accounts.<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>Disputed as conclusory; controverted by the evidence for the reasons discussed above in response to ¶¶ 176, 253, and 343:<br><br>(1) Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi was a "major donor" to Al Qaeda is conclusory and unsupported by any evidence. The only citations this paragraph relies upon, Plaintiffs' Averment ¶¶ 176, 253, and 343, do not set forth any evidence or non-conclusory statements showing that Sulaiman bin Abdulaziz Al Rajhi donated any money to Al Qaeda.<br><br>(2) Moreover, Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi contributed to Al Qaeda is controverted by the evidence. Plaintiffs fail to mention the fact that the United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi or any Al Rajhi family member for connections to terrorism. *See* ARB Aver. ¶¶ 118-19; *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15, 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (3) No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing.<br><br>(4) Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg. ("Terrorist Attacks VII")*, 714 F.3d 659, 675-76 (2d Cir. 2013), cert denied 134 S. Ct. 2870 (2014).<br><br>Disputed as controverted by the evidence:<br><br>(1) To the extent Plaintiffs' assertion that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation "did not have legal existence" is meant to suggest the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was not authorized to operate in the Kingdom of Saudi Arabia at any point, that is controverted by the deposition testimony of the Bank's current chairman, Abdullah bin Sulaiman Al Rajhi.<br><br>- In 2000, Sulaiman bin Abdulaziz Al Rajhi acquired a license to create a charity foundation, the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, which allowed him to: (1) raise money for charity by collecting donations from others, and (1) disburse those funds to charitable causes. Before 2000, Sulaiman bin Abdulaziz Al Rajhi donated his own money to charitable causes and, because he was not collecting donations from others, he did not need a license. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 257:9-258:11 and Errata at 257:12-13, 257:16, 257:18. | |
| 521 | The twenty individual and joint accounts belonging to Sulieman al | 521. | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Rajhi's charity committee/foundation officials Abdul Rahman Al Rajhi, Saleh al Habdan, and Abdullal al Miser, processed 187,181,580.14 SR in deposits and 174,974,641.36 SR in withdrawals over the five year period of January 1, 1998-December 31, 2002, and ARB faciliated an additional 5 million SR in deposits and 7 million SR in withdrawals during that period through the account it maintained in the name of the committee/foundation itself. *See supra* at ^ 253. | Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XIII (heading) and ¶¶ 253, 520. <br><br> (2) In addition, immaterial because, of the "187,181,580.14 SR in deposits and 174,974,641.36 SR in withdrawals" and "additional 5 million SR in deposits and 7 million SR in withdrawals" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> Disputed as ambiguous; vague: <br><br> (1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh. | |
| 522 | Suleiman al Rajhi also used accounts at ARB, the bank he controlled, to carry out financial affairs for the U.S. based SAAR Foundation "web" of entities, established to launder funds in support of terrorism in and through the United States, including through ARB's Payable Through Account at Chase Manhattan. *See supra* at *'*' 393-400. | 522. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XIII, Sections IV, and X (headings). <br><br> (2) In particular, immaterial because Plaintiffs do not show that the SAAR Foundation or any of the purported "SAAR Foundation web of entities" was a parent, subsidiary, or affiliate of Al Rajhi Bank, and Plaintiffs provide no basis to attribute any conduct of those separate entities to Al Rajhi Bank. <br><br> (3) Immaterial to the extent that Plaintiffs aver that processing transactions through a payable-through account at Chase Manhattan reveals improper intent from the Bank, given that the use of payable-through accounts were common during the relevant period. *See* ARB Ex. 2 (Hobayb Rep.) at 32 (discussing the prevalence and convenience of payable-through accounts during | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | the relevant period). Moreover, Plaintiffs have no evidence that any funds in Al Rajhi Bank's correspondent account at Chase Manhattan were used for an improper purpose, including planning, carrying out, or financing terrorism against the United States. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |

Disputed as conclusory; misleading; incomplete for the reasons
discussed in response to ¶¶ 393-400.

(1) Neither this paragraph nor paragraphs 393-400 of Plaintiffs'
Averment show that the SAAR Foundation was established and
operated for the purpose of "launder[ing] funds in support
terrorism."

(2) In addition, while the FBI, USCS, and IRS investigated the SAAR
Foundation for several years, no charges or indictments were ever
brought against the organization, and the SAAR Foundation was
never designated under any sanctions regime for connections to
terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 143:13-
18; Pls. Ex. 4 (Winer Rep.) at 186-187; ARB Ex. 4 (Lormel Rep.)
at 9.

(3) Further, this Court previously dismissed Plaintiffs' claims as to
the SAAR Network Defendants for failure to state a claim. *See In
re: Terrorist Attacks on Sept. 11, 2001,* 740 F. Supp. 2d 494, 523
(S.D.N.Y. 2010) ("Plaintiffs merely plead conclusory allegations
against a large group of defendants, whom plaintiffs have
independently concluded to be related and operating in unison.
None of the Defendants can be held liable based on such
allegations alone.").

(4) Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi
"controlled" Al Rajhi Bank is a legal conclusion for which
Plaintiffs provide no support.

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Disputed as controverted by the evidence: | |

Disputed as controverted by the evidence:

(1) Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi "controlled" the Bank is controverted by the evidence.

- Al Rajhi Bank's Board of Directors held ultimate authority over the Bank's decisions. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 46:21-47:2. Al Rajhi Bank maintained four to five independent board members. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) 33:3-34:12 and Errata at 33:4.

- Al Rajhi Bank's Board was required to follow the regulations of the Capital Market Authority and the Bank's primary regulator, the Saudi Arabian Central Bank, formerly known as the Saudi Arabian Monetary Authority (SAMA). *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 33:9-12.

- Al Rajhi Bank maintained specialized committees, and corresponding director-level positions, which allowed for separation of powers and checks and balances throughout the Bank. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) 19:23-20:4; 33:18-35:8 and Errata at 34:18-20; 34:25, 35:1, 35:3-4.

- Outside of the Executive Committee, the Bank's Chairman was not a member of the Bank's specialized committees. *See* ARB Ex. 2 (Hobayb Rep.) at 17.

(2) Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi contributed to Al Qaeda is controverted by the evidence. The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi or any Al Rajhi family member for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 523 | The financial services ARB provided to these front charities, financial facilitators, and al Qaeda donors were anything but routine - to the contrary, ARB broadly violated applicable AML, CFT, and KYC standards and requirements, including ARB's own (nominal) protocols, in the opening, maintenance, and operation of these accounts, and regularly executed transactions that presented obvious and stark red flags for money laundering and terrorist financing. *See supra* at § IX. | 523. <br><br> <u>Immaterial for the reasons discussed above in response to Section XIII (heading) and Section IX (heading).</u> <br><br> (1) In particular, Plaintiffs' allegations that Al Rajhi Bank violated applicable AML, CFT, and KYC standards and requirements, even if credited, do not show that Al Rajhi Bank expressly aimed any intentional, tortious conduct at the United States, and do not connect any of Al Rajhi Bank's purported actions to the United States, Al Qaeda, or the 9/11 Attacks. <br><br> (2) Further, averments that Al Rajhi Bank conducted banking services for Al Qaeda's charity *fronts* and *facilitators*, even if credited, do not show that Al Rajhi Bank knew of any of its customers' purported bad acts or terrorist affiliations. <br><br> <u>Disputed as vague; conclusory; does not cite to supporting evidence:</u> <br><br> (1) Plaintiffs' statement that Al Rajhi Bank's financial services to the charities were "anything but routine" is a legal conclusion for which they provide no support. <br><br> (2) Plaintiffs' characterization of Al Rajhi Bank's protocols as "nominal" is unsupported by evidence and conclusory, and controverted by the opinion of Fawzi Al-Hobayb, who was a banking auditor and investigator and the Chairman of SAMA's Self-Supervisory Committee after the 9/11 Attacks, and who evaluated the policies of the Bank during the relevant period and found them to be extensive and appropriate. *See* ARB Ex. 2 (Hobayb Rep.) at 19 ("Al Rajhi Bank continuously monitored its compliance with internal policies and SAMA regulations"); *see also id.* at 2, 16-21. <br><br> (3) Plaintiffs' reference to "financial facilitators" is vague. | |

<u>Disputed as controverted by the evidence for the reasons discussed in response to Section IV (heading):</u>

(1) Plaintiffs' assertions that Al Rajhi Bank "broadly violated AML, CFT, and KYC standards" and that Al Rajhi Bank ignored "obvious and stark" red flags are legally conclusory and controverted by the evidence.

- Al Rajhi Bank was only obligated to follow "international" banking standards insofar as they were reflected in the guidelines and regulations of its regulator, SAMA.

- Following SAMA guidelines, Al Rajhi Bank had an AML Unit focused on developing AML procedures and monitoring compliance across the Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 106:6-8 and Errata at 106:6-8; Pls. Ex. 189 (Al Rajhi Bank AML Guide) at ARB-00000736 (explaining that AML Unit was obligated to "[u]pdate anti-money laundering policies and procedures in accordance with developments in the methods, processes and activities that could be used in money laundering activity"); *see also* ARB Ex. 2 (Hobayb Rep.) at 20 (explaining AML Unit's role in preventing money laundering).

- The Bank's Internal Audit Department, which functioned independently from the Bank's executive and operational functions, evaluated and enforced adherence to internal policies and procedures, and applicable law, across the Bank. *See* ARB Ex. 17 (Al Rajhi Bank Gen. Policies and Auths. Guide) at 3-4, 8; *see also, e.g.*, ARB Ex. 19 (Al Rajhi Bank Internal Audit Plan for the Fiscal Year 1999); ARB Ex. 20 (Al Rajhi Bank Internal Audit Plan for the Fiscal Year 2001).

- Further, as required by Saudi law, Al Rajhi Bank had two independent external auditors, whose responsibilities included "examin[ing] the bank's policies, procedures and internal control systems aimed at combating money laundering activities" and "testing the enforcement of such policies, and procedures." *See* ARB Ex. 22 (Banking Control Law (Royal

