# Exhibit B

~~UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS~~

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-07853
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00117
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450
*Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651
*Abarca, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887
*Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908
*Abedhajajreh, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617

## PLAINTIFFS' REPLY TO AL RAJHI BANK'S RESPONSE TO PLAINTIFFS' AVERMENT OF JURISDICTIONAL FACTS AND EVIDENCE AND/OR STATEMENT OF FACTS PURSUANT TO RULE 56.1

Defendant Al Rajhi Bank ("ARB") has filed a 757-page response to Plaintiffs' Averment of Jurisdictional Facts and Evidence and/or Statement of Facts Pursuant to Rule 56.1 (ECF No. 9872), and has improperly embedded extensive and inappropriate legal arguments, including citations to numerous federal court decisions, to unfairly extend its position beyond the permissible Court-mandated 50-page limit for its opening brief. *See* Order at ECF No. 9596. Indeed, if anything, ARB's response is quite telling in that it underscores a material disagreement between the parties as to the factual record. If the facts were properly credited under the jurisdictional standard in the light most favorable to the non-moving Plaintiffs, jurisdiction would necessarily be established as to ARB.

UNDER SEAL - SUBJECT TO FBI AND MDL PROTECTIVE ORDERS

Any evidentiary fact that ARB sought to introduce into the record to support its underlying motion was required to be brought through its Rule 56.1 Statement, and ARB has, in fact, availed itself of that opportunity. ARB's repetitive, unnecessary, and exhausting proffer of the identical arguments in this additional 757-page response, contending that the facts alleged in Plaintiffs' underlying Averment are either immaterial or incorrect, are specifically rejected by the Plaintiffs. Plaintiffs have, in fact, responded broadly and countered all the factual allegations raised by ARB in this submission through Plaintiffs' Counterstatement to Al Rajhi Bank's Averment of Jurisdictional Facts and Evidence in Support of its Renewed Motion to Dismiss. *See* Exhibit A, Declaration of J. Scott Tarbutton Transmitting Documents in Support of Plaintiffs' Opposition to Al Rajhi Bank's Renewed Motion to Dismiss.

Plaintiffs are not required to further provide an additional repetitive and duplicative response to ARB's response to Plaintiff's Averment of Jurisdictional Facts and will not burden the Court with what would amount to an additional duplicate response that would surely total several thousand pages in length with a matching point-by-point rebuttal to the same incorrect assertions made repeatedly by ARB.

Notwithstanding the foregoing, Plaintiffs provide a short statement below as to a handful of inappropriate objections made by ARB in its response at ECF No. 9872.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| 265 | ARB also maintained and operated accounts for seven of the 9/11 hijackers, as well as Sheikh Soliman Nassir Abdullah al Alwan, a radical cleric who recruited several of the 9/11 hijackers. | **Immaterial:**<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Immaterial with respect to the hijackers for the reasons stated in response to Section XIII (heading).<br><br>(3) Immaterial where none of the hijackers, including those who held accounts at the Bank, was designated before the 9/11 Attacks. ARB Aver. ¶ 95.<br><br>(4) Immaterial because the Bank had no reason to be suspicious of the hijackers who held accounts at the Bank before the 9/11 Attacks. *See, e.g.*, Pls. Ex. 44 (Staff Monograph) at 140-41 ("No one at SunTrust or any other financial institution thought, or had any reason to think, that the hijackers were criminals, let alone terrorists bent on mass murder, and no financial Institution had any reason to report their behavior to the government.").<br><br>(5) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21.<br><br>**Disputed as vague and conclusory:**<br><br>(1) Plaintiffs' averment as to "several of the 9/11 hijackers" is vague and cites to no supporting | | (1) ARB misread the allegation, which says "seven," not "several". Therefore, it is specific and not vague.<br><br>(2) The 9-11 Commission indicated al-Alwan probably played a role in the recruitment of al-Omari and two other hijackers in Buraydah:<br><br>According to the head of one of the training camps in Afghanistan, some [hijackers] were chosen by unnamed Saudi sheikhs who had contacts with Al Qaeda. Omari, for example, is believed to have been a student of a radical Saudi cleric named Sulayman Al Alwan. His mosque, which is located in Al Qassim province, is known among more moderate clerics as a "terrorist factory." The province is at the very heart of the strict Wahhabi movement in Saudi Arabia. Saeed al Ghamdi and Mohand al Shehri also spent time in Al Qassim, both breaking with their families." See 9/11 Commission Final Report, Plaintiffs' Ex. 40, page 233<br><br>The 2004 report of the 9-11 Commission states in a footnote that Al-Alwan "may have had a role in recruiting one or more of the muscle hijackers" in the Sept. 11 attacks, including Abdul Aziz al-Omari, Saeed al Ghamdi, and Mohand al Shehri. Id. at 233, 521. The hijacker Abdul Aziz al-Omari was a follower of al-Alwan, who taught at the College of Sharia where al-Omari studied in Buraydah and also preached at the Al Rajhi Mosque in Buraydah. Document available at: |

UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | evidence.<br><br>(2) Plaintiffs' averment cites to no evidence for, and is conclusory as to, its assertion that Sheikh Soliman Nassir Abdullah Al Alwan is a "radical cleric," or that he "recruited several of the 9/11 hijackers."<br><br>Disputed as controverted by the evidence and misleading:<br><br>(1) Plaintiffs' assertions are further misleading as only one of the hijackers had transactions in his accounts after November 2000. *See* ARB Ex. 79 (Abdulaziz Al-Omari statement of account) at ARB-0000004; ARB Ex. 80 (Wael Shehri statement of account) at ARB-00000960-973; ARB Ex. 81 (Saeed al Ghamdi statement of account) at ARB-00000850-855); ARB Ex. 82 (Saeed al Ghamdi Statement of account) at ARB-00000856-857; ARB Ex. 83 (Majed Moqed statement of account) at ARB- 00000836-840; ARB Ex. 84 (Ahmed al Ghamdi statement of account) at ARB-00000811-814.<br><br>(2) Plaintiffs' averment is misleading since Abdulaziz al Omari, the only hijacker to make any transactions through his Al Rajhi Bank account while in the United States, conducted just two transactions totaling SAR 875.59, or U.S. $233.43. ARB Ex. 79 (Abdulaziz Al-Omari Statement of Account) at ARB-0000004 (showing two transactions after Al-Omari's June 29, 2001 arrival in the USA: a credit of 706.86 SAR and a debit of 168.76 SAR).<br><br>(3) The Omari statement of accounts controvert | | https://www.latimes.com/archives/la-xpm-2003-apr-05-war-saudi5-story.html<br><br>Al-Alwan was arrested by Saudi police in 2004 and charged with "money laundering, meeting with dissidents and opposition figures, financing terrorism and bomb attacks, and issuing fatwas in rejection of those released by the Council of Senior Scholars." Document Available at https://en.shafaqna.com/106186/for-4-more-years-top-dissident-clerics-prison-sentence-extended-by-saudi-arabia/<br><br>As late as 2003, according to the Los Angeles Times, Al-Alwan continued to spew condemnations of the US from his pulpit at the Al-Rajhi Mosque. Document available at: https://www.latimes.com/archives/la-xpm-2003-apr-05-war-saudi5-story.html |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | Plaintiffs' assertions to the Second Circuit (*see* Pls. 2d Cir. Br. 46), that "September 11th hijacker al Omari . . . received a wire transfer on September 7, 2001 from ARB," and that "Mohammed Atta himself made a transfer to this account held by Omari." Omari did not receive a wire transfer through the Bank on September 7, 2001, and Atta did not make any transfer to Omari through the Bank during the relevant period. ARB Ex. 79 (Abdulaziz Al-Omari Statement of Account) at ARB-0000004.<br><br>(4)  Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); ARB Aver. ¶ 147. Moreover, Plaintiffs have no evidence that any Al Rajhi Bank official or principal or Al Rajhi family member had any relationship with members of Al Qaeda, the 9/11 hijackers, or any other terrorists. *See* ARB Aver. ¶ 7. | | |
| 266 | Al Alwan opened six separate accounts in the fall of 2000; three accounts on September 12, and another three accounts on October 9. | Immaterial:<br><br>(1)  Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2)   Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 | | See Alwan account information for such evidence at ARB-00039724-ARB-00039727.  See also ARB-00039727 (ARB Ex. 78) |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | (Kohlmann Dep. Tr. and Errata) at 32:15-21.<br>(3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan.<br><br>Disputed as conclusory; does not cite evidence:<br><br>(1) Plaintiffs' averment cites to no evidence for its assertion as to Sheikh Soliman Nassir Abdullah al Alwan's purported accounts at the Bank. | | |
| 267 | The al Alwan accounts were not within the scope of jurisdictional discovery - Plaintiffs know of them only as a result of incidental references in post-9/11 communications with SAMA, indicating that they were the subject of interest after 9/11. | Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. See ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21.<br><br>(3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan.<br><br>(4) Plaintiffs' characterization of Al Alwan's accounts as purportedly "of interest," even if credited, does not show that his accounts at Al Rajhi Bank were ever found to have been related to the funding of Al Qaeda or the planning, carrying out, or financing of the 9-11 Attacks or any other terrorism.<br><br>Disputed as conclusory; does not cite evidence: | | See Alwan account information at ARB-00039724-ARB-00039727 and preceding memoranda at ARB-00039724- ARB-00039725) showing that Alwan account information was produced by ARB to SAMA. (ARB Exh. 78)<br><br>The Alwan accounts were only reported by ARB in 2003, and only at the demand of SAMA. ARB's belated move to turn these records over to SAMA occurred only after SAMA came under pressure to cooperate by the 9-11 Commission (2002-2004) as it was investigating Alwan's role in the 9-11 attacks. |

UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | (1) Plaintiffs' averment cites to no evidence for its assertion as to Sheikh Soliman Nassir Abdullah al Alwan's purported accounts at the Bank. <br> <u>Disputed as controverted by the evidence; misleading</u>: <br> (1) Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); ARB Aver. ¶ 147. Moreover, Plaintiffs have no evidence that any Al Rajhi Bank official or principal or Al Rajhi family member had any relationship with members of Al Qaeda, the 9/11 hijackers, or any other terrorists. *See* ARB Aver. ¶ 7. <br><br> (2) The reporting of the al Alwan accounts by Al Rajhi Bank to SAMA directly undermines Plaintiffs' point that the Bank was turning a blind eye to money laundering and terrorism financing, the context of the document is that the accounts are being sent to SAMA. *See* ARB Ex. 78 (Jan. 26, 2003 Fax to SAMA) ARB- 00039724-27). <br><br> Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | | |
| | | | | |

UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| 269 | As late as 2003, reporting indicates that al Alwan spewed violent anti-American rhetoric to an audience of hundreds *at the Al Rajhi Mosque*, funded and named for Suleiman al Rajhi, telling listeners "America and their allies, hell is their destination for the crimes they have committed," and calling them "invaders and colonists." "*Young Saudis Eager to Battle Americans*," Kim Murphy, Los Angeles Times, April 5, 2003. | Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21.<br><br>(3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan.<br><br>(4) Plaintiffs' averment as to Al Alwan's purported statements, even if credited, is immaterial where the statements post-date the opening of his accounts and the date of the article cited by Plaintiffs (April 5, 2003) post-dates his reporting to SAMA by ARB (January 26, 2003). *See* ARB Ex. 78 (Jan. 26, 2003 Fax to SAMA) ARB-00039724-27.<br><br>(5) Plaintiffs' averment as to Al Rajhi Mosque is immaterial to show intentional, tortious act on behalf of Al Rajhi Bank or Sulaiman bin Abdulaziz Al Rajhi. Plaintiffs provide no evidence showing that Sulaiman bin Abdulaziz Al Rajhi or Al Rajhi Bank controlled who spoke at the mosque, or contributed further than potentially providing funds for the mosque's construction. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) | No exhibit number, but reliance on Los Angeles Times article is inadmissible hearsay. *See* Fed. R. Evid. 802. | Setting up three accounts for one retail customer on a single day and then creating three accounts for the same retail customer a year later, also on the same day, does not constitute routine banking services |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections | Response |
|---|---|---|---|---|
| | | at 41:5-18 (conceding that Sulaiman bin Abdulaziz al Rajhi may have only provided the funds for the mosque's construction and may also have no control over who may preach there).<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | | |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections | Response |
|---|---|---|---|---|
| 459 | The earliest information available to Plaintiffs concerning the use of ARB's correspondent account at Chase Manhattan to support al Qaeda is found in the investigative and audit report of Germany's Federal Office of Criminal Investigation, conducted in response to a request for judicial assistance from the Office of the Prosecutor for the International Criminal Tribunal for the Former Yugoslavia ("TWRA Audit"), concerning the | <u>Disputed as immaterial for the reasons discussed above in response to Section XI (heading) and ¶ 438.</u><br><br><u>Disputed as unsupported by the evidence:</u><br>(1) Plaintiffs' reference to the TWRA audit is misleading because Plaintiffs omit important context. The document does not show that Al Rajhi Bank's correspondent banking account with Chase Manhattan Bank were used to "support al Qaeda."<br><br>(2) Instead, the document states that "[a] suspicion [of Al Rajhi's relationship to 'Islamic terrorism'] could not be substantiated thus far." Pls. Ex. 113 (TWRA Expert Rep.) at 37. | | The evidence of these transactions through Chase Manhattan is clear and undisputed; defendants can only contest what it means. According to the audit, Al Rajhi Bank conducted at least three transactions through Chase Manhattan totaling $331,224 (adding routing numbers 5, 146 and 213) Pls. Ex. 113 (TWRA Expert Rep.) at 37<br><br>In addition, SAAR Foundation leader Ahmad Totonji transferred some $5 million to TWRA via Al Rajhi Bank (adding the two provided routing numbers 12 and 13). Pls. Ex. 113 (TWRA Expert Rep.) at 37. (p. 615)<br><br>According to the 9-11 Commission Report, Osama bin Laden "made use of the Third World Relief Agency." ." 9/11 Commission Final Report, (See Pls' Ex. 40, page 58) |

UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | finances of the TWRA | | | |
| 481 | Jaafar Idris, who worked out of the Ministry of Islamic Affairs' office in the Saudi Embassy in Washington, D.C. and also served as American Open University's president, is described by the FBI as "a close associate of jihadi groups operating with the U.S." *See id.* at 3562 | **Immaterial:** (1) Immaterial for the reasons discussed above in response to Section XI (heading) and ¶ 480. (2) Even if credited, Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know a Jaafar Idris was "a close associate of jihadi groups operating with the U.S." **Disputed as vague:** (1) Plaintiffs' averment in this paragraph is vague as to timing. **Disputed as misleading; does not cite to supporting evidence:** (1) The source cited by Plaintiffs is silent as to Jaafar Idris' work, and the cited page is wholly absent of assertions that he worked at the Ministry of Islamic Affairs' office in the Saudi Embassy in Washington D.C. or that he was the President of American Open university. *See* Pls. Ex. 51 (FBI Report, *Connections to the Attacks of September 11, 2001,* Jul. 23, 2021) at EO14040-003562- UPDATED. | | Defendant contests common knowledge facts published widely and never disputed. See Washington Post, "U.S. Revokes Visa of Cleric at Saudi Embassy; Monarchy to No Longer Be Islamic Institute's Sponsor," by Susan Schmidt and Caryle Murphy, 7 December 2003, p. A1. Widely circulated online biographies also identify Idris as the founder and president of American Open University. See, for example: https://islamio.com/en/watch/the-qurans-rational-arguments-session-2-the-rational-dr-jafar-idris-and-yassir-farzaga/ See also https://latinodawah.org/islamic-scholarship-in-america |
| 503 | Not long after the events involving Towayan, Saleh al Hussayen, the long-time advisor to Suleiman al Rajhi's charity committee/foundation, | **Immaterial:** (1) Immaterial for the reasons stated above in response to Section XII (heading). (2) In addition, Plaintiffs' averments about the SAAR Foundation and the Sulaiman bin Abdulaziz | Pls. Ex. 164: - Hearsay to which no exception applies. *See* | Additional evidence from discovery of Hussayen's ties to the Suleiman al Rajhi Foundation is found in NL 0010244 and concerns a $150,000 check to the Islamic Endowment Organization. According to the discovery translation, the check and the letter accompanying this check are written to "Sheikh Saleh bin Abdul Rahman |

UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | who previously also served on the Shariah Board of ARB, arrived in the United States to visit the Muslim World League office at 360 S. Washington Street, Falls Church, VA,[1] the World Assembly of Muslim office in Falls Church, VA, including entities associated with the SAAR Foundation. *See* Ex. 164, Susan Schmidt, *Spreading Saudi Fundamentalism in the U.S.*, Washington Post (October 2, 2003); Ex. 165, Transcript, October 21, 2019 Deposition of Ibrahim Abdullah ("Ibrahim Deposition"), at 207-209 (Ibrahim Abdullah, who served as the head of the WAMY office in Virginia, testified that he met with Hussayen in the U.S. just prior to the Se | Charitable Foundation are immaterial for the reasons discussed in response to Section IV (heading).<br><br>(3) Plaintiffs' averments about the Muslim World League ("MWL") and the World Assembly of Muslim (presumably, World Assembly of Muslim *Youth*) ("WAMY") are immaterial for the reasons discussed in response to Section VIII (heading). In particular, Plaintiffs' averments about MWL and WAMY are immaterial because:<br><br>(4) Neither entity was ever designated, either before or after 9/11. *See* ARB Aver. ¶¶ 67-68, 74.<br><br>(5) Plaintiffs do not show that the Bank knew, before 9/11, of any purported connection between MWL or WAMY and terrorism.<br><br>(6) Plaintiffs do not trace any transaction through Al Rajhi Bank from WAMY or MWL to terrorism or Al Qaeda, much less the 9/11 Attacks.<br><br>Disputed as ambiguous; vague:<br><br>(1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>Disputed as conclusory; unsupported; controverted by the evidence; incomplete; and misleading:<br><br>(1) Conclusory, vague, and unsupported as to "long-time advisor to Suleiman al Rajhi's charity | Fed. R. Evid. 802.<br>- Should be excluded under Rule 403 for unfair prejudice to the extent it uses prejudicial and accusatory rhetoric such as: "Hussayen, who was unavailable for comment, is accused of no wrongdoing. The Purpose of his meetings remains, in fact, a mystery." *See* Fed. R. Evid. 403. Pls. Ex. 165:<br><br>- Hearsay to which no exception | al Hassin". The Arabic characters are a close match to al-Hussayen.<br><br>Check from discovery:<br><br>Against this Cheque Pay to the Order of<br><br>Arabic of Saleh Ibn Abdul Rahman Hussayen: الح ابن عبدالرحمن الحصني<br><br>The letter to al-Hussayen from Suleiman al-Rajhi and Saleh al-Habdan states:<br><br>*This is with reference to the sequential incidents in Kosovo that caused harm to its Muslim people. Since the Islamic Endowment Organization has a distinguished activity in Eastern Europe, we decided to assign an amount of $150,000 USD to spend on relief work and Da'wah efforts with the refuges of Kosovo in Albania and Macedonia. We decided to write the check under your name since you are a member of the Board of Trustees of the Islamic Endowment Organization.*<br><br>The Arabic for Islamic Endowment Organization is also rendered more technically in English as Al Waqf Al Islam or Al Waqf al Islami (also often spelled Al Wakf al Islami). |

