# Al Rajhi Bank Ex. B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |
| | ORAL ARGUMENT REQUESTED |
| *This document relates to:* | |
| *The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853; *Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663; *Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937; *Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-0117; *Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450; *Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651; *Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887; *Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908; *Abedhajajreh v. Kingdom of Saudi Arabia*, No. 17-cv-06123; *Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914; and *Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617 | |

**AL RAJHI BANK'S SUR-REPLY TO
PLAINTIFFS' AVERMENT OF JURISDICTIONAL FACTS AND EVIDENCE
AND/OR STATEMENT OF FACTS PURSUANT TO RULE 56.1**

Al Rajhi Bank has shown that Plaintiffs' Averment pursuant to Local Rule 56.1

(ECF No. 9764) does not establish personal jurisdiction over the Bank. *See* ARB Resp. to Pls.

Aver. (June 6, 2024), ECF No. 9872 ("Al Rajhi Bank's Response"); *see also* Mem. 28-49 (May 7,

2024), ECF No. 9786; Reply Br. 17-24 (Sept. 30, 2024). Indeed, except as to twelve of their

averments (*see* Pls. Reply to ARB Resp. to Pls. Aver. (July 22, 2024), ECF No. 10153-2 (Pls. Ex.

B) ("Plaintiffs' Reply Averment")), Plaintiffs do not articulate any counterargument to the
showing in Al Rajhi Bank's Response that Plaintiffs' averments were, in each case, (i) not
"material," (ii) not "followed by citation to evidence that would be admissible," (iii) conclusory or
argumentative, or (iv) some combination of the above.  Local Civ. R. 56.1(a) and (d); *SEC v.
Gallison*, 588 F. Supp. 3d 509, 514 n.1 (S.D.N.Y. 2022) (Daniels, J.) (explaining that statements
submitted pursuant to Rule 56.1 "are inappropriate if they are not based on personal knowledge,
contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting
evidence," and "a court may simply disregard" them).

Plaintiffs disingenuously take issue (at Pls. Reply Aver. 1-2) with the extent of the Bank's
Response, omitting that the Bank was merely responding to Plaintiffs' 576-paragraph Averment
(ECF No. 9764).  The length of the Bank's Response unavoidably resulted from Plaintiffs' own
failure to file a "short, and concise statement" of "material fact," as required by Local Civ. R.
56.1(a).  *See* Feb. 26, 2024 Order (ECF No. 9596) (directing Parties to file "averments and
submissions in the form contemplated by Local Civil Rule 56.1").  Plaintiffs' Reply Averment is
wrong (at 1) that Al Rajhi Bank's Response showed a "material disagreement" over the "factual
record" merely because the Bank complied with the requirement in Local Rule 56.1(d) to provide
"a citation to evidence" for each of its responses.  While the evidentiary *facts* are undisputed,
Plaintiffs' vague, conclusory, and argumentative *averments* are unsupported by or mischaracterize
the record.  *See Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 n.2 (2d Cir.
2015) (rejecting plaintiff's characterization of documentary evidence allegedly supporting
personal jurisdiction).  Plaintiffs fail to show, as they must, that any facts — whether or not
disputed — are "material" to establishing that the Bank "specifically intended" to support Al
Qaeda terrorism against the United States, or that any purported Bank conduct had a "reasonable

2

. . . temporal, geographical or causal connection, or proximity to the 9/11 attacks." *Fed. Ins. Co.*, 2023 WL 2430381, at *11, 15 (granting motion for summary judgment for lack of personal jurisdiction where "Plaintiffs' proffered facts fail to meet the burden for establishing this Court's personal jurisdiction").

