# Exhibit 137

Plaintiffs' Corrected Averment of Jurisdictional Facts and Evidence and/or Statement of Facts as to Defendant Al Rajhi Bank Pursuant to Rule 56.1

**Federal Deposit Insurance Corporation**

# Inactive Financial Institution Letters

Payable Through Accounts

FIL-30-95<br/>April 7, 1995

TO:    CHIEF EXECUTIVE OFFICER

SUBJECT:    *Warning, Guidelines Issued To Protect Against Improper or Illegal Use of "Payable Through" Accounts*

The FDIC is joining other federal regulators in urging U.S. financial institutions to immediately establish and maintain policies and procedures designed to guard against the possible improper or illegal use of "payable through" accounts. Also called "pass through" accounts or "pass by" accounts, these generally are checking accounts marketed to foreign banks that otherwise would not have the ability to offer their customers access to the U.S. banking system. The attached FDIC guidelines provide more information about these accounts as well as suggested internal controls and procedures.

Experience has shown, for example, that some U.S. banking entities process thousands of checks on accounts where signature cards have been completed abroad and submitted in bulk. These U.S. banking entities may have undertaken little or no effort to independently obtain or verify information about the individuals and businesses who use the accounts. Federal regulators are concerned that the use of "payable through" accounts may contribute to unsafe and unsound banking practices and other misconduct, including money laundering and related criminal activities. Please note that the traditional use of "payable through" accounts by financial organizations in the United States, such as by credit unions and investment companies, has not been a cause for concern.

U.S. banking entities used for illegal purpose put their reputation at risk and face potentially serious financial losses from asset seizures and forfeitures initiated by law enforcement authorities. If you have any questions about "payable through" accounts, please contact your Division of Supervision Regional Office.

Stanley J. Poling
Director

Attachment

Distribution: FDIC-Supervised Banks (Commercial and Savings)

---

March 30, 1995

**FDIC Guidelines on Use of Payable Through Accounts**

Over the past year, the Federal financial institution regulatory agencies (agencies) have become aware of the increasing use of an account service known as a "payable through account" that is being marketed by U.S. banks and the U.S. branches of foreign banks ("U.S. banking entity(ies)") to foreign banks that otherwise would not have the ability to offer their customers access to the U.S. banking system. This account service has also been referred to by other names, such as "pass through accounts" and "pass by accounts."

The payable through account mechanism has long been used in the United States by credit unions (e.g., for checking account services) and investment companies (e.g., for checking account services associated with money market management accounts) to offer their respective customers the full range of banking services that only a commercial bank has the ability to provide. The problems described below do not relate to these traditional uses of payable through account relationships.

**Explanation of Payable Through Accounts**

The recent use of payable through accounts as an account service being offered by U.S. banking entities to foreign banks involves the U.S. banking entity opening a checking account for the foreign bank. The foreign bank then solicits customers that reside outside of the United States who, for a fee, are provided with the means to conduct banking transactions in the United States through the foreign bank's account at the U.S. banking entity. Typically, the foreign bank will provide its customers, commonly referred to as "sub-account holders," with checks that enable the sub-account holder to draw on the foreign bank's account at the U.S. banking entity. The group of sub-account holders, which may number several hundred for one payable through account, all become signatories on the foreign bank's account at the U.S. banking entity.[1] This results in individuals and businesses, who may not have been subject to the same requirements imposed on U.S. citizens or residents for opening an account at a U.S. banking entity, possessing the ability to write checks and make deposits at a U.S. banking entity, as if such individuals and businesses were the actual account holders at the U.S. banking entity .[2]

It appears that some U.S. banking entities are not exercising the same degree of care with respect to payable through accounts that they exercise for domestic customers that want to open checking or other types of account relationships directly with the banking organizations. Experience has shown that some U.S. banking entities simply collect signature cards that have been completed abroad and have been submitted to them in bulk by the foreign banks, and then proceed to process thousands of checks issued by the sub-account holders, as well as other banking transactions, through the foreign banks' accounts at the U.S. banking entities. These U.S. banking entities undertake little or no effort independently to obtain or verify information about the individuals and businesses who use their accounts.

