# Al Rajhi Bank
# Ex. 55

# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA EMAIL**

February 1, 2022

Matthew S. Leddicotte, Esq.
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807

      RE:    *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Matt:

      We write in response to your January 14, 2022 letter on behalf of Al Rajhi Bank ("ARB"), and in furtherance of the numerous meet and confer discussions and communications that preceded that letter. We note that we had expected to receive some meaningful production of documents from ARB in the days after that letter, and had deferred immediately responding with the expectation that our response would be informed by preliminary reactions and understandings from that production. Unfortunately, we still have not received any additional documents at all, aside from the 15 pages produced on July 19 and 29, 2021, all of which pertain to a single account.

      This letter initially addresses two overarching issues related to the discovery process, and then briefly addresses concerns as to the specific topics and positions outlined in ARB's January 14, 2022 letter. As to those latter issues, we have already discussed many of the topics at length, and we do not endeavor here to reiterate every point and position previously communicated.

1.      <u>The File Format for ARB's Forthcoming Productions</u>

      While we have had extensive discussions concerning the scope of ARB's searches for documents responsive to the areas of inquiry authorized by the Court's November 22, 2021 Order (ECF No. 7378), we have not yet specifically discussed the file format in which ARB will be producing its documents. We believe it would be helpful to have our respective technical teams join us on a call to discuss the issue as soon as is feasible. Generally, we anticipate proposing that scanned paper documents be produced as single TIFF images with

Matthew S. Leddicotte, Esq.
February 1, 2022

_____

appropriate document breaks and OCR, with corresponding load files for the images themselves. We anticipate proposing that ESI be produced as single image TIFF files as well.

2.     ARB's Failure to Fulfill Its Commitments to Produce Documents on a Rolling Basis

We are frustrated that we are once again compelled to raise ARB's failure to fulfill its commitments to produce responsive documents on a rolling basis. As you know, ARB's commitment to produce documents on a true rolling basis, and to avoid a large volume production heavily weighted to the end of ARB's self-imposed production deadline, was essential to our discussions and agreement concerning the overall discovery schedule. ARB has fundamentally failed to fulfill its end of that bargain.

By definition, a rolling production contemplates that documents will be produced in batches on a steady basis, as ARB completes reviews of responsive documents identified through ongoing searches. That has not happened, as evidenced by the fact that documents ARB represented had already been retrieved and were under review, months or weeks ago, still have not been produced.

As we have discussed repeatedly in this context, ARB committed to conduct searches in response to 11 of Plaintiffs' 58 document requests in June 2021. In Plaintiffs' Motion to Compel filed on July 30, 2021, Plaintiff's Reply Brief in Support of the Motion to Compel filed on October 1, 2021, and in the numerous meet and confers since that time, Plaintiffs have repeatedly noted that ARB has failed to produce any documents in response to those 11 categories, aside from the 15-page production relating to a single account, and responsive to only 1 of those 11 requests. Nearly 8 months have passed since ARB committed to produce documents in response to those 11 requests, and yet we still have not received a single document in response to the vast majority of those requests, and only 15 pages in total.

In our various meet and confer discussions between November 22, 2021 and the present date, ARB has represented that other categories of documents would be forthcoming as well, yet those documents also remain outstanding. For example, during the meet and confer on November 22, you represented that a production of documents relating to an account or accounts associated with IIRO official and Specially Designated Global Terrorist ("SDGT") Abd al Hamid Sulaiman al Mujil was being prepared and would be delivered to Plaintiffs very shortly. More than two months since that representation, we still have not received any of those documents.

Similarly, you indicated on January 12, 2022 that ARB was working through the account statements and Know Your Customer ("KYC") files that are retrievable in electronic format, and that the first set would be produced "in the next couple days." More than two weeks later, we still have not received any of that information.

