# Al Rajhi Bank
# Ex. 70

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

In Re Terrorist Attacks on September 11, 2001 )
_____ )
*Plaintiff* )
v. ) Civil Action No. 1:03-MDL-01570-GBD-SN
_____ )
)
*Defendant* )

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Federal Bureau of Investigation
935 Pennsylvania Avenue, NW, Washington, DC 20535

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A

| Place: Cozen O'Connor<br>1200 19th Street, NW, Washington, DC 20036 | Date and Time:<br>12/06/2021 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/05/2021

CLERK OF COURT                                   OR    *[signature]*

_____                       _____
*Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiffs' Executive Committees _____, who issues or requests this subpoena, are:

Sean P. Carter, Cozen O'Connor, 1650 Market St., 28th Fl., Phila., PA 19103; scarter1@cozen.com; 215-665-2105

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:03-MDL-01570-GBD-SN

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case 1:03-md-01570-GBD-SN   Document 10598-70   Filed 12/09/24   Page 4 of 9

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

 (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

I. **Instructions and Definitions:**

1.  This subpoena is issued pursuant to Rule 45 of the Federal Rules of Civil Procedure, and not pursuant to a request for records under the Freedom of Information Act ("FOIA"), and all documents specified below are required to be produced as required by Rule 45.

2.  Each document responsive to this subpoena shall be produced in its entirety, with all non-identical copies and drafts, and without abbreviation or redaction, subject only to credible assertions of privileges recognized under the common law.

3.  If You assert a privilege or other authorized protection with respect to any document requested herein, You must produce all non-privileged/protected portions of the document with those portions as to which a privilege/protection is claimed redacted, and You must provide a privilege log that conforms with the requirements set out by United States Magistrate Judge Frank Maas in the case captioned *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (S.D.N.Y.), by Order dated November 19, 2012 (ECF No. 2644), including providing the following information concerning each individual document withheld or redacted:

    a.  The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

    b.  The general subject matter of the document;

    c.  The date of the document;

    d.  The authors of the document, the addressees of the document and any other recipients, and where not apparent, the relationship of the authors, addressees, and recipients to one another;

    e.  If the document is an electronic document, its file size; and

    f.  Each and every basis for the privilege or protection claimed; and if a privilege or protection asserted is based upon or governed by a law, statute, regulation, or rule, the specific law, statute, regulation, or rule being invoked.

4.  No document responsive to this subpoena shall be withheld or redacted pursuant to FOIA exemptions.

5.  As used herein, the following terms are defined as follows:

    a)  "Document" or "Documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" and "any designated tangible things" as used in Fed. R. Civ. P. 34(a)(1)(A) and

      (B). A draft or non-identical copy is a separate document within the meaning of this term.

b)    The term "You," "Your," and/or "FBI" shall mean the Federal Bureau of Investigation, including without limitation any official, employee, and representative of the Federal Bureau of Investigation.

c)    The term "Al Rajhi Bank" shall mean Al Rajhi Bank and any branch office, board member, executive, official, employee, consultant, agent, alter ego, volunteer, or representative acting on Al Rajhi Bank's behalf.

d)    The term "September 11, 2001 Hijackers" shall mean any of the 19 men who hijacked aircraft on September 11, 2001, and crashed those aircraft into the World Trade Center buildings in New York, the Pentagon in Virginia, and a field in Shanksville, Pennsylvania, including:

| | |
|---|---|
| Abdulaziz Mohamed al Omari; | Mohamed Atta; |
| Ahmed Abdullah al Nami; | Mohand al Shehri; |
| Ahmed Ibrahim al Haznawi; | Nawaf Mohamed al Hazmi; |
| Ahmed Saleh al Ghamdi; | Salem Mohamed al Hazmi; |
| Hamzeh Saleh al Ghamdi; | Satam al Suqami; |
| Hani Saleh Hanjour; | Saeed Abdullah al Ghamdi; |
| Fayez Banihammad; | Wail Mohamed al Shehri; |
| Khalid Mohamed al Mihdhar; | Walid Mohamed al Shehri; and |
| Majed al Moqed; | Ziad Jarrah. |
| Marwan al-Shehhi; | |

