# Al Rajhi Bank
# Ex. 88

892789

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
### DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS



# C E R T I F I C A T E

THIS IS TO CERTIFY that all applicable provisions of the DISTRICT OF COLUMBIA NONPROFIT CORPORATION ACT have been complied with and accordingly, this CERTIFICATE of INCORPORATION is hereby issued to

THE SANA - BELL, INC.

as of July 28th , 1989 .

Donald G. Murray
Director

Henry C. Lee, III
Administrator
Business Regulation Administration

Miriam Hellen Jones
Superintendent of Corporations
Corporations Division

Marion Barry, Jr.
Mayor

SANA-BELL 00001

ARTICLES OF INCORPORATION
OF

THE SANA - BELL, INC.

To:   The Department of Consumer and Regulatory Affairs of the
      District of Columbia

      We, the undersigned natural persons of the age of eighteen
years or more, acting as incorporators of a nonstock corporation
as a private foundation, adopt the following Articles of
Incorporation for such corporation ("Corporation") pursuant to
the District of Columbia Non-Profit Corporation Act.

### ARTICLE I

#### Name

      The name of the Corporation is "The SANA - BELL, Inc."

### ARTICLE II

#### Term

      The period during which the Corporation shall continue is
perpetual.

### ARTICLE III

#### Registered Agent and Office

      The post office address of the initial registered office of
the Corporation is:

                 c/o Foley, Hoag & Eliot
                 1615 L Street, N.W., Suite 950
                 Washington, D.C. 20036

and the name of the initial registered agent for the Corporation
at such address is:

                 Richard A. Gross

### ARTICLE IV

#### Purposes

      The Corporation is organized to promote the well-being of
mankind throughout the world and for charitable, religious,
educational, and scientific purposes, including without
limitation for such purposes, the making of distributions to
organizations that qualify as exempt organizations under section
501(c)(3) of the Internal Revenue Code of 1986, as amended, or

FILED

JUL 28 1999

BY: _____

SANA-BELL 00002

corresponding section of any future Federal tax code. To that end, such purposes shall, without limitation to the foregoing, specifically include:

Section 1. To engage in, establish and promote, and contribute to exclusively religious, cultural, educational, charitable and scientific activities, programs, projects, organizations, institutions and funds.

Section 2. To receive, maintain and administer funds for religious, cultural, scientific, educational and charitable purposes, and to that end, to take and hold by bequest, trust, devise, gift, grant, purchase, lease or otherwise, either absolutely or jointly with any other person, persons, or corporation, any property, real, personal, tangible or intangible, or any undivided interest therein, without limitation as to amount or value; to sell, convey, or otherwise dispose of any such property and to invest, reinvest, or deal with the principal or the income thereof in such manner as, in the judgment of the Board of Trustees, will best promote the purposes of the Corporation without limitation, except such limitations, if any, as may be contained in the instrument under which such property is received, these Articles of Incorporation, the By-Laws of the Corporation, or any laws applicable thereto.

Section 3. To hold and continue to hold as an investment, property which may be received by the Corporation so long as it deems proper, and to invest and reinvest in any securities or property, whether or not income-producing, deemed by it to be for the best interests of the Corporation, without and notwithstanding that the same may constitute leaseholds, royalty interests, patents, interest in mines, oil and gas wells, or timber lands, or other wasting assets, and without any responsibility for any depreciation or loss by or on account of such investments.

Section 4. To rent or lease any property of the Corporation for such time and upon such terms and for such price or prices as in its discretion and judgment may seem just and proper and for the best interest of the Corporation, irrespective of the provisions of any statute or of the termination of any trust.

Section 5. To sell and convey any of the property of the Corporation or any interest therein, or to exchange the same for other property for such price or prices and upon such terms as in its discretion and judgment may be deemed for the best interest of the Corporation and to execute and deliver any deed or deeds, receipts, releases, contracts or other instruments necessary in connection therewith.

-2-

SANA-BELL 00003

Section 6.  To make all repairs and improvements at any time deemed necessary and proper to and upon real property owned by the Corporation, and to build, construct, and complete any building or buildings upon such property which in its discretion and judgment may be deemed advisable and proper and for the best interests of the Corporation, and to determine the extent to which the cost of such repairs and improvements shall be apportioned as between corpus and income.

Section 7.  To deduct, retain, expend, and pay out of any money belonging to the Corporation any and all necessary and proper expenses in connection with the operation and conduct of the Corporation, and to pay all taxes, insurance premiums, and other legal assessments, debts, claims or charges which at any time may be due and owing by, or which may exist against the Corporation.

Section 8.  To vote upon all securities belonging to the Corporation, and to become a party to any stockholders agreements deemed advisable by them in connection with such securities.

Section 9.  To consent to the reorganization, consolidation, merger, liquidation, readjustment of or other change in any corporation, company or association, or to the sale or lease of the property thereof or any party thereof, any of the securities or other property of which may at the time be held by them hereunder, and to do any act or exercise any power with reference hereto that may be legally exercised by any persons owning similar property in their own right, including the exercise of conversion, subscription, purchase, or other options, the deposit, surrender, or exchange of securities, the entrance into voting trusts, and the making of agreements or subscriptions which they may deem necessary or advisable in connection therewith, all without applying to any court for permission so to do, and to hold and redeem or sell or otherwise dispose of any securities or other property which they may so acquire.

Section 10.  To compromise, settle, arbitrate, or defend any claim or demand in favor of or against the Corporation; to enforce any security agreements, or other obligations or liens held hereunder; and to enter upon such contracts and agreements and to make such compromise or settlements of debts, claims or controversies as they may deem necessary or advisable.  To incur and pay the ordinary and necessary expense of administration of the Corporation or its Board of Trustees acting in such capacity, including (but not by way of limitation) reasonable attorney's fees, accountants' fees, investment counsel fees and the like.

Section 11.  To act hereunder through an agent or attorney-in-fact in carrying out any of the powers and duties herein authorized.

-3-

SANA-BELL 00004



Section 12. To borrow money for any purposes of the Corporation or incidental to the administration thereof and to secure the repayment thereof by granting a security interest in, or pledging or otherwise encumbering any part or all of the Corporation's property, or as part of the consideration given therefor, to assume a liability of the transferor or to acquire such property subject to a liability.

Section 13. To lend money to any person or persons upon such terms and in such ways and with such security as the Board of Trustees may deem advisable for the best interest of the Corporation.

Section 14. In general, to do any and all acts and things, and to exercise any and all powers which it may now or hereinafter be lawful for the Corporation to do or exercise under and pursuant to the laws of the District of Columbia and for the purpose of accomplishing any of the purposes of the Corporation, whether inside or outside the United States of America.

### ARTICLE V

### Investment

No part of the net earnings of the Corporation shall inure to the benefit of or be distributable to its trustees, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in this Article. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in, or intervene in, including the publishing or distribution of statements, any political campaign on behalf of any candidate for public office. Notwithstanding any other provision of these Articles, the Corporation shall not carry on any other activities not permitted to be carried on: (a) by a corporation exempt from Federal income tax under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States Internal Revenue Law; or (b) by a corporation, contributions to which are deductible under Section 170 of the Internal Revenue Code of 1986, as amended, or the corresponding provisions of any future United States Internal Revenue Law.

