# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers, *Co-Chair*<br>Donald A. Migliori, *Co-Chair*<br>Robert T. Haefele, *Liaison Counsel*<br>MOTLEY RICE LLC | Stephen A. Cozen, *Co-Chair*<br>Sean P. Carter, *Co-Chair*<br>J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

December 9, 2024

The Honorable George B. Daniels, U.S.D.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Daniels:

The Plaintiffs' Executive Committees write in response to the December 4, 2024 correspondence from counsel for Sudan (ECF No. 10569), and to express our objection to the insufficiency of the enclosure purporting to be correspondence from Dr. Muawiyah Othman Muhammad Khair, Minister of Justice (ECF No. 10569-1). Although the enclosure intones the words the Court used in its Order (ECF No. 10552), it does so in a conclusory manner and conspicuously fails to address the very concerns Plaintiffs raised in their default applications and the filings that followed (*see, e.g.*, ECF Nos. 10490, 10492, 10493, 10523, 10541, 10542, and 10551) and that ultimately prompted this Court to deny Sudan's motion to set aside the certificate of default and require the written authorization (ECF No. 10552).

The "authorization," addressed generically "To Whom it May Concern," and not under oath, does nothing but parrot twice the words the Court used in its Order, without actually offering the Court or the Plaintiffs any assurance that Sudan is prepared to, or capable of, defending itself beyond raising and litigating technical defenses, as has been its long-time approach in litigation. The Court ordered Sudan to provide "written authorization … indicating Sudan's intention to defend itself in this action…." ECF No. 10552. Interspersed among other text that does not address concerns Plaintiffs or the Court raised, Sudan simply repeats the phrase the Court used, stating "Sudan remains committed to defending itself in the U.S. litigation, In re Terrorist Attacks on September 11, 2001," and "Sudan remains committed to defending itself in this litigation." ECF No. 10569-1, ¶¶ 1, 6.

Nothing in Sudan's recent submission assuages concerns about Sudan's commitment or preparedness (or lack thereof) to comply at all with its discovery obligations, and certainly not doing so in a timely manner. Plaintiffs' previous filings raised concerns about Sudan's history of delays and tactical gamesmanship (*see, e.g.*, 10542 at 3; 10551 at 7-15) and that its past dealings in litigation and the current circumstances all indicate Sudan is neither prepared to, nor capable of, proceeding on the

The Honorable George Daniels
December 9, 2024
Page 2

_____

merits and fulfilling its litigation obligations under the Federal Rules and pursuant to court orders, including responding to discovery on the timetable set by the Rules and the Court's orders. *See, e.g.*, ECF No. 10542 at 3. The broadly phrased statement of "commitment" in Sudan's recent submission does nothing to address these concerns, and is, indeed, wholly consistent with Sudan's preexisting course of raising and litigating technical defenses but failing to otherwise engage or fulfill its litigation obligations. It suggests nothing about Sudan's capacity to conduct required investigations into the factual allegations. It has not demonstrated, for example, an ability to search for, collect, and produce documents; to respond to interrogatories in a considered manner, or to produce witnesses for depositions. Although it indicates that the Ambassador in the United States is authorized to provide direction to counsel, it offers no assurances that he is able from his post in the U.S. to undertake even the most basic tasks necessary for Sudan to actively participate in this litigation, including, but not limited to, pretrial discovery.

Experience and the record that Sudan itself placed before this Court suggests that Sudan is neither prepared nor capable of meeting its discovery obligations. Indeed, the record indicates that the Ambassador was unable to authorize a meet and confer on a discovery plan, and that there is a generalized inability to communicate in a timely manner with Sudanese authorities essential to researching and responding to discovery and appearing for depositions.

