Exhibit 13

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)<br>ECF Case |

*This document relates to:*

*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* No. 03 Civ. 9849
*Federal Insurance Co., et al. v. Al Qaida, et al.,* No. 03 Civ. 6978
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.,* No. 04 Civ. 1923
*Continental Casualty Co., et al. v. Al Qaeda, et al.,* No. 04 Civ. 5970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.,* No. 04 Civ. 7065
*Euro Brokers Inc., et al., v. Al Baraka, et al.,* No. 04 Civ. 7279
*WTC Properties LLC, et al. v. Al Baraka, et al.,* No. 04 Civ. 7280

# PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DUBAI ISLAMIC BANK

THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES
October 15, 2010

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DUBAI ISLAMIC BANK

Plaintiffs in *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, Case No. 04 Civ. 1923, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.*, Case No. 04 Civ. 7065, *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279, and *WTC Properties LLC, et al. v. Al Baraka, et al.*, Case No. 04 Civ. 7280, propound and serve on Dubai Islamic Bank (hereinafter "Defendant" or "DIB"), the following Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

## INSTRUCTIONS

1.      In producing documents and other things, Defendant is requested to furnish all documents or things in its possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

2.      Documents are to be produced in full; redacted documents will not constitute compliance with this request. If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

3.      In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business or the documents shall be organized and labeled to correspond to the categories in this request.  All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by Defendant.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.      Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.      Each of these requests shall be continuing.  If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10. If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

    A. The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

    B. The date of the document or transaction involving the information;

    C. The names of each author and any and all participants with respect to the information;

    D. The names of any and all signatories of the document, if any;

    E. The name of the document's current custodian;

    F. The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

    G. A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11. For the purpose of these discovery requests, except to the extent specifically indicated in the "Definitions" section of this Set of Requests, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press. In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.     If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

13.     Unless otherwise specified, the relevant scope of discovery will be for the time period from January 1, 1990 through the present.

14.     Unless otherwise specified, DIB's responses to Plaintiffs' First Set of Requests for Production of Documents Directed to Dubai Islamic Bank, including any production of documents by the defendant, shall be directed to the law offices of Motley Rice at 275 Seventh Ave., 2nd Floor, New York, NY 10001, c/o Robert T. Haefele, Esq.

## DEFINITIONS

1.     The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

2.     The term "Plaintiffs" shall refer to Plaintiffs in *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, Case No. 04 Civ. 1923, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.*, Case No. 04 Civ. 7065, *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279, and *WTC Properties LLC, et al. v. Al Baraka, et al.*, Case No. 04 Civ. 7280.

3.     The terms "Defendant," "You," "Your," and "DIB" shall refer to the Dubai Islamic Bank and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or representative acting on the Dubai Islamic Bank's behalf.

4.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5.     The term "person" is defined as any natural person or any business, legal or government entity or association.

6.     The term "concerning" means relating to, referring to, describing, evidencing or constituting.

7.     The terms "all" and "each" shall be construed as all and each.

8.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.     The use of the singular form of any word includes the plural and vice versa.

10.     The terms "United Arab Emirates" or "U.A.E." shall mean the United Arab Emirates, including any agency, instrumentality, organ, political subdivision, official, representative, or agent of the United Arab Emirates, as well as any member of the ruling family for each of the seven Emirates (Abu Dhabi, Ajman, Fujairah, Sharjah, Dubai, Ras al Khaimah and Umm al Quwain), and any official, representative, or agent acting on their behalf.

11.     The term "DIB Personnel" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or other representative employed by Dubai Islamic Bank and/or acting on Dubai Islamic Bank's behalf.

12.     The term "jihad" (جهاد) shall refer to, but is not limited to, al jihad bi-al-lisan ("jihad of the tongue"), al jihad bi-al-qalam ("jihad of the pen"), al jihad al nafs ("jihad of the soul"), al jihad bi-al-nafs ("self–sacrificing jihad"), and al jihad bi-al-mal ("financial jihad").

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO DUBAI ISLAMIC BANK**

1.      Please provide all documents relating to all DIB accounts established or held in the name of, on behalf of and/or for the benefit of <u>Osama bin Laden</u>, any DIB account for any entity in which bin Laden held any beneficial interest, and/or any DIB account over which bin Laden had signatory authority or had any actual or potential beneficial interest. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among bin Laden and/or his representative(s) and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

2.      Please provide all documents relating to all other transactions at DIB, financial or otherwise, involving Osama bin Laden or any entity in which he has held any beneficial interest, and which are not responsive to Request No. 1 above.

**ANSWER:**

3. Please provide all documents relating to all DIB accounts established or held in the name of, on behalf of and/or for the benefit of <u>Mustafa Ahmed al Hisawi</u> (a/k/a Shaykh Sa'id; a/k/a Mustafa Muhammed Ahmed), any DIB account for any entity in which al Hisawi held any beneficial interest, and/or any DIB account over which al Hisawi had signatory authority or had any actual or potential beneficial interest.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among al Hisawi and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

4. Please provide all documents relating to all other transactions at DIB, financial or otherwise, involving Mustafa Ahmed al Hisawi or any entity in which he has held any beneficial interest, and which are not responsivee to Request No. 3 above.

**ANSWER:**

5.      Please provide all documents relating to all DIB accounts established or held in the name of, on behalf of and/or for the benefit of <u>Ali Abdul Aziz Ali</u> (a/k/a Ammar al Baluchi), any DIB account for any entity in which Ali held any beneficial interest, and/or any DIB account over which Ali had signatory authority or had any actual or potential beneficial interest.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Ali and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

6.      Please provide all documents relating to all other transactions at DIB, financial or otherwise, involving Ali Abdul Aziz Ali or any entity in which he has held any beneficial interest, and which are not responsive to Request No. 5 above.

**ANSWER:**

7. Please provide all documents relating to all DIB accounts established or held in the name of, on behalf of and/or for the benefit of any of the September 11, 2001 hijackers identified in Attachment A [hereinafter collectively referred to as the "9-11 Hijackers"], any DIB account for any entity in which the 9-11 Hijackers held any beneficial interest, and/or any DIB account over which the 9-11 Hijackers had signatory authority or had any actual or potential beneficial interest. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the 9-11 Hijackers and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

8. Please provide all documents relating to all other transactions at DIB, financial or otherwise, involving the 9-11 Hijackers or any entity in which they held any beneficial interest, and which are not responsive to Request No. 7 above.

