UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to: *All Actions*

# THE KINGDOM OF SAUDI ARABIA'S MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S DECEMBER 11, 2024 ORDER

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND .....................................................................................................................1

    1.    Youssef's Communications Security and Phone Records Opinions ........................1

    2.    Sageman's Rebuttal to Youssef's Opinions .............................................................3

LEGAL STANDARD ...............................................................................................................7

ARGUMENT ............................................................................................................................7

CONCLUSION ......................................................................................................................10

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page

CASES

*Aluminum Warehousing Antitrust Litig.*, *In re*, 336 F.R.D. 5 (S.D.N.Y. 2020) ............................. 10

*Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420 (E.D.N.Y. 2011) ..................................... 9

*Impax Lab'ys, Inc. v. Turing Pharms. AG*, 2018 WL 5811431 (S.D.N.Y. 2018) ......................... 7, 8

*Nieves v. New York City Police Dep't*, 716 F. Supp. 2d 299 (S.D.N.Y. 2010) ................................ 7

*Ramos v. Telgian Corp.*, 2017 WL 354200 (E.D.N.Y. 2017) ...................................................... 7, 8

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) .............................................................. 7

*Taylor v. Lantz*, 2008 WL 4793726 (D. Conn. 2008) ..................................................................... 7

*Vaughn v. Consumer Home Mortg. Co.*, 470 F. Supp. 2d 248 (E.D.N.Y. 2007) ............................. 7

RULES

Fed. R. Civ. P. 72 .......................................................................................................................... 10

S.D.N.Y. Loc. R. 6.3 ....................................................................................................................... 1

The Kingdom of Saudi Arabia ("Saudi Arabia") moves under Local Rule 6.3 for partial reconsideration of the Court's December 11, 2024 Opinion & Order, ECF No. 10615 ("Order").[1] Saudi Arabia asks this Court to reconsider those parts of its Order that bar Saudi Arabia's expert Marc Sageman from rebutting the opinions of Plaintiffs' expert Bassem Youssef (1) on tradecraft in the use of communication devices; and (2) on Youssef's analysis of the telephone toll records produced in this litigation, which relies in significant part on Youssef's opinions about tradecraft. Saudi Arabia respectfully submits that the Order overlooks arguments and record evidence showing the reliability of Sageman's opinions on tradecraft and the use of clandestine communication devices. The Order further overlooks Sageman's experience in communications and phone records analysis as a Special Advisor on Intelligence to the U.S. Army in finding him unqualified to rebut Youssef's analysis of telephone records.

## BACKGROUND

**1.        Youssef's Communications Security and Phone Records Opinions**

The Order excludes (at 21) most of Youssef's proffered opinions as an "improper" and "unhelpful" factual narrative. In doing so, it finds (at 17, 20, 22, 23) that Youssef "adopts a nefarious explanation of events without factual support," rests on "conclusory assertions of experience, anonymous sources, or his own say-so," and injects improper opinions on "motivations and intentions" as well as witness credibility. Youssef's excluded opinions include his conclusion that "'9/11 hijackers Nawaf al Hazmi and Khalid al Mihdar' received knowing and 'substantial assistance' from a 'terror network inside California' 'covertly operate[d]' by 'Sunni Islamic extremists, including Al Qaeda,' with the 'support' of 'the Kingdom of Saudi

---

[1] Saudi Arabia is filing this motion publicly. Although not all of the documents cited in the motion have themselves been publicly filed, all not-yet-public documents have been reviewed by the FBI as part of the parties' ongoing confidentiality review process and the FBI has not requested any redactions relevant to any citation or quotation in this filing.

1

Arabia [and] its officials.'" Order 12 (quoting ECF No. 9089-1 ("Youssef Rep."), at 15) (brackets in Order).

But the Order allows (at 24) Youssef to opine (as relevant here) on (1) the communications security of terror organizations; and (2) an analysis of telephone toll records produced in this case. The Order does not discuss Youssef's contentions that Fahad Al Thumairy was provided clandestine cell phones by a Saudi "front man" or "logistics agent" before the 9/11 attacks. Youssef Rep. 124-25. Nor does it examine his methodology for his opinions on communications security. Instead, it states (at 21) that he has sufficient experience to opine on the topic generally.

