UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |

This document relates to: *All Actions*

### PLAINTIFFS' OPPOSITION TO SAUDI ARABIA'S
### MOTION FOR PARTIAL RECONSIDERATION

The motion for partial reconsideration brought by the Kingdom of Saudi Arabia ("Saudi Arabia"), ECF No. 10646, pleads for a second time that its proffered expert Marc Sageman be allowed to offer opinions on communications tradecraft and phone records analysis, without identifying a single material issue overlooked by the Court in its December 11, 2024 Opinion & Order ("Order"), ECF No. 10615. That Order properly excluded Sageman's testimony because he was:

- unqualified to provide many of his opinions on the "vast array of topics" as to which he claimed to be an expert, Order at 56;

- specifically unqualified to "draw conclusions from phone records," since evidence of his experience with "communications analysis" was "lack[ing]," *id.* at 48;

- unreliable and untrustworthy, presenting opinions based on selective citations, speculation, and *ipse dixit*, *id.* at 56; and

- "an advocate," not an expert, who "offers an improper factual narrative" of Saudi Arabia's theory of the case, *id.* at 55-56.

The combination of these "fundamental issues" proved "collectively fatal" to Sageman's testimony, which the Court found "had little use to begin with." *Id.* at 56.

Saudi Arabia does not and cannot meet its burden on reconsideration to show a clear error or manifest injustice that requires correction. Its motion repeatedly misrepresents the record and seeks to relitigate issues that the Court already properly resolved.

1

**STANDARD OF REVIEW**

The standard for a motion for reconsideration is "strict" and the motion "will generally be denied," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), absent proof of "the need to correct a clear error or prevent manifest injustice." *Doe v. New York City Dept. of Social Services*, 709 F.2d 782, 789 (2d Cir. 1983). A reconsideration motion is "an extraordinary remedy to be employed sparingly," *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019), and "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

**SAUDI ARABIA OFFERS NO GROUNDS FOR RECONSIDERATION AND ITS MOTION SHOULD BE DENIED**

A. **Contrary to Saudi Arabia's claims, this Court thoroughly vetted Sageman and properly found that he lacked the necessary qualifications to render expert opinions on phone calls and communications analysis**

Saudi Arabia improperly uses its motion for reconsideration to suggest that Sageman possessed qualifications and experience that Sageman himself failed to include in his resume and his report. This Court observed that "[a] witness's qualifications typically show up on her resume," Order at 6, and it is undisputed that Sageman's CV contains *no* mention of *any* background or expertise related to communications analysis or phone calls evidence. ECF No. 9166-1.[1]

The Court properly found fault with Sageman's inability "to provide specifics" about his claim to have conducted communications analysis, despite being "pressed on the details at

---

[1] Sageman's CV lists three principal topics of "special expertise" (political science, sociology and psychiatry), as well as 13 separate sub-topics (ranging from "Europe" to "trauma"). None relates even remotely to communications analysis. At his deposition Sageman declined to call himself an expert on communications analysis, stating: "I'm not really sure what you mean by 'expert.'" ECF No. 9166-2 at 5:7-8.

2

his deposition." Order at 47, citing ECF No. 9166-2 at 5:12-15 (when asked "[c]an you be specific as to any investigations in which you've used communications analysis," Sageman testified: "I can't."). Sageman admitted that he had no training in communications analysis, ECF No. 9270-10 at 20:4-12, and he had not previously conducted any investigations into the usage of telephones by terrorist operatives and their associates. ECF No. 9166-2 at 8:20-24.[2]

The Court also found that Sageman was unqualified to discuss "law enforcement investigations," "the FBI," and "FBI operations," Order at 47, the established fields in which communications analysis is conducted, especially when investigating terrorist plots. *See also* ECF No. 9092 at 25-26 ("Sageman is unfamiliar with both the methodology and the terminology used by law enforcement to investigate communications among participants in complex crimes"). The Court properly excluded Sageman's testimony about the FBI, having assessed Sageman's experiences in those fields as "a little thin," and in any case "too vague and attenuated to establish his expertise." Order at 47-48.

