**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to: *All Actions*

**REPLY BRIEF OF THE KINGDOM OF SAUDI ARABIA IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S DECEMBER 11, 2024 ORDER**

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..... ii

ARGUMENT ..... 1

CONCLUSION ..... 6

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page

CASES

*Digital Music Antitrust Litig.*, *In re*, 321 F.R.D. 64 (S.D.N.Y. 2017) ............................................6

*Emig v. Electrolux Home Prods. Inc.*, 2008 WL 4200988 (S.D.N.Y. Sept. 11, 2008) ......................4

*Gill v. JUS Broad. Corp.*, 2024 WL 4107251 (E.D.N.Y. Sept. 6, 2024)..........................................5

*Morton v. Otis Elevator Co.*, 2011 WL 2199848 (W.D.N.Y. June 7, 2011)......................................5

*Rezulin Prods. Liab. Litig.*, *In re*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004)........................................5

*United States v. Brown*, 776 F.2d 397 (2d Cir. 1985)........................................................................5

RULES

Fed. R. Evid. 702 ...............................................................................................................................5

OTHER MATERIALS

Columbia News: *Directorate S*, https://news.columbia.edu/content/directorate-s .........................3

Search in Google Scholar: *Misunderstanding terrorism*, *available at* https://scholar.google.com/scholar?cites=17209659261885862748&as_sdt=10000005&sciodt=0,20&hl=en ..............................................................................4

Saudi Arabia has shown good reason for partial reconsideration of this Court's December 11, 2024 Order, ECF No. 10615 ("Order"), limited to two narrow issues. *First*, the Order does not consider or evaluate the reasonableness of Marc Sageman's rebuttal opinions on tradecraft or the use of clandestine communication devices, despite finding Sageman qualified to offer those opinions. ECF No. 10646 ("Mot."), at 3, 4-5, 7-8. *Second*, the Order overlooks specific record support for Sageman's qualifications to rebut Bassem Youssef's telephone communications analysis. *Id.* at 5-6, 9-10. That support includes Sageman's deposition testimony, his peer-reviewed published work, and a separate published description of his experience analyzing intercepts and phone records to determine the causes of the murders of U.S. service members in Afghanistan, which were accepted by a panel of independent reviewers and used to save lives.

Plaintiffs' opposition, ECF No. 10656 ("Opp."), fails to rebut Saudi Arabia's arguments. Plaintiffs disregard the Court's finding that Sageman is qualified to testify on tradecraft and on the clandestine use of communication devices. They erroneously conflate the two points on which Saudi Arabia has sought reconsideration. As to Sageman's tradecraft opinions, Plaintiffs make no argument that the Court should not reconsider whether they are reliable. As to Sageman's qualifications to rebut Youssef's telephone analysis, Plaintiffs fail to show that the Court should disregard the record materials that Saudi Arabia cited in its Opposition, which are not addressed in the Order and to which Saudi Arabia has now called the Court's attention.

**ARGUMENT**

**1.** The Order finds (at 47-48) that Sageman is an expert qualified to testify about tradecraft and clandestine communications. Unlike Youssef, Sageman was trained in tradecraft as a CIA operative, used tradecraft and clandestine communications operating under cover in a hostile foreign country, and credits such techniques for saving his life. Mot. 3, 8. After finding that Sageman is a qualified expert in these areas, however, the Order does not address the

reliability of his rebuttal opinions about why phones used by Fahad Al Thumairy were not clandestine phones, or why Omar Al Bayoumi's and Al Thumairy's phone usage is inconsistent with tradecraft or with Al Qaeda's procedures. *See* Mot. 4, 8. Indeed, the Order does not discuss those opinions at all. Nor do Plaintiffs refer to or discuss them in their present opposition. For the reasons given in Saudi Arabia's motion, the Court should partially reconsider its decision and allow Sageman to rebut Youssef's tradecraft and clandestine communications opinions.

