UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

      TERRORIST ATTACKS ON
      SEPTEMBER 11, 2001

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___1/31/2025___

03-MD-01570 (GBD)(SN)

<u>OPINION & ORDER</u>

**SARAH NETBURN, United States Magistrate Judge:**

      The Kingdom of Saudi Arabia ("Saudi Arabia") moves for partial reconsideration of the Court's December 11, 2024 Opinion & Order (the "Order"). Mot., ECF No. 10646 ("KSA Mot."); <u>see also</u> Reply, ECF No. 10662 ("KSA Reply").[1] They ask the Court to reconsider its decision to exclude limited portions of the testimony of their expert witness Marc Sageman ("Sageman"). KSA Mot. at 1. In particular, Saudi Arabia requests that the Court permit Sageman to testify about two topics—tradecraft and communications analysis—in order to rebut the testimony of Plaintiffs' expert Bassem Youssef ("Youssef"). <u>Id.</u> The Plaintiffs oppose the motion. Opp'n Mot., ECF No. 10656.

## BACKGROUND

      Following the close of jurisdictional discovery, the parties filed cross-motions to exclude the testimony of seven expert witnesses. <u>See</u> ECF Nos. 9088, 9091. The Court reviewed the parties' filings, which included thousands of pages of briefing, expert reports, and exhibits, and concluded that three of the seven challenged experts should be excluded. Order, ECF No. 10615. Sageman was one of them. <u>Id.</u> at 44–56. The Court also largely excluded the testimony of Plaintiffs' expert Youssef but carved out narrow exceptions to allow him to testify about

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

"terrorism organizations' communication security" (i.e., tradecraft) and "telephone data analysis." Id. at 24.

## LEGAL STANDARD

Saudi Arabia moves for reconsideration pursuant to Local Civil Rule 6.3. KSA Mot. at 1. The standards governing a motion for reconsideration under Local Civil Rule 6.3 are the same as those under Rule 59(e) of the Federal Rules of Civil Procedure. Abrahamson v. Bd. of Educ., 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002). To prevail on such a motion, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir.1998)). Accordingly, the standard for granting a motion for reconsideration is "strict." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is generally denied unless "the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys, Inc., 684 F.3d at 52 (citing Shrader, 70 F.3d at 257). The decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court. Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009).

## DISCUSSION

Saudi Arabia requests reconsideration on two issues. **First**, Saudi Arabia asks the Court to "evaluate the reliability and admissibility of Sageman's tradecraft opinions." KSA Mot. at 8. The Court found Sageman qualified to testify about communications tradecraft based on his

training as a CIA officer. <u>See</u> Order at 47–48. Saudi Arabia argues, however, that the Court then failed to analyze the reliability of Sageman's tradecraft opinions before barring Sageman's testimony altogether. KSA Reply at 2 (citing KSA Mot. at 4, 8). In Saudi Arabia's telling, the Court did "not discuss those opinions at all." <u>Id</u>.

The Court, however, found that Sageman's testimony suffers from "several fundamental issues that are collectively fatal." Order at 56. Speculation, *ipse dixit*, and state-of-mind commentary so plague Sageman's testimony throughout his report that, in the end, the Court "[could] not trust that *each* of Sageman's opinions is based on a reliable application of his expertise to the facts." <u>Id.</u> (emphasis added). These "reliability issues," the Court explained, "negate the value of Sageman's testimony" as a whole. <u>Id.</u> "Most importantly," the Court continued, Sageman's report "had little use to begin with": merely "offer[ing] an improper factual narrative" that mirrors Saudi Arabia's own, Sageman's testimony provides nothing more than a "700-page summary of the Defendants' theory of the case." <u>Id.</u> at 55, 56. Though the Court did not specifically emphasize Sageman's tradecraft opinions to underscore these reliability deficiencies, <u>see</u> KSA Mot. at 4–5, Saudi Arabia's argument misses the larger point: Sageman's entire testimony, including his tradecraft testimony, is too infected to avoid a "fatal" diagnosis. Order at 56.

Indeed, Sageman's tradecraft testimony reflects the very reliability and narrative-building concerns that sit at the heart of the Court's decision to exclude his testimony. The Court criticized Sageman for assuming "the role of an advocate," for example, by citing his attacks on Youssef. <u>Id.</u> The Court highlighted two such barbs; but it could have easily substituted any number of examples from the sections of Sageman's report that Saudi Arabia holds up as reliable tradecraft testimony:

- "Youssef, as will be clear throughout his report, is not familiar at all with clandestine tradecraft, and indeed his C.V. shows no background or training in clandestine tradecraft, despite all his boasts of being an expert on it." ECF No. 9118-1 at 604.

