**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |
|---|---|
| | ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-cv-06978
*Ashton et al. v. Al Qaeda, et al.*, No. 02-cv-6977
*Thomas E. Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 04-cv-01922
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04-cv-05970
*Estate of John P. O'Neill, Sr., et al. v. Republic of the Sudan, et al.*, No. 18-cv-12114
*Aronow v. Republic of Sudan,* No. 20-cv-7733
*Betru v. Republic of Sudan*, No. 20-cv-10615
*Parker v. Republic of the Sudan*, No. 20-cv-10657
*Nolan v. Republic of the Sudan,* No. 20-cv-10720

**MEMORANDUM OF LAW IN OPPOSITION TO THE REPUBLIC OF THE SUDAN'S**
**MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**
**PURSUANT TO 28 U.S.C. § 1292(b)**

February 12, 2025

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................... 1

LEGAL ANALYSIS.......................................................................................................... 3

I.      Interlocutory Review is Extraordinary and Disfavored Relief........................................ 3

II.     This Court Should Decline to Certify Its August 10, 2023 Order for Interlocutory Appeal. .................................................................................................................... 4

        A.     Sudan's Motion is Untimely. ................................................................ 4

        B.     The August 10, 2023 Order Does Not Involve a Controlling Question of Law. ...................................................................................................... 6

        C.     There is No Substantial Ground for Difference of Opinion. ................................ 10

        D.     An Immediate Appeal Will Not Materially Advance the Litigation. .................. 12

CONCLUSION.................................................................................................................. 15

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
  2023 U.S. Dist. LEXIS 112226 (S.D.N.Y. June 29, 2023)......................................................7

*Bolivarian Republic of Venez v. Helmerich & Payne International Drilling Co.*,
  581 U.S. 170 (2017)................................................................................................................9

*Casey v. Long Island R.R. Co.*,
  406 F.3d 142 (2d Cir. 2005)....................................................................................................4

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  574 F. Supp. 2d 369 (S.D.N.Y. 2008).....................................................................................7

*Colon v. BIC USA, Inc.*,
  2001 U.S. Dist. LEXIS 797 (S.D.N.Y. Jan. 30, 2001).............................................................4

*Ferraro v. Sec'y of U.S. HHS*,
  780 F. Supp. 978 (E.D.N.Y. 1992) .........................................................................................5

*Flanagan v. Islamic Republic of Iran*,
  190 F. Supp. 3d 138 (D.D.C. 2016) ......................................................................................12

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*,
  2003 U.S. Dist. LEXIS 18531 (W.D.N.Y. Sept. 4, 2003) ......................................................5

*German ex rel. German v. Fed. Home Loan Mortg. Corp.*,
  896 F. Supp. 1385 (S.D.N.Y. 1995)......................................................................................11

*Green v. City of New York*,
  2006 U.S. Dist. LEXIS 77074 (E.D.N.Y. Oct. 23, 2006).......................................................5

*Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp.*,
  2021 U.S. Dist. LEXIS 88699 (S.D.N.Y. May 7, 2021)..........................................................9

*Harrison v. Republic of Sudan*,
  882 F. Supp. 2d 23 (D.D.C. 2012) ........................................................................................12

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*,
  2012 U.S. Dist. LEXIS 203375 (D. Conn. Dec. 27, 2012).....................................................6

*Hermes Int'l v. Rothschild*,
  590 F. Supp. 3d 647 (S.D.N.Y. 2022)...................................................................................10

*In re Air Crash near Nantucket Island*,
    2004 U.S. Dist. LEXIS 24983 (E.D.N.Y. Oct. 8, 2004) ......................................................14

*In re Automotive Parts Antitrust Litig.*,
    2013 WL 4784682 (E.D. Mich. Sept. 6, 2013) ...............................................................4

*In re Facebook, Inc.*,
    986 F. Supp. 2d 524 (S.D.N.Y. Mar. 7, 2014) ........................................................4, 7

*In re MTBE Prods. Liab. Litig.*,
    2008 U.S. Dist. LEXIS 47222 (S.D.N.Y. June 18, 2008) ................................................8

*In re: Terrorist Attacks on Sept. 11, 2001*,
    117 F. 4th 13 (2d Cir. 2024) ...........................................................................2, 9, 15

