UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

## PLAINTIFFS' OPPOSITION TO
## SAUDI ARABIA'S RULE 72(a) OBJECTIONS

The Rule 72(a) Objections filed by Defendant Kingdom of Saudi Arabia ("Saudi Arabia"), ECF No. 10691, rehash the same arguments for a third time and are without merit. Judge Netburn's December 11, 2024 Opinion & Order ("Order"), ECF No. 10615, reaffirmed in relevant part by her January 31, 2025 Opinion & Order ("Reconsideration Order" or "Rec. Order"), ECF No. 10694, denying Saudi Arabia's motion for reconsideration, excluded the testimony of Marc Sageman — including Sageman's rebuttal opinions on communications tradecraft and phone records analysis — on entirely proper grounds. Sageman remains, as Judge Netburn correctly held:

- unqualified to provide many of his opinions on the "vast array of topics" as to which he claimed to be an expert, Order at 56;[1]

- specifically unqualified to "draw conclusions from phone records," since evidence of his experience with "communications analysis" was "lack[ing]," *id*. at 48;

---

[1] The record showed that Sageman has peddled professional witness services across a range of sectors: initially as a psychiatric doctor offering medical expertise in tort cases during the 1990s; and since 2005 as a forensic psychiatrist hired to provide expert opinions on the sentencing of individuals convicted of terrorist acts. ECF No. 9092 at 16-17. In terror-related cases, Sageman evaluated defendants and developed his own unique hypothesis that those involved in terrorism tend to be dangerous only for the limited window of time they are engaged in carrying out the act. *Id*. & n. 21. In the single reported instance where a district court relied on Sageman's testimony to reduce a sentence, its determination was vacated and remanded by the Second Circuit. *U.S. v. Ceasar*, 388 F.Supp.3d 194 (E.D.N.Y. 2019), vacated and remanded, 10 F. 4th 66 (2d Cir. 2021), *cert. denied*, 142 S.Ct. 2841 (2022). In *Ceasar*, Sageman testified that the terror defendant posed "no risk of violence," 388 F.Supp.3d at 214, but the Second Circuit rejected Sageman's opinion, finding that the defendant had "recidivist tendencies" and made "attempts to cover up her conduct by deleting incriminating material and lying to law enforcement authorities." 10 F.4th at 74-75.

1

- unreliable and untrustworthy, presenting opinions based on selective citations, speculation, and ipse dixit, *id*. at 56; and

- "an advocate," not an expert, who "offers an improper factual narrative" of Saudi Arabia's theory of the case, *id*. at 55-56.

The combination of these "fundamental issues" proved "collectively fatal" to Sageman's testimony, which the Court found "had little use to begin with." *Id*. at 56; *see* Rec. Order at 3.

Saudi Arabia did not raise Rule 72(a) objections to the large majority of Judge Netburn's findings excluding Sageman's testimony. Saudi Arabia has thus conceded as controlling the thrust of Judge Netburn's Order concerning Sageman, i.e. that he was unqualified to offer opinions across most of the topics he addressed, and that the narrative he constructed was too unreliable and untrustworthy to pass as expert opinion. But Saudi Arabia has persisted in its effort to rehabilitate Sageman on two topics it claims are an exception: communications tradecraft and phone records analysis. That effort at a carve-out is unfounded.

The Reconsideration Order reviewed and rejected the same arguments Saudi Arabia now recycles in its Objections. Judge Netburn found that Saudi Arabia "misse[d] the larger point" regarding the exclusion of Sageman: that his "entire testimony" was "too infected" to survive. Rec. Order at 3. The "fundamental issues" that "so plague Sageman's testimony" included "[s]peculation, *ipse dixit*, and state-of-mind commentary," as well as Sageman merely offering "an improper factual narrative" that amounted to "nothing more than a '700-page summary of the Defendants' theory of the case.'" *Id*. at 3 (quoting Order at 55, 56).

