UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

------------------------------------------------------------X

03-MD-01570 (GBD)(SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

    Since October 2024, the Court has considered serious allegations, anonymously sent to the Plaintiffs' Executive Committees ("PECs"), regarding possible misconduct by Jonathan Marks, the expert witness retained by Defendants World Assembly of Muslim Youth and the World Assembly of Muslim Youth-International (USA) (collectively, "WAMY"). The anonymous letter (hereinafter, the "Letter") alleged that, in violation of the Deposition Protocol, two members of Marks's team attended his deposition, but that their presence was not noted on the record. These associates are alleged to have coached Marks during his deposition, which was held remotely but was attended in person by WAMY counsel. Additionally, the anonymous Letter alleged that Marks was otherwise unqualified as an expert, withheld relevant evidence, and engaged in billing improprieties.

    The Deposition Protocol is a Court Order, and violations of court orders may subject counsel or the parties to sanctions. Fed. R. Civ. P. 16(f)(1)(C), 37(b)(2). The Court has previously condemned parties or their counsel who violate discovery orders, and it has imposed severe sanctions when such violations were determined to be intentional. The Court finds that the unreported attendance of the two associates violated the Deposition Protocol but does not find that such violation was intentional or for an improper purpose. Accordingly, counsel for WAMY

is admonished and warned that a repeat offense will result in monetary or other severe sanctions. On the developed record, however, the other violations have not been convincingly established and no further inquiry is warranted.

## BACKGROUND

The Court assumes the parties' familiarity with the record on this issue. Following the PECs' filing of the anonymous Letter, the Court issued a preservation order to WAMY, its counsel, Baker Tilly (which employed Jonathan Marks at the time he was retained by WAMY), and Marks. Order, ECF No. 10421. Thereafter, WAMY retained outside counsel to investigate the allegations, and Baker Tilly retained its own counsel. WAMY, through outside counsel, filed a detailed report on November 12, 2024. ECF No. 10529. The WAMY report described a thorough investigation that included interviews with WAMY counsel and Andy Guzman, one of the two (now former) Baker Tilly associates who attended the Marks deposition. Id. WAMY's outside counsel also reviewed the Marks videotaped deposition, with careful attention to those time stamps that the PECs identified as possible coaching moments. Id. WAMY's outside counsel did not interview Marks and was unable to reach Steven Goldberg, the other Baker Tilly associate who attended the deposition. Id.

Baker Tilly also retained counsel who investigated the allegations and submitted a report *ex parte* and under seal. ECF No. 10639 (*ex parte* and under seal). The Baker Tilly report described its investigation to include interviews by its outside counsel of Marks and other Baker Tilly employees and of WAMY's counsel. Id. Baker Tilly's former employee Guzman agreed only to be interviewed by WAMY's outside counsel. Id.; see also ECF No. 10529. As with WAMY's outside counsel, Goldberg refused any outreach to participate in this investigation. ECF No. 10639. Baker Tilly's counsel also reviewed the Marks deposition, the WAMY case file

and billing records, and other personnel documents. Id. Baker Tilly's outside counsel shared its conclusions with WAMY's outside counsel. Id.; see also ECF No. 10529.

The Court has reviewed the originating anonymous Letter without any redactions, the WAMY report, and the Baker Tilly report, as well as the Marks videotaped deposition. On that record, the Court concluded that "two Baker Tilly associates attended Marks' deposition but did not make an appearance on the record, in contravention with the Deposition Protocol Order." Order, ECF No. 10664. The Court further found that "there were internal disputes within Baker Tilly related to billing practices, which were resolved without notice to WAMY." Id. The Court found these allegations to be "troubling," but they did not "warrant further inquiry."

The Court further concluded that the "more explosive allegations" related to coaching and burying documents were unsubstantiated and that the videotaped deposition was not "indicative of cheating." Id. Notwithstanding these conclusions, the Court expressed a willingness to hold a conference if requested by the PECs. In response, the PECs requested a conference; access to the Baker Tilly report and the 10-page whistleblower letter that was identified in the Letter, allegedly written by Guzman, and filed with Baker Tilly; and that Guzman and Goldberg submit sworn statements with the Court. ECF No. 10689.

The Court held a conference on this matter on February 28, 2025, which was attended by the relevant parties and WAMY's outside counsel.

