UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

**PLAINTIFFS' REPLY TO SAUDI ARABIA'S OPPOSITION (ECF No. 10753) AND IN FURTHER SUPPORT OF PLAINTIFFS' FED. R. CIV. P. 72(a) OBJECTIONS TO THE MAGISTRATE JUDGE'S DECEMBER 11, 2024 OPINION & ORDER REGARDING EXPERT OPINIONS (ECF No. 10615)**

Jodi Westbrook Flowers
Donald A. Migliori
Robert T. Haefele
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Co-Chairs and Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

Sean P. Carter
J. Scott Tarbutton
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chair and Liaison Counsel for the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

Steven R. Pounian
Andrew J. Maloney, III
James Gavin Simpson
KREINDLER & KREINDLER LLP
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

March 14, 2025

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I. SAUDI ARABIA'S OPPOSITION DOES NOT DEFEND THE ORDER'S MULTIPLE CLEAR ERRORS OF LAW ........................................................................................ 1

   A. The Order committed clear error by ruling on sharply disputed issues of fact that this Court should resolve at a hearing or trial… ............................................. 1

   B. The Order failed to consider the totality of the experts' backgrounds in evaluating their proposed testimony. ................................................................ 2

   C. The Order was contrary to controlling law that permits experts to present *modus operandi* testimony and to infer therefrom what an actor "would have" done or known. ................... 2

   D. The Order should have preserved the reliable portions of each expert's testimony— and/or issued limiting instructions as necessary. ................................................ 3

   E. In this non-jury case, with no potential of prejudice, there was no good reason to exclude relevant expert testimony. ...................................................................... 3

II. THE ORDER WAS CONTRARY TO LAW AND COMMITTED CLEAR ERROR IN LIMITING OR EXCLUDING THE TESTIMONY OF PLAINTIFFS' EXPERTS ............... 4

   A. Bassem Youssef: former FBI Special Agent, Legal Attaché, and Communications Chief ............................................................................................ 4

   B. Dr. Emile Nakhleh: former Director of Political Islam at the CIA .................................... 7

   C. Dr. Alexander Meleagrou-Hitchens: leading authority on extremism and terrorist cleric Al-Awlaki ........................................................................................ 8

III. THE ORDER WAS CONTRARY TO LAW AND COMMITTED CLEAR ERROR IN ADMITTING THE TESTIMONY OF SAUDI ARABIA'S PROFFERED EXPERT DAVID RUNDELL ..................................................................................................... 9

CERTIFICATE OF COMPLIANCE ................................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Atl. Specialty Ins. v. AE Outfitters Retail Co.*, 970 F. Supp. 2d 278 (S.D.N.Y. 2013) ...................... 1
*Capellupo v Nassau Health Care Corp.*, 2009 WL 1705749 (E.D.N.Y. June 16, 2009) ................ 1
*Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc*., 2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004) ................................................................................................................................ 4
*Diaz v. United States*, 602 U.S. 526 (2024) ................................................................................... 3
*Dolphin v Synthes (USA) Ltd.*, 2012 WL 13059723 (S.D.N.Y. Feb. 16, 2012) ............................. 1
*Forts v. Ward*, 566 F.2d 849 (2d Cir. 1977) ................................................................................... 2
*Gill v. Arab Bank PLC*, 922 F. Supp. 2d 316 (E.D.N.Y. 2012) ...................................................... 6
*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F. Supp. 2d 471 (S.D.N.Y. 2009) .......... 6
*In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642 (2d Cir. 2016) ............................................................ 3, 8
*LVL XIII Brands, Inc. v Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612 (S.D.N.Y. 2016) ......... 6
*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................... 1
*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) ........................................................... 2
*Puglisi v. United States*, 586 F.3d 209 (2d Cir. 2009) ................................................................... 2
*United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994) ................................................................... 3
*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011) ............................................................... 3
*United States v. Swinton*, 480 F. Supp. 3d 385 (D. Conn. 2020) ................................................. 3
*United States v. Williams*, 506 F.3d 151 (2d Cir. 2007) ............................................................... 1
*Washington v. Kellwood Co.*, 105 F. Supp. 3d 293 (S.D.N.Y. 2015) ............................................ 2

