UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN)

**<u>Declaration of James P. Kreindler in Support of *Ashton 31* Motion for Final Damages Judgment for Estate Plaintiffs Without Prior Economic Loss Judgments and Solatium Plaintiffs Without Prior Judgments</u>**

JAMES P. KREINDLER, Esq., pursuant to 28 U.S.C. § 1746, hereby states under penalty of perjury that:

1. I am an attorney representing the *Ashton* plaintiffs ("*Ashton*") in the above-captioned litigation. I submit this declaration in support of the motion for final judgment on behalf of the estates of those individuals murdered on September 11, 2001 ("9/11 Decedents") and for immediate family members of the 9/11 Decedents, as well as for permission to allow any remaining *Ashton* plaintiffs to move for the same or similar relief in separate stages. This motion seeks the following relief:

   a. awarding the Estate of the 9/11 Decedent identified on Exhibit B (to the proposed order), through their personal representative, and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 Decedent, an award for economic damages, which, when combined with any previously-awarded compensatory damages for pain and suffering will constitute a final judgment in the amount set forth on Exhibit B ;

   b. awarding solatium damages for the immediate family members of 9/11 Decedents in the amounts as set forth on Exhibit C (to the proposed order) based on the relationship listed on Exhibit C;

   c. awarding the Plaintiffs identified on Exhibits B and C pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

    d. granting the Plaintiffs identified in Exhibits B and C permission to seek punitive damages, economic damages (to the extent not requested in this motion), and other appropriate damages at a later date;

    e. determining that service of process was properly effected upon the Islamic Republic of Iran in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

    f. granting permission for all other *Ashton* plaintiffs not appearing on Exhibits B or C to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

2. The form of this motion and the relief requested herein are intended to comply with the following orders of this Court:

    a. The Court's order dated January 24, 2017 (ECF No. 3435), requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee (ECF No. 3433)] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

    b. The Court's Order dated October 14, 2016 (ECF No. 3362) related to the cases captioned as *Bauer v. Al Qaeda Islamic Army,* 02-CV-7236 (GBD)(SN) and *Ashton v. al Qaeda Islamic Army,* 02-CV-6977 (GBD)(SN).

    c. The Court's Order dated October 28, 2019 (ECF No. 5234) setting forth updated procedural rules.

    d. The Court's Order dated October 28, 2019 (ECF No. 5338) setting forth the scheduling order.

    e. The Court's Order dated September 22, 2023 (ECF No. 9355) setting forth the new quality control, motion, declaration and exhibit procedures and paradigms.

<u>Due Diligence</u>:

3. The source of my information and the basis for my belief in my statements contained herein is my personal involvement in this matter for 23 years; my firm's representation of the *Ashton* Plaintiffs in connection with the September 11th litigation; communications

directly from family members of the 9/11 Decedents listed in Exhibit B and Exhibit C; communications with counsel for other plaintiffs in the *In re Terrorist Attack on September 11, 2001* multidistrict litigation; and, documents and records contained in my firm's files and other court records relating to the multi-district litigation to which the *Ashton* Plaintiffs are parties, including review of, among other things, relevant retainer agreements, death certificates, judicial filings (complaints, default certificate, liability default judgment and documentation of service), communications with clients and family members and public databases and other sources of information. Any matters about which I lack personal knowledge are asserted herein upon information and belief.

4.  Based on our review of the above, I believe that all of the 9/11 Decedents listed in Exhibits B and C died on September 11, 2001 in the September 11th terrorist attacks. My law firm has been retained by the representatives of the estates of the 9/11 Decedent listed in Exhibit B to represent that estate and the immediate family members of those 9/11 Decedents listed in Exhibit C to represent them individually. Before filing this motion, we have (1) complied with the due diligence safeguards referred to in Section II.D of the January 23, 2017 letter from the Plaintiffs' Executive Committees (*see* ECF No. 3435, adopting procedures set forth in ECF No. 3433); (2) personally verified that, based on review by myself or other representatives of Kreindler & Kreindler of the records available regarding other judgments entered by this Court against Iranian defendants, no economic relief has previously been awarded to any plaintiff included in the judgment; (3) comported with the Court's September 22, 2023 paradigm for quality control, motions, declarations and exhibits supporting the request for damages herein, including the standardized exhibit document that this Court has provided along with the requisite review process involved in preparing the exhibits (ECF 9355); and (4), as set forth in this Court's

September 22, 2023 checklist, provided the Exhibits B and C to be checked against the default judgment motion master list.

5. For the 9/11 Decedents listed in Exhibits B and C, I or other representatives of Kreindler & Kreindler have confirmed that the 9/11 Decedent was a United States national as of September 11, 2001, either based on documentary evidence (such as copies of birth certificates, passports and/or verified applications to the September 11, 2001 Victim Compensation Fund) or personal interviews and/or written communications with the representatives of the Estates of those 9/11 Decedents and/or the family members of those 9/11 Decedents.

### Estate Claims

6. Exhibit B sets forth the compensatory damages amount this Court previously awarded to the 9/11 Decedent listed there for conscious pain and suffering.

7. Exhibit B also set forth new claims by the Personal Representatives of the Estate of the 9/11 Decedent listed therein seeking an award of economic damages for the first time.

8. For the estate in Exhibit B seeking economic damages, such amounts sought are based upon economic expert reports, VCF files and other documentary evidence and include damages calculations that, when calculated soon after the September 11, 2001 terrorist attacks, have now been brought up to present value.

