**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**


-----------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: __4/17/2025__

**03-MD-01570 (GBD)(SN)**

**REPORT &**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

      Burnett v. Islamic Republic of Iran, No. 15-cv-09903 (GBD)(SN)

      Three groups of Burnett plaintiffs seek partial final default judgments against the Islamic

Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic

Republic of Iran (collectively, the "Iran Defendants"). See Pls.' Mot., ECF Nos. 10424, 10740,

10808.[1] They are the personal representatives of the estates of non-United States nationals who

were killed in the September 11, 2001 terrorist attacks (Burnett Non-Nationals 8) and the

immediate family members of non-United States national 9/11 decedents (Burnett Non-Nationals

9 and 10) (collectively, the "Burnett Plaintiffs").

      As "non-national" claimants, these Burnett Plaintiffs are barred from bringing their

claims under 28 U.S.C. § 1605A(c), a federal cause of action restricted to U.S. nationals, military

personnel, and government employees—and the primary vehicle plaintiffs in this litigation have

used to secure default judgments against the Iran Defendants. Instead, the Burnett Plaintiffs seek

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

to hold the Iran Defendants accountable under New York tort law: some (<u>Burnett</u> Non-Nationals 8) through wrongful death and survival claims, and others (<u>Burnett</u> Non-Nationals 9 and 10) through claims for intentional infliction of emotional distress ("IIED"). The Court recommends granting their motions.

## BACKGROUND

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. On January 31, 2017, the Court granted default judgment as to liability for certain <u>Burnett</u> Plaintiffs against the Iran Defendants. <u>See</u> Op., ECF No. 3443. That judgment was premised on the Court's 2011 decision assessing Iran's role in facilitating the 9/11 Attacks. <u>See</u> <u>In re Terrorist Attacks on Sept. 11, 2001</u> ("<u>In re 9/11</u>"), No. 03-md-01570 (GBD)(SN), 2011 WL 13244047, at *2–36 (S.D.N.Y. Dec. 22, 2011). In broad terms, the Court found that Iran had waged an "undeclared war" on the United States "through asymmetrical[] or unconventional strategies and terrorism" via "proxies such as . . . al Qaeda." <u>Id.</u> at *3. Iran's "material support" for al Qaeda, the Court concluded, proximately caused the 9/11 Attacks. <u>Id.</u> at *41. And since the claims at issue otherwise satisfied 28 U.S.C. § 1605A(c), the Court held Iran liable for the resulting damages to U.S. national victims and their families. <u>See</u> <u>id.</u> at *39–42.

Subsequent rulings confirmed the application to claims brought by non-U.S. nationals. <u>See</u> <u>In re 9/11</u>, 2024 WL 4268663 (S.D.N.Y. Jan. 5, 2024) ("<u>King R&R</u>"), <u>report and recommendation</u> <u>adopted by</u> 2024 WL 1312504 (Mar. 26, 2024) ("<u>King Opinion</u>") (holding that non-United States nationals may bring claims against the Iran Defendants through § 1605B(b) and under New York tort law); 2024 WL 3046225 (S.D.N.Y. June 17, 2024) (applying <u>King</u> to other non-national claims); R. & R., Jan. 13, 2025, ECF No. 10665, <u>report</u>

and recommendation adopted by 2025 WL 673050 (Mar. 3, 2025) (same as to Burnett non-

national claims).

To grant the Burnett Plaintiffs relief, then, the Court must resolve: (1) whether the Court

has jurisdiction over the Burnett Plaintiffs' claims; (2) whether the Iran Defendants defaulted; (3)

whether the Iran Defendants are liable for wrongful death, survival, and/or IIED under New

York law; and (4) if so, what damages are due.

The Court's 2011 decision bears on many of these questions. But courts cannot take

judicial notice of factual findings made in another case and rely on them "for the truth of the

matter asserted." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d

66, 70 (2d Cir. 1998) (cleaned up). At the same time, the Foreign Sovereign Immunities Act

("FSIA") "does not require courts to relitigate issues that have already been settled in previous

decisions." Lee v. Islamic Republic of Iran, 518 F. Supp. 3d 475, 480 (D.D.C. 2021) (cleaned

up). Courts can respect these limits and avoid duplication of effort by taking judicial notice of

decisions issued in related cases and "review[ing] [the underlying] evidence," thereby obviating

the need for its "re-presentment." Id. (quoting Murphy v. Islamic Republic of Iran, 740 F. Supp.

2d 51, 59 (D.D.C. 2010)). The Court leverages this practice as it answers the fact-bound

questions below. See ECF Nos. 2431, 2432, 2433, 2473 (documentary evidence cited in In re

9/11, 2011 WL 13244047).

