# Exhibit 679

# J

FBI 8023-60

REDACTED FOR PUBLIC FILING

(F)

FD-340 (7-19-00)

**Universal Case File Number** 2650 - NY- 280350- 1A

**Field Office Acquiring Evidence** San, Diego

**Serial # of Originating Document** (F)

**Date Received** 9/14/01

**From** _____ , VP- Western Natil Ays Mgmt.
(Name of Contributor)

8 Executive Circle
(Address of Contributor)

Irvine, CA 92614- 6746
(City and State)

(P-1), (S)

**By** _____

To Be Returned ☐ Yes   ☐ No

Receipt Given ☐   ☑ No

Grand Jury Material - Disseminate Only Pursuant to Rule 6 (e)
Federal Rules of Criminal Procedure
☐ Yes   ☑ No

Federal Taxpayer Information (FTI)
☐ Yes   ☑ No

**Title:** Twin Towers Bombing
PENT BOMB;
Major Case /82

**Reference:** E0302, (F)
(Communication Enclosing Material)

**Description:** ☐ Original notes re interview of

Original ventol records for
6401 Mt. Ada Rd, # ___
San Diego, CA; (F)

(F)

(F)

FBI008023

REDACTED FOR PUBLIC FILING

# APARTMENT MOVE-IN / MOVE-OUT LIST

Community __Parkwood__    Resident __Holly__    Apt. No. ▮▮▮

Move-In Inspection Date __2-3-00__    Move-Out Inspection Date _____

Keys Issued _____    Keys Returned _____    Garage/Carport # _____

Maint. Request No._____

| | | Move-In Remarks | Move-Out Remarks | Maint. Dept. Comments |
|---|---|---|---|---|
| **LIV. ROOM** | FIREPLACE | | | |
| | WALLS / CEILING | | | |
| | WINDOWS / SCREENS | O/R | | |
| | FLOOR / CARPET | | | |
| | DRAPES / BLINDS | Needs Paint | | |
| **DIN. ROOM** | WALLS / CEILING | | | |
| | WINDOWS / SCREENS / TRACK | | | |
| | CARPET | | | |
| | DRAPES / BLINDS | Needs Paint | | |
| **KITCHEN** | WALLS / CEILING | | | |
| | COUNTERS / TILE | | | |
| | FLOOR | | | |
| | CABINETS / CLOSETS | | | |
| | STOVE / OVEN | old Stove | | |
| | DISPOSAL | | | |
| | LIGHTS | | | |
| | REFRIGERATOR | vynle old | | |
| | MICROWAVE | | | |
| | DISHWASHER | Scraped | | |
| | CUTTING BOARD | | | |
| | VENT HOOD / FAN | | | |
| | SINKS / FAUCETS | | | |
| **HALL** | WALLS | | | |
| | CEILING | NP | | |
| | FLOOR / CARPET | | | |
| | OTHER | | | |
| **BDRM #1** | WALLS / CEILING | | | |
| | LIGHTS / MIRRORS | | | |
| | FLOOR / CARPET | O/R | | |
| | CLOSET / DOORS | | | |
| | DRAPES / BLINDS | Needs Paint | | |
| **BDRM #2** | WALLS / CEILING | | | |
| | LIGHTS / MIRRORS | | | |
| | FLOOR / CARPET | O/R | | |
| | CLOSET / DOORS | | | |
| | DRAPES / BLINDS | | | |
| **BDRM #3** | WALLS / CEILING | | | |
| | LIGHTS / MIRRORS | | | |
| | FLOOR / CARPET | X | | |
| | CLOSET / DOORS | | | |
| | DRAPES / BLINDS | | | |
| **BATHS** | WALLS / CEILINGS | | | |
| | WINDOWS / DOORS | | | |
| | FLOOR | | | |
| | MIRRORS | | | |
| | TILE / GROUT | X | | |
| | LIGHTS / VENT FAN | | | |
| | CABINETS | | | |
| | FIXTURES / TOWEL BARS | | | |
| | SINK / FAUCETS | | | |
| | TUB / SHOWER / CAULK | | | |
| | TOILET | | | |
| **TURN OVER** | CLEANING | partial cln | complete / partial   Med | |
| | DRAPES / BLINDS | | clean / replace | |
| | PAINT | None | full / flat / enamal | |
| | CARPET | Shampoo | shampoo / dye / replace  35.00 | |
| | WINDOWS | | CUC 61.86 | |
| | DOORS / LOCKS | ▮▮▮ | | FBI008024 |
| | GARAGES | | | |
| | SCREENS | REDACTED FOR PUBLIC FILING | | |
| **C.** | LIGHT FIXTURES | | | |

| | AIR CONDITIONER | | | |
| M | SMOKE DETECTOR | | | |
| | PATIO/BALCONY | | | |
| | MISC. | | | |
| | MISC. | | | |
| | MISC. | | | |

I(we) acknowledge the premises are being delivered in clean and good condition, and with no spots, stains, marks or damages, unless otherwise noted above. I(we) have inspected the premises prior to occupancy and accept this Move-In/Move-Out list as part of the Rental Agreement and agree that it is an accurate account of the condition of said premises.

Resident(s) _____

Date

Resident(s) _____

Date

Resident(s) _____

Date

Resident(s) _____

Date

Management _____  2-3-00

Date

Management _____  6-2

Date

RESIDENT FILE

WESTERN NATIONAL PROPERTY MANAGEMENT, INC.
a member of
THE WESTERN NATIONAL GROUP

5101 (Rev. 6-93)

REDACTED FOR PUBLIC FILING

FBI008025

# APPLICATION TO RENT

| | |
|---|---|
| COMPLEX _____ | DATE _____ |
| AGENT _____ | CALLED TO _____ |
| W.O.# _____ | TIME IN _____ |
| APT. # _____ | DATE BACK _____ |
| RENT $ _____ | TIME BACK _____ |

NAME: Al-Hazmi / LAST        Nawaf / FIRST        M / M.I.        (JR., SR.)        ( ___ ) _____ PHONE NUMBER

AL-HAZMI / SOCIAL SECURITY #        NAWAF        DRIVERS LICENSE #        Yes/No ARE YOU OVER 18

| PROSPECTIVE RESIDENTS | RELATIONSHIP | OVER 18 (or emancipated minor) | SOCIAL SECURITY # |
|---|---|---|---|
| _____ | _____ | Yes/No | _____ |
| _____ | _____ | Yes/No | _____ |

## RESIDENCES

PRESENT ADDRESS: 6333 Mt. Ada # [redacted]    APT.    SD / CITY    CA / STATE    92111 / ZIP

PREVIOUS ADDRESS: Sandi Arabia    APT #    CITY    STATE    ZIP

| COMPLEX NAME | RENT $ PAID |
|---|---|
| MANAGER'S # | HOW LONG |
| MANAGER'S # | HOW LONG |
| COMPLEX NAME | RENT $ PAID |

HAVE YOU EVER BEEN DELINQUENT IN PAYMENT OF RENT? _____    PLEASE EXPLAIN _____
HAVE YOU EVER BEEN EVICTED FROM ANY PROPERTY?  YES _____ NO _____    PLEASE EXPLAIN _____
WHY ARE YOU LEAVING PRESENT RESIDENCE? _____
HAVE YOU GIVEN NOTICE YET? _____

## EMPLOYMENT

| PRESENT EMPLOYER | ADDRESS | CITY | ZIP | ( ___ ) PHONE # | HOW LONG |
|---|---|---|---|---|---|
| SUPERVISOR'S NAME | YOUR POSITION | | | | GROSS SALARY — WK MO YR |
| PREVIOUS EMPLOYER | ADDRESS | CITY | ZIP | ( ___ ) PHONE # | HOW LONG |
| SUPERVISOR'S NAME | YOUR POSITION | | | | GROSS SALARY — WK MO YR |
| PREVIOUS EMPLOYER | ADDRESS | CITY | ZIP | ( ___ ) PHONE # | HOW LONG |
| SUPERVISOR'S NAME | YOUR POSITION | | | | GROSS SALARY — WK MO YR |

ARE YOU RECEIVING CHILD SUPPORT? _____ HOW MUCH? $ _____
ARE YOU RECEIVING A PENSION? _____ HOW MUCH? $ _____ COMPANY _____
OTHER ADDITIONAL INCOME: $ _____
CAN YOU PROVIDE PROOF OF THESE INCOMES? _____

### OFFICE USE ONLY

| | |
|---|---|
| Present Residence _____ | Phone Number Called _____ |
| Verifying Party _____ Position _____ | Length of Residency _____ |
| How many NSFs? _____ How many Lates? _____ Thirty Day Notice Given? _____ | Rent/Mortgage per Month? $ _____ |
| Comments: _____ Date: _____ | Employees Initials _____ |

Previous Residence _____                    FBI008026
Verifying Party _____                    h of Residency _____
How many NSFs? _____ How many Lates? _____ Thirty Day Notice Given? _____ Rent/Mortgage per Month? $ _____
Employees Initials _____

REDACTED FOR PUBLIC FILING

REDACTED FOR PUBLIC FILING

## Credit References

CHECKING ACCT. BANK ____ ADDRESS/BRANCH ____ PHONE # ____ BRANCH # ____ ACCT. # ____

CREDIT REFERENCES ____ ADDRESS ____ TYPE ACCT. ____ ACCT. # ____

CREDIT REFERENCES ____ ADDRESS ____ TYPE ACCT. ____ ACCT. # ____

## Personal References

NAME: Omar Al-Bayoumi ADDRESS: 6333 Mt Ada # PHONE #: [redacted]-7623 RELATIONSHIP: Friend

NAME ____ ADDRESS ____ PHONE # ____ RELATIONSHIP ____

## In Case of Emergency

NAME: Omar ADDRESS: 6333 Mt. Ada Road #

RELATIONSHIP: Friend PHONE #: [redacted]-7623

## Automobiles

Comments
Present Employer [redacted] lary ? $ ____ WK MO YR
Verifying Party ____ [redacted] New Employment "Offer Letter" required? * ____
Require Paystubs? Yes ____ No* ____ Tax Return (s)? Yes ____ No* ____
Employee Initials ____ Date: ____

Previous Employer ____ Phone Number Called ____ Length of Employment ____
____ Position of person that Verified ____ Salary ? $ ____ WK MO YR
Verifying Party ____ Tax Return (s)? Yes ____ No* ____ New Employment "Offer Letter" required?
Require Paystubs? Yes ____ No* ____
Employee Initials ____ Date: ____ (*Copies must be attached and must be equal to or greater than rental amount)

