## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (GBD)(FM) |

This document relates to:

> *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.,* Case No. 03-cv-9849 (GBD)(SN)

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO ADD PARTIES AGAINST THE TALIBAN

The *Burnett* litigation has been pending in the federal courts since the initial complaint was filed on August 15, 2002 in the U.S. District Court for the District of Columbia. The *Burnett* Plaintiffs have alleged since the beginning of the litigation that the Taliban and others provided material support and resources to the Al Qaeda terrorists who carried out the coordinated attacks on September 11, 2001 in New York City; Arlington, Virginia; and Shanksville, Pennsylvania.

The "legacy" *Burnett* Plaintiffs—those whose claims were filed on January 3, 2005 and prior—obtained a default judgment as to liability against the Taliban on April 7, 2006. *See* ECF No. 1756. That default judgment as to liability asserted liability on behalf of 7,356 separate claimants including individuals who were killed in the attacks, those who sustained injuries as a proximate cause of the attacks, and immediate family members (or their functional equivalents) of individuals who perished in the terrorist attacks on September 11, 2001. *See* ECF No. 8561, Ex. A. As collectible assets may become available against the Taliban, the "legacy" *Burnett* Plaintiffs pursued entry of a default judgment against the Taliban (ECF No. 8560). Undersigned counsel now seeks to add additional plaintiffs against the Taliban to the *Burnett* case through this motion. The Court should allow these additional plaintiffs to pursue claims and obtain similar judgments against the Taliban for facilitating the terrorist attacks of September 11, 2001.

The parties seeking to assert claims against the Taliban are identified individually in Exhibit A to the Declaration of John C. Duane ("Duane Declaration") that is being filed concurrently with this memorandum of law. They are victims of the terrorist attacks on September 11, 2001 who have not previously asserted claims against the Taliban. These plaintiffs include spouses, children, parents, siblings, or their estate representatives, previously adjudicated functional equivalents of immediate family members, and estate representatives of individuals who were killed in the terrorist attacks. The operative complaint in this case would remain unchanged in all respects but for the identity of these additional parties against the Taliban.

The *Burnett* Plaintiffs move pursuant to Fed. R. Civ. P. 15 and 21 and in accordance with Case Management Order #2, ¶ 12, for leave to include these additional plaintiffs as parties against the Taliban. In the alternative, these additional claimants move pursuant to Fed. R. Civ. P. 24 to intervene as Plaintiffs in this action against the Taliban. Case Management Order #2 provided a mechanism for the addition of parties to cases within this MDL (albeit the joinder needing to be completed by December 31, 2004), and the Order contemplated that "Plaintiffs may without further leave of court add … parties by listing their names and filing the lists as supplemental pleadings under F.R.C.P. 15(d). The caption in the docket for the Individual Action to which a plaintiff … has been added or removed will be changed to reflect the names of the parties in the Individual Actions as amended by the filing. Plaintiffs added by this procedure need not re-serve defendants who have already been served." ECF No. 247 at ¶ 12. Plaintiffs believe that, in this default scenario with the Taliban, following this prior process would ensure both fairness and judicial economy. Furthermore, Plaintiffs would request that the Court condition the granting of this motion on all parties being bound by all prior rulings made in this case, including the Court's prior orders on service by publication.  ECF Nos. 445, 488.  In short, Plaintiffs desire to add parties

2

without otherwise negatively impacting any prior service, order, or judgment entered in the case, and the Court has previously endorsed such an approach on multiple occasions in Case Management Order #2 and in the short form orders applicable to Iran, the Kingdom of Saudi Arabia, and Sudan. *See* ECF Nos. 247, 5234, 6547. The Court has the authority to impose such a condition, *see* 7C Fed. Prac. & Proc. Civ. § 1922 (3d ed.), and such a condition will prevent relitigating legal issues long since decided by this Court.

The procedural devices of adding parties either through Rule 15 and 21 or by intervention through Rule 24, should be granted "when justice so requires," "on just terms," and are designed to balance the "efficient[] administrat[ion] [of] legal disputes by resolving all related [matters] in one lawsuit" with the need to ensure that the lawsuit does not become "unnecessarily complex, unwieldy or prolonged." *Floyd v. City of New York,* 770 F.3d 1051, 1057 (2d Cir. 2014) (citing *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 69 (2d Cir. 1994)). Here, the most practical and equitable means for the Plaintiffs on Exhibit A to pursue their claims against the Taliban is for this Court to grant their Motion to be added to an existing case with the condition that all parties will be bound by all prior rulings in this case, as the Court previously recognized in issuing Case Management Order #2. *See also* ECF Nos. 9559 and 9637 (wherein this Court granted the *Burnett* Plaintiffs prior motions to amend to add parties seeking to assert claims against the Taliban).

