UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

      TERRORIST ATTACKS ON
      SEPTEMBER 11, 2001


-----------------------------------------------------------------X

03-MD-01570 (GBD)(SN)

**REPORT &
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

      Rivelli v. Islamic Republic of Iran, No. 18-cv-11878 (GBD)(SN)
      Rowenhorst v. Islamic Republic of Iran, No. 18-cv-12387 (GBD)(SN)

      Rahma Salie and Michael Theodoridis married in 1998. Goldman Decl. Ex. C, at 3, ECF No. 10328-3. She wore a golden sari; he wore a matching golden tie. Id. Some three years later, the couple boarded a plane scheduled to fly from Boston to Los Angeles, to attend a wedding in California. Id. Ms. Salie was pregnant with their first child. Id. Within 20 minutes of take-off, however, their flight—American Airlines Flight 11—was hijacked by terrorists. 9/11 Memorial & Museum, September 11 Attack Timeline, https://timeline.911memorial.org/timeline/10681 (last visited Apr. 25, 2025). And at 8:46 a.m. on September 11, 2001, the hijackers plunged the plane into the North Tower of the World Trade Center. Id. Ms. Salie and Mr. Theodoridis died instantly and "simultaneously." Pls' Mem. of Law at 1, ECF No. 10327.

      Their estates (the "Plaintiffs") now bring a motion for partial final default judgment against the Islamic Republic of Iran ("Iran"). Pls' Mot., ECF No. 10326. Their motion presents a novel issue for the Court: whether spouses who died simultaneously in the September 11, 2001 terrorist attacks (the "9/11 Attacks") can recover solatium damages for one another's deaths. See

Pls' Mem. of Law, ECF No. 10327. The Court concludes that they cannot and recommends DENYING the Plaintiffs' motion.

## BACKGROUND

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. More than a decade ago, the Court established a damages framework designed to compensate the estates of those who were killed in the 9/11 Attacks, as well as "those whose immediate relatives lost their lives as a result of the terrorists' acts." R. & R. at 1, ECF No. 2618 ("Damages R&R"), adopted by Mem. Decision & Order, ECF No. 2623 ("Damages Order"). This framework arose out of Section 1605A of the Foreign Sovereign Immunities Act ("FSIA"), which allows United States nationals to recover "economic damages, solatium, pain and suffering, and punitive damages" from foreign sovereign defendants under a so-called "terrorism exception" to foreign sovereign immunity. 28 U.S.C. § 1605A(c).

In setting out its framework, the Court delineated the different bases for awarding these four types of damages. Economic damages, the Court explained, compensate each decedent's estate for "the past and future lost wages and benefits of each decedent"; "the estate's loss of household services"; the estate's "loss of advice, counsel, guidance, instruction, and training services"; and "its loss of accompaniment services[.]" Damages R&R at 6.

Solatium damages compensate each decedent's immediate family members for "the mental anguish, bereavement, and grief" that those family members "experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." Damages R&R at 10 (quoting Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005)). The Court emphasized the "traumatic effects of the loss of [a] loved one," the "indelible impact on the lives of the victims' families," and "the frequent reminders" of the 9/11 Attacks to underscore why

2

each decedent's spouse, parent, child, and/or sibling is entitled to significant solatium damages following their loved one's death.[1] Damages R&R at 11.

Pain and suffering damages, by contrast, compensate each decedent's estate for the "horrific pain and suffering" that "many, if not all of the decedents in this case experienced . . . on September 11, 2001." Damages Order at 3. The Court credited the expert report of Dr. Alberto Diaz, Jr., M.D., to grant a uniform pain and suffering award to every estate—because Dr. Diaz's report "provide[d] a chilling account of the horrific conditions that each of the Estate Plaintiffs' decedents likely encountered immediately before his or her death."[2] Damages R&R at 8; see also R. & R. at 7, ECF No. 3358 ("Dr. Diaz's report details the harrowing conditions in which 9/11 victims lost their lives. There can be no doubt that every decedent felt fear, pain, and physical and psychological anguish that was almost unfathomable.")

Lastly, the Court determined that the plaintiffs in this multidistrict litigation are entitled to punitive damages—damages "aimed at deterrence and retribution," State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003)—but has deferred decisions about those awards until a later date, see Damages Order at 5; ECF Nos. 10350, 10470.

Subsequent rulings confirmed the application of the Court's damages framework to claims brought by non-United States nationals under the Justice Against Sponsors of Terrorism Act ("JASTA") and state tort law. See In re Terrorist Attacks on Sept. 11, 2001 ("In re 9/11"),

---

[1] The Court established the following rubric to award solatium damages: $12,500,000 to the spouse of a 9/11 decedent; $8,500,000 to the parent of a 9/11 decedent; $8,500,000 to the child of a 9/11 decedent; and $4,250,000 to the sibling of a 9/11 decedent. See Damages Order at 4; see also R. & R. at 9, ECF No. 3358 (adopting this framework).

[2] The Court awarded each decedent's estate $2,000,000 per decedent in pain and suffering damages because "[c]alculating a precise award for each decedent's individual pain and suffering would be impossible." Damages Order at 3.

