**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

**VIA ECF**

May 23, 2025

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      Pursuant to the Court's February 5, 2025 scheduling order, ECF No. 10707, the Plaintiffs' Executive Committees and counsel for the *Ashton* Plaintiffs ("Plaintiffs") write to update the Court on the status of discovery as to Defendant the Republic of the Sudan ("Sudan"), and to set forth Plaintiffs' proposals for the sequence and timing of next steps.

      In sum, Sudan's document production has been paltry and Sudan has conceded that essentially all relevant documentary evidence from Sudan's government files and records has been destroyed, with zero prospect of recovery. The irretrievable loss of responsive documents is directly attributable to Sudan's own calculated strategy of ignoring this litigation for nearly 20 years and its related failures to preserve and secure evidence. Plaintiffs will therefore file an appropriate spoliation motion and respectfully propose that the Court now prioritize its determination of the import and consequences of Sudan's (in)actions.

**Status of Discovery**

      On March 7, 2025, Plaintiffs served their "interrogatories concerning document preservation and the status of relevant repositories, as well as their initial document requests." ECF No. 10707. On April 7, 2025, Sudan responded with lengthy objections.[1]

      On May 2, 2025, Sudan produced 486 pages of purportedly responsive documents, but its production is disorderly, internally repetitious, and padded out with uncanny numbers of duplicates.[2] Only 200 pages of Sudan's production are unique, consisting of only 32 distinct documents. Few if any of those 200 pages are identifiably *produced* from Sudan's own government records, instead appearing to comprise public domain documents that Sudan has *received* from plaintiffs in other terrorism cases.[3] Sudan's failure to identify the origin of the documents in its production, notwithstanding Plaintiffs' express requests for clarification, is itself an improper abuse of discovery.[4]

---

[1] Sudan's objections as to relevancy, burden, and proportionality are clearly improper because, *inter alia*, they are at odds with this Court's ruling denying Sudan's motion to dismiss. Given Sudan's concession that the documentary evidence at issue has been destroyed, its objections are moot and it is unnecessary for Plaintiffs to address them in detail here.

[2] Eight of the documents are produced twice, while ten of the documents are reproduced either four or five times.

[3] A total of 164 out of 200 unique pages are: media reports (eight documents, 43 pages); public pleadings in other litigation (two documents, 15 pages); U.S. State Department cables (10 documents, 58 pages); a House Armed Services Committee Staff Report (36 pages); and a Report of the DoD's U.S.S. Cole Commission (12 pages).

[4] *See S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409-10 (S.D.N.Y. 2009); *Chemtex, LLC. v. St. Anthony Enterprises, Inc.*, 2004 WL 764781 (S.D.N.Y. Apr. 9, 2004); *Pass & Seymour, Inc. v. Hubbell Inc.,* 255 F.R.D. 331, 336-7 (N.D.N.Y. 2008).

Hon. Sarah Netburn, U.S.M.J.
May 23, 2025
Page 2

The Court directed Sudan to provide documents "on a rolling basis," ECF No. 10707, with "substantial completion" of discovery due "within 60 days of service," i.e., by May 7, 2025. To date, Sudan has sent no additional documents.

On May 6, 2025, Sudan served supplemental interrogatory responses acknowledging that effectively all relevant records in its government files are no longer available and will not be produced. Sudan's responses identified seven government repositories that held relevant and responsive records and affirmed that all relevant records in five of those seven locations have been lost or destroyed. *See* Response to Interrogatory No. 9 ("any documents, records, books, and other paper materials found within those buildings" were destroyed). As to its Finance Ministry and Central Bank, Sudan says those two repositories are inaccessible because the buildings are "laden with explosives and surrounded with landmines." *Id.*

### Third-Party Discovery Served on the U.S. Government Agencies

In March and April 2025, Plaintiffs and Sudan, separately, served subpoenas on four government agencies, namely the Central Intelligence Agency ("CIA"), Federal Bureau of Investigation ("FBI"), U.S. Marshals Service ("USMS") and Department of State ("State") (collectively, the "Agencies"). On April 10, 2025, the DOJ sent Plaintiffs a letter asserting the Agencies' objections and asking Plaintiffs to provide further information to evaluate the requests. Plaintiffs have sent the requested information and continue to work through the DOJ's various objections.

