# EXHIBIT 2

```
P24D911C
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

In re Terrorist Attacks on          03 MD 1570(GBD)(SN)
September 11, 2001

------------------------------x

                                    New York, N.Y.
                                    February 4, 2025
                                    10:00 a.m.

Before:

              HON. SARAH NETBURN,

                        U.S. Chief Magistrate Judge

                  APPEARANCES

COZEN O'CONNOR
     Attorneys for Executive Committee Plaintiffs
BY:  SEAN P. CARTER
     J. SCOTT TARBUTTON

KREINDLER & KREINDLER LLP
     Attorneys for Bauer and Ashton Plaintiffs
BY:  STEVEN R. POUNIAN
     JAMES GAVIN SIMPSON
     MEGAN WOLFE BENETT
     ANDREW J. MALONEY, III

MOTLEY RICE LLC
     Attorney for Executive Committee Plaintiffs
BY:  DONALD A. MIGLIORI
     ROBERT T. HAEFELE

BAUMEISTER & SAMUELS, P.C.
     Attorneys for Bauer and Ashton Plaintiffs
BY:  DOROTHEA M. CAPONE


ANDERSON KILL, P.C.
     Attorneys for Executive Committee Plaintiffs
BY:  JERRY S. GOLDMAN
     BRUCE STRONG
     ALEXANDER GREENE
     JEREMY SHOCKETT

1            So let me hear from you on sort of that structure and
2    the types of depositions that you right now reasonably
3    anticipate would be necessary to conduct before deposition
4    discovery in the main starts.
5            MR. CARTER:  Sure, your Honor.
6            I think what your Honor described is largely correct,
7    with one caveat.  In parallel to the document discovery, we'd
8    also like to serve interrogatories for purposes of ferreting
9    out the current status of the documents, whether or not
10   repositories have been destroyed, what steps, if any, have been
11   undertaken to preserve documents, because we're starting
12   discovery 20 some years after the principal actions were
13   commenced, and we think there is a significant likelihood much
14   of the evidence has been destroyed, lost, and is no longer
15   available.
16           We think it is in the interest of the Court and
17   parties to get to the bottom of those issues as soon as
18   possible, rather than kicking that can down the road.
19           THE COURT:  Can you just speak up a little bit?  I'm
20   having a hard time, and I think the court reporter is, also.
21           MR. CARTER:  Sure.
22           Again, we think it's best to get to the bottom of the
23   current status of the evidence, as well as Sudan's commitment
24   to fulfill its discovery obligations and ability to do so
25   sooner rather than later.

1           THE COURT: Have you had informal conversations with
2    Ms. Erb about what is likely available, what may not be
3    available?
4           MR. CARTER: We have, your Honor. We asked in the
5    meet-and-confer whether or not steps have been taken to
6    preserve evidence responsive to this litigation. We were told
7    that Sudan's counsel was not going to discuss with us issues
8    that they had discussed with their client.
9           We had asked whether or not repositories that were
10   likely to house key evidence had been compromised or destroyed
11   in any of the ongoing conflicts since. We were told that they
12   were working through those issues with their client.
13          So via the informal process, we haven't gotten any
14   indications, and we're cognizant from press reports that there
15   are circumstances on the ground that lead us to conclude that
16   evidence may no longer be available. And we want to ferret
17   that out as soon as possible.
18          The way that we anticipate doing that is of course
19   document discovery itself, and we think if that's kept on a
20   relatively short leash in the early -- at least, initially,
21   we'll get a sense of where the document discovery is headed.
22   We want to serve some interrogatories right now, largely and
23   essentially limited to document preservation, status, and
24   what's happened in the repositories.
25          We're not looking to do wholesale discovery via

P24D911C

1  interrogatories on contentious issues or substantive issues.
2  We're focused really on the status of the evidence.
3              THE COURT: How quickly can you get those discovery
4  demands out?
5              MR. CARTER: I think we suggested interrogatories
6  would go at the same time as the document requests, and the
7  parties were in agreement that would be 30 days.
8              Sometime, while the document process is ongoing, we'd
9  like to do a 30(b)(6) witness, Sudanese official who can
10  testify to the preservation efforts, as well as the current
11  status of the documents. The Sudan has objected to that under
12  the theory that it's duplicative of the interrogatories, but
13  that's not an objection that's valid under the laws or the law
14  in this circuit.
15              Parties are entitled to give testimony on these
16  issues, and the fact is a 30(b)(6) deposition is fundamentally
17  different from interrogatories, which are going to be crafted
18  by attorneys. The 30(b)(6) deposition is active discussion
19  that is going to ferret out exactly what has happened here,
20  what steps were taken, and, again, we think this is critical,
21  because of where we are.
