WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

May 23, 2025

VIA ECF

The Honorable Sarah J. Netburn
United States Magistrate Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

*In re Terrorist Attacks on September 11, 2001*, **Case No. 1:03-md-01570-GBD-SN (S.D.N.Y.): The Republic of the Sudan's Proposed Schedule for the Completion of Fact Discovery**

Dear Judge Netburn:

The Republic of the Sudan respectfully submits this letter updating the Court on fact discovery conducted to date and providing Sudan's proposal for the completion of fact discovery, in accordance with this Court's Order dated February 5, 2025 (ECF No. 10707) and Section 1.A of Your Honor's Individual Practices in Civil Cases.

**I.      Summary of Fact Discovery Conducted to Date**

On February 5, 2025, this Court entered an Order setting forth a preliminary discovery schedule for this litigation. ECF No. 10707. In accordance with that Order, on March 7, 2025, Plaintiffs served on Sudan 18 interrogatories and 46 requests for production of documents, and on April 6, 2025, Sudan served its objections to these interrogatories and requests for production. On May 2, 2025, Sudan produced a first set of responsive documents, and on May 6, 2025, Sudan responded to Plaintiffs' interrogatories. Sudan made a further document production to Plaintiffs today.

As explained below, the vast majority of documents in Sudan that may have been potentially relevant to this litigation and responsive to Plaintiffs' document requests were stored in various Sudanese government buildings in the capital city of Khartoum. When the armed conflict erupted in Sudan on April 15, 2023, the rebel Rapid Support Forces (RSF) attacked Khartoum and occupied it until late March 2025, when Sudan retook the city. Since late March 2025, Sudan has been assessing the condition of the government buildings in Khartoum and confirms that most, if not all of them, have been burned or completely destroyed by the RSF. *See* Exs. 6-19 and A-D.

The Honorable Sarah J. Netburn
May 23, 2025

As further explained below, Sudan has identified five former Sudanese government officials who are currently willing and able to testify in this litigation. Sudan submits with this letter signed preliminary declarations from these five witnesses illustrating the nature of their personal knowledge of information potentially relevant to this litigation. *See* Exs. 1-5.

II.     **Sudan's Discovery Efforts and Responses to Plaintiffs' Discovery Requests**

At the February 4, 2025 conference before this Court, Sudan's counsel stressed Sudan's commitment to fulfilling its discovery obligations in this litigation, while also acknowledging the obstacles due to the ongoing armed conflict in Sudan. *See, e.g.*, Tr. of Feb. 4, 2025 Conference at 16. Sudan has since dedicated significant resources towards fulfilling its discovery obligations.

Formation of Sudanese Inter-Agency Committee. Sudan formed an inter-agency committee ("Committee") charged with carrying out the discovery process in Sudan, including by (i) documenting, where safe to do so, the status and accessibility of repositories of materials in Sudan, (ii) collecting any available documents that are potentially relevant to this litigation, (iii) identifying potential witnesses who may have personal knowledge of information potentially relevant to this litigation, and (iv) determining whether such witnesses may be willing and able to provide testimony in this litigation. The Committee, along with the Sudanese Embassy in Washington, DC, have been working diligently to gather information in response to Plaintiffs' discovery requests. The Committee has faced enormous challenges due to the devastation caused by the armed conflict, in particular, the total ruin of Sudan's capital city of Khartoum. Media reports observe that the "RSF stripped the city almost like a locust, looting it to a degree that's honestly just really hard to grasp." *Ukraine-Russia Peace, Noncitizens And Due Process, Khartoum Destroyed*, NPR (April 25, 2025), https://www.npr.org/transcripts/1247139347.

Assessment of Document Repositories. Prior to the armed conflict, Sudan maintained government documents in government buildings in Khartoum. Khartoum had never before come under attack during earlier periods of civil unrest in Sudan, but Khartoum was completely overtaken by the RSF rebels in a sudden and unexpected attack on April 15, 2023, leaving the Sudanese government little time to organize a retreat. As reported in November 2024, approximately 60% of all fighting during this devastating armed conflict has taken place in Khartoum state. *See* Emmanuel Akinwotu, *Here's what life is like in a city in the grip of Sudan's brutal war*, NPR (Nov. 1, 2024), https://www.npr.org/2024/11/01/nx-s1-5168376/sudan-khartoum-ombdurman-war-africa.

