UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                 :    MEMORANDUM DECISION
                                                                 :        AND ORDER

In re Terrorist Attacks on September 11, 2001    :    03 MDL 1570 (GBD) (SN)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, District Judge:

The *Ashton-Dickey* Plaintiffs object to Magistrate Judge Netburn's October 29, 2024 Order. (*See* Order, ECF No. 10470 ("October 29 Order").) The October 29 Order declined to set a briefing schedule on the issue of punitive damages against defaulting defendants. (*Id.*) The Plaintiffs object on the grounds that (1) it was unfair to grant final judgments and award punitive damages to two small subsets of plaintiffs, and deny the same with respect to all other plaintiffs; (2) no factual or legal issues remain to be resolved against the Republic of Iran or the Taliban; and (3) the October 29 Order did not provide any reason for its decision. (Objections to the October 29, 2024 Order ("Objections" or "Objs"), ECF No. 10516, at 1.) Their objections are timely.

The Court OVERRULES Plaintiffs' objections and AFFIRMS the Order in its entirety.

## I. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Order

A district judge must modify or set aside only those parts of a magistrate judge's order related to nondispositive matters that are clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "A district court is justified in finding a magistrate judge's ruling clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (cleaned up). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (cleaned up). This standard is highly deferential, and the objector thus carries a heavy burden. *U2 Home Ent., Inc. v. Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007); *see also Lugosch v. Congel*, 443 F. Supp. 2d 254, 276 (N.D.N.Y. 2006) (particular deference due where "magistrate judge has been deeply involved in discovery matters in the case for years").

The Plaintiffs objected under Fed. R. Civ. P. 72(b)(2), which would require the Court to conduct a de novo review. At the same time, the Plaintiffs contend that the October 29 Order is clearly erroneous and contrary to law. (Objs., at 1–2.) The Court determines that Magistrate Judge Netburn's October 29 Order is nondispositive because it does not result in judgment or dismissal of any part of the case. *Robles v. Est. of Kollias by Doumas*, No. 20 CV 4200 (VB), 2021 WL 5141008, at *2 (S.D.N.Y. Nov. 4, 2021). The critical factor in determining whether the Magistrate Judge's decision is dispositive or nondispositive is what the Magistrate Judge actually imposes, not the request made by the party. *Khatabi v. Bonura*, No. 10 CIV. 1168 (ER), 2017 WL 10621191, at *3 (S.D.N.Y. Apr. 21, 2017). All that Magistrate Judge Netburn ordered here was that she "declines to set a briefing schedule on" the issue of punitive damages, implying that Plaintiffs may submit applications for punitive damages at a later date. (October 29 Order.) The Court therefore deems this order nondispositive and conducts a clear error review. *See* Fed. R. Civ. P. 72(a).

**B. Punitive Damages under FSIA**

Foreign Sovereign Immunities Act ("FSIA") permits Plaintiffs to seek punitive damages against foreign sovereign defendants. *See* 28 U.S.C. § 1605A(c)(4). In assessing punitive damages, a court must balance the concern that recurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect against the need to continue to deter the brutal actions of defendants in planning, supporting and aiding the execution of terrorist attacks. *Est. of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011) (internal citations omitted and cleaned up).

In determining punitive damages award, courts evaluate four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Gunn v. Islamic Republic of Iran*, No. CV 21-1187 (RC), 2024 WL 3566173, at *36 (D.D.C. July 29, 2024) (citing *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 1998)). These are known as the *Flatow* factors.

Courts in the District of Columbia have developed three primary methods of calculating punitive damages in FSIA cases. *Ben-Yishai v. Syrian Arab Republic*, 642 F. Supp. 3d 110, 134 (D.D.C. 2022) (internal citations and quotation marks omitted). The first, more commonly used in mass-casualty events, involves multiplying the foreign state's "annual expenditures on terrorism" by a factor between three and five. *Id.* This is the method the *Valore* court used. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 88 (D.D.C. 2010) (determining two numbers at issue: "the multiplicand—the amount of Iran's annual expenditures on terrorist activities—and the

multiplier—the factor by which the multiplicand should be multiplied to yield the desired deterrent effect.")

The second approach awards a fixed amount of $150 million per affected family. *Ben-Yishai*, 642 F. Supp. 3d at 134 (internal citations and quotation marks omitted). The third approach multiplies the total compensatory damages award by a factor of between one and five. *Id.* This is the method the *Murphy* court used. *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 83 (D.D.C. 2010) (awarding $3.44 in punitive damages for every dollar of compensatory damages awarded to each plaintiff.)

