**WHITE & CASE**

June 27, 2025

VIA ECF

The Honorable George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

*In re Terrorist Attacks on Sept. 11, 2001*, **Case No. 1:03-md-1570-GBD-SN (S.D.N.Y.) — Supplemental Authority of** *Fuld v. Palestine Liberation Org.*, **No. 24-20, 606 U.S. ---- (June 20, 2025)**

Dear Judge Daniels:

Al Rajhi Bank writes in response to Plaintiffs' June 24, 2025 letter on the Supreme Court's decision in *Fuld v. Palestine Liberation Org.*, No. 24-20, 606 U.S. ---- (June 20, 2025). Plaintiffs' letter overstates the reach of *Fuld*, which provides no basis for this Court to alter its analysis of the Bank's pending motion, particularly when the proceedings here are being conducted pursuant to a specific mandate from the Second Circuit on remand.

    **1.**    **Plaintiffs' Long-Arm-Statute Basis of Jurisdiction Is Unaffected By** *Fuld*

Throughout the course of this litigation, Plaintiffs have asserted only one basis of personal jurisdiction over Al Rajhi Bank: the New York long-arm statute. *See* Pls.' Mem. 44 (July 22, 2024), ECF No. 10152 ("This assertion of jurisdiction is premised on New York's Long-Arm Statute, C.P.L.R. § 302(a)(1) . . . ."); *see generally id.* (not citing Rule 4(k)(2) of the Federal Rules of Civil Procedure); *see also* Pls.' Ltr. 1-2 (Nov. 22, 2024), ECF No. 10556 (discussing only Plaintiffs' long-arm-statute theory of personal jurisdiction). As this Court has made clear, and as Plaintiffs do not contest, personal jurisdiction under the New York long-arm statute does not extend beyond the due-process limitations of the Fourteenth Amendment. *See Fed. Ins. Co. v. Al Qaida (In re Terrorist Attacks on Sept. 11, 2001)*, No. 03-md-1570, 2023 WL 2430381, at *9 n.9 (S.D.N.Y. Mar. 9, 2023) ("The exercise of jurisdiction must satisfy the due process requirements of the Fourteenth Amendment where the basis is a state's long-arm statute and the Fifth Amendment where the basis is Federal Rule 4(k)."). *Fuld* affirms that the Fourteenth Amendment requires minimum contacts with the forum state, and *Fuld* does not alter that minimum-contacts analysis at all. *See Fuld*, slip op. 8-9.

For alleged in-forum conduct (i.e., alleged use of U.S. correspondent accounts), Plaintiffs thus still must establish that their injuries "arose from" the Bank's alleged business activity in the state. N.Y. C.P.L.R. § 302(a)(1); *see Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168-69 (2d Cir.

2013). The long-arm statute requires a showing that the Bank "used an actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 130, 132 (2d Cir. 2022). As the Bank has established, Plaintiffs have not met this burden. *See* Mem. 49-50 (May 7, 2024), ECF No. 9786; Reply Br. 22-24 (Sept. 30, 2024), ECF No. 10403.

Plaintiffs' June 24 letter ignores their long-arm-statute basis of personal jurisdiction. Instead, Plaintiffs' letter raises — for the first time in more than eight years of litigation — unspecified "jurisdictional theories" purportedly "predicated on" the ATA itself and Rule 4(k)(2). *See* Pls. Ltr. 2 (citing this Court's decision *in a different case*). By failing to raise these theories in their briefing to this Court (*see generally* Pls.' Mem. (July 22, 2024), ECF No. 10152; Pls.' Mem. (Dec. 5, 2017), ECF No. 3835; First Am. Compl.), Plaintiffs have waived them. *See, e.g.*, *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) (declining to consider argument raised in letter two months after motion to dismiss was fully briefed because "[a]rguments not raised in a party's brief are deemed waived"); *My Goals Sols., Inc. v. Coiana*, No. 24-cv-1900, 2025 WL 833878, at *5 n.7 (S.D.N.Y. Mar. 14, 2025) (holding plaintiff waived theory of personal jurisdiction by failing to raise argument in opposition to motion to dismiss); *see also In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 240 (S.D.N.Y. 2019) (holding that "plaintiffs bear burden" of complying with Rule 4(k)(2) certification element, without which they cannot establish personal jurisdiction), *aff'd*, 771 F. App'x 498 (2d Cir. 2019).

> 2.  **Plaintiffs' Unidentified New "Jurisdictional Theories" Do Not Establish Personal Jurisdiction Over the Bank**

Even beyond Plaintiffs' waiver, these unarticulated "theories" do not establish personal jurisdiction over the Bank in light of *Fuld*.

> a. ***Fuld* Focuses on the Political Branches' "Considered Judgment" in Crafting a Limited Statute Conferring Personal Jurisdiction over Only the PLO and PA**

*Fuld* focuses on whether the jurisdiction-conferring provision of the PSJVTA satisfied Fifth Amendment Due Process. *Fuld*, slip op. 14. The PSJVTA is a very "narrow" statute. *Id.* at 17. It expressly extends personal jurisdiction over *only* the Palestinian Authority and PLO, "two sui generis foreign entities, both of which exercise governmental functions" and "have decades of meaningful contacts, ties, and relations with the United States." *Id.* at 18 (quotation marks and citations omitted). The statutory predicates for personal jurisdiction are limited to those organizations' *payments to convicted terrorists or their families, or specific conduct within the United States*. *Id.* at 4-5. The Court held that *this statute*, which "ties federal jurisdiction to conduct closely related to the United States that implicates important foreign policy concerns," does not "transgress the outer bounds" of Fifth Amendment Due Process. *Id.* at 14.

The Court focused on the fact that "[i]n respectively passing and signing the PSJVTA into law, Congress and the President made a considered judgment to subject the PLO and PA to liability in U.S. courts." *Id.* at 15-16. The Court explained that "[t]he PSJVTA thus reflects the political branches' balanced judgment of competing concerns over 'sensitive and weighty interests of

The Honorable George Daniels
June 27, 2025

national security and foreign affairs' and fairness *to these particular defendants* . . . ." *Id*. at 16 (citations omitted) (emphasis added). Finding that the PSJVTA is "suitably limited to those ends," the Court held it "permissible" for Congress to enact such "a *narrow jurisdictional provision*." *Id*. at 16-17 (emphasis added). The Court emphasized: "Far from an anything-goes approach, then, the PSJVTA ties jurisdiction to specific and narrow conduct that directly implicates issues of sensitive and ongoing concern in respondents' relationships with the United States." *Id*.

### b. The Political Branches Made a Similar "Considered Judgment" in Deciding *Not* to Confer Personal Jurisdiction Over *Any Other* ATA Defendant

Nowhere in the ATA, JASTA, PSJVTA, or elsewhere has Congress authorized personal jurisdiction in ATA cases over *any* other person or entity besides the PLO and the PA. The political branches instead made the "considered judgment" — after weighing "competing concerns over sensitive and weighty interests . . . and fairness" — to limit the "narrow jurisdictional provision" of the PSJVTA to *only* the PLO and the PA.

The Supreme Court recognized the significance of the political branches' decision not to "subject to jurisdiction in its courts a broader range of political defendants — each of which presumably would implicate distinct foreign affairs concerns" — and instead to take "a narrower tack." *Id*. at 18-19. The carving out of all other defendants "serves to reinforce that the statute reflects 'delicate judgments' on matters of foreign policy that are in 'the prerogative of the political branches to make.'" *Id*. (quoting *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 273 (2018)); *see also* U.S. Br. 47-48, *Fuld*, No. 24-20, 606 U.S. ---- ("Holding that the Fifth Amendment imposes no limits on Congress's authority to provide for personal jurisdiction over foreign defendants could invite other countries to assert blanket jurisdiction over U.S. nationals.").

Yet Plaintiffs ask this Court to cast aside those "delicate judgments" and instead embrace the "anything-goes approach" that the Supreme Court rejected. Plaintiffs' position cannot be squared with *Fuld*'s instruction that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 14-15 (quoting *Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 115 (1987)); *see also id*. ("We are wary to reach further and bless more attenuated assertions of jurisdiction.").

### c. Second Circuit Precedent, and the Limited Scope of the Remand Here, Constrain this Court from Adopting Plaintiffs' "Unbounded Jurisdictional Theory"

*Fuld* thus does not support Plaintiffs' overreach. *See id*. (refusing to endorse the "unbounded jurisdictional theory" also urged by Plaintiffs here). Even if Plaintiffs' expansion of *Fuld* beyond the narrow, jurisdiction-conferring statute at issue there were plausible, this Court is bound by Second Circuit precedent requiring Plaintiffs to satisfy the "purposeful direction" test to establish personal jurisdiction over defendants in this MDL. *See O'Neill v. Asat Tr. Reg.* ("*Terrorist Attacks VII*"), 714 F.3d 659, 674 (2d Cir. 2013). Mere "tension" between binding Second Circuit precedent and a Supreme Court decision is not enough for this Court to ignore that precedent. *See Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) (holding that if there is "tension" between Second Circuit precedent and Supreme Court decision, then Second Circuit panels and district

The Honorable George Daniels
June 27, 2025

courts must follow "binding precedent of our court" until that precedent is overturned en banc). This Court *must* follow Second Circuit precedent "unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (internal citation and quotation marks omitted); *see also United States v. Dupree*, No. 16-cr-84, 2016 WL 10703796, at *4 (E.D.N.Y. Aug. 29, 2016), a*ff'd*, 767 F. App'x 181 (2d Cir. 2019) (holding that the determination of whether Second Circuit precedent has been overruled "should almost always be left to the Circuit to reconsider its prior decision").

This Court is further constrained by the specific mandate from the Second Circuit in this case. The Second Circuit's remand requires this Court to determine whether Al Rajhi Bank engaged in "'intentional conduct' that is 'expressly aimed . . . at residents of the United States.'" *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 68 (2d Cir. 2019) (quoting *In re Terrorist Attacks on Sept. 11, 2001* ("*Terrorist Attacks III*"), 538 F.3d 71, 95 (2d Cir. 2008), and citing *Terrorist Attacks VII*, 714 F.3d at 675); *see also Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) ("[W]here a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." (internal quotation marks and brackets omitted)); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) ("[W]here the mandate limits the issues open for consideration on remand, the district court ordinarily may not deviate from the specific dictates or spirit of the mandate by considering additional issues on remand." (citation omitted)).

If Plaintiffs wish to argue that *Fuld*, which focuses narrowly on whether the PSJVTA satisfies Fifth Amendment Due Process standards, somehow displaces longstanding Second Circuit jurisprudence on personal jurisdiction under the ATA, including as mandated by the Second Circuit in this very action, then Plaintiffs must take that argument up with the Second Circuit itself.

### d. JASTA Confirms That the "Purposeful Direction" Test Must Be Met to Establish Personal Jurisdiction Under the ATA — And *Fuld* Does Not Upset that Careful Determination by the Political Branches'

In any event, at most, *Fuld* can be read as an instruction that courts should be guided by a "more flexible jurisdictional inquiry" than the minimum-contacts test when assessing the constitutionality of federal statutes authorizing personal jurisdiction. *Fuld*, slip op. 12. To be sure, *Fuld* holds that the Fifth Amendment does not limit *Congress's authority* to enact jurisdiction-conferring statutes in the same precise way that the Fourteenth Amendment limits states' authority. But here, Congress has not exercised any such authority. *See id*. at 7 ("Any difference between the Fifth and Fourteenth Amendments is therefore implicated in only a subset of federal cases, such as those in which personal jurisdiction is — as in the PSJVTA — 'authorized by a federal statute.'" (quoting Fed. R. Civ. P. 4(k)(1)(C))). And as much as Congress's intent can be gleaned, JASTA shows that Congress understood that "purposeful direction" was, and would remain, the test for personal jurisdiction in ATA cases.

The Honorable George Daniels
June 27, 2025

Plaintiffs' letter quotes (at 2) from the preamble to JASTA but ignores that JASTA did not authorize personal jurisdiction over *any* person. Plaintiffs furthermore omit the only portion of the preamble that relates to personal jurisdiction, a paragraph stating:

> Persons, entities, or countries that knowingly or recklessly contribute material support or resources, directly or indirectly, to persons or organizations that pose a significant risk of committing acts of terrorism that threaten the security of nationals of the United States or the national security, foreign policy, or economy of the United States, necessarily *direct their conduct* at the United States, and should reasonably anticipate being brought to court in the United States to answer for such activities.

JASTA § 2(a)(6), Pub. L. No. 114-222, 130 Stat. 852, 852 (2016) (emphasis added).

When enacting JASTA, Congress no doubt understood the prevailing test for specific personal jurisdiction in the context of ATA litigation, and, as when enacting the ATA itself, "that background context informed the enactment of" JASTA. *Fuld*, slip op. 12; *see, e.g.*, *Terrorist Attacks VII*, 714 F.3d at 674 ("For the purpose of establishing specific personal jurisdiction, the necessary fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." (internal citation and quotation marks omitted)); *Terrorist Attacks III*, 538 F.3d 71, 93 (2d Cir. 2008) (similar). JASTA expresses Congress's finding about the sort of conduct sufficient to satisfy the "purposeful direction" element of the prevailing test for personal jurisdiction. It does not prescribe a new test.

If anything, then, the text and history of JASTA confirm that at a minimum the "purposeful direction" test would need to be met for personal jurisdiction over defendants sued under the ATA. Rather than authorizing courts to exercise personal jurisdiction over a "broader range of potential defendants" (*Fuld*, slip op. 18), Congress chose to maintain the status quo, while giving courts guidance on how to determine whether defendants "direct their conduct at the United States."

Indeed, during the ensuing years, courts continued to apply the prevailing test for personal jurisdiction, including the "purposeful direction" requirement. *See, e.g.*, *Siegel v. HSBC Holdings PLC*, No. 17-cv-6593, 2018 WL 501610 (S.D.N.Y. Jan. 19, 2018) (applying purposeful-direction test). Congress twice passed subsequent legislation to authorize personal jurisdiction for ATA claims under narrow circumstances — first, through the Anti-Terrorism Clarification Act of 2018, Pub. L. No. 115-253, 132 Stat. 3183, and second, through the PSJVTA in 2019 — and both times Congress chose to limit this authorization to specific defendants and narrow, jurisdiction-triggering conduct. In limiting those statutes to those specified defendants and that specific conduct, Congress — as it had done with JASTA — underscored its considered, balanced judgment to maintain the prevailing personal jurisdiction test and "purposeful direction" requirement *for all defendants other than the PLO and PA*. *See* PSJVTA § 903(d)(1)(B), Pub. L. No. 116-94, 133 Stat. 3085 (providing that "nothing" in PSJVTA "may be construed to affect any law or authority" relating to an ATA case brought against any person other than the PLO or PA). *Fuld* instructs courts to respect those careful determinations by the political branches.

**WHITE & CASE**

The Honorable George Daniels
June 27, 2025

*Fuld* does not upset the longstanding "purposeful direction" requirement. Instead, *Fuld* makes clear that, to be consistent with Fifth Amendment Due Process, jurisdiction-conferring statutes must "tie[] the assertion of jurisdiction to predicate conduct that *in and of itself bears a meaningful relationship to the United States*." *Fuld*, slip op. 19. In other words, there must still be a meaningful nexus between the Bank's alleged conduct, Plaintiffs' alleged injuries, and the United States.

Perhaps recognizing *Fuld*'s limitations, Plaintiffs mischaracterize the facts here in an apparent attempt to hew more closely to the reasonableness inquiry in *Fuld*. In *Fuld*, the Court emphasized that the PLO and PA could not have been "surprise[d]" to be haled into U.S. courts, given their "longstanding presence in the United States," the fact that they "have litigated ATA suits here for decades," and that they were given "clear notice" in the PSJVTA that their conduct "would open them up to potential federal court jurisdiction." *Id.* at 21 (internal quotation marks and citations omitted). Plaintiffs reflexively assert (at 2) that Al Rajhi Bank, too, has had a "longstanding commercial presence in the United States." But this is simply untrue. It is undisputed that Al Rajhi Bank had no presence in the United States at all, and its only connection with the United States was the use of a U.S. correspondent account. *See* ECF No. 10405-1 at ¶¶ 10-11 (leaving undisputed that the Bank had no branches, representative offices, or any other presence in the United States). The only statutory or judicial "notice" that persons besides the PLO and PA received about the possibility of being haled into U.S. courts under the ATA was that the "purposeful direction" test would apply. And while the Bank has successfully defended itself against ATA claims in this MDL brought by some of the same counsel as counsel representing Plaintiffs here, that fact cannot satisfy the Fifth Amendment Due Process or reasonableness prongs for exercising personal jurisdiction.

\* \* \*

Because the Parties have extensively briefed Plaintiffs' failure to meet their burden of establishing that Al Rajhi Bank purposefully directed any intentional tortious conduct at the United States, and because *Fuld* does not alter that baseline test, further briefing is unnecessary. That said, Al Rajhi Bank of course stands ready to provide any additional briefing that the Court would consider helpful.

Respectfully submitted,

/s/ *Christopher M. Curran*

Christopher M. Curran
Nicole Erb
Nicolle Kownacki
Reuben J. Sequeira
Michael Mahaffey

*Counsel for Al Rajhi Bank*

cc:   Counsel of Record (via ECF)