UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- x
                                    :
                                    :
                                    :    MEMORANDUM DECISION AND
In re Terrorist Attacks on September 11, 2001  :           ORDER
                                    :
                                    :    03 MDL 1570 (GBD) (SN)
                                    :
                                    :
----------------------------------- x

This document relates to *Ashton, et al v. Al Qaeda Islamic, et al*, No. 02-cv-6977 (GBD) (SN)

GEORGE B. DANIELS, District Judge:

Defendant Republic of the Sudan ("Sudan") moves to certify for interlocutory appeal of the denial of its motion to dismiss pursuant to 28 U.S.C. § 1292(b). (Def. Mot., ECF No. 10684[1].) In its motion, Sudan argues that this Court should grant certification because it may materially advance termination of the litigation, and the questions that Sudan seeks to appeal are controlling questions of law. Sudan further claims that there are substantial grounds for a difference of opinion on the legal issues, and Sudan brought this motion in a reasonable time. (Mem. of Law in Supp. of Sudan's Mot. for Certification of an Interlocutory Appeal ("Sudan's Br."), ECF No. 10688, at 3.) Plaintiffs oppose Sudan's motion, asserting that Sudan has failed to meet the criteria for certification. (Mem. of Law in Opp'n to Sudan's Mot. for Certification of an Interlocutory Appeal ("Pls. Opp'n"), ECF No. 10713, at 1–3.) Because Sudan fails to establish all three elements under § 1292(b), its motion is DENIED.

---

[1] Unless otherwise indicated, all docket numbers refer to the main docket sheet for this multidistrict litigation. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570.

## I. BACKGROUND[2]

In 2003, the *Ashton* Plaintiffs served their complaint on Sudan. (ECF No. 358 at No. 02–cv–06977.) Over the years, various sets of Plaintiffs have filed complaints against Sudan and amended them. (R&R, ECF No. 7942, at 2–4.) In 2020, Plaintiffs filed consolidated complaints, alleging that Sudan was responsible for the 9/11 Attacks because of its critical support to Al Qaeda in the years leading up to the Attacks. (Consolidated Amended Complaint ("CAC"), ECF No. 6539; *Ashton* Amended Complaint ("*Ashton* Compl."), ECF No. 6537.) In 2021, Sudan moved to dismiss for lack of subject matter jurisdiction, arguing that Plaintiffs failed to establish an exception to foreign sovereign immunity set forth in 28 U.S.C. § 1605. (Def.'s Mot. to Dismiss, ECF No. 6574.) Sudan also argued lack of personal jurisdiction and failure to state a claim. (*Id.*)

On August 10, 2023, this Court issued a Memorandum Decision and Order ("Order"), granting in part and denying in part Sudan's motions. (Order, ECF No. 9278.) This Court held that it has subject matter jurisdiction over Plaintiffs' claims and personal jurisdiction over Sudan. (*Id.* at 2.) This Court also held that Plaintiffs have stated several plausible claims to survive Sudan's motion to dismiss.[3] Additionally, this Court also vacated prior entries of default against Sudan after finding good causes to do so. (*Id.* at 31.)

On September 7, 2023, Sudan filed a notice of appeal to the Second Circuit pursuant to the collateral order doctrine. (Sudan's Notice of Appeal, ECF No. 9336.) The Second Circuit

---

[2] This Court assumes familiarity with the general background of this case and will only restate relevant background germane to the pending motion.

[3] This Court, however, dismissed the Alien Tort Statute ("ATS"), secondary liability Anti-Terrorism Act ("ATA"), and international law claims against Sudan for failure to state a claim. (Order, at 32.) This Court also dismissed certain state law claims for assault and battery on statute of limitations ground and all state law claims for conspiracy, aiding and abetting, and punitive damages because New York law does not recognize these causes of action. (*Id.* at 27.) Finally, this Court dismissed all state law claims for intentional infliction of emotional distress and negligence because alternative causes of action exist for the intentional conduct alleged. (*Id.* at 27–28.)

2

dismissed Sudan's appeal on September 3, 2024, holding that § 1605A "eliminates all interlocutory appeals under the collateral-order doctrine from orders falling within its scope, including Sudan's proposed appeal." *In re Terrorist Attacks on Sept. 11, 2001*, 117 F.4th 13, 17–18 (2d Cir. 2024).

On January 29, 2025, Sudan moved this Court to certify an interlocutory appeal pursuant to § 1292(b). (Def. Mot.) Sudan argues that certification may materially advance the termination of the litigation if Plaintiffs' allegations are deemed insufficient to abrogate Sudan's sovereign immunity. (Sudan's Br., at 3.) Sudan also asserts that the appeal raises controlling issues of law regarding subject matter jurisdiction and that there are substantial grounds for a difference of opinion on exceptions to foreign sovereign immunity. (*See id.* at 5–6.) Sudan adds that it brought the motion in a reasonable time, considering the ongoing civil war. (*See id.* at 9.)

Plaintiffs argue that an interlocutory appeal will not materially advance the termination of the litigation because even if Sudan's arguments were to succeed, the most likely result is a remand with instructions for assessing jurisdictional causation, which would prolong the litigation rather than terminating it. (Pls. Opp'n, at 13.) Plaintiffs dispute Sudan's argument that the appeal raises controlling issues of law, pointing out that Sudan failed to establish that the issues present "pure" questions of law. (*Id.* at 7.) Finally, Plaintiffs argue that the issues that Sudan seeks to appeal do not have substantial grounds for difference of opinion and that Sudan's motion is untimely. (*Id.* at 4, 10.)

## II. LEGAL STANDARD

Under § 1292(b), "a court, in its discretion, may certify an interlocutory order for appeal if the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. New*

*York City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (internal quotation marks omitted). Courts place particular weight on the third factor: whether an immediate appeal will materially advance the ultimate termination of the litigation. *Id.* The burden to establish all three elements is on the moving party. *Youngers v. Virtus Inv. Partners Inc.*, 228 F.Supp.3d 295, 298 (S.D.N.Y. 2017) (internal citations and quotation marks omitted). Even if the moving party establishes all three elements in § 1292(b), this Court has "unfettered discretion to deny certification if other factors counsel against it." *Transp. Workers Union*, 358 F. Supp. 2d at 351 (internal quotation marks omitted); *see also Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 166 (E.D.N.Y. 1999) (a case can be inappropriate for interlocutory appeal even if all three criteria under §1292(b) are met).

An interlocutory appeal is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). "The party seeking an interlocutory appeal has the burden of showing exceptional circumstances, to overcome the general aversion to piecemeal litigation and to show that the circumstances warrant a departure from the basic policy of postponing appellate review until after entry of a final judgment." *In re Enron Corp.*, 2008 WL 281972, at *3 (S.D.N.Y. Jan. 25, 2008) (internal quotation marks and citations omitted).

### III. SUDAN'S MOTION TO CERTIFY FAILS TO MEET ANY OF THE INTERLOCUTORY APPEAL REQUIREMENTS.

Sudan fails to establish the exceptional circumstances necessary to certify an interlocutory appeal. An immediate appeal would not materially advance the ultimate termination of the litigation; the Order does not involve a controlling question of law; there is no substantial ground for difference of opinion pursuant to § 1292(b); and Sudan's motion is not timely. Sudan's motion therefore is denied.

1. **Interlocutory Appeal Would Not Materially Advance the Ultimate Termination of the Litigation.**

Contrary to Sudan's argument, certification would not materially advance the ultimate termination of this litigation. Sudan asserts that an immediate appeal may end this litigation completely if the Second Circuit reverses the Order with respect to sovereign immunity. (Sudan's Br., at 3.) Sudan also argues that because it is no longer designated as a state sponsor of terrorism, § 1605A(f) is not applicable. (*Id.* at 4.) Sudan additionally requests that this Court invite the United States to submit a statement of interest to assist the Court in deciding this motion. (Sudan's Reply, ECF No. 10729, at 11.) Plaintiffs respond that Sudan oversimplifies this issue and that Sudan's theory that it would likely succeed on appeal is dubious. (Pls. Opp'n, at 13.)

Under § 1292(b), courts place "particular weight" on whether the certification of an interlocutory appeal would significantly advance litigation. *Florio v. City of New York, N.Y.*, 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008) (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)). This requires the movant to demonstrate that the appeal "promises to advance the time for trial or to shorten the time required for trial." *Id.* Specifically, "the requirement that an immediate appeal must materially advance the termination of the litigation is strictly construed." *In re Oxford*, 182 F.R.D at 53 (quoting *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.*, 964 F.2d 85, 88 (2d Cir.1992)). The Second Circuit has ruled that § 1292(b) certification is inappropriate when it is "not clear" that the appeal would advance the termination of the litigation. *Westwood Pharmaceuticals, Inc.*, 964 F.2d at 88.

The main argument Sudan makes is based on its speculation that the Second Circuit may reverse this Court's Order or disagree with this Court on the issue of subject matter jurisdiction. (Sudan's Br., at 3.) Such conclusory and vague assertions alone, without specifically explaining

why Sudan's appeal will likely result in a reversal, are not sufficient to meet the strict standard laid out in *Florio* and *In re Oxford*. 2008 WL 3068247, at *1; 182 F.R.D at 53.

Sudan cites *Tantaros* to support its contention that a reversal on the issue of sovereign immunity would end this case. *Tantaros v. Fox News Network LLC.*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020). While this is a valid general principle, the facts and circumstances in *Tantaros* are different from the case here. First of all, the Second Circuit had already dismissed Sudan's appeal. *In re Terrorist Attacks*, 117 F.4th at 28. Even though it is based on the appellate bar under § 1605A(f), this dismissal is still a fact that this Court should consider for the purpose of institutional efficiency. *See Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 573 (S.D.N.Y. 2001) (certification is inappropriate where "the actual result would be to further prolong what has already been a protracted litigation."). Secondly, as *Tantaros* explains, the "material advancement of litigation" factor is "closely connected" to the "controlling question of law" factor. 465 F. Supp. 3d at 392. As this Court explains below in Section III. 2, the issues Sudan seeks to appeal are not clearly controlling questions of law. Lastly, this Court has already determined subject matter jurisdiction over Plaintiff's claims based on Foreign Sovereign Immunities Act ("FSIA") §1605A, §1605(a)(7) and §1605B (Order, at 7–8.) This issue has been decided and there is no ambiguity surrounding it. Sudan cannot simply state that this decision could be reversed, in order to obtain a certification for appeal. *See Abortion Rts. Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982) (appellate review is "not intended as a vehicle to provide early review of difficult rulings in hard cases." (internal citations omitted)). The early termination Sudan hopes for could only happen if the Second Circuit disagrees with this Court on the sovereign immunity issue. Sudan does not explain why that would likely be the result of its appeal.

Additionally, even though Sudan is no longer designated as a state sponsor of terrorism (*see* Sudan's Br., at 4,) the FSIA exceptions still apply to Sudan for the purpose of this lawsuit. First of all, § 1605A(a)(2)(A)(i)(I) provides that the § 1605A exception applies so long as the foreign state was "designated as a state sponsor of terrorism at the time" of the Attacks. The United States designated Sudan a state sponsor of terrorism in 1993 (Order, at 8,) and the designation was rescinded in 2020 (Sudan's Br., at 4.) Therefore, the lifting of the state sponsor status after the Attacks does not change the Court's conclusion on whether the § 1605A exception applies. Furthermore, § 1605B confers subject matter jurisdiction to this Court without requiring Sudan to be a designated state sponsor of terrorism. (Order, at 9.)

As to Sudan's grace and comity argument (Sudan's Br., at 5,) the Second Circuit noted that dismissing its appeal will not undermine the general principle of international comity and sovereign dignity. *See In re Terrorist Attacks*, 117 F.4th at 27–28. Finally, this Court sees no need for a statement of interest by the United States, per Sudan's request. Statements of interest could be relevant if it is unclear whether an entity is considered a sovereign for the purposes of FSIA. *See Samantar v. Yousuf*, 560 U.S. 305, 309 (2010) (district court invited the State Department to provide a statement of interest when it was unclear whether the U.S. would recognize a particular entity as the government of Somalia). In this case, there is no doubt as to Sudan's status as a foreign sovereign, and the Court has already considered and determined whether and which FSIA exceptions apply. Therefore, a statement of interest on this matter from the United States is unnecessary and this request is denied.

2. **The Court's Decision Does Not Raise a Controlling Question of Law.**

Sudan does not demonstrate that the Order involves a controlling question of law within the meaning of § 1292(b). Sudan seeks to appeal the following issues: whether Plaintiffs' allegations are sufficient to satisfy the exceptions to sovereign immunity, whether Plaintiffs'

actions are untimely, and whether Plaintiffs' allegations are insufficient to state the claims. (Sudan's Br., at 2.) Sudan asserts that the questions of foreign sovereign immunity and subject matter jurisdiction are "plainly significant controlling questions of law." (Sudan's Br., at 5.) Sudan further argues that the causation standards and whether Plaintiffs may assert § 1605A as a basis for subject matter jurisdiction are pure questions of law. (*Id.*) On the contrary, Plaintiffs assert that the Order involves a mix of law and fact. (Pls. Opp'n, at 7.) Plaintiffs contend that jurisdictional causation is not a pure question of law because it involves a fact-intensive inquiry. (*Id.* at 8.)

"A question of law is controlling if reversal of the district court's order would terminate the action." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 372 (S.D.N.Y. 2008) (internal citations and quotation marks omitted). "In determining whether a controlling question of law exists the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or; the certified issue has precedential value for a large number of cases." *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) (internal citations omitted). Here, the reversal of the Order as it relates to subject matter jurisdiction would certainly terminate the action, and therefore the questions of foreign sovereign immunity and subject matter jurisdiction are controlling.

However, in order to obtain the certification for appeal, the questions Sudan seek to appeal must also be "pure question[s] of law that the reviewing court 'could decide quickly and cleanly without having to study the record.'" *Hilton Hotels Corp.*, 574 F. Supp. 2d at 371. Because the appellate review of the Order would necessitate the Second Circuit to evaluate both the law and the factual allegations and the record the parties cite to, certification for appeal is inappropriate.

8

The dispute over whether exceptions under FSIA apply here is about the application of the legal standard rather than an ambiguity about the legal standard itself. Therefore, Sudan's appeal would require the Court of Appeals to review this Court's application of the law to the allegations made in the complaints. Such an analysis is fact-specific, focusing on the sufficiency of Plaintiffs' allegations. *See Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (disputes over subject matter jurisdiction under the FSIA could raise a mixed question of law and fact, if the defendant challenges the factual basis of the jurisdiction or contests a jurisdictional fact alleged by the plaintiff). Even though Sudan claims that the factual allegations in the complaints were not in dispute (Sudan's Reply, at 5,) Sudan clearly is both challenging the legal sufficiency and disputing the factual allegations themselves. (Mem. In Supp. of Mot. to Dismiss, ECF No. 6575.) Accordingly, Sudan does not present pure questions of law for appeal and does not meet the standard set out under § 1292(b). *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 537 (S.D.N.Y. 2014) (appellate review is also inappropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts) (internal citations omitted).

### 3. Sudan Fails to Show Substantial Ground for Difference of Opinion.

Sudan asserts there are substantial grounds for a difference of opinion regarding the appropriate standard for jurisdictional causation under the applicable exceptions to foreign sovereign immunity. (Sudan's Br., at 6.) Sudan also argues this Court's holding that Plaintiffs' allegations are sufficient to establish proximate causation is a "difficult issue of first impression for the Second Circuit." (*Id.* at 7.) Sudan adds that there are "issues of first impression" on whether Plaintiffs properly and timely relied on the "related action" provision in § 1083(c)(3) of the 2008 National Defense Authorization Act ("NDAA") to invoke § 1605A. (*Id.* at 9.) Plaintiffs respond

9

that there is no difference of opinion about the standard for jurisdictional causation in the FSIA context, as the case law clearly requires only proximate causation. (Pls. Opp'n, at 11.) Plaintiffs dispute that the interpretation of the "related action" provision under § 1083(c)(3) presents an issue of first impression. (*Id.* at 12)

Substantial ground for differences of opinion may exist where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (internal citation omitted). The mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for differences of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (quoting *FDIC v. First Nat'l Bank of Waukesha, Wis.*, 604 F.Supp. 616, 622 (E.D.Wis. 1985)). A substantial ground for dispute is not just "moderate disagreement among courts" but an "entrenched and longstanding disagreement." *Hermes Int'l v. Rothschild*, 590 F. Supp. 3d 647, 656 (S.D.N.Y. 2022) ("The legal issue designated for review should be so central to the disposition of the case, and dispute on it so entrenched and longstanding, that proceeding with the case any further without immediate appellate review would be a waste of judicial resources"). "There must be substantial doubt that the district court's order was correct." *Hilton Hotels Corp.*, 574 F. Supp. 2d at 372 (internal citation omitted).

Sudan fails to show that there are substantial grounds for a difference of opinion on the jurisdictional causation standard. In the FSIA context, the appropriate jurisdictional causation standard and the test for proximate causation are well-settled questions. *In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 644–45 (S.D.N.Y. 2018) (citing *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017)) (courts concluded that only proximate causation is required to establish jurisdictional causation under JASTA, and other courts addressing FSIA issues have

10

adopted the traditional test for proximate causation requiring "reasonable connection"). As Magistrate Judge Netburn stated before, in this multi-district litigation, it is the law of the case that "§ 1605(a)(7), § 1605A, and § 1605B require only proximate causation." (Report and Recommendation, ECF No. 7942, at 7–8 (citing *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047, at *41 (S.D.N.Y. Dec. 22, 2011).) The Second Circuit held that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal quotation marks omitted). Sudan does not provide such reasons why this Court should abandon its previous ruling on jurisdictional causation.

The Supreme Court cases that Sudan cites establish that but-for causation is the default standard in tort cases, but they have no relevance for jurisdictional causation standard in terrorism cases in the FSIA context, which is an entirely different inquiry. *See Comcast Corp. v. Nat'l Ass'n of African-American Owned Media*, 589 U.S. 327, 332 (2020) (holding that a plaintiff alleging racial discrimination in contract formation and enforcement must prove but-for causation, which is the default causation standard in tort); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) (holding that a plaintiff alleging Title VII discrimination must prove "traditional" but-for causation). *Rothstein v. UBS* is also not relevant because it holds that the traceability requirement for Article III standing is a lesser burden than proximate cause. 708 F.3d 82, 92 (2d Cir. 2013). As such, Sudan does not demonstrate that there is any conflicting authority as to the precise issue of jurisdictional causation standard in the FSIA context.

Finally, Sudan's argument concerning the timeliness of Plaintiffs' § 1605A claims is meritless. (Sudan's Br., at 8–9.) Sudan simply identifies an "issue of first impression" without

11

demonstrating a substantial ground for difference of opinion that might warrant an interlocutory review. (Sudan's Br., at 8.) Assuming Sudan is correct that no court of appeals has addressed the proper interpretation of § 1083(c)(3) in any case involving Sudan, it is still insufficient to establish substantial ground for difference of opinion. *See Williston v. Eggleston*, 410 F. Supp. 2d 274, 277 (S.D.N.Y. 2006) (the fact that a question of law has not been authoritatively addressed does not establish grounds for a substantial difference of opinion for the purposes of § 1292(b)). Thus, this Court finds no reason to certify Sudan's motion for interlocutory appeal based on this criterion.

### 4. Sudan's Motion to Certify an Interlocutory Appeal is Untimely.

Sudan did not bring this motion within a reasonable time, nor does Sudan provide a compelling explanation for its decision to belatedly move to certify an interlocutory appeal.

Sudan argues that its motion was timely because the civil war made it difficult for counsel to engage with the appropriate Sudanese government representatives. (Sudan's Br., at 9.) Sudan points out that it has complied with the necessary procedures including filing the authorization form and submitting a proposed discovery plan. (*Id.*) In response, Plaintiffs argue that Sudan's motion is untimely, as its motion comes nearly eighteen months after this Court denied its motion to dismiss. (Pls' Opp'n, at 4.) Plaintiffs further highlight that the civil war was ongoing when Sudan filed its motion to dismiss, contradicting Sudan's argument that the delays were due to the war. (*Id.* at 6.)

While § 1292(b) does not specify a time period within which a party must move for certification of appeal, "courts have held that any delay in seeking . . . certification 'must be reasonable.'" *Xue v. Koenig*, 2025 WL 897046, at *4 (S.D.N.Y. Mar. 24, 2025) (citations omitted). Courts in this Circuit have found that delays of as little as a few months could be unreasonable for purposes of § 1292(b). *See, e.g., Ferraro v. Sec'y of U.S. HHS*, 780 F. Supp. 978 (E.D.N.Y. 1992)

(finding that the plaintiff's two-and-a-half-month delay was unreasonable); *Martens v. Smith Barney*, 238 F. Supp. 2d 596 (S.D.N.Y. 2003) (finding a five-month delay in seeking certification untimely). An unjustified delay in moving for certification in itself may be a sufficient ground to deny such a motion. *In re Buspirone Pat. Litig.*, 210 F.R.D. 43, 50 (S.D.N.Y. 2002) (the defendant's three-month delay was unjustified and this alone is sufficient for the court to deny certification).

Here, Sudan admits that it filed the motion for certification nearly eighteen months after this Court issued the Order and nearly five months after the Second Circuit dismissed Sudan's appeal of that Order. (Sudan's Reply, at 2.) Regardless of whether this Court calculates Sudan's delay from the date of entry of the Order or from the Second Circuit's dismissal of the appeal, the delay was not reasonable. Sudan repeats that it is in the throes a civil war (*Id.* at 9–10), but it has been able to engage in discovery, and it was able to file an Answer within 14 days after the Court ordered it to do so. (ECF Nos. 10552, 10575.) Most importantly, Sudan belatedly appeared in this multidistrict litigation in 2020, years after the initial complaints were served on Sudan in 2003. (Order, at 31.) Considering the history of Sudan's significant delays in defending this lawsuit, granting this interlocutory appeal would further prolong this litigation and prejudice Plaintiffs. *See In re Buspirone Pat. Litig.*, 210 F.R.D. at 50 (denying motion for certification because the defendant offered no reasonable justification for its delay in filing the motion); *see e.g. Green v. Dep't of Correction*, No. 97 CIV. 6652 BSJSEG, 1999 WL 710782, at *2 (S.D.N.Y. Sept. 13, 1999) ("The most common reasons courts have denied leave to amend are that amendment will result in undue prejudice to the other parties, it is unduly delayed, or it is offered in bad faith or for a dilatory purpose.") (internal citations omitted.) The Court denies Sudan's belated motion to certify for an interlocutory appeal as untimely.

## IV. CONCLUSION

Because Defendant Sudan fails to establish the exceptional circumstances necessary to certify an interlocutory appeal, Sudan's motion to certify is DENIED. The Clerk of the Court is respectfully directed to close the motions at ECF No. 10684 at 03–md–1570, and ECF No. 2218 at 02–cv–6977.

Dated: July 28, 2025
New York, New York

SO ORDERED.

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE