UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army*, et al., 02-CV-6977 (GBD)(SN)

## MOTION FOR VACATUR OR RECONSIDERATION

The Ashton Plaintiffs respectfully move this Court for vacatur of its Decision and Order dated May 29, 2025 (ECF 10989), denying final damages judgments as the "functional equivalent" of an immediate family member of an individual killed on September 11, 2001 in the terrorist attacks (a "9/11 Decedent"), solely as to Plaintiff Maxwell Sivin, pursuant to F.R.C.P. 60(b)(6) or, in the alternative, reconsider that Decision and Order, pursuant to Local Rule 6.3.

**I.    Procedural Basis**

Plaintiff Maxwell Sivin moves to vacate the Decision and Order under Federal Rule of Civil Procedure 60(b)(6). Under the Rule 60(b)(6) standard, vacatur is appropriate if a "ruling is based on … a clearly erroneous assessment of the evidence." *Mandala v. NTT Data, In*c., 88 F.4th 353, 359 (2d Cir. 2023) (finding district court abused its discretion in denying plaintiffs relief under Rule 60(b)(6) to amend their complaint), *quoting Rodriguez v. Mitchell*, 252 F.3d 191, 200 (2d Cir. 2001). In the alternative, Plaintiff moves for reconsideration pursuant to Local Rule 6.3, because this Court appears to have overlooked facts critical to the motion for damages.[1]

---

[1] While a Local Rule 6.3 motion ordinarily is to be filed within 14 days of the judgment, here, deciding plaintiff's motion for reconsideration will not impose any prejudice as the final

## II. This Court Appears to Have Overlooked Determinative Facts in the Plaintiff's Supplemental Declaration

As to the merits, it appears that this Court may have inadvertently neglected to consider factual information in the record that would warrant granting Plaintiff Sivin a damages judgment against Iran here. *See Mandala*, 88 F.4th at 361 (Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just, provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)."); *Matarese v. LeFevre,* 801 F.2d 98, 106 (2d Cir. 1986) (Rule 60(b)(6) "constitutes a grand reservoir of equitable power to do justice in a particular case") (internal quotation marks and citation omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration generally to be denied "unless the moving party can point to … data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *see also Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (a "major ground[]

---

judgment sought is against the Islamic Republic of Iran, which has never appeared in this litigation, despite being named and served as a defendant in this suit over 20 years ago and despite being served multiple other times, including with the certificate of default, a default liability judgment and many default damages judgment.  Further, this motion for reconsideration was delayed by, among other factors, other deadlines in this litigation and relating to the United States Victims of State Sponsored Terrorism Fund and the need to confirm that certain underlying information that forms the basis of this motion had not been addressed in the original denial.  Last, were the Court to construe this only as a Local Rule 6.3 Motion for Reconsideration (and not a Rule 60(b)(6) motion for vacatur), it is preferable "to decide these issues on the merits" and a district court may therefore "exercise its discretion and address the motion" despite the timing. *See Palmer v. Sena*, 474 F. Supp. 2d 353, 354 (D. Conn. 2007) ("A failure to timely file a motion for reconsideration may constitute sufficient grounds for denying the motion; however, courts have exercised their discretion to address even untimely motions" (internal citation omitted).  In light of the absence of prejudice to any opposing party, the harm that the plaintiff would incur were the motion to reconsider dismissed as untimely and the relatively brief additional time sought herein (shorter than other requests previously granted in this litigation), should this Court find that vacatur is not proper under Rule 60(b)(6), Plaintiff respectfully moves for reconsideration *nunc pro tunc* of the Decision and Order.

justifying reconsideration" is "the need to correct a clear error or prevent manifest injustice" (internal citations omitted)).

Relief here is warranted in light of the fact that it appears this Court may have inadvertently failed to consider the factual statements set forth by Plaintiff Sivin in his supplemental declaration, and made clearly erroneous factual findings that are contrary to the facts set forth in that supplemental declaration. ECF 6219-1.

In this Court's Decision and Order, it stated that Plaintiff Sivin lived with the 9/11 Decedent, his stepfather, and his mother "from when Sivin was 17 years old till Miller died from the 9/11 Attacks when Sivin was 22 years old," and that therefore his "claim for solatium damages does not meet the requirement set out in *Hoglan IV*, that step-relatives must demonstrate that they cohabited with the decedent for at least two years prior to the date the claimants turned 18 years old." ECF 10989 at 5.

In his original declaration, Plaintiff Sivin explained that his biological father died when he was 15 years old and that after his mother and Joel Miller, the 9/11 Decedent, married, when Plaintiff Sivin was 15 years old, they did not "move in together immediately" and that they did not combine homes until his mother's house "burnt down when" he "was around 17 years old." ECF 5429-2.  This Court relied on that description in denying Plaintiff Sivin's Rule 72 Objections. ECF 10989 at 5 ("Miller lived with Sivin and his mother from when Sivin was 17 years old till Miller died from the 9/11 Attacks when Sivin was 22 years old.")

Plaintiff Sivin, however, provided additional details in a supplemental declaration filed in 2020. ECF 6219-1.[2]  In that supplemental declaration, Plaintiff Sivin stated that while his mother

---

[2] The further evidence in support of Plaintiff Sivin's objections was provided pursuant to Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). ECF 6219 at ¶ 4.

3

and Joel Miller, the 9/11 Decedent, "did not consolidate households" until he was 17 years old, "the two houses they maintained from the time I was 15 years old were only five minutes apart." ECF 62919-1 at ¶ 4. Additionally, while Plaintiff Sivin's mother did not sell the home she had shared with his biological father until he was about 17 years old, Plaintiff Sivin, his biological mother, his biological brother, his step-sibling and Joel Miller, the 9/11 Decedent, "largely stayed as a family between the two homes – my mother's and Joel's" from the time he was 15 years old until he was 17 years old. ECF 62919-1 at ¶ 4. Also, though it was not until Plaintiff Sivin was 17 years old that they "all moved into a new house together," (ECF 62919-1 at ¶ 6), even during those years prior to combining households, Joel Miller, the 9/11 Decedent, had also listed Plaintiff Sivin as a dependent on his joint tax returns with Plaintiff Sivin's mother; Plaintiff Sivin was on the same health care plan as his step-father; Joel Miller's income was counted against Plaintiff Sivin for purposes of need-based financial aid in law school; and Plaintiff Sivin was treated on an equal basis with his biological sibling and his step-sibling in Joel Miller's estate planning. ECF 62919-1 at ¶ 7.[3]

It appears that this Court may not have taken into consideration the critical information from Plaintiff Sivin that provided more context and detail about the cohabitation arrangements with his step-father. ECF 10989 at 5 (relying on the "presumptive two-year period for cohabitation" prior to a movant turning 18 years old and stating that Plaintiffs primarily relied on the different treatment of Plaintiff Sivin's younger biological brother.)  If this Court were to consider and credit Plaintiff Sivin's supplemental declaration, with the further details of the cohabitation arrangement showing that though perhaps an unorthodox arrangement (with the

---

[3] Should this Court want additional information to confirm the statements in the supplemental declaration of Maxwell Sivin (who is an attorney licensed to practice law in the State of New York), Plaintiff Sivin would readily provide such.

4

maintenance of two homes), it would likely have to find that Plaintiff Sivin did effectively reside with his stepfather Joel Miller, the 9/11 Decedent, from the time he was about 15 years old until Mr. Miller's death in the 9/11 Terrorist Attacks. If so, then Maxwell Sivin would fit within the pre-established "functional equivalent" framework and be entitled to a solatium damages judgment of $4.25 million.

### III.   Conclusion

Because, as set forth in the Supplemental Declaration (ECF 6219-1), Maxwell Sivin satisfied the requirement that he live for at least two years with Joel Miller prior to turning 18 years old, and this Court's findings to the contrary are thus clearly erroneous, Plaintiff Sivin respectfully requests that this Court vacate its Order at ECF 10989 (or, in the alternative, reconsider its decision), and grant a damages judgment in the amount of $4.25 million.


Dated: July 31, 2025
     New York, NY

                                  /s/ James P. Kreindler
                                  James P. Kreindler
                                  KREINDLER & KREINDLER LLP
                                  485 Lexington Avenue, 28th Floor
                                  New York, NY 10017
                                  (212) 973 – 8181
                                  Counsel for *Ashton* Plaintiffs