# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013) <br> Jodi Westbrook Flowers, *Co-Chair* <br> Donald A. Migliori, *Co-Chair* <br> Robert T. Haefele, *Liaison Counsel* <br> MOTLEY RICE LLC | Stephen A. Cozen, *Co-Chair* <br> Sean Carter, *Co-Chair* <br> J. Scott Tarbutton, *Liaison Counsel* <br> COZEN O'CONNOR |

**VIA ECF**

July 31, 2025

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Pursuant to the Court's July 11, 2025 Memo Endorsement (ECF No. 11079), Plaintiffs and Sudan, together with the Government, submit this update on "the status of their meet-and-confer process regarding the parties' subpoenas; a proposal for a deposition protocol; and the PECs' discovery production to Sudan," and also propose mutually convenient dates for a status conference prior to August 15, 2025.

**Joint Statement as to proposed deposition protocol.** Plaintiffs and Sudan have exchanged a draft proposed deposition protocol as well as comments and proposed revisions to that draft. The Parties met and conferred on July 30 to discuss the draft and are continuing to negotiate.

**Joint Statement as to Plaintiffs' production to Sudan.** On June 27, Sudan identified for the Plaintiffs a number of missing pages (based on gaps in the bates-number ranges) from productions previously provided to White & Case between April 7 and August 13, 2023 in a separate action in this multi-district litigation. The Plaintiffs began making rolling productions of these documents to Sudan on July 25, 2025.

**Plaintiffs additional statement as to Plaintiffs' production to Sudan.** Plaintiffs have been working to address the list of bates-number ranges identified in Appendix 2 to Sudan's June 27, 2025 letter, have been producing the identified ranges to Sudan on a rolling basis, and anticipate completing that production next week. In reviewing the documents included in the twenty-page appendix, Plaintiffs have determined that many of the listed documents were in fact produced to White & Case between April and August 2023. Plaintiffs infer that there may have been some technical issue in the transmission or downloading of those records. In other cases, the identified gaps are attributable to bates-numbering errors by defendants in their productions to Plaintiffs (resulting in skipped bates-numbers), and/or the defendants' failure to produce those bates-number ranges to Plaintiffs many years ago. Plaintiffs provided White & Case with the defendant productions as we had received them.

In any case, Plaintiffs have undertaken to produce (and re-produce) every bates-number range identified in Appendix 2 that we possibly can. To date, Plaintiffs have completed 5 document productions to Sudan, totaling more than 285,000 pages. Plaintiffs anticipate that Plaintiffs' production to Sudan will be completed next week.

**Sudan's statement as to potential witnesses.** Separately, for the Court's information, on June 27 Sudan provided Plaintiffs with a list of 33 names of potential witnesses, including nonparties, in accordance with this Court's May 30, 2025 Order (ECF No. 10999). The Parties are working through the process of identifying and locating potential witnesses who may be able and willing to provide testimony in this litigation.

**The meet-and-confer process on Plaintiffs' subpoenas to Government agencies.** Between March 18, 2025 and March 26, 2025, Plaintiffs served subpoenas on four U.S. government agencies: the Central Intelligence Agency (CIA), the Federal Bureau of Investigations (FBI), the State Department (State) and the U.S. Marshals Service (USMS). On April 10, 2025, the Government wrote to the Plaintiffs objecting to the subpoenas and asking Plaintiffs to substantially narrow their requests. Plaintiffs responded to the Government's objections on May 27, 2025 with a detailed letter explaining the relevance of the requests and their importance to the Plaintiffs' claims. On June 23, 2025, Plaintiffs and the Government held a lengthy meet-and-confer concerning the subpoenas and the agencies' proposals for responding to them. In response to Plaintiffs' questions, the Government provided Plaintiffs with additional information on July 29, 2025, and the parties had a follow-up meet-and confer on the morning of July 31, 2025.

As summarized below, although Plaintiffs and the Government continue to meet and confer, Plaintiffs anticipate that motion practice will be necessary on at least some issues, and Plaintiffs respectfully request that at the upcoming conference we discuss the procedure and timing for resolving any disputes if the parties cannot resolve them consensually.

**CIA**: The CIA has indicated that, pursuant to its standard practice for responding to *Touhy* requests, including in connection with previous requests in this case relating to the litigation against Saudi Arabia, it can respond only to those parts of Plaintiffs' (and Sudan's) requests that seek reprocessing of previously acknowledged CIA documents identified by the parties. Consistent with this practice, CIA stated that it does not undertake searches for additional potentially responsive documents in this posture given that, with very limited exceptions, CIA records are classified and even acknowledging whether or not CIA has any documents on a particular topic is itself a classified fact that cannot be revealed, leading to what is known as a *Glomar* response. *See, e.g.*, *N.Y. Times v. CIA*, 965 F.3d 109, 114 (2d Cir. 2020).

During the initial call and in their follow-up letter, Plaintiffs indicated their view that the CIA's position was not consistent the agency's legal obligations to respond to a federal court subpoena. In a follow up meet-and-confer on the morning of July 31, 2025, the Government confirmed that the CIA's position remains unchanged. Accordingly, Plaintiffs submit that unless the parties are able to reach agreement on this issue, it will be necessary for the Court to resolve it.

The Honorable Sarah Netburn, U.S.M.J.
July 31, 2025
Page 3

---

**FBI**: The FBI has indicated that, due to their age, many of the documents that may be responsive to the parties' requests in this case are hard copy documents that have never been digitized, but that have been indexed according to agency protocols for archiving information and can be identified through a computer system that the FBI uses to search for information in its older files. The FBI conducts searches on this system to identify particular physical files and subfiles that are then retrieved from agency archives, scanned, and reviewed for responsiveness to requests such as those in this case. Newer documents, and documents that have previously been digitized for other purposes, can be searched in full text on a different FBI system. The agency has proposed searching both of these systems to identify potentially responsive records to both parties' requests in this case. FBI has also offered Plaintiffs (and Sudan) the opportunity to suggest potential search terms. The Government has explained that the FBI regularly uses the same protocols to conduct searches for records in Freedom of Information Act and other information requests, including for previous requests in this case, and provided search declarations from other cases describing these systems and how they are used for searches.

Plaintiffs have agreed to provide the Government with proposed search terms for the FBI to use to locate responsive digitally archived records.[1] However, Plaintiffs have raised concerns that the FBI's proposed approach to locate physical documents which have not been digitally archived would not be effective in identifying a substantial portion of responsive records from the physical files. The Government acknowledged that the index system that the FBI uses to search its archived hard-copy files documents had inherent limitations.

On July 29, the Government provided Plaintiffs with declarations filed in FOIA cases and in this case that explain its record keeping systems and their search capabilities for archived records. Also, as discussed below, Plaintiffs just learned today that, unlike the FBI, the State Department plans to search its physical files by using electronic index searches to identify relevant files and folders, digitizing the contents of those files and folders, and running word searches on the contents of those digitized files. Plaintiffs are considering that additional information and discussing it with their consultants and expect to continue the discussion next week.

Plaintiffs also note that the fact that Sudan may be amenable to the FBI's (or CIA's) protocols should not be taken as an indication that the proposed protocols are appropriate or consistent with the agencies' legal obligations, particularly where Sudan's interests here diverge from Plaintiffs' interests.

**U.S. Marshals Service**: Plaintiffs' requests to USMS pertain to an individual named Jamal al Fadl, who has been interviewed by the FBI and other U.S. agencies. USMS also has certain records relating to Mr. al Fadl, but these records have been provided to the FBI, which will review and process them. USMS thus does not expect to respond separately to Plaintiffs' (or Sudan's) subpoenas and *Touhy* requests.

---

[1] By providing proposed search terms to facilitate the FBI's search of digitized records, Plaintiffs are not agreeing that the FBI's proposed manner for searching indices for physical records is satisfactory or that the use of the search terms to search the indexes is an adequate way to identify responsive documents from the physical files.

The Honorable Sarah Netburn, U.S.M.J.
July 31, 2025
Page 4

---

**State**: During the June 23, 2025 meet-and-confer, the Government communicated that, like for the FBI, there was no electronic system for searching older undigitized State Department documents in full text, and that State would rely on certain indexes to attempt to locate responsive records. In response to Plaintiffs' request for further detail about State's (and FBI's) indexing systems, on July 31, 2025, the Government explained that the State Department has a much more limited archiving and indexing system for its closed records than the FBI does. The Government explained that State will use this system to identify particular files or folders that could contain responsive material; the agency will then scan and digitize the contents of those folders and search their full text for potentially responsive material.. In addition, State has a searchable digital system that contains the full text of diplomatic cables and other materials. State intends to search both of these systems for potentially responsive records, as it would do for any other similar request. State has also offered Plaintiffs (and Sudan) the opportunity to suggest search terms for its searches. Plaintiffs agree to provide search terms to facilitate State's search of the digitized records, consistent with Plaintiffs' position regarding the FBI records.

***The meet-and-confer process on Sudan's subpoenas to Government agencies.*** Counsel for Sudan and counsel for the Government met and conferred on June 13 and 18, 2025 regarding Sudan's subpoenas to various U.S. government agencies. During those discussions, the Government made proposals regarding the scope of the agencies' responses to the subpoenas, and Sudan responded to those proposals by letter on July 9. Sudan and the Government met and conferred again on July 29. Sudan and the Government have reached agreement on most of the requests and the Government will now begin its searches for documents responsive to those requests. There are a few outstanding issues that Sudan and the Government are continuing to discuss and hope they can be resolved without the Court's intervention. The parties reserve all rights with regard to any disputes that may arise.

**Mutually convenient dates for a status conference before August 15, 2025.** Sudan is of the view that a status conference in August is not necessary, because the Parties and the United States are continuing to work together through the outstanding discovery issues and no dispute is ripe for the Court's consideration. But Sudan is, of course, available if the Court would find a status conference in August helpful. Plaintiffs defer to the Court as to whether a conference in August is necessary.

The Parties and the United States are all available for an in-person conference only on Wednesday, August 6. If the Court is amenable, the Parties and the United States have broader availability for a remote status conference on August 6-7, 13, 15.

Respectfully submitted,

MOTLEY RICE LLC                                  COZEN O'CONNOR

By: /s/ Robert T. Haefele                        By: /s/ Sean P. Carter
ROBERT T. HAEFELE                                SEAN P. CARTER
28 Bridgeside Boulevard                          One Liberty Place
Mount Pleasant, SC 29465                         1650 Market Street, Suite 2800
Tel.: (843) 216-9184                             Philadelphia, Pennsylvania 19103
Email: rhaefele@motleyrice.com                   Tel.: (215) 665-2105

_____

*Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of Plaintiffs*

Email: scarter@cozen.com
*Co-Chair for the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

cc:   The Honorable George B. Daniels, via ECF
      All Counsel of Record via ECF