**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                           :

IN RE:                               :          MEMORANDUM DECISION
                           :              AND ORDER

TERRORIST ATTACKS ON         :
SEPTEMBER 11, 2001          :     03 MDL 1570 (GBD) (SN)

                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

This document relates to:

*Rivelli v. Islamic Republic of Iran*, No. 18-cv-11878 (GBD)(SN)
*Rowenhorst v. Islamic Republic of Iran*, No. 18-cv-12387 (GBD)(SN)

GEORGE B. DANIELS, United States District Judge:

Rahma Salie and Michael Theodoridis were a married couple killed simultaneously on flight during the 9/11 Attacks. (Mem. of Law, ECF No. 10327, at 4.)[1]  Their respective estates ("Plaintiffs") moved for partial final default judgment against the Islamic Republic of Iran ("Iran") and requested solatium damages.[2] (Renewed Mot., ECF No. 10326.)  As non-U.S. nationals, they ask this Court to hold Iran liable and grant solatium damages on the basis of Intentional Infliction of Emotional Distress ("IIED") under New York tort law. (Mem. of Law at 4–9.)

Before this Court is Magistrate Judge Sarah Netburn's May 23, 2025 Report and Recommendation ("the Report"), recommending that this Court deny Plaintiffs' motions. (Report, ECF No. 10965, at 2, 21–22.)  Plaintiffs filed timely objections. (Rule 72(b) Objections

---

[1] Unless otherwise indicated, all ECF citations included herein refer to documents filed on the 9/11 multidistrict litigation docket. *See In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD) (SN).

[2] Plaintiffs have previously moved for partial final default judgment against Iran (Mot., ECF No. 9320), and the Court granted Plaintiffs' requests for economic and pain and suffering damages. (Mem. Decision and Order, ECF No. 9931.)  Specifically, Ms. Salie's estate received $2 million for pain and suffering damages; Mr. Theodoridis's estate received $2 million for pain and suffering damages, and $8,514,726 for economic damages. (*Id.* Ex. A.)

("Obj."), ECF No. 11042.) This Court undertakes a *de novo* review of the objected-to portion of the Report and reviews the unobjected portions of the Report for clear error. Having done so, this Court ADOPTS the Report in its entirety and OVERRULES Plaintiffs' Objection.

## I.   LEGAL STANDARDS

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* However, the district court need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Instead, it is sufficient that the district court "arrive at its own, independent conclusion." *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 34, 346–47 (S.D.N.Y. 2006) (citations omitted). Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation and internal quotation marks omitted).

## II.   MAGISTRATE JUDGE DID NOT ERR IN DETERMINING JURISDICTION AND IRAN'S DEFAULT

This Court has both subject matter and personal jurisdiction over Iran under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and Iran defaulted. (*See* Report at 5–8.)

As Magistrate Judge Netburn correctly noted and Plaintiffs agree, Plaintiffs have established the applicability of the FSIA exception under 28 U.S.C. § 1605B(b), and this Court has subject matter jurisdiction under 28 U.S.C. § 1330(a). (*Id.* at 5–7; Obj. at 1.) Once a court

determines that subject matter jurisdiction exists over a foreign state under 28 U.S.C. § 1330(a), personal jurisdiction is straightforward, simply requiring valid service of process under 28 U.S.C. § 1608. *See* 28 U.S.C. § 1330(b). Magistrate Judge Netburn correctly found that Plaintiffs achieved service under 28 U.S.C. § 1608(a)(4). (*See* Report at 7–8.) Therefore, this Court has personal jurisdiction over Iran.

Plaintiffs' effectuation of service triggered a sixty-day period for Iran to serve "an answer or other responsive pleading to the complaint." 28 U.S.C. § 1608(d). Iran failed to do so, and the Clerk of Court entered a Certificate of Default against Iran on August 13 and 14, 2019. Thus, Magistrate Judge Netburn did not err in finding that Iran defaulted in this action. (*See* Report at 8 (citing Certificate of Default, ECF No. 4819, and No. 18-cv-11878, ECF No. 23).)

## III.    IRAN IS NOT LIABLE UNDER PLAINTIFFS' IIED CLAIMS

### A. APPLYING NEW YORK STATE TORT LAW

First, Magistrate Judge Netburn correctly decided that Iran is subject to suit under state tort law, and New York law applies. (Report at 8–9.) When multi-district litigation courts preside over state law claims, they apply the choice-of-law rules "that would have been applied by a state court in the jurisdiction in which a case was filed." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993). Because Plaintiffs filed their action in this District, this Court looks to New York's choice-of-law rules. (Report at 9.) As Magistrate Judge Netburn noted, this analysis boils down to an evaluation of the "place of the tort—i.e., the jurisdiction where the last event necessary to make the defendant liable occurred. (*See id.* at 9; *In re Sept. 11th Litig.*, 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007) (citing *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 195 (1985)). Here, Magistrate Judge Netburn did not err in applying New York law to these Plaintiffs who suffered injuries in New York. (Report at 9.)

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED")

### 1. Plaintiffs' Factual Allegations regarding an IIED Claim

Magistrate Judge Netburn did not err in concluding that Plaintiffs had properly identified IIED as a cause of action. (*Id.* at 10–11.) Despite that the *Rivelli* and *Rowenhorst* complaints do not include an explicit claim for IIED (*see Rivelli Compl.*, No. 18-cv-11878, ECF No. 1; *Rowenhorst Compl.*, No. 18-cv-12387, ECF No. 1,) this Court may still assess their allegations to determine whether they create a legitimate cause of action. The Report notes that Plaintiffs have adopted portions of the *Burnett* Amended Complaint, and lists allegations that charge Iran with the emotional distress caused by the 9/11 Attacks. (Report at 10–11 (citing *Burnett* Am. Compl., No. 15-cv-09903, ECF No. 53, at 1082–1088).) The Report also cites later submissions by Plaintiffs that identify IIED as a cause of action. (*Id.* at 11.) Plaintiffs do not object, and there is no clear error in recognizing that Plaintiffs are asserting an IIED claim.

### 2. The First Three Elements of Plaintiffs' IIED claim

Under New York law, IIED "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N. Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). Based on Plaintiffs' allegations, which Iran has admitted as true by virtue of its default, this Court has held that Iran aided and abetted Al Qaeda by knowingly providing substantial assistance in plotting the 9/11 Attacks. *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD) (SN), 2024 WL 3046225, at *3 (S.D.N.Y. June 17, 2024) (international citations omitted). These Attacks were "acts of terrorism, by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Id.* (internal citation omitted and cleaned up). Iran's provision of material support to Al Qaeda proximately caused the 9/11 Attacks and the decedents' deaths. *In re Terrorist Attacks on Sept.*

*11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047, at *39–42 (S.D.N.Y. Dec. 22, 2011). Therefore, Magistrate Judge Netburn did not clearly err when concluding that Plaintiffs satisfy the first three elements of the New York IIED.  (Report at 11–13.)

### 3.  Plaintiffs do not satisfy the fourth element of IIED

Because the "sole objection" Plaintiffs raise against the Report is whether Plaintiffs meet the fourth element of their IIED claim (Obj. at 1,) this Court reviews this issue *de novo* and concludes that Plaintiffs' allegations are insufficient to establish the type of severe emotional distress that makes them eligible for solatium damages.

Solatium damages encompass a variety of common law damages suffered by those close to a decedent, including loss of consortium, loss of companionship, society and guidance, and mental anguish.  *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 77 (S.D.N.Y. 2006). "Solatium claims are typically brought by family members who were not present or injured themselves." *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 62 (D.D.C. 2018) (internal citation omitted).  Courts have looked to IIED discussions to determine whether family members of terrorist attack victims may recover solatium damages because their solatium claims are indistinguishable from an IIED claim. *Raanan v. Binance Holdings Ltd.*, No. 24-CV-697 (JGK), 2025 WL 605594, at *11 (S.D.N.Y. Feb. 25, 2025); *see also Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 140 (D.D.C. 2018) ("Under 1605A (c) 'a solatium claim is indistinguishable from an IIED claim.'").  As a result, Plaintiffs here must establish the fourth element of their IIED claim by alleging severe emotional distress analogous to that resulting from the sense of grief due to losing a loved one.

Here, despite the devastating and tremendous emotional distress suffered by the victims due to the Attacks, such distress did not come from a sense of bereavement or grieving.  Plaintiffs

pointed out that Ms. Salie and Mr. Theodoridis sustained severe emotional distress from witnessing each other's pain and suffering (Mem. of Law at 6,) and experienced extreme fear knowing that they and their unborn child would perish. (*Id.* at 8.) Such pain and suffering is unimaginable and grave, and this Court recognizes the severe emotional distress Ms. Salie and Mr. Theodoridis had suffered. However, this Court has set forth before, when granting requests for solatium damages, that "[a] claim for solatium refers to the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as *a result of* the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 CIV. 9848 (GBD) (FM), 2012 WL 3090979, at *4 (S.D.N.Y. July 30, 2012), *report and recommendation adopted,* No. 03 MDL 1570 (GBD) (FM), 2012 WL 4711407 (S.D.N.Y. Oct. 3, 2012) (internal citation omitted and emphasis added). The severe emotional distress Ms. Salie and Mr. Theodoridis experienced, caused by their fear of death and the horror of the Attacks, is not feelings of grief or bereavement, which typically happen "following decedents' [] death." *Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs., et al.*, 892 F.3d 348, 357 (D.C. Cir. 2018) (internal citations omitted); *see also* Black's Law Dictionary 1607 (10th ed. 2014) (defining "solatium" as "damages allowed for hurt feelings or grief, as distinguished from damages for physical injury").

For the same reason, Plaintiffs also do not establish severe emotional distress similar to that caused by loss of consortium. "Consortium is the mutual right of the marriage partners to each other's society, companionship, and affection, including sexual intercourse." *Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257, 260 (2d Cir. 1963) (internal citation and quotation marks omitted). The loss of consortium would only take place if one of the victims survived the Attacks to experience the loss caused by the other's death. Instead, they died simultaneously and did not

yet experience the loss of each as a result of their death. Ms. Salie's and Mr. Theodoridis's sufferings are therefore different from the type of emotional distress that would entitle them to solatium damages. Instead, Plaintiffs are entirely eligible for pain and suffering damages as a result of their pain and suffering prior to their death, and this Court had indeed granted them such. (Mem. Decision and Order, ECF No. 9931.) "Where there has been only one injury, the law confers only one recovery, irrespective of the multiplicity of . . . theories which the plaintiff pursues." *Barone v. Marone*, 2007 WL 4458118, at *3 (S.D.N.Y. Dec. 14, 2007) (citing *Kassman v. American University*, 546 F.2d 1029, 1033–34 (D.C. Cir. 1976)). Solatium damages, intended to compensate family members for their subsequent grief, are not the appropriate type of damages that this Court can award to Plaintiffs. *See Wamai v. Republic of Sudan*, 60 F. Supp. 3d 84, 91 (D.D.C. 2014) (vacated and remanded for a different part of the decision) (denying solatium damages to the daughter of the victim because the daughter was killed in the same attack).

### 4. Plaintiffs' Objections

Plaintiffs argue that the Report was wrong as a matter of law in concluding that Plaintiffs' emotional distress was not sufficiently analogous to solatium emotional distress, and even if there were no analogy, Plaintiffs still suffered compensable emotional distress. (Obj. at 1–2.)

As a matter of law, this Court may grant solatium damages for Plaintiffs' IIED claim when the IIED and solatium claims are indistinguishable. *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD) (SN), 2023 WL 2529061, at *7 (S.D.N.Y. Mar. 3, 2023). Therefore, this Court will look into the nature of the severe emotional distress and award solatium damages when it is similar to the types commonly compensated by solatium damages. This Court has not granted solatium damages to family members who simultaneously died in the Attacks, and Plaintiffs do not identify any such case.

Plaintiffs repeat the four bases for the emotional distress that each victim suffered: witnessing the deaths of each other, of other victims, and of their unborn child, and witnessing others' emotional distress. (Obj. at 3.) Again, granting solatium damages for any of the four sources of distress that the victims suffered would lead to damage awards duplicative of the damages granted for their pain and suffering and blur the line between these two types of compensable damages. *See Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15, 60 (D.D.C. 2020) (the compensatory damages award for IIED to the directly injured plaintiffs are, technically speaking, pain and suffering damages, whereas the compensatory damages award for IIED to the family member plaintiffs are solatium damages); *see also Elahi v. Islamic Republic of Iran*, 124 F.Supp.2d 97, 112 (D.D.C. 2000) (The decedent's estate may recover damages for pain and suffering if it can be proved that the decedent experienced pain and suffering prior to his death.)

Additionally, Plaintiffs argue that observing or witnessing a loved one's death is compensable and could be the basis for the tortfeasor's liability. (Obj. at 9–11.) This legal principle is valid, but Plaintiffs are still missing the mark and unable to justify why, in addition to the pain and suffering damages Plaintiffs already received, they could also receive additional solatium damages when Ms. Salie and Mr. Theodoridis did not survive each other. Plaintiffs acknowledge that the victims suffered severe mental distress up to the moment they died, but not after the death of each other. Reasserting this fact in Plaintiffs' objections does not address the issue that the appropriate type of damages for their injuries is not solatium damages. Plaintiffs are sufficiently compensated by an adequate award of compensatory damages. Many of the cases Plaintiffs cited do not involve solatium damages and are therefore distinguishable. See e.g. *Bovsun v. Sanperi*, 61 N.Y.2d 219, 461 N.E.2d 843 (1984) (mother and daughter seeking to recover for their emotional distress from witnessing the father's injury.)

8

Therefore, Plaintiffs' Objections do not convince the Court to hold Iran liable on Plaintiffs'

IIED and solatium claims.

## IV.    CONCLUSION

Plaintiffs' request for solatium damages is DENIED.  Magistrate Judge Netburn's Report

is ADOPTED.  The Clerk of the Court is directed to close the motions at:

- ECF No. 10326 in 03-MD-01570

- ECF No. 224 in 18-cv-11878

- ECF No. 256 in 18-cv-12387.

Dated: **JUL 3 1 2025**
New York, New York

SO ORDERED

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge