WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

August 19, 2025

VIA ECF

The Honorable George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

*In re Terrorist Attacks on Sept. 11, 2001*, **Case No. 1:03-md-1570-GBD-SN (S.D.N.Y.) — Supplemental Authority of** *Ashley v. Deutsche Bank Aktiengesellschaft*, **144 F.4th 420 (2d Cir. 2025)**

Dear Judge Daniels:

Al Rajhi Bank, which has a pending motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, respectfully calls to the Court's attention the recent decision by the U.S. Court of Appeals for the Second Circuit in *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025). In an extensive opinion, *Ashley* clarifies the high bar in this Circuit for aiding-and-abetting liability of banks under the ATA. In doing so, *Ashley* underscores that Plaintiffs have failed to show Al Rajhi Bank's purported "specific intent" for purposes of personal jurisdiction in their reliance on the standard for aiding-and-abetting liability.

*Ashley* also cements the outcome of the Bank's pending motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure as "foreordained." *See Ctr. for Reprod. Law & Pol'y v. Bush,* 304 F.3d 183, 194 (2d Cir. 2002) (explaining that a court may rule on merits before jurisdiction "where the outcome on the merits has been 'foreordained' by another case such that 'the jurisdictional question could have no effect on the outcome'") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998)); Def.'s Objs. to Mag. J.'s Op. & Order 3-14 (ECF No. 6724).

    1.    ***Ashley* Applies *Twitter*'s High Bar For Aiding-And-Abetting Liability To ATA Claims Against Banks**

*Ashley*, applying the Supreme Court's decision in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), is now the controlling precedent in the Second Circuit on aiding-and-abetting liability under the ATA, including against banks. *See Ashley*, 144 F.4th at 437 (in case against bank defendants, "revisit[ing] JASTA's sweep" in light of *Twitter*'s "new guidance"). In particular, *Ashley* holds that the "knowing and substantial" support necessary for aiding-and-abetting liability normally requires "conscious and culpable" support for the "particular terrorist attack" that injured the plaintiffs. *Id*. at 438-39 (quoting *Twitter*, 598 U.S. at 491, 504).

The Second Circuit held that extensive allegations against Standard Chartered Bank ("SCB"), Deutsche Bank, and Danske Bank were insufficient to plead the requisite "conscious and culpable" support for, and nexus to, attacks by alleged terrorist network "the Syndicate" on U.S. service members in Afghanistan. *Id*. at 427-28. The *Ashley* plaintiffs had alleged, for example, that SCB:

- Refused to stop providing financial services to two fertilizer companies *after* U.S. military leadership "urged" SCB to refrain and thereby "save American lives"; SCB was told that its services were essential to supplying the Syndicate with explosive material for Improvised Explosive Devices ("IEDs") being used to attack U.S. troops. *Id*. at 430.

- Processed U.S.-dollar transactions — including through SCB's branch in New York — for "well-known" and "internationally infamous" Syndicate money-launderers, and "retaliated against" employees who raised terrorism-financing concerns. *Id.*

- Entered into a deferred-prosecution agreement with the U.S. Attorney's Office for the District of Columbia and a consent order with the N.Y. Department of Financial Services to resolve terrorist-financing charges. *Id*. at 431. SCB was fined for failing to adhere to the consent order and "admitted to 'deficiencies in the anti-money laundering transaction surveillance system at its New York branch.'" *Id*.

The Second Circuit held that although SCB had been made "generally aware" of its indirect role in the Syndicate's bomb-making operations, the plaintiffs failed to allege that SCB "consciously or culpably sought to make the Syndicate's bombings succeed." *Id*. at 440. The Second Circuit pointed out in particular that the plaintiffs did not allege that SCB "directly aided the Syndicate in carrying out the bombings" or "took steps to help the downstream actors." *Id*.

In terms of "balancing 'the nature and amount of assistance on the one hand and the defendant's scienter on the other,'" *id.* at 439 (quoting *Twitter*, 598 U.S. at 492-93), the Second Circuit considered "the tenuous connection between the banking services and the terrorist attacks," and concluded that "SCB's services were not substantial." *Id*. at 440. Even if SCB knew that its services were being used to support terrorism, and those services did indeed benefit the Syndicate and were allegedly "critical" to its bombing campaign, the plaintiffs still could not overcome their failure to plausibly allege that SCB "culpably associated" itself with the bombings. *Id.*

The Second Circuit further concluded that Deutsche Bank's and Danske Bank's alleged "assist[ance]" with "money laundering that allowed [the] Syndicate to access funds in Afghanistan" did not make the banks liable for the Syndicate's terrorist attacks. *Id*. at 443. The Second Circuit rejected the argument that just because money is fungible any alleged support to purported terrorists must have been used to support terrorist acts. *Id*. at 443-44. Nor is it enough to allege support for a "terrorist organization's 'activities in general.'" *Id*. at 444 (quoting *Twitter*, 598 U.S. at 503). Rather, plaintiffs must show a "discernable nexus between the alleged money laundering and the attacks committed against Plaintiffs." *Id.*; *see also id.* at 448 ("[T]he defendant must aid and abet a specific act . . . .") (citing *Twitter*, 598 U.S. at 494).

Without a "concrete nexus" between the banks' financial services and the attack at issue, the plaintiffs needed to allege that the banks' "participation" in the Syndicate's activities was so "'pervasive, systemic, and culpable' such that we can say the defendant aided every wrongful act"

— a "high bar." *Id.* at 445 (quoting *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1566 (2025), in turn quoting *Twitter*, 598 U.S. at 502). The Second Circuit further held that, even if the banks' support had been sufficiently alleged as "pervasive" and "systemic," that support would still not be "culpable" because the purported money laundering operations were not "designed or performed *with the intent to aid* the Syndicate." *Id.* at 445 (emphasis added). Although the banks "opened their doors to criminals with ties to terrorists," they did not do so "in a manner that actively sought to 'associate[] themselves' with the Syndicate's 'operations' or to form 'a near-common enterprise' with the Syndicate." *Id.* at 445 (quoting *Twitter*, 598 U.S. at 502).

The Second Circuit also held as insufficient allegations that the banks ignored "red flags" as well as allegations pertaining to transactions occurring a year or more before the first attack. *Id.* at 446-47. Characterizing the alleged act of international terrorism as a "campaign" to expel Americans from Afghanistan also could not save the plaintiffs' claim, because "JASTA expressly provides that liability only attaches for aiding and abetting a particular terrorist attack." *Id.* at 448 (citing *Twitter*, 598 U.S. at 494).

  2. *Ashley* **Forecloses A Finding That Al Rajhi Bank Had "Specific Intent" To Further Al Qaeda's Terrorist Attacks Against The United States**

In opposing Al Rajhi Bank's pending renewed motion to dismiss for lack of personal jurisdiction, Plaintiffs argue (erroneously) that "allegations satisfying the aiding and abetting standard (including through indirect support and financial services) can give rise to an inference of the defendant bank's own 'intent to further [the organization's] terrorist activities.'" Pls.' Opp. Br. 39 (ECF No. 10152) (opposing Renewed Mot. to Dismiss (ECF Nos. 9785, 9786)); *see* Def.'s Reply Br. 18 (ECF No. 10403). But *Ashley* confirms that any purported "passive nonfeasance" by the Bank to prevent transactions by charities and their officials is insufficient for liability. *Ashley*, 144 F.4th at 443 (quoting *Smith & Wesson*, 145 S. Ct. 1556, 1568-69). Therefore, even under Plaintiffs' erroneous framing, a purported "failure to act" by the Bank would be insufficient for personal jurisdiction. Had the charities and their officials been *known* affiliates of terrorists (like the money launderers in *Ashley*), rather than "fronts" whose purported terrorist connections were *concealed*, *see* Mem. 29-30 (ECF No. 9786), any alleged "nonfeasance" or "failure to act" still could not show "conscious and culpable" support by the Bank for Al Qaeda, much less the 9/11 Attacks. *Ashley*, 144 F.4th at 436-37, 440-43; *see Twitter*, 598 U.S. at 481, 489, 491, 500, 503, 505.

The allegations against Al Rajhi Bank are far more attenuated than those that the Second Circuit found deficient in *Ashley*.

- Plaintiffs here do not allege or aver that prior to the 9/11 Attacks the Bank received any warning from U.S. or other officials that the Bank's financial services were critical to or even supporting ongoing terrorist attacks, much less that the Bank subsequently refused to change its purported conduct. *See Ashley*, 144 F.4th at 429-430; Mem. 18 (ECF No. 9786).

- Plaintiffs do not allege or aver that when the Bank processed transactions for certain charities before the 9/11 Attacks, the purported charity "fronts" (though not designated) were "well-known" and "internationally infamous" for funneling funds to Al Qaeda. *Ashley*, 144 F.4th at 430; Mem. 8 (ECF No. 9786).

The Honorable George Daniels
August 19, 2025

- Plaintiffs do not allege or aver that the Bank was charged, fined, or sanctioned in any way for deficiencies in the Bank's controls against terrorist financing or for any connection to terrorist financing, much less to the 9/11 Attacks. *See Ashley*, 144 F.4th at 431. Indeed, after likely the most exhaustive investigation of any criminal act in history, no designation or enforcement action has ever been taken — by the United States, United Nations, or any other governmental body — against Al Rajhi Bank or any Al Rajhi family member for any connection to the 9/11 Attacks or any sort of terrorism. Mem. 3-4 (ECF No. 9786).

As in *Ashley*, Plaintiffs do not allege or aver that Al Rajhi Bank "directly aided" the 9/11 Attacks or "took steps to help" the 9/11 attackers. *Ashley*, 144 F.4th at 440. And Plaintiffs' argument that the Bank should be liable for purportedly supporting al Qaeda's "campaign" of "targeting of the United States," Pls.' Opp. Br. 39 (ECF No. 10152) — like the "campaign and racketeering theory" alleged in *Ashley* — is "vast in scope," "unlinked to any culpable conduct," and "contravenes the statute's text and the JASTA aiding-and-abetting framework." *Ashley*, 144 F.4th at 448.

   3.   *Ashley* **Further Establishes That Dismissal Of Plaintiffs' Complaint For Failure To State A Claim Is Foreordained**

Because Plaintiffs do not allege or aver — after three years of extensive jurisdictional discovery — facts that give rise to a plausible inference that Al Rajhi Bank provided "conscious and culpable support" for the 9/11 Attacks, *Ashley* only underscores that the outcome of the Bank's pending Rule 12(b)(6) motion is foreordained and the motion should be granted. *See* Mot. to Dismiss (ECF Nos. 3702, 3703); Def.'s Renewed Mot. (ECF Nos. 5384, 5385); Def.'s Objs. (ECF No. 6724).

This Court has *already* dismissed complaints against Al Rajhi Bank for failure to state a claim based on allegations that are substantively identical to those in the Amended Complaint. In the first actions filed against the Bank beginning in 2002, the Bank moved for dismissal under both Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. This Court dismissed the claims under Rule 12(b)(6) without addressing the Bank's motion under Rule 12(b)(2); the Second Circuit affirmed, and the Supreme Court, after calling for the views of the Solicitor General — and consistent with those views — denied the plaintiffs' petition for certiorari. *See In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks I")*, 349 F. Supp. 2d 765, 832-33 (S.D.N.Y. 2005), *aff'd*, 714 F.3d 118, 124-25 (2d Cir. 2013), *cert. denied* 134 S. Ct. 2870 (2014).

Plaintiffs' current allegations against Al Rajhi Bank are even weaker than the allegations the Court previously deemed insufficient under Rule 12(b)(6). The pending actions against the Bank filed beginning in 2016 (largely by the same plaintiffs' counsel as in the previously dismissed cases) were initially based on allegations nearly identical to those in the prior cases. *See* Mot. to Dismiss Ex. 1 (Aug. 21, 2017) (ECF No. 3703-1) (comparing allegations). The Bank again moved for dismissal under both Rule 12(b)(2) and Rule 12(b)(6). In a decision resolving the claims against Al Rajhi Bank together with those against National Commercial Bank and Saudi Binladin Group, this Court dismissed all three defendants under Rule 12(b)(2) and denied jurisdictional discovery — without addressing Al Rajhi Bank's Rule 12(b)(6) arguments. *In re Terrorist Attacks on September 11, 2001*, 295 F. Supp. 3d 416, 421 n.5, 429, 432 (S.D.N.Y. 2018). Plaintiffs appealed only the dismissal of Al Rajhi Bank under Rule 12(b)(2). The Second Circuit remanded to permit jurisdictional discovery against the Bank. *Underwriting Members of Lloyd's Syndicate 2 v.*

4

The Honorable George Daniels
August 19, 2025

**WHITE & CASE**

*Al Rajhi Bank*, 779 F. App'x 66, 69 (2d Cir. 2019). Yet after three years of extensive jurisdictional discovery, Plaintiffs were forced to *abandon* many of their prior allegations. *See* Mem. 13-20 (ECF No. 9786).

Inasmuch as this Court has already held in a ruling affirmed by the Second Circuit that the prior allegations cannot satisfy the pre-*Ashley* standard for aiding-and-abetting liability, it is necessarily foreordained that Plaintiffs' scaled-back, *post*-jurisdictional discovery allegations cannot clear the *higher* bar now set by *Twitter* and *Ashley*.

This Court should now decide Al Rajhi Bank's pending Rule 12(b)(6) motion (*see* Mot. to Dismiss (ECF Nos. 3702, 3703), Def.'s Renewed Mot. (ECF Nos. 5384, 5385)) or the Bank's Objections to the Magistrate Judge's order declining to take up that motion (*see* Def.'s Objs. (ECF No. 6724), Def.'s Reply Mem. (ECF No. 6807)), even while the Bank's renewed motion to dismiss under Rule 12(b)(2) remains pending. As Magistrate Judge Netburn acknowledged, the Second Circuit's "endorsement" of "resolving a merits question before a jurisdictional question" gives this Court "latitude [that] promotes judicial efficiency and avoids requiring courts to render advisory opinions on novel or complex jurisdictional questions where the merits outcomes have been resolved under highly similar circumstances." Order 9 (ECF No. 6681); *see id.* at 8 ("The Court of Appeals, applying *Steel Co.*, has also held that a court may reach a merits question before addressing jurisdictional challenges where the merits outcome has been 'foreordained' by another case such that 'the jurisdictional question could have no effect on the outcome,' and so long as the court 'd[oes] not use the pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed.'") (quoting *Ctr. for Reprod. Law & Policy*, 304 F.3d at 194, in turn quoting *Steel Co.*, 523 U.S. at 98).

In light of *Ashley*, this Court need not wait any longer to dismiss under Rule 12(b)(6) Plaintiffs' resurrected and deficient claims, which the Bank has been repudiating for over two decades. The Bank would welcome the opportunity to submit further briefing on why *Ashley* only confirms that the outcome of the Bank's pending Rule 12(b)(6) motion is foreordained, to the extent further briefing would be helpful for the Court.

Al Rajhi Bank expressly reserves all rights and defenses, including as to this Court's lack of personal jurisdiction.

Respectfully submitted,

s/ *Christopher M. Curran*

Christopher M. Curran
Nicole Erb
Nicolle Kownacki
Reuben J. Sequeira
Michael Mahaffey

*Counsel for Al Rajhi Bank*

cc:    Counsel of Record (via ECF)