**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

**whitecase.com**

August 22, 2025

VIA ECF

The Honorable Sarah J. Netburn
United States Magistrate Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, New York 10007

*In re Terrorist Attacks on Sept. 11, 2001*, **Case No. 1:03-md-1570-GBD-SN (S.D.N.Y.):**
**Sudan's Positions on Disputed Provisions of Proposed Deposition Protocol**

Dear Judge Netburn:

Pursuant to this Court's August 6, 2025 Order (ECF No. 11139), Sudan and Plaintiffs write to jointly propose a deposition protocol to govern depositions in the cases against Sudan.[1] The Parties met and conferred on July 28, 2025 and August 19, 2025, and reached agreement on the vast majority of provisions, but were unable to reach agreement on three provisions. The Parties set forth their respective positions on the disputed provisions below.

**I.      Sudan's Positions on Disputed Provisions**

Sudan recognizes the care and consideration that this Court has already put into resolving deposition disputes in this MDL, including in the protocols governing depositions for (i) the

---

[1] *Ashton et al. v. Al Qaeda, and the Republic of Sudan et al.*, Case No. 02 Civ. 6977; *Nolan et al. v. Republic of the Sudan*, Case No. 20 Civ. 10720; *Parker et al. v. Republic of the Sudan*, Case No. 20 Civ. 10657; *Betru et al. v. The Republic of Sudan*, Case No. 20 Civ. 10615; *Clarke et al. v. The Republic of the Sudan*, Case No. 23 Civ. 07736; *Burnett et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849; *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03 Civ. 6978; *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970; *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 04 Civ. 1922; *Estate of John P. O'Neill, Sr., et al. v. Republic of the Sudan, et al.*, Case No. 18 Civ. 12114; *DeRubbio, et al. v. Islamic Republic of Iran*, Case No. 18 Civ. 05306; *Morris, et al. v. Islamic Republic of Iran*, Case No. 18 Civ. 05321; *Bernaerts, et al. v. Islamic Republic of Iran*, Case No. 19 Civ. 11865; *Aronow v. Republic of Sudan*, Case No. 20-cv-7733; *King, et al. v. Islamic Republic of Iran*, Case No. 22 Civ. 05193; *Strauss v. Islamic Republic of Iran*, Case No. 22 Civ 10823; *Perry et al. v. Republic of the Sudan*, Case No. 23 Civ. 07391; *DiNardo et al. v. Republic of the Sudan*, Case No. 23 Civ. 07328; *Adler et al. v. Republic of Sudan*, Case No. 23 Civ. 07164; *Fennelly, et al. v. Islamic Republic of Iran*, Case No. 23 Civ. 10824; *Kone, et al. v. Islamic Republic of Iran*, Case No. 23 Civ. 05790; *Kelly, et al. v. Islamic Republic of Iran, et al.*, Case No. 23 Civ. 7283; *Lopez, et al. v. Islamic Republic of Iran, et al.*, Case No. 23 Civ. 08305; *Jelnek, et al. v. Islamic Republic of Iran*, Case No. 24 Civ. 05520; *Lum, et al. v. Islamic Republic of Iran*, Case No. 24 Civ. 07824.

defendants in discovery as of January 2018 (ECF No. 3894), (ii) the Kingdom of Saudi Arabia and Dallah Avco (ECF No. 6204), and (iii) Al Rajhi Bank (ECF No. 9210). In drafting the attached proposed deposition protocol, Sudan endeavored to use those prior protocols as models and to depart from them only where necessary to tailor the provisions to the unique circumstances in this action. For example, the Parties have largely agreed on more robust provisions governing remote depositions. But where there is no good cause to depart from the provisions in this Court's previous Orders, Sudan proposes leaving those intact. In particular, as discussed further below, Sudan opposes Plaintiffs' proposals to strike the presumptive seven-hour time limit for depositions, to *double* deposition time when interpreters are involved (a proposal this Court has already twice rejected), and to mandate surveillance of remote deposition rooms.

**Paragraph 38: Plaintiffs' Extraordinary Demands for Video Surveillance of Depositions Should Be Rejected**

Sudan categorically rejects Plaintiffs' extraordinary demand for video surveillance of the *entire room* for both in-person and remote depositions. Plaintiffs have provided no valid justification for this demand, which is unnecessary and has not been included in any other MDL protocols. Plaintiffs' highly unusual demand is an insult to the professionalism and ethics of counsel for Sudan as officers of the court. Moreover, as Sudan has explained to Plaintiffs, this requirement could pose logistical challenges for remote depositions from Sudan, potentially including depositions of incarcerated individuals where the only feasible option for cameras will be those built into the laptops being used. A default requirement to have separately mounted, internet-connected, remotely controlled cameras imposes an undue burden on Sudan where security and logistics are already challenging. To the extent Plaintiffs determine that particular circumstances warrant broader video surveillance, they can submit an application to the Court to the extent the matter is not resolved by the Parties.

**Paragraph 64: Plaintiffs' Demand for Unlimited Deposition Time Should Be Rejected**

In demanding, preemptively, that Plaintiffs be allowed *unlimited* deposition time for *all* witnesses, Plaintiffs reveal their intention to conduct an unfocused, overreaching, and boundless fishing expedition in their witness depositions. The Court should reject this blatant circumvention of the federal rules. Sudan's proposal is consistent with every other protocol entered in this MDL. *See* ECF No. 3894 at ¶ 75 ("All questioning by the noticing side shall be limited to seven (7) hours."); ECF No. 6002-1 at ¶ 40 (same); ECF No. 9027-1 at ¶ 52 (same). There is no merit to Plaintiffs' contention that additional time is warranted because Sudan is supposedly not producing documents. To begin, as Plaintiffs know, Sudan has produced thousands of pages of documents, notwithstanding the ongoing civil war and resulting document destruction in Khartoum. Plaintiffs have already obtained millions of pages of document discovery in this MDL, and the Parties anticipate obtaining still more documents in response to subpoenas on the U.S. government. Indeed, Plaintiffs insisted in 2020 that they were ready to proceed to an evidentiary hearing *without* needing further discovery, based on the supposed "robust body of evidence" they had obtained to that point, including from the U.S. government. *See* Aug. 5, 2020 Tr. 16:3-13. Plaintiffs will thus not be "shooting in the dark," as they have recently contended (Aug. 6, 2025 Tr. 1-5). Any difficulties in finding and producing documents is not a sufficient reason to disregard the federal

WHITE & CASE

The Honorable Sarah J. Netburn
August 22, 2025

rules governing deposition conduct and time limits, which have never been contingent on the availability of documents.

**Paragraph 69: This Court Has Twice Rejected Plaintiffs' Request for Double Deposition Time Where An Interpreter Is Required, And Should Do So Again**

Sudan's proposal that time limits for depositions requiring interpreters be increased by half (to 10.5 hours) is consistent with all three deposition protocols ordered by this Court in this MDL. *See* ECF No. 3894 at ¶ 80; ECF No. 6204 at 2; ECF No. 9210 at 26. Twice already in this MDL, Plaintiffs have requested that deposition limits instead be doubled, and twice this Court has rejected that request. *See* ECF No. 6204 at 2 (rejecting Plaintiffs' proposal at ECF No. 6002-1 ¶ 42); ECF No. 9210 at 26 (rejecting Plaintiffs' proposal at ECF No. 9027-1 ¶ 56). Plaintiffs provide no basis to disturb the consistent practice in this MDL. Plaintiffs' demand to double the time limits is particularly egregious (and absurd) given that Plaintiffs simultaneously demand, under Paragraph 64, that this Court ignore the federal rules and allow depositions to proceed with no time limits at all. The Court should reject Plaintiffs' request a third time. Consistent with the Parties' practice, Sudan will confer with Plaintiffs on reasonable accommodations should compelling circumstances arise.

## II.     Plaintiffs' Positions on Disputed Provisions

**Plaintiffs' Position Statement for Para. 38 (Additional Camera):**

Plaintiffs anticipate that at least a number of the Sudan-based witnesses will testify remotely from Sudan, from locations where no U.S. counsel will be present. It is equally likely, as in most of the remote depositions conducted in earlier proceedings in this MDL, that no court reporter or tech will be physically present in the room with the witnesses. Indeed, Sudan's U.S. lawyers confirmed in the meet-and-confer that they cannot travel to Sudan in the present circumstances, and thus are unlikely to be physically present in the room with the witnesses.

The witnesses identified so far include former Sudanese officials who personally directed Sudan's program of state support of terrorism, and who are alleged international war criminals, spies, and men who have led coups against their own government. During their time in power, these very individuals engaged in conduct demonstrating a lack of respect for international law and U.S. courts, including ignoring the authority of this court and other courts in other terrorism cases. They are not themselves subject to the jurisdiction of U.S. courts and would face no consequence for any violations of the Rules. In addition, if the deposition room is unattended by any U.S. attorney, no one in the room will have the knowledge or motivation to reinforce the rules and decorum for depositions under the Federal Rules of Civil Procedure. For these and other reasons, Plaintiffs have good reason to be concerned about whether, if left unscrutinized, they will respect or follow the rules for U.S. depositions.

To protect the integrity of the deposition process and to reduce disputes about events in the room, Plaintiffs have proposed to include in the text of Para. 38 a provision that allows for an additional camera in the deposition room when no questioning attorney is physically in the room with the witness. Sudan's opposition has been that there is no basis or precedent for the provision, that it

The Honorable Sarah J. Netburn
August 22, 2025

constitutes improper surveillance, and adding a camera presents unreasonable logistical hurdles. But there are good bases and precedent for doing so, the so-called surveillance is no more than would exist if counsel were present in the room, and there is nothing especially challenging about adding an additional camera feed to the room (it has previously been done with success).

*First*, the basis for adding a camera is apparent from the circumstances outlined above—namely, the value in protecting the integrity of the process and reducing the room for disputes, particularly in the context of fully remote depositions of the witnesses from Sudan. Under the circumstances, a second camera in a fully remote context is an efficient means of ameliorating unnecessary disputes about witness coaching or the presence of unauthorized or unidentified individuals in the room during the deposition.

*Second*, there is precedent inside the MDL for the practice and in other litigations for including the provision in remote deposition protocols. While neither the previous 2018 MDL protocol order this Court entered to govern all fact witness depositions in this MDL (ECF No. 3894), nor the orders this Court entered to address disputes concerning depositions in the context of Saudi Arabia or Al Rajhi Bank (ECF Nos. 6204, 9210), addressed this issue, there is nonetheless precedent in the MDL for using such additional cameras. As an aside, though parties in this MDL have a history of conducting remote depositions, the PECs' negotiations on previous protocol issues occurred before COVID restrictions set in, when the issue of remote depositions became more prominent. The PECs negotiated the 2018 MDL deposition protocol order in 2017/2018 and negotiated the disputes in the context of the protocols to apply in the depositions of the KSA-related witnesses in 2019/2020. (The ARB issues were addressed by a subset of plaintiffs suing ARB, not by the PECs, and applied to only two fact witnesses.) Nonetheless, Plaintiffs' counsel recall that a second camera was used in at least some depositions of fact witnesses when plaintiffs' counsel were fully remote from witnesses and a technologist was available on site with the witness to set up the second camera.

The proposal Plaintiffs offered also has precedent in a number of other MDL and mass tort litigations, and has become more commonplace since COVID restrictions resulted in more proceedings being conducted remotely. The text Plaintiffs have proposed is nearly verbatim from Pretrial Order No. 159 ("Remote Deposition Protocol") in MDL No. 2754, *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation*, 16-MD-2724 (E.D. Pa., Feb. 12, 2021), Doc. No. 1689 ("Remote Deposition Protocol") (Hon. Cynthia M. Rufe, U.S.D.J.), page 4, § 6 ("Additional cameras should show the witness's attorney and a view of the room showing both the witness and their counsel to other participants in the conference; these views need not be recorded.").

Other MDLs and mass tort cases have entered orders with similar provisions to protect the integrity of the deposition room. *See, e.g., In Re: Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924, 20-MD-2924 (S.D. Fla. Oct. 5, 2020) Pretrial Order # 48 ("Remote Deposition Guidelines")(Hon. Robin L Rosenberg, U.S.D.J.), ¶ 22 ("If any counsel for the witness attends the deposition in person, all in attendance shall also log into the Remote Deposition Videoconference so that all Participants can see and hear the counsel for the witness or otherwise maintain a camera view showing both the witness and counsel (or any other persons assisting in the deposition, such as a paralegal or legal assistant)."); *In re Proton-Pump Inhibitor Products Liability Litigation*,

The Honorable Sarah J. Netburn
August 22, 2025

MDL No. 2789, 2:17-md-02789-CCC-LDW, CMO No. 40, Doc. No. 595 (D.N.J. May 20, 2020) (Hon. Claire C. Cecchi, U.S.D.J.), ¶ 11 ("If counsel for the witness attends the deposition in person, that counsel shall also log into the Remote Deposition Videoconference, so that all participants can see and hear counsel for the witness, or otherwise maintain a camera view showing both the witness and counsel (or any other persons assisting in the deposition, such as a paralegal or legal assistant)."); *City Of Huntington V. AmerisourceBergen Drug Corp., et. al*., Civil Action No. 3:17-01362 (S.D.W.Va. June 11, 2020), Doc. No. 564, ("Order Establishing Remote Deposition Protocol Due to COVID-19")(Hon. David A. Faber / Christopher C. Wilkes, Special Master), page 8, ¶ 6.B. ("… the noticing party may provide for a second video camera to record the actions of the deponent's attorney and/or any other Participants present in the same room as the deponent during times that the deponent is on the record. Any such additional camera must be turned off during breaks and will not be considered part of the official record unless separately introduced as evidence in support of a noticed motion directed at the conduct of the lawyer during the deposition.").

*Third*, Sudan's complaint that the added camera constitutes unwarranted surveillance becomes nonsensical when one considers that the additional camera would merely provide remote counsel with the ability to see essentially the same things that would be visible at an in-person deposition.

*Fourth*, once Plaintiffs pointed out to Sudan's counsel the feebleness of its "surveillance" claim, Sudan pivoted to an equally frail claim that the added camera presented "logistical" challenges. The in-person depositions often have multiple live feeds running on attendees' laptops. There is nothing logistically challenging about adding one more camera feed to a remote deposition location. Here, Sudan has made much of the fact that it has established a "Committee" to facilitate the discovery process, and if the "Committee" can arrange for a primary camera, it can make the modest accommodations for a second camera as well.

As the Court is undoubtedly aware, issues of alleged deposition misconduct have been raised in this MDL previously. Most notably, in October 2024, the Court heard allegations of misconduct in the July 22, 2021 deposition of an expert. ECF No. 10416. The allegations, based on an anonymous tip, included that two unannounced persons attended the deposition, which was conducted fully remote (outside the physical presence of questioning counsel or a reporter) and that the expert received cues to assist in answering questions. Indeed, the allegations about the unannounced participants proved true. Importantly, if a camera of the type Plaintiffs propose here (and required in other MDLs) had been used in that fully remote deposition, the Parties and the Court may have avoided the motion practice necessitated by the allegations.

**Plaintiffs' Position Statement for Para. 64 (Conferring on Time Limits vs. Presumptive Limit):**

A departure from the normal presumptive seven hour limit is likely to be appropriate in most cases given Sudan's failure to produce any documents from its own files, the limited number of witnesses available to be deposed (due to the passage of nearly two decades while Sudan ignored this litigation), and the memory issues inherent in deposing witnesses about issues that occurred decades ago without contemporaneous documents (again, resulting from Sudan's deliberate failure to timely appear). However, rather than proposing a set presumptive limit, Plaintiffs propose that

WHITE & CASE

The Honorable Sarah J. Netburn
August 22, 2025

the Parties be required to meet and confer before or immediately after noticing depositions, concerning the duration of the deposition. If the Parties cannot reach agreement, the noticing parties would then be required to submit the issue to the Court for resolution.

Sudan has urged that these depositions can serve to mitigate the prejudice from its inability to comply with its document discovery obligations (again, a product of Sudan's delay); but it should not be permitted to insist that the depositions proceed under parameters that will impair a full opportunity to question the witnesses and learn what they know, in the absence of tools that would ordinarily be available to prepare for deposing witnesses. Sudan should not be permitted to benefit further from its discovery failure by limiting tools that ameliorate the damage its failures caused.

Circumstances here that strongly weigh against a presumptive seven-hour limit include that: Sudan has produced no internal documents, neither the U.S. government agencies nor any third parties have produced any documents (and we do not yet know what, if anything, they might produce), and the depositions are anticipated to proceed with only the relatively few documents that have been made publicly available. Under the circumstances, with only limited information turned over to Plaintiffs in discovery, more than usual time will be necessitated to address basic information about witnesses, learning about the witness, discovering areas about which the witness has knowledge, assessing the witness's biases and credibility, and the many other aspects that lawyers often have the ability to glean some insight from documents in planning to conduct a deposition.

Sudan has countered Plaintiffs proposal during the Parties' meet-and-confers by simply pointing to the standard presumption in the Federal Rules and countering that Sudan has produced documents. However, for the reasons explained above, the one-size-fits-all presumption from the Federal Rules is ill suited for the depositions of the Sudanese witnesses, and the documents that Sudan has produced are almost entirely public documents, are wildly duplicative, and contain zero documents from Sudan's own files. As Sudan has already acknowledged, Sudan has no documents and does not intend to produce a single piece of paper from its own files.

**Plaintiffs' Position Statement for Para. 69 (Interpreter Multiplier for Non-Realtime Interpretation):**

Plaintiffs have opposed Sudan's proposal that applicable time limits should be increased by only fifty percent where a witness is testifying through use of an interpreter. Rather, as this Court has previously found reasonable (May 21, 2020 H'rg Tr. 144 (noting that, where interpretations are done serially, "taking twice as long for a seven-hour deposition is reasonable")), Plaintiffs have proposed that the time limit for depositions conducted through interpreters should be doubled, because in those depositions every question and answer is asked and answered at least twice (and often more). *See also id.* 143 (this Court finding, "[i]f it is turning out that . . . questions and answers [are being] staggered and not real-time interpretation, yes. It sounds to me that it's going to have to be double because you're asking two questions. You're asking a question in English and then a question in Arabic.").

Sudan premises its proposal on the Court's 50% multiplier included in the previous MDL protocol order (ECF No. 3894), but the Court later acknowledged a misperception as to how interpretations are conducted in practice during the live depositions in the MDL. *See* May 21, 2020 H'rg Tr. 143

**WHITE & CASE**

The Honorable Sarah J. Netburn
August 22, 2025

(indicating that the Court understood interpretations were being done similar to what she has experienced in her courtroom, where translators "do something close to real time."). In the context of the depositions in this MDL, for reporters and translators to hear the distinct speakers speaking different languages and keep a clear record, both the reporters and interpreters have insisted on only one speaker speaking at a time, including the person being interpreted and the interpreter. As a consequence, every question and answer is asked and answered first in the speaker's native language and then again by the interpreter, necessitating that the question-and-answer period for each deposition is at least twice as long. And that calculation does not account for the myriad times that additional time is consumed clarifying interpretations to keep all participants together and the record as clear as possible.

Sudan has pointed to another protocol that its counsel negotiated with a subset of plaintiffs in this MDL concerning claims versus Al Rajhi Bank, however, the PECs as a collective body did not negotiate that protocol, most of the members of the PECs never saw the negotiations or participated in drafting the filings regarding that protocol, and never saw the results until they were filed on the Court's docket. Those provisions governed only two fact witness depositions concerning Al-Rajhi Bank, and neither witness testified through an interpreter.

The net result here, if Sudan's proposals are accepted is that Plaintiffs would be required to depose witnesses who testify through an interpreter, where Plaintiffs have been afforded no document discovery about the witness from Sudan (or any other source) to learn basic biographical, demographical, background information about the witness, discover the areas of the witness's knowledge, test the witness's biases and credibility, while also attempting to obtain substantive testimony about the witness's areas of knowledge. And because the witness is testifying through an interpreter, presuming the Court enforces a presumptive seven-hour limit with a fifty percent addition, Plaintiff total time with the witness would effectively become only five hours and fifteen minutes of question-and-answer time with the witness. (Seven hours multiplied by 1.5 and then divided in half due to the duplication of every question and answer). In those instances, Plaintiffs would effectively be penalized half of their time with the witness because the witness testified through an interpreter.

Accordingly, Plaintiffs ask that the time limit for depositions through translators be at least doubled.

Respectfully submitted,

/s/ *Nicole Erb*
Christopher M. Curran
Nicole Erb
Claire A. DeLelle
Nicolle Kownacki
Celia A. McLaughlin
*Counsel for the Republic of the Sudan*
cc:   Counsel of Record (via ECF)