**WHITE & CASE**

September 3, 2025

VIA ECF

The Honorable George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

*In re Terrorist Attacks on Sept. 11, 2001*, Case No. 1:03-md-1570-GBD-SN (S.D.N.Y.) — **Supplemental Authority of** *Ashley v. Deutsche Bank Aktiengesellschaft*, **144 F.4th 420 (2d Cir. 2025)**

Dear Judge Daniels:

Al Rajhi Bank is compelled to respond to Plaintiffs' letter dated August 27, 2025 ("Pls.' Opp'n Ltr." (ECF No. 11171)), regarding the Second Circuit's decision in *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025), to correct Plaintiffs' misrepresentations of the record.

Plaintiffs' eye-catching reference in their letter (at 5 (emphasis added)) to a purported "detailed and exacting accounting of ARB's illicit and irregular services *to al Qaeda*" that were supposedly "*designed to aid*" Al Qaeda's terrorism is a gross mischaracterization. When pressed by this Court at the December 10, 2024 hearing on the Bank's renewed motion to dismiss, Plaintiffs acknowledged that their "theories" are "predicated on" the Bank's provision of financial services *to Al Haramain and IIRO*. Dec. 10, 2024 Hr'g Tr. 71:1–17; *see also id.* at 108:23–25 ("THE COURT: If [culpable conduct] wasn't to be found there [in the Bank's services to Al Haramain and IIRO], there is not a good chance it was to be found somewhere else. MR. CARTER: No."). Further probing by the Court revealed that Plaintiffs' supposed evidence of the Bank's purported knowledge of a connection between Al Haramain's head office and Al Qaeda was nothing more than rhetorical bootstrapping:

> THE COURT: What information did [Al Rajhi Bank] have relevant here? MR. CARTER: Your Honor, they know specifically who [Aqil al] Aqil is. They are dealing with him -- THE COURT: Who is he? MR. CARTER: Aqil is the head of Al Haramain, who's running it -- THE COURT: Okay. MR. CARTER: -- as an operation to support terrorism at a time when it -- THE COURT: *What is the evidence that they knew that?* MR. CARTER: Well, your Honor, the evidence, again, is *they know he's doing -- engaging in illegal activity* here.

Tr. 97:16–98:3 (emphasis added).

Nothing in the record shows that the Bank knew that Al Haramain's head office supposedly was secretly supporting Al Qaeda or that the Bank processed transactions clearly marked for Al Haramain with the intent to help Aqil launder money, let alone for Al Qaeda. *See, e.g.*,

Tr. 72:11–19 (Plaintiffs' counsel acknowledging: "Your Honor, you are not going to see someone document this in an internal written record that we've decided to exempt these entities from, you know, all the basic money laundering requirements"). To the contrary, the undisputed record shows that the account at issue was in fact listed as Al Haramain's "General Account" and that Aqil was expressly authorized by the Saudi government to process transactions on Al Haramain's behalf. *See* Tr. 31:22–34:7, 113:19–117:23 (rebutting Plaintiffs' hypothesis of "suspicious" transactions for Al Haramain through Aqil, and referring the Court to the undisputed record, including a contemporaneous instruction from a senior government official in charge of religious compliance directing donors to deliver funds directly to Aqil as the general manager of Al Haramain) (referencing Pls.' Ex. 100 at ARB-38535 ("Statement of the Al-Haramain Islamic Foundation's Accounts with Al Rajhi Banking & Investment Corp."), and ARB Ex. 5 at ARB-38775 (Ltr. from KSA Gen. Pres. of Scholarly Research)). Thus, any purported failure by the Bank to report Aqil transactions, *see, e.g.*, Tr. 106:13–16, is not evidence of an intent to aid Al Qaeda.

Furthermore, the undisputed record demonstrates that at the time of the 9/11 Attacks Al Haramain's head office was known — including by then-U.S. Treasury Secretary O'Neill — to be "dedicated to the promotion of Islamic teachings" and as the "United Way of Saudi Arabia," not as a charity linked to Al Qaeda. Tr. 23:24–25:23 (counsel for the Bank quoting Pls.' Ex. 56, "Remarks By Treasury Secretary Paul O'Neill On New U.S.-Saudi Arabia Terrorist Financing Designations," dated March 11, 2002 (explaining designation of Al Haramain branches but not Saudi headquarters)); Pls.' Ex. 44, 9/11 Comm'n Staff Monograph 118 (reporting U.S. officials' description of Al Haramain).

Plaintiffs (at 2) rely on *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), to disavow Plaintiffs' prior position that the intent required for personal jurisdiction can be inferred from "allegations satisfying the aiding and abetting standard." Pls.' Opp. Br. 39 (ECF No. 10152); *see also* Tr. 77:18–21 ("[T]he bank's intent, as your Honor observed in the DIB decision *has to be viewed* within the perspective of the aiding and abetting claims themselves, and those claims can obviously give rise to an inference of intent.") (emphasis added). Contrary to Plaintiffs' suggestion, *Fuld* does not eliminate the specific-intent requirement for personal jurisdiction. *See* ARB Ltr. dated June 27, 2025, at 4–6 (ECF No. 11043) (demonstrating that personal jurisdiction under *Fuld* requires that a defendant have "direct[ed] their conduct at the United States") (quoting JASTA § 2(a)(6)).

Plaintiffs' retreat from their prior position, however, is hardly surprising given that *Ashley* now establishes that a "failure to act" is insufficient on its own to give rise to an inference of "conscious and culpable" support for the terrorist attack at issue, much less specific intent to support terrorism against the United States. *See* ARB Ltr. dated August 19, 2025, at 3 (citing *Ashley*, 144 F.4th at 436-37, 440-43, and *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 481, 489, 491, 500, 503, 505 (2023)). As alluded to above, Plaintiffs conceded that their case largely hinges on the Bank's purported failure to report suspicious transactions by Al Haramain's director Aqil al Aqil. *See* Tr. 109:20–25 ("THE COURT: Well, I guess let me ask it this way: If they [Al Rajhi Bank] permitted these transactions but reported them, you wouldn't be here suing? MR. CARTER: We would be having a different conversation entirely, your Honor, for sure. THE COURT: Right."). Such a "failure to report" is plainly insufficient under *Ashley*.

**WHITE & CASE**

The Honorable George Daniels
September 3, 2025

The remainder of Plaintiffs' letter (at 4-5) tries to rehabilitate their other deficient factual allegations, *see* ARB Ltr. dated August 19, 2025, at 4, by reference to, for example, uncorroborated CIA reports, alleged charitable donations by the Bank's former Chairman (who was previously dismissed from this litigation and never sanctioned or charged for alleged links to terrorism), alleged activities by the SAAR Foundation (also previously dismissed from this litigation and never sanctioned or charged for alleged links to terrorism), and unsubstantiated purported "support" by the former Chairman for "jihadist scholars." *See* ARB Counteraverment ¶¶ 133–187, 204–272, 390–428, 429–488, 509–534, 535–576 (ECF No. 9872) (rebutting Plaintiffs' unsupported allegations). But by attempting to thread together speculative and attenuated purported links between the Bank and terrorism, Plaintiffs assert *exactly* the sort of "sweeping theor[y] of international criminal conspirac[y]" that *Ashley* rejected. Pls.' Opp'n Ltr. 4 (quoting *Ashley*, 144 F.4th at 439).

In sum, dismissal of Plaintiffs' complaints against the Bank under either Rule 12(b)(2) or Rule 12(b)(6) is all the more warranted after *Ashley*.

Respectfully submitted,

s/ *Christopher M. Curran*

Christopher M. Curran
Nicole Erb
Nicolle Kownacki
Reuben J. Sequeira
Michael Mahaffey

*Counsel for Al Rajhi Bank*

cc:     Counsel of Record (via ECF)