# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |

This document relates to:
*Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*, 1:04-cv-1076 (GBD)(SN)

## NON-U.S. NATIONALS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
## PARTIAL FINAL DAMAGES JUDGMENTS AGAINST THE TALIBAN

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
7 Times Square, 15th Floor
New York, NY 10036
Tel: (212) 278-1000
Fax: (212) 278-1733
Email:  jgoldman@andersonkill.com
          bstrong@andersonkill.com
          agreene@andersonkill.com
*Attorneys for Plaintiffs*

Dated:   New York, New York
            September 17, 2025

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. PROCEDURAL BACKGROUND.................................................................... 3

    **A.**  Applicable Orders ................................................................................ 3

    **B.**  Related Cases ...................................................................................... 4

    **C.**  Moving Plaintiffs ................................................................................ 7

III. THE MOVING PLAINTIFFS HAVE LIABILITY JUDGMENTS ................................ 7

IV. DAMAGES SHOULD BE AWARDED AGAINST THE TALIBAN JOINTLY
    AND SEVERALLY.......................................................................................... 7

    **A.**  Background ........................................................................................ 8

    **B.**  Moving Plaintiffs with Claims Arising Under the Common Law Seek
    Application of Uniform Damages Principles as Those Employed Under
    the ATA. ............................................................................................ 13

    **C.**  Economic Damages for Estates ........................................................... 14

    **D.**  Punitive Damages ............................................................................... 16

    **E.**  Prejudgment Interest .......................................................................... 17

V.  CONCLUSION.............................................................................................. 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstead v. National RR Passenger Corp.*,
   954 F. Supp. 111 (S.D.N.Y. 1997) ...................................................................................9

*Ashton v. al Qaeda Islamic Army*,
   02-CV-6977 (GBD)(SN) ..................................................................................... *passim*

*Baker v. Socialist People's Libyan Arab Jamahirya*,
   775 F. Supp. 2d 48 (D.D.C. 2011) ................................................................................17

*Bauer v. Al Qaeda Islamic Army*,
   02-CV-7236 (GBD)(SN) ..................................................................................... *passim*

*Dunefsky v. Montefiore Hosp. Med. Ctr.*,
   162 A.D.2d 300 (1st Dep't 1990) ..................................................................................13

*Est. of Heiser v. Islamic Republic of Iran*,
   466 F. Supp. 2d 229 (D.D.C. 2006) ................................................................................5

*Estate of Heiser v. Islamic Rep. of Iran*,
   659 F. Supp. 2d 20 (D.D.C. 2009) ................................................................................12

*Heslin v. County of Greene*,
   14 N.Y.3d 67 (2010) ......................................................................................................13

*Jenco v. Islamic Rep. of Iran*,
   154 F. Supp. 2d 27 (D.D.C. 2001) ................................................................................10

*In re Sept. 11 Litig.*,
   802 F.3d 314 (2d Cir. 2015)...........................................................................................17

*In re Sept. 11 Litig.*,
   811 F. Supp. 2d 883 (S.D.N.Y. 2011).............................................................................12

*Stethem v. Islamic Rep. of Iran*,
   201 F. Supp. 2d 78 (D.D.C. 2002) ................................................................................10

*Zonshayn v. Sackler Sch. of Med. (New York)*,
   No. 21 CIV. 5720 (AT), 2023 WL 24379 (S.D.N.Y. Jan. 3, 2023)........................................11

**Statutes**

28 U.S.C. § 1605A(4) ...........................................................................................................5

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

28 U.S.C. § 1605A(c) ...................................................................................................14

Anti-Terrorism Act, 18 U.S.C. § 2333(a) .............................................................. *passim*

Air Transportation Safety and System Stabilization Act ("ATSSSA"), Pub. L. No.
    107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101) ...........................17

EPTL 11-3.2(b) .............................................................................................................13

N.Y. Est. Powers & Trusts Law § 5-4.1 ........................................................................14

**Other Authorities**

Restatement (Second) of Torts § 46 (1965) .................................................................10

## I.    INTRODUCTION

This action arises out of the events of September 11, 2001, during which members of the al Qaeda terrorist network hijacked four commercial airliners and used those planes as weapons in coordinated terrorist attacks on the United States (the "September 11th Attacks"). Plaintiffs in the above-captioned case include personal representatives and an eligible family member of individuals killed in the September 11th Attacks.

Non-U.S. National Plaintiffs[1] in Exhibit A, Exhibit B, and Exhibit D ("Moving Plaintiffs") to the Goldman Declaration, by and through their counsel, Anderson Kill P.C., respectfully submit this Memorandum of Law in support of their Motion for Partial Final Judgments as to Damages against the Taliban.

Moving Plaintiffs seek a damages determination consistent with the determinations of prior subsets of plaintiffs in this MDL.

For the reasons set forth below, in the Goldman Declaration, as well as those set forth in prior motions, Moving Plaintiffs respectfully move this Court for an Order:

(1)    finding the Taliban jointly and severally liable with the Islamic Republic of Iran ("Iran") and awarding damages judgments under New York common law to Moving Plaintiffs, identified in Exhibit A, Exhibit B, and Exhibit D, against the Taliban in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases against Iran; AND,

---

[1] Exhibit A includes an immediate family member of a 9/11 decedent where the 9/11 decedent was not a U.S. National *and* the immediate family member was also not a U.S. National on September 11, 2001. Exhibit B and Exhibit D includes 9/11 decedent estates where the 9/11 decedent was known not to have been a U.S. National on September 11, 2001.

(2)      awarding intentional infliction of emotional distress (solatium) damages to the Moving Plaintiff identified in Exhibit A in the amount of $8,500,000 per child, as set forth in Exhibit A; AND,

(3)      awarding the estates of the 9/11 decedents, through the personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as set forth in Exhibit B and Exhibit D, compensatory damages for wrongful death and survival in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th Attacks, as set forth in Exhibit B and Exhibit D; AND,

(4)      awarding compensatory damages to those Moving Plaintiffs identified in Exhibit B for decedents' pain and suffering in an amount of $2,000,000 per estate, as set forth in Exhibit B; AND,

(5)      awarding the estates of the 9/11 decedents, through their personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as identified in Exhibit D, an award of economic damages in the amounts as set forth in Exhibit D; AND,

(6)      awarding the Moving Plaintiffs identified in Exhibit A, Exhibit B, and Exhibit D prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 (except for the economic damages portion of awards for those Moving Plaintiffs in Exhibit D, where pre-judgment interest will run from the date as indicated in the "Date of Report" column in Exhibit D) until the date of the damages judgment, in an amount determined by the Court; AND,

2

(7)     granting Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(8)     granting permission for all other Plaintiffs not appearing in Exhibit A, Exhibit B, and Exhibit D to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(9)     granting Plaintiffs such other and further relief as this honorable court deems just and proper.

The awards set forth in the attached Proposed Order represent the only direct recovery against the Taliban on behalf of Moving Plaintiffs for the claims herein and will constitute final awards and judgments against the Taliban for Moving Plaintiffs.

## II.    PROCEDURAL BACKGROUND

### A.    Applicable Orders

This motion is being submitted in accordance with various procedural orders entered by this Court, and the form of this motion and the relief requested herein are intended to comply with various orders of this Court, including the following:

a.     The Court's January 24, 2017 Order, ECF No. 3435,[2] requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee, ECF No. 3433] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

---

[2] All ECF numbers are to the MDL docket unless stated otherwise.

b.     Magistrate Judge Maas' July 30, 2012 Report & Recommendation, ECF No. 2618, and this Court's October 3, 2012 Order, ECF No. 2623, adopting the Report & Recommendation in its entirety concerning the award of damages;

c.     The Court's October 14, 2016 Order, ECF No. 3363, concerning the amounts of solatium damage awards.

d.     The Court's October 14, 2016 Order, ECF No. 3362, related to *Bauer v. Al Qaeda Islamic Army*, 02-CV-7236 (GBD)(SN) and *Ashton v. al Qaeda Islamic Army*, 02-CV-6977 (GBD)(SN).

e.     The Court's October 28, 2019 Order, ECF No. 5234, setting forth updated procedural rules.

f.     The Court's December 6, 2019 Order, ECF No. 5338, setting forth the scheduling order.

g.     The Court's April 11, 2022 Order, ECF No. 7870, setting forth specific procedures regarding seeking judgments for damages as to the Taliban.

h.     The Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports submitted in support of default judgments.

i.     The Court's July 11, 2022 Order, ECF No. 8198, concerning requirements for motions for default against non-sovereign defendants.

j.     The Court's September 22, 2023 Order, ECF No. 9355, setting forth procedures for default judgment motions.

k.     The Court's October 7, 2024 Order, ECF No. 10411, regarding expert reports submitted in support of economic damages judgment motions.

l.     The Court's July 31, 2025 Order, ECF No. 11105, approving revised default judgment motion worksheets.

## B.     Related Cases

Relying on evidence and arguments submitted by plaintiffs in *In re Terrorist Attacks on September 11, 2001*, 03-md-1570, the consolidated multidistrict litigation arising out of the September 11th Attacks, this Court, on April 7, 2006, May 12, 2006, December 22, 2011, and on October 13, 2015, granted Orders of Judgment on Liability in favor of certain of the *Federal Insurance*, *Burnett, Ashton*, *Havlish*, and *O'Neill* groups of plaintiffs against the Taliban (*see*

ECF Nos. 1754-56, 1782-97, 2516, 3067).  As set forth in the Court's November 23, 2022 Order at ECF No. 8770, this Court extended the liability judgments against the Taliban for the family members and the estate of John P. O'Neill, Sr. to all other plaintiffs in the above-captioned matter—including the Moving Plaintiffs—pursuant to the Court's Orders at ECF Nos. 7949, 8111, 8150, 8473, 8695. *See also* ECF No. 10979 at ¶ 5. This Court also considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the *Havlish* plaintiffs' submissions, on October 3, 2012 this Court found, among other things, that "Plaintiffs may recover for [, inter alia,] solatium…in an action under Section 1605A. 28 U.S.C. § 1605A(4). In such an action, …family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). This Court also found that the following solatium awards for family members are appropriate, as an upward departure from the framework in *Est. of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006):

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2623 at 4.

The Court has applied the same solatium values to claims of other solatium plaintiffs as to Iran in *Burnett, Ashton, O'Neill* and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation against Iran and sought

against the Taliban. *See*, *e.g.*, ECF Nos. 2618, 2623-24, 3175 at 2, 3300 at 1, 3358 at 9, 3363 at 16, 3399, 3666, 3977 at 7, 4023, 4126, 4146, 4175, 5061-62, 5087, 5138, and 5356.

In that same decision in *Havlish*, this Court also found that plaintiffs are entitled to punitive damages under the Foreign Sovereign Immunities Act ("FSIA") in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5. The Court has applied that 3.44 multiplier also to judgments in *Ashton*. *See* ECF No. 3175 at 3 (Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier). The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF Nos. 3358 at 11-16, 3363 at 28. Judge Daniels adopted Magistrate Judge Netburn's Report and Recommendation in its entirety. ECF Nos. 3383 at 2, 3384 at 6.

In the *Havlish* decision, this Court also found that prejudgment interest was warranted for the plaintiffs' solatium damages. ECF No. 2623 at 5.  The *Havlish* plaintiffs sought application of a 4.96% interest rate, which the magistrate judge recommended (ECF No. 2619 at 13-14) and Judge Daniels adopted (ECF No. 2623 at 5). In *Ashton*, plaintiffs sought, and the magistrate judge recommended, application of a statutory nine percent simple interest rate for prejudgment interest. ECF No. 3175 at 7-8.  Judge Daniels adopted the magistrate judge's report and recommendation and applied the nine percent interest rate in multiple instances in *Ashton* and *Bauer*. *See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1. However, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent rate for prejudgment interest should be applied to all solatium claims. ECF Nos. 3358 at 17-20, 3363 at 28-29. Judge Daniels adopted Judge Netburn's

*Hoglan* Report and Recommendation in its entirety and applied an interest rate of 4.96 percent per annum, compounded annually. ECF Nos. 3383 at 2, 3384 at 6. The Court applied that interest rate, 4.96 percent per annum, to other plaintiffs' awards in *Burnett*.

### C.    Moving Plaintiffs

Pursuant to the Orders entered at ECF Nos. 7949, 8111, 8150, 8473, 8695, and 10979, Plaintiffs were granted leave to add additional plaintiffs to the complaint in *O'Neill, et al., v The Republic of Iraq, et al*, 1:04-cv-1076 (GBD)(SN). The Orders specifically provide that (i) the amendments supplement but do not displace the underlying complaint; (ii) prior rulings, orders and judgments entered in this case remain in effect as to all parties; and (iii) that further service on the Taliban is not required as a result of the amendments; and (iv) that prior service orders applied. The Moving Plaintiffs' claims are on the Fifth Amended Consolidated Complaint. ECF No. 8702 (November 3, 2022); *see also* ECF No. 10979 ("The motion to add Plaintiffs is GRANTED. The underlying complaint is deemed amended to add the Plaintiffs listed at ECF No. 10972-1.").

## III.    THE MOVING PLAINTIFFS HAVE LIABILITY JUDGMENTS

As set forth in the Court's November 23, 2022 Order at ECF No. 8770, this Court extended the liability judgments against the Taliban for the family members and the estate of John P. O'Neill, Sr. to all other plaintiffs in the above-captioned matter—including the Moving Plaintiffs—pursuant to the Court's Orders at ECF Nos. 7949, 8111, 8150, 8473, 8695. *See also* ECF No. 10979 at ¶ 5.

## IV.    DAMAGES SHOULD BE AWARDED AGAINST THE TALIBAN JOINTLY AND SEVERALLY

On August 25, 2022, undersigned counsel filed a renewed motion for partial final judgment for damages for a subset of plaintiffs in response to this Court's July 11, 2022 Order

(ECF No. 8198). *See* ECF No. 8459. That motion is presently pending. Counsel subsequently filed similar motions for other sub-sets of the *O'Neill* plaintiffs who have pending actions against the Taliban. ECF Nos. 8455, 8528, 8568, 8577, 8595, 8745, 9130, and 11211. By way of the instant motion, Moving Plaintiffs respectfully request that partial final judgments for damages be entered in their favor and against the Taliban jointly and severally.

## A.     Background

As the Court is aware, the victims of the terrorist attacks on September 11, 2001 were not solely United States Nationals; however, relief under the Anti-Terrorism Act, 18 U.S.C. § 2333(a) ("ATA") is limited to U.S. Nationals or immediate family members (or functional equivalents) of U.S. National decedents. Nevertheless, this Court's jurisdiction reaches the New York common law claims of these non-nationals who were injured or killed and their family members.

The terrorists who carried out the attacks on September 11, 2001 did not differentiate their victims by nationality. Individuals working in the North Tower of the World Trade Center when it was hit were not somehow sequestered based on their citizenship status. The terrorists attacked the United States, and while the vast majority of those who were killed in the orchestrated attacks against the United States were U.S. Nationals, a significant percentage of the victims were not. This does not mean that they were treated differently by the terrorists or that their loved ones did not experience the grief and loss that U.S. Nationals did. This disparity between U.S. Nationals and foreign nationals is reflected in the two statutes addressing the provision of support by foreign sovereigns acts of terrorism. As such, these Plaintiffs seek a determination from the Court that they are entitled to the same level of damages as U.S. National plaintiffs with claims against the Taliban.

1.      **New York Law Applies to the Common Law Claims at Issue Here.**

Moving Plaintiffs all lost a loved one on September 11, 2001 in New York and have

brought claims here in New York to redress their injuries. Federal courts apply the choice-of-law

rules of the state in which they sit. *Armstead v. National RR Passenger Corp*., 954 F. Supp. 111,

112 (S.D.N.Y. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487 (1941)). In this

instance, this Court should apply *lex loci delicti*. *See Armstead*, 954 F. Supp. at 112-13 (stating

"if…the tort did not occur in the domicile of either party, the *lex loci delicti*— law of the situs of

the tort—will normally apply, unless displacing it [with another relevant jurisdiction's law] 'will

advance the relevant substantive law purposes without impairing the smooth working of the

multi-state system or producing great uncertainty for litigants.'"). Following *Armstead*,

Plaintiffs' common-law claims would be analyzed under the laws of New York as the situses of

the tort.

This Court has previously addressed the claims of plaintiffs in this MDL under New York

common law. *See* Orders at ECF Nos. 9931, 10277, 10292, 10300, 10306, and 10984.  In an

October 12, 2016 Report and Recommendation issued by Magistrate Judge Netburn (and

adopted by Judge Daniels), while addressing the appropriate rate of prejudgment interest, the

Court provided a discussion of "common law wrongful death actions" in New York and stating

that only pecuniary damages—like those sought for the estates of 9/11-decedent estates in this

case under both the ATA and FSIA—are to be awarded in a wrongful-death action in New York

which "does not permit recovery for, inter alia, the grief of survivors, the loss of their decedent's

love, companionship and society, or loss of consortium." ECF No. 3358 at 18. But within the

context of the claims against Iran, and in the same Report and Recommendation, this Court held,

"[b]ecause of the extreme and outrageous conduct inherent in acts of terrorism, courts have held

that solatium claims in FSIA terrorism cases are 'indistinguishable' from claims of intentional

infliction of emotional distress." ECF No. 3358 at 8 (citing *Surette v. Islamic Rep. of Iran*, 231 F.

Supp. 2d 260, 267 n.5 (D.D.C. 2002) (quoting *Wagner v. Islamic Rep. of Iran*, 172 F. Supp. 2d

128, 135 n.11 (D.D.C. 2001)). Specific to the terrorist attacks on September 11, 2001, the Court

continued:

> Terrorist attacks, by their very nature, are meant to inflict severe
> emotional distress upon society as a whole, but the loved ones of
> their victims bear a burden which is unquestionably heavier. As the
> September 11 attacks have left deep scars in the consciousness of
> this city and this nation, family members of the decedents are left
> with constant and stark reminders of their tragic losses.

*Id.* This Court has held that "the common law of intentional infliction of emotional distress

governs questions of who is entitled to recover damages…. This is necessarily so because of the

'interest in promoting uniformity of determinations with respect to [state sponsored terrorist

acts]' and the fact that generally accepted legal standards of the states provide the only steady

foundation for the rules of decision." ECF No. 3363 at 2 (emphasis added) (quoting *Estate of

Heiser v. Islamic Rep. of Iran*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009)). In fact, the courts

addressing solatium damages have relied on the Restatement (Second) of Torts § 46 (1965),

which is the precise source of the law in each of New York, Virginia, and Pennsylvania. *Id.* at 3.

While physical proximity to the incident giving rise to the emotional distress is typically a

required element of international infliction of emotional distress claims, "courts have uniformly

held that a terrorist attack—by its nature—is directed not *only at the victims but also at the

victims' families*." *Id. (*quoting *Salazar v. Islamic Rep. of Iran*, 370 F. Supp. 2d 105, 115 n.12

(D.D.C. 2005)); *Jenco v. Islamic Rep. of Iran*, 154 F. Supp. 2d 27, 35 (D.D.C. 2001). Acts of

terrorism are, by their very definition, extreme and outrageous and intended to cause the highest

degree of emotional distress. *Stethem v. Islamic Rep. of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C.

2002). This Court has previously found that "[t]he 9/11 terrorist attacks are contrary to the

10

guarantees 'recognized as indispensable by civilized peoples.'" ECF No. 2515 at 50.  Under New

York law, the tort of intentional infliction of emotional distress has four elements: "(i) extreme

and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing,

severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv)

severe emotional distress." *Zonshayn v. Sackler Sch. of Med. (New York)*, No. 21 CIV. 5720

(AT), 2023 WL 24379, at *8 (S.D.N.Y. Jan. 3, 2023).  The Taliban's intentional material support

for al Qaeda, which resulted in the 9/11 attacks constitutes extreme and outrageous conduct, and

resulted in severe emotion distress for the Moving Plaintiffs.  *See* Fifth Amended First

Consolidated Complaint, ECF No. 8702 at ¶¶ 237-245.  The Taliban's material support to al

Qaeda was extreme and outrageous, and was intended to and enabled al Qaeda in carrying out

the September 11th attacks.  The act of crashing two commercial airliners into the World Trade

Center with the intent to kill Americans, and which, in fact, did kill Americans, constituted

extreme and outrageous conduct on the part of the Taliban.  ECF No. 8702 at ¶ 238. As a direct

and proximate result of the willful, wrongful, intentional, and reckless acts of the Taliban, the

Moving Plaintiffs suffered severe emotional distress, including extreme mental anguish and

emotional and physical pain and suffering.  By way of example, family members of victims of

the September 11th terrorist attacks watched in horror as the towers collapsed (ECF No. 8702 at

¶¶ 239-242) and was fearful for their loved ones' lives (ECF No. 8702 at ¶¶ 241-242).

As these Plaintiffs' intentional infliction of emotional distress claims mirror those of the

solatium claims actionable under the ATA for U.S. National plaintiffs in claims arising from the

same nexus of events, the Plaintiffs' recovery here under the common law should be identical to

the solatium damages framework established by this Court against Iran and applied to the claims

under the ATA against the Taliban.  In the FSIA context, this Court has emphasized the "interest

in promoting uniformity of determinations with respect to [state sponsored terrorist acts]", but the Court's citation to *Estate of Heiser* goes on to explain that this uniformity is achieved through "well-established standards of state common law." *See* ECF No. 3363 at 2 (quoting *Estate of Heiser*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009)). Such uniformity in outcome between plaintiffs who sustained injury arising from the same terrorist attacks should be simple given the application of "well-established standards of state common law" which is the undergirding of the claims of Moving Plaintiffs who lack standing to assert claims under the ATA.

Further, under New York law, the elements of wrongful death are "(1) the death of a human being born alive; (2) a wrongful act, neglect or default of the defendant by which the decedent's death was caused, provided the defendant would have been liable to the deceased had death not ensued; (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent; and (4) the appointment of a personal representative of the decedent." *In re Sept. 11 Litig.*, 811 F. Supp. 2d 883, 886 (S.D.N.Y. 2011). Here, each plaintiff listed on Exhibit B and Exhibit D died on 9/11. As set forth above, the Taliban committed several wrongful acts which resulted in the 9/11 attacks.

The elements of wrongful death are satisfied here. Plaintiffs in Exhibit B and Exhibit D, who were born alive, were killed (ECF No. 8702 at ¶ 224) as a direct result of the Taliban's wrongful acts, its intentional material support for al Qaeda (ECF No. 8702 at ¶ 98), which resulted in the 9/11 attacks. Further the Plaintiffs in Exhibit B and Exhibit D left behind distributees who each suffered deep pecuniary losses by reason of decedent's death. Goldman Declaration at ¶¶ 20-27. And as detailed in the Declaration of Jerry S. Goldman, a personal

representative' has been appointed to administer each of those decedents' estates. Goldman Declaration at ¶ 7.

Further, elements of survival are satisfied here. Under New York law, "a personal injury action on behalf of the deceased under EPTL 11-3.2(b) seeks recovery for conscious pain and suffering of the deceased and any damages awarded accrue to the estate." *Heslin v. County of Greene*, 14 N.Y.3d 67, 76-77 (2010). Courts have held that a survival action (or an action for conscious pain and suffering) is separate and distinct from a wrongful death cause of action. *Dunefsky v. Montefiore Hosp. Med. Ctr.*, 162 A.D.2d 300 (1st Dep't 1990). Here, the Taliban's actions caused the deceased victims identified in Exhibit B and Exhibit D severe and intense harmful bodily contact, personal injury, and battery prior to their deaths. ECF No. 8702 at ¶¶ 40, 43, 65, 97, 98, 172-173, , 228-232, 278.  As a result of the Taliban's tortious conduct, Moving Plaintiffs in Exhibit B and Exhibit D are entitled to survival damages for those injured and killed on September 11, 2001. *See* ECF No. 9931 at 4-5 (Order granting non-U.S. national plaintiffs damages judgments against Iran based on survival cause of action); *see also* ECF No. 2623 at 5-6 ("The Non-Sovereign Defendants are liable for the same damages as the Sovereign Defendants under traditional tort principles.").

### B.    Moving Plaintiffs with Claims Arising Under the Common Law Seek Application of Uniform Damages Principles as Those Employed Under the ATA.

To promote the uniformity discussed above, Moving Plaintiffs asserting claims under the common law seek damages equal to those of their co-plaintiffs asserting claims under the ATA. For Moving Plaintiffs in Exhibit B,[3] this would provide damages for conscious pain and

---

[3] Moving Plaintiffs identified in Exhibit B and Exhibit D are comprised of the estates of victims who perished on 9/11, in claims asserted by their personal representatives, as demonstrated by documentary evidence in the form of official documents from probate and administration proceedings from Surrogate's

suffering in the amount of $2 million per estate. The values reflected on Exhibit B indicate pain-and-suffering damages of $2 million per estate. The immediate family member asserting claims under New York common law for intentional infliction of emotional distress (solatium) damages found at Exhibit A also asserts that he should be awarded damages against the Taliban in the same manner as those awarded damages under both 28 U.S.C. § 1605A(c) and the ATA: $8,500,000 for the child of a 9/11 Decedent, as set forth in Exhibit A.

C.    **Economic Damages for Estates**

As set forth herein, the Moving Plaintiffs in Exhibit D, who seek an award of economic damages, properly assert a wrongful death claim under New York law under N.Y. Est. Powers & Trusts Law § 5-4.1. *Supra* 12.  Under wrongful death in New York, the Moving Plaintiffs in Exhibit D are entitled to "pecuniary" damages based on expert reports calculating those damages, and this Court has previously awarded economic damages based on such reports. ECF No. 9931 at 4.

Previously, this Court awarded economic damages in Iran and Taliban cases for the "economic losses stemming from the wrongful death of the decedent[.]" *See, e.g.*, ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports.

The Estates set forth in Exhibit D and as specifically identified and set forth therein, and which provided economic expert reports, transmitted to the Court in the Goldman Declaration, seek economic damages, similar to the plaintiffs in the prior Taliban and Iran cases in this Court under the standards set in the District of Columbia cases cited herein.  Goldman Declaration at ¶¶ 21-27.

---

Court, Probate Court, Orphan's Court, and similar judicial bodies.  *See* Goldman Declaration at ¶¶ 4-14, 20-28.

As described at length in the Goldman Declaration, Moving Plaintiffs retained the services of John F. Beauzile, an expert who possesses a Master's Degree in Actuarial Science from Columbia University ("Expert"), to evaluate the economic losses resulting from decedents' death as a result of the September 11th Attacks.  Goldman Declaration at ¶¶ 21-27.

As described in more detail in the Goldman Declaration, and the Expert's Declaration attached as Exhibit C thereto, we obtained, generally through a Freedom of Information Act ("FOIA") request, entire September 11th Victim Compensation Fund ("VCF") files for a substantial number of 9/11 decedents represented by undersigned counsel.[4]  Those files, along with other materials provided by the clients, contained various economic expert reports, VCF applications, VCF work papers and distribution plans, VCF determinations, underlying economic documents, and the like.  Using methodology and assumptions described in his declaration, relying on earlier expert reports, determinations by the VCF, and other documents, the Expert prepared up-to-date economic loss expert reports, copies of which are deemed appended to the Expert's Declaration (Exhibit D) and being filed on ECF with access restricted to the Court pursuant to the Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports in support of default judgments.

Based on the foregoing, Moving Plaintiffs respectfully ask that this Court award economic damages to the estates set forth in Exhibit D in the amounts stated therein, as supported by the expert reports.

---

[4] We are still awaiting the receipt of additional VCF files from the Department of Justice via multiple outstanding FOIA requests, the processing of which has been adversely impacted by both "normal" delays in responding to FOIA requests as well as special circumstances related to the ongoing COVID pandemic.

15

### D.     Punitive Damages

Moving Plaintiffs are also entitled to punitive damages.  In the *Havlish* Report and Recommendation on damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks."  ECF No. 2618 at 13 (quoting *Est. of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory).  ECF No. 2623 at 2.  The Court has applied that ratio to awards for plaintiffs in other related cases.  *See*, e.g., ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice.  ECF No. 3363 at 28.  Judge Daniels adopted Magistrate Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request for punitive damages.  ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address the issue of punitive damages at a later date.  *See*, *e.g.*, ECF No. 3666 (Judge Daniels' Order in *Burnett* authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court); *see also* ECF No. 11014 (denying request punitive damages and issuance of final judgments against the Taliban without prejudice).

E.       **Prejudgment Interest**

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001, until the date of judgment. ECF No. 2618 at 13-14. This Court, recognizing that prejudgment interest was appropriate in cases such as these cases, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states. *See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA"). Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101); *In re Sept. 11 Litig.*, 802 F.3d 314, 343 (2d Cir. 2015). In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest. *Id.* Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as

opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the 9/11 Attacks. *Id.*

However, subsequently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Magistrate Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6. Thereafter, in *Burnett/Iran II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

In light of the Court's decisions in *Hoglan* and *Burnett*, applying the 4.96 percent rate to prejudgment interest, Moving Plaintiffs respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment, except for the economic damages awards for those Moving Plaintiffs in Exhibit D, where pre-judgment interest will run from the date as indicated in the "Date of Report" column in Exhibit D.

## V. CONCLUSION

For the reasons set forth herein, the statements contained in the Goldman Declaration, as well as those set forth in prior motions for damages, Moving Plaintiffs respectfully request that the Court grant an Order:

(1) finding the Taliban jointly and severally liable with the Islamic Republic of Iran ("Iran") and awarding damages judgments under New York common law to Moving Plaintiffs, identified in Exhibit A, Exhibit B, and Exhibit D, against the Taliban in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases against Iran; AND,

(2)     awarding intentional infliction of emotional distress (solatium) damages to the Moving Plaintiff identified in Exhibit A in the amount of $8,500,000 per child, as set forth in Exhibit A; AND,

(3)     awarding the estates of the 9/11 decedents, through the personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as set forth in Exhibit B and Exhibit D, compensatory damages for wrongful death and survival in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th Attacks, as set forth in Exhibit B and Exhibit D; AND,

(4)     awarding compensatory damages to those Moving Plaintiffs identified in Exhibit B for decedents' pain and suffering in an amount of $2,000,000 per estate, as set forth in Exhibit B; AND,

(5)     awarding the estates of the 9/11 decedents, through their personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as identified in Exhibit D, an award of economic damages in the amounts as set forth in Exhibit D; AND,

(6)     awarding the Moving Plaintiffs identified in Exhibit A, Exhibit B, and Exhibit D prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 (except for the economic damages portion of awards for those Moving Plaintiffs in Exhibit D, where pre-judgment interest will run from the date as indicated in the "Date of Report" column in Exhibit D) until the date of the damages judgment, in an amount determined by the Court; AND,

(7)     granting Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(8)     granting permission for all other Plaintiffs not appearing in Exhibit A, Exhibit B, and Exhibit D to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(9)     granting Plaintiffs such other and further relief as this honorable court deems just and proper.

Dated:     New York, New York                Respectfully submitted,
           September 17, 2025

                                             */s/ Jerry S. Goldman*
                                             **ANDERSON KILL P.C.**
                                             Jerry S. Goldman, Esq.
                                             Bruce E. Strong, Esq.
                                             Alexander Greene, Esq.
                                             7 Times Square, 15th Floor
                                             New York, NY 10036
                                             Tel:  (212) 279-1000
                                             Fax: (212) 278-1733
                                             Email:  jgoldman@andersonkill.com
                                                     bstrong@andersonkill.com
                                                     agreene@andersonkill.com
                                             *Attorneys for Plaintiffs*