Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/26/2024__

In re:

      **TERRORIST ATTACKS ON
      SEPTEMBER 11, 2001**

03-MD-01570 (GBD)(SN)

<u>**ORDER**</u>

----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

The Kingdom of Saudi Arabia and Dallah Avco (collectively, "Defendants") recently moved to dismiss all claims against them on jurisdictional grounds. The Plaintiffs' Executive Committees ("PECs") and <u>Ashton</u> counsel (collectively, "Plaintiffs") jointly opposed those motions. Their opposition materials included two briefs, an averment of facts, and hundreds of documentary and multimedia exhibits. The Defendants contend that portions of those materials were improper and move to strike them. <u>See</u> ECF Nos. 9500, 9501.[1] For the following reasons, the Court grants in part and denies in part their motion.

**BACKGROUND**

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. On March 28, 2018, the Court authorized "limited and targeted jurisdictional discovery" into Saudi Arabia's relationship with individuals—Fahad al Thumairy and Omar al Bayoumi—who had contact with the 9/11 hijackers before the Attacks. ECF No. 3946 at 23. That discovery stretched on for four years and precipitated significant motion practice.

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

## I.    Jurisdictional Discovery Process

After repeated delays (some due to the COVID-19 pandemic) the Court set deadlines for completing jurisdictional discovery on claims against the Defendants. The deadline to produce fact witness declarations was May 31, 2021, with fact depositions to be completed by June 30, 2021. Plaintiffs' expert reports were to be served by September 15, 2021. See ECF Nos. 6002, 6204, 6546, 6872.

As the expert report cutoff approached, the U.S. Government announced plans to declassify intelligence documents related to the 9/11 Attacks. See Exec. Order No. 14040, 86 Fed. Reg. 50439 (Sept. 3, 2021). The Plaintiffs had long pursued access to law enforcement and intelligence agency reports, but national security restrictions had stymied their efforts. See ECF No. 7090 (referencing the Plaintiffs' three years of litigating these issues). Citing the "revelatory nature of the evidence sought, the minimally disruptive length of the extension, and the unfairness of proceeding without their experts obtaining [this] material," the Plaintiffs asked to postpone the expert discovery deadlines. ECF No. 7752 (describing requests at ECF Nos. 7074 and 7090).

The Court granted an extension, setting expert discovery deadlines well outside the projected declassification dates. The Plaintiffs' expert reports were due April 1, 2022, and expert discovery was to be completed by July 1, 2022. See ECF No. 7117. The Court cautioned that it did "not expect to modify this schedule barring extraordinary circumstances"—which "w[ould] not include delays in the Government's compliance with the President's [declassification] Executive Order." Id.

As expert discovery moved forward, the Plaintiffs gained access to more and more law enforcement records. In November and December 2021, the U.S. released its first tranche of Federal Bureau of Investigation ("FBI") records pursuant to Executive Order 14040. The

Plaintiffs then moved to reopen fact discovery and compel the Kingdom to produce additional documents. See ECF No. 7481. The Court denied the request. See ECF No. 8862.

In March 2022, the U.S. released a second tranche of records that included an electronic communication dated July 23, 2021 ("July 2021 EC"). The Plaintiffs requested an extension of the expert report deadlines to permit their witnesses to review the newly declassified records; the Court denied that request. See ECF No. 7752.

Later that month, and again in December 2023, the Metropolitan Police Service ("MPS") in London released documents and footage amassed during its investigation of Bayoumi. See ECF Nos. 7922, 9461. The Plaintiffs made no discovery motions following those productions.

## II.     Motion to Dismiss Protocols

With discovery finally complete, the Defendants requested a briefing schedule for their motions to dismiss and accompanying Daubert motions. The parties could not reach agreement on various briefing protocols, so the Court held a conference to discuss timelines, redaction processes, and other points of contention.

After the conference, the Court issued a detailed briefing schedule. See ECF No. 9026 at 5. The Court set page limits for each of the parties' briefs and took steps to ensure that those limits could not be circumvented by "incorporating by reference" factual averments or declarations. Id. at 4. Specifically, the Court ordered the parties to "set forth all pertinent facts" in their briefs and, "for each factual statement, provide one or more citations (with specific page or paragraph numbers) to pleadings, declarations, affidavits, averments, or other documents that have been separately filed." Id. at 4. The Court declined to restrict the length of those filings but warned that it would "consider only averments cited in the briefs." Id.

According to that scheduling order, the parties briefed their Daubert motions and then the Defendants filed motions to dismiss. The PECs and Ashton counsel were scheduled to file

separate oppositions on December 8, 2023, but secured a brief extension to combine their submissions. On December 20, 2023, the Plaintiffs filed their consolidated opposition comprising 110 pages of briefing, a 2,118-paragraph factual averment, and nearly 700 exhibits, including five declarations not previously produced to the Defendants. The Defendants then filed this motion to strike. See ECF No. 9500.

## DISCUSSION

District courts have "broad latitude to . . . manage the discovery process," EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012), and their "own dockets," Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015). Among other things, courts can issue orders setting discovery deadlines and imposing restrictions on motion practice. See Fed. R. Civ. P. 26 (authorizing courts to set discovery deadlines); N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648–49 (2d Cir. 2005) (recognizing the courts' "authority to institute local rules governing summary judgment submissions"). When litigants violate these orders, sanctions are sometimes appropriate. See Fed. R. Civ. P. 37 (authorizing sanctions for violations of discovery rules); Hunte v. Abbott Lab'ys, Inc., 556 F. Supp. 3d 70, 98 n.19 (D. Conn. 2021) (referencing court's "inherent authority" to strike portions of a party's brief).

The Defendants assert that the Plaintiffs violated the Court's discovery orders and briefing schedule by (1) "purporting to incorporate by reference hundreds of paragraphs from an Averment into Plaintiffs' opposition brief"; (2) "submitting three untimely fact declarations"; and (3) "submitting two untimely expert declarations." ECF No. 9500 at 1. In their view, these transgressions warrant sanctions, so they ask the Court to strike the offending portions of the Plaintiffs' materials. We address the three types of violations separately.

### III.   Averment of Facts

First, the Defendants argue that the Plaintiffs violated the Court's order governing briefs and factual averments. See id. In that order, the Court admonished the parties to "set forth all pertinent facts" in the briefing itself—not just "incorporate[e] by reference" averments or declarations. ECF No. 9026 at 4. This instruction was supposed to streamline the parties' arguments and spare the Court from scouring hundreds of exhibits to find potentially dispositive nuggets of information. (After all, "[j]udges are not like pigs, hunting for truffles buried in [the record]." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).)

At the very least, the Plaintiffs violated the spirit of that order. Rather than stating the facts one by one and citing the sources corroborating them, the Plaintiffs' briefs often speak in generalities and cite dozens or hundreds of averment paragraphs to support each statement. See ECF No. 9560-1, 9560-2. These "overbroad" citations leave the Court no choice but to root around in the averments, looking for facts to support each assertion in the briefing—the very outcome the Court intended to avoid. ECF No. 9560-3.

The Defendants raise legitimate questions as to whether such citations are proper. And, invoking the Court's promise to consider only facts "cited" in the briefs, they urge the Court to disregard passages, as well as underlying averments, that are associated only with block citations. ECF No. 9026 at 4; see ECF No. 9560-3.

Striking these problematic passages would go too far, however. The unusual procedural posture of this litigation and the importance of the issues raised in the motions to dismiss weigh against excluding marginal portions of the Plaintiffs' filings. And striking passages associated with block citations would also cause substantial delay because the Plaintiffs would need time to re-file their briefs and averment of facts. Further delay is not in the interests of this litigation. As

5

such, the Court denies the Defendants' motion to strike portions of the Plaintiffs' briefs and averment of facts.

## IV.     Fact Witness Declarations

Second, the Defendants ask the Court to exclude declarations from the Plaintiffs' three new fact witnesses—Brian Weidner, Usman Madha, and James Heavey—because they were proffered years after the May 31, 2021 deadline. See ECF No. 9500 at 2–3.

Fact witness disclosures are governed by Rule 26 of the Federal Rules of Civil Procedure.[2] That Rule directs parties to identify "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses" by a court-ordered deadline. Fed. R. Civ. P. 26(a). A party must "timely" "supplement or correct its disclosure" if it learns that the material it produces "is incomplete or incorrect." Fed. R. Civ. P. 26(e).

If a party does not disclose a witness's information, "the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In deciding whether to enforce these or other sanctions, courts consider the four Outley factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997) (citing Outley v. City of New York, 837 F.2d 587, 590–91 (2d Cir. 1988)); see also ECF No. 8905 (discussing interaction between substantial justification, harmlessness, and the Outley factors).

---

[2] Subsequent references to "Rules" are to the Federal Rules of Civil Procedure.

The Court applies these Rules to each of the contested witnesses, reviewing the content of their declarations, the procedural history surrounding their production, and the parties' arguments for and against striking their testimony.

**A.    Weidner**

Weidner, a longtime consultant for Plaintiffs' counsel and former FBI Special Agent, authored a declaration detailing the purpose and significance of an FBI document, the July 2021 EC, declassified in March 2022. See ECF No. 9500-3.

The Plaintiffs do not dispute that they produced Weidner's declaration to the Defendants in December 2023, years after the Court's deadline for fact witness declarations and approximately 21 months after the July 2021 EC was released. Instead, they imply that the fact witness deadline should not apply to Weidner because his declaration "authenticate[s]" the declassified FBI document it analyzes. ECF No. 9504 at 4. But Weidner's declaration does more than just authenticate records. It includes extensive background information about Weidner's role and FBI operations, and incorporates Weidner's own conclusions about many of the topics addressed in the declassified report. See ECF No. 9500-3. This type of testimony is the province of a fact witness, so the Court's May 2021 deadline applies to his declaration. It follows that the Plaintiffs' failure to disclose his declaration by that date violated Rule 26.

The Plaintiffs cannot avoid Rule 37 sanctions because they have made no showing that their belated disclosure of Weidner's declaration was "substantially justified" or "harmless." They offer no explanation for waiting 21 months (after receiving the declassified FBI document in March 2022) to produce it. And they provide no reason to doubt the prejudice to Defendants that comes with being denied the opportunity to depose him. See Preuss v. Kolmar Lab'ys, Inc., 970 F. Supp. 2d 171, 180 (S.D.N.Y. 2013) (holding that Rule 26 violation was not harmless because opposing counsel did not have an opportunity to depose the witness).

The <u>Outley</u> factors affirm that excluding Weidner's declaration is the appropriate remedy. The Plaintiffs offer (1) flimsy "explanation[s] for the[ir] failure to comply with the discovery order"; and (2) no assessment of the independent "importance" of Weidner's testimony. <u>Softel</u>, 118 F.3d at 961. The Defendants assert (3) that litigating the motions to dismiss without the opportunity to depose Weidner would "prejudice" them. <u>Id.</u>; <u>see</u> ECF No. 9500 at 5. And (4) a "continuance" is not in the interests of this litigation. <u>Softel</u>, 118 F.3d at 961.

Because Rule 37 and the <u>Outley</u> factors favor sanctions, the Court precludes the Plaintiffs from relying upon Weidner's declaration as a fact witness. To the extent his declaration is required solely to authenticate the FBI document discussed, the Court may consider it.

### B.     Madha

Madha was a regular attendee at two Los Angeles mosques and worked for the Islamic Foundation of Sheikh Ibn Taymiyah from 1998 to 2013. <u>See</u> ECF No. 9500-4. In that capacity, he had contact with Thumairy and other people of interest in this litigation. <u>See id.</u> at ¶¶ 3, 7. He timely submitted a declaration recounting those contacts and was deposed during fact discovery—that is, in 2021. <u>See id.</u> at ¶ 1. Roughly two years later, at the Plaintiffs' request, he reviewed footage and photographs released by MPS in March 2022 and drafted a second declaration ("Madha II"), which the Plaintiffs included in their opposition filings. <u>See id.</u> at ¶¶ 1, 2, 4, 6.

The Plaintiffs produced Madha II years after the fact discovery deadline passed. They attempt to obscure the importance of this history by casting Madha II as a supplement to Madha's original declaration. <u>See</u> ECF No. 9504 at 4. That attempt fails on two counts: first, they identify nothing in Madha's original declaration that was rendered "incomplete or incorrect" such that a Rule 26(e) supplement was appropriate; and second, even if the MPS's March 2022 document release required Madha to supplement his original declaration, waiting 21 months to

do so means it was not "timely" as required by Rule 26(e). Either way, the Plaintiffs' belated disclosure of Madha II violated Rule 26.

Like with Weidner, the Plaintiffs do not show that this violation was "substantially justified" or "harmless" such that Rule 37 sanctions are not warranted. Fed. R. Civ. P. 37(c)(1). They give no sound explanation for producing this declaration 21 months after the footage it discusses became available. And their disputed claim that "Saudi Arabia's witnesses have personal knowledge of these facts" does not dispel the potential prejudice associated with requiring Defendants to respond to witnesses they had no opportunity to depose on the relevant topics. ECF No. 9504 at 4; see Preuss, 970 F. Supp. 2d at 180 (finding harm where Rule 26 violation prevented opposing counsel from deposing witness).

The Outley factors similarly support sanctions. The Plaintiffs have no credible "explanation" for failing to comply with Court orders; they do not identify the "importance" of Madha's commentary on this footage to the case; including Madha II would "prejudice" the Defendants by denying them the opportunity to depose Madha on these facts; and a "continuance" would only compound the delays in this litigation. Softel, 118 F.3d at 961.

Because these factors and Rule 37 favor sanctions, the Court strikes Madha II.

**C.     Heavey**

Heavey is a Greenwich Parks and Recreation employee whose declaration discusses the visibility of the World Trade Center from Greenwich Point Park. See ECF No. 9500-5. Like the Weidner and Madha declarations, the Heavey declaration was produced two years after fact discovery closed—a plain Rule 26 violation. The Plaintiffs provide no "justifi[cation]"—let alone a "substantial[]" one—for this delay, and offer no grounds for finding it "harmless." Fed. R. Civ. P. 37(c)(1). Their entire defense of the Heavey declaration appears in a footnote reciting the procedural history. See ECF No. 9504 at 6 n.9. In the absence of a compelling "explanation"

of the Plaintiffs' violation or the "importance" of this declaration to the case, the Defendants'
asserted "prejudice" and the unviability of a "continuance" warrant imposing sanctions under
Outley. Softel, 118 F.3d at 961. As such, the Court strikes the Heavey declaration for purposes of
the motions to dismiss.

## V.      Expert Witness Declarations

Third, the Defendants object to the Plaintiffs' two new expert declarations from William
Adams and Bassem Youssef. See ECF No. 9500 at 3–5. They ask the Court to strike these
declarations because they were produced after the close of expert discovery and do not qualify
for an exemption from those disclosure deadlines. See id.

Under Rule 26, parties must produce expert reports "at the times and in the sequence that
the court orders." If a "party learns that in some material respect" the expert's report or
deposition "is incomplete or incorrect," the party must "supplement or correct" the report "in a
timely manner." Fed. R. Civ. P. 26(e). Just as with fact witnesses, a party that fails to comply
with these requirements "is not allowed to use that information or witness to supply evidence on
a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P.
37(c)(1). Any sanctions should consider: "(1) the party's explanation for the failure to comply
with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the
prejudice suffered by the opposing party as a result of having to prepare to meet the new
testimony; and (4) the possibility of a continuance." Softel, 118 F.3d at 961; see also ECF No.
8905.

The Court reviews the disputed witness declarations and the procedural history that led to
their production under these Rules.

## A.    Adams

Adams is a "digital visualization" specialist who provided reconstructions of an event based on video, photographs, and floor plans. ECF Nos. 9488-1 at ¶ 1663; <u>see</u> ECF No. 9500-6 at 18.

The Plaintiffs do not dispute that the Adams declaration was prepared after the April 1, 2022 deadline for affirmative expert reports. <u>See</u> ECF No. 9504 at 4–5. Rather, they contend that the Adams submission is a "demonstrative" and therefore exempt from the requirements of the Court's expert discovery orders. <u>Id.</u> Notwithstanding the Plaintiffs' arguments, the Adams declaration and exhibits should be analyzed under expert witness rules.

Demonstrative exhibits are "used to illustrate and clarify other evidence," often as "visual aids to help illustrate expert witness testimony." <u>Brodeur v. Champion</u>, No. 17-cv-01738 (RMS), 2019 WL 3854302, at *1 (D. Conn. Aug. 16, 2019). Demonstrative exhibits are subject to the same relevancy and prejudice standards applicable to other evidence. <u>See id.</u> at *2. And, of course, a witness's use of a demonstrative does not insulate his testimony from other challenges, such as his competency to testify as an expert witness. It follows that we cannot ignore challenges to the Adams declaration simply because there are demonstrative exhibits attached to it. Rather, we must look at the contents of his testimony to determine what type of witness he is.

Like other experts, Adams purports to apply "specialized knowledge" and "technical" skills to "facts" and "data" to "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. He conducted his own independent research and purports to analyze the information he found, meaning his testimony is beyond a summary of evidence already in the record. <u>See, e.g.</u> ECF No. 9500-6 at ¶¶ 23–26 (describing his search for and use of information from redfin.com, apartments.com, and zillow.com to approximate the floor plan of

an apartment). Accordingly, his declaration should be subject to the same rules as any other expert.

Analyzing the Adams declaration as an expert report, it is evident that the Plaintiffs produced it more than a year late, in violation of Rule 26. The Plaintiffs attempt to avoid any sanctions for this violation by arguing that late disclosure was "justified" because Adams analyzed footage MPS released from its Bayoumi investigation in March 2022 and December 2023. Fed. R. Civ. P. 37(c)(1); see ECF No. 9504 at 4. This explanation holds little weight. The Court previously rejected an invitation to put jurisdictional discovery on hold to accommodate the slow pace of government declassification programs, see ECF No. 7752—and it certainly does not endorse treating third-party disclosures as a license to reopen discovery without seeking the Court's permission. Moreover, this explanation does nothing to reduce the prejudice to the Defendants, who have had no opportunity to depose Adams or challenge his methods. See Preuss, 970 F. Supp. 2d at 180 (finding harm where Rule 26 violation prevented opposing counsel from deposing witness). The Court does not find the Plaintiffs' last-minute disclosures "substantially justified" or "harmless" such that sanctions would be improper. Fed. R. Civ. P. 37(c)(1).

For similar reasons, the Outley factors advise exclusion. The Plaintiffs' "explanation" for its late disclosure is not compelling, the "importance" of the Adams declaration and exhibits is vague, the Defendants are "prejudice[d]" by the absence of an opportunity to challenge Adams's findings, and a "continuance" is not advisable. Softel, 118 F.3d at 961.

The Court therefore strikes the Adams declaration for purposes of the motions to dismiss.

**B.      Youssef**

Youssef is a former FBI Special Agent proffered as an expert by the Plaintiffs. See ECF No. 9500-9. His original (timely) report addressed Saudi Arabia's use of diplomatic outposts in

the District of Columbia and Los Angeles to export extremism; the roles of Thumairy and Bayoumi in those efforts; and the significance of Saudi Arabia's support for extremism to the operational success of the 9/11 Attacks. See ECF No. 9089-1. After the MPS released new materials in March 2022 and December 2023, Youssef drafted a second report ("Youssef II") analyzing footage that purportedly shows Bayoumi "casing" the United States Capitol. ECF No. 9500-9 at ¶ 8.

As with Adams, the Plaintiffs do not defend the timing of Youssef II's production, but here that poses an even greater problem. The Plaintiffs assert that Youssef II is a "supplement" to his original declaration under Rule 26(e). See ECF No. 9504 at 5. Rule 26(e) likely does not authorize Youssef II as a supplement because much of it falls outside the scope of his original declaration. But even if it did, the Court would be troubled by the Plaintiffs' decision to wait until December 2023 to produce a supplemental report that relies heavily on material released in March 2022. See ECF No. 9500-9 at ¶ 3 ("I have not yet completed my review of the entire MPS 2023 production . . . ."); see also ECF No. 9500-9 at ¶¶ 37–59 (analyzing materials produced in March 2022).

For the same reasons, the Plaintiffs' late disclosure of Youssef II is not "substantially justified" under Rule 37. Nor is a surprise expert report produced in the middle of briefing a dispositive motion "harmless." Fed. R. Civ. P. 37(c)(1). The Outley factors lead to the same result—although the "importance" of this report is clearer, so is the "prejudice" to the Defendants. Softel, 118 F.3d at 961. Given the absence of any "explanation" for the Plaintiffs' 21-month delay in production and the strong interests in avoiding the further delay that would arise from a continuance, sanctions are warranted.

The Court strikes Youssef II.

## CONCLUSION

The Court grants in part and denies in part the Defendants' motion as described above. The Court is provisionally docketing this Order under seal, with access limited to the PECs and counsel for the Ashton plaintiffs, the Kingdom of Saudi Arabia, and Dallah Avco, because it discusses filings that remain sealed. If the parties object to any information in this Order becoming public, they should submit proposed redactions by February 9, 2024.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:        January 26, 2024
              New York, New York