Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
    :
    :
    :
In re Terrorist Attacks on September 11, 2001    :
    :
    :
    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

03 MDL 1570 (GBD) (SN)

GEORGE B. DANIELS, District Judge:

Plaintiffs and the Defendant Kingdom of Saudi Arabia ("KSA") filed separate objections under Federal Rule of Civil Procedure 72(a) to Magistrate Judge Netburn's December 11, 2024 Opinion and Order.  (Opinion & Order ("Order"), ECF No. 10615;[1] Plaintiffs' Objs. to the December 11, 2024 Opinion & Order ("Pls. Objs."), ECF No. 10693; Saudi Arabia's Rule 72(a) Objs. ("KSA Objs."), ECF No. 10691.)  That Order granted in part and denied in part both the parties' *Daubert* motions (Mot.s, ECF Nos. 9088, 9091), completely excluding testimony from three of the seven challenged experts.  (Order at 63.)  The Order excluded two of Plaintiffs' experts and one of KSA's experts in their entirety.  It also limited the areas on which three other experts may opine.

Plaintiffs object that Magistrate Judge Netburn clearly errs by (1) failing to account for key aspects of the background and qualifications of Bassem Youssef, Emile Nakhleh, and Alexander Meleagrou-Hitchens; (2) overlooking how Plaintiffs' experts' relevant experience provide reliable foundations for their opinions; (3) limiting or excluding testimony of Plaintiffs' experts by reading their reports out of context and drawing erroneous conclusions; (4) wrongly assessing the helpfulness of their testimonies; (5) denying Plaintiffs' request for a *Daubert* hearing; and (6)

---

[1] Unless otherwise stated, all ECF citations included herein refer to documents filed on the 9/11 multidistrict litigation docket. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (GBD) (SN).

excluding the entirety of some experts' testimonies rather than excluding only the unreliable parts. (Pls. Objs. at 1–4.)  KSA objects that Magistrate Judge clearly errs in precluding Marc Sageman from rebutting Plaintiffs' expert Youssef on the issues of tradecraft, clandestine communication devices, and telephone communications analysis.  (KSA Objs. at 1.)  Having reviewed Magistrate Judge Netburn's Order for clear error and finding none, the Court OVERRULES Plaintiffs' and KSA's objections to the Order.

## I.  LEGAL STANDARDS

### 1.  Standard of Review

A district judge must modify or set aside only those parts of a magistrate judge's order related to nondispositive matters that are clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (stating that "Congress provided for a 'clearly erroneous or contrary to law' standard of review of a magistrate's disposition of certain pretrial matters").  "A district court is justified in finding a magistrate judge's ruling 'clearly erroneous' where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Highland Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (citations omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (internal citations and quotations omitted).

This is a highly deferential standard, and the objector thus carries a heavy burden.  *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007); *see also Lugosch v. Congel*, 443 F. Supp. 2d 254, 276 (N.D.N.Y. 2006) (noting that particular deference is due where "the magistrate judge has been deeply involved in discovery matters in the case for years").

## 2. Rule 702

Federal Rule of Evidence 702 allows expert witness testimony:

> if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

When applying Rule 702, courts in this Circuit often use a "three-part test that requires the proponent of expert evidence to show that (1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671, at *2 (S.D.N.Y. Jan. 30, 2025) (internal citations omitted).

An expert's qualification depends on "the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). A witness who qualifies as an expert in one area of knowledge is not necessarily "qualified to express expert opinions as to other fields." *Nimely v. City of New York*, 414 F.3d 381, 399 (2d Cir. 2005). District courts must be "vigilant against expert testimony that could stray from the scope of a witness' expertise." *United States v. Cruz*, 363 F.3d 187, 194 (2d Cir. 2004).

While the reliability inquiry "is fluid and will necessarily vary from case to case," courts must still engage in "rigorous" examination of the expert's methodologies and exclude testimony that is based on "data, a methodology, or studies that are simply inadequate to support the conclusions reached." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266–67 (2d Cir. 2002) (citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999)). Courts may exclude expert testimony that has "simply too great an analytical gap between the data and the opinion

3

proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "Because there are areas of expertise, such as the social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies, trial judges are given broad discretion to determine whether" or not *Daubert*'s specific factors are "reasonable measures of reliability in a particular case." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 131 (S.D.N.Y. 2022) (internal citation and quotation marks omitted.)

An expert should explain how his knowledge and experience led him to his conclusions rather than relying on his own *ipse dixit. See Hayden v. Int'l Bus. Machines Corp.*, 2025 WL 1697021, at *7 (S.D.N.Y. June 17, 2025) (excluding testimony of an expert who simply relies on his own personal experience rather than explaining how such experience led to his conclusions about a company's internal capabilities). Moreover, expert testimony "should be excluded if it is speculative or conjectural[.]" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 241 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020) (internal citation omitted).

Expert testimony is helpful when it assists the trier of fact in "comprehending and deciding issues beyond the understanding of a layperson." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013) (internal citation omitted). It is unhelpful if it "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Conti v. Doe*, 2020 WL 6162104, at *4 (S.D.N.Y. Oct. 21, 2020) (quoting *Nimely*, 414 F.3d at 397). Expert witnesses may not determine the credibility of other witnesses' accounts or speculate as to the motivations and intentions of certain parties. *Marvel Characters*, 726 F.3d at 136.

Courts have wide latitude to decide whether to hold a Daubert hearing, and a hearing is not necessary if a court can decide on the objections to the testimony based on written submissions. *Beruashvili v. Hobart Corp.*, 2010 WL 11622750, at *5 (E.D.N.Y. July 15, 2010) (citing *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 70 (S.D.N.Y. 2001)).

## II. MAGISTRATE JUDGE NETBURN DOES NOT CLEARLY ERR IN HER DECEMBER 11, 2024 ORDER[2]

### 1. Magistrate Judge Netburn Properly Limited Youssef's Testimony

Youssef has a long career with the Federal Bureau of Investigations ("FBI"), with expertise in Middle Eastern and radical Islamic terrorism. (Expert Report of Bassem Youssef ("Youssef Report"), ECF No. 9089-1, at 1–3.) He had been assigned to Riyadh, Saudi Arabia and acquired knowledge of the political and diplomatic framework, infrastructure as well as Sunni Islamic extremism in Saudi Arabia. (*Id.* at 3.) He had also assisted with counter-terrorism investigations and operations. (*Id.* at 5.) Plaintiffs retained Youssef "as an expert in counterterrorism investigations and operations, specifically radical Islamic terrorism; Saudi Government political, diplomatic, and intelligence operations; counterintelligence; and communications analysis." (*Id.* at 6.) As Magistrate Judge Netburn notes, Youssef's testimony focuses on Al Qaeda terrorists cell operations and Ministry of Islamic Affairs ("MOIA") activities in the U.S. (Order at 14.) Youssef concludes that KSA knowingly provided critical support to Al Qaeda and organized the support structure for the hijackers through Omar al Bayoumi and Fahad al Thumairy. (Youssef Report at 9, 12–14.)

Magistrate Judge Netburn determines Youssef qualified to testify, but because his report lacks reliable foundations and provides unhelpful testimony in large part, the Order excludes large

---

[2] This Court assumes familiarity with the underlying facts and procedural history and will only relate those facts necessary to address the issues raised by the objections.

portions of it.  (Order at 12–14, 24.)  Furthermore, Magistrate Judge Netburn concluded that Youssef can testify on the limited topics of FBI's 1990s investigations, Saudi Arabia's approach to appointing foreign officials, terrorist organization's communication security and phone call analysis.  (Order at 24.)

### a) Qualification

Magistrate Judge Netburn examines Youssef's work experience at the FBI and analyzes whether the knowledge, expertise, and skills Youssef possesses match the subject matter of his testimony.  (Order at 11–13 (citing *Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 97 (S.D.N.Y. 2023).)  The Order notes that Youssef's practical work experience in investigating terrorism cells was limited to the first few years of his career, and his FBI work was in fact not centered around Al Qaeda cell operations and MOIA activities in the U.S., even though he testifies on these topics.  (*Id.* at 13–14.)  Despite that, the Order finds that Youssef is qualified to testify within limits.  (*Id.*)  This Court does not find any clear error in Magistrate Judge Netburn's careful review and analysis here.

### b) Reliability

Plaintiffs' primary objection to the Order, with respect to Youssef, is that the limitation on his testimony overlooks Youssef's counterterrorism experience, and how that experience supports the reliability and helpfulness of his report.  (Pls. Obj. at 5–13.)  Plaintiffs cite examples in the record to highlight Youssef's subject matter expertise, such as Youssef's field assignments, his written works on Al Qaeda, and his positions as Legal Attaché in Riyadh, the Chief of FBI's Digital Media Exploitation Unit, and the Chief of FBI's Counterterrorism Communications Analysis Unit. (*Id.* 5–8.)  However, Plaintiffs' objections to the Order are misplaced and do not present any

compelling reasons to doubt Magistrate Judge Netburn's decision on reliability and usefulness of Youssef's testimony.

Magistrate Judge Netburn notes that Youssef often bases his conclusions on his "observations," "experience," or "knowledge," without explaining how they have led him to his conclusions. (Order at 15–16.) The Order further explains that Youssef fails to provide sufficient background, context, and factual support for his report, and he made speculations and conjectures. (*Id.* at 16–17.) The Order also points out that Youssef relied on anonymous sources without providing sufficient information about their trustworthiness. (*Id.* 20.) Magistrate Judge Netburn made accurate observations based on facts and stated reasonable grounds to question the reliability of Youssef's testimony. Furthermore, the various reasons that Magistrate Judge Netburn explains here are valid whether or not she has given due credit to Youssef's experience. They are independent factors Magistrate Judge Netburn properly considers when making a Rule 702 reliability determination.

### i. Plaintiffs' Objections

Plaintiffs assert that the Order takes quotes from Youssef's report out of context and incorrectly suggests that he engaged in speculation. (Pls. Objs. at 9–10.) However, Plaintiffs' assertions do not negate the fact that Youssef makes conjectures about counterfactuals, often with "would have" statements, rather than offering direct accounts of the events that took place. (*See e.g.* Youssef Report at 101 (stating that Al Qaeda "would never have decided" on Los Angeles and San Diego as the destinations for two of the hijackers without existing supporting structures there).) The Order lists additional specific examples of Youssef's speculations about Bayoumi's activities in California and Al Qaeda members' decision-making. (Order at 17.) Plaintiffs make

7

generalized objections, but do not provide a valid reason that could undermine Magistrate Judge Netburn's conclusion.

Similarly, in response to the Order's finding that Youssef's report often makes conclusory assertions without sufficient context, Plaintiffs merely claim that Youssef does provide context before and after the sentences the Order cites and that the Order simply overlooks them. (Pls. Objs. at 10, 12.) However, it is not true that Magistrate Judge Netburn misses such "context" and "background" or fails to take them into consideration. Rather, the Court agrees with Magistrate Judge Netburn that the context Youssef provides is not sufficient to meet the reliability standard under Rule 702. For example, Youssef states that high-level Saudi officials' involvement in the 9/11 Attacks is confirmed because all but one of them continued to work for KSA until their death or retirement. (Youssef Report, at 226–27.) He further states that Thumairy continues to work for MOIA and Bayoumi retired after 38 years of employment with KSA. (*Id.* at 227.) The statement about these officials' involvement, simply based on their employment history with KSA is not well-founded and makes too big of a leap to be logically sound. Even considering the context surrounding this statement and the entire report, such a statement is still conclusory.

The reliability prong of Rule 702 "requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions." *Nimely*, 414 F.3d at 396. Magistrate Judge Netburn does not clearly err in finding that a significant portion of Youssef's testimony does not meet Rule 702's standards for reliability. (Order at 21.) She properly concludes that Youssef often fails to connect his experience to his conclusions and correctly applies the legal standard for reliability assessment. (*Id.* at 15 (citing *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001).)

### c) Helpfulness

Finally, Magistrate Judge Netburn correctly finds that large portions of Youssef's testimony should be excluded as unhelpful. (Order at 21.) Magistrate Judge Netburn cites multiple examples of Youssef providing improper factual narratives, opining on states of mind, and making assessment on witness credibility. (Order at 21–23 (citing Youssef Report at 27, 192, 214, 41, 45, 59, 151).) Experts' testimony is not admissible when the expert "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Therefore, Magistrate Judge Netburn properly notes that "Plaintiffs may not use Youssef or any other expert to interpret testimony and documents that the factfinder can just as easily review." (Order at 21 (citing *Est. of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 432 (S.D.N.Y. 2015)).)

Additionally, the role of determining the weight and credibility of a witness's testimony belongs exclusively to the trier of fact. *United States v. Scop*, 846 F.2d 135, 142 (2d Cir.1988). There is a plethora of such statements in the Youssef Report, e.g. "[f]rom my experience this pattern of deception indicates that Thumairy was making a deliberate effort to obfuscate and obstruct"; "[t]he persistent denials, lying, and diversions, by the deposed participants about their relationships and activities further demonstrates they are determined to protect the secret that they were engaged in illegal covert activities"; "[Thumairy's] willingness to say anything, as absurd as it may sound, to protect his superiors." (Youssef Report at 45, 154, 41.) Expert opinions that constitute evaluations of witness credibility are inadmissible. *Scop*, 846 F.2d at 142–43.

### i. Plaintiffs' Objections

Plaintiffs argue that the Order mistakenly characterizes Youssef's report as opining on states of mind rather than a proper description of Al Qaeda's modus operandi. (Pls. Objs. at 11.) However, this objection is not valid because Youssef goes beyond a factual description of Al

Qaeda's practices — he makes assumptions on the motives of people and entities and explicitly comments on people's states of mind. For example, he states that Bayoumi exactly intended the the encounter with the hijackers to look like a coincidence, and that Bayoumi knew that he needed an excuse for meeting the hijackers. (Youssef Report at 192).)

Plaintiffs further assert that Youssef does not provide an improper factual narrative, arguing that the Order fails to distinguish Youssef's opinion from presentation of supporting facts. (Pls. Objs. at 11.) The Court finds no such error in the Order and agrees with Magistrate Judge Netburn's conclusion that large portions of Youssef's report impermissibly narrate the record evidence. For example, Youssouf describes Bayoumi's trip to Los Angeles and comments that: there was no reason for Bayoumi to travel to Los Angeles and the stated purpose of renewing his passport was ingenuous; Bayoumi went through the charade of insisting that Morgan needed to get passport photos as well; this was all an act to provide a cover story for Bayoumi's visit of the Saudi Consulate in Los Angeles. (Youssef Report at 179–181.) These are not recitations of facts in evidence, but rather improper characterizations which do not help decide the case. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). Youssef's report here is used as conduit for otherwise inadmissible evidence or as a mouthpiece to highlight certain factual details. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2025 WL 354671, at *8 (S.D.N.Y. Jan. 30, 2025). Plaintiffs suggest that this Court might instruct Youssef to limit his presentation at trial of the facts undergirding his opinions (Pls. Objs. at 11), but this suggestion minimizes the pervasive improper-narrative issues with Youssef's testimony. Accordingly, Plaintiffs' objections to Magistrate Judge Netburn's usefulness determination are overruled.

Taken as a whole, Youssef's report raises too much concern as to its reliability and usefulness. The Order reasonably applies Rule 702 standards to Youssef's Report and is not clearly erroneous or contrary to law. The Youssef Report is excluded except the limited topics Magistrate Judge Netburn found admissible.

### 2. Magistrate Judge Netburn Does Not Clearly Err in Excluding Nakhleh's Testimony

Nakhleh has a long career with the Central Intelligence Agency ("CIA") as an analyst. (Nakhleh Report, ECF No. 9089-4, Annex A.) He has done academic research on the religious, ethnic, legal, and political dynamics in the Middle East, North Africa, and the Persian Gulf. (*Id.*) Nakhleh testifies about political Islam, the ideological and operational approaches to jihad within Wahhabism, and, specifically, the potential role played by KSA in aiding, abetting, and supporting the 9/11 Attacks. (*Id.* at 4.)

Because of significant issues with reliability and helpfulness, Magistrate Judge Netburn correctly excludes the entirety of Nakhleh's testimony. (Order at 33–34.) The Order explains that while Nakhleh is qualified to discuss political Islam, he fails to explain how his experience informs his conclusions, makes reductionist descriptions of Islam in Saudi Arabia, and engages in speculation and state-of-mind evaluations. (Order at 26, 33.)

### a) Qualification

Magistrate Judge Netburn correctly concludes that Nakhleh's background makes him well qualified to discuss political Islam, especially the ideological and operational aspects of violent jihad support. (Order at 26 (quoting Plaintiffs' Opposition ("Pls. Opp'n"), ECF No. 9163, at 21).) Magistrate Judge Netburn first describes Nakhleh's career in the intelligence services and academia. (Order at 26.) She then acknowledges that Saudi Arabia and its institutions have not been the primary subject of Nakhleh's unclassified work. (*Id.*) Nonetheless, because he possesses

expertise in the interplay between politics and religion, Magistrate Judge Netburn finds him qualified to opine on the ideological and operational aspects of support for violent jihad. (*Id.*)

Plaintiffs object that the Order fails to credit Nakhleh's vital work on Saudia Arabia, and point out that Nakhleh's extensive CIA work directly shaped how U.S. Presidential administrations assessed Saudi Arabia's state-sponsored radical Wahhabi doctrine. (Pls. Objs. at 14–18.) They also object that Magistrate Judge Netburn improperly confines her qualification analysis to Nakhleh's public-facing work only. (*Id.* at 15.) These objections are not an accurate characterization of the reasoning and analysis in the Order. Furthermore, Plaintiffs' objections do not sufficiently demonstrate that Saudi Arabia was a prominent subject throughout Nakhleh's career. Because Magistrate Judge Netburn properly considered all of Nakhleh's experience, there is no clear error in Magistrate Judge Netburn's qualification determination here.

### b) Reliability

Magistrate Judge Netburn concludes that Nakhleh's report is unreliable because he fails to connect his experience with the opinions he draws, does not use a reliable methodology, and relies on speculations. (Order at 27–31.) She explains that Nahkleh pontificates on terrorists' ideologies without explaining how he reached his conclusions, or how his experience informs his opinions. (*Id.* at 28–29.) She cites examples from Nahkleh's report and deposition, showing that Nakhleh oversimplifies the Saudi religious landscape by omitting non-violent ideologies. (*Id.* at 29–30.) Lastly, the Order lists examples of speculative would-have statements, similar to the ones in Youssef's report, and explains why they are unreliable. (*Id.* at 30–31.) Because Magistrate Judge Netburn carefully considered the record and reasonably concluded that Nakhleh's report does not meet the reliability requirement under Rule 702, there is no clear error.

i.   **Plaintiffs' Objections**

Plaintiffs first object that the Order fails to recognize the direct connection between Nakhleh's experience and his opinion, arguing that the Order is wrong to impose a "mechanical" reliability requirement. (Pls. Objs. at 18–19.) Plaintiffs also contend that the Order ignores detailed references to Nakhleh's report and deposition in Plaintiffs' opposition brief, which argues that he applies a reliable methodology and a well-structured interdisciplinary approach. (*Id.* at 19.) Lastly, Plaintiffs object that the Order takes the expert opinion out of context and Nakhleh does describe pre-9/11 religious landscape in Saudi Arabia and acknowledge alternative schools of Islam. (*Id.* at 20.)

None of these objections shows any clear error or unreasonable application of law in the Order. Nakhleh explains his methodology as a combination of reliance on his own experience and observations, and the use of interdisciplinary research, through reading, engaging with academic experts, conducting research visits, and attending academic seminars and conferences. (Nahkleh's Report 2–7; Pls. O'ppn at 38–41.) Reliance on literature and the expert's first-hand experience and background is certainly permissible. *In re: N. Sea Brent Crude Oil Futures Litig.*, No. 1:13-MD-02475(ALC), 2016 WL 1271063, at *7 (S.D.N.Y. Mar. 29, 2016), *aff'd sub nom. Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4 (2d Cir. 2019). However, Nakhleh never specifies what his "comprehensive interdisciplinary methodology" consists of. Generalized descriptions, such as "thorough review," "vibrant academic outreach," and "dedicated analysis," do not pass the test for reliable methodology. (Nakhleh Report at 3, 4, 7.) Nakhleh claims to rely extensively on academic research, but often makes sweeping statements about Wahabism without citing to any academic support.

Furthermore, Magistrate Judge Netburn's requirement that Nakhleh must explain how his experience leads to his opinion is not an unreasonable application of law. The Court should consider the indicia of reliability under Rule 702, which could include "(1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." *Amorgianos*, 303 F.3d at 265 (internal quotation marks omitted.) Without a sufficient explanation of how Nakhleh derives his conclusion from his experience, knowledge, and academic research, the report lacks any indicia of reliability.

Although Nakhleh's report includes the religious doctrine of the Saudi government in the pre-9/11 era and acknowledges the existence of other schools of Islam, this fact does not change the conclusion that Nahkleh's characterization of Saudi ideology is a skewed one. Magistrate Judge Netburn does not err when concluding that Nakhleh's testimony fails to provide a nuanced view of the range of Islamic views within Saudi Arabia. (Order at 30.)

### c) Helpfulness

Magistrate Judge Netburn notes that because Nakhleh impermissibly opines on witnesses' credibility and people's subjective state of minds, it is excluded on usefulness grounds. (Order at 31–33.) Direct attacks on witness credibility are impermissible, even when such opinions are rooted in the expert's special knowledge. *Marvel Characters*, 726 F.3d at 136; *Nimely*, 414 F.3d at 398. The Order properly identifies various examples of Nakhleh assessing individuals' states of mind throughout his testimony. (Order, at 30–32.) Expert testimony cannot weigh in on subjective states of mind. *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 192. There is no clear error here.

i.   **Plaintiffs' Objections**

Plaintiffs object that the Order overlooks Nakhleh's unique insights and detailed knowledge, and wrongly characterizes his testimony as "direct attacks on witness credibility." (Pls. Objs. at 21.)   However, there is no mistake in the finding that Nakhleh opines on the credibility of Saudi witnesses throughout his report.   (Order at 32 (quoting Nakhleh Report, at 146–67).)

Plaintiffs also assert that the Order erroneously concluded that Nakhleh's testimony is speculative and weighs on subjective states of mind.   (Pls. Objs. at 21.)   But they fail to dispute Nakhleh's state of mind testimony, merely stating that Nakhleh's basic opinions are proper and that his assessment is grounded in his experience.   (Pls. Objs. at 21.)

Plaintiffs argue that the Order clearly errs by rejecting all of Nakhleh's testimony rather than retaining any of his valuable opinions.   (Pls. Objs., at 17–18.)   A court may retain parts of expert testimony "when the unreliable portion of an opinion can easily be distinguished from testimony that could help the jury[.]" *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 665 (2d Cir. 2016) (citations omitted).   In this case, the pervasive reliability and helpfulness issues make it difficult for this Court to exclude only the problematic portions.   As Magistrate Judge Netburn correctly points out, Nakhleh's testimony suffers from multiple infirmities: not explaining how his experience informs his conclusions, making reductionist descriptions of Islam in Saudi Arabia, speculating on past events, and attacking witness credibility.   (Order, at 33.)   Such significant defects make it difficult for this Court to "prune away all of the problematic" elements, and this Court is not obligated to do so. *In re Pfizer*, 819 F.3d at 665 (internal citation omitted).

Magistrate Judge Netburn's decision to exclude the entirety of Nakhleh's report is the correct one.

### 3. Magistrate Judge Netburn Does Not Clearly Err in Excluding Hitchens's Testimony

Hitchens has teaching and research experience on topics related to terrorism. (Expert Report of Dr. Alexander Meleagrou-Hitchens ("Hitchens Report"), ECF No. 9089-6, at 1; Annex A.) More specifically, he conducted research into Anwar al Awlaki's ideology and activities for many years. (*Id.* at 5–8.) He opines on Anwar al-Awlaki's role and involvement in the 9/11 Attacks and his connections to some of the hijackers. (*Id.* at 8.) Magistrate Judge Netburn finds Hitchens's testimony unreliable and unhelpful, thereby excluding all of his report. (Order at 35–40.) There is no clear error in this determination.

#### a) Qualification

Magistrate Judge Netburn thoroughly reviewed Hitchens' report and correctly concludes that he has extensive knowledge of Anwar al Awlaki. (Order at 35.) The Order further explains that Hitchens has experience reviewing and analyzing criminal investigative records and is therefore qualified to review documents related to Awlaki's ideology, works, and alleged involvement in the 9/11 Attacks. (Order at 35.) Plaintiffs do not object to Magistrate Judge Netburn's assessment as to Hitchens' qualification and there is no clear error here.

#### b) Reliability

Magistrate Judge Netburn first identifies the methodology Hitchens purports to adopt – social movement theory, framing theory, and collective identity construction. (Order at 36.) However, the Order explains that Hitchens' report does not in fact refer to any of these methods beyond the introduction section. (*Id.*) It is therefore difficult to evaluate whether the methods are reliably applied. (*Id.*) This determination is not contrary to law because when an expert opinion is based on a methodology that is inadequate to support the conclusions reached, *Daubert* and Rule

16

701 mandate the exclusion of unreliable testimony. *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005).

Magistrate Judge Netburn also questions Hitchens' report because there is a significant difference in his opinions about the timing and reasons for Awlaki's radicalization. (Order at 37.) The Court agrees with Magistrate Judge Netburn that Plaintiffs do not meet their burden to justify this change in position before and after Hitchens was retained as an expert. (Order at 38.) Therefore, the Court finds no clear error here.

Lastly, the Order's conclusion that Hitchens relies on speculation and conjecture is soundly based on excerpts from the report and Hitchens' own admission. (*Id.*) The Court also identifies additional examples of Hitchens' testimony based on subjective beliefs and unfounded assumptions. (*See e.g.* Hitchens Report at 23 ("The mosque's location was 'off the beaten track', and the hijackers would not have just stumbled upon it."); *Id.* at 26 ("It is likely that the hijackers and their facilitators in the United States were sent to seek out Awlaki because his teachings and preachings".) Accordingly, the Order commits no error when finding Hitchens' report unreliable.

### i. Plaintiffs' Objections

Plaintiffs argue that the Order overlooks Hitchens' core research methodology and mistakenly criticizes Hitchens for not applying a social science framework to the facts. (Pls. Objs. at 22.) This argument is unavailing because it does not address the issues Magistrate Judge Netburn identifies with Hitchens' methodology, namely that he merely mentions the names of the methodology without tying them to the conclusions he makes. None of the cases Plaintiffs cite in their objections involves an expert claiming to have used certain analytical methods but failing to explain how he applied such methods. Despite Plaintiffs' objections, they still fail to identify any newly discovered evidence that could have reasonably prompted Hitchens to change his views

about Awlaki's radicalization. Lastly, Plaintiffs make no objection to Magistrate Judge Netburn's determination that Hitchens' report is speculative.

Therefore, Plaintiffs' objections do not change the Court's view and are overruled.

### c) Helpfulness

For the same reasons as stated above, Magistrate Judge Netburn identifies examples of Hitchens making witness credibility determinations and opining on states of mind. (Order at 39.) The Court finds no error in her reasoning and will not repeat the same analysis. Furthermore, Plaintiffs make no objections on the Order's assessment here.

Therefore, Magistrate Judge Netburn correctly found that deficiencies in reliability and helpfulness warrant excluding Hitchens's testimony. (Order at 40.)

### 4. Magistrate Judge Netburn Does Not Clearly Err in Excluding Sageman's Testimony

Sageman is an academic and consultant with expertise in terrorism, terrorist organizations and political violence. (Rebuttal Expert Report of Marc Sageman ("Sageman Report"), ECF No. 9118-1, at 1; Sageman Curriculum Vitae, ECF No. 9166-1.) KSA retains Sageman to rebut the testimonies by Plaintiffs' experts Nakhleh, Youssef, Evan Kohlmann, Hitchens, and Steven Simon. (Sageman Report at 1.) Sageman concludes that the complete lack of evidence of any KSA support of the hijackers in California shows that no KSA official ever offered such support. (*Id.* at 728–29.)

Magistrate Judge Netburn excludes Sageman's testimony on qualification, reliability, and helpfulness grounds. (Order at 56.) She notes that Sageman testifies beyond the scope of his expertise, questionably applies methodology to reach opinions favorable to KSA, and gives a long summary of KSA's theory of the case. (*Id.*)

KSA moved for partial reconsideration of the Order, arguing that Sageman should testify about tradecraft and communications analysis to rebut the testimony of Plaintiffs' expert Youssef. (Saudi Arabia Mot. for Partial Reconsideration, ECF No. 10646; *see also* Saudi Arabia Reply, ECF No. 10662.) On January 31, 2025, Magistrate Judge Netburn denied KSA's motion for partial reconsideration. (Opinion & Order ("Reconsideration Order"), ECF No. 10694, at 1.)

### a) Qualification

Magistrate Judge Netburn first reviewed Sageman's background and describes the areas of his expertise and specialized knowledge. (Order at 44–45.) She finds that broad topics related to Saudi Arabia's institutions, policies, Islam, law enforcement, communication analysis and Arabic communications do not fall within Sageman's expertise. (*Id.* at 46–48.) The Order carefully limits Sageman's testimony to topics related to Saudi's policy as to Al Qaeda, Al Qaeda's approach to Islam, certain terrorists groups, and clandestine communication techniques. (*Id.*) The Court agrees with the boundaries Magistrate Judge Netburn draws because they are consistent with the areas of experiences Sageman possesses.

KSA objects to the portion of the Order that finds Sageman lacking expertise in telephone communication analysis. (KSA Obj. at 2.) KSA argues that the Order overlooks certain portions of Sageman's testimony and a few books that talk about Sageman's experience with analyzing phone and electronic evidence. (*Id.* at 3.) Reviewing this evidence does not leave the Court with a definite and firm conviction that Magistrate Judge Netburn has made a mistake. Magistrate Judge Netburn explains that Sageman fails to provide concrete information about his experience due to the confidential nature of his work. (Order at 47.) KSA points to additional testimonies where Sageman admits that the details of his work remain classified, and thus does not convince the Court that Magistrate Judge Netburn's assessment is erroneous.

The two books KSA refers to do not show that telephone analysis was the backbone or a major component of Sageman's investigative work. Also, they do not overcome the vague statements from Sageman's deposition, which Magistrate Judge Netburn correctly relies on. She explains, when asked whether he would consider himself an expert in communication analysis, Sageman equivocates. (Reconsideration Order at 5.) Upon reconsideration, Magistrate Judge Netburn correctly points out that KSA presents no new evidence to warrant a revision of her Order. (Reconsideration Order at 4.) Therefore, KSA's objection is overruled.

#### b) Reliability

The Order identifies multiple reliability issues in Sageman's testimony, such as selective citations to the evidence, internal contradictions, speculative opinions and so-say statements. (Order at 48–54.) For each of these issues, Magistrate Judge Netburn presents a few examples from Sageman's report to illustrate the lack of reliability. (*Id.*) The Court finds no clear error.

KSA objects that even though Magistrate Judge Netburn finds Sageman qualified to comment on clandestine communication techniques, the Order does not discuss the reliability or admissibility of his report on this topic. (KSA Obj. at 1.) It also objects that the Order fails to address the reliability of Sageman's testimony to rebut Youssef's communication analysis. (*Id.* at 3.) These objections misinterpret the Order's reliability assessment, which applies to the entire report. Magistrate Judge Netburn notes that Sageman's lengthy report does not consistently provide a full picture, and there are global issues with speculation and *ipse dixit*. (Order at 54–56.) KSA's argument that the Order fails to consider and apply *Daubert* standard to Sageman's opinions as to clandestine communications and tradecraft is misplaced.

### c) Helpfulness

The Order also correctly concludes that Sageman's testimony is unhelpful because it comments on states of mind and offers an improper factual narrative by interpreting the evidence. (*Id.* at 54–56.) For the same reasons stated for other experts, the Court agrees with Magistrate Judge Netburn's assessment.

KSA has a similar objection here, that the Order fails to address the helpfulness of Sageman's opinion on the topic of communication analysis. (KSA Obj. at 3.) Contrary to KSA's mischaracterization, the Order's discussion of the report's lack of helpfulness applies to the entire report. Magistrate Judge Netburn properly explains that Sageman's entire report suffers from "several fundamental issues," such as engaging in speculation and offering an improper factual narrative that merely summarizes Saudi Arabia's theory of the case. (Reconsideration Order, at 3 (citing Order, at 55–56).) In particular, the Court sees large portions of the report give thinly veiled legal opinions and improper narratives, including the examples KSA identifies in its Objection. They do more than "proving important context" for the factfinder, and overreach, interpreting evidence that should be left for factfinders themselves to do so. Additionally, Magistrate Judge Netburn specifically describes the improper attacks Sageman launches at Youssef as a reason for finding his report not helpful. (Order at 56.) Therefore, KSA's objections are overruled, and the Order is not erroneous in excluding Sageman's report.

### 5. Magistrate Judge Netburn Does Not Clearly Err in Admitting David Rundell's Testimony

Rundell had worked in various positions with the State Department and spent a long time in Saudi Arabia. (Rebuttal Expert Report of David Henry Rundell, "Rundell Report," ECF No. 9118-2, at 1.) At various positions in his career, he focused on commercial, economic, and political issues and KSA's relationship with the U.S. (*Id.*) KSA offers Rundell as a rebuttal witness to the

reports from Nakhleh, Lawrence Dunham, and Simon. (*Id.* at 2.) Magistrate Judge Netburn decides that Rundell is qualified to testify on U.S.–Saudi relations, and his testimony is both reliable and helpful, thereby denying Plaintiffs' motion to exclude Rundell's testimony. (Order at 60.)

### a) Qualification

Magistrate Judge Netburn notes that Rundell's long career at the U.S. Embassy in Saudi Arabia qualifies him to testify about U.S.–Saudi relations. (Order at 58.) However, the Order finds his background lacking for him to opine on Al Qaeda and its development. (*Id.*)

Plaintiffs object that the Order mistakenly allows Rundell to report on KSA's pre-9/11 activities because his work experience related to KSA and terrorism began after 9/11. (Pls. Obj. at 24.) Plaintiffs contend that Rundell was in Saudi Arabia for only seven out of the 22 years from July 1980 to July 2002 while working in the Foreign Service. (Pls. Objs. at 25.) However, Plaintiffs' characterization of Rundell as a functionary is unfair. Rundell had served as a political officer in Riyadh and worked on a Saudi account in the State Department's Office of Congressional Relations in the mid-1980s. (Rundell Report at 1.) The work and experience he obtained as to KSA began well before the 9/11 Attacks and Magistrate Judge Netburn properly credits him for that experience. There is no error in Magistrate Judge Netburn's assessment that he is qualified to testify on the diplomatic relations between KSA and the U.S.

### b) Reliability

Magistrate Judge Netburn notes that Rundell does not describe his methodology, but he relies on his experience to provide background knowledge and context. (Order at 58–59.) She also finds that his views are consistent with his experience in the Foreign Services and does not necessarily indicate bias. (*Id.* at 59–60.)

Plaintiffs assert that the Order mistakenly allows Rundell to render unfounded judgments based on his post-9/11 experiences and criticize Rundell's refusal to analyze discovery materials. (Pls. Objs. at 25.) Plaintiffs again argue that Rundell's testimony is unreliable because of his bias in favor of Saudi Arabia and his conclusions based on his own *ipse dixit*. (*Id.*) These are essentially the same arguments as those in Plaintiffs' *Daubert* motion. (Pls. Mem. in Support of *Daubert* Motion ("Pls. Mem."), ECF No. 9092, at 66–69.) The Order already considers and makes determinations on them and the Court will not repeat the analysis.

#### c) Helpfulness

Magistrate Judge Netburn notes that the only objection Plaintiffs have is that Rundell opines on what KSA conceivably would have done, which could potentially be an attempt to substitute his expert judgment for the factfinder's. (Oder at 60; Pls. Mem. at 67.) Nonetheless, the Order interprets that statement as fervent descriptions of the importance of U.S.–Saudi relations to KSA. (*Id.*) Because this is a reasonable interpretation and Plaintiffs' arguments against the helpfulness of Rundell's testimony are otherwise vague, the Court finds no error in Magistrate Judge Netburn's determination.

### 6. Magistrate Judge Netburn Does Not Clearly Err in Her Decisions on Douglas Moss and Barry Schiff

Neither party objects to Magistrate Judge Netburn's decisions concerning Plaintiffs' expert Schiff and KSA's expert Moss. The Court does not find any clear error in these portions of the Order.

The Order properly considers Moss's methodology and explains that the statements that Plaintiffs allege are speculative can be construed as offering alternative scenarios for the equations. (Order at 61–62.) As to Schiff, Magistrate Judge Netburn notes that he does not claim to have any expertise related to criminal investigations or terrorism, and therefore correctly determines him

unqualified to testify about Bayoumi's relationship with the hijackers. (Order at 41.) The Order concludes that Schiff's testimony only has minor analytical gaps and one potentially speculative statement, which are not sufficient to undermine the reliability of his report. (Order at 42.) Lastly, the Court agrees with Magistrate Judge Netburn that Schiff has legitimate reasons to not consider alternative explanations for the equations. (*Id.* at 42–43.) Finally, the Order properly concludes that other than the comments on Bayoumi's credibility as a witness, his testimony does not raise major helpfulness issues. (*Id.* at 43.)

## III. MAGISTRATE JUDGE NETBURN DOES NOT CLEARLY ERR IN DENYING A *DAUBERT* HEARING

Plaintiffs argue that the Order should have granted Plaintiffs' request for a *Daubert* hearing to resolve questions regarding the experts' credentials and opinions. (Pls. Objs. at 3 (citing *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 479 (S.D.N.Y. 2000).) However, district courts are not mandated to hold *Daubert* hearings. *See Molina*, 199 F. Supp. 2d at 70. This Court finds no issue with Magistrate Judge Netburn's decision not to hold a *Daubert* hearing based on her thorough review of both parties' expert testimonies and written submissions, which are sufficient for her and the Court to reach their decisions. *See e.g.* United States v. Williams, 506 F.3d 151, 161 (2d Cir.2007) (courts possess latitude in deciding whether or not a *Daubert* hearing is needed.); *United States v. Santiago,* 199 F.Supp.2d 101, 112 (S.D.N.Y.2002) (finding that a *Daubert* hearing was not necessary where a reliability determination could be established through foundation questions at trial and noting that defendants are free to challenge witnesses qualifications of his methodology through voir dire.)[3]

---

[3] In the context of a non-jury trial, the Court's decision today does not preclude reconsideration of the relevant testimony or a *Daubert* hearing later. *See Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 743 F. Supp. 3d 530, 537 (S.D.N.Y. 2024) (because *Daubert* standard does not apply straightforwardly in the context of bench trials, courts can reserve judgment on ruling on *Daubert*

## IV.    CONCLUSION

The Parties' Rule 72 objections to Magistrate Judge Netburn's December 11, 2024 Order are OVERRULED.  Magistrate Judge Netburn's Order is ADOPTED in its entirety.

Dated: August 28, 2025
       New York, New York

SO ORDERED.

George B. Daniels

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

---

motions, and later, after the evidence is presented at trial, determine whether it meets the requirement of *Daubert*.) (Internal citation and quotation marks omitted.)