UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | : Civil Action No. 03 MDL 1570 (GBD) (SN) <br> : ECF Case <br> : |

This document relates to:
All Actions

---

## MEMORANDUM RULE 72 OBJECTIONS TO THE AUGUST 18, 2025 ORDER [ECF NO. 11157] WHICH GRANTED IN PART DEFENDANTS' MOTION TO LIMIT EXPERT TESTIMONY

---

Sean P. Carter
J. Scott Tarbutton
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*For the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

Robert T. Haefele
Jodi Westbrook Flowers
Donald A. Migliori
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*For Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

Steven R. Pounian
James Gavin Simpson
KREINDLER & KREINDLER LLP
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

October 3, 2025

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    STANDARD OF REVIEW .............................................................................. 1

III.   PLAINTIFFS' OBJECTIONS .......................................................................... 2

    A.   Kohlmann Has Extensive Knowledge, Skill, Experience, Training, and Education Derived from Multiple Sources Over a Decades-Long Career in Counterterrorism Consulting ................................................................................. 3

    B.   Kohlmann Is Qualified to Testify About Counterterrorism Issues that Include Issues Touching on Islam and Terror Financing ............................................... 6

        1.   Islamic Doctrine ................................................................................ 7

        2.   Financial Accounting ......................................................................... 8

    C.   The Order Erred in its Assessment of Kohlmann's Methodology .............................. 10

IV.    CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*American Empire Surplus Lines Insurance Company v. J.R. Contracting & Environmental Consulting, Inc.*, 754 F. Supp. 3d 456 (S.D.N.Y. 2024) ........................................................ 2, 8

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008) ........................ 1

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) .................................... 10

*MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008) ............................................... 2

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) ......................................................... 6

*Owens v. Republic of Sudan*, 826 F. Supp. 2d 128 (D.D.C. 2011) ........................................ 10, 11

*Peerless Ins. Co. v. Marley Engineered Prods. LLC*, No. 05-CV-4848 (AKT), 2008 WL 7440158 (E.D.N.Y. June 12, 2008)................................................................. 10

*United States v. Abu Ghayth*, No. S14 98 Crim. 1023(LAK), 2014 WL 978629 (S.D.N.Y. Feb. 28, 2014) ..................................................................................... 9, 13

*United States v. Abu-Jihaad*, 553 F. Supp. 2d 121 (D. Conn. 2008) .......................................... 3

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011).......................................................... 12, 13

*United States v. Ferguson*, 676 F.3d 260 (2d Cir. 2011) ............................................................. 6

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) .......................................................... 9, 13

*United States v. Joseph*, 542 F.3d 13 (2d Cir. 2008) ................................................................... 6

*United States v. Kassir*, 2009 WL 919767 (S.D.N.Y. Apr. 2, 2009)..................................... 10, 13

*United States v. Paracha*, 2006 WL 12768 (S.D.N.Y. Jan. 3, 2006) ................................... 11, 12

*United States v. Paracha*, 313 Fed. App'x. 347 (2d Cir. 2008)...................................... 11, 12, 13

*United States v. Sabir*, No. S4 05 Cr. 673(LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007) ........................................................................................... 9

*United States v. Subasic*, 568 F. App'x 234 (4th Cir. 2014) ................................................... 8, 13

*Washington v. Kellwood Co.*, 105 F. Supp. 3d 293 (S.D.N.Y. 2015)........................................... 2

**Statutes**

28 U.S.C. § 636(b)(1)(A)............................................................................................................... 1

**Other Authorities**

*Daubert* H'rg in *U.S. v. Paracha*, No. 03-cr-1197(SHS) (S.D.N.Y. Nov. 2, 2005).............. passim

**Rules**

Fed. R. Civ. P. 72(a) ...................................................................................................................... 1

Fed. R. Evid. 702 .............................................................................................................. 1, 8, 9, 11

## I.    INTRODUCTION

Plaintiffs respectfully file these Fed. R. Civ. P. 72(a) Objections to those portions of the August 18, 2025 Order of Magistrate Judge Netburn at ECF No. 11157 ("Order"), which granted in part the motion of the "Charity Defendants'" to limit the expert testimony of Plaintiffs' expert Evan Kohlmann. Specifically, Plaintiffs object to the limitations the Order placed on Kohlmann's testimony as to matters that touch on Islam and finance. Those limitations overlooked facts in the record and misapplied the liberal and flexible standards for expert qualifications applied by courts in this Circuit.

Plaintiffs respectfully object to the Order and request that Judge Daniels reject as "clearly erroneous" the portions of the Order as indicated herein, and allow the expert to testify to these issues as indicated herein.

## II.    STANDARD OF REVIEW

A district court must modify or set aside those parts of a magistrate judge's order related to non-dispositive matters that are clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "A district court may find a magistrate judge's ruling clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (cleaned up). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (cleaned up).

Rule 702 of the Federal Rules of Evidence requires that an expert be qualified by "knowledge, skill, experience, training, or education." Courts in this circuit consistently have applied a liberal and flexible approach to evaluating expert qualifications, emphasizing that "an

expert should not be required to satisfy an overly narrow test of his own qualifications."
*Washington v. Kellwood Co*., 105 F. Supp. 3d 293 (S.D.N.Y. 2015)). The Magistrate Judge was thus required to focus on whether the expert's knowledge, skill, experience, training, or education is sufficient to assist the trier of fact, rather than on whether the expert has formal credentials or specialized expertise in every aspect of the subject matter. *American Empire Surplus Lines Insurance Company v. J.R. Contracting & Environmental Consulting, Inc.*, 754 F. Supp. 3d 456, 464 (S.D.N.Y. 2024).

## III.    PLAINTIFFS' OBJECTIONS

Magistrate Judge Netburn correctly observed that Evan Kohlmann is "perhaps the most prolific terrorism expert witness in this nation's history" (Op. at 10), and that—premised on many other courts' *Daubert* hearing assessments of Kohlmann's education and training, his employment at organizations focused on terrorism, his authorship of academic works and a book on al Qaeda, and his consulting for federal agencies (both within and outside of litigation)—the Second Circuit and multiple other circuit and district courts have found Kohlmann well-qualified as a counterterrorism expert (Op. at 14-16).

The Order purports to limit Kohlmann's testimony regarding "Islam" and "financial accounting"—albeit the extent of those limitations is uncertain. Yet Kohlmann's decades of experience in counterterrorism and al Qaeda have equipped him with substantial expertise in Islam and financial accounting, because they intersect with, and are inseparable from, the core subject matters about which Kohlmann is qualified to testify.

A.    **Kohlmann Has Extensive Knowledge, Skill, Experience, Training, and Education Derived from Multiple Sources Over a Decades-Long Career in Counterterrorism Consulting**

The Order recognized that Kohlmann is qualified based on his extensive knowledge (Op. at 21).[1] The record here supports Kohlmann's qualifications based on the breadth of his relevant knowledge, skill, experience, training, and education, as do multiple previous decisions qualifying Kohlmann premised on lengthy *Daubert* hearings.

Kohlmann's vast experience is derived from multiple sources spanning decades. For example, these sources of experience include his completed undergraduate and graduate studies at the Edmund A. Walsh School of Foreign Service at Georgetown University in Washington, D.C., and at the University of Pennsylvania, the latter while attending law school concurrently; was employed at the Investigative Project on Terrorism ("IPT") and at FlashPoint; and has consulted, in both litigation and non-litigation settings, for more than a decade for a multitude of United States and foreign government agencies. The relevant areas of experience are amply set forth in Kohlmann's Report (ECF No. 9345-1) and his curriculum vitae (*see, e.g.*, ECF No. 9345-4 (hereinafter "*Kohlmann CV*"), underscored in his deposition testimony (*see, e.g.,* Kohlmann Dep. Tr. (Aug. 5, 2021) 142:14 to 146:10), and were covered extensively in other *Daubert* hearings in which Kohlmann's expertise was recognized and approved. *See Daubert* H'rg in *U.S. v. Paracha*, No. 03-cr-1197(SHS) ECF No. 74 (S.D.N.Y. Nov. 2, 2005) at 20:17 to 29:14 (hereinafter "*Paracha Tr.*") (describing Kohlmann's consulting work both at IPT and FlashPoint, as well as his consultation work for government agencies, including the Department of Justice, the Federal Bureau of Investigation, National Security Council, U.S. Treasury

---

[1] As another court recognized about Kohlmann's study of terrorism issues over 17 years ago, although he was "relatively young to be an expert, it is apparent that these subjects are Mr. Kohlmann's life work, and he has, therefore, acquired a considerable amount of information and documentation on these subjects." *United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 125 (D. Conn. 2008).

Department, the Department of Homeland Security, Bureau of Immigrations and Customs Enforcement, the National Counterterrorism Center, local and state law enforcement agencies, and with international authorities in Bosnia Herzegovina).

Kohlman earned an undergraduate degree, with *magna cum laude* honors, from the Edmund A. Walsh School of Foreign Service at Georgetown University in Washington, D.C. (*Kohlmann CV*; *Paracha Tr.* 10:21-25; 14:24-25), where he majored in international politics with a focus on international securities studies (*Kohlmann CV*; *Paracha Tr.* 11:10-11). As a supplement to his major course of study, Kohlmann completed separate coursework for a certificate program within the school's Center for Muslim-Christian Understanding that offered a certificate in Muslim-Christian Understanding. Kohlmann earned a certificate in Muslim-Christian Understanding through that program. To earn the certificate, in addition to completing other required coursework, Kohlmann was also required to author a capstone thesis with the approval and guidance of the program's directors. In his case, he did so with the mentorship of one of the program directors, Dr. John Voll. *Paracha Tr.* at 11-12. In addition, the certificate program included graduate level courses and students participating in the program, like Kohlmann, were required to undertake work comparable to the graduate-level students in the same course. *See* ECF No. 9344, n. 36 (quoting Exh. 26 (Certificate Requirements)).

Kohlmann also worked as a research assistant and took courses with Professor Mamoun Fandy at the Center for Contemporary Arab Studies ("CCAS"), a second center at Georgetown's School of Foreign Service. Much of Kohlmann's research work for Prof. Fandy was for Prof. Fandy's then-forthcoming book, *Saudi Arabia and the Politics of Dissent*. A main focus of Kohlmann's work with Prof. Fandy, both in class and as his research assistant, concerned Saudi dissident groups, including Osama bin Laden and al Qaeda. (*Paracha Tr.* at 14) One chapter in

Prof. Fandy's book deals specifically with Osama bin Laden and his propaganda and international political structure beyond the borders of Saudi Arabia and Afghanistan.

      While at Georgetown, Kohlmann authored two additional mentor-approved and supervised thesis papers relevant to his overall expertise: first, *A Bitter Harvest, the Soviet Intervention in Afghanistan*, an academic study assessing the modern political development of Afghanistan, the Taliban movement, and extremism emanating from the Afghan Soviet war (*Id.* at 15-16; and second, *The Legacy of the Arab Afghans, A Case Study*," a comparative analysis of the leadership, organization, origins and destinations of various Arab Afghan groups.

      Kohlmann's extensive experience is also derived from his years of investigation and consultation work while employed at IPT, and later at FlashPoint, a business he initially started, partially owned, and worked for. Kohlmann's professional positions, both while at IPT and within his own business, placed him in various consulting and training positions, including consulting for and teaching government agencies. While at IPT, for example, he worked with the Department of Justice, the FBI, the National Security Council, the U.S. Treasury Department, the Department of Homeland Security, the U.S. Bureau of Immigration and Customs Enforcement, and the National Counterterrorism Center (NCTC). (*Paracha Tr.* at 27-28.) Through his own consulting business, Kohlmann continued consulting with government agencies (including distinct from serving as a litigation expert witness) similar to the work provided while at IPT, including consulting for NCTC, the Department of Justice, and the FBI (Kohlmann Tr. (Aug. 5, 2021) at 118-121; *Paracha Tr*. at 28-29), and consulting for other private nonprofit counterterrorism research organizations. (*Id.* at 29.) In addition, he has consulted for the Supreme Court of Bosnia Herzegovina, the International Criminal Tribunal for the former Yugoslavia, at the Hague, and for the Antiterrorism unit for the Metropolitan Police in the

United Kingdom. (*Id*. at 29.) The record is clear that Kohlmann's expertise encompasses not only engagements as a qualified litigation expert, but also in the context of investigations and other contexts. *See generally* Kohlmann CV.

As the Second Circuit has emphasized, "the place to 'quibble with [an expert's] academic training' is 'on cross-examination' and goes to his 'testimony's weight ... not its admissibility.'" *United States v. Joseph*, 542 F.3d 13, 21–22 (2d Cir. 2008) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)), abrogated on other grounds by *United States v. Ferguson*, 676 F.3d 260, 276 n. 14 (2d Cir. 2011).

### B.    Kohlmann Is Qualified to Testify About Counterterrorism Issues that Include Issues Touching on Islam and Terror Financing

From his decades of education, training, and experience in counterterrorism, Kohlmann has developed expertise touching on and intersecting with both Islam and financial accounting. While Plaintiffs do not offer Kohlmann as an expert on doctrinal differences between different schools of Islam or similarly esoteric theological matters, and nor do they offer him as a forensic accounting or auditing expert, Kohlmann's testimony within the context of his expertise, including, *e.g*., on al Qaeda's origins and structure, is expected to reference certain basic and foundational issues that could be construed as touching upon "religion" and "financial matters." For one example, al Qaeda is most obviously a terrorist organization that is self-described as being Islamic in nature,[2] having grown out of the jihad in Afghanistan. It would be impractical to

---

[2] Osama bin Laden was consistently clear that al Qaeda was driven by an Islamic identity (even if not an accurate one) and required finances. *See, e.g.,* 9/11 Commission Final Report at 47 (stating that, in 1998, Bin Laden arranged for an Arabic newspaper in London to publish what he termed "a fatwa issued in the name of a "World Islamic Front."). In an April 23, 2006 public speech by bin Laden, he declared: "I am directing this speech to all the Islamic Umma . . . . Our objective is obvious, that is defending Islam…. It is a duty for the Umma . . . to give. . . their money, experiences, and all types of material support . . . . Jihad today is an imperative for every Muslim. The Umma will commit sin if it did not provide adequate material support for jihad." Osama bin Laden, April 23, 2006 (available at https://www.aljazeera.com/news/2006/4/23/transcript-bin-laden-accuses-west (last accessed Oct. 2, 2025)).

expect an expert to provide the jury with a coherent overview of al Qaeda's history and origin without referencing the organization's religious orientation and roots in a conflict that had religious dimensions. Indeed, virtually all of the texts and government reports that form the body of authoritative knowledge concerning al Qaeda's establishment and development discuss its orientation as an Islamic extremist organization and efforts to justify its actions and recruit support under the banner of a religious "jihad." An expert explaining al Qaeda's history and development must also address al Qaeda's funding needs as an international terrorist organization and the ways in which it raised and moved funds. These too are basic and foundational aspects of al Qaeda's history that feature prominently in virtually all authoritative treatments of al Qaeda's origins and structure.

If the effect of the Order were to prevent Kohlmann from addressing issues of Islam or financial accounting as they intersect with his expertise, then the Order would operate improperly to prevent him from speaking to core areas of his expertise contrary to this Circuit's standards. Balancing this Circuit's liberal approach to evaluating expert qualifications—which includes the principle that experts are not required to have formal credentials or specialized training in every aspect of the subject matter, *American Empire*, 754 F. Supp. 3d at 464—with the Order's goal of limiting Kohlmann to testifying within his expertise, Kohlmann's decades of recognized counterterrorism expertise as set forth above, qualify Kohlmann to testify as to matters essential to understanding al Qaeda's origins, history, structure and leadership, even where his testimony touches on Islam or financial accounting.

### 1.    Islamic Doctrine

The Order recognized Kohlmann's expertise on al Qaeda's origins, history, structure, and leadership (Op. at 33). To explain al Qaeda (or other extremist entities motivated by interpretations of Islam) requires at least broad-based discourse about core Islamic liturgy.

Kohlmann's formal higher education and practical experience have prepared him for that discourse, and he should not be prevented from drawing on the full breadth of his expertise in his testimony before this Court.

Other courts have qualified Kohlmann to testify on issues that touch on Islam. For example, the Fourth Circuit upheld his qualification to testify specifically on "Islamic extremism." *United States v. Subasic*, 568 F. App'x 234, 235 (4th Cir. 2014) (finding no abuse of discretion in qualifying Kohlmann as an expert on Islamic extremism). The Fourth Circuit has also approved Kohlmann's qualification to testify on the "meaning and context of various words and phrases … commonly used by persons practicing extreme Islam;" the "structure and leadership of groups adhering to the principles of Islamic extremism;" and the "manner and means employed by extremist Islamic groups to recruit individuals and the process of radicalization which occurs within such groups." *United States v. Hassan*, 742 F.3d 104, 130-31 (4th Cir. 2014). Trial courts also have qualified Kohlmann to testify in cases where tenets of Islam were coopted into violent political movements. *See United States v. Sabir*, No. S4 05 Cr. 673(LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007); *United States v. Abu Ghayth*, No. S14 98 Crim. 1023(LAK), 2014 WL 978629 (S.D.N.Y. Feb. 28, 2014). Thus, courts repeatedly have found Kohlmann to possess the expertise to testify as to Islamic extremism.[3] His testimony here should not be limited so as to artificially separate the subjects of al Qaeda and Islam.

### 2.    Financial Accounting

Experts may be qualified to opine on a topic via their education or experience. Fed. R. Evid. 702. Formal education in a field of study is not required to be qualified as an expert, and

---

[3] Federal courts have also qualified Kohlmann to testify as to common language used by terrorists. *See* 03-md-1570 ECF No. 9345-24 (*USA v. Osmakac,* 8:12-cr-45-T-35-AEP (M.D.Fl. Sept. 15.2023)) ("the Court finds that Kohlmann is qualified to testify as to the definition and explanation of various terms, phrases, and references, specifically, the terms hijrah, big hijrah, kufar, takfiri, and jihaad; as well as the import of black flags.").

"[t]he Second Circuit has taken a liberal view of the qualification requirements of Rule 702, at least to the extent that a lack of formal training does not necessarily disqualify an expert from testifying if he or she has equivalent relevant practical experience." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004); *see also Peerless Ins. Co. v. Marley Engineered Prods. LLC*, No. 05-CV-4848 (AKT), 2008 WL 7440158, at *2 (E.D.N.Y. June 12, 2008). Kohlmann has obtained much of his experience through decades of studying terrorism financing and terrorism funding. In his years of field experience, Kohlmann has conducted numerous financial examinations of entities that have supported terrorism, giving him expertise and context well beyond that of a layperson.[4] Based on his decades of practical experience, Kohlmann knows the red flags to consider in financial documents (such as repeatedly ignoring recommendations of government regulators).

Moreover, Kohlmann has written academic articles about terrorist financing,[5] and courts in the Second Circuit and elsewhere have qualified him to opine on terror financing. For example, in *United States v. Kassir*, 2009 WL 919767, at *2 (S.D.N.Y. Apr. 2, 2009), Kohlmann proffered testimony as to "terrorist fundraising techniques." In *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128 (D.D.C. 2011), the court recognized Kohlmann's financial knowledge when it relied on his expert opinion to find that al Qaeda "set up several businesses and charities in Sudan as its financial and operative base for terrorist activities." *Id.* at 143. In qualifying

---

[4] For example, at his deposition, Kohlmann testified that, while he did not have a *formal* accounting education in accounting, he had practical experience in reviewing organizations records to assess for terror financing, saying: "[I]f you are asking have I looked at accounting documents that have been recovered in investigations like this and, … helped examine them or even just studied them on the side? The answer is yes." ECF No. 9345-13 (Kohlmann Tr.) 715:16-24.

[5] Kohlmann, Evan F., *The Role of Islamic Charities in International Terrorist Recruitment And Financing*, Danish Institute for International Studies, 2006. http://www.jstor.org/stable/resrep13293. (Last accessed 14 Sept. 2023).

Kohlmann, the district court in *Owens* quoted Kohlmann's Report regarding the means of al Qaeda's income via fraudulent humanitarian relief. *Id.* at 143-44.

In the end, if the Order was intended to limit Kohlmann from testifying about finer doctrinal principles of theology or about complex concepts specific to financial accounting, Plaintiffs do not proffer Kohlmann for those matters; but if the Order was intended to limit him from testifying about counterterrorism issues that intersect with those principles, Plaintiffs object to the Order as clearly erroneous. Kohlmann possesses the relevant expertise.

### C.     The Order Erred in its Assessment of Kohlmann's Methodology

Although the Order does not address Kohlmann's methodology head-on, it purports to find fault in his methodology (Op. at 23), even though it has been examined repeatedly and has withstood scrutiny, including, for example, after a full-day *Daubert* hearing inquiring into his methodology, *United States v. Paracha*, No. 03-cr-1197(SHS) 2006 WL 12768, at *21 (S.D.N.Y. Jan. 3, 2006); which was then affirmed by the Second Circuit. *United States v. Paracha*, 313 Fed. App'x. 347, 351 (2d Cir. 2008).

In Kohlmann's Report, ECF No. 9345-1, at 4-6, he explains his methodology. During the *Daubert* hearing in *Paracha*, Kohlmann explained to the court's satisfaction that:

> his methodology consists of gathering multiple sources of information, including original and secondary sources, cross-checking and juxtaposing new information against existing information and evaluating new information to determine whether his conclusions remain consonant with the most reliable sources. He describes his work as a study of the micro-history of al Qaeda and its involvement in regional conflicts. His methodology is similar to that employed by his peers in his field; indeed, he explained that he works collaboratively with his peers, gathering additional information and seeking out and receiving comments on his own work.

*Paracha*, 2006 WL 12768, at *20. That court found that "the government has sufficiently demonstrated the reliability of Kohlmann's methodology and the government was permitted to

elicit his expert opinion on those topics on which that methodology is reliably applied and is appropriate and necessary to assist the jury in understanding the issues in this case." *Id.* at *21. The Second Circuit affirmed that determination. *Paracha*, 313 Fed. App'x. at 351 (holding that the district court "was well within its discretion in ruling that Kohlmann's methodology was sufficiently reliable ... so as to be admissible under [Rule] 702 and *Daubert*"). Since then, the Second Circuit, Fourth Circuit, and other courts have reaffirmed approval of Kohlmann's methodology. *United States v. Farhane*, 634 F.3d 127, 159 (2d Cir. 2011) (Second Circuit affirming use of Kohlmann's methodology based on evidence of Kohlmann's *Daubert* hearing in *Paracha*, citing finding that his methodology was "similar to that employed by experts that have been permitted to testify in other federal cases involving terrorist organizations"); *Hassan*, 742 F.3d at 131 (Fourth Circuit affirming trial court's qualification of Kohlmann, finding, in part, that—after having "heard and considered testimony"—the trial court gave "particular attention" to "whether or not his research findings were based on sound methodology"); *Abu Ghayth*, 2014 WL 978629 (Southern District of New York court rejecting challenge to Kohlmann's methodology after considering the transcript of the full-day *Daubert* hearing in *Paracha* where the court "focused deeply on Kohlmann's … methodology…."); *Kassir*, 2009 WL 919767, at *6 (Southern District of New York court citing with approval the assessment of Kohlmann's methodology from *Paracha*).

\*   \*   \*

Finally, Magistrate Judge Netburn concluded by advising that the Court "should evaluate whether Kohlmann should be permitted to testify at all" based on what she perceived to be "shortcomings of his qualifications and reliability."  Order at 33. This unfounded characterization was largely based on matters that were of record in other cases, *but not here*, *see*

*id.* at 14-20, which those courts resolved, after considering extensive *Daubert* hearing evidence, in favor of admitting Kohlmann's expert opinions. *See, e.g., Farhane*, 634 F.3d at 159 (Second Circuit affirming findings that Kohlmann was qualified and his expert methodology was reliable).[6] It was also based on non-evidentiary hearsay statements likewise made outside the record in this case, *see* Order at 11-12, and mischaracterizations of Kohlmann's education, experience, and methodology, *id.* at 14-27. To the extent the Court wishes to consider any of this before trial, it should do so as other courts have by holding a *Daubert* hearing, *e.g., Daubert* H'rg in *U.S. v. Paracha*, No. 03-cr-1197 (SHS) ECF No. 74 (S.D.N.Y. Nov. 2, 2005), at the end of which Plaintiffs are confident that this Court will find as other courts (including the Second Circuit) have found, that Kohlmann is a qualified expert whose opinions are reliably-derived and thus are admissible into evidence.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs' object to the August 18, 2025 Order, ECF No. 11157, and respectfully request that Judge Daniels reject as "clearly erroneous" the portions of the order as indicated herein, and either hold a *Daubert* hearing now or defer a decision on qualification until trial.

Dated: October 3, 2025

Respectfully submitted,

MOTLEY RICE LLC                          COZEN O'CONNOR

By: /s/ Robert T. Haefele                By: /s/ Sean P. Carter
ROBERT T. HAEFELE                        SEAN P. CARTER

---

[6] *See also Paracha*, 313 Fed. App'x. at 351 (Second Circuit affirming findings that Kohlmann was qualified and his expert methodology was reliable, after full day *Daubert* hearing); *Hassan*, 742 F.3d at 130-31 (Fourth Circuit affirming trial court's qualification of Kohlmann, after hearing and considering testimony about Kohlmann's credentials and techniques, "including thorough assessments of whether Kohlmann's methods were subject to peer review, his 'consultation with others in the field,' and 'whether or not his research findings [were] based in a sound methodology.'"); *Subasic*, 568 F. App'x at 235 (Fourth Circuit finding no abuse of discretion in qualifying Kohlmann as an expert on Islamic extremism).

28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel of Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

13