# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

—————————————————————
)
IN RE: TERRORIST ATTACKS ON          )          Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                        )          ECF Case
—————————————————————          )

This document relates to: *All Actions*

## REPLY BRIEF IN SUPPORT OF MOTION FOR STAY OF PROCEEDINGS PENDING APPEAL OF AUGUST 28, 2025 ORDER (MDL ECF No. 11182) DENYING KINGDOM OF SAUDI ARABIA'S RENEWED MOTION TO DISMISS

Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................1

I.      Saudi Arabia's Appeal Divests This Court of Jurisdiction To Order Merits
        Discovery and To Conduct Any Trial..................................................................1

        A.      The Court's Order Is Immediately Appealable......................................................2

        B.      Saudi Arabia's Appeal Transfers Jurisdiction to the Court of Appeals..................3

II.     Alternatively, the Court Should Grant a Discretionary Stay .................................5

        A.      Further Proceedings and Trial Would Irreparably Deprive Saudi
                Arabia of Its Immunity from Suit ............................................................5

        B.      Plaintiffs Will Suffer No Substantial Harm from a Stay .........................................6

        C.      Saudi Arabia's Appeal Is Reasonably Likely To Succeed ......................................7

        D.      The Public Interest Favors a Stay .........................................................................9

CONCLUSION................................................................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**CASES**

*Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989) ........................................................3

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    813 F.3d 98 (2d Cir. 2016)...........................................................................................2, 5

*Berizzi Bros. Co. v. The Pesaro*, 271 U.S. 562 (1926) ...................................................6

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
    581 U.S. 170 (2017)...............................................................................................3, 6, 7, 9

*Burrage v. United States*, 571 U.S. 204 (2014) ...............................................................9

*Carroll v. Trump*, 88 F.4th 418 (2d Cir. 2023)...............................................................4

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) ...............................................7

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)..........................................................................................5

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023)...........................................................3, 4

*Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207 (S.D.N.Y. 2019)..................7

*Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004)..................................................................8

*Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*,
    832 F. App'x 38 (2d Cir. 2020) ..................................................................................2, 3

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990) ...................2

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982)..................................4

*Johnson v. Jones*, 515 U.S. 304 (1995)........................................................................2, 7

*Nam v. Permanent Mission of Republic of Korea to United Nations*,
    118 F.4th 234 (2d Cir. 2024) ...........................................................................2, 3, 5, 7, 8

*Nken v. Holder*, 556 U.S. 418 (2009) ..............................................................................5

*Petersen Energía Inversora S.A.U. v. Argentine Republic*, 895 F.3d 194
    (2d Cir. 2018)...............................................................................................................3

*Platinum Partners Value Arbitrage Fund L.P., In re*, 2018 WL 3207119
    (S.D.N.Y. June 29, 2018)............................................................................................5

*Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748 (2d Cir. 1998) ........................5

*Robinson v. Gov't of Malaysia*, 269 F.3d 133 (2d Cir. 2001)................................................2, 3, 5, 7

*Russello v. United States*, 464 U.S. 16 (1983) ...........................................................................10

*Thapa v. Gonzales*, 460 F.3d 323 (2d Cir. 2006)...................................................................5, 7, 9

*United States v. Rodgers*, 101 F.3d 247 (2d Cir. 1996) ..................................................................4

*Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145 (2d Cir. 1991),
    *aff'd*, 504 U.S. 607 (1992)..........................................................................................2, 5

*World Trade Ctr. Disaster Site Litig.*, *In re*, 503 F.3d 167 (2d Cir. 2007)....................................4

## STATUTES

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...............................................................................3

Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891
    (codified as amended at, *inter alia*, 28 U.S.C. §§ 1602-1611) ................................1, 2, 3, 4

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222,
    130 Stat. 852 (2016)........................................................................................................10

    28 U.S.C. § 1605A................................................................................................9, 10

    28 U.S.C. § 1605A(f)..............................................................................................10

    28 U.S.C. § 1605B...............................................................................................9, 10

**INTRODUCTION**

A foreign sovereign has a well-settled right to an immediate appeal from a district court's order denying it immunity from suit. Equally well-settled is the rule that an immunity appeal divests the district court of jurisdiction to proceed with merits discovery and trial. With rare exceptions such as frivolous appeals (and this appeal is far from frivolous), a district court should wait for the court of appeals to restore its jurisdiction before taking any further steps towards trial. Here, appellate jurisdiction is clear, and Saudi Arabia has diligently pursued its immunity defense. Plaintiffs' contrary arguments lack support in the law or the record.

Alternatively, the equities weigh heavily in favor of a stay. Loss of foreign sovereign immunity from trial is an irreparable injury; that is why a sovereign has a right to an immediate appeal in the first place. Plaintiffs, whose counsel made dozens of extension requests during a four-year jurisdictional-discovery process, should not be heard to demand an immediate trial. Saudi Arabia has shown a reasonable likelihood of success on appeal, both on the law and on the facts. Finally, public interests in international comity and conserving judicial resources also support a stay until the Second Circuit rules on immunity.

**ARGUMENT**

**I.    Saudi Arabia's Appeal Divests This Court of Jurisdiction To Order Merits Discovery and To Conduct Any Trial**

Saudi Arabia showed in its memorandum (at 6-8) that an order denying a motion to dismiss under the Foreign Sovereign Immunities Act of 1976 ("FSIA") is immediately appealable under the collateral order doctrine and that such an appeal divests a district court of jurisdiction to order merits discovery and trial. Plaintiffs' contrary arguments (at 9-10) lack merit.

### A.     The Court's Order Is Immediately Appealable

The Second Circuit held in *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145 (2d Cir. 1991), *aff'd*, 504 U.S. 607 (1992), that a district court's "ruling that subject matter jurisdiction is proper under the FSIA" is immediately appealable under "the 'collateral order doctrine.' " *Id.* at 147 (following *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)). The court of appeals has applied that jurisdictional rule in many later cases, including *Robinson v. Government of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001); *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 116 (2d Cir. 2016); and *Nam v. Permanent Mission of Republic of Korea to United Nations*, 118 F.4th 234, 246 (2d Cir. 2024).

Contrary to Plaintiffs' assertions (at 1, 17 & n.20), interlocutory review in FSIA cases is not limited to "pure issues of law." In *Robinson*, the Second Circuit reversed not only on the ground that the plaintiff had not "pleaded . . . that his claim [wa]s for a 'tortious act or omission' caused by the Malaysian government," but also that he had not "come forward with evidence sufficient to show" such an act. 269 F.3d at 146. In *Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*, 832 F. App'x 38 (2d Cir. 2020), the Second Circuit reviewed a district court's "factual findings that bear on jurisdiction." *Id.* at 40-41. And in *Nam*, the Second Circuit reversed after determining that "there was sufficient evidence in the record," with "reasonable inferences drawn in the [sovereign's] favor, to have warranted explicit fact finding and, if necessary, an evidentiary hearing." 118 F.4th at 246.

Plaintiffs misplace reliance on *Johnson v. Jones*, 515 U.S. 304 (1995), which held that an order denying summary judgment on qualified immunity is not appealable when it turns on "whether or not the evidence in the pretrial record [i]s sufficient to show a genuine issue of fact for trial." *Id.* at 307. *Johnson*'s holding does not apply to the denial of a motion to dismiss

under the FSIA because such a motion calls on a district court not merely to search for genuine issues of fact, but to "take evidence and resolve relevant factual disputes." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017); *see also Nam*, 118 F.4th at 244-45 ("At a minimum, the district court must make findings of fact relevant to the issue."). Once those "factual determinations" are made, the Second Circuit "review[s]" them "for clear error." *E.g.*, *Petersen Energía Inversora S.A.U. v. Argentine Republic*, 895 F.3d 194, 203 (2d Cir. 2018) (FSIA interlocutory appeal); *Eisenberg*, 832 F. App'x at 40-41 (same).

The Order departs from *Helmerich & Payne* by making only a "preliminary assessment of certain disputed facts," Order 45, rather than resolving material factual disputes. *See* KSA Mem. 11-13; *infra* II.C.1. But that departure does not make the Order unreviewable. Instead, the Second Circuit has appellate jurisdiction to decide (as it did in *Nam* and *Robinson*) whether the Order applies the correct standard for an FSIA motion to dismiss, which is a question of law. It also has appellate jurisdiction to decide (as it did in *Robinson*) whether the Order correctly interprets and applies the law as to scope of employment, tortious conduct, and causation. And, to the extent the Order makes factual findings, the Second Circuit has appellate jurisdiction to decide (as it did in *Eisenberg*) whether those findings are clear error.

### B. Saudi Arabia's Appeal Transfers Jurisdiction to the Court of Appeals

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), instructs that a district court lacks jurisdiction " 'to go forward' " with a " 'trial . . . while the court of appeals cogitates on whether there should be one.' " *Id.* at 741 (quoting *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989)). Plaintiffs fail (at 11 n.13) to distinguish *Coinbase* on the ground that it involved a "statutory right" to appeal under the Federal Arbitration Act. As *Coinbase* explains, its holding stems from a "background principle" that "[a]n appeal, including an interlocutory appeal,

'divests the district court of its control over those aspects of the case involved in the appeal.'" 599 U.S. at 740 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam)).  Those "same stay principles . . . apply in other analogous contexts where an interlocutory appeal is authorized, including qualified immunity and double jeopardy."  *Id.* at 746.  Plaintiffs offer no reason why those principles do not apply to FSIA immunity.

Plaintiffs also mischaracterize *In re World Trade Center Disaster Site Litigation*, 503 F.3d 167 (2d Cir. 2007).  They incorrectly suggest (at 9) that *World Trade Center* invites this Court to determine "whether an appeal divests [it] of jurisdiction" by applying the four stay factors.  To the contrary, the Second Circuit considered the stay factors in its own exercise of discretion (after merits briefing and argument) to determine whether to "restor[e] . . . jurisdiction" to the district court.  503 F.3d at 170-71.  That is consistent with the general rule that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs*, 459 U.S. at 58, *cited in World Trade Center*, 503 F.3d at 169.  This Court should follow that rule and stay proceedings against Saudi Arabia while Saudi Arabia's appeal is pending.

Nor do *Carroll v. Trump*, 88 F.4th 418 (2d Cir. 2023), or *United States v. Rodgers*, 101 F.3d 247 (2d Cir. 1996), help Plaintiffs.  Those cases acknowledge the "divestiture of jurisdiction rule," *Carroll*, 88 F.4th at 433; *Rodgers*, 101 F.3d at 251, but then find exceptions on facts absent here.  *Rodgers* involved a "notice of appeal" that was "plainly unauthorized" and so "confer[red] on th[e] court [of appeals] the power to do nothing but dismiss the appeal."  101 F.3d at 251-52. *Carroll* determined that "singular circumstances" "favor[ed] the District Court's retention of jurisdiction," after describing the defendant's three-year delay before attempting to raise an immunity defense after the close of merits discovery.  88 F.4th at 430-31, 433.

Saudi Arabia's appeal is authorized by Circuit precedent including *Weltover*, *Robinson*, *Atlantica Holdings*, and *Nam*. And Saudi Arabia has not delayed in asserting its immunity; it has diligently sought a ruling since it first moved to dismiss in 2004.[1] Plaintiffs also err in suggesting (at 17) that Saudi Arabia should have appealed this Court's partial denial of its motion in March 2018. That ruling did not "conclusively determine[] the issue of subject matter jurisdiction," *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 755 (2d Cir. 1998), as an interlocutory appeal requires. That question remained open until the present Order. And even if Saudi Arabia could have appealed in 2018, it was no delay tactic to appeal after jurisdictional discovery and to present all objections to this Court's rulings together.

## II.  Alternatively, the Court Should Grant a Discretionary Stay

If the Court concludes that it retains jurisdiction, it should stay its proceedings as a matter of discretion. It should apply the sliding scale set out in *Thapa v. Gonzales*, 460 F.3d 323 (2d Cir. 2006), which Plaintiffs do not address.[2] Even cases that treat a stay of proceedings during an immunity appeal as discretionary recognize that immunity weighs heavily in favor of a stay.

### A.  Further Proceedings and Trial Would Irreparably Deprive Saudi Arabia of Its Immunity from Suit

Without a stay, Saudi Arabia's right to immunity from suit would be "effectively lost." *Robinson*, 269 F.3d at 141. As Saudi Arabia showed in its memorandum (at 9), loss of immunity

---

[1] *See* ECF No. 374 (original motion to dismiss); ECF No. 2893 (renewed motion to dismiss after first remand); ECF No. 3667 (renewed motion to dismiss after second remand); ECF No. 9368 (renewed motion to dismiss after jurisdictional discovery).

[2] Plaintiffs cite *Nken v. Holder*, 556 U.S. 418 (2009), for its discussion of the "traditional stay factors." *Id.* at 426. As Judge Cote explained in *In re Platinum Partners Value Arbitrage Fund L.P.*, 2018 WL 3207119 (S.D.N.Y. June 29, 2018), "in the related context of motions for a preliminary injunction, the Second Circuit has reaffirmed the validity of the sliding-scale approach" after *Nken*. *Id.* at *3 n.4 (citing *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37-38 (2d Cir. 2010)).

from suit is irreparable injury. Plaintiffs err in asserting (at 17) that Saudi Arabia does not face

irreparable injury from that loss because it has "ample resources to participate in . . . discovery

and factfinding." Whether or not Saudi Arabia can bear those costs, it will never be compensated

for the "burdens of time and expense," *Helmerich & Payne*, 581 U.S. at 185, imposed by an

erroneously held trial. Further, foreign sovereign immunity is not merely about monetary costs,

but "recognizes the 'absolute independence of every sovereign authority' and helps to ' "induc[e]" '

each nation state, as a matter of ' "international comity," ' to ' "respect the independence and

dignity of every other," ' including our own." *Id.* at 179 (quoting *Berizzi Bros. Co. v. The Pesaro*,

271 U.S. 562, 575 (1926)) (brackets in *Helmerich & Payne*). The affront to Saudi Arabia's

independence and dignity from a trial will be irreparable if the Second Circuit later concludes

that this Court never had jurisdiction to order one.

### B.    Plaintiffs Will Suffer No Substantial Harm from a Stay

Saudi Arabia showed in its memorandum (at 9-10) that Plaintiffs will suffer no

substantial harm from a stay because they are seeking money damages, and delay in receiving

damages is not substantial harm. Although Plaintiffs respond (at 19) that they have a "broader

range of equities and historical truth-seeking motivations," any such equities are undermined by

the conduct of their counsel in obtaining no fewer than 26 extensions during jurisdictional

discovery.[3]  ECF No. 7752, at 1 (discussing the "repeated delays and extensions" of "the

---

[3] *See* ECF No. 4080, *granted*, ECF No. 4082 (13 days for letter-motion response);
ECF No. 4115 (39 days for motion to compel); ECF No. 4237, at 21:7-23:17, 41:23-42:5
(30 more days for same motion); ECF Nos. 6257, 6276, 6296, 6306 (total of 35 days for motion
reply); ECF No. 6620 (10 days for Rule 72 objections); ECF No. 6707 (14 days for Rule 72
objections); ECF No. 6872 (35 days for expert discovery disclosures because previous deadline
was "arguably ambiguous"); ECF No. 6974 (9 days for Rule 72 objections); ECF No. 7074,
*granted in part*, ECF No. 7117 (198 days for expert reports based on Executive Order); ECF No.
9000 (11 days for *Daubert* motions); *see also* ECF Nos. 4943, 5313, 5481, 6452, 6454, 6471,
6567, 6732, 6967, 7821, 7822, 8900, 8945 (additional requests and grants, each 7 days or less).

discovery process"), *adopted*, ECF No. 7787; *see Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 222 (S.D.N.Y. 2019) (reasoning in the preliminary-injunction context that " '[d]elay in seeking enforcement of [one's] rights . . . tends to indicate . . . a reduced need for . . . drastic, speedy action' " and " 'undercuts [any] sense of urgency' ") (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985)).

### C.    Saudi Arabia's Appeal Is Reasonably Likely To Succeed

Saudi Arabia showed in its memorandum (at 10-18) that its appeal is reasonably likely to succeed.  Contrary to Plaintiffs' assertion (at 11), Saudi Arabia in no way "acknowledges that it cannot meet this factor."  Saudi Arabia does acknowledge that this Court has ruled against it. But the question is not whether this Court believes its own order will likely be reversed (a standard no appellant could meet).  It is whether Saudi Arabia has "some possibility of success" coupled with a "balance of hardships [that] tips decidedly in [its] favor."  *Thapa*, 460 F.3d at 335.

### 1.    Preliminary findings.  The Order's ruling (at 45) on Saudi Arabia's motion based

on the "undisputed facts" and a "preliminary assessment of certain disputed facts" departs from the Supreme Court's guidance in *Helmerich & Payne* as well as the Second Circuit's guidance in *Nam*, *Robinson*, and other cases.  Plaintiffs respond (at 12-14) by pointing to other parts of the Order that acknowledge that factfinding is required and by asserting that the Court made "findings of jurisdictional fact" that were "conclusive."  But Plaintiffs contradict themselves:  they also assert (at 11) that the Order merely rules on " 'evidence sufficiency' – *i.e.*, which facts a party may, or may not, be able to prove at trial."  *Johnson*, 515 U.S. at 313.  There is a reasonable likelihood that the Second Circuit will determine that the Order is, indeed, an evidence-sufficiency ruling that stops short of needed findings.  *Compare* Order 45 ("Some of the disputed facts cannot be resolved at this stage of the litigation, because weighing the evidence or assessing

witnesses' credibility will need to take place at trial.") *with Nam*, 118 F.4th at 249 ("[O]n remand, the district court must weigh these factual issues, outline explicitly its findings of fact, and, if necessary, conduct further fact finding through a hearing.").

The Order's refusal to "weigh the evidence or assess[ ] witness credibility" on disputed issues of fact is especially important because it led the Court to overlook key evidence that Saudi Arabia presented in support of its immunity showing. As Saudi Arabia explained in its memorandum (at 12-13), that evidence included fact witness testimony, expert witness testimony, and documentary evidence that tended to disprove Plaintiffs' theory that Omar Al Bayoumi and Fahad Al Thumairy were employed to support terrorists. Plaintiffs do not and cannot point to any part of the Order that addresses that evidence or its credibility. And because the Order states expressly that it does not weigh evidence or assess credibility, the Second Circuit is reasonably likely to reject Plaintiffs' assertion that the Order does so implicitly.

**2.    Application to the record.** If the Second Circuit concludes that the Order makes the required findings of fact, it will still review those findings for clear error. Under that standard, the court of appeals will reverse "where the trial court incorrectly assessed the probative value of various pieces of evidence, leading it to rely on speculation," or "where the court failed to weigh all of the relevant evidence before making its factual findings." *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) (Sotomayor, J.). Saudi Arabia's memorandum pointed (at 13-17) to specific examples where the Order overlooks relevant evidence that Saudi Arabia presented supporting innocent explanations for Al Bayoumi's phone calls, his pay increase, and the airplane drawing found in his papers. Again, Plaintiffs do not and cannot point to any part of the Order that considers the evidence Saudi Arabia cites. Instead, they merely repeat (at 13-15) the findings to be reviewed on appeal. Saudi Arabia "has raised a substantial enough question" concerning

8

the Order's assessment of the evidence "to pass th[e] . . . threshold" of likelihood of success. *Thapa*, 460 F.3d at 336.

**3.    But-for causation.**  The governing causation standard is a question of law, which the Second Circuit will review *de novo*.  There is a reasonable likelihood that it will hold that the phrase "caused by" in 28 U.S.C. § 1605B incorporates "the common understanding of cause," including a "but-for requirement."  *Burrage v. United States*, 571 U.S. 204, 211 (2014).  No court of appeals has ever construed that phrase; nor has any court of appeals ever grappled with the effect of Supreme Court precedent including *Burrage* and *Helmerich & Payne* on previous cases construing § 1605A.  If the court of appeals holds that but-for causation is required, there is a high likelihood that it will reverse or vacate the Order.

Plaintiffs assert (at 16) that the Order would have come out the same way if it had applied a but-for causation standard, but this Court has never made any such finding.  Even Plaintiffs did not argue in their opposition that they could prove but-for causation.  ECF No. 3781, at 60 (relying solely on the "reasonable connection" standard this Court has adopted).  The hijackers' mission to San Diego was a failure – no one disputes that they never learned to fly or accomplished any other operational objective.  Al Bayoumi's assistance was not plausibly a but-for cause of the attacks (or even a substantial factor in causing them).

**D.    The Public Interest Favors a Stay**

Saudi Arabia showed in its memorandum (at 19) that a stay will serve the public interest both by protecting interests of international comity and by conserving judicial resources.  Since that filing, the argument for conserving resources has become even stronger because of Plaintiffs' conditional cross-appeals asking the Second Circuit to reverse this Court's previous jurisdictional

rulings narrowing the scope of the case.[4]  Saudi Arabia will contend that the Second Circuit lacks

jurisdiction over the conditional cross-appeals, but that will be for the court of appeals to decide.

Citing the Justice Against Sponsors of Terrorism Act ("JASTA"), Plaintiffs assert (at 19) an

interest in "justice and accountability for victims of terror attacks inside the United States."  But

Plaintiffs offer no reason why (if they prevail on appeal) that interest will not be equally well

served by a trial on firmer jurisdictional footing.  Further, Congress was aware when it enacted

JASTA that any denial of a motion to dismiss would be subject to an interlocutory appeal.  In the

adjoining § 1605A, Congress specifically removed the ability of designated state sponsors of

terrorism to bring an interlocutory appeal without certification by a district court.  *See* 28 U.S.C

§ 1605A(f).  In § 1605B, Congress included no parallel to § 1605A(f), leaving in place existing

law on collateral appeals.  The logical inference is that Congress did not find the policies

supporting JASTA to outweigh a foreign sovereign's right to review.  *See Russello v. United*

*States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a

statute but omits it in another section of the same Act, it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion.") (cleaned up).

---

[4] *E.g.*, ECF No. 11267, at 1 (seeking review of orders that "declined or failed to consider certain of plaintiffs' alternative theories of jurisdiction under the Foreign Sovereign Immunities Act and/or related theories of liability, including without limitation plaintiffs' theories concerning additional tortious conduct of the Kingdom of Saudi Arabia and/or the tortious conduct of additional agents and officials of the government of Saudi Arabia, plaintiffs' theories of secondary liability, and/or plaintiffs' theories of jurisdiction under the non-commercial tort-exception [sic]").

## CONCLUSION

The Court should rule that it lacks jurisdiction to proceed with pretrial and trial proceedings against Saudi Arabia during Saudi Arabia's interlocutory appeal. Alternatively, the Court should grant a stay of all such proceedings in the exercise of its discretion.

Date: October 6, 2025                    Respectfully submitted,

 /s/ *Michael K. Kellogg*
Michael K. Kellogg
Mark C. Hansen
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rules 6.3 and 7.1(c), I certify that the foregoing document, which was prepared using Times New Roman 12-point typeface, contains 3,380 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c).  This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Office Word 365) used to prepare the document.

/s/ *Michael K. Kellogg*
Michael K. Kellogg

*Attorney for the Kingdom of Saudi Arabia*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 6, 2025, I caused a copy of the foregoing document to be served electronically pursuant to the Court's ECF system.

/s/ *Michael K. Kellogg*
Michael K. Kellogg

*Attorney for the Kingdom of Saudi Arabia*