# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEE
# FOR PERSONAL INJURY AND DEATH CLAIMS

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

Ronald L. Motley (1944-2013)
Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*
MOTLEY RICE LLC

Robert T. Haefele, *Co-Liaison Counsel*
MOTLEY RICE LLC

**VIA ECF**

October 17, 2025

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

The Plaintiffs' Executive Committee for Personal Injury and Death Claims ("PEC") submits this letter in response to the Court's September 18, 2025 Order seeking input regarding whether plaintiffs may recover personal injury damages for latent injuries that did not result in death.[1]

The PEC submits that while living latent-injury plaintiffs with pending cases should receive consideration for personal injury damages, questions regarding proximate cause for these plaintiffs are complex and highly individual and will present unique challenges not previously addressed in this litigation and not wholly resolved by participation in the Victims Compensation Fund ("VCF2").

When Congress created what has come to be known as the VCF2 (or "Zadroga Fund" – signed into law on January 2, 2011), it established the World Trade Center Health Program ("WTC Health Program"), which relied on a presumptive, non-causal framework when determining eligibility for health care services. Under that presumptive framework, any individual who can establish his or her presence in a disaster zone (downtown Manhattan, Shanksville, Pennsylvania, the Pentagon and parts of Staten Island) and who has one of the health conditions set forth in the enabling regulations can receive treatment for that condition through the WTC Health Program.[2] A subset of those eligible for the WTC Health Program who then develop certain illnesses, may also be able to obtain compensation from the Zadroga Fund.

But the process of identifying conditions and illnesses that make a person eligible for the WTC Health Program or the Zadroga Fund have never involved a proximate-cause analysis such as

---

[1] *See* ECF No. 11245.

[2] *See* U.S. Centers for Disease Control, Covered Conditions, 9.11 World Trade Center Health Program, https://www.cdc.gov/wtc/conditions.html (for list of covered or "certified" conditions); and September 11th Victim Compensation Fund, VCF Policies and Procedures, 1.4 Eligible Conditions https://www.vcf.gov/policy/eligibility-criteria-and-deadlines#toc-1-4-eligible-conditions-wtc-related-physical-health-conditions- (last updated January 18, 2023).

The Honorable Sarah Netburn
October 17, 2025
Page 2

_____

would be part of a traditional tort case. Instead, Congress and rule-makers took an evolving approach to including illnesses, looking at association or frequency of diagnosis amongst populations at the disaster zones, and the types of cancers that the constituents in the exposure zone air may be causally related to developing such cancers, but not relying on the sort of medical, scientific, peer-reviewed analysis that could form the basis of a proximate cause finding in federal judicial proceedings.[3] Additionally, neither the WTC Health Program nor the Zadroga Fund consider any contributory factors like occupation, family history, genetics, or other factors (for example, whether a participant's asthmas or COPD may have been caused in part by a lifetime of smoking or other exposures) when determining eligibility. Instead, it uses presence and diagnosis as a proxy for causation.

The lessened requirements for participation in the WTC Health Program and compensation from the VCF2 are consistent with their generous and remedial remit. But the significant difference between WTC Health Program eligibility and VCF2 compensation, based on the presumptions described above, and legal causation make the former an imperfect substitute for the latter.

In deciding the outer limits of the doctrine of proximate causation and developing a workable approach with respect to the latent injury claims, this Court's determinations are governed by the standards governing the State Sponsor of Terrorism Exception, 28 U.S.C. § 1605A, of the Foreign Sovereign Immunities Act ("FSIA"). Courts applying those standards generally have required plaintiffs to establish a sufficient connection between the defendant's conduct and the plaintiffs' injury, and to establish the amount of damages consistent with the American rule on damages.[4] Following uncontested liability proceedings, the Court previously found that Iran shares responsibility for the September 11th attacks.[5] However, determining whether the causal chain should extend to encompass injuries manifesting in the days, weeks, months, or years following the attacks, and that such injuries were not caused by other factors, involves evaluating remoteness, foreseeability, and the appropriate reach of proximate causation in this unique context.

To the extent the Court determines that living latent-injury plaintiffs are entitled to judgment, the PEC submits that causation determinations must be guided by the proximate cause standards governing claims under the State Sponsor Exception and as applied by this Court in prior orders.[6]

_____

[3] For example, certain cancers were added to the list of WTC Health Program eligible illnesses in 2011 after New York's Congressional delegation filed a petition in support of the chance, despite the absence of convincing evidence demonstrating that exposure to the airborne toxins in the disaster zones caused those cancers. *See* https://www.cdc.gov/wtc/training_cancer_2.html (last accessed October 7, 2025) (members of the scientific advisory committee explain the process of including cancers, acknowledging that in doing so they chose not to wait for epidemiological studies establishing the exposure as a cause of the cancer).

[4] *Ayres v. Islamic Republic of Iran*, No. 1:18-CV-00265-RCL, 2022 WL 1438605, at *1 (D.D.C. May 3, 2022) (citing *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005)) (brackets in original); *also see Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 76 (D.D.C. 2010) (same).

[5] *Burnett v. The Islamic Republic of Iran*, Default Judgment Order, 15-cv-9903, ECF No. 85 (Jan. 31, 2017); *Havlish v. bin Laden*, Default Judgment Order, 03–CV–9848, ECF No. 316 (Dec. 3, 2012); *Ashton v. Al Qaeda Islamic Army*, Default Judgment Order, 02-cv-6977, ECF No. 785 (March 9, 2016).

[6] *See* ECF No. 8901 at 9-13, ECF No. 9274 at 3-5, ECF No. 10755 at 8-10, and ECF No. 10813 at 3-4.

For example, Plaintiffs could be required to provide specific proof—such as an expert medical or scientific opinion showing by a preponderance of the evidence that the plaintiff's latent injury was proximately caused by exposure to the toxins known to have been present at the disaster zones and work records or declarations demonstrating their presence at relevant locations. After proximate cause was established, this Court could employ a formula for damages, similar to those it has established for other categories of plaintiffs.

Currently, the number of latent-injury cases pending before this Court is estimated to be only a fraction of those that could be potentially filed. Given the scope of work involved, should those plaintiffs move for damages and should other potential plaintiffs join the MDL (to date, over 70,000 claims have been found eligible for the Zadroga Fund[7]), it may make sense for the Court to consider the appointment of a Special Master to oversee this process.

Ultimately, the PEC believes that it is within the Court's sole discretion to decide whether extending proximate causation to encompass latent injuries sustained by living plaintiffs is warranted under the FSIA and existing case law.[8] The PEC remains available to provide any information the Court may request to assist in its determination.

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ *Robert T. Haefele*
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*For the Plaintiffs' Exec. Committee for Personal Injury and Death Claims*

cc:   The Honorable George B. Daniels, via ECF
      All Counsel of Record via ECF

---

[7] VCF Program Statistics as of September 30, 2025. *See* https://www.vcf.gov/sites/vcf/files/media/document/2025-10/VCFMonthlyReportSeptember2025.pdf, at page 5 (noting 71,780 Approved Eligibility Determinations).

[8] Note that in at least one instance, this Court appears to have conducted the above proximate-cause analysis in favor of a living latent injury plaintiff who did not die from his 9/11-related skin cancer injuries. *See* ECF No. 9216, at 2-3 (finding that Plaintiff Victor Casaletto sustained 9/11-related skin cancer injuries from exposures to toxins on 9/11 and in the days thereafter while working as a building engineer at the New York Stock Exchange, but noting that he did not die from those injuries). The Court found that Mr. Casaletto's latent exposure injuries were analogous to the types of injuries considered "significant" under the Court's personal injury framework and recommended that Mr. Casaletto's estate should receive an award of $5 million. Judge Daniels subsequently affirmed this analysis and the award recommendation related to Mr. Casaletto's 9/11 skin cancer. *See* ECF No. 9274, at 3-6 and 6n.7.