# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-01570 (GBD)(SN)<br>ECF Case |

This document relates to:

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, 02-cv-06977
*Gladys H. Salvo, et al. v. Al Qaeda Islamic Army, et al.*, 03-cv-05071
*Federal Insurance Co., et al. v. Al Qaida, et al.*, 03-cv-06978
*Thomas E. Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, 04-cv-07065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 04-cv-07279
*Maher, et al. v. Islamic Emirate of Afghanistan a/k/a The Taliban, et al.*, 1:23-cv-02845

## DEFENDANTS' RESPONSE TO PLAINTIFFS' RULE 72 OBJECTIONS TO THE AUGUST 18, 2025 ORDER (ECF NO. 11350)*

---

\* "Defendants" means World Assembly of Muslim Youth and World Assembly of Muslim Youth International (collectively, "WAMY"), International Islamic Relief Organization ("IIRO"), Muslim World League ("MWL"), Abdullah bin Saleh al Obaid, Abdullah Mohsen al Turki, Adnan Basha, and Yassin Kadi. "Charity Defendants," as used herein, means WAMY, IIRO, and MWL collectively.

TABLE OF CONTENTS

Introduction…………………………………………………………………………………..1

Background…………………………………………………………………………………..2

Standard of Review…………………………………………………………………………..3

Argument……………………………………………………………………………………4

I.   Plaintiffs Impermissibly Use their Objections to Seek Clarification of an Unambiguous Order...................................................................................................... 4

II.  Judge Netburn Correctly Determined that Kohlmann Is not Qualified to Opine on Islam and Financial Accounting................................................................ 5

III. The Intersection of Counterterrorism with Islam or Financial Accounting Does not Save Kohlmann's Opinions ........................................................................ 9

IV.  Judge Netburn Correctly Excluded Kohlmann's Opinions Where They Were not Based on Reliable Data or Employed Inadequate Methodology ......................... 13

V.   Plaintiffs Have Not Objected to Judge Netburn's Findings as to Reliability and Helpfulness, Two Findings That Alone Would Disqualify Kohlmann as an Expert................................................................................................................. 14

     A. Judge Netburn Correctly Determined that Kohlmann's Testimony Is Not Reliable ............................................................................................... 15

     B. Judge Netburn Properly Excluded Kohlmann's Unhelpful Testimony ........................ 16

VI.  A Hearing Is Unnecessary, and Plaintiffs Waived any Request for One.......................... 17

Conclusion……………………………………………………………………………………17

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*,
    743 F. Supp. 3d 530 (S.D.N.Y. 2024)...............................................................3, 14

*Amorgianos v. Amtrak*,
    303 F.3d 256 (2d Cir. 2002)...............................................................3, 14

*BS BIG V, LLC v. Philadelphia Indem. Ins. Co.*,
    No. 19-CIV-4273 (GBD) (SLC), 2022 WL 4181823 (S.D.N.Y. Sept. 13,
    2022) ...............................................................3, 8, 9, 17

*Chill v. Calamos Advisors LLC*,
    417 F. Supp. 3d 208 (S.D.N.Y. 2019)...............................................................12

*Commerzbank AG v. Bank of New York Mellon*,
    No. 15-CIV-10029 (GBD) (BCM), 2024 WL 1309239 (S.D.N.Y. Mar. 27,
    2024) ...............................................................5

*Deutsch v. Novartis Pharms. Corp.*,
    768 F. Supp. 2d 420 (E.D.N.Y. 2011) ...............................................................12

*Ficq v. Texas Instruments Inc.*,
    No. CIV.A.3:02-CV-1273-D, 2004 WL 576057 (N.D. Tex. Mar. 1, 2004)...............................................................5

*General Electric Co. v. Joiner*
    522 U.S. 136 (1997)...............................................................16

*Genworth Fin. Wealth Mgmt., Inc. v. McMullan*,
    No. 3:09-CV-1521 (JCH), 2012 WL 13024369 (D. Conn. May 10, 2012)...............................................................5

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    No. 14-MD-2542 (VSB), 2025 WL 354671 (S.D.N.Y. Jan. 30, 2025) ...............................................................14

*Metcalf v. Yale Univ.*,
    No. 15-CV-1696 (VAB), 2019 WL 1767411 (D. Conn. Jan. 4, 2019)...............................................................5

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)...............................................................3, 4, 11, 14

*Owens v. Republic of Sudan*,
    826 F. Supp. 2d 128 (D.D.C. 2011) ...............................................................12, 13

*Pac. Life Ins. Co. v. Bank of New York Mellon*,
    571 F. Supp. 3d 106 (S.D.N.Y. 2021)...............................................................3, 14

*In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230 (S.D.N.Y. 2014), *aff'd sub nom.*
 *Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016)..........................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
 No. 02-CV-6977 (GBD) (SN), 2024 WL 809887 (S.D.N.Y. Feb. 27, 2024)...........................5

*United States v. Diaz*,
 No. 24-CR-0032 MV, 2024 WL 758395 (D.N.M. Feb. 23, 2024) ............................................4

*United States v. Kassir*,
 No. S204CR356 (JFK), 2009 WL 910767 (S.D.N.Y. Apr. 2, 2009)...........................12, 13, 14

*United States v. Paracha*,
 No. 03-cr-1197(SHS) 2006 WL 12768 (S.D.N.Y. Jan. 3, 2006) *aff'd.,*
 313 Fed App'x 347 (2d Cir. 2008)...................................................................9, 13, 14

## Rules

Fed. R. Civ. P. 30 (a) .......................................................................................................17

Fed. R. Civ. P. 72...........................................................................................5, 6, 8, 9, 13

Fed. R. Civ. P. 72(a) ...................................................................................................3, 5

Fed. R. Crim. P. 15 (a) ...................................................................................................17

Fed. R. Evid. 702 ........................................................................1, 3, 4, 11, 12, 14, 16

## Other Authorities

Mamoun Fandy, *Saudi Arabia and the Politics of Dissent* (Hardcover ed., St.
 Martin's Press, Feb. 1999)...........................................................................................7

Mamoun Fandy, *Saudi Arabia and the Politics of Dissent* (Palgrave ed., Palgrave
 Pub. Ltd., Feb. 2001, reprinted Jan. 15, 2023)...........................................................7

## INTRODUCTION

Plaintiffs' objections to Magistrate Judge Netburn's August 18, 2025 Opinion and Order ("Order"),[1] granting in part and denying in part the Defendants' challenges to certain experts, assert that "the limitations the Order placed on [Evan] Kohlmann's testimony as to matters that touch on Islam and finance . . . overlooked facts in the record and misapplied the liberal and flexible standards for expert qualifications applied by courts in this Circuit."[2] Plaintiffs' objections fail to direct the Court's attention to any fact Judge Netburn "overlooked." The objections also fail to explain how Judge Netburn misapplied the law to the facts of ***this case***, instead placing misguided emphasis on what "other courts" have considered and concluded in unrelated cases.[3] Judge Netburn's sensible and thorough assessment of the evidence before her is unmistakably clear:

> The Court maintains serious reservations about Kohlmann's testimony. When subjected to the "rigorous" standards demanded by *Daubert* and the revised Federal Rules of Evidence, his expert shine begins to fade. Kohlmann's opinions about the Defendants' financial practices and Islam, in particular, do not stand up to scrutiny. His qualifications in those areas are weak and appear bolstered only by his two-decade career as an expert for hire. He is not a financial forensic analyst or an accountant; he is not a scholar on Islam. His proffered testimony about alleged financial irregularities largely recasts other agencies' investigations. His misleading quotations seriously call into doubt the reliability of his opinions. And his opinions about the purpose or intent of certain financial structures invite improper speculation on the state of mind of actors.

> Given the Court's concerns about Kohlmann's "experience" and "training"; the limited pressure testing of his conclusions by real-world exposure or academic review; and his tendency to misstate facts, rely on speculation, and jump from "accepted premises to unfounded conclusions," the Court is unwilling to allow him to render broad opinions much beyond his extensive study of al Qaeda and terrorism networks. Kohlmann is qualified to discuss the origins, history, structure, and leadership of al Qaeda, as well as the organizational structures of the Charity Defendants. But his proffered testimony outside of these topics is neither reliable nor helpful.

---

[1] ECF No. 11157.

[2] Memorandum Rule 72 Objections to the August 18, 2025 Order [ECF No. 11157] Which Granted in Part Defendants' Motion to Limit Expert Testimony, at 1 (ECF 11350) (hereinafter "Objection" or "Objs.").

[3] Those decisions were issued before the relevant standard under Rule 702 was changed, including that expert testimony is no longer presumed to be admissible. *See infra* at 3-4.

> Whether Kohlmann's authorized testimony will be duplicative of other expert testimony also remains unclear. Where other experts are more reliable, the Court should rely on them instead. Accordingly, the trial court should evaluate whether Kohlmann should be permitted to testify at all, given the serious shortcomings of his qualifications and reliability.[4]

Plaintiffs' objections are nothing more than an improper attempt at post-hoc rehabilitation following a decision that exposes Kohlmann as a career "expert for hire," who has for two decades misrepresented his lackluster experience, carelessly misstated facts, and consistently strayed far beyond the scope of even the most generous articulation of his purported expertise. Plaintiffs' objections fail to establish a basis for this Court to conclude that Judge Netburn's findings were clearly erroneous or contrary to law. The Court should overrule Plaintiffs' objections.

## BACKGROUND

Evan Kohlmann began working for Plaintiffs' counsel in late 2003 or early 2004, while still a law student.[5] He submitted his expert report on March 10, 2020 and his rebuttal report on February 2, 2021.[6] His deposition took place on August 5-6, 2021.[7] Following two rounds of *Daubert* briefing, including the underlying motion here, concerning three of Plaintiffs' proposed experts, Judge Netburn devoted 23 of 49 pages (47%) of her discussion in the Order to address Kohlmann and excluded large portions of his testimony.[8]

Plaintiffs attack two parts of the Order. They rehash previously rejected arguments and add new facts to argue that Kohlmann is qualified,[9] and they reassert that his methodology has previously withstood scrutiny.[10] Notably, Plaintiffs do not object to Judge Netburn's conclusion

---

[4] Order at 32-33 (quotations and alterations omitted).
[5] ECF No. 9250-43, at 9:4-7; Order at 11 (graduated law school in 2004).
[6] ECF Nos. 9250-2, 9250-5.
[7] ECF No. 9250-43.
[8] Order (devoting pages 10 (middle) to 33 (middle) to discussion of Kohlmann).
[9] Objs. at 2-9.
[10] *Id.* at 10-12 (citing cases).

that Kohlmann's testimony is otherwise neither reliable nor helpful; a conclusion that alone justifies excluding Kohlmann's testimony.[11]

## STANDARD OF REVIEW

The Order should not be modified or set aside unless it is clearly erroneous or contrary to law, and Plaintiffs face a "highly deferential standard" and carry a "heavy burden" to make either showing.[12] A ruling is clearly erroneous where the district court is "left with the definite and firm conviction that a mistake has been committed," and it is "contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."[13] Additionally, "Rule 72(a) precludes the district court from considering arguments that were not presented to the magistrate judge, and new arguments and factual assertions cannot properly be raised for the first time in objections to a magistrate judge's report and recommendation, and indeed may not be deemed objections at all."[14]

While the Plaintiffs argue that the Court must apply a liberal standard in determining expert qualifications, Judge Netburn comprehensively discussed and applied the correct standard in determining whether to admit Kohlmann's opinions under Fed. R. Evid. 702.[15] She correctly noted in her Order that the Advisory Committee on Evidence Rules recently amended Rule 702 "in response to court decisions that admitted expert testimony too liberally."[16] Indeed, Rule 702 was

---

[11] *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002) ("any step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible*" and "the courtroom door remains closed" to all unreliable testimony) (emphasis in original); *Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 115 (S.D.N.Y. 2021) ("Ultimately, this Court agrees with Judge Lehrburger's finding that Lys's report was unreliable. Because this is a sufficient basis on which to exclude Lys's testimony, the Court need only address Defendant's first two arguments."); *see Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (assuming expert qualified and concluding district court erred by admitting testimony that "does not assist the trier of fact") (quotation omitted); *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 743 F. Supp. 3d 530, 544 (S.D.N.Y. 2024) (finding expert qualified and excluding unhelpful legal conclusions).
[12] *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD) (SN), 2025 WL 2476303, at *2 (S.D.N.Y. Aug. 28, 2025) (citing cases) (ECF 11180) (Daniels, J.) (hereinafter "*Daubert* Decision").
[13] *Id.* at *1 (quotations and citations omitted).
[14] *BS BIG V, LLC v. Philadelphia Indem. Ins. Co.*, No. 19-CIV-4273 (GBD) (SLC), 2022 WL 4181823, at *3 (S.D.N.Y. Sept. 13, 2022) (quotations and alterations omitted) (Daniels, J.).
[15] Order at 2-9.
[16] Order at 3.

amended because courts were "misstat[ing] Rule 702" when they "declared . . . that expert testimony is presumed to be admissible."[17] And she correctly explained that the new rules require that "(i) the party introducing expert testimony has the burden to show that 'it is more likely than not that the proffered testimony meets the admissibility requirements,' and (ii) 'each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology;'"[18] and, as before, that the proponent of expert testimony meet three criteria for admissibility: (1) the witness is "qualified," (2) her "opinion is based on reliable data and methodology," and (3) her "testimony will '[help] the trier of fact."[19]

## ARGUMENT

### I.    Plaintiffs Impermissibly Use their Objections to Seek Clarification of an Unambiguous Order

Plaintiffs impermissibly use their objections to seek clarification of the Order, writing: "if the Order was intended to limit Kohlmann from testifying about finer doctrinal principles of theology or about complex concepts specific to financial accounting, Plaintiffs do not proffer Kohlmann for those matters," "but if the Order was intended to limit him from testifying about counterterrorism issues that intersect with those principles, Plaintiffs object . . . ."[20] Plaintiffs' objections are wrong in substance and procedurally improper. First, Kohlmann did opine on those specific topics and averred his qualifications to do so,[21] even as he admitted to lacking foundational

---

[17] *United States v. Diaz*, No. 24-CR-0032 MV, 2024 WL 758395, at *4 (D.N.M. Feb. 23, 2024) (quoting May 15, 2022 Report of the Advisory Committee on Evidence Rules); *cf.* Objs. at 4 (citing liberal application under Rule 702).

[18] Order at 3 (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment).

[19] *Id.* at 4 (citing *Nimely*, 414 F.3d at 397 (quoting Fed. R. Evid. 702)).

[20] Objs. at 10.

[21] ECF No. 9247 at 5, n.22 and 9-10 (collecting Kohlmann's opinions on Islam), 7, nn.34-36 (listing opinions on financial accounting), 8, n.40 (same), 9, n.45 (same); Decl. of A. Bembry, Ex. A (excerpts of E. Kohlmann's Aug. 5-6, 2021 Deposition Transcript at 154:13-155:16, 156:4-19, 158:19-25, 163:13-21, 183:12-20, 184:22-185:24, 213:21-214:4, 276:5-19, 277:19-278:9, 424:19-24) (variously discounting and describing expertise in aspects of Islam and opining on the same) (hereinafter "Dep. Tr."); *id.* at 375:19-377:15; Order at 13-14, 23 (variously describing Kohlmann's opinions on Islam and the Defendants' financial practices and rejecting Kohlmann's qualifications to make it).

qualifications in both.[22] Second, the Order is not ambiguous. Judge Netburn was clear:  Kohlmann "is not a financial forensic analyst[,] accountant[, or] scholar on Islam."[23] Concluding that "Kohlmann is qualified to discuss the origins, history, structure, and leadership of al Qaeda, as well as the organizational structures of the Charity Defendants," the Order held that "his proffered testimony outside of these topics is neither reliable nor helpful."[24] But, if Plaintiffs require clarification, they should have filed a motion for clarification to present their questions directly to Judge Netburn, rather than file Rule 72 objections.[25] Rule 72 is a vehicle for objections, not clarification.[26] A motion for clarification is the proper vehicle "to resolve alleged ambiguities in [an] order."[27] However, Plaintiffs did not timely file a motion for clarification, and they cannot use Rule 72 to address supposed ambiguities. On this basis alone, the Court should deny Plaintiffs' objections as improper requests for clarification.

## II.    Judge Netburn Correctly Determined that Kohlmann Is not Qualified to Opine on Islam and Financial Accounting

Judge Netburn's findings regarding Kohlmann's qualifications were extensive and deeply critical, highlighting Kohlmann's "troubling" "carelessness" with the details of his publications and education, his "disquieting" "failure to accurately describe his academic credentials," and "his

---

[22] ECF No. 9247 at 7 and n.33 (financial accounting); *id.* at 9 n.47 (Islam).

[23] Order at *16.

[24] *Id.*

[25] *Ficq v. Texas Instruments Inc.*, No. CIV.A.3:02-CV-1273-D, 2004 WL 576057, at *2 n.2 (N.D. Tex. Mar. 1, 2004) ("Any request for clarification must be presented directly to the magistrate judge, not as a component of objections addressed to the district judge."); *see Metcalf v. Yale Univ.*, No. 15-CV-1696 (VAB), 2019 WL 1767411, at *2 (D. Conn. Jan. 4, 2019) (issuing court may address motions for clarification); *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, No. 3:09-CV-1521 (JCH), 2012 WL 13024369, at *5 (D. Conn. May 10, 2012) ("The decision whether to clarify a prior order lies within the discretion of the issuing court.").

[26] Rule 72(a) (permitting objections and stating party may not assign as error a defect in the order not timely objected to).

[27] *In re Terrorist Attacks on Sept. 11, 2001*, No. 02-CV-6977 (GBD) (SN), 2024 WL 809887, at *2 (S.D.N.Y. Feb. 27, 2024) (citation omitted) (quoting *Metcalf*, 2019 WL 1767411, at *2); *Commerzbank AG v. Bank of New York Mellon*, No. 15-CIV-10029 (GBD) (BCM), 2024 WL 1309239, at *5 (S.D.N.Y. Mar. 27, 2024) (denying motion for clarification "because Defendants have not identified any ambiguity in the . . . decision").

lack of training or professionalism beyond his long career as an expert witness."[28] Plaintiffs fail to carry the heavy burden under Rule 72 to demonstrate that these findings were clearly erroneous or contrary to law.

Addressing Kohlmann's education and publications, Plaintiffs emphasize the same unremarkable credentials—Kohlmann's undergraduate degree and coursework and his positions at the Investigative Project on Terrorism ("IPT") and FlashPoint—and cite evidence that was not before Judge Netburn.[29] To the extent Plaintiffs presented these arguments to Judge Netburn, she rejected them.[30] For instance, Plaintiffs again tout Kohlmann's six-course undergraduate Certificate in Islam and Christian-Muslim Understanding,[31] which they contend is "comparable to graduate-level studies."[32] Judge Netburn already concluded that Kohlmann "misrepresents this credential" in his CV and Report and that "Kohlmann's undergraduate studies alone do not qualify or disqualify him as an expert."[33] Plaintiffs make no compelling argument why this conclusion is clearly erroneous or contrary to law.

Adding to the absurdity that a few undergraduate classes could qualify a witness as an expert, Plaintiffs point to Kohlmann's one semester of research in support of his professor's book, which contains only one chapter on Osama Bin Laden, and on his "two additional mentor-approved

---

[28] Order at 19-20 (Judge Netburn's findings on his qualifications included that Kohlmann's: (1) "telling is imprecise"; (2) "report inaccurately intimates that his work is universally the product of a robust peer review process," even if he "acknowledges that at least some of his writing has not been formally peer reviewed"; (3) "publication history is of limited reliability," having "published only one book, two decades ago" with "a significant number of his 'major' articles [being] 'Occasional Reports' published between 2005 and 2009 by a 9/11 foundation that is no longer active or, more recently, blog posts published by his own Flashpoint organization"; and (4) CV and his Report do not accurately describe his "academic credentials" in a disquieting way.); *see* ECF No. 9247 at 2-6 (cataloging Kohlmann's credential inflation and misrepresentations); ECF No. 9375 at 2-3 (same).

[29] Objs. at 3-6.

[30] Order at 10-11, 20-21.

[31] *See* ECF No. 9375 at 3 n.11.

[32] Objs. at 4.

[33] Order at 20; *see* ECF No. 9247 at 2-6 (cataloging Kohlmann's "repeated self-recredentialing"); ECF No. 9375 at 2-3 (same).

and supervised thesis papers."[34] A one-semester research role in Autumn 2000[35] is as insubstantial and "temporary" as the positions that Kohlmann held as a student and that Judge Netburn deemed inadequate.[36] Even worse, Plaintiffs' objections assert that "[m]uch of Kohlmann's research work for Prof. [Mamoun] Fandy was for Prof. Fandy's then-forthcoming book, *Saudi Arabia and the Politics of Dissent*"—a book that was first published in February 1999, **before** Kohlmann began his research position. The book was re-published in February 2001 **with only two changes:** a replacement dust jacket quote and a new ISBN number; even the pagination and formatting on each page remain the same, including in the chapter on Bin Laden that Plaintiffs cite.[37] It is hugely significant that Kohlmann claims to have spent "much of his research work" for a "then-forthcoming book" when a chapter with which he purportedly assisted was written and published **<u>prior</u>** to that work; indeed, Kohlmann is also not mentioned in the Acknowledgments.[38] Here, again, Kohlmann plays fast and loose with the facts, further evidencing the carelessness with his credentials that Judge Netburn found so "disquieting."[39] Additionally, neither undergraduate paper is sufficient to counter Judge Netburn's finding that Kohlmann's resume lacks "publication in academic journals or other publications known for rigorous journalistic standards."[40] Moreover, one of the undergraduate papers that Plaintiffs cite, *A Bitter Harvest, the Soviet Intervention in*

---

[34] Objs. at 4-5.

[35] ECF No. 9250-6 (listing research assistantship as taking place in Fall 2000).

[36] Order at 21.

[37] Objs. at 4-5; Decl. of A. Bembry, Ex. B, excerpts of Mamoun Fandy, *Saudi Arabia and the Politics of Dissent* (Hardcover ed., St. Martin's Press, Feb. 1999) (hereinafter "1999 Edition"); Decl. of A. Bembry, Ex. C, excerpts of Mamoun Fandy, *Saudi Arabia and the Politics of Dissent* (Palgrave ed., Palgrave Pub. Ltd., Feb. 2001, reprinted Jan. 15, 2023) (hereinafter "2001 Edition"). *Compare* 1999 Edition *with* 2001 Edition (containing identical pagination, acknowledgments, tables of contents, chapter 6 (pp. 177-194), and index). *See also* 2001 Edition at Copyright Page ("Palgrave is the new global publishing imprint of St. Martin's LLC . . .").

[38] *See* 1999 Edition, Acknowledgements; 2001 Edition, Acknowledgements.

[39] *See supra* at 5-6 and 6 n.28.

[40] Order at 19-20 (citing Kohlmann's 2004 book and emphasizing that a "significant number of his 'major' articles are 'Occasional Reports' published between 2005 and 2009 by a 9/11 foundation that is no longer active" and recent blog posts).

*Afghanistan*, is not in Kohlmann's CV, was not presented to Judge Netburn,[41] and thus cannot be used to bolster Kohlmann's credentials now.[42]

Plaintiffs approach their challenge as to Kohlmann's employment history in the same ineffective manner, pointing to evidence either properly rejected by or not presented to Judge Netburn.[43] To illustrate Kohlmann's lack of training, Judge Netburn explained that Kohlmann's research began while he was in high school or a freshman in college and that "his CV makes plain that his 'experience' consists of only one full-time job: at a company he created; where he seemingly worked with no expert oversight or guidance; and that began as a website (called Globalterroralert.com) where he reposted terrorist videos and promoted his own book."[44] Judge Netburn likewise highlighted that "Kohlmann has worked only as a consultant or as a television analyst; invariably, he was hired into these temporary positions while he was still in college or — after going straight to law school — immediately after graduating with his J.D."[45]

Plaintiffs offer nothing to rebut this finding. They argued to Judge Netburn that Kohlmann's Senate testimony, his invitation to act as an instructor, and the fact that he has "spoken with folks from … the F.B.I., from Foreign Law Enforcement, from U.S. Congressional investigators, U.S. military" qualifies him to testify about terrorist financing.[46] Here, in their Rule 72 objection, they offer new details about the same deficient credentials.[47] These details do not undermine Judge Netburn's conclusion. Moreover, the additional detail comes from portions of a

---

[41] Objs. at 5; ECF No. 9344 at 4-36.
[42] *See BS BIG V, LLC*, 2022 WL 4181823, at *3.
[43] Objs. at 6 (referring to consultancy during student years at IPT and Flashpoint).
[44] Order at 21. "Flashpoint was first established in early 2010 as the corporate heir to the former website Globalterroralert.com (which itself was founded in early 2004). ECF No. 9250-6 at 1 (Kohlmann's CV).
[45] *Id.* (Indeed, Kohlmann was still a law student when he began working with Plaintiffs' counsel. ECF No. 9250-43, at 9:4-7.).
[46] ECF No. 9344 at 15.
[47] Objs. at 5-6.

transcript Plaintiffs never introduced in the earlier briefing.[48] Thus, these details, in addition to being meaningless, may not properly be considered here. More fundamentally, Plaintiffs do not link Kohlmann's consulting to Islam or terrorist financing; they simply note that Kohlmann's work "placed him in various consulting and training positions."[49] None of this suffices to establish that the Order is erroneous or contrary to law.

Plaintiffs' attempted post-hoc rehabilitation relying on evidence not before Judge Netburn or evidence that she considered and rejected—including references to Kohlmann's undergraduate days and vague consulting projects—is insufficient to satisfy their "heavy burden" or overcome the "highly deferential standard" as required under Rule 72 to show that Judge Netburn's Order was clearly erroneous or contrary to law.[50]

## III.    The Intersection of Counterterrorism with Islam or Financial Accounting Does not Save Kohlmann's Opinions

Judge Netburn found that Kohlmann lacks the "skill, experience, training, or education" to testify about financial practices or Islam.[51] While Plaintiffs claim that they do not offer Kohlmann as an expert on "doctrinal differences between different schools of Islam or similarly esoteric theological matters" or as a "forensic accounting or auditing expert,"[52] they nevertheless argue that Kohlmann's experience in counterterrorism "touching on and intersecting with both Islam and

---

[48] *Compare* Memorandum of Law in Support of Defendants' Joint Motion to Exclude the Expert Testimony of Kohlmann and Levitt, ECF No. 9247 (Defendants' attaching pages 32, 41, and 96-97 of *United States v. Paracha*, No. 03-cr-1197(SHS) 2006 WL 12768 (S.D.N.Y. Jan. 3, 2006) *aff'd,* 313 Fed App'x 347 (2d Cir. 2008). trial transcript as Exhibit 3 and citing the same) *with* ECF No. 9344 (citing no transcript pages and citing Defendants' brief once at 9 n.29) *with* Objs. at 3-5, 10, 12 (variously citing *Paracha* transcript pages 20:17-29:14, 10:21-25; 14:24-25, 11:10-11, 11-12, 14, 15-16, and 27-29); *see BS BIG V, LLC*, 2022 WL 4181823, at *3 ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to a magistrate judge's report and recommendation, and indeed may not be deemed objections at all.").
[49] Objs. at 5.
[50] *Daubert* Decision, 2025 WL 2476303 at *1-2.
[51] Order at 24.
[52] Objs. at 6, 10.

financial accounting" generates the qualifications to opine on both topics.[53] It is Plaintiffs' argument, and not Judge Netburn's Order, that is clearly erroneous and contrary to law.

Plaintiffs concede, as they must, that Kohlmann is not qualified to testify about Islam and is not an accounting or auditing expert.[54] Yet Kohlmann's purported opinions reach deep into those subjects. For instance, Kohlmann opines on alleged "financial irregularities and atypical accounting practices," "illicit money laundering," "suspicious financial practices," and on Wahhabism, jihad, violent jihad, dawah, radical Islam, the "shahada," and the five pillars of Islam.[55] With Kohlmann's lack of relevant experience on full display, Plaintiffs now disavow any intention of calling Kohlmann to testify about Islam or financial accounting while simultaneously seeking to clarify that Kohlmann is permitted to testify about "certain basic and foundational issues that could be construed as touching upon 'religion' and 'financial matters.'"[56] But Plaintiffs' assertion that Kohlmann's testimony in these areas is merely "basic and foundational" is belied by the substance of his report. In just one of many examples, Kohlmann offers his "expert" opinion about the accounting practices of the Charity Defendants, concluding:

> [f]inancial irregularities and atypical accounting practices used by these Saudi-based dawah organizations are not bugs, but rather features of these groups—and are consistent with typical terrorist financing modes and methodologies.[57]

This example demonstrates Kohlmann's true intentions to deceptively portray himself as an expert in financial accounting, not merely to "touch[] upon" financial matters as Plaintiffs misleadingly

---

[53] *Id.* at 6.
[54] Order at 32. Indeed, at his deposition, Kohlmann admitted as much. *See* ECF No. 9247 at 7 and n.33 (financial accounting); *id.* at 9 n.47 (Islam).
[55] ECF No. 9247 at 5, n.22, 9-10 (collecting Kohlmann's opinions on Islam), at 7, nn.34-36 (listing opinions on financial accounting), 8, n.40 (same), 9, n.45 (same); ECF No. 9375 at 5 (highlighting Kohlmann's opinion that "any 'jihad' is 'violent jihad' and any advocacy of a conservative strain of Islam is 'violent extremist indoctrination'"); Dep. Tr. at 154:13-155:16, 156:4-19, 158:19-25, 163:13-21, 183:12-20, 184:22-185:24, 213:21-214:4, 276:5-19, 277:19-278:9, 424:19-24 (variously discounting and describing expertise in aspects of Islam and opining on the same); *id.* at 375:19-377:15 (discounting expertise in financial accounting yet opining on the same).
[56] Objs. at 6.
[57] ECF No. 9250-2, ¶ 17.

suggest. Plaintiffs' objections seek to artificially redefine Kohlmann's opinions while denying any attempt to elicit testimony that would reach "doctrinal differences between different schools of Islam or similarly esoteric theological matters," "finer doctrinal principles of theology," or "complex concepts specific to financial accounting" by disclaiming Kohlmann as a "forensic accounting or auditing expert."[58]

Plaintiffs' attempt to meld these subjects together with Kohlmann's testimony on counterterrorism[59] was already considered and rejected by Judge Netburn, who concluded that: "Kohlmann's testimony explaining how 'tenets of Islam are coopted into violent political movements' necessarily requires a level of expertise in Islam 'as a religious faith' that he does not possess" and that "financial accounting and Islam" are "complex and nuanced subjects that require more than self-directed or introductory study.[60] Judge Netburn's conclusion was grounded in the law, as she emphasized the Second Circuit's admonition that "because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields."[61]

Intent on (improperly) relitigating the question of Kohlmann's qualifications to opine on Islam, Plaintiffs cite past court decisions where other courts in unrelated matters determined, on the facts of those cases and under the then-applicable version of Rule 702, that Kohlmann was qualified to testify on various issues.[62] Those decisions are not binding here. Indeed, Judge Netburn

---

[58] Objs. at 6-7, 10.

[59] Notably, Plaintiffs' argument is based on an incorrect premise. The Order did not qualify Kohlmann on counterterrorism, but "the origins, history, structure, and leadership of al Qaeda, as well as the organizational structures of the Charity Defendants." Order at 33.

[60] Order at 23.

[61] *Id.* at 24 (quoting *Nimely*, 414 F.3d at 399, n.13). Judge Netburn put it more colorfully in her 2023 bellwether decision: "neither a pig farmer nor a biologist could explain to a jury what food is considered *haram*." ECF No. 9060 at 10, *In re Terrorist Attacks on Sept., 11, 2001*, No. 03-MD-1570 (GBD(SN), 2023 WL 3116763, at *5 (S.D.N.Y. Apr. 27, 2023).

[62] Objs. at 8.

correctly explained that the Court must ask "whether Kohlmann's credentials qualify him as an expert fit to testify in *this* case," "not . . . relitigate prior cases."[63] Moreover, in citing those decisions,[64] Plaintiffs ignore both the recent rule change[65] and the factual finding by Judge Netburn that Kohlmann's presentation of his credentials was misleading and careless.[66] To satisfy their burden, Plaintiffs must do more than point to other courts' findings in other cases; at minimum, they must engage with the findings of the court in *this* case and demonstrate that those determinations were clearly erroneous or contrary to law. They have not done so.

Plaintiffs' arguments concerning financial accounting are likewise flawed. Citing the same credentials Judge Netburn rejected,[67] Plaintiffs contend that Kohlmann is qualified to testify on terrorist financing based on his "field experience," court decisions from 2009 (*United States v. Kassir*) and 2011 (*Owens v. Republic of Sudan*), and a 2006 article.[68] As Judge Netburn found, the so-called "field experience"—that Kohlmann "examine[d]" or "studied" accounting documents "on the side"—did not confer on Kohlmann the necessary qualification.[69] As indicated above, neither the *Kassir* nor *Owens* decisions control, as the Court must analyze whether Kohlmann may

---

[63] Order at 18 (emphasis in original); *see Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 464 (E.D.N.Y. 2011) ("This Court is not bound by . . . those cases, only by the criteria of *Daubert,* Rule 702, the Second Circuit, the Supreme Court, and to some extent the rulings of the MDL court.").

[64] Objs. at 8.

[65] *See supra* at 3-4.

[66] ECF No. 9247 at 2-6; *compare* Order at 15 n.6 (describing 2011 Second Circuit decision concerning Kohlmann, which noted Kohlmann's graduate studies," his academic papers, his peer reviewed work, and his methodology as compared to other experts) *with id.* at 11, 18-23 (describing Kohlmann's "insufficient" undergraduate certificate, explaining that "knowing about Islamic terminology" is insufficient, cataloguing his dearth of academic papers, his paucity of peer reviewed work, his "carelessness" with "details" and his "disquieting" "failure to accurately describe his academic credentials," and rejecting his methodology); *see also infra* § IV.

[67] *Compare* ECF No. 9344 at 13 *with* Objs. at 9-10.

[68] Objs. at 9-11.

[69] Order at 23 (citing ECF No. 9345-13 at 715:16-22); *see* ECF No. 9375 at 4 (explaining case law requires actual experience, not "on the side" study); *see also* ECF No. 9247 at 7-8; *id.* at 8 n.39 (citing *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) (excluding auditing expert who "never conducted such an audit," lacked "the requisite training," and "concedes that she lacks qualifications to opine in this area"); *Chill v. Calamos Advisors LLC*, 417 F. Supp. 3d 208, 244 (S.D.N.Y. 2019) (excluding accounting expert who lacked "degrees or certifications in accounting," was "not an expert in GAAP or managerial accounting," and had "no experience in preparing, auditing, or analyzing financial statements").

testify in this case.[70] Moreover, both those cases predate the rule change, and *Owens* was a default judgment with no *Daubert* challenge or jury trial.[71] Finally, Kohlmann's opinions in this case largely regurgitate the 2006 article; but he wrote that article when he had already been retained by Plaintiffs, and he lacked the qualifications when he wrote it, just as he lacks them now.[72] Plaintiffs' arguments simply cannot surmount Kohlmann's own testimony that he (1) has *no* formal training in accounting; (2) is *not* a CPA; (3) is *not* a forensic accountant; (4) has *never* conducted a financial audit; and (5) has *never* opined on whether a particular audit met international accounting or audit standards,[73] all of which shows that Kohlmann is not qualified in this area, as Judge Netburn correctly concluded.

Plaintiffs' maneuvers do not demonstrate that Judge Netburn's determinations were clearly erroneous and contrary to law. This Court should find that Plaintiffs cannot meet the "highly deferential standard" and the "heavy burden" they face under Rule 72.[74]

## IV.    Judge Netburn Correctly Excluded Kohlmann's Opinions Where They Were not Based on Reliable Data or Employed Inadequate Methodology

Plaintiffs' sole basis for challenging Judge Netburn's Order with respect to Kohlmann's methodology is that because some other courts have not rejected his methodology in some cases, Judge Netburn must have erred in finding that in this case Kohlmann's opinions on the Charity Defendants' financial practices and Islam were unreliable.[75] The Plaintiffs' objection is misplaced and does not meet the clearly erroneous standard. First, the Plaintiffs' lengthy discussion of *United States v. Paracha* is inapposite. In that case Kohlmann was limited to "the origins,

---

[70] *See supra* at 11-12 and 12 n.63; *infra* at 14 n.78; ECF No. 9060 at 2, 8, 40.

[71] *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 143 (D.D.C. 2011); *United States v. Kassir*, No. S204CR356 (JFK), 2009 WL 910767 (S.D.N.Y. Apr. 2, 2009).

[72] ECF No. 9375 at 4, n.22.

[73] ECF No. 9247 at 7.

[74] *Daubert Decision*, 2025 WL 2476303, at *1-2.

[75] ECF No. 11350 at 10-12.

leadership and tradecraft of the Al Qaeda organization," not on the financial accounting and Islam issues for which Plaintiffs have offered him here.[76] Second, Judge Netburn excluded many of Kohlmann's opinions as they are not based on reliable data or methodology.[77] And third, as discussed above, "[t]he Court's role . . . is not to relitigate prior cases; it is to decide, based on current evidence, whether Kohlmann's credentials qualify him as an expert fit to testify in *this* case."[78]

## V. Plaintiffs Have Not Objected to Judge Netburn's Findings as to Reliability and Helpfulness, Two Findings That Alone Would Disqualify Kohlmann as an Expert

Plaintiffs do not object to Judge Netburn's determinations that Kohlmann's testimony is neither reliable nor helpful,[79] which alone suffice to exclude Kohlmann's testimony.[80] Plaintiffs' limited objection to the Order's discussion of Kohlmann's inadequate methodology suggests that the Court ruled on Kohlmann's methodology in isolation.[81] This is wrong. In a thorough and complete analysis, the Court addressed the reliability and helpfulness of Kohlmann's opinions, finding that for the most part his opinions were not reliable or helpful.

Incorporating her thorough and meticulous analysis of Kohlmann's qualifications, Judge Netburn noted that "[t]he limits of Kohlmann's experience and publication history also inform the Court's reliability and helpfulness inquiries."[82] Judge Netburn described Kohlmann's

---

[76] *Paracha*, 2006 WL 12768, at *20
[77] Objs. at 10-12.
[78] Order at 18 (citing *Kassir*, 2009 WL 910767, at *7) (emphasis in original). *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2025 WL 354671, at *2 (S.D.N.Y. Jan. 30, 2025) ("A court cannot bypass this gatekeeping responsibility and pass it off to the jury by declaring questions of the sufficiency of an expert's basis, and the application of the expert's methodology, [to be] questions of weight and not admissibility.") (quotation omitted); *supra* at 12 n.63. Indeed, the "standard under Rule 702" no longer "remains the same." *See supra* at 3-4.
[79] Order at 25-31.
[80] *Amorgianos*, 303 F.3d at 267; *Nimely*, 414 F.3d at 398; *Pac. Life Ins.*, 571 F. Supp. 3d at 115; *Am. Empire*, 743 F. Supp. 3d at 544.
[81] Objs. at 10.
[82] Order at 24.

methodology as a "case-oriented approach [that] sees him juxtapose specific instances of a certain phenomenon to distill a common, accepted narrative in his report; in other words, he relies heavily on his knowledge and previous experience to carry out the comparative analysis at the heart of his testimony."[83] Judge Netburn found "that the court has serious concerns about these qualifications [which] accordingly undermine[] his reliability and helpfulness to the jury."[84]

### A.    Judge Netburn Correctly Determined that Kohlmann's Testimony Is Not Reliable

The Order found that many of Kohlmann's opinions were unreliable as they were based on manipulated and manufactured evidence and speculation.[85] In just one glaring example of Kohlmann's unreliable approach, Judge Netburn found that he erased "a phrase from a quotation that directly contradicts his thesis."[86] The omitted phrase, "not for financing terrorism," transformed the "fact" asserted by Kohlmann from one supporting his opinion that the Defendant Charities' financial practices were consistent with terrorism financing to one that directly contradicted it.[87] Though the Order addresses other similar examples,[88] this particular instance was so egregious that Judge Netburn rightly found that "Kohlmann's decision to omit a phrase disclaiming the Defendants' connection to terrorism financing in a case about terrorism financing severely undermines the reliability of his report."[89]

Judge Netburn also correctly found Kohlmann's opinions on the Charity Defendants' financial practices and Islam unreliable due to his penchant for speculation with no consideration

---

[83] *Id.* at 24 (internal quotations omitted).
[84] *Id.* at 24-25.
[85] *Id.* at 25-28.
[86] *Id.* at 25-27.
[87] *Id.* at 25-26.
[88] *Id.* at 27, n.12 (referencing Kohlmann's failure to correctly provide "elemental information" such as a hijacker's name).
[89] *Id.* at 27.

for theories other than his own.[90] Importantly, Judge Netburn concluded that these analytical failures "may be, in part, due to [Kohlmann's] limited experience in accounting and financial forensics, only further buttressing the Court's finding that he is not qualified in this space."[91] The Court further found that Kohlmann engaged in speculation in basing his opinions on his own *ipse dixit* such that these opinions "reflect 'too great an analytical gap between the data and the opinion proffered.'"[92] Thus, as the Court found, and the Plaintiffs ignore, "[t]aken together, Kohlmann's carelessness, selective presentation of the evidence, and reliance on speculation and his own *ipse dixit* severely undercut the reliability of his testimony."[93] Judge Netburn was correct, and Plaintiffs neither argue nor establish that the finding was erroneous or contrary to law.

**B.    Judge Netburn Properly Excluded Kohlmann's Unhelpful Testimony**

The Plaintiffs do not assert that Judge Netburn's clearly erred by limiting Kohlmann's opinions where they do not meet Rule 702's helpfulness requirement.[94] They thus concede that Judge Netburn was correct to conclude that many of Kohlmann's opinions would not help the trier of fact to understand the evidence or determine facts in issue. Kohlmann's opinions did not meet the helpfulness requirement, the Magistrate Judge found, where he drew legal conclusions, opined about individuals' and organizations' states of mind and subjective intent, or laundered hearsay evidence without applying his own expertise or analysis.[95]

Judge Netburn's conclusions as to these unreliable and unhelpful testimonies were well-supported; they were not clearly erroneous or contrary to law, and, crucially, Plaintiffs' have not objected to them. The Court can thus overrule Plaintiffs' objections on either ground.

---

[90] *Id.* at 27-28.
[91] *Id.* at 28.
[92] *Id.* at 27, n.13 (quoting *General Electric Co. v. Joiner* 522 U.S. 136, 146 (1997)).
[93] *Id.* at 28.
[94] *Id.* at 28-32.
[95] *Id.* at 29-32.

## VI.    A Hearing Is Unnecessary, and Plaintiffs Waived any Request for One

"Courts have wide latitude to decide whether to hold a *Daubert* hearing, and a hearing is not necessary if a court can decide on the objections to the testimony based on written submissions."[96] While the Court must ignore the newly introduced evidence Plaintiffs proffer,[97] even with that evidence, the record would be clear enough for the Court to rule on Plaintiffs' objections without a hearing. Moreover, Plaintiffs never requested a hearing before Judge Netburn.[98]

Plaintiffs now ask this Court to hold an unnecessary *Daubert* hearing to consider Judge Netburn's secondary conclusion that "the trial court should evaluate whether Kohlmann should be permitted to testify at all, given the serious shortcomings of his qualifications and reliability."[99] In making this request, the Plaintiffs rely upon criminal cases.[100] Given the vastly different standards between the Federal Rules of Criminal Procedure and the Federal Rules of Civil Procedure concerning when witnesses may be deposed, an evidentiary hearing is often the only way to develop the record required to decide a *Daubert* challenge in a criminal case.[101] Here, both Judge Netburn and this Court have the benefit of Kohlmann's testimony over a two-day deposition. Judge Netburn chose "not to hold a *Daubert* hearing based on her thorough review of both parties' expert testimonies and written submissions, which are sufficient for her and the Court to reach their

---

[96] *Daubert* Decision, 2025 WL 2476303, at *12.
[97] *BS BIG V, LLC*, 2022 WL 4181823, at *3.
[98] Defendants obliquely referred to one in their notice of motion. *See* ECF No 9246; Order at 10 (denying as moot request in notice of motion). Plaintiffs' request is therefore unnecessary and waived. *BS BIG V, LLC*, 2022 WL 4181823, at *5 ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not. Because Defendant did not challenge the helpfulness of Sherbansky's report in its motion papers, this Court has no occasion to decide that issue.") (citations, quotations, and alterations omitted).
[99] Order at 33; *see* Objs. at 11-12.
[100] Objs. at 12.
[101] *Compare* Fed. R. Crim. P. 15 (a) *with* Fed. R. Civ. P. 30 (a).

decisions."[102] This Court does not need to hold a hearing either.

No *Daubert* hearing has been held ***or requested*** with respect to the other 22 experts in this case, and there is no reason to treat Kohlmann differently. The record is more than sufficient for the Court to find, as Judge Netburn found, that other than on the limited issues of the origins, history, structure, and leadership of al Qaeda and the organizational structure of the Charity Defendants, Kohlmann is not qualified to give expert testimony and his opinions are unreliable and unhelpful.

## CONCLUSION

For the reasons set forth herein, the Court should overrule Plaintiffs' objections.

---

[102] *Daubert* Decision, 2025 WL 2476303, at *12.

Dated:  October 31, 2025
New York, New York

Respectfully submitted,

/s/ *Aisha E. R. Bembry*

Eric L. Lewis
Aisha E. R. Bembry (admitted *pro hac vice*)
Sumayya Khatib (admitted *pro hac vice*)
Lewis Baach Kaufmann Middlemiss PLLC
1050 K St NW, Suite 400
Washington, DC 20001
Telephone: (202) 833-8900
Fax: (202) 466-5738
Email: eric.lewis@lbkmlaw.com
Email: aisha.bembry@lbkmlaw.com
Email: sumayya.khatib@lbkmlaw.com
*Counsel for Defendants Muslim World League, International Islamic Relief Organization, Dr. Abdullah bin Saleh Al Obaid, Dr. Adnan Khalil Basha, and Dr. Abdullah bin Abdelmohsen Al Turki*

/s/ *Omar T. Mohammedi*

Omar T. Mohammedi
Frederick Goetz, *of counsel* (admitted *pro hac vice*)
The Law Firm of Omar T. Mohammedi, LLC
233 Broadway, Suite 820
New York, NY 10279
Telephone: (212) 725-3846
Fax: (212) 202-7621
Email: omohammedi@otmlaw.com
Email: fgoetz@goetzeckland.com
*Counsel for Defendants World Assembly of Muslim Youth and World Assembly of Muslim Youth International*

/s/ *Alan Kabat*

Alan Kabat
Bernabei & Kabat PLLC
1400 16th Street NW, Suite 500
Washington, DC 20036-2223
Telephone: 202-745-1942
Email: Kabat@Bernabeipllc.com
*Counsel for Dr. Abdullah bin Saleh Al Obaid, Dr. Adnan Khalil Basha, and Dr. Abdullah bin Abdelmohsen Al Turki*

/s/ *Peter C. Salerno*

Peter C. Salerno
Amy Rothstein
Salerno & Rothstein
221 Schultz Hill Road
Pine Plains, NY 12567
Telephone: (518) 771-3050
Email: peter.salerno.law@gmail.com
Email: amyrothsteinlaw@gmail.com
*Counsel for Defendant Yassin Kadi*

## <u>Certificate of Compliance</u>

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 6,422 words.