1:03-md-01570-GBD-SN

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Nov 03, 2025

23-1170-cv
In re: Terrorist Attacks on Sept. 11, 2001

# United States Court of Appeals
# for the Second Circuit

August Term, 2024

(Argued: March 7, 2025      Decided: September 10, 2025)

Docket No. 23-1170-cv

_____

IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001

_____

KREINDLER & KREINDLER LLP,

*Interested-Party-Appellant*,

KATHLEEN ASHTON, Individually, as a Surviving Spouse, as Personal Representative of the Estate of Thomas Ashton and as Administrator of the Estate of Thomas Ashton, deceased and on behalf of all survivors of Thomas Ashton, JOSEPHINE ALGER, Individually, as Personal Representative of the Estate of David D. Alger, as surviving Spouse of David D. Alger,Spouse of David D. Alger Deceased, Personal Representative of the Estate of David D. Alger, Deceased, as Co-Executor of the Estate of David D. Alger, deceased and on behalf of all of survivors of David D. Alger, ANGELICA ALLEN, Individually, as Administrator of the Estate of Eric Allen, deceased and on behalf of survivors of Eric Allen, as Personal Representative of the Estate of Eric Allen, as surviving Spouse of Eric Allen, Deceased, Personal Representative of the Estate of Eric Allen, Deceased and Spouse of 9/11 decedent Eric Allen, GEORGE ANDRUCKI, Individually, as Co-Administrator of the Estate of Jean Andrucki, deceased and on behalf of all survivors of Jean Andrucki and as Personal Representative of the Estate of Jean Andrucki, , MARY ANDRUCKI, as Co-Administrator of the Estate of Jean Andrucki, deceased and on behalf of all survivors of Jean Andrucki,

*Plaintiffs*,

v.

THE KINGDOM OF SAUDI ARABIA,

*Defendant-Appellee*,

EGYPTIAN ISLAMIC JIHAD, YESLAM BINLADIN, MOHAMMED AL FAISAL AL SAUD, ABDULRAHMAN BIN MAHFOUZ, AFRICAN MUSLIM AGENCY,

*Defendants*.

---

Before:

    CALABRESI, LOHIER, and NATHAN, *Circuit Judges*.

    Kreindler & Kreindler LLP, a law firm serving on the Plaintiffs' Executive Committee in the September 11, 2001 multidistrict litigation, leaked a confidential deposition transcript to a reporter in violation of protective orders designed to ensure the confidentiality of certain documents. After finding that the firm deliberately breached the protective orders and lied to the court during an investigation of the breach, the United States District Court for the Southern District of New York (Daniels, *J.*, Netburn, *M.J.*) imposed sanctions pursuant to Federal Rule of Civil Procedure 37(b). Among other things, the District Court removed the firm from the Plaintiffs' Executive Committee and ordered it to pay attorney's fees. The firm appealed the sanctions order as an interested party-appellant, arguing that the order was appealable under the collateral order doctrine. We hold that a Rule 37(b) sanctions order imposed on attorneys for discovery violations is not immediately appealable under the collateral order doctrine because it is effectively reviewable after final judgment and does not resolve important questions separate from the merits. We therefore **DISMISS** the appeal.

2

> RAYMOND D. MOSS (Edward M. Spiro, *on the brief*), Morvillo Abramowitz Grand Iason & Anello P.C., New York, NY, *for Interested-Party-Appellant*.
>
> GREGORY G. RAPAWY (Michael K. Kellogg, Andrew C. Shen, *on the brief*), Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Washington, DC, *for Defendant-Appellee*.

LOHIER, *Circuit Judge*:

In this interlocutory appeal, the United States District Court for the Southern District of New York sanctioned a law firm for violating protective orders in the multidistrict litigation (MDL) stemming from the September 11, 2001 terrorist attacks. The law firm, Kreindler & Kreindler LLP, served on the MDL's Plaintiffs' Executive Committee (PEC) for nearly twenty years. Its troubles began when it leaked a confidential deposition transcript to a reporter in violation of two court orders. After a two-day evidentiary hearing, the Magistrate Judge (Netburn, *M.J.*) found that the firm deliberately breached the protective orders and lied to the court. Relying on Federal Rule of Civil Procedure 37(b), Magistrate Judge Netburn sanctioned the firm by removing it from its leadership position and ordering it to pay attorney's fees. The District Judge (Daniels, *J.*) affirmed. After petitioning for a writ of mandamus, which this Court denied, Kreindler & Kreindler filed the current appeal.

3

As we explain below, we lack appellate jurisdiction over this interlocutory appeal of Rule 37(b) sanctions. The appeal is not from a reviewable collateral order: the sanctions order is effectively reviewable after final judgment and does not resolve an important issue completely separate from the merits of the underlying action. We therefore dismiss the appeal for lack of jurisdiction.

## BACKGROUND

The 9/11 MDL includes hundreds of cases brought by the victims and survivors of victims of the September 11, 2001 terrorist attacks, as well as by businesses and insurers. The Judicial Panel on Multidistrict Litigation consolidated these cases in 2003 in the Southern District of New York. In each case, the plaintiffs allege that the defendants, including, as relevant here, the Kingdom of Saudi Arabia, provided material support to Osama bin Laden and the al Qaeda terrorists who perpetrated the 9/11 attacks. The PEC has "final authority with respect to matters pertaining to the claims of its constituencies" and "conduct[s] all pretrial proceedings involving common legal and factual issues . . . on behalf of all plaintiffs," including motions practice, document discovery, and depositions. Joint App'x 4. In 2004 the District Court appointed

4

attorneys from the law firm Kreindler & Kreindler to the MDL's PEC for Personal Injury and Death Claims.

An enduring difficulty of this MDL has been protecting the "vast array of private and confidential information [produced] during discovery, much of which will have little or no bearing on the resolution of these actions but will be subject to widespread public scrutiny." Joint App'x 685. To tackle the problem, the District Court entered two protective orders limiting the use of discovery material produced in the MDL—a general protective order issued in October 2006 and an FBI protective order issued in November 2018. Both orders prohibit the disclosure of confidential deposition transcripts for at least 30 days.

Kreindler & Kreindler first breached the general protective order in 2017. The firm's researcher, John Fawcett, gave a "specific description of a confidential [discovery] document" that year to a *Politico* reporter while explaining how the firm used the document to advance its investigation. Spec. App'x 9. In response, the Magistrate Judge issued "a first warning," admonishing the firm to "be more careful as you continue to litigate this case, including given that you are an executive member of the [PEC]." Joint App'x 719, 722. The Magistrate Judge

5

declined, though, to impose any sanctions or preclude the use of the discovery document that Fawcett had disclosed.

The events triggering this appeal started in June 2021 with the deposition of a former Saudi Arabian official, Musaed Al Jarrah. On July 15, 2021, *Yahoo! News* reporter Michael Isikoff published an article revealing that he had obtained a copy of the deposition transcript and disclosing that FBI agents had questioned Al Jarrah about alleged possession of child pornography. On July 21 Saudi Arabia notified the law firms serving on the PECs that it would request a court investigation of the leak.

Although Kreindler & Kreindler responded to the threat of a court investigation by conducting what it characterized as its own internal investigation, it declared its investigation complete having never directly questioned Fawcett about his role in the breach. Meanwhile, Fawcett reacted on July 22 by contacting a criminal defense attorney for legal advice and speaking with firm partner James Kreindler several times by phone.

On July 23 Saudi Arabia moved for discovery into the breach and for sanctions. In response, Kreindler & Kreindler merely expressed "confiden[ce] that it was not the source of the leak" without submitting sworn declarations to

6

confirm the statement. Joint App'x 887. Two other PEC firms, by contrast, voluntarily submitted detailed declarations confirming that they had not communicated with Isikoff.

On August 12 the Magistrate Judge ordered Kreindler & Kreindler to file sworn declarations about whether anyone within the firm had shared the transcript. The firm answered by submitting four attorney declarations, all of which the Magistrate Judge deemed deficient. Its hand forced, the firm then filed a declaration from Fawcett admitting, for the first time, that he had deliberately leaked the transcript to Isikoff.

Following a two-day evidentiary hearing, the Magistrate Judge granted the motion for sanctions. In a detailed order, the Magistrate Judge labeled Kreindler & Kreindler's internal investigation "facially deficient" and found that the firm had willfully violated the protective orders as "the result of deliberate coordination between Fawcett and Kreindler." Spec. App'x 43, 50. Describing the declarations submitted by the firm's other attorneys as littered with "numerous misleading or false statements," Spec. App'x 28, the Magistrate Judge determined that the attorneys themselves were "at best, willfully blind" and "at worst, active[ly] collu[ding] in a cover-up," Spec. App'x 43, 49–50. Having "lost

7

faith in the firm's ability to comply with court orders or appear before the Court on behalf of all the September 11 victims," Spec. App'x 6, the Magistrate Judge sanctioned it under Rule 37(b), immediately removed it from the 9/11 MDL's PEC, ordered it to pay Saudi Arabia's attorney's fees, and barred it from receiving any award of common benefit funds for work performed after the leak.

The District Court affirmed the Magistrate Judge's sanctions order. Judge Daniels confirmed that "James Kreindler, if not additional Kreindler & Kreindler attorneys, was directly involved in John Fawcett's leak of the Al Jarrah transcript." Spec. App'x 86 (cleaned up). He also determined that the firm's "willful violations of the Protective Orders significantly harmed this multidistrict litigation." Spec. App'x 94. After unsuccessfully petitioning this Court for a writ of mandamus, Kreindler & Kreindler filed this interlocutory appeal.

## DISCUSSION

### I

Before reaching the merits of an appeal, "we are obliged to assure ourselves that appellate jurisdiction exists." *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 46 (2d Cir. 2020). Our appellate jurisdiction is generally limited to "final decisions of the district courts," 28 U.S.C. § 1291, that "end[] the

8

litigation on the merits and leave[] nothing for the court to do but execute the judgment," *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (quotation marks omitted). Otherwise, "[p]ermitting piecemeal, prejudgment appeals" would "undermine[] efficient judicial administration and encroach[] upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quotation marks omitted).

"The collateral order doctrine . . . is a judicially created exception to the final decision principle; it allows immediate appeal from orders that are collateral to the merits of the litigation and cannot be adequately reviewed after final judgment." *Germain v. Conn. Nat'l Bank*, 930 F.2d 1038, 1039–40 (2d Cir. 1991) (Kearse, J.). The doctrine permits appeals from "a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" *Mohawk Indus.*, 558 U.S. at 106 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). To qualify as an immediately appealable collateral ruling, an order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment."

9

*Will v. Hallock*, 546 U.S. 345, 349 (2006) (quotation marks omitted). "All three of the requirements for appeal under the collateral order doctrine must be met." *Fischer v. N.Y. State Dep't of Law*, 812 F.3d 268, 274 (2d Cir. 2016). We apply these requirements to "the entire category to which a claim belongs," *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994), and thus avoid "a fact-specific, case-by-case analysis," *S.E.C. v. Smith*, 710 F.3d 87, 94 (2d Cir. 2013).

## II

In this case, Kreindler & Kreindler appeals from the District Court's order confirming the Magistrate Judge's Rule 37(b) sanctions for the firm's discovery violations. It is clear to us, and Saudi Arabia does not dispute, that the sanctions order was conclusive and satisfies the first condition of the collateral order doctrine. *See* Appellee's Br. 28–30. Because the order fails to satisfy either of the two remaining requirements, however, we lack appellate jurisdiction and therefore dismiss the appeal.

## A

In *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985), the Supreme Court reviewed an order disqualifying attorneys for misconduct in a civil case. "[O]rders disqualifying counsel in civil cases, *as a class*," the Court held, "are not

10

sufficiently separable from the merits to qualify for interlocutory appeal." *Id.* at 440 (emphasis added). In reaching its conclusion, the Supreme Court rejected a "case-by-case" analysis. "Even if some orders disqualifying counsel are separable from the merits of the litigation," the Court explained, "many are not." *Id.* at 439.

In *Cunningham v. Hamilton County*, 527 U.S. 198 (1999), the Supreme Court extended its categorical approach beyond orders disqualifying counsel in civil cases to orders imposing sanctions (that is, attorney's fees and costs) under Rule 37(a). In *Cunningham*, an attorney sanctioned under Rule 37(a) for violating a discovery order sought an immediate appeal. The Court held that a Rule 37(a) sanctions order imposed on an attorney was categorically not an immediately appealable final decision. *Id.* at 210. It explained that such an order is "often . . . inextricably intertwined with the merits of the action" and, on appellate review, would typically require an inquiry that "differ[s] only marginally from an inquiry into the merits." *Id.* at 205–06. As in *Richardson-Merrell*, the Court rejected "a case-by-case approach to deciding whether an order is sufficiently

11

collateral," favoring instead a categorical approach even though "not every discovery sanction will be inextricably intertwined with the merits." *Id.* at 206.

As for the collateral order doctrine's third (and final) condition, the Supreme Court has made clear that Rule 37 sanctions orders are not "effectively unreviewable" after final judgment in view of "the identity of interests between the attorney and client." *Id.* For this "class of claims, taken as a whole," interlocutory appeals "are not necessary to ensure effective review." *See Mohawk Indus.*, 558 U.S. at 107–08. To the contrary, attorney sanctions are reviewable after final judgment precisely because of "the identity of interests between the attorney and client." *Cunningham*, 527 U.S. at 206. "[A]ttorneys assume an ethical obligation to serve their clients' interests," the Court explained in *Cunningham*, and so the "effective congruence of interests between clients and attorneys counsels against treating attorneys like other nonparties for purposes of appeal." *Id.* at 206–07. When attorneys lose a motion for sanctions under Rule 37, clients lose too.

### B

Following these Supreme Court decisions, this Court has held that "an order imposing Rule 37 sanctions against an attorney, either alone or jointly and

12

severally with his client, is not an appealable 'final decision.'" *New Pac. Overseas Grp. (U.S.A.) Inc. v. Excal Int'l Dev. Corp.*, 252 F.3d 667, 670 (2d Cir. 2001). In particular, we have determined that Rule 37(b) sanctions orders against parties are not immediately appealable, s*ee Linde v. Arab Bank, PLC*, 706 F.3d 92, 104–07 (2d Cir. 2013), and that Rule 37 sanctions against attorneys are effectively reviewable on appeal from a final judgment and thus also not immediately appealable, *see New Pac. Overseas Grp.*, 252 F.3d at 670. We have, however, left (and noted that at least one sister circuit's interpretation of *Cunningham* leaves) "open the possibility that some types of sanctions may be immediately appealable if the rationale underlying the *Cunningham* decision does not apply." *Smith*, 710 F.3d at 95 n.8 (citing *Stanley v. Woodford*, 449 F.3d 1060, 1064 (9th Cir. 2006)). And of course, as Kreindler & Kreindler well knows because it filed one in this case, a petition for writ of mandamus offers another "escape hatch from the finality rule" to "account for . . . equitable considerations" such as exceptional hardship. *Linde*, 706 F.3d at 107 (quotation marks omitted).

### III

Keeping these principles in mind, it is clear that "the reasoning applied in *Cunningham* applies to the types of sanctions present in this matter" and thus the

13

District Court's sanctions order is not immediately appealable under the collateral order doctrine. *Smith*, 710 F.3d at 95 n.8.

As an initial matter, "[a]n issue is not separate from the merits if its resolution requires the courts of appeals 'to review the nature and content of [the merits] proceedings.'" *In re ALBA Petróleos de El Salvador S.E.M. de C.V.*, 82 F.4th 105, 113 (2d Cir. 2023) (quoting *Richardson-Merrell*, 472 U.S. at 439). The District Court's sanctions order does not "resolve an important issue completely separate from the merits of the action." *See Will*, 546 U.S. at 349 (quotation marks omitted). To the contrary, this case required that the District Court consider "the importance of the information" to the underlying merits of the MDL in order to fashion an appropriate sanction. *See Cunningham*, 527 U.S. at 205. For example, in considering whether merely precluding the use in evidence of the leaked deposition transcript was a sufficient sanction, the Magistrate Judge concluded that exclusion was inadequate because the leaked information was not "particularly revelatory" or "helpful to the case." Spec. App'x 52–53. The Magistrate Judge also evaluated the effect of the firm's removal from the PEC (and other potential sanctions) on both the plaintiffs and the progress of the

14

overall litigation. These considerations are, in our view, "inextricably intertwined with the merits of the action." *Cunningham*, 527 U.S. at 205.

Even if we (or the District Court) were able to resolve the sanctions issue without reference to the merits, we have "insist[ed] upon *important* questions separate from the merits, ensuring that the justification for immediate appeal is sufficiently strong to overcome the usual benefits of deferring." *In re ALBA Petróleos*, 82 F.4th at 113 (cleaned up). The District Court's Rule 37(b) order does not present any "important question[s] of law whose resolution will guide courts in other cases." *Banque Nordeurope S.A. v. Banker*, 970 F.2d 1129, 1131 (2d Cir. 1992). It instead "turn[s] on case-specific, idiosyncratic facts," *In re ALBA Petróleos*, 82 F.4th at 113, including specific details about the firm's conduct and subsequent investigation, the importance of the leaked materials, and the District Court's tailored remedy for violating the protective orders in this particular MDL.

We also conclude that the sanctions order in this case is effectively reviewable after a final judgment is entered. The firm continues to represent its clients in the underlying MDL and retains its ability to challenge the order in the future. Should its clients receive an adverse judgment on the merits, they are

15

entitled to appeal, and the propriety of the sanctions order can be reviewed at that time. If this Court were then to strike the order for whatever reason, appropriate relief is available to remedy the harm caused by the firm's removal from the PEC and the District Court's decision to deny it access to common benefit funds.

Kreindler & Kreindler understandably resists this conclusion by attempting to distinguish the sanctions in this case from the typical attorney sanctions on the ground that the District Court here treated it as a nonparty under the protective order's definition, and nonparties ordinarily have no right to appeal from final judgment. But *Cunningham* rejected the notion that attorneys are "like other nonparties for purposes of appeal." 527 U.S. at 207. The firm was sanctioned for conduct undertaken while representing its clients in this litigation, and, as we have observed, it continues to represent those clients in the MDL. "[T]he decision to appeal should turn entirely on the client's interest," not an "attorney's personal desire for vindication." *Richardson-Merrell*, 472 U.S. at 434–35. If post-final judgment review is adequate when counsel are disqualified *entirely* from representing their clients, *see id.* at 438, then such review must also suffice when, as now, counsel continues to represent its clients. It may be

16

stripped of its leadership role in the MDL, but it is not stripped of the ability to mount a later challenge to the sanctions order.

Relying entirely on our decision in *Farber v. Riker-Maxson Corp.*, 442 F.2d 457 (2d Cir. 1971), Kreindler & Kreindler also contends that we have jurisdiction under the collateral order doctrine precisely because the District Court imposed restrictions on nonlead counsel in a consolidated action. We are not persuaded. *Farber* is distinguishable because it involved district court orders that barred nonlead counsel from filing motions without court permission. *See* 442 F.2d at 459. No similar restrictions are at issue in this case. And most obviously, *Farber* also predates both *Richardson-Merrell* and *Cunningham*, which "effectively overrule[d]" our earlier precedent regarding the appealability of attorney sanctions orders. *New Pac. Overseas Grp.*, 252 F.3d at 670.

In summary, we hold that the District Court's Rule 37(b) order imposing attorney sanctions against Kreindler & Kreindler is not immediately appealable. It is effectively reviewable after final judgment and does not resolve important questions separate from the merits.

17

## CONCLUSION

We have considered Kreindler & Kreindler's remaining arguments in favor of the appealability of the sanctions order and conclude that they are without merit. For the foregoing reasons, we DISMISS the appeal.