UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |

**This document relates to:**
*All actions*

### PLAINTIFFS' REPLY TO MERITS DEFENDANTS' RESPONSE [ECF No. 11377] TO PLAINTIFFS' OBJECTIONS [ECF No. 11350] TO THE COURT'S AUGUST 18, 2025 OPINION AND ORDER [ECF No. 11157]

Sean P. Carter
J. Scott Tarbutton
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter@cozen.com

*For the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

Robert T. Haefele
Jodi Westbrook Flowers
Donald A. Migliori
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*For Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

Steven R. Pounian
James Gavin Simpson
KREINDLER & KREINDLER LLP
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

November 21, 2025

# **TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A. The Court Committed Clear Error by Failing to Credit Kohlmann's Substantial Practical Experience as to Relevant Religious and Financial Issues in the Context of his Counterterrorism Work ..............................................................................1

    B. The Order's Reliability Assessments are Clearly Erroneous, and Kohlmann was Afforded No Opportunity to Counter the Court's Misapprehensions .................2

        1. The Order is Premised on Misapprehensions that Go to Weight Rather than Admissibility and are Fairly Addressed on Cross-Examination ....................3

        2. The Misapprehensions Are Contrary to Findings of Other Courts, including the Second Circuit, Following Full Daubert Hearing Testimony ..................7

    C. Plaintiffs Are Permitted to Set Forth the Scope of their Objections....................8

III. CONCLUSION............................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Freedom Defense Initiative v. Massachusetts Bay Transp. Authority,*
  989 F. Supp. 2d 182 (D. Ma. 2013) ...................................................................................10

*Linde v. Arab Bank, PLC,*
  922 F. Supp. 2d 316 (2013)........................................................................................... 3, 7

*McCullock v. H.B. Fuller Co.,*
  61 F.3d 1038 (2d Cir. 1995) ................................................................................................2

*United States v. Abu-Jihaad,*
  553 F. Supp.2d 121 (S.D.N.Y. 2008) ...............................................................................3, 7

*United States v. Bell,*
  81 F. Supp. 3d 1301, n. 2 (M.D. Fla. 2015) .....................................................................10

*United States v. Benkahla,*
  530 F.3d 300 (4th Cir. 2008) ...........................................................................................3, 9

*United States v. Farhane,*
  634 F.3d 127 (2d Cir. 2011) ...................................................................................3, 5, 7, 8

*United States v. Hassan,*
  742 F.3d 104 (4th Cir. 2014) ......................................................................................3, 7, 9

*United States v. Kassir,*
  2009 WL 910767 (S.D.N.Y. Apr. 2, 2009).......................................................................3, 7

*United States v. Paracha,*
  2006 WL 12768 (S.D.N.Y. Jan. 3, 2006), aff'd, 313 F. App'x 347 (2d Cir. 2008) .....Passim

*United States v. Sabir,*
  2007 WL 1373184 (S.D.N.Y. May 10, 2007) ...................................................................3

*United States v. Subasic*,
  568 Fed. App'x. 234 (4th Cir. 2014)...............................................................................3, 9

*Wright v. Federal Bureau of Investigation*,
  Civil Action No. 18-0687 (TSC), 2023 WL 6121872 (D.D.C. Sept. 19, 2023) ..............10

**Rules and Other Authorities**

Fed. R. Evid. 702 .................................................................................................1, 2, 5, 7, 8

Daubert H'rg in U.S. v. Paracha,
  No. 03-cr-1197(SHS) ECF No. 74 (S.D.N.Y. Nov. 2, 2005) ..................................2, 4, 5, 6

I. **INTRODUCTION**

Plaintiffs respectfully file this Reply to Defendants' Response ("Opp.") [ECF No. 11377] to Plaintiffs' Objections ("Obj.") [ECF No. 11350] to the Court's August 18, 2025 Opinion and Order ("the Order") [ECF No. 11157]. Contrary to the Defendants' characterizations of Plaintiffs' expert, Evan Kohlmann, Kohlmann's numerous prior qualifications as an expert on terrorism, counterterrorism, and terrorist fundraising are premised on his integrated knowledge and practical experience in these areas which cannot be divorced from the specific topics about which the Order seemingly has prohibited him from testifying. For the reasons stated in Plaintiff's Objections and herein, Plaintiffs ask the Court to sustain Plaintiffs' Objections, vacate the Order regarding restrictions to Kohlmann's testimony, and address the scope of Kohlmann's testimony at a hearing contemplated by the Order.

II. **ARGUMENT**

A. **The Court Committed Clear Error by Failing to Credit Kohlmann's Substantial Practical Experience as to Relevant Religious and Financial Issues in the Context of his Counterterrorism Work.**

The Magistrate Judge's Order precluding Kohlmann from testifying on certain issues because he does not have a formal degree in given subsets of the subject matter of his expertise—here, for example, in religion or finance—is contrary to law, since Kohlmann possesses practical experience, education, and expertise sufficient to address the relevant issues, at least insofar as they intersect with his counterterrorism and terror financing expertise. Contrary to Defendants' argument (Opp. at 9-13), the Order applies an overly rigid standard for expert qualifications that contradicts Rule 702's flexible approach and the wholesale exclusion of Kohlmann's testimony on

1

those subjects unreasonably limits his testimony regarding matters as to which he has long been recognized as an expert.

Courts have consistently taken a liberal view of Rule 702's requirements, holding that any one of the five enumerated qualifications—knowledge, skill, experience, training, or education—may provide a sufficient foundation to qualify an expert witness. Fed R. Evid. 702. The Second Circuit has emphasized that a lack of formal training does not necessarily disqualify an expert from testifying if he or she has equivalent relevant practical experience. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (background and practical experience qualify as "specialized knowledge" gained through "experience, training, and education," even absent formal education). Kohlmann has been qualified as an expert and testified numerous times on counterterrorism on behalf of the U.S. government. Kohlmann's testimony here and in multiple other prior cases, *see, e.g.,* ECF Nos. 9344, 9345, 11350; *Daubert H'rg in U.S. v. Paracha,* No. 03-cr-1197(SHS) ECF No. 74 (S.D.N.Y. Nov. 2, 2005) (hereinafter "*Paracha Tr.*")., established that he has substantial practical experience to address areas that touch on religious and finance issues in the context of his broader counterterrorism expertise. *See* Obj. at 7-10 .

### B. The Order's Reliability Assessments are Clearly Erroneous, and Kohlmann was Afforded No Opportunity to Counter the Court's Misapprehensions.

Defendants' arguments (Opp. at 14-17) that Plaintiffs' Objections failed to challenge the Court's reliability and helpfulness determinations ignore that Plaintiffs challenge the Order's reliability and helpfulness findings by contesting the underlying qualification determinations upon which those findings rest. By objecting to the qualification limitations, Plaintiffs necessarily contest the derivative findings about reliability and helpfulness. Further, Kohlmann's testimony will assist the jury to understanding the complex world of terrorist organizations, their origins,

2

structure, and financing methods—in information that is beyond the knowledge of typical jurors and directly relevant to the core issues in this litigation. Addressing these issues includes touching on issues of religion and financing.

The Magistrate Judge's Order is clearly erroneous because its assessment of reliability was based on misapprehensions countered by Kohlmann's testimony here (at deposition) and at extensive *Daubert* hearings held in other cases. Other courts have rejected challenges to Kohlmann's reliability following such hearings.[1] The Order mistakenly declined to credit the considered views of other courts (including the Second Circuit), which established Kohlmann's knowledge, reliability, and methodology based on testimony from full *Daubert* hearings. If the Magistrate Judge harbored concerns as to the applicability of those earlier proceedings, then at minimum the Court should have held its own hearing to address those concerns to Kohlmann, rather than risking the resulting misapprehensions in the Order.[2]

### 1. The Order is Premised on Misapprehensions that Go to Weight Rather than Admissibility and are Fairly Addressed on Cross-Examination.

Defendants' arguments (Opp., *passim*) that the Magistrate Judge was correct and that Plaintiffs have not shown the Order to be clearly erroneous overlook the demonstrably incorrect premises on which the Order rests.

---

[1] *See, e.g., United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011); *United States v. Paracha*, 2006 WL 12768 (S.D.N.Y. Jan. 3, 2006), aff'd, 313 F. App'x 347 (2d Cir. 2008), *United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014), *United States v. Benkahla*, 530 F.3d 300 (4th Cir. 2008), *United States v. Subasic*, 568 Fed. App'x. 234 (4th Cir. 2014), *United States v. Kassir*, 2009 WL 910767 (S.D.N.Y. Apr. 2, 2009); *United States v. Sabir*, 2007 WL 1373184 (S.D.N.Y. May 10, 2007); *United States v. Abu-Jihaad*, 553 F. Supp. 2d 121 (S.D.N.Y. 2008); *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316 (2013).

[2] Defendants' argument that Plaintiffs have waived a hearing ignores that Plaintiffs have argued that the Court should have credited the body of testimony and the vetting of qualifications and methodology from multiple other federal courts which ultimately found them to be sufficient. Rather than drawing inferences that ultimately proved unsound, the Court should have held a hearing to answer any remaining questions. Ultimately, however, the question of whether the Court should hold a hearing was resolved by the Order, which includes a requirement that the admissibility of the Kohlmann's testimony be addressed in a hearing by this Court.

For example, among the misunderstandings contained in the Order are that Kohlmann misrepresented who published his 2008 book, "Al-Qaida's Jihad in Europe," his academic credentials, and the nature of peer review (formal vs. informal) on his publications. The Order similarly states incorrectly that Kohlmann's sole professional experience is as an expert witness. While the Court recognized that Kohlmann was qualified by knowledge garnered from a lifetime of studying counterterrorism issues (Order at 21) and that neither his actual studies nor his publication history were disqualifying (Order at 19-20), the Court's mistaken conclusion about perceived misrepresentations nonetheless unjustly infected the Court's analysis.

Notwithstanding the Magistrate Judge's expressions of discomfort as to perceived inaccuracies in the details of Kohlmann's 25-year background, nothing in the record indicates that that the alleged inaccuracies undercut his expertise or that anyone was actually misled; moreover, any questions in this regard could be fairly addressed on cross-examination and responded to on rebuttal. The Court's decision (Order at 19-20) reflects that the Magistrate Judge was not misled; the Defendants' complaints make clear they were not misled; and *Daubert* testimony and decisions from the other cases where Kohlmann was qualified show those Courts were not misled either. *See, e.g., Paracha*, 2006 WL 12768, at *20 (S.D.N.Y. Jan. 3, 2006), aff'd, 313 F. App'x 347 (2d Cir. 2008) (recognizing Kohlmann's opinions and conclusion are subjected to "various forms" of peer review); *Paracha Tr*. at 20:17 to 29:14 (describing Kohlmann's non-litigation consulting work both at the Investigative Project on Terrorism and FlashPoint, as well as for multiple U.S. government agencies, including the Department of Justice, the Federal Bureau of Investigation, National Security Council, and U.S. Treasury). Kohlmann's testimony about who published his book was resolved 17 years ago and did not confuse the Court here. ECF No. 9344 at 6-7 & n. 11; Op. at 19. He has long distinguished between formal and informal peer review of his work, while

4

also emphasizing that even informal peer review serves an important role analogous to its formal cousin. ECF No. 9344 at 8-9. Finally, as explained in Plaintiffs' Objections, Kohlmann has been more accurate in describing the nature of his academic studies (both graduate and undergraduate) than the descriptions of those studies argued by the Defendants or inferred by the Magistrate Judge. (Obj. at 6-8) (Kohlmann had graduate studies both as an undergraduate at Georgetown and concurrent with his law studies at the University of Pennsylvania).

The Magistrate Judge also expressed misplaced reservations in light of her misperception that Kohlmann's entire career consisted of, essentially, expert witness work. Those concerns, too, were unwarranted because, as outlined in Plaintiffs' Objections (Obj. at 8-9), Kohlmann's experience was not developed for litigation, and litigation expert work comprises only a smaller subset of his career.

The Magistrate Judge's expressions of discomfort seemingly rest on unfounded inferences that the numerous courts that qualified Kohlmann as an expert, finding his qualifications and methodology sufficiently reliable to meet the standards for admissibility under Fed. R. Evid. 702 were somehow misled about his "graduate studies" or his certificate program. The confusion is implied by the Court's reference (Op. at 20) to excerpts from the *Farhane* decision referring to Kohlmann's graduate studies at Georgetown…" and from the *Paracha* decision to his "degree[] in … Islamic studies." *Id*.

But the courts in both *Farhane* and *Paracha* heard Kohlmann's testimony that clarified any ambiguity, and makes clear the Magistrate Judge's inferences about Kohlmann's studies were erroneous. The issue of his certificate program was the subject of specific questioning in the extended hearing in *Paracha. Paracha Tr.* 11:12 to 13:25; *see also id*. at 11:6; 95:15 to 96:7, 20-22 (the program at Georgetown included graduate level work for undergraduates); ECF No. 9344,

5

n. 36 (the specific program in which Kohlmann participated as a Georgetown undergraduate included graduate level coursework).

Notwithstanding the Magistrate Judge's assertion (ECF No. 11157 at 20) that she was not confused by Kohlmann's undergraduate training, the Order's stated concerns as to characterizations of Kohlmann's student record do not account for Kohlmann's graduate level studies undertaken both while he was an undergraduate at Georgetown and, separately, concurrent with his law school studies at the University of Pennsylvania. *See* Obj. at 3, 4. Kohlmann has further identified separate graduate studies done alongside his law school curriculum. *See, e.g.*, *Paracha Tr*. 19:18 to 20:3; 114:14 to 115:7. Defendants have either misinterpreted or intentionally misconstrued those facts, and the Magistrate Judge accepted the Defendants' false narrative, which in turn sowed unwarranted doubts in the Order.

Finally, the alleged discrepancies in various characterizations Defendants raised and that the Order cites are minor, fairly addressed on cross-examination, and do not undermine Kohlmann's core expertise. At most, they go to the weight of Kohlmann's testimony.[3] Even the latest alleged discrepancy regarding the timing of Professor Fandy's book publication or the precise nature of Kohlmann's research contribution are immaterial to his substantive knowledge. Courts routinely accept experts with varied backgrounds who may not perfectly articulate every detail of their experience. The focus should be on Kohlmann's demonstrated expertise through his extensive

---

[3] Defendants place particular emphasis (Opp. at 15) on a single drafting decision to replace four words from a quote, using an ellipsis to mark the omission. Defendants misrepresent the point Kohlmann made and unnecessarily inflate a sensible editorial choice that was, as Kohlmann explained in his deposition (Kohlmann Tr. at 760-62), intended to avoid confusion. Kohlmann used the ellipse to omit the four words to avoid a misleading assumption that would have been drawn if the words were included. Though the subtleness of the point was capitalized on by Defendants and lost in the Order, and though the Order noted the Court's disagreement with Kohlmann's editorial decision, the ellipsis' inclusion was anything but careless or misleading. It was to make a careful point and avoid confusion in doing so. Regardless, a disagreement over an ellipsis intended to avoid confusion does not undermine Kohlmann's overall analytical approach and should not result in the Court assessing the entirety of his testimony unreliable.

work in counterterrorism, which has been recognized by multiple federal courts, rather than on alleged resume imperfections and other insubstantial anecdotes from two decades of experience.

### 2. The Misapprehensions Are Contrary to Findings of Other Courts, including the Second Circuit, Following Full *Daubert* Hearing Testimony.

The Magistrate Judge recognized that many Courts have qualified Kohlmann. Op. 14 to 16 (citing seven instances in which federal courts have qualified Kohlmann). In the context of assessing Kohlmann's expertise in those other cases, courts either held a *Daubert* hearing, such as in *Paracha*,[4] or considered the testimony from another *Daubert* hearing, as the court did in *Farhane*, *see United States v. Farhane,* 634 F.3d at 159 (acknowledging the district court in *Farhane* considered the record of the *Daubert* hearing in *Paracha*) and other cases.[5] Here, where the Court had questions, recognized that the record was incomplete and that the issue would need to be put before the district judge at some point, the Court should have availed itself of the full record from other prior hearings of the expert, or held its own hearing.

While not binding, prior judicial acceptance of Kohlmann as an expert is highly relevant and persuasive. Multiple federal courts have vetted his qualifications and methodology under *Daubert* standards and found them sufficient, creating a strong presumption of reliability. The 2023 amendments to Rule 702 clarified existing standards rather than creating new barriers to expert testimony. The Order's rejection of Kohlmann's expertise contradicts this established judicial recognition without sufficient justification for departing from these precedents, particularly in the specialized field of terrorism where consistent application of expertise across cases is valuable.

---

[4] Other cases where courts have conducted independent *Daubert* hearings before qualifying Kohlmann include, *Hassan*, 742 F.3d 104; *Abu-Jihaad*, 553 F. Supp. 2d 121, 125; and *Linde*, 922 F. Supp. 2d 316, 327.

[5] *See, e.g., United States v. Kassir*, 2009 WL 910767; *United States v. Abu Ghayth*, 2014 WL 978629 (S.D.N.Y. Feb. 28, 2014); *Abu-Jihaad*, 553 F. Supp. 2d 121; *see also Weiss v. National Westminster Bank PLC* (citing *Paracha*).

The Court's decision here runs contrary to the findings of other courts where Kohlmann has been qualified, including the Second Circuit decision authorizing his expert testimony. This is the result of the Court declining to apply findings from the other courts where those courts considered testimony elicited during *Daubert* hearings and Kohlmann was qualified, or alternatively, allowing him to testify to address the Court's concerns here. Instead, the Court's decision here runs contrary to the findings from other courts, including the Second Circuit. Most notably, for example, having considered Kohlmann's testimony at hearings to assess his knowledge, reliability, and methodology, those courts found (as the Court found here, Op. at 21) Kohlmann qualified by knowledge.

More broadly, they also found that his credentials satisfied all the requirements of Fed. R. Evid. 702. *Farhane*, 634 F.3d at 158. His testimony was relevant and helpful to the factfinder. *Id*. at 159. Based on the evidence considered from the *Paracha* hearing, the Court concluded that Kohlmann's work has undergone "'various forms of peer review,'" that his opinions were "'generally accepted within the relevant community,'" and that his methodology was "'similar to that employed by experts that have been permitted to testify in other federal cases involving terrorist organizations.'" *Id*. at 159. Notably, the methodology Kohlmann applied in *Paracha* and *Farhane* (and all other cases) Kohlmann applied the same methodology. The Court's suggestion here that Kohlmann's methodology is not reliable stands at odds with the Second Circuit decision in *Farhane*, the district Court in *Paracha*, and other cases where courts conducted expert hearings and heard Kohlmann's testimony. *See, e.g.,* cases cited in footnote 1.

### C.  Plaintiffs Are Permitted to Set Forth the Scope of their Objections.

Defendants argue (Opp. at 4) that Plaintiffs use their Objections to seek clarification of the Order, but on the contrary Plaintiffs have simply set forth in clear terms the scope of their

8

Objections. Plaintiffs have clarified the scope of the objections to make clear that they do not object to the Court's Order to the extent that it precludes Kohlmann from testifying about esoteric theological matters (*e.g.*, doctrinal differences within schools of Islam) or from testifying as a forensic accounting or auditing expert. Nonetheless, the objections are the proper tool for Plaintiffs' specific challenges to areas where the order erroneously limited Kohlmann's testimony despite his demonstrated expertise in counterterrorism that necessarily intersects with aspects of Islam and terrorist financing. Rule 72 is the appropriate procedural vehicle to challenge these substantive determinations, not a motion for clarification which would only address ambiguities rather than errors of law or fact.

Plaintiffs' Objections are directed at the Order's exclusion of Kohlmann from testifying as to areas that have long been accepted as being within the scope of his expertise on extremism, terror financing, and counterterrorism—areas that necessarily, but only to a limited degree, touch on "religious" or "financial" matters. It is impractical for an expert on Al Qaeda, which is self-described as Islamist and waged its terrorism campaigns on the basis of radical Islamic doctrine, to avoid reference to Islam when commenting on that organization. Likewise, an expert on countering terror financing cannot address those issues without addressing financial matters.

The Defendants' Response reveals the artificial compartmentalization of counterterrorism expertise. First, Kohlmann has qualified, on multiple occasions, to testify regarding "Islamic extremism" and "radical Islam," *Hassan*, 742 F.3d at 131-32; *Benkahla*, 530 F.3d 308-10; *Subasic*, 568 Fed. App'x. at 235. Moreover, Defendants' attempt to cabin the definition of terms to an exclusively religious usage, rather than acknowledging their relevance in terrorism cases, misconstrues Kohlmann's testimony and abuses *Daubert* principles. For example, Defendants' misattribute purely "religious" associations to the terms Kohlmann uses, *see, e.g.*, ECF No. 11377

9

at n.21 (citing passages suggesting Kohlmann's use of terms such as "Wahhabism," "jihad," "radical Islam," "extremist indoctrination," "violent jihad," and "violent extremism," are necessarily "religious" terms), but each of those terms finds recognized legitimate applications across multiple academic disciplines including political and social sciences, international relations, security studies, economics, terror financing, and counterterrorism research. *See United States v. Bell*, 81 F. Supp. 3d 1301, n. 2 (M.D. Fla. 2015) (explaining multiple meanings of jihad, showing judicial recognition that the term has political and security applications distinct from purely religious applications); s*ee also Wright v. Federal Bureau of Investigation,* Civil Action No. 18-0687 (TSC), 2023 WL 6121872 (D.D.C. Sept. 19, 2023) (addressing government records about "the nature of Islam," "the nature of jihad," "the nexus between Islam, sharia law, and jihad," "the root cause or causes of Islamic terror," and "violent extremism," in recognition that federal agencies study these concepts as part of national security and counterterrorism analysis); *Freedom Defense Initiative v. Massachusetts Bay Transp. Authority*, 989 F. Supp. 2d 182 (observing that "jihad is susceptible to several interpretations, has multiple dictionary entries, and is "commonly interpreted as referring to the acts of radical Islamic terrorists"). Kohlmann and others in his field need not be qualified as expert on the wider religion of Islam in order to provide opinion testimony on Islamic terrorism.

## CONCLUSION

The Court should sustain Plaintiffs' Objections, vacate the Order regarding restrictions to Kohlmann's testimony, and address the scope of Kohlmann's testimony at a hearing as contemplated by the Order.

Dated: November 21, 2025

10

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel of Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

COZEN O'CONNOR

By: /s/ Sean P. Carter
SEAN P. CARTER
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*Attorneys for Ashton Plaintiffs*

Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing document, which was prepared using Times New Roman 12-point typeface, contains 3,158 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

Executed on November 21, 2025

/s/ Robert T. Haefele
Robert T, Haefele
Liaison Counsel of the Plaintiffs' Executive
Committee for Personal Injury and Death
Claims on behalf of Plaintiffs