UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | | |
|---|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | : | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PERMIT ATTACHMENT AND EXECUTION PURSUANT TO 28 U.S.C. § 1610(c) |
| | : | |
| | : | |
| | : | |
| | : | 03 MDL 1570 (GBD)(FM) |

-------------------------------------------------------------------x

This Document Relates to
*Havlish v. bin Laden,*
03 Civ. 9848 (GBD)(FM)

      The *Havlish* Plaintiffs, through counsel, hereby respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. § 1610(c) on approximately 127,271 Bitcoin currently held by the U.S. Government, and all proceeds traceable thereto ("Bitcoin Assets"). The *Havlish* Plaintiffs have a valid unsatisfied judgment against defendants including the Islamic Republic of Iran ("Iran"). Defendants, including Iran, received sufficient notice of the *Havlish* judgment and a reasonable period of time has passed. The Bitcoin Assets are assets of an agency or instrumentality of Iran.

      On September 12, 2013, the *Havlish* Plaintiffs were previously granted a general order to permit attachment and execution pursuant to 28 U.S.C. § 1610(c) when this Court ordered and decreed that: "(1) A reasonable period of time has elapsed following the entry of the Order of Judgment as to liability against the Iranian Defendants on December 22, 2011, the entry of the final Order and Judgment as to damages on October 12, 2012, and the giving of notice of such judgments to the Iranian Defendants by the *Havlish* Plaintiffs via diplomatic means on February 13, 2013, and May 22, 2013; (2) The requirements of 28 U.S.C. 1610(c) have been satisfied; and, (3) The *Havlish* Plaintiffs, now judgment creditors, are authorized to pursue attachment in aid of

execution of the Order and Judgment issued on October 12, 2012, against the Iranian Defendants by any means permitted by law." (*Havlish* Doc. No. 393; MDL Doc. No. 2778). The *Havlish* Plaintiffs' original Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. § 1610(c) was filed on July 11, 2013 (hereinafter "2013 § 1610(c) Motion"; *Havlish* Doc. No. 389) (Memorandum of Law in Support, dated July 11, 2013: *Havlish* Doc. No. 390).

In April of 2020, the *Havlish* Plaintiffs moved for and were granted an Order to Permit Attachment and Execution Pursuant to 28 U.S.C. § 1610(c) regarding assets held by Clearstream through its office in this district. (Order dated April 7, 2020; *Havlish* Doc. No. 504; MDL Doc. No. 6134). ("IT IS ORDERED that… the *Havlish* Plaintiffs are authorized pursuant to 28 U.S.C. § 1610(c) to enforce the Final Judgment by any lawful means, including attachment of, and execution against, the specific assets against the property held at Clearstream Banking, S.A. that belongs to any of the Judgment Debtor Defendants, including, more particularly, the Central Bank of Iran, a.k.a. Bank Markazi, as described and authorized by 22 U.S.C. § 8772 (2019).")

The *Havlish* Plaintiffs now ask the Court for specific approval to attach and execute on the Bitcoin Assets that were formerly property of the Iran and China Investment Development Group ("Iran-China Group"). The Iran-China Group, doing business on the blockchain as "Lubian.com" or "LuBian," is an agency or instrumentality of *Havlish* Judgment Debtor the Islamic Republic of Iran and has materially supported Iran's efforts to evade Western sanctions by mining cryptocurrency in Iran. Through this scheme, Iran converts sanctioned Iranian oil and gas into electricity, which crypto-miners then use to generate cryptocurrency for the Iranian government to use outside the traditional global banking systems. LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian

2

government to build a large Bitcoin mining operation in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. Sanctions.

The Bitcoin Assets are currently the subject of a forfeiture proceeding pending in the Eastern District of New York pursuant to Rule G of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions in the Federal Rules of Civil Procedure.

Under the Terrorism Risk Insurance Act ("TRIA"), the *Havlish* Plaintiffs have the right to attach and execute on the property of Iran and its agencies and instrumentalities, including the Iran-China Group, "notwithstanding any other provision of law." 15 U.S.C. § 6701 note.

Accordingly, the *Havlish* Plaintiffs hereby seek to assert their superior interest in the Bitcoin Assets, or at least so much as may ultimately be necessary to satisfy their outstanding compensatory damages, plus post-judgment interest, on their judgments, which TRIA makes senior to any interest that the government or other claimants could assert.

## I. STATEMENT OF FACTS

This action was brought by representatives of forty-seven (47) Estates and one-hundred eleven (111) family members who are victims of the terrorist attacks of September 11, 2001, in order to hold accountable those who planned, executed, and/or provided material support and assistance to al-Qaeda in carrying out the most deadly and outrageous attacks against civilians to occur on American soil.

On December 22, 2011, this Court entered an Order of Judgment granting a default judgment as to liability against the two categories of Defendants which Plaintiffs sought to hold accountable: those sixteen (16) Defendants that are related to the Islamic Republic of Iran ("Iranian Defendants") and certain non-Sovereign Defendants.[1] (*Havlish* Doc. No. 295; MDL Doc. No.

---

[1] The non-Sovereign Defendants include Osama bin Laden, al-Qaeda, the Taliban *aka* The Islamic Emirate of Afghanistan, and Muhammad Omar. These non-Sovereign Defendants are not the subject of the instant Motion.

3

2516) A copy of the Order of Judgment was attached to the *Havlish* Plaintiffs' original 2013 § 1610(c) Motion as Exhibit A. An Order and Judgment followed on October 12, 2012, awarding to the *Havlish* Plaintiffs damages in excess of $6 billion for which all Defendants are jointly and severally liable. *Havlish* Doc. No. 317; MDL Doc. No. 2624. A copy of the *Havlish* Order and Judgment was attached to Plaintiffs' 2013 § 1610(c) Motion as Exhibit B.

The Iranian Defendants in the *Havlish* action are: (1) the Islamic Republic of Iran; (2) Ayatollah Ali Hoseini Khamenei, Supreme Leader of Iran; (3) Ali Akbar Hashemi Rafsanjani, Chairman, Expediency Discernment Counsel and former President of Iran; (4) Iran's Ministry of Information and Security; (5) the Islamic Revolutionary Guard Corps; (6) Iran's Ministry of Petroleum; (7) the National Iranian Tanker Corporation; (8) the National Iranian Oil Corporation; (9) the National Iranian Gas Company; (10) the National Iranian Petrochemical Company; (11) Iran Airlines; (12) Iran's Ministry of Economic Affairs and Finance; (13) Iran's Ministry of Commerce; (14) Iran's Ministry of Defense and Armed Forces Logistics; (15) the Central Bank of the Islamic Republic of Iran; and (16) Hezbollah. This Court has adjudged <u>all</u> of the Iranian Defendants to be the legal equivalent of the Islamic Republic of Iran for purposes of liability under the state sponsor of terrorism exception to sovereign immunity codified at 28 U.S.C. §1605A. See Findings of Fact and Conclusions of Law, *Havlish* Doc. No. 294; MDL Doc. No. 2515, December 22, 2011, ¶¶ 36-65.

The Order and Judgment issued by the Court on October 12, 2012, required that the *Havlish* Plaintiffs serve it, along with other pertinent documents in the case, upon the Iranian Defendants in accordance with the service provisions of the Foreign Sovereign Immunities Act ("FSIA") found at 28 U.S.C. § 1608. The methods of service under the FSIA are listed in § 1608 in descending order of preference. Subsection (a) addresses service upon a foreign state or a political subdivision

of a foreign state; subsection (b) provides the methods of service available for an agency and instrumentality of a foreign state. See 28 U.S.C. § 1608 (a)(1)-(4); 28 U.S.C. § 1608(b)(1)-(3). The first two methods under each subsection are virtually identical and neither is applicable to the Islamic Republic of Iran.  The first method of service is "by delivery of a copy of the [default judgment] in accordance with any special arrangement for service between the plaintiff and political subdivision."[2] 28 U.S.C. §§ 1608(a)(1), (b)(1).  No "special arrangement" for service of the default judgment exists between the *Havlish* Plaintiffs and Iran, as Iran failed to appear to defend the case.  Indeed, Iran has never appeared to defend *any* of the dozens of claims brought against the Islamic Republic by plaintiffs in the courts of the United States under the state sponsor of terrorism exception to sovereign immunity found at 28 U.S.C. § 1605A.  See *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 85 (D.D.C. 2009) (observing "the notion" that Iran might appear to defend an action brought under the state sponsor of terrorism exception to sovereign immunity "is almost laughable because that nation has never appeared in any of the terrorism actions that have been litigated against it in this Court.")  See also *Heiser v. Islamic Republic of Iran*, 00-cv-2329 (D.D.C. Aug. 10, 2011) (Lamberth, C.J.) (denying a motion by private U.S. telecommunications company to interplead Iran in an execution proceeding against funds owed by telecommunications company to Iran, holding that "this action has been proceeding for almost a decade, yet in all this time Iran has not appeared to account for its role in the horrific bombing of the Khobar Towers residential complex.  This choice was made despite both exposure to more than $500 million in damages and evidence that Iran is perfectly capable of appearing when it wishes.").

---

[2] Though the language of the FSIA service provisions is couched in terms applicable to service of original process, these same provisions at § 1608(a)(1)-(4)  or § 1608(b)(1)-(3) are applicable to service of a default judgment by operation of § 1608(e), which states that "[a] copy of any…default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section." 28 U.S.C. § 1608(e).

5

When no special arrangement for service exists, as is the case here, the second method of service under the FSIA is by delivery of the default judgment "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. §§ 1608(a)(2), (b)(2).  Iran is not a signatory to any such international convention.  See Website of Hague Conference for Private International Law, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Members of the Organisation at https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last accessed Jan. 12, 2026).  See also United States District Court for the Southern District of New York, Foreign Mailing Instructions, pp. 5-6.

If service of the default judgment cannot be made by the first two methods, the FSIA permits a plaintiff to request that the Clerk of Court send the required documents "by any form of mail requiring a signed receipt … to the head of the ministry of foreign affairs of the foreign state concerned" or, in the case of an agency or instrumentality, directly to the agency or instrumentality itself.  28 U.S.C. §§ 1608(a)(3), (b)(3)(B).  The *Havlish* Plaintiffs hand delivered sixteen (16) sets of legal documents, one for each of the sixteen (16) Iranian Defendants, to the Clerk of Court for the Southern District of New York for shipment to Tehran, Iran via DHL Express pursuant to 28 U.S.C. § 1608(a)(3) and 28 U.S.C. § 1608(b)(3)(B).  Plaintiffs' hand delivery included translations of each document into Farsi and the completed shipping waybills, which directed each package of legal documents to the Ministry of Foreign Affairs of the Islamic Republic of Iran, the address of which was verified through the English version of the Foreign Ministry's own website, http://www.mfa.gov.ir.

The SDNY Clerk of Court dispatched the sixteen (16) DHL Express packages to Iran on Plaintiffs' behalf on November 15, 2012.  According to the tracking summaries provided by DHL

Express, the packages arrived in Tehran on November 22, 2012, and the shipment was refused by the Ministry of Foreign Affairs on November 26, 2012.  DHL Express contacted counsel for the *Havlish* Plaintiffs to advise that the shipments had been refused, and to request authorization to dispose of the packages, or return the shipments to Mellon & Webster, P.C. in Doylestown, PA.  A copy of a representative Certificate of Mailing from the Clerk of Court was attached to the 2013 § 1610(c) Motion as Exhibit C.  A copy of the sixteen (16) tracking summaries forwarded to the Clerk of Court as Returns of Service was attached to the 2013 § 1610(c) Motion as Exhibit D.  A copy of an e-mail by Carolina Ramirez of DHL Express to James P. McCoy, Esquire of Mellon & Webster, P.C. dated December 3, 2012, was attached to Plaintiffs' 2013 § 1610(c) Motion as Exhibit E.

Following the Iranian Defendants' refusal to accept service of the *Havlish* judgment via DHL Express, Plaintiffs requested that the Clerk of Court attempt service via the final method of service proscribed by the FSIA, which involves transmission of the necessary documents by the Clerk to the Department of State in Washington, D.C. for service via diplomatic channels.  See 28 U.S.C. § 1608(a)(4).  Plaintiffs again hand delivered to the Clerk of Court the requisite documents for service upon the sixteen (16) Iranian Defendants in the *Havlish* action, along with a cashier's check in the amount of $2,275 for each Defendant to be served.  The Clerk of Court dispatched the documents on Plaintiffs' behalf to Washington on January 14 and January 15, 2013.  A copy of a representative Certificate of Mailing from the Clerk of Court to the Department of State was attached to the 2013 § 1610(c) Motion as Exhibit F.

On January 25, 2013, William P. Fritzlen, Esquire of the Department of State informed the Clerk of Court via correspondence that service would only be effectuated on eight (8) of the sixteen (16) Iranian Defendants at that time.  See letter by William P. Fritzlen, Esquire to Ruby J. Krajick,

7

Clerk of Court dated January 25, 2013, which was attached to Plaintiffs' 2013 § 1610(c) Motion as Exhibit G.  The eight (8) Iranian Defendants the State Department would not serve pursuant to FSIA Section 1608(a) were considered "agencies and instrumentalities" by the Department of State.  Therefore, the State Department asked the *Havlish* Plaintiffs to obtain letters rogatory from the Court under 28 U.S.C. § 1608(b)(3)(A) in order for the Department of State to assist with service of the following Defendants:  (1) Ayatollah Ali Hoseini Khamenei, Supreme Leader of Iran; (2) Ali Akbar Hashemi Rafsanjani, Chairman, Expediency Discernment Counsel and former President of Iran; (3) the National Iranian Tanker Corporation; (4) the National Iranian Oil Corporation; (5) the National Iranian Gas Corporation; (6) the National Iranian Petrochemical Company; (7) Iran Airlines; and (8) Hezbollah.  Upon issuance of the letters rogatory, the Department of State assured the *Havlish* Plaintiffs that service on those eight (8) Iranian Defendants who were agencies or instrumentalities would be effectuated as requested.

Since the United States and Iran have no diplomatic relations, diplomatic notes are sent to Iran through the U.S. Embassy in Bern, Switzerland, which transmits the notes to the Swiss Confederation.  The Swiss authorities then forward any such diplomatic transmissions to their Foreign Interests Section at the Swiss Embassy in Tehran.  On February 13, 2013, the Foreign Interests Section of the Embassy of Switzerland in Iran served the Ministry of Foreign Affairs of the Islamic Republic of Iran with the *Havlish* judgment, and other materials required by law to perfect service, for the eight (8) Iranian Defendants that are a foreign state or political subdivision of a foreign state.  The Ministry of Foreign Affairs refused service of these materials on that same date.  A copy of the diplomatic notes and other materials provided by the U.S. Department of State to the *Havlish* Plaintiffs' lawyers was attached to Plaintiffs' 2013 § 1610(c) Motion as Exhibit H.

8

On February 21, 2013, the *Havlish* Plaintiffs filed a Motion to Request the Issuance of Letters Rogatory so that service upon the remaining eight (8) Iranian Defendants that are agencies or instrumentalities could be perfected by the U.S. Department of State. The Court issued eight (8) Letters Rogatory directed to the Appropriate Judicial Authority of the Islamic Republic of Iran, and the Clerk of Court forwarded these eight (8) Letters Rogatory and other materials necessary for service, including the required fee of $2,275 per Defendant, to the U.S. Department of State on April 25, 2013. See *Havlish* Doc. Nos. 378 through 385. A representative copy of a Certificate of Mailing from the Clerk of Court to the Department of State was attached to Plaintiffs' 2013 § 1610(c) Motion as Exhibit I.

On May 22, 2013, the Foreign Interests Section of the Embassy of Switzerland in Iran served the Ministry of Foreign Affairs of the Islamic Republic of Iran with the *Havlish* judgment, and other materials required by law to perfect service on the eight (8) remaining Iranian Defendants that are agencies and instrumentalities of the Islamic Republic. Once again, the Ministry of Foreign Affairs refused service of these materials on that same date. A copy of the diplomatic notes and other materials provided by the U.S. Department of State to lawyers for the *Havlish* Plaintiffs was attached to the 2013 § 1610(c) Motion as Exhibit J.

The Iranian Defendants are well aware of this Court's judgment in this matter. Following the entry of the Order of Judgment on December 22, 2011, the spokesman for Iran's Ministry of Foreign Affairs, Ramin Mehmanparast, dismissed this Court's findings as "clumsy scenario-making" by the United States. This is the same Ministry which has rejected service of this Court's judgment multiple times. See Associated Press report dated December 25, 2011, as distributed by numerous media outlets in the U.S. and abroad, including the *New York Post* at: https://nypost.com/2011/12/25/iran-rejects-ny-judges-ruling-on-sept-11-attacks/ (last accessed

9

Jan. 12, 2026). A copy of this article in .pdf format was attached to the 2013 § 1610(c) Motion as Exhibit K.

Pursuant to FSIA Section 1608(c)(1), service on a foreign state is "deemed to have been made ... as of the date of transmittal indicated in the certified copy of the diplomatic note." Pursuant to the diplomatic notes filed by the State Department, the eight (8) Iranian Defendants who qualify under FSIA Section 1608(a) were served on February 13, 2013. The eight (8) Iranian Defendants who are agencies or instrumentalities under FSIA 1608(b) were served on May 22, 2013.

The *Havlish* Plaintiffs have therefore served all of the Iranian judgment defendants with the *Havlish* judgment in conformity with the procedures required by the FSIA. Plaintiffs now seek an Order of this Court pursuant to § 1610(c) to permit the *Havlish* Plaintiffs to initiate an action to enforce their judgment against the Bitcoin Assets currently held by the U.S. Government, and all proceeds traceable thereto.

## II.     LEGAL ARGUMENT

### A.     The *Havlish* Plaintiffs Have Complied with Both the FSIA And the Orders and Judgment of This Court Regarding Service

"Under the FSIA, entry of a default judgment against a foreign state or its instrumentalities must be accompanied by service of that judgment." *Murphy v. Islamic Republic of Iran*, 778 F. Supp. 2d 70 (D.D.C. 2011). This requirement of service, coupled with the requirement that a plaintiff pursuing a claim under § 1605A of the FSIA can only obtain a default judgment after presenting evidence satisfactory to the court, both "ensure[s] that having been served with an initial complaint and declining to participate in the litigation[,] a foreign state or entity remains protected by the requirement that a plaintiff substantiate her claim" and that foreign property interests are

10

preserved "by insisting upon prompt notification of any entry of judgment that might put such interests at risk." *Murphy*, 778 F. Supp. 2d at 72.

Following the entry of the Order and Judgment by this Court on October 12, 2012, the *Havlish* Plaintiffs translated the relevant documents into Farsi for service upon the Iranian Defendants via DHL Express as permitted by § 1608(a)(3) and § 1608(b)(3)(B). The shipment was refused. Plaintiffs then sought to notify the Iranian Defendants of this Court's judgment through service by diplomatic means. The Iranian Defendants similarly refused service, even though the Islamic Republic itself has acknowledged the existence of the judgment. As in *Heiser v. Islamic Republic of Iran*, *supra*, the Iranian Defendants have made this choice to refuse service despite both exposure to billions of dollars in damages and evidence that Iran is perfectly capable of appearing in the courts of the United States when it wishes. See *Peterson v. Islamic Republic of Iran*, 10-cv-04518 (KBF); *In re 650 Fifth Avenue and Related Properties*, 08-cv-10934 (KBF); *Bank of Tokyo Mitsubishi UFJ, Ltd. v. Peterson*, 12-cv-04038 (BSJ); *Rubin v. Islamic Republic of Iran*, 637 F.3d 783 (7th Cir. 2011) *cert. denied,* 133 S.Ct 23 (2012); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010); *Ministry of Defense and Support of the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 98-cv-1165-B (DHB) (S.D.Cal. January 3, 2013).

In compliance with FSIA Section 1608(c)(1), the judgment was served on all sixteen (16) Iranian Defendants. The *Havlish* Plaintiffs have therefore served the judgment on the Iranian Defendants and satisfied the requirements of § 1610(c).

### B. A Reasonable Period of Time Has Elapsed Such That the *Havlish* Plaintiffs Should Be Permitted to Enforce Their Judgment

Following the service of a judgment, the FSIA establishes a condition precedent before a party such as the *Havlish* Plaintiffs can formally attach and execute upon the property of a foreign

11

sovereign.  Section 1610(c) requires that a plaintiff seek leave of court before executing upon the property of a foreign state to enforce a judgment obtained under § 1605A:

> "No attachment or execution… shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following entry of judgment and giving notice required under § 1608(e) of this chapter."

28 U.S.C. § 1610(c).

According to a House Report on the FSIA, the procedures mandated by § 1610(c) are in place to ensure that sufficient protection is afforded to foreign states that may be defendants in actions in courts in the United States:

> In some jurisdictions in the United States, attachment and execution to satisfy a judgment may be had simply by applying to a clerk or local sheriff.  This would not afford sufficient protection to a foreign state.  This subsection contemplates that the courts will exercise discretion in permitting execution.  Prior to ordering attachment and execution, the court must determine that a reasonable period of time has elapsed following the entry of judgment…In determining whether the period of time has been reasonable, the court should take into account procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, which may take several months; representation by the foreign state of steps being taken to satisfy the judgment; or any steps being taken to satisfy the judgment; or evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment.

*Levin v. Bank of New York*, No. 1:09-cv-59000 (RPP) (MHD) (S.D.N.Y. Jan. 28, 2011) *quoting* H.R. Rep. No. 1487, 94th Cong., 2d Sess. 30, reprinted in 1976 U.S. Code Cong. & Admin. News 6604, 6629.

Iran has never voluntarily paid a judgment entered as a result of its continued state sponsorship of terrorism around the world.  The judgment of this Court as to liability with respect

to the Iranian Defendants was issued over fourteen (14) years ago, and it was acknowledged by the Islamic Republic of Iran within days of its issuance. Indeed, the spokesman for the Islamic Republic of Iran's Ministry of Foreign Affairs mocked the very judgment issued by this Court, which the *Havlish* Plaintiffs now seek to enforce.

The U.S. District Court for the District of Columbia has held that a "reasonable period of time" for purposes of § 1610(c) is sixty (60) days. *Valore v. Islamic Republic of Iran*, 1:08-cv-01273-RCL (D.D.C. Jun. 8, 2003). Chief Judge Lamberth found "no basis in the FSIA to suggest that any longer period is needed, particularly in comparison to the period of time – 60 days, 28 U.S.C. § 1608(e) - that a foreign sovereign is given to respond to initial service of a complaint and summons under the Act." *Id*. Chief Judge Lamberth has also held separately that six weeks is a reasonable period of time to satisfy the requirements of § 1610(c), especially when "there is no evidence that the defendant has taken any steps toward the payment of its debt." *Ned Chartering and Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64 (D.D.C. 2001). Those eight (8) Iranian Defendants that are the foreign state itself, or a political subdivision of Iran, were served with notice of the *Havlish* judgment thirteen (13) years ago via diplomatic means. The eight (8) Iranian Defendants that are agencies and instrumentalities of the Islamic Republic were served notice of the judgment over twelve and a half (12½) years ago via these same diplomatic channels.

The *Havlish* Plaintiffs respectfully submit to the Court that, when applying the applicable law to the circumstances presented here, Plaintiffs should be permitted to initiate an enforcement action against the Bitcoin Assets. Over twelve (12) years have passed since the remaining eight (8) Iranian Defendants were served with notice of the *Havlish* judgment. More than a reasonable amount of time has passed since the *Havlish* judgment was entered and since the Iranian Defendants were served with the judgment.

13

## III.  CONCLUSION

For the reasons stated above, the *Havlish* Plaintiffs respectfully request that this Honorable Court enter the attached proposed Order GRANTING Plaintiffs' Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. § 1610(c) against the Bitcoin Assets currently held by the U.S. Government, and all proceeds traceable thereto.


January 16, 2026                                             Respectfully submitted,

/s/ *Timothy B. Fleming*
Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, PLLC
2202 18th Street, NW, #110
Washington, DC  20009-1813
(202) 467-4489

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC   (*Lead Counsel*)
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
951 N. Delaware St.
Indianapolis, IN 46202
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL  60134
(630) 232-7450

*Attorneys for the* Havlish *Plaintiffs*