UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN)<br>ECF Case |

**This document relates to:**

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN) (and member cases
*Marie Laure Anaya, et al. v. Islamic Republic of Iran*, 1:18-cv-12341 (GBD) (SN) and
*Hugh A. Chairnoff, et al. v. Islamic Republic of Iran*,1:18-cv-12370 (GBD) (SN))

**DECLARATION OF JAMES P. BONNER IN SUPPORT OF *EX PARTE* APPLICATION
TO PERMIT ATTACHMENT AND EXECUTION PURSUANT TO 28 U.S.C. § 1610(c)**

James P. Bonner declares pursuant to 28 U.S.C. Section 1746 as follows:

1.      I am an attorney duly admitted to practice before the Courts of the State of New York and this Court.  I am a member of the firm Fleischman Bonner & Rocco LLP, attorneys for the *Anaya* and *Chairnoff* Plaintiffs in the above-captioned actions.

2.      I make this declaration in support of Plaintiffs' *ex parte* application for an order (a) finding that a reasonable period of time has elapsed since the entry of each of Plaintiffs' judgments and the giving of notice required under 28 U.S.C. § 1610(e); and (2) directing the Clerk of the Court to issue a writ of execution with respect to property and interests in property of the Judgment Debtor, the Islamic Republic of Iran ("Iran"), and/or property or interests in property of Iran's agencies or instrumentalities, in the United States including but not limited to the Iran and China Investment Development Group (the "Iran-China Group") doing business as Lubian.com or LuBian, which have been blocked by reason of Executive Order No. 13599 effective February 6, 2012, including 127,271 Bitcoin in the custody of the United States Department of Justice and all proceeds traceable thereto that are currently the subject of a forfeiture proceeding pending in the Eastern District of New York (the "Bitcoin Assets"), to the

extent necessary to satisfy Plaintiffs' judgments against Iran for compensatory damages and post-judgment interest thereon; and authorizing the use of such further procedures available under Rule 69 of the Federal Rules of Civil Procedure in aid of execution against such assets.

3. I make this declaration based upon my personal knowledge of the proceedings in the above-captioned actions, in which I am counsel of record for Plaintiffs, and based upon records maintained in the files of my law firm, and my review of court filings in the above-captioned actions, the forfeiture proceeding related to the Bitcoin Assets pending as *United States of America v. Approximately 127,271 Bitcoin Previously Stored at the Virtual Currency Addresses Listed in Attachment A, and All Proceeds Traceable Thereto*, Civil Action No. 1:25-cv-05754 (E.D.N.Y.) (the "Bitcoin Forfeiture Action"), and the proceeding brought by other victims of Iranian-sponsored terrorism seeking turnover of the Bitcoin Assets pending as *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 25-cv-07093 (E.D.N.Y.) ("*Fritz* Suit").

**Plaintiffs' Judgments Against Iran**

4. The Plaintiffs are the personal representatives and immediate family members of 15 individuals killed in the terrorist attacks on September 11, 2001, in whose favor collectively this Court has entered nine (9) compensatory damages judgments totaling more than $671 million against Iran pursuant to 28 U.S.C. § 1605A. Plaintiffs and their judgments are identified at **Exhibit A** hereto. Plaintiffs' judgments remain unsatisfied.

5. In accordance with 28 U.S.C. § 1610(e), each of Plaintiffs' judgments identified in Exhibit A hereto has been served on Iran through diplomatic means pursuant to 28 U.S.C. § 1608(a)(4) on the date reflected in Exhibit A. Resort to diplomatic service was necessary because the methods of service specified in sub-sections 1608(a)(1) and (2) were not available to

Plaintiffs, and the method of service specified in sub-section 1608(a)(3) had proven unsuccessful.

6. Specifically, there is no "special arrangement for service between [Plaintiffs] and [Iran]" (28 U.S.C. § 1608(a)(1)), and Iran is not a party to any of the international conventions on service of judicial documents. 28 U.S.C. § 1608(a)(2)). Plaintiffs' attempts to serve their complaints on Iran pursuant to 28 U.S.C. § 1608(a)(3) were unsuccessful. *See Anaya* ECF 47 at ¶¶ 7; *Chairnoff* ECF 46 at ¶ 7. According to the official website of the U.S. Department of State: "As a practical matter, if service has been attempted in accordance with the hierarchical methods set forth in Section 1608(a)(1)-(3) in the initial phase of the action (*i.e.*, service of process) without success, necessitating service through diplomatic channels, under Section 1608(a)(4), when service of a default judgment on the foreign state becomes necessary, the Department of State will accept a request for service through diplomatic channels without plaintiffs repeating efforts at service under Section 1608(a)(1)-(3)."[1]

7. Annexed hereto as **Exhibit B** is a true and correct copy of the proof of service dated July 25, 2022 that the U.S. Department of State submitted to the Clerk of this Court evidencing service of the January 10, 2022 *Anaya* judgment (*Anaya* ECF 97/MDL ECF 7580) on Iran on June 15, 2022.

8. Annexed hereto as **Exhibit C** is a true and correct copy of the proof of service dated December 13, 2022 that the U.S. Department of State submitted to the Clerk of this Court evidencing service of the July 28, 2022 *Anaya* judgment (*Anaya* ECF 119/MDL ECF 8291) on Iran on November 21, 2022.

---

[1] https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process/Foreign-Sovereign-Immunities-Act.htmlovereign-immunities-act.html (last visited January 20, 2026).

9. Annexed hereto as **Exhibit D** is a true and correct copy of the proof of service dated December 13, 2022 that the U.S. Department of State submitted to the Clerk of this Court evidencing service of the August 2, 2022 *Anaya* judgment (*Anaya* ECF 123/MDL ECF 8311) on Iran on November 21, 2022.

10. Annexed hereto as **Exhibit E** is a true and correct copy of the proof of service dated November 22, 2024 that the U.S. Department of State submitted to the Clerk of this Court evidencing service of the August 2, 2023 *Anaya* judgment (*Anaya* ECF 163), the October 5, 2023 *Anaya* judgment (*Anaya* ECF 171/MDL ECF 8895), and the June 16, 2024 *Anaya* judgment (*Anaya* ECF 179/MDL ECF 9989)on Iran on October 1, 2024.

11. Annexed hereto as **Exhibit F** is a true and correct copy of the proof of service dated May 24, 2022 that the U.S. Department of State submitted to the Clerk of this Court evidencing service of the October 5, 2021 *Chairnoff* judgment (*Chairnoff* ECF 64/MDL ECF 7173) on Iran on April 27, 2022.

12. Annexed hereto as **Exhibit G** is a true and correct copy of the proof of service dated December 10, 2024 that the U.S. Department of State submitted to the Clerk of this Court evidencing service of the March 30, 2023 *Chairnoff* judgment (*Chairnoff* ECF 111/MDL ECF 8976) and the April 17, 2024 *Chairnoff* judgment (*Chairnoff* ECF 137/MDL ECF 9694) on Iran on October 1, 2024.

13. As reflected in Exhibits B-G hereto, all of Plaintiffs' judgments were served on Iran no less than 15 months ago. The time that has elapsed since the service of each of Plaintiffs' judgments on Iran is as follows:

| **Plaintiffs' Judgment** | **Date Served** | **Time Elapsed Since Service on Iran** |
|---|---|---|
| *Anaya* Judgment entered January 10, 2022 (*Anaya* ECF 97/MDL ECF 7580) | June 15, 2022 *See* **Exhibit B** hereto | 43 months and 5 days |
| *Anaya* Judgment entered July 28, 2022 (*Anaya* ECF 119/MDL ECF 8291) | November 21, 2022 *See* **Exhibit C** hereto | 37 months and 30 days |
| *Anaya* Judgment entered August 2, 2022 (*Anaya* ECF 123/MDL ECF 8311) | November 21, 2022 *See* **Exhibit D** hereto | 37 months and 30 days |
| *Anaya* Judgment entered August 2, 2023 (*Anaya* ECF 163) | October 1, 2024 *See* **Exhibit E** hereto | 15 months and 19 days |
| *Anaya* Judgment entered October 5, 2023 (*Anaya* ECF 171/MDL ECF 8895) | October 1, 2024 *See* **Exhibit E** hereto | 15 months and 19 days |
| *Anaya* Judgment entered June 16, 2024 (*Anaya* ECF 179/MDL ECF 9989) | October 1, 2024 *See* **Exhibit E** hereto | 15 months and 19 days |
| *Chairnoff* Judgment entered October 5, 2021 (*Chairnoff* ECF 64/MDL ECF 7173) | April 27, 2022 *See* **Exhibit F** hereto | 44 months and 24 days |
| *Chairnoff* Judgment entered March 30, 2023 (*Chairnoff* ECF 111/MDL ECF 9694) | October 1, 2024 *See* **Exhibit G** hereto | 15 months and 19 days |
| *Chairnoff* Judgment entered April 17, 2024 (*Chairnoff* ECF 137/MDL ECF 9694) | October 1, 2024 *See* **Exhibit G** hereto | 15 months and 19 days |

14. Notwithstanding having received notice of Plaintiffs' judgments on the dates indicated above, Iran has not appeared in these actions, nor made any effort to satisfy the Plaintiffs' judgments. I am not aware of any instance in which Iran has voluntarily satisfied a judgment obtained in a United States court based on Iran's terrorist activities.

**The Iranian Bitcoin Assets**

15. On October 14, 2025, the United States Government initiated the Bitcoin Forfeiture Action against the Bitcoin Assets. On the same day, the U.S. District Court for the Eastern District of New York issued an arrest warrant *in rem* for the Bitcoin Assets pursuant to

5

18 U.S.C. § 981(a)(1)(C) and (a)(1)(A).  The Bitcoin Assets are currently in the custody of the United States Government.

16.    The Government alleges the Bitcoin Assets are subject to condemnation by and forfeiture to the United States:  (1) under 18 U.S.C. § 981(a)(1)(C), as property that constitutes proceeds or is derived from proceeds of a violation of the wire fraud statute or a conspiracy to violate that statute, 18 U.S.C. §§ 1343, 1349; and (2) under 18 U.S.C. § 981(a)(1)(A), as property that was involved in or is derived from property involved in a money laundering transaction, an attempted money laundering transaction, or a conspiracy to make a money laundering transaction, 18 U.S.C. § 1956.  Specifically, the Government alleges that the Bitcoin Assets were involved in or derived from money-laundering operations conducted by a transnational criminal organization.

17.    According to the Government, one such operation involved using stolen cryptocurrency to fund a "large-scale cryptocurrency mining operation[ ]" called "Lubian," which was the "sixth largest bitcoin mining operation in the world" "[f]or some of the time it was active" and produced "large sums of clean bitcoin dissociated from criminal proceeds."  The Government describes "Lubian" as "a Chinese bitcoin mining operation" and acknowledges that Lubian had at least one facility in "Iran."

18.    On December 29, 2025, two groups of victims of Iranian state-sponsored terrorism—the Fritz Claimants and the Baxter Claimants—filed Notices of Verified Claims in the Bitcoin Forfeiture Action alleging that the Bitcoin Assets are the property of the Iran-China Group, which does business on the blockchain as Lubian.com or Lubian, and is an agency or instrumentality of Iran that has materially supported Iran's efforts to evade U.S. sanctions by mining cryptocurrency in Iran.  *See, e.g.*, Bitcoin Forfeiture Action ECF 29 at ¶¶ 34-45.

19. According to the Fritz and Baxter Claimants' detailed allegations in the *Fritz* Suit, over the past decade, Iran has used cryptocurrency mining as a central part of its strategy to evade U.S. sanctions. *See generally Fritz* Suit ECF 73 (Declaration of Jessica Davis). That is because cryptocurrency transactions are not subject to international banking controls, and cryptocurrency provides a means of laundering Iran's substantial oil and gas reserves, by converting them into electricity which is then used to generate cryptocurrency. *See id.* at ¶¶ 21-22, 25-35, 62-65.

20. In 2020, a key part of Iran's cryptocurrency operations was the massive crypto mining "farm" located in the Rafsanjan Special Economic Zone in Kerman Province which was touted by Iranian media as "'the largest digital currency production unit in Iran.'" *Fritz* Suit ECF 72 (Declaration of Avigdor Sason Cohen) at ¶ 48. The Rafsanjan facility was built and operated by the Iran-China Group in partnership with Iran. *See id.* at ¶¶ 26-70. The Iran-China Group conducted its crypto mining operation under the pool label "LuBian," tagging itself as "lubian.com" in transactions on the blockchain. *See id.* at ¶¶ 71-119.

21. The Fritz and Baxter Claimants allege that the Iran-China Group, through LuBian, owned and controlled all of the cryptocurrency wallets that contained the Bitcoin Assets before a hacker transferred the Bitcoin Assets to new wallets on December 20, 2020. *See id.* at ¶¶ 120-21, 132-41. They further allege that the hacker subsequently turned the keys to the new wallets over to the United States Government. *See Fritz* Suit ECF 1 at ¶ 58.

22. Upon information and belief, the price of Bitcoin fluctuates from day-to-day. According to publicly available sources, the current U.S. dollar value of one Bitcoin is $90,061.84. At the current price, the Bitcoin Assets are currently worth in excess of $11 billion.

23.    Plaintiffs have made no prior application to this or any other Court for the relief sought by this application.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Eastsound, Washington on January 21, 2026.

                                                              /s/ James P. Bonner