## UNITED STATES DISTRICT COURT -- SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) <br> ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member cases
*Burlingame, et al. v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN) and *Schneider, et al. v. al
Qaeda Islamic Army, et al.*, 02-cv-7209 (GBD)(SN)

### DECLARATION OF JOHN F. SCHUTTY, ESQ. IN SUPPORT OF MOTION FOR ENTRY OF FINAL JUDGMENTS AGAINST IRAN ON BEHALF OF CERTAIN *BURLINGAME* AND *SCHNEIDER* PLAINTIFFS BASED ON PAST AWARDS [OR WAIVERS] OF PUNITIVE DAMAGE CLAIMS

JOHN F. SCHUTTY, ESQ., hereby states under penalty of perjury that:

1.      I am an attorney representing *Burlingame* and *Schneider* subsets of *Ashton*
Plaintiffs in the above-captioned litigation who are fully described in footnote 1 below.[1]

2.      I submit this Declaration in support of a Motion for the Entry of Final Judgments
against the Islamic Republic of Iran ("Iran") on behalf of various claimants asserting wrongful
death claims against Iran arising out of the terrorist acts perpetrated at the World Trade Center on

---

[1]      Claims brought on behalf of the Plaintiffs described herein were part of the original *Burlingame*
Complaint, styled *Burlingame, et al. v. Bin Laden, et al.*, filed on September 10, 2002, bearing civil action
no. 02-cv-7230, or the *Schneider* Complaint, styled *Schneider v. al Qaeda Islamic Army, et al.*, 02-cv-7209
(GBD)(SN), also filed on September 10, 2002, bearing civil action no. 02-cv-7209. Since these Plaintiffs
remain segregated in the consolidated *Ashton* filings under their original civil action number and thus can
easily be identified, the within Plaintiffs appearing under the *Burlingame* civil action no. 02-cv-7230 and
*Schneider* civil action no. 02-cv-7209 within the consolidated *Ashton* Complaint are being collectively
referred to hereinafter as the "*Ashton-Burlingame*" and *"Ashton-Schneider"* Plaintiffs (or all collectively
as "Plaintiffs herein").   The following *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs have
conditionally agreed to waive their punitive damage claims in exchange for this Court's agreement to enter
immediate Final Judgments with awards of prejudgment interest; the Plaintiffs represented on this motion
are : [*Burlingame*] Irene Dickey, Joseph Dickey Jr., Elizabeth Dickey, Joanne Kelly, Erin Kelly, Brianne
Kelly, Kaitlyn Kelly, Colleen Kelly, Eileen Lynch, Anne Lynch, Kathleen Lynch, Meaghan Lynch, Lisa
O'Brien, John O'Brien, Madeline O'Brien, Jaqueline O'Brien, Dara Seaman, Michaella Seaman, Mary
Seaman, Edward Seaman, Susan Sliwak, Ryan Sliwak, Kyle Sliwak, Nicole Sliwak, Allison Wallice, John
Wallice, Christian Wallice, and Patrick Wallice, and [*Schneider*] Nancy Dimino and Sabrina Dimino.

September 11, 2001.  We respectfully ask the Court to resolve the only remaining claim each of these Plaintiffs has left unresolved against Iran – their claim for punitive damages.

3.    I have been retained by the within *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs to pursue wrongful death damages arising out of the deaths of their husbands/fathers.

4.    The form of this motion and the relief requested herein are intended to comply with the following orders of this Court:

   a.  The Court's order dated January 24, 2017 (ECF No. 3435), requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee (ECF No. 3433)] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

   b.  The Court's Order dated October 14, 2016 (ECF No. 3362) related to the cases captioned as *Bauer v. Al Qaeda Islamic Army*, 02-cv-7236 (GBD)(SN) and *Ashton v. Al Qaeda Islamic Army*, 02-cv-6977 (GBD)(SN).

   c.  The Court's Order dated October 28, 2019 (ECF No. 5234) setting forth updated procedural rules.

   d.  The Court's Order dated October 28, 2019 (ECF No. 5236) setting forth the scheduling order.

   e.  The Court's Order dated September 22, 2023 (ECF No. 9355) setting forth the new quality control, motion, declaration and exhibit procedures and paradigms.

5.     In compliance with ECF No. 8198 and 9373, the declarant states the following:

   a.  *The ECF number of the document(s) adding the plaintiffs to the complaint against Iran:* Claims brought against Iran on behalf of the Plaintiffs described herein were either part of the original *Burlingame* Complaint, styled *Burlingame, et al. v. Bin Laden, et al.*, filed on September 10, 2002, bearing civil action no. 02-cv-7230, or the *Schneider* Complaint, styled *Schneider v. al Qaeda Islamic Army, et al.*, 02-cv-7209 (GBD)(SN), also filed on September

10, 2002, bearing civil action no. 02-cv-7209. The personal representatives of each decedent's Estate (*Burlingame*: Irene Dickey, Joanne Kelly, Eileen Lynch, Lisa O'Brien, Dara Seaman, Susan Sliwak, Allison Wallice and *Schneider:* Nancy Dimino) were named in the originally filed Complaints. The children of the decedents were later added to these actions through "Short Form Complaints": (*Burlingame*: Joseph Dickey Jr., Elizabeth Dickey, Brianne Kelly, Erin Kelly, Kaitlyn Kelly, Colleen Kelly, John O'Brien, Madeline O'Brien, Jaqueline O'Brien, Michaella Seaman, Mary Seaman, Edward Seaman, Ryan Sliwak, Kyle Sliwak, Nicole Sliwak, John Wallice, Christian Wallice, Patrick Wallice (MDL ECF #5367 dated 12/16/2019), Anne Lynch, Kathleen Lynch, Meaghan Lynch (MDL ECF #5394 dated 12/23/2019), and *Schneider:* Sabrina Dimino (02-cv-7209, ECF #52 dated 09/23/2020)).

b.  *The ECF number of the document(s) determining liability between the plaintiffs and defendant Iran:*

- In the first action (*Havlish*) within this MDL litigation to establish liability against Iran under § 1605A (in 2011), Magistrate Judge Maas determined that Iran could be held liable to wrongful death plaintiffs. MDL ECF #2515 at 47, para. 11.

- On March 8, 2016, Judge George B. Daniels issued an order awarding conscious pain and suffering against Iran for the *Ashton-Burlingame* and *Ashton-Schneider* plaintiffs. *See* ECF MDL #3226: "Ordered that . . . compensatory damages for conscious pain and suffering [are awarded] in the amount of $2,000,000. . . and punitive damages for conscious pain and suffering in the amount of $6,880,000 each."

- On December 17, 2019, Judge George B. Daniels issued an order awarding damages for solatium (individually: spouse and children) and economic loss against Iran for the Estates of Dickey, Kelly, O'Brien, Seaman, Sliwak and Wallice. *See* MDL ECF#5376.

- On January 7, 2020, Judge George B. Daniels issued an order awarding damages for solatium (individually: spouse and children) and economic loss against Iran for the Estate of Farrell Lynch. *See* MDL ECF #5449.

- On September 23, 2020, Judge George B. Daniels issued an order awarding damages for solatium (individually: spouse and children) against Iran, *see* ECF #54 in 02-cv-7209, and then economic loss against Iran for the Estate of Stephen Dimino on September 20, 2024, s*ee* MDL ECF #10391.

    c. *The cause of action or causes of action for which the plaintiffs seek damages, including whether damages are sought under the FSIA. If damages for multiple causes of action are identical, only the causes of action relevant to the sum of damages sought must be listed:* The Plaintiffs herein have sought damages under the FSIA and applicable state wrongful death law. Each state-authorized heir herein claims solatium damages and punitive damages (if not immediately awarded, then waived) under the FSIA, in addition to wrongful death damages guaranteed under state law: economic loss damages, damages for the conscious pain and suffering of their decedent family member and prejudgment interest.

    d. *If damages are sought based in part on a prior award of damages (e.g., personal injury or economic damages), the case and ECF numbers of that award:* See paragraph 5(b) above and chart attached hereto as Ex. A.

    e. *Have damages or liability been sought in part based on a prior entry of default judgment*: Yes, see paragraph 5(b) above and chart attached hereto as Ex. A.

Due Diligence:

6.    The source of information and the basis for belief in the statements contained herein have been formed by: my representation of these *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs, my work in connection with the September 11 terror attacks, my firm's files, my conversations with the widows and personal representatives of the Estates of the following 9/11 decedents: Joseph D. Dickey, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, Farrell Lynch, John Wallice, Jr., and Stephen Dimino, as well as other court records relating to the multi-district litigation to which these *Ashton-Burlingame* and *Ashton-Schneider* are parties. Any matters about which I lack personal knowledge are asserted herein upon information and belief.

7.    I have verified via written documentation and interviews that the Plaintiffs herein are the only authorized "heirs" of their respective decedents according to applicable state wrongful death law. I have further confirmed that the Plaintiffs herein do not have any pending motion against Iran before this Court for compensation arising out of the September 11 attacks.

8.     This Court has previously entered default judgment damage awards against Iran on behalf of these *Ashton-Burlingame* Plaintiffs – complete compensatory *and punitive damage* awards to each of these Plaintiffs in a series of Orders issued by the Court: (MDL ECF ##3226: compensatory *and punitive damages* for conscious pain and suffering, 5376: economic and solatium damages, 5449: economic and solatium damages) due to Iran's non-appearance. This Court also has previously entered default judgment damage awards against Iran on behalf of these *Ashton-Schneider* Plaintiffs – complete compensatory *and punitive damage* awards to each of these Plaintiffs in a series of Orders issued by the Court: (MDL ECF ##3226: compensatory *and punitive damages* for conscious pain and suffering, 10391: economic damages, and 02-cv-7209, ECF #54: solatium damages) due to Iran's non-appearance. In short, all the claims of the Plaintiffs herein against Iran appear to have been previously resolved.[2]

9.     Of particular importance on this motion is the Court's Amended Order of Judgment dated March 8, 2016 (MDL ECF #3226 at 1, Exhibit B annexed hereto), which awarded the Plaintiffs herein "punitive damages for conscious pain and suffering in the amount of $6,880,000 each …. and prejudgment interest on the compensatory damages awards of for conscious pain and suffering of each decedent to be calculated at the rate of 9% per annum from September 11, 2001 until today."

---

[2]     Several years ago (on October 12, 2012), this Court awarded a Final Judgment against Iran of compensatory damages, plus punitive damages, plus prejudgment interest, to 47 Estates and 106 individual plaintiffs in *Havlish v. bin Laden, et al.*, SDNY Case No. 03-CV-09848. *See* MDL ECF#2624 -- J. Daniels: "This is a final, appealable order [re: Final Judgment Awarding Damages to *Havlish* Plaintiffs Against Iran – a total $1.362 billion in compensatory damages and $3.88 billion in punitive damages to a relatively small subset of 9/11 wrongful death plaintiffs]." *See also Federal Insurance Co., et. al v. al Qaida, et al.*, 03-cv-06978 (GBD) (MDL ECF ##3175, 3229 and 3233) (Final Judgment of over $3 billion issued against Iran to a group of insurance companies with an award of prejudgment interest issued by the Clerk of the Court by entry of MDL ECF #3233).

10.    Thus, in accordance with MDL ECF #3226, the Estates of Joseph Dickey, James Kelly, Farrell Lynch, Timothy O'Brien, Michael Seaman, Robert Sliwak, John Wallice and Stephen Dimino were each awarded $6.88 Million in punitive damages against Iran.

11.    Upon information and belief, the Plaintiffs herein (and the Estates they represent) have never been granted Final Judgments against Iran at the direction of this Court, even though all their claims against Iran have been resolved.

12.    The *Ashton-Burlingame* Plaintiffs sought Final Judgments against Iran with awards of prejudgment interest last year (*see* MDL ECF #9949), but this Court denied the latter request implicitly suggesting that the earlier awards of punitive damages to certain plaintiffs (*Havlish* and *Ashton*) against Iran were formulated improperly and that further proceedings would have to be held on the request for Final Judgments and punitive damages against Iran (MDL ECF #10350).

13.    Confusion presently exists, because while the punitive damage awards to the Plaintiffs herein (MDL ECF #3226) have never been explicitly vacated, a ruling in *Hoglan, et al. v. Islamic Republic of Iran*, 11-cv-7550 (GBD)(FM), has cast doubt on whether this Court will honor its punitive damage awards to the *Havlish* and *Ashton* Plaintiffs.  The *Hoglan* Plaintiffs sought compensatory and punitive damages against Iran (MDL ECF #3229) like the awards issued to the *Havlish* and *Ashton* Plaintiffs.  On October 12, 2016, a few months after the *Ashton* punitive damage awards were issued, Magistrate Judge Netburn denied the *Hoglan* Plaintiffs' requested punitive damage awards against Iran holding that the punitive damage awards issued to the *Havlish* and *Ashton* Plaintiffs were made in error.  Magistrate Judge Netburn ruled:

> This Court respectfully disagrees with the logic underlying the line of cases upon which the Havlish report relies and on which the plaintiffs here seek massive punitive damages....

MDL ECF #3358 at 11.[3]

> The Court is . . . triply unconvinced by the rationale behind the 3.44 multiplier previously utilized in this case....

MDL ECF #3358 at 14.

> Relying on the prior decisions made in Havlish and Ashton, [Hoglan] plaintiffs have not substantially briefed their entitlement to a particular method for the computation of punitive damages. As such, the Court recommends that their claim for punitive damages be DENIED without prejudice. Plaintiffs may file supplemental briefing to justify any punitive damages that they believe the law supports.  In such submission, they should address: (1) whether the case law requires a rational relationship between the level of terrorism financing by the Sovereign Defendants and the amount of punitive damages; (2) whether a multiple of compensatory damages is appropriate given the potential for imbalanced punitive awards among families where decedents' earnings were disparate; and (3) how to rationalize punitive damages in this case in light of past and future cases stemming from the 9/11 attacks. If plaintiffs advocate for the Flatow method, they should submit evidence sufficient for the Court to make a reasoned calculation of Sovereign Defendants' level of financing for terrorism.

MDL ECF #3358 at 16.

14.     Judge George Daniels approved of Magistrate Judge Netburn's conclusions on punitive damages in *Hoglan* (MDL ECF#3383) and the final resolution of this issue as to all remaining plaintiffs was thereafter cast in doubt and was deferred up and through this date.

15.     Upon information and belief, despite the above rulings (MDL ECF ##3358 and 3383), this Court has never vacated the *Havlish* and *Ashton* punitive damages awards, and/or the Final Judgments issued to *Havlish* Plaintiffs based on the *Hoglan* decision.

---

[3]     In support of its contention, the Court cited to *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 87 (D.D.C. 2010) (citing *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 2008)). "This approach, which in the FSIA context is generally referred to as the "Flatow method," appropriately links the monetary amount of the punitive damages award to the tortious conduct to be deterred. The *Valore* court's damages award was based on expert testimony regarding Iran's financing of terrorist organizations; having determined that Iran's annual budget for financing the terrorist group Hezbollah (implicated in the Beirut bombings) was $200 million, the court imposed a punitive multiplier of five to deter such activity. *Id*. at 89–90." MDL ECF #3358 at 11-12.

16.     This Court now has a choice – it can either enforce the *Ashton* punitive damage awards previously granted and enter Final Judgments for the Plaintiffs herein, or it should vacate both the *Havlish* and *Ashton* awards and consider vacating the *Havlish* Final Judgment pursuant to the "extraordinary circumstances"[4] present here under Fed. R. Civ. P. Rule 60(b)(6).  The record requires clarity, as this Court has intimated that the punitive damage awards previously issued were incorrect and has implicitly advised the *Ashton* Plaintiffs herein that further proceedings are necessary on the issue of punitive damages, without vacating the prior awards.

17.     Punitive damages are undeniably recoverable against Iran under the explicit terms of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611, specifically under 28 U.S.C. § 1605A(c)(4).

18.     Here, since the Plaintiffs herein have received full and complete compensatory and punitive damage awards against Iran, the "*Hoglan* overhang" (whether the 2016 *Ashton* punitive damage awards will be honored through an executed Final Judgment) is the only issue prohibiting the entry of Final Judgments against Iran for these Plaintiffs.

19.     Since the Plaintiffs herein desire a Final Judgment (and appeal*) in any event and as soon as possible*, if this Court will not award them the punitive damages award previously granted to them in a Final Judgment, they will now alternatively agree, formally and conditionally, to waive their punitive damage claims against Iran in exchange for this Court's grant of Final Judgments (Judgments with prejudgment interest – that may be served upon Iran through the U.S. Department of State and appealed, as necessary).  My office has received signed consents from

---

[4]     *See, e.g., Pierce v. Cook & Co.*, 518 F.2d 720 (1975): the Tenth Circuit held where parties to a common catastrophe received divergent outcomes due to an intervening change in law—this constituted "extraordinary circumstances" justifying relief under Rule 60(b)(6).  Awarding one small set of 9/11 wrongful death plaintiffs Final Judgments including punitive damages and denying all remaining 9/11 wrongful death plaintiffs similar relief in this MDL proceeding, is unjust and unfair.

each of the Plaintiffs herein to waive their punitive damage claims against Iran on this formal condition. This significant group of punitive damage claim waivers shows how anxious these Plaintiffs are to bring their twenty-three litigation against Iran to a close.

20. Set forth below and in the accompanying Memorandum of Points & Authorities ("MPA") are detailed explanations as to why the Plaintiffs herein seek a Final Judgment as soon as possible, and the willingness of these Plaintiffs to waive their punitive damage claims conditionally against Iran, if their prior punitive damage awards are not honored:

a. how Iran's liability for 9/11 wrongful death claims should be determined under the FSIA,

b. how this Court began misapplying Iran's liability for 9/11 claims starting in 2011, and

c. why this court should either (i) vacate certain existing claims against Iran based on applicable state law and the FSIA statute of limitations, or alternatively, (ii) immediately certify the requested Final Judgments against Iran so that the within Plaintiffs may pursue an appeal to the U.S. Court of Appeals for the Second Circuit.

If the prior decisions of this Court regarding Iran's FSIA liability are not reviewed and vacated, and/or the Plaintiffs herein are not granted leave to appeal, these Plaintiffs will otherwise continue to be injured by awards being improperly issued to: (a) non-heirs under state law and (b) those bringing untimely claims – all after more than twenty-three years of litigation against Iran. There is no reason for further delay as these Plaintiffs are being injured by diluted awards from the Federal Government – resulting from the defective default judgments issued by this Court.

## I.    Liability of Iran Under the FSIA

### A.    Background on the FSIA

21.    As the accompanying legal brief shows, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611, provides the exclusive basis for obtaining jurisdiction over a foreign sovereign (*e.g.*, Iran) in United States courts.  And, when a plaintiff seeks a default judgment against a foreign state under the terrorism exception codified at 28 U.S.C. § 1605A, the district court must conduct an independent and searching inquiry before entering judgment.

22.    The legislative history of the FSIA statute reveals that it was enacted to create "comprehensive rules" regarding the immunity of foreign states from suit and discontinue "the practice of judicial deference to suggestions of immunity from the executive branch."  H.R. Rep. No. 94-1487 at 11 (1976).  MPA at 2.

23.    The legislative history of the statute also explicitly shows that it was "not intended to affect the substantive law of liability" or "the attribution of responsibility between or among entities of a foreign state; for example, whether the proper entity of a foreign state has been sued; or whether an entity sued is liable in whole or in part for the claimed wrong."  *Id*.  As one sponsor of the statute described it, "this bill deals only with jurisdiction; the substantive law of liability would remain unchanged." 122 Cong. Rec. 17462 (June 10, 1976).  MPA at 2.

### B.    Section 1606 of the FSIA

24.    Consistent with these principles, the FSIA contains an explicit provision directing courts to existing, traditional tort (state) law in determining the liability of a foreign state—once an exception to immunity is proven.  Section 1606 of the statute provides, as follows (emphasis added):

> **As to any claim for relief** with respect to which a foreign state is not entitled to immunity **under section 1605** or 1607 of this chapter, **the foreign state**

**shall be liable in the same manner and to the same extent as a private individual under like circumstances . . . .**

25.     Thus, the FSIA merely lifts the sovereign immunity of a state. Section 1606 says nothing about the law that ultimately should be applied against the foreign state.  For the answer to that question, a court is required to turn first – as it does in § 1605(a)(2) and § 1605(a)(5) cases, as well as all other cases under § 1605 – to § 1606, which instructs that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 1606.  MPA at 2-3.

26.     The legislative history of § 1606 shows that this provision was intended to "make clear" what should have been true in any event: "if the foreign state, political subdivision, agency or instrumentality is not entitled to immunity from jurisdiction, liability exists as it would for a private party under like circumstances."  H.R. Rep. No. 94-1487 at 22 (1976).  MPA at 3.

27.     Consistent with its plain text, § 1606 has been read as a "portal" or "pass-through" to the causes of action (and traditional tort law) that would exist against a private individual in like circumstances.  MPA at 3.  That is, when § 1605A lifts the sovereign immunity of a foreign state, § 1606 allows a plaintiff to bring any claim against the foreign defendant that the plaintiff could have brought in like circumstances were the defendant a private individual.[5]  Example: if the FSIA claim involves a wrongful death claim, a court must determine what already existing traditional (state) law controls the claim.

---

[5]     Read together, these provisions establish that § 1606 supplies the baseline liability framework, while § 1605A operates as a targeted statutory modification—most notably by expressly authorizing awards of solatium and punitive damages.  Although § 1605A created an independent cause of action, it did not displace § 1606 wholesale. Courts continue to rely on § 1606 to confirm that, once immunity is lifted, foreign states are subject to ordinary tort principles, including standards of causation, joint and several liability, and compensatory damages analysis.  Section 1605A modifies that framework only where Congress spoke expressly.

28.    The language of § 1606 manifests Congress's intent that state law should be the source for deciding which individuals qualify to pursue and recover wrongful death damages in FSIA cases.  *See* U.S. Supreme Court and Second Circuit case law cited and quoted in the MPA at 3-4.  It is simply worthy of mention here that precedent establishes that "the FSIA . . . operates as a 'pass-through' to state law principles." *Id.*

29.    Because § 1606 demands that foreign states be treated identically to private defendants, courts uniformly apply the same law to FSIA claims that would govern a privately initiated tort action. *Id.* at 4.  This structure ensures uniformity, predictability, and consistency in FSIA jurisprudence.

**C.    The § 1605A(c) Terrorist Exception Cause of Action**

30.    In 2008, Congress repealed § 1605(a)(7) (that portion of the FSIA that removes immunity from foreign states engaged in terrorist activity) and enacted 28 U.S.C. § 1605A.  28 U.S.C. § 1605A(a), (c) provides that a "foreign state" is "liable" and not immune from suit when:

1. "the foreign state was designated as a state sponsor of terrorism"

2. at the time of a "personal injury or death"

3. "that was caused by an . . . extrajudicial killing . . . or the provision of material support or resources for such an act,"

4. and the claimant is "a national of the United States." *Id.*

31.    Section 1605A(c) now expressly creates a federal cause of action (removing immunity) directly against foreign states for acts of terrorism, including wrongful death.  While § 1605A(c) now makes foreign states liable for:

• personal injury or death,
• economic damages,
• solatium,
• pain and suffering and

• punitive damages,

it does not provide certain particulars needed to process claims covered by traditional tort law (*e.g.*, who has the standing to pursue such claims and who may claim damages), and it makes no mention of, and therefore, did not alter § 1606 other than make solatium and punitive damages now available.  MPA at 5.  Traditional (state) tort law applies to such issues under § 1606.  Significantly, neither § 1605A, nor its legislative history, indicates that it was intended to preempt existing state law.  *Id*.

32.    Section 1606 remains unequivocal: "*As to any claim* for relief with respect to which a foreign state is not entitled to immunity *under section 1605* or 1607 of this chapter, *the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances*."  28 U.S.C. § 1606 (emphasis added).  Congress chose to place the state-sponsored terrorism exception in § 1605 of the FSIA.  By its terms, § 1606 applies to all § 1605 cases without distinction.  MPA at 6.  Accordingly, courts properly read §§ 1605A and 1606 in tandem: § 1605A removes immunity and authorizes specific remedies, while § 1606 supplies the governing rule that foreign states are liable "in the same manner and to the same extent as a private individual under like circumstances," except where Congress has clearly provided otherwise.

33.    For many years now, courts have read § 1606 as a pass-through to existing traditional tort law and traditional causes of action.  MPA at 6-7.  There is nothing in the text of § 1605 or § 1606 that suggests a different rule should be fashioned for cases brought pursuant to § 1605A.  *Id*.  These claims can include, in appropriate cases, state common and statutory law, federal statutory law, and even the law of a foreign state.  Whether any of these sources of law will supplement the federal cause of action in a particular case will depend on several factors, including

the governing choice of law analysis and at least in the context of federal statutory claims, a careful inquiry into congressional intent. *Id.*

34.    The crucial point, however, is that there is nothing in § 1605A that displaces the prevailing rule that traditional tort (state) law should be applied to the § 1605A cause of action through § 1606 against foreign states. *Id.*

35.    Consistent with its plain text, § 1606 of the FSIA must still be read as a "portal" or "pass-through" to traditional tort (state) law principles that exist against a private individual in like circumstances when a claim under the FSIA is pursued.  That is, while § 1605A lifts the sovereign immunity of a foreign state and provides a cause of action and additional remedies, § 1606 requires courts to ensure that the foreign state defendant is treated in like circumstances were the defendant a private individual.  This result is consistent with the legislative history of the FSIA.

36.    In sum, while § 1605A does create a new federal cause of action against foreign states who engage in terrorism, and while the new cause of action advises courts that punitive damages and solatium damages may now be awarded, § 1605A otherwise must still be read along with § 1606 of the FSIA to ensure that the new cause of action operates as "a 'pass-through' to state law principles."  MPA at 6-7.

37.    In its original and amended forms, the FSIA provides no guidance, among other things, as to: (a) which family members can recover wrongful death and/or solatium damages (other than that wrongful death damages may be pursued by a "legal representative"), (b) who can bring a claim based on a decedent's death, or (c) what damages are recoverable other than what is described in § 1605A  – these important items were and are left to traditional tort law deemed to be applicable after a choice of law analysis (and not to the discretion of a district court judge).  MPA at 6-7.   If Congress wanted to increase the number of family members who might

pursue and claim wrongful death and solatium damages against foreign states beyond what the states allow, Congress would have said so in the FSIA. Congress did not.

38.     As will seen below, this Court erred when it gave literally no consideration to the applicability of § 1606 in ruling on the liability of Iran for 9/11 death and solatium claims.

**D.     Present State of the § 1605A FSIA Cause of Action**

39.     In 2018, the Federal Judicial Center published a "Guide" for federal judges entitled "The Foreign Sovereign Immunities Act"; this Guide advises district court judges what law is to be applied when a § 1605A FSIA cause of action is asserted and an exception to sovereign immunity is established (emphasis added):

> **Applicable Law**
>
> An action against a foreign sovereign arises under federal law for purposes of Article III jurisdiction. **Jurisdiction and procedure are governed by the FSIA. However, for most purposes, the statute itself does not supply the substantive law but instead provides, in 28 U.S.C. § 1606, that where no immunity exists, foreign states "shall be liable in the same manner and to the same extent as a private individual under like circumstances."**
>
> **Thus, state substantive law is controlling on most issues of liability in FSIA cases.**

"The Foreign Sovereign Immunities Act, A Guide for Judges," Federal Judicial Center (2d ed. 2018) at 23. MPA at 7-8.

40.     Although I was formerly an attorney "of counsel" with the law firm, Speiser Krause, P.C., and although I participated in this 9/11 litigation between 2002 and early 2007, I left my approximately forty 9/11 clients with the latter firm when I created my own law firm in June of 2007. Between 2007 and late 2017, I was not involved in this 9/11 MDL litigation.

41.     In late 2017, I was approached by several of my former 9/11 clients and was asked whether my former law firm (Speiser Krause P.C.) was entitled to require them, as a personal

representative of a 9/11 decedent, to provide detailed contact information for "parents and siblings" of their decedent-husband.  At that time, I advised these families that I was unaware of any existing law that would entitle "parents and/or siblings" (or "immediate family members") to recover wrongful death proceeds when the decedent was survived by a spouse and children and, therefore, I could not understand the request by their then-attorneys.  I further researched the subject and determined that this Court had misapplied the FSIA in adjudicating Iran's liability for wrongful death and solatium damages because this Court had wholly failed to consider the determining effect of § 1606 of the FSIA and state law.

42.    I have since assisted all the Plaintiffs herein by arguing to this Court that it has misapplied the FSIA (and Anti-Terrorism Act) and, in doing so, has issued billions of dollars in default judgments improperly to family members who are not entitled to death or solatium damages under applicable state tort law and/or the FSIA statute of limitations.  I have made written filings and argued orally before this court with an emphasis on the then-present issue of the Defendant Taliban's liability under the Anti-Terrorism Act (also misapplied[6]) – mainly because

---

[6]    The legislative history of the Anti-Terrorism Act (ATA), 18 U.S.C. § 2333, reflects Congress's expectation that courts would look to generally applicable tort and wrongful death doctrines—often derived from state law—to determine proper beneficiaries for wrongful death claims.  Rather than codifying a detailed federal wrongful death scheme, Congress expected courts to rely on traditional tort doctrines in applying the ATA. Thus, in applying the statute, courts should look to established tort (state) law principles to determine who qualifies as a survivor or heir.  Congress sought only "to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law."  *Boim v. Quranic Literacy Inst. & Holy Land Found.* 291 F.3d 1000, 1010 (7th Cir. 2002); *see also* 137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of Sen. Grassley) (The ATA accords victims of terrorism "the remedies of American tort law, including treble damages and attorney's fees."). District courts have further held that because the ATA does not define the terms "survivors" or "heirs," courts should look to applicable wrongful death and survival law to determine who may recover. *See, e.g., Kaplan v. Central Bank of the Islamic Republic of Iran*, 961 F. Supp. 2d 185, 194–95 (D.D.C. 2013) (noting the ATA's reliance on traditional tort principles).  Again, if state law was properly applied in giving effect to the ATA cause of action, parents and siblings would have no right to recover death or solatium damages where a decedent is survived by a spouse and children for the reason stated herein.

- 16 -

Iran's liability had already been determined by this Court many years before I reentered the litigation in 2017.  *See, e.g.,* ECF ## MDL ECF # 8814; Tr. of Nov. 18, 2022; MDL ECF # 8986.

43.     When this Court rejected my arguments, *see* ECF MDL ## 8929, 8973, 8997, I sought to appeal, first through certification of an interlocutory appeal, ECF MDL ## 8992, 8993, which this Court denied, ECF MDL # 9175, and then through a petition for writ of mandamus, MDL ECF # 9095, which the Second Circuit denied without opinion, MDL ECF No. 9348, and then through a petition for writ of certiorari to the United States Supreme Court, which the Supreme Court denied, *see O'Brien v. United States Dist. Ct. for S. Dist. of New York*, 144 S. Ct. 808, 218 L. Ed. 2d 23 (2024).  In other words, I have exhaustively sought review of what appear to be erroneous rulings of this Court – rulings that have caused many billions of dollars to be wrongfully awarded to individuals, who by these awards diluted the recoveries of dependent widows and children of 9/11 decedents from a government fund discussed below.

44.     The arguments set forth on behalf of the Plaintiffs herein have been ignored thus far (and my early, procedural appeals have failed) and so these Plaintiffs now seek Final Judgments and an ability to appeal this Court's Iran decisions after more than twenty-three years of litigation.

**E.  Applicability of State Law to 9/11 FSIA Wrongful Death Claims**

45.     The state tort laws typically applicable in the 9/11 litigation (mostly involving NY, NJ and CT decedents) all expressly prohibit wrongful death awards (and/or solatium awards) to any family members other than a surviving spouse and children when a decedent is survived by a spouse and children (*i.e.*, no awards to parents and siblings or other "immediate family members" of a decedent under such circumstances).  MPA at 8-9.

46.     On matters of tort law, estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed by this Court, especially if an

award of death or solatium damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy (that seek to protect financially dependent widows and children).   The Second Circuit has repeatedly emphasized that wrongful death actions are traditionally matters of state law.  *Id.*

47.    Here the Plaintiffs' Executive Committee for Personal Injury and Death Claims ("PEC") has urged the Court to give no regard to the interests of the states where the 9/11 decedents were domiciled in deciding Iran's liability – but states have been left responsible for the future welfare and support of surviving widows and children through the creation and enforcement of wrongful death and estate distribution statutes.  States are undeniably responsible for administering the estates of decedents in this country and these states therefore have a far greater interest in the administration of the decedents' estates than the federal courts.  MPA at 7-8.

48.    Here, the erroneous ruling of the Court on this FSIA issue has led to the following result: default judgment awards have been granted improperly against Iran to "non-heirs" ("immediate family members") and these compensatory judgments to "non-heirs" have, in turn, caused the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") to issue awards and moneys to "non-heirs" that have seriously diluted USVSST awards and moneys to widows and children.  *See, e.g.*, Declaration of Lisa O'Brien dated March 28, 2023, MDL ECF #8961; Declaration of John F. Schutty, Esq. dated March 28, 2023, MDL ECF # 8960.

49.    Attorneys within the Department of Justice (which administers the USVSST) have advised me that the USVSST is "bound" to honor the compensatory damage judgments issued in

the 9/11 MDL litigation, so if "heirs" want to stop the USVSST awards to "non-heirs," "heirs" must prove that their state law argument is correct in the MDL litigation (or on appeal).[7]

50.     The clear error committed by this Court was/is its determination that the FSIA provides a stand-alone federal cause of action for wrongful death and solatium (and the Court's resulting failure to give proper effect to § 1606 of the FSIA and applicable state law).  The history of this error in this litigation is covered in greater detail below.

## II.     What Steps Must a District Court Take to Enter an FSIA Default Judgment?

51.     When a plaintiff seeks a default judgment against a foreign state under the FSIA, the district court must undertake an independent and searching review before entering judgment. In the Second Circuit, courts have repeatedly emphasized that default judgments against foreign sovereigns are disfavored and may be entered only after the court is satisfied that jurisdiction, liability, timeliness, and damages are established by competent evidence.  MPA at 11.

52.     Unlike ordinary civil cases, default does not constitute an admission of liability by a foreign sovereign.  Section 1608(e) imposes an affirmative obligation on the district court to evaluate the merits of the plaintiff's claims.  "No judgment by default shall be entered by a court of the United States or of a State against a foreign state … unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).

53.     Under Second Circuit precedent and the mandatory requirements of 28 U.S.C. § 1608(e), a district court must independently assess whether an FSIA claim is proper and timely before entering a default judgment and the court must deny a default judgment where the claimant

---

[7]     The USVSST pro rata payments are "based on the amounts outstanding and unpaid on eligible claims, until all such amounts have been paid in full" or the fund terminates in 2039.  34 U.S.C. § 20144(d)(3)(A)(i), (e)(6).  *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.  That means payments to any individual claimant are dependent on other claimants' awards.  Thus, all past, present or future filers against Iran will have their recoveries substantially diminished by non-heirs (and untimely claimants) who obtain default judgments that result in payment by the USVSST.

lacks standing under applicable state law or where the claim is time-barred, regardless of whether the foreign state appears or asserts the statute of limitations as an affirmative defense.  MPA at 11-12.

54.    Section 1608(e) of the FSIA requires plaintiffs to establish each element of liability with competent evidence.  Allegations alone are insufficient.  Courts must "require plaintiffs to present admissible evidence supporting their claims" even where the foreign state fails to appear.  MPA at 11-12.

55.    The statute of limitations for FSIA claims is:

An action may be brought or maintained under this section if the action is commenced, or a related action [earlier filed action by that plaintiff] was commenced under section 1605(a)(7) (before the date of the enactment of this section) ... not later than the latter of—

10 years after April 24, 1996; or

10 years after the date on which the cause of action arose.

28 U.S.C. § 1605A(b).

56.    Statutes of limitations are not waived by default, and courts may not enter judgment on time-barred claims.  Courts in this Circuit routinely assess accrual, tolling, and statutory limitations periods *sua sponte* in FSIA default cases.  MPA at 12.

57.    The Second Circuit has repeatedly held that courts may dismiss claims *sua sponte* on statute-of-limitations grounds where the defect is apparent from the pleadings.  *Id.*  This authority applies with greater force in FSIA cases *when a default judgment is sought on an untimely complaint opposed by plaintiffs with adverse interests and where § 1608(e) affirmatively conditions entry of the default judgment on that plaintiff's establishment of a "right to relief."  Id.* A time-barred claim cannot satisfy that statutory requirement.  While there is some contrary authority issued by the D.C. Circuit, the Plaintiffs herein contend this is not binding precedent and

that it should be rejected as wrong and illogical (if not by this Court, then the Second Circuit). *Id*. at 13.

58.     In summary, a district court may not presume timeliness merely because the foreign state has not appeared.  To the contrary, § 1608(e) requires the court to determine affirmatively that the claim is timely.  The foreign state's failure to assert the statute of limitations does not waive the defect and does not authorize the court to enter a default judgment.  MPA at 14.

## III.    How Was the FSIA Misapplied Against Iran in This Litigation?

### A. This Court Has Wrongfully Ruled That Section 1605A Provides a Stand-Alone Cause of Action & Allows a Rejection of Applicable State Law

59.     In the first action (*Havlish*) within this MDL litigation to establish liability against Iran under § 1605A (in 2011), Magistrate Judge Maas determined that Iran could be held liable to plaintiffs because "they were either themselves nationals of the United States at the time of the September 11 attacks, or their claims are derived from injuries to victims who were U.S. nationals."  MDL ECF #2515 at 47, para. 11.  The legal right of individual *Havlish* plaintiffs to pursue and claim wrongful death damages on behalf of a particular decedent was not addressed in this early decision.

60.     Judge George Daniels affirmed these fact findings and conclusions of law in an Order of Judgment on December 22, 2011.  MDL ECF # 2516.

61.     After a following *Havlish* hearing on damages, Magistrate Judge Maas made a significant ruling:

> **Section 1605A effected a 'sea change' in suits against state sponsors of terrorism.  Previously, to recover damages against such defendants, plaintiffs had to demonstrate their entitlement under state or foreign law.  Now, such claims are subject to a 'uniform federal standard.'  Courts therefore usually determine damages under Section 1605A by applying the legal principles found in the Restatement of Torts and other leading treatises.**

Report & Recommendation dated July 30, 2012, MDL ECF #2618 at 5 (citations omitted and emphasis added).

62.    Fatal legal errors are undeniably present in the above conclusions reached by the Court.  MPA at 15.  First and foremost, the effect of § 1606 of the FSIA was not considered in any respect.  *Id*.  Second, Supreme Court and Second Circuit precedent interpreting § 1606's effect on FSIA claims was not considered.  *Id*.  Third, Supreme Court precedent has soundly rejected Magistrate Judge Maas's expressed need to create a "uniform federal standard" for an FSIA terrorist cause of action – where existing state law was and is applicable.  And, finally, courts are not allowed to use the "Restatement of Torts and other leading treatises" to create a federal common law in the stead of applicable state law (the Second Circuit has refused to follow Restatement provisions where they conflict with controlling state law).  *Id*.

63.    The "sea change" brought about by § 1605A, as claimed by Magistrate Judge Maas, was, in fact, nothing of the sort.  MPA at 15.  Section 1606, the FSIA's legislative history, and U.S. Supreme Court and Second Circuit precedent all were not considered by him; nor was otherwise applicable state wrongful death law.  The standing of individual *Havlish* plaintiffs to pursue and claim death or solatium damages on behalf of a particular decedent was not addressed – all the plaintiffs were simply considered "victims" ("immediate family members") with standing to claim and pursue such damages under a stand-alone FSIA federal cause of action.  Magistrate Judge Maas failed to address U.S. Supreme Court and Second Circuit case law that has stressed that "the FSIA . . . operates as a 'pass-through' to state law principles."  *Id*.

64.    The legal theory asserted against Iran by the PEC in the MDL litigation (starting with the *Havlish* default judgment application against Iran) was that *the FSIA provides a stand-alone cause of action*, *separate and apart from state law*, and implicitly that the federal cause of

action allows this Court to ignore § 1606 and otherwise applicable state law and state policy (that protects financially dependent widows and children). Section 1606 has been undeniably ignored in this litigation. The PEC has suggested to this Court that it can liberally interpret the FSIA and award damages to "victims" (otherwise described as "immediate family members"[8]) by developing a federal common law remedy instead of employing applicable state law (the phrase "immediate family member" is not found anywhere within the FSIA or applicable state law).

65.    Magistrate Judge Maas determined that § 1605A provided a stand-alone cause of action that allowed him to award solatium damages to individuals not entitled to such damages under applicable state law:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| *Parent* | $8,500,000 |
| Child | $8,500,000 |
| *Sibling* | $4,250,000 |

---

[8]    In this litigation, "immediate family members" have individually sued Iran for "loss of solatium," which is "the mental anguish, bereavement, and grief" experienced by those with an alleged close relationship to the victim. MPA at 16, fn. 12. Some courts have held that under the FSIA, a solatium claim "is indistinguishable" from an intentional infliction of emotional distress (IIED) claim. *Id.* These courts have wrongfully applied the Restatement (Second) of Torts to these claims rather than applicable state wrongful death law in violation of § 1606 and U.S. Supreme Court precedent. Foreign states have been held liable for IIED if they "by extreme and outrageous conduct intentionally or recklessly cause[ ] severe emotional distress to another." Restatement (Second) of Torts § 46(1). *Id.* The Restatement permits recovery by *(1) members of the victim's immediate family (2) who were present at the time of the conduct. See id.* § 46(2) (emphasis added). IIED claims may *not* be asserted in addition to a wrongful death claim under New York law. MPA at 16, fn. 12. And Restatement principles must be rejected when they conflict with applicable state law. *Id.* The New York Court of Appeals has repeatedly held that common-law claims seeking damages for emotional injuries flowing solely from the death itself are barred as duplicative of wrongful death. In other words, "non-heirs" have no right to assert IIED/solatium claims against Iran under New York law if their claims result merely from a death. *Liff v. Schildkrout*, 49 N.Y.2d 622, 633 (1980) (wrongful death statute is exclusive remedy for death-related losses).

MDL ECF #2623 at 4 (italicized individuals are not entitled to wrongful death damages or solatium damages in NY, NJ and CT when a decedent is survived by a spouse and children).

66.     The concept of recovery by "immediate family members" for solatium was apparently developed when courts compared FSIA solatium claims to those pursued under an intentional infliction of emotional distress ("IIED") cause of action as described in the Restatement (Second) of Torts, but this comparison is irrelevant in terms who has standing to pursue death or solatium damages under state law and whether solatium claims by "immediate family members" will be deemed "duplicative" and not viable under state law.  *See* fn. 8 above and MPA at 17.

67.     It is significant that the phrase "immediate family member" is not found or defined within the text of the FSIA itself (or applicable state law).  Instead, the individuals deemed eligible to recover wrongful death damages and the scope of who qualifies as an "immediate family member" has been established and defined through *judicial interpretation* in this and other FSIA cases, *i.e.*, through a creation of federal common law in violation of § 1606 using the Restatement of Tort principles suggested in IIED cases instead of an examination of applicable state law. Ultimately, while the term is not in the FSIA's text: both case law and related federal programs[9] began to use the term, without proper statutory or precedential authority, to describe who may recover damages for death and solatium claims under the FSIA terrorist exception provided by § 1605A.

---

[9]     The USVSST Fund, which operates based wholly on compensatory judgments from FSIA lawsuits, rightly or wrongly, now uses guidelines informed by these court decisions to define "immediate family member" for the purpose of distributing compensation.  This definition from the USVSST Fund specifically now includes spouses, domestic partners, children, stepchildren, parents, stepparents, brothers, sisters, half-brothers, and half-sisters.  The within Plaintiffs contend that this Court's misapplication of the FSIA (its disregard of § 1606, Supreme Court and Second Circuit precedent, and the need to apply state law) has resulted in the USVSST Fund wrongly awarding death and solatium damages to individuals not authorized by traditional tort law to receive such awards.

68.     I have personally reviewed the papers filed by the PEC and other law firms in this litigation as to Iran's liability and I can affirm that these firms have not made this Court aware of § 1606 and the applicability of state law (apparently not once).  More specifically, the PEC has not advised this Court that the PEC's interpretation of the FSIA cause of action was and is in direct conflict with state wrongful death and IIED law (and against § 1606 and case law precedent).

69.     By creating new federal common law (*viz.*, independently determining who may recover and pursue FSIA personal injury and death damages) and extending the federal common law into an area where there is already "readymade" law, MPA at 17-18, the District Court here misread the FSIA and "bypass[ed] its design."  *Id*.  Section 1606 should not have been ignored.

70.     While § 1606 does not expressly require the application of state wrongful-death statutes and other state law, its functional effect is to incorporate those state wrongful death statutes and state law by requiring courts to treat foreign states like private parties.

71.     Legislative history, statutory structure, and decades of federal cases confirm that state wrongful-death law and other state law govern FSIA wrongful-death claims except where Congress has explicitly supplied a federal cause of action that explicitly preempts state law, which Congress has not yet done.  MPA at 18.

72.     This Court improperly applied a stand-alone FSIA cause of action and determined without appellate precedent who this Court believes should recover FSIA death and solatium damages.[10]  MPA at 18.

---

[10]     This Court's error in this regard must be corrected because two other foreign states (Defendants: the Kingdom of Saudi Arabia and the Republic of Sudan) remain viable, active defendants under an FSIA § 1605A cause of action in this litigation.  If nothing else, this Court should request that counsel for these two defendants weigh in on the applicability of § 1606 and state law as it affects the liability of these two defendants to hundreds of plaintiffs.

### B. Section 1605A Does Not Preempt State Wrongful Death Law

73.    The "uniform federal standard" that Magistrate Judge Maas claimed now exists because of § 1605A (MDL ECF #2618 at 5) was/is clearly incorrect because section 1605A cannot be viewed as a preemption of state law.  MPA at 19.

### C. Section 1605A Does Not Require a Uniform Wrongful Death Remedy

74.    This Court might claim that relying on the law of the state of the decedent's domicile will lead to different recoveries for each of the plaintiffs.  This is true, but there is nothing unusual or unfair about this result. It is not uncommon for courts to apply the substantive law of several different states in resolving mass tort cases.   MPA at 20-21.

75.    Each state will choose rules of liability and distribution that it thinks are best designed to protect the welfare of its citizens.  There is no injustice in a plaintiff finding himself or herself subject to the laws of his or her state of domicile.  And this precise task – the need to apply various state wrongful death statutes and state law to determine the value of 9/11 wrongful death claims – was repeatedly employed previously by the United States Department of Justice in determining the merit and value of individual family member wrongful death claims filed with the U.S. Victims Compensation Fund without any trouble whatsoever.  *See* https://www.justice.gov/archive/victimcompensation/distribution_plan_award.html#law ("The wrongful death law of the state of the victim's domicile generally governs the distribution of the economic loss portion of the [wrongful death] award.").

76.    Although this result might appear cumbersome, it is common for mass disaster tort cases outside of the FSIA to use the plaintiff's domicile as the rule of decision even though it follows that there will be varying results for the defendants.  MPA at 20-21.  Finally, the fact that

an examination of the law of the several states will be burdensome does not justify the displacement of the law of the several states with a single federal rule.  *Id.*

### D.    Federal Common Law Is Not Needed in Section 1605A Cases

77.    Federal common law should only be employed in the rarest of circumstances*.*  MPA at 21.  A court should craft a federal common law rule only in cases where there are both "uniquely federal interests" and a "significant conflict between some federal policy or interest and the use of state law."  *Id*.  That does not exist here.

78.    In sum, the desire for uniformity alone is not a sufficient reason to create federal common law, no other unique federal interest is implicated, and there is no significant conflict between some important federal policy or interest and the application of state law.

### E.    The District Court Improperly Granted Default Judgments to Plaintiffs Who Have Asserted Untimely Claims

79.    Untimely actions should be dismissed, and default judgments should certainly not be granted to plaintiffs asserting untimely claims against Iran, a foreign state.  Yet here, thousands of plaintiffs asserting untimely claims have been added belatedly to this litigation against Iran.

80.    As an example, many "Latent Injury" cases have been added to this litigation belatedly.  Upon information and belief, these Latent Injury actions have been commenced against Iran later than either (1) April 24, 2006, or (2) "10 years after the date on which the cause of action arose" (September 11, 2011).  28 U.S.C. § 1605A(b).  As an example, many of these Latent Injury actions were filed in 2020, long after the longer deadline, September 11, 2011 (see below).  Because each of these Latent Injury Plaintiffs did not file their "Short Form Complaints" until more than eight years after that deadline, none are timely under § 1605A(b):

*Mandelkow et al. v. Islamic Republic of Iran*, No. 20-cv-00315 -- Filed Jan. 14, 2020
*Alcabes et al. v. Islamic Republic of Iran*, No. 20-cv-00340 -- Filed Jan. 14, 2020
*Anderson et al. v. Islamic Republic of Iran*, No. 20-cv-00354 -- Filed Jan. 14, 2020

*Ahearn et al. v. Islamic Republic of Iran*, No. 20-cv-00355-- Filed Jan. 14, 2020
*Asciutto et al. v. Islamic Republic of Iran*, No. 20-cv-00411-- Filed Jan. 15, 2020
*Amin et al. v. Islamic Republic of Iran*, No. 20-cv-00412-- Filed Jan. 15, 2020
*Basci et al. v. Islamic Republic of Iran*, No. 20-cv-00415-- Filed Jan. 15, 2020.

81.     Despite being untimely, these plaintiffs were granted default judgments improperly by this Court in violation of the FSIA statute of limitations and Second Circuit precedent.  MDL ECF ## 8901 and 8920.

82.     When the undersigned attorney objected to a ruling on this issue (MDL ECF #9257), this Court held that it had the discretion to not enforce the statute of limitations because the latter is an affirmative defense that Iran, a party in default, had failed to plead.  MDL ECF #8901.  This is not a correct reading of the law.

83.     The Second Circuit has repeatedly held that courts may dismiss claims *sua sponte* on statute-of-limitations grounds where the defect is apparent from the pleadings.  MPA at 23-24. This authority applies with greater force in FSIA cases, where *§ 1608(e) affirmatively conditions entry of default judgment on the plaintiff's establishment of a "right to relief."*  A time-barred claim cannot satisfy that statutory requirement.  *Id*. at 24.

84.     The Second Circuit has held that this provision "mirrors the standard for entry of default judgments against the United States" and requires courts to "exercise great caution."  *See First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda–Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989).  MPA at 11-12.  "Congress promulgated Sec. 1608(e) to provide foreign sovereigns with the same protections from default judgments that the federal government enjoys under Fed. R. Civ. P. 55(e)."[11]  *Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994) (citation omitted).  *Id*.  Here, this Court failed to apply the latter standard (*see* fn. 11 below).

---

[11]     The Supreme Court has long held that statutes of limitations applicable to suits against the United States define the extent of the court's jurisdiction.  *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979). Failure to file within the prescribed period deprives the court of jurisdiction and requires dismissal.  *Soriano*

85.    District courts may not presume timeliness merely because the foreign state has not appeared.  To the contrary, § 1608(e) requires the court to determine affirmatively that the claim is timely.  Second Circuit precedent, read together with the mandatory language of 28 U.S.C. § 1608(e), and the precedent cited in footnote 11 and the above paragraph, requires a district court to deny an application for a default judgment against a foreign state where the claims are barred by the statute of limitations, even if the foreign state does not appear or assert that defense.  MPA at 23-24.

86.    While there is contrary D.C. Circuit precedent, it is not binding and it is distinguishable.  *See Maalouf v. Republic of Iran*, 923 F.3d 1095, 1114 (D.C. Cir. 2019), where the court held that a district court may not raise a statute of limitations defense *sua sponte* against a defendant in default.  *Maalouf* addressed only whether a district court may assert a limitations defense on behalf of a defaulting sovereign *sua sponte*.  It did not hold that an untimely § 1605A claim satisfies § 1608(e); it did not address a court's independent duty to ensure that statutory prerequisites to liability are met before entering judgment; it did not address what should be done with valid objections by other plaintiffs being affected by untimely lawsuits.  Of great significance, the Circuit Court in *Maaloouf* acknowledged that it could not recognize an argument made by plaintiffs with timely claims, who alleged an adverse interest to that of untimely plaintiffs – since the recoveries of timely-filed plaintiffs were allegedly diluted in the USVSST Fund by the untimely claimants – "because the Fund was not addressed by the District Courts. We therefore have no record on which to assess the accuracy or import of the parties' claims."  MPA at 24.  Here

---

*v. United States*, 352 U.S. 270, 276 (1957). The Second Circuit has consistently adhered to this principle. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).  MPA at 11-12. If foreign states are entitled to the same protections, then timeliness is jurisdictional for foreign states as well.

we have such a record as the impact of never-ending litigation and its devastating effect on USVSST awards has been made in this Court.  MDL ECF #8961.

87.    In sum, before entering a default judgment against a foreign state, a district court in the Second Circuit must independently determine that jurisdiction exists, service was proper, claims are timely, liability is established by satisfactory evidence, and damages are legally authorized and supported. A failure to conduct this analysis constitutes reversible error.

**IV.    Why Should a Waiver of Punitive Damage Awards Now Entitle the Within Plaintiffs to Final Judgments Against Iran?**

88.    The only remaining issue as to Iran's liability in this litigation concerns what punitive damage awards, if any, should be granted to the Plaintiffs herein in requesting Final Judgments.

89.    As seen above, the Court has yet to resolve the "overhang" resulting from its punitive damages decision in *Hoglan, et al. v. Islamic Republic of Iran*, 11-cv-7550 (GBD)(FM).

90.    Will the Court now issue Final Judgments to the *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs based on their previous punitive damage awards?

91.    On June 19, 2024, the undersigned attorney filed an application for Final Judgments against Iran on behalf of the *Ashton-Burlingame* Plaintiffs requesting an award of punitive damages and prejudgment interest to complement the compensatory damages previously awarded to them and achieve some resolution on the issue of punitive damages.  MDL ECF #9949.

92.    After the Court received requested input from the PEC – who requested that the punitive damages issue as to Iran be "deferred" once more (MDL ECF #10422) – on October 29, 2024, Magistrate Judge Netburn denied the *Ashton-Burlingame* Plaintiffs' request for briefing and a hearing on the punitive damage claims against Iran, leaving the claims asserted against Iran

incomplete and unresolved with no future date set for briefing or hearings. MDL ECF #10470 ("The Court declines to set a briefing schedule on this issue at this time.").

93.     More than a year has now passed since the punitive damages issue was "pushed off" and it appears neither the PEC, nor the Court, are willing to bring the claims against Iran to any immediate end.

94.     Since the *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs herein desire a complete and Final Judgment against Iran to have certain rulings of the Court reviewed by the Second Circuit, these Plaintiffs request that this Court either: (a) affirm the prior Order of the Court granting $6.88 million to each of the Estates herein, issue an Order granting the entry of Final Judgments for these Plaintiffs, and certify these Judgments as Final pursuant to FRCP 55(c), or (b) if the past punitive damage awards are not honored, the Court should accept the conditional waiver of punitive damage claims by these Plaintiffs, order the entry of Final Judgments for these Plaintiffs, and certify their Judgments as Final pursuant to FRCP 55(b).

95.     The Court should acknowledge the sacrifice and risk the Plaintiffs herein are undertaking to waive their punitive damage claims – it is a strong signal how important a Final Judgment and appeal are to these Plaintiffs.

96.     This Court, having now either (a) affirmed the prior punitive damage awards of $6.88 million to each Estate herein, or (b) accepted Plaintiffs' conditional waiver of their punitive damage claims against Iran, should issue an Order immediately that provides a final disposition to these Plaintiffs, since there are no longer any unresolved issues as to Iran's liability to the Plaintiffs named herein and there is no longer any just reason for delay.

## V.    Plaintiffs Request That This Court Certify Its Order as Final Under FRCP 54(b)

97.    Rule 54(b) of the Federal Rules of Civil Procedure authorizes entry of a Final Judgment as to fewer than all claims or parties when the district court "expressly determines that there is no just reason for delay."  MPA at 25.

98.    The Order now requested by the *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs should be certified as a Final Judgment because it will fully dispose of the rights and liabilities of at least one party (Iran) and an immediate appeal will serve the interests of sound judicial administration and fairness to the litigants for the reasons set forth below.  *Final* here means it will end the litigation on the merits for that claim or party (Iran) as against the within Plaintiffs, leaving nothing for this Court to do but execute the judgment.

99.    The purpose of Rule 54(b) is to avoid injustice in multi-claim actions where a Final Judgment on a separate claim must otherwise await the end of the entire case.  Here, delaying the appeal sought by the within Plaintiffs would cause these Plaintiffs unnecessary hardship, injustice, or prejudice (*e.g.*, extreme delay) for the reasons set forth above.

100.    Prompt entry of judgment is essential for ensuring appellate rights, finality, and efficient judicial administration. The Second Circuit, Supreme Court, and Federal Rules require that judgment be documented and entered swiftly following a dispositive order.

101.    It is for this reason, this Court now has two options: (1) it can reconsider and reverse its prior wrongful rulings as to Iran, or (2) it can immediately issue an Order that provides: (a) for the entry of the Final Judgment requested by the moving Plaintiffs and (b) certifies the Order for appeal pursuant to Fed. R. Civ. P. 54(b).  Any other result will continue to inflict delay, hardship and injury upon the within Plaintiffs.

102.    This Court has previously ordered that a Final Judgment against Iran should present a proposed order with a rate of prejudgment interest of 4.96 per annum, compounded annually.  *See* 03-md-1570 (S.D.N.Y.) (GBD)(SN), Doc. No. 3362, entered 10/14/2016. Although this Court also previously entered an Order providing for an award of prejudgment interest at "9% per annum from September 11, 2001 until today" for the Plaintiffs herein (MDL ECF #3226), these Plaintiffs will accept this Court's more recent Order (MDL ECF #3362) that prejudgment interest should be awarded at the rate of "4.96% per annum, compounded annually."  The form of the proposed Order submitted simultaneously herewith therefore conforms to the Court's latter Order.

103.    Accordingly, I respectfully request that this Court grant the Proposed Order submitted simultaneously herewith and that the Clerk of the Court be instructed to prepare Final Judgments against Iran for the Plaintiffs herein with a calculation of appropriate prejudgment interest.

Dated:  January 29, 2026
       New York, New York

LAW OFFICE OF JOHN F. SCHUTTY, P.C.

By: /s/ *John F. Schutty*
        John F. Schutty (JS2173)
        445 Park Avenue, 9th Floor
        New York, New York 10022
        Tel: (646) 345-1441

- 33 -