# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEE
# FOR PERSONAL INJURY AND DEATH CLAIMS
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

Ronald L. Motley (1944-2013)
Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*
MOTLEY RICE LLC

Robert T. Haefele, *Co-Liaison Counsel*
MOTLEY RICE LLC

**VIA ECF**

February 5, 2026

The Honorable George B. Daniels, U.S.D.J.
United States District Court for the S.D.N.Y.
Daniel P. Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn, U.S.M.J.
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Daniels and Judge Netburn:

The Plaintiffs' Executive Committee for Personal Injury and Death Claims ("PEC"),[1] and the undersigned counsel for the *Ashton, Burlingame, Burnett*, and *O'Neill* plaintiffs with partial final judgments entered in this multidistrict litigation, write pursuant to the Court's direction at ECF No. 11659[2] and in response to two recently filed letters from the Law Office of John F. Schutty, P.C. *See* ECF Nos. 11602, 11660. In the Court's February 2, 2026 endorsement (ECF No. 11659), the Court directed the PEC to file a response to Mr. Schutty's letter to address whether the Clerk of the Court may certify for registration in another judicial district the plaintiffs' partial final judgments against Iran.

In his letters, Mr. Schutty claims that all Partial Final Judgments the Court has entered for years against the Islamic Republic of Iran ("Iran") in this MDL are not sufficiently final to enforce against Iranian assets.[3] For the reasons identified below, the PEC responds that the Clerk of the Court may certify for registration in another judicial district the plaintiffs' partial final judgments against Iran and assert that partial final judgments the Court has entered in this MDL are currently enforceable against Iranian assets. However, if the Court has any concern that the partial final judgments the Court

---

[1] The PEC understands that Sean Carter, chair of the Plaintiffs' Executive Committee for Commercial Claims, is filing a separate letter addressing issues specific to that Committee's constituents.

[2] ECF Numbers refer to the MDL docket *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN) unless otherwise noted.

[3] The PEC also notes that Mr. Schutty has no standing to offensively attack the claims of other plaintiffs within these MDL proceedings. This Court has previously described such tactics as "cross-border raids." *See* Nov. 18, 2022 Hrg. Tr. at 6. The PEC has previously argued that federal courts are limited in authority to addressing "only actual cases and controversies." *Lee v. Bd. of Governors of the Fed. Res. Sys.*, 118 F.3d 905, 910 (2d Cir. 1997). Such controversies must "touch[] the legal relations of parties having *adverse* legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (emphasis added); *see also S. Jackson & Son v. Coffee, Sugar & Cocoa Exch.*, 24 F.3d 427, 431 (2d Cir. 1994) (same). Mr. Schutty lacks the standing to raise these issues because he fails to establish "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016). Mr. Schutty cannot state any injury in fact to his clients or a connection between the conduct of other plaintiffs' counsel and the alleged injury. Therefore, separate and apart from the other points raised herein, Mr. Schutty lacks standing to even raise these challenges.

has entered are not sufficiently final, the PEC proposes that the Court address this circumstance by specifically certifying the judgments as final, under Fed. R. Civ. P. 54(b), *nunc pro tunc* to the date of the original partial final judgments.

A.  Plaintiffs' Partial Final Judgments Against Iran Are Final and Enforceable.

Mr. Schutty's letters claim that, because plaintiffs' judgments against Iran award only compensatory damages against Iran, plaintiffs cannot enforce those judgments—specifically and intentionally denominated as final—while punitive damages calculations remain outstanding and because the judgments, he contends, cannot be certified under Rule 54(b).[4] While case law in some contexts have required a punitive damages determination and 54(b) certification before enforcement proceedings can commence, this case is atypical, and multiple independent grounds exist for proceeding with judgment enforcement on the existing partial final judgments.

*First*, the Clerk's office has already certified at least one partial final judgment entered in this MDL to allow for enforcement proceedings in other jurisdictions, *see* ECF No. 9662 (and corresponding docket entry later that same day indicating the certification was "issued"). This Clerk's certification was made to the partial final judgment issued in *Hoglan v. Islamic Republic of Iran*, 11-cv-07550. In that instance, as is so in the cases Mr. Schutty has questioned (including multiple cases where Mr. Schutty was counsel to the plaintiffs), the Court entered judgments specifically and intentionally identified as final while the *Hoglan* plaintiffs continued to assert their punitive damages claims, though the Court denied their request for such damages without prejudice to claim them later. The Court should not now hold the rest of the 9/11 community with comparable judgments to a different standard.

*Second*, under 28 U.S.C. § 1963, the Court can authorize registration of judgments in another district for judgment enforcement when the judgment has become final "or when *ordered by the court that entered the judgment for good cause shown*." *See, e.g., Lyman Com. Sols., Inc. v. Lung*, No. 12-cv-4398 TPG, 2015 WL 5097646, at *1 (S.D.N.Y. Aug. 28, 2015); *HSH Nordbank AG New York Branch v. Swerdlow*, No. 08-cv-6131 (DLC), 2010 WL 1957265, at *1-2 (S.D.N.Y. May 14, 2010). Plaintiffs submit that even if their partial final judgments awarding compensatory damages against Iran are not sufficiently final for judgment registration absent a court order, the Court could still allow for such judgment registration and enforcement for good cause shown, a standard which is readily met here.

*Third*, the Terrorism Risk Insurance Act ("TRIA"), allows for enforcement of plaintiffs' compensatory damages judgments. Pub. L. No. 107-297, § 201(a), 116 Stat. 2337 (Nov. 26, 2002), codified at 28 U.S.C. § 1610 Note. TRIA is designed "to deal comprehensively" with the "enforcement difficulties" terrorism victims experienced by making it easier for victims to "satisfy [their] judgments." 148 Cong. Rec. H8728 (Nov. 13, 2002). It states that assets of a state sponsor of terrorism (e.g., Iran) "*[n]otwithstanding any other provision of law* . . . shall be subject to execution or attachment in aid of execution in order to satisfy such judgment *to the extent of any compensatory damages* for which such terrorist party has been adjudged liable." TRIA § 201(a) (emphasis added). Here, plaintiffs possess compensatory-damages judgments against Iran and seek to enforce those judgments under TRIA.

---

[4] Mr. Schutty's concerns would also appear to encompass 9/11 estate claims where only non-economic damages have been awarded but not economic damages, or to a lesser extent, in every case in the MDL where there is more than one defendant named in the operative complaint or where one or more plaintiffs have not moved for judgment, or where more than one claim has been asserted, other than the one under which the Court entered judgment.

Even if case law applying Rule 54(b) would otherwise require a finding of punitive damages, for purposes of judgment enforcement, TRIA by its terms, allows for judgment enforcement of compensatory damages "[n]otwithstanding any other provision of law," including any technical requirements of Rule 54(b).[5]

*Fourth*, Mr. Schutty improperly limits his analysis to federal law, but under Fed. R. Civ. P. 64(a) and 69(a), state law (in this case New York) governs both attachment and execution on property proceedings. Under New York law, "interlocutory" judgments and "money" judgments which includes compensatory damages judgments, even when punitive damages awards remain outstanding, are enforceable in the same way as final judgments. Specifically, the C.P.L.R. defines "judgment" to include "a final or interlocutory judgment," C.P.L.R. 105(k), and further defines "money judgment" to mean "a judgment, or any part thereof, for a sum of money or directing the payment of a sum of money." C.P.L.R. 105(q). New York law further reiterates this point that "[a] judgment is the determination of the rights of the parties in an action or special proceeding and may be either interlocutory or final." C.P.L.R. 5011. It further states that a court "may direct judgment *upon a part of a cause of action* or upon one or more causes of action as to one or more parties." C.P.L.R. 5012. New York law notes that "entry of judgment" may be done through a "[j]udgment upon the decision of a court or a referee" which "shall be entered by the clerk as directed therein." C.P.L.R. 5016(c). And under New York law, a party can enforce these judgments consistent with Articles 51 and 52 of the C.P.L.R. *See, e.g.*, C.P.L.R. 5101 ("A money judgment and an order directing the payment of money, including motion costs, may be enforced as prescribed in article fifty-two.")

Here, plaintiffs' partial final judgments meet the definition of judgment and money judgment under New York law, even if the judgment did not resolve an entire claim. *See* C.P.L.R. 105; 5011; 5012. Mr. Schutty contends that Fed. R. Civ. P. 54(b) does not allow for enforcement of partial final judgments where certain damage amounts remain outstanding. But Fed R. Civ. P. 64(a) and 69(a) provide the answer. They state that state law governs proceedings to seize or secure property and to post-judgment enforcement of money judgments, with the only exception being where "a federal statute governs to the extent it applies". Fed. R. Civ. P. 54(b) is not a federal statute and therefore cannot be grounds to short circuit judgment enforcement proceedings under New York law, especially given the other above considerations. *See* 28 U.S.C. § 2072 (delegating rulemaking authority to the U.S. Supreme Court to establish rules of procedure in federal courts).

*Fifth*, Mr. Schutty ignores the abnormal procedural posture of these cases. The Iran defendants have defaulted in all of these cases. The purpose of Rule 54(b) in the context of enforcement of judgments is to allow a defendant to pursue its appellate rights without the need to fight enforcement proceedings that might be overturned on appeal. In most cases, the defendant must post a supersedeas bond to avoid enforcement of a judgment pending an appeal. In this case, the level of protection afforded to the Iran defendants' rights to appeal is *de minimis* given the Iran defendants' failure to appear and defend themselves in this Court—especially dating back to 2011 when the first default judgment as to liability was entered against Iran in this MDL. That there are outstanding elements of damages that may in the future be awarded to certain plaintiffs should not preclude them from seeking

---

[5] Separately, the inclusion of a punitive-damages component in the final judgments is immaterial for purposes of plaintiffs' efforts to attach and execute on assets pursuant to TRIA because TRIA explicitly limits such attachment and execution efforts "to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." TRIA § 201(a).

to enforce those judgments already entered elsewhere around the country where possible. As the Court is aware, Iranian assets—including those subject to attachment and execution pursuant to TRIA—are limited, and plaintiffs within this MDL (and the Court) have moved expeditiously to obtain judgments through which they may seek enforcement: whether through the U.S. Victims of State Sponsored Terrorism Fund or through attachment and execution proceedings authorized pursuant to TRIA. Therefore, under the particular circumstances of these proceedings, there is no just reason for delay in permitting plaintiffs with judgments—partial or otherwise—to seek attachment and enforcement in fulfillment of their current judgments pursuant to TRIA.

Alternatively, even if the Court is concerned that the partial final judgments are not sufficiently final for enforcement proceedings under New York state law, the Court (or perhaps more appropriately the Eastern District court) could still authorize use of C.P.L.R. 5229 to restrain assets pending entry of final judgments, similar to an attachment pending entry of judgment, a procedure readily available under Fed. R. Civ. P. 64(a). *See Sequa Cap. Corp. v. Nave*, 921 F. Supp. 1072, 1076 (S.D.N.Y. 1996) (Scheindlin, J.) (authorizing use of C.P.L.R. 5229 to restrain assets pending entry of judgment).

B.  If the Court Determines that the Partial Final Judgments Are Not Sufficiently Final Absent a Rule 54(b) Certification, the Court Should Enter a *Nunc Pro Tunc* Order Confirming, Under the Terms of Rule 54(b), that the Partial Final Judgments Were Final the Day the Court Entered Them.

Alternatively, if the Court determines the circumstances require specific certification of the judgments under 54(b), Plaintiffs propose the Court do so *nunc pro tunc* to the date of each judgment, under terms to specifically satisfy Rule 54(b). As detailed in *Loc. P-171, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Thompson Farms Co.*, 642 F.2d 1065, 1069 (7th Cir. 1981), this procedure can be used, especially to prevent prejudice and conform to the understanding of the parties at the time of entry. Here, there is little doubt that the parties and the Court all understood the orders to be entered as "final judgments," as they were intentionally labeled and universally understood and treated—by all plaintiffs' counsel, by the Court, and by the U.S. Victims of State Sponsored Terrorism Fund ("USVSST"). Prior to various USVSST Fund ("the Fund") deadlines, and in other correspondence, counsel informed the Court of the need to quickly enter *final* compensatory damages judgments to allow for widespread plaintiff participation in the Fund, and the Court acknowledged same. *See, e.g.*, ECF Nos. 4139, 4140, 5300, 5315, 5338, 5898, 8160, 8203, 8204, 8208, 8219, 9744, 9745, 9982, 10221, 10224, 10229, 10249, 10351, 10395, 10465, 10845, 10847, 10960, 10961. Due to the Court's herculean efforts, over twelve thousand 9/11 victims and their families were able to participate in the Fund, and the Fund recognized these partial final compensatory damages judgments as final.

Of course, the parties would not have sought, obtained, and served non-final judgments that the Fund could have (but did not) reject or that could not be used for other judgment enforcement purposes, such as enforcement under TRIA. And presumably, for the same reasons, the Court would not have expended precious time reviewing and entering non-final judgments. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD) (SN), 2025 WL 1642888, at *4 (S.D.N.Y. June 10, 2025) (plaintiffs "not prejudiced" by entry of compensatory damages judgments only). Accordingly, the PEC and the undersigned counsel request *nunc pro tunc* 54(b) certifications of the judgments previously

entered to conform to the understanding of the parties (including Mr. Schutty, whose clients also have partial final judgments and have been determined to be eligible claimants before the VSST Fund premised on what were understood to be final judgments) and the Court when the judgments were entered.

Finally, if the Court is reluctant to enter *nunc pro tunc* 54(b) certifications while the Court continues to consider the punitive damages issues arising out of plaintiffs' 28 U.S.C. § 1605A claims, it could do with the *nunc pro tunc* 54(b) certifications what it did previously in *Hoglan* and deny the outstanding motions for punitive damages without prejudice (and thus allowing plaintiffs to renew punitive damages claims at a later time).

We thank the Court for its attention to this matter.

Respectfully submitted,

| MOTLEY RICE LLC | SPEISER KRAUSE, P.C. |
|---|---|
| By: /s/ Robert T. Haefele<br>Robert T. Haefele<br>28 Bridgeside Boulevard<br>Mount Pleasant, SC 29465<br>Telephone: (843) 216-9184<br>Email: rhaefele@motleyrice.com<br><br>*For the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Burnett Plaintiffs* | /s/ Jeanne M. O'Grady<br>Jeanne M. O'Grady, Esq.<br>800 Westchester Avenue, Suite S-608<br>Rye Brook, New York 10573<br>jog@speiserkrause.com<br>Tel.: (914) 220-5333<br>Fax: (914) 220-5334<br><br>*For the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Burlingame Plaintiffs* |
| ANDERSON KILL P.C. | KREINDLER & KREINDLER LLP |
| By: /s/ Jerry S. Goldman<br>Jerry S. Goldman, Esq.<br>Bruce Strong, Esq.<br>7 Times Square, 15th Floor<br>New York, NY 10036<br>Telephone: (212) 278-1000<br>jgoldman@andersonkill.com<br>bstrong@andersonkill.com<br><br>*For the Plaintiffs' Executive Committee for Personal Injury and Death Claims and on behalf of the O'Neill Plaintiffs* | By: /s/ Megan Wolfe Benett<br>Megan Wolfe Benett, Esq.<br>485 Lexington Ave<br>New York, NY 10017<br>Tel.: (212) 973-3438<br>Fax: (212) 972-9432<br>mbenett@kreindler.com<br><br>*Ob behalf of the Ashton Plaintiffs* |

cc:     All Counsel of Record via ECF

DOCS-100883926.4