# EXHIBIT 10

**34 USC 20144: Justice for United States victims of state sponsored terrorism**
Text contains those laws in effect on May 16, 2023

**From Title 34-CRIME CONTROL AND LAW ENFORCEMENT**
    Subtitle II-Protection of Children and Other Persons
    CHAPTER 201-VICTIM RIGHTS, COMPENSATION, AND ASSISTANCE
    SUBCHAPTER III-ADDITIONAL VICTIM COMPENSATION AND SERVICES
**Jump To:**
    **Source Credit**
    **Miscellaneous**
    **References In Text**
    **Codification**
    **Amendments**
    **Effective Date**

## §20144. Justice for United States victims of state sponsored terrorism

**(a) Short title**

This section may be cited as the "Justice for United States Victims of State Sponsored Terrorism Act".

**(b) Administration of the United States Victims of State Sponsored Terrorism Fund**

**(1) Administration of the Fund**

**(A) Appointment and terms of Special Master**

**(i) Initial appointment**

Not later than 60 days after December 18, 2015, the Attorney General shall appoint a Special Master. The initial term for the Special Master shall be 18 months.

**(ii) Additional terms**

Thereafter, each time there exists funds in excess of $100,000,000 in the Fund, the Attorney General shall appoint or reappoint a Special Master for such period as is appropriate, not to exceed 1 year. In addition, if there exists in the Fund funds that are less than $100,000,000, the Attorney General may appoint or reappoint a Special Master each time the Attorney General determines there are sufficient funds available in the Fund to compensate eligible claimants, for such period as is appropriate, not to exceed 1 year.

**(iii) Special Master to administer compensation from the Fund**

The Special Master shall administer the compensation program described in this section for United States persons who are victims of state sponsored terrorism.

**(B) Administrative costs and use of Department of Justice personnel**

The Special Master may utilize, as necessary, no more than 5 full-time equivalent Department of Justice personnel to assist in carrying out the duties of the Special Master under this section, except that, during the 1-year period beginning on November 21, 2019, the Special Master may utilize an additional 5 full-time equivalent Department of Justice personnel. Any costs associated with the use of such personnel, and any other administrative costs of carrying out this section, shall be paid from the Fund and during the 1-year period beginning on December 29, 2022, the Special Master may utilize an additional 5 full-time equivalent Department of Justice personnel.

**(C) Compensation of Special Master**

The Special Master shall be compensated from the Fund at a rate not to exceed the annual rate of basic pay for level IV of the Executive Schedule, as prescribed by section 5315 of title 5.

**(2) Publication of regulations and procedures**

**(A) In general**

Not later than 60 days after the date of the initial appointment of the Special Master, the Special Master shall publish in the Federal Register and on a website maintained by the Department of Justice a notice specifying the procedures necessary for United States persons to apply and establish eligibility for payment, including procedures by which eligible United States persons may apply by and through their attorney. Not later than 30 days after the date of enactment of the United States Victims of State Sponsored Terrorism Fund Clarification Act, the Special Master shall update, as necessary as a result of the enactment of such Act, such procedures and other guidance previously issued by the Special Master. Not later than 30 days after the date of enactment of the Fairness for 9/11 Families Act, the Special Master shall update, as necessary as a result of the enactment of such

Act, such procedures and other guidance previously issued by the Special Master. Such notice and any updates to that notice or other guidance are not subject to the requirements of section 553 of title 5.

**(B) Information regarding other sources of compensation**

As part of the procedures for United States persons to apply and establish eligibility for payment, the Special Master shall require applicants to provide the Special Master with information regarding compensation from any source other than this Fund that the claimant (or, in the case of a personal representative, the victim's beneficiaries) has received or is entitled or scheduled to receive as a result of the act of international terrorism that gave rise to a claimant's final judgment, including information identifying the amount, nature, and source of such compensation.

**(3) Decisions of the Special Master**

All decisions made by the Special Master with regard to compensation from the Fund shall be-
(A) in writing and provided to the Attorney General, each claimant and, if applicable, the attorney for each claimant; and
(B) final and, except as provided in paragraph (4), not subject to administrative or judicial review.

**(4) Review hearing**

(A) Not later than 30 days after receipt of a written decision by the Special Master, a claimant whose claim is denied in whole or in part by the Special Master may request a hearing before the Special Master pursuant to procedures established by the Special Master.
(B) Not later than 90 days after any such hearing, the Special Master shall issue a final written decision affirming or amending the original decision. The written decision is final and nonreviewable.

**(c) Eligible claims**

**(1) In general**

For the purposes of this section, a claim is an eligible claim if the Special Master determines that-
(A) the judgment holder, or claimant, is a United States person;
(B) the claim is described in paragraph (2); and
(C) the requirements of paragraph (3) are met.

**(2) Certain claims**

The claims referred to in paragraph (1) are claims for-
(A) compensatory damages awarded to a United States person in a final judgment-
(i) issued by a United States district court under State or Federal law against a foreign state that was designated as a state sponsor of terrorism at the time the acts described in clause (ii) occurred or was so designated as a result of such acts; and
(ii) arising from acts of international terrorism, for which the foreign state was determined not to be immune from the jurisdiction of the courts of the United States under section 1605A, or section 1605(a)(7) (as such section was in effect on January 27, 2008), of title 28;

(B) the sum total of $10,000 per day for each day that a United States person was taken and held hostage from the United States embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981; or
(C) damages for the spouses and children of the former hostages described in subparagraph (B), if such spouse or child is identified as a member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States Court for the District of Columbia, in the following amounts:
(i) For each spouse of a former hostage identified as a member of the proposed class described in this subparagraph, a $600,000 lump sum.
(ii) For each child of a former hostage identified as a member of the proposed class described in this subparagraph, a $600,000 lump sum.

**(3) Deadline for application submission**

**(A) In general**

The deadline for submitting an application for a payment under this subsection is as follows:
(i) Not later than 90 days after the date of the publication required under subsection (b)(2)(A), with regard to an application based on-
(I) a final judgment described in paragraph (2)(A) obtained before that date of publication; or
(II) a claim described in paragraph (2)(B) or (2)(C), except that any United States person with an eligible claim described in paragraph (2)(B) who did not have an eligible claim before November 21, 2019, shall have 90 days from November 21, 2019, to submit an application for payment.

(ii) Not later than 90 days after the date of obtaining a final judgment, with regard to a final judgment obtained on or after the date of that publication, unless-
(I) the final judgment was awarded to a 9/11 victim, 9/11 spouse, or 9/11 dependent before November 21, 2019, in which case such United States person shall have 90 days from the date of enactment of such Act to

submit an application for payment; or

 (II) the final judgment was awarded to a 1983 Beirut barracks bombing victim or a 1996 Khobar Towers bombing victim before December 29, 2022, in which case such United States person shall have 180 days from December 29, 2022, to submit an application for payment.

### (B) Good cause

For good cause shown, the Special Master may grant a claimant a reasonable extension of a deadline under this paragraph.

## (d) Payments

### (1) To whom made

The Special Master shall order payment from the Fund for each eligible claim of a United States person to that person or, if that person is deceased, to the personal representative of the estate of that person.

### (2) Timing of initial payments

The Special Master shall authorize all initial payments to satisfy eligible claims under this section not later than 1 year after December 18, 2015.

### (3) Payments to be made pro rata

#### (A) In general

##### (i) Pro rata basis

Except as provided in subparagraph (B) and subject to the limitations described in clause (ii), the Special Master shall carry out paragraph (1), by-

 (I) dividing all available funds in half and allocating 50 percent of the available funds to non-9/11 related victims of state sponsored terrorism and the remaining 50 percent of the available funds to 9/11 related victims of state sponsored terrorism;

 (II) further dividing the funds allocated to non-9/11 related victims of state sponsored terrorism on a pro rata basis, based on the amounts outstanding and unpaid on eligible claims, until such amounts have been paid in full or the Fund is closed; and

 (III) further dividing the funds allocated to 9/11 related victims of state sponsored terrorism on a pro rata basis, based on the amounts outstanding and unpaid on eligible claims, until such amounts have been paid in full or the Fund is closed.

##### (ii) Limitations

The limitations described in this clause are as follows:

 (I) In the event that a United States person has an eligible claim that exceeds $20,000,000, the Special Master shall treat that claim as if it were for $20,000,000 for purposes of this section.

 (II) In the event that a non-9/11 related victim of state sponsored terrorism and the immediate family members of such person have claims that if aggregated would exceed $35,000,000, the Special Master shall, for purposes of this section, reduce such claims on a pro rata basis such that in the aggregate such claims do not exceed $35,000,000.

 (III) In the event that a 9/11 victim, 9/11 spouse, or 9/11 dependent and the immediate family members of such person (who are also 9/11 victims, 9/11 spouses, or 9/11 dependents) have claims that if aggregated would exceed $35,000,000, the Special Master shall, for purposes of this section, reduce such claims on a pro rata basis such that in the aggregate such claims do not exceed $35,000,000.

 (IV) In the event that a 9/11 family member and the family members of such person (who are also 9/11 family members) have claims that if aggregated would exceed $20,000,000, the Special Master shall, for purposes of this section, reduce such claims on a pro rata basis such that in the aggregate such claims do not exceed $20,000,000.

#### (B) Minimum payments

(i) Any applicant with an eligible claim described in subsection (c)(2) who has received, or is entitled or scheduled to receive, any payment that is equal to, or in excess of, 30 percent of the total compensatory damages owed to such applicant on the applicant's claim from any source other than this Fund shall not receive any payment from the Fund until such time as all other eligible applicants have received from the Fund an amount equal to 30 percent of the compensatory damages awarded to those applicants pursuant to their final judgments or to claims under subsection (c)(2)(B) or (c)(2)(C). For purposes of calculating the pro rata amounts for these payments, the Special Master shall not include the total compensatory damages for applicants excluded from payment by this subparagraph.

(ii) To the extent that an applicant with an eligible claim has received less than 30 percent of the compensatory damages owed that applicant under a final judgment or claim described in subsection (c)(2) from any source other than this Fund, such applicant may apply to the Special Master for the difference between the percentage of compensatory damages the applicant has received from other sources and the percentage of compensatory damages to be awarded other eligible applicants from the Fund.

(iii) For the purposes of clause (i), the calculation of the total compensatory damages received or entitled or scheduled to be received by an applicant who is a 1983 Beirut barracks bombing victim or a 1996 Khobar Towers bombing victim from any source other than the Fund shall include the total amount received by the applicant as a result of or in connection with the proceedings captioned Peterson v. Islamic Republic of Iran, No. 10 Vic. 4518 (S.D.N.Y.), or the proceedings captioned In Re 650 Fifth Avenue & Related Properties, No. 08 Civ. 10934 (S.D.N.Y. filed Dec. 17, 2008), such that any such applicant who has received or is entitled or scheduled to receive 30 percent or more of such applicant's compensatory damages judgment as a result of or in connection with such proceedings shall not receive any payment from the Fund, except in accordance with the requirements of clause (i), or as part of a lump-sum catch-up payment in accordance with paragraph (4)(D).

### (4) Additional payments

#### (A) In general

Except as provided in subparagraphs (B), (C), and (D), on January 1 of the second calendar year that begins after the date of the initial payments described in paragraph (1) if funds are available in the Fund, the Special Master shall authorize additional payments on a pro rata basis to those claimants with eligible claims under subsection (c)(2) and shall authorize additional payments for eligible claims annually thereafter if funds are available in the Fund.

#### (B) Third round payments

The Special Master shall authorize third-round payments to satisfy eligible claims under this section not earlier than 90 days, and not later than 180 days, after November 21, 2019. The Special Master shall accept applications from eligible applicants (consistent with the deadlines for application submission prescribed in subsection (c)(3)) until the date that is 90 days after November 21, 2019.

#### (C) Lump sum catch-up payments for 9/11 victims, 9/11 spouses, and 9/11 dependents

##### (i) In general

Not later than 90 days after December 27, 2020, and in accordance with clauses (i) and (ii) of subsection (d)(3)(A), the Comptroller General of the United States shall conduct an audit and publish in the Federal Register a notice of proposed lump sum catch-up payments to 9/11 victims, 9/11 spouses, and 9/11 dependents who have submitted applications in accordance with subparagraph (B) in amounts that, after receiving the lump sum catch-up payments, would result in the percentage of the claims of 9/11 victims, 9/11 spouses, and 9/11 dependents received from the Fund being equal to the percentage of the claims of 9/11 family members received from the Fund, as of December 27, 2020.

##### (ii) Public comment

The Comptroller General shall provide an opportunity for public comment for a 30-day period beginning on the date on which the notice is published under clause (i).

##### (iii) Report

Not later than 30 days after the expiration comment period in clause (ii), the Comptroller General of the United States shall submit to the Committee on the Judiciary and the Committee on Appropriations of the Senate, the Committee on the Judiciary and the Committee on Appropriations of the House of Representatives, and the Special Master a report that includes the determination of the Comptroller General on-
(I) the amount of the lump sum catch-up payment for each 9/11 victim;
(II) the amount of the lump sum catch-up payment for each 9/11 spouse;
(III) the amount of the lump sum catch-up payment for each 9/11 dependent; and
(IV) the total amount of lump sum catch-up payments described in subclauses (I) through (III).

##### (iv) Authorization

###### (I) In general

The Special Master shall authorize lump sum catch-up payments in amounts equal to the amounts described in subclauses (I), (II), and (III) of clause (iii).

###### (II) Appropriations

####### (aa) In general

There are authorized to be appropriated and there are appropriated to the Fund such sums as are necessary to carry out this clause, to remain available until expended.

####### (bb) Limitation

Amounts appropriated pursuant to item (aa) may not be used for a purpose other than to make lump sum catch-up payments under this clause.

#### (D) Lump sum catch-up payments for 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims

##### (i) In general

Not later than 1 year after December 29, 2022, and in accordance with clauses (i) and (ii) of paragraph (3)(A), the Comptroller General of the United States shall conduct an audit and publish in the Federal Register a notice of proposed lump sum catch-up payments to the 1983 Beirut barracks bombing victims and the 1996 Khobar Towers bombing victims who have submitted applications in accordance with subsection (c)(3)(A)(ii)(II) on or after such date of enactment, in amounts that, after receiving the lump sum catch-up payments, would result in the percentage of the claims of such victims received from the Fund being equal to the percentage of the claims of non-9/11 victims of state sponsored terrorism received from the Fund, as of December 29, 2022.

### (ii) Public comment

The Comptroller General shall provide an opportunity for public comment for a 30-day period beginning on the date on which the notice is published under clause (i).

### (iii) Report

Not later than 30 days after the expiration of the comment period in clause (ii), the Comptroller General of the United States shall submit to the Committee on the Judiciary and the Committee on Appropriations of the Senate, the Committee on the Judiciary and the Committee on Appropriations of the House of Representatives, and the Special Master a report that includes the determination of the Comptroller General on-
(I) the amount of the proposed lump sum catch-up payment for each 1983 Beirut barracks bombing victim;
(II) the amount of the proposed lump sum catch-up payment for each 1996 Khobar Towers bombing victim; and
(III) amount of lump sum catch-up payments described in subclauses (I) and (II).

### (iv) Lump sum catch-up payment reserve fund

#### (I) In general

There is established within the Fund a lump sum catch-up payment reserve fund, to remain in reserve except in accordance with this subsection.

#### (II) Authorization

Not earlier than 90 days after the date on which the Comptroller General submits the report required under clause (iii), and not later than 1 year after such date, the Special Master shall authorize lump sum catch-up payments from the reserve fund established under subclause (I) in amounts equal to the amounts described in subclauses (I) and (II) of clause (iii).

#### (III) Appropriations

##### (aa) In general

There are authorized to be appropriated and there are appropriated to the lump sum catch-up payment reserve fund $3,000,000,000 to carry out this clause, to remain available until expended.

##### (bb) Limitation

Except as provided in subclause (IV), amounts appropriated pursuant to item (aa) may not be used for a purpose other than to make lump sum catch-up payments under this clause.

#### (IV) Expiration

##### (aa) In general

The lump sum catch-up payment reserve fund established by this clause shall be terminated not later than 1 year after the Special Master disperses all lump sum catch-up payments pursuant to subclause (II).

##### (bb) Remaining amounts

All amounts remaining in the lump sum catch-up payment reserve fund in excess of the amounts described in subclauses (I) and (II) of clause (iii) shall be deposited into the Fund under this section.

## (5) Subrogation and retention of rights

### (A) United States subrogated to creditor rights to the extent of payment

The United States shall be subrogated to the rights of any person who applies for and receives payments under this section, but only to the extent and in the amount of such payments made under this section. The President shall pursue these subrogated rights as claims or offsets of the United States in appropriate ways, including any negotiation process that precedes the normalization of relations between the foreign state designated as a state sponsor of terrorism and the United States or the lifting of sanctions against such foreign state.

### (B) Rights retained

To the extent amounts of damages remain unpaid and outstanding following any payments made under this subsection, each applicant shall retain that applicant's creditor rights in any unpaid and outstanding amounts of the judgment, including any prejudgment or post-judgment interest, or punitive damages, awarded by the United States district court pursuant to a judgment.

## (e) United States Victims of State Sponsored Terrorism Fund

**(1) Establishment of United States Victims of State Sponsored Terrorism Fund**

There is established in the Treasury a fund, to be designated as the United States Victims of State Sponsored Terrorism Fund.

**(2) Deposit and transfer**

Beginning on December 18, 2015, the following shall be deposited or transferred into the Fund for distribution under this section:

### (A) Forfeited funds and property

#### (i) Criminal funds and property

All funds, and the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a criminal penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.),[1] or any related criminal conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism.

#### (ii) Civil funds and property

Seventy-five percent of all funds, and seventy-five percent of the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a civil penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.),[1] or any related conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism.

### (B) Transfer into Fund of certain assigned assets of Iran and election to participate in Fund

#### (i) Deposit into Fund of assigned proceeds from sale of properties and related assets identified in In Re 650 Fifth Avenue & Related Properties

##### (I) In general

Except as provided in subclause (II), if the United States receives a final judgment forfeiting the properties and related assets identified in the proceedings captioned as In Re 650 Fifth Avenue & Related Properties, No. 08 Civ. 10934 (S.D.N.Y. filed Dec. 17, 2008), the net proceeds (not including the litigation expenses and sales costs incurred by the United States) resulting from the sale of such properties and related assets by the United States shall be deposited into the Fund.

##### (II) Limitation

The following proceeds resulting from any sale of the properties and related assets identified in subclause (I) shall not be transferred into the Fund:

(aa) The percentage of proceeds attributable to any party identified as a Settling Judgment Creditor in the order dated April 16, 2014, in such proceedings, who does not make an election (described in clause (iii)) to participate in the Fund.

(bb) The percentage of proceeds attributable to the parties identified as the Hegna Judgment Creditors in such proceedings, unless and until a final judgment is entered denying the claims of such creditors.

#### (ii) Deposit into Fund of assigned assets identified in Peterson v. Islamic Republic of Iran

If a final judgment is entered in Peterson v. Islamic Republic of Iran, No. 10 Civ. 4518 (S.D.N.Y.), awarding the assets at issue in that case to the judgment creditors identified in the order dated July 9, 2013, those assets shall be deposited into the Fund, but only to the extent, and in such percentage, that the rights, title, and interest to such assets were assigned through elections made pursuant to clause (iii).

#### (iii) Election to participate in the Fund

Upon written notice to the Attorney General, the Special Master, and the chief judge of the United States District Court for the Southern District of New York within 60 days after the date of the publication required under subsection (b)(2)(A) a United States person, who is a judgment creditor in the proceedings captioned Peterson v. Islamic Republic of Iran, No. 10 Civ. 4518 (S.D.N.Y.), or a Settling Judgment Creditor as identified in the order dated May 27, 2014, in the proceedings captioned In Re 650 Fifth Avenue & Related Properties, No. 08 Civ. 10934 (S.D.N.Y. filed Dec. 17, 2008), shall have the right to elect to participate in the Fund and, to the extent any such person exercises such right, shall irrevocably assign to the Fund all rights, title, and interest to such person's claims to the assets at issue in such proceedings. To the extent that a United States person is both a judgment creditor in the proceedings captioned Peterson v. Islamic Republic of Iran, No. 10 Civ. 4518 (S.D.N.Y.) and a Settling Judgment Creditor in In Re 650 Fifth Avenue & Related Properties, No. 08 Civ. 10934 (S.D.N.Y. filed Dec. 17, 2008), any election by such person to participate in the Fund pursuant to this paragraph shall operate as an election to assign any and all rights, title, and interest in the assets in both actions for the purposes of participating in the Fund. The Attorney General is authorized to pursue any such assigned rights, title, and interest in those claims for the benefit of the Fund.

**(iv) Application for conditional payment**

A United States person who is a judgment creditor or a Settling Judgment Creditor in the proceedings identified in clause (iii) and who does not elect to participate in the Fund may, notwithstanding such failure to elect, submit an application for conditional payment from the Fund, subject to the following limitations:

**(I) In general**

Notwithstanding any such claimant's eligibility for payment and the initial deadline for initial payments set forth in subsection (d)(2), the Special Master shall allocate but withhold payment to an eligible claimant who applies for a conditional payment under this paragraph until such time as an adverse final judgment is entered in both of the proceedings identified in clause (iii).

**(II) Exception**

(aa) In the event that an adverse final judgment is entered in the proceedings captioned Peterson v. Islamic Republic of Iran, No. 10 Civ. 4518 (S.D.N.Y), prior to a final judgment being entered in the proceedings captioned In Re 650 Fifth Avenue & Related Properties, No. 08 Civ. 10934 (S.D.N.Y. filed Dec. 17, 2008), the Special Master shall release a portion of an eligible claimant's conditional payment to such eligible claimant if the Special Master anticipates that such claimant will receive less than the amount of the conditional payment from any proceeds from a final judgment that is entered in favor of the plaintiffs in In Re 650 Fifth Avenue & Related Properties. Such portion shall not exceed the difference between the amount of the conditional payment and the amount the Special Master anticipates such claimant will receive from the proceeds of In Re 650 Fifth Avenue & Related Properties.

(bb) In the event that a final judgment is entered in favor of the plaintiffs in the proceedings captioned Peterson v. Islamic Republic of Iran, No. 10 Civ. 4518 (S.D.N.Y) and funds are distributed, the payments allocated to claimants who applied for a conditional payment under this subparagraph shall be considered void, and any funds previously allocated to such conditional payments shall be made available and distributed to all other eligible claimants pursuant to subsection (d).

**(v) Exception for 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims**

Nothing in this subparagraph shall apply with respect to-

(I) a 1983 Beirut barracks bombing victim or a 1996 Khobar Towers bombing victim who submits an application under subsection (c)(3)(A)(ii)(II) on or after December 29, 2022; or

(II) the assets, or the net proceeds of the sale of properties or related assets, attributable to a person described in subclause (I).

**(3) Expenditures from Fund**

Amounts in the Fund shall be available, without further appropriation, for the payment of eligible claims and compensation of the Special Master in accordance with this section.

**(4) Management of Fund**

The Fund shall be managed and invested in the same manner as a trust fund is managed and invested under section 9602 of title 26.

**(5) Funding**

There is appropriated to the Fund, out of any money in the Treasury not otherwise appropriated, $1,025,000,000 for fiscal year 2017, to remain available until expended.

**(6) Termination**

**(A) In general**

Amounts in the Fund may not be obligated on or after January 2, 2039.

**(B) Closing of Fund**

Effective on the day after all amounts authorized to be paid from the Fund under this section that were obligated before January 2, 2039 are expended, any unobligated balances in the Fund shall be transferred, as appropriate, to either the Department of the Treasury Forfeiture Fund established under section 9705 of title 31 or to the Department of Justice Assets Forfeiture Fund established under section 524(c)(1) of title 28.

**(f) Attorneys' fees and costs**

**(1) In general**

No attorney representing a non-9/11 related victim of state sponsored terrorism shall charge, receive, or collect, and the Special Master shall not approve, any payment of fees and costs that in the aggregate exceeds 25 percent of any payment made under this section. After November 21, 2019, no attorney representing a 9/11 related victim of state sponsored terrorism shall charge, receive, or collect, and the Special Master shall not approve, any payment of fees and costs that in the aggregate exceeds 15 percent of any payment made under this section after November 21, 2019.

**(2) Penalty**

Any attorney who violates paragraph (1) shall be fined under title 18, imprisoned for not more than 1 year, or both.

**(g) Award of compensation to informers**

**(1) In general**

Any United States person who holds a final judgment described in subsection (c)(2)(A) or a claim under subsection (c)(2)(B) or (c)(2)(C) and who meets the requirements set forth in paragraph (2) is entitled to receive an award of 10 percent of the funds deposited in the Fund under subsection (e)(2) attributable to information such person furnished to the Attorney General that leads to a forfeiture described in subsection (e)(2)(A), which is made after December 18, 2015, pursuant to a proceeding resulting in forfeiture that was initiated after December 18, 2015.

**(2) Person described**

A person meets the requirements of this paragraph if-
   (A) the person identifies and notifies the Attorney General of funds or property-
      (i) of a state sponsor of terrorism, or held by a third party on behalf of or subject to the control of that state sponsor of terrorism;
      (ii) that were not previously identified or known by the United States Government; and
      (iii) that are subsequently forfeited directly or in the form of substitute assets to the United States; and

   (B) the Attorney General finds that the identification and notification under subparagraph (A) by that person substantially contributed to the forfeiture to the United States.

**(h) Special exclusion from compensation**

In no event shall an individual who is criminally culpable for an act of international terrorism receive any compensation under this section, either directly or on behalf of a victim.

**(i) Report to Congress**

Within 30 days after authorizing the payment of compensation of eligible claims pursuant to subsection (d), the Special Master shall submit to the chairman and ranking minority member of the Committee on the Judiciary of the House of Representatives and the chairman and ranking minority member of the Committee on the Judiciary of the Senate a report on the payment of eligible claims, which shall include-
   (1) an explanation of the procedures for filing and processing of applications for compensation; and
   (2) an analysis of the payments made to United States persons from the Fund and the amount of outstanding eligible claims, including-
      (A) the number of applications for compensation submitted;
      (B) the number of applications approved and the amount of each award;
      (C) the number of applications denied and the reasons for the denial;
      (D) the number of applications for compensation that are pending for which compensatory damages have not been paid in full; and
      (E) the total amount of compensatory damages from eligible claims that have been paid and that remain unpaid.

**(j) Definitions**

In this section the following definitions apply:

**(1) Act of international terrorism**

The term "act of international terrorism" includes-
   (A) an act of torture, extrajudicial killing, aircraft sabotage, or hostage taking as those terms are defined in section 1605A(h) of title 28; and
   (B) providing material support or resources, as defined in section 2339A of title 18, for an act described in subparagraph (A).

**(2) Adverse final judgment**

The term "adverse final judgment" means a final judgment in favor of the defendant, or defendants, in the proceedings identified in subsection (e)(2)(B)(iii), or which does not order any payment from, or award any interest in, the assets at issue in such proceedings to the plaintiffs, judgment creditors, or Settling Judgment Creditors in such proceedings.

**(3) Compensatory damages**

The term "compensatory damages" does not include pre-judgment or post-judgment interest or punitive damages.

**(4) Final judgment**

The term "final judgment" means an enforceable final judgment, decree or order on liability and damages entered by a United States district court that is not subject to further appellate review, but does not include a judgment, decree, or order that has been waived, relinquished, satisfied, espoused by the United States, or subject to a bilateral claims settlement agreement between the United States and a foreign state. In the case of a default judgment, such judgment shall not be considered a final judgment until such time as service of process has been completed pursuant to section 1608(e) of title 28.

**(5) Fund**

The term "Fund" means the United States Victims of State Sponsored Terrorism Fund established by this section.

**(6) Source other than this Fund**

The term "source other than this Fund" means all collateral sources, including life insurance, pension funds, death benefit programs, payments by Federal, State, or local governments, and court awarded compensation related to the act of international terrorism that gave rise to a claimant's final judgment, except that the term does not include payments received in connection with an international claims agreement to which the United States is a state party or any other settlement of terrorism-related claims against Sudan. The term "entitled or scheduled to receive" in subsection (d)(3)(B)(i) includes any potential recovery where that person or their representative is a party to any civil or administrative action pending in any court or agency of competent jurisdiction in which the party seeks to enforce the judgment giving rise to the application to the Fund.

**(7) State sponsor of terrorism**

The term "state sponsor of terrorism" means a country the government of which the Secretary of State has determined, for purposes of section 4605(j) [1] of title 50, section 2371 of title 22, section 2780 of title 22, or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism.

**(8) United States person**

The term "United States person" means a natural person who has suffered an injury arising from the actions of a foreign state for which the foreign state has been determined not to be immune from the jurisdiction of the courts of the United States under section 1605A or section 1605(a)(7) (as such section was in effect on January 27, 2008) of title 28 or is eligible to make a claim under subsection (c)(2)(B) or subsection (c)(2)(C).

**(9) Non-9/11 related victim of state sponsored terrorism**

The term "non-9/11 victim of state sponsored terrorism" means a United States person who has an eligible claim under subsection (c) that is unrelated to the acts of international terrorism carried out on September 11, 2001.

**(10) 9/11 related victim of state sponsored terrorism**

The term "9/11 related victim of state sponsored terrorism" means a 9/11 victim, 9/11 spouse, 9/11 dependent, or 9/11 family member.

**(11) 9/11 dependent**

The term "9/11 dependent" means a United States person who has an eligible claim under subsection (c) who at the time of a 9/11 victim's death was-

(A) a dependent, as defined in section 104.3 of title 28, Code of Federal Regulations, or any successor thereto, of the 9/11 victim; or

(B) the child of the 9/11 victim who has not, before November 21, 2019, received payment from the Fund.

**(12) 9/11 family member**

The term "9/11 family member" means the immediate family member of an individual described in section 405(c) of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note) who is not a 9/11 dependent or a 9/11 spouse.

**(13) 9/11 spouse**

The term "9/11 spouse" means a United States person who has an eligible claim under subsection (c) who is a spouse, as defined in section 104.3 of title 28, Code of Federal Regulations, or any successor thereto, of an individual described in section 405(c) of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note).

**(14) 9/11 victim**

The term "9/11 victim" means a United States person who has an eligible claim under subsection (c) who is an individual described in section 405(c)(2) of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note).

**(15) 1983 Beirut barracks bombing victim**

The term "1983 Beirut barracks bombing victim"-

(A) means a plaintiff, or estate or successor in interest thereof, who has an eligible claim under subsection (c) that arises out of the October 23, 1983, bombing of the United States Marine Corps barracks in Beirut, Lebanon; and

(B) includes a plaintiff, estate, or successor in interest described in subparagraph (A) who is a judgment creditor in the proceedings captioned Peterson v. Islamic Republic of Iran, No. 10 Vic. 4518 (S.D.N.Y.), or a Settling Judgment Creditor as identified in the order dated May 27, 2014, in the proceedings captioned In Re 650 Fifth Avenue & Related Properties, No. 08 Vic.10934 (S.D.N.Y. filed Dec. 17, 2008).

**(16) 1996 Khobar Towers bombing victim**

The term "1996 Khobar Towers bombing victim"-

(A) means a plaintiff, or estate or successor in interest thereof, who has an eligible claim under subsection (c) that arises out of the June 25, 1996 bombing of the Khobar Tower housing complex in Saudi Arabia; and

(B) includes a plaintiff, estate, or successor in interest described in subparagraph (A) who is a judgment creditor in the proceedings captioned Peterson v. Islamic Republic of Iran, No. 10 Vic. 4518 (S.D.N.Y.), or a Settling

Judgment Creditor as identified in the order dated May 27, 2014, in the proceedings captioned In Re 650 Fifth Avenue & Related Properties, No. 08 Vic.10934 (S.D.N.Y. filed Dec. 17, 2008).

**(k) Severability**

The provisions of this section are severable. If any provision of this section, or any application thereof, is found unconstitutional, that finding shall not affect any provision or application of this section not so adjudicated.

( Pub. L. 114–113, div. O, title IV, §404, Dec. 18, 2015, 129 Stat. 3007 ; Pub. L. 116–69, div. B, title VII, §1701(b)(1), Nov. 21, 2019, 133 Stat. 1140 ; Pub. L. 116–260, div. FF, title XVII, §1705, Dec. 27, 2020, 134 Stat. 3293 ; Pub. L. 117–328, div. MM, §101(b), Dec. 29, 2022, 136 Stat. 6106 .)

### EDITORIAL NOTES

#### REFERENCES IN TEXT

The United States Victims of State Sponsored Terrorism Fund Clarification Act, referred to in subsec. (b)(2)(A), is Pub. L. 116–69, div. B, title VII, §1701, Nov. 21, 2019, 133 Stat. 1140 , which amended this section and enacted notes under this section and section 10101 of this title. The date of enactment of the Act is Nov. 21, 2019.

The Fairness for 9/11 Families Act, referred to in subsec. (b)(2)(A), is Pub. L. 117–328, div. MM, §101, Dec. 29, 2022, 136 Stat. 6106 , which amended this section and enacted a note under section 10101 of this title. The date of enactment of the Act is Dec. 29, 2022.

Section 1605(a)(7) of title 28 (as such section was in effect on January 27, 2008), referred to in subsecs. (c)(2)(A)(ii) and (j)(8), refers to subsec. (a)(7) of section 1605 of title 28 as it existed prior to being struck out by Pub. L. 110–181, §1083(b)(1)(A). See 2008 Amendment note under that section.

The International Emergency Economic Powers Act, referred to in subsec. (e)(2)(A), is title II of Pub. L. 95–223, Dec. 28, 1977, 91 Stat. 1626 , which is classified generally to chapter 35 (§1701 et seq.) of Title 50, War and National Defense. For complete classification of this Act to the Code, see Short Title note set out under section 1701 of Title 50 and Tables.

The Trading with the Enemy Act, referred to in subsec. (e)(2)(A), is act Oct. 6, 1917, ch. 106, 40 Stat. 411 , which was classified generally to sections 1 to 6, 7 to 39, and 41 to 44 of the former Appendix to Title 50, War and National Defense, prior to editorial reclassification and renumbering as chapter 53 (§4301 et seq.) of Title 50. For complete classification of this Act to the Code, see Tables.

Section 4605(j) of title 50, referred to in subsec. (j)(7), was repealed by Pub. L. 115–232, div. A, title XVII, §1766(a), Aug. 13, 2018, 132 Stat. 2232 . Provisions similar to those in former section 4605(j) of title 50 can be found in section 4813(c) of title 50, as enacted by Pub. L. 115–232.

Section 405 of the Air Transportation Safety and System Stabilization Act, referred to in subsec. (j)(12) to (14), is section 405 of Pub. L. 107–42, which is set out in a note under section 40101 of Title 49, Transportation.

#### CODIFICATION

Section was formerly classified to section 10609 of Title 42, The Public Health and Welfare, prior to editorial reclassification and renumbering as this section.

Section 101(b) of div. MM of 117–328, which directed amendment of section 404 of the Justice for United States Victims of State Sponsored Terrorism Act, was executed to this section, which comprises the entire Act, to reflect the probable intent of Congress.

#### AMENDMENTS

**2022**-Subsec. (b)(1)(B). Pub. L. 117–328, §101(b)(1)(A), inserted "and during the 1-year period beginning on December 29, 2022, the Special Master may utilize an additional 5 full-time equivalent Department of Justice personnel" before period at end. See Codification note above.

Subsec. (b)(2)(A). Pub. L. 117–328, §101(b)(1)(B), inserted "Not later than 30 days after December 29, 2022, the Special Master shall update, as necessary as a result of the amendment to this section, such procedures and other guidance previously issued by the Special Master." after "guidance previously issued by the Special Master." See Codification note above.

Subsec. (c)(3)(A)(ii). Pub. L. 117–328, §101(b)(2), added cl. (ii) and struck out former cl. (ii) which read as follows: "Not later than 90 days after the date of obtaining a final judgment, with regard to a final judgment obtained on or after the date of that publication, unless the final judgment was awarded to a 9/11 victim, 9/11 spouse, or 9/11 dependent before November 21, 2019, in which case such United States person shall have 90 days from November 21, 2019, to submit an application for payment." See Codification note above.

Subsec. (d)(3)(B)(iii). Pub. L. 117–328, §101(b)(3)(A), added cl. (iii). See Codification note above.

Subsec. (d)(4)(A). Pub. L. 117–328, §101(b)(3)(B)(i), substituted "subparagraphs (B), (C), and (D)" for "subparagraphs (B) and (C)". See Codification note above.

Subsec. (d)(4)(C)(iv). Pub. L. 117–328, §101(b)(3)(B)(ii), added cl. (iv). See Codification note above.

Subsec. (d)(4)(D). Pub. L. 117–328, §101(b)(3)(B)(iii), added subpar. (D). See Codification note above.

Subsec. (e)(2)(B)(v). Pub. L. 117–328, §101(b)(4), added cl. (v). See Codification note above.

Subsec. (j)(15), (16). Pub. L. 117–328, §101(b)(5), added pars. (15) and (16). See Codification note above.

**2020**-Subsec. (c)(2)(A)(i). Pub. L. 116–260, §1705(a)(1), substituted "foreign state that was designated as a state sponsor of terrorism at the time the acts described in clause (ii) occurred or was so designated as a result of such acts" for "state sponsor of terrorism".

Subsec. (d)(4)(A). Pub. L. 116–260, §1705(b)(1), substituted "subparagraphs (B) and (C)" for "subparagraph (B)".

Subsec. (d)(4)(C). Pub. L. 116–260, §1705(b)(2), added subpar. (C).

Subsec. (e)(6). Pub. L. 116–260, §1705(a)(2), substituted "January 2, 2039" for "January 2, 2030" in two places.

Subsec. (j)(6). Pub. L. 116–260, §1705(a)(3), inserted ", except that the term does not include payments received in connection with an international claims agreement to which the United States is a state party or any other settlement of terrorism-related claims against Sudan" after "final judgment".

**2019**-Subsec. (b)(1)(B). Pub. L. 116–69, §1701(b)(1)(A)(i), substituted "section, except that, during the 1-year period beginning on November 21, 2019, the Special Master may utilize an additional 5 full-time equivalent Department of Justice personnel." for "section."

Subsec. (b)(2)(A). Pub. L. 116–69, §1701(b)(1)(A)(ii), substituted "Not later than 30 days after the date of enactment of the United States Victims of State Sponsored Terrorism Fund Clarification Act, the Special Master shall update, as necessary as a result of the enactment of such Act, such procedures and other guidance previously issued by the Special Master. Such notice and any updates to that notice or other guidance are" for "Such notice is".

Subsec. (c)(2)(B). Pub. L. 116–69, §1701(b)(1)(B)(i), substituted "January 20, 1981" for "January 20, 1981, if such person is identified as a member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia".

Subsec. (c)(3)(A)(i)(II). Pub. L. 116–69, §1701(b)(1)(B)(ii)(I), substituted for period at end ", except that any United States person with an eligible claim described in paragraph (2)(B) who did not have an eligible claim before November 21, 2019, shall have 90 days from November 21, 2019, to submit an application for payment."

Subsec. (c)(3)(A)(ii). Pub. L. 116–69, §1701(b)(1)(B)(ii)(II), substituted for period at end ", unless the final judgment was awarded to a 9/11 victim, 9/11 spouse, or 9/11 dependent before November 21, 2019, in which case such United States person shall have 90 days from November 21, 2019, to submit an application for payment."

Subsec. (d)(3)(A). Pub. L. 116–69, §1701(b)(1)(C)(i), added cls. (i) and (ii) and struck out former cls. (i) and (ii) which read as follows:

"(i) PRO RATA BASIS.-Except as provided in subparagraph (B) and subject to the limitations described in clause (ii), the Special Master shall carry out paragraph (1), by dividing all available funds on a pro rata basis, based on the amounts outstanding and unpaid on eligible claims, until all such amounts have been paid in full.

"(ii) LIMITATIONS.-The limitations described in this clause are as follows:

"(I) In the event that a United States person has an eligible claim that exceeds $20,000,000, the Special Master shall treat that claim as if it were for $20,000,000 for purposes of this section.

"(II) In the event that a United States person and the immediate family members of such person, have claims that if aggregated would exceed $35,000,000, the Special Master shall, for purposes of this section, reduce such claims on a pro rata basis such that in the aggregate such claims do not exceed $35,000,000.

"(III) In the event that a United States person, or the immediate family member of such person, has an eligible claim under this section and has received an award or an award determination under section 405 of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note), the amount of compensation to which such person, or the immediate family member of such person, was determined to be entitled under section 405 of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note) shall be considered controlling for the purposes of this section, notwithstanding any compensatory damages amounts such person, or immediate family member of such person, is deemed eligible for or entitled to pursuant to a final judgment described in subsection (c)(2)(A)."

Subsec. (d)(4). Pub. L. 116–69, §1701(b)(1)(C)(ii), designated existing provisions as subpar. (A), inserted heading, substituted "Except as provided in subparagraph (B), on" for "On", and added subpar. (B).

Subsec. (e)(2)(A)(ii). Pub. L. 116–69, §1701(b)(1)(D)(i), substituted "Seventy-five percent" for "One-half" and "seventy-five percent" for "one-half".

Subsec. (e)(6). Pub. L. 116–69, §1701(b)(1)(D)(ii), substituted "2030" for "2026" in subpars. (A) and (B).

Subsec. (f)(1). Pub. L. 116–69, §1701(b)(1)(E), inserted "representing a non-9/11 related victim of state sponsored terrorism" after "No attorney" and "After November 21, 2019, no attorney representing a 9/11 related victim of state sponsored terrorism shall charge, receive, or collect, and the Special Master shall not approve, any payment of fees and costs that in the aggregate exceeds 15 percent of any payment made under this section after November 21, 2019." after "section."

Subsec. (j)(6). Pub. L. 116–69, §1701(b)(1)(F)(i), struck out "(including payments from the September 11th Victim Compensation Fund (49 U.S.C. 40101 note))" after "local governments".

Subsec. (j)(9) to (14). Pub. L. 116–69, §1701(b)(1)(F)(ii), added pars. (9) to (14).

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE OF 2019 AMENDMENT

Pub. L. 116–69, div. B, title VII, §1701(d), Nov. 21, 2019, 133 Stat. 1143 , provided that: "This section [amending this section and enacting provisions set out as a note below] and the amendments made by this section shall take effect on the date of enactment of this Act [Nov. 21, 2019]."

### CONSTRUCTION OF 2019 AMENDMENT

Pub. L. 116–69, div. B, title VII, §1701(c), Nov. 21, 2019, 133 Stat. 1143 , provided that: "A determination by the Special Master before the date of enactment of the United States Victims of State Sponsored Terrorism Fund Clarification Act [Nov. 21, 2019] that an award or award determination under section 405 of the Air Transportation Safety and Stabilization Act [Pub. L. 107–42] (49 U.S.C. 40101 note) was controlling for purposes of the Fund (pursuant to subsection (d)(3)(A)(ii)(III) of the Justice for United States Victims of State Sponsored Terrorism Act (34 U.S.C. 20144(d)(3)(A)(ii)(III)), as such section was in effect on the day before the date of enactment of this Act [Nov. 21, 2019]) shall not prejudice a claim of a 9/11 victim, 9/11 spouse, or 9/11 dependent."

[1] See References in Text note below.