# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:  All
Actions

---

### PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL CENTRAL INTELLIGENCE AGENCY TO PRODUCE DOCUMENTS IN RESPONSE TO PLAINTIFFS' RULE 45 SUBPOENA

---

Robert T. Haefele
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel of the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

Sean P. Carter
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

February 20, 2026

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ...............................................................................................4

    A.    The Court-Identified Need for Third-Party Discovery From the U.S. Government
           Agencies, Including the CIA, Considering Sudan's Spoliation. ..................................4

    B.    The Subpoena and the CIA Records at Issue ...............................................................5

    C.    Plaintiffs Engaged in a Good-Faith Meet-and-Confer .................................................5

    D.    CIA's Refusal to Use Plaintiffs' Search Terms ...........................................................7

    E.    CIA's Conditional Production Proposal ......................................................................8

ARGUMENT ......................................................................................................................9

    I.    The Court Has Authority Under Rules 45 And 26 To Compel Compliance with a
         Non-Party Subpoena In MDL 1570 ...........................................................................9

    II.    Plaintiffs Met and Conferred in Good Faith and Proposed a Reasonable Search Protocol;
         the CIA Cannot Impose a Unilateral, Prejudicial Search Methodology Without a
         Particularized, Court-Reviewable Justification ..........................................................10

CONCLUSION ..................................................................................................................12

## Table of Authorities

**Cases**

*Halpern v. FBI*, 181 F.3d 279 (2d Cir. 1999)........................................................................11

*In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478 (S.D.N.Y. 2021)..............9, 11

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009)......................................11

*William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134 (S.D.N.Y. 2009) ...... 10

**Rules**

Fed. R. Civ. P. 26 .............................................................................................9, 10, 11, 12

Fed. R. Civ. P. 26(b) ........................................................................................................ 1

Fed. R. Civ. P. 26(c) .......................................................................................................11

Fed. R. Civ. P. 45 ................................................................................................... passim

Fed. R. Civ. P. 45(a)(1)(A)(iii) ......................................................................................... 9

Fed. R. Civ. P. 45(d) ........................................................................................................ 1

Fed. R. Civ. P. 45(d)(2)(B) ............................................................................................. 10

Fed. R. Civ. P. 45(d)(2)(B)(1) .......................................................................................... 9

Fed. R. Civ. P. 45(d)(3)(A) .............................................................................................. 9

## PRELIMINARY STATEMENT

Pursuant to Rules 45(d) and 26(b) of the Federal Rules of Civil Procedure, Plaintiffs move to compel the Central Intelligence Agency ("CIA") to produce documents in response to Plaintiffs' Rule 45 Subpoena served on the CIA in March 2025. Declaration of Robert T. Haefele at Exhibit A[1] ("Subpoena"). The Subpoena seeks decades-old CIA intelligence reports, cables, and other records detailing the Sudanese government's program of state support for Osama bin Laden and al Qaeda. The existence of this information in the CIA's possession is not a secret—the CIA and Sudanese government officials already have broadly disclosed the fact that the CIA collected intelligence and evidence concerning Sudan's years-long extensive support for al Qaeda, and the CIA has publicly produced numerous intelligence assessments and reports concerning those terrorist activities, including by voluntarily disclosing many of its records concerning Sudan's ties to terrorism to the 9/11 Commission. Haefele Decl. ¶¶ 16-21. Indeed, the U.S. designated Sudan as a State Sponsor of Terrorism on August 12, 1993 and it remained so designated well beyond the September 11, 2001 attacks, until December 14, 2020.

The decades-old documents Plaintiffs seek through their Subpoena are directly relevant and vital to the prosecution of Plaintiffs' claims against Sudan under the state sponsor of terrorism exception and other law. The CIA would necessarily have the most relevant information, as its stated mission is "[c]ollecting foreign intelligence that matters" and "[p]roducing objective all-source analysis" of foreign threats to the United States including in areas of "counterterrorism".[2] In fact, Plaintiffs' Subpoena targets information about relationships and events this Court deemed relevant in denying Sudan's Motion to Dismiss and authorizing merits discovery, as well as matters referenced in CIA reporting already disclosed to the public on Sudan's role in supporting al Qaeda's terrorism aims.

---

[1] Exhibits cited herein are attached to the accompanying Declaration of Robert T. Haefele, cited as "Haefele Decl.".

[2] https://www.cia.gov/about/

1

In the nearly full-year of meeting-and conferring with the CIA, through its U.S. Department of Justice counsel ("DOJ counsel"), on the CIA's obligations to respond to Plaintiffs' Subpoena, the CIA has used shifting rationalizations for resisting its compliance. Since the Subpoena was served in March 2025, the CIA has (1) outright refused to search for documents responsive to Subpoena Request Nos. 1-13; (2) failed to produce a single document in response to Request Nos. 14-15; (3) represented that it does not have the ability to conduct systemwide text searches for documents (only to reverse itself after Plaintiffs provided evidence of an earlier searching agreement with another defendant in the litigation); (4) failed to provide any competent, written objections to Plaintiffs' Subpoena (other than DOJ's April 10, 2025 initial perfunctory objections to the Subpoena on behalf of all the Agencies); (5) refused Plaintiffs' multiple requests that the CIA articulate it positions with respect to the Subpoena in writing; and (6) offered only unilateral and arbitrary proposals to provide sparse documents of its own choosing rather than comply with the subject matter and search terms Plaintiffs provided to CIA to meaningfully respond to the Subpoena.

More recently, during a February 10, 2026 meet-and-confer, after months of the CIA considering Plaintiffs' proposals to compromise, the CIA asserted a final, non-negotiable position. The non-negotiable position the CIA asserted provided that the CIA (1) will not consider the search terms Plaintiffs proposed to identify in a targeted manner information most responsive to Plaintiffs' interests and to ameliorate the prejudice to Plaintiffs by the CIA's proposal; (2) will only use search terms the CIA devised unilaterally (and which Plaintiffs explained are likely to result in skewed productions); and (3) will produce no more than 20 responsive documents, regardless of the number of documents identified in the review process. Haefele Decl. ¶¶ 54-62.

Plaintiffs expressed their concerns that—based on the limited information the CIA provided about its methodology, search capabilities, and the terms it intends to use—its proposed searches would not capture documents reasonably responsive to Plaintiffs' Subpoena but, instead, will likely

result in productions that Sudan can exploit for its defenses. That is, if the CIA's search terms are used, the resulting production will likely skew away from documents that focus on Sudan's State support for al Qaeda and Osama bin Laden and toward documents that Sudan can exploit, for example, to support its narrative that bin Laden was merely a rich Saudi businessman in Sudan.

Notwithstanding Plaintiffs' legitimate concerns, DOJ counsel advised that if Plaintiffs do not accept the CIA's final proposal, and agree that the CIA alone will define the search terms used to conduct its searches, Plaintiffs' only option was to litigate the issue, at which point—and only at that point—the CIA would submit a formal declaration explaining why it believes its proposal is reasonable. *Id.* ¶¶ 64-66.

Following the CIA's non-negotiable positions from the recent February 2026 meet-and-confer, this motion now presents a narrow discovery dispute concerning the CIA's obligation to respond to the March 2025 Subpoena. Plaintiffs respectfully seek an order from this Court rejecting the CIA's unilateral approach to dictate search terms used to identify documents responsive to Plaintiffs' Subpoena (over Plaintiffs' objections to the proposed terms), and direct the CIA to comply with the Subpoena by employing the highly relevant search terms Plaintiffs provided, which Plaintiffs posit are likely to result in production of documents targeted by the Subpoena, and produce all responsive records (not an artificially limited number of documents set by the CIA without explanation), without prejudicing Plaintiffs with an artificially skewed production.

Rule 45 does not permit a subpoenaed non-party to condition compliance on unilateral control over search methodology or volume while refusing to provide a meaningful, judicially reviewable explanation for that refusal or limitation. The CIA must either comply with the Subpoena under the Federal Rules of Civil Procedure or support its objections through a particularized showing. Notwithstanding the Plaintiffs' insistence that the CIA do so, the CIA has done neither.

## FACTUAL BACKGROUND

**A.    The Court-Identified Need for Third-Party Discovery From the U.S.
        Government Agencies, Including the CIA, Considering Sudan's Spoliation.**

As detailed in the Haefele Declaration at ¶¶ 5-15, from the outset of discovery concerning
Sudan, Plaintiffs have sought to obtain contemporaneous Sudanese records bearing on Sudan's
relationship with al Qaeda. At the February 2025 hearing, after acknowledging Plaintiffs' concerns
about the status of Sudan's repositories, the Court directed Plaintiffs to conduct discovery to assess
"the current status of the evidence" Exhibit B, Hr'g Tr. at 5:6–9:1 (Feb. 4, 2025). Sudan's discovery
responses acknowledged it could produce no contemporaneous documents of its own because all its
repositories had been destroyed during the country's ongoing civil war. *See* ECF No. 10968; *see also*
Exhibit C, Hr'g Tr. at 4:23–5:16 (May 30, 2025); *id.* at 17:1–18:8. When Plaintiffs raised spoliation
concerns at the May 2025 hearing, *id.* at 3:24–4-3, the Court emphasized that, before assessing
spoliation, the Court first needed to consider whether the complete destruction of Sudan's documents
would prejudice Plaintiffs or whether Plaintiffs might obtain substitute evidence from alternative
sources, including the United States government. *See id.* at 6:4–19 (Judge Netburn explaining Plaintiff
must first pursue discovery from U.S. government for her to evaluate prejudice, otherwise she would
be "left wondering… is there really prejudice?"). The Court explained that it "ma[d]e sense" to the
Court to first see what could be obtained from the U.S. government. *Id.* at 35:1-5. Consistent with
that approach, the Court directed Plaintiffs to make sure "every stone has been turned over" in their
pursuit for alternative evidence. *Id.* at 37:23. But if efforts to obtain discovery from the U.S. agencies
were blocked, Plaintiffs could then return to the Court to ask that their spoliation concerns be
addressed. *Id.* at 6:20–7:4. Consistent with those directives, the Court ordered Plaintiffs to pursue
discovery designed to determine whether alternative evidence existed.

The CIA's failure to comply with Plaintiffs' March 2025 Subpoena for nearly a year bears
directly on the prejudice inquiry the Court identified. Where Sudan has responded to Plaintiffs'

4

discovery by asserting that its own contemporaneous records no longer exist, and the CIA (the federal agency most likely to possess information about a foreign state's activities to support al Qaeda) declines to search for or produce potentially responsive investigative materials, Plaintiffs are deprived of both the primary evidence and the principal alternative source the Court identified as necessary to assess prejudice. The present motion to compel seeks to enforce the discovery path mandated by the Court and to complete the factual record required to determine whether Sudan's destruction of its records has resulted in concrete and irreparable prejudice to Plaintiffs' ability to prove their claims.

### B.    The Subpoena and the CIA Records at Issue

In March 2025, Plaintiffs served a Rule 45 subpoena on the CIA seeking decades-old records about Sudan's relationship with al Qaeda and Osama bin Laden during the 1990s. Haefele Decl., Exhibit A. Consistent with the Court's instructions to conduct discovery directed at assessing prejudice from Sudan's spoliation, Plaintiffs served the Subpoena seeking records that could substitute for or corroborate the Sudanese documents Sudan represented were destroyed and to otherwise address issues relevant to the claims against Sudan. *See* Haefele Decl. ¶¶ 14-15 (offering examples of categories of relevant areas addressed in the Subpoena). As indicated *supra*, at 1, it is no secret that the CIA possesses documents on the topics identified in the Subpoena— Sudan's relationship with and support for al Qaeda and Osama bin Laden. Both the CIA and the Sudanese government have publicly acknowledged that the CIA collected intelligence and evidence about Sudan's relationship with and support for bin Laden and al Qaeda. Haefele Decl. ¶¶ 16-21.

### C.    Plaintiffs Engaged in a Good-Faith Meet-and-Confer

As detailed in the Haefele Declaration at ¶¶ 22-68, Plaintiffs engaged in a nearly year-long, good-faith meet-and-confer process with DOJ counsel on behalf of the CIA, during which they provided detailed explanations of relevance, exemplar documents, and proposed compromises.

Despite these efforts, the CIA declined to commit to complying with the Subpoena, including conducting searches that would be likely to identify documents responsive to the Subpoena without skewing the results to Plaintiffs' prejudice, and declined to offer a plausible explanation for refusing to apply search terms or otherwise refine its protocol to address Plaintiffs' prejudice concerns.

In August 2025, Plaintiffs proposed a limited and structured search methodology under which the CIA would conduct targeted searches of its repositories for relevant Sudan-related reports, using specific search terms that Plaintiffs would provide to enhance the likelihood of capturing the most relevant documents sought by Plaintiffs' Subpoena. Exhibit H (August 22, 2025 Ltr to J.D. Barnea). The proposal included non-exhaustive examples of search terms designed to lead to the production of key CIA reports and evidence supporting the core of Plaintiffs' claims, *see* Haefele Decl. ¶ 39, and for the CIA to use to identify and review a relatively smaller subset of responsive documents for production. In addition, the CIA would also conduct the additional declassification review of Sudan-related CIA reports already identified in the public domain. *Id.* ¶ 40

The CIA rejected that proposal, and on November 24, 2025, transmitted a counterproposal. Exhibit I (Nov. 24, 2025 Ltr from J.D. Barnea). The counterproposal drastically constrained both the scope of searches and the number of documents to be produced, while still refusing Plaintiffs' requests to explain the CIA's search capabilities or the basis for its asserted refusal to agree to Plaintiffs' proposal. The CIA proposed a set of 69 search terms it devised unilaterally and reduced the number of documents to be produced from the already small universe of documents. Of the universe of documents in the CIA's files regarding Sudan's interactions with al Qaeda and Osama bin Laden, the CIA initially agreed to produce only fifteen documents.

In meet-and-confers in December 2025 and January 2026, Plaintiffs raised concerns that the CIA's counterproposal presented inherent risks of skewed results to Plaintiffs' prejudice. Haefele Decl. ¶¶ 44-48; *see* Exhibit J (December 11, 2025 Ltr to J.D. Barnea).

6

The inherent prejudice from the CIA's proposed approach derives from this: nearly two-thirds (64%) of the CIA's 69 search terms, *see* Exhibit I, emphasize Sudanese banks and al Qaeda-controlled businesses—two issues anticipated to skew production results away from the Sudanese government's direct support of al Qaeda and Osama bin Laden (issues of most interest to the Plaintiffs, who served the Subpoena) and toward documents Sudan was likely to exploit to support its defense narratives that Osama bin Laden was merely a rich businessman operating in Sudan. Haefele Decl. ¶¶ 45-47. In contrast, Plaintiffs' terms focused squarely on the core of the Subpoena—namely, intelligence reports and documents that demonstrate the Sudanese government's relationship with and support for bin Laden and al Qaeda, which allowed for al Qaeda to be established, built, and sustained as a global terrorist organization. Haefele Decl. ¶¶ 39, 51-53.

When Plaintiffs voiced these concerns, DOJ counsel invited Plaintiffs to offer Plaintiff-proposed search terms, though cautioning that the CIA may not consider them. In January 2026, Plaintiffs provided relevant and targeted search terms—fewer in number to the CIA's list—which align with Plaintiffs' purpose of serving the Subpoena and ameliorated the identified risk of prejudice. Exhibit K (January 22, 2026 Email to J.D. Barnea). The Plaintiff-proposed terms, which were drawn directly from public released and declassified CIA documents concerning Sudan, al Qaeda, and Osama bin Laden, focused on targeting intelligence reports and documents in the CIA's possession that demonstrate that the Sudanese government provided critical safe haven, resources, and support to Osama bin Laden that allowed him to establish, build, and sustain al Qaeda as a global terrorist organization. Haefele Decl. ¶¶ 49-53 (*see* examples at ¶ 53).

### D.    CIA's Refusal to Use Plaintiffs' Search Terms

The CIA outright refused to use Plaintiffs' search terms or to otherwise engage the concerns Plaintiffs raised, wholly rejecting consideration of any compromise concerning the search terms. In a meet-and-confer just more than a week ago, DOJ counsel advised Plaintiffs' that the CIA's final,

intransigent position is that the CIA will refuse to use or accept any search terms proposed by Plaintiffs

and would use its own terms to identify and produce no more than twenty documents in response to

Plaintiffs' Subpoena. *Id.* ¶¶ 54-66.

To support the CIA's inflexible position, the CIA offered generic, unsupported contentions

that fail to address Plaintiffs' concerns about its production and are contradicted by its own actions in

the MDL. DOJ counsel pointed to the CIA's generic and unsupported contention that any discussion

about Plaintiffs' proposed search terms could reveal classified information (from thirty years ago). *Id.*

¶¶ 56-57. In response, Plaintiffs explained that the CIA's position ignores that Plaintiffs' proposed

search terms derive directly from publicly released and declassified CIA documents concerning Sudan,

al Qaeda, and Osama bin Laden. *Id.* ¶ 58. Moreover, the genesis of the proposed methodology was

Plaintiffs' initial proposal which compromised the number of documents to be produced in strict

reliance that the search terms to be used would focus attention on the areas of the Subpoena that

mattered most to Plaintiffs (the CIA's proposal does the opposite). Finally, the CIA had already

engaged in at least some degree of search term dialogue, not only for searches for Plaintiffs and for

Sudan's counsel, but also previously with Plaintiffs' counsel for searches relevant to another defendant,

Al Rahji Bank. *See* Exhibit L (Aug. 5, 2025 Email to J.D. Barnea); Haefele Decl. ¶¶ 36-37.

## E.    CIA's Conditional Production Proposal

The CIA's willingness to conduct any search or produce any documents pursuant to its final,

inflexible proposal was premised on the Plaintiffs agreeing to the CIA's "take-it-or-leave-it" proposal.

Haefele Decl. ¶¶ 59-62. Although DOJ counsel tried to suggest that the prejudice was addressed by a

separate "responsiveness review" that involved CIA reviewers examining the documents selected for

production to ensure that they are relevant to Subpoena requests, the claim does not consider that the

universe of documents from which documents are culled for any "responsiveness review" are from a

pool created by the skewed search terminology.

As of the conclusion of the meet-and-confer, the **only unresolved issue** was whether the CIA must use Plaintiffs' proposed search terms or provide a meaningful and particularized explanation for refusing to do so, in responding to Plaintiffs' Rule 45 Subpoena. *Id.* ¶ 68.

## ARGUMENT

### I.    The Court Has Authority Under Rules 45 And 26 To Compel Compliance with a Non-Party Subpoena In MDL 1570

Federal Rule of Civil Procedure 45 authorizes this Court to compel non-party federal agencies, including the CIA, to produce documents in response to Rule 45 subpoenas like the Subpoena served in this MDL on behalf of the 9/11 Plaintiffs. *In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478 (S.D.N.Y. 2021). Rule 45 expressly empowers litigants to command document production from non-parties and vests enforcement authority in the Court. Fed. R. Civ. P. 45(a)(1)(A)(iii). Where, as here, the Subpoena commands production of documents, the Rule provides a specific mechanism for judicial enforcement. Fed. R. Civ. P. 45(d)(2)(B)(1). Rule 45 makes clear that disputes over burden and compliance are resolved by the Court—not by unilateral agency determination. The exclusive grounds on which a Rule 45 subpoena may be quashed or modified are set forth in Rule 45(d)(3)(A), including undue burden or the disclosure of privileged or otherwise protected material.

In this MDL, this Court has repeatedly exercised direct supervisory authority over non-party federal agencies responding to Rule 45 subpoenas, resolving objections under the Federal Rules rather than deferring to agency discretion. For example, in this Court's March 1, 2021 Opinion and Order, addressing Plaintiffs' motion to compel the FBI, the Court analyzed the Government's objections under Rules 26 and 45, and granted the motion in part and denied it in part after assessing relevance, proportionality, burden, and privilege. *In re Terrorist Attacks*, 523 F. Supp. 3d 478. Notably, the Court did not require Plaintiffs to pursue APA review or treat *Touhy* regulations as a jurisdictional bar. Instead, the Court required the Government to justify non-production through specific privilege

assertions and burden showings, subject to judicial review. *Id.* at 488-490. That approach has governed federal-agency discovery throughout the MDL and reflects the Court's consistent view that Rule 45 subpoenas issued within the MDL are enforceable through ordinary discovery motion practice.

The same framework that the Court applied to the FBI governs the CIA's production here. Legitimate concerns about national security or intelligence sources and methods do not eliminate the Court's authority under Rule 45; they inform the remedy. Rather than the CIA unilaterally determining its own production obligations, it must present for the Court's consideration its objections—including any national-security or sources-and-methods objections—through specific, formally invoked privileges. The Court evaluates those objections under Rules 26 and 45, as it has done with the FBI. Then, the appropriate remedy is tailored judicial protection—not categorical (or *any*) refusal to comply.

The record here demonstrates why judicial intervention is required. Plaintiffs served the CIA Subpoena in March 2025. DOJ transmitted generic objections in April 2025, but has on multiple occasions declined to provide a written, particularized explanation of the CIA's position during the meet-and-confer process over the eleven months of dialogue, stating more recently that an "authoritative" explanation would be provided only in a declaration opposing a motion to compel. That posture is precisely what Rule 45(d)(2)(B) addresses.

## II.    Plaintiffs Met and Conferred in Good Faith and Proposed a Reasonable Search Protocol; the CIA Cannot Impose a Unilateral, Prejudicial Search Methodology Without a Particularized, Court-Reviewable Justification

Courts in this District require cooperation and transparency in ESI search methodology. Producing parties, including government agencies, may not unilaterally dictate keyword searches that skew results or defeat legitimate discovery needs; they must be prepared to explain and defend their approach. *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134, 136 (S.D.N.Y. 2009) (emphasizing in multiple instances the need for parties to cooperate in designing

search terms and methods); *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009) (finding government agency's "blanket refusal to negotiate workable search protocol . . . patently unreasonable.").

Plaintiffs satisfied their meet-and-confer obligations. After serving the Subpoena, Plaintiffs engaged in nearly a year of conferences and written exchanges with DOJ counsel. Plaintiffs proposed a limited, targeted search protocol that facilitated the CIA identifying a universe of documents that addressed Plaintiffs' interests in having served the Subpoena, while ameliorating risks of prejudice presented by using the CIA's proposed search terms. Plaintiffs explained that the CIA's terms would skew the hit universe away from the Subpoena's core focus and toward documents Sudan could exploit to its gain. The CIA took a rigid stand.

Rather than cooperating toward the goal of searching for the documents at the core of the Subpoena's purpose and ameliorating the risk of prejudice, the CIA instead adopted a categorical, take-it-or-leave-it position that leaned into the identified prejudice. At the February 10, 2026 meet-and-confer, DOJ counsel conveyed that the CIA would not accept any Plaintiff-proposed terms, would condition production on Plaintiffs acceding to the CIA's terms and a fixed document cap, and would not provide any written explanation for its positions—asserting that even discussion of Plaintiffs' terms could implicate classified information and that any explanation would appear only in motion practice.

That approach violates Rules 26 and 45. If the CIA contends that use or discussion of Plaintiffs' proposed terms would create a cognizable national-security or sources-and-methods risk, it must make a non-conclusory, reasoned, and particularized showing subject to judicial review, so the Court can determine whether and how to tailor discovery under Rule 26(c). *In re Terrorist Attacks*, 523 F. Supp. 3d 478; *see also Halpern v. FBI*, 181 F.3d 279, 293 (2d Cir. 1999) (in a FOIA context, requiring the government to satisfy its burden by submitting reasonably detailed, non-conclusory affidavits

explaining the basis for withholding, sufficient to permit judicial review). The CIA may not invoke generalized security concerns to impose a unilateral search protocol that prejudices Plaintiffs and undermines the Subpoena's purpose.

## CONCLUSION

Plaintiffs therefore respectfully seek narrow, Court-manageable relief consistent with SDNY practice: an order requiring the CIA: (i) to comply with Plaintiffs' Rule 45 Subpoena by conducting searches using Plaintiffs' proposed terms, (ii) to cooperate in good faith to develop alternative terms that address Plaintiffs' prejudicial skew concerns, and then run searches using those terms, or (iii) submit a particularized declaration from an appropriate CIA official explaining why Plaintiffs' terms cannot be used and what narrower alternatives are justified (or why terms cannot be refined to address Plaintiffs' concerns)—so the Court can resolve the dispute under Rules 26 and 45.


Dated: February 20, 2026

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel of Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

COZEN O'CONNOR

By: /s/ Sean P. Carter
SEAN P. CARTER
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

12

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c)**

I hereby certify that this memorandum of law complies with the word-count limitation set forth in Local Civil Rule 7.1(c).

According to the word-processing system used to prepare this memorandum, the memorandum contains **3,775 words**, excluding the caption, table of contents, table of authorities, and signature block.

Dated: February 20, 2026

Respectfully submitted,

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

13