# EXHIBIT A

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### Southern District of New York

| | | |
|---|---|---|
| In Re Terrorist Attacks on September 11, 2001 | ) | |
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:03-MD-01570-GBD-SN |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                               CENTRAL INTELLIGENCE AGENCY
        _____
                        *(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

### SEE ATTACHMENT A

| Place: Cozen O'Connor, 2001 M Street NW, Suite 500<br>Washington, DC  20036 | Date and Time:<br><br>04/17/2025 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   03/18/2025
        _____

                *CLERK OF COURT*
                                                        OR

        _____              _____
        *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____

 Plaintiffs' Executive Committees        _____ , who issues or requests this subpoena, are:

 Sean P. Carter, Cozen O'Connor, 1650 Market St., 28th Fl., Phila., PA 19103; scarter1@cozen.com; 215-665-2105

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:03-MD-01570-GBD-SN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

### I.    Instructions and Definitions:

1.    This subpoena is issued pursuant to Rule 45 of the Federal Rules of Civil Procedure, and all documents specified below are required to be produced as required by Rule 45.

2.    Each document responsive to this subpoena shall be produced in its entirety, together with all non-identical copies and drafts, and without abbreviation or redaction, subject only to credible assertions of privileges recognized under the common law.

3.    If You assert a privilege or other authorized protection with respect to any document requested herein, You must produce all non-privileged/protected portions of the document with those portions as to which a privilege/protection is claimed redacted, and You must provide a privilege log that conforms with the requirements set forth in the Order of United States Magistrate Judge Frank Maas dated November 19, 2012 (ECF No. 2644), in the case captioned *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (S.D.N.Y.), including by providing the following information concerning each individual document withheld or redacted:

   a.    The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

   b.    The general subject matter of the document;

   c.    The date of the document;

   d.    The authors of the document, the addressees of the document and any other recipients, and where not apparent, the relationship of the authors, addressees, and recipients to one another;

   e.    If the document is an electronic document, its file size; and

   f.    Each and every basis for the privilege or protection claimed; and if a privilege or protection asserted is based upon or governed by a law, statute, regulation, or rule, citing to the specific law, statute, regulation, or rule being invoked.

4.    This subpoena is different from a records request under the Freedom of Information Act ("FOIA"). Accordingly, no document responsive to this subpoena shall be withheld or redacted pursuant to FOIA exemptions.

5.    As used herein, the following terms are defined as follows:

   a)    The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" and "any designated tangible things" as used in Fed. R. Civ. P.

34(a)(1)(A) and (B).  A draft or non-identical copy is a separate document within the meaning of this term.

b)     The terms "You" and "Your" means the Central Intelligence Agency, including without limitation any directorate or part of the Central Intelligence Agency, and any official, employee, agent, or representative of the Central Intelligence Agency.

c)     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

d)     The term "person" means any natural person or any legal entity, including, without limitation, any business or association or governmental entity.

e)     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

f)     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

g)     The terms "the Republic of the Sudan" and "Sudan" shall refer to the government of Sudan, including without limitation its officers, directors, employees, members, agents, instrumentalities, subsidiaries, agencies, ministries, councils, organs, components, political subdivisions, government committees, and Sudanese embassies and consulates, notably the Sudanese Mission to the United Nations, and the Embassy of Sudan in Washington D.C.

h)     The term "Al-Qaeda-controlled businesses" shall refer to Wadi al Aqiq (a/k/a Wadi al Aqiq Company, Ltd., وادي العقيق); Al-Hijra Construction Company (a/k/a Al Hijrah Construction and Development, Ltd., شركة الهجرة للإنشاء والتعمير); Al Themar al Mubarakah Agriculture Company Ltd., الثمار المباركة (a/k/a Al Timar al Mubarikah; a/k/a Blessed Fruits Company); Ladin International Company (a/k/a Bin Ladin International, شركة بن لادن العالمية); Taba Investment Company, Ltd., طابا للاستثمار; Khartoum Tannery; Qudarat Transport Company (a/k/a Al Qudarat Transport Company, شركة القدرات للنقل); International al Ikhlas Company (a/k/a Al Ikhlas International Company, شركة الإخلاص; a/k/a Al-Ikhlas al-Almiyya); Al-Shamal Islamic Bank; Atyaf Investments; Dad Corporation; Tesdir al-Khudrawat Wa Faqiha Company; Tahsin Salalat al-Abqar; Al-Mashari al-Zira'iya Kassal; Al-Mutahin Company; Al-Waha Building; Mu'tasib Sidiq al-Alama Company; Al-Athathat Company; Qimam Company; Fardos Company; Zarqani Company; Salt Company; and Abu Musab Company.

## II.     **Documents to be Produced**:

1.     All documents concerning (1) the U.S. government's designation of the Republic of the Sudan as a State Sponsor of Terrorism on August 12, 1993; and (2) the U.S. government's subsequent assessments and determinations that Sudan should remain on the State Sponsor of Terrorism list through December 14, 2020.

2.     The Sudanese Mukhabarat's intelligence file(s) concerning Osama bin Laden and al Qaeda, provided to the CIA by the government of Sudan beginning in or around 2001.[1]

3.     All documents supporting the CIA's assessment in *Al-Qa'ida in Sudan, 1992-96: Old School Ties Lead Down Dangerous Paths*, March 10, 2003, at p. 3 ("Financial Infrastructure"), that Osama bin Laden and al Qaeda benefited from an influx of financial investment and business partnerships while based in Sudan, including the following:

     a)     "Merchants in Saudi Arabia who built business ties to Bin Ladin's companies in Sudan, and who also finance extremists," include members of the Al Rajhi family, Yassin Qadi, Adil Batarji,[2] and others;

     b)     "Bin Laden's Sudan-based companies and his financial officers opened bank accounts and letters of credit at Dubai Islamic Bank (DIB) with the active help of DIB Chairman Sa'id Ahmed Lootah;" and

     c)     "The Bin Laden family, with the backing of the Saudi Development Bank, invested heavily … in establishing and building up [bin Laden's] own businesses in Khartoum."

4.     All documents supporting the CIA's assessment in *Usama Bin Ladin's Finances: Some Estimates of Wealth, Income, and Expenditures*, November 17, 1998, at pp. 6, 10, and 21, that Osama bin Laden, his companies, and high-ranking members of al Qaeda received extensive support from Dubai Islamic Bank ("DIB") and DIB Chairman Saeed Ahmed Lootah while based in Sudan, including the following:

     a)     "Bin Ladin, financial officer Madani Al-Tayyib, and other Al-Qa'ida members held numerous accounts at Dubai Islamic Bank because of Bin

---

[1] *See* David Rose, *The Osama Files*, Vanity Fair, January 2002 (During the 1990s, Sudan's intelligence division, the Mukhabarat, amassed a trove of intelligence concerning "Osama bin Laden and his leading cohorts at the heart of the al-Qaeda terrorist network," "individuals who played central roles in the suicide bombings of the U.S. Embassies in Tanzania and Kenya in August 1998," and "the backgrounds and movements of al-Qaida operatives who are said to be directly linked to the atrocities of September 11." Gutbi al Mahdi, the former Mukhabarat chief, confirmed that a joint FBI-CIA team examined the Mukhabarat's materials on al Qaeda.). *See also* Ken Silverstein, *Official Pariah Sudan Available to America's War on Terrorism*, Los Angeles Times, April 29, 2005 (reporting that Sudanese intelligence, under the leadership of Director Salah Abdallah Gosh, was sharing intelligence data and evidence with the United States concerning al Qaeda and terrorism); *id.* (reporting that Sudanese intelligence was turned over to the United States by Maj. General Yahia Hussein Babiker, Sudan's deputy intelligence chief); *id.* (indicating that "the Sudanese turned over to the U.S. a stack of intelligence files several inches thick").

[2] *See also* CIA Report, *Saudi-Based Financial Support for Terrorist Organizations*, November 14, 2002, at p. 3 (stating that "Shaykh Adil Batterjee" has been closely associated with al Qaeda businesses in Sudan).

Ladin's reported personal friendship with DIB Chairman, Saeed Ahmed Lootah;"

    b)    "DIB Chairman Saeed Ahmed Lootah authorizes—stamps and signs—some of Bin Ladin's letters of credit;" and

    c)    "Dubai Islamic Bank (DIB) has served as a key financial conduit for Al-Qaida and for Bin Ladin's companies in Sudan, [REDACTED] Bin Ladin and his companies maintained [REDACTED] accounts at DIB [REDACTED] DIB Chairman Saeed Ahmed Lootah is a close friend of Bin Ladin's."

5.    All documents supporting the CIA's assessment in *Funding Islamic Extremist Movements; The Role of Islamic Financial Institutions*, at pp. iii, 8, and 20, that Osama bin Laden and his Sudan-based companies received extensive support from Dubai Islamic Bank ("DIB") and DIB Chairman Saeed Ahmed Lootah, including the following:

    a)    "Dubai Islamic Bank (DIB) is a key financial conduit for Usama Bin Ladin's Islamic Army…. The bank's chairman, Saeed Ahmed Lootah is a member of the [Musim Brotherhood] and a close friend of Bin Ladin's, [REDACTED] Bin Ladin and his Sudan-based companies maintain several accounts at DIB;"

    b)    "Lootah is a close friend and business associate of Usama Bin Ladin's … Bin Ladin's Sudan-based companies are customers of DIB;" and

    c)    "DIB Chairman Lootah personally authorized, stamped, and signed some letters of credit opened by Bin Ladin's companies in Khartoum through DIB."

6.    All documents concerning al Qaeda members and financial officers Abu Hammam al Saudi (a/k/a Abu Hammam; a/k/a Abu Hamam), Saidi Madani al Tayyib (a/k/a Abu Fadil, Abu Faid al Makki), Mustafa Ahmad Uthman Abu al Yazid (a/k/a Sheikh Sa'id al Masri; a/k/a Saeed al Masri), and Jamal Ahmed al Fadl.

7.    All documents concerning the terrorist training camps established and operating in Sudan during the 1990s under the control and oversight of Osama bin Laden, al Qaeda, the NIF, Sudanese intelligence, and/or the Sudanese military, including but not limited to the Hilat Koko camp, Soba camp, Damazine camp, Merkhiyat camp, Al Shambat camp, Al Mazraa camp, and Elefansa Popular Defense camp.

8.    All documents concerning the "Al-Qaeda-controlled businesses."

9.    All documents concerning Osama bin Laden, al Qaeda, and the Al-Qaeda-controlled businesses' association with the following banks operating in Sudan during the 1990s: Al Shamal Islamic Bank, Faisal Islamic Bank of Sudan, Dar al Maal al Islami Trust ("DMI"), Tadamon Islamic Bank, Farmers Bank for Investment and Rural Development, Islamic West Bank, Bank of Khartoum, Bank of Saudi-Sudani, Al Baraka Sudanese Bank

(including the Al Burg branch), Animal Resources Bank, and Nileim Industrial Development Bank.

10.    All documents concerning the issuance of government documents by the Government of Sudan (e.g., passport) to Osama bin Laden and members of al Qaeda.

11.    All documents concerning the U.S. government's investigation of the New York City "Landmark Plot,"[3] thwarted in June 1993 by U.S. law enforcement. Responsive documents shall include all materials detailing and describing the involvement of the Republic of the Sudan and/or the National Islamic Front ("NIF") and/or any Sudanese officials and/or any NIF office-holders in the Landmark Plot.

12.    All documents concerning the involvement of the Sudanese Mission to the United Nations in the Landmark Plot, including but not limited to the Mission's provision of financial, material, logistical, religious, or other assistance to the conspirators in the Landmark Plot.[4]

13.    All documents concerning the involvement of Sudanese intelligence officers Siraj Yousif (identified as a counselor to the Sudanese Mission) and Ahmed Yousef Mohamed (identified as the third secretary to the Sudanese Mission) in the Landmark Plot, including but not limited to their provision of financial, material, logistical, religious, or other assistance to the conspirators in the Landmark Plot.[5]

14.    The following CIA reports and cables:

　　　　a)    CIA Intelligence Report, Office of Near Eastern, South Asian, and African Analysis, *Sudan: A Primer on Bilateral Issues with the United States*, May 12, 1997.

　　　　b)    CIA Cable, [Title and Subject Matter Redacted], August 1997. *See* Exhibit 1.

---

[3] The "Landmark Plot," intended as a follow-up attack to the 1993 World Trade Center bombing, was a plan to bomb the United Nations headquarters in Manhattan, the Lincoln and Holland Tunnels, the George Washington Bridge, the New York headquarters for the FBI, U.S. military installations, and other targets. Five of the original twelve defendants later convicted for their roles in the Landmark Plot included Sudanese nationals Siddig Ibrahim Siddig Ali, Tariq El-Hassan, Amir Abdelghani, Fadil Abdelghani, and Fares Khallafalla. The other defendants were Omar Ahmad Ali Abdel Rahman, El Sayyid A. Nosair, Ibrahim A. El-Gabrowny, Clement Hampton-El, Mohammed Saleh, Victor Alvarez, and Matarawy Mohammed Said Saleh.

[4] *See* Testimony of Steven Emerson, Hearing of the Subcommittee on African Affairs, Committee on Foreign Relations, One Hundred and Fifth Congress, S. Hrg. 105-223, May 15, 2007 (testifying that the ringleader of the Landmark Plot, Siddig Ibrahim Siddig Ali, "was very close to the Islamic leadership in the Sudan" and represented to his co-conspirators "that he could obtain critical help from the Sudanese mission at the U.N. to obtain credentials, license plates, and ID cards required to drive an explosive-laden Lincoln car into the parking garage adjacent to the U.N.").

[5] *See* Opening Statement of Senator John Ashcroft, Hearing of the Subcommittee on African Affairs, Committee on Foreign Relations, One Hundred and Fifth Congress, S. Hrg. 105-223, May 15, 2007 ("Two Sudanese diplomats at the United Nations in New York conspired to help Jihad terrorists gain access to the U.N. complex to bomb the building."). *See also* Irvin Molotsky, *U.S. Expected to Place Sudan on Terrorist List*, The New York Times, August 17, 1993 (identifying Siraj Yousif and Ahmed Yousef Mohamed as Sudanese diplomats and intelligence officers involved in the bombing plot).

    c)       CIA Cable, [Title and Subject Matter Redacted], March 1999. *See* Exhibit 2.

    d)       CIA Report, *Near East: UAE: Imposition of Sanctions Could Disrupt Bin Ladin's Finances*, September 6, 1999.

    e)       CIA Cable, Terrorism: Activities and Functions of the Islamic Army's Military Committee, and Political and Sharia Committee; Process of Approving Terrorist Operations, December 19, 1996.

    f)       CIA Cable, [REDACTED] Planning by Usama Bin Ladin to Hijack U.S. Airplane; Successful Circumvention of Security Measures in U.S. Airport, December 1998.

    g)       CIA Cable, *Terrorism: Discovery That 11 September 2001 Hijacker Mohamed Atta Did Not Travel to the Czech Republic on 31 May 2000*, December 2001.

    h)       CIA Cable, *Presence of Al-Qa'ida Operative Tawfiq Muhammad Bin Salah Bin Rushayd Bin Attash in Los Angeles in Summer 2000; Association of Bin Attash With U.S.-Based Extremists*, March 2003.

    i)       CIA Senior Executive Intelligence Brief, *Bin Laden Evading Sanctions*, March 27, 2000.

    j)       CIA Report, *Name Variants and Aliases of 11 September Hijackers and Associates as of 11 March 2004*.

    k)       CIA Report, *Fraudulently Acquired Saudi Passports Facilitate Al-Qa'ida Travel*, December 6, 2002.

    l)       CIA Report, *Expanding Links Between Alien Smugglers and Extremists: Threats to the United States*, July 6, 2001.

15.    The following CIA and intelligence reports, memoranda, cables, and other documents cited in the endnotes to the Final Report of the National Commission on Terrorist Attacks Upon the United States ("9/11 Commission Report"):

**Chapter 2 – The Foundation of the New Terrorism (pp. 466-71)**

    a)       Intelligence Report, *Bin Ladin's business activities in 1992*, March 31, 1994.  (Note 35 to Chapter 2)

    b)       Intelligence Report, *Bin Ladin's business activities in 1992*, March 31, 1994; Intelligence Report, *Shipment of Arms and Boats to Yemen for Use by an lslamic Extremist*, August 9, 1996. (Note 37 to Chapter 2)

c)  Intelligence Report, *Usama Bin Ladin Links to a Southern Yemeni Group*, March 5, 1997. (Note 44 to Chapter 2)

d)  Intelligence Report, *Terrorism: Usama Bin Ladin's Attempts to Acquire Uranium*, March 18, 1997; CIA Analytic Report, *Terrorism: Usama Bin Ladin Trying to Develop WMD Capability?*, January 6, 1997. (Note 49 to Chapter 2)

e)  Intelligence Report, *al Qaeda and Iraq*, August 1, 1997. (Note 54 to Chapter 2)

f)  Intelligence Reports, *interrogations of detainee*, May 22, 2003 and May 24, 2003; Intelligence Reports made available to the Commission. (Note 55 to Chapter 2)

g)  Intelligence Reports, *interrogations of detainee*, September 17, 1998 and August 4, 1999. (Note 59 to Chapter 2)

h)  Intelligence Report, interrogation of KSM, February 20, 2004; Intelligence Report, Timeline of events from 1993 bombing of World Trade Center through 9/11 (citing cables from April. 1997). (Note 72 to Chapter 2)

i)  Intelligence Report, *interrogation of detainee*, February 20, 2002; CIA Analytic Report, *Ariana Afghan Airlines: Assets and Activities*, OTI IR 1999-170CX, July 29, 1999; CIA, NID, *Near East: UAE: Imposition of Sanctions Could Disrupt Bin Ladin's Finances*, June 9, 1999. (Note 77 to Chapter 2)

j)  CIA Analytic Report, *Terrorism: Extremists Planning Attacks Against U.S. Interests in Pakistan*, November 29, 2001. (Note 80 to Chapter 2)

k)  Intelligence Report, *Terrorism: Incorporation of Ayman Zawahiri's Al-Jihad Organization into Usama Bin Ladin's Al-Qa'ida; Recent Activities of Egyptian Associates of Al-Qa'ida*, September 22, 1998. (Note 82 to Chapter 2)

l)  Intelligence Report*: Al Qaeda Targeting Study of U.S. Embassy, Nairobi, Kenya*, April 5, 1999. (Note 85 to Chapter 2)

## Chapter 4 – Responses to Al Qaeda's Initial Assaults (pp. 479-88)

m)  Intelligence Report, *Sudanese links to Egypt's Gama'at al-Islamiya and training of Egyptians*, July 14, 1993; Intelligence Report, *funding by bin Ladin of Gama'at al-Islamiya by Bin Ladin and composition of its Sudanese wing*, July 22, 1993; Intelligence Report, *Bin Ladin links to materials related to WMD*, March 20, 1997 (Note 1 to Chapter 4)

n)    Intelligence Reports on the structure of al Qaeda and leadership composition, December 18, 1996; Intelligence Reports on connections and collaboration with other terrorist groups and supporters, February 7, 1997; Intelligence Report on Bin Ladin's efforts to acquire WMD materials (March 18, 1997); CIA cable on the other walk-in source, January 3, 1997. (Note 3 to Chapter 4)

o)    CIA Cable, May 8, 1996; CIA Memo, Walter to Acting DCI, *Africa Division's Recommendations Regarding Sudan*, December 17, 1996. (Note 7 to Chapter 4)

p)    CIA Memo, *DCI Talking Points Regarding Operations Against Usama Bin Ladin*, August 25, 1997. (Note 8 to Chapter 4)

q)    CIA Cable, *DCI Meeting with Bandar*, July 3, 2001. (Note 66 to Chapter 4)

r)    Intelligence Report, *Bin Ladin Preparing to Hijack U.S. Aircraft and Other Attacks*, December 4, 1998. (Note 112 to Chapter 4)

s)    Intelligence Report, *Possible Arrest of Two Persons Involved in Plan to Hijack U.S. Airplane in the United States*, December 18, 1998; Intelligence Report, *Timeframe for Completion of Hijacking Operation*, December 24, 1998; Intelligence Report, *Claim That Bin Ladin Postponed Hijacking*, January 8, 1999; CIA Analytic Report, *Reporting on al Qaida's Plans to Use Aircraft as Terrorist Weapons*, August 26, 2002. (Note 113 to Chapter 4)

t)    CIA Report, *Further Options Available Against Usama Bin Ladin*, November 18, 1998; CIA Talking Points, *Options for Attacking the Usama Bin Ladin Problem*, November 24, 1998. (Note 121 to Chapter 4)

u)    CIA Report, *Talking Points: CIA Operations Against Usama Bin Ladin*, February 10, 1999. (Note 157 to Chapter 4)

v)    CIA Briefing Materials, *Executive Summary for UBL Conference*, September 16, 1999. (Note 194 to Chapter 4)

## Chapter 5 – Al Qaeda Aims at the American Homeland (pp. 488-99)

w)    Intelligence Report, *1996 ATF Study on Airplane Hijacking Operations*, September 26, 2001. (Note 34 to Chapter 5)

x)    CIA Analytic Report, *Financial Links of al Qaeda Operative*, CTC 2002-30060CH, June 27, 2002. (Note 120 to Chapter 5)

**Chapter 7 – The Attack Looms (pp. 513-33)**

y)     CIA Analytic Report, *Afghanistan Camps Central to 11 September Plot: Can Al-Qa'ida Train on the Run?*, CTC 2003-40071CH, June 20, 2003. (Note 89 to Chapter 7)

**Chapter 8 – The System Was Blinking Red (pp. 533-41)**

z)     CIA Cable, *Biographical Information on Key UBL Associates in Afghanistan*, June 11, 2001; Intelligence Report, *Terrorism: Biographical Information on Bin Ladin Associates in Afghanistan*, June 12, 2001. (Note 111 to Chapter 8)

# Exhibit 1

(b)(1)
(b)(3)
EO 12958 1.4(b)<25Yrs
EO 12958 1.4(c)<25Yrs
EO 12958 1.4(d)<25Yrs
EO 12958 1.4(e)<25Yrs
EO 12958 3.5(c)
EO 12958 6.2(c)

~~SECRET~~

TOT: 011920Z AUG 97

TO:   NIMA NAVY YARD WASHINGTON DC, DIRNSA,
SECSTATE WASHDC//INR/DSITA/SCT//, DIA WASHINGTON DC,
DA WASHINGTON DC, CNO WASHINGTON DC, CMC WASHINGTON DC,
CSAF WASHINGTON DC, TREASURY DEPT, SECRET SERVICE//ID//,
FEDERAL BUREAU OF INVESTIGATION,
DEPARTMENT OF JUSTICE WASH DC//OIPR//, DEA WASHDC//OI//,
DOEHQ//IN//, WHITE HOUSE SITUATION ROOM, FAA NATIONAL HQ,
DEPT OF TRANSPORTATION//S-60//,
IMMIGRATION AND NATURALIZATION SERVICE, US CUSTOMS SERVICE W.

CENTRAL INTELLIGENCE AGENCY
-----------------------------
WARNING: INFORMATION REPORT, NOT FINALLY EVALUATED INTELLIGENCE

APPROVED FOR
RELEASE⊓ DATE:
25-April-2012

C05373668

SECRET

C05373668

SECRET

PLAN TO ESTABLISH AN IRAQI
ELEMENT IN BIN LADIN'S ISLAMIC ARMY, WHICH WOULD BE
ANTI-((SADDAM)) HUSAYN

SUDANESE NATIONAL ISLAMIC FRONT (NIF), HOWEVER, LEARNED OF THIS
AND REQUESTED THAT BIN LADIN REFRAIN FROM ESTABLISHING SUCH A
GROUP, BECAUSE THE NIF SUPPORTED SADDAM.  THE NIF WAS CONCERNED
THAT SADDAM WOULD LEARN ABOUT THE ISLAMIC ARMY IRAQI ISLAMISTS AND
THAT THIS WOULD DAMAGE NIF-IRAQI RELATIONS.  BIN LADIN AGREED

BIN LADIN PROVIDED SOME ASSISTANCE TO THE KURDS, HOWEVER

C05373668

SECRET

C05373668

SECRET

SECRET

# Exhibit 2

(b)(1)
(b)(3)
EO 12958 1.4(b)<25Yrs
EO 12958 1.4(c)<25Yrs
EO 12958 1.4(d)<25Yrs
EO 12958 1.4(e)<25Yrs
EO 12958 3.5(c)
EO 12958 6.2(c)

~~SECRET~~

TOT: 161436Z MAR 99

TO:    PRIORITY NIMA NAVY YARD WASHINGTON DC, DIRNSA,
SECSTATE WASHDC//INR/DSITA/SCT//, DIA WASHINGTON DC,
DA WASHINGTON DC, ONI WASHINGTON DC, CNO WASHINGTON DC,
CMC WASHINGTON DC, CSAF WASHINGTON DC, TREASURY DEPT, DOEHQ//IN//,
WHITE HOUSE SITUATION ROOM, FEDERAL BUREAU OF INVESTIGATION,
SECRET SERVICE//ID//, DEPARTMENT OF JUSTICE WASH DC//OIPR//,
DEA WASHDC//OI//, COGARD INTELCOORDCEN WASHINGTON DC,
DEPT OF TRANSPORTATION//S-60//,
IMMIGRATION AND NATURALIZATION SERVICE, US CUSTOMS SERVICE W.

CENTRAL INTELLIGENCE AGENCY
-------------------------------
WARNING: INFORMATION REPORT, NOT FINALLY EVALUATED INTELLIGENCE

APPROVED FOR
RELEASE☐ DATE:
25-April-2012

Page 1

SECRET

IRAQI DELEGATION                 MEET
WITH USAMA ((BIN LADIN)) IN AFGHANISTAN.

ARRANGED FOR A
MEETING WITH BIN LADIN              THROUGH AN EGYPTIAN FRIEND,
DR. AHMAD                ZAWAHRI).

   3.   THE MAIN OBJECTIVE OF THIS MEETING WAS TO COORDINATE
ACTIVITIES WITH ANTI-UNITED STATES (U.S.) ISLAMIC EXTREMIST
ORGANIZATIONS

SECRET

Page 3

SECRET