# EXHIBIT B

```
                                                                    1
      P24D911C

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    In re Terrorist Attacks on            03 MD 1570(GBD)(SN)
      September 11, 2001
 4
      ------------------------------x
 5
                                             New York, N.Y.
 6                                           February 4, 2025
                                             10:00 a.m.
 7
      Before:
 8
                         HON. SARAH NETBURN,
 9
                                     U.S. Chief Magistrate Judge
10
                              APPEARANCES
11
      COZEN O'CONNOR
12         Attorneys for Executive Committee Plaintiffs
      BY:  SEAN P. CARTER
13         J. SCOTT TARBUTTON

14    KREINDLER & KREINDLER LLP
           Attorneys for Bauer and Ashton Plaintiffs
15    BY:  STEVEN R. POUNIAN
           JAMES GAVIN SIMPSON
16         MEGAN WOLFE BENETT
           ANDREW J. MALONEY, III
17
      MOTLEY RICE LLC
18         Attorney for Executive Committee Plaintiffs
      BY:  DONALD A. MIGLIORI
19         ROBERT T. HAEFELE

20    BAUMEISTER & SAMUELS, P.C.
           Attorneys for Bauer and Ashton Plaintiffs
21    BY:  DOROTHEA M. CAPONE

22
      ANDERSON KILL, P.C.
23         Attorneys for Executive Committee Plaintiffs
      BY:  JERRY S. GOLDMAN
24         BRUCE STRONG
           ALEXANDER GREENE
25         JEREMY SHOCKETT
```

1         So let me hear from you on sort of that structure and
2    the types of depositions that you right now reasonably
3    anticipate would be necessary to conduct before deposition
4    discovery in the main starts.
5         MR. CARTER:  Sure, your Honor.
6         I think what your Honor described is largely correct,
7    with one caveat.  In parallel to the document discovery, we'd
8    also like to serve interrogatories for purposes of ferreting
9    out the current status of the documents, whether or not
10   repositories have been destroyed, what steps, if any, have been
11   undertaken to preserve documents, because we're starting
12   discovery 20 some years after the principal actions were
13   commenced, and we think there is a significant likelihood much
14   of the evidence has been destroyed, lost, and is no longer
15   available.
16        We think it is in the interest of the Court and
17   parties to get to the bottom of those issues as soon as
18   possible, rather than kicking that can down the road.
19        THE COURT:  Can you just speak up a little bit?  I'm
20   having a hard time, and I think the court reporter is, also.
21        MR. CARTER:  Sure.
22        Again, we think it's best to get to the bottom of the
23   current status of the evidence, as well as Sudan's commitment
24   to fulfill its discovery obligations and ability to do so
25   sooner rather than later.

1        THE COURT:  Have you had informal conversations with
2   Ms. Erb about what is likely available, what may not be
3   available?
4        MR. CARTER:  We have, your Honor.  We asked in the
5   meet-and-confer whether or not steps have been taken to
6   preserve evidence responsive to this litigation.  We were told
7   that Sudan's counsel was not going to discuss with us issues
8   that they had discussed with their client.
9        We had asked whether or not repositories that were
10  likely to house key evidence had been compromised or destroyed
11  in any of the ongoing conflicts since.  We were told that they
12  were working through those issues with their client.
13       So via the informal process, we haven't gotten any
14  indications, and we're cognizant from press reports that there
15  are circumstances on the ground that lead us to conclude that
16  evidence may no longer be available.  And we want to ferret
17  that out as soon as possible.
18       The way that we anticipate doing that is of course
19  document discovery itself, and we think if that's kept on a
20  relatively short leash in the early -- at least, initially,
21  we'll get a sense of where the document discovery is headed.
22  We want to serve some interrogatories right now, largely and
23  essentially limited to document preservation, status, and
24  what's happened in the repositories.
25       We're not looking to do wholesale discovery via

P24D911C

1       interrogatories on contentious issues or substantive issues.
2       We're focused really on the status of the evidence.
3              THE COURT: How quickly can you get those discovery
4       demands out?
5              MR. CARTER: I think we suggested interrogatories
6       would go at the same time as the document requests, and the
7       parties were in agreement that would be 30 days.
8              Sometime, while the document process is ongoing, we'd
9       like to do a 30(b)(6) witness, Sudanese official who can
10      testify to the preservation efforts, as well as the current
11      status of the documents. The Sudan has objected to that under
12      the theory that it's duplicative of the interrogatories, but
13      that's not an objection that's valid under the laws or the law
14      in this circuit.
15             Parties are entitled to give testimony on these
16      issues, and the fact is a 30(b)(6) deposition is fundamentally
17      different from interrogatories, which are going to be crafted
18      by attorneys. The 30(b)(6) deposition is active discussion
19      that is going to ferret out exactly what has happened here,
20      what steps were taken, and, again, we think this is critical,
21      because of where we are.
22             We know that we have already lost testimony of key
23      witnesses. Hassan Al-Turabi, one of the architects of Sudan's
24      program of support for Al Qaeda died in 2016. His testimony is
25      no longer available precisely because Sudan didn't appear for

1 so many years.  Omar al-Bashier, the former president and
2 co-architect, is no longer a government official.  He was a
3 government official until 2019, so he would have been available
4 to be deposed for the first 17, 16 years of this litigation,
5 but for the fact that Sudan didn't appear.  And we see a
6 likelihood the documents are not available at this point in
7 time, and we simply want to get to the bottom of that sooner
8 rather than later.
9          THE COURT:  So I think pursuing with interrogatories
10 makes a lot of sense as a general matter.  I don't think
11 parties have a right to discovery on discovery, which is
12 essentially what these 30(b)(6) depositions look like.  I have
13 certainly ordered discovery on discovery, but after there's
14 been a showing that it's necessary.
15          So it seems to me to have you jump right into a
16 30(b)(6) deposition on the availability of documents before
17 you've received responses to interrogatories and had some
18 meet-and-confers seems a little premature.  So my
19 recommendation, which may end up being more than a
20 recommendation, is that you pursue these interrogatories, and
21 that you get them out as quickly as you can, and that we
22 schedule a status -- either a status letter or a status
23 conference 90 days from now, when you expect to have responses
24 and have conducted a meet-and-confer to see whether or not you
25 reasonably believe that a 30(b)(6) deposition will then help

P24D911C

1   you find the discovery to which you're entitled.

2         MR. CARTER:  That works, your Honor.

3         I think we did anticipate that the 30(b)(6) would

4   trail the interrogatories, just that it would still happen

5   within the six-month period.  When we wrote our proposal, we

6   tried as best we could to sort of predict and forecast for the

7   Court the things we were likely to do early in the discovery

8   process, so we could have some foresight about that and do some

9   planning on the front end.  So we welcome the Court's thoughts

10  on that, and that all makes sense.

11        The one other issue that we can address at the time is

12  that Sudan is taking the position that it shouldn't be required

13  to produce more than one 30(b)(6) representative.  In other

14  words, that we should have to do all of the testimony on every

15  subject raised by this litigation via a single 30(b)(6)

16  deposition.

17        We don't think that that's appropriate.  The

18  likelihood is that most of the fact witnesses from the time are

19  not going to be available to testify, and so most of the

20  testimony in this proceeding from Sudan is going to have to be

21  secured via 30(b)(6) deposition.  So we may need to take

22  topic-based 30(b)(6) depositions and segment them out so we

23  have adequate time to actually explore the issues, as opposed

24  to trying to cover them all in a single 30(b)(6) that's seven

25  hours.  But that's down the road.  We're just sort of