# EXHIBIT C



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

May 9, 2025

**BY ELECTRONIC MAIL**
Christopher E. Curran, Esq.
Nicole Erb, Esq.
Celia McLaughlin, Esq.
White & Case LLP

Re:  *In re Terrorist Attacks*, 03 MDL 1570 (GBD) (SN)
Objections to Defendant Republic of Sudan's Subpoenas to CIA,
FBI, USMS, and State

Dear Counsel:

In accordance with Federal Rule of Civil Procedure 45(d)(2)(B), this letter sets forth objections to the subpoenas (the "Subpoenas") served by defendant the Republic of Sudan on the Central Intelligence Agency ("CIA"), Federal Bureau of Investigation ("FBI"), U.S. Marshals Service ("USMS") and Department of State ("State") (collectively, the "Agencies") on or about April 25, 2025. As discussed below, the Agencies object to the Subpoenas as currently drafted. The Agencies request that you narrow the Subpoenas substantially.

***The Subpoenas and Associated Touhy Requests***

The Subpoenas and associated *Touhy* requests to the CIA, FBI, and State seek the following categories of records and information[1]:

(1) All documents concerning the activities of Osama Bin Laden in Sudan from 1991-1996;[2]
(2) All documents concerning the departure of Osama Bin Laden from Sudan in or around May 1996;

---

[1] The numbered categories below correspond to the request numbers in the Subpoenas and *Touhy* requests to the CIA, FBI, and State, except that some requests are numbered differently in the State Subpoena and *Touhy* request, as indicated.

[2] Including, without limitation, and "[d]ocuments considered and/or relied upon in drafting the State Department's annual reports titled 'Patterns of Global Terrorism,' published each year during the period from 1991-1996," and "the State Department's August 14, 1996 publication titled 'State Department Issues Factsheet on Bin Ladin.'"  State *Touhy* Request, Att. at 3.

(3) All documents concerning the activities of Osama Bin Laden and his associates after Bin Laden departed Sudan in or around May 1996 through 2001;[3]

(4) All documents concerning Osama Bin Laden's purported businesses in Sudan and Al Qaeda's purported activities in Sudan, without date limitation;[4]

(5)-(7) (items 7-9 in State Subpoena) All documents concerning offers made by Sudan to extradite or otherwise deliver Osama Bin Laden to the United States, Saudi Arabia, or any other country in 1996 or earlier, and the CIA, FBI, and State's consideration and acceptance or rejection of such offers;

(8) (item 12 in State Subpoena) All documents concerning communications from Sudan to the United States concerning requests to share intelligence or other information about Osama Bin Laden from 1991-2002;[5]

(9) (item 13 in State Subpoena) All documents concerning any actual exchange of intelligence or other information between Sudan and the United States concerning Osama Bin Laden and/or Al Qaeda from 1991 to 2002;

(10) (item 16 in State Subpoena) All documents concerning the bombing of a pharmaceutical factory in Khartoum, Sudan known as "Al-Shifa" or "El Shifa" on August 20, 1998;

(11) (item 18 in State Subpoena) All documents concerning Jamal al Fadl's activities in Sudan and his cooperation as a government witness in the United States; and

(12) (item 19 in State Subpoena) Information sufficient to establish and explain the "withdrawal" of approximately 100 United States intelligence reports regarding Sudan in 1996.

---

[3] Including, without limitation, "[d]ocuments considered and/or relied upon in drafting the State Department's annual reports titled 'Patterns of Global Terrorism,' published each year during the period from 1997-2002." State *Touhy* Request, Att. at 5.

[4] Including, without limitation, two purported CIA reports, "as well as all documents that may tend to contradict the allegations or conclusions in these reports," CIA *Touhy* Request, Att. at 3, and a purported State Department cable and "all [d]ocuments considered in preparing that cable," State *Touhy* Request, Att. at 6.

[5] Including, without limitation, (a) communications between the United States and Elfatih Erwa in or around March 1996, (b) communications regarding an offer in July 1996 regarding permission to photograph two locations in Sudan, (c) communications regarding an offer in April 1997 of access to Sudan's counter-terrorism intelligence, (d) documents regarding meetings or communications with Ambassador Mahdi Ibrahim Mohamed from 1996 to 1999 regarding an offer to share intelligence, (e) documents regarding meetings or communications with Mansoor Ijaz from 1996-2002 regarding such offer to share intelligence, (f) documents regarding meetings or communications with Salah Gosh from 1991 to 2002 regarding such offer to share intelligence, (g)-(i) documents regarding certain communications on February 5, 1998, June 24, 1998, and April 5, 1997, (j) documents regarding meetings or communications with Janet McElligott concerning Sudan from 1997 to 2000, including a certain communication in 1998 or 1999, and (k) communications from Sudan to an FBI legal attaché in Egypt in 1995. CIA *Touhy* Request, Att. at 6-7 (items a-f); FBI Touhy Request, Att. at 5-7 (items a-k); State *Touhy* Request, Att. at 12-13 (items a-j).

CIA *Touhy* Request, Att. at 3-10; FBI *Touhy* Request, Att. at 3-11; State *Touhy* Request, Att. at 3-20.

Your Subpoenas and *Touhy* Requests to State seek several additional categories of information from the CIA, FBI, and State. From the CIA, you seek "[a]ll documents concerning" six purported CIA reports cited in Plaintiffs' complaints. CIA *Touhy* Request, Att. at 10-11 (items 13-18). From the FBI, you seek "[i]nformation sufficient to establish the FBI's conclusions regarding which individuals or entities were responsible for the September 11, 2001 Attacks." FBI *Touhy* Request, Att. at 11 (item 13). And from State, you seek:

> (5)-(6) All documents concerning certain specific allegations in Plaintiffs' complaint, which you state are derived from State Department reports or cables;
> (10) All documents concerning efforts by former U.S. Ambassador Timothy Carney, through his counterpart Ali Osman Taha, to open diplomatic channels between the United States and Sudan from 1995-1997;
> (11) All documents concerning a communication to President Bashir and Hassan al-Turabi delivered by U.S. Ambassador Don Petterson in or around 1995;
> (14)-(15) All documents "concerning Susan Rice [or Madeleine Albright] regarding" Sudan's offers to share counter-terrorism intelligence and Sudan's offers to extradite Osama Bin Laden; and
> (17) All documents concerning Sudan's offer in August 1998 to extradite to the United States suspects in the August 3, 1998, bombings of the U.S. Embassies in Kenya and Tanzania.

State *Touhy* Request, Att. at 7-9, 11-12, 16-17, 19 (items 5-6, 10, 11, 14-15, and 17).

Finally, your Subpoena and *Touhy* Request to USMS seek (i) six videotapes recording videoconferences involving Jamal al Fadl, prosecutors, and other government personnel; (ii) field reports prepared by USMS inspectors; and (iii) "all other documents concerning Mr. al Fadl," including, without limitation, interview reports, summaries, and investigative or intelligence reports. USMS *Touhy* Request at 1-2.

### *Objections and Request for Substantial Narrowing*

The Agencies are evaluating the Subpoenas and accompanying *Touhy* requests in accordance with their respective *Touhy* regulations. *See* 28 C.F.R. §§ 16.21-16.29 (Department of Justice, of which FBI and USMS are components); 32 C.F.R. §§ 1905.1-1905.4 (CIA); 22 C.F.R. §§ 172.1-172.9 (State). Based upon their preliminary review of the Subpoenas and *Touhy* requests, the Agencies set forth the following objections.

In addition, to allow the Agencies to further evaluate your document requests under their respective *Touhy* regulations, we request that you provide copies of any the specific reports, cables, or other Agency documents that are cited in the requests that you have already obtained, even in redacted form. *See, e.g.*, CIA *Touhy* Request, Att. at 3, 10-11 (items 4, 13-18); State *Touhy* Request, Att. at 3, 6-8 (items 1 (factsheet), 4-6).

*Relevance and Proportionality*

Your *Touhy* requests assert that the requested documents are relevant to this litigation, but even if some records requested by the Subpoenas may be relevant, the Subpoenas as a whole are manifestly overbroad and disproportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) (proportionality inquiry considers, among other factors, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").  To give just a few examples, the Subpoenas seek (from CIA, FBI, and State) "[a]ll documents concerning" Osama Bin Laden's activities for an entire decade: his activities in Sudan from 1991 to 1996, his departure in or around 1996, and his activities (and those of his unspecified "associates") after he departed Sudan in or around May 1996 through 2001.  You also seek (from CIA, FBI, and State) "[a]ll documents concerning" the (again unidentified) "purported businesses" in Sudan of Bin Laden and Al Qaeda, without any date limitation.  Notably, these requests—and others—are not limited to records regarding Bin Laden or Al Qaeda's connections with the Sudanese government.  They therefore seek substantial information with no or minimal apparent relevance to the claims or defenses at issue.  These are just some examples of the overbreadth and vagueness of your requests.

Furthermore, your request to FBI for "[i]nformation sufficient to establish the FBI's conclusions regarding which individuals or entities were responsible for the September 11, 2001 Attacks," FBI Touhy Request, Att. at 11 (item 13), appears entirely irrelevant, in addition to massively overbroad.  Your explanation of the purported relevance of this information cites a May 27, 2021, FBI electronic communication ("EC"), which you inaccurately describe as "closing" the FBI's "PENTTBOM" investigation into the 9/11 attacks.  But that EC describes the closure only of a separate, discrete FBI investigation involving particular individuals and events that have no apparent connection to Plaintiffs' claims against Sudan or Sudan's defenses.  The cited EC also refers to "the original findings of the 9/11 Commission regarding the individuals responsible for the 9/11 attacks," not the findings of the FBI.

In addition, many of the requests are duplicative.  You seek the same or substantially the same twelve broad categories of information from the CIA, FBI, and State.  And the records sought from USMS concerning Jamal al Fadl overlap substantially with those sought from the FBI.  While the USMS may have custodial or security-related records that FBI would not have, such records would have no bearing on Plaintiffs' claims against Sudan or Sudan's defenses.  In fact, your request appears to misunderstand the role of USMS, especially insofar as it seeks "field reports prepared by USMS inspectors" and "interview reports, summaries, and investigative or intelligence reports."  In this context, USMS does not play an investigative role but rather provides security for witnesses and their family members.

For all these reasons, the Agencies object to the Subpoenas as currently framed, as they seek records and information that are not relevant or proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also* 28 C.F.R. § 16.26(a)(1); 22 C.F.R. § 172.8(a); 32 C.F.R. § 1905.4(c)(2).  The Agencies request that you substantially narrow the Subpoenas to focus on information that is actually relevant to Plaintiffs' claims against Sudan and proportional to the needs of the case.

*Undue Burden*

The Agencies also object to the Subpoenas because, as currently framed, they would impose an undue burden on the Agencies, which are not parties to the litigation, *see* Fed. R. Civ. P. 45(d)(3)(A)(iv); Fed. R. Civ. P. 26(b)(1), and fail to provide an adequate time to comply, *see* Fed. R. Civ. P. 45(d)(3)(A)(i). *See also* 28 C.F.R. § 16.26(a)(1); 22 C.F.R. § 172.8(a); 32 C.F.R. § 1905.4(c)(2), (c)(3)(vi). For these additional reasons, the Agencies request that you substantially narrow the Subpoenas.

As noted above, the Subpoenas are overbroad and extremely burdensome. Among other records, you ask multiple Agencies to produce "[a]ll documents concerning" multiple subjects, individuals, and events—including Bin Laden's activities (and those of his associates, purported businesses and/or Al Qaeda) over an entire decade. It would take an enormous amount of time and resources for the Agencies to attempt to locate all documents relating to such broad categories. Indeed, the broad nature of these requests would make it impossible to conduct narrowly targeted searches, meaning that a likely voluminous amount of material would need to be reviewed just to identify any responsive material that may exist.

The burden of complying with the Subpoenas is compounded by the fact that the vast majority of the requested records were created decades ago. As a result, many responsive records are very likely not available in electronic form, are very likely archived in off-site locations, or may otherwise be difficult if not impossible to locate with reasonable effort. And for some of the document requests, no date limitation is provided, even though the relevant time period of Plaintiffs' claims would have ended shortly after September 11, 2001.

The burden of complying with the Subpoenas is exacerbated by the vague, ambiguous and expansive wording of the requests. For example, to the extent the Subpoenas seek documents that "concern" individuals, events, or other matters, but do not explicitly refer to them, it would be unduly burdensome—and likely impossible—to identify responsive records. Similarly, to the extent you seek "[d]ocuments considered and/or relied upon in drafting" certain reports or publications, or "all documents that may tend to contradict the allegations or conclusions" in certain reports or publications, it would be unduly burdensome—and likely impossible—to identify such documents unless they are attached to or cited in the documents containing the assessments.

The burden of complying with the Subpoenas extends beyond the difficulties in searching for and identifying records responsive to the broad categories. Once responsive records are identified, they will need to be reviewed to identify and remove information that is classified, privileged, or otherwise protected from disclosure. As we know from Plaintiffs' prior *Touhy* requests in this case, this is a painstaking and time-consuming process that often requires inter-agency consultation and coordination.

For all these reasons, the Subpoenas are unduly burdensome, and there is no reasonable possibility that the requested records could be produced by May 27, 2025, the return date set forth in the Subpoenas, or in any certain time frame.

*Classified, Privileged, and Otherwise Protected Information*

On their face, the Subpoenas seek a wide range of information that is likely to be classified, privileged, or otherwise protected from disclosure under the Agencies' respective *Touhy* regulations and substantive law.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also* 28 C.F.R. § 16.26(a)(2), (b); 22 C.F.R. § 172.8(a)(2), (b); 32 C.F.R. § 1905.4(c)(1)-(3).  This includes information that is:

- currently and properly classified pursuant to Executive Order 13,526;

- protected by an applicable privilege, including but not limited to the law enforcement, informant, deliberative process, attorney-client, and work product privileges;

- protected from disclosure by statute, rule of procedure, regulation, or Executive Order, including but not limited to the National Security Act, 50 U.S.C. § 3001 *et seq.*; the Central Intelligence Agency Act, 50 U.S.C. § 3501 *et seq.*; the Bank Secrecy Act, 12 U.S.C. § 3401 *et seq.*; the Privacy Act, 5 U.S.C. § 552a; the income tax laws, 26 U.S.C. §§ 6103, 7213; 8 U.S.C. § 1202(f); 18 U.S.C. § 3521; and grand jury secrecy, Fed. R. Crim. P. 6(e).

The Agencies object to the Subpoenas to the extent they seek such classified, privileged, or otherwise protected information.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).  Due to the breadth of the Subpoenas, it would be unduly burdensome for the Agencies to identify all the potential privileges, statutes, rules, regulations, or Executive Orders that may protect specific information in the requested documents.  The Agencies reserve the right to assert any and all privileges or other protections from disclosure that may be applicable to particular documents or categories of documents.

*Other Objections and Reservations of Rights*

In addition to the objections outlined above, the Agencies object to the instructions included with the Subpoenas to the extent they exceed the authority provided in Rule 45, the Local Civil Rules of this District, or the Individual Rules or Orders of Judges Daniels or Netburn.

The Agencies reserve the right to assert any and all objections that may be applicable, and they reserve all rights and defenses under their respective *Touhy* regulations, the Federal Rules of Civil Procedure, and federal law.  This letter does not constitute a decision under the Agencies' respective *Touhy* regulations.

\* \* \*

Please feel free to contact us if you have any questions concerning this letter.  The Agencies look forward to your response, which we hope will substantially narrow the Subpoenas.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:   _Sarah S. Normand_
SARAH S. NORMAND
JEAN-DAVID BARNEA
Assistant United States Attorneys
Tel. (212) 637-2709/2679
sarah.normand@usdoj.gov
jean-david.barnea@usdoj.gov