# LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441 - Fax: (917) 591-5980
john@johnschutty.com

March 10, 2026                                                                                    **Via ECF**

Honorable George B. Daniels, U.S. District Court Judge

     Re:    *In re Terrorist Attacks on September 11, 2001,*
              MDL No. 03-MDL-1570 (GBD) (SN)
              *Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977
              <u>Requests for Stay of Iran Judgment Registration Requests Pending Appeal</u>

Your Honor:

I write to respond to a letter (MDL ECF #11859) that the Plaintiffs' Executive Committees (PECs) filed with Court yesterday regarding the March 5 "Objections" (MDL ECF #11850) my office filed in response to the March 3 Report & Recommendation (R&R) issued by Magistrate Judge Netburn (MDL ECF #11824). While I considered not responding, several issues require a response.

First, the PECs claim that they are representing *all* plaintiffs on the instant issues before the Court. That is *not* the case. The PECs are representing only a subset of plaintiffs – specifically those Plaintiffs seeking judgment registration, with no interest in appeal (Judgment-Registration-Seeking-Plaintiffs or hereinafter "JRS Plaintiffs"). The PECs certainly do not represent my clients who have adverse interests to many clients of the PECs. The PECs have not requested Rule 54(b) certifications for *all* plaintiffs, only for the JRS Plaintiffs.

Second, the PECs claim that my clients lack standing to challenge the default judgments that my clients seek to vacate. The PECs are incorrect. To establish standing in the Second Circuit to challenge a co-plaintiff's default judgment, you must merely show that the "Limited Fund" Doctrine applies; that Doctrine is linked to the federal court's inherent power to vacate void judgments that were entered without subject-matter jurisdiction. The Second Circuit recognizes that a third party has Article III standing when a judgment in favor of another person directly diminishes a finite pool of assets to which the third party has a legal claim. Here, the defendant's assets available for execution (*e.g.,* Bitcoin in the EDNY) are insufficient to satisfy all pending claims ($93 billion, PECs' letter at 4). In *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1365 (2d Cir. 1991), the Second Circuit acknowledged that in consolidated proceedings, a claimant has standing to object to distributions that would "unfairly dilute" their own recovery from a common pot. Every dollar paid to a time-barred claimant (or a claim barred by applicable state law) is a dollar "stolen" from my clients' legitimate, timely recovery, creating a concrete financial injury.

Letter to the Honorable George P. Daniels
March 10, 2026, Page 2

Under the Foreign Sovereign Immunities Act (FSIA), subject-matter jurisdiction is a mandatory requirement that cannot be waived. A judgment entered where a court lacks jurisdiction is void. Because the FSIA's statute of limitations (*e.g.*, 28 U.S.C. § 1605A(b)) is often viewed as a jurisdictional limit on the waiver of sovereign immunity, a judgment on a time-barred claim may be "void" from its inception. In *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006), the Second Circuit held that a non-party may have standing to move to vacate a judgment under Rule 60(b) if their interests are "strongly affected" by that judgment. Here, my clients are "strongly affected" parties because the void judgments are being used to "jump the line" in asset execution, a process that is essentially a zero-sum game.

Third, the PECs continue to claim that they have established "good cause" meriting "immediate" judgment registration even though they have filed *no motion* claiming this fact and have supplied *no evidence* in support of such a claim. Significantly, the JRS Plaintiffs have submitted *no proof* that Iran owns the Bitcoin in question in seeking the judgment registration and this is a fatal defect. The Bitcoin assets in question are in the possession of the U.S. Government (which disputes that the Bitcoin are Iranian assets), so there is little chance that they will be dissipated by Iran. And the instant, expected appeal has such merit and the threat of wrongful asset dissipation to plaintiffs not entitled to such relief *in any district* is so great that these factors substantially outweigh the risk of asset dissipation claimed by the JSR Plaintiffs. Again, Magistrate Judge Netburn found "good cause" *sua sponte*, with no established evidentiary record.

Lastly, unless and until my *Ashton-Burlingame* and *Ashton-Schneider* clients are added to the R&R Appendix, I will continue to ask that these clients be added to the Appendix.[1]

Sincerely yours,

*John F. Schutty*

---

[1] The PECs have raised a conflict-of-interest issue that merits a short response. When my office accepted retainers from clients who may have a statute of limitations issue as to Iran claims under the FSIA, my office specifically explained that these potentially time-barred clients had to acknowledge and accept that I would be asserting the statute of limitations as a defense for other clients. The retainers for these clients were accepted on these terms. Now I ask the attorney-members of the PECs, in turn: have the PECs' attorneys advised their clients with timely claims that comport with applicable state law that their attorneys might be diluting the claims of these clients by pursuing claims on behalf of other clients who have either statute of limitations issues or claims barred by state law? Which group is the PECs representing – those clients with timely claims who need to avoid judgment dilution or those who may have untimely claims seeking immediate judgment registration?