**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**


-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/12/2026
```

**03-MD-01570 (GBD)(SN)**

**REPORT &**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

      <u>Ashton v. al Qaeda Islamic Army</u>, No. 02-cv-06977 (GBD)(SN)

      Two groups of <u>Ashton</u> plaintiffs (the "Plaintiffs") move for partial default judgments

against the Taliban. ECF Nos. 11173, 11179, 11709.[1] The Plaintiffs include the estates of 9/11

decedents who were not U.S. nationals on September 11, 2001, and their immediate family

members. <u>See</u> ECF No. 11173 at 13. They assert various state tort claims against the Taliban,

whom they allege aided al Qaeda and facilitated the 9/11 Attacks. The Court previously denied

without prejudice these Plaintiffs' claims, <u>see</u> ECF Nos. 8929, 8973, and the Plaintiffs have

refiled with more detail about their state tort claims.

      The Taliban's liability to non-U.S. nationals under state tort law—not the Anti-Terrorism

Act ("ATA")—is an issue of first impression for this litigation. Under New York's choice-of-law

rules, New York tort law governs nearly all of the Plaintiffs' claims and authorizes recovery. The

Court therefore recommends GRANTING the Plaintiffs' default judgment motion on all claims

except the survival claim of one Plaintiff who perished at the Pentagon site in Virginia. <u>See</u> ECF

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

No. 11179-2 at 2 (Kennedy). Virginia tort law governs this survival claim and bars independent

recovery for pain and suffering damages. The Court thus recommends DENYING this one claim.

## BACKGROUND

The Court assumes familiarity with this multidistrict litigation and summarizes only the

relevant procedural and factual background. In 2002, the Ashton Plaintiffs first filed a complaint

in this judicial district seeking to hold the Taliban (among other defendants) liable for injuries

caused by the 9/11 Attacks. No. 02-cv-06977, ECF No. 1. They amended and consolidated that

complaint several times. See, e.g., No. 02-cv-06977, ECF Nos. 2, 11, 32, 38, 111. Pursuant to

Court order, the Ashton Plaintiffs served the Taliban by publication in both English and Arabic,

in December 2004 and January 2005. See ECF No. 445 at 11 (order approving service); ECF

Nos. 709, 735 (verifications filed on March 4 and 16, 2005). The publication notices directed

defendants to answer the complaints filed in the multidistrict litigation docket, No. 03-md-01570,

within 60 days. ECF No. 709 at 2, 4; ECF No. 11179 ("Maloney Decl.") at 3 & n.4.

After effectuating service, the Ashton Plaintiffs filed their Sixth Amended Consolidated

Master Complaint (the "Sixth Complaint"), the operative complaint for the purpose of the

Plaintiffs' motion. ECF No. 1463. Like the previous complaints, the Sixth Complaint named the

Taliban as a defendant and repeated the same factual allegations asserting the bases for

jurisdiction and liability. Id. ¶ 10. Most of the Plaintiffs were named in the Sixth Complaint;

some were substituted or added later. See ECF Nos. 8721, 8723, 9726, 9953, 11074, 11096.

The Taliban failed to appear and never answered the complaints. The Ashton Plaintiffs

therefore moved for entry of default, ECF No. 1782, and the Court granted this motion on May

12, 2006. ECF No. 1797. The Court's default judgment on liability applied to all claims, all

Ashton Plaintiffs, and all defendants (including the Taliban) up to and through the Sixth

Complaint. Id. at 2; ECF No. 1782, ex. A (listing plaintiffs), ex. B (listing defendants).

The Plaintiffs now seek partial final judgments against the Taliban based on the default judgment on liability granted to the Ashton Plaintiffs as a group. The Plaintiffs are either the estates of non-U.S. nationals or the immediate family members of 9/11 decedents, where the family member or the 9/11 decedent was a non-national on 9/11. See ECF No. 11173 at 13. Nearly all of the 9/11 decedents perished at the World Trade Center ("WTC") site in New York City (the "NY Decedents"). Maloney Decl. ¶ 8. Two of the decedents perished at other sites: Alan Beaven was a passenger on United Airlines Flight 93, which departed from Newark Airport and was hijacked and crashed into the field in Shanksville, PA. Yvonne Kennedy was a passenger on American Airlines Flight 77, which departed from Dulles Airport and was hijacked and crashed into the Pentagon in Arlington, VA (together, the "PA/VA Decedents"). See Maloney Decl. ¶ 8 & n.6; ECF No. 11709 at 2. At the time of the 9/11 Attacks, Kennedy was an Australian citizen domiciled in Australia, and Beaven was a U.K. citizen domiciled in California. ECF No. 11709 at 2. All of the Plaintiffs have received partial default judgments against co-tortfeasor the Islamic Republic of Iran ("Iran"). See Maloney Decl. ¶¶ 10–11, 13, 18–19.

The Ashton Plaintiffs previously moved for partial final judgments against the Taliban for several plaintiff groups, including the Plaintiffs. ECF Nos. 8274, 8575, 8278. The Court denied without prejudice the Plaintiffs' non-national claims. ECF No. 8929 ("Taliban R&R") at 4–6, adopted by ECF No. 8973 ("Taliban Order") at 5–6. Specifically, the Court found that only state law could permit the non-national Plaintiffs to recover against the Taliban. See Taliban R&R at 5. But in their original motion, the Plaintiffs did not "indicate which state's law applies to which claims or what damages are available for each cause of action." Id. Without the Plaintiffs identifying causes of action with specificity, the Court could not "determine with certainty the appropriate damages for each noncitizen Plaintiff." Taliban Order at 5; see ECF No.

8198 at 4–5 (listing requirements for default judgments). The Court invited the Plaintiffs to refile

a motion that addressed these deficiencies. Taliban Order at 6. They have refiled this motion and

a supplemental letter brief addressing the Court's questions about what law applies to the PA/VA

Decedents' claims. ECF Nos. 11550, 11709.[2]

## DISCUSSION

Rule 55(b)(2) of the Federal Rules of Civil Procedures authorizes the Court to enter

default judgments against defendants who fail to appear in or defend cases against them. The

Court follows a process with "two steps": (1) determining that the defendant defaulted and then

(2) entering a default judgment. Nationsbank of Fla. v. Banco Exterior de Espana, 867 F. Supp.

167, 174 n. 9 (S.D.N.Y. 1994); see Fed. R. Civ. P. 55(a), (b)(2).

Step one has long been satisfied. The Plaintiffs properly served the Taliban, but the

Taliban have not appeared in this case. See ECF Nos. 709, 735. The Court determined that the

Taliban defaulted in 2006. ECF No. 1797. This default judgment as to liability applied to all

Ashton Plaintiffs at the time, including the non-national Plaintiffs. See ECF No. 1797 at 1–2;

Maloney Decl. ¶ 5 & n.5. This default judgment also applies to the Ashton Plaintiffs added to the

case later. See, e.g., Taliban R&R at 3 (finding that default applied to U.S. national Plaintiffs

added later); ECF No. 5234 at 5 (establishing MDL process by which plaintiffs added via notices

of amendment "need not re-serve defendants who have already been served," and that prior

Court orders binding the defendant "shall apply with equal force" to the new plaintiffs).

---

[2] The Plaintiffs rely on the motion, a declaration from counsel Andrew J. Maloney, and "the reasons . . . presented in prior motions." ECF No. 11173 at 6. But they explain that the current motion "replaces the motion at ECF No. 8275 as to the non-U.S. nationals." Id. at 7. The Court primarily evaluates the Plaintiffs' most recent filings. ECF Nos. 11173, 11179, 11709. But it considers arguments advanced and evidence presented in the Ashton Plaintiffs' prior motions where relevant.

Step two is now before the Court. The Plaintiffs request the entry of partial default judgments against the Taliban. In defaulting, a defendant admits "all of the factual allegations of the complaint, except those related to damages," and the plaintiff is "entitled to all reasonable inferences from the evidence offered." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The Court must evaluate those admissions and evidence to determine whether there is "a sufficient basis in the pleadings" to establish the defendant's liability. Di Marco Constructors, LLC v. Sinacola, Inc., 407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006) (cleaned up); accord Wagstaff-EL v. Carlton Press Co., 913 F.2d 56, 57 (2d Cir. 1990). If there is a sufficient basis, the Court assesses damages and may rely on the Plaintiffs' "affidavits or documentary evidence in lieu of an evidentiary hearing." DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003); see Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991). Through this process, the Court previously entered partial default judgments against the Taliban for the claims of U.S. citizens. See Taliban R&R at 14; Taliban Order at 10.

To grant the Plaintiffs' motion, the Court must resolve (1) whether it has jurisdiction to enter default judgment on the Plaintiffs' claims; (2) whether the Taliban are liable to the Plaintiffs; and (3) if all else is true, what damages are due to the Plaintiffs.

## I.     The Court Has Jurisdiction Over the Plaintiffs' State Law Claims

The Sixth Complaint included the following grounds for the Taliban's liability to non-national estates and solatium claimants like the Plaintiffs: the ATA, 18 U.S.C. § 2333 (Count Four); the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note (Count Five); and unspecified state tort law claims for "Wrongful Death Based on Intentional Murder," "Survival Damages Based on Intentional Murder," and "Assault and Battery" (Counts One, Two, and Three). ECF No. 1463 at ¶¶ 463–83. In their motion, the Plaintiffs specify three causes of action under New York law for wrongful death, survival, and intentional infliction of emotional distress

("IIED"). See ECF No. 11173 at 15–22. And in their supplementary brief they provide details on the Pennsylvania and Virginia law that may apply to the PA/VA Decedents' claims. See ECF No. 11709 at 3–4. The Court must confirm that it has subject matter and personal jurisdiction sufficient to enter default judgment on these state law claims. As explained below, the Plaintiffs' claims clear both jurisdictional hurdles.

### A.    Subject Matter Jurisdiction

The Plaintiffs assert purely state law claims against the Taliban. Neither federal question jurisdiction nor diversity jurisdiction give the Court an independent basis for subject matter jurisdiction. The Court must thus rely on supplemental jurisdiction.

Federal district courts have subject matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States." 28 USC § 1331. This jurisdictional grant includes claims under the ATA and TVPA. See 18 U.S.C. §§ 2334(a), 2338; Sokolow v. Palestine Liberation Org., 583 F. Supp. 2d 451, 455 (S.D.N.Y. 2008) (ATA); 28 U.S.C. § 1350 (TVPA). In previous orders, the Court confirmed its subject matter jurisdiction over the Ashton Plaintiffs' claims against the Taliban under § 2333(a) of the ATA. See Taliban R&R at 9; Taliban Order at 9. But the Court held that neither the ATA nor the TVPA permits the Plaintiffs' state law claims against the Taliban for non-nationals.[3] See Taliban R&R at 5; Taliban Order at 5 (agreeing that ATA authorizes claims by U.S. nationals and the TVPA permits claims against individuals only).

---

[3] Courts disagree about whether § 2333 of the ATA permits non-nationals to bring solatium claims where their decedent family members were U.S. citizens. See Lelchook v. Islamic Republic of Iran, No. 16-cv-07078 (ILG)(RLM), 2020 WL 12656283, at *3–7 (Nov. 23, 2020) (discussing split in authority), adopted by 2022 WL 7534195 (E.D.N.Y. Oct. 13, 2022). Six Plaintiffs who were non-nationals on 9/11 bring solatium claims for their decedent family members, who were U.S. citizens. See ECF No. 11179-4 ("Exhibit C") at 2–4. Additionally, five Plaintiffs are listed as non-nationals in Exhibits B2 or C, but the notices of amendment adding or amending their claims list these Plaintiffs as U.S. nationals. See ECF Nos. 8715-1 at 3, 10, 11, 38. Because the Court determines that it has jurisdiction over all of the Plaintiffs' claims through supplemental jurisdiction, as explained below, the Court does not address the question of whether § 2333 permits the claims of these 11 Plaintiffs or independently authorizes subject matter jurisdiction.

Additionally, federal district courts have diversity jurisdiction over civil actions "between . . . citizens of a State and citizens or subjects of a foreign state" that meet the amount-in-controversy requirement. 28 U.S.C. § 1332(a). But this jurisdictional grant does not encompass cases "where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579 (2d Cir. 2002); see also Franceskin v. Credit Suisse, 214 F.3d 253, 258 (2d Cir. 2000) (finding no basis for diversity jurisdiction when a corporation organized under the laws of a foreign state has a principal place of business in a U.S. state, but another "alien" is present on the other side of the litigation). The Plaintiffs describe the Taliban as a foreign "unincorporated association," headquartered in Kandahar, Afghanistan as of 9/11, ECF No. 1463 ¶ 10, and the Ashton Plaintiffs include both U.S. citizens and non-nationals (including the Plaintiffs here). Federal diversity jurisdiction therefore does not provide an independent basis for subject matter jurisdiction over the Plaintiffs' state law claims.

Supplemental jurisdiction provides the answer. Federal district courts may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" under Article III of the U.S. Constitution. 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966)). This means that the facts underlying the claims "substantially overlap[] or the federal claim necessarily brought the facts underlying the state claim before the court." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (cleaned up).

Here, the Court has an independent basis under the ATA and 28 U.S.C. § 1331 for subject matter jurisdiction over the Ashton Plaintiffs' ATA claims against the Taliban. See Taliban R&R at 9; Taliban Order at 9. The Plaintiffs' state law claims derive from the same alleged facts as those supporting these ATA claims: that the Taliban provided material support, training, and safe haven to al Qaeda and the 9/11 hijackers; that the Taliban provided this material support with knowledge of the hijacker's planned attacks on U.S. targets; and that the Taliban's material support caused the deaths, physical injuries, and emotional harm to thousands of victims at the 9/11 sites and their family members. See, e.g., ECF No. 1463 ¶¶ 10–158. The Plaintiffs' state law claims share a "common nucleus of operative fact" with the Ashton Plaintiffs' ATA claims. See Taliban R&R at 11–13 (plaintiffs allegations, taken as true, satisfy both primary and aiding-and-abetting liability under the ATA). Accordingly, the Court may exercise supplemental jurisdiction over the Plaintiffs' state law claims. See Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000) (stating that the Court of Appeals has "routinely upheld the exercise of [supplemental] jurisdiction where the facts underlying the federal and state law claims substantially overlapped"). The Court finds no reason to decline to exercise such jurisdiction. See 28 U.S.C § 1367(c).

### B.    Personal Jurisdiction

The Court previously held that it "need not establish its personal jurisdiction over the Taliban before entering default judgment." Taliban R&R at 9–10; ECF No. 10265 at 2 (finding that the Court had personal jurisdiction over the Taliban anyway). Personal jurisdiction protects an individual right that can be "purposely waived or inadvertently forfeited" by a defendant. City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011). When a defendant does not appear, the Court of Appeals does not require courts to analyze personal jurisdiction before granting default judgment. Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619

F.3d 207, 213 & n. 7 (2d Cir. 2010) (holding that courts "may" analyze personal jurisdiction but leaving open the question whether they "must" do so before entering default judgment). As in its prior order, the Court is "skeptical" that addressing personal jurisdiction "without the benefit of adversarial briefing" would "actually preserve[] judicial resources." CKR Law LLP v. Anderson Invs. Int'l, LLC, 544 F. Supp. 3d 474, 480 (S.D.N.Y. 2021) (declining to analyze personal jurisdiction). Because the Taliban failed to appear in this case, the Court need not find that it has personal jurisdiction over the Plaintiffs' state law claims to enter default judgment.

Even if it must reach this issue, personal jurisdiction over the Taliban is available through two avenues. First, the Court may exercise pendant personal jurisdiction over the Plaintiffs' state law claims against the Taliban. Where a federal statute authorizes nationwide service of process, and the federal and state claims "derive from a common nucleus of operative fact," the district court may assert personal jurisdiction over the parties to the related state law claims, even if personal jurisdiction is not otherwise available. See Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 88 (2d Cir. 2018) (quoting IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993)). Here, the ATA authorized nationwide service of process for the Ashton Plaintiffs' claims against the Taliban. See ECF No. 8911 at 16 (ATA is "a federal statute that incorporates nationwide service of process"). The Plaintiffs' state law claims derive from the same operative facts as the Ashton Plaintiffs' federal claims under the ATA. The Court therefore may exercise personal jurisdiction over the Taliban on the Plaintiffs' state law claims. See Fed. Trade Comm'n v. Quincy Bioscience Holding Co., 389 F. Supp. 3d 211, 219 (S.D.N.Y. 2019) (concluding that plaintiffs' federal and New York state law claims derived from the same set of operative facts, and the district court therefore had personal jurisdiction over the defendants for both the federal and state claims).

Second, the Plaintiffs' allegations offer a "prima facie" case that the Taliban are subject to the Court's jurisdiction. Taliban R&R at 10; see Mwani v. Bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005) (explaining that plaintiffs must make a "prima facie" showing of personal jurisdiction before the court enters default judgment, but that the plaintiffs may rely on their pleadings and affidavits). The Plaintiffs describe the Taliban as a non-sovereign unincorporated association, see ECF No. 1463 ¶ 10, so the jurisdictional restrictions and exceptions of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C § 1602 *et seq.*, would not apply.[4] As with all non-sovereign defendants, the Taliban are subject to the Court's jurisdiction if (1) the Taliban were properly served; (2) there is a statutory basis for jurisdiction; and (3) the exercise of jurisdiction is consistent with due process. See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp., 40 F.4th 56, 68–69 (2d Cir. 2022) (cleaned up).

Collectively, the Plaintiffs' allegations satisfy all three prongs. The Ashton Plaintiffs served the Taliban with the Sixth Complaint by publication, pursuant to the Court's order. ECF Nos. 445, 709, 735. Next, the Court's statutory basis for personal jurisdiction must come from either New York's long-arm statute, N.Y. Civil Practice Law & Rules ("CPLR") § 302, or Federal Rule of Civil Procedure 4(k). See Taliban R&R at 11; ECF No. 8911 at 14–16 (discussing interplay between statute and Rule). The Plaintiffs explain that the Taliban's "pervasive intentional and material support for, and conspiracy with[,] al Qaeda, an organization

---

[4] The Plaintiffs note that the Taliban "served as the *de facto* government of Afghanistan from approximately 1996 until shortly after September 11, 2001." ECF No. 1463 ¶ 10. The Taliban again "seized *de facto* control over most of Afghanistan" in 2021. See Havlish v. Taliban, 152 F.4th 339, 345–46 (2d Cir. 2025). The Court treats the Taliban as non-sovereign defendants, however, for two reasons. First, the United States has not recognized the Taliban as the government of Afghanistan, and the judicial branch cannot do so. See In re Terrorist Attacks on Sept. 11, 2001, 657 F. Supp. 3d 311, 332–37 (S.D.N.Y. 2023). Second, the Taliban have failed to make any showing that they are foreign sovereigns. See Beierwaltes v. L'Office Federale De La Culture D LA Confederation Suisse, 999 F.3d 808, 817 (2d Cir. 2021) (requiring *prima facie* showing to invoke FSIA protections for foreign sovereigns).

committed to attacking U.S. interests, including attacks on U.S. soil," satisfies at least two separate provisions of New York's long-arm statute. ECF No. 11173 at 9–12; see N.Y. CPLR § 302(a)(2) (tortious act within the state); id. § 302(a)(3)(ii) (tortious act without the state causing injury within the state). Finally, the Court's exercise of jurisdiction over the Taliban is consistent with due process. When the defendant "is a primary participant in intentional wrongdoing—albeit extraterritorially—expressly directed at [the] forum," personal jurisdiction is proper under the due process clause of the Fourteenth Amendment. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003) (citing Calder v. Jones, 465 U.S. 783, 789–90 (1984)); see ECF 8911 at 17 & n.9 (explaining the due process analysis under state long-arm statutes, which "considers only contacts with the forum"). The Court previously explained that the Taliban's alleged material and logistical support to al Qaeda, in furtherance of its plans to attack the United States and murder U.S. citizens, is sufficient. See Taliban R&R at 11. This conduct is the type of "intentional, and allegedly tortious, actions . . . expressly aimed" at both the United States, and New York in particular, that satisfies due process. In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 95 (2d Cir. 2008) (quoting Calder, 465 U.S. at 789). Accordingly, personal jurisdiction over the Taliban would likely be satisfied for the Plaintiffs' claims, and jurisdiction poses no barrier to the Court granting default judgment here.

## II.    The Plaintiffs Establish Liability Under Applicable State Law

The Plaintiffs ask the Court to extend the reasoning of its previous Ashton liability judgments to these Plaintiffs on their state law claims. ECF No. 11173 at 13. The Court must inquire into whether there is "a sufficient basis in the pleadings" to establish the Taliban's liability. Di Marco Constructors, 407 F. Supp. 2d at 445; see Taliban R&R at 6; Taliban Order at 4. This assessment of the factual allegations, and whether they "constitute a legitimate cause of action," is not limited to the legal theories raised in the complaint. In re Indus. Diamonds

Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) (cleaned up); see Bricklayers &
Allied Craftworkers Loc. 2 Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC,
779 F.3d 182, 187–89 (2d Cir. 2015) (analyzing well-pleaded facts to determine default liability
without reference to theories asserted in complaint). The relevant pleadings include the Sixth
Complaint, the current motion, the attached Maloney declaration and its exhibits, and the
supplementary brief. See ECF Nos. 1463, 11173, 11179, 11709.

In analyzing the Plaintiffs' state tort claims, the Court must (1) conduct a choice-of-law
analysis, and (2) determine whether the Taliban are liable under the governing state law for each
type of tort. See ECF No. 9931 at 2–6 (evaluating state law claims by non-U.S. nationals against
Iran). The Court ultimately concludes that under the governing New York or Virginia law, the
Taliban are liable to the Plaintiffs on nearly all of their asserted state tort claims, with the
exception of Kennedy's survival claim.

### A.    New York's Choice-of-Law Rules Apply

Multidistrict litigation courts apply the choice-of-law rules "that would have been applied
by a state court in the jurisdiction in which a case was filed." Menowitz v. Brown, 991 F.2d 36,
40 (2d Cir. 1993); see also Manning Int'l v. Home Shopping Network, Inc., 152 F. Supp. 2d 432,
436 n.3 (S.D.N.Y. 2001) ("In a federal question action where a federal court is exercising
supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of
the forum state."). Because the Plaintiffs filed their case in New York state, New York's choice-
of-law rules apply. See ECF No. 9666 at 7.

Under New York's rules, the first step is determining "whether an actual conflict exists
between the laws of the jurisdictions involved." Forest Park Pictures v. Universal Television
Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012). An actual conflict exists if the laws of the states
involved "provide different substantive rules" that are "relevant to the issue at hand" and "have a

significant possible effect on the outcome of the trial." Elmaliach v. Bank of China, 110 A.D.3d
192, 200 (1st Dep't 2013); see Fin. One Pub. Co. v. Lehman, 414 F.3d 325, 331 (2d Cir 2005). If
no actual conflict exists, then no choice-of-law analysis is needed; the Court applies New York
law. See Park Place Entm. v. Transcontinental, 225 F. Supp. 2d 406, 408–10 (S.D.N.Y. 2002).

If a conflict between states exists in a tort case, however, the Court "applies the law of
the state with the most significant interest in the litigation." Kinsey v. N.Y. Times Co., 991 F.3d
171, 176 (2d Cir. 2021). This interest analysis requires consideration of the "facts or contacts"
relating to the tort and "in which jurisdiction they are located." Padula v. Lilarn Props. Corp., 84
N.Y.2d 519, 521 (1994) (cleaned up). The specific rules depend on the type of tort claim.

New York's choice-of-law rules divide torts into two groups. First, for "conduct-
regulating torts," like IIED, the "place of the tort" typically controls. ECF No. 9287 at 3–4
(quoting Padula, 84 N.Y.2d at 522; and Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 198
(1985)). That "place" is the jurisdiction "where the last event necessary to make the [defendant]
liable occurred," even if "the defendant's [mis]conduct . . . occur[red] . . . in another
[jurisdiction]." Schultz, 65 N.Y.2d at 195. Second, for "loss-allocating" torts, like wrongful
death and survival claims, courts apply rules based on the plaintiffs' and defendants' domiciles,
as established in Neumeier v. Kuehner, 31 N.Y.2d 121 (1972). See Grosshandels-Und Lagerei-
Berufsgenossenschaft v. World Trade Ctr. Props., LLC, 435 F.3d 136, 139 (2d Cir. 2006).
Specifically, the Neumeier rules state:

(1)     If the plaintiff and defendant are "domiciled in the same state, . . . the law
        of their shared jurisdiction controls." Edwards v. Erie Coach Lines Co., 17
        N.Y.3d 306, 321 (2011).

(2)     If the plaintiff and defendant are "domiciled in different [s]tates and the
        local law favors the respective domiciliary," the law of the "place of [the
        tort]" applies. Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 73 (1993).

(3)     In all other "split-domicile cases," the "governing law will be that of the place [of the tort] . . . unless 'displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants.'" Id. at 73–74 (quoting Neumeier, 31 N.Y.2d at 128).

In cases involving a multiplicity of parties, the Court applies these rules on a tort-by-tort basis, "consider[ing] each plaintiff vis-à-vis each defendant." Edwards, 17 N.Y.3d at 329.

**B.     New York Law Governs Most But Not All of the Plaintiffs' Claims**

The Court must determine what state law governs each of the Plaintiffs' claims against the Taliban, on a tort-by-tort basis. For most of the Plaintiffs, this analysis is straightforward. Nearly all the 9/11 decedents perished at the WTC site in New York. Maloney Decl. ¶ 8. Relevant jurisdictions might include the respective domiciles of each of the Plaintiffs or Afghanistan (the defendant's domicile). But the Court has previously found, for analogous state tort claims by similarly situated decedents, that New York tort law governs those claims. See ECF No. 9287 at 3–5 (IIED, wrongful death, and survival claims against Iran related to deaths at the WTC site); ECF Nos. 9506 at 11, 9666 at 7 (assault and battery claim against Iran for injuries at WTC site). For the NY Decedents, the "last event necessary to make the [Taliban] liable occurred" when the al Qaeda operatives crashed two airliners into the Twin Towers—even if the Taliban's material support for al Qaeda and the hijackers occurred in other countries. See Schultz, 65 N.Y.2d at 195; accord In re Air Crash Near Clarence Ctr., N.Y., 983 F. Supp. 2d 249, 254–55 (W.D.N.Y. 2013). The Court therefore analyzes whether the Taliban are liable under New York law to the Plaintiffs for the claims related to the NY Decedents.

The choice-of-law analysis is more complex for the PA/VA Decedents. Beaven died in Shanksville, PA, and Kennedy died at the Pentagon in Arlington, VA. Maloney Decl. ¶ 8. On 9/11, Beaven was a U.K. citizen domiciled in California, Kennedy was an Australian citizen domiciled in Australia, and Kennedy's two children were also Australian nationals. ECF Nos.

11709 at 2, 11179-4 at 2. As a result, multiple jurisdictions' laws are potentially relevant. For Beaven's wrongful death and survival claims, the Court could apply the laws of California (Beaven's domicile), Afghanistan (the defendant's domicile), Pennsylvania (the place of the tort), or New York (the forum state). The Plaintiffs assert that New York law should govern Beaven's claims. See ECF No. 11709 at 6. For the wrongful death and survival claims of Kennedy's estate and the IIED claims of Kennedy's two children, the Court could apply the laws of Australia (the Kennedys' domicile), Afghanistan (the defendant's domicile), Virginia (the place of the tort), or New York (the forum state). The Plaintiffs argue that New York law should govern these wrongful death and IIED claims, and Virginia law should govern this survival claim. ECF No. 11709 at 5–6. The Plaintiffs do not mention the laws of Afghanistan in any filing and make only passing reference to the Australian law on pre-death pain and suffering claims. Id. at 6 n.5. The Court must therefore evaluate whether a conflict exists between the laws of the relevant states and decide which state's law ultimately governs the PA/VA Decedents' claims.

First, for the Beaven claims, no actual conflict exists and New York law thus applies. Beaven's estate seeks economic and pain and suffering damages, which correspond to wrongful death and survival causes of action, respectively. See ECF No. 11709 at 2. As the Plaintiffs explain, both New York and Pennsylvania have wrongful death statutes that compensate the decedent's survivors for the economic loss of the decedent's life. See N.Y. Est. Powers & Trusts Law ("N.Y. EPTL") § 5-4.1 (McKinney 2026); Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013); 42 Pa. Stat. and Cons. Stat. Ann. § 8301 (West 2026); Smith v. Sandals Resorts Intern., Ltd., 709 F. Supp. 2d 350, 356 (E.D. Pa. 2010), aff'd 437 F. App'x 178, 185 (3d Cir. 2011). The only relevant distinction is that punitive damages are not available in Pennsylvania but are available in New York. See ECF No. 11709 at 4 n.2; N.Y. EPTL § 5-

4.3(b); Walsh v. Strenz, 63 F. Supp. 2d 548, 558 (M.D. Pa. 1999). Likewise, both New York and Pennsylvania law have survival statues authorizing separate causes of action for pain and suffering prior to a decedent's death. See N.Y. EPTL §§ 11-3.2(b), 11-3.3(b); Johnson v. N.Y. State Police, 659 F. Supp. 3d 237, 260–61 (N.D.N.Y. 2023); 42 Pa. Stat. and Cons. Stat. Ann. § 8302; Frey v. Penn. Elec. Co., 607 A.2d 796, 798 (Pa. Super. Ct. 1992). While the Plaintiffs do not argue that California law might apply to Beaven, see ECF 11709 at 6, California has general wrongful death and survival statutes as well. See Cal. Civ. Proc. Code § 377.60 (West 2026) (wrongful death); id. § 377.30 (survival). Because the relevant New York, Pennsylvania, and California statutes do not "provide different substantive rules" for Beaven's claims, there is no actual conflict. Elmaliach, 110 A.D.3d at 200. The Court will thus apply New York's wrongful death and survival statutes for Beaven's estate's claims. See Park Place Ent. v. Transcontinental Ins. Co., 225 F. Supp. 2d 406, 408 (S.D.N.Y. 2002).

Second, for the Kennedy claims, an actual conflict exists for the survival claim only. Kennedy's estate seeks economic damages pursuant a wrongful death theory. See ECF No. 11709 at 2. The Plaintiffs do not argue that Australian wrongful-death law should govern or provide any details on that law. See id. at 6. But New York and Virginia both have wrongful death statutes that compensate the decedent's survivors for the economic loss of the decedent's life. See N.Y. EPTL § 5-4.1; Va. Code Ann. §§ 8.01-50(A), 8.01-52(2) (West 2026). Again, a relevant distinction is the scope of available remedies: Virginia permits punitive damages for wrongful death claims up to $350,000; New York does not cap punitive damages. See ECF No. 11709 at 4 n.2; N.Y. EPTL §§ 5-4.3(b), 11-3.2(b); Va. Code Ann. §§ 8.01-38.1, 8.01-52(5). But New York and Virginia do not provide different rules of decision for wrongful death claims.

Next, Kennedy's two children seek solatium damages tied primarily to the IIED cause of action. See ECF No. 11709 at 2, 4 n.1. The Plaintiffs do not argue that Australian law applies or conflicts with other jurisdictions. See id. at 6. But New York and Virginia both recognize causes of action for IIED claims based on the same core elements from the Restatement (Second) of Torts. See Restatement (Second) of Torts § 46 (Am. L. Inst. 1965); Howell v. N.Y. Post Co., 81 N.Y.2d 115, 121 (1993) (citing Restatement and listing four elements); Womack v. Eldridge, 215 Va. 338, 341–342 (1974) (citing Restatement and listing almost identical elements). And both states permit IIED claims based on injuries caused to third parties. See Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 108 (D.D.C. 2003) (quoting Maney v. Maloney, 101 A.D.2d 403, 404 (3d Dep't 1984)) (applying New York law and holding that family members stated IIED claim "when the conduct 'cause[d] injury to a third person'"); Blais v. Islamic Republic of Iran, 459 F. Supp. 2d 40, 57–58 (D.D.C. 2006) (citing Morgan v. Foretich, 846 F.2d 941, 950–51 (4th Cir. 1988)) (applying Virginia law and holding that parents stated IIED claim due to defendants' material support and facilitation of a terrorist attack that severely injured and nearly killed their son). For the purposes of this choice-of-law analysis, New York and Virginia do not provide conflicting rules of decision for Kennedy's children's claims.

In contrast, the viability of Kennedy's survival claim depends on the applicable law. New York law preserves causes of action "for injury to [a] person" after that injured person's death, and permits plaintiffs to bring survival claims in tandem with wrongful death claims. N.Y. EPTL §§ 11-3.2(b), 11-3.3(b). Under Virginia law, however, "a person may not recover for the same injury under the survival statute and the wrongful death statute." Smith v. Town of South Hill, 611 F. Supp. 3d 148, 191 (E.D. Va. 2020) (quoting Hendrix v. Daugherty, 249 Va. 540, 547 (1995)); see Va. Code Ann. § 8.01-25. In other words, when a person dies as a result of a

wrongful act, the person's estate may bring only a wrongful death action related to that death in Virginia. See Winkler v. Medtronic, Inc., No. PX 18-00865, 2018 WL 6271055, at *3 (D. Md. Nov. 29, 2018) ("Virginia law does not recognize an independent survivorship action in addition to a wrongful death claim where the person dies from the injury or wrongful act." (cleaned up)). Australian law would likewise bar Kennedy's estate from "bring[ing] a claim for pre-death pain and suffering under these facts." ECF 11709 at 6 n.5. Because the applicable law determines the availability of a stand-alone survival action, an "actual conflict" exists under New York's choice-of-law rules. See Elmaliach, 110 A.D.3d at 200.

When such a conflict exists for a loss-allocating tort, like a survival claim, New York's Neumeier rules apply. Grosshandels-Und Lagerei-Berufsgenossenschaft, 435 F.3d at 139. Here, Kennedy and the Taliban do not share a domicile, so the first Neumeier rule is inapplicable. And under either the second or third Neumeier rules, the law of the "place of the tort" typically governs. See ECF Nos. 9287 at 4–5, 9666 at 7 & n.5. For any survival claim of Kennedy's estate, the "last event necessary to make the [Taliban] liable occurred" when the al Qaeda operatives crashed American Airlines Flight 77 into the Pentagon in Arlington, VA after it departed from Dulles Airport, also in Virginia. ECF No. 11709 at 2. Viriginia is the "place of the tort" and, as the Plaintiffs argue, the state with a "greater connection" to Kennedy's survival claim. Id. Virginia's law therefore governs Kennedy's estate's survival claim.

To summarize: Under New York's choice-of-law rules, New York law governs all the claims related to the NY Decedents. In the absence of an actual conflict among the relevant jurisdictions' laws, New York law governs the wrongful death and survival claims of Beaven's estate. For the same reason, New York law governs both the wrongful death claim of Kennedy's estate and the IIED claims of Kennedy's two children. Finally, the Court concludes that there is

an actual conflict on the survival law applicable to Kennedy's claim, and, under New York's choice-of-law rules, Virginia's law therefore governs Kennedy's survival claim.

### C.    The Taliban Are Liable to the NY Decedents and Beaven's Estate

The Court first considers the Plaintiffs' claims governed by New York law: all the claims related to the NY Decedents and all the claims brought by Beaven's estate. The Plaintiffs' allegations establish that the Taliban are liable under New York law for all these claims.

#### 1.    Wrongful Death

N.Y. EPTL § 5-4.1 imposes liability for (1) the "death of a human being" where (2) "a wrongful act, neglect or default . . . caused the decedent's death," (3) the decedent's survivors "suffered pecuniary loss by reason of the decedent's death," and (4) a "personal representative" has been appointed to represent the decedent. Chamberlain, 986 F. Supp. 2d at 398.

The Plaintiffs allegations meet all four requirements for economic damages. First, they assert claims on behalf people killed in the 9/11 Attacks, at either the WTC site (NY Decedents) or the Shanksville, PA site (Beaven). See ECF Nos. 11173 at 15, 11709 at 2. Second, as the Court has previously determined for the claims of U.S. nationals, the Taliban's provision of material support to al Qaeda proximately caused the 9/11 Attacks and resulting deaths in New York and Pennsylvania. See Taliban R&R at 12; Taliban Order at 9. Because the Taliban's material support to al Qaeda also "support[s] liability for personal injuries," it satisfies the "core requirement that wrongful death claims be predicated on conduct for which the defendant 'would have been liable to the decedent . . . if death had not ensured.'" ECF No. 9931 at 3–4 (concluding the same for New York wrongful death claims against Iran for its material support of al Qaeda); In re Terrorist Attacks on Sept. 11, 2001 ("In re 9/11"), 349 F. Supp. 2d 765, 829 (S.D.N.Y. 2005) (finding that plaintiffs stated New York wrongful death claims where they alleged that the "[d]efendants supported, aided and abetted, or conspired with the September 11 terrorists").

Third, the survivors of the NY Decedents and Beaven each suffered pecuniary losses, as detailed in their exhibits, which are based on expert reports previously credited by the Court. Maloney Decl. ¶¶ 11–12; ECF No. 11179-3. Finally, each of these estates is represented by a court-appointed personal representative. Maloney Decl. ¶ 11; ECF No. 11179-3 at 2–3. Accordingly, the Court recommends granting the Plaintiffs' default judgment motion for the wrongful death claims of the NY Decedents and Beaven, as listed in "Exhibit B2," ECF No. 11179-3.

### 2.    Survival

The Taliban are liable to the Plaintiffs for the survival claims of the NY Decedents and Beaven. N.Y. EPTL § 11-3.2(b) preserves causes of action "for injury to [a] person" after that injured person's death. Estates may bring claims under this statute in tandem with section 5-4.1 wrongful death claims to permit estates to recover for "pain and suffering prior to death" due to a "decedent's injuries." Johnson, 659 F. Supp. 3d at 260–61. The NY Decedents and Beaven sustained fatal injuries during the Attacks, at either the WTC site or in the crash of United Airlines Flight 93 in Shanksville, PA. As the Court previously explained in granting default under the ATA, the Taliban are liable for aiding and abetting the hijackings that produced those injuries. See Taliban R&R at 11–13; Taliban Order at 9. The same key facts underlying this prior ruling warrant holding the Taliban liable for injuries that proved fatal under § 11-3.2(b). The Court therefore recommends granting the Plaintiffs' default judgment motion for the survival claims of the NY Decedents and Beaven, as listed in "Exhibit B1," ECF No. 11179-2.[5]

---

[5] BNY Mellon serves as the personal representation for the estate of Victor Paz Gutierrez and requests pain and suffering damages. See ECF Nos. 9704-1 at 3 (proposed substitution of BNY); 9726 (granting substitution). The Court asked the Plaintiffs to explain whether BNY Mellon was a lawfully appointed personal representation for Gutierrez. See ECF No. 11866. The Plaintiffs confirmed that The Mellon Trust of New York, LLC (a subsidiary of BNY Mellon) was lawfully appointed fiduciary and estate representative for Gutierrez by the Surrogate's Court of the State of New York, New York County. See ECF No. 11868 at 2, Ex. A (attaching letters of administration).

### 3.    Intentional Infliction of Emotional Distress

The Plaintiffs did not plead a separate cause of action for IIED in the Sixth Complaint.

See ECF 11173 at 17. But as recovery for their "Wrongful Death Based on Intentional Murder"

claims, included in the Sixth Complaint, the Plaintiffs did seek "[n]on-economic damages,

including but not limited to, the loss of consortium, solarium, society, companionship, care,

comfort, and love suffered by plaintiffs and decedents' other survivors." ECF No. 1463 ¶ 466.

The Plaintiffs now argue that the Taliban are liable to certain immediate family members of the

NY Decedents under separate IIED causes of action. See ECF No. 11173 at 18. As the Court has

recognized in other default judgment orders, it may grant relief for separate causes of action

raised in briefing but not initially pleaded in the operative complaint. See ECF No. 9506 at 8–9

(finding that non-national plaintiff could pursue assault and battery claim against Iran under New

York Law despite not pleading it in his complaint); Oveissi v. Islamic Republic of Iran, 573 F.3d

835, 840 (D.C. Cir. 2009) (stating that an FSIA plaintiff "d[oes] not have to identify [a] specific

source of law in his complaint"). The Court therefore considers whether the allegations, deemed

admitted by the Taliban, satisfy the elements of the IIED claims that the Plaintiffs now assert.

Under New York law, the tort of IIED "has four elements: (i) extreme and outrageous

conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional

distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional

distress." Howell, 81 N.Y.2d at 121. Liability for IIED may extend to those who aid and abet the

primary tortfeasor. See Rich v. Fox News Network, LLC, No. 18-cv-2223 (GBD), 2020 WL

5768430, at *5–6 (S.D.N.Y. Sept. 25, 2020) (analyzing claim for aiding and abetting IIED). It

also typically extends to conduct that "causes injury to a third person, thereby intentionally or

recklessly causing severe emotional distress to a member of such person's [immediate] family

who is present at the time." Maney, 101 A.D.2d at 405–06.

Courts have adapted these requirements to the particular context of terrorist attacks. "All acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror, in their targeted audience . . . ." Stethem v. Islamic Republic of Iran, 201 F. Supp. 2d 78, 89 (D.D.C. 2002). Courts have also dispensed with the typical presence requirement for third-party IIED claims (for both New York state law claims and analogous solatium claims under the FSIA), because "a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families." ECF No. 3363 at 3 (quoting Salazar v. Islamic Republic of Iran, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)). The immediate family members were "not physically present at the World Trade Center, or at the Pentagon, or at Shanksville, but the whole world was virtually present, and that is enough" for stating an IIED claim. Burnett, 274 F. Supp. 2d at 108 (concluding that plaintiffs stated an IIED claim under New York law against charity that allegedly aided and abetted the 9/11 hijackers).

The Plaintiffs asserting solatium claims for the NY Decedents have demonstrated the Taliban's liability for IIED. Pursuant to the allegations in the Sixth Complaint, the Taliban aided and abetted al Qaeda by knowingly providing substantial assistance in plotting the 9/11 Attacks. See Taliban Order at 9. The 9/11 Attacks were "[a]cts of terrorism" that were "by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." Flanagan v. Islamic Republic of Iran, 87 F. Supp. 3d 93, 115 (D.D.C. 2015); see also In re 9/11, 349 F. Supp. 2d at 830 (stating, in decision applicable to this member case, that the 9/11 Attacks "were undoubtably extreme and outrageous"). The first two elements are satisfied. The 9/11 Attacks publicly murdered the immediate family members of the NY Decedents (as listed in ECF No. 11179-4) and caused severe and ongoing emotional distress, as the Court has recognized in many other contexts in this MDL. See, e.g., ECF Nos. 3358 at 8, 9931 at 5–6. The

last two elements are therefore satisfied. Accordingly, the Court recommends granting the Plaintiffs' default judgment motion for the IIED claims of the immediate family members of the NY Decedents, as listed in "Exhibit C," ECF No. 11179-4.

### D. The Taliban Are Liable on the Kennedys' Wrongful Death and IIED Claims But Not the Estate's Survival Claim

The Court next considers the Taliban's liability to Kennedy's estate and her children. First, under New York law, the Plaintiffs establish that the Taliban are liable to Kennedy's estate for wrongful death and to Kennedy's children for IIED. The Plaintiffs' allegations meet all four requirements for a New York wrongful death claim. See Chamberlain, 986 F. Supp. 2d at 398; N.Y. EPTL § 5-4.1. Kennedy perished during the 9/11 Attacks at the Pentagon site. See ECF No. 11709 at 2. As the Court explains above, the Taliban's provision of material support to al Qaeda proximately caused her death. Kennedy's survivors then suffered pecuniary damages (as detailed in previously submitted expert reports), ECF No. 11179-3 at 2, for which N.Y. EPTL § 5-4.1 permits recovery. And Kennedy's estate is represented by a personal representative. Id.

The same is true for the IIED claims of Kennedy's children. The Taliban's knowing provision of substantial assistance to al Qaeda aided and abetted the 9/11 Attacks, see Taliban Order at 9, and the Attacks were both extreme and outrageous and intended to cause severe emotional distress. See In re 9/11, 349 F. Supp. 2d at 830. Kennedy perished as result of the 9/11 Attacks, and her death caused severe and ongoing emotional distress to her children. ECF No. 11709 at 2. The Court thus recommends granting the Plaintiffs' default judgment motion against the Taliban for the wrongful death claim of Kennedy's estate, as listed in Exhibit B2, and for the IIED claims of Kennedy's two children, as listed in Exhibit C.

Second, under Virginia law, Kennedy's estate cannot maintain a separate survival action, and therefore the Taliban are not liable for conscious pain and suffering damages. Virginia's survival statute provides:

> Every cause of action whether legal or equitable, which is cognizable in the Commonwealth of Virginia, shall survive . . . the death of the person in whose favor the cause of action existed. . . . Provided, further, that if the cause of action asserted by the decedent in [her] lifetime was for a personal injury and such decedent dies as a result of the injury complained of with a timely action for damages arising from such injury pending, the action shall be amended in accordance with the provisions of § 8.01-56.

Va. Code Ann. § 8.01-25. Section 8.01-56 in turn states that pleadings under the survival statute "shall be amended" to conform to an action under the state's wrongful death statute, "as if the action has been brought under such section." See id. § 8.01-50 (wrongful death). Virginia courts have interpreted these statutes to mean that a plaintiff "may not recover for the same injury under the survival statute and the wrongful death statute." Smith, 611 F. Supp. 3d at 191. Instead, "a survivorship action brought under § 8.01-25 defers to the wrongful death statute as the exclusive statement of the grievances that Virginia will recognize when a tort victim dies of her injuries." El-Meswari v. Wash. Gas Light Co., 785 F.2d 483, 490–91 (4th Cir. 1986).

Kennedy's estate thus cannot simultaneously assert survival and wrongful death causes of action. Both claims stem from the same set of facts. As the hijackers crashed American Airlines Flight 77 into the Pentagon, Kennedy experienced conscious pain and suffering and died moments later. See ECF No. 11709 at 4. The Plaintiffs suggest that "[t]he hijacking and threat of death and pre-impact fear" that Kennedy experienced is a separate injury and, because it "did not actually cause [her] death," constitutes a distinct cause of action under Virginia law. Id. The Plaintiffs do not explain how Virginia law supports this separate-injury theory. See id. at 4–5. Instead, Virginia's survival statute and the cases interpreting it express a strong preference for limiting survival claims to distinct injuries not casually connected to those that caused a

plaintiff's death. Under the governing Viriginia law, the Court therefore recommends denying the Plaintiffs' default judgment motion only as to Kennedy's survival cause of action.

\* \* \*

Accordingly, the Court recommends granting the Plaintiffs' default judgment motion on nearly all of their claims against the Taliban. The Court should grant default judgment on (1) the NY Decedents' claims for wrongful death and survival; (2) the IIED claims of the NY Decedents' immediate family members; (3) Beaven's claims for wrongful death and survival; (3) Kennedy's claims for wrongful death; and (4) the IIED claims of Kennedy's children. The Court should deny the motion as to Kennedy's survival claim under Virginia law.

### III.    The Appropriate Damages Frameworks

All that remains is assessing damages. The Court recommends granting the Plaintiffs' claims under applicable New York law for wrongful death, survival, and IIED. These are purely state law claims independent of the FSIA or ATA causes of action for which the Court has thus far developed damages frameworks in this litigation. See, e.g., Taliban Order at 10–11 (ATA claims against the Taliban); ECF No. 9666 (FSIA claim against Iran). Treble damages under the ATA are not available to these Plaintiffs. See Taliban R&R at 13 (ATA supports "threefold" damages for U.S. nationals). The Court therefore addresses the damages available under each New York cause of action and assesses whether its existing damages frameworks are consistent with New York law. The same damages frameworks should apply to the Taliban here.

#### A.    Economic Damages

New York's wrongful death statute permits the recovery of "pecuniary loss" suffered by a decedent's survivors due to their death. Chamberlain, 986 F. Supp. 2d at 398; see N.Y. EPTL § 5-4.3(a). The Court has previously awarded economic damages against Iran under the same New York statute for "economic losses stemming from the wrongful death of the decedent." See,

e.g., ECF No. 9931 at 4, 7. It accepted the economic loss calculations provided in the reports of the plaintiffs' economic experts. Id. at 4. Similarly, courts have consistently held in terrorism litigation that economic damages are available under the FSIA, ATA, or the common law. See, e.g., Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 399–400 (D.D.C. 2015) (quoting Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 78 (D.D.C. 2010)) (stating that sponsors of terrorist attacks that kill victims are routinely "liable for the economic damages caused to decedents' estates").

The Court sees no reason to change its approach here. Exhibit B2 includes the Plaintiffs requesting economic damages. All of these Plaintiffs received economic damages awards against Iran based on calculations in previously filed expert reports. See Maloney Decl. ¶¶ 11, 13; ECF No. 11179-3 at 2–3 (listing orders awarding economic damages against Iran and the corresponding expert report). Economic experts John F. Beauzile and Matthew S. Johnson prepared those expert reports, which estimated the economic losses to each estate as a result of the Plaintiff's death on 9/11. See ECF Nos. 3357-3 (Johnson), 5537-6, 7979-3, 9680-1, 9941-1, 9941-2 (Beauzile). For nearly all of the Plaintiffs in Exhibit B2, Beauzile re-evaluated their economic losses based on the same Plaintiff's client materials; previously submitted economic expert reports (prepared soon after 9/11); and applications, work papers, distribution plans, and determinations from the 9/11 Victim Compensation Fund. See Maloney Decl. ¶ 11. Beauzile's expert calculations brought these Plaintiffs' damages calculations to present value. See id.; ECF No. 11179-5 (Beauzile declaration explaining his methodology). Johnson submitted an initial calculation of economic losses for one Plaintiff in Exhibit B. See ECF No. 3357-3 at 12 (Kennedy estate). The Plaintiffs now reference the Beauzile and Johnson reports as support for their requested economic damages against the Taliban as joint tortfeasors. ECF No. 11173 at 24;

Maloney Decl. ¶ 13. Because the Court previously awarded damages against Iran based on this expert evidence, the Court accepts the Beauzile and Johnson calculations and recommends awarding the economic damages listed for all Plaintiffs in Exhibit B2.

### B.    Pain and Suffering Damages

Estates may recover for "pain and suffering prior to death" under New York's survival statute. Johnson, 659 F. Supp. 3d at 260–61; see also N.Y. EPTL § 11-3.3(a). The Court has consistently awarded $2,000,000 for pain and suffering damages to the estates of 9/11 victims, based on prior court decisions and to maintain parity between all decedents who suffered greatly during the 9/11 Attacks. See, e.g., ECF No. 3226; Taliban R&R at 13–14; Taliban Order at 9–10 (before trebling damages per the ATA). In the interest of fairness, and consistent with New York law, the same framework should apply here. The Court therefore recommends awarding the pain and suffering damages for all plaintiffs listed in Exhibit B1, with the exception of Kennedy (whose survival claim the Court should deny, as explained above).

### C.    Solatium Damages

New York IIED law permits immediate family members' recovery of damages for their severe emotional distress. See Maney, 101 A.D.2d at 405 (stating that damages may be available for family member's IIED claim); Reilly v. Garden City Union Free Sch. Dist., 89 A.D.3d 1075 (2d Dep't 2011) (same); Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 161–62 (2d Cir. 2014) (affirming that evidence supported IIED claim and compensatory damages award under New York law). In this litigation, the Court has often reasoned that solatium claims under the FSIA are "nearly indistinguishable from" IIED claims under state law. See ECF No. 9931 at 6; Fraenkel v. Islamic Republic of Iran, 892 F.3d 348, 357 (D.C. Cir. 2018). It has then applied the same damages framework for both state law and FSIA claims: $12,500,000 for spouses, $8,500,000 for children, $8,500,000 for parents, and $4,250,000 for siblings. See ECF Nos. 9931

at 6, 2623 at 4. Likewise, the Court used this framework for awarding solatium damages against the Taliban to the <u>Ashton</u> Plaintiffs who were U.S. citizens on 9/11. <u>See</u> <u>Taliban R&R</u> at 13; <u>Taliban Order</u> at 9–10. All of the Plaintiffs listed in Exhibit C are immediate family members of 9/11 decedents. And the Court awarded each Plaintiff solatium damages against Iran (under the FSIA) based on their family relationship listed in Exhibit C. <u>See</u> ECF No. 11179-4 at 2–4. To maintain parity among all victims' families, and as permitted by New York law, the Court adopts and applies to these Plaintiffs the same solatium damages framework. It thus recommends awarding the solatium damages to the Plaintiffs as listed in Exhibit C.

### D. Punitive Damages and Prejudgment Interest

The Plaintiffs ask to defer consideration of punitive damages for all of the Plaintiffs, consistent with the Court's approach in other orders. ECF No. 11173 at 24. New York law permits the recovery of punitive damages for the Plaintiffs' state law claims, <u>see, e.g.</u>, N.Y. EPTL §§ 5-4.3(b), 11-3.2(b), and the Court finds that deferral is warranted. Additionally, the Court determines that a prejudgment interest rate of 4.96 percent per annum, compounded annually, is appropriate, consistent with its prior orders awarding default judgments against the Taliban, <u>see</u> <u>Taliban Order</u> at 11, and against Iran, <u>see</u> ECF No. 11661 at 3.

## CONCLUSION

The Court recommends GRANTING partial default judgment to the Plaintiffs listed in Exhibit B1 (other than Kennedy), Exhibit B2, and Exhibit C to the Plaintiffs' Proposed Order.[6] To that end, it recommends:

- awarding these Plaintiffs damages as provided in ECF Nos. 11179-2 (other than entry #13), 11179-3, and 11179-4;

- awarding prejudgment interest assessed at 4.96 percent per annum, compounded annually for (1) the period from September 11, 2001, until the date of judgment, for the pain and suffering and the solatium damages; and (2) the period from the "Date of Report," as listed in ECF No. 11179-3, until the date of judgment, for the economic damages; and

- permitting these Plaintiffs to seek punitive, economic, and other damages at a later date, to the extent such damages were not sought in this motion.

The Court recommends DENYING the Plaintiffs' default judgment motion as to only the pain and suffering damages for Kennedy's estate, as listed in Exhibit B1. The Court further recommends permitting the Ashton Plaintiffs to apply for default judgment awards at later stages, to the extent such awards have not already been addressed.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:        March 12, 2026
              New York, New York

---

[6] The Court recommends correcting what it interprets as typos or omissions in these Exhibits. In **Exhibit B1**, there are two apparent typos. First, for the estate of Eugeni Kniazev (entry #14), "Eugeni" should be corrected to "Eugueni" to match the Ashton Sixth Complaint. See ECF No. 1463 at 49. Second, for the estate of Lukasz Milewski (entry #18), both Frederyk Milewski and Anna Milewska should be listed as co-administrators of the estate; only Frederyk is currently listed. See id. at 17; ECF No. 8711-1 at 36, 8723. In **Exhibit B2**, the same typos from Exhibit B1 should be corrected for the estates of Eugeni Kniazev (entry #11) and Lukasz Milewski (entry #14). In **Exhibit C**, two amendments should be made for the personal representatives of deceased solatium claimants. First, Howard Rhys James (entry #27) has died, and Alan James should be listed as the estate's personal representative. See ECF Nos. 8715-1 at 17, 8721. Alan James should be removed as his own personal representative in the prior entry #26. Second, Antonio Vincelli (entry #60) has also died, and Anthony Vincelli should be listed as the estate's personal representative, where there is no representative currently listed. See ECF No. 8715-1 at 36.

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Daniels. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).