# LAW OFFICE OF JOHN F. SCHUTTY, P.C.

445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441 - Fax: (917) 591-5980
john@johnschutty.com

March 17, 2026                                                          **Via ECF**

Honorable George B. Daniels, U.S. District Court Judge

>       Re:    *In re Terrorist Attacks on September 11, 2001,*
>              MDL No. 03-MDL-1570 (GBD) (SN)
>              *Ashton et al. v. al Qaeda Islamic Army*, et al., 02-cv-6977
>              <u>Requests for Stay of Iran Judgment Registration Requests Pending Appeal</u>

Your Honor:

I write to respond to a letter (MDL ECF #11873) that the Plaintiffs' Executive Committees (PECs) filed with Court yesterday regarding my clients' March 12 Request for an Emergency Stay (MDL ECF #11869).

My clients have asked Your Honor to enjoin the SDNY Clerk from issuing AO 451 forms to certain plaintiffs ("Judgment-Seeking-Registration Plaintiffs" or "JSR Plaintiffs") who have requested that Fed. R. Civ. P 54(b) certifications be applied to compensatory damage awards previously issued by this Court. Absent a stay, thousands of SDNY plaintiffs, who have been improperly issued default judgments under the Foreign Sovereign Immunities Act (FSIA) will be permitted to register their "Partial Final Judgments," only recently certified as final, in the Eastern District of New York under 28 U.S.C. § 1963, triggering an imminent and irreversible "race to the assets" that threatens my clients' ability to execute themselves on remaining Iranian assets. My clients contend that up to 10,000 of these JSR Plaintiffs may have been improperly issued default judgments against Iran and that allowing these plaintiffs to pursue immediate asset execution, before their claims can be evaluated on appeal, violates Rule 62 and good sense.

*First*, the PECs claim that my clients' request for the stay is premature. It is not. The March 3 Report & Recommendation (R&R) issued by Magistrate Judge Netburn (MDL ECF #11824) states explicitly that the Clerk may begin to process the hundreds of AO 451s, even before Your Honor rules on the R&R (R&R at 2, 17). *See also* R&R fn. 2 (the R&R acknowledges that AO 451s already were wrongfully issued to *Anaya* and *Chairnoff* plaintiffs before these plaintiffs ever obtained Rule 54(b) certifications). Thus, a stay to enjoin the Clerk is needed immediately, and the *Anaya* and *Chairnoff* plaintiffs' AO 451s should be vacated immediately.

*Second*, the PECs claim my clients cannot establish a "likelihood of success on the merits" of their anticipated appeal. My clients' request for a stay satisfies the Second Circuit's "sliding scale" standard for interim relief. As established in *Citigroup Global*

Letter to the Honorable George P. Daniels
March 17, 2026, Page 2

*Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010), a movant need not demonstrate a mathematical probability of success where the balance of hardships tips "decidedly" in its favor. Here, the threat of irreparable harm is both "actual and imminent," *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006), as the immediate distribution of funds or seizure of property would render a successful appeal a pyrrhic victory. Because this appeal raises "serious questions going to the merits" regarding the proper interpretation of the FSIA, and because the public interest favors maintaining the status quo to prevent the "unscrambling of eggs" mid-litigation, a stay is both necessary and appropriate.

As to the merits of my clients' intended appeal, the PECs claim that "the Second Circuit [has] consistently rejected Mr. Schutty's theory . . . and that Mr. Schutty has pointed to no contrary authority in his Request." PECs March 16 Letter at 1. Again, this is wrong. The PECs have pointed to no Second Circuit precedent in their favor. In fact, the PECs' failure to fully cite all applicable sections of the FSIA to this Court is precisely what has caused this Court to misapply the FSIA – in rendering default judgments, the PECs and this Court wholly failed to mention or apply sections 1606 and 1608(e) of the FSIA – undeniable legal errors. Why are these sections so important? I detail why below.

*Section 1608(e) of the FSIA* requires this Court to be a "gatekeeper" in rendering default judgments against a foreign state. Under § 1608(e), no judgment by default may be entered against a foreign state unless the claimant "establishes his claim or right to relief by evidence satisfactory to the court."[1] Unlike ordinary civil cases, default does not constitute an admission of liability by a foreign sovereign. Section 1608(e) imposes an affirmative obligation on the district court to evaluate the merits of the plaintiff's claims. Under 28 U.S.C. § 1605A(b), an action under the terrorism exception must be brought no later than 10 years after the date on which the cause of action arose. In the proceedings below, thousands of JRS Plaintiffs obtained default judgments despite initiating their actions well beyond this federal statutory window. Many of the JRS plaintiffs cannot establish a "right to relief" because their claims were filed more than 10 years after the underlying incident on September 11, 2001. These filings, occurring after September 11, 2011, were many years (and sometimes decades) outside the mandatory ten-year

---

[1]     The Second Circuit has held that this provision "mirrors the standard for entry of default judgments against the United States" and requires courts to "exercise great caution." *See First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda–Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989). "Congress promulgated Sec. 1608(e) to provide foreign sovereigns with the same protections from default judgments that the federal government enjoys under Fed. R. Civ. P. 55(e)." *Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994) (citation omitted). Thus, the Second Circuit has used the "mirror" principle to justify a lenient standard for vacating a default judgment against a foreign state and a bar to claims that fail to set forth a "right to relief." If Rule 55(e) allows the U.S. government more latitude to set aside a default to ensure a decision on the merits, § 1608(e) mandates that same "judicial preference" for foreign states. And it follows that courts should find "good cause" to vacate a default against a foreign state more easily than they would for a private corporation, directly citing the special protection afforded to the U.S. government as the benchmark.

Letter to the Honorable George P. Daniels
March 17, 2026, Page 3

limitations period provided in 28 U.S.C. § 1605A(b).  Because the time-bar was patently obvious and precluded any "right to relief" as a matter of law, this Court was prohibited by Section 1608(e) from entering many of the default judgments against Iran below.

*Section 1606 of the FSIA*.  While 28 U.S.C. § 1605A(c) lists "solatium" as a recoverable category of damages, it does not define the class of persons eligible to recover it, nor does it override the overarching mandate of 28 U.S.C. § 1606.  Section 1606 requires that a foreign state be held liable only "in the same manner and to the same extent as a private individual under like circumstances." Here, this Court improperly created federal common law to determine who might recover solatium damages in violation of § 1606 and awarded thousands of parents and siblings (and other non-heirs) solatium wrongful death damages in direct contravention of applicable state law, state interests and state policy.  In New York, New Jersey, and Connecticut, the "mirror" for a private defendant is clear: where a decedent is survived by a spouse and children, parents and siblings are barred from recovering grief-related damages for a death as a matter of law.  By granting solatium awards to these non-heirs under an Intentional Infliction of Emotional Distress (IIED) theory, this Court created a "sovereign-only" liability that would be impossible to assert against a private party in the Second Circuit:

1.  *Section 1606 Controls the "Extent" of Liability*: As held in *Cassierer v. Thyssen-Bornemisza Collection Foundation*, 596 U.S. 107 (2022), the FSIA does not allow federal courts to fashion "federal common law" to expand liability. Because a private individual in New York would owe zero dollars in grief damages to a parent or sibling when a spouse and children survive, the foreign sovereign's liability must similarly be zero.

2.  *State-Law Priority is Substantive, Not Procedural:* The rules prioritizing spouses and children over parents and siblings are substantive "loss-allocation" rules.  Under the Second Circuit's interest analysis, these rules must be enforced to prevent the "unwarranted" expansion of damages that § 1606 was designed to prohibit.

3.  *IIED Cannot Bypass the Statutory "Pecking Order":* This Court's reliance on the Restatement (Second) of Torts to justify these awards constitutes an unauthorized "end-run" around the forum states' legislative decisions to limit the pool of claimants in death-related litigation.

*Irreparable Harm via AO 451 Registration & Asset Execution*.  Thousands of JRS Plaintiffs have requested that the SDNY Clerk issue AO 451 forms to facilitate the seizure of Iranian assets allegedly held within the EDNY before this appeal is resolved:

- *Imminent Asset Dissipation*:  Once these forms are issued and registered to the JRS Plaintiffs under 28 U.S.C. § 1963, the EDNY may move to liquidate assets to satisfy the SDNY judgments.

Letter to the Honorable George P. Daniels
March 17, 2026, Page 4

- *Finality of Distribution*: If these funds are distributed to thousands of JRS Plaintiffs while this appeal is pending, my clients will suffer irreparable injury, as it is highly unlikely that sovereign assets, once dispersed to private individuals, can be successfully clawed back should the Second Circuit later find the underlying judgments were time-barred or barred by applicable state law.

Finally, here Iran's assets allegedly available for execution (*e.g.,* Bitcoin in the EDNY) are insufficient to satisfy all pending claims ("$93 billion," PECs' March 9, 2026 Letter MDL ECF #11859 at 3).[2]  Every dollar paid to a time-barred claimant (or a claim barred by applicable state law) is a dollar "stolen" from my clients' legitimate, timely recovery, creating a concrete irreparable, financial injury.

For all the above reasons, this Court should issue the requested stay under Rule 62 to enjoin the SDNY Clerk from issuing any AO 451s related to the certification of compensatory damages under Rule 54(b) in accordance with the R&R.

Sincerely yours,

*John F. Schutty*

---

[2]    Mass tort litigation possesses the "essential characteristics" of a class action, triggering the court's fiduciary-like duty to oversee the equitable distribution of assets.  As established in *In re Zyprexa Prods.Liab. Litig*., 451 F. Supp. 2d 458 (E.D.N.Y. 2006), courts in the Second Circuit have the inherent equitable power to manage large-scale coordinated litigations as quasi-class actions.  If a court is asked to determine the viability of default judgments awarded to plaintiffs whose claims may be legally deficient (e.g., time-barred by a statute of limitations), a judge may use the quasi-class action framework to stay the execution of those judgments or vacate them to preserve a limited pool of assets.  This power is specifically intended to protect the interests of all claimants and ensure that a "limited fund"—whether statutory or de facto—is not exhausted by a "race to the courthouse."  *See In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425 (2d Cir. 1993). Although a class action case, the Second Circuit recognized the court's power to protect its jurisdiction and the settlement "res" from being undermined by external judgments. A default judgment for a time-barred plaintiff is a "windfall" that unfairly prioritizes a legally weak claim over the meritorious claims of the broader group, violating the principle of ratable distribution.