March 24, 2026

VIA ECF

The Honorable George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

***In re Terrorist Attacks on Sept. 11, 2001*, Case No. 1:03-md-1570-GBD-SN (S.D.N.Y.) — Supplemental Authority of Opinion and Order, *Troell v. Binance Holdings Ltd.*, No. 24-cv-7136 (JAV), 2026 WL 636849 (S.D.N.Y. Mar. 6, 2026)**

Dear Judge Daniels:

Al Rajhi Bank respectfully calls to the Court's attention the recent Opinion and Order in *Troell v. Binance Holdings Ltd.*, No. 24-cv-7136 (JAV), 2026 WL 636849 (S.D.N.Y. Mar. 6, 2026). *Troell* demonstrates that binding Anti-Terrorism Act precedent requires dismissal of the complaints against Al Rajhi Bank for failure to state a claim. *See* 2026 WL 636849, at *11–25; *see also* Def.'s Renewed Mot. to Dismiss (ECF Nos. 9785, 9786, 10403). Critically, *Troell* also reinforces the propriety, confirmed by the Second Circuit, of ordering a foreordained dismissal on the merits before deciding questions of personal jurisdiction. *See* 2026 WL 636849, at *25; *see also Ctr. for Reprod. Law & Pol'y v. Bush,* 304 F.3d 183, 194 (2d Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998)). In this respect, *Troell* confirms that this Court may dismiss the claims against Al Rajhi Bank without waiting for the Second Circuit to clarify personal-jurisdiction law in light of *Fuld v. PLO*, 606 U.S. 1 (2025).

In *Troell*, the defendants were alleged to have consciously and profitably operated a cryptocurrency exchange as a haven for illicit actors, including terrorist organizations such as those that harmed the *Troell* plaintiffs in terrorist attacks in the United States and around the globe. *See, e.g.*, 2026 WL 636849, at *1, 6 (quoting senior management statements that Binance users "are here for crime" but that "we close 2 eyes"). Yet *Troell* dismissed all aiding-and-abetting, conspiracy, and primary-liability claims against all defendants for failure to state a claim, including all such claims against two defendants whose motions also raised lack of personal jurisdiction; the court found it unnecessary to address the personal-jurisdiction grounds. *Id.* at *25.

1. ***Troell* Follows *Twitter* And *Ashley* In Applying The "Knowing And Substantial Assistance" Requirement For Aiding And Abetting**

*Troell* dismissed the claims against all defendants because the plaintiffs failed to show "knowing and substantial assistance" under *Twitter* and *Ashley*, despite alleging deliberate regulatory violations that the defendants knew benefitted the relevant Foreign Terrorist Organizations. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023); *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025). In particular, *Troell* found that the defendants were alleged to have "[1] *deliberately violated* regulatory requirements designed to prevent illicit activity, [2] provided

The Honorable George Daniels
March 24, 2026

deficient geofencing controls and encouragement of [the use of] VPNs in order *to flout sanctions restrictions*, [3] *obstructed law enforcement* investigations into their wrongdoing, [and 4] *warned accountholders*, including for wallets associated with FTOs, to remove funds when identified by third party compliance auditors . . . ." *Troell*, 2026 WL 636849, at *17 (emphases added). The court pointed to specific allegations that Binance, for example:

- "lied about the state of its compliance program to U.S. regulators and partner businesses";

- created "'fake'" money laundering reports (quoting Binance compliance officers);

- acknowledged "'teaching ppl how to circumvent sanctions'" (quoting Binance customer service employees) and "took steps to retain known illicit actors" as customers;

- processed *millions* of transactions from sanctioned jurisdictions including Iran, Syria, and North Korea;

- processed transactions for OFAC-designated internet platforms including Garantex and "the world's largest darknet market," Hydra Market;

- processed transactions for cyberterrorists such as Wizard Spider, North Korea's RGB, and operatives of Iran's Islamic Revolutionary Guard Corps ("IRGC"), and involving at least 24 ransomware attacks; and

- processed transactions for cryptocurrency wallets allegedly associated with Foreign Terrorist Organizations including the IRGC ("at least" $1.3 million), Hamas ("at least" $56 million), Palestinian Islamic Jihad ("PIJ") ("at least" $59 million), al-Qaeda ($1.8 million), and ISIS ($2.9 million);

*Id.* at *5–10.

*Troell* determined that the plaintiffs adequately alleged that the defendants had a "general awareness of the role the Binance exchange played in terrorist financing." *Id.* at *16. Even so, *Troell* held that, under *Twitter* and *Ashley*, the complaint failed to allege that the defendants "knowingly and substantially aided and abetted the commission of the terrorist attacks that injured Plaintiffs." *Troell*, 2026 WL 636849, at *16. Specifically, the complaint did not (a) "establish a definable nexus between Defendants' conduct and support for specific terrorist attacks" or, in the alternative, (b) "meet the high bar of establishing that Defendants' support for the FTOs was so systemic and pervasive that they can be held liable for all foreseeable acts of these organizations." *Id.*

**i. Processing transactions for customers controlled by terrorists was not "knowing and substantial assistance."** For example, Binance was alleged to have processed $7.8 *billion* for the Iranian exchange Nobitex. *Id.* at *9. The court held that, even assuming that Nobitex was "controlled by the IRGC," Binance's financial services to Nobitex did "not suggest that Defendants intended to assist IRGC in committing terrorist attacks." *Id.* at *19.

**ii. Processing transactions for a known money-launderer for terrorists was not "knowing and substantial assistance."** Binance was alleged to have processed millions of dollars for money exchanger Tawfiq al-Law, sanctioned for "routing funds from IRGC to Hezbollah." *Id.* at *8, 19–20. Under *Ashley*, "money laundering on behalf of an individual or entity with connections to terrorists, without more," cannot make a bank liable for aiding and abetting, "as such a theory of

2

liability depends upon money's fungibility." *Troell*, 2026 WL 636849, at *20 (citing *Ashley*, 144 F.4th at 443-44); *see id.* (reaching "[t]he same result" as *Ashley*, because "'the complaint offers no discernable nexus between the money laundering and the attacks committed against Plaintiffs'") (quoting *Ashley*, 144 F.4th at 444).

**iii. Knowingly processing transactions with a terrorist network was not "knowing and substantial assistance."**  Binance admitted it had "knowingly processed transactions for dozens of users with 'tens of millions of dollars in transactions with an identified PIJ network.'"  *Id.* at *21 (recounting Binance's alleged admission to FinCEN that Binance had been "told repeatedly that Hamas terrorists were transacting on the Binance exchange").  Yet the plaintiffs failed to allege "a linkage with the terrorist attacks" or, absent such nexus, to meet their "'drastically increase[d]'" burden to show that the defendants "'consciously and culpably assisted the attack.'" *Id.* (quoting *Twitter*, 598 U.S. at 503).

> **2.**    ***Troell* Confirms That This Court Need Not Wait Any Longer To Dismiss Plaintiffs' Claims Against Al Rajhi Bank For Failure To State A Claim**

Al Rajhi Bank first appeared in this MDL *twenty-four years* ago and moved to dismiss the claims against it under Rule 12(b)(2) and Rule 12(b)(6).  In those prior proceedings, this Court dismissed the claims against the Bank under Rule 12(b)(6) because "Plaintiffs do not offer facts to support their conclusions that Al Rajhi Bank had to know that Defendant charities . . . were supporting terrorism." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 831–33 (S.D.N.Y. 2005), *aff'd,* 714 F.3d 118, 124–25 (2d Cir. 2013), *cert. denied* 134 S. Ct. 2870 (2014).

In the current proceedings, Al Rajhi Bank again moved to dismiss under Rule 12(b)(2) and Rule 12(b)(6).  Def.'s Mot. to Dismiss (ECF Nos. 3702, 3703, 3869).  This time the Court elected to dismiss Al Rajhi Bank under Rule 12(b)(2) rather than under Rule 12(b)(6), presumably because both of the other co-defendants were also moving under Rule 12(b)(2).  In its dismissal of Al Rajhi Bank under Rule 12(b)(2), the Court recognized that Plaintiffs did not raise "any new or materially different allegations." *In re Terrorist Attacks on September 11, 2001*, 295 F. Supp. 3d 416, 428 (S.D.N.Y. 2018); *see also id.* at 427 (stating that even "accepting [Zacarias] Moussaoui's vague and conclusory testimony as true, it at most supports the inference that ARB provided funds and financial services to individuals and organizations that were affiliated with al Qaeda").  Therefore, as before, Plaintiffs' allegations could not have stated a claim against Al Rajhi Bank.

Following the Second Circuit's summary order remanding for jurisdictional discovery of Al Rajhi Bank, *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 69 (2d Cir. 2019) ("Summary Order"), the Bank renewed its motion to dismiss under Rule 12(b)(6). Def.'s Renewed Mot. (ECF Nos. 5384, 5385, 6048).  Magistrate Judge Netburn acknowledged that, under *Center for Reproductive Law* and its progeny, the Court has "discretion to determine the order in which it analyzes the bases for dismissal," but ordered jurisdictional discovery to proceed.  Op. & Order 9, Mar. 26, 2021 (ECF No. 6681).  This Court has yet to decide Al Rajhi Bank's objections to Magistrate Judge Netburn's order.  *See* Def.'s Objs. (ECF Nos. 6724, 6807).

Meanwhile, Al Rajhi Bank dutifully participated in three years of jurisdictional discovery, which covered factual issues that also would be necessary to show "knowing and substantial assistance" to Al Qaeda.  *See* Summary Order 69 (mandating jurisdictional discovery on "(1) *when* the alleged

The Honorable George Daniels
March 24, 2026

support was given to al Qaeda, (2) *what* support was given, (3) whether the support was 'earmarked' for use in *specific schemes or attacks* not directed at the United States, or (4) specifically *how* [Al Rajhi Bank was] involved in the process of providing support to al Qaeda") (emphases added); Order 11–12 (ECF No. 6681). Following jurisdictional discovery, Al Rajhi Bank again renewed its motion to dismiss for lack of personal jurisdiction and failure to state a claim. Def.'s Renewed Mot. to Dismiss (ECF Nos. 9785, 9786, 10403).

At oral argument on the Bank's renewed motion to dismiss, Plaintiffs conceded that their theories after jurisdictional discovery are "predicated upon" nothing more than the Bank's purported provision of "money laundering assistance" to entities supposedly linked to Al Qaeda. Hr'g Tr., Dec. 10, 2024, 71:6–8. What is more, Plaintiffs effectively admitted that *no* evidence in their 576-paragraph Corrected Averment (ECF No. 9764) shows any "discernable nexus" (*Ashley*, 144 F.4th at 444) between funds processed by Al Rajhi Bank and the 9/11 Attacks, resorting instead to conclusory and unfounded allegations about supposed money-laundering assistance to Al Qaeda:

> THE COURT: What is it that you say [Al Rajhi Bank] knew or which individuals that the bank knew and in what specific way did they assist in terrorist activities?
>
> MR. CARTER: Sure, your Honor. What the bank knew is that this proliferation of accounts it was handling on behalf of these entities were being used in ways that clearly indicated that they were laundering funds in support of terrorism.
>
> . . . .
>
> THE COURT: So have you been able to trace any of these funds and any of these transfers to the assistance of some terrorist act?
>
> MR. CARTER: Only insofar, your Honor, as the record is clear that what the entities and individuals were doing during this time was focused on delivering funding and support to Al-Qaeda.

Hr'g Tr., 60:22–61:4; 94:15–21.

*Troell* shows that — even accepting Plaintiffs' demonstrably unfounded allegations as true — this Court can once and for all dispose of this marathon litigation against Al Rajhi Bank by addressing the Bank's Rule 12(b)(6) arguments. Even if Al Qaeda had "controlled" the charities holding accounts at Al Rajhi Bank (an allegation Plaintiffs could not support from the record), *Troell* confirms that Plaintiffs have not stated a claim against the Bank because they failed to show any nexus between the Bank's financial services to those charities and the 9/11 Attacks. *See Troell*, 2026 WL 636849, at *19 (holding that processing "billions of dollars" of transactions for an exchange "controlled by" IRGC could not show nexus between Binance and attacks attributed to IRGC); *see also Ashley*, 144 F.4th at 444 (rejecting "widespread money laundering" theory of aiding and abetting "based on money's fungibility"). *Troell* further confirms that the absence of any nexus between Al Rajhi Bank's financial services and the 9/11 Attacks also defeats Plaintiffs' baseless and speculative leap that Al Rajhi Bank *knowingly* processed transactions for an Al Qaeda network, because Plaintiffs have failed to allege that the Bank "'consciously and culpably assisted the attack.'" *Troell*, 2026 WL 636849, at *21 (quoting *Twitter*, 598 U.S. at 503).

4

**WHITE & CASE**

### 3.    *Troell* Underscores The Second Circuit's Approval Of Dismissal On The Merits Where, As Here, The Outcome Is Foreordained

*Troell* dismissed the claims against all of the defendants for failure to state a claim on the merits without reaching two of those defendants' pending motions to dismiss for lack of personal jurisdiction.  *Id.* at \*25 (quoting *Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012)).  As the Second Circuit noted in *Chevron*: "when the jurisdictional question is complex or difficult, a court simply may avoid the issue by resolving the suit on the merits when they clearly must be decided *in favor of the party challenging jurisdiction*, thereby *obviating any need* to decide the question; that approach is possible even when the jurisdictional issue lacks complexity . . . ."  667 F.3d at 246 n.17 (citation omitted) (emphases added); *see also Fraenkel v. Standard Chartered Bank*, No. 24-cv-4484, 2025 WL 2773251, at \*11 (S.D.N.Y. Sept. 26, 2025) (dismissing ATA claims against defendant bank on the merits, reasoning that, "because the Court has resolved the Rule 12(b)(6) motion without ruling on any 'question of law that otherwise would have gone unaddressed,' the Court assumes personal jurisdiction exists for purposes of deciding the motion to dismiss") (quoting *Ctr. for Reprod. Law*, 304 F.3d at 194); Al Rajhi Bank Ltr. to Court, Oct. 3, 2025 (ECF No. 11349).

Al Rajhi Bank remains ready and willing to submit further briefing on *Twitter*, *Ashley*, *Fraenkel*, and *Troell* in support of dismissal of Plaintiffs' recycled claims against the Bank for failure to state a claim.  Al Rajhi Bank reserves all rights and defenses, including as to this Court's lack of personal jurisdiction.

Respectfully submitted,

s/ *Christopher M. Curran*

Christopher M. Curran
Nicole Erb
Nicolle Kownacki
Reuben J. Sequeira
Michael Mahaffey

*Counsel for Al Rajhi Bank*

cc:    Counsel of Record (via ECF)