

**McANDREW**
**VUOTTO** LLC
ATTORNEYS AT LAW

Jonathan P. Vuotto, Esq.
jpv@mcandrewvuotto.com
Direct: (973) 532-6242

March 27, 2026

*Via ECF*

Hon. Sarah Netburn, U.S.M.J.
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      **Re:   In re Terrorist Attacks on September 11, 2001**
             **Case No. 03 MDL 1570 (GBD)(SN)**
             **Second Supplemental Submission for 1610(c) motion – Eaton**

Dear Judge Netburn:

We represent Jacqueline Eaton-Garland, individually and as Personal Representative of the Estate of Robert D. Eaton (collectively, "Eaton") in the above-referenced matter. We respectfully submit this letter in response to the Court's March 23, 2026 Orders [ECF Nos. 11897 and 11898] granting Eaton an extension of time to file any certified copies of diplomatic notes and supporting documents in further support of her motion pursuant to 28 U.S.C. § 1610(c) [ECF No. 11711]. Despite continued diligence, to date Eaton has not obtained the diplomatic notes and supporting materials. There is other evidence that we submit is sufficient to evidence that Eaton properly served Iran with her judgments, however, and therefore we respectfully request that the Court grant Eaton's pending motion.

Since the Court entered its initial Order on March 18, 2026 [ECF No. 11882] directing the filing of certified copies of diplomatic notes or, alternatively, an explanation as to why the Court should grant Eaton's pending motion pursuant to 28 U.S.C. § 1610(c) [ECF No. 11711], Eaton has undertaken extensive efforts to obtain the materials.

Upon receiving the Court's Order, we immediately performed an extensive search of the ECF docket to determine if the diplomatic notes and supporting materials had been previously filed. Unfortunately, we determined that the materials are not currently on the docket. Also on March 18, I reached out to Eaton's prior counsel, John F. Schutty, Esq., to determine if he was in possession of the diplomatic notes and supporting materials. Mr. Schutty was unable to locate the requested materials, but he provided his Certificate of Service of Eaton's judgments, which was executed contemporaneously and attested that all required service steps were followed, and a Certificate of Mailing from the Court Clerk to the State Department [ECF No. 11893-3]. Mr. Schutty represented that he did not recall receiving the diplomatic note [ECF No. 11893-1]. On March 19, 2026, I requested the diplomatic notes and supporting materials from the State Department [ECF No. 11893-2].

On March 20, 2026, we requested either an extension of time to provide the requested materials or for an order granting Eaton's 1610(c) motion without the diplomatic note, because of the other evidence supporting Iran's having been served with Eaton's judgments [ECF No. 11893]. On March 23, 2026, the Court entered the Order granting Eaton an extension to March 27, 2026, to file any certified copies of diplomatic notes and supporting documents.

On March 23, 2026, Eaton met with her Representative's office, requesting assistance with obtaining the diplomatic notes and supporting documents from Congressman Souzzi. Eaton followed up by email with Congressman Souzzi's office that evening to further her request for assistance with obtaining the documents. A true and correct copy of Eaton's email is attached hereto as **Exhibit A**. Also on March 23, I again contacted Mr. Schutty, requesting all of his files relating to service on Eaton's behalf. Mr. Schutty responded on March 23, providing additional service documents and stating that his "paralegal personally visited the SDNY Clerk's Office to deliver the package for service upon the Department of State," but that he has "no record of ever receiving a 'Diplomatic Note' from the Department of State confirming receipt." A true and correct copy of Mr. Schutty's email and the attached service documents are attached hereto as **Exhibit B**.

On March 24, 2026, Eaton personally traveled to 500 Pearl Street and spent five hours searching through boxes in the public records room, attempting to find any trace of the diplomatic notes and supporting materials. Unfortunately, Eaton was not successful in her search, but she did find some relevant materials. When she returned home that evening, she again emailed Congressman Souzzi's office, reporting on her progress, attaching what she had found, and requesting assistance to obtain either documents or an affidavit from the State Department. A true and correct copy of Eaton's March 24 email and the attached documents from the SDNY Clerk's Office is attached hereto as **Exhibit C**. Also on March 24, I emailed Mr. Schutty again, updating him on Eaton's search and attaching a letter from the State Department that was copied to him on May 28, 2020, which Eaton found at the Clerk's Office, but related to the service of a complaint in March 2020, and I asked Mr. Schutty to check whether he received anything from the State Department in that time frame or later that relates to the service of Eaton's judgments. A true and correct copy of my email to Mr. Schutty of March 24 is attached hereto as **Exhibit D**.

On March 25, 2026, Eaton again emailed the State Department, requesting assistance in locating the records, and attached Mr. Schutty's service documents. Eaton's March 25 email to the State Department is attached hereto as **Exhibit E**. Eaton also overnighted a hard copy request to the State Department on March 25, a true and correct copy of which is attached hereto as **Exhibit F**. Mr. Schutty emailed me on March 25, stating that he and his paralegal went to his external storage location and scoured all of his "9/11 files in a search for a "Diplomatic" confirmation of Service of the Default Judgments upon Iran," and that "[u]nfortunately, we could find no such confirmation." A true and correct copy of Mr. Schutty's email is attached hereto as **Exhibit G**. I responded to Mr. Schutty on March 25, letting him know that we had been emailing and writing the State Department requesting the diplomatic notes and supporting documents, and asked that he also send them an email requesting the materials. A true and correct copy of my March 25 email to Mr. Schutty is attached hereto as **Exhibit H**.

On March 26, 2026, Eaton spoke the SDNY Court Clerk's executive assistant Rachel, who advised that, although her office could not locate the diplomatic notes, the office also did not see

any notice that the service was unsuccessful.  The Clerk's office noted that in February-March 2020 when the service was effectuated, and particularly subsequently in 2020 at the time when the Clerk's office would have received the diplomatic note, the Covid-19 pandemic had caused a temporary shutdown of the office, suspension of regular office procedures, and a period of chaotic filing and record-keeping thereafter.  Eaton again emailed Congressman Souzzi's office on March 26, following up on her prior requests, but has not yet received a response.  Eaton is continuing her efforts to obtain the diplomatic notes and supporting documents directly from the State Department.

Accordingly, Eaton's diligence in attempting to obtain copies of the diplomatic notes and supporting documents is extensive and well-documented. This record demonstrates that the required steps to effect service were carried out and that any absence of diplomatic notes is attributable to factors outside Eaton's control, including disruptions to court operations during the Covid-19 pandemic – disruptions that courts have recognized as creating extraordinary procedural challenges that should not defeat otherwise valid claims on purely technical grounds. *Cf., e.g., United States v. Smith*, 460 F. Supp. 3d 783, 791 (E.D. Ark. 2020); *Harper v. Ercole*, 648 F.3d 132, 136-37 (2d Cir. 2011). These circumstances provide a concrete explanation for the absence of records that would ordinarily be maintained, and weigh against penalizing Eaton for gaps attributable to systemic disruption rather than any failure of compliance.

While Eaton continues her efforts to obtain the diplomatic notes and will promptly supplement the record if they are located, the Court should grant Eaton's § 1610(c) motion based on the existing record. Eaton has substantially complied with §1608(a)(4), and § 1610(c) requires the Court to determine that a reasonable period has elapsed following entry of judgment and proper service under § 1608; it does not require production of any specific form of documentary proof where the record otherwise establishes compliance. *See, e.g., First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda*, 877 F.2d 189, 194-95 (2d Cir. 1989); *Doe v. Bin Laden*, 663 F.3d 64, 68-69 (2d Cir. 2011); *Levin v. Bank of N.Y.*, No. 09 Civ. 5900, 2011 WL 812032, at *2-3 (S.D.N.Y. Mar. 4, 2011).

As reflected in the Certificates of Service and Mailing, Eaton's prior counsel contemporaneously certified that he completed all steps required to effect service under § 1608(a)(4)—evidence that is not uniformly available in similar cases—by transmitting the required materials to the Clerk of Court for dispatch to the United States Department of State for service upon Iran through diplomatic channels. The Clerk confirmed that those materials were sent. These materials constitute competent evidence that service was effected in accordance with the statute. *See, e.g., Levin*, 2011 WL 812032, at *2-3. At minimum, the record establishes that the statutory transmission required by § 1608(a)(4) occurred and was accepted by the Clerk and the Department of State without any indication of failure – facts that courts routinely treat as sufficient to support enforcement under § 1610(c). The absence of any record of failed service, combined with confirmation that the Clerk transmitted the materials to the Department of State, supports the inference that service was completed in the ordinary course.

Although diplomatic notes provide formal confirmation of service through diplomatic channels, they are generated and maintained by the Department of State, and Eaton has diligently sought to obtain them. On this record, § 1610(c) is satisfied. Taken together, the record demonstrates that Eaton completed every step required by § 1608(a)(4), that the Clerk transmitted the materials to the Department of State, and that there is no evidence that service failed. The

4

absence of a diplomatic note—an internal government record outside Eaton's control—does not negate these facts. Under these circumstances, the Court may confidently conclude that service was effected and that the requirements of § 1610(c) are satisfied. Denying the motion solely due to the absence of a diplomatic note—despite undisputed transmission through the Clerk and State Department—would improperly elevate form over substance. *Cf. First Fid. Bank*, 877 F.2d at 193-95; *Transaero, Inc. v. La Fuerza Aérea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994).

Accordingly, Eaton respectfully requests that the Court deem the service requirements satisfied for purposes of 28 U.S.C. § 1610(c), or, in the alternative, grant Eaton an additional extension of time to supplement the record with the diplomatic notes and supporting materials.

We thank the Court for its consideration of this submission.

Respectfully submitted,

*/s/Jonathan P. Vuotto*
Jonathan P. Vuotto

Enclosures

cc:    Counsel of Recond (via ECF)