**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |

*This document relates to*:
All Actions

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL [ECF No. 11796] THE CENTRAL INTELLIGENCE AGENCY TO PRODUCE DOCUMENTS IN RESPONSE TO PLAINTIFFS' RULE 45 SUBPOENA**

---

Robert T. Haefele
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel of the Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

Sean P. Carter
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

April 15, 2026

i

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.     RULES 45 AND 26 COMPEL COMPLIANCE WITH THE SUBPOENA ...................... 2

      A.     The Rules 26/45 Standard Applies; Touhy Regulations Do Not Displace
            Rule 45 Enforcement ............................................................................................ 2

      B.     Deference Does Not Excuse the CIA from Meeting the Rule 45 Standard ............ 3

      C.     The CIA's Glomar-Style Declaration Fails the Governing Rule 45 Standard ........ 4

II.    THE CIA'S POSITION MISSTATES ITS BURDEN AND VIOLATES RULE 45
      BY UNILATERALLY CONTROLLING SEARCH METHODOLOGY AND
      IMPOSING ARBITRARY LIMITS WITHOUT JUDICIAL OVERSIGHT ...................... 7

      A.     The Meet-and-Confer Record Supports Plaintiffs ................................................. 7

      B.     The CIA's Undue-Burden Argument Rests on Mischaracterizing the Dispute
             and an Impermissible Claim of Unilateral Control Over Search
             Methodology Under Rule 45 .................................................................................. 7

      C.     A Post-Hoc "Responsiveness Review" Cannot Remedy Bias Introduced by
             Unilateral Search-Term Selection ........................................................................11

      D.     The CIA's Unexplained 20-Document Cap Is Arbitrary and Unsupported
             Under Rules 26 and 45 ..........................................................................................11

III.   PLAINTIFFS' FLEXIBLE, COURT-SUPERVISED PROPOSAL PRESERVES
      RULE 45 OVERSIGHT WHILE ACCOMMODATING LEGITIMATE CIA
      CONCERNS, UNLIKE THE CIA'S INSULATION-FROM-REVIEW
      APPROACH. ............................................................................................................. 12

CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Defense*, 322 F. Supp. 3d 464 (S.D.N.Y. 2018) ............................................. 4, 5

*ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547 (S.D.N.Y. 2005) ..................................................... 5

*Brennan Ctr. for Justice at N.Y. Univ. School of Law v. Dep't of Justice*,
    571 F. Supp. 3d 237 (S.D.N.Y. 2021)........................................................................... 9

*Brennan Ctr. for Justice at N.Y. Univ. School of Law v. U.S. Immigr. & Customs Enf't*,
    377 F. Supp. 3d 428 (S.D.N.Y. 2019)........................................................................... 9

*Brookes v. Macy's, Inc.* 2011 WL 1793345 (S.D.N.Y. May 6, 2011)..............................................11

*Doe (P) v. Panetta*, 616 F. Supp. 2d 1 (D.D.C. 2009) ...................................................................... 4

*DoorDash, Inc. v. City of New York*, 754 F. Supp. 3d 556 (S.D.N.Y. 2024) ................................... 8

*Halpern v. FBI*, 181 F.3d 279 (2d Cir. 1999) .................................................................................. 3

*In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478 (S.D.N.Y. 2021).................. passim

*Samsung Electronics Co., Ltd. v. Microchip Tech. Inc.*, 347 F.R.D. 252 (2024) ...........................11

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009) ........................................11, 12

*Smith v. U.S. Marshals Serv.*, 2021 WL 1177692 (S.D.N.Y. Mar. 29, 2021)................................. 9

*The Few, the Proud, the Forgotten v. U.S. Dep't of Veterans Affs.*, 254 F. Supp. 3d 341
    (D. Conn. 2017)................................................................................................................ 9

*United States v. Reynolds*, 345 U.S. 1 (1953)................................................................................... 4

*William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134 (S.D.N.Y.
    2009) ............................................................................................................................. 12

*Wilner v. Nat'l Sec. Agency*, 592 F.3d 60 (2d Cir. 2009) ............................................................... 3

**Rules**

Fed. R. Civ. P. 26............................................................................................................... passim

Fed. R. Civ. P. 45............................................................................................................... passim

**Regulations**

32 C.F.R. § 1905.4(c)............................................................................................................ 2

32 C.F.R. §§ 1905.1–1905.4................................................................................................. 2

## Index of Docket Entry References

**Pls.' Br.**       Plaintiffs' Brief in Support of Motion to Compel, ECF No. 11797

**Haefele Decl.**       Declaration of Robert T. Haefele in Support of Plaintiffs' Motion to Compel, ECF No. 11798

**CIA Opp.**       Central Intelligence Agency's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel, ECF No. 11899

**Williams Decl.**       Declaration of Mary C. Williams, Litigation & Investigations Information Review Officer for the Information Review and Release Division, Central Intelligence Agency, in Opposition to Plaintiffs' Motion to Compel, ECF No. 11900

**INTRODUCTION**

Plaintiffs present a narrow dispute: whether the CIA may condition Rule 45 compliance on CIA-dictated search terms, an arbitrary 20-document production cap, and a prejudicial search protocol (applied to documents dating to more than 25 years ago). The CIA has refused to consider search terms derived from publicly released CIA documents, declined to refine those terms, and offered no justification for its cap—effectively appointing itself gatekeeper of its own discovery obligations, removing the Court from its supervisory role.

This dispute is governed by Rules 45 and 26, not the CIA's Touhy regulations or FOIA's Glomar doctrine. The CIA's supporting declaration (Williams Decl.) does not meet its Rule 45 obligations because it fails to invoke a recognized evidentiary privilege, to show with reasonable specificity a "reasonable danger" to national security, or to provide request-specific explanations for rejecting publicly derived search terms or imposing its cap.

The CIA defends its position by asserting that compliance with the subpoena "as written" imposes an undue burden, by invoking classification and "mosaic" theories, and by characterizing its proposal as reasonable. Those arguments sidestep the core question: whether the CIA may categorically refuse Plaintiffs' search terms, foreclose meaningful refinement, and impose an arbitrary cap without court-reviewable justification—and without addressing prejudice to Plaintiffs and the discovery process.

Finally, the CIA's opposition ignores critical context. Plaintiffs' subpoena responds directly to the Court's instruction to seek discovery from U.S. agencies to mitigate spoliation-related prejudice. The CIA's noncooperation or minimal production perpetuates that prejudice despite Plaintiffs' compliance with the Court's directive.

1

Plaintiffs therefore request that the Court order the CIA to conduct limited searches using Plaintiffs' proposed terms (or confer in good faith on non-prejudicial alternatives) and, after identifying the responsive universe, confer regarding any limits on review or production.

ARGUMENT

## I.    RULES 45 AND 26 COMPEL COMPLIANCE WITH THE SUBPOENA

### A.    The Rules 26/45 Standard Applies; Touhy Regulations Do Not Displace Rule 45 Enforcement

As this Court has ruled, the general third-party discovery standard under Rules 26 and 45 govern disputes involving non-party federal agencies' responses to subpoenas. *In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478, 488–89 (S.D.N.Y. 2021). The CIA concedes this. CIA Opp. at 8-9. Under that framework, the requesting party must show relevance, and the subpoena recipient bears the burden of demonstrating undue burden or protected material, with the Court tailoring protections as necessary. *In re Terrorist Attacks*, 523 F. Supp. 3d at 489–90.[1]

After acknowledging that Rules 26 and 45 govern the applicable standard, the CIA nonetheless turns to its Touhy regulations (32 C.F.R. §§ 1905.1–1905.4) to suggest that the discretion to restrict release of information "rest[s] with the agency." CIA Opp. at 9. But Touhy regulations function here only as considerations within the Rule 26/45 analysis, not as a jurisdictional shield, *see In re Terrorist Attacks*, 523 F. Supp. 3d at 488–90, and the CIA's own Touhy factors, 32 C.F.R. § 1905.4(c); CIA Opp. at 10, include whether production is appropriate under governing discovery rules or procedures, confirming that Rule 45 remains the governing framework.

---

[1] The CIA's reference to a circuit split, CIA Opp. at 8-9 n.1, does not displace this Court's practice. And even if APA-style review *were* considered, the CIA would still need to provide a reasoned, request-specific explanation for refusing Plaintiffs' public terms and imposing a fixed production cap—something it does not do.

2

**B.      Deference Does Not Excuse the CIA from Meeting the Rule 45 Standard**

The CIA cites national-security deference authorities to urge the Court to defer to its national security judgments. CIA Opp. at 15–18. But deference applies only where the agency satisfies its Rule 45 burden by invoking a recognized privilege and making a particularized, judicially reviewable showing. Even in sensitive contexts, courts require "reasonably detailed," non-conclusory, non-generalized explanations, sufficient for independent assessment. *Halpern v. FBI*, 181 F.3d 279, 290, 293 (2d Cir. 1999).

Critically, outside the FOIA context, a federal agency cannot defeat a Rule 45 subpoena through a bare refusal to confirm or deny the existence of responsive materials. FOIA's Glomar doctrine does not supply an independent standard for withholding discovery in civil litigation, nor does it relieve an agency of its obligation to place its privilege claim before the Court for testing under Rules 26 and 45. *See Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 68-70 (2d Cir. 2009) (describing Glomar as a FOIA response mechanism); *ACLU v. Dep't of Defense*, 322 F. Supp. 3d 464, 474 (S.D.N.Y. 2018) (recognizing the doctrine is largely "a judicial construct, an interpretation of FOIA exemptions that flows from their purpose rather than their express language."); *Doe (P) v. Panetta*, 616 F. Supp. 2d 1, 2 (D.D.C. 2009) (noting absence of authority "that a Glomar response applies outside the FOIA context.").

Instead, to prevent the agency from bypassing the Federal Rules and foreclosing judicial oversight, civil discovery requires formal, judicially testable assertions of recognized privileges— not categorical refusals. Where the government contends that acknowledgment itself would cause harm, it must submit a sworn declaration that: (i) expressly invokes a recognized evidentiary privilege (such as the state-secrets privilege or a specific statutory nondisclosure provision); (ii) demonstrates with reasonable specificity a "reasonable danger" that disclosure—including acknowledgment—would harm protected national-security interests; and (iii) provides sufficient

3

detail to enable the Court to assess whether, and to what extent, tailored relief or protective measures may be crafted. *See United States v. Reynolds*, 345 U.S. 1, 7–11 (1953).

Accordingly, where an agency asserts that even confirmation or denial would reveal intelligence sources, methods, priorities, or gaps, the agency's supporting declaration must do more than invoke generalized "mosaic" or inference-based concerns. It must tie the claimed harm to the specific discovery dispute before the Court, explain why lesser measures (such as term refinement, staged searches, protective orders, or in camera review) are insufficient, and permit the Court to perform the proportionality and tailoring analysis Rule 45 requires. Conclusory or categorical non-acknowledgment does not satisfy that standard. *See ACLU v. Dep't of Defense*, 322 F. Supp. 3d at 473 (rejecting in a FOIA context "conclusory affidavits that merely recite statutory standards…,"); *ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 567 (S.D.N.Y. 2005) (rejecting in a FOIA context conclusory assertions of non-segregability in declaration).

C.      **The CIA's Glomar-Style Declaration Fails the Governing Rule 45 Standard**

Measured against the Rule 45 standard, the Williams Declaration is legally insufficient. Reciting generalities and statutory standards, the Declaration offers little judicially reviewable information. Nor does it formally invoke an evidentiary privilege; or provide request-specific explanations for refusing Plaintiffs' publicly derived search terms; or explain why court-managed tailoring could not mitigate the asserted risks. Nor does it explain how the CIA's insistence on its search terms, without consideration for the prejudice caused to Plaintiffs, meets the proportionality and tailoring standards under Rule 45. Instead, the CIA parrots statutory language and advances a categorical "cannot-confirm-or-deny" logic as to 25-year-old records that would remove this Court from supervision of discovery at the precise stage where Rule 45 places that responsibility. The CIA cannot salvage this approach by importing FOIA's Glomar framework, CIA Opp. at 13-16;

4

Williams Decl. ¶¶ 44–53, 56–58, as that framing misstates the governing standard, *supra*, at §§ I.A., I.B.

Here, the Williams Declaration does not meet the CIA's Rule 45 burden to make a "reasonably detailed," non-conclusory, non-generalized showing with sufficient granularity to permit independent judicial assessment of scope, alternatives, and tailoring. *See supra*, at § I.B. It does not identify a particular privilege whose elements are satisfied; does not distinguish between categories of records; and does not explain why Plaintiffs' proposed, publicly-derived terms— drawn from declassified CIA materials—pose unique or incremental risks relative to the CIA's own terms. Nor does it explain why less restrictive alternatives—such as term refinement, tiered searching, production caps tied to responsiveness (rather than fixed numerosity), or in camera review—could not mitigate stated concerns.

Indeed, the declaration confirms that the CIA has already designed a search methodology engineered to manage external inferences—by ensuring that results neither confirm nor deny intelligence interest. Williams Decl. ¶ 57. That admission underscores the defect: the CIA is not refusing Plaintiffs' terms because they are infeasible, but because it seeks unilateral control over inference management—a consideration that cannot displace the Court's supervisory role over discovery.

The nature of the records at issue and related considerations render the CIA's approach especially dubious and amplify the need for careful judicial supervision. The documents subject to the CIA's review and production are approximately a quarter century old, and thus were presumptively declassified long ago under the governing Executive Order 13526. Moreover, Executive Order 14040 creates an expectation that such legacy materials would already have been

systematically reviewed and considered for declassification, further undercutting claims that routine confirmation or production poses acute sensitivity or burden concerns.

The 36 documents the CIA produced in March 2026—its only production to Plaintiffs' subpoena to date— underscore these concerns. The documents respond to Plaintiffs' Request Nos. Nos. 14 and 15, which identified specific documents by name. Most of those documents, which date from roughly 22–33 years ago, are substantively indistinguishable from versions the CIA released in May 2012 in response to FOIA requests, bearing identical sweeping redactions. Notwithstanding the CIA's meet-and-confer commitments to conduct declassification reviews, decades after the documents were created and years after successive Executive Orders mandated generalized declassification, the Agency has effectively recycled the same materials with the same redactions.[2]

In the end, though, Rule 45 does not permit a non-party to avoid judicial scrutiny by asserting that any discussion of alternatives is off-limits. Where, as here, the agency can conduct some form of search, it must explain—under oath and with particularity—why the requesting party's reasonable, public-source-based alternatives cannot be tested, refined, or accommodated under court supervision. The CIA has not done so, and its Glomar-style objection fails as a matter of law.

---

[2] The six documents produced to Sudan fare no better. Four of those documents also have the same sweeping redactions as the 2012 FOIA versions, and it previously released all 6 in 2022 pursuant to EO 14040—with significantly fewer redactions than the versions produced in March 2026.

II.   **THE CIA'S POSITION MISSTATES ITS BURDEN AND VIOLATES RULE 45 BY UNILATERALLY CONTROLLING SEARCH METHODOLOGY AND IMPOSING ARBITRARY LIMITS WITHOUT JUDICIAL OVERSIGHT.**

A.   **The Meet-and-Confer Record Supports Plaintiffs**

Plaintiffs' and the CIA's narratives confirm extensive meet-and-confers in which Plaintiffs proposed alternative terms and iterative approaches, while the CIA refused to consider any party-suggested terms or address Plaintiffs' concerns about prejudicial skew, instead asserting its proposal was final. CIA Opp. at 5–8; Williams Decl. ¶¶ 22–29. Rule 45 does not permit a subpoena recipient to insist on "take-it-or-leave-it" compliance rules insulated from judicial scrutiny. *See In re Terrorist Attacks*, 523 F. Supp. 3d at 488–90.

B.   **The CIA's Undue-Burden Argument Rests on Mischaracterizing the Dispute and an Impermissible Claim of Unilateral Control Over Search Methodology Under Rule 45.**

The CIA's burden argument rests on two false premises: that Plaintiffs demand compliance with a "sprawling" subpoena "as written," despite a substantially narrowed dispute, and that Rule 45 permits the CIA unilaterally to dictate search terms without explanation, refinement, or judicial oversight. Plaintiffs' motion presents a narrow dispute about search methodology and the CIA's unilateral cap—an outcome-determinative stage Rule 45 reserves for judicial supervision.

This Court has already made clear that non-party federal agency responses to subpoenas are governed by Rules 26 and 45—not by FOIA standards or deferential APA-style review. *In re Terrorist Attacks*, 523 F. Supp. 3d at 488–90. Under that framework, once relevance is established, the burden shifts to the subpoena recipient to demonstrate undue burden or protected material, and the Court—not the agency—supervises tailoring, proportionality, and methodology. *Id.* The parties' meet-and-confer dialogue underscores that the dispute had been so narrowed.[3]

---

[3] In the parties' meet-and-confer, Plaintiffs identified the relevance and proportionality of each subpoena request. *See* Exhibit F to Haefele Decl., ECF No. 11798-6. The only issues the CIA has raised in opposition

Courts in this District repeatedly have rejected agencies' attempts to insulate their production decisions from scrutiny by asserting exclusive control over search methodology. While agencies may propose search terms, their choices are not conclusive; they must explain why terms are reasonably calculated to locate responsive materials and why obvious, relevant alternatives were rejected. *Smith v. U.S. Marshals Serv.*, 2021 WL 1177692, at *6 (S.D.N.Y. Mar. 29, 2021); *Brennan Ctr. for Justice at N.Y. Univ. School of Law v. U.S. Immigr. & Customs Enf't*, 377 F. Supp. 3d 428, 434 (S.D.N.Y. 2019). Here, where the CIA has declined to explain its search terms—and how its proposed terms avoid the prejudice Plaintiffs have identified—it has not complied with its obligation to demonstrate that its protocol is reasonable.[4]

In arguing its burden, the CIA does not address the actual burden attached to responding to Plaintiffs' proposal. The CIA addresses only the burden on the CIA if it were required to respond to the subpoena "as written" versus not at all. Crucially, it does not quantify—let alone articulate why it is undue—the burden presented by the issue in question—namely, the incremental burden of using Plaintiffs' publicly-derived terms rather than the CIA's own terms within the limited search it says it can conduct. CIA Opp. at 16-18; Williams Decl. ¶¶ 56–58. The CIA's position

---

to Plaintiffs' motion concern claims of undue burden and classification. CIA Opp., at 11-16. Additionally, assessing whether a subpoena imposes undue burden requires courts to balance interests served by demanding compliance with the subpoena against interests furthered by quashing it, which requires the court to consider whether the information is available from any other source. *DoorDash, Inc. v. City of New York*, 754 F. Supp. 3d 556 (S.D.N.Y. 2024). The destruction of the documents in Sudan tilts that balance toward demanding compliance.

[4] The CIA's opposition fails to articulate any undue burden that would result from responding as Plaintiffs proposed. Where agencies employ unexplained or artificially constrained search terms, courts have found searches unreasonable. In *Brennan Ctr. for Justice at N.Y. Univ. School of Law v. Dep't of Justice*, the court rejected agency-selected terms that were materially underinclusive and emphasized that agencies must provide "logical explanations" for each decision made as to search terms so courts can evaluate adequacy. 571 F. Supp. 3d 237, 246 (S.D.N.Y. 2021). Likewise, declarations fail where agencies do not justify why certain terms were chosen and alternatives rejected. *The Few, the Proud, the Forgotten v. U.S. Dep't of Veterans Affs.*, 254 F. Supp. 3d 341, 356 (D. Conn. 2017).

8

goes further still: it does not merely seek reasonable tailoring, but demands that its preferred outcome-shaping set of terms be accepted as final, without refinement or judicial evaluation.

Rule 45 does not permit subpoena recipients to dictate search terms as a condition of compliance, thereby shielding from judicial supervision the methodology most responsible for shaping production results. The concern is markedly intensified here, where the CIA's terms selection turns the parties' agreement to narrow the subpoena using search terms against the Plaintiffs. Plaintiffs—not the CIA—proposed using search terms as a means to accommodate the CIA's asserted burden and overbreadth concerns. Plaintiffs' narrowing necessitated Plaintiffs prioritizing issues, actors, and relationships central to their liability theories while deprioritizing others. The CIA's insistence on substituting terms drawn from the original subpoena—focused on topics Plaintiffs intentionally deprioritized—undermines that negotiated narrowing and weaponizes Plaintiffs' good-faith meet-and-confer efforts. Rule 45 does not authorize subpoena recipients to accept narrowing while unilaterally redefining which topics are searched. If narrowing is required, the requesting party—not the subpoena recipient—should determine which issues are prioritized, subject to court supervision for proportionality and burden.

Though the CIA's assertion that its review of 42 documents from its March 2026 production required "more than 100 hours," CIA Opp. at 11-12; Williams Decl. ¶ 42, suggests its review was labor-intensive, it does not justify refusing a reasonable, court-supervised protocol; refusing to correct resulting prejudice; or imposing an arbitrary cap. In fact, the example from the 42 documents casts doubt on the CIA's burden claims. The resulting March 2026 production— nearly fourteen years after the CIA released the same materials under FOIA—reflects essentially identical redactions, suggesting that the asserted effort was not the product of substantive

9

re-evaluation but of repackaging preexisting determinations. That posture undermines the claim that broader compliance would impose any materially greater burden.

The CIA's reliance on the decentralized and compartmentalized nature of its recordkeeping does not substantiate an undue-burden claim, as parties may not evade Rule 45 discovery obligations simply because their systems are cumbersome or inefficient. *Brookes v. Macy's, Inc*. 2011 WL 1793345, at *4 (S.D.N.Y. May 6, 2011) (collecting cases and holding that "the burden that results from disorganized record-keeping does not excuse a party from producing relevant documents"); *see also Samsung Electronics Co., Ltd. v. Microchip Tech. Inc*., 347 F.R.D. 252 (2024) (applying principal in the context of a Rule 45 subpoena). At most, the nature of a subpoena recipient's internal systems may inform court-supervised tailoring of discovery under Rules 26 and 45. It does not authorize a subpoena recipient to dictate search methodology, to refuse to explain how searches are conducted, or to impose unexplained numerical caps that skew results. The discovery rules do not permit an agency to benefit from its own internal recordkeeping choices.

Courts in this District have rejected unilateral determinations that burden outweighs need and have required meaningful efforts to craft workable search protocols. In *SEC v. Collins & Aikman Corp*., the court held that even where the SEC raised legitimate burden concerns, it "cannot unilaterally determine that those burdens outweigh defendants' need for discovery" and ordered the agency to negotiate a workable search protocol. 256 F.R.D. 403, 418 (S.D.N.Y. 2009). Likewise, *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co*. emphasized the need for cooperation, testing, quality control in keyword searching, as well as the need to be prepared to explain the rationale for the terms selected. 256 F.R.D. 134, 135–36 (S.D.N.Y. 2009).

10

**C.      A Post-Hoc "Responsiveness Review" Cannot Remedy Bias Introduced by Unilateral Search-Term Selection**

The CIA argues it will conduct a responsiveness review to ensure produced documents are responsive to the subpoenas. CIA Opp. at 11-12; Williams Decl. ¶ 27. But a responsiveness review can evaluate only those documents retrieved by the chosen terms; it cannot correct for skew created at the retrieval stage. That is precisely why unilateral control at the search-term stage is incompatible with Rule 45. If the requesting party and the Court are excluded from that stage, discovery becomes an agency-controlled black box in which retrieval-stage bias is invisible to later review. That is why SDNY courts require cooperation and transparency in designing search terms and methodologies. *Gross*, 256 F.R.D. at 135–36; *Collins & Aikman*, 256 F.R.D. at 414. The CIA's refusal to even account for prejudice raises real concerns about its motives and underscores why its approach must be rejected in favor an approach that results in unbiased production results.

**D.      The CIA's Unexplained 20-Document Cap Is Arbitrary and Unsupported Under Rules 26 and 45**

The CIA's rigid 20-document cap, CIA Opp. at 7, 18; Williams Decl. ¶ 28, violates Rule 45's proportionality requirements, which demand case-specific analysis rather than arbitrary numerical limits. Neither the CIA memorandum nor the Williams Declaration supplies a principled basis for why "20" is the appropriate ceiling beyond very generalized resource concerns. Proportionality analysis must consider the significance of the case, the importance of the discovery to resolving the issues, and the relative burden on the parties, not predetermined caps divorced from the specific circumstances of the litigation. Rule 45 allows courts to tailor discovery to avoid undue burden, *In re Terrorist Attacks*, 523 F. Supp. 3d at 488–90, but it does not authorize subpoena recipients to impose arbitrary numerical caps as a substitute for judicial proportionality analysis and protocol oversight.

11

### III.     PLAINTIFFS' FLEXIBLE, COURT-SUPERVISED PROPOSAL PRESERVES RULE 45 OVERSIGHT WHILE ACCOMMODATING LEGITIMATE CIA CONCERNS, UNLIKE THE CIA'S INSULATION-FROM-REVIEW APPROACH.

The CIA asks the Court to deny Plaintiffs' motion and either limit compliance to the documents identified by name or endorse the CIA's unilateral search protocol and cap. CIA Opp. at 16-18. Endorsing the CIA's proposal would remove the Court from supervision of the stage at which discovery is most susceptible to distortion under Rule 45, leaving the search process effectively insulated from judicial management. The CIA's approach would invert Rule 45's allocation of authority. Where legitimate burden and national-security concerns exist, the Court's role is to craft protective mechanisms and tailored remedies, not to defer wholesale to the subpoena recipient's preferred protocol. *See In re Terrorist Attacks*, 523 F. Supp. 3d at 488–90.

Plaintiffs' requested relief is expressly flexible and court-manageable: require use of Plaintiffs' publicly derived terms; or require good-faith term refinement to avoid skew; or require a particularized, court-reviewable explanation for refusing Plaintiffs' terms and for any proposed limitations. Pls.' Br. at 12. That approach respects legitimate CIA constraints, necessitates consideration of Plaintiffs' prejudice concerns, while preserving the Court's supervisory role under Rules 26 and 45.

### CONCLUSION

Plaintiffs therefore request that the Court order the CIA to comply with the Subpoena by conducting limited searches using Plaintiffs' proposed terms (or confer in good faith on non-prejudicial alternatives) and, after identifying the responsive universe, confer in good faith regarding any limits on review or production.

Dated: April 15, 2026                          Respectfully submitted,

12

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel of Plaintiffs' Executive Committee for Personal Injury and Death Claims on behalf of the Plaintiffs*

COZEN O'CONNOR

By: /s/ Sean P. Carter
SEAN P. CARTER
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*Co-Chair of the Plaintiffs' Executive Committee for Commercial Claims on behalf of Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c)

I hereby certify that this memorandum of law complies with the word-count limitation set forth in Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum, the memorandum contains **3,496 words**, excluding the caption, table of contents, table of authorities, index of docket entry references, and signature block.

Dated: April 15, 2026

    Respectfully submitted,

By:    */s/ Robert T. Haefele*
    ROBERT T. HAEFELE
    Motley Rice LLC
    28 Bridgeside Boulevard
    Mount Pleasant, SC 29464
    Tel.: (843) 216-9184
    Email: rhaefele@motleyrice.com