# EXHIBIT 009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

)
In re: Terrorist Attacks on                                )
September 11, 2001                                          )          No. 03 MDL 1570 (GBD) (SN)
_____     )

This applies to:

> *Ashton, et al. v. Al Qaeda Islamic Army, et al.*, *Case No.* 02-cv-6977 (GBD) (SN);
> *Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 03-cv-9849 (GBD) (SN);
> *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-7065 (GBD) (SN);
> *Salvo, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 03-cv-05071 (GBD)(SN);
> *Continental Casualty Co., et al. v. Al Qaeda et al.*, Case No. 04-cv-05970 (GBD) (SN);
> *Euro Brokers Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-7279 (GBD)(SN);
> *Federal Insurance Co., et al. v. Al Qaida, et al.,* Case No. 03-cv-6978 (GBD) (SN);
> *O'Neill, Sr., et al. v. Al Baraka et al.*, Case No. 04-cv-1923 (GBD) (SN);
> *Maher, et al. v. Islamic Emirate of Afghanistan a/k/a The Taliban, et al.*, Case No. 1:23-cv-02845 (GBD)(SN).

## <u>DECLARATION OF MOHAMED AL-HASSANI</u>

1. I, Mohamed Al-Hassani hereby declare that I am over the age of eighteen years and of sound mind to make this declaration. I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify to the statements and facts contained herein, all of which are true and accurate to the best of my knowledge and belief.

2. I studied at the Secondary Institute for Teacher's Training and I started to work as a teacher in 1970. I worked at public schools before joining the Muslim World Leage ("MWL") in 1982. I worked at the MWL Secretariat General in Makkah from 1982 to 2013. During my tenure, I have held several positions at MWL, including editor in chief of the weekly newspaper at the journalism and publication department starting in1982 and then after a year or two I became the director of this same department that issues several publications. In 1992, I became the director of the foreign offices department until 2013. In these roles I became familiar with MWL's employee regulations, foreign offices protocols, and several other topics, which I address herein. Unless otherwise stated, my declaration concerns the time period from 1992 through December 31, 2004.

3. MWL, an international Islamic non-governmental organization, performed charitable work worldwide through educational, religious, and cultural projects. MWL worked with other non-governmental organizations, governments, and international governing bodies, like the United Nations. MWL enjoyed a sterling reputation as a force for good in the world and

was often called upon for its expertise in troubling times. The Secretary General of MWL is the most senior position within MWL.

4. I joined MWL to help achieve its mission of promoting dialogue across cultures and the followers of religions, seeking to spread moderate Islamic values, countering extremist ideology through a message of peace and harmony, and alleviating Muslim suffering worldwide. In my experience, my colleagues worked tirelessly to do the same. I am proud of the work MWL has performed around the world and of my part in that work.

5. When I joined MWL, it had in place regulations, in addition to directives issued by the secretary general, governing employee conduct and relating to the hiring, promoting, and dismissing of employees. These regulations and directives, along with the principles undergirding them, have remained consistent throughout my tenure at MWL.

6. MWL employees were required to understand and follow all MWL regulations and guidelines and understand their position's responsibilities, duties, and authorities.

7. MWL employees are expected to conduct their jobs with integrity, which meant protecting MWL money and resources and respecting guidelines and orders from organizational superiors and supervisors.

8. MWL employees were prohibited from participating in activities that contradicted MWL values or taking directions from other entities. They could not accept personal gifts or donations.

9. The Secretariat General established offices outside of the Kingdom of Saudi Arabia ("Foreign Offices") as needed to pursue MWL's objectives.

10. MWL Foreign Offices carried out MWL's goals and objectives. They advised the MWL Secretariat General on proposed projects, such as the establishment of education programs and the building of mosques, and performed functions in support of these projects.

11. During my tenure, MWL adopted regulations to ensure effective supervision of projects and programs implemented by Foreign Offices. These regulations and principles remained consistent throughout my tenure at MWL. Foreign Office personnel were required to submit project progress reports and project completion reports as well as photographs of the finished projects to the relevant departments at the Secretariat General.

12. Foreign Office employees were required to understand and follow the Secretariat General's rules and regulations and perform their duties without violation, and they were required to protect MWL's resources, and were prohibited from performing activities that contradicted MWL objectives.

13. New hires in foreign offices were subject to approval from the Secretariat General. Foreign offices could not create new positions without prior approval from the Secretariat General.

14.     MWL aimed to hire competent personnel with experience and integrity. New hires had to have a respectable reputation in the local community and no criminal record.

15.     Foreign Office directors and employees had to follow the laws of their host country and not interfere with politics or participate in political activities.

16.     Foreign Office directors were prohibited from making financial decisions for their own benefit or for the benefit of any other MWL employee.

17.     Foreign Office directors were prohibited from taking decisions creating financial liabilities not previously approved in the budget.

18.     Foreign Office directors and employees were not permitted to engage in or to use MWL resources for personal commercial ventures, political activities, or violent, extremist, or terrorist activities.

19.     MWL did not employ or hire the missionaries that cooperated with it, and the missionaries were not precluded from seeking and obtaining employment elsewhere.

20.     MWL did not set working schedules for the cooperating-missionaries.

21.     MWL did not dictate nor did it have the authority to dictate how MWL-cooperating missionaries carried out their activities, including how the missionaries preached.

22.     MWL did not provide MWL-cooperating missionaries with any benefits apart from a small stipend.

23.     I did not observe any support, tacit or explicit, provided by MWL to terror organizations, including Al Qaeda. To my knowledge, MWL did not knowingly or tacitly employ members of Al Qaeda or individuals known as Al Qaeda sympathizers to work for or within MWL.

        I, Mohamed Al-Hassani declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


                                                                    _____
                                                                            [*signed*]

                                                                    Mohamed Al-Hassani


        Executed On: 1/10/2024

محكمة مقاطعة الولايات المتحدة

مقاطعة نيويورك الجنوبية

_____

في القضية المتعلقة بهجمات إرهابية في ١١ سبتمبر ٢٠٠١          رقم ٣ MDL ١٥٧٠ (GBD) (SN)

يطبق على الاتي:

أشتون وآخرون ضد القاعدة الإسلامية العسكرية وآخرين، قضية رقم ٠٢ -cv-٦٩٧٧ (GBD) (SN)؛

بورنت وآخرون ضد مؤسسة البركة للإستثمار والتنمية وآخرين، قضية رقم ٠٣ -cv-٩٨٤٩ (GBD) (SN)؛

كانتور فيتزجرالد وشركائه وآخرون ضد بنك اكيدة الخاص (ش.م.م.) وآخرين، قضية رقم ٠٤ -cv-٧٠٦٥ (GBD) (SN)؛

سالفو وآخرون ضد القاعدة الإسلامية العسكرية وآخرين، قضية رقم٣ -cv-٠٥٠٧١ *(GBD) (SN)* ؛

شركة كونتينينتال كاجولتي وآخرون ضد القاعدة وآخرين، قضية رقم ٠٤ -cv-٠٥٩٧٠ (GBD) (SN)؛

يورو بروكرز إنك وآخرون ضد البركة وآخرين، قضية رقم ٠٤ -cv-٧٢٧٩ (GBD) (SN)؛

شركة التأمين الفدرالي وآخرون ضد القاعدة وآخرين، قضية رقم ٠٣ -cv-٦٩٧٨ (GBD) (SN)؛

أونيل وآخرون ضد البركة وآخرين، قضية رقم ٠٤ -cv-١٩٢٣ (GBD) (SN)؛

ماهر وآخرون ضد الإمارة الإسلامية في أفغانستان المعروفة أيضاً بالطالبان وآخرين، قضية رقم ١:٢٣ -cv-٠٢٨٤٥ (GBD) (SN).

## <u>تصريح محمد الحساني</u>

١. أنا محمد الحساني أصرّح بموجبه بأنني تجاوزت الثامنة عشرة من عمري وأنني بكامل قواي العقلية لأقوم بهذا التصريح. لدي معرفة شخصية بالوقائع المبيّنة أدناه. إذا تم استدعائي كشاهد، أنا قادر وسأشهد على البيانات والوقائع الواردة هنا والتي هي كلها صحيحة ودقيقة على حد علمي واعتقادي.

٢. درست في المعهد الثانوي لإعداد المعلمين وبدأت العمل كمعلم في ١٩٧٠. عملت في مدارس حكومية قبل الانضمام إلى رابطة العالم الإسلامي ("الرابطة") في ١٩٨٢. عملت في الأمانة العامة في الرابطة في مكة من ١٩٨٢ الى ٢٠١٣. خلال فترة عملي شغلت عدة مناصب في الرابطة بما في ذلك في ادارة الصحافة والنشر رئيسا لتحرير صحيفتها الأسبوعية بدأ من ١٩٨٢ وبعد حوالي سنة أو سنتين أصبحت مديرا للإدارة نفسها التي يصدر منها عدة مطبوعات. في عام ١٩٩٢ أصبحت مديرا لإدارة المكاتب الخارجية الى عام ٢٠١٣. بحكم هذه المناصب اكتسبت معرفة باللوائح الخاصة بالموظفين وبروتوكولات المكاتب الخارجية والعديد من المواضيع الأخرى والتي سأعرضها فيما يلي. ما لم يُذكر خلاف ذلك، فإن تصريحي يغطي فترة ١٩٩٢ حتى ٣١ ديسمبر ٢٠٠٤.

٣. رابطة العالم الإسلامي، هي منظمة إسلامية دولية غير حكومية، قامت بأعمال خيرية حول العالم من خلال مشاريع تعليمية ودينية وثقافية. عملت الرابطة مع منظمات غير حكومية أخرى وحكومات وهيئات دولية حاكمة مثل الأمم المتحدة. تمتعت الرابطة بسمعة ممتازة كقوة للخير في العالم، وغالباً ما كانت تُستدعى لخبرتها في الأوقات العصيبة. ويُعد منصب الأمين العام الأعلى في الرابطة.

٤. انضممت إلى الرابطة للمساهمة في تحقيق رسالتها التي تهدف إلى تعزيز الحوار بين الثقافات وأتباع الأديان ونشر القيم الإسلامية المعتدلة ومواجهة الفكر المتطرف برسالة سلام ووئام وتخفيف معاناة المسلمين حول العالم. ومن

خلال تجربتي، عمل زملائي بجد لتحقيق نفس الأهداف. أنا فخور بالعمل الذي قامت به الرابطة في مختلف أنحاء العالم وبالدور الذي لعبته في هذا العمل.

٥. عندما انضممت إلى الرابطة، كانت لديها لوائح بالإضافة الى إرشادات من الأمين العام تنظم سلوك الموظفين وتتعلق بتعيين الموظفين وترقيتهم وفصلهم. وقد ظلت هذه القواعد والإرشادات، إلى جانب المبادئ التي تدعمها، متسقة طوال فترة عملي في الرابطة.

٦. تعين على موظفي الرابطة فهم واتباع جميع اللوائح والإرشادات الخاصة بالرابطة وفهم مسؤوليات وواجبات وصلاحيات وظائفهم.

٧. من المتوقع من موظفي الرابطة تأدية وظائفهم بنزاهة مما يعني حماية أموال وموارد الرابطة والإمتثال لإرشادات وأوامر الرؤساء والمشرفين في المنظمة.

٨. كان يحظر على موظفي الرابطة المشاركة في أنشطة تتعارض مع قيم الرابطة أو تلقي توجيهات من جهات أخرى. لم يُسمح لهم بقبول الهدايا الشخصية أو التبرعات.

٩. أنشأت الأمانة العامة مكاتب خارج المملكة العربية السعودية ("المكاتب الخارجية") حسب الحاجة لمتابعة تحقيق أهداف الرابطة.

١٠. قامت مكاتب الرابطة الخارجية بتنفيذ أهداف ومهام الرابطة. قدمت المكاتب الخارجية المشورة إلى الأمانة العامة بشأن المشاريع المقترحة مثل إنشاء برامج تعليمية وبناء مساجد وقامت بتأدية وظائف لدعم هذه المشاريع.

١١. خلال فترة عملي، اعتمدت الرابطة لوائح لضمان الإشراف الفعّال على المشاريع والبرامج التي تنفذها المكاتب الخارجية. ظلت هذه اللوائح والمبادئ متسقة طوال فترة عملي في الرابطة. كان موظفو المكاتب الخارجية ملزمين بتقديم تقارير عن تقدم المشاريع وتقارير عن إكمال المشاريع كما كانوا يقدمون صورًا للمشاريع المكتملة إلى الإدارات المعنية في الأمانة العامة.

١٢. كان على موظفي المكاتب الخارجية فهم واتباع لوائح وقوانين الأمانة العامة وأداء مهامهم دون مخالفة وكان لزامًا عليهم حماية موارد الرابطة والامتناع عن ممارسة أنشطة تتعارض مع أهداف الرابطة.

١٣. كانت التعيينات الجديدة في المكاتب الخارجية تخضع لموافقة الأمانة العامة. ولم يُسمح للمكاتب الخارجية إنشاء وظائف جديدة دون الحصول على موافقة مسبقة من الأمانة العامة.

١٤. سعت الرابطة إلى توظيف أفراد أكفاء ذوي خبرة ونزاهة. كان يجب على الموظفين الجدد أن يتمتعوا بسمعة طيبة في المجتمع المحلي وألا يكون لديهم سجل جنائي.

١٥. وجب على مديري وموظفي المكاتب الخارجية الالتزام بقوانين الدولة المضيفة وعدم التدخل في سياساتها أو المشاركة في الأنشطة السياسية.

١٦. كان يحظر على مديري المكاتب الخارجية بإتخاذ قرارات مالية لصالحهم الشخصي أو لصالح أي موظف آخر في الرابطة.

١٧. كان يحظر على مديري المكاتب الخارجية اتخاذ قرارات يترتب عليه التزامات مالية لم تتم الموافقة عليها مسبقًا في الميزانية.

١٨. لم يُسمح لمديري وموظفي المكاتب الخارجية في تشغيل موارد الرابطة أو استخدامها في مشاريع تجارية شخصية أو أنشطة سياسية أو أنشطة عنيفة أو متطرفة أو إرهابية.

١٩. لم توظف الرابطة الدعاة المتعاونين معها ولم يتم منعهم من البحث عن عمل والحصول عليه في أماكن أخرى.

٢٠. لم تحدد الرابطة جداول عمل الدعاة المتعاونين معها .

٢١. لم تقم الرابطة ولم يكن لديها السلطة لتحديد كيفية قيام الانشطة من قبل الدعاة المتعاونين معها بما في ذلك أسلوب الوعظ.

٢٢. لم تقدم الرابطة للدعاة المتعاونين معها  أي مزايا باستثناء مخصصات مالية صغيرة.

٢٣. لم ألاحظ أي دعم، سواء كان ضمنيًا أو صريحًا، لمنظمات إرهابية، بما في ذلك القاعدة. على حد علمي لم تقم الرابطة عن علم أو ضمنياً بتوظيف أعضاء من تنظيم القاعدة أو أفراد معروفين بأنهم متعاطفون مع التنظيم للعمل لصالح الرابطة أو داخلها.

أنا  محمد الحساني أصرّح تحت طائلة عقوبة الحنث باليمين بموجب قوانين الولايات المتحدة الأمريكية أن ما تقدم حقيقي وصحيح.

_____

محمد الحساني

نُفذ في: _____ ١ / ١٠ / ٢٠٢٤

## DAOU TRANSLATION AND SERVICES
### ضو للترجمة والخدمات

Tahwitat Furn El Chebbek – St. Nohra street – Ghawi Building – Baabda – Mount Lebanon – Ground floor

MOF#: 2859768 – Telephone No.: +961 1 284 725 – Gsm: +961 70 953 809 – Email: daouservices@gmail.com

## CERTIFICATE OF TRANSLATION

**Title of Source Document:** Mohamed Al-Hassani Declaration

**Source language:** Arabic                    **Translated to:** English

### TRANSLATOR STATEMENT

I, Joyce Hani DAOU, am competent to translate from Arabic into English, and certify under penalty of perjury that the translation of the foregoing document is true and accurate to the best of my abilities.

### Translator qualifications:

15 years translation experience (Arabic-English and English-Arabic)

Sworn translator before the Lebanese courts as per oath taking report issued by the Ministry of Justice in Lebanon under No. 291 dated 26/02/2011

**Signature of translator:**                    Date: 11 April 2026