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Decree No. M/5 of June 11, 1966)) at 11-12 (requiring Saudi banks to have two external auditors); *see also* Pls. Ex. 3 (Galloway Dep. Tr.) at 109:16-110:5, 345:19-23 and Errata at 109:18, 109:21-22, 110:4, 345:22; Pls. Ex. 58 (1995 SAMA AML Guidelines) at 143 (outlining responsibilities of external auditors); *see also, e.g.*, Pls. Ex. 7 (1999 Al Rajhi Bank Annual Rep.) at PDF p. 77 (external auditors' report signed by Al Rashed Certified Public Accounts and Al Juriad & Company (Member of PricewaterhouseCoopers)). | |
| | | - If any audit or SAMA inspection uncovered deviations from Al Rajhi Bank's policies and applicable law, the Bank immediately took corrective action. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 105:18-106:3; *see also* ARB Ex. 21 (Al Rajhi Bank Authorities of the Audit Committee Manual) at ¶ 27 (stating that the "Audit Committee discusses the external auditors' reports with them, whether their audit has revealed no violations of the Banking Control Law or the other laws and regulations, their certificates on the audit of the provision for doubtful debts, and their conclusions regarding the adequacy of this provision"). | |
| | | (2) Plaintiffs have no evidence that SAMA's audits of Al Rajhi Bank during the relevant period ever found the Bank was not compliant with SAMA's guidelines and regulations, including those related to anti-money laundering. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |
| | | (3) Plaintiffs have no evidence that internal or external audits of Al Rajhi Bank during the relevant period ever found the Bank was not compliant with SAMA's guidelines and regulations or the Bank's internal policies. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also, e.g.*, Pls. Ex. 6 (1998 Al Rajhi Bank Annual Rep.) at PDF p. 72 and Pls. Ex. 7 (1999 Al Rajhi Bank Annual Rep.) at PDF p. 77 and Pls. Ex. 8 (2000 Al | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Rajhi Bank Annual Rep.) at PDF p. 42 and ARB Ex. 16 (2001 Al Rajhi Bank Annual Rep.) at PDF p. 74 (external auditors' reports for 1998-2001 identifying no noncompliance by the Bank with its internal policies or local law). | |
| 524 | By doing so, ARB provided al Qaeda's front charities, financial facilitators, and donors with access to the international banking system that would not have been feasible through other banks. *See supra* at 223, 275. | 524.<br><br>Immaterial for the reasons discussed above in response to Section XIII (heading) and ¶¶ 223, 275, and 523.<br><br>(1) In addition, averments that Al Rajhi Bank conducted banking services for Al Qaeda's supposed charity "fronts" and "facilitators," even if credited, do not show that Al Rajhi Bank knew of any of its customers' purported bad acts or terrorist affiliations.<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs are incorrect to posit that Al Rajhi Bank gave the charities "access to the international banking system that would not have been feasible through other banks."<br><br>  - Al Haramain held accounts at Bank of America. *See* Pls. Ex. 38 (Kohlmann Rep.) at 15.<br><br>  - IIRO banked at nine other Saudi banks. ARB Ex. 90 (IIRO 1998 Board Minutes) at MWLIIIRO-16285.<br><br>  - In addition, certain IIRO entities appear to have had bank accounts in the United States. *See* ARB Ex. 91 (Transfer Request to IIRO-Senegal) at MWLIIRO-00032668 (showing that the Senegal branch of IIRO had an account with Citibank in New York). | |
| 525 | The minimalist nature of ARB's documentation of the uses of deposits and withdrawals for funds processed through these | 525.<br><br>Immaterial: | 525.<br><br>Pls. Ex. 4 at 206: |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | accounts reflects these realities. One important requirement of being able to provide financial support to al Qaeda was to maintain secrecy and to go about it through mechanisms that foreign governments would find difficult to detect, to penetrate, and to shut-down with sanctions, criminal cases, and/or political pressure forcing countries to change their regimes to shut-it down. ARB provided that protection. *See* Ex. 4, Winer Report at 206; Ex.9, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*, CIA_000720-804 at 736 (al Qaeda's choice of banks based on "personal contacts at the banks and security concerns."); *id.* at 746 ("Islamic militants similarly bank with financial institutions that provide assurance that their deposits and financial activities will not be scrutinized by government or enforcement authorities." | (1) Immaterial for the reasons discussed above in response to Section XIII (heading). <br><br> (2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> Disputed as conclusory: <br><br> (1) Plaintiffs' assertion that Al Rajhi Bank's documentation was "minimalist" is conclusory and vague. <br><br> (2) Plaintiffs do not cite evidence showing that Al Rajhi Bank provided the "protection" described in this paragraph. <br><br> (3) Plaintiffs show that Al Rajhi Bank provided only routine banking services to its customers. <br><br> Disputed as incomplete, misleading, and unsupported by the evidence: <br><br> (1) While the CIA report Plaintiffs cite in this paragraph contains the quoted language, that language is not used specifically in reference to Al Rajhi Bank. <br><br> - The report additionally states, "The use of [ARB] by extremists in some of these cases probably denotes convenience rather than Al Rajhi family involvement in financing radical groups." Pls. Ex. 9 (CIA Rep., *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*) at CIA_000744. <br><br> - The report also acknowledges that Al Rajhi Bank was attractive to customers because it was the only Shariah-compliant Bank in Saudi Arabia during the relevant period. *Id.* at CIA_000748. | - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for attempting to impute liability through guilt-by-association, for discussing theaters that have no link to Al Qaeda's terrorism against the United States and for discussing charity work and routine banking services that has no link to Al Qaeda. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 9: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |
| 526 | ARB has not provided documentation indicating that the | 526. | 526. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | banking services it provided to al Qaeda's charity fronts, financial facilitators, and key donors, or (with isolated and rare exception), that the fund transactions it executed for them were earmarked for particular schemes or attacks not directed at the United States. Ex. 4, Winer Report at 214-16. | Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIII (heading).<br><br>(2) In particular, Plaintiffs' assertion that Al Rajhi Bank "has not provided documentation indicating that the banking services it provided to al Qaeda's charity fronts, financial facilitators, and key donors, or (with isolated and rare exception), that the fund transactions it executed for them were earmarked for particular schemes or attacks not directed at the United States" is immaterial to supporting a finding of personal jurisdiction against Al Rahi Bank. No documents were produced because the Bank conducted a reasonable search and no such documents were located. *See* Erb. Decl. ¶ 3. | Pls. Ex 4 at 214-16:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing attacks that are not at issue in this case. *See* Fed. R. Evid. 403. |
| 527 | To the contrary, ARB provided services and executed transactions without limitation, indicating an intent to assist al Qaeda's charity fronts, financial facilitators, and donors to advance al Qaeda's principal goal, which was to attack the United States. Ex. 4, Winer Report at 155, 200-03; *see also id.* at 130-202 (discussing AML, KYC, CFT and red flag violations) | 527.<br><br>Immaterial for the reasons discussed above in response to Section XIII (heading).<br><br>Disputed as conclusory; does not cite to supporting evidence:<br><br>(1) Plaintiffs provide no support for the statement that Al Rajhi Bank "provided services" to the Charities "and executed transactions without limitation" for them.<br><br>(2) Moreover, Plaintiffs have no evidence that the Bank had any reason to "limit" such services or transactions for the Charities.<br><br>- The Charities were government-licensed charities.<br><br>With respect to Al Haramain, *see* Pls. Ex. 3 (Galloway Dep. Tr.) at 114:11-17 (discussing the Bank's knowledge of the charitable activities done by licensed charities); *see also id.* at 251:12-252:20 and Errata at 230:4, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18; ARB Ex. 41 (Oct. 17, 1997 Ltr. from Ministry of Islamic Affairs) at ARB-38586 | 527.<br><br>Pls. Ex. 4 at 155, 200-03, 130-20:<br><br>- Expert is not qualified to offer opinion on Saudi Banking regulations. *See* Fed. R. Evid. 702.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (stating that Al Haramain KSA operates under the supervision of the Saudi Ministry of Islamic Affairs); *see also* Pls. Ex. 44 (Staff Monograph) at 12 ("At least two Saudi government officials have supervisory roles (nominal or otherwise) over al Haramain."); ARB Ex. 42 (Jan. 29, 1997 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38613 (authorizing the opening of an Al Haramain account at Al Rajhi Bank branch); ARB Ex. 43 (July 14, 1998 Ltr. from the Gen. Mngr. of the Eastern Province of the Ministry of Islamic Affairs) at ARB-38741 (stating Al-Haramain is under the supervision of the Ministry of Islamic Affairs); ARB Ex. 41 (Sept. 26, 1998 Ltr. from Dep. Minister of Islamic Affairs) at ARB-38585 (requesting transfer of certain accounts into the name of Al-Haramain Islamic Foundation, with signatory authority to be determined by Director General Aqeel Al-Aqeel); ARB Ex. 44 (April 14, 1999 Commercial Office License) at ARB-38837 (copy of Commercial Office License issued by the Department of Lands and Real Estate for an Al Haramain office in Jubail Municipality); ARB Ex. 56 (Ltr. from the Gov. of Yanbu, June 1, 1999) at ARB-38818 (discussing the newly opened Al-Haramain office in the region); ARB Ex. 24 (Jan. 4 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that Al Haramain KSA was "licensed according to His Highness the Minister of Interior's letter," dated February 7, 1996); ARB Ex. 26 (Mar. 13, 2004 Ltr. from Ministry of Islamic Affairs) at ARB-39505 (confirming that Al-Haramain KSA was permitted to engage in charitable work in the Kingdom); ARB Ex. 27 ( Mar. 21, 2004 Ltrs. from Ministry of Justice to Al Rajhi Bank) at ARB-39409 (confirming that Al-Haramain KSA was "legally established in . . . Saudi Arabia and permitted to operate under its laws and regulations"). | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | With respect to IIRO, *see, e.g.,* ARB Ex. 29 (Cert. fr. Min. of Foreign Affs.) at ARB-13679-ARB-13688, ARB-13691, ARB-13696 (recognizing the founding or IIRO by the Deputy Prime Minister of Saudi Arabia and the Ministry of Foreign Affairs); ARB Ex. 24 (Jan. 4, 2004 Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545 (stating the Bank's understanding that IIRO KSA was "licensed according to the directive of His Majesty the King," and that "[t]he certificate issued by the Ministry of Foreign Affairs states that the Organization is recognized by the government of the Kingdom of Saudi Arabia"); ARB Ex. 40 ( Series of Ltrs. dated Nov. 18, 1989 to Dec. 16, 1989 from the Ministry of Interior in the Emirate of Asir) at ARB-37502-ARB-37511 (discussing the opening of IIRO office in the Emirate of Asir in 1990); ARB Ex. 39  (Sept. 20, 1989 Letter from the Governor of the Asir Emirate to the Chairman of the Imam Muhammad ibn Saud Islamic University) at ARB-37838-ARB37839 (affirming the opening of an IIRO office in the region, dated Sept. 20, 1989); ARB Ex. 38 (Jan. 26, 1994 business license in Jubail Municipality) at ARB-13527 (permitting IIRO to collect donations).<br><br>- Al Rajhi Bank has always been required to comply with regulations and guidance issued by SAMA, the sole regulator of Saudi banks.  *See* ARB Ex. 2 (Hobayb Rep.) at 5.  Unless SAMA provided instructions to close a potentially suspicious customer's account, the Bank was required to continue providing routine banking services to that customer. *See id.* at 15 (citing corresponding Saudi regulation).<br><br>(3) Plaintiffs' statement that Al Rajhi Bank's provision of routine banking services "indicat[es] an intent to assist al Qaeda's charity fronts, financial facilitators, and donors to advance al Qaeda's | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | principal goal, which was to attack the United States," is an unsupported legal conclusion to which no response is required. | |
| 528 | Further, with very limited exceptions, the bulk of the individual transactions ARB carried out for those customers were minimally documented with regards to their specific uses for any particular purpose. Even where some region or purpose was nominally designated for an account, those descriptions were general in nature. See, Ex. 4, Winer Report at 214-16. | 528. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section XIII (heading). <br><br> (2) Even if credited, Plaintiffs' averment in this paragraph is immaterial to support the conclusion that the Bank expressly aimed intentional, tortious conduct at the United States. <br><br> (3) Plaintiffs do not show that any money transferred through accounts at Al Rajhi Bank reached Al Qaeda or financed the 9/11 Attacks. The allegations in this section, even if credited, do not show that Al Rajhi Bank took any tortious act related to Al Qaeda, the 9/11 Attacks, or the United States. <br><br> <u>Disputed as conclusory:</u> <br><br> (1) Plaintiffs' averment that Al Rajhi Bank's transactions were "minimally documented" is conclusory and not supported by evidence. The cited pages from the Winer report discuss Al Rajhi Bank documents that provide details about account transactions. See Pls. Ex. 4 (Winer Rep.) at 215 (describing documentation explaining the purposes of transactions through accounts at Al Rajhi Bank). <br><br> (2) Plaintiffs' characterization of Al Rajhi Bank's transactions as "nominally designated" and "general in nature" likewise, are conclusions that are not supported by evidence. <br><br> <u>Disputed as vague:</u> <br><br> (1) Plaintiffs' reference to "the bulk of the individual transactions ARB carried out" is vague. | 528. <br><br> <u>Pls. Ex. 4 at 214-16:</u> <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing attacks that are not at issue in this litigation. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 529 | Moreover, one of the few exceptions involves ARB's knowing facilitation of terrorism transfers ARB knowingly conducted for the support of those involved in the Palestinian 2nd Intifada in Israel, which involved ongoing attacks, including suicide bombings, 30argeting Israelis and foreigners in Israel, including Americans. These transactions totalled 12,364,332.45 SR in withdrawals made for "Martyrs and Orphans" by the IIRO in its ARB account labeled as being for that purpose, over a two-year period at the time of the 2nd Intifada. *Id.* | 529. <br><br> Immaterial: <br><br> (1) Disputed as immaterial for the reasons discussed above in response to Section XIII (heading). <br><br> (2) In addition, of the "12,364,332.45 SR in withdrawals" averred in this paragraph, Plaintiffs do not show that *a single dollar* reached Al Qaeda or was used to finance the 9/11 Attacks. <br><br> Disputed as conclusory; unsupported by the evidence: <br><br> (1) Plaintiffs' statement regarding Al Rajhi Bank's "knowing facilitation of terrorism transfers" is conclusory. <br><br> (2) Further, as noted by Al Rajhi Bank's expert Aimen Dean, who is an Arabic speaker able to review the documents in their original form, "it is simply a logical fallacy that because some terrorists may have been referred to by some as 'martyrs,' all references to 'martyrs' in connection with humanitarian aid to Palestine includes terrorists. [. . .] The fact that the bank account Winer refers to was designated for 'Orphans and Martyrs [shuhada],'[] indicates that the aim of this fund was benevolence, not violence." ARB Ex. 1 (Dean Rep.) at 21-22. | 529. <br><br> Pls. Ex. 4 at 214-16: <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing attacks that are not at issue in this litigation. *See* Fed. R. Evid. 403. |
| 530 | Save for this and a few isolated other examples, ARB's services for the charity fronts, financial facilitators, and donors, was undertaken without restriction or limitation, as were the transfers executed for them. *Id.* | 530. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XIII (heading). <br><br> (2) In particular, assertions that Al Rajhi Bank conducted banking services for Al Qaeda's purported charity "fronts, financial facilitators, and donors," even if credited, do not show that Al Rajhi Bank knew of any of its customers' purported bad acts or terrorist affiliations. | 530. <br><br> Pls. Ex. 4 at 214-16: <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing attacks that are not at issue in this litigation. *See* Fed. R. Evid. 403. |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) Immaterial because Plaintiffs do not show that Al Rajhi Bank knew or had reason to know of any charity's purported connections to terrorism before the 9/11 Attacks. | |
| | | (4) No charity identified in Plaintiffs' Averment, including Al Haramain Islamic Foundation, International Islamic Relief Organization, Muwaffaq Foundation, World Assembly of Muslim Youth, Muslim World League, Saudi Joint Relief Committee for Kosovo and Chechnya, Saudi High Commission for Bosnia-Herzegovina, and Lajnat al-Birr al-Islamiah was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."). | |
| | | <u>Disputed as conclusory; unsupported by evidence:</u> | |
| | | (1) Plaintiffs provide no support for the statement that Al Rajhi Bank provided "services" to the Charities and undertook transactions "without restriction or limitation" for them. | |
| | | (2) Moreover, Plaintiffs are incorrect to the extent they imply the Bank had reason to limit services to the Charities for reasons discussed above in response to ¶ 527. | |
| 531 | The importance of ARB's support to al Qaeda's operational capabilities is evidenced and underscored by the intensive focus and prioritization ARB's terrorist conduct received from the U.S. intelligence community and America's most senior | 531. <u>Immaterial:</u> (1) Immaterial for the reasons discussed above in response to Section XIII (heading) and Section VII (heading). (2) In addition, immaterial because Plaintiffs' evidence does not show that the Bank had any knowledge of purported use of the Bank's | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
|  | policymakers in the aftermath of the September 11th attacks, when stemming the flow of funds to al Qaeda was an urgent national security imperative. *See supra* at ^ 142. | financial services by individuals or entities affiliated with terrorism.<br><br>(3) Further, in 2021, the FBI concluded, "After nearly twenty years after the attack, the FBI has not identified additional groups or individuals responsible for the attack other than those currently charged, which is consistent with the final conclusion of the 9/11 Commission Report which stated that 'no new information to date that would alter the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks or for supporting those responsible for the attacks.'" ARB Ex. 7 (May 27, 2021 FBI Elec. Comm.) at EO14040-000010.<br><br>Disputed as conclusory; not supported by the evidence; controverted by the evidence:<br><br>(1) Plaintiffs' averment in this section is a conclusory statement to which no response is required.<br><br>(2) Plaintiffs' reference to "prioritization" is vague, conclusory, and not supported by the evidence. The purported evidence cited in this Averment (i.e., a CIA Report and Wikipedia print-out) is not indicative of "prioritization" of Al Rajhi Bank in post-9/11 U.S. counterterrorism engagement with Saudi Arabia<br><br>(3) To the extent that Plaintiffs imply that U.S. investigation of Al Rajhi Bank indicated tortious conduct by the Bank, Plaintiffs' implication is unsupported by the evidence because the U.S. government has never sanctioned or taken any other action against Al Rajhi Bank or any Al Rajhi family member for involvement in terrorist financing. |  |
| 532 | Within this context, ARB featured prominently and repeatedly in numerous CIA finished intelligence reports, prepared to enable policymakers to develop | 532.<br><br>Immaterial: |  |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | priorities and address the most important threats to U.S. national security, including a report dedicated entirely to ARB, which included a range of possible policy options to stem ARB's support for al Qaeda. *See supra* at 1ffl 153-157. | (1) Immaterial for the reasons discussed above in response to Section XIII (heading), Sections VI (heading) and VII (heading) and ¶ 531.<br><br>(2) In addition, immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>Disputed as conclusory and vague:<br><br>(1) Plaintiffs' statement that Al Rajhi Bank is "featured prominently and repeatedly in numerous CIA finished intelligence reports" is vague.<br><br>(2) Plaintiffs' reference to Al Rajhi Bank's "support for al Qaeda" is conclusory.<br><br>(3) Plaintiffs' characterization of CIA reports as "finished" is vague and conclusory. | |
| 533 | The evidence shows that actions to interdict ARB's support for al Qaeda were debated at the highest levels of the U.S. government, and prioritized in high-level meetings and communications between U.S. officials and their Saudi counterparts. *See supra* at *'*' 188-201. | 533.<br><br><u>Immaterial for the reasons discussed above in response to Section XIII (heading), Section VII (heading) and ¶¶ 531-532.</u><br><br><u>Disputed as conclusory:</u><br><br>(1) Plaintiffs' reference to "ARB's support for al Qaeda" is conclusory and not supported by any evidence in Plaintiffs' Averment.<br><br><u>Disputed as incomplete; controverted by the evidence:</u><br><br>(1) Al Rajhi Bank's officers have never supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 353:7-10, 355:4-8, 356:4-10; *see also id.* at 351:3-352:2, 352:18-353:5, 354:17-355:3 (stating to the best of his knowledge Sulaiman bin Abdulaziz Al Rajhi has never supported Osama bin Laden, Al Qaeda or other | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | terrorists, or terrorism in any form) and *id.* at 355:4-8 (stating the same as to other Al Rajhi Bank officers and employees). | |
| | | (2) The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi family member. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5. | |
| | | (3) No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing. *See* ARB Aver. ¶ 123; *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5. And Al Rajhi Bank's expert Dennis Lormel testified that the FBI investigated leads from the CIA relating to the Bank but could not verify or prove allegations that Al Rajhi bank provided support to Al Qaeda. *See* ARB Ex. 4 (Lormel Rep.) at 7. | |
| 534 | In these and other respects described above, the evidence confirms that ARB provided critical support, and played a central and essential role in the process of providing that support, to al Qaeda. *See* Ex. 4, Winer Report at 203-14. | 534. <br><br> Disputed as unsupported; conclusory: <br><br> (1) Plaintiffs' summary conclusion averment is an unsupported legal conclusion to which no response is required. | 534. <br><br> Pls. Ex. 4 at 203-14: <br><br> - Should be excluded under Rule 403 for unfair prejudice and confusing the issue for discussing attacks that are not at issue in this case and attempting to impute liability on the basis of providing routine banking services to charities and individuals. *See* Fed. R. Evid. 403. |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | **Section XIV.** | |
| XIV | **ARB and Its Principals Held Unique Positions Within Al Qaeda's Financial Infrastructure (¶¶ 535-576)** | <u>XIV. (heading)</u><br><br><u>Disputed as conclusory; disputed as controverted by the evidence:</u><br><br>(1) This section heading is a conclusory statement to which no response is required.<br><br>(2) Plaintiffs' reference to "principals" is vague and conclusory.<br><br>(3) Plaintiffs' reference to "unique positions" is inflammatory, vague, conclusory, and unsupported by the evidence.<br><br>(4) Plaintiffs have no evidence that any Al Rajhi Bank officer, director, or employee or any Al Rajhi family member had connections to terrorism, let alone Al Qaeda.<br><br>   - Moreover, the U.S. government never sanctioned, designated, or charged Al Rajhi Bank, any Bank officer or director, or any Al Rajhi family member for connections to terrorism. *See* ARB Aver. ¶¶ 7, 118.<br><br>(5) Plaintiffs' averment that Al Rajhi Bank and its principals purportedly held "unique positions" within Al Qaeda's financial infrastructure is unsupported by the evidence. Plaintiffs repeatedly asserted to the Second Circuit that Al Rajhi Bank's "highest-ranking officers held key leadership roles" in charities that purportedly "provided direct aid to al-Qaeda." Pls. App. Br. 56. Jurisdictional discovery disproved Plaintiffs' assertions to the Second Circuit. Al Rajhi Bank searched for records of supposed "dual roles" of Al Rajhi Bank officers or directors with Al Haramain, IIRO, or Muwaffaq, as ordered by the Court. *See* ARB Ex. 46 (ARB Dec. 17, 2021 Ltr. to Pls.). But jurisdictional discovery confirmed that no Al Rajhi Bank officer held any such "dual role," and Plaintiffs' Averment abandons this assertion.<br><br><u>Immaterial:</u> | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | <u>Plaintiffs' averments in Section XIV are immaterial to Plaintiffs' assertion that the Bank expressly aimed intentional, tortious conduct at the United States:</u><br><br>(1) The averments in Section XIV, even if credited, do not show that Al Rajhi Bank took any tortious act in support of Al Qaeda or the 9/11 Attacks, or aimed at the United States. Plaintiffs' averments do not show that any money that was transferred through accounts at Al Rajhi Bank reached Al Qaeda or supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. Nor do Plaintiffs' averments show that any donations made by Al Rajhi Bank or its principals supported the financing, planning, or carrying out of the 9/11 Attacks or any other act against the United States. And Plaintiffs' averments do not show that the Bank acted with any knowledge or intent to support Al Qaeda or support the financing, planning, or carrying out of the 9/11 Attacks or any other terrorism or terrorist plot against the United States.<br><br>(6) Plaintiffs' averments in Section XIV show that the Bank provided only routine banking services to the charity and charity-official customers and do not support the conclusion that the Bank took any intentional, tortious conduct aimed against the United States.<br><br>- Plaintiffs' averments about the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and the SAAR Foundation are immaterial for the reasons discussed in Section IV (heading).<br><br>- Plaintiffs' averments regarding Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, and any other "Al Rajhi" family members are immaterial for the reasons discussed in Section IV (heading).<br><br>- Plaintiffs' averments with respect to Al Haramain and Al Haramain officials are immaterial for the reasons discussed in Section V (heading). | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | - Plaintiffs' averments with respect to IIRO and IIRO officials are immaterial for the reasons discussed in Section V (heading). | |
| 535 | The Second Circuit already has held that Plaintiffs proffered facts sufficient to establish ARB's intent, for purposes of the Second Circuit's purposeful direction test in terrorism cases. *See supra* at ¶¶ 2-4. | 535.<br><br>Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>Disputed as conclusory and controverted by the evidence:<br><br>(1) Plaintiffs mischaracterize the Second Circuit's decision.<br><br>(2) The Second Circuit did not hold that Plaintiffs proffered facts sufficient to establish Al Rajhi Bank's specific intent.<br><br>(3) The Second Circuit did not apply the purposeful direction test or any other test of personal jurisdiction as to Plaintiffs' allegations against the Bank.<br><br>(4) The Second Circuit remanded the case for jurisdictional discovery into whether there are sufficient facts to establish the Bank's intent such that exercising personal jurisdiction over the Bank would be warranted. *See Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 68-69 (2d Cir. 2019). | |
| 536 | Although that issue has been resolved in Plaintiffs' favor for purposes of the jurisdictional inquiry, limited jurisdictional discovery has only reinforced and further corroborated the Second Circuit's conclusion. | 536.<br><br>Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>Disputed as conclusory and controverted by the evidence:<br><br>(1) Plaintiffs mischaracterize the Second Circuit's conclusion.<br><br>(2) The Second Circuit did not resolve the jurisdictional inquiry, much less resolve the inquiry in "Plaintiffs' favor." | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (3) The Second Circuit did not apply the purposeful direction test or any other test of personal jurisdiction as to Plaintiffs' allegations against the Bank.<br><br>(4) The Second Circuit remanded the case for jurisdictional discovery into whether there are sufficient facts to establish the Bank's intent such that exercising personal jurisdiction over the Bank would be warranted. *See Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 68-69 (2d Cir. 2019).<br><br><u>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments and heading in Section III.</u> | |
| 537 | ARB's knowledge and intent is of course intertwined with that of its officers and employees, including its principals Suleiman al Rajhi and Abdullah al Rajhi, who dominated and controlled the bank throughout the period leading up to the September 11ᵗʰ attacks. | 537.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br><u>Disputed as conclusory; does not cite to supporting evidence; controverted by the evidence:</u><br><br>(1) Plaintiffs cite no evidence for their improper legal conclusion that Al Rajhi Bank's "knowledge and intent is of course intertwined with its officers and employees." In fact, Plaintiffs have not established any basis to impute a chairman or senior official's knowledge onto the Bank. *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). | |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (2) Likewise, Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi and Abdullah bin Sulaiman Al Rajhi "dominated and controlled" Al Rajhi Bank is an unsupported legal conclusion and controverted by the evidence.<br><br>- The evidence shows that during the relevant period Al Rajhi Bank maintained a corporate governance structure that prevented it from being dominated or controlled by any individual, including an officer of the Bank.<br><br>- In fact, during the relevant period, Al Rajhi Bank had a corporate governance structure that included specialized committees and director-level positions that exemplified segregation of duties, checks and balances, and protocols for testing the Bank's internal controls and compliance through audits. *See generally* ARB Ex. 17 (Al Rajhi Bank Gen. Policies and Auths. Guide) (setting forth the Bank's comprehensive corporate governance controls); *see also* ARB Ex. 2 (Hobayb Rep.) at 17-18 (discussing key corporate governance provisions outlined in Al Rajhi Bank's 1998 General Policies and Authorizations Guide).<br><br>- Outside of the Executive Committee, the Bank's Chairman was not a member of any of these committees. *See* ARB Ex. 17 (Al Rajhi Bank Public Policies and Authorization Guide) at 11 (stating that the "Board of Directors is the body that approves the Corporation's Organizational Structure"); *see also* ARB Ex. 2 (Hobayb Rep.) at 17 (explaining that, based on his review, the Bank's Chairman did not sit on any of the committees).<br><br>- Further, throughout the relevant period, Al Rajhi Bank maintained four to five independent board members. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 33:3-34:12. | |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 538 | As reflected in CIA findings, Jamal al Fadl's testimony to the FBI, and additional evidence surveyed above, Suleiman al Rajhi's support for bin Laden's militant activities dates to the period of the Afghan jihad and formation of al Qaeda, when Suleiman al Rajhi financially supported bin Laden and Afghan jihadists "via humanitarian organizations," including through contributions to MAK. *See supra* at ¶¶ 67-68, 157. | 538.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Immaterial because Plaintiffs' statements that Sulaiman bin Abdulaziz Al Rajhi "supported bin Laden and Afghan jihadists" and contributed to the MAK, even if true, do not show that Sulaiman bin Abdulaziz Al Rajhi contributed to Al Qaeda or the 9/11 Attacks, or that he expressly directed any intentional, tortious conduct at the United States.<br><br>(4) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>Disputed as conclusory; does not cite to supporting evidence:<br><br>(1) Plaintiffs cite no evidence supporting their statement that Sulaiman bin Abdulaziz Al Rajhi ever supported "bin Laden's militant activities" or "financially supported bin Laden." Plaintiffs have no evidence of any donation or transaction from Sulaiman bin Abdulaziz Al Rajhi to Osama bin Laden or al Qaeda.<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi provided support to Osama bin Laden is controverted by Abdullah bin Sulaiman Al Rajhi's testimony that Sulaiman bin Abdulaziz Al Rajhi has never supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form. Pls. Ex. 1 (Abdullah bin | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Sulaiman Al Rajhi Dep. Tr.) at 351:3-352:2, 352:18-353:5, 354:17-355:3. | |
| 539 | In the ensuing years, Suleiman al Rajhi, the al Rajhi family, and ARB continued to fund and channel resources to al Qaeda and a range of other terrorist causes, as reflected by the CIA's determinations that "several Al-Rajhi family members donate money to businesses tied to terrorists and personally oversee transactions destined for terrorists." *See* Ex. 46, *Identifying Al- Qa'ida's Donors and Fundraisers: a Status Report,* at CIA-000198, among numerous other, similar, findings. *See supra* at ¶ 168; Ex. 38, Kohlmann Report at 6-41; Ex. 4, Winer Report at 85-103. | 539.

Immaterial:

(1) Immaterial for the reasons discussed above in response to Section XIV (heading).

(2) In addition, even if Plaintiffs' averment that Al Rajhi family members donated to businesses purportedly "tied to terrorists and personally oversee transactions destined for terrorists" is credited, it is immaterial because these statements do not show that Al Rajhi family members or Al Rajhi Bank knowingly contributed to Al Qaeda, much less for the 9/11 Attacks or with the specific intent to expressly aim tortious conduct at the United States.

(3) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).

(4) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.

Disputed as controverted by the evidence:

(1) To the extent that Plaintiffs' averment that Al Rajhi family members "personally over[saw] transactions destined for terrorists" is meant to suggest Al Rajhi family members actively and knowingly participated in transferring funds to terrorists, that averment is controverted by the evidence.

(2) The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi family member for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19- | 539.

Pls. Ex. 46:

- Inadmissible hearsay, as noted in response to Section VI (heading).

Pls. Ex. 38, 6-41:

- Should be excluded to the extent expert testimony is used a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802.

Pls. Ex. 4, 85-103:

- Should be excluded to the extent expert testimony is used a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802.

- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | 22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>(3) No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing.<br><br>(4) Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001* ("Terrorist Attacks IV"), 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg.* ("Terrorist Attacks VII"), 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014).<br><br>Disputed as vague:<br><br>(1) Plaintiffs' averments as to Al Rajhi family members are vague and do not support the conclusion that purported actions of anonymous members of the Al Rajhi family are attributable to the Bank.<br><br>(2) Plaintiffs do not identify any donor or beneficiary specifically, and Plaintiffs do not specify dates, account numbers, or transaction amounts for the purported support given. | |
| 540 | Indeed, in its November 14, 2002 finished intelligence report, the CIA identified the al Rajhi family as one of al Qaeda's "major donors," concluded that "[m]ost of the larger [al Qaeda] financiers, however, knowingly donate funds to al-Qa'ida and are witting the money finances terrorist activity," and reported that ARB has served as a "conduit for funds for Islamic | 540.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) In addition, immaterial because Plaintiffs' statements that Al Rajhi Bank was a "conduit for funds for Islamic extremists and the 11 September hijackers" and "maintained accounts for individuals linked to Usama bin Laden" describes the provision of routine banking services and does not show any funds from accounts at Al | 540.<br><br>Pls. Ex. 45:<br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | extremists and the 11 September hijackers" and "maintained accounts for individuals linked to Usama bin Laden." *See* Ex. 45, *Saudi-Based Financial Support for Terrorist Organizations,* November 14, 2002, CIA_00143-158 at 147-148. | Rajhi Bank reaching Al Qaeda or the 9/11 Attacks and does not show intentional, tortious conduct by the Bank expressly aimed at the United States.<br><br>(3) And even if Plaintiffs' averment is credited, Plaintiffs have no evidence that Al Rajhi Bank knew or should have known of any purported terrorist connections of its customers.<br><br>(4) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>Disputed as controverted by the evidence:<br><br>(1) The record evidence supports the conclusion that Al Rajhi family members did not finance Al Qaeda. Plaintiffs trace no donation or transaction from Al Rajhi family members to Al Qaeda. *See* ARB Aver. ¶¶ 7, 118-120.<br><br>  - The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, any Al Rajhi family member, any officer of Al Rajhi Bank, or Al Rajhi Bank for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>  - No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing.<br><br>  - Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001* ("Terrorist Attacks IV"), 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | Bank), *aff'd sub nom. O'Neill v. As**a**t Tr. Reg.* ("Terrorist Attacks VII"), 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014).<br><br>(2) To the extent that Plaintiffs' averment that Al Rajhi Bank served as a conduit for funds for the 9/11 hijackers is meant to show that 9/11 hijackers used accounts at Al Rajhi Bank to finance the 9/11 Attacks, that averment is unsupported by the evidence. No transaction in any account at Al Rajhi Bank has been traced to the planning, financing, or carrying out of the 9/11 Attacks. The transactions in the hijackers' accounts at Al Rajhi Bank in the relevant period were minimal and have not been traced to the 9/11 Attacks, as discussed above in response to ¶¶ 136 and 265. | |
| 541 | Against this backdrop, as surveyed more completely above, discovery has confirmed that ARB maintained accounts and moved huge sums of money for al Qaeda's most important charity fronts, financial facilitators, and donors, during periods when al Qaeda was known to have chosen banks based on "personal contacts at the banks" and "security" considerations. *See* supra at ¶ 155; Ex. 9, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*, CIA_000720-804 at 736; Ex. 4, Winer Report at 104-30, 203-14. | 541.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Immaterial because, even if true, Plaintiffs' averments that Al Rajhi Bank "maintained accounts" and transferred funds for Al Qaeda "charity fronts, financial facilitators, and donors" describe the provision of routine banking services.<br><br>(3) Plaintiffs' averment does not show any funds from accounts at Al Rajhi Bank reaching Al Qaeda or the 9/11 Attacks and does not show intentional, tortious conduct by the Bank expressly aimed at the United States.<br><br>(4) The statement that Al Rajhi Bank provided financial services to "al Qaeda's most important charity fronts" is also immaterial because, even if credited, it does not show that the Bank had knowledge of its customers' alleged affiliations with terrorism, or its customers' alleged bad acts. If, in fact, the charities were "fronts," this indicates that charities concealed from the Bank purported diversions to Al Qaeda. Even if credited, Plaintiffs have no | 541.<br><br>Pls. Ex. 9:<br><br>- Hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 4, 104-30, 203-14:<br><br>- Should be excluded to the extent expert testimony is used a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | evidence that Al Rajhi Bank knew or should have known of any purported terrorist connections of its charity customers. | |
| | | (5) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | |
| | | (6) Plaintiffs' averments with respect to charities are immaterial for the reasons discussed in Section V (heading). | |
| | | Disputed as conclusory; does not cite supporting evidence; vague: | |
| | | (1) Conclusory and vague as to the phrases "moved huge sums of money," "most important," and "financial facilitators." | |
| | | (2) Conclusory as to Plaintiffs' averment that "ARB maintained accounts and moved huge sums of money for al Qaeda's most important charity fronts, financial facilitators, and donors." Plaintiffs cite to no evidence showing that any transaction went through Al Rajhi Bank accounts and reached Al Qaeda. | |
| 542 | ARB moved a sea of essentially anonymous money for those charity fronts and financial facilitators, consistently ignoring applicable money laundering obligations and red flags in doing so. *See supra* at ¶¶ 274, 326, 356-358; Ex. 4, Winer Report at 155, 200-03; *see also id.* at 130-202 (discussing AML, KYC, CFT and red flag violations). | 542. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XIV (heading) and Section V (heading). <br><br> (2) In addition, immaterial because, even if credited, Plaintiffs' assertions do not show any funds from accounts at Al Rajhi Bank reaching Al Qaeda or the 9/11 Attacks and do not show intentional, tortious conduct by the Bank expressly aimed at the United States. <br><br> (3) The averment that Al Rajhi Bank provided financial services to "charity fronts" is also immaterial because, even if credited, it does not show that the Bank had knowledge of any customer's alleged affiliations with terrorism. | 542. <br><br> Pls. Ex. 4, p. 155, 200-03, 130-202: <br><br> - Should be excluded to the extent expert testimony is used as conduit for hearsay to which no exception applies (*e.g.*, NL docs). *See* Fed. R. Evid. 802. |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | (4) In fact, if credited, Plaintiffs' averment indicates that charity "fronts" concealed from the Bank purported diversions to Al Qaeda.<br><br>_Disputed as conclusory; does not cite supporting evidence; vague:_<br><br>(1) Conclusory and vague as to the terms "sea of essentially anonymous money" and "financial facilitators."<br><br>_Disputed as controverted by evidence:_<br><br>(1) Plaintiffs' statement that Al Rajhi Bank "consistently ignor[ed] applicable money laundering obligations and red flags" is controverted by the evidence.<br><br>   - Following SAMA guidelines, Al Rajhi Bank had an AML Unit focused on developing AML procedures and monitoring compliance across the Bank. _See_ Pls. Ex. 3 (Galloway Dep. Tr.) at 106:6-8 and Errata at 106:6-8; Pls. Ex. 189 (Al Rajhi Bank AML Guide) at ARB-00000736 (explaining that AML Unit "[u]pdate[d] anti-money laundering policies and procedures according to developments in the methods, processes, and activities that may be used in money laundering activity."); _see also_ ARB Ex. 2 (Hobayb Rep.) at 20 (explaining AML Unit's role in preventing money laundering).<br><br>   - The Bank's Internal Audit Department, which functioned independently from the Bank's executive and operational functions, evaluated and enforced adherence to internal policies and procedures, and applicable law, across the Bank. _See_ ARB Ex. 17 (Al Rajhi Bank Public Policies and Authorization Guide) at 3-4, 8; _see also, e.g._, ARB Ex. 19 (Al Rajhi Bank Internal Audit Plan for the Fiscal Year 1999); ARB Ex. 20 (Al Rajhi Bank Internal Audit Plan for the Fiscal Year 2001).<br><br>   - Further, as required by Saudi law, Al Rajhi Bank had two independent external auditors, whose responsibilities included | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | "examin[ing] the bank's policies, procedures and internal control systems aimed at combating money laundering activities" and "testing the enforcement of such policies, and procedures." *See* Pls. Ex. 58 (1995 SAMA AML Guidelines) at PDF p. 14 (outlining responsibilities of external auditors); ARB Ex. 22 (Banking Control Law (Royal Decree No. M/5 of Jun. 11, 1966)) at 11-12 (requiring Saudi banks to have two external auditors); *see also* Pls. Ex. 3 (Galloway Dep. Tr.) at 109:16-110:5, 345:19-23 and Errata at 109:18, 109:21-22, 110:4, 345:22; *see also, e.g.*, Pls. Ex. 7 (1999 Al Rajhi Bank Annual Report) at PDF p. 77 (external auditors' report signed by Al Rashed Certified Public Accounts and Al Juraid & Company (Member of PricewaterhouseCoopers)). <br><br> - Plaintiffs have no evidence that SAMA's audits of Al Rajhi Bank during the relevant period ever found the Bank was not compliant with SAMA's guidelines and regulations, including those related to anti-money laundering. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). <br><br> - Plaintiffs have no evidence that internal or external audits of Al Rajhi Bank during the relevant period ever found the Bank was not compliant with SAMA's guidelines and regulations or the Bank's internal policies. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also, e.g.*, Pls. Ex. 6 (1998 Al Rajhi Bank Annual Report) at PDF p. 72 and Pls. Ex. 7 (1999 Al Rajhi Bank Annual Report) at PDF p. 77 and Pls. Ex. 8 (2000 Al Rajhi Bank Annual Report) at PDF p. 42; ARB Ex. 19 (2001 Al Rajhi Bank Annual Report) at PDF p. 74 (external auditors' reports for 1998-2001 identifying no noncompliance by the Bank with its internal policies or local law). | |
| 543 | The nature of these transactions indicates that al Qaeda's most | 543. | 543. |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | important charity fronts and financial facilitators had confidence that ARB would execute and support their highly suspicious financial activities, and take no action to report those activities to authorities. *See* Ex. 9, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*, CIA_000720-804 at 736 (al Qaeda's choice of banks based on "personal contacts at the banks and security concerns."); *id.* At 746 ("Islamic militants similarly bank with financial institutions that provide assurance that their deposits and financial activities will not be scrutinized by government or enforcement authorities." | Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XIV (heading) and Section V (heading). <br><br> (2) Immaterial because the purported mental state of "al Qaeda's most important charity fronts and financial facilitators" is not attributable to the Bank and does not show that the Bank expressly aimed any intentional, tortious conduct at the United States. <br><br> (3) Immaterial because, even if credited, Plaintiffs' averment does not show any funds from accounts at Al Rajhi Bank reaching Al Qaeda or the 9/11 Attacks and do not show intentional, tortious conduct by the Bank expressly aimed at the United States. <br><br> (4) The averment that Al Rajhi Bank provided financial services to "charity fronts" is also immaterial because, if credited, it does not show that the Bank had knowledge of any customers' alleged affiliations with terrorism, or any customers' alleged bad acts. In fact, if true, it indicates that charities concealed from the Bank purported diversions to Al Qaeda. <br><br> (5) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. <br><br> Disputed as conclusory and vague: <br><br> (1) Vague and conclusory as to Plaintiffs' statement that "al Qaeda's most important charity fronts and financial facilitators had confidence that [Al Rajhi Bank] would execute and support their highly suspicious financial activities." <br><br> Disputed as unsupported by the evidence and misleading: <br><br> (1) The source Plaintiffs cite does not state that Al Qaeda "charity fronts and financial facilitators had confidence [Al Rajhi Bank] would execute and support their highly suspicious financial | Pls. Ex. 9: <br><br> - Inadmissible hearsay, as noted in response to Section VI (heading). |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | activities, and take no action to report those activities to authorities." Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000746.<br><br>(2) Plaintiffs selectively quote the CIA report, omitting excerpts that provide context as to Al Rajhi Bank and the Al Rajhi family.<br><br>- To the extent admissible, the cited source acknowledges that Al Rajhi Bank was attractive to customers throughout the Middle East because of its adherence to Islamic banking principles and because of its vast network within the Middle East. The report also says, "Al Rajhi financial ties to Islamists is inconclusive" and acknowledges that the use of Al Rajhi Bank "by extremists . . . probably denotes convenience rather than Al Rajhi family involvement in financing radical groups." Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000744.<br><br>- The report goes on to discuss that Al Rajhi Bank's "dominance of the foreign remittance business, couple with strong financial links to Africa and the Asian subcontinent, probably make [Al Rajhi Bank] the only choice for transferring funds to some regions." *Id.*<br><br>- The report also acknowledges that Al Rajhi Bank was attractive to customers because it was the only Shariah-compliant bank in Saudi Arabia during the relevant period. *Id.* at CIA_000748. | |
| 544 | Simultaneously, Suleiman al Rajhi maintained extensive and close connections to those same al Qaeda's charity fronts and their most senior officials, while also operating a complex "charity" enterprise of his own, established to launder funds in support of terrorist and Islamic extremist | 544.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi and the purported "charity enterprise" are immaterial for the reasons discussed above in response to Sections IV (heading) and X (heading). | 544.<br><br>Pls. Ex. 4, p. 85-104:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | causes, including al Qaeda. *See supra* at ¶¶ 248-256; Ex. 4, Winer Report at 85-104; Ex. 38, Kohlmann Report at 6-41. | (3) In addition, Plaintiffs' averments with respect to the charities are immaterial for the reasons discussed in Section V (heading).<br><br>Disputed as conclusory; vague; unsupported by the evidence:<br><br>(1) Vague and conclusory as to Plaintiffs' use of the phrase "charity fronts."<br><br>(2) To the extent that Plaintiffs' use of "charity" in quotation marks implies that Sulaiman bin Abdulaziz Al Rajhi's charitable endeavors were not solely charitable in nature, or that Al Rajhi Bank and members of the Al Rajhi family had improper motives in engaging with charities, such implications are conclusory and unsupported by the evidence.<br><br>(3) To the extent that Plaintiffs assert that the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and the SAAR Foundation were "established to launder funds in support of terrorist and Islamic extremist causes," this is controverted by the evidence, as discussed above in response to Sections IV (heading) and X (heading). | - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by-association and for providing routine banking services to individuals. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 38, 6-41:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. |
| 545 | The available documents indicate that Suleiman al Rajhi contributed generously to AHIF, although the full extent of this support is unknowable, given Suleiman al Rajhi's use of nominee accounts, payments to intermediaries and through checks written personally to officers of charities, and other structures used to obscure the origin and destinations of his funds. Ex. 4, Winer Report at 113-17; Ex. 194, (Abdullah al Rajhi | 545.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>- In particular, the Sulaiman bin Abdulaziz Al Rajhi Foundation was not a parent, subsidiary, or affiliate of Al Rajhi Bank. *See* Pls. Ex. 3 (Galloway Dep. Tr.) at 278:23-279:7 ("None of [the Charity Foundation officials] had any role at the bank, and the | 545.<br><br>Pls. Ex. 4, pgs 113-16:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt-by- |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Exhibit 51) ARB 39960 (payments from ARB charity committee/foundation account to AHIF); Ex. 195 (Abdullah al Rajhi Exhibit 52) at ARB 39961 (same); Ex. 196 (Abdullah al Rajhi Exhibit 55) NL 10086, 1088, 10094, 10245 (checks to AHIF and correspondence with Aqil). | foundation has never been a parent, subsidiary, or affiliate of the bank."). <br><br> (3) Plaintiffs' averments with respect to Al Haramain are immaterial for the reasons discussed in Section V (heading). <br><br> Disputed as conclusory; does not cite supporting evidence: <br><br> (1) Conclusory and vague as to Plaintiffs' assertion that Sulaiman bin Abdulaziz Al Rajhi "contributed generously" to Al Haramain. Plaintiffs do not discuss specific amounts donated to Al Haramain, particularly in light of Sulaiman bin Abdulaziz Al Rajhi's overall charitable donations. <br><br> (2) Plaintiffs' assertion that "the full extent" of Sulaiman bin Abdulaziz Al Rajhi's charitable donations to Al Haramain "is unknowable" is conclusory and unsupported. <br><br> (3) Conclusory and vague as to Plaintiffs' statements regarding "nominee accounts," "payments to intermediaries" and "other structures used to obscure the origin and destination" of Sulaiman bin Abdulaziz Al Rajhi's charitable donations. <br><br> Disputed as unsupported by the evidence: <br><br> (1) Plaintiffs' suggestion that Sulaiman Al Rajhi "obscure[d] the origin and destinations of his funds" is unsupported by the evidence. The sources Plaintiffs cite show both the origin and destination of Sulaiman bin Abdulaziz Al Rajhi's charitable donations because the documents show that the donations came from Sulaiman bin Abdulaziz Al Rajhi or the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and went to Al Haramain. *See* Pls. Ex. 194 (Abdullah al Rajhi Exhibit 51) at ARB 39960; Pls. Ex. 195 (Abdullah al Rajhi Exhibit 52) at ARB 39961; Pls. Ex. 196 (Abdullah al Rajhi Exhibit 55) at NL 10086, 1088, 10094, 10245. <br><br> Disputed as vague; misleading: | association and for providing routine banking services to individuals and charities. *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 196: <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (1) Plaintiffs' description of Plaintiffs' Exhibit 194 "payments from ARB charity committee/foundation account to AHIF" is vague and misleading to the extent it conflates the Sulaiman bin Abdulaziz Al Rajhi Foundation with Al Rajhi Bank. | |
| 546 | The evidence further shows that Suleiman al Rajhi had a close relationship with AHIF Director and SDGT Aqil al Aqil, as reflected by communications between Suleiman al Rajhi's charity committee/foundation and Aqil; the unusual payment Suleiman al Rajhi issued directly to Aqil, rather than AHIF itself; the extensive additional financial transactions between Abdul Rahman al Rajhi and Aqil; and Abdullah al Misfer's simultaneous roles as an official of Suleiman al Rajhi's charity committee/foundation and AHIF itself. Ex. 4, Winer Report at 113-17; Ex. 38, Kohlmann Report at 12; Ex. 194, (Abdullah al Rajhi Exhibit 51) ARB 39960 (showing committee/foundation payment to Aqil al Aqil); Ex. 196, (Abdullah al Rajhi Exhibit 55) at NL 10245 (correspondence with Aqil); Ex. 197, (Abdullah al Rajhi Exhibit 54) ARB 41464-41501 (Aqil account statement) at 41467, 41471-41473, 41476-41479 | 546.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments concerning the Sulaiman bin Abdulaziz Charitable Foundation are immaterial for the reasons discussed in Section IV (heading).<br><br>(4) Plaintiffs' averments with respect to Al Haramain are immaterial for the reasons discussed in Section V (heading).<br><br>Disputed as conclusory; unsupported by the evidence:<br><br>(1) Plaintiffs' characterizations regarding "a close relationship," "unusual payment," and "extensive additional financial transactions" are conclusory and not supported by the evidence cited by Plaintiffs, which only shows charitable donations from Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation to Al Haramain through Aqil al Aqil, who served as the Director of the well-known, licensed charity.<br><br>(2) Plaintiffs cite no evidence supporting the statement that Abdullah Ibrahim al Misfer, who served as an official of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, simultaneously served as an official of Al Haramain. | 546.<br><br>Pls. Ex. 4, 113-17:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 38, p. 12:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay to which no exception applies (e.g. NL docs). *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association and discussing attacks not at issue in this |

]

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | (transactions with Abdul Rahman al Rajhi). | (3) Some of the transfers Plaintiffs point to occurred between Aqil al Aqil and Abdul Rahman *Abdulaziz* Al Rajhi, an individual with no affiliation to with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation or to this litigation.  *See* Pls. Ex. 115 (Aqil al Aqil statements of account) at ARB-41467 (showing a transaction with Abdul Rahman *Abdulaziz* Al Rajhi). <br><br> - Plaintiffs do not provide evidence showing that Abdul Rahman *Abdulaziz* Al Rajhi, the individual who had financial transactions with Aqil al Aqil, was an official of the Sulaiman bin Abdulaziz Charitable Foundation during the relevant period.  Plaintiffs cite to a document that, if admissible, shows that the individual who worked at the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was Abdul Rahman *bin Abdullah* Al Rajhi.  Pls. Ex. 14 (Abdullah al Rajhi Exhibit 56) at NL 9625 ("Currently the Charity office is managed by Abdul Rahman Bin Abdullah Al Rajhi, Saleh Bin Sulaiman Al-Habdan and Abdullah I. Al-Misfer"). <br><br> (4) While several transactions do occur between Aqil al Aqil and an "Abdul Rahman Al Rajhi" with no middle name included, Plaintiffs do not present any evidence showing that this Abdul Rahman Al Rajhi is Abdul Rahman Abdullah Al Rajhi, the individual who served as an official of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation. <br><br> Disputed as controverted by the evidence: <br><br> (1) Plaintiffs' characterization of a donation from the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation to Al Haramain through Aqil al Aqil as an "unusual payment" is controverted by evidence. <br><br> - During the relevant period, Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. | litigation.  *See* Fed. R. Evid. 403. <br><br> Pls. Ex. 196: <br><br> - Lacks authentication.  *See* Fed. R. Evid. 901. <br><br> - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | - During the relevant period, charity officials routinely collected donations on behalf of charities of which they were officers, so the donation to Al Haramain through Aqil was not an "unusual payment." *See* ARB Ex. 2 (Hobayb Rep.) at 30-31.<br><br>- Moreover, a letter from a Saudi official instructs potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex. 5 (Ltr. From KSA Gen. Pres. Of Scholarly Research) at ARB-38774-75.<br><br>(5) To the extent that in referencing "SDGT Aqil" Plaintiffs aver that Sulaiman bin Abdulaziz Al Rajhi made donations to Aqil after he was designated, that is controverted by evidence.<br><br>- Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks, including at the time of the donations referenced by Plaintiffs. *See* Pls. Ex. 48 (Designation of Aqil al Aqil) (showing Aqil was not designated until June 2, 2004). | |
| 547 | In addition, Suleiman al Rajhi was a member of the IIRO's permanent committee, at least as of 2000. *See* Ex. 46, *Identifying Al-Qa'ida's Donors and Fundraisers: A Status Report,* February 27, 2002, CIA_00193-199 at 198. | 547.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(3) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). | 547.<br><br>Pls. Ex. 46:<br><br>- Hearsay, as noted in response to Section VI (heading). |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (4) Plaintiffs' averments with respect to IIRO are immaterial for the reasons discussed in Section V (heading). | |
| | | <u>Disputed as controverted by the evidence:</u> | |
| | | (1) Plaintiffs' averment regarding Sulaiman bin Abdulaziz Al Rajhi's membership on IIRO's board is controverted by evidence showing that Sulaiman bin Abdulaziz Al Rajhi resigned from IIRO in 1992. | |
| | | - Despite repeated attempts by IIRO to invite Sulaiman bin Abdulaziz Al Rajhi back to IIRO board meetings, he refused these invitations, reminding them of his resignation. *See* Pls. Ex. 199 (Sheikh Sulaiman IIRO resignation letters) at ARB-39593-604. | |
| | | - Plaintiffs' own expert, Jonathan Winer, opined that Sulaiman bin Abdulaziz Al Rajhi's resignation letters "provide evidence that the IIRO had failed to remove [Sulaiman bin Abdulaziz Al Rajhi]'s name from the list of its permanent members in response to his letters of resignation, a fact apparently not known to the CIA given the IIRO's continued treatment of him as a permanent member of its governance through at least October 4, 1998, and based on the CIA's statement, as late as some date in 2000." Pls. Ex. 4 (Winer Rep.) at 71 n.191. | |
| 548 | Suleiman al Rajhi's appointment to the IIRO's permanent committee was likely a function (and requirement) of his status as a co-founder and shareholder of Sanabel al Kheir, a foundation established to make investments and generate income for IIRO. *See* Ex. 198, SANA-BELL 00037-38; *see also* Ex. 199, (Galloway Exhibit 24) at ARB 39596-39597 | 548. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section XIV (heading). <br><br> (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). <br><br> (3) Plaintiffs' averments with respect to IIRO are immaterial for the reasons discussed in Section V (heading). | <u>Pls. Ex. 198:</u> <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | (letter from Suleiman al Rajhi referencing his invitation to the "Shareholders Meeting" and Indicating intent to keep shares in Sanabel al Kheir). | <u>Disputed as conclusory; does not cite supporting evidence:</u><br><br>(1) Plaintiffs cite no support for their conclusory assertion that Sulaiman bin Abdulaziz Al Rajhi's "appointment to the IIRO's permanent committee was likely a function (and requirement) of his status as a co-founder and shareholder of Sanabel al Kheir."<br><br><u>Disputed as unsupported by the evidence:</u><br><br>(1) The document Plaintiffs rely on does not mention Sulaiman bin Abdulaziz Al Rajhi at all, let alone list him as a board member of IIRO. *See* Pls. Ex. 198 (Sana-bell Report) at SANA-BELL 00037-38.<br><br>(2) In addition, the document cited by Plaintiffs confirms that Sulaiman bin Abdulaziz Al Rajhi resigned from IIRO on June 20, 1992, and relinquished his shares in Sanabel in 1996. *See* Pls. Ex. 199 (Sheikh Sulaiman IIRO resignation letters) at ARB-39597-604. | |
| 549 | ARB has selectively produced a set of incomplete communications, allegedly found while searching for other records, which it has attempted to characterize as showing that Suleiman al Rajhi withdrew from the IIRO committee years before 9/11. *See* Ex. 199, (Galloway Exhibit 24) ARB 39593-39604. | 549.<br><br><u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments with respect to IIRO are immaterial for the reasons discussed in Section V (heading).<br><br><u>Disputed as conclusory; vague; controverted by the evidence:</u><br><br>(1) Plaintiffs' statement that "ARB has selectively produced a set of incomplete communications" is conclusory, vague, and unsupported by evidence. To the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | jurisdictional discovery or incomplete or "selective" productions, this is controverted by the evidence for the reasons discussed above in response to Section III. | |
| | | <u>Disputed as controverted by the evidence:</u> | |
| | | (1) Plaintiffs' suggestion that Sulaiman bin Abdulaziz Al Rajhi did not "withdr[aw] from the IIRO committee years before 9/11" is controverted by the evidence. | |
| | | (2) The documents cited by Plaintiffs confirm that Sulaiman bin Abdulaziz Al Rajhi did resign from IIRO in 1992 and had no role with IIRO during the relevant period. | |
| | | (3) Plaintiffs' own "expert" witness, Jonathan Winer, opined, "[t]hese documents provide evidence that the IIRO had failed to remove SAAR's name from the list of its permanent members in response to his letters of resignation, a fact apparently not known to the CIA given the IIRO's continued treatment of him as a permanent member of its governance through at least October 4, 1998, and based on the CIA's statement, as late as some date in 2000." Pls. Ex. 4 (Winer Rep.) at 71 n.191. | |
| 550 | ARB's interpretation of these documents is incorrect, as it ignores that Suleiman al Rajhi's status as a member of the IIRO's board or permanent committee was apparently a function of and dictated by his ongoing status as a shareholder of Sanabel al Kheir, the IIRO's investment arm. Indeed, the one-sided subset of communications discuss Suleiman al Rajhi's shares in Sanabel al Kheir, which he makes clear he | 550. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section XIV (heading). <br><br> (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). <br><br> (3) Plaintiffs' averments with respect to IIRO are immaterial for the reasons discussed in Section V (heading). <br><br> <u>Disputed as conclusory; does not cite supporting evidence:</u> | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | intends to keep, in relation to his status on the board/permanent committee. Ex. 199, (Galloway Exhibit 24) at ARB 39596-39597 (letter from Suleiman al Rajhi referencing his invitation to the "Shareholders Meeting" and indicating intent to keep shares in Sanabel al Kheir). | (1) Plaintiffs cite no evidence supporting their statement that Sulaiman bin Abdulaziz Al Rajhi's "status as a member of the IIRO's board or permanent committee was apparently a function of and dictated by his ongoing status as a shareholder of Sanabel al Kheir." <br><br> Disputed as controverted by the evidence: <br><br> (1) Plaintiffs' averment that Al Rajhi Bank's "interpretation" of the resignation letters "is incorrect" is controverted by the evidence, which shows that Sulaiman bin Abdulaziz Al Rajhi resigned from IIRO on June 20, 1992, and relinquished his shares in Sanabel in 1996. *See* Pls. Ex. 199 (Sheikh Sulaiman IIRO resignation letters) at ARB-39597- 604. <br><br> (2) Plaintiffs' own "expert" witness, Jonathan Winer, opined, "[t]hese documents provide evidence that the IIRO had failed to remove SAAR's name from the list of its permanent members in response to his letters of resignation, a fact apparently not known to the CIA given the IIRO's continued treatment of him as a permanent member of its governance through at least October 4, 1998, and based on the CIA's statement, as late as some date in 2000." Pls. Ex. 4 (Winer Rep.) at 71 n.191. | |
| 551 | The communications are revealing, insofar as Suleiman al Rajhi corresponds in several cases directly with the Secretary General of the MWL, IIRO's parent, underscoring his high level relationship. *See* Ex. 199, (Galloway Exhibit 24) at ARB 39593, 39597, 39599, 39601. | 551. <br><br> Immaterial: <br><br> (1) Disputed as immaterial for the reasons discussed above in response to Section XIV (heading). <br><br> (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). <br><br> (3) In addition, Sulaiman bin Abdulaziz Al Rajhi exchanged these letters in his personal capacity. The letterhead shows the letters came from Sulaiman bin Abdulaziz Al Rajhi's Estate Office, which was never a parent, subsidiary, or affiliate of the Bank. *See* | |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Pls. Ex. 3 (Galloway Dep. Tr.) at 313:5-18 and Errata at 313:8, 313:9. The communications, which in any event do not show any intent to support terrorism, do not reflect the Bank's conduct or intent.<br><br>(4) Further, Plaintiffs' averments with respect to IIRO and MWL are immaterial for the reasons discussed in Section V (heading).<br><br>Disputed as conclusory:<br><br>(1) Plaintiffs' characterization of Sulaiman bin Abdulaziz Al Rajhi's resignation letters as "underscoring his high level relationship" is vague and conclusory. | |
| 552 | Evidence provided by ██████ ████ also reflect sizeable donations from Suleiman al Rajhi to MWL. *See* Ex. 29, (Galloway Exhibit 22) at NL 10546. Given that MWL conducted alleged humanitarian operations through IIRO, Suleiman al Rajhi's donation to MWL was likely, in reality, a contribution to IIRO itself. Here again, it is not possible to know the full extent of Suleiman al Rajhi's contributions, given his use of nominee accounts, payments to intermediaries and through checks written personally to officers of charities, and other structures to obscure the origin and destinations of his funds. | 552.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments with respect to IIRO and MWL are immaterial for the reasons discussed in Section V (heading).<br><br>Disputed as conclusory; vague; does not cite supporting evidence:<br><br>(1) Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi made "sizeable donations" to MWL is conclusory and vague because Plaintiffs do not discuss specific amounts donated to MWL, particularly in light of Sulaiman bin Abdulaziz Al Rajhi's overall charitable donations.<br><br>(2) Plaintiffs' characterizations that Sulaiman bin Abdulaziz Al Rajhi's "donation to MWL was likely, in reality, a contribution to | 552.<br><br>Pls. Ex. 29:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lack authentication. *See* Fed. Evid. 901. |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | IIRO itself" is conclusory and not supported by the evidence cited by Plaintiffs.<br><br>(3) Plaintiffs' averment that "it is not possible to know the full extent" of Sulaiman bin Abdulaziz Al Rajhi's charitable donations to MWL is an unsupported legal conclusion to which no response is required.<br><br>(4) Plaintiffs' statements regarding "nominee accounts," "payments to intermediaries," and "other structures to obscure the origin and destinations" of Sulaiman bin Abdulaziz Al Rajhi's charitable donations are vague, conclusory, and not supported by the evidence cited by Plaintiffs.<br><br>Disputed as unsupported by the evidence:<br><br>(1) Plaintiffs' suggestion that Sulaiman Al Rajhi "obscure[d] the origin and destinations of his funds" is unsupported by the evidence. The sources Plaintiffs cite, if admissible, show both the origin and destination of Sulaiman bin Abdulaziz Al Rajhi's charitable donations because the documents show that the donations came from Sulaiman bin Abdulaziz Al Rajhi or the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and went to MWL. *See* Pls.' Ex. 29 (cover letter with list of donations) at NL15578, NL15043-NL15046. | |
| 553 | Documents also show that a delegation of employees and advisors from Suleiman al Rajhi's charity committee/foundation were "VIP" participants in an IIRO delegation to Tanzania in 1995, reflecting a close oeprational relationship between Suleiman al Rajhi's charity committee/office and IIRO. Ex. | 553.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). | 553.<br><br>Pls. Ex. 200:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Should be excluded under Rule 403 for unfair prejudice |

744

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | 200, IIRO 315040; Ex. 4, Winer Report at 122-23; Ex. 38, Kohlmann Report at 10. | (3) Plaintiffs' averments with respect to IIRO are immaterial for the reasons discussed in Section V (heading).<br><br>(4) Immaterial in that it discusses activities well outside the relevant period.<br><br><u>Disputed as conclusory; unsupported by the evidence:</u><br><br>(1) Plaintiffs' characterizations regarding "'VIP' participants" and "a close operational relationship" between the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and IIRO are conclusory and not supported by Plaintiffs' Exhibit 200.<br><br>- Plaintiffs' Exhibit 200, to the extent admissible, reflects a letter from IIRO to the Chief of Protocol of the Ministry of Foreign Affairs in 1995, informing the Ministry of delegation of six men to Tanzania.<br><br>- The letter lists the official capacity in which each individual is traveling as a member of the delegation. Though the letter lists individuals with similar names to those of officials of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, they are listed as representatives of institutions that are not the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation. *See* Pls. Ex. 200 (IIRO Letter, Mar. 5, 1995) at IIRO 315040.<br><br>- The letter makes no mention of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation. *Id.* | and confusing the issues for discussing charity work that has no link to Al Qaeda. *See* Fed. R. Evid. 403.<br><br><u>Pls. Ex. 4, 122-23:</u><br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for attempting to impute liability through guilt by association with individuals and for discussing issues that are not at issue in this litigation. *See* Fed. R. Evid. 403.<br><br><u>Pls. Ex. 38, p. 10:</u><br><br>- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issues for attempting to impute liability through guilt by association |

745

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | and for discussing attacks not at issue in this litigation. *See* Fed. R. Evid. 403. |
| 554 | In addition, Suleiman al Rajhi incorporated a U.S. branch of Sanabel al Kheir, called Sana-Bell, Inc., in 1989, as part of the establishment of the U.S.-based SAAR Foundation web of enterprises. *See* Ex. 24, SANA-BELL 0001-10 (Articles of Incorporation of the SANA-BELL, Inc., July 28, 1999). | 554. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section XIV (heading). <br><br> (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). <br><br> (3) Plaintiffs' averments with respect to the SAAR Foundation are immaterial for the reasons discussed in response to Section V (heading). <br><br> <u>Disputed as conclusory; does not cite supporting evidence:</u> <br><br> (1) Plaintiffs' Exhibit 24 lists "Solayman Alsalih Alragihi" (an alias of Sulaiman bin Abdulaziz Al Rajhi) as a member of the Board of Trustees rather than as someone who "incorporated" the U.S. branch of Sanabel al Kheir. *See* Pls. Ex. 24 (Articles of Incorporation of Sana-Bell Inc.) at SANA-BELL 0007. <br><br> (2) The Articles of Incorporation cited by Plaintiffs do not show that Sana-bell Inc. was a part of the "SAAR Foundation web of enterprises." *See generally* Pls. Ex. 24 (Articles of Incorporation of Sana-Bell Inc.) at SANA-BELL 0001-10. | 554. <br><br> <u>Pls. Ex. 24:</u> <br><br> - Lacks authentication. *See* Fed. R. Evid. 901. <br><br> - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 555 | The other founding directors included IIRO's then head, Dr. Farid Yasin Qurashi (IIRO's Secretary General), and two other MWL/IIRO officials. *See supra* at ¶ 46. | 555. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section XIV (heading). | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) In addition, Plaintiffs' averments with respect to IIRO and MWL are immaterial for the reasons discussed in Section V (heading). | |
| 556 | As of 2000, Sana-Bell, Inc.'s Executive Director was MWL Secretary General Abdullah al Obaid, and its President was IIRO Secretary General Adnan Basha. *See* Ex. 198, SANA-BELL 00037. | 556.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) In addition, Plaintiffs' averments with respect to IIRO and MWL are immaterial for the reasons discussed in Section V (heading). | 556.<br><br>Pls. Ex. 198:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 557 | Meanwhile, ▮▮▮▮▮ who ran the SAAR Foundation enterprise under Suleiman al Rajhi's direction, was himself an official of both MWL and Sanabel al Kheir. *See* supra at ¶ 46. | 557.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments with respect to the SAAR Foundation are immaterial for the reasons discussed in Section V (heading). | |
| 558 | Suleiman al Rajhi also maintained personal contacts with WAMY leadership. | 558. Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments with respect to WAMY are immaterial for the reasons discussed in response to Section VIII (heading) and ¶¶ 219-20, 258. | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | - In particular, WAMY was a government-licensed charity in the relevant period. *See* ARB Ex. 24 (Jan. 4 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA) at ARB-14545; ARB Ex. 57 (WAMY licenses and authorizations from KSA government) at ARB-14547-ARB-14549. <br><br> - Moreover, WAMY has never been designated by the United States as a sponsor of terrorism.  ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 165:11-12. <br><br> <u>Disputed as conclusory; vague; does not cite to supporting evidence:</u> <br><br> (1) Plaintiffs' assertion regarding "personal contacts with WAMY leadership" is conclusory and vague, and Plaintiffs do not cite to any supporting evidence. | |
| 559 | As the CIA determined, "the Al Rajhis were routinely contacted" by officials at WAMY, which it described as "a Saudi NGO where personnel often pursue an extremist agenda." *See* Ex. 9, CIA Intelligence Report, Office of Transnational Issues, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions,* CIA_000720-804 at 744. | 559. <br><br> <u>Immaterial:</u> <br><br> (1) Immaterial for the reasons discussed above in response to Section XIV (heading). <br><br> (2) Plaintiffs' averments with respect to WAMY are immaterial for the reasons discussed in response to Section VIII (heading) and ¶¶ 219-20, 258. <br><br> - In particular, WAMY was a government-licensed charity in the relevant period. *See* ARB Ex. 24 (Jan. 4 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA Letters from Al Rajhi Bank General Manager to Governor of SAMA) at ARB-14545; ARB Ex. 57 (WAMY licenses and authorizations from KSA government) at ARB-14547-ARB-14549.  Moreover, WAMY has never been designated by the United States as a sponsor of terrorism.   ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 165:11-12. <br><br> (3) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the | 559. <br><br> <u>Pls. Ex. 9:</u> <br><br> - Hearsay, as noted in response to Section VI (heading). |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | |
| | | _Disputed as vague; misleading:_ | |
| | | (1) Plaintiffs' assertion regarding "the Al Rajhis" is vague because it does not identify specific members of the Al Rajhi family or show that these unnamed officials have any role with Al Rajhi Bank. | |
| | | (2) Plaintiffs' assertion regarding "an extremist agenda" is vague and misleading and does not support a conclusion that WAMY officials supported terrorism, Al Qaeda, or the 9/11 Attacks, let alone that Al Rajhi Bank supported terrorism, Al Qaeda, or the 9/11 Attacks. _See_ ARB Ex. 1 (Dean Rep.) at 14–16 (explaining distinctions between extremism, jihad, and terrorism and stating, "[a]ny allegations of Al Rajhi family links to 'extremism' or that Al Rajhi Bank was 'used' by or 'preferred' by so-called 'extremists' . . . cannot be understood as an allegation that the Al Rajhi family or Al Rajhi Bank supported al-Qaeda's terrorism"). | |
| | | _Disputed as incomplete:_ | |
| | | (1) Despite the CIA report's statement in 1997 that WAMY "personnel often pursue an extremist agenda," WAMY has never been designated by the United States as a sponsor of terrorism. ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 165:11-12. | |
| 560 | Plaintiffs have not conducted discovery of ARB concerning its relationship with WAMY, but the business records produced by ████████████ include communications with and payments from Suleiman al Rajhi to WAMY Secretary General Maneh al Johani, and separate payment to Dr. Saleh Omar | 560.<br><br>_Immaterial:_<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). | 560.<br><br>Pls. Ex. 38, p. 32:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. _See_ Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Badahdah, a member of the WAMY Board of Trustees. *See* Ex. 38, Kohlmann Report at 32; Ex. 185, NL 10068, 10384. *See also* Ex. 186, NL 10333 (check from Sulaiman al Rajhi payable to WAMY for 75,000 SR); Ex. 29 (Galloway Exhibit 22), NL 15578, 15043-15046 at 15046 (338,500 riyal payment to World Assembly of Muslim Youth). | (3) Plaintiffs' averments with respect to WAMY are immaterial for the reasons discussed above in response to Section VIII (heading) and ¶¶ 219-20, 258.<br><br>- In particular, WAMY was a government-licensed charity in the relevant period. *See* ARB Ex. 24 (Jan. 4 2004 (Hijri) Ltr. from Al Rajhi Bank Gen. Mngr. to Gov. of SAMA Letters from Al Rajhi Bank General Manager to Governor of SAMA) at ARB-14545; ARB Ex. 57 (WAMY licenses and authorizations from KSA government) at ARB-14547-ARB-14549.<br><br>- Moreover, WAMY has never been designated by the United States as a sponsor of terrorism. ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 165:11-12.<br><br>Disputed as incomplete:<br><br>(1) "Plaintiffs have not conducted discovery" into Al Rajhi Bank's purported "relationship with WAMY" because Plaintiffs did not seek discovery into WAMY's accounts at Al Rajhi Bank. *See* Pls. Mot. Compel Ex. A (Jul. 30, 2021), ECF No. 6996-2; Pls. Mot. To Compel Ex. 1 (Apr. 19, 2023), ECF No. 9040-1 (Plaintiffs' two sets of document requests that included 124 distinct requests and subparts, none of which included requests for discovery into WAMY).<br><br>Disputed as controverted by the evidence:<br><br>(1) Plaintiffs' cited documents reflect donations rather than payments; for example, a "donation from [Sulaiman bin Abdulaziz Al Rajhi] as a one-year scholarship for ten students studying in Egypt, supervised by Brother Abdul Rahman al Aqil." Pls. Ex. 185 (Sulaiman bin Abdulaziz Al Rajhi cover letter to Manei al Johani) at NL0010384. | and confusing the issues for attempting to impute liability through guilt by association and for providing routine banking services to individuals and charities. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 185:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>Pls. Ex. 186:<br><br>- Lacks authentication. *See* Fed. R. Evid. 901.<br><br>Pls. Ex. 29:<br><br>- Lack authentication. *See* Fed. R. Evid. 901.<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802. |
| 561 | The fact that Suleiman al Rajhi made donations payable to Johani | 561. | 561. |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | himself, rather than WAMY, is significant. Again, Suleiman al Rajhi was a sophisticated international banker, who knew well the distinction between the organization WAMY and the person Johani, yet made his contribution payable to Johani. As the CIA noted, "WAMY officials have couriered private Saudi donations to Islamic groups in Afghanistan and Bosnia" and put Saudi donors and foreigners in direct contact "for worthwhile Islamic causes" and would sometimes broker requests to donors when WAMY had "an ideological interest." *See* Ex. 9, CIA Intelligence Report, Office of Transnational Issues, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions,* CIA_000720-804 at 744. | <u>Immaterial:</u><br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments with respect to WAMY are immaterial for the reasons discussed above in response to ¶ 560.<br><br>(4) Further immaterial because Plaintiffs allege that WAMY officials "couriered" donations to "Islamic groups in Afghanistan and Bosnia," which have no nexus to the United States or the 9/11 Attacks.<br><br>(5) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br><u>Disputed as controverted by evidence:</u><br><br>(1) Purported donations to WAMY through a WAMY official is not "significant." During the relevant period, charity officials routinely collected donations on behalf of charities of which they were officers. *See* ARB Ex. 2 (Hobayb Rep.) at 30-31.<br><br>- For example, a letter from a Saudi official instructs potential donors to provide aid directly "to the said Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex. 5 (Letters describing Al Haramain KSA's humanitarian projects and good works). | <u>Pls. Ex. 9:</u><br><br>- Inadmissible hearsay, as noted in response to Section VI (heading). |
| 562 | Throughout this period, while ARB was providing expansive | 562. | 562. |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | support for and facilitating the financial transactions of AHIF, IIRO, and WAMY, a broad spectrum of information was available to ARB, reflecting their involvement in paramilitary jihad and support for al Qaeda. *See* Ex. 4 Winer Report at 32-40; Ex. 38, Kohlmann Report at 12-13, 14, 21-22, 25; Ex. 171, Kohlmann Deposition at 92-93, 124-25 (discussing information about charities available in Saudi Arabia). | Immaterial: (1) Immaterial for the reasons discussed above in response to Section XIV (heading). (2) In addition, Plaintiffs' averments with respect to Al Haramain, IIRO, and WAMY are immaterial for the reasons discussed in Section V (heading). (3) Immaterial because Plaintiffs' averment that Al Rajhi Bank "facilitat[ed] the financial transactions of AHIF, IIRO, and WAMY" describes the provision of routine banking services and does not show that any funds from accounts at Al Rajhi Bank reached Al Qaeda or supported the 9/11 Attacks and does not show intentional, tortious conduct by the Bank expressly aimed at the United States. Disputed as conclusory; controverted by the evidence: (1) Plaintiffs' averment that Al Rajhi Bank provided "expansive support for . . . AHIF, IIRO, and WAMY" is conclusory and not supported by the evidence, which shows that Al Rajhi Bank provided only routine financial services to these charities, none of which were designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."). (2) Plaintiffs' averment that "a broad spectrum of information was available" to Al Rajhi Bank showing Al Haramain, IIRO, and WAMY's "involvement in paramilitary jihad and support for al Qaeda" is vague, conclusory, and not supported by the evidence. - Plaintiffs point to no publicly available information tying any of these charities to Al Qaeda or terrorism before the 9/11 Attacks. Instead, the evidence Plaintiffs cite in their averment | Pls Ex. 4, p. 32-40: - Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802. - Should be excluded as needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. - Should be excluded under Rule 403 for unfair prejudice for discussing attacks and theaters not at issue in this litigation and for attempting to impute liability through guilt-by-association. *See* Fed. R. Evid. 403. Pls. Ex. 38, p. 12-14, 21-22, 24: - Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies (e.g. NL docs). *See* Fed. R. Evid. 802. - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for attempting to impute liability through guilt by association |

]

| PARA. No. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | states focuses on the purported terrorist connections of the charities' branches, for which the Bank did not hold accounts. *See* Pls. Ex. 171 (Kohlmann Dep. Tr.) at 92:2-93:15, 124:2-125:3; Pls. Ex. 38 (Kohlmann Rep.) at 12-14, 21-22, 25; Pls. Ex. 4 (Winer Rep.) at 32-40.<br><br>- Further, the evidence Plaintiffs cite shows that ordinary donors in Saudi Arabia "didn't have access to diplomatic cables and . . . IRS investigations" and that purportedly fraudulent activity by the charities was "not being disclosed to some of the donors." *See* Pls. Ex. 171 (Kohlmann Dep. Tr.) at 92:2-12, 124:2-12; *see also* Pls. Ex. 171 (Kohlmann Dep. Tr.) at 92:2-93:25 (conceding that Al Haramain KSA was not designated until years after the 9/11 Attacks).<br><br>- Plaintiffs also cite purported advertisements by the charities to support individuals involved in armed conflict. But, as Al Rajhi Bank's expert Aimen Dean explained, these types of advertisements and donations were commonplace and did not lead to suspicion of terrorist finance. ARB Ex. 1 (Dean Report) at 15-16 (explaining that charities supporting relief efforts in conflict zones were not deemed to be supporters of terrorism).<br><br>- Most notably, the evidence shows that the charities that held accounts at Al Rajhi Bank were licensed and authorized to operate in the relevant period. *See, e.g.*, Pls. Ex. 3 (Galloway Dep. Tr.) at 251:12-252:19 and Errata at 230:4, 232:19, 251:14, 251:23-24, 252:1, 252:4, 252:7-8, 252:13-14, 252:16, 252:18 (discussing charity licenses). | and for discussing attacks not at issue in this litigation. *See* Fed. R. Evid. 403.<br><br>Pls. Ex. 171:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay (*see* Fed. R. Evid. 802) and to the extent expert is not qualified to offer opinion on designations or banking Regulations. *See* Fed. R. Evid. 702. |
| 563 | Those sources of information were hardly necessary for ARB to discern their terrorist connections, however, given Suleiman al Rajhi's central status as a financial | 563.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading). | |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | angel for al Qaeda and associated terrorist causes. | (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). | |
| | | (3) Even if credited, Plaintiffs' averment as to Sulaiman bin Abdulaziz Al Rajhi is immaterial for the reasons stated in response to Section IV (heading).  To the extent Plaintiffs contend that the personal charitable donations of Sulaiman bin Abdulaziz Al Rajhi were made with knowledge of any recipient's alleged connection to terrorism (a point which Plaintiffs do not establish), such averments are immaterial, as Plaintiffs may not impute a chairman or senior official's knowledge onto the Bank.  *See, e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (rejecting allegations that any knowledge gained by individual in his role as director of surety corporation could be imputed to the bank of which he separately served as board chairman and COO). | |
| | | (4) Plaintiffs' averment as to the purported "sources of information" are immaterial for the reasons stated in ¶ 562. | |
| | | (5) Plaintiffs have no evidence showing that Sulaiman bin Abdulaziz Al Rajhi was at all affiliated with Al Qaeda or any terrorist cause. *See* ARB Aver. ¶¶ 131-136, 138. | |
| | | Disputed as conclusory: | |
| | | (1) Conclusory and unsupported as to "central status." | |
| | | (2) Conclusory and unsupported as to "financial angel." | |
| 564 | Suleiman al Rajhi's position at the center of the global jihadist movement led by al Qaeda, and dedication to funding the most radical anti-American elements, is further reflected by his relationships with and support for | 564. <br><br> Immaterial: <br><br> (1) Immaterial for the reasons discussed above in response to Section XIV (heading). | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | a range of singularly extremist imams. | (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>Disputed as conclusory; does not cite supporting evidence:<br><br>(1) Plaintiffs' statement contains unsupported legal conclusions to which no response is required.<br><br>- It is simply not credible to characterize Sulaiman bin Abdulaziz al Rajhi as "at the center of the global jihadist movement" when he was never charged or sanctioned for any connections to terrorism, and when, despite all the global attention to investigating the 9/11 Attacks, and a full investigation by the FBI, he was the chairman of the Bank until 2014.<br><br>(2) Conclusory and unsupported by evidence as to "center of the global jihadist movement."<br><br>(3) Conclusory and unsupported by evidence as to "the most radical anti-American elements."<br><br>(4) Conclusory and unsupported by evidence as to "his relationships with and support for a range of singularly extremist imams." | |
| 565 | For example, in the early 1990's, Suleiman al Rajhi funded and sent a Saudi trained and educated imam named Shaykh Abdullah al-Faisal to preach in the United Kingdom. Ex. 4, Kohlmann Report at 39. | 565.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Immaterial as relating to conduct outside the relevant period. | 565.<br><br>Pls. Ex 38, p. 39<br><br>- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. See Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for attempting to impute |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (4) Immaterial as to Sulaiman bin Abdulaziz Al Rajhi's purported connection to Abdullah al-Faisal, where, even if credited, it shows nothing more than attempted guilt-by-association.<br><br>Disputed as conclusory; unsupported by the evidence:<br><br>(1) Plaintiffs provide no support for the assertion that Sulaiman bin Abdulaziz Al Rajhi "funded and sent a Saudi trained and educated imam named Shaykh Abdullah al-Faisal to preach in the United Kingdom."<br><br>(2) The document relied on by Plaintiffs states that Abdullah al-Faisal "was sent to the United Kingdom to preach by Sheikh Rajhi." *See* Pls. Ex. 38 (Kohlmann Rep.) at 39.<br><br>(3) The document provides no first or middle name.  A 2003 CIA report, to the extent admissible, estimated that "[t]he Al Rajhi family" had "700 male members," meaning that this "Sheikh Rajhi" could have been any one of them.  *See* Pls. Ex. 10 (2003 CIA Rep.) at CIA-Sub_003. | liability based on guilt-by-association. *See* Fed. R. Evid. 403. |
| 566 | In February 2003, Abdullah al-Faisal was convicted in a U.K. court on charges of "soliciting to murder," defined as "encouraging, persuading, endeavoring to persuade or proposing to any person to murder any other person." The charges stemmed from lectures given by the militant cleric in which he openly called upon his followers to kill Americans, Jews, Hindus, and other perceived "enemies of Islam." *Id.* | 566.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Even if credited, Plaintiffs' averments concerning Abdullah al-Faisal do not show any action or knowledge by Al Rajhi Bank.<br><br>(3) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(4) Immaterial as to Sulaiman bin Abdulaziz Al Rajhi's purported connection to Abdullah al-Faisal, where, even if credited, it shows nothing more than attempted guilt-by-association. | 566.<br><br>Pls. Ex 38, p. 39<br><br>- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802<br><br>- Should be excluded under Rule 403 for unfair prejudice, confusing the issue, and misleading the jury for attempting to impute liability based on guilt-by-association and for discussing criminal |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | charges not at issue in this litigation. *See* Fed. R. Evid. 403. |
| 567 | Suleiman al Rajhi and ARB also financially supported Salman al Awdah during this period. *See* Ex. 9, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions*, CIA_000720-804 at 748; Ex. 38, Kohlmann Report at 15-16. | 567.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Immaterial because Al Rajhi Bank had no relationship to Al Awdah beyond the provision of routine banking services. Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks.<br><br>(3) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(4) Immaterial as relating to conduct outside the relevant period.<br><br>(5) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(6) Immaterial as to Sulaiman bin Abdulaziz Al Rajhi's purported connection to Salman al Awdah where, even if credited, it shows nothing more than attempted guilt-by-association.<br><br>Disputed as conclusory; unsupported by the evidence:<br><br>(1) Even if admissible, the cited document provides no support for Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi or Al Rajhi Bank "financially supported Salman al Awdah." | 567.<br><br>Pls. Ex. 9:<br><br>- Hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 38, p. 15-16:<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for attempting to impute liability through guilt by association with individuals. *See* Fed. R. Evid. 403.<br><br>- Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802. |

757

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | (2) The CIA report states, without evidence, that "the Al Rajhi family . . . became a major financial supporter of Awdah." Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000748. | |
| | | (3) As acknowledged in a 2003 CIA report, to the extent admissible, "[t]he Al Rajhi family" had "700 male members." Pls. Ex. 10 (2003 CIA Rep.) at CIA-Sub_003. | |
| | | (4) Plaintiffs do not aver which, if any, Al Rajhi family members had a relationship with Salman Al-Awdah. | |
| | | (5) Further, Plaintiffs omit that the report states that individuals like Awdah were attracted to Al Rajhi Bank because it was the only Shariah-compliant bank in Saudi Arabia during the relevant period. Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000748. | |
| 568 | Al Awdah was a source of inspiration for and ally of Osama bin Laden. *See* Ex. 38, Kohlmann Report at 15-16; Ex. 4, Winer Report at 67. | 568. Immaterial: (1) Immaterial for the reasons discussed above in response to Section XIV (heading). (2) Immaterial because Al Rajhi Bank had no relationship to Al Awdah beyond the provision of routine banking services. Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks. (3) Immaterial as relating to conduct outside the relevant period. (4) Immaterial as to Sulaiman bin Abdulaziz Al Rajhi's purported connection to Salman al Awdah where, even if credited, it shows nothing more than attempted guilt-by-association. | 568. Pls. Ex. 38, p. 15-16: - Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802. - Should be excluded under Rule 403 for unfair prejudice for attempting to impute liability through guilt by association with individuals. *See* Fed. R. Evid. 403. Pls. Ex. 4, p. 67: - Should be excluded under Rule 403 for unfair prejudice and confusing the issues for attempting to impute liability |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | | through guilt by association with individuals and for discussing attacks and theaters that have no connection to Al Qaeda's terrorism against the United States. *See* Fed. R. Evid. 403. |
| 569 | ARB discovery documents also reflect substantial payments from a "personal" account of Saleh bin Sulaiman al Habdan, of Suleiman al Rajhi's charity committee/foundation, to Sheikh Mohamed al Muhaisani in 1998 (87,750 SR) and 2002 (2,000,000 SR). *See* Ex. 134, ARB 41668-41720 at ARB 41715. Based on the nature and amount of the payments, along with other transactions clearly showing the Habdan account was used to send money for Suleiman al Rajhi, the payments were comprised of Suleiman al Rajhi's funds. | 569.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments with respect to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are immaterial for the reasons discussed in response to Section IV (heading).<br><br>(4) Immaterial as to Saleh bin Sulaiman al Habdan and Sheikh Mohamed al Muhaisani where, even if credited, it shows nothing more than attempted guilt-by-association.<br><br>Disputed as controverted by the evidence:<br><br>(1) The transaction Plaintiffs refer to is not a wire transfer from Saleh bin Sulaiman al Habdan to Mohamed al Muhaisani, but a transfer from Mohamed al Muhaisani to Saleh bin Sulaiman al Habdan. *See* Pls. Ex. 134 (Saleh al Habdan's Statements of Account) at ARB-41715.<br><br>(2) In any event, the transaction does not reflect any conduct by the Bank beyond the provision of routine financial services. | |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| 570 | Al Muhaisani issued an infamous "dua" video after 9/11, in which he prayed for the success of the mujahideen and the liberation of Al Aqsa, the mosque referenced in al Qaeda's 1998 fatwa. The video featured photos of al Qaeda leaders Osama bin Laden and Ayman al Zawahiri, the 9/11 attacks, and Islamic fighters. *See* Ex. 201, Complaint, *USA v. Sohiel Omar Kabir,* United States District Court for the Central District of California, 2012, at 18. | 570.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) In addition, immaterial because the purported "infamous" video was issued after the 9/11 Attacks, and Plaintiffs point to no evidence publicly connecting al Muhaisani to Al Qaeda prior to 9/11. Further, Plaintiffs' averment with respect to Sheikh Mohamed al Muhaisani is immaterial where, even if credited, it shows nothing more than attempted guilt-by-association. | 570.<br><br>Pls. Ex. 201:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice for imputing liability by guilt by association through connections with individuals. *See* Fed. R. Evid. 403. |
| 571 | The 2 million SR payment to al Muhaisani issued after publication of his infamous dua. | 571.<br><br>Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>Disputed as controverted by the evidence:<br><br>(1) The transaction Plaintiffs refer to is not a wire transfer from Saleh bin Sulaiman al Habdan to Mohamed al Muhaisani, but a transfer from Mohamed al Muhaisani to Saleh bin Sulaiman al Habdan. *See* Pls. Ex. 134 (Saleh al Habdan's Statements of Account) at ARB-41715.<br><br>(2) In any event, the transaction does not reflect any conduct by the Bank beyond the provision of routine financial services. | |
| 572 | One of the "personal" accounts of Abdul Rahman al Rajhi, which again was plainly used to issue payments for Suleiman al Rajhi, similar reflects several financial transactions with Abdullah al | 572.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading). | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | Jibrin in 1999. *See* Ex. 129, ARB 40860-41153 at 40932, 40939, 41020. | (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>Disputed as conclusory; does not cite to supporting evidence:<br><br>(1) Plaintiffs assume, without evidence, that "Abdullah Hamad Saud al Jibrin" and "Abdullah Mohamed al Jibrin" are the same person. Pls. Ex. 129 (Abdul Rahman Al Rajhi personal accounts) at ARB-40932, ARB-40939, ARB- 41020.<br><br>(2) Plaintiffs provide no evidence to support that Abdul Rahman al Rajhi's account was "plainly used to issue payments for Suleiman al Rajhi." | |
| 573 | Around the time of those transactions, Jibrin, who preached at the Al Rajhi mosque, issued a prominent "fatwa" concerning the "State of the Mujahedin and the Muslims' obligation towards them," in which he called for Muslims to provide weapons and financial support to jihad fighters. *See* Ex. 202. | 573.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Further, even if credited, Plaintiffs' averments concerning the Al Rajhi Mosque do not show any intentional, tortious act by Al Rajhi Bank expressly directed at the United States.<br><br>(3) Plaintiffs cite no evidence connecting the Al Rajhi Mosque to Al Rajhi Bank. The Mosque is called Al Rajhi Mosque because a member of the family funded it, not because the family controls the mosque. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) 41:5-18. | 573.<br><br>Pls Ex. 202:<br><br>- Hearsay to which no exception applies. *See* Fed. R. Evid. 802.<br><br>- Lacks authentication. *See* Fed. R. Evid. 901. |
| 574 | As noted previously, Suleiman al Rajhi also designated Saleh al Hussayen to serve as a long-time "advisor" to his committee/foundation. *See supra* at ¶¶ 44, 503-507 (discussing Hussayen connections to 9/11 | 574.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Sections IV (heading), XII (heading), and XIV (heading). | 574.<br><br>Pls. Ex. 38, p. 10:<br><br>- Should be excluded to the extent expert testimony is used as a conduit for inadmissible hearsay to which |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | hijackers); Ex. 38, Kohlmann Report at 10. | (2) Plaintiffs' statements concerning Saleh al Hussayen are immaterial as Saleh al Hussayen had no role in the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation. The Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation and the U.S.-based SAAR Foundation are separate entities, distinct from each other and distinct from the Bank.<br><br>(3) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(4) Plaintiffs' averments with respect to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are immaterial for the reasons discussed in response to Section IV (heading).<br><br>(5) Plaintiffs' averments as to the SAAR Foundation are immaterial for the reasons stated in response to Section IV (heading). In particular, the conduct of the legally separate SAAR Foundation is not attributable to the Bank. Plaintiffs have not alleged, and have no evidence of, any "relationship" between the Bank and the SAAR Foundation. *See* Order (Nov. 22, 2021), ECF No. 7378, at 15-16 (noting Plaintiffs have not alleged "any direct connection between ARB and the SAAR Network" and finding a "lack of a reasonable connection between ARB and the SAAR Network").<br><br><u>Disputed as conclusory; lacking supporting evidence:</u><br><br>(1) When asked about the name of Saleh al Hussayen on the 1994 SAAR Annual Report, Abdullah bin Sulaiman Al Rajhi confirmed it "looked like" the same name, but could not be sure that the person was the same individual who served on the Al Rajhi Sharia Board. *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 313:3-15. | no exception applies. *See* Fed. R. Evid. 802.<br><br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for attempting to impute liability through guilt by association. *See* Fed. R. Evid. 403. |
| 575 | In sum, the expansive and enduring connections between ARB and its principals and al | 575.<br><br><u>Immaterial:</u> | |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | Qaeda's leadership, most prominent charity fronts, most important financial facilitators, and unwavering and unconditional support ARB and its principals provided to those terrorist elements, show that ARB and its principals were at the very center of al Qaeda's financial support network, from its inception through the date of the September 11ᵗʰ attacks. | (1) Immaterial for the reasons discussed above in response to Section XIV (heading). <br><br> <u>Disputed as conclusory; does not cite supporting evidence:</u> <br><br> (1) Plaintiffs' averment is an unsupported legal conclusion to which no response is required. <br><br> <u>Disputed as controverted by the evidence:</u> <br><br> (1) Al Rajhi Bank has never supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 353:7-10, 355:4-8, 356:4-10; *see also id.* at 351:3-352:2, 352:18-353:5, 354:17-355:3 (stating to the best of his knowledge Sulaiman bin Abdulaziz Al Rajhi has never supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form) and *id.* at 355:4-8 (stating the same as to other Al Rajhi Bank officers and employees). <br><br> (2) The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, any Al Rajhi family member, or any Al Rajhi Bank officer for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5. <br><br> (3) No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). <br><br> (4) Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001* ("Terrorist Attacks IV"), 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg.* | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| | | ("Terrorist Attacks VII"), 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014). | |
| | | (5) Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks.  *See* ARB Aver. ¶ 41; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |
| | | (6) Plaintiffs do not trace any donation from Sulaiman bin Abdulaziz Al Rajhi or his charitable foundation to the funding of Al Qaeda or the financing, planning, or carrying out of the 9/11 Attacks.  *See* ARB Aver. ¶ 144; *generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |
| | | (7) Plaintiffs have no evidence that Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi Bank officer knew or had reason to know, before the 9/11 Attacks, of any charity's connection to Al Qaeda or any terrorism or plot of terrorism against the United States, including the 9/11 Attacks.  *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |
| | | (8) No charity identified in Plaintiffs' Averment, including Al Haramain Islamic Foundation, International Islamic Relief Organization, Muwaffaq Foundation, World Assembly of Muslim Youth, Muslim World League, Saudi Joint Relief Committee for Kosovo and Chechnya, Saudi High Commission for Bosnia-Herzegovina, and Lajnat al-Birr al-Islamiah, was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks.  *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."). | |

]

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections |
|---|---|---|---|
| 576 | This evidence makes clear that ARB and its principals knew and specifically intended that their support for al Qaeda would be leveraged to achieve al Qaeda's targeting of the United States. | 576.<br><br>Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>Disputed as conclusory; does not cite supporting evidence:<br><br>(1) Plaintiffs' averment is an unsupported legal conclusion to which no response is required.<br><br>Disputed as controverted by the evidence:<br><br>(1) Al Rajhi Bank has never supported Osama bin Laden, Al Qaeda or other terrorists, or terrorism in any form. Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 353:7-10, 355:4-8, 356:4-10; *see also id.* at 351:3-352:2, 352:18-353:5, 354:17-355:3 (stating to the best of his knowledge Sulaiman bin Abdulaziz Al Rajhi has never supported Osamabin Laden, Al Qaeda or other terrorists, or terrorism in any form) and *id.* at 355:4-8 (stating the same as to other Al Rajhi Bank officers and employees).<br><br>(2) The United States has never sanctioned or taken any action against Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, any Al Rajhi family member, or any Al Rajhi Bank officer for connections to terrorism. *See* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 160:10-15; 172:19-22; *see also* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) at 36:20-22, 37:12-20, 38:3-39:5.<br><br>(3) No governmental body anywhere has ever sanctioned or taken any other action against Al Rajhi Bank or Al Rajhi family members for involvement in terrorist financing. See generally Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.).<br><br>(4) Sulaiman bin Abdulaziz Al Rajhi was dismissed as a defendant in the 9/11 MDL litigation in 2010 for lack of personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001* ("Terrorist Attacks IV"), 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims | |

]

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS |
|---|---|---|---|
| | | against Sulaiman bin Abdulaziz Al Rajhi, a founder and former Chairman of the Bank), *aff'd sub nom. O'Neill v. Asat Tr. Reg.* ("Terrorist Attacks VII"), 714 F.3d 659, 675-76 (2d Cir. 2013), *cert denied* 134 S. Ct. 2870 (2014). | |
| | | (5) Plaintiffs have no evidence that Sulaiman bin Abdulaziz Al Rajhi, Abdullah bin Sulaiman Al Rajhi, or any Al Rajhi Bank officer knew or had reason to know, before the 9/11 Attacks, of any charity's connection to Al Qaeda or any terrorism or plot of terrorism against the United States, including the 9/11 Attacks. *See* ARB Aver. ¶ 146; *see also generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.). | |
| | | (6) No charity identified in Plaintiffs' Averment, including Al Haramain Islamic Foundation, International Islamic Relief Organization, Muwaffaq Foundation, World Assembly of Muslim Youth, Muslim World League, Saudi Joint Relief Committee for Kosovo and Chechnya, Saudi High Commission for Bosnia-Herzegovina, and Lajnat al-Birr al-Islamiah, was designated under any sanctions regime for connections to terrorism before the 9/11 Attacks. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); *see also* ARB Ex. 28 (Winer Dep. Tr. and Errata) at 57:7-12 ("To the best of my knowledge, there were no charities of any kind that I recollect that had been designated prior to 9/11 because terrorist designations were originally limited to terrorist organizations."). | |