[1] The IIRO also shared office space at the 360 S. Washington address.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | committee/foundation." Plaintiffs do not aver evidence showing that Hussayen was a "long-time advisor" to either the SAAR Foundation or the Sulaiman bin Abdulaziz Charitable Foundation. Plaintiffs do not cite any evidence for this point in this paragraph of their Averment. In paragraph 44, Plaintiffs cite to the deposition of the Bank's Chairman. But the Bank's Chairman did *not* testify that Hussayen was a "long-time advisor to Suleiman al Rajhi's charity committee/foundation," as Plaintiffs aver here, nor did he testify that Hussayen was an "advisor" on the Chairman's father's "committee." To the contrary, when asked by Plaintiffs' counsel if Hussayen "was ever involved with either the charity office or the foundation," the Bank's Chairman answered, "It could be it could be he worked on one of those committees for a time." When asked specifically if he knew who the members of the committee were, he answered, "No." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 271:12-272:8 and Errata 271:25. (2) Plaintiffs' reference to "entities associated with the SAAR foundation" is conclusory, vague, unsupported, and contrary to the evidence. Plaintiffs do not point to any evidence showing that Hussayen visited any "entities associated with the SAAR Foundation." Plaintiffs do not show that MWL or WAMY were "entities associated with the SAAR Foundation." (3) Plaintiffs misrepresent Plaintiffs' Exhibit 164. Plaintiffs' Exhibit 164 reads that according to "sources" Hussayen was "scheduled to visit officials | applies. *See* Fed. R. Evid. 802. Lack of personal knowledge. *See* Fed. R. Evid. 602. | That is the name of a front group linked to the 9-11 attacks and al Haramain that operated in the Netherlands and set up branches in Kosovo, Albania and Macedonia in the 1980s and 1990s to spread radical Islam and (allegedly) terrorist violence, as described in a 2016 report in the New York Times.<br><br>Al Waqf al Islami was established in the Balkans in 1989. Most of its financing came from Saudi Arabia, Qatar, Kuwait and Bahrain, Kosovo investigators said in recent interviews. Unexplained gaps in its ledgers deepened suspicions that the group was surreptitiously funding clerics who were radicalizing young people, they said.<br><br>Investigators from Kosovo's Financial Intelligence Unit found that Al Waqf al Islami, which had an office in central Pristina and a staff of 12, ran through €10 million from 2000 through 2012. Yet they found little paperwork to explain much of the spending.<br><br>https://www.nytimes.com/2016/05/22/world/europe/how-the-saudis-turned-kosovo-into-fertile-ground-for-isis.html |

UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | at the Muslim World League," but does not say whether Hussayan did meet with officials of the Muslim World League or whether that was the purpose of the trip. *See* Pls. Ex. 164 (Susan Schmidt, *Spreading Saudi Fundamentalism in the U.S.*, Washington Post (October 2, 2003)) at 3. | | After Al Haramain was designated by Treasury in 2004, the Times reported, "Staff and equipment from Al-Haramain shifted to Al Waqf al Islami, moderate imams familiar with their activities said." https://www.nytimes.com/2016/05/22/world/europe/how-the-saudis-turned-kosovo-into-fertile-ground-for-isis.html |
| 546 | The evidence further shows that Suleiman al Rajhi had a close relationship with AHIF Director and SDGT Aqil al Aqil, as reflected by communications between Suleiman al Rajhi's charity committee/foundation and Aqil; the unusual payment Suleiman al Rajhi issued directly to Aqil, rather than AHIF itself; the extensive additional financial transactions between Abdul Rahman al Rajhi and Aqil; and Abdullah al Misfer's simultaneous roles as an official of Suleiman al Rajhi's charity | **Immaterial:** <br><br> (1) Immaterial for the reasons discussed above in response to Section XIV (heading). <br><br> (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). <br><br> (3) Plaintiffs' averments concerning the Sulaiman bin Abdulaziz Charitable Foundation are immaterial for the reasons discussed in Section IV (heading). <br><br> (4) Plaintiffs' averments with respect to Al Haramain are immaterial for the reasons discussed in Section V (heading). <br><br> **Disputed as conclusory; unsupported by the evidence:** <br><br> (1) Plaintiffs' characterizations regarding "a close relationship," "unusual payment," and "extensive additional financial transactions" are conclusory and not supported by the evidence cited by Plaintiffs, which only shows charitable donations from | | Making donations to the personal bank account of a charity executive instead of into the charity's own accounts is intrinsically unusual. <br><br> Abdul Rahman Abdullah Al-Rajhi is the owner/holder of three ARB accounts in the produced discovery. Two of the three ARB accounts are registered in ARB records as based at the same postal box used by the Suleiman al-Rajhi Charitable Committee. <br><br> These accounts (ARB-00041185 and ARB-00041176) are registered to this address: <br><br> P.O. Box ███ <br> Riyadh ███ <br> Kingdom of Saudi Arabia <br><br> According to numerous Saudi business directories and other reliable online sources, this is the official address of the Suleiman al-Rajhi Charitable Committee. This is also the address that the Suleiman al-Rajhi Charitable Committee provides for correspondence on its own |

13

UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | committee/foundation and AHIF itself. Ex. 4, Winer Report at 113- 17; Ex. 38, Kohlmann Report at 12; Ex. 194, (Abdullah al Rajhi Exhibit 51) ARB 39960 (showing committee/foundation payment to Aqil al Aqil); Ex. 196, (Abdullah al Rajhi Exhibit 55) at NL 10245 (correspondence with Aqil); Ex. 197, (Abdullah al Rajhi Exhibit 54) ARB 41464-41501 (Aqil account statement) at 41467, 41471-41473, 41476-41479 (transactions with Abdul Rahman al Rajhi). | Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation to Al Haramain through Aqil al Aqil, who served as the Director of the well-known, licensed charity.<br><br>(2) Plaintiffs cite no evidence supporting the statement that Abdullah Ibrahim al Misfer, who served as an official of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, simultaneously served as an official of Al Haramain.<br><br>(3) Some of the transfers Plaintiffs point to occurred between Aqil al Aqil and Abdul Rahman *Abdulaziz* Al Rajhi, an individual with no affiliation to with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation or to this litigation. *See* Pls. Ex. 115 (Aqil al Aqil statements of account) at ARB-41467 (showing a transaction with Abdul Rahman *Abdulaziz* Al Rajhi).<br><br>- Plaintiffs do not provide evidence showing that Abdul Rahman *Abdulaziz* Al Rajhi, the individual who had financial transactions with Aqil al Aqil, was an official of the Sulaiman bin Abdulaziz Charitable Foundation during the relevant period. Plaintiffs cite to a document that, if admissible, shows that the individual who worked at the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation was Abdul Rahman *bin Abdullah* Al Rajhi. Pls. Ex. 14 (Abdullah al Rajhi Exhibit 56) at NL 9625 ("Currently the Charity office is managed by Abdul Rahman Bin Abdullah Al Rajhi, Saleh Bin Sulaiman Al-Habdan and Abdullah I. Al- | | website:<br><br><br><br>https://www.rf.org.sa/en<br><br>The second named owner of these accounts is Saleh Soliman al Habdan, who appears likely to be the cleric Saleh al Habdan, longtime imam of the al-Rajhi Mosque in Riyadh. Saudi media also identifies "Salih al-Habdan" as Secretary General of the Sulaiman al-Rajhi Endowments. https://www.arabnews.com/node/334900/%7B%7B |

| Para. No. | Plaintiffs' Averment | Al Rajhi Bank's Response | Admissibility Objections | Response |
|---|---|---|---|---|
| | | Misfer"). | | |
| | | (4) While several transactions do occur between Aqil al Aqil and an "Abdul Rahman Al Rajhi" with no middle name included, Plaintiffs do not present any evidence showing that this Abdul Rahman Al Rajhi is Abdul Rahman Abdullah Al Rajhi, the individual who served as an official of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation. | | |
| | | Disputed as controverted by the evidence: | | |
| | | (1) Plaintiffs' characterization of a donation from the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation to Al Haramain through Aqil al Aqil as an "unusual payment" is controverted by evidence. | | |
| | | - During the relevant period, Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks. | | |
| | | - During the relevant period, charity officials routinely collected donations on behalf of charities of which they were officers, so the donation to Al Haramain through Aqil was not an "unusual payment." *See* ARB Ex. 2 (Hobayb Rep.) at 30-31. | | |
| | | - Moreover, a letter from a Saudi official instructs potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an officially sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex. 5 (Ltr. From KSA Gen. Pres. Of Scholarly Research) at ARB-38774-75. | | |

UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | (5) To the extent that in referencing "SDGT Aqil" Plaintiffs aver that Sulaiman bin Abdulaziz Al Rajhi made donations to Aqil after he was designated, that is controverted by evidence.<br><br>- Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks, including at the time of the donations referenced by Plaintiffs. *See* Pls. Ex. 48 (Designation of Aqil al Aqil) (showing Aqil was not designated until June 2, 2004). | | |
| 567 | Suleiman al Rajhi and ARB also financially supported Salman al Awdah during this period. *See* Ex. 9, *Funding Islamic Extremist Movements: The Role of Islamic Financial Institutions,* CIA_000720-804 at 748; Ex. 38, Kohlmann Report at 15-16. | Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Immaterial because Al Rajhi Bank had no relationship to Al Awdah beyond the provision of routine banking services. Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks.<br><br>(3) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(4) Immaterial as relating to conduct outside the relevant period.<br><br>(5) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported. | Pls. Ex. 9:<br>- Hearsay, as noted in response to Section VI (heading).<br><br>Pls. Ex. 38, p. 15-16:<br>- Should be excluded under Rule 403 for unfair prejudice and confusing the issue for attempting to impute liability through guilt by association | ARB omits the extensive evidence cited by Plaintiffs that ARB's relationship to Awdah ran through the Oregon branch of Al Haramain, supported the funding of Awdah's radical website Islam Today, and involved banking services that went far beyond routine. This information was summarized in Paragraph 485 of Plaintiffs' Corrected Averment (ECF No. 9764)<br><br>Further, Al Haramain's Oregon branch was used to launch Awdah's radical website Islam Today and the ARB transactions that funded Awda's site were the subject of extensive criminal enforcement activity. A series of four $30,000 wire transfers in the summer and fall of 2001 by Al Buthe that went to finance an Al Haramain website in the US were produced to the US government in June of 2002 showing that the destination recipient was Datapact Inc., a company allegedly owned by Albuthe in Oregon. ARB-00039626 (ARB Exh. 78)The records produced to plaintiffs for the same account and transactions are in ARB 000000858-959. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | (6) Immaterial as to Sulaiman bin Abdulaziz Al Rajhi's purported connection to Salman al Awdah where, even if credited, it shows nothing more than attempted guilt-by-association. <br><br> Disputed as conclusory; unsupported by the evidence: <br><br> (1) Even if admissible, the cited document provides no support for Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi or Al Rajhi Bank "financially supported Salman al Awdah." <br><br> (2) The CIA report states, without evidence, that "the Al Rajhi family . . . became a major financial supporter of Awdah." Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000748. <br><br> (3) As acknowledged in a 2003 CIA report, to the extent admissible, "[t]he Al Rajhi family" had "700 male members." Pls. Ex. 10 (2003 CIA Rep.) at CIA-Sub_003. <br><br> (4) Plaintiffs do not aver which, if any, Al Rajhi family members had a relationship with Salman Al-Awdah. <br><br> (5) Further, Plaintiffs omit that the report states that individuals like Awdah were attracted to Al Rajhi Bank because it was the only Shariah-compliant bank in Saudi Arabia during the relevant period. Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000748. | with individuals. *See* Fed. R. Evid. 403. <br><br> - Should be excluded to the extent expert testimony is used as a conduit for hearsay to which no exception applies. *See* Fed. R. Evid. 802. | The ARB records of the Datapact transactions were produced to the USG in mid-2002, but do not appear to have been publicly disclosed by federal prosecutors because they were classified. The file of these records is ARB 00039626. <br><br> Datapact was registered in Oregon in 1998 by Pirouz Sedaghaty aka Pete Seda and was based at the same address in Ashland as Al-Haramain. At his trial, prosecutors alleged that "Sedaghty was tasked with obtaining an internet service provider in Ashland, Oregon, which he did, that was used as a primary vehicle to launch a website called Islam Today by a sheikh, a radical sheikh in Saudi Arabia…" See below: FN2 <br><br> The US also alleged that these funds from Albuthe were put toward "purchasing an Internet Service Provider network to facilitate password protected communications and a website for radical clerics in the Middle East." See below: FN3 <br><br> At trial, a federal agent described Albuthe at the true owner of Datapact. See below FN4 <br><br> According to a Justice Department pretrial detention memorandum, "In 2000-2001, defendants Sedaghty and Al-Buthe purchased and operated an Internet Service Provider (ISP) in Ashland, Oregon on behalf of AHIF. This ISP was used to host websites known as islamtoday.com and islamtoday.net and were designed to allow radical Wahhabi clerics to broadcast messages |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | | | to followers throughout the world. These websites were controlled by a well-known cleric in Saudi Arabia named Sheikh Salman al-Oadah (also known as al-Awdah) who has issued religious fatwas advocating violence against the United States and reportedly wrote pamphlets for AL Qaeda. Published reports state that Osama bin Laden has declared al-Oadah to be "my ideal personality; a savior who is the first person to demand the withdrawal of U.S. troops from Saudi." See below FN5<br><br>FN2  *Case 6:05-cr-60008-AA Document 46 Filed 09/19/07*<br>FN3  *Case 6:05-cr-60008-AA Document 28 Filed 08/21/07*<br>FN4  *Case 6:05-cr-60008-AA Document 46 Filed 09/19/07*<br>FN5 - *Case 6:05-cr-60008-AA Document 28 Filed 08/21/07* |
| 569 | ARB discovery documents also reflect substantial payments from a "personal" account of Saleh bin Sulaiman al Habdan, of Suleiman al Rajhi's charity committee/foundation, to Sheikh Mohamed al Muhaisani in 1998 (87,750 SR) and 2002 (2,000,000 SR). *See* Ex. | **Immaterial:**<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments with respect to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are immaterial for the reasons discussed in response to Section IV (heading). | | There is no fair way to consider these transactions as the provision of routine financial services. The transaction involving Muhaisani is actually two highly unusual 2 million Saudi Riyal transfers that occurred on the same day. The 2 million from Muhaisani landed in Habdan's account for only a single day, causing his balance to balloon exponentially from 33,809.11 to 2,033,809.11. Habdan's balance then plunged back again when the funds were transferred onward, to an undisclosed recipient, on the same day.  See ARB-00041715 |

UNDER SEAL - SUBJECT TO MDL AND FBI PROTECTIVE ORDERS

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | 134, ARB 41668-41720 at ARB 41715. Based on the nature and amount of the payments, along with other transactions clearly showing the Habdan account was used to send money for Suleiman al Rajhi, the payments were comprised of Suleiman al Rajhi's funds. | (4) Immaterial as to Saleh bin Sulaiman al Habdan and Sheikh Mohamed al Muhaisani where, even if credited, it shows nothing more than attempted guilt-by-association.<br><br>Disputed as controverted by the evidence:<br><br>(1) The transaction Plaintiffs refer to is not a wire transfer from Saleh bin Sulaiman al Habdan to Mohamed al Muhaisani, but a transfer from Mohamed al Muhaisani to Saleh bin Sulaiman al Habdan. *See* Pls. Ex. 134 (Saleh al Habdan's Statements of Account) at ARB-41715.<br><br>(2) In any event, the transaction does not reflect any conduct by the Bank beyond the provision of routine financial services. | | |
| 572 | One of the "personal" accounts of Abdul Rahman al Rajhi, which again was plainly used to issue payments for Suleiman al Rajhi, similar reflects several financial transactions with Abdullah al Jibrin in 1999. *See* Ex. 129, ARB 40860-41153 at 40932, 40939, 41020. | Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>Disputed as conclusory; does not cite to supporting evidence:<br><br>(1) Plaintiffs assume, without evidence, that "Abdullah Hamad Saud al Jibrin" and "Abdullah Mohamed al Jibrin" are the same person. Pls. Ex. 129 (Abdul Rahman Al Rajhi personal accounts) at ARB-40932, ARB-40939, ARB- 41020. | | The full name of Sheikh Jibrin was Abdullah bin Abdul Rahman bin Abdullah bin Ibrahim bin Fahd bin Hamad bin Jibreen, according to his official website, which consists of four given names and three family names. https://ibn-jebreen.com/biography Variations are common in the identification of Saudis with complex and lengthy middle names.<br><br>Account records for Abdul Rahman al Rajhi show that Suleiman al Rajhi provided him a 250,000 SR deposit by check in 1999 (ARB-00040928) and a 300,000 deposit by check in 2000 (ARB-00040977). Suleiman al Rajhi's foundation, meanwhile, appears to have made at least 11 deposits in Abdul Rahman al Rajhi's account totaling over 2 million riyals, while also making at least ten withdrawals (ARB-00040928, |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| | | (2) Plaintiffs provide no evidence to support that Abdul Rahman al Rajhi's account was "plainly used to issue payments for Suleiman al Rajhi." | | ARB-00040931, ARB-00040947, ARB-00040966, ARB-00040977, ARB-00040983, ARB-00040987, ARB-00040989, ARB-00040991, ARB-00041074, ARB-00041084, ARB-00041085, ARB-00041141, ARB-00041142, ARB-00041143). |
| | | | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | ADMISSIBILITY OBJECTIONS | RESPONSE |
|---|---|---|---|---|
| 573 | Around the time of those transactions, Jibrin, who preached at the Al Rajhi mosque, issued a prominent "fatwa" concerning the "State of the Mujahedin and the Muslims' obligation towards them," in which he called for Muslims to provide weapons and financial support to jihad fighters. *See* Ex. 202. | Immaterial: (1) Immaterial for the reasons discussed above in response to Section XIV (heading). (2) Further, even if credited, Plaintiffs' averments concerning the Al Rajhi Mosque do not show any intentional, tortious act by Al Rajhi Bank expressly directed at the United States. (3) Plaintiffs cite no evidence connecting the Al Rajhi Mosque to Al Rajhi Bank. The Mosque is called Al Rajhi Mosque because a member of the family funded it, not because the family controls the mosque. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) 41:5-18. | Pls Ex. 202: - Hearsay to which no exception applies. *See* Fed. R. Evid. 802. - Lacks authentication. *See* Fed. R. Evid. 901. | Abdullah al Rajhi testified about the ties between the Al Rajhi family, the bank, the charities, the Foundation, and Al Rajhi Mosques. He acknowledged that Saleh al Habdan was both the imam of the Al Rajhi Mosque and an official of the SAAR charities. (Plaintiffs' Exhibit 1 at p.365). |

LEGAL\71757151\1