Attempting to rehabilitate twelve averments, Plaintiffs' Reply Averment offers new averments and purports to introduce new evidence. Below, Al Rajhi Bank addresses only those new averments with their purportedly supporting evidence, and shows that Plaintiffs' Reply Averment suffers similar defects as Plaintiffs' Averment.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| 265 | ARB also maintained and operated accounts for seven of the 9/11 hijackers, as well as Sheikh Soliman Nassir Abdullah al Alwan, a radical cleric who recruited several of the 9/11 hijackers. | Immaterial: <br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading). <br><br>(2) Immaterial with respect to the hijackers for the reasons stated in response to Section XIII (heading). <br><br>(3) Immaterial where none of the hijackers, including those who held accounts at the Bank, was designated before the 9/11 Attacks. ARB Aver. ¶ 95. <br><br>(4) Immaterial because the Bank had no reason to be suspicious of the hijackers who held accounts at the Bank before the 9/11 Attacks. *See, e.g.,* Pls. Ex. 44 (Staff Monograph) at 140-41 ("No one at SunTrust or any other financial institution thought, or had any reason to think, that the hijackers were criminals, let alone terrorists bent on mass murder, and no financial Institution had any reason to report their behavior to the government."). <br><br>(5) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* | (1) ARB misread the allegation, which says "seven," not "several". Therefore, it is specific and not vague. <br><br>(2) The 9-11 Commission indicated al-Alwan probably played a role in the recruitment of al-Omari and two other hijackers in Buraydah: <br><br>According to the head of one of the training camps in Afghanistan, some [hijackers] were chosen by unnamed Saudi sheikhs who had contacts with Al Qaeda. Omari, for example, is believed to have been a student of a radical Saudi cleric named Sulayman Al Alwan. His mosque, which is located in Al Qassim province, is known among more moderate clerics as a "terrorist factory." The province is at the very heart of the strict Wahhabi movement in Saudi Arabia. Saeed al Ghamdi and Mohand al Shehri also spent time in Al Qassim, both breaking with their families." See 9/11 Commission Final Report, Plaintiffs' Ex. 40, page 233 <br><br>The 2004 report of the 9-11 Commission states in a footnote that Al-Alwan "may have had a role in recruiting one or more of the muscle | Plaintiffs do not dispute that averment 265 is immaterial. <br><br>Plaintiffs' new evidence does not support averment 265: <br><br>(1) Contrary to Plaintiffs' mischaracterization, the 9/11 Commission Report merely speculates that Sulayman Alwan "*may* have had a role in recruiting one or more of the muscle hijackers," but does not conclude this was "probabl[e]." Ex. 40, 9/11 Commission Report at 521 n.60 (emphasis added). <br><br>(2) The Los Angeles Times article that Plaintiffs cite (which is hearsay) refers to Al Alwan's condemnation of the U.S. invasion of Iraq, but does not suggest any attribution of this sentiment to the Al Rajhi family, much less Al Rajhi Bank. Plaintiffs cite nothing in the article, or any other evidence, to suggest that the Bank shared any ideology with Al Alwan or the hijackers. Plaintiffs' own expert Evan Kohlmann acknowledged that the "Al Rajhi Mosque" was so named merely because the Al-Rajhi family "sponsored" its construction, as they have |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21.<br><br>Disputed as vague and conclusory:<br><br>(1) Plaintiffs' averment as to "several of the 9/11 hijackers" is vague and cites to no supporting evidence.<br><br>(2) Plaintiffs' averment cites to no evidence for, and is conclusory as to, its assertion that Sheikh Soliman Nassir Abdullah Al Alwan is a "radical cleric," or that he "recruited several of the 9/11 hijackers."<br><br>Disputed as controverted by the evidence and misleading:<br><br>(1) Plaintiffs' assertions are further misleading as only one of the hijackers had transactions in his accounts after November 2000. *See* ARB Ex. 79 (Abdulaziz Al-Omari statement of account) at ARB-0000004; ARB Ex. 80 (Wael Shehri statement of account) at ARB-00000960-973; ARB Ex. 81 (Saeed al Ghamdi statement of account) at ARB-00000850-855); ARB Ex. 82 (Saeed al Ghamdi Statement of account) at ARB-00000856-857; ARB Ex. 83 (Majed Moqed statement of account) at ARB-00000836-840; ARB | hijackers" in the Sept. 11 attacks, including Abdul Aziz al-Omari, Saeed al Ghamdi, and Mohand al Shehri. Id. at 233, 521. The hijacker Abdul Aziz al-Omari was a follower of al-Alwan, who taught at the College of Sharia where al-Omari studied in Buraydah and also preached at the Al Rajhi Mosque in Buraydah. Document available at:<br><br>https://www.latimes.com/archives/l a-xpm-2003-apr-05-war-saudi5-story.html<br><br>Al-Alwan was arrested by Saudi police in 2004 and charged with "money laundering, meeting with dissidents and opposition figures, financing terrorism and bomb attacks, and issuing fatwas in rejection of those released by the Council of Senior Scholars." Document Available at https://en.shafaqna.com/106186/for-4-more-years-top-dissident-clerics-prison-sentence-extended-by-saudi-arabia/<br><br>As late as 2003, according to the Los Angeles Times, Al-Alwan continued to spew condemnations of the US from his pulpit at the Al-Rajhi Mosque. Document available at: https://www.latimes.com/archives/l | "numerous" others, and conceded that this is no basis to conclude that the Al Rajhi family had any control over who speaks at the mosque. *See* Pls. Ex. 171 (Kohlmann Dep. Tr.) at 41:5-42:3.<br><br>(3) Plaintiffs mischaracterize the Shafaqna.com article's reporting regarding the grounds for Al Alwan's arrest; according to the article (which also is hearsay), Al Alwan was arrested for refusing to issue a fatwa "in favor of" the House of Saud; after Al Alwan's release in 2013, a Saudi court "upheld" a 15-year sentence "from the date of his arrest in 2004." The article does not specify which "charge[s]" were the basis for the new sentence.<br><br>(4) Alwan's purported statements, and the cited article reporting the statements, post-date the opening of his accounts at Al Rajhi Bank and the 9/11 Attacks. *See* Resp. to Pls. Aver. ¶ 269. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | Ex. 84 (Ahmed al Ghamdi statement of account) at ARB-00000811-814.<br><br>(2) Plaintiffs' averment is misleading since Abdulaziz al Omari, the only hijacker to make any transactions through his Al Rajhi Bank account while in the United States, conducted just two transactions totaling SAR 875.59, or U.S. \$233.43. ARB Ex. 79 (Abdulaziz Al-Omari Statement of Account) at ARB-0000004 (showing two transactions after Al-Omari's June 29, 2001 arrival in the USA: a credit of 706.86 SAR and a debit of 168.76 SAR).<br><br>(3) The Omari statement of accounts controvert Plaintiffs' assertions to the Second Circuit (see Pls. 2d Cir. Br. 46), that "September 11th hijacker al Omari . . . received a wire transfer on September 7, 2001 from ARB," and that "Mohammed Atta himself made a transfer to this account held by Omari." Omari did not receive a wire transfer through the Bank on September 7, 2001, and Atta did not make any transfer to Omari through the Bank during the relevant period. ARB Ex. 79 (Abdulaziz Al-Omari Statement of Account) at ARB-0000004.<br><br>(4) Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, | a-xpm-2003-apr-05-war-saudi5-story.html | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | carrying out, or financing of the 9/11 Attacks or any other terrorism. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); ARB Aver. ¶ 147. Moreover, Plaintiffs have no evidence that any Al Rajhi Bank official or principal or Al Rajhi family member had any relationship with members of Al Qaeda, the 9/11 hijackers, or any other terrorists. *See* ARB Aver. ¶ 7. | | |
| 266 | Al Alwan opened six separate accounts in the fall of 2000; three accounts on September 12, and another three accounts on October 9. | Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section VIII (heading).<br><br>(2) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21.<br><br>(3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan.<br><br>Disputed as conclusory; does not cite evidence: | See Alwan account information for such evidence at ARB-00039724-ARB-00039727. See also ARB-00039727 (ARB Ex. 78) | Plaintiffs do not contest that averment 266 is immaterial. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | (1) Plaintiffs' averment cites to no evidence for its assertion as to Sheikh Soliman Nassir Abdullah al Alwan's purported accounts at the Bank. | | |
| 267 | The al Alwan accounts were not within the scope of jurisdictional discovery - Plaintiffs know of them only as a result of incidental references in post-9/11 communications with SAMA, indicating that they were the subject of interest after 9/11. | Immaterial: (1) Immaterial for the reasons stated above in response to Section VIII (heading). (2) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21. (3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan. (4) Plaintiffs' characterization of Al Alwan's accounts as purportedly "of interest," even if credited, does not show that his accounts at Al Rajhi Bank were ever found to have been related to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism. Disputed as conclusory; does not cite evidence: | See Alwan account information at ARB-00039724-ARB-00039727 and preceding memoranda at ARB-00039724-        ARB-00039725) showing that Alwan account information was produced by ARB to SAMA. (ARB Exh. 78) The Alwan accounts were only reported by ARB in 2003, and only at the demand of SAMA. ARB's belated move to turn these records over to SAMA occurred only after SAMA came under pressure to cooperate by the 9-11 Commission (2002-2004) as it was investigating Alwan's role in the 9-11 attacks. | Plaintiffs do not contest that averment 267 is immaterial. Plaintiffs do not dispute that the Bank fully complied with SAMA's request. Plaintiffs do not dispute that averment 267 is controverted by the evidence and misleading. Plaintiffs' Reply Averment is disputed as conclusory; does not cite evidence: – Plaintiffs cite no evidence for their speculation that the Bank's reporting to SAMA of the Al Alwan accounts — or any other information that SAMA requested — was purportedly "belated" or the result of any "pressure" on SAMA, much less the Bank. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | (1) Plaintiffs' averment cites to no evidence for its assertion as to Sheikh Soliman Nassir Abdullah al Alwan's purported accounts at the Bank.<br><br>Disputed as controverted by the evidence; misleading:<br><br>(1) Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks or any other terrorism. *See generally* Pls. Aver.; Pls. Ex. 4 (Winer Rep.); Pls. Ex. 38 (Kohlmann Rep.); ARB Aver. ¶ 147. Moreover, Plaintiffs have no evidence that any Al Rajhi Bank official or principal or Al Rajhi family member had any relationship with members of Al Qaeda, the 9/11 hijackers, or any other terrorists. *See* ARB Aver. ¶ 7.<br><br>(2) The reporting of the al Alwan accounts by Al Rajhi Bank to SAMA directly undermines Plaintiffs' point that the Bank was turning a blind eye to money laundering and terrorism financing, the context of the document is that the accounts are being sent to SAMA. *See* ARB Ex. 78 (Jan. 26, 2003 Fax to SAMA) ARB- 00039724-27).<br><br>Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence | | |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | | |
| 269 | As late as 2003, reporting indicates that al Alwan spewed violent anti-American rhetoric to an audience of hundreds *at the Al Rajhi Mosque*, funded and named for Suleiman al Rajhi, telling listeners "America and their allies, hell is their destination for the crimes they have committed," and calling them "invaders and colonists." *"Young Saudis Eager to Battle Americans,"* Kim Murphy, Los Angeles Times, April 5, 2003. | Immaterial: (1) Immaterial for the reasons stated above in response to Section VIII (heading). (2) Plaintiffs' averment as to Sheikh Soliman Nassir Abdullah Al Alwan is immaterial to show knowledge or tortious conduct on behalf of the Bank where Al Alwan was never designated by the United States government. *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 32:15-21. (3) Even if credited, Plaintiffs' averment is immaterial where, at most, it only shows that Al Rajhi Bank provided routine financial services to Al Alwan. (4) Plaintiffs' averment as to Al Alwan's purported statements, even if credited, is immaterial where the statements post-date the opening of his accounts and the date of the article cited by Plaintiffs (April 5, 2003) post-dates his reporting to SAMA by ARB (January 26, 2003). *See* ARB Ex. 78 (Jan. 26, 2003 Fax to SAMA) ARB-00039724-27. (5) Plaintiffs' averment as to Al Rajhi Mosque is immaterial to show | Setting up three accounts for one retail customer on a single day and then creating three accounts for the same retail customer a year later, also on the same day, does not constitute routine banking services | Plaintiffs do not contest that averment 269 is immaterial for the reasons given in subparagraphs (1), (2), (4), and (5) of Al Rajhi Bank's Response to averment 269 (*see* second column herein). Plaintiffs' Reply Averment is disputed as conclusory; does not cite evidence: – Plaintiffs cite no evidence for their assertion that the Bank's opening of several accounts for Al Alwan, one of millions of retail customers (*see* ARB Aver. ¶ 14), was anything other than the provision of routine banking services, particularly in the context of Saudi Arabian banking practices in the 1990s. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | intentional, tortious act on behalf of Al Rajhi Bank or Sulaiman bin Abdulaziz Al Rajhi. Plaintiffs provide no evidence showing that Sulaiman bin Abdulaziz Al Rajhi or Al Rajhi Bank controlled who spoke at the mosque, or contributed further than potentially providing funds for the mosque's construction.   *See* ARB. Ex. 93 (Kohlmann Dep. Tr. and Errata) at 41:5-18 (conceding that Sulaiman bin Abdulaziz al Rajhi may have only provided the funds for the mosque's construction and may also have no control over who may preach there). Disputed to the extent that Plaintiffs attempt to excuse their lack of sufficient evidence on the basis of "limited" jurisdictional discovery, for the reasons discussed above in response to the averments in Section III. | | |
| 459 | The earliest information available to Plaintiffs concerning the use of ARB's correspondent account at Chase Manhattan to support al Qaeda is found in the audit report of Germany's Federal Office of Criminal Investigation, conducted in response to a request for | Disputed as immaterial for the reasons discussed above in response to Section XI (heading) and ¶ 438. Disputed as unsupported by the evidence: (1) Plaintiffs' reference to the TWRA audit is misleading because Plaintiffs omit important context. The document does not show that Al Rajhi Bank's correspondent banking account with | The evidence of these transactions through Chase Manhattan is clear and undisputed; defendants can only contest what it means. According to the audit, Al Rajhi Bank conducted at least three transactions through Chase Manhattan totaling $331,224 (adding routing numbers 5, 146 and 213) Pls. Ex. 113 (TWRA Expert Rep.) at 37. | Plaintiffs contest the immateriality of averment 459, but do not attempt to contest, and provide no evidence to refute, the bases for Al Rajhi Bank's immateriality objection in the Bank's Response to averment 459 (*see* second column herein), including that: (1) The TWRA audit fails to show that Al Rajhi Bank's correspondent banking account |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | judicial assistance from the Office of the Prosecutor for the International Criminal Tribunal for the Former Yugoslavia ("TWRA Audit"), concerning the finances of the TWRA | Chase Manhattan Bank were used to "support al Qaeda." <br><br> (2) Instead, the document states that "[a] suspicion [of Al Rajhi's relationship to 'Islamic terrorism'] could not be substantiated thus far." Pls. Ex. 113 (TWRA Expert Rep.) at 37. | In addition, SAAR Foundation leader Ahmad Totonji transferred some $5 million to TWRA via Al Rajhi Bank (adding the two provided routing numbers 12 and 13). Pls. Ex. 113 (TWRA Expert Rep.) at 37. (p. 615) <br><br> According to the 9-11 Commission Report, Osama bin Laden "made use of the Third World Relief Agency." 9/11 Commission Final Report, (See Pls' Ex. 40, page 58) | with Chase Manhattan Bank was used to "support al Qaeda." <br><br> (2) The TWRA auditors were unable to substantiate any "suspicion" of a relationship between Al Rajhi Bank and Islamic terrorism. <br><br> Plaintiffs' new evidence is contested as immaterial: <br><br> (1) The cited statement from the 9/11 Commission report is immaterial to show that Al Rajhi Bank expressly aimed intentional, tortious conduct at the United States where: <br><br> (i) The 9/11 Commission did not find that TWRA was complicit in purportedly being "made use of" by Bin Laden; <br><br> (ii) TWRA was never designated by the United States government; <br><br> (iii) Plaintiffs cite no evidence that any TWRA funds were intended for or reached Al Qaeda, much less were used by Al Qaeda for terrorism against the United States. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | | | (2) The two purported transactions by "Ahmad Totonji" are immaterial to show that Al Rajhi Bank expressly aimed intentional, tortious conduct at the United States where: <br><br> (i) Plaintiffs cite no evidence that Totonji was ever an employee or agent of the Bank; <br><br> (ii) Totonji was never designated by the United States government; <br><br> (iii) Plaintiffs cite no evidence that any of the funds Totonji purportedly sent to TWRA in 1992 (as alleged in averment 464) were intended for or reached Al Qaeda, much less were used by Al Qaeda for terrorism against the United States; <br><br> (3) Plaintiffs do not contest that averment 464 — specifically alleging the purported transactions involving Totonji and TWRA — is immaterial. |
| 481 | Jaafar Idris, who worked out of the Ministry of Islamic Affairs' office in | Immaterial: | Defendant contests common knowledge facts published widely and never disputed. See | Plaintiffs do not contest that averment 481 is immaterial. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | the Saudi Embassy in Washington, D.C. and also served as American Open University's president, is described by the FBI as "a close associate of jihadi groups operating with the U.S." *See id.* at 3562 | (1) Immaterial for the reasons discussed above in response to Section XI (heading) and ¶ 480.<br><br>(2) Even if credited, Plaintiffs have no evidence that Al Rajhi Bank knew or had reason to know a Jaafar Idris was "a close associate of jihadi groups operating with the U.S."<br><br>Disputed as vague:<br><br>(1) Plaintiffs' averment in this paragraph is vague as to timing.<br><br>Disputed as misleading; does not cite to supporting evidence:<br><br>(1) The source cited by Plaintiffs is silent as to Jaafar Idris' work, and the cited page is wholly absent of assertions that he worked at the Ministry of Islamic Affairs' office in the Saudi Embassy in Washington D.C. or that he was the President of American Open university. *See* Pls. Ex. 51 (FBI Report, *Connections to the Attacks of September 11, 2001*, Jul. 23, 2021) at EO14040-003562- UPDATED. | Washington Post, "U.S. Revokes Visa of Cleric at Saudi Embassy; Monarchy to No Longer Be Islamic Institute's Sponsor," by Susan Schmidt and Caryle Murphy, 7 December 2003, p. A1.<br><br>Widely circulated online biographies also identify Idris as the founder and president of American Open University. See, for example: https://islamio.com/en/watch/the-qurans-rational-arguments-session-2-the-rational-dr-jafar-idris-and-yassir-farzaga/<br><br>See also https://latinodawah.org/islamic-scholarship-in-america | Plaintiffs do not contest that averment 481 is vague.<br><br>Plaintiffs' Reply Averment is disputed as unsupported by evidence.<br><br>– Plaintiffs' characterization of averment 481 as "common knowledge facts" is misleading and incorrect. Plaintiffs cite no evidence that the facts of Idris's employment meet the criteria of judicial notice under Rule 201(a), including that these facts are "generally known within [this] court's territorial jurisdiction." Fed. R. Evid. 201(a). The cited media reports make no such assertion. The December 2003 Washington Post article that Plaintiffs cite cannot establish that anything about Idris was "common knowledge" during the relevant period. Plaintiffs also provide no support for their assertion that the websites "islamio.com" and "latinodawah.org" are "widely circulated." |
| 503 | Not long after the events involving Towayan, Saleh al Hussayen, the long-time advisor to Suleiman al | Immaterial:<br><br>(1) Immaterial for the reasons stated above in response to Section XII (heading). | Additional evidence from discovery of Hussayen's ties to the Suleiman al Rajhi Foundation is found in NL 0010244 and concerns a $150,000 | Plaintiffs do not contest that averment 503 is immaterial. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | Rajhi's charity committee/foundation, who previously also served on the Shariah Board of ARB, arrived in the United States to visit the Muslim World League office at 360 S. Washington Street, Falls Church, VA,[1] the World Assembly of Muslim office in Falls Church, VA, including entities associated with the SAAR Foundation. *See* Ex. 164, Susan Schmidt, *Spreading Saudi Fundamentalism in the U.S.*, Washington Post (October 2, 2003); Ex. 165, Transcript, October 21, 2019 Deposition of Ibrahim Abdullah ("Ibrahim Deposition"), at 207-209 (Ibrahim Abdullah, who served as the head of the WAMY office in Virginia, testified that he met with Hussayen in the U.S. just prior to the Se | (2) In addition, Plaintiffs' averments about the SAAR Foundation and the Sulaiman bin Abdulaziz Charitable Foundation are immaterial for the reasons discussed in response to Section IV (heading).<br><br>(3) Plaintiffs' averments about the Muslim World League ("MWL") and the World Assembly of Muslim (presumably, World Assembly of Muslim *Youth*) ("WAMY") are immaterial for the reasons discussed in response to Section VIII (heading). In particular, Plaintiffs' averments about MWL and WAMY are immaterial because:<br><br>(4) Neither entity was ever designated, either before or after 9/11. *See* ARB Aver. ¶¶ 67-68, 74.<br><br>(5) Plaintiffs do not show that the Bank knew, before 9/11, of any purported connection between MWL or WAMY and terrorism.<br><br>(6) Plaintiffs do not trace any transaction through Al Rajhi Bank from WAMY or MWL to terrorism or Al Qaeda, much less the 9/11 Attacks.<br><br>Disputed as ambiguous; vague: | check to the Islamic Endowment Organization. According to the discovery translation, the check and the letter accompanying this check are written to "Sheikh Saleh bin Abdul Rahman al Hassin". The Arabic characters are a close match to al-Hussayen.<br><br>Check from discovery:<br><br>ادفعوا لأمر/ صالح بن عبد الرحمن الحسين<br><br>Arabic of Saleh Ibn Abdul Rahman Hussayen: نبا حلا صحلا نمحرلادبع<br><br>The letter to al-Hussayen from Suleiman al-Rajhi and Saleh al-Habdan states:<br><br>*This is with reference to the sequential incidents in Kosovo that caused harm to its Muslim people.*<br><br>*Since the Islamic Endowment Organization has a distinguished activity in Eastern Europe, we decided to assign an amount of $150,000 USD to spend* | Plaintiffs do not contest that averment 503's reference to "committee/ foundation" is ambiguous and vague.<br><br>Plaintiffs do not dispute that averment 503 is conclusory; unsupported; controverted by the evidence; incomplete; and misleading for the reasons stated in subparagraphs (1), (2), and (3) of Al Rajhi Bank's Response to averment 503 (*see* second column herein).<br><br>Plaintiffs' Reply Averment is contested as immaterial:<br><br>(1) Plaintiffs' Reply Averment is immaterial for the same reasons as averment 503, as discussed in Al Rajhi Bank's Response to Plaintiffs' Averment, Section XII (heading), and for the reasons discussed in Al Rajhi Bank's Response to Plaintiffs' Averment, Section IV (Heading), including that Plaintiffs have provided no factual basis to impute to the Bank the conduct of Sulaiman bin Abdulaziz Al Rajhi in his |

---

[1]   The IIRO also shared office space at the 360 S. Washington address.

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
|  |  | (1) Plaintiffs' reference to "committee/foundation" is ambiguous and vague. There is no basis to conflate the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in the United States with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation in Riyadh.<br><br>Disputed as conclusory; unsupported; controverted by the evidence; incomplete; and misleading:<br><br>(1) Conclusory, vague, and unsupported as to "long-time advisor to Suleiman al Rajhi's charity committee/foundation." Plaintiffs do not aver evidence showing that Hussayen was a "long-time advisor" to either the SAAR Foundation or the Sulaiman bin Abdulaziz Charitable Foundation. Plaintiffs do not cite any evidence for this point in this paragraph of their Averment. In paragraph 44, Plaintiffs cite to the deposition of the Bank's Chairman. But the Bank's Chairman did *not* testify that Hussayen was a "long-time advisor to Suleiman al Rajhi's charity committee/foundation," as Plaintiffs aver here, nor did he testify that Hussayen was an "advisor" on the Chairman's father's "committee." To the contrary, when asked by Plaintiffs' counsel if Hussayen "was ever involved | on relief work and Da'wah efforts with the refugees of Kosovo in Albania and Macedonia. We decided to write the check under your name since you are a member of the Board of Trustees of the Islamic Endowment Organization.*<br><br>The Arabic for Islamic Endowment Organization is also rendered more technically in English as Al Waqf Al Islam or Al Waqf al Islami (also often spelled Al Wakf al Islami).<br><br>That is the name of a front group linked to the 9-11 attacks and al Haramain that operated in the Netherlands and set up branches in Kosovo, Albania and Macedonia in the 1980s and 1990s to spread radical Islam and (allegedly) terrorist violence, as described in a 2016 report in the New York Times.<br><br>Al Waqf al Islami was established in the Balkans in 1989. Most of its financing came from Saudi Arabia, Qatar, Kuwait and Bahrain, Kosovo investigators said in recent interviews. Unexplained gaps in its | personal capacity, such as his charitable giving;<br><br>(2) Immaterial because Plaintiffs' Reply Averment does not show that Al Rajhi Bank expressly aimed intentional, tortious conduct at the United States where:<br><br>(i) The New York Times article Plaintiffs rely on (which is hearsay) reports that the stated mission of Islamic Endowment Organization was the "support of orphans"; any funding allegedly diverted from Al Waqf al Islami was done "surreptitiously"; and that any diverted funding was allegedly provided to "clerics who were radicalizing young people" but not necessarily for terrorism, much less terrorism against the United States;<br><br>(ii) The Islamic Endowment Organization was never designated by the United States government; |

16

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | with either the charity office or the foundation," the Bank's Chairman answered, "It could be it could be he worked on one of those committees for a time." When asked specifically if he knew who the members of the committee were, he answered, "No." Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 271:12-272:8 and Errata 271:25.<br><br>(2) Plaintiffs' reference to "entities associated with the SAAR foundation" is conclusory, vague, unsupported, and contrary to the evidence. Plaintiffs do not point to any evidence showing that Hussayen visited any "entities associated with the SAAR Foundation." Plaintiffs do not show that MWL or WAMY were "entities associated with the SAAR Foundation."<br><br>(3) Plaintiffs misrepresent Plaintiffs' Exhibit 164. Plaintiffs' Exhibit 164 reads that according to "sources" Hussayen was "scheduled to visit officials at the Muslim World League," but does not say whether Hussayen did meet with officials of the Muslim World League or whether that was the purpose of the trip. *See* Pls. Ex. 164 (Susan Schmidt, *Spreading Saudi Fundamentalism in the U.S.*, | ledgers deepened suspicions that the group was surreptitiously funding clerics who were radicalizing young people, they said.<br><br>Investigators from Kosovo's Financial Intelligence Unit found that Al Waqf al Islami, which had an office in central Pristina and a staff of 12, ran through €10 million from 2000 through 2012. Yet they found little paperwork to explain much of the spending.<br><br>https://www.nytimes.com/2016/05/22/world/europe/how-the-saudis-turned-kosovo-into-fertile-ground-for-isis.html<br><br>After Al Haramain was designated by Treasury in 2004, the Times reported, "Staff and equipment from Al-Haramain shifted to Al Waqf al Islami, moderate imams familiar with their activities said."<br><br>https://www.nytimes.com/2016/05/22/world/europe/ho | (iii) Plaintiffs cite no evidence that funds from Islamic Endowment Organization ever reached Al Qaeda, much less were used by Al Qaeda for terrorism against the United States;<br><br>(iv) Plaintiffs offer no basis or evidence to construe the referenced letter, and the check, at other than face value, i.e., as evidence that funds provided to the Islamic Endowment Organization were "for relief work and Da'wah efforts with the refugees of Kosovo in Albania and Macedonia," rather than for acts of terrorism against the United States.<br><br>Plaintiffs' new evidence is disputed as misleading; does not support their Reply Averment:<br><br>(1) Plaintiffs speculate but cite no evidence that "Islamic Endowment Organization" is in fact the entity "Al Waqf al Islami." The New York Times article that Plaintiffs cite (which is hearsay) does not make this assertion, and thus the article's |

17

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | Washington Post (October 2, 2003)) at 3. | w-the-saudis-turned-kosovo-into-fertile-ground-for-isis.html | reporting on Al Waqf al Islami does not support Plaintiffs' Reply Averment; and<br><br>(2) Plaintiffs fail to submit as evidence the letter and check they purport to rely on. |
| 546 | The evidence further shows that Suleiman al Rajhi had a close relationship with AHIF Director and SDGT Aqil al Aqil, as reflected by communications between Suleiman al Rajhi's charity committee/foundation and Aqil; the unusual payment Suleiman al Rajhi issued directly to Aqil, rather than AHIF itself; the extensive additional financial transactions between Abdul Rahman al Rajhi and Aqil; and Abdullah al Misfer's simultaneous roles as an official of Suleiman al Rajhi's charity committee/foundation and AHIF itself. Ex. 4, Winer Report at 113- 17; Ex. 38, Kohlmann Report at 12; Ex. 194, (Abdullah al Rajhi Exhibit 51) ARB 39960 | Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments concerning the Sulaiman bin Abdulaziz Charitable Foundation are immaterial for the reasons discussed in Section IV (heading).<br><br>(4) Plaintiffs' averments with respect to Al Haramain are immaterial for the reasons discussed in Section V (heading).<br><br>Disputed as conclusory; unsupported by the evidence:<br><br>(1) Plaintiffs' characterizations regarding "a close relationship," "unusual payment," and "extensive additional | Making donations to the personal bank account of a charity executive instead of into the charity's own accounts is intrinsically unusual.<br><br>Abdul Rahman Abdullah Al-Rajhi is the owner/holder of three ARB accounts in the produced discovery. Two of the three ARB accounts are registered in ARB records as based at the same postal box used by the Suleiman al-Rajhi Charitable Committee.<br><br>These accounts (ARB-00041185 and ARB-00041176) are registered to this address:<br><br>Kingdom of Saudi Arabia<br><br>According to numerous Saudi business directories and other reliable online sources, this is the official address of the Suleiman al-Rajhi Charitable Committee. This is | Plaintiffs do not contest that averment 546 is immaterial.<br><br>Plaintiffs do not dispute that averment 546 is unsupported by evidence:<br><br>– Plaintiffs do not dispute that they lack evidence that Abdullah *Ibrahim* al Misfer, who served as an official of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, simultaneously served as an official of Al Haramain.<br><br>Plaintiffs do not dispute facts controverting averment 546:<br><br>(1) Plaintiffs do not dispute that Abdul Rahman *Abdulaziz* Al Rajhi, sender of the cited donations, is a different person from Abdul Rahman bin *Abdullah* Al Rajhi, the official at the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, such that the donations cannot be linked to |

18

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | (showing committee/foundation payment to Aqil al Aqil); Ex. 196, (Abdullah al Rajhi Exhibit 55) at NL 10245 (correspondence with Aqil); Ex. 197, (Abdullah al Rajhi Exhibit 54) ARB 41464-41501 (Aqil account statement) at 41467, 41471-41473, 41476- 41479 (transactions with Abdul Rahman al Rajhi). | financial transactions" are conclusory and not supported by the evidence cited by Plaintiffs, which only shows charitable donations from Sulaiman bin Abdulaziz Al Rajhi and the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation to Al Haramain through Aqil al Aqil, who served as the Director of the well-known, licensed charity.<br><br>(2) Plaintiffs cite no evidence supporting the statement that Abdullah Ibrahim al Misfer, who served as an official of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, simultaneously served as an official of Al Haramain.<br><br>(3) Some of the transfers Plaintiffs point to occurred between Aqil al Aqil and Abdul Rahman *Abdulaziz* Al Rajhi, an individual with no affiliation to with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation or to this litigation. *See* Pls. Ex. 115 (Aqil al Aqil statements of account) at ARB-41467 (showing a transaction with Abdul Rahman *Abdulaziz* Al Rajhi).<br><br>    –    Plaintiffs do not provide evidence showing that Abdul Rahman *Abdulaziz* Al Rajhi, the individual who had financial transactions with Aqil al | also the address that the Suleiman al-Rajhi Charitable Committee provides for correspondence on its own website:<br><br>**Contact information**<br><br>⦿ Riyadh - Al-Jazeera<br>☎ 011-2411600<br>🖶 011-2704342<br>🖃 25759<br>📍 Riyadh 11476<br>@ Info@rf.org.sa<br><br>https://www.rf.org.sa/en<br><br>The second named owner of these accounts is Saleh Soliman al Habdan, who appears likely to be the cleric Saleh al Habdan, longtime imam of the al-Rajhi Mosque in Riyadh. Saudi media also identifies "Salih al-Habdan" as Secretary General of the Sulaiman al-Rajhi Endowments.<br><br>https://www.arabnews.com/node/334900/%7B%7B | the Charitable Foundation or Sulaiman bin Abdulaziz Al Rajhi, much less the Bank;<br><br>(2) Although Plaintiffs' Reply Averment relies on the statements of account for Abdul Rahman *Abdullah* Al Rajhi, Plaintiffs cannot match in those accounts any cited transactions — including those from "Abdul Rahman Al Rajhi" with no middle name included — to Aqil al Aqil;<br><br>(3) Plaintiffs cannot dispute that, at the time of the cited transactions (and during the entire relevant period), Aqil al Aqil was not designated and thus is misleadingly and incorrectly characterized in averment 546 as "SDGT Aqil."<br><br>Plaintiffs' Reply Averment is disputed as vague, conclusory, and unsupported by evidence.<br><br>(1) Plaintiffs' characterization of a donation as "intrinsically unusual" is vague, conclusory, and unsupported by evidence.<br><br>(2) Plaintiffs also cite no evidence to counter Al Rajhi Bank's evidence in response to averment 546 that |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | Aqil, was an official of the Sulaiman bin Abdulaziz Charitable Foundation during the relevant period. Plaintiffs cite to a document that, if admissible, shows that the individual who worked at the Sulaiman *bin Abdulaziz* Al Rajhi Charitable Foundation was Abdul Rahman bin Abdullah Al Rajhi. Pls. Ex. 14 (Abdullah al Rajhi Exhibit 56) at NL 9625 ("Currently the Charity office is managed by Abdul Rahman Bin Abdullah Al Rajhi, Saleh Bin Sulaiman Al-Habdan and Abdullah I. Al-Misfer").<br><br>(4) While several transactions do occur between Aqil al Aqil and an "Abdul Rahman Al Rajhi" with no middle name included, Plaintiffs do not present any evidence showing that this Abdul Rahman Al Rajhi is Abdul Rahman Abdullah Al Rajhi, the individual who served as an official of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation.<br><br><u>Disputed as controverted by the evidence:</u> | | donations made through the personal account of a charity executive are *not* "intrinsically unusual," including that:<br><br>(i) During the relevant period, Aqil al Aqil was publicly known as Director of a well-known and respected charity before the 9/11 Attacks;<br><br>(ii) Saudi government officials expressly directed that donations to Al Haramain be made through its Director, Aqil al Aqil. *See* ARB, Ex. 5 (Ltr. From KSA Gen. Pres. of Scholarly Research) at ARB-38774-75; *see also* Pls. Ex. 188 (ARB branch Manual) at ARB-173 (stating "[a]ny instructions issued by His Eminence the General President of the Departments of Scholarly Research, Ifta', Da'wah, and Guidance should be taken into consideration.").<br><br>(iii) Large donations into a charity official's account would have been normal in 1990s Saudi Arabia, and would not have raised any questions from Saudi |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | (1) Plaintiffs' characterization of a donation from the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation to Al Haramain through Aqil al Aqil as an "unusual payment" is controverted by evidence.<br><br>– During the relevant period, Aqil al Aqil was publicly known as Director of Al Haramain, a well-known and respected charity before the 9/11 Attacks.<br><br>– During the relevant period, charity officials routinely collected donations on behalf of charities of which they were officers, so the donation to Al Haramain through Aqil was not an "unusual payment." *See* ARB Ex. 2 (Hobayb Rep.) at 30-31.<br><br>– Moreover, a letter from a Saudi official instructs potential donors to provide aid directly "to Aqil" rather than through Al Haramain, indicating that the money deposited into Aqil's account at the Bank was likely the result of an | | banking auditors nor been considered unusual. *See* ARB Ex. 2 (Hobayb Rep.) at 30.<br><br>Plaintiffs' Reply Averment is contested as immaterial.<br><br>– For the reasons given in response to averment 546, and because the evidence shows that the transactions Plaintiffs cite came from Abdul Rahman *Abdulaziz* Al Rajhi, not Abdul Rahman *Abdullah* Al Rajhi:<br><br>(i) Plaintiffs' Reply Averment as to whether Abdul Rahman *Abdullah* Al Rajhi held three accounts at Al Rajhi Bank is immaterial to show that the Bank expressly aimed intentional, tortious conduct at the United States;<br><br>(ii) Plaintiffs' Reply Averment as to whether Saleh Soliman al Habdan was (a) co-owner of an account with Abdul Rahman *Abdullah* Al Rajhi, (b) affiliated with the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation, or (c) (as reported in the inadmissible |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | officially sanctioned practice and would not have raised suspicions at the Bank. *See* ARB Ex. 5 (Ltr. From KSA Gen. Pres. Of Scholarly Research) at ARB-38774-75.<br><br>(5) To the extent that in referencing "SDGT Aqil" Plaintiffs aver that Sulaiman bin Abdulaziz Al Rajhi made donations to Aqil after he was designated, that is controverted by evidence.<br><br>– Aqil was not designated under any sanctions regime for connections to terrorism before the 9/11 Attacks, including at the time of the donations referenced by Plaintiffs. *See* Pls. Ex. 48 (Designation of Aqil al Aqil) (showing Aqil was not designated until June 2, 2004). | | ArabNews.com article) affiliated with the Sulaiman Al-Rajhi Endowments, is immaterial to show that Al Rajhi Bank expressly aimed intentional, tortious conduct at the United States. |
| 567 | Suleiman al Rajhi and ARB also financially supported Salman al Awdah during this period. *See* Ex. 9, *Funding Islamic Extremist Movements: The* | Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading). | ARB omits the extensive evidence cited by Plaintiffs that ARB's relationship to Awdah ran through the Oregon branch of Al Haramain, supported the funding of Awdah's radical website Islam Today, and | Plaintiffs do not contest that averment 567 is immaterial.<br><br>Plaintiffs do not dispute that the evidence cited in averment 567 does not show that Sulaiman bin Abdulaziz Al Rajhi or Al Rajhi Bank |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | *Role of Islamic Financial Institutions*, CIA_000720-804 at 748; Ex. 38, Kohlmann Report at 15-16. | (2) Immaterial because Al Rajhi Bank had no relationship to Al Awdah beyond the provision of routine banking services. Plaintiffs do not trace any transaction from accounts at Al Rajhi Bank to the funding of Al Qaeda or the planning, carrying out, or financing of the 9/11 Attacks.<br><br>(3) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(4) Immaterial as relating to conduct outside the relevant period.<br><br>(5) Immaterial to the extent that this averment relies on CIA reports, which are inadmissible hearsay for the reasons discussed in the Bank's response to Section VI (heading), and is otherwise conclusory and unsupported.<br><br>(6) Immaterial as to Sulaiman bin Abdulaziz Al Rajhi's purported connection to Salman al Awdah where, even if credited, it shows nothing more than attempted guilt-by-association.<br><br>Disputed as conclusory; unsupported by the evidence: | involved banking services that went far beyond routine. This information was summarized in Paragraph 485 of Plaintiffs' Corrected Averment (ECF No. 9764)<br><br>Further, Al Haramain's Oregon branch was used to launch Awdah's radical website Islam Today and the ARB transactions that funded Awda's site were the subject of extensive criminal enforcement activity. A series of four $30,000 wire transfers in the summer and fall of 2001 by Al Buthe that went to finance an Al Haramain website in the US were produced to the US government in June of 2002 showing that the destination recipient was Datapact Inc., a company allegedly owned by Albuthe in Oregon. ARB-00039626 (ARB Exh. 78)The records produced to plaintiffs for the same account and transactions are in ARB 000000858-959.<br><br>The ARB records of the Datapact transactions were produced to the USG in mid-2002, but do not appear to have been publicly disclosed by federal prosecutors because they were classified. The file of these records is ARB 00039626. | "financially supported Salman al Awdah."<br><br>Plaintiffs' Reply Averment is contested as immaterial to show that Al Rajhi Bank expressly aimed intentional, tortious conduct at the United States where:<br><br>(1) Plaintiffs do not dispute Al Rajhi Bank's Response that averment 485, including its allegations of Al Awdah's purported "fatwas advocating violence against the United States," is immaterial;<br><br>(2) Plaintiffs provide no evidence that Bank of America, at which Datapact, Midway, and Al Haramain held accounts (*see* Pls. Ex. 148), flagged the transactions through the Bank as suspicious;<br><br>(3) Plaintiffs do not identify any evidence that any purported "financial[] support[]"from Sulaiman bin Abdulaziz Al Rajhi or Al Rajhi Bank to Al Awdah was intended for or reached Al Qaeda, much less was used by Al Qaeda for terrorism against the United States;<br><br>(4) Al Awdah was never designated by the United States government; |

23

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | (1) Even if admissible, the cited document provides no support for Plaintiffs' averment that Sulaiman bin Abdulaziz Al Rajhi or Al Rajhi Bank "financially supported Salman al Awdah."<br><br>(2) The CIA report states, without evidence, that "the Al Rajhi family . . . became a major financial supporter of Awdah." Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000748.<br><br>(3) As acknowledged in a 2003 CIA report, to the extent admissible, "[t]he Al Rajhi family" had "700 male members." Pls. Ex. 10 (2003 CIA Rep.) at CIA-Sub_003.<br><br>(4) Plaintiffs do not aver which, if any, Al Rajhi family members had a relationship with Salman Al-Awdah.<br><br>(5) Further, Plaintiffs omit that the report states that individuals like Awdah were attracted to Al Rajhi Bank because it was the only Shariah-compliant bank in Saudi Arabia during the relevant period. Pls. Ex. 9 (Nov. 1997 CIA Rep.) at CIA_000748. | Datapact was registered in Oregon in 1998 by Pirouz Sedaghaty aka Pete Seda and was based at the same address in Ashland as Al-Haramain. At his trial, prosecutors alleged that "Sedaghty was tasked with obtaining an internet service provider in Ashland, Oregon, which he did, that was used as a primary vehicle to launch a website called Islam Today by a sheikh, a radical sheikh in Saudi Arabia..." See below: FN2<br><br>The US also alleged that these funds from Albuthe were put toward "purchasing an Internet Service Provider network to facilitate password protected communications and a website for radical clerics in the Middle East."See below: FN3<br><br>At trial, a federal agent described Albuthe at the true owner of Datapact. See below FN4<br><br>According to a Justice Department pretrial detention memorandum, "In 2000-2001, defendants Sedaghty and Al-Buthe purchased and operated an Internet Service Provider (ISP) in Ashland, Oregon on behalf of AHIF. This ISP was used to host websites known as islamtoday.com and islamtoday.net and were to allow radical Wahhabi | Salman Al Awdah ("al-Ouda") appears on the U.S. Commission on International Religious Freedom's (USCIRF) Frank R. Wolf Freedom of Religion or Belief Victims List for imprisonment in Saudi Arabia. *See* ARB Ex. 94 (USCIRF profile of Salman al-Ouda).<br><br>Plaintiffs' Reply Averment is disputed as unsupported by the evidence:<br><br>(1) The evidence cited in averment 485 that Plaintiffs incorporate here does not support their Reply Averment. Specifically, the inadmissible hearsay in the District of Oregon trial transcript (Pls. Ex. 149) — which is the *sole* evidence supporting averment 485 — makes no reference to Sulaiman bin Abdulaziz Al Rajhi, Al Rajhi Bank, or transactions through the Bank to Al Awdah (or anyone else), let alone any "financial[] support[]" from Sulaiman bin Abdulaziz Al Rajhi or Al Rajhi Bank for Al Awdah.<br><br>(2) The remaining purported evidence, which Plaintiffs reference but do not submit, is from the prosecution's case in the |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | | clerics to broadcast messages to followers throughout the world. These websites were controlled by a well-known cleric in Saudi Arabia named Sheikh Salman al-Oadah (also known as al-Awdah) who has issued religious fatwas advocating violence against the United States and reportedly wrote pamphlets for AL Qaeda. Published reports state that Osama bin Laden has declared al-Oadah to be "my ideal personality; a savior who is the first person to demand the withdrawal of U.S. troops from Saudi." See below FN5<br><br>FN2   *Case   6:05-cr-60008-AA Document 46 Filed 09/19/07*<br><br>FN3   *Case   6:05-cr-60008-AA Document 28 Filed 08/21/07*<br><br>FN4   *Case   6:05-cr-60008-AA Document 46 Filed 09/19/07*<br><br>FN5  -  *Case   6:05-cr-60008-AA Document 28 Filed 08/21/07* | criminal trial of Pirouz Sedaghaty ("Case   6:05-cr-60008-AA Document 46 Filed 09/19/07" and "Case   6:05-cr-60008-AA Document 28 Filed 08/21/07"). Plaintiffs cite nothing in the materials from the case — which was reversed and remanded for a new trial (*see United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013)) — showing that Al Rajhi Bank knew that Datapact or Midway were even ISPs or provided website services, much less that these entities hosted any "radical website[s]."<br><br>(3) ARB Ex. 78 does not support Plaintiffs' Reply Averment. |
| 569 | ARB discovery documents also reflect substantial payments from a "personal" account of Saleh bin Sulaiman al Habdan, of Suleiman al | Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading). | There is no fair way to consider these transactions as the provision of routine financial services. The transaction involving Muhaisani is actually two highly unusual 2 million Saudi Riyal transfers that | Plaintiffs do not contest that averment 569 is immaterial.<br><br>Plaintiffs do not dispute that averment 569 is controverted by the evidence. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | Rajhi's charity committee/foundation, to Sheikh Mohamed al Muhaisani in 1998 (87,750 SR) and 2002 (2,000,000 SR). *See* Ex. 134, ARB 41668-41720 at ARB 41715. Based on the nature and amount of the payments, along with other transactions clearly showing the Habdan account was used to send money for Suleiman al Rajhi, the payments were comprised of Suleiman al Rajhi's funds. | (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading).<br><br>(3) Plaintiffs' averments with respect to the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation are immaterial for the reasons discussed in response to Section IV (heading).<br><br>(4) Immaterial as to Saleh bin Sulaiman al Habdan and Sheikh Mohamed al Muhaisani where, even if credited, it shows nothing more than attempted guilt-by-association.<br><br>Disputed as controverted by the evidence:<br><br>(1) The transaction Plaintiffs refer to is *not* a wire transfer *from* Saleh bin Sulaiman al Habdan to Mohamed al Muhaisani, but a transfer from Mohamed al Muhaisani *to* Saleh bin Sulaiman al Habdan. *See* Pls. Ex. 134 (Saleh al Habdan's Statements of Account) at ARB-41715.<br><br>(2) In any event, the transaction does not reflect any conduct by the Bank beyond the provision of routine financial services. | occurred on the same day. The 2 million from Muhaisani landed in Habdan's account for only a single day, causing his balance to balloon exponentially from 33,809.11 to 2,033,809.11. Habdan's balance then plunged back again when the funds were transferred onward, to an undisclosed recipient, on the same day. See ARB-00041715 | (1) Plaintiffs do not dispute that the cited transactions do not involve transfers from Saleh bin Sulaiman al Habdan to Mohamed al Muhaisani.<br><br>(2) Plaintiffs do not dispute that the transactions did not come from Sulaiman bin Abdulaziz Al Rajhi's funds.<br><br>Plaintiffs' Reply Averment, that two transactions involving Saleh bin Sulaiman al Habdan were "highly unusual," is vague and conclusory, and is not supported by evidence.<br><br>(1) Plaintiffs cite no evidence that the purportedly suspect individual "Sheikh Mohamed al Muhaisani" is the same individual identified as "Sheikh Mohamed *Soliman Hamad* al Muhaisani" in the Bank records that Plaintiffs cite. Given Plaintiffs' pattern of misidentification (*see, e.g.*, ¶¶ 546, 572 herein), absent corroborating evidence it is improper to infer that the relatively common names refer to the same individual.<br><br>(2) Plaintiffs cannot cite evidence that "Sheikh Mohamed al |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | | | Muhaisani" was ever designated by the United States government. |
| 572 | One of the "personal" accounts of Abdul Rahman al Rajhi, which again was plainly used to issue payments for Suleiman al Rajhi, similar reflects several financial transactions with Abdullah al Jibrin in 1999. *See* Ex. 129, ARB 40860-41153 at 40932, 40939, 41020. | Immaterial: (1) Immaterial for the reasons discussed above in response to Section XIV (heading). (2) Plaintiffs' averments concerning Sulaiman bin Abdulaziz Al Rajhi are immaterial for the reasons discussed above in response to Section IV (heading). Disputed as conclusory; does not cite to supporting evidence: (1) Plaintiffs assume, without evidence, that "Abdullah Hamad Saud al Jibrin" and "Abdullah Mohamed al Jibrin" are the same person. Pls. Ex. 129 (Abdul Rahman Al Rajhi personal accounts) at ARB- 40932, ARB-40939, ARB-41020. (2) Plaintiffs provide no evidence to support that Abdul Rahman al Rajhi's account was "plainly used to issue payments for Suleiman al Rajhi." | The full name of Sheikh Jibrin was Abdullah bin Abdul Rahman bin Abdullah bin Ibrahim bin Fahd bin Hamad bin Jibreen, according to his official website, which consists of four given names and three family names. https://ibn-jebreen.com/biography Variations are common in the identification of Saudis with complex and lengthy middle names. Account records for Abdul Rahman al Rajhi show that Suleiman al Rajhi provided him a 250,000 SR deposit by check in 1999 (ARB-00040928) and a 300,000 deposit by check in 2000 (ARB-00040977). Suleiman al Rajhi's foundation, meanwhile, appears to have made at least 11 deposits in Abdul Rahman al Rajhi's account totaling over 2 million riyals, while also making at least ten withdrawals (ARB-00040928, ARB-00040931, ARB-00040947, ARB-00040966, ARB-00040977, ARB-00040983, ARB-00040987, ARB-00040989, ARB-00040991, ARB-00041074, ARB-00041084, | Plaintiffs do not contest that averment 572 is immaterial. Plaintiffs do not dispute that averment 572 is conclusory and is unsupported by the evidence for the reasons stated in subparagraphs (1), and (2) of the Bank's Response to averment 572 (*see* second column herein). Plaintiffs do not dispute facts controverting averment 546: (1) Plaintiffs' new evidence of the full, seven-part name of the purportedly suspect individual "Abdullah bin Abdul Rahman bin Abdullah bin Ibrahim bin Fahd bin Hamad bin Jibreen," fails to link this individual to any transaction through the Bank. (2) The statements of account Plaintiffs cite refer to two individuals: (1) "Abdullah Mohammed Al-Jibrin, whose name "Mohammed" is not among *any* of the names of the purportedly suspect individual; and (2) "Abdullah Hamad Saud Al-Jibrin," whose name "Saud" is not among *any* of the names of the |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | | ARB-00041085, ARB-00041141, ARB-00041142, ARB-00041143). | purportedly suspect individual. *See* Pls. Ex. 129 (Abdullah Al Rajhi statement of account) at ARB-40932, ARB-40939, ARB-41020). While Plaintiffs' reply averment asserts that *variations* in the use of Saudi name-parts is "common," Plaintiffs cannot aver that *different* names refer to the same person.<br><br>(3) The mismatch is confirmed by the fact that, in compliance with the Bank's Branch Manual, which follows Saudi naming culture, the suspect individual's name reflected in Bank records would have been "Abdullah Abdul Rahman Abdullah Jibreen." Pls. Ex. 188 (ARB Branch Manual) at ARB-347 ("Remittances issued to Saudi beneficiaries are accepted if the beneficiary's full name [first name, father's name, grandfather's name & family name] is available.") (brackets in original); this name matches neither of the accountholders to which Plaintiffs refer.<br><br>Plaintiffs' new evidence is contested as immaterial. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| | | | | – The evidence of "11 deposits" in Abdul Rahman (*Abdullah*) Al Rajhi's Accounts between 1998-2002 from the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation is immaterial to show that Al Rajhi Bank expressly aimed intentional, tortious conduct at the United States where:<br><br>(i) Abdul Rahman Abdullah Al Rajhi is alleged to be on the staff of the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation;<br><br>(ii) Abdul Rahman Abdullah Al Rajhi was never designated by the United States government;<br><br>(iii) Plaintiffs cite no evidence that any of the funds Abdul Rahman Abdullah Al Rajhi allegedly received from the Sulaiman bin Abdulaziz Al Rajhi Charitable Foundation were intended for or reached Al Qaeda, much less were used by Al Qaeda for terrorism against the United States. |

| PARA. NO. | PLAINTIFFS' AVERMENT | AL RAJHI BANK'S RESPONSE | PLAINTIFFS' REPLY | AL RAJHI BANK'S SUR-REPLY |
|---|---|---|---|---|
| 573 | Around the time of those transactions, Jibrin, who preached at the Al Rajhi mosque, issued a prominent "fatwa" concerning the "State of the Mujahedin and the Muslims' obligation towards them," in which he called for Muslims to provide weapons and financial support to jihad fighters. *See* Ex. 202. | Immaterial:<br><br>(1) Immaterial for the reasons discussed above in response to Section XIV (heading).<br><br>(2) Further, even if credited, Plaintiffs' averments concerning the Al Rajhi Mosque do not show any intentional, tortious act by Al Rajhi Bank expressly directed at the United States.<br><br>(3) Plaintiffs cite no evidence connecting the Al Rajhi Mosque to Al Rajhi Bank. The Mosque is called Al Rajhi Mosque because a member of the family funded it, not because the family controls the mosque. *See* ARB Ex. 93 (Kohlmann Dep. Tr. and Errata) 41:5-18. | Abdullah al Rajhi testified about the ties between the Al Rajhi family, the bank, the charities, the Foundation, and Al Rajhi Mosques. He acknowledged that Saleh al Habdan was both the imam of the Al Rajhi Mosque and an official of the SAAR charities. (Plaintiffs' Exhibit 1 at p.365). | Plaintiffs do not contest that averment 573 is immaterial.<br><br>Plaintiffs do not dispute that no evidence connects the Al Rajhi Mosque to Al Rajhi Bank.<br><br>Plaintiffs do not dispute that the mosque is called Al Rajhi Mosque because a member of the family funded its construction, not because the family controls the mosque.<br><br>Plaintiffs' Reply Averment is disputed as unsupported by the evidence.<br><br>−  Plaintiffs' citation to Abdullah Al Rajhi's deposition makes no reference to Saleh al Habdan, Al Rajhi Mosque, or any "SAAR Foundation charities." *See* Pls. Ex. 1 (Abdullah bin Sulaiman Al Rajhi Dep. Tr.) at 365. |