**Possible Illegal or Improper Conduct Associated With Payable Through Accounts**

The traditional use of payable through accounts by financial organizations in the United States (i.e., credit unions and investment companies) has not been a cause for concern by bank regulators. These organizations are regulated by federal or state agencies, or are otherwise subject to established industry standards; and they appear to have adopted adequate policies and procedures to establish the identity of, and monitor the activity of, sub-account holders--in essence the credit union's depositors or the

investment company's mutual fund account holders. The same types of safeguards do not appear to be present in some U.S. banking entities that provide payable through account services to foreign banks.

The agencies are concerned that the use of payable through accounts by foreign banks at U.S. banking entities may facilitate unsafe and unsound banking practices and other misconduct, including money laundering and related criminal activities. Unless a U.S. banking entity is able to identify adequately, and understand the transactions of, the ultimate users--all or most of whom are off-shore--of the foreign bank's account maintained at the U.S. banking entity, there is a potential for serious illegal conduct. Recent reports from law enforcement agencies confirm that some money laundering and related illicit schemes have involved the use of foreign banks' payable through account arrangements at U.S. banking entities. Should accounts at U.S. banking entities be used for illegal purposes, the entities could be exposed not only to reputational risks, but also to serious risks of financial losses as a result of asset seizures and forfeitures brought by law enforcement authorities.

**Guidelines on Payable Through Account Activities**

Because of the possibility of illicit activities being conducted through payable through accounts at U.S. banking entities, we believe that it is inconsistent with the principles of safe and sound banking for U.S. banking entities to offer payable through account services without developing and maintaining policies and procedures designed to guard against the possible improper or illegal use of their payable through account facilities by foreign banks and their customers.

These policies and procedures must be fashioned to enable each U.S. banking entity offering payable through account services to foreign banks to identify sufficiently the ultimate users of its foreign bank customers' payable through accounts, including obtaining (or having the ability to obtain) in the United States substantially the same type of information on the ultimate users as the U.S. banking entity obtains for its domestic customers. This may require a review of the foreign bank's own procedures for identifying and monitoring sub-account holders, as well as the relevant statutory and regulatory requirements placed on the foreign bank to identify and monitor the transactions of its own customers by its home country supervisory authorities. In addition, U.S. banking entities should have procedures whereby they monitor account activities conducted in their payable through accounts with foreign banks and report suspicious or unusual activity in accordance with applicable FDIC criminal referral regulations.

In those situations where (1) adequate information about the ultimate users of the payable through accounts cannot be obtained; (2) the U.S. banking entity cannot adequately rely on the home country supervisor to require the foreign bank to identify and monitor the transactions of its own customers; or (3) the U.S. banking entity is unable to ensure that its payable through accounts are not being used for money laundering or other illicit purposes, it is recommended that the U.S. banking entity terminate the payable through arrangement with the foreign bank as expeditiously as possible.

Even though we are asking that you begin immediately to establish and maintain policies and procedures designed to guard against the possible improper or illegal use of payable through account facilities, we understand that such new policies and procedures will take some time to implement fully. As a first step, you should contact each foreign bank that maintains any type of payable through account relationship with your banking organization in order to bring the records related to its accounts into conformity with the aforementioned guidelines.

Should you have any questions with regard to this matter, please contact your Division of Supervision Regional Office.

---

[1] In a recent adaption of the payable through account service, foreign banks have opened accounts at U.S. banking entities and then solicited other foreign banks, rather than individuals, to use their accounts at the U.S. banking entities. These second tier foreign banks then solicit individuals as customers. This has resulted in thousands, rather than hundreds, of individuals having signatory authority over a single account at a U.S. banking entity.

[2] Payable through account activities should not be confused with traditional correspondent banking relationships, through which a smaller bank will enter into an agreement with a larger bank to process and complete transactions on behalf of the smaller bank's customers or the smaller bank itself. In such an arrangement, the smaller bank's customers are not aware of the correspondent banking relationships their bank has with other financial institutions. The smaller bank's customers do not have access to their bank's account at the larger correspondent bank. This differs significantly from a payable through account, where the sub-account holders have direct control by virtue of their signatory authority over the foreign bank's payable through account at the U.S. banking entity.

Last Updated 11/13/2018

communications@fdic.gov

Home    Contact Us    Search    Help    SiteMap    Forms    Transparency & Accountability    En Español
Website Policies    Accessibility Statement    Privacy Policy    Plain Writing Act of 2010    USA.gov    FDIC Office of Inspector General
Freedom of Information Act (FOIA) Service Center    FDIC Open Government Webpage    No FEAR Act Data