We now find ourselves just a few weeks before the deadline for ARB to complete its document production, and we still have received only 15 pages in total, relating to a single account and responsive to only a single request. It is now clear that ARB will be producing a large volume of documents very close to the production deadline, the very approach Plaintiffs

2

Matthew S. Leddicotte, Esq.
February 1, 2022

---

indicated would be unacceptable and render adherence to the contemplated discovery deadlines impossible. As we have discussed at length, Plaintiffs need sufficient time to translate the documents, to then have them analyzed by subject matter experts, and to conduct appropriate follow up discovery. Indeed, ARB's own proposals contemplate a sequenced process in certain cases. Completing all of that activity within the aggressive deadlines ARB pressed for would have been difficult under any circumstances, and feasible only if ARB provided a production on a true rolling basis. Again, that simply has not happened, and we have received no explanation for the delays despite repeated requests.

The difficulties posed by this circumstance have been exacerbated by ARB's confounding refusal to provide the information concerning the nature and volume of its outstanding document productions. When you represented during our call on January 12, 2022 that ARB would be producing account statement documents in the very near future, we asked if you would provide basic information concerning the nature of the accounts at issue, and the volume of the documents that were being prepared for production, so that we could arrange for appropriate resources to be in place to manage the production. In response, you declined to provide any information concerning the forthcoming production, and expressed your view that lawyers do not know what will be included in their client's production until it is actually produced. As we said at that time, that is not our experience, and we remain puzzled and concerned by the refusal to provide basic information on this and other fronts. We would ask that you provide the information requested promptly, so that we can make appropriate arrangements, to the extent feasible.

3.  **Outstanding Information Concerning ARB's Organizational Structure and Likely Repositories of Responsive Information**

Given representations that ARB's archived documents are organized by department or committee, we requested that ARB provide information identifying the relevant departments and committees operating during the relevant time period, and a description of their roles. This information was essential to assess the feasibility of targeted searches for documents for which the Court authorized discovery.

While we appreciate your willingness to provide a list of departments at ARB during the relevant time period, the absence of any further information as to the responsibilities and roles of each department makes it impossible to engage in a meet and confer contemplated by the Court's November 22, 2021 Order. Your January 14 letter suggested that the functions of the departments "are self-explanatory" but we do not agree that to be the case, and do not want to proceed fruitlessly on the basis of assumptions. We would therefore ask that ARB promptly provide descriptions of the roles and functions of the departments.

Your January 14 letter also did not include information concerning the committees that existed at the bank during the relevant time periods, but indicated that you were continuing to work to confirm that information. That information is essential to the meet and confer discussions required by the Court's Order, and we would ask that you provide it promptly and include a description of each committee's functions and responsibilities, as well as the names of each committee's members.

3

Matthew S. Leddicotte, Esq.
February 1, 2022

---

In the context of our discussions about the departments and committees, we have inquired on several occasions about the locus of responsibility for zakat activities. You have indicated that there was no "Zakat Department" during the time period, although Reuben did make reference to reports from a Zakat Department on December 13, 2021. In any case, our focus is not whether there was a formal "Zakat Department," but instead on understanding where responsibility for zakat issues resided during the relevant time period. Please advise.

As indicated, the point of our discussions concerning the departments and committees that existed during the relevant period is to determine whether targeted searches for documents may be feasible, focusing on particular departments or committees, or files of those departments or committees. Consistent with that goal, we ask that ARB provide any available information concerning any index of archived documents maintained by the relevant departments and committees, or details concerning the volume of archived documents associated with each department or committee, so that we can assess whether or not there are ways to focus searches for relevant documents.

Finally on this issue, your letter confines the information provided for the departments to the "Relevant Period," which ARB has defined as January 1, 1998-December 31, 2002. However, the Court's Order defines the relevant period to extend through 2004 for a number of the requests, and it is therefore imperative that ARB include departments and committees that existed during 2003 and 2004. Given investigations and regulatory actions prompted by the September 11th attacks, new departments and committees created during the 2003-2004 period may be singularly important repositories of responsive documents, and yet they have been excluded from the information provided.

4.   Communications With the Charities and Other Account Holders

For reasons already conveyed, we do not believe ARB's proposal to limit its searches for communications with the da'wah organizations to the KYC files is adequate or consistent with the Second Circuit's mandate and order or Judge Netburn's November 22, 2021 decision. As you know, the Second Circuit specifically authorized discovery as to "whether the support [described in the complaint] was 'earmarked' for use in specific schemes or attacks not directed at the United States" and concerning "how these defendants were involved in the process of providing support to al Qaeda." *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 69 (2d Cir. 2019). Almost by definition, any such earmarking instructions would have been included in communications from the da'wah organizations to ARB, and such communications are likewise vital to understanding how ARB "was involved in the process of providing support to al Qaeda." Consistent with these points, Judge Netburn granted Plaintiffs' Request No. 1, which specifically encompasses communications.

Given the nature and purpose of a KYC file, it is doubtful that any communications of this nature would find their way into the KYC file, and ARB's proposed scope of search thus

4

Matthew S. Leddicotte, Esq.
February 1, 2022

_____

effectively excludes communications altogether. Again, that result is contrary to the express language of the Second Circuit's decision and Judge Netburn's Order.[1]

In an effort to identify a more effective approach to conducting targeted searches for communications, we requested that you provide information concerning the points of contact or interfaces between the large da'wah organization customers and ARB during the relevant time period, including any components of the bank responsible for zakat issues. We noted that there were high profile fundraising campaigns for the charities, which could not have been organized without reliable points of contact. To this point, you have refused to provide any such information or to state whether the issue has even been raised with ARB. Please advise promptly whether you will reconsider that position and provide the requested information. We would ask that the same point of contact information be provided for the individual account holders for whom discovery was authorized as well.

With regard to the information that ARB has thus far agreed to provide, we understand that the KYC files should include account opening and closing records, account signatory information, suspicious activity reports, audit reports and similar information, regardless of the date (since the KYC files would have had that information as they exited as of the relevant period), and that the account statements we will be receiving will include relevant transaction codes, wire information and the like. Please confirm that is correct.

5.   Zakat Files

You have advised that ARB will conduct searches of its own zakat filings during the relevant time period. Again, we believe the files of the component of the bank with responsibility for zakat issues is a likely repository of critical information responsive to numerous of the authorized requests. We continue to await the requested information on that issue. Also, ARB's indication that it will confine its searches of zakat materials to the 1998-2002 time period is insufficient, to the extent it would result in the exclusion of relevant documents as to which the Court set a 2004 discovery cutoff.

6.   Suleiman Al Rajhi's Departure

For the reasons discussed previously, we are in disagreement regarding the searches that need to be conducted concerning Suleiman al Rajhi's departure from ARB. The discovery was authorized to determine whether Suleiman's departure was prompted, in whole or in part, by investigations and reforms following the September 11th attacks. The briefing made clear that those investigations did not even begin in earnest until 2003 and remained ongoing thereafter. ARB's proposal to search for records from 1998-2002 evades the Court's Order, and the repositories it proposes to search are inadequate. We appear to be at an impasse on this issue.

---

[1] ARB's attempted reliance on Judge Netburn's ruling on the separate request for communications associated with ARB's principals is entirely misplaced, for reasons we have discussed.

5

Matthew S. Leddicotte, Esq.
February 1, 2022

_____

7.     Files of Suleiman Al Rajhi

With regard to ARB's statement that it is "not currently aware of files of Suleiman al Rajhi that are in the Bank's possession, custody, or control other than files maintained by the Chairman's office," we need the additional information requested concerning the departments and committees referenced above to evaluate your position. In addition, we believe files in the bank's possession relating to the Saudi Suleiman Bin Abdul Aziz Al Rajhi Charitable Foundation would likely need to be searched in relation to authorized requests pertaining to Suleiman al Rajhi.

8.     Allegations Concerning Mechanisms to Evade Regulatory Scrutiny

We remain in disagreement on this issue, but we remain willing to continue our discussions, as you have suggested.

9.     Suleiman Bin Abdul Aziz Al Rajhi Charitable Foundation

As indicated, we believe the account information and files in ARB's possession, custody and control relating to the Saudi Suleiman Bin Abdul Aziz Al Rajhi Charitable Foundation hold information responsive to several requests authorized by the Court, and are highly relevant to the issues for which the Second Circuit authorized discovery. ARB's reliance on the Court's Order relating to the U.S. SAAR Network is misplaced, as the Saudi Suleiman Bin Abdul Aziz Al Rajhi Charitable Foundation is a separate entity altogether, and has clear links to ARB. We appear to be at an impasse on this issue.

10.    Donations to the Da'wah Organizations

The scope of the searches ARB proposes to conduct in relation to Request No. 4 is not consistent with the Court's Order, especially insofar as ARB is refusing to search for records of donations members of the Al Rajhi family or the Suleiman Bin Abdul Aziz Al Rajhi Charitable Foundation.

11.    ARB Principals Who Held Positions With the Charities

Despite the fact that the Court's November 22, 2021 Order specifically authorized discovery to determine the extent to which any ARB principals also held positions with the charities, ARB has refused to search for that information unless Plaintiffs can identify by name the ARB principal who held such positions. The point of discovery, however, is to enable Plaintiffs to develop that information, not to confirm only what they already know. As a compromise, we have asked that ARB provide a list of department heads, committee members, shariah board members, and senior management personnel (a term that can be refined through further discussions). That will assist Plaintiffs in identifying relevant personnel. Please advise if you will provide this information.

Matthew S. Leddicotte, Esq.
February 1, 2022

---

12. <u>Saleh Al Hussayen Requests</u>

While you have represented that Saleh al Hussayen ceased to have a role at ARB as of 1999, we do not believe that representation relieves ARB of its obligation to conduct the searches required by the Court's Order, including searches to identify any documents in ARB's possession concerning Hussayen's 2001 trip to the United States, and related detention and interrogation. ARB's discovery obligations also require it to search and produce relevant documents relating to any accounts associated with Hussayen, a point we have raised previously.

13. <u>The 2009 Administrative Subpoena Documents</u>

The Court authorized Plaintiffs' Request No. 33, which seeks all documents responsive to the 2009 Administrative Subpoena of the United States. Despite the Court's Order, we understand that ARB intends to produce only a subset of the responsive documents, namely those it actually produced to the United States. That proposal is inconsistent with the Court's Order and unacceptable. Plaintiffs' Request No. 33 incorporated all of the requests contained in the Administrative Subpoena, and was granted. Please advise if ARB will reconsider its position on this issue.

14. <u>Email Usage</u>

Thank you for confirming your understanding that email was not being used at ARB during the relevant time periods.

Sincerely,

COZEN O'CONNOR

By: <u>/s/ Sean P. Carter</u>
   Sean P. Carter
   Cozen O'Connor
   One Liberty Place
   1650 Market Street, Suite 2800
   Philadelphia, PA 19103
   Tel: (215) 665-2105
   E-mail: scarter1@cozen.com

*On behalf of the MDL 1570 Plaintiffs' Exec. Committees*

7

Matthew S. Leddicotte, Esq.
February 1, 2022

---

cc: Reuben J. Sequeira, Esq.
    William N. Clark, Jr., Esq.
    J. Scott Tarbutton, Esq.
    Abby J. Sher, Esq.
    Robert Sheps, Esq.
    James L. Bernard, Esq.
    Patrick N. Petrocelli, Esq.
    Christopher R. LoPalo, Esq.

LEGAL\56153281\1