e)    The term "SAAR Network-Related Entities" shall mean any of the following entities and any past or present subsidiaries, affiliates, and/or branches of such organizations, their directors, officers, employees, agents and representatives: African Muslim Agency, Al-Aqsa Educational Fund, AMC Foundation, Amana Limited, Amana Mutual Funds, American Institute for Islamic Societal Studies, American Muslim Foundation, American Muslim Council, Global Enterprises, LLC, Global Holdings, LLC, Grove Corporate Plaza, Grove Street Corporation, Heritage Education Trust, Inc. (a/k/a Marwa Education Trust), Heritage Holdings, Herndon Grand, Inc., Humana Charitable Trust, International Education Trust, Inc., International Institute of Islamic Thought, Inc., International Islamic Charitable Organization ("IICO"), International Islamic Relief Organization, International Graphics Printing Service, Islamic Relief Organization, Makkah Mukarramah Charity Trust, Inc., Mar-Jac Investments, Mar-Jac Farms, Inc., Mar-Jac Holdings, Inc., Mar-Jac Poultry, Inc., Mena Corporation, Mena Estates, Inc. d/b/a Mena for Development, Mena Investments, Inc., Mirza Family Limited Partnership, Muslim World League, Piedmont Poultry, Reston Investments, Inc., SAAR Foundation Canada, Inc., SAAR Foundation, Inc., SAAR International, Inc., Safa Trust, Safty, LLC, Sanabel Al Kheer, Inc., Sana-Bell, Inc., Sterling Advisors, Inc., Sterling Charitable Gift Fund, Sterling Infogain Fund, LLC, Sterling Investment Group, LLC, Sterling Lynx Works, LLC, Sterling

2

    Management Group, Inc., Sterling Packet Stream Fund, LLC, Sterling Ptech Fund, LLC, Sterling Poultry Company, Sterling Stock Investments, LLC, Sterling Technology Fund, LLC (formerly Sterling Malaysian Fund, LLC), The Success Foundation, Inc., Taibah International Aid Association, York Foundation, York International, and 500 Grove Street, LLC.

f)     The term "SAAR Network-Related Individuals" shall mean any of the following individuals: Abdulrahman Alamoudi, Taha Jaber Al Alwani, Abdullah M. Al Mahdi, Abdullah Bin Saleh Al Obaid, Abdullah Suleiman Al Rajhi, Suleiman Abdul Aziz Al Rajhi, Hisham Altalib, M. Omar Ashraf, Muhammad Ashraf, Hassan A.A. Bahafzallah, Jamal Barzinji, Ibrahim Hassabellah, Mohammad Jaghlit, M. Yaqub Mirza, Khaled Nouri, Mohamed S. Omeish, Samir I. Salah, Cherif Sedky, Ahmad Totonji, Iqbal J. Unus, and Tarik Hamdi.

g)     The term "concerning" shall mean relating to, referring to, describing, evidencing, or constituting.

h)     The term "person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

i)     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

j)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3

## II. Documents to be Produced:

1. All documents concerning Al Rajhi Bank's possible role in providing financial, material, and/or logistical support and resources to al Qaeda, al Qaeda "charity" front organizations, and Islamic extremists.

2. All documents concerning Suleiman al Rajhi,[1] Saleh al Rajhi,[2] Abdullah al Rajhi,[3] Abdul Rahman al Rajhi,[4] Abdul Aziz al Khereiji,[5] Abdullah Misfer,[6] and Saleh al Hussayen,[7] including without limitation, all documents detailing the possible involvement of these individuals in terrorism or terrorism financing or sponsorship activities.

3. All documents concerning any terrorism financing, support, sponsorship, or money laundering investigation, inquiry, examination, or audit which references or addresses Al Rajhi Bank, any member of the Al Rajhi family, or any of the individuals identified in Demand No. 2.

---

[1] Suleiman al Rajhi served as the Chairman and largest shareholder of Al Rajhi Bank, one of al Qaeda's most essential partners in the years leading up to the September 11, 2001 terrorist attacks. As described by the Wall Street Journal, Suleiman al Rajhi and Al Rajhi Bank played a critical role in facilitating the terrorist activities of al Qaeda's integrated charity fronts, including Executive Order 13224 Specially Designated Global Terrorist ("SDGT") entities International Islamic Relief Organization ("IIRO") and Al Haramain Islamic Foundation. Suleiman al Rajhi has been identified as a member of the "Golden Chain," al Qaeda's most important wealthy donors from the Gulf region.

[2] Saleh al Rajhi, Suleiman al Rajhi's brother, co-founded and served as a high-ranking official at Al Rajhi Bank. As described by the Wall Street Journal, Saleh used Al Rajhi Bank to donate significant funds to al Qaeda's charity fronts, including the Third World Relief Agency ("TWRA"). The 9/11 Commission concluded that Osama bin Laden "made use of the already-established Third World Relief Agency" to provide financial and other support for al Qaeda's terrorist activities. See 9/11 Commission Report at p. 58.

[3] Abdullah al Rajhi served as a member of Al Rajhi Bank's executive committee, and further held leadership positions with the SAAR Network of "charities" organized in Northern Virginia. According to the Department of Defense, "the SAAR network includes more than 100 Muslim think tanks, charities and companies. The al-Rajhi family utilized SAAR to fund Islamic extremist organizations and has ties to al Qaida."

[4] Abdulrahman al Rajhi served as an official at Al Rajhi Bank and held various leadership positions, including Vice Chairman and Executive Manager of Al Rajhi Commercial Foreign Exchange and head of the Sulaiman Abdul Aziz al Rajhi Foundation. Abdulrahman al Rajhi is alleged to have had contacts with certain members of the Saudi government support network aiding the 9/11 hijackers upon their arrival in the United States.

[5] Abdul Aziz al Khereiji served as an executive on Al Rajhi Bank's Board of Directors while simultaneously serving as one of four shareholders of the Muwafaq Foundation (a/k/a Blessed Relief Foundation), along with Executive Order 13224 Specially Designated Global Terrorist ("SDGT") Yassin Kadi. According to the U.S. government, Muwafaq served as "an al Qaeda front that receives funding from wealthy Saudi businessmen," and there exists "substantial and credible evidence that both Muwafaq as an entity, and many of the individuals charged with operating it and distributing its funds, were engaged in a long-standing pattern of supporting terrorist and extremist causes." See Yassin Abdullah Kadi v. Timothy Geithner, et al., Civil Action No. 09-0108 (JDB) (May 22, 2009).

[6] Abdullah Misfer served as an official at Al Rajhi Bank while simultaneously holding the position as head of the Palestine Division of the Al Haramain Islamic Foundation, an Executive Order 13224 Specially Designated Global Terrorist ("SDGT") entity. Misfer is alleged to have had contacts with certain members of the Saudi government support network aiding the 9/11 hijackers upon their arrival in the United States.

[7] Saleh al Hussayen served as a member of Al Rajhi Bank's Sharia Board, which was responsible for *inter alia* approving Al Rajhi Bank's zakat contributions, including those contributions sent to the IIRO, Al Haramain Islamic Foundation, and other al Qaeda charity fronts. The night before the 9/11 attacks, Hussayen stayed in the same hotel in Virginia (Marriott Residence Inn) as 9/11 hijackers Nawaf al Hazmi, Khalid al Mihdhar, and Hani Hanjour.

4

4. All documents concerning any investigation, inquiry, examination, or audit relating to the September 11, 2001 attacks, which references or addresses Al Rajhi Bank, any member of the Al Rajhi family, or any of the individuals identified in Demand No. 2.

5. All documents concerning any investigation, inquiry, examination, or audit relating to the September 11, 2001 Hijackers, which references or addresses Al Rajhi Bank, any member of the Al Rajhi family, or any of the individuals identified in Demand No. 2.

6. All documents concerning any investigation, inquiry, examination, or audit relating to the SAAR Network-Related Entities and Individuals, which references or addresses Al Rajhi Bank, any member of the Al Rajhi family, or any of the individuals identified in Demand No. 2.