-4-

SANA-BELL 00005

## ARTICLE VI

### Dissolution

Upon the dissolution of the Corporation, the Board of Trustees shall, after paying or making provision for the payment of all of the liabilities of the Corporation, dispose of all of the assets of the Corporation exclusively for the purposes of the Corporation in such manner to the Islamic Society of North America, or in its absence, to The SAFA Trust, Inc., or in its absence, to the North American Islamic Trust, Inc., or, in its absence, to such Islamic organization or organizations organized and operated exclusively for religious, cultural, charitable, educational or scientific purposes as shall at the time qualify as an exempt organization or organizations under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States Internal Revenue Law, as the Board of Trustees shall determine. Any of such assets not so disposed of shall be disposed of by the Court of Common Pleas of the county in which the principal office of the Corporation is then located, exclusively for such purposes or to such Islamic organization or organizations, as said Court shall determine, which are organized and operated exclusively for such purposes.

## ARTICLE VII

### Members

The Corporation shall have no members.

## ARTICLE VIII

### Trustees

Section 1. Number of Trustees. The Corporation shall operate through a Board of Trustees, which shall function, operate and be considered for all purposes as the Corporation's Board of Directors. The minimum number of Trustees constituting the Board of Trustees shall be five (5) and the maximum number shall be eleven (11). Except as provided herein, the exact number of Trustees shall be as prescribed from time-to-time in the By-Laws of the Corporation.

Section 2. Election and Term of Office.

(A) The term of office of each Trustee shall be five (5) years except that members of the initial Board of Trustees will be assigned staggered terms of office of five, six, seven, eight and nine years, as set forth in Section 3 of this Article VIII.

-5-

SANA-BELL 00006

(B)  In case of a resignation, expulsion, expired term or any other termination of a regular board member or members, the board, by a majority vote of the Board of Trustees at any meeting, shall appoint the member or members required to fill the existing vacancy or vacancies within two months from the date of such vacancy or vacancies, and such appointee(s) or his or their successor(s) shall serve the remaining term of the departing Trustee(s).

(C)  The qualifications to be a Trustee, which shall be determined by its Board of Trustees in the Board of Trustee's sole discretion, shall include sound character, honesty, trust, serious interest in charitable work and commitment to the objectives and policies of the Corporation.

(D)  Any Trustee may be removed from office with or without cause by two-thirds (2/3) of the entire board members.

Section 3.  The names, addresses and terms of the initial Board of Trustees, who shall serve as initial Trustees until their successors be elected and qualify, are as follows:

| Name | Address | Term |
|------|---------|------|
| Dr. ███████████ | ████████████<br>Herndon, VA | 5 |
| Dr. Abdulrahim Al Saati | ████████████<br>Herndon, VA | 5 |
| Dr. Farid Yasin Qurashi | ████████████<br>Herndon, VA | 5 |
| Solayman Alsalih Alragihi | ████████████<br>Herndon, VA | 6 |
| Ibrahim Afandi | ████████████<br>Jeddah, Kingdom of Saudi Arabia | 7 |
| Dr. Mohammed Abdu Yamani | ████████████<br>Jeddah, Kingdom of Saudi Arabia | 8 |
| Salih Kamel | ████████████<br>Jeddah, Kingdom of Saudi Arabia | 9 |

-6-

## ARTICLE IX

### Incorporators

The names and address, including street and number, of each incorporator is:

Sandra Y. K. Loder

James M. Towarnicky

James T. Montgomery, Jr.



Washington, D.C.

Washington, D.C.

Washington, D.C.

## ARTICLE X

### Amendment

An amendment to these Article of Incorporation shall require the approval of two-thirds (2/3) of the votes entilted to be cast by board members present or represented by proxy at a meeting of the Board of Trustees.

## ARTICLE XI

### Regulation and Conduct of the Corporation

Other provisions, consistent with the laws of the District of Columia, for the regulation and conduct of the affairs of the Corporation, and creating, defining, limiting or regulating the powers of the Corporation, shall be provided in the By-Laws of the Corporation.

## ARTICLE XII

### Indemnification

The Corporation shall indemnify any person who is serving or has served as a director or officer of this Corporation, at its request, as a director or officer of another corporation in which this Corporation owns shares of stock or in relation to which it is a creditor, against expenses actually and necessarily incurred by such person in connection with the defense of any action, suit or proceeding in which he is made a party by reason of being or having been a director or officer of this Corporation or of which he is adjudged therein to be liable for negligence or misconduct in the performance of duty. Such indemnification shall not be deemed exclusive of any other rights to which any person may be entitled under any By-Law, agreement, vote of stockholders or otherwise.

-7-

SANA-BELL 00008

In witness whereof, we have hereunto subscribed our names this 28th day of July, 1989.

WITNESS:

_Carol B. Levine_

_Carol B. Levine_                    Sandra Y. K. Loder

_Carol B. Levine_                    James M. Towarnicky

                                     James T. Montgomery, Jr.

I, _Eleanor H. Pecht_, a Notary Public, hereby certify that on the 28th day of July, 1989, Sandra Y.K. Loder, James M. Towarnicky, and James T. Montgomery, Jr. appeared before me and signed the foregoing document as incorporators, and have averred that the statements therein contained are true.

'NOTARY SEAL)

                                     Notary Public

                                     My Commission Expires August 31, 1991

-8-

SANA-BELL 00009

## STATEMENT OF PERMISSION

I, Richard A. Gross, a resident of the District of Columbia, hereby agree to serve as the registered agent for SANA-BELL, Inc. My address as registered agent shall be c/o Foley, Hoag & Eliot, 1615 L Street, N. W., Suite 950, Washington, D. C.   20036.

_____
Richard A. Gross

_____
Date

SANA-BELL 00010

DISTRICT O_

DEPARTMENT OF
AND REGULATOR

I hereby certify that
and complete copy
filed in this office,
Division of the Busi
Administration, and
ment was admitt

File # 893189

ARTICLES

Da___ 6-3 04

SANA-BML 00011

WRITTEN CONSENT OF THE BOARD OF DIRECTORS
OF
THE SANA-BELL, INC.

The undersigned, being all of the directors of THE SANA-BELL,
INC., a District of Columbia nonstock corporation
(the'' Corporation''), hereby approve, resolve and consent to take
the actions as hereafter stated:

WHEREAS, the corporation was organized to promote the well-
being of mankind throughout the World and for charitable,
religious, educational and scientific purposes;

WHEREAS, the Board of Directors, in their best judgment finds
it in the best interests of the Corporation to dissolve it and
donate its real property located at 360 S. Washington Street, Falls
Church, Virginia to SANABEL AL KHEER, INC., a Virginia non-stock,
non-profit corporation, subject to that certain loan in the
original principal amount of $785,000.00;

NOW, THEREFORE, IT IS

RESOLVED, that the Corporation be and it hereby is authorized to be
dissolved and its real property located at 360 S. Washington Street, Falls
Church, Virginia be donated to SANABEL AL KHEER, INC. subject to that
certain loan in the original principal amount of $785,000.00 and its
appropriate officers are authorized and directed to take all actions
necessary to effectuate the intent and purposes of the foregoing
resolution.

RESOLVED FURTHER, that all actions heretofore taken by the Corporation's
Directors, officers and their agents are hereby approved and ratified.

Dated: October ___,2000          Dr. Abdullah Bin Saleh Al Obaid

Dated: October ___,2000          Dr. Mohammed A. Yamani

Dated: October (9,2000           Dr. Adnan Kh. Y. Basha

Dated: October 19,2000           Dr. Hassan A.A. Bahafzallah

Dated: October 19,2000           Dr. Saleh Al Saqri

Dated: October 19,2000           ████████████████████

Dated: October 19,2000           Mr. Abdullah A. AlNoshan

MA 21sb 33

# STERLING MANAGEMENT GROUP, INC.

October 4, 2005

*VIA FAX: 703 998 6866*
Mr. A. M. Hilali
3713 South George Mason Drive
Suite 513W
Falls Church, VA 22041

Re: Sanabel Al-Kheer, Inc. Property

Dear Mr. Hilali:

Pursuant to your request of today, please find the attached copy of the Deed and other related documents regarding the above subject Property.

For your information and according to my recollection, the Property was originally purchased by SANA-BELL, INC. in 1990 with a loan from IIRO of Saudi Arabia (original Deed not available). The Property was later transferred on October 19, 2000 by SANA-BELL, INC. to SANABEL AL KHEER, INC. (as a gift and without consideration but subject to IIRO loan obligations), a copy of the Deed is attached herewith. For all practical purposes, I think, you need this current Deed information only.

Please contact me if you need any further assistance regarding this matter.

Thank you.

Sincerely,

Muhammad Ashraf
Vice President

555 Grove Street, Suite 116
Herndon, VA 20170 U.S.A.
Phone: (703) 471-6060 • Fax: (703) 471-1211
E-mail: smg@sterlingmgmt.com
www.sterlingmgmt.com

SANA-BELL 00013



2001060002

## Received and Recorded
## In the Office of the
## Clerk of the Circuit Court
## of Arlington County, Virginia

| | | | | | |
|---|---|---|---|---|---|
| Document Number: 2001060002 | Book/Page: | **3120/1995** | Clerk ID: | RECORDER | |
| Document Type: BARGAIN AND SALE | Date Recorded: | 03/01/2001 | Grantor: | SANA-BELL INC | |
| Text Pages: 2 | Time Recorded: | 08:35:20 | Assumption Bal: | $0.00 | |
| Plat Pages: 0 | Document Date: | 10/19/2000 | New Amount: | $0.00 | |
| Received Of: JAMES M TOWARNICKY | Original Amount: $0.00 | | Exempt Code: | 58.1-811A | |

| | | | |
|---|---|---|---|
| Actual Consideration: | $0.00 | Taxable Consideration: | $0.00 |
| (039) VA Tax: | $0.00 | | |
| (213) Arlington Tax: | $0.00 | (214) Falls Church Tax: | $0.00 |
| (212) Arlington Transfer: | $1.00 | (222) Falls Church Transfer: | $0.00 |
| (038) Va Grantor: | $0.00 | | |
| (220) Arlington Grantor: | $0.00 | (223) Falls Church Grantor: | $0.00 |
| (301) Clerks Fee: | $12.00 | | |
| (145) VA Library: | $1.00 | | |
| (106) Tech Fee: | $3.00 | | |
| Document Total: | $17.00 | | |

Arlington County, Virginia
Clerk of the Court's Office

This certificate annexed constitutes the
Clerk's endorsement required by sections
17-59, 17-79 and 58.1-802 of the code of
Virginia.

David A. Bell
Clerk

## IMPORTANT:
## DO NOT DETACH
## THIS PAGE FROM
## THE DOCUMENT!

Cover Sheet required for document processing DO NOT REMOVE!

SANA-BELL  00014

Tax Map No. 52-3-06-027

## DEED

THIS DEED ("Deed") is made as of the ꞈᵗʰ day of October, 2000, by and between **THE SANA-BELL, INC.**, known of record as **SANA-BELL, INC.**, a non-profit District of Columbia corporation (hereinafter "Grantor"), and **SANABEL AL KHEER, INC.**, a Virginia non-stock, non-profit corporation ("Grantee").

*This Deed is recorded pursuant to Virginia Code § 58.1-811-A-14 and § 58.1-811-C and is exempt from recordation taxes as set forth therein.*

## WITNESSETH:

That, for and in consideration of furtherance of the Grantor's charitable purposes, the Grantor does hereby grant and convey, with Special Warranty of Title, unto the Grantee, that certain parcel of land situate in the City of Falls Church, Virginia, and formerly recorded among the land records of Fairfax County, but now recorded among the land records of Arlington County, Virginia, and being more particularly described as follows (the "Property"):

Parcel Two (2) of the land, now or formerly, of Office Space Management, Inc., as the same appears duly dedicated, platted and recorded per Deed of Subdivision in Deed Book 5561, Page 167, among the land records of Fairfax County, Virginia.

And being the same property conveyed to the Grantor herein by that certain Deed recorded in the land records of Arlington County in Deed Book 2555 at Page 1126.

BUT SUBJECT TO all recorded covenants, restrictions, conditions, reservations, rights-of-way and easements of record, to the extent, but only to the extent, that the same may lawfully affect the Property or any part thereof.

The Grantor hereby further covenants that it shall give further assurances, and execute and deliver such further documentation as is reasonably requested by Grantee to give effect to the foregoing conveyance.

TO HAVE AND TO HOLD the Property, together with all rights, privileges, and advantages thereunto belonging or appertaining to the Grantee, its successors and assigns, forever.

IN WITNESS WHEREOF, the Grantor has executed and delivered this deed effective the date hereinabove first written.

**GRANTOR:**
**THE SANA-BELL, INC.**

By: _____
Dr. Hassan A.A. Bahafzallah
Vice President

SANA-BELL 00015

**County of Fairfax**        : ss:
**Commonwealth of Virginia** :

I, a notary public, in and for the jurisdiction aforesaid, do hereby certify that Dr. Hassan A.A. Bahafzallah, in his capacity as Vice President of The Sana-Bell, Inc. (known of record as Sana-Bell, Inc.), personally did appear before me in said jurisdiction on this 19th day of October, 2000 and, being duly sworn, did execute and acknowledge the same as his, and said Grantor's, willful act and deed.

Notary Public

My Commission Expires: 7/31/03

**AFTER RECORDATION, RETURN TO:**
JAMES M. TOWARNICKY, P.L.L.C.
6810 Commerce Street, #200
Springfield, VA 22150

SANA-BELL 00016

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| THE SANA-BELL, INC., | : |
| Plaintiff, | : |
| v. | : Case No. 98-CV-4177 (PJM) |
| BMI REAL ESTATE DEVELOPMENT, INC., BMI LEASING, INC., SOLIMAN S. BIHEIRI, and SULEIMAN BIN ALI ALALI, | : |
| | : |
| Defendants. | : |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 105(i), Plaintiff, The Sana-Bell, Inc. ("Sana-Bell"), respectfully submits this Memorandum In Support Of Plaintiff's Motion For Summary Judgment against Defendants, BMI Real Estate Development, Inc. ("BMI REDI"), BMI Leasing, Inc. ("BMI Leasing") and Soliman S. Biheiri (these Defendants are sometimes collectively referred to herein as "BMI").[1]

A bench trial in this action is scheduled to begin February 29, 2000. Sana-Bell respectfully submits, however, that the written discovery, documents and deposition testimony

---

[1]    Only three out of four of the named Defendants have appeared in this action. Plaintiff was unable to serve process on Defendant Suleiman Bin Ali Alali ("Alali"), despite several attempts. Mr. Alali is believed to be in Dubei, Arab Emirates. Although he is aware of these proceedings against him, and apparently has a copy of the Complaint which was provided to him by Defendant Biheiri, he has not accepted service or otherwise appeared in this action. See Deposition of Soliman S. Biheiri ("Biheiri Depo.") at pp.66-67, lines 22, 1-9. (A copy of the Biheiri Deposition transcript is attached hereto as Exhibit 1.)

SANA-BELL 00017

already gathered in this action establish beyond any genuine dispute all the facts material to this action, and that judgment in favor of Sana-Bell is required as a matter of law.

## INTRODUCTION[2]

Sana-Bell brought this action on December 23, 1998 to recover its investment of over two-million dollars made in two limited partnerships managed by Defendants BMI REDI and BMI Leasing. The central issue in this case arises from BMI's assertion that the investments were not wrongfully transferred, but rather were "withdrawn" by virtue of certain transactional documents dated January 1996 (nearly three years prior to when suit was filed) allegedly executed by the absent Defendant, Mr. Alali. Defendants claim that the documents are authentic, and that Alali had either actual or apparent authority in 1996 to execute the documents to affect the withdrawal and distribute or transfer all of Sana-Bell's funds to Alali and to BMI Leasing (Mr. Biheiri's wholly-owned company). On the undisputed facts, however, Defendants cannot meet the burden of establishing their defense, and judgment in favor of Sana-Bell is required as a matter of law.

First, there have never been authentic, fully-executed transactional documents produced in this case or otherwise delivered to Sana-Bell. All that has been presented by Defendants are copies of certain documents with signatures which admittedly differ from one another, that purport to be the signatures of Alali. However, Defendant Biheiri has admitted facts in deposition that establish beyond genuine dispute that Alali's alleged signatures cannot actually be authenticated, rendering Defendants' evidence of the claimed "withdrawal" entirely inadmissible.

---

[2]     Full citations to the record concerning the facts summarized in this Introduction are contained in the "Facts" section of this Memorandum at p.4, _infra_.

Second, even if Defendants could overcome their evidentiary barriers, the transactional documents themselves are invalid as a matter of law to effect the transfer of assets claimed by Defendants. Although each document rests on the Defendants' claim of Alali's authority to act on behalf of Sana-Bell, the document that purports to certify that authority, i.e., a Certificate of Incumbency, is facially deficient; the bogus document is "certified" by no one other than Mr. Alali himself, and purports to reflect corporate positions that may not be lawfully held simultaneously. Each of the other transactional documents similarly contain deficiencies that are apparent on its face. Moreover, the startling confessions of Biheiri concerning the improper double booking of Sana-Bell's partnership and shareholder interests show beyond genuine dispute that the alleged transaction described in the withdrawal documents was never legitimately carried through. In fact, the "shares" that were to be issued to Sana-Bell pursuant to the withdrawal scheme were never delivered to anyone.

Furthermore, due to the patent deficiencies in the transactional documents, Defendants cannot, as a matter of law, assert a viable claim that it was reasonable of BMI or Biheiri to believe that Alali possessed apparent authority to act on behalf of Sana-Bell in the alleged withdrawal transaction. Even if it were taken as true that Mr. Biheiri believed at one point that Mr. Alali possessed some authority to act for Sana-Bell, never could that apparent authority be reasonably stretched to include the unilateral withdrawal and transfer of Sana-Bell's entire two million-plus dollars for Mr. Alali's own personal use and for use by Biheiri in one of his wholly-owned companies. Even if, arguendo, Alali could be cloaked with some authority, the manner in which the transfer was documented and the inconsistent tax filings prepared at the time were so obviously suspicious as to put any reasonable businessman on notice that he was not dealing with an authorized agent in a legitimate transaction. Indeed, the uncontroverted evidence is so

3

SANA-BELL 00019

strong as to establish beyond genuine dispute that Mr. Biheiri conspired with Mr. Alali to effect the wrongful transfer of funds.[3]

Given the undisputed facts and the law, summary judgment should be entered in Sana-Bell's favor on the counts of breach of contract, breach of fiduciary duty, equitable accounting[4] and civil conspiracy, as alleged in the Complaint.

## FACTS

The Plaintiff, Sana-Bell, a Washington, D.C. non-profit corporation, invested in two limited partnerships in 1992. See Answer, ¶ 9.[5] Sana-Bell's investment comprised of $1.1 million in units in BMI Construction Fund Limited Partnership and $1 million in units in BMI Leasing Limited Partnership. Id. The two corporate Defendants in this case, BMI RED1 and BMI Leasing are the managing general partners of the two limited partnerships, respectively. Id. The general partners are companies wholly-owned by Defendant Soliman Biheiri. Biheiri Depo. pp.8-9, lines 13-21, 1-2; pp.19-20, lines 21, 1; p.34, lines 7-10.

In 1998, certain accounting irregularities, including the partnerships' failure to provide Sana-Bell with annual K-1 reports of partnership disbursements, prompted requests from Sana-Bell to provide a proper accounting of its investments. Meetings were held among Defendant Alali (a long-time friend of Mr. Biheiri), and certain officers of Sana-Bell to address Sana-Bell's

---

[3]    Civil conspiracy is defined under Maryland law as "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal with the further requirement that the act or the means employed must result in damages to the plaintiff." Robb v. Wancowicz, 705 A.2d 125, 132 (Md. Ct. Spec. Apps. 1998).

[4]    Although Defendants have produced certain tax documents and bank statements, they have to date refused to conduct and deliver an accounting of Sana-Bell's investments. See Deposit[___], p.118, lines 19-21. Copies of the pertinent pages of [___] deposition testimony are attached hereto as Exhibit 2.

[5]    Separate Answers for the corporate Defendants and Biheiri were filed, but the admissions and denials are identical. Particular paragraphs of both Answers are collectively cited as "Answer, ¶ _."

4

SANA-BELL  00020

concerns. Mirza Depo. p.55, lines 12-22. At a heated meeting in September 1998, which Mr. Biheiri attended, it was disclosed that Sana-Bell's investments had been transferred out of the partnerships by Biheiri and Alali.                  pp.98-102. Although Alali was a member of Sana-Bell's investment committee, he was never an officer, director, nor a trustee of Sana-Bell with the authority to dissipate or transfer Sana-Bell's entire partnership interests.                  pp.52-53, lines 17-25, 1. Following the meeting, Sana-Bell demanded in writing a full accounting of its investments.                  pp.47-48, lines 22-25, 1-8. Those requests went unanswered, and this lawsuit followed.

Early in the case the parties voluntarily exchanged documents. Defendants produced a series of documents each bearing a January 1996 date which purport to have effectuated a transfer of Sana-Bell's investments some three years earlier to one of Mr. Biheiri's companies, BMI Leasing.[6]                  pp.47-48, lines 22-25, 1-8. Copies of the withdrawal documents are attached hereto as Exhibits 3-9. Mr. Alali's "authority" to sign these withdrawal documents on behalf of Sana-Bell is allegedly reflected in a Certificate of Incumbency (Exhibit 8) which purports to certify, by virtue of Mr. Alali's signature alone, that Alali was President, Chief Executive Officer and Secretary of Sana-Bell. This, and the other withdrawal related documents, are not, in fact, signed by any officer, trustee, or board member of Sana-Bell.[7] Biheiri Depo., p.194, lines 17-21. It is not even certain if any were actually signed by Alali himself. Biheiri Depo., pp.227, 228, lines 15-20, 3-5.

---

[6]    Mr. Biheiri also testified at deposition that approximately $1 million was taken by Alali himself. Biheiri Depo., p.263, lines 18-22.

[7]    Mr. Biheiri should have been instantly suspicious of Alali's purported authority, since the original Limited Partnership Subscription Agreements, which were in the Defendants' possession, were signed by Dr. Al-Saati and                  the true President and Secretary/Treasurer, respectively, of Sana-Bell. Mirza Depo., pp.123-124, lines 12-25, 1-14.

At deposition, Mr. Biheiri, in his dual role as individual defendant and as representative of the corporate defendants, admitted that the Certificate of Incumbency, upon which all the other suspect withdrawal documents rely as the sole document purporting to authorize Alali to act on behalf of Sana-Bell, is improper in form and substance. Biheiri Depo., pp. 225-226, lines 18-22, 1-18. Because Alali is the only one who signed it and it purports to verify his own status, it in fact verifies nothing; an obvious point that Biheiri himself admitted was "absolutely logical." Biheiri Depo., pp. 222-223, lines 22, 1-15.

Biheiri admitted that he has no fully executed copies of the operative withdrawal documents Biheiri Depo. pp. 189-190, lines 16-21, 1. The documents he did produce bear only a signature line for Mr. Alali, and contain a signature, although certain signatures differ markedly from others purported to be of the same name. Biheiri Depo., pp. 227-228, lines 15-22, 1-5. None of the documents produced in connection with the transfer is executed by Mr. Biheiri, BMI REDI or BMI Leasing; and none of Mr. Alali's purported signatures is notarized. Biheiri Depo., pp. 189-190, lines 19-21, 1-4. Biheiri admitted that he merely sent copies of the withdrawal documents by mail to Alali for Alali's signature and, thus, was never actually present when they were signed. Biheiri Depo., p. 192, lines 4-7. Biheiri claimed that he never even looked at the signatures prior to his deposition. Biheiri Depo., p. 228, lines 8-9.

Additionally, Biheiri's description of the claimed withdrawal transaction shows that it was never actually accomplished, as the withdrawal documents would have one believe. Although Biheiri contends under the withdrawal transaction that he "sold" Sana-Bell 49,000 shares of stock in his company, BMI Leasing, in exchange for Sana-Bell's limited partnership units, Biheiri never actually became a limited partner in Sana-Bell's place. Biheiri Depo., pp. 173-174, lines 16-22, 1-16. Indeed, on the books of the limited partnerships, Sana-Bell remained a partner even after the alleged transfer of all of Sana-Bell's partnership units. Biheiri Depo., p. 174, lines 17-19. At the same time, Biheiri claimed that on the books of BMI Leasing, Sana-Bell nonetheless became a 49% owner. Biheiri Depo. pp. 174-175, lines 20-22, 1. When

6

SANA-BELL 00022

counsel for Plaintiff expressed his confusion over the double-booking, Biheiri confessed that it "was not the right way to do it," admitting further that, "[t]he correct way to do it is actually to transfer immediately the interest of Sana-Bell." Biheiri Depo., p.175, lines 3-14. Biheiri's only explanation was that "[o]n the papers we didn't transfer the interests. That is a mistake, an administrative or a legal mistake, you might call it." Biheiri Depo., p.176, lines 14-17. Finally, Biheiri conceded that, in the end, no shares were ever actually issued in BMI Leasing, as reported in the withdrawal documents. Biheiri Depo., p.186, lines 1-4. These admissions render the documentation of the claimed withdrawal transactions both impossible to sustain as a legal matter and equally impossible to authenticate as an evidentiary matter.

As if this were not enough, Biheiri also admitted that the Schedule K-1 tax filings sent to Sana-Bell reflected that Sana-Bell maintained its partnership interests even after the purported withdrawal transaction had occurred. Biheiri Depo., p.176, lines 9-17.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material facts exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not properly regarded as "a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

While the evidence of the non-movant is believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 164 (4th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)). Instead, to defeat such a motion, the party opposing summary judgment must present evidence of specific facts from

7

SANA-BELL 00023

which the finder of fact could reasonably find for him or her.  Anderson, 477 U.S. at 252, 106

S.Ct. 2505, 91 L.Ed.2d 202); Celotex, 477 U.S. 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A mere "scintilla of evidence" is not sufficient to withstand a motion for summary judgment.

Anderson, 477 U.S. at 252, 106 S.Ct. 2505 91 L.Ed.2d 202.

## ARGUMENT

I.    Defendants Cannot Authenticate The Withdrawal Documents On Which They
      Rely For Their Defense.

Authentication and identification of evidence represents a special aspect of relevancy that

itself must be proven by direct or circumstantial evidence.  31 Graham, Federal Practice and

Procedure (2nd Ed. 1997) at 668.  Ordinarily, the determination of authenticity ultimately rests

with the jury, once the proponent of the evidence makes a prima facia showing of authenticity to

the court.  U.S. v. Goichman, 547 F.2d 778, 783 (3rd Cir. 1976).  However, in this action without

a jury, the Court alone will determine the issue.

The requirement of authenticity or identification as a condition precedent to admissibility

is satisfied by evidence sufficient to support a finding that the matter in question is what its

proponent claims.  Fed. R. Ev. 901(a).  Federal Rule of Evidence 901 provides a list of ten

illustrated examples of how to satisfy this requirement.  Similarly, Federal Rule of Evidence 902

lists ten types of evidence that need no extrinsic proof of authenticity.  On the facts admitted by

Defendants, however, none of these evidentiary provisions can cure Defendants' admissibility

problems.

The key evidence in question is the series of withdrawal documents purporting to contain

the signature of the absent Defendant, Alali.  The uncontroverted evidence, however, fails to

establish even a prima facia showing that the documents were ever actually signed by Alali.

Consequently, Defendants lack the evidence to make a prima facia case that the documents

contain an authentic signature or are otherwise what Defendants purport them to be.  Without

8

SANA-BELL 00024

authentic transactional documents, Defendants cannot establish their defense that Sana-Bell's funds were legitimately "withdrawn" from the partnerships.

Defendant Biheiri, appearing at deposition on his own behalf and on behalf of the corporate Defendants pursuant to Fed. R. Civ. P. 30(b)(6), claimed that his practice was to mail two sets of each of the withdrawal documents to Alali, one blank and one signed by BML. Biheiri Depo. pp.188-189, lines 20-21, 1. Biheiri, therefore, never saw Alali execute any of the documents, and he admits he has no fully executed copies. Biheiri Depo. pp.189-190, lines 16-21, 1. Biheiri also testified that the first time he had ever really looked at Mr. Alali's signature was at his deposition. Biheiri Depo., p.228, lines 8-9. Finally, Biheiri himself acknowledged that at least two of the purported copies of Alali's signature are different from one another. Biheiri Depo., pp.227-228, lines 15-22, 1-5.

On these undisputed facts, Defendants can avail themselves of none of the authenticity mechanisms provided under Fed. Ev. Rules 901 and 902. Federal Rule of Evidence 901(b) lists ten examples of authentication or identification conforming to the requirements of the rule. Of those ten, only the following three could potentially apply to the withdrawal documents at issue here:

> (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

> (2) Nonexpert opinion on handwriting. Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.
>
>      *          *          *

> (4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

Fed. R. Ev. 901(b)(1), (2) and (4).

9

SANA-BELL 00025

Similarly, Federal Rule 902 lists ten categories of self-authenticating documents that require no extrinsic evidence of authenticity. Of those ten, only Rule 902(8) could potentially apply to the withdrawal issues.

> (8) Acknowledged documents. Documents accompanied by a certificate of acknowledgement executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgements.

Fed. R. Ev. 902(8).

None of those provisions can be used to rescue Defendants from their authenticity problems. Defendants lack the testimony of a person who witnessed Alali's alleged act of signing under Fed. Ev. Rule 901(b)(1). With Alali outside the Court's jurisdiction, they lack a witness with the requisite familiarity to testify as to the authenticity of the purported signatures under Fed. Ev. Rule 901(b)(2). The inconsistency of the signatures, which Biheiri himself admitted are "different," cuts against a finding of a consistent internal pattern supporting authenticity under Fed. R. Ev. 901(b)(4). Finally, the lack of any notarization renders authentication under Fed. R. Ev. 902(8) unavailable.

The Court need go no further. Since Mr. Alali has remained unamenable to service and since Defendants have no independent basis to authenticate Alali's alleged signatures, the withdrawal documents cannot serve as the evidentiary foundation of Defendants' claim of a valid, authorized withdrawal or transfer of Sana-Bell's investments in the partnerships. Without authentic transactional documents, Defendants have no case.

2.    The Withdrawal Documents Are Legally Invalid.

In addition to the authenticity problems concerning the withdrawal documents allegedly signed by Alali, Defendants have other insurmountable legal barriers with regard to the Certificate of Incumbency that purports to certify Alali's authority to enter into the asset transfer on behalf of Sana-Bell.

SANA-BELL 00026

First, the Certificate of Incumbency is nothing more than Alali's claim to authority certified by Alali alone. Even Biheiri acknowledged after some pushing at deposition that this self-serving type of "certification" is essentially worthless unless someone else signs. Biheiri Depo., pp.222-223, lines 10-22, 1-3. In other words, for the document to have any legal meaning at all, the certification would have to come from some authority other than the person whose authority is purportedly confirmed. See Sullivan v. Mosner, 295 A.2d 482, 494 (Md. App. 1975) (a purported agent's own declarations are insufficient to establish his agency). Biheiri admitted that this is only logical. Biheiri Depo., pp.22-23, lines 22, 1-15.

The fatal circularity of the Certificate of Incumbency is compounded by the fact that in a District of Columbia nonprofit corporation such as Sana-Bell, it is illegal to hold the offices of President and Secretary simultaneously. D.C. Code § 29-524 (in a District of Columbia nonprofit corporation, "any two or more offices may be held by the same person, except the offices of president and secretary"). Alali allegedly signed the Certificate as President, CEO and Secretary of Sana-Bell. Thus, the Certificate, as a matter of law, is a nullity on its face. A summary description of the deficiencies in the other withdrawal documents is as follows:

Limited Partnership Withdrawal Agreement (Exhibit 3). The Court does not have to hear a lengthy evidentiary presentation since the documents purporting to evidence those acts are on their face enough to put any reasonable person on notice that the transfer was highly suspicious and clearly unauthorized. C.f., Burns v. Prudential Ins. Co. of America, 159 A. 606, 608 (Md. App. 1932) (person cannot be misled by declaration of agent known to be acting beyond the scope of his actual or apparent authority. This document was executed by "Suleiman Alali" purportedly in his capacity as director of Sana-Bell but was never executed by BMI Leasing Limited Partnership, the purported other party to the agreement. Directors typically do not have authority to execute such agreements, and there is no indication that Alali was ever given corporate authority as a director to execute this document on behalf of Sana-Bell. The document bears a date of January 1, 1996 and states in its preamble that the value of Sana-Bell's interest in

11

SANA-BELL 00027

the BMI Leasing Limited Partnership as of September 1, 1995 was $1 Million, yet the agreement purports to effect a withdrawal by Sana-Bell from the partnership without indicating that Sana-Bell was to receive any value for its interest. It is worth noting that subsequent to the date of the agreement, both BMI Leasing and Sana-Bell continued to reflect Sana-Bell as a partner in the partnership by continuing to issue Schedule K-1's to Sana-Bell. Biheiri Depo., p.176, lines 9-17. The signature on the agreement is not notarized.

Limited Partnership Withdrawal Agreement (Exhibit 4). This agreement purports to be between Sana-Bell and BMI Construction Fund Limited Partnership but again was only executed on behalf of Sana-Bell by "Suleiman Alali" as director and never executed by an officer of Sana-Bell or by BMI Construction Fund Limited Partnership. All of the comments made with respect to the BMI Leasing Limited Partnership, above, are applicable with respect to this document. In addition, the date of this document is January 1, 1996 but the preamble to the document inexplicably purports to value Sana-Bell's interest in the limited partnership as of December 5, 1997 at (prospectively) $1 Million. The signature on the agreement is not notarized.

Discharge and Release (Exhibit 5). This agreement is a release given by Suleiman Bin Ali Alali personally and in his alleged capacity as "President and CEO of Sana-Bell Inc." in favor of a "Company" which appears to include BMI Leasing Limited Partnership, BMI Construction Fund Limited Partnership and possibly their general partners, BMI Leasing and BMI REDI, although the term "Company" was never defined. The terms of the release speak about claims which Suleiman Bin Ali Alali himself and his heirs have, thus rendering it ineffective as a release of any Sana-Bell claims and, therefore, incongruous with the claimed withdrawal transactions. The address provided is not Sana-Bell's corporate address. Nor is there any indication of any consideration having been given for this release. Furthermore, the signature on the release is not notarized.

Release (Exhibit 6). This document purports to be signed by "Suleiman Bin Ali Elali" in his alleged the capacity as President and CEO of Sana-Bell and purports to release all claims

12

SANA-BELL 00028

Sana-Bell has against BMI Leasing and BMI REDI arising on or before January 1, 1996. There is no indication as to what consideration Sana-Bell received for this release, and the address used is not Sana-Bell's corporate address. The release is not notarized.

Shareholders Agreement (Exhibit 7). This document, dated January 1, 1996, purportedly exists between Sana-Bell and Soliman Biheiri, but was never signed by Biheiri. The person signing on behalf of Sana-Bell was Suleiman Alali as director (again no indication exists as to what authority he had to sign in such capacity). The signature on the agreement is not notarized. Additionally, the agreement suggests that Sana-Bell bought a stock interest in BMI Leasing. No such stock issuance ever occurred.

Certificate of Incumbency (Exhibit 8). This document, dated January 20, 1996, purports to set forth the name and signature of the officers of Sana-Bell. It was signed solely by "Suleiman Bin Ali Alali" who purports to be the President, CEO and Secretary of Sana-Bell. Under D.C. law, he is not allowed to hold those positions simultaneously. Thus, this document is a legal impossibility on its face. No other officers are listed, and the signature is not notarized.

Corporate Resolution (Exhibit 9). This document purportedly signed January 20, 1996 by "Suleiman Bin Ali Elali" allegedly as President and CEO of Sana-Bell purports to set forth and certify certain resolutions adopted by the Board of Directors of Sana-Bell. The document states on its face that "the Board of Directors of the Company SANA-BELL Inc., certify hereby" suggesting that the signature at the bottom should be those of the Board of Directors. Thus, the fact that the document is signed by someone other than the Board of Directors makes it false on its face. The certification is that "Suleiman Bin Ali Elali" is the President and CEO of Sana-Bell. He was the only person who signed, and the signature is not notarized.

In addition to the multitude of deficiencies in the transactional documents, Biheiri's confession that the "transfer" of interests was improperly double-booked, with Sana-Bell reflected both as a remaining partner _and_ as a shareholder in the transferee company, reveals the alleged transaction for the sham that it was. Biheiri Depo., pp.174-175, lines 4-22, 1-22. Add to

13

SANA-BELL 00029

that Biheiri's admission that no shares of BMI Leasing were ever actually issued to Sana-Bell as the transactional documents represent, and the illegitimacy of the claimed withdrawal transaction is confirmed beyond any genuine dispute.

### 3. Defendants' Alleged Belief That Alali Had Apparent Authority Is Unreasonable Based On The Undisputed Facts.

"[A] third person must use reasonable diligence and prudence to ascertain whether an agent is acting within the scope of his or her powers." Hill v. State, 585 A.2d 252 (Md. App. 1991). The Fourth Circuit has explained that under Maryland law, "[t]he mere fact that one is dealing with an agent, whether the agency be general or special, should be a danger signal, and, like a railroad crossing, suggests the duty to 'stop, look and listen,' and he who would bind the principal is bound to ascertain, not only the fact of agency, but the nature and extent of the authority ..." Standard Acc. Ins. Co. v. Simpson, 64 F.2d 583, 589 (4th Cir. 1933); see also Springfield Television, Inc. v. Gary, 628 S.W.2d 398, 403 (Mo. App. 1982) (" person dealing with a supposed agent has a duty to ascertain for himself the fact and scope of agency and must display that degree of common sense which distinguishes good faith from blind faith"). BMI never took these measures. Instead, BMI rests its case on the theory that Alali's apparent authority relieved them of their obligation to confirm the existence and scope of his agency powers.

Succinctly put, apparent authority to do an act is created as to a third person by written or spoken words or other conduct of the principal which, when reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him. Parker v. Junior Press Printing Service, Inc., 296 A.2d 377, 380 (Md. App. 1972). Driving this rule of law is the notion that, if two innocent people are harmed by the acts of an unauthorized agent, the person who misled the other into the contract by holding out the agent as competent to act will be the one to suffer. Id. at 381. The reasonable assessment of the apparent authority cannot be viewed generally, but must be specific to the transaction. P.

14

SANA-BELL 00030

Flanigan & Sons, Inc. v. Childs, 248 A.2d 473, 476 (Md. App. 1968). Moreover, the acts relied on must be those of the principal and not the apparent agent. Integrated Consulting Services, Inc. v. LDDS Communications, Inc., 996 F. Supp. 470, 476 (D. Md. 1998). The burden of proving not only the existence but the nature and extent of the alleged agency is on the Defendants. Medical Mutual Liberty Ins. Society of Maryland v. Mutual Fire, Marine and Inland Ins. Co., 379 A.2d 739, 743 (Md. Ct. Spec. App. 1977).

Defendants themselves admit that the acts that allegedly led them to believe in Alali's authority were Alali's acts alone, and not those of Sana-Bell, as required by the doctrine of apparent authority. See Defendants' Interrogatory Response No. 7[8] ("Dr. Ali Alali affirmatively represented that he possessed the authority to do those acts described above. No one else on behalf of plaintiff ever contacted any representative of defendants with respect to these investments or Dr. Ali Alali's authority (or lack thereof). . . .") (emphasis added). Defendants assert, however, that because Alali was the only person from Sana-Bell with whom Biheiri dealt, it was reasonable to conclude that Alali had the right to sell the corporation's assets. The fallacy of this principal was long-ago recognized in Hopper v. Callahan, 28 A. 385 (Md. App. 1894). In the Hopper case, the court considered the situation where a landowner placed a caretaker in charge of a farm, and the caretaker sold the property to a third party. The court explained:

> Certainly it could not justly be said that the owner had given [the caretaker] the apparent authority to sell [the firm]. It is not the common business of persons who are placed in charge of farms to sell the personal property which the owners confide to their custody for the ordinary and necessary requirements of farms. Persons who purchase such property from them without the necessary evidence of their right to sell must take the consequences of their own improvidence.

---

[8]    Biheiri adopted completely his interrogatory responses (previously unsigned) at his Deposition. See Biheiri Depo., p.14, lines 12-21. A copy of the relevant response is attached hereto as Exhibit 10.

51011757.01

SANA-BELL  00031

Hopper, 28 A. at 386 (emphasis added). On the undisputed facts, Defendants cannot meet their burden of proving that it was reasonable to believe that Alali had Sana-Bell's permission to "sell the farm."

Nor can Defendants prove that their claimed belief in Alali's authority was reasonable where the documents purporting to evidence that authority are on their face enough to put any reasonable person on notice that the transfer was highly suspicious and clearly unauthorized. C.f., Burns v. Prudential Ins. Co. of America, 159 A. 606, 608 (Md. App. 1932) (person cannot be misled by declaration of agent known to be acting beyond the scope of his actual or apparent authority). The phony certificate of incumbency, the complete lack of fully executed documents and the highly unorthodox execution of the withdrawal and transfer of all of Sana-Bell's funds (that never resulted in the issuance of any stock as required under the withdrawal documents), is more than sufficient alone to defeat BMI's claim to a reasonable belief in Alali's apparent authority to engage in the alleged transaction.

Finally, the Court should consider the following tax documents prepared by BMI:

K-1 Statement for Sana-Bell Inc. from BMI Leasing L.P. for 1996 (Exhibit 11). This document shows Sana-Bell's interest in such limited partnership to be close to 19% at the end of 1996 having a value of approximately $980,000. The first page of the 1997 K-1 is also included, again showing a 19% interest for a value of $1.059 Million. These values are reflected to exist more than one year after the claimed withdrawal from the partnership occurred.

K-1 For Sana-Bell Inc. from BMI Construction Fund Limited for 1997 (Exhibit 12). This shows Sana-Bell's interest being liquidated during the year of 1997, not 1996. It is, thus, entirely inconsistent with the documentation claimed by Defendants to have effected a withdrawal in 1996.

These documents are fatal to Defendants' apparent authority claim. The defense of apparent authority finds its roots in the equitable doctrine of estoppel. See Parker, supra, 296

51011757.01

SANA-BELL 00032

A.2d at 831. Thus, the equitable doctrine of unclean hands prohibits BMI from raising the defense of apparent authority due to the misleading nature of the inconsistent tax reports. See also Ettridge v. TSI Group, Inc., 548 A.2d 813, 818 (Md. App. 1988) ("he that has committed inequity shall not have equity"), citing, 2 Pomeroy's Equity Jurisprudence 90 (5th Ed. 1941). BMI can hardly claim the equitable protection of apparent authority when it prepared and delivered to Sana-Bell tax documents that are wholly inconsistent with the allegedly authorized withdrawal transaction.

## CONCLUSION

For all the foregoing reasons, summary judgment should issue in favor of Sana-Bell on all counts of the Complaint.

Respectfully submitted,

Richard A. Gross, Bar No. 360913
Michael D. Gaffney, Bar No. 439699
Rosenman & Colin LLP
805 15th Street, N.W., 9th Floor
Washington, DC 20005
(202) 216-4600

Dated: December 15, 1999

51011757.01

SANA-BELL 00033

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE SANA-BELL INC.,

          Plaintiff,

v.                                                      )    Civil Action No. PJM 98-4177
                                                        )
                                                        )
BMI REAL ESTATE DEVELOPMENT,                            )
INC., et al.,                                           )
                                                        )
          Defendants.                                )

SEP 1 8 2000

**ORDER**

On August 9, 2000, the Court issued an Order requiring Defendants to: (i) pay directly to Keith Petridge, the Court-appointed Special Master, the sum of $5,000 in good funds by September 1, 2000, and (ii) notify the Court and Plaintiff of such payment. The Order provided that if Defendants failed to comply, the Court would issue a default judgment against them taking all matters alleged in the Complaint as proven. Defendants have not complied with this order. Accordingly, it is this 18 day of September, 2000

    ORDERED:

    (1) Judgment by default is hereby ENTERED in favor of Plaintiff The Sana-Bell, Inc., and against Defendants BMI Leasing, Inc., BMI Real Estate Development, Inc., and Soliman S. Biheiri;

    (2) The Court's June 23, 2000 Order denying Defendants' counsel's Motion to Withdraw as Attorney is VACATED;

    (3) Defendant's counsel's Motion to Withdraw as Attorney is GRANTED;

SANA-BELL 00034

4) Plaintiff shall file an affidavit of proof of damages for assessment by the Court within twenty (20) days hereof;

5) Defendants shall pay Plaintiff's counsel contempt damages for their failure to comply with the Court's March 7, 2000 Stipulation and Order in the amount of $6,573.85.

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

THE SANS-BELL, INC.

Plaintiff.                                :

v.                                         :    Case No. 98-CV-4177 (PJM)

BMI REAL ESTATE DEVELOPMENT, INC.,        :
BMI LEASING, INC., SOLIMAN S. BIHEIRI, and
SULEIMAN BIN ALI ALALI,                   :

Defendants.                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER OF JUDGMENT

Following entry of default dated September 18, 2000 against defendants BMI Real Estate

Development, Inc., BMI Leasing, Inc. and Soliman S. Biheiri, and after consideration of

Plaintiff's Affidavit of Proof of Damages With Proposed Order filed September 28, 2000 and the

record in this case, it is hereby

ORDERED that judgment be entered in favor of Plaintiff The Sans-Bell, Inc. and against

defendants BMI Real Estate Development, Inc., BMI Leasing, Inc. and Soliman S. Biheiri jointly

and severally in the amount of $2,300,287.50, plus post-judgment interest pursuant to 28 U.S.C.

§ 1961 at the applicable federal rate.

So Ordered.

_____  9/29/00
Hon. Peter J. Messitte
United States District Judge



File Number 789

BRA-25 (10/96)
★ ★ ★
GOVERNMENT
OF THE
DISTRICT OF COLUMBIA

# TWO-YEAR REPORT FOR NON-PROFIT FOREIGN AND DOMESTIC CORPORATIONS

DUE JANUARY 15th 2000

| | |
|---|---|
| Filing Fee $ | 50.00 |
| Penalty | 30.00 |
| Interest | |
| Total $ | 80.00 |

RETAIN A COPY FOR YOUR RECORDS
SEE REVERSE SIDE FOR FILING FEES, PENALTIES, ETC.
MAKE CHECK PAYABLE TO D.C. TREASURER
MAIL REPORT TO : DEPT. OF CONSUMER AND REGULATORY AFFAIRS
BUSINESS REGULATION ADMINISTRATON, CORPORATIONS DIVISION
P.O. BOX 92300, WASHINGTON, D.C. 20090

Indicate if corporation is
☒ Domestic Non-Profit
☐ Foreign Non-Profit

1. Name of Corporation

THE SANA-BELL, INC.

2. Organized under the laws of (insert
District of Columbia, State or Country)

DISTRICT OF COLUMBIA

3. If a foreign corporation, the address of its principal office in the state or
Country where organized

4. Name of registered agent and address of registered office in the District of
Columbia (Do not make change of agent or address on this form)
1212 New York Avenue, Inc.
1212 New York Avenue, 12th Floor
Washington, D.C. 20005

5. Brief statement of business or affairs conducted in the District of Columbia
NONE

6. If a domestic profit corporation, the address including street and number,
of principal office in the District of Columbia

**ATTACH PAYMENT HERE**

7. Name and address, including street and number of directors and officers
NAME

Director or Executive Director  DR. ABDULLAH BIN SALEH AL OBAID ▇▇▇, Falls Church, VA ▇▇
Director  Dr. Mohammad A. Yamani ▇▇▇▇, Jeddah, Saudi Arabia
Director  Dr. Adnan Kh. Y. Basha ▇▇▇▇, Jeddah, Saudi Arabia *
President  Dr. Adnan Kh. Y. Basha ▇▇▇▇, Jeddah, Saudi Arabia
Vice President Dr. Hassan A. A. Bah▇▇▇▇, Jeddah, Saudi Arabia
Secretary  Dr. Salen Al Sagri ▇▇▇▇, Falls Church, VA
Treasurer  Mr. Abduallah A. Al Nosha▇, Fallsh Church, VA

FOREIGN PROFIT CORPORATIONS ANSWER ARTICLES 8 THRU 10 (Do not apply to domestic corporations)

8. Date organized

9. Term of existence authorized

☐ perpetual    Limited to _____ years

10. Is corporation in good standing in State in which organized?

☐ Yes    ☐ No

Date June 26, 2000          B▇▇▇▇▇▇ (signature)

CORPORATE SEAL

Its
☐ Pres.    ☐ Vice Pres.    ☐ Sec'y
☒ Asst. Sec'y    ☐ Treas.    ☐ Asst. Treas.
(non-profit corporation only)

A fee of $50.00 will be charged
for dishonored checks

FILE

FILED
7-18-00
By

* Directors

Dr. Hassan A.A.Bahafzallah ▇▇▇▇ Jeddah, Saudi Arabia
Dr. Saleh Al Sagri ▇▇▇▇ Falls Church, VA
▇▇▇▇
Mr. Abdullah A. AlNoshan ▇▇▇▇, Falls Church, VA

(Over)

SANA-BELL 00037

-yr
?pt

D...

DE... ... ... ...
AND REGULATOR... ...,

I hereby certify the...
2... ... plete copy ...
fil... ... ... ... ...
D... ... ... of the B...
A... ... ...
man... ... admit...
Fil... ___89789___
___ ZONN. Report___

D...            6 3        04

Pakang E. H...
                Rox... ... 1
SANA-BELL  00038