Similarly, nothing in recent submission alters the assessment of the three criteria Sudan had the burden to establish to show good cause (*viz*, willfulness, meritorious defense, and absence of prejudice) for setting aside defaults. *See, e.g.*, ECF No. 10551 at 10-12. Sudan has done nothing to meet its burden to show good cause. That it was able to file its answer within 14 days when ordered to do so, underscores the willfulness of its previous default. And nothing in its recent submission added anything to its earlier failures to address the Court regarding a meritorious defense and prejudice. *See* ECF No. 10551 at 10-12

The insincerity of Sudan's commitment to engage in its defense, and its lack of capacity to do so, is revealed by the qualifying language included with its unsworn commitment pledge, asking in advance for the Court's "patience and indulgence," already foreshadowing that Sudan does not expect to proceed in accordance with the Rules or on a proper schedule. Overall, what Sudan has offered signals an intent to participate only for purposes of litigating technical defenses to drag the proceedings out, as it has done here and elsewhere.

Its insincerity is further revealed in its approach of using formulaic denials to answer the amended complaints, without any indication it investigated the allegations. Throughout its answers (ECF Nos. 10575, 10576), Sudan asserts over 300 times that it "lacks knowledge or information sufficient to form a belief" as to allegations. But the answers do not indicate Sudan undertook any effort to obtain information to facilitate its response. In at least some instances, relating to specific acts or statements of Sudanese officials, Sudan should have access to adequate information to facilitate its response, suggesting that it has made no sincere effort to respond following a requisite investigation and exhibiting the appropriate level of candor.[1]

---

[1] *See, e.g.*, ECF No. 10575, Response to ¶15 (due to lack of knowledge or information, denying allegation that, under the direction of Sudan's most senior officials and using Sudan's intelligence, military, and diplomatic apparatuses, Sudan deployed assets, resources, and expertise to nurture and sustain al Qaeda and provide it with the skills and resources); Response to ¶34 (due to lack of knowledge or information, denying aspects of

_____

      In light of this submission, Sudan is and remains just as the Court has ordered—a Defendant in default.

Respectfully submitted,

| MOTLEY RICE LLC | COZEN O'CONNOR |
|---|---|
| By: /s/ *Robert T. Haefele* | By: /s/ *Sean P. Carter* |
| ROBERT T. HAEFELE | SEAN P. CARTER |
| 28 Bridgeside Boulevard | One Liberty Place |
| Mount Pleasant, SC 29465 | 1650 Market Street, Suite 2800 |
| Tel.: (843) 216-9184 | Philadelphia, Pennsylvania 19103 |
| Email: rhaefele@motleyrice.com | Tel.: (215) 665-2105 |
| | Email: scarter@cozen.com |
| *Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs* | *Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs* |

cc:    The Honorable Sarah Netburn, via ECF
        All Counsel of Record via ECF

---

allegation regarding Turabi and NIF staging a coup); Response to ¶36 (due to lack of knowledge or information, denying aspects of allegation that, between the time of the coup in 1989 until 1999, Turabi and Bashir shared power over Sudan, and in 1998, Turabi and Bashir renamed the NIF the National Congress Party, and thereafter exercised power under its banner); Response to ¶38 (due to lack of knowledge or information, denying aspects of allegation that "Bashir's ouster of Turabi in 2000 did not alter Sudan's longstanding collaboration with al Qaeda. To the contrary, Sudan continued to provide critical and extensive support to al Qaeda through, and even after, September 11, 2001."); Response to ¶62 (due to lack of knowledge or information, denying allegation that "Bashir and Turabi who both [publicly] condemned the presence of U.S. troops in the region in terms mirroring bin Laden's Islamist and conspiratorial narrative.); Response to ¶72 (due to lack of knowledge or information, denying allegation that "Sudan's President Bashir also provided an official Sudanese government letter to al Qaeda operatives in Sudan, which permitted al Qaeda operatives to avoid and bypass security screening of their persons and possessions."); Response to ¶152 (due to lack of knowledge or information, denying allegation that Sudan's President Bashir authorized al Qaeda's transportation of weapons and explosives from Khartoum to Port Sudan from shipment to Yemen); Response to ¶186 (due to lack of knowledge or information, denying allegation that Sudan's President Bashir defended Osama bin Laden in the aftermath of the Embassy attacks, saying "I met him and I know that he is a believer in God and a believer in his cause.").