**ANSWER:**

9. For all DIB accounts relating to Osama bin Laden, Mustafa Ahmed al Hisawi, Ali Abdul Aziz Ali and the 9-11 Hijackers, please provide all documents describing, detailing, or summarizing all transfers of funds between and among those accounts.

**ANSWER:**

10. Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between DIB and the persons identified in Attachment B, including without limitation, all documents relating to any and all transactions, financial or otherwise, involving those persons. Responsive documents shall include, but are not limited to, documents relating to all DIB accounts established or held in the name of, on behalf of, and/or for the benefit of the persons identified in Attachment B, any DIB account for any entity in which those persons held any beneficial interest, and/or any DIB account over which the persons identified in Attachment B had signatory authority or had any actual or potential beneficial interest. Responsive documents shall also include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the persons identified in Attachment B and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any

documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

 

11. Please provide all documents relating to any business, banking, financial, employment, charitable, religious or other relationship between DIB and the entities identified in Attachment C, including without limitation, all documents relating to any and all transactions, financial or otherwise, involving those entities. Responsive documents shall include, but are not limited to, documents relating to all DIB accounts established or held in the name of, on behalf of, and/or for the benefit of the entities identified in Attachment C, and/or any DIB account in which the entities identified in Attachment C had any actual or potential beneficial interest. Responsive documents shall also include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the entities identified in Attachment C and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

12. Please provide all documents relating to all DIB accounts established or held in the name of, on behalf of, and/or for the benefit of DIB's founder and current board member, Saeed Ahmad Lootah, any DIB account for any entity in which Lootah held any beneficial interest, and/or any DIB account over which Lootah had signatory authority or had any actual or potential beneficial interest. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Lootah and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

13. Please provide all documents relating to any business, banking, financial, employment, charitable, religious, or other relationship between Saeed Ahmad Lootah and Saidi Madani al Tayyib. Such documents shall include, but are not limited to, all written or oral communications between Lootah and al Tayyib (correspondence, letters, memoranda, notes, emails, facsimiles or otherwise).

**ANSWER:**

14. Please provide all documents relating to any transaction, financial or otherwise, involving Saeed Ahmad Lootah and Saidi Madani al Tayyib, including without limitation, all documents relating to the transfer of funds from any of Mr. Lootah's accounts to Saidi Madani al Tayyib (including any DIB account established or held in the name of, on behalf of and/or for the benefit of al Tayyib, any DIB account for any entity in which al Tayyib held any beneficial interest, and/or any DIB account over which al Tayyib had signatory authority or had any actual or potential beneficial interest).

**ANSWER:**

15. Please provide all documents relating to any transaction, financial or otherwise, involving Saeed Ahmad Lootah and the persons and entities in Attachments A-C, including without limitation, all documents relating to the transfer of funds from any of Mr. Lootah's accounts to the persons and entities in Attachments A-C (including any DIB account established or held in the name of, on behalf of and/or for the benefit of the persons and entities in Attachments A-C, any DIB account for any entity in which the persons and entities in Attachments A-C held any beneficial interest, and/or any DIB account over which the persons and entities in Attachments A-C had signatory authority or had any actual or potential beneficial interest).

**ANSWER:**

16.     Please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States state or federal governmental entity, agency and/or department, or any United States-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "United States Investigator"), any foreign government or any foreign-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "Foreign Investigator"), or by the United Arab Emirates or any U.A.E.-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "U.A.E. Investigator"), which references or addresses any of the DIB accounts, persons, or entities identified in Requests Nos. 1-15 above.

**ANSWER:**

17.     Please provide copies of all documents that have been seized by, or produced by DIB to, any United States Investigator, any Foreign Investigator, or any U.A.E. Investigator, which references or addresses any of the DIB accounts, persons, or entities identified in Requests Nos. 1-15 above.

**ANSWER:**

18.     Please provide all documents relating to any audit, analysis, examination, survey, or review of the DIB accounts, persons, or entities identified in Requests Nos. 1-15 above, conducted either by DIB (including DIB's Fatwa and Shariah Advisory Board – a/k/a "Haiat al-Fatawa wa-al Rakaba al-Shareeyah-libank Dubai al-Islami"), or any third party, including but not

16

limited to, any bank, financial institution, government agency, accountant, or auditor. Such documents shall include any audit, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the U.A.E.

**ANSWER:**


19.    Please provide all documents relating to any written or oral communication between DIB and the U.A.E., which references or addresses any of the DIB accounts, persons, or entities identified in Requests Nos. 1-15 above. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**


20.    Please provide all documents governing, describing, detailing, or otherwise relating to any relationship between DIB and Osama bin Laden. Such documents shall include, but are not limited to, all records identifying all DIB officials, board members, trustees, committee members, employees, and/or any U.A.E. official, that: (i) met with and/or consulted with Osama bin Laden and/or his representative(s) regarding DIB's banking and financial services; (ii) approved of and/or directed DIB to provide banking and financial services to bin Laden; and (iii) supervised or managed accounts at DIB in which bin Laden held any actual or potential beneficial interest, or over which he had signatory authority.

**ANSWER:**

21.     Please provide all documents DIB sent to, and/or received from, U.A.E. officials, regarding DIB's relationship with Osama bin Laden, including without limitation, all documents relating to the decision to provide banking and financial services to bin Laden, and the supervision and management of accounts at DIB in which bin Laden held any actual or potential beneficial interest, or over which he had signatory authority.

**ANSWER:**

22.     Please provide all documents relating to the meeting(s) held between U.S. officials and representatives of DIB and the U.A.E., occurring in or around July 1999 ("July 1999 Meeting(s)") in the U.A.E., regarding Osama bin Laden, DIB's relationship with Osama bin Laden, money laundering, and/or terrorist financing.

**ANSWER:**

23.     Please provide all documents identifying all DIB and U.A.E. officials and/or representatives who participated in the July 1999 Meeting(s) with U.S. officials.

**ANSWER:**

24.     Please provide all documents relating to the one-time bank transfer of approximately $50 million to Osama bin Laden through DIB, and which was specifically raised with the ruling Al Maktoum family during the July 1999 Meeting(s). Such documents shall include, but are not limited to, records identifying the name of the individual(s) who sent the $50 million, the bank from which the $50 million was sent, the wire transfer number, the recipient of the funds, and the bank account numbers of the sender and receiver.

**ANSWER:**

25.     Please provide all documents exchanged between and among the U.S., DIB and the U.A.E. before, during, and after the July 1999 Meeting(s), relating to Osama bin Laden, al Qaida, money laundering, and/or terrorist financing. Such documents shall include but are not limited to, correspondence, memoranda, emails, banking and financial reports, investigative reports and/or summaries, intelligence reports and/or summaries, terrorism reports and/or summaries, security files, and any other records.

**ANSWER:**

26.     Please provide all documents DIB sent to, and/or received from, U.A.E. officials, relating to the July 1999 Meeting(s) and allegations that DIB was associated with or involved in money laundering or terrorist financing for the benefit of Osama bin Laden and/or al Qaida.

**ANSWER:**

27.    Please provide all documents relating to any and all actions taken by DIB and/or the U.A.E. following the July 1999 Meeting(s) regarding Osama bin Laden, DIB's relationship with Osama bin Laden, money laundering, and/or terrorist financing.  Such documents shall include, but are not limited to, procedures, protocols, standards and/or guidelines which were implemented and used, or are currently being used, to prevent or deter financial crimes such as money laundering or the facilitation of terrorism financing.

**ANSWER:**

28.    Please provide all documents governing, describing, detailing or relating to the actions taken by DIB and/or the U.A.E. with regard to the accounts that were discussed and/or the subject of the July 1999 Meeting(s), including without limitation, all documents identifying those accounts, the account holders, the account numbers, and the status of those accounts.

**ANSWER:**

29.    Please provide all documents relating to communications by the U.S. to DIB and/or the U.A.E. in 1998 that DIB was providing banking and financial services to the Taliban and/or al Qaida, including the request from the U.S. that all Taliban and/or al Qaida-related accounts at DIB be closed.   Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the U.S., DIB and/or the U.A.E., and any banking or financial documents specifically identifying any Taliban and/or al Qaida accounts, the account holders, the account numbers, and the status of those accounts.

**ANSWER:**

30.     Please provide all documents relating to the DIB-Taliban and/or al Qaida accounts identified in response to Request No. 29. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the account holder(s) and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

31.     Please provide all documents relating to DIB Account No. ■335. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Abdullah Azzam and/or the account holder(s) and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks,

cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

32. Please provide all documents relating to any written or oral communication between DIB and the U.A.E., which references or addresses the Taliban, al Qaida, Abdullah Azzam, and any of the accounts identified in Requests Nos. 29-31 above. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**

33. Please provide all documents, statements, interviews, press releases, internal memos, or other materials relating to any accusation that DIB, DIB Personnel, or other persons associated with DIB, were associated with, involved in, or supported the 1998 U.S. Embassy bombings in Kenya and Tanzania. For purposes of this request, the term "support" includes any form of financial, logistical, administrative or other assistance, whether provided directly or indirectly.

**ANSWER:**

34.     Please provide all documents relating to any internal investigation or audit conducted by DIB (including DIB's Fatwa and Shariah Advisory Board), relating to any accusation that DIB, DIB Personnel, or other persons associated with DIB, were associated with, involved in, or supported the 1998 U.S. Embassy bombings.  Such documents shall include any investigation or audit ordered, conducted, supervised, overseen, or reviewed by the U.A.E.

**ANSWER:**

35.     Please provide copies of all documents that have been seized by, or that DIB has produced to, any United States Investigator, any Foreign Investigator, or any U.A.E. Investigator, which references or addresses any accusation that DIB, DIB Personnel, or other persons associated with DIB were associated with, involved in, or supported the 1998 U.S. Embassy bombings.

**ANSWER:**

36.     Please provide all documents relating to any written or oral communication between DIB and the U.A.E., which references or addresses any accusation that DIB, DIB Personnel, or other persons associated with DIB were associated with, involved in, or supported the 1998 U.S. Embassy bombings.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**

37.     Please provide all documents governing, describing, detailing, or otherwise relating to the seizure, freezing, closing, monitoring, or restricting of any and all DIB accounts following the September 11, 2001 attack, including without limitation, all DIB accounts that were frozen per the orders of the Central Bank of the U.A.E. Such documents shall include, but are not limited to, all documents identifying those accounts, the account holders, the account numbers, and the status of those accounts.

**ANSWER:**

38.     Please provide all documents exchanged between and among the U.S., DIB, and the U.A.E. following the September 11, 2001 attack, relating to DIB's relationship with Osama bin Laden and/or other alleged members of al Qaida, including without limitation, any such documents which reference or address any of the DIB accounts identified in response to Request No. 37 above.     Such documents shall include, but are not limited to, correspondence, memoranda, emails, banking and financial reports, investigative reports and/or summaries, intelligence reports and/or summaries, terrorism reports and/or summaries, security files, and any other records.

**ANSWER:**

39.   Please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States Investigator, any Foreign Investigator, or any U.A.E. Investigator, following the September 11, 2001 attack, which references or addresses any of the DIB accounts identified in response to Request No. 37 above.

**ANSWER:**

40.   Please provide copies of all documents that have been seized by, or that DIB has produced to, any United States Investigator, any Foreign Investigator, or any U.A.E. Investigator, which reference or address any of the DIB accounts identified in response to Request No. 37 above.

**ANSWER:**

41.   Please provide all documents relating to any audit, analysis, examination, survey, or review of the DIB accounts identified in response to Request No. 37 above, conducted either by DIB (including DIB's Fatwa and Shariah Advisory Board), or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.  Such documents shall include any audit, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the U.A.E.

**ANSWER:**

42.     Please provide all documents relating to any written or oral communication between DIB and the U.A.E., which references or addresses any of the DIB accounts identified in response to Request No. 37 above.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles, or otherwise.

**ANSWER:**

43.     Please provide all documents relating to any investigation, inquiry, audit, due diligence, or analysis conducted by the U.A.E., relating in any way to DIB.

**ANSWER:**

44.     Please provide all documents relating to all accounts at DIB that have been seized, frozen, closed, monitored, or in any way restricted due to identification or suspicion that the account is related to actual, potential, suspected, or alleged terrorists, or terrorist organizations or entities, including without limitation, all documents referring or relating to the reasons or basis for the freezing, seizing, closing, monitoring, or restricting of the accounts.

**ANSWER:**

45.    Please provide all documents relating to any guidance, advice, direction, directives, instructions, circulars or recommendations provided, disseminated, published, issued, or transmitted by any department, agency, or ministry of the government of the U.A.E., the United States, or any other governmental entity to DIB concerning anti-money laundering, terrorist financing, investigating, monitoring, detecting or reporting of suspicious activity, or dealing in any way with Politically Exposed Persons.

**ANSWER:**

46.    Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between DIB and Sheikh Yousef al Qaradawi, including without limitation, any and all documents relating to all positions Qaradawi has held or holds within DIB.

**ANSWER:**

47.    Please provide any and all documents relating to Qaradawi's role in the establishment, oversight, supervision, management, and/or control over DIB's various boards and committees, including without limitation, DIB's Fatwa and Shariah Supervisory Board.

**ANSWER:**

48. Please provide any and all documents relating to the establishment, duties, obligations, objectives, composition, and/or authority of DIB's Fatwa and Shariah Supervisory Board, including without limitation, any and all documents identifying all former and current members of DIB's Fatwa and Shariah Supervisory Board.

**ANSWER:**


49. Please provide any and all documents relating to the role or roles of Qaradawi and/or the Fatwa and Shariah Supervisory Board in the establishment, organization, funding, oversight, supervision, management, and/or control over DIB's operations, including without limitation, selection of board members, committee members or other officers, internal and external auditing or due diligence, credit and loan activities, appointment and termination of personnel, accounting, banking and financial transactions, analysis of investments funds and portfolios, and actual distribution of DIB financial and non-monetary support to charitable designees.

**ANSWER:**


50. Please provide any and all documents relating to the role or roles of Qaradawi and/or the Fatwa and Shariah Supervisory Board in developing Islamic banking products for DIB, as well as designing and implementing Shariah training programs for DIB.

**ANSWER:**

51.     Please provide any and all documents relating to the role or roles of Qaradawi and/or the Fatwa and Shariah Supervisory Board in the supervision, management, control of, or distribution of DIB's funds, including without limitation, any and all documents relating to their duties and responsibilities to determine and/or make recommendations as to which individuals or entities should receive financial and/or non-monetary support from DIB and the purpose for such disbursements.

**ANSWER:**

52.     Please provide any and all documents relating to the role or roles of Qaradawi and/or the Fatwa and Shariah Supervisory Board in determining and/or recommending which charities, humanitarian organizations, or dawah organizations should receive financial and/or non-monetary support from DIB and the purpose for such disbursements.

**ANSWER:**

53.     Please provide any and all Fatwa and Shariah Supervisory Board documents governing, describing, detailing, or otherwise relating to DIB's policies and procedures regarding *zakat* and *haram* monies, including the collection and distribution of such monies to charitable or other designees.

**ANSWER:**

54.     Please provide all Fatwa and Shariah Supervisory Board meeting minutes.

**ANSWER:**

55.     Please provide all fatwas authored and/or issued by the Fatwa and Shariah Supervisory Board, including without limitation, any and all books or compilations of fatwas authored and/or issued by the Fatwa and Shariah Supervisory Board.

**ANSWER:**

56.     Please provide all annual reports authored and/or prepared by the Fatwa and Shariah Supervisory Board.

**ANSWER:**

57.     Please provide all documents governing, describing, detailing, or otherwise relating to the Fatwa and Shariah Supervisory Board's oversight, supervision, management, control, or influence over DIB's branch offices.  Such documents shall include, but are not limited to, correspondence, memoranda, e-mails, meeting minutes, organizational diagrams and charts, and any reports sent to and/or received from the branch offices (banking and financial reports, status reports, auditing reports, shariah compliance reports, due diligence reports, or otherwise).

**ANSWER:**

58.     Please provide any and all Fatwa and Shariah Supervisory Board documents relating to the conflicts, crises, or conditions facing Muslim communities in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, and Turkey.  Such documents shall include, but are not limited to, any and all fatwas issued by the Fatwa and Shariah Supervisory Board.

**ANSWER:**

59.     Please provide any and all interviews, statements or speeches by members of the Fatwa and Shariah Supervisory Board regarding the conflicts, crises or conditions facing Muslim communities in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, and Turkey.  Such documents shall include, but are not limited to, any and all fatwas issued by members of the Fatwa and Shariah Supervisory Board.

**ANSWER:**

60.   Please provide any and all Fatwa and Shariah Supervisory Board documents discussing Islamic independence movements and/or the legitimacy of armed jihad or resistance by Muslims in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, and Turkey.  Such documents shall include, but are not limited to, any and all fatwas issued by the Fatwa and Shariah Supervisory Board.

**ANSWER:**

61.   Please provide any and all Fatwa and Shariah Supervisory Board documents discussing the provision of support to mujahideen forces in any part of the World.  For purposes of this request, the term "support" includes any form of financial, medical, logistical, administrative, religious, political or any other form of assistance, whether provided directly or indirectly.  Such documents shall include, but are not limited to, any and all fatwas issued by the Fatwa and Shariah Supervisory Board.

**ANSWER:**

62.     Please provide any and all Fatwa and Shariah Supervisory Board documents discussing the provision of support to any armed jihad in any part of the World, regardless of whether such jihad was declared legitimate by competent religious authorities.  For purposes of this request, the term "support" includes any form of financial, medical, logistical, administrative, religious, political or any other form of assistance, whether provided directly or indirectly.  Such documents shall include, but are not limited to, any and all fatwas issued by the Fatwa and Shariah Supervisory Board.

**ANSWER:**

63.     Please provide any and all Fatwa and Shariah Supervisory Board documents mentioning "jihad" (جهاد) (*see* Definition No. 12), which can be generated via an electronic search of DIB's computers or electronic data storage systems.

**ANSWER:**

64.     Please provide any and all fatwas issued by members of DIB's Fatwa and Shariah Supervisory Board which mention "jihad" (جهاد) (*see* Definition No. 12), regardless of whether you believe such board member(s) was or was not acting within the scope of his employment at DIB in relation to such activity.

**ANSWER:**

65.     Please provide all documents governing, describing, detailing, setting forth, or otherwise relating to DIB's policies, practices, procedures, and controls for anti-money laundering ("AML") and combating the financing of terrorism ("CFT"), including without limitation:

a.     All AML/CFT compliance manual(s), memoranda or other documents identifying or describing DIB's AML/CFT policies, practices, procedures, or controls; memoranda or other documents identifying or describing exceptions to DIB's AML/CFT policies, practices, procedures, or controls set forth in any compliance manual; memoranda or other documents stating or describing the manner and degree in which DIB's AML/CFT compliance program is integrated into the bank's activities;

b.     All reports, audits, memoranda, or other documents evaluating, critiquing, commenting upon or offering suggestions to modify or enhance DIB's AML/CFT compliance program;

c.     All documents created to respond to, or in response to, items referenced in the preceding item (b);

d.     All documents governing, describing, detailing, setting forth or otherwise relating to DIB's policies, practices, procedures, or controls concerning what due diligence to employ to detect, investigate, and respond to high-risk wire transfers;

e.     All documents relating to the designation of one or more compliance officers and/or other individuals at DIB responsible for coordinating and monitoring day-to-day compliance, employee training, and the independent audit function to assess AML/CFT programs, including without limitation the identification, titles, and responsibilities of such individuals.

**ANSWER:**

66.     Please provide all documents governing, describing, detailing, setting forth, or otherwise relating to DIB's policies, practices, procedures, and controls aimed at preventing terrorists and other criminals from having access to bank accounts or wire transfer services for moving funds, and to detect such misuse when it occurs.

**ANSWER:**

67.     Please provide all documents governing, describing, detailing, setting forth, or otherwise relating to DIB's policies, practices, procedures, and controls regarding internal monitoring and/or reporting of wire transfers, including:

      a.    Internal monitoring and/or reporting documents concerning wire transfers, incomplete originator information, high risk transactions and/or indications of possible money laundering or terrorist financing; and

      b.    Internal monitoring and/or reporting documents concerning what action was taken upon identification of instances of incomplete originator information, high risk transactions, and/or indications of possible money laundering or terrorist financing.

**ANSWER:**

68.     Please provide all documents governing, describing, detailing, setting forth, or otherwise relating to DIB's Know-Your-Customer or Customer Identification policy, practices, procedures, or programs.

**ANSWER:**

69.     Please provide all DIB documents governing, describing, detailing, setting forth, or otherwise relating to account opening policies, practices and procedures at DIB, including without limitation:

    a.    Copies of the Account Opening applications used by DIB during the relevant time period;

    b.    Copies of all manuals, instruction booklets or procedures outlining the information to be obtained and verified before an account may be opened, and

    c.    All account opening documents for any account maintained by or for the benefit of: Osama bin Laden, Mustafa Ahmed al Hisawi, Ali Abdul Aziz Ali, the 9-11 Hijackers, and the persons and entities identified in Attachments B and C.

**ANSWER:**

70.     Please provide all DIB documents governing, describing, detailing, setting forth, or otherwise relating to DIB's customer acceptance policies, practices, and procedures, including without limitation, all documents that describe DIB's policies, practices, and procedures regarding the types of customers that are likely to pose a higher than average risk.

**ANSWER:**

71.     Please provide all documents governing, describing, detailing, setting forth, or otherwise relating to the training of DIB Personnel regarding:

    a.     ML/CFT policies, practices, procedures, or controls;

    b.     Know-Your-Customer or Customer Identification policies, practices, procedures, or controls;

    c.     Investigating or filing suspicious activity or transaction reports;

    d.     Investigating Politically Exposed Persons;

    e.     Compliance with any laws, rules or regulations concerning money laundering, terrorist financing, suspicious activity or Politically Exposed Persons, including but not limited to the certification of any DIB employee as having knowledge, skills, expertise or education concerning the enforcement of or compliance with any laws, rules, regulations, policies, practices, or procedures related to anti-money laundering, anti-terrorist financing, suspicious activity or Politically Exposed Persons.

**ANSWER:**


72.     Please provide all documents governing, describing, detailing, setting forth, or otherwise relating to any software or internet-based application that DIB has used, currently uses, or has investigated for use, for the detection, monitoring, or investigation of money laundering, terrorist financing, suspicious activity, Politically Exposed Persons, or compliance with any laws, rules or regulations concerning money laundering, terrorist financing, suspicious activity, or Politically Exposed Persons.

**ANSWER:**

73.     Please provide all documents governing, describing, detailing, setting forth, or otherwise relating to DIB's policies, practices, procedures and controls regarding DIB's compliance with Suspicious Transaction Reports ("STRs") or Suspicious Activity Reports ("SARs") requirements, including without limitation:

      a.    All documents relating to the roles and responsibilities of DIB Personnel for the filing of STRs or SARs; and

      b.    All documents detailing or describing the policies and procedural guidelines for determining whether or not to file a SAR or STR.

**ANSWER:**

74.     Please provide all documents relating to any written or oral communication prepared by DIB or DIB Personnel concerning good banking practices, best banking practices, or recommended banking practices with respect to detection, prevention, or compliance with regulations relating to money laundering, terrorist financing, or dealing with Politically Exposed Persons.

**ANSWER:**

75.     Please provide copies of any speeches, statements, or presentations regarding money laundering or terrorist financing, given by DIB or DIB Personnel, at any banking organization conference, or other conference concerning, wholly or in part, any issues related to anti-money laundering, terrorist financing, Know-Your-Customer practices, suspicious activity or transaction reporting, or Politically Exposed Persons.

**ANSWER:**

76.    Please provide all documents relating to any written or oral communication, including memoranda, notes, and/or recommendations, concerning best practices discussed at any anti-money laundering, terrorist financing, and/or risk assessment conference sponsored or attended by DIB or DIB Personnel.

**ANSWER:**

77.    Please provide all documents relating to DIB's internal controls concerning money laundering, terrorist financing, Know-Your-Customer or Customer Identification policies, practices, and procedures, suspicious activity or transactions, or Politically Exposed Persons.

**ANSWER:**

78.    Please provide all documents relating to any internal audits, examinations, studies, or investigations performed by DIB and/or DIB Personnel, concerning, in whole or in part, AML, CFT, Know-Your-Customer/Customer Identification policies, practices, procedures, and controls, suspicious activities or transactions, Politically Exposed Persons, or compliance with any laws, rules, regulations, policies, practices, or procedures concerning AML/CFT, Know-Your-Customer/Customer Identification, suspicious activity or transactions, and Politically Exposed Persons.

**ANSWER:**

79.     Please provide all documents relating to any audits, examinations, studies, or investigations performed by DIB or by any outside consultants, auditors, accountants or other parties employed or utilized by DIB, regarding any individual, department, or group of DIB concerning, in whole or in part, AML, CFT, Know-Your-Customer/Customer Identification policies, practices, procedures, and controls, suspicious activities or transactions, Politically Exposed Persons, or compliance with any laws, rules, regulations, policies, practices, or procedures concerning AML/CFT, Know-Your-Customer/Customer Identification, suspicious activity or transactions, and Politically Exposed Persons.  Such documents shall include, but are not limited to, engagement letters or memoranda, scope of audit memoranda or correspondence, studies, reports, presentations, proposals, notes or minutes of meeting, advice, recommendation, analysis, or any other communications and the results thereof.

**ANSWER:**

80.     Please provide all documents relating to any external or independent audits, examinations, studies, or investigations of DIB which refer or relate to compliance with bank secrecy rules and regulations, Know-Your-Customer rules, suspicious activity or transaction reporting, money laundering, terrorist financing, or investigations of DIB by any agency of Dubai, the United Arab Emirates, the United States or any other foreign government, including but not limited to the U.S. Office of the Comptroller of the Currency and the U.S. Financial Crimes Enforcement Network.

**ANSWER:**

81.     Please provide all documents relating to any external or independent evaluation of DIB's AML/CFT compliance program, including:

    a.      Copies of any such evaluations;

    b.      The policies, practices, procedures, and controls for performing, handling, and responding to or implementing the recommendations of such evaluations; and

    c.      Documents comprising, describing, or setting forth any actions taken to respond to recommendations made in audit reports evaluating the effectiveness of DIB's AML/CFT program.

**ANSWER:**

82.     For any department, committee, or group at DIB responsible for opening, maintaining, and managing customer accounts at DIB ("Account Representatives"), please provide the following:

    a.      All documents identifying such department, committee, or group, the responsibilities and duties of the department, committee, or group, and the names of DIB Personnel within the department, committee, or group, including their title, tenure, and responsibilities;

    b.      All documents detailing or describing the policies and procedural guidelines for the management and maintenance of customer accounts by Account Representatives;

    c.      All documents relating to training of Account Representatives;

    d.      All documents relating to all procedures and protocols used to ensure the authenticity of client correspondence to officers such as signature verifications;

    e.      Copies of all Information Technology ("IT") protocols used by Account Representatives to assist them with the management and maintenance of customer accounts;

f.  All documents detailing or describing DIB policies, practices, procedures, or controls used to monitor compliance with the Account Representative filing procedures; and

g.  Copies of any "Corporate Code of Conduct" guidelines that apply to Account Representatives.

**ANSWER:**

83.  For any department, committee, or group at DIB responsible for ensuring DIB's compliance with applicable laws, rules, regulations, policies, practices, or procedures concerning AML/CFT, suspicious activity or transactions, or Politically Exposed Persons ("DIB Compliance Personnel"), please provide the following:

a.  All documents identifying such department, committee, or group, the responsibilities and duties of the department, committee, or group, and the names of DIB Personnel within the department, committee, or group, including their title, tenure, and responsibilities;

b.  All documents detailing or describing the policies and procedural guidelines for ensuring DIB's compliance with applicable laws, rules, regulations, policies, practices, or procedures concerning AML/CFT, suspicious activity or transactions, or Politically Exposed Persons;

c.  All documents relating to training of DIB Compliance Personnel;

d.  All documents, including copies of forms, used by DIB Compliance Personnel to report on DIB's compliance with applicable laws, rules, regulations, policies, practices, or procedures concerning AML/CFT, suspicious activity or transactions, or Politically Exposed Persons;

e.  Copies of all IT protocols used by DIB Compliance Personnel to assist them in ensuring DIB's compliance with applicable laws, rules, regulations, policies, practices, or procedures concerning AML/CFT, suspicious activity or transactions, or Politically Exposed Persons; and

f.  Copies of any "Corporate Code of Conduct" guidelines that apply to DIB Compliance Personnel.

**ANSWER:**

84.     For any department, committee, or group at DIB responsible for monitoring, reviewing, and/or investigating account activity, either in whole or in part, for purposes of compliance with any laws, rules, regulations, policies, practices, or procedures related to AML/CFT, suspicious activity or transactions, or Politically Exposed Persons ("DIB Investigative Personnel"), please provide the following:

    a.    All documents identifying such department, committee, or group, the responsibilities and duties of the department, committee, or group, and the names of DIB Personnel within the department, committee, or group, including their title, tenure, and responsibilities;

    b.    All documents detailing or describing the policies and procedural guidelines for monitoring, reviewing and investigating account and transaction activity;

    c.    All documents relating to training of DIB Investigative Personnel;

    d.    All documents, including copies of forms, used by DIB Investigative Personnel to report on the monitoring, review, or investigation of accounts and transactions;

    e.    Copies of all IT protocols used by DIB Investigative Personnel to assist them in monitoring, reviewing, and investigating account and transaction activity;

    f.    All documents detailing or describing the policies and procedural guidelines for reporting suspicious account or transaction activity;

    g.    Copies of any "Corporate Code of Conduct" guidelines that apply to DIB Investigative Personnel.

**ANSWER:**

85.    For any department, committee, or group at DIB responsible for performing internal audit functions at DIB related, in whole or in part, to AML, CFT, Know-Your-Customer/Customer Identification policies, practices, procedures, and controls, suspicious activities or transactions, Politically Exposed Persons, or compliance with any laws, rules, regulations, policies, practices, or procedures concerning AML/CFT, Know-Your-Customer/Customer Identification, suspicious activity or transactions, and Politically Exposed Persons ("DIB Internal Audit Personnel"), please provide the following:

a.    All documents identifying such department, committee, or group, the responsibilities and duties of the department, committee, or group, and the names of DIB Personnel within the department, committee, or group, including their title, tenure, and responsibilities;

b.    All documents detailing or describing the policies and procedural guidelines for monitoring, reviewing, investigating and auditing account activity by DIB Internal Audit Personnel;

c.    All documents relating to training of DIB Internal Audit Personnel;

d.    All documents, including copies of forms, used by DIB Internal Audit Personnel to report on the monitoring, reviewing, investigating, and auditing of accounts;

e.    Copies of all IT protocols used by DIB Internal Audit Personnel to assist them in monitoring, reviewing, investigating, and auditing accounts;

f.    Copies of all audit plans for account activity;

g.    All documents detailing or describing the policies and procedural guidelines for reporting suspicious activity or transaction; and

h.    Copies of any "Corporate Code of Conduct" guidelines that apply to DIB Internal Audit Personnel.

**ANSWER:**

86.     For any department, committee, or group at DIB responsible for tracking and/or maintaining a database relating to designations of, and information about, individuals and entities designated as terrorists or terror financiers ("DIB Designation Personnel"), please provide the following:

    a.    All documents identifying such department, committee, or group, the responsibilities and duties of the department, committee, or group, and the names of DIB Personnel within the department, committee, or group, including their title, tenure, and responsibilities;

    b.    All documents detailing or describing how DIB tracks the designation of individuals or entities as Specially Designated Global Terrorists or otherwise, pursuant to the International Emergency Economic Powers Act by the United States Office of Foreign Asset Control, the United Nations and/or any other government or regulatory body;

    c.    All documents relating to training of DIB Designation Personnel;

    d.    Copies of all IT protocols used by DIB Designation Personnel to assist them in tracking and/or maintaining information about individuals and entities designated as terrorists or terror financiers;

    e.    All documents detailing or describing any software programs used by DIB to monitor the designation of individuals or entities as Specially Designated Global Terrorists or otherwise, pursuant to the International Emergency Economic Powers Act by the United States Office of Foreign Asset Control, the United Nations and/or any other government or regulatory body;

    f.    Copies of all internal manuals, memoranda, reports or protocols detailing or describing the appropriate actions to be taken by DIB Personnel when examining whether any designated individual or entity maintains accounts at DIB, or is the recipient of funds from DIB; and

    g.    Copies of all internal manuals, memoranda, reports or protocols detailing or describing the appropriate actions to be taken by DIB Personnel if a DIB account has been opened and/or used by a designated terrorist individual or entity.

**ANSWER:**

87.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between DIB and the persons identified in Attachment D, including without limitation, all documents relating to all positions those persons have held or currently hold within DIB and their personnel files.

**ANSWER:**

88.     Please provide all documents relating to the persons identified in Attachment D and their roles in the establishment, organization, funding, oversight, supervision, management, and/or control over DIB's operations, including without limitation, banking and financial transactions, opening, maintenance and closing of accounts, regulatory and compliance matters, customer and banking account records, AML, CFT, and KYC policies and procedures, government relations, and/or any other facet of DIB's operations.

**ANSWER:**

89.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between DIB and HAMAS (a/k/a Harakat al Muqawamat al Islamiyyah; a/k/a Islamic Resistance Movement), including without limitation, the following HAMAS-related entities:  the International Islamic Charity Organization, the Nablus Zakat Committee, the Fujairah Charity Organization, the Emirates Red Crescent, Human Appeal International, and the Union of Good.

**ANSWER:**

46

90.    Please provide any and all documents sent to, and/or received from HAMAS, including without limitation, any of the following HAMAS-related entities: the International Islamic Charity Organization, the Nablus Zakat Committee, the Fujairah Charity Organization, the Emirates Red Crescent, Human Appeal International, and the Union of Good.   Such documents shall include, but are not limited to, all documents relating to the transfer of funds between DIB and those entities.

**ANSWER:**

91.    Please provide any and all documents relating to DIB accounts established or held in the name of, on behalf of and/or for the benefit of the <u>International Islamic Charity Organization ("IICO")</u>, including but not limited to DIB Account No. ▮2845.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the IICO and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

92. Please provide any and all documents relating to DIB accounts established or held in the name of, on behalf of and/or for the benefit of the <u>Nablus Zakat Committee</u>, including but not limited to DIB Account No. ■■5/939. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Nablus Zakat Committee and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

93. Please provide any and all documents relating to DIB accounts established or held in the name of, on behalf of and/or for the benefit of the <u>Fujairah Charity Organization</u>, including but not limited to DIB Account Nos. ■■■■■5801 and ■■■■■2006. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Fujairah Charity Organization and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, monthly account statements, annual account statements, account notices,

deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

94.     Please provide any and all documents relating to DIB accounts established or held in the name of, on behalf of and/or for the benefit of the Emirates Red Crescent, including but not limited to DIB Account No. ███6754.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Emirates Red Crescent and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

95.    Please provide any and all documents relating to DIB accounts established or held in the name of, on behalf of and/or for the benefit of the Human Appeal International. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Human Appeal International and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

96.    Please provide any and all documents relating to DIB accounts established or held in the name of, on behalf of and/or for the benefit of the Union of Good. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Union of Good and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan

records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

97.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between DIB and the Al Ihsan Charitable Society of Hebron.

**ANSWER:**

98.     Please provide any and all documents sent to and/or received from the Al Ihsan Charitable Society of Hebron.   Such documents shall include, but are not limited to, all documents relating to the transfer of funds between DIB and the Al Ihsan Charitable Society.

**ANSWER:**

99.     Please provide any and all documents relating to DIB accounts established or held in the name of, on behalf of and/or for the benefit of the Al Ihsan Charitable Society of Hebron, including but not limited to DIB Account Nos. ████████1737, █████████37-01 and ████-████36-01.   Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Al Ihsan Charitable Society and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports,

suspicious activity and/or transaction reports, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

100.    Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between DIB and the Dar al Bir Society.

**ANSWER:**

101.    Please provide any and all documents sent to and/or received from the Dar al Bir Society.  Such documents shall include, but are not limited to, all documents relating to the transfer of funds between DIB and the Dar al Bir Society.

**ANSWER:**

102.    Please provide any and all documents relating to DIB accounts established or held in the name of, on behalf of and/or for the benefit of the Dar al Bir Society, including but not limited to DIB Account Nos. ███████87 02, ███████87 03, ███████87 04, ███████87 06, ███████71 01, ███████66 01, ███████98 01, ███████42 01, ███████42 02, ███████42 03, ███████42 07, and ███████98 01. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Human Appeal International and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**


103.    Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between DIB and the Pak Kashmir Welfare Council.

**ANSWER:**

104.   Please provide any and all documents sent to and/or received from the Pak Kashmir Welfare Council.  Such documents shall include, but are not limited to, all documents relating to the transfer of funds between DIB and the Pak Kashmir Welfare Council.

**ANSWER:**

105.   Please provide any and all documents relating to all DIB accounts established or held in the name of, on behalf of and/or for the benefit of the Pak Kashmir Welfare Council.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Pak Kashmir Welfare Council and DIB, documents detailing the establishment of and/or closing of the account(s), Know-Your-Customer and/or other customer due diligence reports, suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

106.    Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between DIB and the banks identified in Attachment E, including without limitation, all documents governing, describing, detailing, or otherwise relating to the due diligence policies, practices, procedures, and measures employed by DIB prior to entering into any relationship with those banks (including reviewing and/or analyzing each bank's AML, CFT, and KYC policies, practices, and procedures), as well as all due diligence policies, practices, procedures, and measures DIB continues to utilize during its on-going relationship with those banks (including the continued review and/or analysis of each bank's AML, CFT, and KYC policies, practices, and procedures).

**ANSWER:**

107.    Please provide all documents relating to any formal or informal record keeping and document retention policies, practices, or procedures maintained by DIB, any DIB branch, or any DIB subsidiary or affiliate, including without limitation:

        a.      All documents relating to DIB's document retention policies, practices, or procedures for all account documents; and

        b.      All documents relating to DIB's document retention policies, practices, or procedures concerning anti-money laundering, countering the financing of terrorism, bank secrecy compliance, suspicious activity or transaction reporting, cash or currency reporting, and fund transfer functions.

**ANSWER:**

108.    Please provide all documents relating to any formal or informal document destruction policies, practices, or procedures maintained by DIB, any DIB branch, or any DIB subsidiary or affiliate, including without limitation, descriptions of all documents destroyed by DIB.

**ANSWER:**

Dated: October 15, 2010                          Respectfully submitted,

                                                 *(on behalf of the PEC)*

                                                 THE MDL 1570 PLAINTIFFS'
                                                 EXECUTIVE COMMITTEES

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiffs' First Set of Requests for Production of Documents Directed to Dubai Islamic Bank were served via electronic mail and U.S. first-class mail, postage prepaid, this 15th day of October 2010, upon:

Robert G. Houck, Esq.
Clifford Chance U.S. LLP
31 West 52nd Street
New York, New York 10019-6131

Alan R. Kabat, Esq.
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(Defendants' Executive Committee's appointed representative to receive discovery requests and responses in 03-MDL-1570)

J. Scott Tarbutton, Esq.

# **ATTACHMENT A**

September 11, 2001 Hijackers:

1.     Khalid al Mihdhar

2.     Majed Moqed

3.     Nawaf al Hamzi

4.     Salem al Hamzi

5.     Hani Hanjour

6.     Satam al Suqami

7.     Waleed al Shehri

8.     Wail al Shehri

9.     Mohamed Atta

10.     Abdulaziz al Omari

11.     Marwan al Shehhi

12.     Fayez Banihammad

13.     Ahmed al Ghamdi

14.     Hamza al Ghamdi

15.     Mohand al Shehri

16.     Saeed al Ghamdi

17.     Ahmad al Haznawi

18.     Ahmed al Nami

19.     Ziad Jarrah

## ATTACHMENT B

1. Saidi Madani al Tayyib (a/k/a Sidi al Madani al Ghazi Mustafa al Tayyib; a/k/a Sayed Tayib al Madani; a/k/a Sa'idi al Madani al Ghazi Mustfa al Tayyib; a/k/a Abu Fadl; a/k/a Abu Fadil; a/k/a Abu Fadil al Makki; a/k/a Abu Amjed; a/k/a Abu Mahdi; a/k/a Abu Khalifah al Omani)

2. Jamal Ahmad Mohamed al Fadl

3. Sharif al Din Ali Mukhtar

4. Abu Rida al Suri (a/k/a Mohamed Loay Bayazid; a/k/a/ Mohammed Loay Baizid; a/k/a Abu Ridha al Suri; a/k/a Abu Rida the Syrian)

5. Mamdouh Mahmoud Salim (a/k/a Abu Hajer al Iraqi)

6. Wa'el Hamza Jelaidan (a/k/a Abu al Hasan; a/k/a Abu Hassan al Madani)

7. Abu Anas (a/k/a Abu Anas al Saudi)

8. Abu Hammam (a/k/a Abu Hamam al Saudi)

9. Abu Horan (a/k/a Ali Haroun; a/k/a Abu Hassan al Sudani)

10. Abu Ubaidah al Banshiri (a/k/a Ali Amin al Rashidi)

11. Abu Hafs al Masri (a/k/a Sheikh Taysir Abdullah; a/k/a Abu Hafs; a/k/a Abu Sitta; a/k/a Abu Hafs al Kabir; a/k/a Abu Khadijah; a/k/a Abu Fatima)

12. Sheikh Said al Masri (a/k/a Saeed al Masri; a/k/a Mustafa Ahmed Muhammad Uthman Abu al Yazid)

13. Abu Yassir Sarrir (a/k/a Abu Yassir al Jaza'iri)

14. Mohammed Yassir al Masri

15. Aafia Siddiqui (a/k/a Fahrem Shahin)

## ATTACHMENT C

1.    Wadi al Aqiq Company, Ltd.

2.    Al Hijrah Construction and Development, Ltd.

3.    Taba Investment Company, Ltd.

4.    Al Timar al Mubarikah

5.    Gum Arabic Company

6.    Bin Ladin International

7.    Al Qudarat Transport Company

8.    Blessed Fruits Company

## ATTACHMENT D

1.   Muhammad Khalfan bin Kharbash

2.   Muhammad Azeem Memon

3.   Saeed Ahmed al Sharif

4.   Abdulla Abdul Rahman

5.   Mohamed Ghayyath

6.   Mohammed Ayoub Mohammed

7.   Zohair Saeed al Rabii

8.   Taymerz Zendaki

## ATTACHMENT E

1.      Bank of Khartoum

2.      Tadamon Islamic Bank

3.      Al Shamal Bank

4.      Islamic Bank of Bangladesh Limited

5.      Bank al Falah

PHILADELPHIA\5639385\3 117430.000