As to Youssef's analysis of telephone toll data, the Order explains (at 18) that Youssef "purports to divine the content of callers' discussions, even where the identity of the callers is contested." It does not examine Youssef's methodology or evaluate whether he reasonably applied that methodology to reach his conclusions. Instead, the Order accepts (at 19) Youssef's testimony that "his methodology is reliably used by the FBI," while rejecting (at 14-15) Saudi Arabia's challenge that it was impossible to evaluate reliability because Youssef had testified at deposition that his "methods" were "'classified.'"[2] Further, the Order states (at 19) that Saudi Arabia "may challenge [Youssef's] assumptions" about the identities of callers, but that those assumptions "do not render [Youssef's] opinion categorically unreliable."

Together, those rulings permit Youssef to offer opinions that certain phone numbers were used by particular individuals in a clandestine manner and that individuals communicated in a manner consistent with tradecraft, and even to offer opinions about "the substance of the

---

[2] Although the analysis at pages 14 and 15 of the Order addresses Saudi Arabia's challenge primarily in the context of Youssef's testimony about certain FBI investigations in Southern California, Saudi Arabia raised the same argument as to Youssef's phone analysis methodology as well. ECF No. 9088 ("KSA *Daubert* Mot."), at 6-7, 23-24.

2

conversations" between two callers. Order 19. The weight (if any) to be given that testimony will be determined by the Court as finder of fact.

2.  **Sageman's Rebuttal to Youssef's Opinions**

To rebut (among other things) Youssef's opinions on clandestine communications and phone records, Saudi Arabia submitted the expert report of Marc Sageman.

Sageman has extensive experience with communications secrecy and tradecraft. As a CIA case officer "operating in a hostile country," he was trained on "the use of telephone by clandestine operators" and used telephones clandestinely in the field himself. ECF No. 9166-02 ("Sageman Tr."), at 308:7-309:9. He testified that he "owe[s] [his] life to [his] usage of such trade craft." *Id.* He also testified that, outside his work at the CIA, he has "investigate[d] several cases that might have involved clandestine use of telephone[s], what we call trade craft." *Id.*

Sageman further testified that he has engaged in "telephonic communications analysis," particularly during his time working as a Special Advisor on Intelligence in the U.S. Army. ECF No. 9270-10, at 203:10-24 (additional excerpts of Sageman transcript submitted by Plaintiffs on reply). Like Youssef, Sageman testified that the details of his prior work remain classified. But Sageman revealed that this work involved "look[ing] at the communication of some suspects [to] try to identify the links to other suspects." *Id.* 204:4-9. That communications analysis, including the review of telephone toll records, has been the "backbone of some of [his] investigations." *Id.* 208:3-10; *see* ECF No. 9164 ("KSA *Daubert* Opp."), at 30-31 (citing Sageman Tr. 207:20-208:10, 309:1-4). Moreover, Sageman's book, *Understanding Terror Networks*, examines the support structure for terrorist attacks and social networks, including how "[p]articipants in the global jihad are . . . linked to each other through complex webs of . . . mediated exchanges." ECF No. 9166-5, at 137. To provide the Court with additional detail, Saudi Arabia submitted two non-classified, already-public accounts of Sageman's work for the Army. One describes

3

his use of "communication intercept evidence" from the Army's "Joint Worldwide Intelligence Communications System" to probe insider killings in Afghanistan, including reconstructions of "cell phone" contacts and "phone conversations" between "Taliban commanders" and "Afghan soldiers and police." ECF No. 9166-07, at 616-17; *see id.* at 619, 622 (describing how Sageman and his colleague created a report based "substantially [on] . . . telephone intercept records" that was accepted by a panel of independent reviewers and led to a "rewrite" of the Army's "standard operating procedures"). The other, written by Sageman himself, is more circumspect about his sources but contains a similar description of his use of "electronic evidence" to achieve a "dramatic[ ] reduc[tion]" in insider killings; it also discusses his later reviews of "terrorists['] . . . electronic communications" as an expert witness. ECF No. 9166-03, at 18-19; *see* KSA *Daubert* Opp. 5 & n.6, 30-31 (citing the foregoing).

Sageman applies his expertise in these two fields to rebut Youssef's opinions. He gives four reasons why Al Thumairy's and Omar Al Bayoumi's actions and communications are not consistent with clandestine communication and tradecraft. *First*, it is implausible that Al Thumairy used a clandestine phone number to make calls to individuals such as Al Bayoumi because that same phone number was later registered in Al Thumairy's name – undermining any suggestion that Al Thumairy's association with this number was meant to be secret. ECF No. 9093-1 ("Sageman Rep."), at 461 & n.1812, 627-29. *Second*, during the same period that Al Thumairy was purportedly using a clandestine phone to call Al Bayoumi, Al Thumairy and Al Bayoumi also called each other on phones that were registered in their own names, "refut[ing] the hypothesis that the two men tried to keep their relationship clandestine." *Id.* at 628-29. *Third*, the purportedly clandestine telephone contacts between Al Bayoumi and Al Thumairy were inconsistent with the telephone tradecraft set forth in Al Qaeda's Manchester Manual, which instructs operatives to use public phones and to memorize numbers (rather than write them

4

down, as Al Bayoumi did in his phone book). *Id.* at 249-51, 676-77 & n.2290.[3] *Fourth*, Al Bayoumi's intermittent and "clustered" communication with the Embassy would not have been "compatible with an agent or asset reporting to his case officer." *Id.* at 602-03; *see* KSA *Daubert* Opp. 11-12 & n.16 (citing the foregoing).

Sageman also rebuts Youssef's attempt to "divine" the content of phone calls from telephone records showing only the dates, times, and durations of those calls. To do so, Sageman offers reasonable alternative explanations for specific phone calls or patterns of phone calls that a factfinder should consider in determining the weight to give Youssef's testimony. He explains that a "[s]ocial network analysis" that "focuses only on the connectivity of certain subjects to each other taken out of context" can "create[ ] a sense of puzzlement about certain behaviors . . . that have a simple and common explanation when their context is restored." Sageman Rep. 463-64. He explains that Youssef, like the Operation Encore analysts on whose work Youssef often relies, presents analyses that "fail[ ] to consider . . . confounding variable[s]." *Id.* at 724-25; *see* KSA *Daubert* Opp. 32 & n.36 (citing the foregoing).

As one example, addressing phone contacts that Youssef opines must have been about alleged support for the 9/11 hijackers, Sageman explains that many of the relevant contacts or increases in contact frequency occurred during the holy month of Ramadan, a time when "Muslims call each other to offer their greetings and good wishes." Sageman Rep. 463; *see also id.* at 450, 645, 724-25 (similar points). He also points out that certain calls between Al Bayoumi and Al Thumairy coincide with the Ramadan "visit[s]" of "Islamic scholars," and opines that it is

---

[3] Sageman uses the Manchester Manual as an illustration, but his analysis on this point is not limited to Al Qaeda tradecraft specifically. Sageman Rep. 629 ("Granted, neither Sheikh Fahad nor al-Bayoumi were AQ, but I cannot imagine any clandestine organization teaching its members or facilitators to use covert means half of the time and overt means half of the time to hide their relationship. It does not make sense.").

"far more reasonable that [the calls] were about . . . [the] scholars" than about the hijackers. *Id.* at 631; *see* KSA *Daubert* Opp. 32 & n.36 (citing the foregoing). As another example, when Al Bayoumi "dramatically increased the number of his calls to the [Saudi E]mbassy," Sageman explains that the calls may be related to "administrative" matters such as "authenticating . . . multiple school records to be able to continue [Al Bayoumi's] education[ ] . . . before the end of March 2000." Sageman Rep. 676-77 & n.2290. He also points to contemporaneous documents that Al Bayoumi needed to authenticate, which show dates on which the Embassy stamped them. *Id.*; *see* KSA *Daubert* Opp. 12 (citing the foregoing).

The Order finds (at 47-48) that Sageman has "demonstrated his expertise in . . . operational matters . . . and thus may comment on clandestine communication techniques." It does not further address his specific rebuttal opinions about clandestine telephone use.

The Order also finds (at 47) that Sageman is unqualified to testify about phone records. It observes (at 47) that when Sageman was asked about his experience he "declined to provide specifics, implying that they remain confidential," and, thus, he has not met "his burden of showing he is qualified to draw conclusions from phone records." The Order cites only a portion of Sageman's deposition testimony in reaching this conclusion. It does not address his testimony describing his experience in "telephonic communications analysis" while working as a Special Advisor on Intelligence in the U.S. Army. *Supra* p. 3. It also does not address the other public material that Saudi Arabia proffered describing Sageman's work for the Army using evidence about telephone calls and communications intercepts to save American soldiers' lives in Afghanistan by analyzing and ultimately reducing the number of insider killings. *Supra* pp. 3-4.

The Order ultimately excludes all of Sageman's testimony, finding (at 56) that he "takes on a vast array of topics," in some of which he lacks expertise; "engages in selective citation and

6

speculation"; and, "[m]ost importantly," submits a factual "narrative" that "should be reserved for the Defendants' statements of facts and memoranda of law."

## LEGAL STANDARD

"Motions for reconsideration [in this district] are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." *Nieves v. New York City Police Dep't*, 716 F. Supp. 2d 299, 303 (S.D.N.Y. 2010). The standard governing a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). But reconsideration is appropriate where a court overlooks significant issues and arguments advanced by a party. *See, e.g.*, *Impax Lab'ys, Inc. v. Turing Pharms. AG*, 2018 WL 5811431, at *8 (S.D.N.Y. 2018) (granting motion for reconsideration where court overlooked impact of breach of contract on a particular time period and granting summary judgment to the moving party); *Ramos v. Telgian Corp.*, 2017 WL 354200, at *2 (E.D.N.Y. 2017) (same where court overlooked material facts presented in summary judgement briefing); *Vaughn v. Consumer Home Mortg. Co.*, 470 F. Supp. 2d 248, 257 (E.D.N.Y. 2007) (same where court "failed to consider the arguments" put forward in a party's brief regarding standing principles); *Taylor v. Lantz*, 2008 WL 4793726, at *1 (D. Conn. 2008) (same where court did not consider arguments for equitable tolling).

## ARGUMENT

Although the Court's Order finds Sageman qualified to opine on operational matters and issues of clandestine communication techniques, it does not reference or address his specific rebuttal opinions based on that expertise. Those include his opinions that (1) it is inconsistent with tradecraft for Al Thumairy to register a purported clandestine number in his own name;

7

(2) it is inconsistent with tradecraft for Al Thumairy and Al Bayoumi to use phones registered in their own names to contact each other if they were attempting to keep their relationship secret; (3) Al Thumairy's and Al Bayoumi's contacts with one another would have been inconsistent with specific tradecraft practices set out in Al Qaeda's Manchester Manual; and (4) Al Bayoumi's communication patterns with the Embassy are "not compatible with an agent or asset reporting to his case officer." *Supra* pp. 4-5. Those opinions are particularly important because the Court, in permitting Youssef to testify about who called whom, when, and why, observed that Saudi Arabia "may challenge [Youssef's] assumptions." Order 19. Youssef's misplaced assertions and assumptions about clandestine tradecraft are important to the weight that should be given his telephone analysis. Sageman's criticisms of those assertions and assumptions should be in the record before the Court in its role as finder of fact.

Accordingly, the Court should partially reconsider its Order and evaluate the reliability and admissibility of Sageman's tradecraft opinions. *See Impax Lab'ys*, 2018 WL 5811431, at *8; *Ramos*, 2017 WL 354200, at *2. Sageman used clandestine communication techniques and tradecraft in his capacity as a CIA case officer operating under cover in a hostile foreign country. *See supra* p. 3; Sageman Tr. 308:7-309:5. He credits such techniques for saving his life; the finder of fact could accept that testimony. *Id.* The Order accepts him (at 46-47) as a qualified expert on such matters and also as qualified to testify as to terrorist networks and Al Qaeda in particular. Applying his expertise, Sageman opines that Al Thumairy's and Al Bayoumi's communications practices are inconsistent with tradecraft, clandestine communications, and Al Qaeda's tradecraft manuals. *Supra* pp. 4-5. Plaintiffs did not raise specific challenges to those opinions in their *Daubert* motion, nor would they have valid grounds to do so. On reconsideration, the Court should rule those opinions admissible.

8

The Court should also reconsider the Order's ruling that Sageman is unqualified to offer other opinions (going beyond clandestine tradecraft) to rebut Youssef's telephonic communications analysis. In reaching that conclusion, the Order overlooks Sageman's intelligence work evaluating telephone communications while working as a Special Advisor on Intelligence in the U.S. Army and his peer-reviewed work examining telephone intercepts that led to a dramatic reduction in insider killings in Afghanistan. *Supra* p. 3. The Order states (at 47) that Sageman has not met his burden of demonstrating his qualifications because he testified that his prior work in this area was confidential and classified. But it does not consider portions of Sageman's testimony and publicly available sources with additional detail. *Supra* pp. 3-4.

In addition, the Order's treatment of Sageman on this issue is in tension with its treatment of Youssef. At his deposition, Youssef testified that his telephone analysis methodology is "classified" and that he cannot disclose it. KSA *Daubert* Mot. 24 (citing Youssef Tr. 258:12-260:7). But the Order (at 14, 19) nevertheless accepts his statements that "'all [his] analysis is in [his] report'" and that "his methodology is reliably used by the FBI." Sageman's testimony, and the materials Saudi Arabia has cited, show that he has analyzed telephone materials for the Army and that his work has been accepted as reliable by independent reviewers. *Supra* pp. 3-4. Sageman's rebuttal to Youssef is set forth in Sageman's report, just as the Order finds Youssef's analysis to be set forth in Youssef's report.

Sageman's specific rebuttals to Youssef's telephone analysis will be helpful to the finder of fact because they focus on context that Youssef omits. The Court has recognized the importance of "'adequately account[ing] for obvious alternative explanations'" in expert testimony in terrorism cases. ECF No. 9060, at 4-5 (quoting *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 426 (E.D.N.Y. 2011)). Even where an expert's opinion has not been excluded, identifying alternative explanations for allegedly suspicious communications will

9

be important for the finder of fact. As a rebuttal expert, Sageman should be allowed to point to gaps in Youssef's analysis and alternative reasonable explanations that Youssef failed to consider. *Cf. In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 33 (S.D.N.Y. 2020) ("A rebuttal expert need not identify alternative or better methodologies to identify purported flaws in an opposing expert's approach.") (citations omitted; cleaned up). To the extent Youssef's phone records analysis is admissible, Sageman's rebuttal of that analysis should likewise be admissible.

The additional reasons (other than expertise) that the Order gives (at 56) for excluding Sageman's testimony do not warrant exclusion of his specific rebuttals on the topics of clandestine communications or telephone analysis. Limiting Sageman to those topics will avoid any concern of him presenting a factual narrative, the main flaw that the Order finds in his opinion. Any concerns that Sageman's use of evidence is selective have less weight where he is responding to specific points made by Youssef that already present facts favorable to Plaintiffs. Also, the Order states (at 19-20) that Saudi Arabia's parallel criticisms of Youssef's opinion affect weight rather than admissibility.[4] To the extent the Court as finder of fact will consider expert telephone analysis that purports "to divine the content of callers' discussions," it should also take into account the full set of reasons to question those divinations.

## CONCLUSION

For the reasons set forth above, the Court should grant Saudi Arabia's motion for reconsideration and allow Sageman to rebut the communications security and telephone records opinions offered by Youssef.

---

[4] Saudi Arabia's limitation of this motion to Sageman's rebuttal testimony on specific topics should not be interpreted as a waiver or abandonment of any right to seek review of any other ruling under Rule 72 or on appeal.

Date:  December 23, 2024                                  Respectfully submitted,

  /s/ *Michael K. Kellogg*
Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

# CERTIFICATE OF SERVICE

      I hereby certify that, on December 23, 2024, I caused a copy of the foregoing document to be served electronically pursuant to the Court's ECF system.

      /s/ *Michael K. Kellogg*
      Michael K. Kellogg

      *Attorney for the Kingdom of Saudi Arabia*