Indeed, Sageman offered only flimsy and generic claims of any relevant experience. *See, e.g.*, ECF No. 9270-10 at 20:19-21:7; ECF No. 9166-2 at 9:1–3. The result was what the Court rightly identified as a "lack of concrete information about [Sageman's] experience with communications analysis." Order at 47. Saudi Arabia's motion provides no overlooked data or new insight to fill that gaping hole.

Saudi Arabia incorrectly suggests that Sageman's work as a CIA case officer and, later, as a part-time consultant to the U.S. Army had been overlooked, KSA Motion at 1, 8-9, but this Court specifically examined both of those roles in its findings. Order at 44-45, 47-48. Moreover, it is undisputed that at no point in his 730-page report does Sageman himself cite

---

[2] After admitting at his deposition that he did not conduct any investigations, and declaring "I did not have to use investigation," Sageman added that some cases he had worked on "*might have* involved clandestine use of telephone[s], what we call trade craft." ECF No. 9166-2 at 9:1-4 (emphasis added). Saudi Arabia's reliance on this obtuse and nonspecific claim of Sageman, KSA Motion at 3, only further supports this Court's finding that Sageman "has not met his burden of showing he is qualified" based on his uncertain background. Order at 47.

3

his CIA or Army experiences as having provided the basis for *any* of his opinions regarding communications analysis or phone calls.

This Court acknowledged Sageman's experience of having used "communications tradecraft" as a CIA case officer, Order at 44, 47-48, when Sageman was deployed in the regions of the Pakistan-Afghanistan border in the 1980s. But as the Court rightly recognized, that limited, tangential experience was far removed in time, place, and circumstances from the analytical expertise required to opine on the relevant communications and phone calls evidence involving Thumairy, Bayoumi, and other Saudi government agents inside the U.S. The Court drew an appropriate distinction between "communications analysis" (as to which the Court found Sageman's experience to be "lack[ing]" and ordered that "he may not testify") and Sageman's insights into "clandestine communications techniques" gained from the "more operational matters" of his CIA deployment. Order at 47-48.[3]

Further, Sageman not only conspicuously failed to explain how his CIA work could be related to his opinions, but himself averred that the "only time in [his] career" that he had worked in communications analysis was during his later stint as a part-time consultant to the Army, in the early 2010s. ECF No. 9270-10 at 20:13-16. As discussed above, the Court reviewed Sageman's Army consulting work, finding that Sageman failed to provide the essential details necessary to demonstrate that it qualified him as a communications expert. Order at 47-48. At his deposition in June 2022, Sageman summarily testified that his Army work was "all classified" and refused to discuss even the "categories of [communications]

---

[3] Sageman's work as a CIA officer in the regions of the Pakistan-Afghanistan border in the 1980s is irrelevant here because Sageman did not reference his CIA work in his CV, report, or deposition as a basis for any of his communications opinions, including about phone calls evidence. Even the book excerpts improperly relied upon by Saudi Arabia confirm this lack of relevance and show that Sageman: "was posted to Islamabad the last two years of the Soviet Afghan war," ECF No. 9166-3 at 6; "worked in Pakistan during the 1980s, running frontline CIA contacts with… [Afghan] mujaheddin commanders," ECF No. 9166-7 at 609; and that "as a CIA case officer, he had accompanied mujaheddin rebels he armed and financed to the Afghanistan-Pakistan border." *Id.* at 610.

records" he purportedly analyzed. ECF No. 9270-10 at 19:10-24, 20:19-23.[4] Had Sageman intended to rely on any genuine communications background to render his opinions on phone calls, he was required to set forth such expertise in his report. Fed. R. Civ. P. 26(a)(2)(B). He did not. Saudi Arabia cannot claim after the fact that Sageman based his opinions on qualifications that he failed to include in his own CV, reference in his report, or explain at his deposition.

Yet, one year after Sageman was deposed, as part of its June 2023 *Daubert* opposition papers, Saudi Arabia for the first time submitted excerpts from two books,[5] which it now describes as "two *non-classified*, already-public accounts of Sageman's work for the Army." KSA Motion at 3 (emphasis added). These excerpts are both taken from books published several years in advance of Sageman's 2022 deposition, and feature Sageman openly discussing his Army consulting work, directly undermining his deposition testimony that his Army work was "all classified," which shut down further inquiry from Plaintiffs' counsel. Moreover, contrary to Saudi Arabia's reframing, KSA Motion at 3-4, 6, 9, the book excerpts do not demonstrate relevant expertise in communications analysis and are highly ambiguous as to the work Sageman himself performed.[6]

---

[4] Saudi Arabia improperly reargues its incorrect claim that Sageman's refusal to provide details was "[l]ike [Plaintiffs' expert] Youssef," KSA Motion at 3, when their respective circumstances are in fact quite different. This Court "easily dispensed with" Saudi Arabia's claim that Youssef relied on "classified" data because Youssef testified that "all my analysis is in my report" and – unlike for Sageman – the Court could "analyze[] the methodology evident within the four corners of [Youssef's] report." Order at 14-15.

[5] The first cited book excerpt is a journalist's account of work done by various international personnel in response to rising numbers of "insider killings" in Afghanistan in 2012, where Sageman, as an Army consultant, spent three months. Steve Coll, *Directorate S: The C.I.A. and America's Secret Wars in Afghanistan and Pakistan* (2018). KSA Exhibit 63, ECF No. 9166-7, omitted the footnotes to the excerpted chapter, which show that the author's account of what Sageman did in Afghanistan was reconstructed almost entirely from interviews with Sageman himself. *Id.*, footnotes to Chapter 33, "Homicide Division." The second cited book excerpt is the autobiographical introduction to a book written by Sageman himself. Marc Sageman, *Misunderstanding Terrorism* (2017). KSA Exhibit 59, ECF No. 9166-3, includes Sageman's own retelling of his experience as an Army consultant. *Id.*, at 16-18.

[6] Contrary to Saudi Arabia's characterization of "Sageman's work for the Army using evidence about telephone calls and communications intercepts to save American soldiers' lives in Afghanistan," KSA Motion at 6, the book excerpts reveal that Sageman analyzed "photos," "transcripts," "field interviews" and statistics in order to arrive at his findings. ECF No. 9166-7 at 615-19; *see also* Coll, *Directorate S,* footnotes to Chapter 33, n. 12 (footnote citing to Sageman's reflections on one of "several cases where video and photographic evidence from 'helmet cams' clarified with hard evidence what had and had not precipitated insider shootings.")

Saudi Arabia's misleading attempts to recast Sageman's experience, KSA Motion at 3, 4, 6, 8, do not provide grounds for reconsideration. *Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018) ("Reconsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion."). Saudi Arabia's motion offers nothing new to question this Court's finding that "Sageman has not met his burden of showing he is qualified to draw conclusions from phone records." Order at 47.

**B.    Saudi Arabia provides no basis for reconsideration of this Court's findings that Sageman's relevant opinions were unreliable, untrustworthy, unhelpful, and constitute an improper factual narrative**

Saudi Arabia's motion ignores that Sageman's opinions on communications and phone issues were afflicted by the same "fundamental issues," notably "reliability issues," that proved "collectively fatal" to Sageman's entire testimony. Order at 56. Saudi Arabia does not and cannot demonstrate that Sageman applies any purported expertise in communications analysis to arrive at his conclusions. Instead, Saudi Arabia improperly seeks to use its counsel's argument as a flawed substitute for the essential requirements under Fed. R. Evid. 702 that Sageman himself failed to meet in his report.

Saudi Arabia claims that Sageman's "specific rebuttals on the topics of clandestine communications [and] telephone analysis" were overlooked, KSA Motion at 10, but this Court squarely addressed those issues in its Order and provided cogent reasons why Sageman's rebuttal opinions were excluded.

This Court reviewed Sageman's communications analysis and determined that he relied on speculation, *ipse dixit*, and improper factual narrative rather than an inquiry based on genuine experience. The Court found that Sageman improperly takes on "the role of an advocate" and "launches inflammatory attacks more appropriate to a high school debate than an expert report," citing the section of Sageman's report in which he purported to rebut the phone analysis of Plaintiffs' expert Youssef. Order at 56 (quoting Sageman stating that "[m]y

6

opinion with a high degree of certainty is that Youssef does not know what an analysis is, leading him to jump to erroneous conclusions."). Other examples provided by the Court included Sageman's speculation that "[i]t is not a stretch to assume" that phone calls were somehow related to the Ramadan holiday, and *ipse dixit* that he "analyzed" certain calls (without providing any details) and determined that they "most likely dealt with a religious question that al-Bayoumi had." *Id.* at 48. Saudi Arabia's motion for reconsideration cannot be deployed in an attempt to repair these pervasive, central flaws in Sageman's report.

Saudi Arabia wrongly claims that this Court overlooked Sageman's complaint that Plaintiffs' expert Youssef "presents analyses that 'fail[ ] to consider… confounding variable[s].'" KSA Motion at 5. The only so-called "confounding variable" Sageman described was the Ramadan holiday calls — and Sageman's testimony as to that issue was specifically addressed and rejected by this Court. Order at 48.[7]

Saudi Arabia further suggests that "[l]imiting Sageman to… topics [of clandestine communications or telephone analysis] will avoid any concern of him presenting a factual narrative," KSA Motion at 10. Yet the very portions of Sageman's testimony that Saudi Arabia seeks to salvage include the offending excerpts which the Court expressly identified as illustrative of its "fatal" flaws.

Indeed, the portions of Sageman's report cited throughout Saudi Arabia's motion encapsulate the problems of Sageman using speculation and his own say-so, and summarizing defense arguments rather than furnishing any helpful opinions rooted in his experience. Saudi Arabia's motion claims that "identifying alternative explanations for allegedly suspicious communications will be important for the finder of fact," KSA Motion at 9-10, but Saudi Arabia once again fails to acknowledge that the Court found Sageman

---

[7] Saudi Arabia also improperly uses the plural "variable[s]," KSA Motion at 5, to suggest that Sageman relied on more than one example, when Sageman used the singular "variable" and referred only to Ramadan holiday calls as a so-called "confounding variable." ECF No. 9118-1 at 724-25.

unqualified to offer such opinions, rejected his musings regarding alternative explanations as untrustworthy, and that defense counsel, not Sageman, can present the "curated narrative" in Sageman's report as argument, not evidence. Order at 56.

Saudi Arabia ultimately protests that reconsideration is necessary to allow its unqualified expert Sageman to offer rebuttal as some kind of makeweight to the testimony of Plaintiffs' qualified communications expert Youssef. KSA Motion at 9 (stating that "[t]he Order's treatment of Sageman on this issue is in tension with its treatment of Youssef.").[8] Saudi Arabia's argument ignores that Sageman was properly excluded because he lacked basic qualifications and failed to offer reliable, helpful testimony. Like all experts, "rebuttal experts must meet *Daubert's* threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony." *Scott v Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016); *see also In re M/V MSC FLAMINIA*, No. 12-cv-8892 (KBF), 2017 WL 3208598, at *22-23 (S.D.N.Y. July 28, 2017) (rebuttal expert may not provide opinions "in areas beyond his expertise" or be used as "an aggregator" or "mouthpiece" for a party's arguments).

## CONCLUSION

Saudi Arabia presents no grounds for partial reconsideration of the Order, and its motion should be denied.

---

[8] In contrast to Sageman, the Court found that "Youssef's distinguished career as an FBI agent and his undisputed experience in subjects directly or closely related to those at issue here… justify finding him qualified to testify about communications analyses and counterterrorism investigations." Order at 14.

| | |
|---|---|
| Dated: January 3, 2025 | Respectfully submitted, |
| MOTLEY RICE LLC | COZEN O'CONNOR |
| By: /s/ Robert T. Haefele | By: /s/ Sean P. Carter |
| Robert T. Haefele<br>28 Bridgeside Boulevard<br>Mount Pleasant, SC 29465<br>Tel.: (843) 216-9184<br>Email: rhaefele@motleyrice.com | Sean P. Carter<br>One Liberty Place<br>1650 Market Street, Suite 2800<br>Philadelphia, Pennsylvania 19103<br>Tel.: (215) 665-2105<br>Email: scarter@cozen.com |
| *For Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs* | *For the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs* |

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian

Steven R. Pounian
James Gavin Simpson
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*