**2.** In finding that Sageman lacked expertise in telephone communications analysis, the Court overlooked deposition testimony, a peer-reviewed book discussing Sageman's expertise in this field, and Sageman's own published and peer-reviewed discussion of his prior work.[1] Sageman testified at deposition about his "telephonic communications analysis" while working in Army intelligence, and that review of telephone toll records had been the "backbone of some of [his] investigations." Mot. 3.[2] He also testified that the specifics of that work remain classified and so he could not discuss them in detail. ECF No. 9270-10, at 204:4-9. How to deal with experts with classified experience was vigorously disputed in the parties' *Daubert* motions. With regard to Plaintiffs' experts Youssef and Nakhleh, the Order finds (at 14, 26) that deposition answers pointing to classified methods or classified information did not warrant barring their testimony. The Court should apply the same approach to Sageman.

Apart from his testimony, Sageman's expertise in telephone communications analysis is described in more detail in Saudi Arabia's exhibits supporting its opposition to Plaintiffs'

---

[1] Plaintiffs also point (at 3) to the Order's findings that Sageman lacks expertise about law enforcement or the FBI. Saudi Arabia has not sought reconsideration of those findings.

[2] Plaintiffs incorrectly assert (at 2 n.1) that Sagman "declined to call himself an expert on communications analysis" at his deposition. They quote an answer stating only that he was not sure how Plaintiffs' counsel was using the word "expert"; counsel could have clarified, but did not. Sageman went on to testify that he has experience with "telephonic communications analysis," including through his Army intelligence work. Mot. 3 (collecting citations).

*Daubert* motion. Those exhibits include an excerpt of the award-winning and critically praised book, *Directorate S*, written by Pulitzer Prize-winning author Steve Coll, the dean of Columbia Journalism School.[3] Coll devotes an entire chapter of his book to Sageman's investigation of insider murders of U.S. and European troops in Afghanistan by Afghani soldiers in the early 2010s. ECF No. 9166-7. He describes Sageman as "one of the more unusual, naturally gifted characters in the American intelligence community," tasked by the U.S. Army "to analyze the crisis." *Id.* at 8. In that role, Sageman operated as "a kind of homicide detective," as he had in the aftermath of the Fort Hood, Texas mass shooting in 2009. *Id.* at 9. He conducted a careful analysis of classified "[t]elephone intercepts tracing," "phone intercepts," and "communication intercept evidence," as well as "Taliban intercept records," to, among other things, determine whether the murders were linked to the Taliban. *Id.* at 11-12, 15 (also discussing Sageman's analysis of intercepts pulled from "six different systems"). Sageman's findings and recommendations for new standard operating procedures dramatically reduced the murder rate. *Id.* at 15.

Plaintiffs' responses to Coll are superficial. They assert (at 5 & n.5) that Sageman was interviewed by Coll in connection with his book and a source for Cole's information. There is nothing improper about Coll interviewing Sageman (any good journalist would have done the same) and no suggestion that Coll lacked other sources. Plaintiffs also point (at 5 n.6) to statements that Sageman analyzed "photos," transcripts," field interviews, and other evidence, as well as phone records. But his use of other investigative tools does not rebut the point that he has experience in the analysis of phone records.

[3] *See* ECF No. 9166-7, cover (showing that Coll's book was a *New York Times* Bestseller and won the National Book Critics Circle Award); *see also* Columbia News: *Directorate S*, https://news.columbia.edu/content/directorate-s (last visited Jan. 8, 2025).

Saudi Arabia further submitted excerpts from Sageman's peer-reviewed book *Misunderstanding Terrorism*, which has been cited in at least 257 other scholarly publications.[4] The excerpts discuss the same investigation described in *Directorate S*, including Sageman's analysis of "electronic evidence." ECF No. 9166-3, at 13-14. Plaintiffs assert the obvious point (at 5 n.5) that Sageman's book involves his "own retelling of his experience." But Plaintiffs do not and cannot point to any inaccuracies in that retelling. Nor is there any bar to using a self-written document to show qualifications: the Order explains (at 6) that a "witness's qualifications typically show up on her resume" and relies (at 14, 46, 58) on several experts' resumes or curricula vitae, which the experts wrote themselves.

Plaintiffs' additional complaint (at 2, 5) that Sageman's communications-analysis credentials are not set out in his curriculum vitae is inaccurate and irrelevant. Sageman's resume, Exhibit 1 to his report, describes his roles as "Special Adviser to the Deputy Chief of Staff of the Army (Intelligence) on the Insider Threat" and "Special Adviser to the Deputy Chief of Staff of the International Security Assistance Forces (Intelligence) in Afghanistan on Insider Attacks." ECF No. 9166-1, at 2. It also lists both *Understanding Terror Networks* and *Misunderstanding Terrorism*, which discuss his communications analysis work, among his numerous peer-reviewed publications. *Id.* at 4, 6. In any event, courts "look at the totality of [a] witness' qualifications," not to the expert's resume in isolation. *See Emig v. Electrolux Home Prods. Inc.*, 2008 WL 4200988, at *4 (S.D.N.Y. Sept. 11, 2008) (emphasizing that "the court

---

[4] *See* Search in Google Scholar: *Misunderstanding terrorism*, *available at* https://scholar.google.com/scholar?cites=1720965926188586274&as_sdt=10000005&sciodt=0,20&hl=en (last visited Jan. 8, 2025).

must look at the totality of the witness' qualifications" and admitting witness based on the qualifications revealed in his CV, deposition testimony, and affidavit) (cleaned up).[5]

The communications analysis that Sageman conducted for the Army in Afghanistan involved analyzing telephone records and intercepts to determine whether the principals involved were associated with or acting for terrorist or hostile groups. That is the same type of project Youssef undertakes here in "purport[ing] to divine," Order 18, what occurred on calls shown in phone records. Sageman's prior experience meets the "liberal" qualification requirements of Rule 702 necessary for him to rebut those opinions. *See United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985) (qualification requirement of Rule 702 "must be read in light of the liberalizing purpose of the Rule"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004) (under "[t]he Second Circuit['s] . . . liberal view of the qualification requirements of Rule 702," an expert's proponent can point to "relevant practical experience").

Because of the Court's findings on Sageman's qualifications, it did not reach the reliability of his rebuttal opinions on communications analysis. Those opinions are not a narrative of the facts, which the Order (at 9, 21) even-handedly precludes both Plaintiffs' and Defendants' experts from offering. Instead, they include plausible alternative explanations for calling patterns that Youssef fails to consider or address, and which will be helpful to the Court. Mot. 9-10. Nor is there any danger that Sageman selectively used evidence in opining on these plausible alternative explanations, as the Order (at 49-50) finds with regard to some of his other

[5] *See also Morton v. Otis Elevator Co.*, 2011 WL 2199848, at *9 (W.D.N.Y. June 7, 2011) (holding that witness's "listed qualifications," including education and publications, "considered in conjunction with the substance of his deposition testimony, provide[d] an ample basis to conclude that [witness] possesses knowledge, skill, experience, training, and education that would assist the trier of fact"); *Gill v. JUS Broad. Corp.*, 2024 WL 4107251, at *3 (E.D.N.Y. Sept. 6, 2024) (qualifying witness based on deposition testimony).

opinions. Because Sageman is specifically identifying facts and potential explanations disregarded by Youssef, the Court as factfinder will benefit from comparing the experts' competing testimony. *See* Order 58 (observing that "a rebuttal expert . . . is free to simply 'attack' the Plaintiffs' experts' 'models or methods' ") (quoting *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 78 (S.D.N.Y. 2017)). The Order finds (at 19-21) that Youssef's own "rel[iance] on some [sources] more than others" and tendency to "gloss[ ] over weaknesses in his opinion" do not require excluding "communication security" and "phone analysis" testimony where he has "relevant experience" (but rather go to "weight, not admissibility"). It should apply the same logic to Sageman's experience-based rebuttals on those same topics.

**CONCLUSION**

The Court should grant Saudi Arabia's motion for partial reconsideration.

Date: January 10, 2025

Respectfully submitted,

/s/ *Michael K. Kellogg*

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rules 6.3 and 7.1(c), I certify that the foregoing document, which was prepared using Times New Roman 12-point typeface, contains 1743 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Office Word 365) used to prepare the document.

Executed on January 10, 2025.

/s/ *Michael K. Kellogg*
Michael K. Kellogg

*Attorney for the Kingdom of Saudi Arabia*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 10, 2025, I caused a copy of the foregoing document to be served electronically pursuant to the Court's ECF system.

/s/ *Michael K. Kellogg*
Michael K. Kellogg

*Attorney for the Kingdom of Saudi Arabia*