- "Youssef starts this subsection [on tradecraft] . . . with another one of his appeals to his authority based on his alleged expertise, this time on telephone security." Id. at 629.

- "Nor is this the way [al Qaeda] taught its agents about telephone security. I invite Youssef to read the Manchester Manual attributed to [al Qaeda], . . . which outlines [al Qaeda]'s telephone security tradecraft." Id. at 631.

Sageman's advocacy is best "reserved for the Defendants' statements of facts and memoranda of law." Id. The Court therefore declines to provide Saudi Arabia with a "second bite at the apple" by reconsidering Sageman's tradecraft testimony. Analytical Surveys, Inc., 684 F.3d at 52.

**Second**, Saudi Arabia asks the Court to reconsider its decision to find Sageman unqualified to testify about telephone communications analysis. KSA Mot. at 9. In coming to its conclusion, Saudi Arabia contends, the Court "overlooked" evidence of Sageman's qualifications and relied too heavily on his deposition claims that the details of his relevant experience remain classified. KSA Reply at 2; see Order at 47 ("Given the lack of concrete information about his experience with communications analysis, Sageman has not met his burden of showing he is qualified to draw conclusions from phone records."). Saudi Arabia claims that the Court's approach to Sageman "is in tension" with its treatment of Plaintiffs' experts Youssef and Emile Nakhleh ("Nakhleh"). KSA Mot. at 9; KSA Reply at 2.

Saudi Arabia presents no "new evidence," however, to meet the exacting standard demanded of a motion for reconsideration. Kolel Beth Yechiel Mechil of Tartikov, Inc., 729 F.3d at 104. Their motion unearths no "controlling . . . data that the court overlooked," and instead

attempts to "present[] the case under new theories." <u>Analytical Surveys, Inc.</u>, 684 F.3d at 52. The "additional" materials that Saudi Arabia suggests should revive Sageman's testimony were already before the Court—and do nothing to alter the Court's original conclusion. KSA Mot. at 9.

As the Court has already explained, Sageman was "pressed on the details" of his communications analysis expertise at his deposition but "declined to provide specifics." Order at 47 (citing ECF No. 9166-2 at 5:12–15). "It's all classified," he testified. ECF No. 9270-10 at 19:17. When asked whether he considers himself to be an expert in communications analysis, Sageman admitted that he is "not really sure what you mean by 'expert,'" but then simply stated: "In terms of my experience and skills, I've used it." ECF No. 9166-2 at 5:7–10. The best he could muster to describe his "experience and skills" in communications analysis was that he "look[s] at the communication of some suspects and tr[ies] to identify the links to other suspects." ECF No. 9270-10 at 20:7–9. This hardly evinces "superior knowledge, education, experience, or skill" in the area. Order at 7 (quoting <u>Nat'l Coalition on Black Civic Participation v. Wohl</u>, 661 F. Supp. 3d 78, 97 (S.D.N.Y. 2023)).

Saudi Arabia's "tension" argument is also unavailing. The Court considered the impact of classified information on Sageman's *experience* and Youssef's *methodology*. The Court found it could consider Youssef's methodology "within the four corners of his report." Order at 15. But the Court could not do the same with Sageman's experience because evidence of his experience was largely unavailable. <u>See</u> ECF No. 9166-2 at 5:12-15 ("Q. Can you be specific as to any investigations in which you've used communications analysis? A. I can't."). The ample evidence of Nakhleh's expertise in political Islam, meanwhile, allowed the Court to find him qualified to testify about Saudi Arabia, even though his studies on the Ministry of Islamic Affairs remained

classified. Order at 26. Sageman has no similar supplemental basis upon which to base his communications analysis qualifications.

In other words, the Court did not fail to consider relevant information—it considered the information it had about Sageman's experience, including the information Saudi Arabia contends it "overlooked," and concluded that such experience was not sufficient to find Sageman qualified to testify about communications analysis.

## CONCLUSION

Saudi Arabia has not overcome the "strict" threshold required to grant its request for reconsideration, and its motion is denied. Shrader, 70 F.3d at 257 (2d Cir. 1995). The Clerk of Court is respectfully directed to terminate the motion at ECF No. 10646.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:     January 31, 2025
           New York, New York