*In re World Trade Ctr. Disaster Site Litig.*,
    469 F. Supp. 2d 134 (S.D.N.Y. 2007) .......................................................................13

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990) .............................................................................7, 9

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996) .................................................................................3

*Martens v. Smith Barney*,
    238 F. Supp. 2d 596 (S.D.N.Y. 2003) .......................................................................5

*Owens v. Republic of Sudan*,
    864 F.3d 751 (D.C. App. 2017) .............................................................................11

*Pentacon BV v. Vanderhaegen*,
    2024 U.S. Dist. LEXIS 145296 (S.D.N.Y. Aug. 15, 2024) ...............................................4

*Rux v. Republic of Sudan*,
    461 F.3d 461 (4th Cir. 2006) ...............................................................................11

*SEC v. Credit Bancorp, Ltd.*,
    103 F. Supp. 2d 223 (S.D.N.Y. 2000) ..................................................................10, 11

*Transp. Workers Union of AM., Loc. 100, AFL-CIO v. N.Y.C. Transit Auth.*,
    358 F. Supp. 2d 347 (S.D.N.Y. 2005) .......................................................................4

*Weir v. Propst*,
    915 F.2d 283 (7th Cir. 1990) ..............................................................................5

*Youngers v. Virtus Inv. Partners Inc.*,
    228 F. Supp. 3d 295 (S.D.N.Y. 2017) ................................................................6, 7, 13

**Rules and Statutes**

Fed. R. Civ. P. 12 ................................................................................................1

18 U.S.C. § 1961 ................................................................................................1

18 U.S.C. § 2333 ................................................................................................1

28 U.S.C. § 1292(b) .......................................................................................*passim*

28 U.S.C. § 1330, 1602 *et seq.* ................................................................1, 8, 9, 11

28 U.S.C. § 1605(a)(5) .......................................................................................1

28 U.S.C. § 1605(a)(7) .................................................................................1, 2, 11

28 U.S.C. § 1605A ........................................................................................*passim*

28 U.S.C. § 1605A(c) .......................................................................................1

28 U.S.C. § 1605A(d) .......................................................................................1

28 U.S.C. § 1605B ......................................................................................1, 2, 11

Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, tit. XVII, 134
    Stat. 3291 (2020) ................................................................................14

**Other Authorities**

162 Cong. Rec. S2845-01 (daily ed. May 17, 2016) .................................................11

## PRELIMINARY STATEMENT

Plaintiffs are individuals killed or injured in the September 11, 2001 attacks, their families, and insurers that incurred billions of dollars in losses from the attacks. Plaintiffs filed suit against the Republic of the Sudan ("Sudan") beginning in 2002, and sought to recover against Sudan for providing material support to al Qaeda in the years leading up to the September 11th attacks. Sudan failed to participate in the proceedings for 18 years, and this Court entered several defaults against Sudan. In 2020, Sudan belatedly appeared in the litigation, assuring this Court that it was prepared to fully participate in the proceedings. On that basis, the district court vacated the defaults and approved the filing of two new consolidated amended complaints against Sudan. *See* ECF Nos. 6537, 6539. The operative pleadings assert jurisdiction pursuant to the exceptions to sovereign immunity set forth in 28 U.S.C. §§ 1605A, 1605(a)(5), 1605(a)(7), and 1605B, and substantive claims pursuant to § 1605A(c) and § 1605A(d); the Anti-Terrorism Act, 18 U.S.C. § 2333; state law; and Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, among others. Sudan moved to dismiss arguing, in relevant part, that it was immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330, 1602 *et seq.*, and that the Court lacked subject matter jurisdiction. *See* ECF No. 6575.

On August 10, 2023, this Court issued a Memorandum Decision and Order denying Sudan's motion to dismiss on sovereign immunity grounds and broadly rejecting Sudan's Rule 12(b)(6) challenges to Plaintiffs' substantive causes of action, and directing that Plaintiffs' cases could proceed to discovery on the merits. *See* ECF No. 9278. Sudan sought to appeal the August 10, 2023 Order without any certification from this Court, claiming that it was entitled to pursue an interlocutory appeal under the collateral order doctrine. *See* ECF No. 9336. Plaintiffs moved to dismiss the appeal, asserting that the statutory regime applicable to the claims against Sudan stripped it of the right to an interlocutory appeal under the collateral order doctrine.

On September 3, 2024, the Second Circuit dismissed Sudan's interlocutory appeal. *In re: Terrorist Attacks on Sept. 11, 2001,* 117 F. 4th 13, 28 (2d Cir. 2024). The Second Circuit held that the "appellate bar" set forth in "§ 1605A(f) applies to Sudan's appeal and renders the collateral-order doctrine inapplicable," and thus required dismissal of Sudan's appeal. *Id.* at 22. In reaching that decision, the Second Circuit squarely rejected Sudan's claim that precluding it from obtaining interlocutory review of this Court's Order would undermine principles of international comity and deprive Sudan of benefits that foreign sovereign immunity is intended to bestow. According to the Second Circuit, "[t]hose foreign states that refrain from sponsoring terrorism need not be concerned about the loss of sovereign immunity and its attendant benefits." *Id.* at 28.

Nearly five months after the Second Circuit dismissed its appeal, and eighteen months after the Order from which it seeks to appeal, Sudan now belatedly moves to amend the August 10, 2023 Order, requesting certification under 28 U.S.C. § 1292(b). In its motion for certification, Sudan seeks authorization to appeal essentially all issues addressed in the August 10, 2023 Order, including (1) whether Plaintiffs' claims satisfy the exceptions to sovereign immunity set forth in § 1605A, its predecessor § 1605(a)(7), and § 1605B; (2) whether the § 1605A claims in numerous distinct actions are timely under the 2008 National Defense Authorization Act; and (3) whether Plaintiffs' allegations are sufficient to state claims under the myriad causes of action asserted in the complaints. *See* ECF 10688 at 2.

Sudan's half-hearted suggestion that this sprawling scope of issues is somehow suitable for certification under § 1292(b) is bewildering. Sudan's motion does not even attempt to identify with any precision the purported questions of law encompassed within these categories, much less argue how each such legal issue meets the standard for certification. To the extent Sudan's motion even bothers to engage the governing elements, it offers only drive-by arguments that isolated issues

within the scope of its expansive proposed appeal satisfy some requirement of the test. *Id.* at 5 ("*for example*, the proper causation standards and whether Plaintiffs may assert § 1605A as a basis for jurisdiction, are 'pure' questions of law") (emphasis supplied). Sudan's approach is both disingenuous and facially deficient.

For the limited issues that Sudan's motion feebly attempts to address under the relevant standards, such as its arguments about "causation," Sudan manifestly fails to satisfy the requirements for certification, and its motion is in any case untimely. The motion should be denied.[1]

## LEGAL ANALYSIS

### I.    Interlocutory Review is Extraordinary and Disfavored Relief.

"It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863 (2d Cir. 1996). Section 1292(b) authorizes the district court to certify an order for interlocutory appeal only in *exceptional circumstances*. Under § 1292(b), a court may grant certification if an order "involves a controlling question of law as to which there is a substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ." 28 U.S.C. § 1292(b).

---

[1] Sudan has a well-documented history of belatedly appearing in litigation arising from its terror-support activities for purposes of litigating dubious legal defenses – including the very causation defense it seeks to pursue via interlocutory appeal here – and then defaulting when compelled to engage in discovery. Despite Sudan's assurances that it will participate in discovery while its proposed appeal is proceeding, this record indicates a substantial likelihood that Sudan would attempt to delay and otherwise frustrate discovery in the event it were permitted to pursue an appeal at this time, in the hope of "buying time" to litigate its legal defenses to the Second Circuit before it is required to respond fully to discovery. Indeed, the discovery proposal Sudan submitted to the Court suggests this strategy. In particular, Sudan's proposal contemplated that it would not be required to "substantially complete[]" its document production within "approximately 12 months." *See* ECF 10675 at 4. Sudan caveated this proposed lengthy timeline by indicating that it would "do[] its best to comply with discovery obligations notwithstanding the ongoing" conflict in the country, and forecasting "logistical challenges that likely will arise" from the circumstances on the ground. *Id.* Collectively, these statements reflect an effort to defer the heart of discovery as long as possible, as Sudan would be litigating its proposed appeal. This apparent strategy should not be countenanced.

To invoke § 1292(b), the moving party bears the burden of demonstrating that the criteria for certification are met. *See Casey v. Long Island R.R. Co.*, 406 F.3d 142, 146 (2d Cir. 2005). "The statute must be strictly construed and 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Colon v. BIC USA, Inc.*, 2001 U.S. Dist. LEXIS 797, at *2 (S.D.N.Y. Jan. 30, 2001) (citations omitted). Even if the moving party satisfies its burden, "district courts have 'unfettered discretion to deny certification' if other factors counsel against it." *Pentacon BV v. Vanderhaegen*, 2024 U.S. Dist. LEXIS 145296, at *14 (S.D.N.Y. Aug. 15, 2024) (citing *Transp. Workers Union of AM., Loc. 100, AFL-CIO v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005)). "The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b)." *In re Facebook, Inc.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. Mar. 7, 2014). Courts exercising this discretion can consider any factor, including "docket congestion" and "the system-wide costs and benefits of allowing the appeal." *Id.* at 530 (citations omitted). Courts presiding over MDLs regularly deny motions in this context. *See id.*; *In re Automotive Parts Antitrust Litig.*, 2013 WL 4784682, at *4 (E.D. Mich. Sept. 6, 2013) (holding judicial economy interests weigh against interlocutory appeal in multi-district litigation). The Court's denial of Sudan's motion to dismiss does not present an exceptional situation warranting certification here.

## II.    This Court Should Decline to Certify Its August 10, 2023 Order for Interlocutory Appeal.

### A.    Sudan's Motion is Untimely.

Sudan seeks certification under § 1292(b) nearly eighteen months after this Court denied its motion to dismiss, and nearly five months after the Second Circuit dismissed its appeal of that order. Sudan's delay in seeking interlocutory relief defeats its motion.

Underscoring the stringent timing requirements applicable to a request for interlocutory appeal, § 1292(b) provides that a motion for leave to appeal must be filed with the Court of Appeals within ten days after the district court issues an order approving interlocutory appeal. Although the statute does not expressly provide a time limit for the moving party to seek certification in the district court, it is well-settled that a party seeking interlocutory review cannot unreasonably delay its application. Courts within this Circuit find that delays of as little as two months are unreasonable for purposes of § 1292(b). *See, e.g.*, *Ferraro v. Sec'y of U.S. HHS*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992) ("plaintiff's two and a half month delay is an indication that the saving of time is of little concern in this case") (citing *Weir v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990) (holding "[t]he ten day limitation in section 1292(b) is not to be nullified by promiscuous grants of motions to amend"); *Martens v. Smith Barney*, 238 F. Supp. 2d 596 (S.D.N.Y. 2003) (finding five month delay in seeking certification untimely); *see also Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*, 2003 U.S. Dist. LEXIS 18531 (W.D.N.Y. Sept. 4, 2003) (finding nine month delay in seeking certification untimely, particularly where parties engaged in substantial activity on docket with no reference to intent to seek interlocutory review).

Sudan contends that it has acted within a reasonable time from issuance of the Second Circuit's mandate, and discounts the fact that the original order from which it seeks to appeal was entered nearly a year and a half ago. Sudan cannot benefit from its wrongminded appeal to the Second Circuit to excuse its delayed filing. To the contrary, courts evaluate reasonableness from the entry of the original order, and hold the filing of another motion does not extend the period in which a party can seek certification. *See Green v. City of New York*, 2006 U.S. Dist. LEXIS 77074, at *6 (E.D.N.Y. Oct. 23, 2006) (finding two month delay unjustified and explaining "time limits in section 1292(b) may not be circumvented by the facile device of asking for reconsideration of

the order sought to be appealed under that section"); *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, 2012 U.S. Dist. LEXIS 203375 (D. Conn. Dec. 27, 2012) (finding three month delay from denial of motion for reconsideration and nine month delay from original ruling untimely). Further still, even measured from the date of the Second Circuit's decision, Sudan's five-month delay from the date of that ruling renders Sudan's motion untimely in any case.

Sudan's claim that the ongoing internal conflict and strife in Sudan entitles it to leniency is similarly unpersuasive. In fact, that conflict was ongoing when Sudan filed its defective appeal, and when Sudan opposed and argued its motion to dismiss that appeal in the Second Circuit. Sudan's active participation in those proceedings refutes its present claims that it was unable to comply with the procedural requirements for seeking certification. Further, counsel for Sudan did not raise any issue with this Court concerning its ability to file a motion for certification during the eighteen-month period after issuance of this Court's August 10, 2023 Order, or in the five months following the Second Circuit's decision dismissing Sudan's appeal. Stated simply, Sudan's after-the-fact attempts to excuse its inaction based on the conflict in Sudan are not credible, and insufficient in any case to overcome the clear untimeliness of its motion.

**B.**     **The August 10, 2023 Order Does Not Involve a Controlling Question of Law.**

Sudan's motion principally argues that this Court's causation determinations in the August 10, 2023 Order meet the requirements for certification. However, these issues are not "controlling questions of law" within the meaning of § 1292(b) and Sudan thus fails to satisfy the statute's first substantive requirement.

Section 1292(b)'s first requirement has two elements: the issue must involve a "pure" question of law, and that "pure" question of law must be a controlling one. In the context of § 1292(b), a "'question of law' . . . refer[s] to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Youngers v. Virtus Inv.*

*Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017) (citations omitted). A question of law is "controlling" within the meaning of § 1292(b) if reversal of the court's holding would terminate the litigation. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria,* 921 F.2d 21 (2d Cir. 1990).

Sudan sidesteps the foundational requirement that the issues present "pure" questions of law by focusing on whether those issues are potentially "controlling." In so doing, Sudan ignores that certification is not appropriate where the relevant order involves a "mixed question of law and fact." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371-72 (S.D.N.Y. 2008) (denying certification where issues presented on appeal would require appellate court to review application of law to the evidence); *In re Facebook, Inc.*, 986 F. Supp. 2d at 536 (denying motion for certification where holding entailed a "fact-specific inquiry").

Here, the causation arguments Sudan principally seeks to pursue through an interlocutory appeal are not "pure" legal questions within the meaning of § 1292(b). While it may be correct that the legal standard governing the jurisdictional causation inquiry is itself a (well-settled) question of law, Sudan's arguments for interlocutory appeal necessarily depend on seeking appellate review not only of the governing legal standard, but also as to the sufficiency of Plaintiffs' factual showing under the applicable standard.[2] Indeed, Sudan's speculative claims that an appeal could resolve the litigation depend on appellate review encompassing the factual assessment. *See* ECF No. 10688 at 7. Such a fact-based causation inquiry is not a proper subject of § 1292(b) certification. *See, e.g.*, *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 2023 U.S. Dist. LEXIS 112226, at *53 (S.D.N.Y. June 29, 2023) (finding no pure question of law for purposes of

---

[2] The Court's determinations as to whether other elements of the FSIA's terrorism and tort exceptions also require assessments of the factual record. Thus, even aside from the causation element, other aspects of the sovereign immunity determinations in the Court's Order do not involve "pure" questions of law.

§ 1292(b) where findings of loss causation and economic loss require "application of law to the unique set of facts pled"); *In re MTBE Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 47222, at *8 (S.D.N.Y. June 18, 2008) (denying interlocutory review where causation theory required study of complex and voluminous record).

The district court's rulings here underscore that the jurisdictional causation analysis in this case involves factual assessments relating to decades of state support of al Qaeda and the relationship between Sudan and al Qaeda's strike capability. As reflected in those rulings, the operative pleadings are lengthy and incorporate by reference numerous CIA and State Department reports, among other authoritative sources. This Court's well-reasoned analyses of causation (as set forth in the Report and Recommendation and adopted in the Order) carefully surveyed the program of state support reflected in the lengthy pleadings and incorporated documents, and assessed the sufficiency of those facts for purposes of both jurisdiction and Plaintiffs' substantive causes of action. *See* ECF No. 7942 at 8-15, 20-23, 38-43. This fact intensive inquiry is plainly not a "pure" question of law.

Further, Sudan's own causation arguments themselves rely on dubious interpretations of statements from the 9/11 Commission Report, a nearly 600 page document. Courts have recognized that Sudan's arguments relating to Osama bin Laden's departure are not credible when weighed against the evidence as a whole, *see infra* § II.C, and those courts' analyses underscores that any treatment of Sudan's causation arguments requires engagement with the record in its entirety. These issues are not pure questions of law within the meaning of § 1292(b).

The cases Sudan cites to support its position are readily distinguishable. In *Consub Delaware LLC v. Schahin Engenharia Limitada,* the court held that the narrow issue of whether electronic fund transfers are property subject to attachment is an issue of law that does not require

a study of the record. 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007). In *Bolivarian Republic of Venez v. Helmerich & Payne International Drilling Co.*, 581 U.S. 170 (2017), the Supreme Court did not address the standard for interlocutory review, but addressed the § 1605(a)(3) exception to FSIA immunity. In that context, the Supreme Court recognized that the parties had stipulated to all relevant facts, and thus the issue of foreign sovereign immunity was "purely a legal one"; but that it is necessary to satisfy factual prerequisites to FSIA exceptions before assuming jurisdiction. *Id.* at 187. In *Klinghoffer*, *supra*, 921 F.2d at 24 and *Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp.*, 2021 U.S. Dist. LEXIS 88699 (S.D.N.Y. May 7, 2021), the respective courts interpreted what qualifies as a "controlling" question of law, and did not address mixed issues of law and fact.

Further still, Sudan's arguments that adverse sovereign immunity determination meet the requirements for certification are at odds with § 1605A(f)'s appellate bar. At base, Sudan claims that issues of subject matter jurisdiction under the FSIA necessarily qualify as questions of "controlling law" within the meaning of § 1292(b). This conclusory claim ignores that this Court's sovereign immunity determinations as to Sudan do not involve "pure" questions of law, and that the causation issue Sudan proposes to raise is itself a mixed question of fact and law. Perhaps more fundamentally, however, Sudan's arguments would effectively negate the appellate bar Congress established through § 1605A(f). As the Second Circuit recognized, Congress enacted § 1605A to clear away a number of legal obstacles that had stifled terrorism victims' efforts to obtain relief from state sponsors of terrorism. *See In re Terrorist Attacks on Sept. 11, 2001*, 117 F.4th at 21. The appellate bar established by § 1605A(f) was a key part of Congress's design "to grant victims of terrorism greater rights and remedies against state sponsors of terrorism." *Id.* at 27. However, by claiming that adverse immunity determinations necessarily qualify as "pure" and "controlling"

questions law warranting certification under § 1292(b), Sudan's arguments would effectively eradicate the very benefit § 1605A(f) was enacted to confer. This view cannot be correct.

Sudan's brief also makes a conclusory claim that its challenge to the timeliness of certain Plaintiffs' § 1605A claims involve a "pure" question of law, but Sudan makes no effort to suggest that they are "controlling" questions as required by § 1292(b). In fact, this issue concerns only to a subset of Plaintiffs' substantive law claims against Sudan. Indeed, an appellate ruling as to that issue would have no bearing on Plaintiffs' claims against Sudan under state law, the Anti-Terrorism Act, RICO, or other theories. As such, Sudan's novel arguments about the timeliness of certain § 1605A claims plainly do not involve a "controlling" question that could result in termination of the litigation.

### C.        There is No Substantial Ground for Difference of Opinion.

The second condition for certification is a "substantial ground for difference of opinion" on the proposed question of law. *See* 28 U.S.C. § 1292(b). The party seeking certification "must do more than just 'claim that the court's ruling was wrong' or point to modest disagreement between different courts on an issue in dispute." *Hermes Int'l v. Rothschild*, 590 F. Supp. 3d 647, 651 (S.D.N.Y. 2022) (citations omitted). Courts in this district have construed § 1292(b) "to require [not] just moderate disagreement among courts," but "entrenched and longstanding disagreement." *Id.* at 656 ("The legal issue designated for review should be so central to the disposition of the case, and dispute on it so entrenched and longstanding, that proceeding with the case any further without immediate appellate review would be a waste of judicial resources"). This is a high burden, and courts have cautioned against treating certification as "a 'vehicle to provide early review of difficult rulings in hard cases.'" *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223,

226 (S.D.N.Y. 2000) (quoting *German ex rel. German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

Sudan seeks to establish "substantial grounds for difference of opinion" by rehashing arguments it previously advanced, which were already summarily rejected by this Court and the Second Circuit in several aspects of this MDL. In the May 3, 2022 Report and Recommendation, adopted by this Court in the August 10, 2023 Order, Judge Netburn resolved the issues of jurisdictional causation, stating that "[t]he law of the case doctrine in this MDL, supported by years of precedent, shows that only proximate, not but-for, causation is required. . . . In this MDL, the law of the case is that § 1605(a)(7), § 1605A, and § 1605B require only proximate causation. . . . This holding relied on prior cases finding that jurisdictional causation for § 1605(a)(7) was similarly satisfied by proximate causation." ECF 7942 at 7.[3] Sudan's effort to rehash the argument it previously made (unsuccessfully) to several other courts based on references to "similar causation language in other statutes" does not support interlocutory review of issues that are well-settled in the FSIA context, including in this case. *See* ECF 10688 at 10.

Moreover, numerous courts have also rejected Sudan's factual argument that Osama bin Laden's departure from Sudan in 1996 somehow breaks the chain of causation. Indeed, and as Sudan is well aware, every Court that has considered this issue under § 1605A has rejected Sudan's arguments on this precise point. *See, e.g.*, ECF No. 7942 at 18; *see also Owens v. Republic of Sudan*, 864 F.3d 751, 796-97 (D.C. App. 2017) ("Sudan ignores the broader context of its actions"; "[W]e do not believe Sudan broke the chain of proximate causation by completely disassociating

---

[3]As this Court has recognized, JASTA's legislative history further confirms that the causation analysis set forth in these prior rulings governs for purposes of § 1605B. *See* 162 Cong. Rec. S2845-01 (daily ed. May 17, 2016) (statement of Sen. John Cornyn) ("Th[e] ['caused by'] language, which requires a showing of jurisdictional causation, is drawn from decisions of Federal courts interpreting [the FSIA's terrorism exception]. Courts interpreting [JASTA] should look to cases like *Kilburn, Rux,* and *Owens*, the analysis of which we intend to incorporate here.").

itself from al Qaeda in or after 1996,"); *Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138, 177-78 (D.D.C. 2016) ("Sudan fails to show that he link between Sudan's support for Al-Qaeda and the U.S.S. Cole bombing was unforeseeable or so attenuated as to constitute fortuity. . . . on its own, the support Sudan provided while Bin Laden and Al-Qaeda were afforded a safe haven in Sudan suffices to show proximate cause . . . The record contains evidence that Sudan's provision of material support continued *after* Al-Qaeda and Bin Laden were formally expelled from the country") (emphasis in original); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 33 (D.D.C. 2012) ("Sudan's support of Al Qaeda continued after Bin Laden's 1996 departure until at least the Cole bombing. . . . As of 2000 support 'included the provision of travel documentation, safe passage, and refuge'"); *Rux v. Republic of Sudan*, 461 F.3d 461, 474 (4th Cir. 2006) (holding it is "not fatal for purposes of jurisdictional causation" that allegations against Sudan did not "chart a direct and unbroken factual line"). The fact that Sudan continues to disagree with these rulings is not sufficient to prove a "substantial ground for difference of opinion" under § 1292(b).

Sudan fares no better in its efforts to shoehorn its arguments concerning the timeliness of certain Plaintiffs' § 1605A claims into § 1292(b), based on its claim that the interpretation of the "related action" provision of § 1083(c)(3) presents "an issue of first impression." The fact that no court of appeals has addressed the interpretation of § 1083(c)(3) in a case *involving Sudan* does not render the legal issue one of first impression, or evidence substantial grounds for disagreement, for purposes of interlocutory review. *See* ECF 7942 at 23-29.

### D.    An Immediate Appeal Will Not Materially Advance the Litigation.

Sudan also fails to prove the third condition for interlocutory review, which is that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This condition is met where interlocutory review "promises to

advance the time for trial or shorten the time required therefor." *Youngers v. Virtus Inv. Partners, Inc.*, 228 F. Supp. 3d 295, 302 (S.D.N.Y. 2017) (citations omitted).

Sudan's claim that interlocutory review "may terminate these actions entirely" oversimplifies the issues before the Court. This argument is purely speculative and relies on the dubious theory that Sudan is likely to succeed on arguments that have been considered and rejected by numerous courts, including two judges in this MDL. Further, even if Sudan could convince the Second Circuit that this Court and numerous other courts have all applied the wrong jurisdictional causation standard, reversal of this Court's rulings on this point would not terminate the litigation, as Sudan claims. To the contrary, the most likely result in that case would be a remand with instructions for this Court to assess jurisdictional causation under the revised standard.

The fact that discovery would proceed in parallel to Sudan's proposed appeal further confirms that an interlocutory appeal would not materially advance the litigation or promote efficiency. As Sudan acknowledges, the parties submitted a proposed discovery plan to this Court. On February 4, 2025, the Court entered a preliminary discovery schedule which allows for ongoing written discovery and contemplates a further status conference on May 30, 2025. See ECF No. 10707. Thus, discovery will be largely if not entirely complete before any resolution of its proposed appeal. Under such circumstances, the Second Circuit would be considering the appeal on an incomplete and stale record, and subject to likely motions to supplement the record based on discovery, while the appeal is ongoing. The notion that discovery relevant to the causation arguments would proceed alongside a parallel appeal addressing the same issue, and that is likely to be denied, frustrates, rather than promotes, judicial efficiency. *See In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007) (recognizing review is not appropriate where it serves to "prolong judicial proceedings, add delay and expense to litigants,

burden appellate courts, and present issues for decisions on uncertain and incomplete records"); *In re Air Crash near Nantucket Island*, 2004 U.S. Dist. LEXIS 24983, at *4 (E.D.N.Y. Oct. 8, 2004) (declining to certify interlocutory appeal in multidistrict litigation where proceedings "encompass[] claims brought by parties who were not subject to the Court's Order . . . [and] the issues underlying their claims would still need to be litigated by the same parties . . ."). Judicial efficiency weighs in favor of reserving all appeals until a final judgment has issued.

Finally, Sudan's suggestion that "grace and comity" warrant immediate interlocutory review is also misplaced. In support of its claim that it is entitled to swift relief, Sudan cites the debilitating crisis in Sudan, as well as the fact that Sudan is no longer designated as a state sponsor of terrorism. The fact that the parties are engaged in the initial phases of this case nearly twenty years after it was filed is attributable in large part to Sudan's own failure to appear in the litigation. If Sudan had not deliberately ignored the litigation for over fifteen years, these predicate issues of sovereign immunity would have been before the Court years ago, before the country became embroiled in a civil war. Moreover, both Congress and the Second Circuit have rejected Sudan's efforts to avoid the consequences of its country's historical support for terrorist initiatives by distancing itself from its designation as a state sponsor of terrorism. In enacting § 1605A, Congress specifically directed that Sudan would be treated as a state sponsor of terrorism for purposes of this litigation. See Sudan Claims Resolution Act, Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, tit. XVII, 134 Stat. 3291 (2020). The Second Circuit previously rejected the same comity concerns on Sudan's defective appeal, finding that the interests of American citizens in "deter[ring] future state-sponsored terrorism" should be elevated above the principles of international comity, and "[t]hose foreign states that refrain from sponsoring terrorism need not be

concerned about the loss of sovereign immunity and its attendant benefits." *In re Terrorist Attacks on Sept. 11, 2001*, 117 F.4th at 28.

### **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court decline to certify its August 10, 2023 Order for interlocutory appeal.

Dated:  February 12, 2025                    Respectfully submitted,

_____
Sean P. Carter, Esq.
Scott Tarbutton, Esq.
Abby J. Sher, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 665-2000

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel: (843) 216-9000

Steven R. Pounian, Esq.
Andrew J. Maloney, III, Esq.
James G. Simpson, Esq.
KREINDLER & KREINDLER, LLP
485 Lexington Avenue, 28th Floor
New York, NY 10017
Tel: (212) 804-6935

Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
7 Times Square, 15th Floor
New York, NY 10036
Tel: (212) 278-1000

Edward M. Pinter, Esq.
Janine A. Balzofiore, Esq.
FORD MARRIN ESPOSITO WITMEYER
& GLESER, LLP
Wall Street Plaza, 16th Floor
New York, NY 10005
Tel: (212) 269-4900

Noel J. Nudelman, Esq.
HEIDEMAN, NUDELMAN & KALIK,
P.C.
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
Tel: (202) 463-1818

Dorothea M. Capone, Esq.
BAUMEISTER & SAMUELS, P.C.
140 Broadway
New York, NY 10005
Tel: (212) 363-1200

Jeanne M. O'Grady, Esq.
SPEISER, KRAUSE, NOLAN &
GRANITO
140 East 45th Street
New York, NY 10017
Tel: (212) 661-0011

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of Plaintiffs' Memorandum of Law in Opposition to the Republic of the Sudan's Motion for Certification of an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), was filed electronically this 12th day of February 2025. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

Scott Tarbutton, Esq.

LEGAL\75491935\1

17