In declining to reconsider Sageman's proposed opinions on communications tradecraft, Judge Netburn expressly found that "Sageman's tradecraft testimony reflects the very reliability and narrative-building concerns that sit at the heart of the Court's decision to exclude his testimony." *Id.* Having previously highlighted *only two* of Sageman's various "barbs" against Plaintiffs' expert Youssef as examples of Sageman's "advocacy," the Reconsideration Order

2

enumerated a *further three* such jibes, each of them derived directly from Sageman's purported "tradecraft testimony." With examples so replete, Judge Netburn properly concluded that such "advocacy" would be "best 'reserved for [Saudi Arabia's] statements of fact and memoranda of law'." *Id.* at 3-4.

Judge Netburn also lent ample consideration to Sageman's claimed experience and found that he was unqualified to testify about communications analysis. *Id.* at 4. The Reconsideration Order repeated the Court's observation from its original Order that when "pressed on the details" of his "communications analysis expertise" Sageman "declined to provide specifics" and instead mustered only vague, generic answers that "hardly evince[]" the required Rule 702 standard of "superior knowledge, education, experience, or skill." *Id.*; *see also* Order at 47.

Finally, Judge Netburn rejected Saudi Arabia's arguments that the Court "overlooked" Sageman's experience as a CIA case officer in the 1980s and as a part-time consultant to the U.S. Army in the 2010s. The Reconsideration Order stated that "the Court did not fail to consider relevant information," but rather it had "considered the information it had about Sageman's experience, including the information Saudi Arabia contends it 'overlooked,' and concluded that such experience was not sufficient to find Sageman qualified to testify about communications analysis." *Id.* at 6.

## STANDARD OF REVIEW

Fed. R. Civ. P. 72(a) provides that this Court "must consider timely objections" made by a party to a pretrial order of a magistrate judge and "modify or set aside any part of the order that is clearly erroneous or is contrary to law."

3

## SAUDI ARABIA'S RULE 72(a) OBJECTIONS ARE
## WITHOUT MERIT AND SHOULD BE OVERRULED BY THIS COURT

### A. The Magistrate Judge properly found that Sageman lacked the relevant and necessary qualifications to render expert opinions on communications tradecraft and analysis

Judge Netburn properly determined that Sageman "has not met his burden of showing he is qualified" in communications analysis, Order at 47, and failed to demonstrate the level of expertise required by Fed. R. Evid. 702. *Id.*; Rec. Order at 5. As the Court found, Sageman was unable "to provide specifics" to support his claim to have conducted communications analysis, despite being "pressed on the details at deposition." Order at 47, citing ECF No. 9166-2 at 5:12-15 (when asked "[c]an you be specific as to any investigations in which you've used communications analysis," Sageman testified: "I can't."); Rec. Order at 5. The Court observed that Sageman initially declined to answer whether he was an expert on communications analysis ("Sageman admitted that he is 'not really sure what you mean by 'expert'"), and then offered up a conclusory assertion ("[i]n terms of my experience and skills, I've used it") — all the while without providing a single example to back it up. Rec. Order at 5, citing ECF No. 9166-2 at 5:7-10, 12-15.

The following undisputed facts in the record support Judge Netburn's determination:

- Sageman's CV contains *no* mention of *any* background or expertise related to communications analysis or phone calls evidence, ECF No. 9166-1;[2]

- Sageman had no training in communications analysis, ECF No. 9270-10 at 20:4-12;

- Sageman never previously conducted any investigations into the use of telephones by terrorist operatives and their associates, ECF No. 9166-2 at 8:20-24[3];

---

[2] Sageman's CV lists three principal topics of "special expertise" (political science, sociology and psychiatry), as well as 13 separate sub-topics (ranging from "Europe" to "trauma"). None relates even remotely to communications analysis.

[3] After admitting at his deposition that he did not conduct any investigations and declaring "I did not have to use investigation," Sageman added that some cases he had worked on "*might have* involved clandestine use of telephone[s], what we call trade craft." ECF No. 9166-2 at 9:1-4 (emphasis added). Saudi Arabia's continued reliance on this obtuse and nonspecific claim of Sageman, ECF No. 10691 at 2-3, citing ECF No. 10646 at 6, ECF

4

- nowhere in Sageman's 730-page report does he reference his CIA or part-time Army consulting experience as the basis for opinions on communications analysis or phone calls, ECF No. 10656 at 3-4;

- when asked about his consulting work for the Army, Sageman testified that it was "all classified," and he refused to discuss even the "categories of [communications] records" he purportedly analyzed, ECF No. 9270-10 at 19:10-24, 20:19-23;[4] and

- Sageman is unqualified to discuss "law enforcement investigations," "the FBI," and "FBI operations," Order at 47, the established fields in which communications analysis is conducted, especially when investigating terrorist plots. *See also* ECF No. 9092 at 25-26 ("Sageman is unfamiliar with both the methodology and the terminology used by law enforcement to investigate communications among participants in complex crimes").[5]

Judge Netburn acknowledged Sageman's experience of having used "communications tradecraft" as a CIA case officer when Sageman was deployed in the regions of the Pakistan-Afghanistan border in the 1980s. Order at 44, 47-48. But the Court properly found that Sageman never demonstrated (or even claimed) that his operational work in a distant war zone had any relevance to the analytical expertise required to opine on the relevant communications and phone calls evidence involving Thumairy, Bayoumi, and other Saudi government agents inside the U.S. Order at 47; Rec. Order at 5. Sageman himself did not mention his CIA work in his CV, report, or deposition as a basis for any of his communications opinions.[6]

---

No. 10662 at 3, only lends further support to Judge Netburn's finding that Sageman "has not met his burden of showing he is qualified" based on his uncertain background. Order at 47.

[4] Saudi Arabia continues to rely on its incorrect claim that Sageman's refusal to provide details was "[l]ike [Plaintiffs' expert] Youssef," ECF No. 10691 at 2-3, citing ECF No. 10646 at 6, when their respective circumstances are in fact quite different. Judge Netburn "easily dispensed with" Saudi Arabia's claim that Youssef relied on "classified" data because Youssef testified that "all my analysis is in my report" and – unlike for Sageman – the Court could "analyze[] the methodology evident within the four corners of [Youssef's] report." Order at 14-15. Evidence of Sageman's claimed expertise, by contrast, was "largely unavailable." Rec. Order at 5.

[5] Saudi Arabia does not object to the Order's finding that Sageman was not qualified to testify about FBI and other law enforcement investigations. Order at 47.

[6] Sageman not only conspicuously failed to explain how his CIA work could be related to his opinions, but himself claimed that the "only time in [his] career" that he did communications analysis was during his later stint as a part-time consultant to the Army, in the early 2010s. ECF No. 9270-10 at 20:13-16. The book excerpts belatedly added to the record by Saudi Arabia, *infra* at 5-6 & n. 7, confirm the lack of relevance of Sageman's CIA work and show that Sageman: "was posted to Islamabad the last two years of the Soviet Afghan war," ECF No. 9166-3 at 6; "worked in Pakistan during the 1980s, running frontline CIA contacts with… [Afghan] mujaheddin commanders," ECF No. 9166-7 at 609; and that "as a CIA case officer, he had accompanied mujaheddin rebels he armed and financed to the Afghanistan-Pakistan border." *Id.* at 610.

Had Sageman intended to rely on any genuine communications background to render his opinions on phone calls, he was required to set forth such expertise in his report. Fed. R. Civ. P. 26(a)(2)(B). He did not. Saudi Arabia cannot claim after the fact that Sageman based his opinions on qualifications that he failed to include in his own CV, reference in his report, or explain at his deposition. *See Sandata Tech., Inc. v Infocrossing, Inc.,* 2007 WL 4157163, *3-5 (S.D.N.Y. Nov. 16, 2007) (an expert report is assumed to be complete as of the date it was prepared and provides the opposing party with notice and preparation for cross-examination).

Nevertheless, Saudi Arabia improperly tried to supplement the record and to repair Sageman's lack of relevant experience in his report by citing to excerpts from two books first raised by Saudi counsel in their June 2023 *Daubert* opposition papers. ECF No. 10691 at 3-4.[7] Both books were published several years in advance of Sageman's 2021 report and 2022 deposition, and feature Sageman openly discussing his Army consulting work, directly undermining his deposition testimony that his Army work was "all classified," ECF No. 9270-10 at 19:17 — testimony which, at the time, served to shut down further cross-examination on the subject by Plaintiffs' counsel. Contrary to Saudi Arabia's reframing, ECF No. 10691 at 3-4, the book excerpts do not demonstrate relevant expertise in communications analysis and are highly ambiguous as to the work Sageman himself performed.[8]

---

[7] The first cited book excerpt is a journalist's account of work done by various international personnel in response to rising numbers of "insider killings" in Afghanistan in 2012, where Sageman, as an Army consultant, spent three months. Steve Coll*, Directorate S: The C.I.A. and America's Secret Wars in Afghanistan* and Pakistan (2018). KSA Exhibit 63, ECF No. 9166-7, omitted the footnotes to the excerpted chapter, which show that the author's account of what Sageman did in Afghanistan was reconstructed almost entirely from interviews with Sageman himself. *Id.*, footnotes to Chapter 33, "Homicide Division." The second cited book excerpt is the autobiographical introduction to a book written by Sageman himself. Marc Sageman, *Misunderstanding Terrorism* (2017). KSA Exhibit 59, ECF No. 9166-3, includes Sageman's own retelling of his part-time work as an Army consultant. *Id.*, at 16-18.

[8] Contrary to Saudi Arabia's characterization that Sageman engaged in "telephone communications analysis," ECF No. 10691 at 3, the book excerpts reveal that Sageman analyzed "photos," "transcripts," "field interviews" and statistics to reach his findings. ECF No. 9166-7 at 615-19; *see also* Coll, *Directorate S*, footnotes to Chapter 33, n.12 (footnote citing to Sageman's reflections on one of "several cases where video and photographic evidence from 'helmet cams' clarified with hard evidence what had and had not precipitated insider shootings.")

### B. The Magistrate Judge properly applied the *Daubert* standard to Sageman's proffered testimony and correctly found that Sageman's relevant opinions were unreliable, untrustworthy, unhelpful, and constitute an improper factual narrative

Saudi Arabia complains that "she [Judge Netburn] did not address whether Sageman's specific rebuttal opinions on clandestine communications techniques were reliable or admissible," ECF 10691 at 2. On the contrary, Judge Netburn did expressly address those opinions, finding: (1) that "Saudi Arabia's argument misses the larger point" that "Sageman's entire testimony, including his tradecraft testimony, is too infected to avoid a 'fatal' diagnosis"; and (2) that "Sageman's tradecraft testimony reflects the very reliability and narrative-building concerns that sit at the heart of the Court's decision to exclude his testimony." Rec. Order at 3, citing Order at 56.

Saudi Arabia does not and cannot demonstrate that Sageman applies any purported expertise in communications analysis to arrive at his conclusions. Instead, Saudi Arabia improperly seeks to substitute counsel's argument for Sageman's failure to fulfill the essential Fed. R. Evid. 702 requirements, which Sageman was required to include in his report under Fed. R. Civ. P. 26(a)(2)(B).

The Court reviewed Sageman's communications analysis and determined that he relied on speculation, *ipse dixit*, and improper factual narrative rather than an inquiry based on genuine experience. Order at 55-56; Rec. Order at 3. The Court found that Sageman improperly takes on "the role of an advocate" and "launches inflammatory attacks more appropriate to a high school debate than an expert report," citing various sections of Sageman's report in which he purported to rebut the phone analysis of Plaintiffs' expert Youssef. Order at 56 (quoting Sageman stating that "[m]y opinion with a high degree of certainty is that Youssef does not know what an analysis is, leading him to jump to erroneous conclusions."); Rec. Order at 3-4 (quoting additional

Sageman "barbs" on Youssef). Other examples provided by the Court included Sageman's speculation that "[i]t is not a stretch to assume" that phone calls were somehow related to the Ramadan holiday,[9] and *ipse dixit* that he "analyzed" certain calls (without providing any details) and determined that they "most likely dealt with a religious question that al-Bayoumi had." Order at 48.

The portions of Sageman's report cited throughout Saudi Arabia's Objections aptly encapsulate the problems of Sageman using speculation and his own say-so, and summarizing defense arguments rather than furnishing any helpful opinions rooted in his experience. Saudi Arabia insists that Sageman should be allowed to present "alternative, reasonable explanations," ECF No. 10691 at 3, but once again fails to acknowledge that the Court found Sageman unqualified to offer such opinions; rejected his musings regarding such alternative explanations as untrustworthy; and, concluded that the "curated narrative" in Sageman's report was not evidence, but rather argument that should be presented by defense counsel. Order at 56.

Saudi Arabia's final claim is that its unqualified expert Sageman should be allowed to offer "rebuttal" to the testimony of Plaintiffs' qualified communications expert Youssef. ECF No. 10691 at 4, citing ECF No. 10646 at 12-13.[10] Saudi Arabia's argument ignores that Sageman was properly excluded because he lacked basic qualifications and failed to offer reliable, helpful testimony. Like all experts, "rebuttal experts must meet *Daubert's* threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and

---

[9] Further, Saudi Arabia does not object to Judge Netburn's finding that Sageman was unqualified to testify regarding Islam. Order at 46. Thus, along with his other flaws, it is undisputed that Sageman has no expert knowledge to offer opinions, as Saudi Arabia suggests, regarding what Sageman claimed was an "increased number of calls…between observant Muslims during the holy month of Ramadan…." ECF No. 10691 at 4.

[10] In contrast to Sageman, Judge Netburn found that "Youssef's distinguished career as an FBI agent and his undisputed experience in subjects directly or closely related to those at issue here… justify finding him qualified to testify about communications analyses and counterterrorism investigations." Order at 14. Saudi Arabia does not raise any objection to the Order's findings regarding Youssef.

relevance of the testimony." *Scott v. Chipotle Mexican Grill, Inc*., 315 F.R.D. 33, 44 (S.D.N.Y. 2016); *see also In re M/V MSC FLAMINIA*, No. 12-cv-8892 (KBF), 2017 WL 3208598, at *22-23 (S.D.N.Y. July 28, 2017) (rebuttal expert may not provide opinions "in areas beyond his expertise" or be used as "an aggregator" or "mouthpiece" for a party's arguments). The case cited by Saudi Arabia involves a clearly distinguishable situation. *E.E.O.C. v. Morgan Stanley*, 2004 WL 1542264, at *2 (S.D.N.Y. July 8, 2004) (court allows "highly relevant" and "reliable" expert testimony).

## CONCLUSION

Saudi Arabia's Rule 72(a) objections are without merit and should be overruled by this Court.

Dated: February 28, 2025

Respectfully submitted,

| | |
|---|---|
| MOTLEY RICE LLC | COZEN O'CONNOR |
| By: /s/ Robert T. Haefele | By: /s/ Sean P. Carter |
| ROBERT T. HAEFELE | SEAN P. CARTER |
| JODI WESTBROOK FLOWERS | J. SCOTT TARBUTTON |
| DONALD A. MIGLIORI | One Liberty Place |
| 28 Bridgeside Boulevard | 1650 Market Street, Suite 2800 |
| Mount Pleasant, SC 29465 | Philadelphia, Pennsylvania 19103 |
| Tel.: (843) 216-9184 | Tel.: (215) 665-2105 |
| Email: rhaefele@motleyrice.com | Email: scarter1@cozen.com |
| *Liaison Counsel and Co-Chairs of Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs* | *Co-Chair and Liaison Counsel of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs* |

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
ANDREW J. MALONEY, III
JAMES GAVIN SIMPSON
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rules 6.3 and 7.1(c), I certify that the foregoing document, which was prepared using Times New Roman 12-point typeface, contains 3,080 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

Executed on February 28, 2025

/s/      Robert T. Haefele
Liaison Counsel of the Plaintiffs' Executive
Committee for Personal Injury and Death
Claims on behalf of Plaintiffs