## DISCUSSION

The majority of the allegations set forth in the anonymous Letter concern billing improprieties. See ECF No. 10416-1 ¶¶ 3, 4, 6, 7, 10, 11. Both WAMY and Baker Tilly's outside investigations confirmed that these billing disputes existed within Baker Tilly. See ECF Nos. 10529, 10639. The investigations also confirmed that WAMY was unaware of these disputes and

3

that Baker Tilly handled them internally. See id. Guzman's 10-page whistleblower letter raised "these claims," which the Court assumes substantially concern Marks's billing records, much like the anonymous Letter. See ECF No. 10416-1 ¶ 13. WAMY's outside counsel has interviewed Guzman, who has since left Baker Tilly and is thus free to speak without fear of reprisal. Given the thorough nature of the investigation conducted by WAMY's outside counsel, including its interview with Guzman, its awareness of the 10-page whistleblower letter, and its conclusion that billing discrepancies existed and were corrected, the Court reaffirms its finding that no further inquiry is warranted. The Court also concludes that the PECs are not entitled to Guzman's 10-page whistleblower letter. The Court recognizes that this is a "stone left unturned," but concludes that any benefit from its disclosure is outweighed by the importance of confidentiality in an internal dispute mechanism for a non-party entity like Baker Tilly.

Paragraphs 1 and 8 of the anonymous Letter concern the allegations that Marks was coached throughout his deposition by Guzman and Goldberg. ECF No. 10416-1 ¶¶ 1, 8. At this point, WAMY's outside counsel has conducted a very thorough investigation into this alarming allegation, including by questioning the two WAMY attorneys who were in the room and Guzman. Each of these witnesses have denied the allegations. Still, the PECs seek sworn testimony from Guzman.

The ABA Model Rules of Professional Conduct prohibit an attorney from assisting a client "in conduct that the lawyer knows is criminal or fraudulent." Model Rules of Pro. Conduct r. 1.2(d) (Am. Bar Ass'n 1983). These Rules also prohibit a lawyer from knowingly making "a false statement of fact or law to a tribunal." Id. r. 3.3(a)(1). These canons are incorporated in the New York Rules of Professional Conduct. See N.Y. Rules of Pro. Conduct r. 1.2(d) (as amended through 2022) ("A lawyer shall not . . . assist a client, in conduct that the lawyer knows is illegal

4

or fraudulent . . . ."); Id. r. 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal . . . ."). Indeed, the New York Rules of Professional Conduct address the very issue presented; they proscribe a lawyer from "knowingly offer[ing] or us[ing] evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Id. r. 3.3(a)(3).

WAMY's counsel have appeared in this case for more than a decade without issue. It is not credible that they would engage in such reckless conduct, risking their reputation before this tribunal as well as their law license, by allowing their proffered witness to testify falsely based on prompting by Guzman and Goldberg. Moreover, when questioned by WAMY's outside counsel, after having left Baker Tilly, Guzman did not substantiate this allegation. Thus, the Court is left with evidence of arguably furtive glances by Marks during his deposition, and the statements of an anonymous reporter who was not present at the deposition.[1] The Court will not privilege the Letter's anonymous allegations over the avowed averments of two officers of the Court.[2]

Finally, the Letter suggests that Baker Tilly buried "very damaging evidence against WAMY." ECF No. 10416-1 ¶ 12. This allegation has not been substantiated through the investigations, including during interviews with Guzman. Both investigations found that Baker

---

[1] The author of the Letter also stated that the "Managing Partner of the Philadelphia Office" entered the deposition room because there was yelling during the breaks. ECF No. 10416-1. But the Managing Partner has stated that he was not in the office on the day of the deposition. ECF No. 10639. This clear contradiction undermines the Letter as a whole.

[2] To the extent the issue of coaching is related to the Letter's suggestion that Marks was "not qualified," the Court has already addressed this issue in its Daubert opinion and will not revisit that decision here. See ECF No. 9060 at 32–35.

5

Tilly relied exclusively on discovery material that was and remains available to the PECs. See ECF Nos. 10529, 10639. The PECs have not offered any evidence to the contrary, such as a document that Marks did rely upon but that was not produced.

The Court took the Letter's allegations seriously, as did WAMY and Baker Tilly. Two investigations by outside counsel were conducted by lawyers with prior experience as federal prosecutors. The Court does not find further inquiry into the actions of non-party witnesses who were formerly employed by non-party Baker Tilly to be warranted. The PECs have received the information to which they are entitled regarding Marks's qualifications and reliability. Their request for sworn witness statements is therefore DENIED.

Because the Court bases this decision in part on Baker Tilly's outside investigation, however, it finds that the letter and attachment Baker Tilly filed *ex parte* on December 23, 2024, is a judicial document. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006). That triggers a presumption of public access. See In re Terrorist Attacks on Sept. 11, 2001, No. 03-md-01570 (GBD)(SN), 2019 WL 3296959, at *1. Baker Tilly, through its outside counsel, is directed to either (a) file the letter and attachment that were filed *ex parte* on December 23, 2024, on the public docket, or (b) explain why "higher values" justify their continued sealing. See id., at *2 (quoting Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 144 (2d Cir. 2016)); see also Lugosch, 435 F.3d at 120.

6

## CONCLUSION

The PECs' request for sworn witness statements is DENIED. Baker Tilly, through its outside counsel, is directed to either (a) file the letter and attachment that were filed *ex parte* on December 23, 2024, on the public docket, or (b) explain why "higher values" justify their continued sealing.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   March 5, 2025
         New York, New York