Rules

Fed. R. Civ. P. 72 ........................................................................................................................... 1
Fed. R. Evid. 702 ....................................................................................................................... 3, 8
Fed. R. Evid. 704(a) ....................................................................................................................... 3

In its Opposition to Plaintiffs' Rule 72 Objections ("KSA Opp."), ECF No. 10753, the Kingdom of Saudi Arabia ("Saudi Arabia") distorts the evidential record and fails to mitigate the serious errors of law and fact in Judge Netburn's Opinion & Order ("Order"), ECF No. 10615, which, *inter alia*, wrongly excluded significant parts of the testimony of Plaintiffs' experts.

I.   **SAUDI ARABIA'S OPPOSITION DOES NOT DEFEND THE ORDER'S MULTIPLE CLEAR ERRORS OF LAW**

**A.   The Order committed clear error by ruling on sharply disputed issues of fact that this Court should resolve at a hearing or trial.** The cases Saudi Arabia cites show that where a court decides a *Daubert* motion on paper submissions alone, it may exclude expert proof only when "no factual disputes" exist, *i.e.*, when the evidence is "undisputed" or "uncontested." KSA Opp. 23-24.[1] Here, by contrast, the complex record is replete with genuine disputes as to relevant material facts pertaining to Plaintiffs' experts' qualifications and opinions. The Order's determination of those factual disputes and resultant exclusion of testimony was an abuse of discretion, because "the admissibility ruling is tantamount to a ruling on summary judgment and there are substantial disputed issues of fact that are pertinent to the reliability inquiry." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 581 (S.D.N.Y. 2007). Indeed, the Second Circuit has long held that "a judge should not resolve a factual dispute on affidavits or depositions" since this would "merely show[] a preference for 'one piece of paper to another.'" *Forts v. Ward*, 566

---

[1] *Dolphin v Synthes (USA) Ltd.*, 2012 WL 13059723, at *2 (S.D.N.Y. Feb. 16, 2012) ("no factual disputes to be resolved"); *Atl. Specialty Ins. v. AE Outfitters Retail Co.*, 970 F. Supp. 2d 278, 288-89 (S.D.N.Y. 2013) (evidence was "uncontroverted" and "uncontested"); *Capellupo v Nassau Health Care Corp.*, 2009 WL 1705749, at *9 n.10 (E.D.N.Y. June 16, 2009) ("neither party requested… a hearing" and the *Daubert* issues raised "legal arguments based on undisputed facts"); *see also United States v. Williams*, 506 F. 3d 151, 161-62 (2d Cir. 2007) (admission of expert testimony affirmed where there was no apparent factual dispute and "extensive consideration of the expert's credentials and methods" by the district court). Saudi Arabia's claim that "Plaintiffs had ample opportunity to elicit re-direct testimony" at the experts' depositions, KSA Opp. 24, is fanciful: the scope and complexity of issues at stake during those depositions made it impossible to foresee what *Daubert* challenges Saudi Arabia would raise, let alone to develop a complete deposition record to address all such challenges. Factual disputes as to Plaintiffs' experts' qualifications and opinions can and should be addressed only at a hearing or trial.

1

F.2d 849, 851–52 (2d Cir. 1977) (citations omitted); *see Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) ("[i]f material facts are in dispute, a hearing should usually be held, and relevant findings of facts made.").

**B.    The Order failed to consider the totality of the experts' backgrounds in evaluating their proposed testimony.** Saudi Arabia does not contest that the *Daubert* inquiry requires—as to each of Plaintiffs' experts—a review of the "totality of the witness's background." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015). Thus, as detailed below and in Plaintiffs' Rule 72 Objections, ECF No. 10693, it was clear error for the Order to overlook highly relevant facets of the Plaintiffs' experts' backgrounds upon which they based their respective opinions. Saudi Arabia's overblown attacks on Plaintiffs' experts and the contents of their testimony are fodder for cross-examination, not grounds for wholesale exclusion. *See, e.g., McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir.1995) ("[Defendant's] quibble with [the expert's] academic training… and his other alleged shortcomings… were properly explored on cross-examination and went to his testimony's weight and credibility—not its admissibility.").

**C.    The Order was contrary to controlling law that permits experts to present *modus operandi* testimony and to infer therefrom what an actor "would have" done or known.** Saudi Arabia falsely claims that the case law disallows expert testimony as to "specific actions by particular individuals or organizations," or as to "knowledge that particular individuals or organizations had." KSA Opp. 14 n. 3. But the Supreme Court and Second Circuit have repeatedly allowed expert testimony in circumstances directly analogous to those at issue here, including: at the trial of a drug courier, that "most drug couriers know that they are

2

transporting drugs;"[2] at the trial of a mob boss, that "the alleged rule of organized crime [is] that only the boss 'can order executions…';"[3] and at the trial of Al Qaeda's "on-call doctor," that, given Al Qaeda's terrorist activities, "the…doctor [] would know that he was providing support to an organization that engaged in terrorism…."[4] Indeed, Fed. R. Evid. 704(a) permits experts to testify on an ultimate issue, including (in civil cases) to offer opinions regarding a defendant's mental state. *Diaz*, 602 U.S. at 534.

    **D. The Order should have preserved the reliable portions of each expert's testimony—and/or issued limiting instructions as necessary.** Saudi Arabia fails to address *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642 (2d Cir. 2016). *Pfizer* held that a district court abused its discretion when (as the Order did here with respect to Nakhleh and Hitchens) it "excluded all" of an expert's opinions instead of "parsing [the] expert testimony… consistent with Rule 702's 'liberal admissibility standards'" to avoid "throw[ing] the good out with the bad." *Id.* at 665. That rule should govern the Order's failure to "separate wheat from chaff" with sufficient care, not only as to Nakhleh and Hitchens, but also in erroneously narrowing the subject matters on which Youssef may testify. Nor does Saudi Arabia address the alternate procedure of issuing specific limiting instructions to ensure conformity with Rule 702. *See United States v. Swinton*, 480 F. Supp. 3d 385, 393 (D. Conn. 2020) ("[t]he Government is instructed that any expert must limit the scope of his or her testimony to the interpretation of code words….").

    **E. In this non-jury case, with no potential of prejudice, there was no good reason to exclude relevant expert testimony.** Saudi Arabia fails to acknowledge that where the court is the factfinder, *Daubert* issues are ordinarily reserved until trial, ECF No. 9163 at 15, and

---

[2] *Diaz v. United States*, 602 U.S. 526, 528 (2024).
[3] *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994).
[4] *United States v. Farhane*, 634 F.3d 127, 160 (2d Cir. 2011).

3

that "all doubts at a bench trial should be resolved in favor of admissibility." *Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004). Adherence to this approach is especially necessary and appropriate for Plaintiffs' experts here, given the range of unresolved factual disputes surrounding their testimony. *See supra,* I.A.

## II. THE ORDER WAS CONTRARY TO LAW AND COMMITTED CLEAR ERROR IN LIMITING OR EXCLUDING THE TESTIMONY OF PLAINTIFFS' EXPERTS

Saudi Arabia persists in mischaracterizing the record, disparaging Plaintiffs' experts, and disregarding the evidence that Plaintiffs' experts' opinions are securely anchored in their extensive, highly relevant qualifications and experiences.

### A. Bassem Youssef: former FBI Special Agent, Legal Attaché, and Communications Chief

Saudi Arabia unscrupulously claims that Youssef has "little to no experience" or "very little experience" investigating Al Qaeda and posits that "the record does not show" how Youssef's FBI work involved "Al Qaeda itself," KSA Opp. 11-12, 14. Conversely, the evidence—key aspects of which the Order overlooked—confirms that Youssef:

- was "deeply familiar with the history, operations, and leadership of…Al Qaeda," based on his work investigating and combatting Al Qaeda, which began when Bin Laden first emerged as a threat in the 1990s, and continued through the 2000s and 2010s, ECF 9089-1 at 7-11, 22;

- led one of the FBI's initial investigations of Sunni extremist terrorists inside the U.S. involving Al Qaeda's partner in terror, the "Blind Sheikh" Omar Abdul Rahman, a "key associate" of Bin Laden, *id.* at 8, 22-23;

- investigated Al Qaeda members at San Diego and Los Angeles mosques, developed a source with direct access to Al Qaeda's leadership, and successfully uncovered and thwarted an Al Qaeda-sponsored bomb plot targeting Los Angeles, *id.* at 8, 27;

- was recognized throughout his FBI career as a subject matter expert on radical Islamist extremism, *id.* at 7;

4

- prepared FBI training manuals and reports on Al Qaeda and its *modus operandi,* ECF No. 9089-1 at 9; ECF No. 9089-2 at 92:11-21;

- provided training to FBI and CIA case officers working on major investigations regarding Al Qaeda, *id.*;

- was promoted to serve as FBI Legal Attaché in Saudi Arabia where he regularly interacted with top Saudi government officials and gained first-hand knowledge of Sunni extremism in Saudi Arabia in the late 1990s, *id.* at 9, 39-40;

- was instrumental in the preparation of a key 1999 FBI report which identified Al Qaeda as a top priority terror threat to the U.S., *id.* at 22;

- conducted undercover operations across two decades targeting Islamist extremists in locations throughout the world, *id.* at 9; ECF No. 9089-2 at 113:18-115:8;

- as Chief of FBI Digital Media Exploitation Unit, analyzed materials from all pertinent FBI terror investigations, and uncovered key evidence used to prosecute Al Qaeda operative Dhiren Barot for casing New York City buildings as targets for terrorist attacks in the early 2000s, ECF No. 9089-1 at 10, ECF 9165-11 at 33:11-34:15; and

- as Chief of FBI Communications Unit, routinely reviewed and analyzed communications of known Al Qaeda members, uncovering Al Qaeda's involvement in the murder of the U.S. Ambassador to Libya.

Saudi Arabia seeks to revive its claim that Youssef was merely a "translator," KSA Opp. 2, and engages in wordplay to suggest "there is nothing… in the record" to demonstrate Youssef's expertise in "counterterrorism assessments." *Id.* at 11, *citing* ECF 10615 at 13 n.4. However:

- Youssef's FBI supervisor testified that Youssef "was the counterterrorism program… the entire program;" that Youssef knew "how these terrorist groups work" and their "customs;" and that there was "no one else in the office or bureau [FBI]" with Youssef's "invaluable" knowledge and judgment, ECF No. 9153 at 28 n.19;

- FBI Director Louis Freeh commended Youssef as an "essential player" in counterterrorism who was held in "high regard," *id.* at 27-28; and

- Youssef received a Director of Central Intelligence medal and numerous other awards, as well as being consistently promoted throughout his FBI career. *Id.*[5]

---

[5] Saudi Arabia improperly speculates about why Youssef did not work on the 9/11 case, KSA Opp. 2, but Youssef explained that he heard that FBI "higher-ups" believed he had grown too close to Saudi Arabia having spent several years on assignment there. ECF 9541, Pls. Ex.105 at 136:18-137:5.

The cases Saudi Arabia cites are eminently distinguishable because they involved unqualified experts without relevant training or experience.[6] By contrast, Youssef's extraordinary FBI background provided ample support for his opinions on Al Qaeda's *modus operandi*, including its use of meticulous planning and advance teams, assuring that its operatives were met and cared for upon their arrival in unfamiliar locations, lodging them at private homes of loyal associates, and placing trust only in known, pre-screened individuals. ECF No. 9089-1 at 16-20, 119, 166-67, 170, 175-76, 199-200, 248. Youssef's opinions, confirmed and corroborated by the 9/11 Commission Report, were specifically based on the knowledge he gained from his FBI work and investigations, as borne out by the methods Al Qaeda used for its 1998 Embassy bombings and the 9/11 hijackers' travels through Southeast Asia on their way to the United States. *E.g.*, *id.* at 21, 166, 175; 9/11 Comm'n Rep. at 159, 215, 494 n.60.

Saudi Arabia's claim that Youssef "refused to testify" because his opinions were based on "classified" materials, KSA Opp. 12, is similarly bogus. ECF No. 9163 at 36-38. Indeed, Judge Netburn disposed of that claim in her Order and again on reconsideration. Order 14-15; ECF No. 10694 at 5. Youssef testified that while he was not at liberty to share a particular "code name" he could "speak in detail about the players and operatives I looked at… who eventually became… part of the inner circle of Fahad al-Thumairy." ECF 9089-2 at 31:15-19. It was Saudi Arabia's own strategic choice not to put further questions to Youssef that would have enabled him to elaborate. *Id.*; *see In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F.Supp.2d 471, 482 (S.D.N.Y. 2009) (an expert is not limited "simply to reading his report…" and may "supplement, elaborate upon, explain and subject himself to cross-examination upon his report.").

---

[6] *LVL XIII Brands, Inc. v Louis Vuitton Malletier S.A.*, 209 F.Supp.3d 612, 640 (S.D.N.Y. 2016) ("Colman does not appear to have any training or experience"), *aff'd*, 720 F. App'x 24 (2d Cir. 2017); *Gill v. Arab Bank PLC*, 922 F.Supp.2d 316, 536 (E.D.N.Y. 2012) (expert is "not qualified" to discuss terror group).

### B. Dr. Emile Nakhleh: former Director of Political Islam at the CIA

Saudi Arabia wrongly demeans Nakhleh's credentials and stature. Nakhleh was not (as Saudi Arabia cynically recasts him) a mere "research professor," KSA Opp. 4-5,[7] but a decorated, veteran CIA analyst and the U.S. government's long-time preeminent authority on political Islam. *See* ECF No. 10693 at 17 (*citing* ECF No. 9613 at 22; ECF No. 9089-4 at 2). Nakhleh's expertise encompasses the Wahhabi polity of pre-9/11-era Saudi Arabia and how its concepts of jihad were operationalized by terror groups and their supporters—which Nakhleh identifies as contributing causes of the 9/11 attacks, and as to which Nakhleh helped shaped policy for the administrations of successive U.S. Presidents. *See* ECF No. 10693 at 17 (*citing* ECF No. 9613 at 21, 22, 29-31; ECF No. 9089-4 ¶¶ 25-48, 122-137). Rather than address the record, Saudi Arabia attacks a strawman: a laundry list of contrived qualifications from which it purports to "disqualify" Nakhleh, including "truth detection" and "psychiatry." KSA Opp. 4-5.

Saudi Arabia continues its mythmaking by rebranding the domestic political strategy of "quietism" as a pacifist movement at one end of a "spectrum of… beliefs" (also a falsehood) within Saudi Arabia's MOIA-led religious order, KSA Opp. 5, 19. But "quietism" has nothing to do with the Saudi government MOIA's promotion of violent jihadism overseas in the pre-9/11 era. ECF No. 9163 at 57-59. Saudi Arabia's false flag protests fostered clear error by leading the Order to deliberate on sharply disputed factual issues and finding erroneously that Nakhleh's presentation of Saudi Arabia's religious doctrine was "skewed." Order 29-30; *see* ECF No. 10693 at 23. But Nakhleh's consistent, conscientious analysis of the Saudi state's distinctive embrace of Wahhabism in the pre-9/11 era—in the context of political Islam globally—is reliable, helpful expert opinion that this Court needs to hear. ECF No. 9089-4 ¶¶ 25-35, 226-31.

---

[7] The Order's mischaracterization of Nakhleh primarily as an "academic," Order 25, similarly buried the lede as to Nakhleh's stellar CIA career and contributions. *See* ECF No. 10693 at 16-17.

7

It is Saudi Arabia's scurrilous recasting of Nakhleh, rather than Nakhleh's portrayal of Wahhabism, that is "not a faithful one." *See* ECF No. 10693 at 23 (citing Order 29).[8]

Saudi Arabia grossly oversteps when it repackages the Order's reasoning for Nakhleh's exclusion as a review that tallied "all the defects" such that "nothing remained to which [Nakhleh] could testify." KSA Opp. 6. That is not what the Order found. Rather, the Order referred to only limited, anecdotal "defects"—also noted as "infirmities"—that "prevent[ed]" Nakhleh's testimony *as a whole* from being admitted, despite Nakhleh's otherwise "impressive combination of credentials" and his "demonstrated" standing to opine on the principal subjects of his testimony. Order at 33-34; KSA Opp. 18 (*acknowledging* Order 26); *see* ECF No. 10694 at 5-6 (reiterating the finding of "ample evidence of Nakhleh's expertise in political Islam"). The Order's clearest error was its resort to wholesale exclusion instead of parsing Nakhleh's testimony under Rule 702 to preserve key admissible opinions,[9] and/or issuing limiting instructions. *See* ECF No. 10693 at 7, 20-21 (citing *Pfizer*, 819 F.3d at 665).

### C. Dr. Alexander Meleagrou-Hitchens: leading authority on extremism and terrorist cleric Al-Awlaki

In its attempt to justify the Order's improper factual findings, Saudi Arabia uses specious, selective citations to promote its disingenuous claims that Hitchens performed a "reversal" in his testimony about Awlaki, KSA Opp. 21, which it frames not only as "directly contradict[ory] [to his] published writings," *id.* 8, but also as a "striking change of position after being retained by

---

[8] Saudi Arabia also seeks to inflate the Order's erroneous single-issue reliability finding "on this front" (based on perceived incongruence between Nakhleh's opinions and Saudi counsel's dubious framing), Order at 30, into a fictitious "reliability concern [that] infects Nakhleh's opinions across the board," KSA Opp. 19—yet another example of Saudi Arabia's improper recasting of the Order.

[9] At minimum, the Order should have admitted Nakhleh to provide opinions squarely within his expertise on political Islam including, *inter alia*: the "interplay between politics and religion" in Saudi Arabia, Saudi religious education, the Saudi government's Ministry of Islamic Affairs (MOIA) and "the ideological and operational aspects of [its] support for violent jihad." *See* Order 25-26; *see also* ECF No. 10693 at 24.

8

Plaintiffs." *Id.* 21. But Saudi Arabia's claims implicate sharply disputed facts and are unsustainable given the record that:

- in Hitchens' book *Incitement*, where he wrote about Awlaki's anti-U.S. and anti-Jewish polemic as part of Awlaki's Islamist jihadi-aligned preachings *before 9/11*, Hitchens observed that there were "unsolved mysteries" about Awlaki's relationship with the 9/11 hijackers that warranted further research, ECF No. 10693 at 26-27;

- Hitchens testified that he formed his expert opinions in this case after undertaking extensive additional painstaking research of his Awlaki repository, which uncovered "completely new material" comprising Awlaki's "crucial and shocking" extremist manifestations from the year 2000 that Hitchens was "not [previously] aware of," *id.*;

- building on his prior work, Hitchens wrote in his expert report that Awlaki's views were extremist because they were "directly in line with…al-Qaeda," *id.*; and

- the Order's actual findings ultimately countenanced the change in emphasis of Hitchens' opinions as an "honest reappraisal of the evidence," and stated tentative "concerns" that stopped far short of impugning the "reliability both of… [Hitchens'] methodology and … conclusions," *compare* Order 37-38 with KSA Opp.21.

Saudi Arabia refuses to acknowledge the fundamental truth overlooked by the Order: Hitchens undertook substantial new research in this case to solve the "unsolved mysteries" about Awlaki's relationship with the 9/11 hijackers. *See* ECF No. 10693 at 27. That research led to his revelation that when Awlaki was coordinating with Bayoumi and Thumairy in 2000 to assist the 9/11 hijackers, Awlaki "was already a committed Salafi extremist and a proponent of violent jihad," Order 37, *citing* Hitchens Rep. ¶ 22. Saudi Arabia may vehemently disagree with Hitchens' testimony, but that is a matter for cross-examination and argument before this Court, not summary exclusion resulting from a determination on motion papers alone.

### III. THE ORDER WAS CONTRARY TO LAW AND COMMITTED CLEAR ERROR IN ADMITTING THE TESTIMONY OF SAUDI ARABIA'S PROFFERED EXPERT DAVID RUNDELL

Rundell's entire report rests on his willingness to sign off on a throwaway opinion that parrots Saudi Arabia's defense argument that the Saudi government's support for the Al Qaeda

9

terrorists who carried out the 9/11 attacks "is implausible." KSA Opp. 15 (*citing* Rundell Rep. 3). Saudi Arabia now recasts Rundell's bullet-point as a "conclu[sion]" that it says is "based on his extensive diplomatic experience in expertise on Saudi-U.S. relations." *Id.* But much like the scrambled sentence in Saudi counsel's brief, Rundell's opinion itself is linguistically unsound and logically unserious. Having failed to review *any* relevant discovery material, Rundell is inept and without standing to comment on plausibility, which is necessarily a standard of *factual sufficiency*. Rundell offers no informed insight into what pre-9/11-era Saudi Arabia could have done, would have done, or indeed conspired to do in furtherance of its support for terrorism, because he wasn't there in the relevant period, possesses no claim to subject matter expertise, and refuses to inquire into what actually happened. *See* ECF No. 10693 at 27-28. Rundell has blindfolded himself to the evidence—including FBI and CIA factual findings—on MOIA's jihadist orientation, nexus to terrorism, and the Wahhabi militant extremist network Saudi Arabia "created, funded, directed and supported" inside the U.S. *See* ECF No. 9887 at 14, n.11.

The Order's error in attributing to Rundell's conclusory opinions a "reliable foundation" derived from his "background knowledge," Order at 58-59, is exacerbated by its application of a double standard: it wrongly and unjustly denied analogous credit to Plaintiffs' experts, even where Judge Netburn recognized their experience and expertise. *See* ECF No. 10693 at 5. Contrary to Saudi Arabia's false assertion that Plaintiffs' challenges to Rundell were "reject[ed]", KSA Opp. 1, the Order inexplicably omitted to consider the details in Plaintiffs' papers altogether, notably as to Rundell's extreme bias, *ipse dixit*, and his docile reliance on religious texts teed up by a Saudi government MOIA official. *See* ECF No. 10693 at 28; ECF No. 9269 at 30-35.

Dated: March 14, 2025

Respectfully submitted,

| | |
|---|---|
| MOTLEY RICE LLC | COZEN O'CONNOR |
| By: /s/ Robert T. Haefele<br>ROBERT T. HAEFELE<br>JODI WESTBROOK FLOWERS<br>DONALD A. MIGLIORI<br>28 Bridgeside Boulevard<br>Mount Pleasant, SC 29465<br>Tel.: (843) 216-9184<br>Email: rhaefele@motleyrice.com | By: /s/ Sean P. Carter<br>SEAN P. CARTER<br>J. SCOTT TARBUTTON<br>One Liberty Place<br>1650 Market Street, Suite 2800<br>Philadelphia, Pennsylvania 19103<br>Tel.: (215) 665-2105<br>Email: scarter1@cozen.com |
| *Liaison Counsel and Co-Chairs of Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs* | *Co-Chair and Liaison Counsel of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs* |

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
ANDREW J. MALONEY, III
JAMES GAVIN SIMPSON
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rules 6.3 and 7.1(c), I certify that the foregoing document, which was prepared using Times New Roman 12-point typeface, contains 3,459 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

Executed on March 14, 2025

     /s/     Robert T. Haefele
Liaison Counsel of the Plaintiffs' Executive
Committee for Personal Injury and Death
Claims on behalf of Plaintiffs