9. For example, in some of those cases in which Kreindler & Kreindler represented the Estate of the 9/11 Decedent now seeking economic damages in the September 11 Victim Compensation Fund ("VCF"), we previously retained the services of economic experts who, in turn, performed an analysis of the economic loss as of the date of those reports. In other cases, where, for example, Kreindler & Kreindler did not represent the Estate of the 9/11 Decedent in the VCF, we obtained VCF files from the Department of Justice via a Freedom of Information

Act ("FOIA") request.[1] Sometimes those VCF files contained reports by economic experts and other times they contained only VCF economic valuation files and the supporting documentation (including tax returns, W-2 forms and other salary and income verification.) In those cases in which we did not have a prior economic damages report and the Department of Justice has not yet responded to the FOIA request, but we had other raw economic data, we provided earnings and tax data for a certain period of time prior to September 11, 2001 and engaged the services of an expert to calculate the economic loss and bring that figure up to present value, as discussed further below.[2] The files can include expert reports dating back to the time that the application was filed, supporting materials in support of the expert report, reviews and computations of same made by the VCF, award determinations, applications and/or other relevant documentation such as tax returns, W-2s or statements of income and projected earnings from employers. In a few instances, we were able to receive the necessary documentation directly from the clients.

10. Plaintiffs retained John F. Beauzile, who possesses a Master's Degree in Actuarial Science from Columbia University, whose affidavit describing his methodology and experience and attaching his curriculum vitae is attached hereto as Exhibit D. Mr. Beauzile reviewed, analyzed and updated the computations contained within the VCF files, from the material the

---

[1] The Department of Justice requires each FOIA request to be accompanied by a Certification of Identity executed by the representative of the estate specifically authorizing counsel to obtain the VCF files, even if counsel provides a retainer agreement with the FOIA demand. After we received the authorization, my office made a formal FOIA demand for a copy of that file. Due to backlogs at the Department of Justice, which administered the VCF, there are substantial delays in obtaining them. The Department of Justice has yet to process many of our FOIA requests, including those submitted more than two years ago. We regularly request updates on the requests, but have not received any assurances as to the timing of the production of VCF files.

[2] Where, in such a case, the report documenting the present value of the loss includes both a capped and a non-capped amount, the capped figure was based on an old VCF restriction limiting salary to $200,000 per year and not considering actual earnings history or reasonable projections beyond that amount. We have therefore used not the "capped" presumed loss but the higher presumed loss figure in such situations.

client provided or, when necessary, calculated in the first instance an economic loss amount. Mr. Beauzile's methodology with respect to each claim for economic loss sought here, as well as the assumptions made and data relied upon, is described in the report he provided for each claim, all of which are filed separately as Exhibit E under seal pursuant to this Court's prior Order granting permission for such under seal filing. *See* ECF No. 7963.

11. The economic loss figures set forth in the table attached as Exhibit B represent the present value (based on the calculations attached in underlying expert reports) of the estimated economic losses suffered as a result of the wrongful death of plaintiff's decedent.

12. We have provided a copy of Exhibit B to be checked against the default judgment master list and have verified that that the plaintiff listed in Exhibit B has not recovered economic damages previously and does not have any other pending motion before this Court for economic damages against Iran arising out of the September 11, 2001 terrorist attacks.

**Solatium Claims – Immediate Family Members**

13. The decedents listed in Exhibit C were killed in the September 11, 2001 terrorist attacks and are survived by the immediate family members listed in Exhibit C. The relationships set forth in Exhibit C have been personally verified by staff members at Kreindler & Kreindler who have obtained written documentation, retrieved biographical paperwork (such as marriage certificates, birth certificates, baptismal certificates, obituary notices and wedding announcements) and/or conducted interviews with the family members listed in Exhibit C (or with their other family members) confirming the relationships set forth there.

14. To minimize the chance of any human error, my firm has instituted a further level of quality control, during which each client's file is reviewed a second time and the relationships and other information contained in Exhibit C are corroborated, as is the fact that the claimants all

survived the deaths of their loved ones in the September 11, 2001 terrorist attacks.

15. We have been retained by the plaintiffs listed in Exhibit C to pursue recovery for their solatium losses arising out of the deaths of their loved ones on September 11, 2001. We have provided a copy of Exhibit C to be checked against the default judgment master list and have verified that that none of the plaintiffs listed in Exhibit C has recovered for his or her solatium damages previously nor do they have any other pending motion before this Court for compensation against Iran arising out of the September 11, 2001 terrorist attacks.

16. For the 9/11 Decedents listed in Exhibit C, Kreindler & Kreindler has confirmed the nationalities set forth therein based on a review of documentary evidence (such as copies of birth certificates, passports and/or verified applications to the September 11, 2001 Victim Compensation Fund) or personal interviews and/or written communications with the representatives of the Estates of those 9/11 Decedents or their immediate family members.

## Conclusion

17. For all of the reasons set forth in this declaration and the *Ashton 31* Motion for Final Damages Judgment for Estate Plaintiff Without Prior Economic Loss Judgment and Solatium Plaintiffs Without Prior Judgments, I respectfully request that this Court grant the proposed order filed herewith.

Dated: April 3, 2025
      New York, NY

                                        /s/ James P. Kreindler
                                        James P. Kreindler