## DISCUSSION

## I.    The Court Has Jurisdiction

The Foreign Sovereign Immunities Act "supplies the ground rules for 'obtaining

jurisdiction over a foreign state in the courts of this country.'" Federal Republic of Germany v.

Philipp, 592 U.S. 169, 175 (2021) (quoting Argentine Republic v. Amerada Hess Shipping

Corp., 488 U.S. 428, 443 (1989)). As its name suggests, the FSIA makes foreign states immune

from suit by default, conferring jurisdiction over actions only if they meet strict requirements.

The Burnett Plaintiffs' suit clears these hurdles, so the Court has jurisdiction over their claims.

### A. Subject Matter Jurisdiction

Under the FSIA, district courts have subject matter jurisdiction over nonjury civil actions

brought *in personam* against foreign states if "one of several enumerated exceptions to immunity

applies." Republic of Sudan v. Harrison, 587 U.S. 1, 4 (2019); see 28 U.S.C. §§ 1330(a), 1604.

The Burnett Plaintiffs identify 28 U.S.C. § 1605B(b) as the relevant exception to

immunity. It provides:

> A foreign state shall not be immune from the jurisdiction of the
> courts of the United States in any case in which money damages are
> sought against a foreign state for physical injury to person or
> property or death occurring in the United States and caused by
>
> (1)    An act of international terrorism in the United States; and
>
> (2)    A tortious act or acts of the foreign state, or of any official,
>        employee, or agent of that foreign state while acting within
>        the scope of his or her office, employment, or agency,
>        regardless where the tortious act or acts of the foreign state
>        occurred.

Id. § 1605B(b).

The Burnett Plaintiffs' claims plainly satisfy many of 28 U.S.C. § 1605B(b)'s

requirements. They are seeking "money damages" from the Iran Defendants. Id.; see Burnett

Am. Comp. at 1082–88, No. 15-cv-09903, ECF No. 53. Those damages are for "death[s]"

sustained "in the United States" and "caused" by the 9/11 Attacks. 28 U.S.C. § 1605B(b); see

Burnett Am. Comp. at 1081. And the 9/11 Attacks were "act[s] of international terrorism" on

U.S. soil. 28 U.S.C. § 1605B(b); see Burnett Am. Comp. at 1081.

One element of 28 U.S.C. § 1605B(b) merits closer attention: the requirement that "a

tortious act or acts of the foreign state" "caused" the injury. For FSIA purposes, "a tortious act"

includes the "knowing or deliberately indifferent provision of material support to terrorists," and

"cause" incorporates "the traditional test for proximate causation[:] . . . 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" In re 9/11, 298 F. Supp. 3d 631, 643, 645 (S.D.N.Y. 2018) (quoting Owens v. Republic of Sudan, 864 F.3d 751, 794 (D.C. Cir. 2017)). A "foreign state," meanwhile, "includes a political subdivision of [the] foreign state or an agency or instrumentality of [the] foreign state." 28 U.S.C. § 1603(a). In simple terms, there must be a link between a state's support for terrorism and the plaintiff's injuries.

The Court heard evidence linking the Iran Defendants to the 9/11 Attacks in a 2011 hearing. Based on that record, it found that Iran was "aware[] of[] and involve[d] in[]" al Qaeda's plans and provided "material support" to the terrorist group. In re 9/11, 2011 WL 13244047, at *26, 41. It concluded that Iran's "material support" proximately "caused" the 9/11 Attacks and, by extension, the resulting deaths. Id. at *41. And it determined that the Islamic Revolutionary Guard Corps and the Central Bank of the Islamic Republic of Iran both fall under the FSIA's definition of a "foreign state." In re 9/11, 2011 WL 13244047, at *41 (finding that the Islamic Revolutionary Guard Corps is a political subdivision of the Islamic Republic of Iran "legally identical to Defendant Iran for purposes [of] liability under the FSIA" and the Central Bank of the Islamic Republic of Iran "at all relevant times acted as [an] agent[] or instrumentalit[y] of [D]efendant Iran"). The evidence supporting those findings establishes the last element of 28 U.S.C. § 1605B(b)—that the Iran Defendants' "tortious act[s]" "caused" the deaths underpinning the Burnett Plaintiffs' claims.

The Burnett Plaintiffs' claims, brought *in personam* against the Iran Defendants, accordingly meet all the requirements of the 28 U.S.C. § 1605B(b) exception to sovereign

immunity. See Burnett Am. Comp., No. 15-cv-09903, ECF No. 53. The Court therefore has subject matter jurisdiction under 28 U.S.C. § 1330(a).[2]

## B. Personal Jurisdiction

With subject matter jurisdiction established, personal jurisdiction is simply a matter of showing "valid service of process." Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela, 863 F.3d 96, 104 (2d Cir. 2017) (cleaned up); accord 28 U.S.C. § 1330(b). Service on the Iran Defendants is governed by the FSIA.

The FSIA specifies four methods of serving foreign states or their political subdivisions in descending order of preference. See 28 U.S.C. § 1608(a). The first, service by "special arrangement," was impossible because the Burnett Plaintiffs have no such arrangement with the Islamic Republic of Iran or its political subdivision the Islamic Revolutionary Guard Corps. Id. § 1608(a)(1); see Pls.' Mem. of Law at 5, ECF No. 10425; Pls.' Mem. of Law at 6, ECF No. 10741; Pls.' Mem. of Law at 6, ECF No. 10809. The second, service according to an "international convention on service of judicial documents," was likewise unavailable because there is no service convention between the U.S. and Iran. 28 U.S.C. § 1608(a)(2); see, e.g., Pls.' Mem. of Law at 5–6, ECF No. 10425. The third, service by registered "mail," proved ineffective; the Clerk of Court mailed the requisite documents, but neither the Islamic Republic of Iran or Islamic Revolutionary Guard Corps acknowledged receipt. 28 U.S.C. § 1608(a)(3); see Pls.' Mem. of Law at 6, ECF No. 10425; Pls.' Mem. of Law at 6–7, ECF No. 10741; Pls.' Mem. of Law at 6, ECF No. 10809. The fourth, service via "diplomatic channels," finally succeeded. 28

---

[2] As noted above, 28 U.S.C. § 1330(a) grants jurisdiction over only "nonjury" actions. The Burnett complaint includes a jury demand, but this does not deprive the Court of jurisdiction. See No. 15-cv-09903, ECF No. 53, at 1089; Houston v. Murmansk Shipping Co., 667 F.2d 1151, 1154 (4th Cir. 1982). Where "a complaint contains a request for a jury trial . . . [against a foreign state] defendant," "the sensible practice is simply to strike the jury demand." Houston, 667 F.2d at 1154.

U.S.C. § 1608(a)(4); see Pls.' Mem. of Law at 6, ECF No. 10425; Pls.' Mem. of Law at 7, ECF No. 10741; Pls.' Mem. of Law at 6, ECF No. 10809.

For agencies or instrumentalities of foreign states, the FSIA sets out a separate list of three potential methods of service, also in descending order of preference. See 28 U.S.C. § 1608(b). The first is again service by "special arrangement." 28 U.S.C. § 1608(b)(1). The second method allows for service to be delivered "to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States," or according to an "international convention on service of judicial documents." 28 U.S.C. § 1608(b)(2). Neither applied to the Burnett Plaintiffs and the Central Bank of the Islamic Republic of Iran. See Pls.' Mem. of Law at 6, ECF No. 10425; Pls.' Mem. of Law at 7, ECF No. 10741; Pls.' Mem. of Law at 7, ECF No. 10809. So, as permitted by the third method, the Burnett Plaintiffs attempted service by registered "mail," which succeeded. 28 U.S.C. § 1608(b)(3)(B); see Pls.' Mem. of Law at 6–7, ECF No. 10425; Pls.' Mem. of Law at 7, ECF No. 10741; Pls.' Mem. of Law at 7, ECF No. 10809; Aff. of Service, No. 15-cv-09903, ECF No. 64.

Because the Burnett Plaintiffs properly effectuated service under 28 U.S.C. § 1608(a)(4) and 28 U.S.C. § 1608(b)(3) on claims within the Court's subject matter jurisdiction, the Court has personal jurisdiction over the Iran Defendants.

## II.    The Iran Defendants Have Defaulted

After the Burnett Plaintiffs effectuated service, the Iran Defendants had "sixty days" to "serve an answer or other responsive pleading." 28 U.S.C. § 1608(d). The Iran Defendants did not respond or otherwise appear in that time or since. The Clerk of Court properly entered a Certificate of Default against the Iran Defendants on December 5, 2016. See Clerk's Certificate of Default, No. 15-cv-09903, ECF No. 67.

### III.    The Iran Defendants Are Liable Under State Tort Law

The Burnett Plaintiffs ask the Court to find the Iran Defendants liable under New York tort law. As the Court has confirmed, state tort claims can be brought against foreign states. See King Opinion, at *3 (quoting Cassirer v. Thyssen-Bornemisza Collection Found., 596 U.S. 107, 114 (2022)) ("[A] foreign state, if found ineligible for immunity [under the FSIA], must answer for its conduct just as any other actor would."). In effect, the FSIA acts as "a 'pass-through' to the substantive law that would govern a similar suit between private individuals." Cassirer, 596 U.S. at 114 (quoting Oveissi v. Islamic Republic of Iran, 573 F.3d 835, 841 (D.C. Cir. 2009)); see In re 9/11, 2023 WL 5132138, at *12 (S.D.N.Y. Aug. 10, 2023) (citing Leibovitch v. Islamic Republic of Iran, 697 F.3d 561, 572 (7th Cir. 2012), and Owens, 864 F.3d at 809, in support of viability of state law claims against Sudan). Accordingly, the Iran Defendants are subject to suit under state tort law.

### A.  Choice of Law

The Court must therefore determine which state's laws to apply. The Court follows New York's choice-of-law doctrine because the Plaintiffs filed their complaint in this District. See Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993) (explaining that MDL courts apply the choice-of-law rules of "the jurisdiction in which the action was filed"). New York has different choice-of-law rules for "loss-allocating" and "conduct-regulating" torts, but under either framework, the law of the "place of the tort" controls. In re 9/11, 2023 WL 5207985, at *2–3 (S.D.N.Y. Aug. 14, 2023). Thus, the Court applies the law of the jurisdiction "where the last event necessary to make the [defendant] liable occurred," even if "the defendant's . . . [mis]conduct occur[red] . . . in another [jurisdiction]." Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 195 (1985).

For these <u>Burnett</u> Plaintiffs, the "last event necessary to make [the Defendants] liable" occurred in New York. <u>Id.</u> Accordingly, the Court will apply New York tort law as it has done in prior cases.

### B. Wrongful Death

The Court has previously found the Iran Defendants liable for wrongful death under New York law. <u>See</u> <u>In re 9/11</u>, 2025 WL 673050, at *2; 2024 WL 3046225, at *2 (finding Iran liable for wrongful death). But in the interest of completeness, the Court provides a brief analysis below.

Under New York law, a "personal representative . . . may maintain an action to recover damages for a wrongful act . . . which caused the decedent's death against a [defendant] who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. Est. Powers & Trusts Law § 5-4.1. In other words, "New York law imposes liability for (1) the 'death of a human being' where (2) 'a wrongful act, neglect or default . . . caused the decedent's death,' (3) the decedent's survivors 'suffered pecuniary loss by reason of the decedent's death,' and (4) a 'personal representative' has been appointed to represent the decedent." <u>In re 9/11</u>, 2025 WL 673050, at *2 (quoting <u>Chamberlain v. City of White Plains</u>, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013)).

The <u>Burnett</u> Plaintiffs asserting wrongful death claims meet this standard. <u>See</u> <u>Burnett</u> Am. Compl. at 1086–87, No. 15-cv-09903, ECF No. 53 (wrongful death cause of action). First, they are asserting their claims on behalf of people killed in the 9/11 Attacks. Pls.' Mem. of Law at 10–11, ECF No. 10425. Second, the Court has found that the Iran Defendants' "wrongful act[s]" "caused" the 9/11 Attacks and the 9/11 decedents' deaths. <u>See</u> <u>supra</u> I.A at 5; <u>see also</u> <u>In re 9/11</u>, 2011 WL 13244047, at *39–42. Because the Iran Defendants' wrongful acts "support liability for personal injuries," the Court has reasoned, those acts also "satisfy the core

requirement that wrongful death claims be predicated on conduct for which the defendant 'would have been liable to the decedent . . . if death had not ensued.'" In re 9/11, 2024 3046225, at *2 (citing King Opinion; and then quoting N.Y. Est. Powers & Trusts Law § 5-4.1(1)). Third, the decedents' survivors suffered pecuniary losses due to the decedents' deaths, as detailed in the Plaintiffs' expert reports. See Eubanks Decl., ECF No. 10426-2. And fourth, the Burnett Plaintiffs bringing wrongful death claims are themselves the personal representatives of the decedents' estates. The Court therefore recommends finding the Iran Defendants liable to the Burnett Plaintiffs listed in Exhibit A under New York's wrongful death statute.

### C. Survival

The Court has also previously found Iran liable under New York's survival statute. See In re 9/11, 2024 WL 3046225, at *2–3. For completeness, the Court applies that holding to the case at hand.

In New York, a survival claim "is recognized as a separate cause of action" that "'can be brought by [a decedent's] estate.'" Johnson v. New York State Police, 659 F. Supp. 3d 237, 260–61 (N.D.N.Y. 2023) (quoting Ocasio v. City of Canandaigua, 513 F. Supp. 3d 310, 328 (W.D.N.Y. 2021)). Survival claims are often "used in tandem" with wrongful death claims and "permit estates to recover for pain and suffering prior to death." In re 9/11, 2024 WL 3046225, at *3 (internal quotation marks omitted). To recover pain and suffering damages under New York's survival statute, a plaintiff "must show an underlying cause of action that the decedent would have been able to pursue had he survived the alleged wrongdoing." Chamberlain, 986 F. Supp. 2d at 398 (quoting N.Y. Est. Powers & Trusts Law § 11-3.2(b).

The Burnett Plaintiffs asserting survival claims "have satisfied this theory of liability." In re 9/11, 2024 WL 3046225, at *3; see Burnett Am. Compl. at 1087–88, No. 15-cv-09903, ECF No. 53 (survival cause of action). Their claims arise from the pain and suffering experienced by

9/11 decedents who "sustained fatal injuries in the attacks on the World Trade Center." Id.; see also Pls.' Mem. of Law at 10, ECF No. 10425. They have established an "underlying cause of action," Chamberlain, 986 F. Supp. 2d at 398, because "Iran is liable for aiding and abetting the assault and battery that produced those injuries,"[3] In re 9/11, 2024 WL 3046225, at *3 (citing King Opinion). And, as the Court has held, the "same facts warrant" finding the Iran Defendants liable for the Burnett decedents' pain and suffering prior to their deaths. Id. Therefore, the Court recommends finding the Iran Defendants liable to the Burnett Plaintiffs listed in Exhibit A under New York's survival statute.

### D. Intentional Infliction of Emotional Distress

#### 1. The Plaintiffs' Factual Allegations Support Their IIED Claims

The Court has likewise found the Iran Defendants liable for intentional infliction of emotional distress ("IIED") under New York law. In re 9/11, 2025 WL 673050, at *3; 2024 WL 3046225, at *3 (finding Iran liable for IIED). Again, the Court provides its analysis in the interest of completeness.

The Court must first confront the fact that the relevant Amended Complaint does not explicitly include a claim for IIED. See Burnett Am. Compl. at 1082–1088, No. 15-cv-09903, ECF No. 53. The Court's assessment of the facts—and whether they "constitute a legitimate cause of action"—is not limited to the legal theories raised in the complaint. In re Indus. Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) (cleaned up); see Bricklayers & Allied Craftworkers Loc. 2 Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 187–89 (2d Cir. 2015) (analyzing well-pleaded facts to determine default liability without reference to theories asserted in complaint). The Court has previously

---

[3] In New York, liability for assault and battery extends beyond the principal tortfeasor to those who aided and abetted him. See Lindsay v. Lockwood, 625 N.Y.S.2d 393, 396–98 (N.Y. Sup. Ct. 1994).

emphasized that "a FSIA plaintiff '[does] not have to identify [a] specific source of law in his complaint' *at all*." King R&R, at *5 (emphasis in original) (quoting Oveissi, 573 F.3d at 840); cf. Owens v. Republic of Sudan, 531 F.3d 884, 894 (D.C. Cir. 2008) (FSIA cases are not subject to "heightened pleading requirement[s]").

Rather, a district court "retains the power to 'determine whether a cause of action is available under state or foreign law'" and "determine which body of law governs the plaintiffs' claims." King R&R, at *5 (quoting Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 153–54 (D.D.C. 2011); and then quoting Est. of Botvin ex rel. Ellis v. Islamic Republic of Iran, 684 F. Supp. 2d 34, 39 (D.D.C. 2010)). That analysis is "driven by facts." King R&R, at *5. The "factual allegations" are what a defaulting defendant "admits," City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011), and the "factual allegations must themselves be sufficient to establish a right to relief," Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 365 (E.D.N.Y. 2022) (cleaned up).

The Burnett Plaintiffs have pleaded factual allegations that cogently charge the Iran Defendants with legal responsibility for the deaths of the 9/11 decedents and the Plaintiffs' resulting emotional distress:

- **"Iran . . . entered into an alliance with al-Qaeda** . . . to work together to conduct terrorist operations against the United States." Burnett Am. Compl. ¶ 4976.

- Through that partnership, **"Iran . . . had actual foreknowledge of[] . . . the 9/11 [A]ttacks** . . . [,] which were carried out by members of al-Qaeda." Id. ¶ 5006.

- In the lead up to 9/11, **"Iran . . . assist[ed] in, and contribut[ed] to, the preparation and execution of the plans" for the Attacks**, id. ¶ 4951, including by providing "instruction, training, direction, financing, and support" to al Qaeda, id. ¶ 5031.

- **"In furtherance of those plans, the al-Qaeda hijackers deliberately caused planes to crash into** the World Trade Center Towers, the Pentagon, and a field in Shanksville, Pennsylvania on

12

September 11, 2001." <u>Id.</u> Those Attacks "**caus[ed]** the deaths of the 9/11 Decedents." <u>Id.</u> ¶ 5015.

- As a result, the "families of those murdered **suffer and will continue to suffer** permanent, physical and emotional **distress**, severe trauma, and lasting physical, emotional, and psychological injuries." <u>Id.</u> ¶ 5065. They "will **forever grieve** the deaths of the 9/11 Decedents." <u>Id.</u> ¶ 5043.

Later, the Plaintiffs identified IIED as an appropriate cause of action. <u>See</u> Pls.' Mem. of Law at 8–15, ECF No. 10741; Pls.' Mem. of Law at 8–15, ECF No. 10809. The Court is thus free to draw on this theory of liability as it considers whether the <u>Burnett</u> Plaintiffs have established their "right to relief by evidence satisfactory to the [C]ourt." 28 U.S.C. § 1608(e).

### 2. The Iran Defendants Are Liable for IIED Under New York Law

In New York, an IIED claim "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." <u>Howell v. N.Y. Post Co., Inc.</u>, 81 N.Y.2d 115, 121 (1993); <u>accord</u> <u>Rich v. Fox News Network, LLC</u>, 939 F.3d 112, 122 (2d Cir. 2019).

The Plaintiffs' uncontroverted submissions and this case's long record plainly establish all four elements under New York law. Iran knew of "the plan to crash hijacked civilian airliners into American cities." <u>In re 9/11</u>, 2011 WL 13244047, at \*22. Iran intentionally "provided direct support to al Qaeda specifically for th[ose] attacks" in the form of "planning, funding, facilitation of the hijackers' travel and training, and logistics, and . . . the provision of services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation." <u>Id.</u> at \*40. And that support "vastly increased the likelihood of the operational success of the 9/11 plot." <u>Id.</u> at \*16.

Such conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community." Howell, 81 N.Y.2d at 122 (quoting Murphy v. American Home Prods.
Corp., 58 N.Y.2d 293, 303 (1983)); accord Restatement (Second) of Torts § 46 cmt. d (Am. L.
Inst. 1965)). The 9/11 Attacks, and the Iran Defendants' efforts in precipitating them, stand
"contrary to the guarantees 'recognized as indispensable by civilized peoples.'" In re 9/11, 2011
WL 13244047, at *39 (quoting 28 U.S.C. § 1350 note). The Attacks had an "indelible impact on
the lives of the victims' families" and left the Plaintiffs in severe emotional distress. In re 9/11,
2012 WL 4711407, at *2 (Oct. 3, 2012).

That leaves causation. And the Court has already found that "Iran's 'material support'
proximately 'caused' the 9/11 Attacks." King R&R, at *3 (quoting In re 9/11, 2011 WL
13244047, at *41); see also King Opinion, at *2 (stating that "Iran's tortious acts—specifically,
its provision of material support to al Qaeda—proximately caused the 9/11 attacks"). There is
thus "a causal connection" between the Iran Defendants' conduct and the Burnett Plaintiffs'
distress. Howell, 81 N.Y.2d at 121. Indeed, subject matter jurisdiction in this matter is premised
on that very finding—that "a tortious act or acts of the foreign state" "caused" an "injury" or
"death" in the United States. 28 U.S.C. § 1605B(b).

Having established all four elements of their IIED claims, the Burnett Plaintiffs face two
remaining hurdles: the so-called "presence" and "contemporaneous perception" limitations found
in the Second and Third Restatements of Torts.[4] These rules provide that immediate family
members "who are not direct victims of the extreme and outrageous conduct" can recover
damages from an IIED claim only if "they [were present during or] contemporaneously

---

[4] New York looks to the Second Restatement in IIED cases. See Rich v. Fox News Network, LLC, 939
F.3d at 121–22 (citing Howell, 81 N.Y.2d at 121) ("New York has adopted the Restatement (Second)
formulation of IIED."). But, since the Third Restatement "supersedes" the Second, the Court includes
both rules here. Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 46 cmt. a (Am. L.
Inst. 2012).

perceived the injurious conduct." Kumar v. Republic of Sudan, No. 2:10-cv-171, 2019 WL

13251350, at *12 (E.D. Va. July 31, 2019).

The Court has made clear that the Burnett Plaintiffs' claims clear these hurdles because

they fall under a "terrorism exception." In re 9/11, 2025 WL 673050, at *3. It "is well settled,"

the Court has explained, "that an IIED claim arising from a terrorist attack that killed the

plaintiff's immediate family member should not be restricted by the Restatement's presence or

contemporaneous perception requirements." R. & R. at 17, Jan. 13, 2025, ECF No. 10665.

Specifically, the Court has found, that "in proximately causing the 9/11 Attacks, the Iran

Defendants intentionally precipitated an onslaught that 'by [its] very nature' was 'designed to

create maximum emotional impact, particularly on [the Burnett Plaintiffs].'" Id. (quoting

Republic of Sudan v. Owens, 194 A.3d 38, 43 (D.C. 2018)). Therefore, the Court recommends

finding the Iran Defendants liable to the Burnett Plaintiffs listed in Exhibit B for IIED under

New York law.

**IV.    The Plaintiffs Are Entitled to Damages**

Next, the Court must decide damages. Those Burnett Plaintiffs who are the personal

representatives of the estates of non-U.S. national 9/11 decedents seek $2,000,000 in pain and

suffering damages—the same amount given to the estates of 9/11 decedents who were U.S.

nationals. See Pls.' Mem. of Law at 1, ECF No. 10425; see also R. & R. at 7–9, ECF No. 2618

(recommending a $2,000,000 award for pain and suffering damages). They also seek economic

damages for certain decedents' estates based on the pecuniary losses detailed in their

corresponding expert reports. See Pls.' Mem. of Law at 1, ECF No. 10425; see also Eubanks

Decl., ECF No. 10426-2 (expert reports). Those Burnett Plaintiffs who are the immediate family

members of non-U.S. national 9/11 decedents, meanwhile, ask the Court to apply the framework

for solatium damages used for claims made by U.S. nationals under § 1605A. <u>See</u> Pls.' Mem. of Law at 15–18, ECF No. 10741; Pls.' Mem. of Law at 15–18, ECF No. 10809.

The Court recommends applying these preexisting damages frameworks to the <u>Burnett</u> Plaintiffs' claims because "considerations of fairness dictate that the[se] preexisting . . . damages framework[s] appl[y] to non-U.S. nationals as well." <u>King Opinion</u>, at *5. Accordingly, the Court recommends granting the <u>Burnett</u> Plaintiffs in Exhibit A $2,000,000 in pain and suffering damages, as well as the economic damages reflected in that Exhibit. The Court further recommends granting the <u>Burnett</u> Plaintiffs in Exhibit B solatium damages for IIED in the following amounts: $12,500,000 to the spouse of a 9/11 decedent; $8,500,000 to the parent of a 9/11 decedent; $8,500,000 to the child of a 9/11 decedent; and $4,250,000 to the sibling of a 9/11 decedent. <u>See</u> Mem. Decision & Order at 4, ECF No. 2623.

## CONCLUSION

The Court recommends granting the <u>Burnett</u> Plaintiffs' motions at ECF Nos. 10424, 10740, and 10808. The Court recommends finding the Iran Defendants liable for wrongful death, survival, and IIED under New York law, and awarding the <u>Burnett</u> Plaintiffs damages as provided in the attached Exhibits.

The Plaintiffs listed in those Exhibits should also be awarded prejudgment interest at a rate of 4.96 percent per annum, compounded annually. The interest should accrue over different time periods, depending on the type of damages awarded: prejudgment interest on pain and suffering, and solatium, damages should run from September 11, 2001, until the date of the judgment; and prejudgment interest on economic damages should run from the date indicated in the "Date of Report" column in Exhibit A until the date of judgment.

All <u>Burnett</u> Plaintiffs should be permitted to submit further applications for damages, including punitive damages, consistent with any future rulings of the Court.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:     April 17, 2025
           New York, New York

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); <u>see</u> Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. <u>See</u> Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Daniels. <u>See</u> Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. James</u>, 712 F.3d 79, 105 (2d Cir. 2013).

# Exhibit A

Exhibit A
Non-U.S. National 9/11 Decedents (NY)

| # | Personal Representative | | | | 9/11 Decedent | | | | | | | Claim Information | | | Pain & Suffering Damages | | Economic Damages | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | First | Middle | Last | Suffix | First | Middle | Last | Suffix | Nationality on 9/11 | Date of Death | 9/11 Site | Case | Complaint | Amendments & Substitutions | Prior Award | Amount | Report | Date of Report | Prior Award | Amount |
| 1 | Joy, Adrian | | Bennett, Bennett | | Oliver | Duncan | Bennett | | United Kingdom | 9/11/01 | NY (WTC) | 15cv9903 | 1:15-cv-09903, 53, at 3570 | 9962, at 4-5, 10036 | | $ 2,000,000.00 | | 1/31/2024 | | $ 10,186,843.00 |
| 2 | Derek | Edward | Bristow | | Paul | Gary | Bristow | | United Kingdom | 9/11/01 | NY (WTC) | 15cv9903 | 1:15-cv-09903, 53, at 3328 | 9962, at 14, 10036 | | $ 2,000,000.00 | | 1/29/2024 | | $ 12,798,670.00 |
| 3 | Abigail | Jane | Carter | | Caleb | Arron | Dack | | United Kingdom | 9/11/01 | NY (WTC) | 15cv9903 | 1:15-cv-09903, 53, at 103 | 9962, at 6, 10036 | | $ 2,000,000.00 | | 1/9/2020 | | $ 18,343,242.00 |
| 4 | David | | de Vere | | Melanie | Louise | De Vere | | United Kingdom | 9/11/01 | NY (WTC) | 15cv9903 | 1:15-cv-09903, 53, at 3552 | 9962, at 7, 10036 | | $ 2,000,000.00 | | | | |
| 5 | Raymond | D. | Duger | | Antoinette | | Duger | | Italy | 9/11/01 | NY (WTC) | 15cv9903 | 1:15-cv-09903, 53, at 1619 | 9962, at 8, 10036 | | $ 2,000,000.00 | | 1/10/2020 | | $ 7,411,252.00 |
| 6 | Ellen | Ruth | Judd | | Christine | | Egan | | United Kingdom | 9/11/01 | NY (WTC) | 15cv9903 | 1:15-cv-09903, 53, at 3573 | 9962, at 9, 10036 | | $ 2,000,000.00 | | | | |
| 7 | Timothy, Glyn | | John, John | | Nicholas | | John | | United Kingdom | 9/11/01 | NY (WTC) | 15cv9903 | 1:15-cv-09903, 53, at 3250 | 9962, at 10-11, 10036 | | $ 2,000,000.00 | | | | |
| 8 | Angela, Keith | Elizabeth, John | Rogers, Rogers | | Karlie | Barbara | Rogers | | United Kingdom | 9/11/01 | NY (WTC) | 15cv9903 | 1:15-cv-09903, 53, at 3596 | 9962, at 12-13, 10036 | | $ 2,000,000.00 | | | | |

# Exhibit B

Exhibit B - Solatium

| Claimant | | | | | 9/11 Decedent | | | | | | | Claim Information | | | | Solatium Damages | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First | Middle | Last | Suffix | Nationality on 9/11 | First | Middle | Last | Suffix | Nationality on 9/11 | Date of Death | 9/11 Site | Case | Complaint | Amendments & Substitutions | Relationship | Documentation | Prior Award | Amount | |
| Justin | Michael | Bennett | | U.K. | Oliver | Duncan | Bennett | | U.K. | 9/11/01 | NY | 9903 | 15-cv-09903, 53, at 3572 | 10207, at 161, 10219 | Sibling | | | $ | 4,250,000.00 |
| Joy | | Bennett | | U.K. | Oliver | Duncan | Bennett | | U.K. | 9/11/01 | NY | 9903 | 15-cv-09903, 53, at 3571 | 9962, at 4, 10036 | Parent | | | $ | 8,500,000.00 |
| Angela | Elizabeth | Rogers | | U.K. | Karlie | Barbara | Rogers | | U.K. | 9/11/01 | NY | 9903 | 15-cv-09903, 53, at 3595 | 9962, at 12, 10036 | Parent | | | $ | 8,500,000.00 |
| Keith | | Rogers | | U.K. | Karlie | Barbara | Rogers | | U.K. | 9/11/01 | NY | 9903 | 15-cv-09903, 53, at 3596 | 9962, at 13, 10036 | Parent | | | $ | 8,500,000.00 |
| Joanna | K. | Wells | | U.K. | Vincent | Michael | Wells | | U.K. | 9/11/01 | NY | 9903 | 15-cv-09903, 53, at 3615 | 10207, at 182, 10219 | Sibling | | | $ | 4,250,000.00 |
| Timothy | | John | | U.K. | Nicholas | | John | | U.K. | 9/11/01 | NY | 9903 | 15-cv-09903, 53, at 3215 | 9962, at 11, 10036 | Sibling | | | $ | 4,250,000.00 |
| Keith | Trevor | Cudmore | | U.K. | Neil | James | Cudmore | | U.K. | 9/11/01 | NY | 9903 | 15-cv-09903, 53, at 3325 | 10207, at 178, 10219 | Sibling | | | $ | 4,250,000.00 |
| Matthew | Ian | Campbell | | U.K. | Geoffrey | Thomas | Campbell | | U.K. | 9/11/01 | NY | 9903 | | 1:15-cv-09903, 826, at 1 | Sibling | | | $ | 4,250,000.00 |
| Maureen | Lucille | Campbell | | U.K. | Geoffrey | Thomas | Campbell | | U.K. | 9/11/01 | NY | 9903 | | 1:15-cv-09903, 826, at 2 | Parent | | | $ | 8,500,000.00 |
| Robert | Benjamin | Campbell | | U.K. | Geoffrey | Thomas | Campbell | | U.K. | 9/11/01 | NY | 9903 | | 1:15-cv-09903, 826, at 3 | Sibling | | | $ | 4,250,000.00 |