Additional Income Source ____ Phone Number Called ____ Length of employment ____
Verifying Party ____ Proof of Additional Income Attached? (bank statement showing direct deposit, court order of child support, alimony or trust fund, copy of Social Security, Disability or Pension Statement, notarized letter of parental support, Tax returns or Investment Statements) Employee's Initials ____ Date ____ Comments ____

FBI006027

```
06/02/2000                          WESTERN NATIONAL GROUP                              Page  1
2:47 pm                           Parkwood Apartments 2216                              ID 2.8.0
                                    Deposit Disposition
                                          w//30
                                  Unit:  ▮                    JUN 0 5 2000
                               Address: 6401 Mt. Ada Road #
                              City/State: SAN DIEGO, CA 92111
```

| | |
|---|---|
| Name: Al Hazimi, Nawaf* | Current Rent: 775.00 |
| Nc Poward | Resident I.D.: T00000381 |
| 6401 Mt. Ada Road | Notice Given On: 05/01/2000 |
| San Diego, CA 92111 | Notice Given For: 06/01/2000 |
| -5919 | |

| | |
|---|---|
| Applied: 02/05/2000 |
| Moved In: 02/05/2000 |
| Lease Start: 02/05/2000 |
| Lease End: 05/31/2000 |
| Move Out: 05/31/2000 |

Rent Account:

| Date | Description | Code | Charge | Pmt/Credit | Balance |
|------|-------------|------|--------|-----------|---------|
| 04/03/2000 | Balance Forward | CA RENT | 478.00 | | |
| 04/03/2000 | Payment, Check, Al Hazimi | FZ PMT | | 478.00 | |
| 05/01/2000 | Renter's Ins - Comprehensive | CJ INSC | 8.00 | | |
| 05/01/2000 | RENT | CA RENT | 775.00 | | |
| 05/01/2000 | Payment, Check, Al Hazimi | PZ PMT | | 775.00 | |
| 05/12/2000 | Payment, Check, Al Hazimi | FZ PMT | | 8.00 | |
| 06/02/2000 | Apt & V.Blind Cleaning Charges | CE CLNG | 40.00 | | |
| 06/02/2000 | steam clean carpet | CE CPTD | 35.00 | | |
| 06/02/2000 | Utility Reimbursements | CK UTLR | 61.86 | | |

Account Balance: 136.86

Deposit Account:

| Date | Description | Code | Increase | Decrease | Balance |
|------|-------------|------|----------|----------|---------|
| 02/05/2000 | Escrow Deposit Paid In | I DEP | 775.00 | | |

Deposit Balance: 775.00

Refund Due: 638.14   *Aw 6/7*

Reason For Leaving: Leaving Town

Comments:

    Account 2100-0000

    Check to follow in 21days

Lease Signer(s):  Al Hazimi, Nawaf  /

                Al Mihdhar, Khalid  /

FBI008028

REDACTED FOR PUBLIC FILING

06/02/2000
2:47 pm

WESTERN NATIONAL GROUP
Parkwood Apartments 2216
Deposit Disposition
W1130

Page   1
ID 2.8.0

Unit:

Address: 6401 Mt. Ada Road N
City/State: SAN DIEGO, CA 92111

**JUN 0 5 2000**

---

Name: Al Hazimi, Nawaf*
   No Foward
   6401 Mt. Ada Road N
   San Diego, CA 92111
   -5919

Current Rent: 775.00
Resident I.D.: T00000381
Notice Given On: 05/01/2000
Notice Given For: 06/01/2000

Applied: 02/05/2000
Moved In: 02/05/2000
Lease Start: 02/05/2000
Lease End: 05/31/2000
Move Out: 05/31/2000

---

Rent Account:

| Date | Description | Code | Charge | Pmt/Credit | Balance |
|------|-------------|------|--------|------------|---------|
| 04/02/2000 | Balance Forward | CA RENT | 478.00 | | |
| 04/03/2000 | Payment, Check, Al Hazimi | PZ PMT | | 478.00 | |
| 05/01/2000 | Renter's Ins - Comprehensive | CJ INSC | 8.00 | | |
| 05/01/2000 | RENT | CA RENT | 775.00 | | |
| 05/01/2000 | Payment, Check, Al Hazimi | PZ PMT | | 775.00 | |
| 05/12/2000 | Payment, Check, Al Hazimi | PZ PMT | | 8.00 | |
| 06/02/2000 | Apt & V.Blind Cleaning Charges | CE CLNG | 40.00 | | |
| 06/02/2000 | steam clean carpet | CE CPTD | 35.00 | | |
| 06/02/2000 | Utility Reimbursements | CK UTLR | 61.86 | | |

Account Balance:   136.86

Deposit Account:

| Date | Description | Code | Increase | Decrease | Balance |
|------|-------------|------|----------|----------|---------|
| 02/05/2000 | Escrow Deposit Paid In | I DEP | 775.00 | | |

Deposit Balance:   775.00

Refund Due:   638.14

Reason For Leaving: Leaving Town

Comments:
   Account 2100-0000
   Check to follow in 21days

Lease Signer(s):   Al Hazimi, Nawaf   /
                   Al Mihdhar, Khalid   /

FBI008029

REDACTED FOR PUBLIC FILING

02/05/2000
6:22 pm

WESTERN NATIONAL GROUP
Parkwood Apartments
Account Ledger
Al Hazimi, Nawaf (T00000381)
Unit #

Page   1
TRAN

| | | | | | | |
|---|---|---|---|---|---|---|
| Applied.......: | 5 Feb 2000 | Autobill Rent...: | 775.00 | Sched Rent .: | 775.00 | |
| Moved In......: | 5 Feb 2000 | Other Charges...: | 0.00 | Telephone #.: | / | |
| Lease Start..: | 5 Feb 2000 | Other Credits...: | 0.00 | Alt Phone #.: | | |
| Lease End....: | 31 May 2000 | Account Balance.: | -78.00 | Alt Phone #.: | | |
| Notice Given.: | | | | Last NSF.....: | | |
| Notice For...: | | Deposit Required.: | 775.00 | Times NSF Checks..: | 0 | |
| Moved Out....: | | Deposit Paid In..: | 775.00 | Times Late Charges.: | 0 | |

| Date | Bldg Unit | Description | User/Source/Jrnl | Document | Code | Period | Charge | Credit | Balance | * |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/05/2000 | | Rent | MGR P RESI | | CA RENT | 200002 | 668.10 | | 668.10 | |
| 02/05/2000 | | Application Fee | MGR S RESI | | CH APPF | 200002 | 30.00 | | 698.10 | |
| 02/05/2000 | | Renter's Ins - Comprehensive | MGR P RESI | | CJ INSC | 200002 | 6.90 | | 705.00 | |
| 02/05/2000 | | Payment, Money Order, Al Haz | MGR M RESI | 203176405 | PZ PMTM | 20000210 | | 783.00 | -78.00 | * |

*** Designates Items Contributing To Delinquent Or Prepaid Balances.

FBI008030

REDACTED FOR PUBLIC FILING



JUL 14 2000

B-2

LO 9b28EL4b8

**UNITED STATES OF AMERICA**  **VISA**

Issuing Post Name
JEDDAH
Surname
AL HAZMI
Given Name
NAWAF M S
Passport Number
B673987
Entries
M
Annotation

19990938250002

Visa Type/Class
R  B1/B2
Birth Date    Nationality
09AUG1976    SARB
Issue Date    Expiry Date
03APR1999    02APR2000

Sex
M

14436338

VNSAUAL<HAZMI<<NAWAF<M<S<<<<<<<<<<<<<<<<<<<<<<<<
B673987<<7SAU7608092M9904031B33016D9AAE857F9

FBI008031

REDACTED FOR PUBLIC FILING

STAPLE HERE

Immigration and Naturalization Service

I-94

Departure Record

14 Family Name: AL MIHDHAR

15 First (Given) Name: KHALID

16 Birth Date (Day/Mo/Yr): 16 · 5 · 1975

17 Country of Citizenship: SAUDI ARABIA

Departure Number: 894738305 07

JUL 14 2000

B-2

UNITED STATES OF AMERICA

VISA

| | | | |
|---|---|---|---|
| Issuing Post Name<br>JEDDAH | | Control Number<br>19990979050005 | |
| Surname<br>AL MIHDHAR | | | |
| Given Name<br>KHALID M A | | | Visa Type/Class<br>R B1/B2 |
| Passport Number<br>B721156 | Sex<br>M | Birth Date<br>16MAY1975 | Nationality<br>SARB |
| Entries<br>M | Issue Date<br>07APR1999 | Expiry Date<br>06APR2000 | |
| Annotation | | | |

14436479

VNSAUAL<MIHDHAR<<KHALID<M<A<<<<<<<<<<<<<<<<<

B721156<<7SAU7505168M9904075B33016D1D44C2B22

[redacted]

FBI008032

REDACTED FOR PUBLIC FILING

# Parkwood Apartments
6401 Mt. Ada Rd., San Diego, CA 9211

March 3, 1998

Dear Parkwood Resident:                    Apartment #

As you may know, during the construction of many apartment communities, the mineral asbestos was commonly used for insulation, fireproofing and other purposes. As you may be aware, inhaling asbestos fibers can cause or contribute to many serious diseases. Under The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65), asbestos has been listed as a chemical known to the state to cause cancer. However, the presence of asbestos in a building does not necessarily mean residents are being exposed to asbestos fibers in a way that presents a significant risk (under Proposition 65, or otherwise) and, we have no reason to believe residents in your apartment community are being exposed to any health risk from asbestos.

As part of our effort to provide you with a safe living environment, we retained an expert independent asbestos consultant to perform various inspections of our apartment communities. These inspections have been completed and our independent consultant has advised us asbestos is present in the *acoustic ceiling material and the floor tile*. Any risks posed by this asbestos can be virtually eliminated if simple precautions are taken. On the reverse side of this notification, we have provided a list of common sense precautions for your general information and to guide your living activities for the future. Full compliance with these precautions will virtually assure the asbestos containing materials are maintained in a safe and stable condition.

Finally, Proposition 65 requires that persons be warned of certain exposures to chemicals listed under Proposition 65. We have no reason to believe a health risk from asbestos is present in your apartment community.

If you have any questions concerning this letter, please contact me at         -6251.

Very truly yours,

**WESTERN NATIONAL PROPERTY MANAGEMENT INC.**

Asbestos Coordinator

qc

I hereby acknowledge I have received a copy of this Proposition 65 notification.

Resident Signature                      Date                 9/4/00

Resident Signature                      Date

REDACTED FOR PUBLIC FILING

## The Do's and Don'ts of Safely Maintaining Asbestos-Containing Materials

| Material | Do's | Don'ts |
|---|---|---|
| **Textured Ceiling** | ~ Do notify your manager immediately about all ceiling damage.<br>~ Do notify your manager if you need to penetrate the ceiling for any reason.<br>~ Do notify you manager when your ceiling needs to be painted. | ~ Do not attempt to clean your ceiling with a Broom, vacuum, cloth, or in any manner that may dislodge particles.<br>~ Do not store items on upper closet shelves in such a manner that could cause them to Scrape or gouge ceiling.<br>~ Do not use nails, screws, plant hooks, or puncture the ceiling in any fashion.<br>~ Do not scrape, bump, gouge, probe, or penetrate the ceiling for any reason.<br>~ Do not attempt to clean up any debris by yourself.<br>~ Do not place pole lamps or room dividers against the ceiling. |
| **Vinyl Floor Tile**<br>**Vinyl Flooring**<br>**Common Area Flooring** | ~ Do follow all manufacturer's instructions for cleaning and waxing your floor.<br>~ Do inquire with the manager if you are in doubt whether to use a particular cleaner or tool. | ~ Do not drag heavy appliances across your floor in such a way that could cause them to scrape or gouge the floor material.<br>~ Do not cut, drill, sand, grind, or attempt any other physical disturbance of this material.<br>~ Do not use caustic or abrasive cleaners on the floor material. |

*I have read and understand the "Do's and Don'ts of Safely Maintaining ACM," and agree to abide by these requirements to avoid disturbing these materials.  I acknowledge that I may be held responsible for damages as a result of not complying with these guidelines.*

_____
Resident Signature

نوان

FBI008034

REDACTED FOR PUBLIC FILING

## PARKWOOD APARTMENTS
## Community Policies

1. Residents shall conduct themselves at all times in such a reasonable manner as not to disturb or annoy other residents and persons, either in the rented unit or on the common grounds of the property, including any parking or recreational areas. Residents shall not conduct themselves in any manner, which will interfere with the rights, comforts, and/or conveniences of other persons on the premises.

2. All musical instruments, television sets, stereos, radios, etc. are to be played at a volume which will not disturb other persons.

3. Residents must keep their rented units clean and sanitary, and will not accumulate trash, garbage or other materials, which would cause a hazard, or be in violation of any health, fire or safety ordinance or regulation.

4. Bicycles, play equipment, toys, or other articles are not to be left in the common areas.

5. **No skateboarding!  Skateboards will be confiscated by management for guardian to pick up at office.**

6. Pool hours will be posted in the pool areas and are to be observed by all residents at all times. Persons under the age of fourteen must be accompanied by an adult, eighteen or older, when in the pool area.

7. A maximum of **two (2) guests** at one time may use the pool area, provided a resident accompanies them.

8. Residents may consume beverages in the pool area, providing all containers are unbreakable and all refuse is disposed of properly. All pool furniture must STAY IN POOL AREA.

9. Fitness center hours as posted limit two (2) guests per apartment. Guests must be accompanied by resident and residents are liable for guests conduct.

10. Cars, boats, other vehicles, or personal belongings are not to be parked or stored in the common area or parking areas, except in areas specifically provided for that purpose. All vehicles must be free from webs, currently licensed, registered and fully operational.

11. **Walking, playing in shrubbery or grass, and picking flowers is STRICTLY FORBIDDEN!**

12. Residents shall notify manager immediately in writing of any items within the unit or elsewhere on the premises that require repair or maintenance.

13. Residents shall make no alterations or improvements to the premises, either inside the rented unit or elsewhere, without the prior written consent of the manager. Residents shall be liable for any repairs necessary during or after tenancy to restore premises to its original condition, normal wear and tear excepted.

14. No clothing, curtains, rugs, etc. shall be shaken or hung outside any window, ledge or balcony.

15. We ask that you do not remove verticals and hang drapes and that you do not cover windows with aluminum foil.

16. For safety purposes, please do not place flowerpots on balcony railings.

17. The playground closes at dusk. No one is to be in playground are after dark!

18. Please make sure your trash meets the dumpsters. Do not throw you trash over a fence. And if dropped along the way please pick up after yourself.

19. **Do not knock on the doors of staff members at night! You can page maintenance at 331-3458. If you have locked yourself out of your apartment we will unlock your apartment for a $25 fee. Which you can pay in the office the next day.**

**I HAVE READ, UNDERSTAND AND AGREE TO THE ABOVE RESIDENT REGULATIONS OF THE PARKWOOD APARTMENT COMMUNITY.**

Apartment #_____          Phone #_____

**RESIDENT**_____          **DATE**_____
**RESIDENT**_____          **DATE**_____
**RESIDENT**_____          **DATE**_____
**RESIDENT**_____          **DATE**_____

**If you notice anyone in violating of these policies please contact the office immediately. You can also call the San Diego Police Department at 531-2000, or our night monitor at 283-7315.**

FBI008035

REDACTED FOR PUBLIC FILING

PERMISSION TO ENTER

Resident(s) :        **Nawaf Al Hazmi And Khalid Al Mihdhar**
Address :            **6401 Mt. Ada Rd., San Diego, Ca 92111**
Apartment :

Phone Number :

**Saul Hernandez**
**Maintance, Management, And Pest Control**

I hereby authorize the above mentioned **Maintance, Management, And Pest Control** to enter my apartment to make necessary repairs under the following conditions:

To perform requested repairs or services.

_____     _____
Signature – **Nawaf Al Hazmi**                                    Date

_____     _____
Signature – **Khilid Al Mihdhar**                                 Date

_____     _____
Signature - **Resident Name**                                     Date

—————————— ♦ ——————————

PACKAGE ACCEPTANCE PERMISSION

I hereby give permission for this office to accept packages on my behalf.  I hold harmless the office and the representative of this office signing for the package(s) for any loss or damage of the package(s).

_____     _____
Signature - **Nawaf Al Hazmi**                                    Date

_____     _____
Signature - **Khilid Al Mihdhar**                                 Date

_____     _____
Signature - **Resident Name**                                     Date

FBI008036

REDACTED FOR PUBLIC FILING

(Revision 199906)

This will be your new address : **6401 Mt. Ada Rd. #**    **San Diego, Ca 92111**

Your move-in date is : **February 5, 2000**

Your lease term is : **4 months**

| | |
|---|---|
| Application Fee (Non-Refundable) | $30.00 |
| TOTAL SECURITY DEPOSIT | $775.00 |
| Apartment Rent | $775.00 |
| Renters Insurance | $8.00 |
| **Total Monthly Payment.** | **$ 783.00** |
| (-) Security Deposit Paid | <$775.00> |
| (-) First Month's Special | <    >    M/I Special: |
| TOTAL PAID/DISCOUNT | <$ 775.00> |
| TOTAL DUE AT MOVE-IN | **$ 783.00**    (On Approved Credit) |

**INITIAL** _____    CASHIERS CHECK OR MONEY ORDER ONLY

On the day of move-in we will need the following account numbers to complete your file. Without these numbers we will not be allowed to give you keys to your apartment.

We have taken the liberty to list the local utility phone numbers you will need to help make your moving in easier:

| | | |
|---|---|---|
| S.D.G.E | 800-411-7343 | Account Number |
| Pacific Bell | 800-310-2355 | Account Number |
| Time Warner Cable | 619-695-3220 | Account Number |
| Brook Funiture Rental | 856-549-4571 | Account Number |
| San Diego Union Tribune | 619-281-7292 | Account Number |

The phone connection is part of the rental procedure as a service to make your move-in more convenient. The service is through **Pac Bell** and will be turned on the day before you move-in. Ask your leasing consultant for details.

_____    _____
Signature                        Date

FBI008037

REDACTED FOR PUBLIC FILING    (Revision 199906)

Subject to approval by **WESTERN NATIONAL PROPERTY MANAGEMENT, INC.** to rent apartment number ▌ located at **6401 Mt. Ada Rd., San Diego, Ca 92111,** and to the vacation thereof by the present occupants, the undersigned hereby accepts from Applicant the sum of **$775.00,** as deposit.

Occupancy is to be for **two (2)** occupants only, beginning **February 5, 2000,** at the rental rate of **$775.00** per month, payable monthly in advance on the 1st day of each month with a **four (4)** month initial lease term.

**0** pet(s) will be allowed.

It is agreed that this deposit will be held by WESTERN NATIONAL PROPERTY MANAGEMENT, INC., to reserve the premises listed herein for Applicant's occupancy. This deposit will be non-refundable after three (3) days except in the event Applicant is not approved for occupancy (unless application fails to provide required paperwork within specified time) or possession of said premises cannot be delivered to Applicant on date specified. If Applicant is approved and premises are available and Applicant does not take possession, above deposit will be applied toward loss of rent and other expenses incurred. If Applicant takes possession after the date scheduled above, Applicant will still be held rent responsible from the above date.

THERE IS A $25.00 CHARGE FOR ALL CHECKS NOT HONORED BY YOUR FINANCIAL INSTITUTION.

ANY REFUND DUE TO APPLICANT MAY TAKE UP TO 21 WORKING DAYS FROM DATE OF CANCELLATION. THE APPLICATION FEE IS NOT REFUNDABLE.

Signature – **Nawaf Al Hazmi**      Date

Signature – **Khalid Al Mihdhar**      Date

Signature - **Applicant Name**      Date

Signature - **Applicant Name**      Date

Signature - **Applicant Name**      Date

Signature - **Applicant Name**      Date

Resident Manager / Authorized Agent      2-4-00   Date

REFERRED BY:

FBI008038

(Revision 199906)

REDACTED FOR PUBLIC FILING

## Disclosure of information on Lead-Based Paint and Lead-Based Paint Hazards

**Lead Warning Statement:**
Housing built before 1978 may contain lead-based paint. Lead from paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling. Residents must also receive a Federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure (initial)**

_____ (a) Presence of lead-based paint or lead-based paint hazards (check one below):

_____ ~ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

_____

_____ ~ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____ (b) Records and reports available to the lessor (check one below):

_____ ~ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____

_____ ~ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (Initial)**

_____ © Lessee has received copies of all information listed above.

_____ (d) Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment (Initial)**

_____ e) Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4682(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.



| Lessee (Resident)          Date | Lessee (Resident)          Date |
|---|---|
| Lessee (Resident)          Date | Lessee (Resident)          Date |
| Agent For Owner | Agent (Management Company) Date    7-31-98 |

| Western National Property Management, Inc. | IPS Management Co., Inc. |

FBI008039

REDACTED FOR PUBLIC FILING

On the date below, **Parkwood Apartments** received **$30.00** from the undersigned (Hereinafter called "Applicant") who offers to rent from **Parkwood Apartments**, the premises located at:

**6401 Mt Ada Rd #    San Diego Ca 92111.**

Above payment is to be used to screen Applicant with regards to credit history and other background information. The amount charged is itemized as follows:

| | |
|---|---|
| Cost to obtain, process and verify screening information (includes staff time and other soft costs) | **$12.00** |
| Actual costs of credit report, unlawful detainer (eviction) search, and/or other screening reports | **$18.00** |
| Total fee charged (may not exceed per applicant) | **$30.00** |

Applicant authorizes verification of information supplied by applicant via methods which may include, but are not limited to, tenant screening and credit checking.

Signature – **Omar Al Bayaemi**          4/2/00   Date

Signature –          Date

Signature - **Applicant Name**          Date

Signature - **Applicant Name**          Date

Signature - **Applicant Name**          Date

Signature - **Applicant Name**          Date

Community Manager / Authorized Agent          Date

FBI008040

REDACTED FOR PUBLIC FILING

(Revision 199906)

Parkwood Apartments 2216
6401 Mt. Ada Road
San Diego, CA  92111
█████ -1133

BALANCE DUE NOTIFICATION

May 4, 2000

Apartment: █████

To All Tenant(s) in possession, including:

Nawaf Al Hazimi and Khalid Al Mihdhar
6401 Mt. Ada Road # █████
SAN DIEGO, CA  92111

As of today, our records indicate there still is an unpaid
balance due on your account for the current month. Please
review the following charges and remit the amount below
immediately.

Amount(s) due as of Thursday, May 4, 2000: $8.00

If you have any questions regarding this balance due, please
call the office.

Sincerely,

Business Manager

FBI008041

REDACTED FOR PUBLIC FILING

THIS RENTAL AGREEMENT IS MADE AS OF February 5, 2000, by and between Parkwood Apartments (hereinafter "Landlord"), and Nawaf Al Hazmi And Khlid Al Mihdhar (hereinafter "Resident", if more than one, each shall be jointly and severally liable and are all collectively referred to as "Resident" herein).

1.  **Definitions:**
    A.  Premises:  Address is 6401 Mt. Ada Rd. #     San Diego, Ca 92111.
    B.  Term:  Commences on February 5, 2000, and ends on May 31, 2000, at 11:59 PM, after which term shall continue on as a tenancy from month to month (see 30).
    C.  Rent Per Month:  Seven Hundred and Seventy-five Dollars ($775.00)
        Resident agrees to pay to landlord for each month during the full term of this Agreement the sum of *:  $783.00
        
        | | |
        |---|---|
        | $775.00 | as Base Rent for the Premises. |
        | $8.00 | as monthly premiums for Renters Homeowners Insurance purchased by Resident |
        | $0.00 | as additional rent for furniture (see attached addendum). |
        | $0.00 | as garage rent for one private passenger vehicle only. |
        | $0.00 | |
        | $783.00 | *TOTAL MONTHLY RENT |
        
    D.  Rent Due Date:  The First Day of each Calendar Month.
    E.  Security Deposit:  Seven Hundred And Seventy-Five Dollars Dollars ($775.00)
    F.  Number of Occupants:  Two (2)
    G.  Pets:  (Description) None  Picture attached
    H.  Assigned Parking Space:  For open(0) Private Passenger Vehicle(s)
    I.  Authorized Manager of Premises:  Holly Ratchford
    J.  Authorized Agent of Landlord:  WESTERN NATIONAL PROPERTY MANAGEMENT, INC., P.O. Box 19528, Irvine, CA 92623-9528

2.  **Premises:**  The Premises hereby leased consist of a residential apartment together with the furnishings listed below, if any, and assigned Parking Space(s).  The Parking Space(s) designated may be changed from time to time at Landlord's option.  Designated and open parking spaces may be occupied by private passenger vehicles only.  Use of these spaces for storage or parking of other types of vehicles including but not limited to recreational vehicles is prohibited unless written permission is obtained from Landlord.  Any storage space provided Resident by landlord is furnished gratuitously and Landlord shall not be liable for any loss or injury to Resident's property placed within.

3.  **Term:**  Landlord makes no representation that the Premises will be ready for occupancy on the commencement date of the Term.  If Landlord is unable to deliver possession of the Premises at the commencement of the Term, Landlord shall not be liable in damages to Resident, but Rent covering the period between the of the Term and the time when Landlord delivers possession shall be waived, and if Landlord is not able to deliver possession within thirty (30) days of the commencement date of the Term, either Party may, prior to the time when Landlord delivers possession, cancel this Rental Agreement by giving written notice to the other.

4.  **Term To Terminate:**  Resident may terminate the obligations under this Lease by delivering to the Manager a written notice stating Resident's intent to terminate this Lease.  Such notice will be effective thirty (30) calendar days from the date it is given.  However, the notice must be accompanied by payment of a termination fee of $775.00.  Such payment will release resident only from any further rental obligations beyond the date the termination is effective.  However, all of the terms of the Lease must be complied with through the date of vacating the premises on or before the effective date of the termination and any move-in concessions must be reimbursed in full.  If the termination fee is not paid, the notice shall be of no effect, the entire lease term will remain binding, and Manager shall retain all remedies for non-compliance with the Lease.  Resident shall be liable for any damages for non-compliance or failure to properly vacate pursuant to the thirty (30) day termination notice.

5.  لي ل  **Initial  Rent:**  Resident expressly agrees to pay Landlord Rent for the Premises each month in advance on or before Rent Due Date.  A fee of $25.00 shall be charged to the Resident of any Non-Sufficient Fund Checks returned from the bank.  After receipt of two (2) Non-Sufficient Fund Checks, Owner will only accept money orders or cashier's check for payment of rent.  If a late fee has not already been charged to the resident, a late fee shall be charged to the Resident if a Non-Sufficient Fund Check is returned from the bank and not replaced to the Landlord on or before the late day (see 12).  Because of the concern of theft, Resident agrees to make all rent payments by check, cashiers check, or money order only; no cash will be accepted /

6.  لي ل  **Initial  Utilities:**  Resident shall pay all charges for electric,cable water, trash and sewage.

7.  **Utility Deregulation:**
    A.  **Owner Controls Selection.**  Owner has advised Resident that Sdge And California Utility Company ("Utility") is currently the utility company selected by Owner to provide electricity service for the Community and its apartments.  Notwithstanding the foregoing, if permitted by law, Owner shall have the right at any time and from time to time during the Lease Term to either contract for service from a different company or companies providing electricity service (each different company shall hereinafter be referred to as an "Electric Service Provider" ("ESP")) or continue to contract for service from the Utility for the Community's common areas and its apartments.
    B.  **Resident Shall Give Owner Access.**  Resident shall cooperate with Owner, Utility, and any ESP at all times and, as reasonably necessary, shall allow Owner, Utility, and any ESP reasonable access to the Community's electric lines, feeders, risers, wiring, and any other machinery within the Apartment.
    C.  **Owner Not Responsible For Interruption Of Service.**  Owner shall in no way be liable or responsible for any loss, damage, or expense that Resident may sustain or incur by reason of any change, failure, interference, disruption, or defect in the supply or character of the electric energy furnished to the Community or to the Apartment, or if the quantity or character of the electric energy supplied by the Utility or ESP is no longer available or suitable for Resident's requirements, and no such change, failure, defect, unavailability, or unsuitability shall constitute and actual or constructive eviction, in whole or in part, or entitle Resident to any abatement or diminution of rent, or relieve Resident from any obligation under the Lease
    D.  **Resident Responsible For Damage And Losses Caused By Resident's Provider.**  To the extent that resident is permitted by law to select an ESP other than the company selected by Owner, Resident shall:
        i.  Reimburse Owner for the cost of repairing any and all damage to the Apartment and to the Community's common areas caused directly or indirectly by Resident's ESP or its equipment.  Owner reserves the right to deduct said costs from the Resident's Security Deposit.
        ii.  Indemnify and hold Owner harmless from and against any and all claims, demands, costs, expenses (including attorney's fees) and causes of actions arising out of or in any manner relating to actions or inaction by Resident's ESP, including, but not limited to, expenses and or fines incurred by Owner in the event that Resident's ESP fails to provide power or provides insufficient power.

FBI008042

REDACTED FOR PUBLIC FILING

8.  **Pets:** Resident is not authorized to maintain any pets on the premises unless specifically indicated above (1-G), or other wise authorized in writing by Landlord. All pets are subject to Management approval. Resident accepts responsibility for all acts and liabilities for the pet while on the Premises including the common areas.

9.  **Security Deposit:** Upon execution hereof, Resident shall also pay Landlord a Security Deposit as security for the faithful performance of Resident's obligations hereunder. Landlord may, at its option, claim from the Security Deposit such amounts as a reasonable necessary to remedy Resident's defaults in the payment of rent, to repair damages to the Premises caused by the Resident, and/or members of Resident's family, guests or visitors, exclusive of ordinary wear and tear, including but not limited to stains in carpet, counter damage, drywall repair, painting, drapes and plumbing system, or to clean such Premises, if necessary, upon termination of the tenancy. Upon receipt of notice that the unit is vacated, after the expiration of the Term described above (1B), or any extension thereof (See 28), and upon receipt of notice that the unit is vacated, disposition of the Security Deposit will be made according to the provisions of Section 1950.5 of the Civil Code. Landlord shall have the right to commingle the Security Deposit with other funds of Landlord.

10. ___ **Initial  Resident Insurance Requirement:** Resident agrees to maintain at Resident's sole expense a standard type of Tenant's or Renter's homedwners insurance policy, or it's equivalent, issued by a licensed insurance company of Resident's selection which provides limits of liability of at least $100,000 personal liability.

11. ___ **Initial  Payments:** Rent and all other charges due Landlord hereunder shall be payable to Parkwood Apartments 6401 Mt. Ada Rd., San Diego, Ca 92111 at property office, or at such other place or in such other manner as Landlord may from time to time designate.

12. ___ **Initial  Late Charge:** Resident acknowledges that late payment by Resident to landlord or rent will cause Landlord to incur costs not contemplated by this Rental Agreement, the exact amount of such costs being extremely difficult and impracticable to fix. Such costs include, without limitation, processing and accounting charges and late charges that may be imposed on Landlord by the terms of any encumbrance and note secured by an encumbrance covering the Premises. Rent is due and payable on the FIRST day of each month. Unpaid rent is delinquent on the third day of the month. Rent not delivered to the manager's office by 5:00 p.m. on the third day of the month must include a $50.00 late charge. The parties agree that this late charge represents a fair and reasonable estimate of the costs that Landlord will incur by reason of late payment by Resident. Acceptance of any late charge shall not constitute a waiver of Resident's default with respect to the overdue amount, nor prevent Landlord from exercising any of the other rights and remedies available to Landlord.

13. **Condition of Premises:** Resident has inspected the Premises and common areas and upon taking possession knows of their condition and the potential hazards they present to unsupervised children, including but not limited to lakes, streams, swimming pools, parking areas, balconies, and recreation areas. Resident accepts them in such condition, agreeing that no statement or representation as to condition has been made by Landlord. Landlord shall have no liability to make any repairs nor shall the rights of the Residents to make said repairs accrue, except in an emergency, unless the Resident has given written notice to Landlord, and Landlord has had a reasonable time to remedy said conditions, which it may be obligated to make.

14. **Use of Premises:** Resident agrees to use and maintain the Premises as follows:
    A.   Solely as a private residence for the occupants and no other person or persons without the prior written consent of Landlord.
    B.   Use the Premises and all common areas in accordance with Landlord's Rules and Regulations, a copy of which Resident has received.
    C.   Not violate any law or ordinance of any governmental authority with respect to the Premises or any common areas.
    D.   Not have on the Premises an aquarium or any equivalent type of device with a capacity in excess of twenty-five (25) gallons without prior written consent of Landlord. Waterbeds are permitted only in accordance with California law which requires insurance protecting Owner in an amount not less than $100,000, and an increase in your security deposit equal to one-half month's rent. You must also install, maintain, and dismantle the bed in accordance with industry standards.
    E.   Keep the interior and exterior of the Premises during the Term hereof in good and clean condition, free of trash and unsightly material, including storage of personal items on patio or balconies.
    F.   Not use railings as clotheslines, aluminum foil on window, erect aerials of any kind, or exterior shades or structures.
    G.   Not repair or do maintenance work of any kind on any vehicle on the Premises nor park excessively damaged or inoperable vehicles on the Premises.
    H.   Return the Premises to Landlord in as good condition as upon the commencement of the Term, reasonable wear and tear excepted.
    I.   Not to introduce any hazardous or toxic material onto the property.

15. **Rules and Regulations:** Resident agrees to abide by Landlord's Rules and Regulations and use the premises and all common areas in accordance with same. The Landlord's Rules and Regulations are hereby made a part of this Rental Agreement.

16. **Waste, Quiet Enjoyment and Supervision:** Resident shall not commit or permit any waste upon the Premises or any nuisance or other act or thing which may disturb the quiet enjoyment of any other resident or person in or about the adjoining apartments.
    A.   Resident shall be responsible for the supervision and control of all Occupants and Guests residing with them in the Premises or visiting Occupants at the apartment complex. All Occupants and Guests must obey Landlord's Rules and Regulations. Resident shall be solely responsible to see that their Occupants and Guests obey these Rules and Regulations. Violation of this provision shall constitute grounds for immediate termination of this Rental Agreement at the option of Landlord.
    B.   Resident shall not use in any wasteful or unreasonable or hazardous manner any of the utilities furnished by Landlord nor keep or maintain any mechanical, electrical or other appliance or device operated by said utilities except herein listed and specifically approved by Landlord.

17. **Repairs:** Resident shall make no repairs to the Premises, except for routine cleaning and maintenance, unless Landlord gives Resident prior written authorization to do so. If repairs to the Premises are required, Resident shall give Landlord immediate written notification. Landlord shall repair and maintain the Premises and every portion thereof and the cost of such repair and maintenance shall be borne as follows:
    A.   Landlord's Obligations: If the condition requiring repair is one which makes the Premises, "untenantable" as defined in California Civil Code Section 1941.1, Landlord shall bear the expense of the repair unless the "untenantable" condition is occasioned by any of the following, in which event Resident shall bear the expense of repair:
        i.    Resident's want of ordinary care;
        ii.   Resident's failure to keep the Premises clean and sanitary;
        iii.  Resident's failure to dispose of all rubbish, garbage and other waste;
        iv.   Resident's failure to properly use and operate all electrical, gas and plumbing fixtures and keep them clean and sanitary.
        v.    Resident, or any person on the Premises with Resident's permission, wilfully or wantonly destroying, defacing, damaging, impairing, or removing any part of the Premises or the facilities, equipment or appurtenances thereto, or the common areas;
        vi.   Resident occupying the Premises other than as his abode or utilizing living, sleeping, cooking, or dining portions thereof for purposes other than those for which these portions were respectively designed or intended.

FBI008043

REDACTED FOR PUBLIC FILING

B.    Resident's Obligation:  If the condition requiring repair is not one which makes the Premises "untenantable" or is occasioned by the circumstances described in subsections 1 through 6 above, Resident shall bear the expense of repair.

18.    **Alterations and Improvements:**  Resident shall make no alterations or improvements to the Premises without obtaining Landlord's written consent in advance including without limitation, painting, wallpapering, or other wall covering, permanent shelving and flooring.

19.    **Demographics:**  Resident hereby agrees to and permits Landlord to communicate the name of the Resident and their home address to any third party for the purpose of marketing, including but not limited to direct mailings, and for the use of third parties to accumulate demographic information for any lawful purpose.  As a result, Resident understands and agrees that Resident may receive solicitations through the mail and/or telephone solicitations.

20.    **Right of Entry:**  The Landlord may, at the Landlord's option, upon giving reasonable notice, enter upon the Premises at any reasonable time to examine the same to make such repairs or perform such maintenance as Landlord may deem necessary or desirable, and to show the premises to prospective purchasers, lenders or residents.

21.    **Notice:**  The California Department of Justice, sheriff's departments, police departments service jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a data base of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of section 290.4 of the Penal Code.  The data base is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood.  The Department of Justice also maintains a Sex Offender Identification line through which inquiries about individuals may be made.  This is a "900" telephone service.  Callers must have specific information about individuals they are checking.  Information regarding neighborhoods is not available through the "900" telephone service.

22.    **Assignment and Subletting:**  Resident shall not assign or sublease all or any part of the premises, or allow any other person or entity to occupy or use all or any part of the Premises, without first obtaining Landlord's written consent.  No assignment, whether voluntary or involuntary, by operation of law, under legal process or proceedings, by receivership, in bankruptcy or otherwise, and no subletting shall be valid or effective without such prior written consent and at Landlord's election, shall constitute a default.  No consent to any assignment or sublease shall constitute a further waiver of the provisions of this paragraph.

23.    **Damage and Destruction:**
A.    Resident's Obligation:  Resident hereby agrees to hold Landlord harmless from and to pay on demand all reasonable cost of repair or restoration resulting from any damage or destruction to the Premises, or the buildings of which the Premises are a part, the common areas, or any part thereof resulting from any act or omission of Resident and/or any person on the Premises through or under Resident, including, without limitation, damage or destruction resulting from leaving windows open during rains and storms, flows of water from pipes, faucets or other sources, failure to turn off gas or electrical appliances or lights when not in use and littering of the premises or adjoining common areas.
B.    Effect of Damage or Destruction:  In the event of damage to or destruction of the Premises or the building of which the Premises are a part by fire, flood, earthquake, or any other cause or causes, Landlord shall have the option to:
    i.    Treat this Rental Agreement as continuing and repair or restore the Premises to their condition before such damage or destruction, within thirty (30) days of the occurrence of the same, or if insured, within thirty (30) days after Landlord receives permission from the insurer to proceed with repair or restoration; or
    ii.    Terminate this Rental agreement and all further obligations hereunder of either party by written notice to Resident.  After the occurrence of such damage or destruction, the Resident's obligation to pay Rent hereunder shall be abated in an amount which Landlord in its sole discretion, shall determine to be proportionate to the area of the Premises rendered unfit for use by Resident during the period of repair of restoration.

24.    _____Initial    **Satellite Dishes:**  Owner will permit Resident to install a satellite dish for personal, private use on the premises under the following conditions:
A    The satellite dish must be one meter or less in diameter;
B.    The satellite dish may only be installed on the inside balcony, patio or terrace that is under the exclusive control of Resident.  Said satellite dish, or any part thereof, shall not extend beyond the balcony, patio or terrace railing;
C.    Resident is specifically prohibited from making physical modifications to the premises and is prohibited from installing said satellite dish in the common areas of the premises, including but not limited to, outside walls, roofs, window sills, common balconies or stairways;
D.    Resident shall not install said satellite dish in a manner which causes physical or structural damage to the premises, excluding ordinary wear and tear, including but not limited to, holes drilled through exterior walls;
E.    Resident shall install, maintain and remove said satellite dish in a manner which is consistent with industry standard and shall be liable for any damage or injury sustained as a result of the negligent installation, maintenance or removal of said satellite dish;
F.    Resident shall indemnify, defend and hold Owner harmless for any damage or injury resulting from said negligence, including paying Owner's attorneys fees and costs;
G.    Resident shall obtain and at all times retain a liability insurance policy for said satellite dish with a minimum of $100,000 coverage and cause owner to become an "additional insured" under said policy.  Resident shall provide proof of said insurance to the satisfaction of Owner before said satellite dish is installed.

25.    **Condemnation:**  If the whole or any part of the premises shall be taken by exercise of the power of eminent domain, this Rental agreement shall terminate upon the date actual physical possession thereof shall be so taken, and all damages awarded from such taking shall be the sole property of Landlord.  A voluntary conveyance of the Premises by the Landlord under threat on condemnation shall be deemed to be taken under the power of eminent domain within the meaning of this paragraph.

26.    **Defaults:**  The occurrence of any one or more of the following events shall constitute a material default in breach of this Rental Agreement by Resident:
A.    The vacating or abandonment of the premises by Resident.
B.    The failure of Resident to make payment of rent or any other payment required to be made by Resident hereunder, as and when due, where failure shall continue for a period of three (3) days after written notice thereof from Landlord to Resident.
C.    Failure by Resident to observe or perform any of the covenants, conditions or provisions of this Rental Agreement to be observed or performed by Resident other than described in Subparagraph 22B above, where such failure shall continue for a period of three (3) days after written notice thereof from Landlord to Resident.
D.    The discovery by Landlord that the credit application given Landlord by Resident was materially false.

27.    **Remedies:**  In the event of any such material default or breach by Resident, Landlord may at anytime thereafter, with or without notice or demand, and without limiting Landlord in the exercise of any right or remedy which Landlord may have by reason of such default or breach:
A    Terminate Resident's right to possession of the Premises by an lawful means, in which case this Rental Agreement shall terminate and the Resident shall immediately surre██████████████████████████████████

FBI008044

REDACTED FOR PUBLIC FILING

(Rev. 199901)

Initial

B.   Landlord may recover from Resident the amount provided in California Civil Code Section 1951.2 including unpaid rent to the time of termination, the amount necessary to compensate Landlord for any loss proximately caused by the Resident's failure to perform, or reasonable could have been foreseen to be a likely result of the Resident's breach (California Civil Code 1951.2 (a) (4). Upon reentry by Landlord following such termination, Landlord may consider any personal property belonging to Resident and left on the Premises to be abandoned, and may dispose of all such personal property in accordance with applicable law set forth in Sections 1980-1991 of the California Civil Code.

C.   The remedies provided in Subparagraphs 23A and 23 B above are not exclusive, and Landlord may pursue any one or more of such remedies or any other remedy provided by law.

D.   The exercise or failure to exercise any remedy provided herein for any breach hereof shall not be deemed a waiver of Landlord's right to have any of its rights under this Rental Agreement, or Landlord's acceptance of rent after any default shall not be considered or construed to waive any right of Landlord or to affect any notice or legal proceedings given or commenced.

E.   In the event either Landlord or Resident shall bring any action in connection herewith, the party prevailing therein shall be entitled to recover as part of such action, reasonable attorney's fees, costs of collection, expert witness fees, court costs and other legal costs.

28.  **Additional Limitation on Landlord's Liability:**

A.   Injury, Loss or Damage:  Absent Landlord's own negligence, fraud or willful injury to the person or property of another or violation of law, Landlord shall not be liable for any injury, including death to any person caused by any use of the Premises or common areas by any person, including but not limited to, other residents, or arising from any accident or fire or other casualty thereon, or from any other cause whatsoever, nor shall Landlord be liable for any loss or damage to any article belonging to Resident or located on the Premises, or other facility under the control of Landlord. Resident hereby agrees to indemnify and hold Landlord harmless from all liability for any such injury, loss of damage including Landlord's legal fees.

B.   Other Limitations:  Resident also agrees that Landlord shall not be liable for, and this Rental Agreement shall not be terminated by any interruption or interference with services or accommodations due Resident caused by strike, riot, orders or acts of public authorities, acts of other Residents, of Landlord, accident, the making of necessary repairs to the building of which the Premises are a part, or any other cause beyond Landlord's control.

C.   Resident also agrees to notify WESTERN NATIONAL PROPERTY MANAGEMENT, INC., in writing of any formal complaint or grievance against any property staff member. All correspondence shall be sent to: Vice President, WESTERN NATIONAL PROPERTY MANAGEMENT, INC., P. O. Box 19528, Irvine, CA 92623-9258.

29.  **Expiration, Tenancy from Month to Month:** Upon the expiration of the Term of this Rental Agreement, but not upon the earlier termination hereof, this Rental Agreement shall continue as a tenancy from month to month unless either party has given written notice to the other prior to thirty (30) days before the expiration of the term of its election that such month to month tenancy shall not commence. **In the event this Rental Agreement shall terminate upon the expiration of the Term, Resident shall vacate Premises on or before such expiration date, and any holding over by Resident after such expiration date shall not constitute a renewal hereof or give Resident any rights with respect to the Premises. If Resident fails to so vacate and surrender the Premises upon such expiration or termination. Resident shall indemnify and hold Landlord harmless from any loss or liability including without limitation, any claims made by any succeeding resident, from such failure to vacate the Premises.** In the event this Rental Agreement shall continue as a tenancy from month to month, as provided above, each of the terms and conditions of this Rental Agreement shall apply with respect to such tenancy, except as follows:

A.   Move Out Notice:  The provisions for the Term of this Rental Agreement shall be deemed modified to provide that the tenancy shall be from month to month, that either party hereto may terminate such tenancy by thirty (30) days written notice to the other, and that at the end of the thirtieth (30th) day following such notice of termination, such tenancy shall be canceled.

B.   In the event the term of this Rental agreement is not completed, Resident shall bear the cost of renovation charges based on length of residency.

30.  **Notices, Demands, Requests and Service of Process:**

A.   Notices, Demands and Requests:  All notices, demands and requests which may be or are required to be given pursuant to the provisions of this Rental Agreement may be delivered in person, by posting and mailing pursuant to Section 1162 of the California Code of Civil Procedure.

i.    If to Landlord, to the Authorized Manager of the Premises at his designated address or to such other person or to such other address as Landlord may hereinafter designate by written notice.

ii.   If to Resident, to Resident at the address of the Premises or to such other address as Resident may hereinafter designate by written notice.

B.   Service of process on Landlord: All other legal notices, demands and service of process to be given to Landlord may be served as provided by law upon the Authorized Agent of Landlord at his designated address or upon such other person or at such other address as Landlord may hereinafter designate by written notice.

31.  **Interpretation:**

A.   In the event there is any conflict between the terms and provisions of this Rental agreement and applicable California law, the Law of the State of California shall be deemed applicable unless the Resident may make a valid waiver of said applicability, in which event the Rental Agreement shall be interpreted as though said Resident in fact waived the applicability.

B.   Any partial invalidity of this document shall not affect the whole thereof and the remainder of this Rental Agreement shall continue in full force and effect.

FBI008045

REDACTED FOR PUBLIC FILING  /Rev 199901)

I WITNESS WHEREOF, the parties hereto have executed this Rental Agreement as of the day and year first above written.

A charge is incurred for all keys and I. D. cards not returned at move-out.

**RESIDENT:**
The undersigned expressly understand(s) that Section 29 above contains provisions
under which this Rental Agreement may automatically continue as a tenancy from month
to month upon the expiration of the term hereof.

LANDLORD/Parkwood Apartments
BY:
(Community Manager)

**THIS RENTAL AGREEMENT SUPERSEDES ALL PREVIOUS RENTAL AGREEMENTS**

Resident – Nawaf Al Hazmi

2-4-00
Date

Resident – Khilid Al Mihdhar

2-4-00
Date

Resident - Resident Name

Date

Resident – Resident Name

Date

Resident - Resident Name

Date

Resident - Resident Name

Date

FBI008046

REDACTED FOR PUBLIC FILING

(Rev 199901)

In consideration of **Parkwood** ("Landlord") entering into a certain Rental Agreement on or about **May 1, 2000**, for the lease of the premises known as **Parkwood** with **Nawaf Al Hazmi And Khalid Al Mihdhar** ("Resident"), **Omar Bayaemi** ("Guarantor") does hereby agree to guarantee unconditionally to Landlord, its successors or assigns, prompt payment by Resident of the rent, late charges, and all other charges, expenses and costs of every kind and nature, which are or may be due now or in the future to Landlord pursuant to the terms of the Rental Agreement in the manner and at the time prescribed therein, and the complete and timely performance, satisfaction and observation of the terms and conditions of the Rental Agreement, rules and regulations and related obligations arising by reason of the Rental Agreement required to be performed, satisfied or observed by the Resident ("Guaranty").

This Guaranty shall not be affected by any deviation from or alteration of the terms covenants or conditions of the Rental Agreement or by any permitted assignment or subletting of all or any part of the interest of Resident in the Rental Agreement. This Guaranty shall not be released, extinguished, modified or in any way affected by failure on the part of Landlord to enforce any or all of the rights or remedies of Landlord whether pursuant to the terms of said Rental Agreement or at law or in equity.

This Guaranty is a continuing one and shall terminate only upon payment by Resident of all the rent and other sums due under said Rental Agreement and upon performance by Resident of all duties and obligations contained in the Rental Agreement. This Guaranty extends to any and all liability which the Resident has or may have to the Landlord by reason of matters occurring before the signing of the Rental Agreement by the parties or commencement of the terms of the Rental Agreement or by matters occurring after the expiration of the term of the Rental Agreement by reason of removal of Resident property, surrender of possession or other matters.

The undersigned waives notice (a) of any default by Resident (i) in payment by Resident of any of the rent or other sums hereby guaranteed (ii) in the complete and timely performance, satisfaction and observation of the terms and conditions of the Rental Agreement, rules and regulations and related obligations arising by reason of the Rental Agreement, required to be performed, satisfied or observed by the Resident; (b) of acceptance by Landlord of this Guaranty.

The Guarantor consents that Landlord may without notice to Guarantor from time to time extend the time for performance or otherwise modify, alter, or change the Rental Agreement in any or all of its provisions thereof and may extend the time for payment of the rent and all other sums hereby guaranteed and may compromise, settle or otherwise release Resident from full performance hereunder and may receive and accept notes, checks and other instruments for the payment of money made by Resident and agree to extensions and renewals thereon without in any way releasing or discharging the Guarantor of its obligations under this Guaranty. Notice of presentment of any such note and/or notice of default in the payment thereof and/or protest or notice of protest thereof is expressly waived by Guarantor.

The liability of the Guarantor is direct, immediate, absolute, continuing, unconditional and unlimited. The Landlord cannot be required to pursue any remedies Landlord may have against the Resident or against any security deposit or other collateral as a condition to enforcement of this Guaranty. Nor shall the Guarantor be discharged or released by reason of discharge or release of the Resident for any reason, including a discharge in bankruptcy, receivership or other proceeding, a disaffirmation or representative in bankruptcy, a stay or other enforcement restriction, or any other reduction, modification, impairment or imitation of the liability of the Resident or remedy of the Landlord. The Guarantor assumes all responsibility for being and keeping itself informed of resident's financial condition and assets, and of all other circumstances bearing upon the risk or nonperformance by Resident under the Rental Agreement. The Guarantor agrees that Landlord shall have no duty to advise the Guarantor of information known to it regarding such circumstances or risk.

The Guarantor subordinates any and all claims which the Guarantor has or may have against the Resident by reason of subrogation for payments or performances under this Guaranty or claims for any reason or cause. The Guarantor agrees not to assert any claims by reason of subordination under this Guaranty, until such time as the payment and other obligations of the Resident to the Landlord are fully satisfied and discharged.

In the event any action should be commenced by Landlord against the Guarantor to enforce any of the terms or conditions of this Guaranty, Landlord shall be entitled to recover from the Guarantor hereunder, in any action in which it shall prevail, its reasonable attorney's fees as well, as all costs awarded by the court.

This Guaranty shall insure to the benefit of Landlord, its successors and assigns, and shall bind the successors, legal representatives and heirs of the Guarantor.

Nothing contained herein, shall be construed as creating a landlord/tenant relationship between Landlord and Guarantor. Guarantor is not grated or entitled to any possessory interest in the premises.

Venue for any action or proceeding arising out of this Guaranty shall be in **San Diego County** in the State of **California**. This Guaranty shall be governed by and interpreted under the laws of and endorsed in the courts of the State of **California**, County of **San Diego**.

**NOTICE:** GUARANTOR'S OBLIGATIONS HEREUNDER EXTEND TO BUT ARE NOT LIMITED TO, ALL RENEWALS OF THE ORIGINAL LEASE TERM AND MONTH TO MONTH EXTENSIONS AND INCLUDES DAMAGES THAT OCCUR AS A RESULT OF RESIDENT WRONGFULLY HOLDING OVER, COMMITTING WASTE, ABANDONING PERSONAL PROPERTY AND ANY OTHER COSTS AND EXPENSES INCURRED BY LANDLORD UNTIL THE TENANCY IS TERMINATED.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty on **February 5, 2000**.

Resident - Nawaf Al Hazmi And Khalid Al Mihdhar

Guarantor - Omar Bayaemi

Community Manager

FBI008047

REDACTED FOR PUBLIC FILING

(Revision 199906)

DISCLOSURE STATEMENT OF RESIDENT'S FINANCIAL RESPONSIBILITY FOR WATER, SEWER, AND TRASH COLLECTION UTILITIES

This Disclosure Statement (the "Utility Addendum") shall become part of the Apartment Rental Agreement (the "Lease") dated **February 5, 2000**, between **Parkwood Apartments** ("Management") and **Nawaf Al Hazmi And Khilid Al Mihdhar** ("Residents"), of apartment number [ ] located at **6401 Mt. Ada Rd., San Diego, Ca 92111.**

Mailing Address (if different than apartment address): **Same As Above**

Number of occupants: two (2)

Paragraph "Utility Deregulation" of the Lease is amended by this Utility Addendum. Any inconsistency between said paragraph and this addendum shall be reconciled in favor of this addendum.

Responsibility for payment of utilities will be as indicated below. The method of measuring the Resident's utility cost will be based on the number of occupants in the resident's apartment.

**WATER** Water service to the Resident's apartment unit will be paid by Resident. Water bills will be calculated using a system based on the number of occupants residing in apartment. Management will pay common area water.

**SEWER** Resident will pay sewer service for the Resident's apartment. Sewer bills will be calculated using a system based on the number of occupants residing in apartment. Management will pay common area sewer.

**TRASH** Resident will pay trash collection service for the Resident's apartment. Trash collection bills will be a flat rate per apartment.

Resident must make payment of the charges due within 20 days of the date of each utility bill is issued or Resident's payment will be late. If a payment is received after that time, Resident will be responsible for paying a late fee for each utility payment, which is late, in the amount of **$5.00**. Utility payments are due as additional rent each month. **The failure to pay utility payments pursuant to this addendum constitutes a material and substantial breach of the Lease and may lead to immediate eviction procedures.** Management is entitled to use Resident's security deposit to recover unpaid utility charges.

Utility bills will be issued to resident on a monthly basis, with timing based on the billing cycle of the Utility Provider's bill to Management. However, when Resident moves out, there will be a need to prepare a special bill ("on-demand bill") which has a cut-off on the date when the Resident vacates the apartment unit. The Billing Provider will issue an on-demand bill to Resident's last known mailing address and deliver a copy to Management. If the bill remains unpaid for three days, it may be deducted from Resident's security deposit.

If Resident moves into or out of the apartment on a date other than the first day of the billing cycle, then Resident will be charged for the full period of time that Resident was living in, occupying, or responsible for payment of rent or utility charges on the apartment. If Resident breaks or breaches the Lease, Resident will be responsible for utility charges through the time it takes for Management to retake possession of the apartment, regardless of whether Resident is still occupying the apartment

Management is not liable for any losses or damages Resident incurs as the result of outages, interruptions, or fluctuations in utilities provided to Resident's apartment unless such loss or damage was the direct result or negligence of Management or its employees. Resident releases Management from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the apartment due to such outages, interruptions, or fluctuations.

After the signing of the Lease, Resident will be charged a New Account Fee of **$10.00** to establish the utility billing account. If Resident's utility billing account was already established under a prior Lease, then Resident will not be billed for a New Account Fee.

As a regular part of each monthly bill, Resident will be charged and must pay a monthly Service Fee. This Service Fee is in addition to the utility service charges for which Resident is billed, and it is collected by the Billing Provider for Management and is used to pay administrative and billing expenses incurred and shall be **$3.00** per bill. Management may modify this monthly Service Fee by giving Resident 60 days written notice of the increase.

Date of this Addendum: **February 4, 2000**

| | | |
|---|---|---|
| Date: | | Date: |
| Nawaf Al Hazmi | | Khilid Al Mihdhar |
| Date: | | Date: |
| Resident Name | | Resident Name |
| Date: | | Date: |
| Resident Name | | Resident Name |
| Date: 2-5-00 | | Office Use Only: |
| Resident Manager/Authorized Agent | | |

FBI008048

(Revision 199906)

REDACTED FOR PUBLIC FILING

REDACTED FOR PUBLIC FILING

FBI008049

**RGS**
**SERVICES**
1156 North Grove Street
Anaheim, California 92805
Phone: ████ -5300
Fax: ████ -1330

Friday, February 04, 2000

Searching Application
**Criteria:**
Name: **Al-Bayoumi, Omar**
  SSN:   (P-1)

| W-P122 **Parkwood**<br>**Apartments** | Phone:<br>**1133** ████ | Fax: ████ **1633** |
|---|---|---|
| Date: **2/4/00** | W/O #: | Taken By: ████ |

**Collection Research**

| Name | SSN | License | Site | Case # |
|---|---|---|---|---|

**Resident Screen 1**

| Name | SSN | Site |
|---|---|---|
| ALBAYOUMI, OMAR | (P-1) | Parkwood Apartments |

1 Record(s) Found!

This is a page ____1____ of a ____6____ page submission.

Time Sent _____ Day/Date Sent _02-04-00_

Please contact ___CREDIT___ at ████ -5300 if you do not

receive all pages trasmitted or if you have any questions.

FBI008050

REDACTED FOR PUBLIC FILING

FBI008051

REDACTED FOR PUBLIC FILING

# APARTMENTS
## GUIDELINES FOR RESIDENT APPLICANT APPROVAL

Name: OMAR AL-BAYOUMI

| Apt #: | Date: 02-04-00 | Points Possible |
|---|---|---|

| Rental History (Circle Only One) | |
|---|---|
| 6 months or more positive rental history (to earn point, all applicants must have 6 months positive rental history individually) | 1 |
| 2 years or more positive mortgage or rental history. | ②  |
| 1-2 year's positive mortgage history. | 1 |
| 2 or more late pays or NSF's in past year | -1 |
| No rental or mortgage history | -1 |
| Foreclosure | -2 |

| Bonus Point | |
|---|---|
| Rental amount or mortgage payment same as or more than new rent. (Add together current rental amounts of all applicants.) | ① |

| Income | |
|---|---|
| Employed continuously 2 years or more (doesn't have to be the same job) | 1 |
| All residents employed continuously for 2 years or more. | 2 |
| Income 2.7 x rent (monthly) or more (combine all prospects' income) | 1 |

| Credit (Circle One) Average Fair Isaac Score for all residents | |
|---|---|
| Average score 750 - 850 | 2 |
| Average score 700 - 749 | 1 |
| Average score 650 - 699 | 0 |
| Average score 600 - 649 or no Fair Isaac Score | -1 |
| Average score 300 - 599 | -2 |

| Circle, if applicable | |
|---|---|
| Bankruptcy | -1 |
| One or more unpaid tax liens | -2 |
| Judgement (other than with landlord - see below) | -1 |

| TOTAL POINTS: | 4 |
|---|---|

| Deposit Point System | |
|---|---|
| Standard Deposit | 4 + points |
| Half month's rent | 3 points |
| 1 month's rent and/or guarantor | 2 points |
| 1 month's rent plus standard security deposit and/or guarantor | 1 point |
| 2 month's rent (requires Area Manager approval) | 0 points |

U.D. on History disqualifies prospect in all cases.
Judgment with apartment community disqualifies prospect in all cases.
3 late rent payments or NSF's in one year disqualifies resident

COMMENTS:
NO UD EVICTIONS
NO IPS/WNP COLLECTIONS

Manager:

| Area Manager | Deposit Amount | $ 775 |
|---|---|---|

Approved thru Gino Approval

4/6/99 (Guidelines .doc)

FBI008052

REDACTED FOR PUBLIC FILING

PC Inquiry: 1780  Date: 02/04/00  Time: ...45:58  Page 2
Ref#: PARKWOOD     Trn#: ████2013    Udr#: ████31-01
ALBAYOUMI, OMAR

```
====================================================================
                        X P N   R E P O R T
--------------------------------------------------------------------
```

ALBAYOUMI, OMAR A ████8943;CA-6333 MT ADA ████/SAN DIEGO CA 92111;T-29......,U-R
G S SERVICES INC;RM-I;H-Y;CHECK;}
XPN CREDIT REPORT

PAGE 1  DATE  2-04-2000 TIME 17:43:18 P@TTY V201 TCA3

| OMAR AHMED ALBAYOUMI | SS: ████ (P-1) | E: MANA LIFE |
|---|---|---|
| 8333 MOUNT ADA RD APT ██ | YOB: 1957 | |
| SAN DIEGO CA 92111-3132 | | LA JOLLA CA |
| RPTD: 10-99 U | | RPTD: 5-99 I |
| LAST SUB: 1323190 | | |

E: USIU
*6602 BEADNELL WAY APT ██    POMERADO RD
SAN DIEGO CA 92117-5120    S DIEGO CA 92126
RPTD: 3-96 TO 11-98 U 12X   RPTD: 6-98 I

*BALBOA ARMS
SAN DIEGO CA 92117
RPTD: 6-97 TO 7-97 U

*OMAR AHMED AL

```
------------------------------ FACS+ SUMMARY -----------------------
```
INPUT SSN ISSUED 1993-1995
FROM 11-01-99 INQ COUNT FOR SSN=0

```
---------------------------- PROFILE SUMMARY -----------------------
```
                             CNT 04/02/01/00
PUBLIC RECORDS-------0 PAST DUE AMT--------$0 INQUIRIES--20 SATIS ACCTS--12
INSTALL BAL----$3,459 SCH/EST PAY------$218+ INQS/6 MO---1 NOW DEL/DRG---0
R ESTATE BAL--------N/A R ESTATE PAY-------N/A TRADELINE--16 WAS DEL/DRG---4
REVOLVNG BAL------$216 REVOLVNG AVAIL-----98% PAID ACCT---4 OLD TRADE--7-95

```
---------------------------- SCORE SUMMARY -------------------------
```
EXPERIAN/FAIR, ISAAC SCORE   =  667  SCORE FACTORS: 22, 18, 14, 08

```
------------------------------ TRADES ------------------------------
```

| SUBSCRIBER | OPEN | AMT-TYP1 | AMT-TYP2 | ACCTCOND | PYMT STATUS |
|---|---|---|---|---|---|
| SUB#  KOB TYP TRM ECOA | BALDATE | BALANCE | PYMT LEVEL | MOS REV | PYMT HISTORY |
| ACCOUNT # | LAST PD | MONTH PAY | PAST DUE | MAXIMUM | BY MONTH |
| | | | | | |
| *COMP USA/HSB | 3-98 | $2,600-L | $1,098-H | TRANSFER | CUR WAS 60 |
| ████3482 HZ CHG REV  1 | 1-01-00 | | 1-00 | (23) | B000000021CC0 |
| | | | | | 000CCCCCC00 |

FBI008053

REDACTED FOR PUBLIC FILING

** PURCHASED BY ANOTHER LENDER **

```
*WELLS FARGO BANK          11-95    $1,000-O                CLOSED   CUR WAS 30
   0007 BC SEC 10   1  7-31-98      $0         7-98         (33) B000000000000
   6581                                                     4-96/1 000000000000
** ACCOUNT CLOSED AT CONSUMER'S REQUEST **

*MWARD/MEGA                11-96    $44-H                    CLOSED   CURR ACCT
   2480 DC CHG REV   1  9-24-99      $3         9-99         (36) BCCCCCCCCCCCC
                                     $3                          CCCCCCCCCCCCC
** ACCOUNT CLOSED AT CONSUMER'S REQUEST **

*BANK OF AMERICA           12-97    $500-L     $307-H       PAID     CUR WAS 90
   2754 BC CRC REV   1 12-29-99                12-99        (25) B000000000000
                                                                00000C321CC0
** ACCOUNT CLOSED AT CREDIT GRANTOR'S REQUEST **

OFFC TECH CARD/MEGA         3-98    $1,150-L   $448-H       PAID     CURR ACCT
   2270 FF CHG REV   1  1-19-00                1-00         (24) BCCCCCCCCCCCC
                                                                CCCCCCCCCCCC

*INCREDIBLE UNIVERSE/HS     4-98    $1,500-L   $1,500-H     OPEN     CUR WAS 30
   5050 ZR CHG REV   1 12-31-99     $0         2-99         (21) C000000000C1C
                       3-99                                     CC0CC0C0

BANK OF AMERICA             6-97    $1,000-L   $59-H        OPEN     CURR ACCT
   2754 BC CRC REV   1  2-03-00     $0         7-97         (32) N000000000CCC
                                                                0000000C0000

FIRST USA BANK             5-98    $2,000-L   $2,000-H     OPEN     CURR ACCT
   0958 BC CRC REV   1 12-31-99     $59        8-98         (17) C00CCCCCCCCCC
                       8-99                                     CCCC

FRANKLIN CAPITAL            6-98    $5,595-O                OPEN     CURR ACCT
   5030 BB SEC 36   1 12-31-99     $3,459      7-98         (18) CCCCCCCCCCCCC
   4442                11-99       $195                         CCCCC

HSBCNA MG                   3-98    $3,000-L   $3,555-H     OPEN     CURR ACCT
   9025 BC CRC REV   1 10-31-99     $29        3-98         (20) CCCCCC-CC0000
                       10-99        $10                         000CCCC

ROBINSONS/MAY              11-98    $101-H                   OPEN     CURR ACCT
   1559 DC CHG REV   1  7-04-99     $0         11-98        ( 9) 00000000C
                       11-98

ROBINSONS/MAY               1-99    $27-H                    OPEN     CURR ACCT
   1559 DC CHG REV   2  7-04-99     $0         1-99         ( 7) 000C0C0
                       4-99
```

FBI008054

REDACTED FOR PUBLIC FILING

PC Inquiry: 1780       Date: 02/04/00   Time: __.45:58        Page 4
Ref#: PARKWOOD              Trn#:   2013               Udr#:    01-01
ALBAYOUMI, OMAR

```
RNB TARGET                7-96      $250-L              OPEN     CURR ACCT
   0511 DV CHG REV    1  7-01-99    $0      7-97         (25)  NNNNNNNNNNNN00
                                                              0000000000CC

HRSUSA/COMPUSA            3-96      $3,600-L  $3,030-H   OPEN     CURR ACCT
   1826 JP CHG REV    1  6-30-99    $0        3-96       (40)  00000-0000000
                         5-97                                  000-00000000

RNB-MERVYNS               6-97      $400-L    $237-H     OPEN     CURR ACCT
   6696 DC CHG REV    1  6-05-99    $125      7-97       (24)  CC0CCC00000CC
                         3-99       $10                        C00CCCCCCCCC

J C PENNEY                7-95      $43-H              INACTIVE   CURR ACCT
   8000 ZR CHG REV    1  1-06-00    $0        9-95       (55)  NNNNNNNNNNNNNN
                         6-96                                  NNNNNNNNNNNN-
```

---------------------------------- INQUIRIES ---------------------------------

```
AMERICAN EXPRESS            9-03-99      0060 N
WESTERN NATL PROPERTY       7-28-99      0583 RR     UNK REN
AMERICAN EXPRESS            6-05-99      0060 N
AMERICAN EXPRESS            5-18-99      0060 N
MERCEDES BENZ SAN DIEG      5-04-99      5472 AN     UNK      1
ONYX ACCEPTANCE CORP        5-04-99      1180 FA
WFS FINANCIAL               5-04-99      0494 FS
DOWNEY AUTO FINANCE CO      5-04-99      0145 FS
AMERICAN EXPRESS            12-16-98     0060 N
BANK OF AMERICA             11-06-98     7654 BC
CR SOURCE                   9-16-98      0727 FR     UNK R/C
FRANKLIN BANK               6-30-98      5227 BB
UNION BANK                  6-29-98      5584 BB
FRANKLIN BANK               6-29-98      5227 BB
EL CAJON MITSUBISHI         6-26-98      2441 AN
CREDCO                      6-26-98      8091 ZB     UNK AUT
SATURN/E C                  6-25-98      0628 AN
AMERICAN EXPRESS OPTIM      6-05-98      0000 N
CHEVY CHASE FSB             4-29-98      1630 BC
AMERICAN EXPRESS OPTIM      4-23-98      0000 N
```

END -- EXPERIAN

***** DECODING FOR XPN FAIR ISAAC FACTORS *****

01=Current balances on accounts. 02=Delinquency reported on accounts. 03=Too
few bank revolving accounts. 04=Too many bank revolving accounts. 05=Number of
accounts with balances. 06=Number of finance company accounts. 07=Unable to
evaluate recent payment history. 08=Number of recent inquiries. 09=Number of
accounts opened within the last 12 months. 10=Proportion of balance to high

FBI008055

REDACTED FOR PUBLIC FILING

credit on bank revolving or all revolving accounts. 11=Current balances on
revolving accounts. 12=Length of revolving account history. 13=Length of time
(or unknown time) since account delinquent. 14=Length of time accounts have
been established. 15=Insufficient or lack of bank revolving account information
16=Insufficient or lack of revolving account information. 17=No recent (non-
mortgage) account balance information. 18=Number of accounts delinquent. 19=Too
few accounts rated "current". 20=Length of time since legal item filed or col-
lection item reported. 21=Amount past due to accounts. 22=Account(s) not paid
as agreed and/or legal item filed. 24=Lack of recently reported balances on re-
volving/open accounts. 25=Length of installment loan history. 26=Number of re-
volving accounts. 28=Number of accounts established. 30=Length of time since
most recent account established. 31=Too few accounts with recent payment infor-
mation. 32=No recent installment loan information. 33=Proportion of current
loan balance to original loan amount. 36=Length of time open installment loans
have been established. 37=Number of finance company accounts established rela-
tive to length of finance history. 38=Serious delinquency and public record or
collection filed. 39=Serious delinquency. 40=Derogatory public record or col-
lection filed. 98=Lack of recent information on auto loan or lack of auto loans
99=Lack of recent information on finance accounts or lack of finance accounts.
------------------------------------------------------------------------------
                          >>>> End XPN Report <<<<

If you reject your applicant based on this XPN report, direct him/her to
Experian Consumer Asst.  P O Box 949, Allen, TX 75002          -3742

CA

FBI008056

REDACTED FOR PUBLIC FILING

BANK OF AMERICA, #0900
BALBOA-GENESEE BRANCH
              Transaction Record

            Current     Business
            Date        Date        Seq
  Time      02-04-00    02-04-00   154007
  15:40                 Account Number
  Type                        █5839
  CHECKING          █████

        Deposit Total:              $9,900.00


                    Thank You,
                    ████
                    017
                    TRAC: 369

FBI008057

REDACTED FOR PUBLIC FILING

# RESIDENT ACTIVITY RECORD

Resident _____                    Property _____

Apartment No. _____               Move in Date _____

| DATE | TYPE OF ACTIVITY | COMMENTS / STATUS |
|------|------------------|-------------------|
|      | Resident in ___ is Braunton |         |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
| c    |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |
|      |                  |                   |

FBI008058

REDACTED FOR PUBLIC FILING



V ███ MT. VERNON
LEMON GROVE, CA 91945
███ ██ -8808

a4

REDACTED FOR PUBLIC FILING

<u>30 day Notice</u>    Apt #

I   <u>Nawaf Al-Hazmi</u>   and   <u>Khalid</u>
<u>Al-Mindhar</u>   hearby giving our 30 day
Notice to leave on the 13th of March.



X _____
  Nawaf

X _____
Khlid _____
X _____
2/13/00

We are cancelling our Notice

X _____      X _____
  Nawaf              Khlid _____

FBI008060

REDACTED FOR PUBLIC FILING