Adding parties now will not unduly delay or prejudice the Taliban's rights as it has already defaulted and has remained so for the past several years. This Court has already issued default judgments against the Taliban. The Taliban already knows that its heinous acts affected tens of thousands of people still waiting for justice. If the Taliban eventually appears, it is difficult to identify any prejudice the terrorist group would suffer since it defaulted. The Taliban has delayed by ignoring this case for decades. If the Court denies this Motion, then the Plaintiffs on Exhibit A

would be left with only two alternatives. First, they could simply surrender their claims against the Taliban for the wrongful death of their loved ones. Or second, they could file a new complaint to pursue their claims against the Taliban. The former course of action would result in an obvious and terrible injustice. The latter would be a massive waste of time, effort, and legal resources and would subject the Plaintiffs on Exhibit A to potential additional defenses not otherwise available to the Taliban. This mass tort case calls out for collective adjudication so that *all* Plaintiffs can economically litigate their claims against the Taliban.

## ARGUMENT

## I.    THE COURT SHOULD PERMIT AMENDMENT TO INCLUDE THE PLAINTIFFS ON EXHIBIT A UNDER RULES 15 AND 21, AS PREVIOUSLY PERMITTED IN CASE MANAGEMENT ORDER #2.

The Plaintiffs on Exhibit A move under Rule 15(a) or (d) to amend or supplement the *Burnett* operative complaint to be included as additional parties. *See Bartels v. Inc. Vill. of Lloyd Harbor,* No. 10-CV-5076 ADS GRB, 2012 WL 2576142, at *5 (E.D.N.Y. July 2, 2012); *see also* 6A Wright & Miller, Federal Practice & Procedure § 1504 (3d ed. Supp.2011) ("Litigants also have been allowed to supplement their original pleadings to include new parties when events make it necessary to do so."); Case Management Order #2, ECF No. 247, ¶ 12; "Types of Amendments Permitted Under Rule 15(a)", 6 Fed. Prac. & Proc. Civ. § 1474 (3d ed.) (collecting cases). Rule 15(a)(2) provides in relevant part: "[A] party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." Rule 15(d) in turn provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading" which includes adding additional plaintiffs, under applicable case law. § 1507 Supplemental Pleadings—Adding New Parties, 6A Fed. Prac. & Proc. Civ. § 1507 (3d ed.); Case Management Order #2, ECF No. 247, ¶ 12; *Fair Hous. Dev. Fund Corp. v. Burke,* 55 F.R.D. 414, 422 (E.D.N.Y. 1972). Rule 21 adds that "[o]n motion or on its own, the court may at any

time, on just terms, add or drop a party." "The general standard" to add parties under Rule 21 "is the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Burke,* 55 F.R.D. at 419; *Ke v. 85 Fourth Ave. Inc.,* No. 07 CIV. 6897, 2009 WL 185949, at *3 (S.D.N.Y. Jan. 22, 2009) (granting motion to add parties). Indeed, this Court previously encouraged plaintiffs to use Rule 15(d) to add parties without the need to re-serve defendants. *See* ECF No. 247, ¶ 12; also see ECF Nos. 9559 and 9637 (wherein this Court granted the Burnett Plaintiffs prior motions to amend to add parties seeking to assert claims against the Taliban). And as discussed below, these additional Plaintiffs satisfy the applicable legal standard under 15(a), 15(d), and 21. Accordingly, these additional Plaintiffs request that the Court utilize the rule it deems most appropriate, including reinstating a limited version of Case Management Order #2 (paragraph 12) to facilitate adding parties against the Taliban without affecting any prior service, orders, or judgments entered in the case.

### A. The Plaintiffs on Exhibit A Satisfy Fed. R. Civ. P. 15(a)

"A party may make a Rule 15(a) amendment to add…parties to the action." 6 Fed. Prac. & Proc. Civ. § 1474 and n.22 (3d ed.) (collecting authorities). Leave to amend is a matter committed to the sound discretion of the District Court. *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). However, the District Court must exercise such discretion consistent with Rule 15(a)'s mandate that "amendments are to be granted freely in the interests of justice." *Voilas v. Gen. Motors Corp.,* 173 F.R.D. 389, 395-96 (D.N.J. 1997). Ordinarily, a District Court must therefore grant amendment absent "futility," "unfair prejudice," "undue delay," "dilatory motive," or "bad faith." *Milanese v. Rusto-Leum Group,* 244 F.3d 104, 110 (2d Cir. 2001). None of these grounds apply.

The "amendment" sought here is not futile. An amendment is "futile" if the "complaint, as amended, would fail to state a claim upon which relief could be granted." *In re NAHC, Inc. Sec. Lit.,* 306 F. 3d 1314, 1322 (3d Cir. 2002). Here, the Complaint unequivocally states cognizable claims against the Taliban. *See Burnett* Third Amended Complaint (ECF No. 29 in Case No. 02-cv-01616-JR (D.D.C.)) at Introduction and ¶¶ 43, 246, 343, 346, 391, 437, 438, 439, 440, 441, 451, 453 (describing the Taliban's extensive role in the September 11, 2001 Attacks and resulting harm). These allegations have not been challenged and must be taken as true. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 87 (2d Cir. 2002) (accepting factual allegations in initial and proposed amended complaints as true in motion to amend); *Buari v. City of New York,* 530 F. Supp. 3d 356, 410 (S.D.N.Y. 2021) (same). Further, the Taliban has already defaulted as to the *Burnett* Plaintiffs and thousands of other plaintiffs in sister MDL cases, and the Court has already found for liability against the Taliban in the *Burnett* case. ECF No. 1756. As such, the claims of the Plaintiffs on Exhibit A are plainly not futile.

Their claims are also timely under relation back principles. *See Andujar v. Rogowski,* 113 F.R.D. 151 (S.D.N.Y. 1986) (if a defendant knows the number of plaintiffs injured, claims raised by new plaintiffs relate back to a previously filed claim by another plaintiff); *Amaya v. Garden City Irrigation, Inc.,* No. 03 CV 2814 FB/RML, 2008 WL 2940529 (E.D.N.Y. July 28, 2008) (same). Here, the Taliban was aware, or should have been aware, that additional Plaintiffs could bring claims arising out of the September 11th Attacks against it. The *Burnett* Third Amended Complaint describes the thousands killed or seriously impacted in the Attacks. Thousands of plaintiffs filed suit against the Taliban in the early 2000s. The Taliban knows of its massive potential exposure. Under applicable precedent, additional Plaintiffs can therefore bring claims against the Taliban that relate back to the original filings.

But even if Rule 15 relation back principles did not apply, the Taliban would still need to assert the statute of limitations as an affirmative defense, and it has the burden of proof. *See* Rule 8(c); *Gonzalez v. Hasty,* 651 F.3d 318, 322 (2d Cir. 2011). The Taliban would also have to explain why the statutes of limitations are not otherwise tolled due to pending criminal cases (i.e., the ongoing criminal proceedings in Guantanamo Bay and the prior criminal proceedings against Zacarias Moussaoui), the disappearance and/or death of defendants, newly discovered evidence, on account of infancy (for certain additional Plaintiffs), and due to other applicable tolling principles that "allow[] relation back." *See* Rule 15(c)(1)(A). New York law, for example, allows for relation back "unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." *See* CPLR 203(f). Even if the Taliban appeared *and* asserted a statute of limitations defense, *and* relation back principles did not apply, it *still* could not meet its burden of proof because the claims are timely.

The Taliban will also suffer no prejudice. "[P]rejudice" in this context arises when the amendment "would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute…" *Block v. First Blood Assocs.,* 988 F. 2d 344, 350 (2d Cir. 1993). However, delay (and its necessary consequence litigation expense), without more, does not constitute prejudice. *Block,* 988 F.2d at 350-51; *Pasternack v. Shrader,* 863 F.3d 162, 174 (2d Cir. 2017). To the contrary, time, effort, and money expended in litigation do not, as a general matter, constitute prejudice that would justify denial of leave to amend. *McGee v. Doe,* 568 Fed. Appx. 32, 40 (2d Cir. 2014). The Taliban will plainly not be prejudiced by the proposed amendment. It has defaulted thousands of times against thousands of plaintiffs in multiple cases in this MDL, including this one. It has not expended any resources defending itself. The addition of new parties would not result in it expending additional

resources either. The only "delay" or expenditure of resources would occur if the Taliban subsequently appears. In that case, the delay and expenditures would not be prejudicial or undue and would not be a result of this Motion. It would just be a belated attempt by the Taliban to defend itself generally in this MDL.

In sum, the Plaintiffs on Exhibit A satisfy the liberal standards for amendment provided by Rule 15(a). The Court should therefore grant leave to amend to include the Additional Plaintiffs as parties to the *Burnett* action.

The Court also has the authority to grant an amendment that adds or drops parties with conditions imposed. *See* Fed. R. Civ. P. 21 ("…the court may at any time, on just terms, add or drop a party.") (emphasis added); 7 Fed. Prac. & Proc. Civ. § 1688 and n.19 (3d ed.); *duPont Glore Forgan, Inc. v. Arnold Bernhard & Co.,* 73 F.R.D. 313, 314 (S.D.N.Y. 1976) (collecting authorities for proposition that amendment under Rules 15 and 21 to add or drop parties may be made subject to conditions). Given the stated goal of adding parties without affecting any prior service, order or judgment entered in the case, the Plaintiffs on Exhibit A request that if the Court grants the requested relief under Rule 15, that it do so under the applicable subpart that accomplishes this goal and extends Case Management Order #2, ECF No. 247, ¶ 12 to apply to the plaintiffs added through this Motion against the Taliban.

### B.    The Plaintiffs on Exhibit A Satisfy Rule 15(d).

As discussed above, the Court can authorize that additional parties be added under Rule 15(d), and this Court has done so previously without requiring new service. *Jackson v. Odenat,* No. 09 Civ. 5583 (JFK)(AJP), 2012 U.S. Dist. LEXIS 18446, at *8 (S.D.N.Y. Feb. 14, 2012) ("Courts in the Second Circuit routinely permit the addition of parties through the filing of a supplemental pleading pursuant to Civil Rule 15(d)."); ECF No 247, ¶ 12. Courts often blur the

distinction between an amendment and a supplement. *See* 6A C. Wright and A. Miller, Federal Practice and Procedure § 1504 (3d ed.) ("Parties and courts occasionally confuse pleadings and mislabeling is common. However, these misnomers are not of any significance . . . . the court's' inattention to the formal distinction between amendment and supplementation is of no consequence."); *see In re Arred Elec'l Contracting Corp.,* 106 B.R. 353, 358-59 (Bankr. S.D.N.Y. Sept. 22, 1989) (treating motion to amend as a motion to amend or supplement). The standard for filing a supplemental complaint is the same as filing an amendment. *Kotler v. Bosco,* No. 9:17-CV-0394 (GTS/ML), 2019 U.S. Dist. LEXIS 238164, at *12 (N.D.N.Y. Nov. 4, 2019) ("Rule 15(d) motions are evaluated under the same liberal standards used to evaluate motions to amend pleadings under Rule 15(a)"); *New York State Nat'l Org. for Women v. Cuomo,* 182 F.R.D. 30, 36 (S.D.N.Y. 1998); *Forbes & Wallace, Inc. v. Chase Manhattan Bank,* 79 F.R.D. 563, 565 (S.D.N.Y. 1978).

For the same reasons discussed above, the Plaintiffs on Exhibit A satisfy the Rule 15(d) standard for supplementation. Given the goal of adding parties without otherwise affecting any prior service, orders, or judgments entered in the case, the Plaintiffs on Exhibit A request that if the Court grants the requested relief under Rule 15, that it do so under the applicable subpart that accomplishes this goal. The Court has previously created such a framework applicable to the Kingdom of Saudi Arabia, Sudan, and Iran, *see* ECF Nos. 5234 & 6547 and could do so here by extending paragraph 12 of Case Management Order #2 (ECF No. 247, ¶ 12) to apply to the plaintiffs added through this Motion against the Taliban.

### C.    The Plaintiffs on Exhibit A Satisfy Rule 21.

As the Court can rely on Rule 15(a) or 15(d) to add parties, it can also rely on Rule 21. *See* Fed. R. Civ. P. 21 ("[o]n motion or on its own, the court may at any time, on just terms, add or

drop a party."). The standard for adding a party under Rule 21 is similar if not identical to Rule 15. *Kotler v. Bosco,* 2019 U.S. Dist. LEXIS 238164, at *11 ("Addition of parties under Rule 21 is also guided by the same liberal standard as a motion to amend under Rule 15."); *Fair Housing Development Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y. 1972). For the reasons discussed above, the Court should add the Plaintiffs on Exhibit A as parties against the Taliban.

> **D.    While Additional Plaintiffs Need Not Satisfy the More Exacting Rule 16(b) "Good Cause" Standard to Be Added as Parties Against the Taliban, They Nevertheless Satisfy this Standard as Well.**

Where a district court has set a deadline for amending pleadings, "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline[.]" *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000). However, a party need not show good cause when no deadline has been set or when a party does not seek to modify that deadline. *See BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 10067 (KPF)(SN), 2017 U.S. Dist. LEXIS 133373, at *154 n.7 (S.D.N.Y. Aug. 21, 2017) ("it is not clear to the Court that [plaintiff] is required to show 'good cause' under Federal Rule of Civil Procedure 16(b)(4) 'since this latter provision pertains solely to motions to *amend—*not motions to *supplement* pleadings'") (emphases in original); *Beckett v. Inc. Vill. of Freeport,* No. 11 Civ. 2163 (LDW) (AKT), 2014 U.S. Dist. LEXIS 45605, at *18-*19 (E.D.N.Y. Mar. 31, 2014); *Watson v. Wright,* No. 08-CV-00960 (A)(M), 2011 U.S. Dist. LEXIS 30874, at *15 (W.D.N.Y. Jan. 11, 2011) ("Unlike motions to amend ...Rule 16's plain language does not require courts to set a deadline for filing a motion to supplement and the parties in this case did not set such a deadline in their Scheduling Order."), *adopted by* 2011 U.S. Dist. LEXIS 30791 (W.D.N.Y. Mar 24, 2011). Further, the good cause standard connotes "flexibility" in allowing relief from a scheduling order. The Advisory Committee states that this "liberal standard" was "included in recognition that the scheduling order is entered early in the litigation

and that if a stricter approach to modification were adopted, counsel might be encouraged to request the longest possible time for completing pleading, joinder, and discovery because of a fear that an extension would be impossible." *See* 6A Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.); *see also* Advisory Committee's Note to the 1983 amendments to Rule 16.

Here, the Plaintiffs on Exhibit A do not seek to depart from an existing scheduling order, so the "good cause" standard should not apply. Case Management Order #2 states that joinder of additional parties must be accomplished by December 31, 2004 using Rule 15(d), *without leave of the Court.* The Order never set a deadline to file supplemental pleadings or to file a motion to add parties. Rather, Case Management Order #2 provided a method of adding parties using Rule 15(d) *without leave of the Court* up until a certain date. Similarly, the Order sets a deadline to amend pleadings under Rule 15(a) *without leave of the Court,* simply noting that Court approval would be required after July 31, 2005 (which was later extended to September 30, 2005). *See* ECF No. 247, ¶¶ 12-13. Accordingly, the Plaintiffs on Exhibit A need not satisfy the "good cause" 16(b) standard to modify a scheduling order to be added as parties under Rule 15(a), (d), or Rule 21.

Should the Court determine that the "good cause" standard should apply, then the Plaintiffs on Exhibit A also satisfy this standard. The "good cause" standard generally hinges on the diligence of the party seeking to be added and the prejudice it would cause the non-moving party, along with any other pertinent factor. *See Salomon v. Adderley Indus., Inc.,* 960 F. Supp. 2d 502, 507 (S.D.N.Y. 2013) (good cause standard met to amend complaint); *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 243–44 (2d Cir.2007). The Plaintiffs on Exhibit A satisfy the good cause standard here for myriad reasons, including: (1) the Taliban had no collectible assets in 2004, so there was no point in adding parties to the case against the Taliban (diligence); (2) they moved quickly to join the case against the Taliban once it became possible that collectible assets

of the Taliban could be obtained (diligence); (3) they had not retained counsel for this litigation when the time limits in Case Management Order #2 passed and cannot be bound by a scheduling order entered in a case to which they were not yet a party (impossible to comply with scheduling order);[1] (4) the Taliban defaulted in the case so the time limits in Case Management Order #2 were not relied on or followed by the Taliban in formulating a defense (diligence when compared to the Taliban and no prejudice to Taliban); (5) the Court has previously endorsed such amendments/supplementations to add parties against the Taliban specifically even after the time limits set forth in Case Management Order #2[2] (no prejudice and diligence); (6) they do not seek to add new allegations or causes of action against the Taliban, they just seek to join an existing lawsuit with identical allegations (no prejudice); and (7) they could file new lawsuits against the Taliban but at considerably higher costs and subject to potential additional procedural defenses should the Taliban appear (no prejudice).

Point five in particular should resonate where the Court has already allowed counsel to add plaintiffs against the Taliban notwithstanding earlier Case Management Orders. The Court should similarly allow the same relief to the Plaintiffs on Exhibit A.

For these reasons, in the event that it applies to this proposed supplement to the Third Amended Complaint, the Plaintiffs on Exhibit A satisfy the good cause standard under Rule 16(b).

## II.    THE COURT SHOULD GRANT INTERVENTION UNDER RULE 24 IN THE ALTERNATIVE TO AMENDMENT.

Rule 24 of the Federal Rules of Civil provides for intervention either as of right or by permission of the court. The purpose of the rule is to prevent a multiplicity of lawsuits where

---

[1] Each of the Plaintiffs on Exhibit A are either currently Plaintiffs in *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-9849 (GBD)(SN), with claims pleaded solely against the Kingdom of Saudi Arabia and the Saudi High Commission, and/or in *Burnett, et al. v. Islamic Rep. of Iran, et al.*, Case No. 15-cv-9903 (GBD)(SN), *Arias, et al. v. Islamic Rep. of Iran*, Case No. 19-cv-41 (GBD)(SN), or *Prior, et al. v. Islamic Rep. of Iran*, Case No. 19-cv-44 (GBD)(SN).
[2] *See* ECF Nos. 7949, 8111, 8473, 9559, and 9637.

common questions of law and fact are involved. *Washington Elec. Corp. v. Mass Wholesale Elec.,* 922 F.2d 92, 97 (2d Cir. 1990). A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. *United States v. City of Los Angeles, Cal.,* 288 F.3d 391, 398 (9th Cir. 2002); *N. Carolina State Conf. of NAACP v. Berger,* 970 F.3d 489, 509 (4th Cir. 2020); *Nuesse v. Camp,* 385 F.2d 699, 703 (D.C. Cir. 1967).

Although the movant bears the burden of proof, Rule 24 is liberally construed, with doubts resolved in favor of the proposed intervenor. 20 Moore's Federal Practice, §24.03(1)(A) and n.4 (collecting authorities); *In Re Lease Oil Antitrust Litig.,* 570 F. 3d 244, 246 (5th Cir. 2009). Where, as here, intervenors have shown a "direct, substantial and legally protectable interest," the test is "one of inclusion rather than exclusion." *XL Speciality Ins. Co. v. Lakein,* 632 Fed. Appx. 667, 669 (2d Cir. 2015) (citing 7C Wright, et al. Fed. Prac. & Proc. Civ. § 1908.1 at 309 (3d ed)).

A "district court must permit a party to intervene [as of right] if it establishes that '(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.'" *Id.* (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 389 (2d Cir. 2006)). Similarly, a district court must permit a party to intervene on permission if: (1) the proposed intervenor's application is "timely;" (2) the intervenor has a claim (or defense) that shares with the main action "a common question of law or fact;" and (3) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *See* Rule 24(b); *see also "R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.,* 467 F.3d 238, 240 (2d Cir. 2006) (factors for intervention by

permission "substantially the same" as for intervention as of right). The Plaintiffs on Exhibit A easily satisfy these modest standards.

###### A.    The Plaintiffs on Exhibit A's Motion Is Timely.

"[T]he mere lapse of time does not render a motion to intervene untimely," *In re Bank of New York Derivative Litig.,* 320 F.3d 291, 300 (2d Cir. 2003); rather, "[i]t is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *United States v. Int'l Bus. Machines Corp.,* 62 F.R.D. 530, 541-42 (S.D.N.Y. 1974). The timeliness requirement of Rule 24 is intended "to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr,* 265 F.3d 195, 202 (4th Cir. 2001), *rev'd on other grounds sub nom. Devlin v. Scardelletti,* 536 U.S. 1 (2002) (quoting *United States v. S. Bend Cmty. Sch. Corp.,* 710 F.2d 394, 396 (7th Cir.1983)).

As a general matter, a court should consider: (1) how long the applicant had notice of its interest in the case before making the motion to intervene; (2) prejudice to existing parties resulting from this delay; (3) prejudice to the applicant resulting from a denial of the motion; and (4) any special circumstances militating either for or against intervention. *Floyd v. City of New York,* 770 F.3d 1051, 1057 (2d Cir. 2014). Measured against these standards, this motion is timely.

The Plaintiffs on Exhibit A filed this motion when it became apparent that the Taliban may obtain assets that could be subject to attachment. Before this time, there was no reason to sue a defunct and assetless terrorist group. Further, the Taliban has never appeared despite being sued in multiple cases by thousands of plaintiffs and having had many judgments on default entered against it in this MDL (including in this specific member case). In this context, the Taliban cannot claim undue delay or the expenditure of substantial additional resources because it never even tried to defend itself in this case. *See Smith v. Los Angeles Unified Sch. Dist.,* 830 F.3d 843, 864 (9th

14

Cir. 2016) (permitting intervention twenty years after commencement of action; crucial factor in assessing timeliness of motion was not mere passage of time, but the "stage of proceedings"); *Tweedle v. State Farm Fire & Cas. Co.,* 527 F.3d 664, 671 (8th Cir. 2008) (when deciding intervention motion, court must consider all circumstances, but "especially the stage of the litigation, the reason for the delay in seeking intervention, and any possible prejudice to the parties already in the litigation") (emphasis added); *Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361, 370 (3d Cir. 1995) (reversing denial of motion to intervene where litigation had made only limited progress at time intervention was sought).

Thus, even though this case is twenty years old in terms of the passage of time (the initial Complaint was filed on August 15, 2002), the motion to intervene has been made promptly and diligently. *See Foster v. Gueory,* 655 F.2d 1319, 1325 (D.C. Cir. 1981); *Winbush v. Iowa By Glenwood State Hosp.,* 66 F.3d 1471, 1479 (8th Cir. 1995) (motion to intervene filed ten years after complaint was timely where it promptly followed court's decision decertifying a class); *Hill v. W. Elec. Co.,* 672 F.2d 381, 386 (4th Cir. 1982) ("[In] ruling on motions for intervention (m)ere passage of time is but one factor to be considered in light of all the circumstances.") (internal citations omitted).

More importantly, if the Taliban appears, it would likely defend itself against *all* plaintiffs in this MDL, not just the Plaintiffs on Exhibit A in this single case. Accordingly, there are no additional resources the Taliban would expend if the Court grants this Motion. Rather, any resources the Taliban expends on a defense would have more to do with its decision to appear rather than the Court's decision on this Motion. *See Smith v. Los Angeles Unified Sch. Dist.,* 830 F.3d 843, 858 (9th Cir. 2016) (when assessing prejudice in connection with timeliness of motion to intervene, prejudice refers to prejudice resulting from delay in moving to intervene; it does not

15

refer to the mere fact that adding parties will make the case more difficult to resolve); *Wit v. United Behav. Health,* No. 14-cv-02346-JCS, 2016 WL 491468, at *2 (N.D. Cal. Feb. 9, 2016) (intervention will not prejudice defendants; although discovery of additional plaintiffs will be required, defendants would be "required to perform the same work" if separate actions filed); *Kamakahi v. Am. Soc'y for Reprod. Med.,* No. 11-cv-01781-JCS, 2015 WL 1926312, at *4 (N.D. Cal. Apr. 27, 2015) (prejudice is not evaluated "based on the work Defendants would need to do regardless of when [proposed intervenors] sought to intervene").

In other words, the key consideration is not whether the Taliban is prejudiced by the inclusion of the Plaintiffs on Exhibit A as parties against the Taliban, but whether the Taliban has been prejudiced by the timing of the motion to intervene; and, of course, the Taliban has not been prejudiced in that sense. *United States v. Union Elec. Co.,* 64 F.3d 1152, 1159 (8th Cir. 1995) (the question for determining timeliness of motion to intervene is whether existing parties may be prejudiced by the delay in bringing motion to intervene, and not whether intervenor will cause the nature, duration, or disposition of lawsuit to change). *See Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.,* 346 F.2d 552, 561 (5th Cir. 2003) ("Prejudice to other parties also weighs against intervention. The inquiry for this factor is whether other parties were prejudiced by the delay, not whether they would be prejudiced by the addition of the claim (obviously, in the sense that they may obtain less, existing parties are always prejudiced by new claims).") (emphasis in original); *Ass'n of Pro. Flight Attendants v. Gibbs,* 804 F.2d 318, 321 (5th Cir. 1986) (intervention allowed as timely when intervention no more distressing to other parties at later date than at earlier one).

On the other hand, the Plaintiffs on Exhibit A would be significantly prejudiced if the Motion were denied. If the Motion were denied, then all Plaintiffs on Exhibit A will have to file and serve new complaints against the Taliban which may be subject to additional defenses and

procedural hurdles. These defenses and procedural issues would not be present if these Plaintiffs are added as parties through intervention, amendment, or supplementation under this Court's prior Orders.

In sum, all the relevant factors point to a finding that this Motion is timely: the Motion has been made promptly; the Taliban will suffer no prejudice if the Motion is granted; and the Plaintiffs on Exhibit A would be significantly prejudiced if the Motion were denied.

### B.  The Plaintiffs on Exhibit A Can Intervene as of Right Because They Satisfy All Applicable Elements.

A district court must grant a timely motion to intervene as of right if it establishes that "the applicant asserts an interest relating to the property or transaction that is the subject of the action; the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and the applicant's interest is not adequately represented by the other parties.'" *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 389 (2d Cir. 2006).

Here, the Plaintiffs on Exhibit A have a direct and powerful interest in the terrible "transaction" that is the subject of this action. *See id.* Just like the "legacy" *Burnett* Plaintiffs, the Plaintiffs on Exhibit A are victims of the September 11th attacks who seek to hold the Taliban responsible for its part in bringing about the death of their loved ones.

Further, "disposi[tion] of the action may as a practical matter impair or impede the movant's ability to protect its interest." *Id.* (citing Fed. R. Civ. P. 24(a)(2)) (emphasis added). Rule 24(a) is concerned with "practical" considerations. A proposed intervenor need not prove that he would be legally bound in a res judicata sense by judgments in the case; rather, it is sufficient that the disposition of the case would as a practical matter impair the proposed intervenor's ability to protect his interests in the same transaction. *See* 7C Fed. Prac. & Proc. Civ. § 1908.2 (3d ed.);

*Nuesse v. Camp,* 385 F.2d 699, 701 (D.C. Cir. 1967); *Jones v. Koons Auto., Inc.,* 752 F.Supp.2d 670, 690 (D. Md. 2010). And where, as here, there is a showing of a very strong interest in the subject of the action, a lesser showing of impairment or inadequacy of representation may be warranted. *United States v. Hooker Chemical & Plastics Corp.,* 749 F.2d 968, 985 (2d Cir. 1984); *accord United States v. Yale Univ.,* 337 F.R.D 35, 39 (D. Ct. 2021).

Here, if the Plaintiffs on Exhibit A are not added to this case and allowed to proceed to judgment, their interests in the Taliban's assets could be impaired. Further, as discussed above, the Taliban would potentially have additional defenses if the Plaintiffs on Exhibit A had to bring separate actions that could "as a practical matter, impair or impede the applicant's ability to protect its interest." For example, the relation-back argument is arguably weaker when filing a new complaint versus joining an existing case, *see* Rule 15(c); *Andujar v. Rogowski,* 113 F.R.D. 151 (S.D.N.Y. 1986); *Amaya v. Garden City Irrigation, Inc.,* No. 03 CV 2814 FB/RML, 2008 WL 2940529 (E.D.N.Y. July 28, 2008), and the Taliban may have more defenses against service. *See* ECF No. 247 ¶ 12 (authorizing addition of parties without service); ECF No. 488 (authorizing service on the Taliban by publication); ECF No. 445 (publication order).

As to the final element, the burden of establishing lack of adequate representation in the context of Rule 24(a)(2) has been characterized as "minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972); *Butler Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 179 (2d Cir. 2001); *CBS Inc. v. Snyder,* 136 F.R.D. 364, 368 (S.D.N.Y. 1991). A "serious possibility" that the absentee's interest may be inadequately represented is sufficient to warrant intervention. *Foster v. Gueory,* 655 F.2d 1319, 1325 (D.C. Cir. 1981). Any significant difference between the interest of the existing party and the absentee should be enough to warrant a finding of inadequate representation because:

Parties quite properly tailor their own presentation to the interest that each of them has. If there is a significant difference between the interest of the absentee and that of the party, there is a risk that the party will not provide adequate representation of the interest of the absentee…[A]ll reasonable doubts should be resolved in favor of allowing the absentee, who has an interest different from that of any existing party, to intervene so that the absentee may be heard in his own behalf.

7C Fed. Prac. & Proc. Civ. § 1909 (3d ed.). (Emphasis added.)

In the present case, the Plaintiffs on Exhibit A—while plaintiffs within this MDL—are not parties to the case against the Taliban yet. Therefore, the "legacy" *Burnett* Plaintiffs, in seeking to monetize their judgments against the Taliban for themselves, could not adequately represent non-parties who need to be included in this case before obtaining their own judgments against the Taliban.

Accordingly, the Plaintiffs on Exhibit A plainly can intervene by right.

## C.    Additional Plaintiffs also Easily Satisfy the Modest Standard for Intervention by Permission.

A court must grant a timely motion to intervene by permission if the party has claims that share a common question of law or fact with the main action and intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Rule 24(b).

Here, there is no doubt that the Plaintiffs on Exhibit A share questions of law and fact in common with the *Burnett* Plaintiffs' claims. These claims are, in many respects, identical to those of the *Burnett* Plaintiffs. Their claims arise out of the same event, the September 11th Attacks. Those attacks killed thousands of people. Proof of the Taliban's facilitating role in the attacks would involve identical evidence and application of identical legal principles for both the *Burnett* Plaintiffs and the Plaintiffs on Exhibit A.

And intervention will not "unduly delay or prejudice the adjudication of the rights of the existing parties." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (citations and quotation marks omitted). This requirement overlaps with the requirement of timeliness. As

already discussed above, permissive intervention would not prejudice the Taliban. Nor will intervention unduly delay this case's resolution. Even if the Taliban appears to defend itself against these newly added claims, that delay would be unrelated to this Motion. Rather, this Motion would result in *less* delay by allowing parties to be added by amendment, supplementation, or intervention, rather than by commencing new actions.

## III.    CONCLUSION

For the foregoing reasons, this Court should grant this Motion to Add Parties Against the Taliban, either by amendment, supplementation, or intervention, and without otherwise affecting any prior service, order or judgment entered in the case. Plaintiffs further request that the Motion to Add Parties be granted on the condition that all parties be bound by all prior rulings made in this action to the same extent and in the same manner as the existing parties are currently bound. In particular, the Plaintiffs on Exhibit A request that the Court allow service that was completed by publication against the Taliban in the *Burnett* action to constitute service of these newly added claims and to extend Case Management Order #2, ¶ 12, to apply to the Plaintiffs on Exhibit A.

Dated:  May 15, 2025                              Respectfully submitted,

                                                 MOTLEY RICE LLC

                                                 */s/ John C. Duane*
                                                 John C. Duane, Esq.
                                                 Donald A. Migliori, Esq.
                                                 Jodi Westbrook Flowers, Esq.
                                                 Robert T. Haefele, Esq.
                                                 28 Bridgeside Boulevard
                                                 Mount Pleasant, SC 29464
                                                 Tel: (843) 216-9000
                                                 Fax: (843) 216-9450
                                                 Email: jduane@motleyrice.com

                                                 Attorneys for the *Burnett* Plaintiffs