No. 03-md-01570 (GBD)(SN), 2024 WL 4268663 (S.D.N.Y. Jan. 5, 2024), <u>report and recommendation adopted by</u> 2024 WL 1312504 (Mar. 26, 2024) (holding that non-U.S. nationals may bring claims against Iran under JASTA and New York tort law); <u>see also</u> <u>In re 9/11</u>, 2024 WL 3046225 (S.D.N.Y. June 17, 2024) (applying the Court's March 26, 2024 opinion to claims for intentional infliction of emotional distress under New York law).

The moving Plaintiffs, who are non-U.S. nationals, now seek solatium damages under JASTA and New York tort law. <u>See</u> Pls' Mem. of Law, ECF No. 10327. They ask the Court to find Iran liable for intentional infliction of emotional distress ("IIED") because, in Foreign Sovereign Immunities Act ("FSIA") cases, "courts have recognized that a solatium claim is 'indistinguishable from the claim of intentional infliction of emotional distress.'" <u>Damages R&R</u> at 10 (quoting <u>Surette v. Islamic Republic of Iran</u>, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002)). The Plaintiffs have already been awarded economic and pain and suffering damages.[3] <u>See</u> Mem. Decision & Order at 11, 13, ECF No. 9931.

To find for the Plaintiffs, then, the Court must resolve: (1) whether the Court has jurisdiction over their solatium claims; (2) whether Iran defaulted; (3) whether Iran is liable for IIED under New York law; and (4) if so, what damages are due.

## DISCUSSION

In 2011, the Court assessed Iran's role in facilitating the 9/11 Attacks. <u>See</u> <u>In re 9/11</u>, 2011 WL 13244047, at *2–36 (S.D.N.Y. Dec. 22, 2011). In broad terms, the Court found that Iran waged an "undeclared war" on the United States "through asymmetrical[] or unconventional strategies and terrorism" via "proxies such as . . . al Qaeda." <u>Id.</u> at *3. Iran's "material support"

---

[3] The Estate of Rahma Salie was awarded $2,000,000 in pain and suffering damages. Mem. Decision & Order at 11, ECF No. 9931. The Estate of Michael Theodoridis was awarded $2,000,000 in pain and suffering damages and $8,514,726 in economic damages. <u>Id.</u> at 13.

for al Qaeda, the Court concluded, proximately caused the 9/11 Attacks. Id. at *41. This 2011 decision bears on many of the questions currently facing the Court. Though courts cannot take judicial notice of factual findings made in another case and rely on them "for the truth of the matter asserted," Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (cleaned up), the FSIA "does not require courts to relitigate issues that have already been settled in previous decisions," Lee v. Islamic Republic of Iran, 518 F. Supp. 3d 475, 480 (D.D.C. 2021) (cleaned up). Courts can respect these limits and avoid duplication of effort by taking judicial notice of decisions issued in related cases and "review[ing] [the underlying] evidence," thereby obviating the need for its "re-presentment." Id. (quoting Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 59 (D.D.C. 2010)). The Court leverages this practice as it answers the fact-bound questions below. See ECF Nos. 2431, 2432, 2433, 2473 (documentary evidence cited in In re 9/11, 2011 WL 13244047).

## I.      The Court Has Jurisdiction

The Foreign Sovereign Immunities Act "supplies the ground rules for 'obtaining jurisdiction over a foreign state in the courts of this country.'" Federal Republic of Germany v. Philipp, 592 U.S. 169, 175 (2021) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989)). As its name suggests, the FSIA makes foreign states immune from suit by default, conferring jurisdiction over actions only if they meet strict requirements. The Plaintiffs' suit clears these hurdles, so the Court has jurisdiction over their claims.

### A.  Subject Matter Jurisdiction

Under the FSIA, district courts have subject matter jurisdiction over nonjury civil actions brought *in personam* against foreign states if "one of several enumerated exceptions to immunity applies." Republic of Sudan v. Harrison, 587 U.S. 1, 4 (2019); see 28 U.S.C. §§ 1330(a), 1604.

The Plaintiffs identify JASTA, codified at 28 U.S.C. § 1605B, as the relevant exception to immunity. It provides:

> A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by
>
> (1)    An act of international terrorism in the United States; and
>
> (2)    A tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred.

Id. § 1605B(b).

Having adopted and incorporated all of the allegations and causes of action set forth in the Burnett Amended Complaint, the Plaintiffs' claims plainly satisfy many of 28 U.S.C. § 1605B(b)'s requirements. See Rivelli Compl. at 10, No. 18-cv-11878, ECF No. 1; Rowenhorst Compl. at 10, No. 18-cv-12387, ECF No. 1. The Plaintiffs are seeking "money damages" from Iran. 28 U.S.C. § 1605B(b); see Burnett Am. Compl. at 1082–88, No. 15-cv-09903, ECF No. 53. Those damages are for "death[s]" sustained "in the United States" and "caused" by the 9/11 Attacks. 28 U.S.C. § 1605B(b); see Burnett Am. Compl. at 1081. And the 9/11 Attacks were "act[s] of international terrorism" on U.S. soil. 28 U.S.C. § 1605B(b); see Burnett Am. Compl. at 1081.

One element of 28 U.S.C. § 1605B(b) merits closer attention: the requirement that "a tortious act or acts of the foreign state" "caused" the injury. For FSIA purposes, "a tortious act" includes the "knowing or deliberately indifferent provision of material support to terrorists," and "cause" incorporates "the traditional test for proximate causation[:] . . . 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" In re 9/11, 298 F. Supp. 3d 631, 643, 645 (S.D.N.Y. 2018) (quoting Owens v.

Republic of Sudan, 864 F.3d 751, 794 (D.C. Cir. 2017)). In simple terms, there must be a link between a state's support for terrorism and the plaintiff's injuries.

The Court heard evidence linking Iran to the 9/11 Attacks in a 2011 hearing. Based on that record, it found that Iran was "aware[] of[] and involve[d] in[]" al Qaeda's plans and provided "material support" to the terrorist group. In re 9/11, 2011 WL 13244047, at *26, 41. It concluded that Iran's "material support" proximately "caused" the 9/11 Attacks and, by extension, the resulting deaths. Id. at *41. The evidence supporting those findings establishes the last element of 28 U.S.C. § 1605B(b)—that the Iran's "tortious act[s]" "caused" the deaths underpinning the Plaintiffs' claims.

The Plaintiffs' claims, brought *in personam* against Iran, accordingly meet all the requirements of the 28 U.S.C. § 1605B(b) exception to sovereign immunity. See Burnett Am. Compl., No. 15-cv-09903, ECF No. 53. The Court therefore has subject matter jurisdiction under 28 U.S.C. § 1330(a).[4]

## B. Personal Jurisdiction

With subject matter jurisdiction established, personal jurisdiction is simply a matter of showing "valid service of process." Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela, 863 F.3d 96, 104 (2d Cir. 2017) (cleaned up); accord 28 U.S.C. § 1330(b). The Court has previously found that service was proper in the above-captioned member cases, but provides a full analysis for completeness. See Mem. Decision & Order at 2, 7, ECF No. 9931.

---

[4] As noted above, 28 U.S.C. § 1330(a) grants jurisdiction over only "nonjury" actions. The Burnett, Rivelli, and Rowenhorst complaints include a jury demand, but this does not deprive the Court of jurisdiction. See No. 15-cv-09903, ECF No. 53, at 1089; No. 18-cv-11878, ECF No. 1, at 12; No. 18-cv-12387, ECF No. 1, at 13; Houston v. Murmansk Shipping Co., 667 F.2d 1151, 1154 (4th Cir. 1982). Where "a complaint contains a request for a jury trial . . . [against a foreign state] defendant," "the sensible practice is simply to strike the jury demand." Houston, 667 F.2d at 1154.

Service on Iran is governed by the FSIA, which specifies four methods of serving foreign states in a descending order of preference. <u>See</u> 28 U.S.C. § 1608(a). The first, service by "special arrangement," was impossible because the Plaintiffs have no such arrangement with Iran. <u>Id.</u> § 1608(a)(1); <u>see</u> Pls' Mem. of Law at 14, ECF No. 9322. The second, service according to an "international convention on service of judicial documents," was likewise unavailable because there is no service convention between the U.S. and Iran. 28 U.S.C. § 1608(a)(2); <u>see</u> Pls' Mem. of Law at 14, ECF No. 9322. The third, service by registered "mail," proved ineffective; the Clerk of Court mailed the requisite documents, but Iran refused to accept them. 28 U.S.C. § 1608(a)(3); <u>see</u> Pls' Mem. of Law at 15–16, ECF No. 9322. The fourth, service via "diplomatic channels," finally succeeded. 28 U.S.C. § 1608(a)(4); <u>see</u> Pls' Mem. of Law at 20–27, ECF No. 9322.

Because the Plaintiffs properly effectuated service under 28 U.S.C. § 1608(a)(4) on claims within the Court's subject matter jurisdiction, the Court has personal jurisdiction over Iran.

## II.     Iran Defaulted

After the Plaintiffs effectuated service, Iran had "sixty days" to "serve an answer or other responsive pleading." 28 U.S.C. § 1608(d). Iran did not respond or otherwise appear in that time or since. The Clerk of Court properly entered Certificates of Default against Iran on August 13 and 14, 2019. <u>See</u> Clerk's Certificate of Default, ECF No. 4819 (<u>Rowenhorst</u>); Clerk's Certificate of Default, No. 18-cv-11878, ECF No. 23 (<u>Rivelli</u>).

## III.    Iran Is Not Liable to the Plaintiffs for IIED

The Plaintiffs now ask the Court to find Iran liable for IIED under New York tort law. As the Court has confirmed, state tort claims can be brought against foreign states. <u>See</u> <u>In re 9/11</u>, 2024 WL 1312504, at *3 (quoting <u>Cassirer v. Thyssen-Bornemisza Collection Found.</u>, 596 U.S.

107, 114 (2022)) ("[A] foreign state, if found ineligible for immunity [under the FSIA], must answer for its conduct just as any other actor would."). In effect, the FSIA acts as "a 'pass-through' to the substantive law that would govern a similar suit between private individuals." Cassirer, 596 U.S. at 114 (quoting Oveissi v. Islamic Republic of Iran, 573 F.3d 835, 841 (D.C. Cir. 2009)); see In re 9/11, 2023 WL 5132138, at *12 (S.D.N.Y. Aug. 10, 2023) (citing Leibovitch v. Islamic Republic of Iran, 697 F.3d 561, 572 (7th Cir. 2012), and Owens, 864 F.3d at 809, in support of viability of state law claims against Sudan). Accordingly, Iran is subject to suit under state tort law.

### A. Choice of Law

The Court must therefore determine which state's laws to apply. The Court follows New York's choice-of-law doctrine because the Plaintiffs filed their complaint in this District. See Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993) (explaining that MDL courts apply the choice-of-law rules of "the jurisdiction in which the action was filed"). New York has different choice-of-law rules for "loss-allocating" and "conduct-regulating" torts, but under either framework, the law of the "place of the tort" controls. In re 9/11, 2023 WL 5207985, at *2–3 (S.D.N.Y. Aug. 14, 2023). Thus, the Court applies the law of the jurisdiction "where the last event necessary to make the [defendant] liable occurred," even if "the defendant's . . . [mis]conduct occur[red] . . . in another [jurisdiction]." Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 195 (1985).

For these Plaintiffs, the "last event necessary to make [the Defendants] liable" occurred in New York. Id. Accordingly, the Court will apply New York tort law.

**B. Intentional Infliction of Emotional Distress**

    **1. The Plaintiffs' Factual Allegations Support Their IIED Claims**

The Court must first confront the fact that the relevant complaints do not explicitly include a claim for IIED. See Rivelli Compl., No. 18-cv-11878, ECF No. 1; Rowenhorst Compl., No. 18-cv-12387, ECF No. 1 (adopting Burnett Am. Compl. at 1082–1088, No. 15-cv-09903, ECF No. 53). The Court's assessment of the facts—and whether they "constitute a legitimate cause of action"—is not limited to the legal theories raised in the complaint. In re Indus. Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) (cleaned up); see Bricklayers & Allied Craftworkers Loc. 2 Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 187–89 (2d Cir. 2015) (analyzing well-pleaded facts to determine default liability without reference to theories asserted in complaint). The Court has previously emphasized that "a FSIA plaintiff 'd[oes] not have to identify [a] specific source of law in his complaint' *at all*." In re 9/11, 2024 WL 4268663, at *5 (emphasis in original) (quoting Oveissi, 573 F.3d at 840); cf. Owens v. Republic of Sudan, 531 F.3d 884, 894 (D.C. Cir. 2008) (FSIA cases are not subject to "heightened pleading requirement[s]").

Rather, a district court "retains the power to 'determine whether a cause of action is available under state or foreign law'" and "determine which body of law governs the plaintiffs' claims." In re 9/11, 2024 WL 4268663, at *5 (quoting Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 153–54 (D.D.C. 2011); and then quoting Est. of Botvin ex rel. Ellis v. Islamic Republic of Iran, 684 F. Supp. 2d 34, 39 (D.D.C. 2010)). That analysis is "driven by facts." In re 9/11, 2024 WL 4268663, at *5. The "factual allegations" are what a defaulting defendant "admits," City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011), and the "factual allegations must themselves be sufficient to establish a right to relief," Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 365 (E.D.N.Y. 2022) (cleaned up).

In adopting the <u>Burnett</u> Amended Complaint, the Plaintiffs have pleaded factual allegations that cogently charge Iran with legal responsibility for the deaths of the 9/11 decedents and the resulting emotional effects on their immediate family members:

- **"Iran . . . entered into an alliance with al-Qaeda** . . . to work together to conduct terrorist operations against the United States." <u>Burnett</u> Am. Compl. ¶ 4976.

- Through that partnership, **"Iran . . . had actual foreknowledge of[] . . . the 9/11 [A]ttacks** . . . [,] which were carried out by members of al-Qaeda." <u>Id.</u> ¶ 5006.

- In the lead up to 9/11, **"Iran . . . assist[ed] in, and contribut[ed] to, the preparation and execution of the plans"** for the Attacks, <u>id.</u> ¶ 4951, including by providing "instruction, training, direction, financing, and support" to al Qaeda, <u>id.</u> ¶ 5031.

- **"In furtherance of those plans, the al-Qaeda hijackers deliberately caused planes to crash into** the World Trade Center Towers, the Pentagon, and a field in Shanksville, Pennsylvania on September 11, 2001." <u>Id.</u> Those Attacks **"caus[ed]** the deaths of the 9/11 Decedents." <u>Id.</u> ¶ 5015.

- As a result, the "families of those murdered **suffer and will continue to suffer** permanent, physical and emotional **distress**, severe trauma, and lasting physical, emotional, and psychological injuries." <u>Id.</u> ¶ 5065. They "will **forever grieve** the deaths of the 9/11 Decedents." <u>Id.</u> ¶ 5043.

Later, the Plaintiffs identified IIED as an appropriate cause of action. <u>See</u> Pls.' Mem. of Law at 8–15, ECF No. 10741; Pls.' Mem. of Law at 8–15, ECF No. 10809. The Court is thus free to draw on this theory of liability as it considers whether the Plaintiffs have established their "right to relief by evidence satisfactory to the [C]ourt." 28 U.S.C. § 1608(e).

### 2. Iran Is Not Liable to the Plaintiffs for IIED Under New York Law

The Plaintiffs, however, have not established their IIED claim against Iran. In New York, an IIED claim "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." <u>Howell v. N.Y. Post Co., Inc.</u>, 81 N.Y.2d 115, 121 (1993); <u>accord</u> <u>Rich v. Fox News Network, LLC</u>, 939 F.3d

112, 122 (2d Cir. 2019). In third-party cases—where a claimant seeks to recover for the severe emotional distress they experienced because a third person was targeted with extreme and outrageous conduct—only immediate family members who were present for or contemporaneously perceived the tortious conduct may recover damages.[5] Restatement (Second) of Torts § 46(2)(a) (Am. L. Inst. 1965).

The Plaintiffs' uncontroverted submissions and this case's long record plainly establish the first three elements of an IIED claim under New York law. Iran knew of "the plan to crash hijacked civilian airliners into American cities." In re 9/11, 2011 WL 13244047, at *22. Iran intentionally "provided direct support to al Qaeda specifically for th[ose] attacks" in the form of "planning, funding, facilitation of the hijackers' travel and training, and logistics, and . . . the provision of services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation." Id. at *40. And that support "vastly increased the likelihood of the operational success of the 9/11 plot." Id. at *16.

Such conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell, 81 N.Y.2d at 122 (quoting Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 (1983)); accord Restatement (Second) of Torts § 46 cmt. d. The 9/11 Attacks, and Iran's efforts in precipitating them, stand "contrary to the guarantees 'recognized as indispensable by civilized peoples.'" In re 9/11, 2011 WL 13244047, at *39 (quoting 28 U.S.C. § 1350 note).

---

[5] The Court has held that spouses, parents, children, and siblings of 9/11 decedents may bring solatium claims. See Damages R&R at 11. It has not invoked the tort's "presence" or "contemporaneous perception" requirements. See R. & R. at 17, ECF No. 10665 (explaining that "it is well settled that an IIED claim arising from a terrorist attack that killed the plaintiff's immediate family member should not be restricted by the Restatement's presence or contemporaneous perception requirements").

And the Court has already found that "Iran's 'material support' proximately 'caused' the 9/11 Attacks." In re 9/11, 2024 WL 4268663, at *3 (quoting In re 9/11, 2011 WL 13244047, at *41); see also In re 9/11, 2024 WL 1312504, at *2 (stating that "Iran's tortious acts— specifically, its provision of material support to al Qaeda—proximately caused the 9/11 attacks"). There is thus "a causal connection" between Iran's conduct and the distress at the center of the Plaintiffs' claims. Howell, 81 N.Y.2d at 121.

But in this case, where the Plaintiffs argue that Rahma Salie's and Michael Theodoridis's distress was precipitated by (1) dreading the other's death and (2) witnessing the other's *ante mortem* pain and suffering, the Plaintiffs have not adequately established the fourth element of their IIED claim. Although Ms. Salie and Mr. Theodoridis suffered severe emotional distress through their own pain and suffering, the Plaintiffs have not demonstrated that the couple suffered the kind of severe emotional distress necessary to recover solatium damages.

### a.  Severe Emotional Distress

At the outset, the Court recognizes a self-evident truth: Ms. Salie and Mr. Theodoridis suffered severe emotional distress during the 9/11 Attacks. The Plaintiffs highlight the expert report "submitted to, and accepted by, this Court" from Dr. Alberto Diaz, Jr., M.D., which makes clear "the pain and suffering that 9/11 victims experienced." Pls' Mem. of Law at 6, ECF No. 10327 (citing ECF No. 2554-3). As the Court has previously affirmed, Dr. Diaz's report "provides a chilling account of the horrific conditions that each of the [9/11] decedents likely encountered immediately before his or her death," Damages R&R at 8—"fear, pain, and physical and psychological anguish that was almost unfathomable," R. & R. at 7, ECF No. 3358.

The passengers on American Airlines Flight 11 were no exception. On that fated flight, as Dr. Diaz detailed, "terrorists stabbed two flight attendants and slashed the throat of a business class passenger," "threatened passengers and crew with detonating a bomb," flew the plane

"erratically . . . among the skyscrapers of New York City," and "roar[ed]" the engines "to full throttle" to maximize the plane's impact on the North Tower. ECF No. 2554-3, at 3–4. "All of those aboard were certainly exquisitely aware that there would be no deliverance," Dr. Diaz concluded. Id. at 4.

Dr. Diaz's report, however, documented the 9/11 decedents' *own* distress throughout their harrowing journey—pain and suffering for which Ms. Salie and Mr. Theodoridis have already recovered damages. See Mem. Decision & Order at 11, 13, ECF No. 9931 (granting pain and suffering damages to both Ms. Salie's and Mr. Theodoridis's estates); see also Damages Order at 3 (Pain and suffering damages compensate each decedent's estate for the "horrific pain and suffering" that "many, if not all of the decedents in this case experienced . . . on September 11, 2001."). To recover additional solatium damages, then, the Plaintiffs must show that Ms. Salie and Mr. Theodoridis suffered "mental anguish, bereavement, and grief . . . as a result of [another] decedent's death," or as compensation for "the harm caused by the loss of [a] decedent's society and comfort." Damages R&R at 10 (quoting Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005)); see also Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 29 (D.D.C. 1998) ("Solatium is traditionally a compensatory damage which belongs to the individual heir personally for injury to the feelings and loss of decedent's comfort and society . . . .").

The Plaintiffs argue that they are entitled to these solatium damages for two reasons: first, because Ms. Salie and Mr. Theodoridis dreaded death; and second, because Ms. Salie and Mr. Theodoridis each witnessed one another's *ante mortem* pain and suffering. Neither argument establishes their "right to relief by evidence satisfactory to the [C]ourt." 28 U.S.C. § 1608(e).

**b. Dreading Death**

Primarily, the Plaintiffs argue that Ms. Salie and Mr. Theodoridis are entitled to solatium damages because they each experienced a form of "mental anguish, bereavement, and grief" by dreading death. Damages R&R at 10 (quoting Dammarell, 281 F. Supp. 2d at 196). "Michael Theodoridis and Rahma Salie experienced extreme emotional distress—dread—not only because of their own pending deaths," the Plaintiffs write, "but also knowing that the love of their lives, their unborn child, and their dreams would die with them." Pls' Mem. of Law at 2, ECF No. 10327. In other words, the Plaintiffs contend, Ms. Salie and Mr. Theodoridis suffered severe emotional distress because they each dreaded the deaths of the following "decedents": (i) themselves; (ii) their spouse; (iii) their unborn child; and (iv) their dreams. Id.

The first and last of these arguments are unavailable because solatium damages are available only to a decedent's immediate family members. See Damages R&R at 11. A plaintiff's estate cannot claim solatium damages for the plaintiff's own death or for his or her dreams. Id.; cf. Force v. Islamic Republic of Iran, 617 F. Supp. 3d 20, 35 (D.D.C. 2022) ("[T]he fear and distress caused by knowing that one's death is imminent is a reasonable component of [pain and suffering] damages, as is the physical pain associated with a brutal murder." (citing Hamen v. Islamic Republic of Iran, 407 F. Supp. 3d 1, 7 (2019))).

The Plaintiffs' second and third arguments are also unavailing. Solatium damages compensate immediate family members for the "hurt feelings or grief" that *follow* a decedent's death, not the dread that might *precede* it. Black's Law Dictionary (12th ed. 2024). As another court explained in its "seminal opinion" on solatium damages, Fraenkel v. Islamic Republic of Iran, 892 F.3d 348, 356 (D.C. Cir. 2018), the "mental anguish, bereavement and grief resulting from the fact of [a] decedent's death constitutes the preponderant element of a claim for

solatium." <u>Flatow v. Islamic Republic of Iran</u>, 999 F. Supp. at 30. The remainder of a solatium

claim, the court continued, stems from a claimant's inability "to resolve the sense of anguish"

that "haunt[s]" them long after their loved one has died, as well as "the loss of [the] decedent's

society and comfort." <u>Id.</u> at 30, 31.

In awarding solatium damages, this Court has likewise emphasized the "injury to the

feelings" that follows an immediate family member's death, alongside the loss of their society

and comfort. <u>Fraenkel v. Islamic Republic of Iran</u>, 892 F.3d at 356 (D.C. Cir. 2018) (quoting

<u>Flatow</u>, 999 F. Supp. at 29); <u>see Damages R&R</u> at 10–11. The "traumatic effects of the loss of

[a] loved one," the "indelible impact on the lives of the victims' families," and "the frequent

reminders" of the 9/11 Attacks all underpin solatium damages. <u>Damages R&R</u> at 11. That is why

all of the Court's prior solatium awards, granted over many years, share a common attribute: in

each, the claimant's distress followed the decedent's death.

The Plaintiffs' arguments, by contrast, turn on anticipatory anguish. <u>See, e.g.</u>, Pls' Mem.

of Law at 9, ECF No. 10327 ("It is impossible to put into words the emotional trauma both

Michael Theodoridis and Rahma Salie suffered knowing they themselves would die, their spouse

(each other) would die, their unborn child would die, and all they had built and hoped for in the

future would come to an end.") Because Ms. Salie and Mr. Theodoridis died "simultaneously,"

Pls' Mem. of Law at 1, however, they did not experience "mental anguish, bereavement, [or]

grief" following one another's death, <u>Damages R&R</u> at 10 (quoting <u>Dammarell</u>, 281 F. Supp. 2d

at 196). They experienced no "harm caused by the loss of [the other]'s society and comfort." <u>Id.</u>

The 9/11 Attacks left no "indelible impact" on their lives—because, tragically, their lives ended

in an instant on September 11, 2001. <u>Damages R&R</u> at 11; <u>see</u> Pls' Mem. of Law at 1.

Accordingly, while Ms. Salie and Mr. Theodoridis undoubtedly suffered a particularly agonizing

form of dread before their deaths, it was not the kind of "severe emotional distress" that is necessary to establish their IIED claim. It was, instead, part of their "horrific pain and suffering." Damages Order at 3.

To award the Plaintiffs additional damages for Ms. Salie's and Mr. Theodoridis's dread would blur the distinction between pain and suffering damages on the one hand and solatium damages on the other. See Damages R&R at 10–11. And the Plaintiffs have already recovered for Ms. Salie's and Mr. Theodoridis's pain and suffering. See Mem. Decision & Order at 11, 13, ECF No. 9931. Therefore, the Court recommends denying the Plaintiffs' request for additional solatium damages based on Ms. Salie's and Mr. Theodoridis's dread of death.

### c. Witnessing *Ante Mortem* Pain and Suffering

The Plaintiffs also weave in a second argument: that Ms. Salie and Mr. Theodoridis "each sustained extreme emotional distress from witnessing each other's immense pain and suffering leading up to each other's death." Pls.' Mem. of Law at 6. Just as Ms. Salie and Mr. Theodoridis experienced their own pain and suffering during the hijacking, the Plaintiffs argue, "it follows that [Ms. Salie and Mr. Theodoridis] would also have been aware that a spouse, sitting right next to them, was also experiencing severe emotional distress." Id. at 8. The Plaintiffs contend that this added distress should entitle them to additional solatium damages.

Though similar to their primary "dread" argument, the Plaintiffs' second claim is distinct. As an initial matter, it raises a jurisdictional challenge—because JASTA, the jurisdictional basis for the Plaintiffs' motion, does not apply to claims that arise out of emotional injuries. 28 U.S.C. § 1605B(b); see Pls' Mem. of Law, ECF No. 10327. JASTA applies only when "money damages are sought against a foreign state for *physical* injury to person or property or death occurring in the United States." 28 U.S.C. § 1605B(b) (emphasis added). To exercise subject matter

17

jurisdiction over the Plaintiffs' claims based on their second argument, then, the Court must assume that Ms. Salie and Mr. Theodoridis also suffered physical injuries in the lead up to their deaths.[6] See 28 U.S.C. § 1605B(b).

Dr. Diaz's report suggests that they did. The passengers aboard American Airlines Flight 11, Dr. Diaz explained, suffered physical symptoms that included "increased heart rate[s] (sometimes feeling as if your heart was going to 'jump out of your chest'), elevated blood pressure, drying of the mouth, trembling, sweating, blanching, feelings of faintness, nausea[,] and vomiting." ECF No. 2554-3, at 2. He highlighted that the hijackers "used Mace and/or pepper spray." Id. at 4. And he described the "mass 'sickness'" that "undoubtedly" befell the passengers as their plane lurched towards its final destination—the "physiological end result of absolute and abject terror." Id. Thus, to even consider this second theory, the Court must interpret Plaintiffs' claim to include allegations that each suffered sufficient physical injuries to support subject matter jurisdiction under JASTA.

On the merits, the Plaintiffs' second argument presents a closer question than their primary "dread" argument for two reasons. First, some courts have extended solatium damages to compensate immediate family members for a loved one's non-fatal injuries. See, e.g., Brown v. Islamic Republic of Iran, 687 F. Supp. 3d 21, 47 (D.D.C. 2023) (awarding solatium damages to the spouses and children of soldiers and government contractors injured in attacks in Iraq and Afghanistan); Taitt v. Islamic Republic of Iran, 664 F. Supp. 3d 63, 92–112 (D.D.C. 2023) (awarding solatium damages to spouses, parents, children, and siblings of Navy sailors injured in

---

[6] Earlier, the Court found that it possessed subject matter jurisdiction over the Plaintiffs' claims because their claims derived from the "death" of a 9/11 decedent. 28 U.S.C. § 1605B(b); see supra I.A at 6. That analysis turned on the Plaintiffs' primary "dread" argument, which was based on Ms. Salie's and Mr. Theodoridis's deaths.

the bombing of the U.S.S. Cole); <u>Ewan v. Islamic Republic of Iran</u>, 466 F. Supp. 3d 236, 249–50 (D.D.C. 2020) (awarding solatium damages to the parents and siblings of a former Marine injured in the bombing of the U.S. Embassy in Beirut); <u>Kinyua v. Republic of Sudan</u>, 466 F. Supp. 3d 1, 9–10 (D.D.C. 2020) (awarding solatium damages to the siblings and adoptive son of an employee injured in the bombing of the U.S. Embassy in Nairobi).

Second, courts have awarded solatium damages to plaintiffs whose immediate family members had been taken hostage. <u>See, e.g.</u>, <u>Daliberti v. Republic of Iraq</u>, 146 F. Supp. 2d 19, 26 (D.D.C. 2001) (awarding solatium damages to the spouses of four captives held hostage for 5 to 205 days); <u>Sutherland v. Islamic Republic of Iran</u>, 151 F. Supp. 2d 27, 51 (D.D.C. 2001) (awarding solatium damages to the spouse and children of a professor held hostage for more than 6 years); <u>Anderson v. Islamic Republic of Iran</u>, 90 F. Supp. 2d 107, 113 (D.D.C. 2000) (awarding solatium damages to the spouse of journalist held hostage for 2,454 days); <u>Cicippio v. Islamic Republic of Iran</u>, 18 F. Supp. 2d 62, 70 (D.D.C. 1998) (awarding solatium damages to the spouses of 2 victims held hostage for 44 and 63 months, respectively).

In both types of cases, death was not a prerequisite—immediate family members recovered solatium damages based on their loved one's *ante mortem* suffering. Both injury- and hostage-based solatium claims therefore appear to be analogous to the case at hand: Ms. Salie and Mr. Theodoridis likely suffered additional distress because they were aware of one another's emotional injuries and because the other was taken hostage in the hijacking.[7] In the language of a third-party IIED claim, then, Ms. Salie's and Mr. Theodoridis's immediate family member was

---

[7] Though the Plaintiffs do not brief these arguments, the Court raises them *sua sponte* to fully evaluate their claims.

targeted by Iran's "extreme and outrageous conduct"—and Ms. Salie and Mr. Theodoridis

suffered severe emotional distress as a result.[8] Restatement (Second) of Torts § 46.

Upon closer analysis, however, the analogies fall apart. Solatium damages awarded to

hostages' immediate family members turn largely on the loss of society and comfort those family

members suffer while their loved one is in captivity, as well as the lasting effects of that shared

trauma. See, e.g., Daliberti v. Republic of Iraq, 146 F. Supp. 2d at 26 (calculating solatium

damages by "[t]aking into account the length of time that the spouse plaintiffs were without the

companionship and support of their husbands during their captivity . . . and the damage to their

marriages and the suffering they have experienced since their husbands were released").

In comparison, Ms. Salie and Mr. Theodoridis were seated next to one another until their

final moments, meaning they never lost one another's society and comfort. Cf. Cicippio v.

Islamic Republic of Iran, 18 F. Supp. 2d at 70 (The captives' wives "endured those months in

great distress, never knowing if their husbands were being tortured or were even still alive.").

And, as explained above, Ms. Salie and Mr. Theodoridis did not have to bear the lasting trauma

that is emblematic of other hostage cases. Cf. Anderson v. Islamic Republic of Iran, 90 F. Supp.

2d at 111 (depicting how a released hostage, his wife, and his daughter had "difficulty adjusting

to life together once they reunited").

Personal injury solatium cases present similar problems for the Plaintiffs' claims. Where

courts have awarded solatium damages based on a loved one's physical or emotional injuries,

they have stressed—as in hostage situations—the lasting effects of those harms on the recovering

claimants. See, e.g., Kinyua v. Republic of Sudan, 466 F. Supp. 3d at 11 (explaining that one

---

[8] Unlike all other solatium claimants in this litigation, Ms. Salie and Mr. Theodoridis were also present
for and perceived the "extreme and outrageous conduct" at issue, obviating the need to employ the
"terrorism exception" to the Restatement's presence or contemporaneous perception requirements. See
Restatement (Second) of Torts § 46.

claimant "sacrifice[d] his own family and employment to care for his brother," including losing his job of 24 years, divorcing his wife, and "suffer[ing] from heavy alcohol consumption, sleeplessness, and lonesomeness" (internal quotation marks removed)); <u>Taitt v. Islamic Republic of Iran</u>, 664 F. Supp. 3d at 94 (Emblematic of other claimants, one sailor's daughter explained that her family can "still sense [her father's] emotional pain around the attack" years later and that "it has been a lot emotionally and mentally, and will continue to be, because the Cole attack will never leave [her] family."); <u>Ewan v. Islamic Republic of Iran</u>, 466 F. Supp. 3d at 249 ("All members of his family enjoyed a close relationship with him prior to the attack and report a deterioration of those relationships since his return."). The Plaintiffs' claims do not fit this mold. Because Ms. Salie and Mr. Theodoridis tragically perished on the same morning they suffered their emotional injuries, they did not experience the lasting effects of one another's pain.

Accordingly, the Court also recommends denying the Plaintiffs' solatium claims based on the additional distress Ms. Salie and Mr. Theodoridis felt witnessing one another's *ante mortem* pain and suffering.

## CONCLUSION

For the foregoing reasons, the Court recommends finding that spouses who died simultaneously in the 9/11 Attacks are not able to recover solatium damages based on one another's deaths or *ante mortem* pain and suffering. Though the Court recognizes the horrific pain and suffering that Ms. Salie and Mr. Theodoridis experienced on September 11, 2001, the "question in any FSIA case is not whether a plaintiff has suffered any harm but whether she has suffered a *tort*." <u>Ratemo v. Islamic Republic of Iran</u>, No. 19-cv-2067 (JDB), 2025 WL 294934, at *6 (D.D.C. Jan. 24, 2025) (emphasis in original) (citing <u>Owens v. Republic of Sudan</u>, 864 F.3d 751, 807 (D.C. Cir. 2017)). As the Court has emphasized, "the necessary boundaries of tort law, applicable even in cases concerning terrorist attacks as massive and destructive as the ones [at

issue], constrain this Court's discretion to award solatium damages." R. & R. at 2, ECF No. 3363. Therefore, because the Plaintiffs have not established their "right to relief," the Court recommends that the Plaintiffs' motion at ECF No. 10326 be DENIED. 28 U.S.C. § 1608(e).


SARAH NETBURN
United States Magistrate Judge

DATED:      May 23, 2025
            New York, New York


\*            \*            \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Daniels. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).