### Plaintiffs' Proposed Schedule for Completion of Fact Discovery

**Sudan document production.** To the extent Sudan represents that it has more documents, the Court should set a deadline of no later than June 30, 2025, for any outstanding production.

**Plaintiffs' motion regarding the spoliation of documents.** Plaintiffs will file a spoliation motion to address the consequences of the destruction of all relevant documentary evidence from Sudan's government repositories and records. Plaintiffs request 30 days from the date on which Sudan completes any outstanding document production, or 30 days from the Court's May 30, 2025 conference, whichever is later.

While avoiding pre-litigating their spoliation motion, Plaintiffs underscore here the elements of Sudan's conduct that make such a motion necessary and reasonable. Plaintiffs re-emphasize that Sudan deliberately ignored this litigation arising from the September 11th, 2001 attacks for nearly 20 years and it has now conceded that all its documents were destroyed. Plaintiffs' repeated expressions of concern as to Sudan's commitment to and capability of fulfilling its discovery obligations are well known to the Court. *See* Exhibit 1, Tr. of Conference at 40-41 (Aug. 5, 2020) (referring to *Flanagan v. Islamic Repub. of Iran*, 190 F. Supp. 3d 138, 156-158 (D.D.C. 2016), summarizing Sudan's history of willful defaults in FSIA litigation); ECF No. 10675 at 2; *see also* Exhibit 2, Tr. of Conference (Feb. 4, 2025) at 5-7, 25-28 (Plaintiffs urged the Court to prioritize discovery to address "Sudan's capacity and willingness to fulfill its discovery obligations and the current availability of relevant evidence" and raised doubts about whether Sudan had the "resources and capacities to conduct appropriate and necessary searches of relevant repositories… to the extent they still exist." ECF No. 10675 at 3). As a matter of law, Sudan's unreasonable delays have prejudiced Plaintiffs, "because delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." *Shannon v. Gen. Elec. Co.,* 186 F.3d 186, 195 (2d Cir. 1999). Plaintiffs will show that the

consequences and costs of the destruction of relevant documentary evidence must be borne by Sudan, not Plaintiffs, and accordingly that Sudan is once again in default.

**Depositions.** Plaintiffs anticipate submissions from Sudan that it will produce four percipient witnesses for deposition, and that those depositions may somehow be deemed sufficient to offset its spoliation of all relevant documentary evidence and avoid default on its discovery obligations. Such submissions are untenable. To the contrary, depositions of Sudan's own witnesses more than two decades after the events at issue can never rectify the spoliation of all relevant documentary evidence. Indeed, Sudan and its officials have repeatedly sought to promote false narratives about Sudan's relationship with Osama bin Laden and Al-Qaeda, which have been refuted by the United States and its intelligence agencies. In the absence of contemporaneous documents upon which to question the witnesses and test the accuracy and completeness of their testimony, depositions would simply afford Sudan another platform from which to perpetuate its own dubious versions of events and relationships. Plaintiffs should not be required to incur the burden and expense of depositions on such a prejudicial basis. At minimum, no depositions should occur until after the Court has addressed the consequences of Sudan's spoliation of evidence.

**Third-party discovery.** Plaintiffs propose that the parties and the DOJ continue to meet and confer in parallel regarding the subpoenas of the U.S. Agencies, and update the Court within 30 days of the conference on the status of those discussions and any issues requiring the Court's attention.

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*For the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

COZEN O'CONNOR

By: /s/ Sean P. Carter
SEAN P. CARTER
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*For the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

cc: All Counsel of Record via ECF