22              We know that we have already lost testimony of key
23  witnesses. Hassan Al-Turabi, one of the architects of Sudan's
24  program of support for Al Qaeda died in 2016. His testimony is
25  no longer available precisely because Sudan didn't appear for

1  the Court that would compromise Sudan's ability to obtain
2  discovery.  We are not trying to do this to be inefficient.  If
3  Mr. Carter has concerns about inefficiencies, we can work
4  through that in a meet-and-confer.  But Sudan is absolutely
5  entitled to discovery in this case, and Sudan intends to issue
6  discovery in this case on the plaintiffs.
7           THE COURT:  Okay.  Thank you.
8           Mr. Carter, anything further?
9           MR. CARTER:  Yes, your Honor, a few things.
10          I think I'll go reverse order with a recency bias
11 here.  With regard to Sudan's discovery of plaintiffs, the
12 party in possession of the firsthand evidence concerning
13 Sudan's relationship with Bin Laden and Al Qaeda is Sudan, and
14 that's the evidence that speaks most powerfully and directly to
15 the nature of that relationship.
16          What we've proposed is that any discovery by Sudan of
17 plaintiffs should be deferred, and it's manifestly more
18 efficient, because any responses we are going to provide are
19 going to necessarily have to focus on things Sudan gave to us.
20 In other words, if Sudan wants to know what evidence are you
21 going to rely upon to prove your case against Sudan, we're not
22 in a position to answer that question in any fulsome way until
23 Sudan provides discovery to us.  That's the universe that will
24 help define what the answer to that question is.
25          It's just far more efficient to defer this, and, in

1  doing so, we'll also get some assurance as to whether or not
2  Sudan is in a position to participate in discovery in this
3  proceedings.
4      And I think Ms. Erb's answers to your Honor's
5  questions only underscored how questionable that is.  Your
6  Honor asked what systems are in place in order to ensure that
7  Sudan is in a position to fulfill its discovery obligations,
8  and all I heard were statements about communications with
9  somebody at the embassy here in the United States.
10     Complying with its discovery obligations is going to
11 require a team on the ground going to numerous repositories and
12 obtaining evidence, and there's no indication that Sudan's in a
13 position to do that right now.  We need to get to the bottom of
14 that issue before we go off on other tangents, candidly, your
15 Honor.
16     Sudan saying that they have a letter from a government
17 official expressing their commitment to participate in this is
18 a far cry from being able to say that we have systems in place
19 to actually be able to do that, we have people on the ground,
20 we have access to the facilities with these records, we can
21 confirm that the records still exist.  We're really far into
22 this and there's still no ability on the part of Sudan's
23 counsel to say whether or not the records are still there, and
24 that's something that should have been resolved a long time
25 ago.

1           These records should have been secured and segregated
2    in response to the service of the complaints.  Most clearly,
3    there is a very compelling obligation to do so, and Sudan
4    belatedly appeared and we raised concerns about whether or not
5    it was actually in a position to participate in discovery.
6           There was another inflection point when your Honor
7    issued the report and recommendation in 2022 broadly denying
8    its motion, making clear that discovery was about to happen.
9    We're several years later and there's no answer to some of
10   these very basic questions, and there are circumstances on the
11   ground that indicate that Sudan is likely not in a position to
12   produce the documents and that they likely don't exist.
13          There's an argument about our failure to pursue
14   defaults and a claim that it eliminated in some way the
15   prejudice running from Sudan's delay in appearing in the
16   litigation.  Nothing plaintiffs did in either pursuing a
17   default or not had the effect of delaying discovery.  We
18   couldn't have conducted discovery, because Sudan was absent
19   from the proceeding.
20          The reason that discovery has been delayed and we're
21   only beginning it now is because Sudan didn't appear for 17
22   years.  That is the source of the problem at this point.  And
23   it is long-standing law in the Second Circuit, your Honor, that
24   prejudice from unreasonable delay in commencement of discovery
25   is presumed as a matter of law, because delay by one party

1  increases the likelihood that evidence in support of the other
2  party's position will be lost and that discovery at trial will
3  be made more difficult.  That's where we are.
4            It's a question of how severe that prejudice is, and
5  we'd like to get to the bottom of that as soon as possible.  I
6  think we've outlined a path to do that.
7            With regard to this statement that the original case
8  management order contemplated 18 months for discovery, that was
9  18 months for discovery as to all parties.  The six-month
10 proposal that we've offered for document discovery is pretty
11 much par for the course.  It's probably longer than some of the
12 initial deadlines that have been set.
13           And related to the document requests, your Honor,
14 there was an exchange between the Court and Ms. Erb about the
15 timeline for Sudan to respond to those documents requests, and
16 your Honor indicated perhaps 60 days would be reasonable.
17 Sixty days would perhaps be reasonable if that were a deadline
18 for Sudan to respond to the document requests and produce the
19 responsive documents.
20           What we are concerned about is at the end of that 60
21 days, we're going to get wholesale objections and burden claims
22 with regard to the document requests we serve, which then have
23 to be subject to a meet-and-confer, which will then have to be
24 subject to briefing before your Honor.  And we're not going to
25 make any progress on Sudan actually collecting documents for