In late March 2025, the Sudanese Armed Forces retook Khartoum from the RSF rebels. *See* Declan Walsh, *Paramilitary Fighters Flee Sudan's Capital, a Major Shift in Civil War*, N.Y. Times (Mar. 26, 2025), https://www.nytimes.com/2025/03/26/world/africa/sudan-khartoum-war-rsf-withdrawal.html. Since then, in coordination with the Sudanese Armed Forces, the Committee is undertaking, where safe to do so, a building-by-building assessment of the condition of document repositories to determine whether any documents may be recoverable from Sudanese government facilities notwithstanding the RSF's razing of the city. The Committee has discovered that the RSF's devastation of Khartoum included the complete destruction of many, if not all, of these Sudanese government buildings.

WHITE & CASE

The Honorable Sarah J. Netburn
May 23, 2025

Several obstacles complicate the Committee's work. To begin with, it is difficult to reach Khartoum, given the RSF's complete destruction of the Khartoum Airport. Once in the city, the conditions on the ground remain hazardous. Not only are basic services such as water and electricity lacking, but the presence of landmines and the ongoing RSF drone attacks threaten the teams on the ground. The buildings themselves are difficult and unsafe to access, as their structural integrity has been compromised by raging fires and two years of bombings and shockwaves from nearby explosions. The recent drone attacks on Sudan's temporary capital of Port Sudan have further complicated the Committee's work. *See* Abraham Altayeb and Lynsey Chutel, *A Haven for Civilians in Sudan is Attacked for a Third Day*, N.Y. Times (May 6, 2025), https://www.nytimes.com/2025/05/06/world/africa/port-sudan-attacks.html.

Notwithstanding these challenges, the Committee has made progress in evaluating Sudan's document repositories in the following Sudanese government buildings: (i) New Republican Palace; (ii) Old Republican Palace; (iii) Ministry of Foreign Affairs; (iv) Ministry of Justice; (v) Various General Intelligence Service buildings; and (vi) Khartoum Airport Management Offices.

Each of these buildings has been completely destroyed. Exhibits 6-19 and A-D are images and videos showing the damage to these buildings. (Exhibits A-D are being submitted separately to the Court in accordance with this Court's May 23, 2025 Order (ECF No. 10966).) By way of example, the images below show the current state of the exterior of the General Intelligence Service ("GIS") Archive building (left) and the interior of the Ministry of Justice building (right):

 

The Sudanese Central Bank and the Ministry of Finance have been inaccessible due to the presence of landmines and explosives, but the Committee will continue to try to access to those buildings.

Document Productions. Sudan produced an initial set of responsive documents on May 2, 2025, and made a further production of documents to Plaintiffs today. Sudan obtained these additional documents in connection with prior litigations. In producing documents, Sudan reserves all rights, and does not necessarily concede — but expressly reserves its right to dispute — the relevance, authenticity, or admissibility of the documents.

Witness Testimony. The Committee has been working diligently to identify individuals with personal knowledge of information that may be relevant to the litigation and who may be willing and able to testify in this litigation. Some of these individuals have left or been displaced from

The Honorable Sarah J. Netburn
May 23, 2025

Sudan, so members of the Committee traveled to other countries to meet with these individuals. To date, Sudan has identified five former government officials who reside outside Sudan and are currently willing and able to testify:

(1) Mustafa Osman Ismail Elamin, Sudan's former Minister of Foreign Affairs and former Ambassador to the United Nations, currently resident in Doha, Qatar.

(2) Dr. Hassan Ahmed Taha, Sudan's former Undersecretary General for the Sudanese Ministry of Finance and Executive Director of the World Bank Africa Group, currently resident in Cairo, Egypt.

(3) Salah Abdalla Mohamed (Ghosh), Sudan's former Presidential Advisor for National Security, currently resident in Cairo, Egypt.

(4) Sharaf Eldin Ibrahim Bannaga, Sudanese Commissioner for Engineering for the State of Khartoum, currently resident in Birmingham, United Kingdom.

(5) Yasir AlTayeb AlMahdi, former Head of the American Department within the Sudanese Intelligence Bureau, currently resident in Doha, Qatar.

Sudan attaches as Exhibits 1-5 preliminary declarations signed by these individuals that demonstrate the nature of their personal knowledge of information potentially relevant to this litigation. The Committee is working to identify additional potential witnesses. The Committee also continues to explore whether it may be feasible for Sudan's former President, Omar al-Bashir, to provide testimony in this litigation.

<u>Non-Party Discovery</u>. Plaintiffs and Sudan have each separately issued subpoenas to various U.S. government agencies. The United States has raised certain objections to Sudan's subpoenas that Sudan will address with the United States through the meet-and-confer process.

### III. Sudan Has Demonstrated Its Commitment To Participating Fully in This Litigation

Consistent with its commitment to this Court, Sudan has demonstrated its willingness and ability to participate fully in this litigation and to complete the discovery process in good faith. Despite unforeseen events outside of its control, namely the RSF's systematic and deliberate destruction of Sudan's government buildings in Khartoum, Sudan is working hard to recover, collect, and produce to Plaintiffs any discoverable material. Sudan also has proffered, to date, five former Sudanese government officials who are currently willing and able to testify in this litigation. Sudan also is actively working to identify additional potential witnesses.

### IV. Sudan's Proposed Schedule for the Completion of Fact Discovery

Sudan proposes a fact discovery deadline of **February 5, 2026**, one year from this Court's February 5, 2025 Order, while reserving all rights to seek additional time if necessary, including due to the situation on the ground in Sudan. Sudan further proposes that the parties jointly submit a deposition protocol to govern these actions by **June 20, 2025**.

**WHITE & CASE**

The Honorable Sarah J. Netburn
May 23, 2025

Sudan's proposal is intended to afford the parties reasonable time to complete significant and ongoing fact-gathering exercises. In particular:

- The Committee needs to conclude its assessment of the condition of certain government buildings in Khartoum. In addition, to the extent any electronic equipment that may have housed potentially responsive information has not been completely destroyed in Sudan's government buildings, the Committee will endeavor to assess whether any information may be recovered from such equipment. To the extent the Sudanese government buildings contain any potentially responsive documents that have not been completely destroyed, Sudan will endeavor to collect and produce to Plaintiffs any such discoverable documents.

- The parties need to identify witnesses — including potential witnesses that may not be affiliated with either party — who may be willing and able to testify in this litigation. Sudan to date has identified five witnesses currently willing and able to provide testimony in this litigation and is endeavoring to identify others.

- The parties need to coordinate and conduct witness depositions. Many of these depositions will likely take place remotely or in foreign jurisdictions.

- The parties need to complete non-party discovery, including on the United States.

- As discussed at the February 4 conference, Sudan intends to take discovery of Plaintiffs, *see* Feb. 4, 2025 Tr. 34-35, and will file a motion for leave to do so today.

The time period for fact discovery proposed by Sudan is reasonable and far shorter than the fact discovery periods that have applied throughout this multi-district litigation. *See, e.g.*, ECF No. 247 (initial 18-month period for fact discovery); ECF Nos. 3968 & 6546 (39-month period for jurisdictional discovery against the Kingdom of Saudi Arabia).

Ultimately, Sudan should be afforded sufficient time to complete the fact discovery process and fully participate in this litigation.

Respectfully submitted,

/s/ *Nicole Erb*

Christopher M. Curran
Nicole Erb
Claire A. DeLelle
Nicolle Kownacki
Celia A. McLaughlin

*Counsel for the Republic of the Sudan*

cc:   All Counsel (via ECF)