## II. THE COURT SHOULD POSTPONE DETERMINATION OF PUNITIVE DAMAGES

Having reviewed the October 29 Order and parties' submissions, this Court is left without a "definite and firm conviction that a mistake has been committed." *Highland Mgmt., L.P.I.*, 551 F. Supp. 2d at 177. Magistrate Judge Netburn's October 29 Order is very narrowly based on the fact that this is not an appropriate time for further punitive damages determination, and it commits no clear error in the decision to decline hearing the issue for the moment. This is also consistent with Magistrate Judge Netburn's previous Report and Recommendation, where she explained in detail her recommendation against adopting the 3.44 multiplier method and that the motion for punitive damages be denied without prejudice. (Report and Recommendation ("2016 Report"), ECF No. 3358, at 11–16.) The Court adopted the 2016 Report, (Mem. Decision and Order, ECF No. 3383), and the decision to deny outstanding claims of punitive damages without prejudice has become the law of the case. The Court, therefore, overrules the Plaintiffs' objections to the October 29 Order.

### A. Legal and factual issues remain to be resolved

### 1. Punitive Damages

Contrary to Plaintiffs' argument, unresolved legal and factual issues remain for the determination of punitive damages. They include, among other things, the appropriate method of calculation and, 1) if the Court chose to apply the *Valore* method, the exact numerical values of the multiplicand and multiplier, or 2) if the Court chose the *Murphy* method, the exact value of the multiplier. The Plaintiffs contend that the Court's previous final judgments and awards of punitive damages are the law of the case and should not be relitigated. (Obj., at 2–4). However, Magistrate Judge Netburn's 2016 Report persuades the Court to disagree with Plaintiffs here. (2016 Report at 11–16).

The Court acknowledges that, in 2012, it adopted Magistrate Judge Frank Maas's Report and Recommendation under clear error review because no parties filed any objections to the Report.[1] (*See* Report and Recommendation ("*Havlish* Report"), ECF No. 2618; Mem. Decision and Order, ECF No. 2623.) In the *Havlish* Report, Magistrate Judge Maas applied the *Murphy* method, using 3.44 as the multiplier and compensatory damages amounts as the multiplicand. (*Havlish* Report at 12–13). However, Magistrate Judge Netburn aptly explained in the 2016 Report that she disagreed with Magistrate Judge Maas's logic. (2016 Report at 11–16).

The two cases relevant to Magistrate Judge Maas's reasoning are *Valore* and *Murphy*, as outlined in Section I. B. Magistrate Judge Netburn correctly noted in the 2016 Report that the methods the *Valore* and *Murphy* courts used are completely different. (*Id.* at 12.) The *Valore* court determined that the multiplicand, i.e. Iran's annual expenditures on terrorist activities, was $200 million, and the multiplier was 5. *Valore*, 700 F. Supp. 2d at 89–90. Both determinations

---

[1] In addition, the Court adopted Magistrate Judge Maas's similar reports and recommendations in other decisions and orders. (*See* Mem. Decision and Order, ECF No. 3229; Order of Further Partial J., ECF No. 3300.)

were based on expert testimony. *Id.* Thus, the value of the punitive damages in *Valore* was $ 1 billion. *Id.* The *Murphy* court, however, adopted the method that uses compensatory damages as the multiplicand, which is an entirely different method from the one used by the *Valore* court. *Murphy*, 740 F. Supp. 2d 80–82. Confusingly, the *Murphy* court derived its 3.44 multiplier value by dividing the $ 1 billion punitive damages awarded in *Valore* by the compensatory damages of $1,290,291,092.00 awarded in *Valore*, even though the *Valore* court did not consider compensatory damages at all in its calculation of punitive damages. *Id.*

Magistrate Judge Netburn noted the faulty rationale behind using 3.44 as the multiplier because Magistrate Judge Maas meshed the different methodologies of the *Valore* and *Murphy* decisions, and she explained why it is especially inappropriate to simply retain the *Murphy* ratio in this multi-district litigation as it arises from completely different terrorist attacks as the ones in *Murphy* and *Valore*. (2016 Report at 12–16.) Because the Court adopted Magistrate Judge Netburn's 2016 Report, (Mem. Decision and Order, ECF No. 3383), the 2016 Order has superseded Magistrate Judge Maas's punitive damages formula and become the law of the case. The prevailing approach regarding punitive damages has therefore been to deny without prejudice and postpone the determination of the amount to a later time. It would not be appropriate for the Court to grant Plaintiffs' request when the October 29 Order commits no error.

The Plaintiffs take issue with the inconsistency and urge that if the Court were to find error in granting final judgments based on the *Havlish* Report, it should vacate those final judgments. (Objs.at 6.) This is also not an appropriate remedy for the Plaintiffs. There is no question whether Plaintiffs are entitled to punitive damages, and that is not what the October 29 Order decides. The Plaintiffs' objections center on whether punitive damages should be determined based on Magistrate Judge Maas's calculation, which has been superseded by the 2016 Order. Vacating the

final judgments granted to the *Havlish* Plaintiffs would not resolve the issue, nor would it address the Plaintiffs' objections.

Furthermore, the questions as to whether the final judgments issued based on Magistrate Judge Maas's report should be vacated and precisely how punitive damages should be determined from now on are one and the same. Both potentially require substantial briefings by Plaintiffs on the appropriate method of calculation and the multiplier to be used, and likely an evidentiary hearing with expert testimony. Magistrate Judge Netburn identifies in the 2016 Report that some of the issues the parties should address include: "(1) whether the case law requires a rational relationship between the level of terrorism financing by the Sovereign Defendants and the amount of punitive damages; (2) whether a multiple of compensatory damages is appropriate given the potential for imbalanced punitive awards among families where decedents' earnings were disparate; and (3) how to rationalize punitive damages in this case in light of past and future cases stemming from the 9/11 attacks." (2016 Report at 16.) The Plaintiffs have not adequately briefed Magistrate Judge Netburn on these issues in their motion papers for final judgment. (*See* Mot., ECF Nos. 9949, 10057, 10339.)

In addition, the Plaintiffs Executive Committee ("PEC") informed Magistrate Judge Netburn that certain groups of Plaintiffs had indicated their intention, when the time comes to consider punitive damages, to supplement their motions with expert and other evidence. (Letter, ECF No. 10422, at 2.) The PEC also suggested the appointment of a special master to assist the Court with applying the punitive damages framework. (*Id.* at 3.)

It is clear that, in order to establish a consistent framework for punitive damages awards, both Magistrate Judge Netburn and the Court will need to proceed through a systematic process, and allow Plaintiffs to make additional submissions in a consolidated manner by coordinating with

the PEC. Because both Courts currently prioritize entering partial final default judgments and awarding compensatory damages, this Court sees no clear error in Magistrate Judge Netburn's decision to defer the determination of punitive damages. Plaintiffs may file future submissions to Magistrate Judge Netburn with a proposal of an expeditious but also achievable timeline for both Courts to consider punitive damages, taking into account all of the necessary steps the PEC had recommended in this process and possibly voluminous submissions.

### 2. Treble Damages

The Plaintiffs also argue that the Court had previously awarded certain Plaintiffs treble damages against the Taliban under 18 U.S.C. § 2333, the Anti-Terrorism Act ("ATA"). (Objs., at 3–4 (citing Report and Recommendation, ECF No. 8929).) They object to Magistrate Judge Netburn's rejection of their motion for treble damages, (Mot., ECF No. 10057; Order, ECF No. 10350), even though this Court had previously adopted Magistrate Judge Netburn's recommendation and granted certain Plaintiffs treble damages. (*See* Mem. Decision and Order, ECF Nos. 8973, 9858.)

Firstly, the order the Plaintiffs take issue with here is Magistrate Judge Netburn's September 12, 2024 Order ("September 12 Order") (Order, ECF No. 10350), not the October 29 Order which the instant objection is aimed at. Secondly, the Plaintiffs mischaracterize Magistrate Judge Netburn's September 12 Order. Their motion sought punitive damages, and in the alternative, treble damages. (Mot., ECF No. 10057.) Magistrate Judge Netburn's September 12 Order, which denied a request for punitive damages without prejudice, is therefore not clearly erroneous for the same reasons that her October 29 Order is not in clear error. The Plaintiffs may still submit future stand-alone requests for treble damages under the ATA.

### B. The *Ashton-Dickey* Plaintiffs are not prejudiced

While the Court prioritizes awarding compensatory damages and partial final default judgments, it reserves awarding punitive damages and the issuance of final default judgments for a later time. The Plaintiffs are not meanwhile prejudiced. The Plaintiffs do not contend in their briefs that a final judgment awarding punitive damages would be enforceable at this point in time. As far as the Court is aware, there is no available means to obtain punitive damages from any defendant at this stage of the litigation, making this issue appropriate for later determination.

Plaintiffs are only eligible to receive compensatory damages under the United States Victims of State Sponsored Terrorism Fund ("USVSST") created by Congress. *See* 42 U.S.C. § 10609 (c)(2)(A) (referring to 16 eligible claims for compensatory damages only); *id.* at (j)(3) ("The term 'compensatory damages' does not include pre-judgment or post-judgment interest or punitive damages."). Furthermore, the PEC also informs the Court that Plaintiffs' final judgments on compensatory damages are sufficient for domestic execution proceedings under the Terrorism Risk Insurance Act of 2002 ("TRIA").

Additionally, the Plaintiffs contend that they are prejudiced by not being on the same playing field as the *Havlish* and *Federal Insurance* Plaintiffs, who would have priority in asset execution. (Objs., at 6–8.) However, because no Plaintiff, regardless of whether they have obtained a final judgment on punitive damages, can enforce such a judgment, the Plaintiffs are not at any disadvantage in comparison to the *Havlish* Plaintiffs. The Plaintiffs' argument on the future costs of making additional service of final judgments is not compelling. They fail to provide other specific reasons beyond conclusory arguments why they would be prejudiced by the delay in issuing final judgment which would include an amount for punitive damages.

9

### III. CONCLUSION

Plaintiffs' Rule 72 objections to Magistrate Judge Netburn's October 29 Order are OVERRULED. Plaintiffs' request for punitive damages and issuance of final judgments against Iran and the Taliban is DENIED without prejudice. Magistrate Judge Netburn's October 29 Order is AFFIRMED in its entirety.

Dated: JUN 10 2025
New York, New York

SO ORDERED.

_____
GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE