# EXHIBIT 086

# Terrorist-Related NGOs without Designations

UNCLASSIFIED

S1

RELEASED IN FULL

**Known and Suspected Organizations**

African Muslims Agency (Kuwait)

Ahl al-Bayt (Iran)

Al-Eslah Society, a.k.a. Charitable Works Committee/Jameiat al-Eslah (Bahrain)

Al-Furqan (Bosnia)

Al-Muntada al-Islami (United Kingdom, Saudi Arabia)

Al-Waqf Foundation/al-Waif al-Islami (Saudi Arabia)

Benevolence International Foundation

Care International

Convoy of Mercy

Dar al-Hijra (Saudi Arabia)

Health and Education Project International (Pakistan)

Human Appeal International/Hay'at al-A'mal al-Khayiryya Ajman (UAE)

Human Concern International (Canada)

Human Relief Foundation (UK)

Imam Khomeini Relief Committee (Iran)

International Islamic Charitable Society, a.k.a. Palestine Charitable Committee (Kuwait)

International Islamic Charity Organization (Kuwait)

International Islamic Relief Organization (Saudi Arabia)

Iranian Martyr's Foundation (also includes Hizballah Martyr's Foundation) (Iran)

Iranian Red Crescent Society (Iran)

Islamic Charity Committee/Lajnat al-Birr al-Islami (Saudi Arabia)

Islamic Dawa Organization (Sudan)

Islamic Missionary Commission/Lajnat al-Dawa al-Islamiyya (Kuwait)

Islamic Relief Agency, a.k.a. Islamic African Relief Agency (Sudan)

Islamic Relief Worldwide, a.k.a. Islamic Relief Association (United Kingdom)

Islamic Society Bahrain (Bahrain)

Islamic Students Organization (Saudi Arabia)

Islamic World Commission/Lajnat al-'Alam al-Islami (Kuwait)

Jama'at Tablighi (Indonesia, Pakistan)

Jerusalem Fund for Human Services, a.k.a. International Relief Fund for the Afflicted and Needy (Canada)

Kuwaiti Joint Relief Committee (Kuwait)

Mecca al-Mukarama (Saudi Arabia)

Mercy International/al-Rahma (Ireland)

Muslim World League

Organization for Worldwide Islamic Relief/Hiy'a al-Igatha al-Alamiya (Saudi Arabia)

Qatar Charitable Society (Qatar)

Qatari Joint Committee for Relief (Qatar)

Saudi High Commission for Relief (Saudi Arabia)

Saudi Joint Relief Committee (Saudi Arabia)

Sheikh Eid Bin Mohammed Charitable Society (Qatar)

Social Reform Society of Kuwait/Jam'iyat al-Islah al-Ijtima'Ikuwait (Kuwait)

Taibah International

Third World Relief Agency (Austria)

Umm al-Qura (Saudi Arabia)

Ummah Tameer Nau (Pakistan)

Wafa al-Igatha al-Islamia (Saudi Arabia, Afghanistan)

Welfare and Relief Committee (Afghanistan)

World Assembly of Muslim Youth (Saudi Arabia)

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005   200301298

UNCLASSIFIED

BUR-PEC-078442

UNCLASSIFIED

S 11

**Navratil, Thomas J**

Heading:                    Riyadh 3028   UNCLASSIFIED          PRIORITY

SUBJECT: TERRORIST FINANCING: AL HARAMAIN FOLDS, TRIES TO
REFUTE CHARGES

**RELEASED IN FULL**

REF: A. STATE 121707
     B. STATE 120707

1. (U) Summary. Although the Al Haramain Islamic Foundation
claims not to have received official instructions from the
SAG to close down, acting Chairman Dabasi Al Dabbasy told the
press that the organization is closing its branches worldwide
in preparation for its consolidation with the newly
established Commission for Relief and Charitable Work Abroad.
Its charity operations in the Kingdom will be transferred to
other organizations engaged in the same field of work. Al
Dabbasy devoted much of his June 6 press conference trying to
counter U.S. charges against his organization. End Summary.

Early Reaction: Closure, What Closure?
------------------------------------

2. (U) Saudi press gave wide coverage over the Saudi weekend
to the June 2 announcement at the Saudi Embassy in Washington
of the Al Haramain designations and closure of Al Haramain
Islamic Foundation (AHF). On June 3, one enterprising
reporter called the AHF Riyadh office only to discover that
the staff were unaware of the June 2 announcements and the
acting head was refusing to talk to the press. On June 4,
the head of the AHF branch in Dhaka told Reuters that he had
no knowledge of any move to close down the charity. The
Bangladeshi Foreign Minister was quoted as saying, "The main
artery (of Al Haramain) is in Saudi Arabia. If the main
artery is closed, the small channels will be closed
automatically. The ownership rests with Saudi Arabia, we
have nothing to worry about."

Al Aqil Threatens to Sue
------------------------

3. (U) Also on Friday, former AHF head Aqil Al Aqil told the
press he would defend himself in court against U.S.
allegations. "I intend to (file) a judicial appeal and be
represented by a lawyer in the United States to counter an
American decision to carry my name on a list of those who
finance terrorism. These accusations are wrong and we will
prove it," adding that he had "helped the poor, the orphans
and widowed, and provided all necessary humanitarian aid" for
25 years.

AHF Tries to Fight Back
------------------------

4. (U) In a press conference on June 6, Acting Chairman of
AHF Sheikh Dabasi Al Dabbasy sought to refute accusations
that the organization supported terrorism. He said reports
of the U.S. Treasury Department (presumably referring to
Treasury's June 2 press release) were based on "may haves"
and "we believes." "We stand ready to announce that their
(U.S.) accusations are baseless and lack documented
evidence." He went on to say that Al Haramain was like other
Islamic charities, which faced a "fierce defamation campaign

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005   200301298

1

UNCLASSIFIED

BUR-PEC-078443

## UNCLASSIFIED

by imperialist forces aiming to deter noble efforts in the service of humanity and allow Western evangelical organizations to thrive and expand." (Note: Many Saudis believe that the U.S. motivation in shutting down Muslim charities is religious, that is, to clear the way for Christian missionaries to take over.) He said that when AHF closed branches in Somalia and Indonesia, over 2,850 orphans were rendered homeless. According to Al Dabbassy, AHF had never been part of any destructive activities, or supported or funded terrorist groups. "Those who accuse us should come out with proof because our charity work is transparent and we don't operate in the dark."

5.  (U) Taking issue with the June 2 designations, Al Dabbasy emphasized that AHF had never established a branch in Afghanistan and never appointed a representative there so the

charges about AHF supporting Al Qaeda in Afghanistan were baseless. He said the AFH branch in the Netherlands was never operational, even though one had been licensed. He also said the accusation that UBL funded the establishment of an AHF branch in Albania was contradicted by another accusation that AHF was funding Al Qaeda there. He said the charges against AHF in the United States had more to do with taxes than terrorism. He charged that the contradictions in U.S. statements indicate that they are based on poor intelligence or rely on hate messages intended to harm the Muslim community and charity work.

No Word from SAG
--------------------

6.  (U) Although Al Dabbasy said AHF had not received any official instruction from the SAG to cease operations, he confirmed that AHF was closing its offices abroad and had already closed 10 officers in Somalia, Kenya, Ethiopia, Tanzania, Bosnia, Albania, Kosovo, Croatia, Pakistan and Indonesia. He said AHF was shutting down its branches worldwide in preparation for its consolidation with the newly established Commission for Relief and Charitable Work Abroad and that charity operations in the Kingdom would be transferred to other organizations engaged in the same field of work. He indicated that AHF's accounts in Saudi Arabia had not been frozen and expected this issue to be resolved shortly.

Testimonials
--------------

7.  (U) Al Dabbasy told the press that the Kenyan government had cleared AHF of any involvement in the 1998 bombing and that the Bosnian government, after investigation, had cleared AHF of any wrong doing. Similarly, he claimed, AHF employees had been cleared of any wrong doing in Bangladesh, Albania and elsewhere. "The government in these countries had asked us to continue our work as a registered organization, especially in Kenya after our innocence was proven in the Nairobi and Dar Al Salam 1998 events."

U.S. Embassy Bangladesh letter?
--------------------------------

8.  (U) Saudi Arabic language paper Al Watan published a copy of what it claimed was a February 23, 2003 letter from the U.S. Embassy in Bangladesh requesting AHF to fund an education project. Reportedly, AHF rejected the request.

2

## UNCLASSIFIED

BUR-PEC-078444

UNCLASSIFIED

MINIMIZED CONSIDERED
OBERWETTER

UNCLASSIFIED

Additional Addresees:

INFO AMEMBASSY ADDIS ABABA PRIORITY
AMEMBASSY BELGRADE PRIORITY
AMEMBASSY DAR ES SALAAM PRIORITY
AMEMBASSY DHAKA PRIORITY
AMEMBASSY ISLAMABAD PRIORITY
AMEMBASSY JAKARTA PRIORITY
AMEMBASSY KABUL PRIORITY
AMEMBASSY NAIROBI PRIORITY
AMEMBASSY SARAJEVO PRIORITY
AMEMBASSY THE HAGUE PRIORITY
AMEMBASSY TIRANA PRIORITY
AMEMBASSY ZAGREB PRIORITY
AMCONSUL JEDDAH PRIORITY
NSC WASHDC PRIORITY
CIA WASHDC PRIORITY
FBI WASHINGTON DC PRIORITY
DEPT OF TREASURY WASHDC PRIORITY

~PAGE 01     RIYADH 03028 00 OF 02 071410Z

@INFO: ADCP(00) CMS(00) DSCC(00) D(00)
     D(00)  D(00)  E(00)  FMP(00) G(00)
     MMP2(00) RM(00)  RM(00)  SCT(00)
     SP(00)  SP(00)  SRPP(00) USNW(00)
==================== 071410Z JUN 04 STePS (TOTAL COPIES:000)

ACTION NEA-00

INFO LOG-00 NP-00  AF-00  AID-00  CEA-01  COME-00 CTME-00
     INL-00  DODE-00 ITCE-00 SRPP-00 DS-00   EAP-00  EB-00
     EXME-00 EUR-00  E-00    UTED-00 VC-00   FRB-00  TEDE-00
     INR-00  IO-00   LAB-01  VCE-00  AC-00   DCP-00  NSAE-00
     OIC-00  OIG-00  OMB-00  NIMA-00 OPIC-01 PER-00  ACE-00
     SCT-00  SP-00   STR-00  TEST-00 USIE-00 SA-00   ASDS-00
     FMP-00  DSCC-00 PRM-00  DRL-00  G-00    NFAT-00 SAS-00
     /003W
                -------------------2AA383 071412Z /38
P 071336Z JUN 04
FM AMEMBASSY RIYADH
TO SECSTATE WASHDC PRIORITY 8612
INFO AMEMBASSY ADDIS ABABA PRIORITY
AMEMBASSY BELGRADE PRIORITY
AMEMBASSY DAR ES SALAAM PRIORITY
AMEMBASSY DHAKA PRIORITY
AMEMBASSY ISLAMABAD PRIORITY
AMEMBASSY JAKARTA PRIORITY
AMEMBASSY KABUL PRIORITY
AMEMBASSY NAIROBI PRIORITY
AMEMBASSY SARAJEVO PRIORITY
AMEMBASSY THE HAGUE PRIORITY
AMEMBASSY TIRANA PRIORITY
AMEMBASSY ZAGREB PRIORITY
AMCONSUL JEDDAH PRIORITY
NSC WASHDC PRIORITY
CIA WASHDC PRIORITY
FBI WASHINGTON DC PRIORITY

3
UNCLASSIFIED

BUR-PEC-078445

UNCLASSIFIED

DEPT OF TREASURY WASHDC PRIORITY

UNCLAS RIYADH 003028

STATE FOR NEA, NEA/ARP, EB/ESC/TFS, S/CT, IO/PHO AND INL
NSC FOR NRASMUSSEN
TREASURY FOR DAS ZARATE AND OFAC
FBI FOR WEIKART AND MOREHART

E.O. 12958: N/A
TAGS: EFIN, PTER, ETTC, SA

4
UNCLASSIFIED

BUR-PEC-078446

UNCLASSIFIED

522



**United States Department of State**

RELEASED IN FULL

*Washington, D.C.* 20520

200301642

ACTION MEMORANDUM
S/ES



SEEN BY
JAN 27
P

UNCLASSIFIED

TO:             Under Secretary Grossman

FROM:           S/CT – William P. Pope, Acting

SUBJECT:        Preventing Organizations Designated Pursuant
                to E.O. 13224 from Registering with USAID

**Issues for Decision**

- Whether to determine that the Global Relief
  Foundation, Inc.'s (GRF) registration with USAID as a
  private and voluntary organization (PVO), and the
  prospective registration of the Benevolence
  International Foundation (BIF), are contrary to the
  national security and foreign policy interests of the
  United States.

- Whether to determine that registration as a PVO with
  USAID by **any organization or individual designated**
  under Executive Order 13224 of September 23, 2001
  "Blocking Property and Prohibiting Transactions with
  Persons Who Commit, Threaten to Commit, or Support
  Terrorism" is contrary to the national security and
  foreign policy interests of the United States.

- Whether to sign the attached letter to USAID
  Administrator Natsios informing him of these
  determinations and requesting that USAID take whatever
  actions are necessary to deny registration as a PVO by
  organizations designated pursuant to E.O. 13224.
  [Note:  The facts cited in the letter concerning GRF
  and BIF involvement in terrorism have been previously
  published on the website of the Treasury's Office of
  Foreign Assets Control.]

   Registration as a PVO is a condition of eligibility to
compete for grants of development assistance funds from the
United States Agency for International Development (USAID).

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005   200301298       UNCLASSIFIED

UNCLASSIFIED

BUR-PEC-078447

UNCLASSIFIED

UNCLASSIFED
- 2 -

The Global Relief Foundation, Inc. currently is registered with USAID as a PVO. The Benevolence International Foundation has applied to USAID for registration as a PVO. The Secretary of the Treasury, in consultation with the Secretary of State, has designated both groups as terrorist organizations pursuant to Executive Order 13224.

USAID's regulations provide for de-registration or rejection of a registration application if there has been a determination by the Department of State that registration, or a financial relationship between USAID and such organization, is contrary to the national defense, national security, or foreign policy interests of the United States. USAID regulations presently do not address designation of an organization under E.O. 13224. While E.O. 13224 does prevent USAID from engaging in transactions with a designated organization, it is subject to interpretation regarding the simple act of registering an organization as a PVO. State and USAID do not want to give any designated organization under E.O. 13224 grounds to challenge USG actions based on inconsistencies with USAID regulations or past practice. Accordingly, USAID has requested a letter from the Department of State along the lines of the attachment.

Grounds for Determination

The President issued Executive Order 13224 on September 23, 2001. The E.O. blocks the property and interests in property of, and prohibited transactions with, persons who commit, threaten to commit, or support terrorism. In that Order, the President determined that the grave acts of terrorism and threats of terrorism committed by foreign terrorists on September 11, 2001 and the continuing and immediate threat of further attacks on United States nationals or the United States constituted an unusual and extraordinary threat to the national security, foreign policy or economy of the United States and declared a national emergency with respect to that threat. He further found that because of the pervasiveness and expansiveness of the financial foundation of foreign terrorists, financial sanctions may be appropriate against those persons that support or otherwise associate with foreign terrorists.

Allowing organizations designated pursuant to E.O. 13224 to register with USAID as private and voluntary

UNCLASSIFIED
UNCLASSIFIED

BUR-PEC-078448

UNCLASSIFIED

UNCLASSIFED
- 3 -

organizations would constitute a form of recognition and would confer the appearance of legitimacy upon such organizations.  Registration as a PVO with USAID would allow a designated organization to compete for USAID's development assistance funds, as well as create at least a theoretical risk that a designated organization could inadvertently be awarded a contract from those funds.  For these reasons, allowing organizations designated pursuant to E.O. 13224 to register with USAID as private and voluntary organizations would directly contradict and impede the efforts of the United States Government to stigmatize, isolate, and eradicate organizations with links to terrorism.

## Recommendations

That you determine that the Global Relief Foundation, Inc.'s registration with USAID by as a PVO, and the registration of the Benevolence International Foundation (BIF), are contrary to the national security and foreign policy interests of the United States.

Agree _____\(\)_____            Disagree _____

That you determine that registration as a PVO with USAID by any organization or individual designated under Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism is contrary to the national security and foreign policy interests of the United States.

Agree ___\(\)_____            Disagree _____

That you sign the attached letter to USAID Administrator Natsios informing him of these determinations and requesting that USAID take whatever actions are necessary to deny registration as a PVO by organizations designated pursuant to E.O. 13224.  [Note:  The facts cited in the letter concerning GRF and BIF involvement in terrorism have been previously published on the website of Treasury's Office of Foreign Assets Control.]

Agree ___\(\)_____            Disagree _____

UNCLASSIFIED
UNCLASSIFIED

BUR-PEC-078449

UNCLASSIFIED

UNCLASSIFED
- 4 -

Attachment
Tab 1 - Letter of determinations to USAID Natsios.

UNCLASSIFIED
UNCLASSIFIED

BUR-PEC-078450

UNCLASSIFIED

UNCLASSIFED
 - 5 -

Identification:   S/CT (I:): docs/P-4/NGO Vetting/NGO Letter
AM.doc

Drafted:   S/CT: Tom Navratil      7-2130

Clearance: S/CT: William Pope *wp*
           S/CT: Stephanie Kinney - ok
           L/LEI: Elizabeth Wilcox - ok
           L/EB: Himamauli Das - ok
           EB/ESC/ESP: Edward Goff - ok
           DOJ/Civil Div: Doug Letter - ok
           USAID: Gary Winter   - ok
           S/ES-CR: B. Hambrick (draft)
           D: Marion Ekpuk - ok
           P: Alethea Gordon: - ok

UNCLASSIFIED
UNCLASSIFIED

UNCLASSIFIED

. H011 12/23/2002 13:43.

5/CTS35

United States Department of State



**RELEASED IN FULL** *Washington, D.C. 20520*

**DEC 20 2002**

BW NG
RB MK
TN
AC
CE
SF
MSH
OR
EAIC
FILE

Dear Mr. Fossella:

I am writing to follow up our July 25 letter replying to the April 15 letter by you and several colleagues proposing the investigation of the Al Quds organization pursuant to Executive Order 13224. Please accept my apologies for the delay in following up my earlier reply.

Secretary Powell shares in full your concern about the financing of terrorism. The Administration is committed to using all available legal, administrative, and diplomatic tools to prevent terrorists from receiving funds to carry out their unjustifiable attacks. We are working hard to cut off all funding to terrorists, from all countries and all types of organizations, including those that pose as charities. We have designated two overseas branch offices of a Saudi charity, Al Haramain Islamic Foundation, as terrorist organizations under Executive Order 13224, as well as Saudi individuals such as Wa'el Juláyden, Yasin al-Qadi, and Ahmed Ibrahim al-Mughassil. We will similarly designate additional organizations and individuals whenever we develop sufficient information about their support of terrorism. So far, over 250 organizations or individuals have been designated under E.O. 13224.

As I indicated in my initial response of July 25, 2002, we have checked through our interagency procedures, pursuant to E.O. 13224, the Saudi Committee for the Support of Al-Quds Intifada ("Al-Quds") as well as other organizations in Saudi Arabia that provide funds to the families of Palestinians killed or injured in the conflict with Israel, including to the families of terrorists. We have not as of this time developed information sufficient to designate this organization pursuant to E.O. 13224. We will continue to review the specific case of Al-Quds. As an integral part of the process of determining which organizations or individuals to designate, we continually review the information we have.

The Honorable
    Vito Fossella,
        House of Representatives.

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005   200301298

UNCLASSIFIED *2003 0453-011*

BUR-PEC-078452

UNCLASSIFIED

-2-

The Department of State has requested from the Federal Bureau of Investigation and the Central Intelligence Agency any information they may have regarding whether the families of any of the 19 hijackers who attacked the United States on September 11, 2001 have received funds from any charitable or other organization. The Department of State has not received any such information from the FBI or CIA. If there were such evidence, the Administration would give prompt and thorough consideration on how best to respond.

The challenge of ensuring that charitable giving, in Saudi Arabia and around the world, is not misused to provide funding for terrorism is serious and urgent. The United States Government is devoting its resources and efforts to address this problem as a vital part of our responsibility to defend ourselves against those who would harm us. In particular, we are working closely with the Saudi Government on this matter. In this regard, we welcome the recent establishment of a Saudi commission to oversee charities.

We appreciate your interest in the very important issue of terrorism financing and would like to assure you that the Department of State, with the support of the Congress, will continue to tackle this problem vigorously. We hope this information will be useful. Please contact the Bureau of Legislative Affairs of the Department of State if we can be of further assistance.

Sincerely,

Paul V. Kelly
Assistant Secretary
Legislative Affairs

UNCLASSIFIED

BUR-PEC-078453

UNCLASSIFIED

S35A

 **RELEASED IN FULL**

United States Department of State

Washington, D.C. 20520

**DEC 2 0 2002**

Dear Ms. Maloney:

I am writing to follow up our July 25 letter replying to the April 15 letter by you and several colleagues proposing the investigation of the Al Quds organization pursuant to Executive Order 13224. Please accept my apologies for the delay in following up my earlier reply.

Secretary Powell shares in full your concern about the financing of terrorism. The Administration is committed to using all available legal, administrative, and diplomatic tools to prevent terrorists from receiving funds to carry out their unjustifiable attacks. We are working hard to cut off all funding to terrorists, from all countries and all types of organizations, including those that pose as charities. We have designated two overseas branch offices of a Saudi charity, Al Haramain Islamic Foundation, as terrorist organizations under Executive Order 13224, as well as Saudi individuals such as Wa'el Julayden, Yasin al-Qadi, and Ahmed Ibrahim al-Mughassil. We will similarly designate additional organizations and individuals whenever we develop sufficient information about their support of terrorism. So far, over 250 organizations or individuals have been designated under E.O. 13224.

As I indicated in my initial response of July 25, 2002, we have checked through our interagency procedures, pursuant to E.O. 13224, the Saudi Committee for the Support of Al-Quds Intifada ("Al-Quds") as well as other organizations in Saudi Arabia that provide funds to the families of Palestinians killed or injured in the conflict with Israel, including to the families of terrorists. We have not as of this time developed information sufficient to designate this organization pursuant to E.O. 13224. We will continue to review the specific case of Al-Quds. As an integral part of the process of determining which organizations or individuals to designate, we continually review the information we have.

The Honorable
    Carolyn Maloney,
        House of Representatives.

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005   200301298

UNCLASSIFIED

BUR-PEC-078454

UNCLASSIFIED

-2-

The Department of State has requested from the Federal Bureau of Investigation and the Central Intelligence Agency any information they may have regarding whether the families of any of the 19 hijackers who attacked the United States on September 11, 2001 have received funds from any charitable or other organization. The Department of State has not received any such information from the FBI or CIA. If there were such evidence, the Administration would give prompt and thorough consideration on how best to respond.

The challenge of ensuring that charitable giving, in Saudi Arabia and around the world, is not misused to provide funding for terrorism is serious and urgent. The United States Government is devoting its resources and efforts to address this problem as a vital part of our responsibility to defend ourselves against those who would harm us. In particular, we are working closely with the Saudi Government on this matter. In this regard, we welcome the recent establishment of a Saudi commission to oversee charities.

We appreciate your interest in the very important issue of terrorism financing and would like to assure you that the Department of State, with the support of the Congress, will continue to tackle this problem vigorously. We hope this information will be useful. Please contact the Bureau of Legislative Affairs of the Department of State if we can be of further assistance.

Sincerely,

Paul V. Kelly
Assistant Secretary
Legislative Affairs

UNCLASSIFIED

BUR-PEC-078455

UNCLASSIFIED

S35B



United States Department of State

RELEASED IN FULL *Washington. D.C. 20520*

DEC 20 2002

Dear Mr. Crowley:

I am writing to follow up our July 25 letter replying to the April 15 letter by you and several colleagues proposing the investigation of the Al Quds organization pursuant to Executive Order 13224. Please accept my apologies for the delay in following up my earlier reply.

Secretary Powell shares in full your concern about the financing of terrorism. The Administration is committed to using all available legal, administrative, and diplomatic tools to prevent terrorists from receiving funds to carry out their unjustifiable attacks. We are working hard to cut off all funding to terrorists, from all countries and all types of organizations, including those that pose as charities. We have designated two overseas branch offices of a Saudi charity, Al Haramain Islamic Foundation, as terrorist organizations under Executive Order 13224, as well as Saudi individuals such as Wa'el Julayden, Yasin al-Qadi, and Ahmed Ibrahim al-Mughassil. We will similarly designate additional organizations and individuals whenever we develop sufficient information about their support of terrorism. So far, over 250 organizations or individuals have been designated under E.O. 13224.

As I indicated in my initial response of July 25, 2002, we have checked through our interagency procedures, pursuant to E.O. 13224, the Saudi Committee for the Support of Al-Quds Intifada ("Al-Quds") as well as other organizations in Saudi Arabia that provide funds to the families of Palestinians killed or injured in the conflict with Israel, including to the families of terrorists. We have not as of this time developed information sufficient to designate this organization pursuant to E.O. 13224. We will continue to review the specific case of Al-Quds. As an integral part of the process of determining which organizations or individuals to designate, we continually review the information we have.

The Honorable
    Joseph Crowley,
        House of Representatives.

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005   200301298

UNCLASSIFIED

BUR-PEC-078456

UNCLASSIFIED

-2-

The Department of State has requested from the Federal Bureau of Investigation and the Central Intelligence Agency any information they may have regarding whether the families of any of the 19 hijackers who attacked the United States on September 11, 2001 have received funds from any charitable or other organization. The Department of State has not received any such information from the FBI or CIA. If there were such evidence, the Administration would give prompt and thorough consideration on how best to respond.

The challenge of ensuring that charitable giving, in Saudi Arabia and around the world, is not misused to provide funding for terrorism is serious and urgent. The United States Government is devoting its resources and efforts to address this problem as a vital part of our responsibility to defend ourselves against those who would harm us. In particular, we are working closely with the Saudi Government on this matter. In this regard, we welcome the recent establishment of a Saudi commission to oversee charities.

We appreciate your interest in the very important issue of terrorism financing and would like to assure you that the Department of State, with the support of the Congress, will continue to tackle this problem vigorously. We hope this information will be useful. Please contact the Bureau of Legislative Affairs of the Department of State if we can be of further assistance.

Sincerely,

Paul V. Kelly
Assistant Secretary
Legislative Affairs

UNCLASSIFIED

BUR-PEC-078457

UNCLASSIFIED

S35C



United States Department of State

RELEASED IN FULL    *Washington, D.C. 20520*

DEC 20 2002

Dear Mr. Nadler:

I am writing to follow up our July 25 letter replying to the April 15 letter by you and several colleagues proposing the investigation of the Al Quds organization pursuant to Executive Order 13224. Please accept my apologies for the delay in following up my earlier reply.

Secretary Powell shares in full your concern about the financing of terrorism. The Administration is committed to using all available legal, administrative, and diplomatic tools to prevent terrorists from receiving funds to carry out their unjustifiable attacks. We are working hard to cut off all funding to terrorists, from all countries and all types of organizations, including those that pose as charities. We have designated two overseas branch offices of a Saudi charity, Al Haramain Islamic Foundation, as terrorist organizations under Executive Order 13224, as well as Saudi individuals such as Wa'el Julayden, Yasin al-Qadi, and Ahmed Ibrahim al-Mughassil. We will similarly designate additional organizations and individuals whenever we develop sufficient information about their support of terrorism. So far, over 250 organizations or individuals have been designated under E.O. 13224.

As I indicated in my initial response of July 25, 2002, we have checked through our interagency procedures, pursuant to E.O. 13224, the Saudi Committee for the Support of Al-Quds Intifada ("Al-Quds") as well as other organizations in Saudi Arabia that provide funds to the families of Palestinians killed or injured in the conflict with Israel, including to the families of terrorists. We have not as of this time developed information sufficient to designate this organization pursuant to E.O. 13224. We will continue to review the specific case of Al-Quds. As an integral part of the process of determining which organizations or individuals to designate, we continually review the information we have.

The Honorable
    Jerrold Nadler,
        House of Representatives.

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005   200301298

UNCLASSIFIED

BUR-PEC-078458

UNCLASSIFIED

-2-

The Department of State has requested from the Federal Bureau of Investigation and the Central Intelligence Agency any information they may have regarding whether the families of any of the 19 hijackers who attacked the United States on September 11, 2001 have received funds from any charitable or other organization.  The Department of State has not received any such information from the FBI or CIA.  If there were such evidence, the Administration would give prompt and thorough consideration on how best to respond.

The challenge of ensuring that charitable giving, in Saudi Arabia and around the world, is not misused to provide funding for terrorism is serious and urgent.  The United States Government is devoting its resources and efforts to address this problem as a vital part of our responsibility to defend ourselves against those who would harm us.  In particular, we are working closely with the Saudi Government on this matter.  In this regard, we welcome the recent establishment of a Saudi commission to oversee charities.

We appreciate your interest in the very important issue of terrorism financing and would like to assure you that the Department of State, with the support of the Congress, will continue to tackle this problem vigorously. We hope this information will be useful.  Please contact the Bureau of Legislative Affairs of the Department of State if we can be of further assistance.

Sincerely,

Paul V. Kelly
Assistant Secretary
Legislative Affairs

UNCLASSIFIED

BUR-PEC-078459

UNCLASSIFIED

S35D



United States Department of State

**RELEASED IN FULL** *Washington. D.C.  20520*

Dear Mr. Ferguson:                             **DEC 2 0 2002**

I am writing to follow up our July 25 letter replying to the April 15 letter by you and several colleagues proposing the investigation of the Al Quds organization pursuant to Executive Order 13224.  Please accept my apologies for the delay in following up my earlier reply.

Secretary Powell shares in full your concern about the financing of terrorism.  The Administration is committed to using all available legal, administrative, and diplomatic tools to prevent terrorists from receiving funds to carry out their unjustifiable attacks.  We are working hard to cut off all funding to terrorists, from all countries and all types of organizations, including those that pose as charities.  We have designated two overseas branch offices of a Saudi charity, Al Haramain Islamic Foundation, as terrorist organizations under Executive Order 13224, as well as Saudi individuals such as Wa'el Julayden, Yasin al-Qadi, and Ahmed Ibrahim al-Mughassil.  We will similarly designate additional organizations and individuals whenever we develop sufficient information about their support of terrorism.  So far, over 250 organizations or individuals have been designated under E.O. 13224.

As I indicated in my initial response of July 25, 2002, we have checked through our interagency procedures, pursuant to E.O. 13224, the Saudi Committee for the Support of Al-Quds Intifada ("Al-Quds") as well as other organizations in Saudi Arabia that provide funds to the families of Palestinians killed or injured in the conflict with Israel, including to the families of terrorists.  We have not as of this time developed information sufficient to designate this organization pursuant to E.O. 13224.  We will continue to review the specific case of Al-Quds.  As an integral part of the process of determining which organizations or individuals to designate, we continually review the information we have.

The Honorable
     Michael Ferguson,
          House of Representatives.

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005   200301298

UNCLASSIFIED

BUR-PEC-078460

UNCLASSIFIED

# CONGRESSIONAL CORRESPONDENCE CLEARANCE



## H 2002 0423=011

Initial for clearance or return for edits with remarks. Do not mark on original document. Pass on in numerical order with final stop in H/CCU. **PLEASE, DO NOT** return to drafting office without sending to or notifying CCU first.

Name: Fossella/Maloney/Crowley/Nadler/Ferguson          Date:
12/17/2002 11:22 AM

Subject: Regarding a proposal to investigate the Al Quds organization

1: Hstaff - Log In
2: Lande ~~~~ 12/18/02
3: Sharp ~~~ 1315  18 Dec 2002
4: Deere ~~ 12/9
5: Raether OK. - 12/19/02 - 3.50 p~.
6: Terry SEE ALL
7: Polt ~ 12/19/02  4:00 un
8: Kelly ?K
9: Hstaff - Log Out

COMMENTS: CAndrews   **Diskette attached   ***Interim response sent by A/S Kelly on 7/25 is attached.

UNCLASSIFIED

BUR-PEC-078461

UNCLASSIFIED

S 46A

RELEASED IN FULL

CONFIDENTIAL
DECL: Upon publication of redesignation in the Federal Register

In the Matter of the Redesignation of
Liberation Tigers of Tamil Eelam
also known as LTTE
also known as Tamil Tigers
also known as Ellalan Force
as a Foreign Terrorist Organization pursuant to
section 219 of the Immigration and Nationality Act.

Based upon a review of the Administrative Record assembled in this matter and in consultation with the Attorney General and the Secretary of the Treasury, I conclude that there is a sufficient factual basis to find that the relevant circumstances described in section 219(a)(1) of the Immigration and Nationality Act, as amended (hereinafter "INA"), still exist with respect to the Liberation Tigers of Tamil Eelam, also known as LTTE, also known as Tamil Tigers, also known as Ellalan Force.  Therefore, I intend to redesignate that organization as a foreign terrorist organization pursuant to section 219(a)(4)(B) of the INA.

This redesignation shall be published in the Federal Register.

Colin L. Powell
Secretary of State

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 26 APR 2005  200301298

CONFIDENTIAL
By Colin L. Powell
Secretary of State
Reason: E.O. 12958:  1.5 (b)

UNCLASSIFIED

UNCLASSIFIED

RELEASED IN FULL

**CONFIDENTIAL**
DECL: Upon publication of redesignation in <u>Federal Register</u>

In the Matter of the Redesignation of the
Mujahedin-e Khalq Organization
also known as MEK
also known as MKO
also known as Mujahedin-e Khalq
also known as People's Mujahedin Organization of Iran
also known as PMOI
also known as Organization of the People's Holy Warriors of Iran
also known as Sazeman-e Mujahedin-e Khalq-e Iran
also known as National Council of Resistance
also known as NCR
also known as National Council of Resistance of Iran
also known as NCRI
also known as the National Liberation Army of Iran
also known as NLA
as a Foreign Terrorist Organization pursuant to
section 219 of the Immigration and Nationality Act.

Based upon a review of the Administrative Record assembled in this matter and in consultation with the Attorney General and the Secretary of the Treasury, I conclude that there is a sufficient factual basis to find that the relevant circumstances described in section 219(a)(1) of the Immigration and Nationality Act, as amended (hereinafter "INA"), still exist with respect to the Mujahedin-e Khalq Organization, also known as MEK, also known as MKO, also known as Mujahedin-e Khalq, also known as People's Mujahedin Organization of Iran, also known as PMOI, also known as Organization of the People's Holy Warriors of Iran, also known as Sazeman-e Mujahedin-e Khalq-e Iran, also known as National Council of Resistance, also known as NCR, also known as National Council of Resistance of Iran, also known as NCRI, also known as the National Liberation Army of Iran, and also known as NLA. Therefore, I intend to redesignate that organization as a foreign terrorist organization pursuant to section 219(a)(4)(B) of the INA.

This redesignation shall be published in the <u>Federal Register</u>.

Colin L. Powell
Secretary of State

CONFIDENTIAL
Classified by Colin L. Powell
Secretary of State
Reason: E.O. 12958: 1.5 (b)

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005 200301298

UNCLASSIFIED

UNCLASSIFIED

RELEASED IN FULL 854



# Embassy of the Russian Federation in the Islamic Republic of Iran

♠ home

**Articles by Russian News Agency "Novosti"/**

### FINANCIAL ASSISTANCE TO CHECHEN MILITANTS MUST BE STOPPED

MOSCOW. (RIA Novosti analyst Vyacheslav Lashkul).

The regional operations HQ for the counter-terrorist operation in the North Caucasus has made public documents seized at various stages of the struggle against Chechen militant formations. Of special interest is an "account book" seized by a Defence Ministry SWAT (special weapons and tactics) command during an operation to neutralize a group loyal to Chechen separatist leader Aslan Maskhadov. Donations from various organisations based in Turkey, Jordan and Pakistan were entered in it as received, and receipts amounted to almost $5 million.

According to the Russian Interior Ministry, more than 60 Islamic extremist organisations, a hundred foreign firms and 40 bank groups have provided financial assistance to Chechen militants. They include the organisation Sakira International, which operates in a number of European and Asian states and has a budget of millions of dollars, the Muslim Brethren, al-Qaida, al-Haramein, and Hezb-ut-Tahrir. It has also been established that representatives of the North Caucasian diaspora in the United States (particularly in the states of New Jersey, Illinois, Maryland) have actively financed Chechen militants. As of today, over 50 pro-Islamic public non-profit organisations have been registered in the United States, raising money that was later passed on to Chechen militants. The origin of most donations registered in the separatists' account books is unknown, and little is known about the organisations that made these donations. For example, the Belgian organisation MSF has made private donations, as has the Norwegian Church Assistance. The donations made by the Salvation Army, Kap Anamur and many other organisations working in Chechnya were of undetermined origin.

At this point, it is appropriate to recall the kidnapping of US citizen Kenneth Gluck by militants. He worked for Medicins Sans Frontiers (Doctors Without Borders), which is officially sponsored by the Dutch government while anonymous sponsors quietly donate millions of dollars. According to the Russian secret services, this organisation, apart from helping doctors to get to the hot spots of the planet, smuggled Chechen ringleaders into various districts of war-ravaged Chechnya. The German organisation Help trained Chechen militants at its bases in using mines.

After fleeing the country, the former "head of foreign intelligence" in the government of Dzhokhar Dudayev, Khodzh Akhmed Nukhayev, became the head of the Caucasian-US Chamber of Commerce and Industry, and later headed the representative office of the company Caucasian Common Market Ltd. According to

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 25 APR 2005  200301298

UNCLASSIFIED

BUR-PEC-078464

reliable information from the Russian secret services, he has repeatedly provided financial assistance to Chechen separatists. For example, in September 2001, female "shuttle traders" sent money to Chechnya via Azerbaijan. Another donation was made for the militants to buy night-vision devices and means of communication, including Motorola-Iridium satellite telephones and Kenwood and UAE SU radio stations. The equipment was delivered to Chechnya via Dagestan. Nukhayev also financed a terrorist group led by a certain Yanychar.

A major centre for sending international "charitable" money to its Islamic Chechen brethren is situated in Turkey: private individuals and organisations from Britain, Iran, Saudi Arabia, Libya, Ethiopia, Indonesia (in total 40 countries) have made donations totalling $80 million to $100 million, according to the Russian secret services. At one time, Shamil Basayev and his fighters have received US Army field uniforms, along with night-vision field glasses and satellite telephones, from Turkey.

The Qatari intelligence service has played an active role in smuggling currency into Chechnya so that the militants could use to buy weapons. According to the Russian counter-intelligence service, Saudi secret services have also provided financial assistance to Chechen separatists, using Islamic extremist organisations including Al-Adl ual-Ishan and Ash-Shabiba Al-Islamiya.

The Pakistani fundamentalist party Jamaat-e-Islami has sent money directly to warlords carrying on combat actions in Chechnya. Chechen militants can carry on their terrorist activity only provided they continue receiving financial assistance from extremist organisations and the international mafia, according to Ilya Shabalkin, a spokesman for the regional operations staff for control over the counter-terrorist operation in the North Caucasus.

The committee on financial monitoring created in Russia has submitted about 30 items of evidence related to financing terrorist activity to Russian law-enforcement agencies. The list of firms and private individuals under suspicion has been handed over to the Central Bank of Russia and commercial banks as part of comprehensive measures to ensure the country's national security.



BUR-PEC-078465

UNCLASSIFIED

RELEASED IN FULL

# Charity Coalition Board of Directors (AKA Union For Good)—UPITT Hamas

| Supervisory Board of the Union for Good | |
|---|---|
| Shaykh Dr. Yusuf al-Qaradawi | Chairman of the Union for Good |
| Mr. Issam Yusuf | Executive Manager |
| Mr. Kamil Sharif | Jordan |
| Dr. Faysal Mawlawi | Lebanon |
| Dr. Mana'a Hamad al-Jahani | Saudi Arabia |
| Dr. Hamad al-Baytawi | "Palestine" |
| Dr. Ikramah Sabri | Grand Mufti, Jerusalem |
| Shaykh Ra'id Salah | "Palestine" |
| Shaykh Said al-Brik | Saudi Arabia |
| Shaykh Abdallah Ali al-Mutawwa | Kuwait |
| Shaykh Yusuf Islam | United Kingdom |
| Shaykh Iqbal Sukrani | United Kingdom |
| Dr. Jassim Muhalhal al-Yasin | Kuwait |
| Shaykh Ahmad al-Qattan | Kuwait |
| Shaykh Jassim al-Yasin | Kuwait |
| Shaykh Ibrahim Jabra'il | South Africa |
| Shaykh Abd al-Majid al-Zandani | Yemen |
| Shaykh Abdallah al-Ahmar | Yemen |
| Shaykh Nadir Anuri | Kuwait |
| Shaykh Dr. Ahmad al-Kubaysi | Iraq |
| Shaykh Sa'd al-Din al-Zamili | Jordan |
| Shaykh Abu Zayd al-Maqra al-Idrisi | Morocco |
| Dr. Izzam Nu'aman Salhab | "Palestine" |
| Dr. Bassam Nahad Jarrar | "Palestine" |
| Dr. Ahmad al-Rawi | United Kingdom |
| Shaykh Abd al-Fatah al-Farisi | Morocco |

Source: International: Union for Good Organizes International Charities for Palestinian Relief, 07 March 2002, FBIS. Available:
http://199.221.15.237/servlet/Requisition?sr=coded=legacy_products:GMP20020307000268N.html

15 July 2003

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 21 JUN 2004  200301298

UNCLASSIFIED

BUR-PEC-078466

UNCLASSIFIED

# Member Organizations of the Charity Coalition—UPITT Hamas



UNCLASSIFIED

15 July 2003

BUR-PEC-078467

## Location of Member Organizations of the Charity Coalition--UPITT Hamas

### Member Organizations of the Charity Coalition

| Organization | Location |
|---|---|
| Al Aqsa Charity Foundation | Fordsburg, South Africa |
| Al Aqsa Charity Foundation | Rotterdam, Netherlands |
| Al Aqsa Charity Foundation | Belgique, Belgium |
| Al Aqsa Charity Foundation | San'a, Yemen |
| Al Shaykh Id Charitable Foundation | Qatar |
| Al-Salah Charity Association | Gaza Strip |
| Association for Charitable Patrons | Sudan |
| Bayt al-Shariqah Charities | United Arab Emirates |
| Benoni Muslim Jamaat | South Africa |
| Channel Islam International | Lenasia, South Africa |
| Charitable Association for Supporting Palestinian People | Genova, Italy |
| Charitable Organization - Fujayrah | United Arab Emirates |
| Charitable Works Committee | Muharrak, Bahrain |
| Charitable Works Organization | United Arab Emirates |
| Committee for Charitable Support | Sudan |
| Committee for Humanitarian Aid | Egypt |
| Committee to Support Jerusalem | Lebanon |
| Comparate Benificent De Solidarite Avec Palestine (CBSP) | Paris, France |
| Families Relief | London, England |
| Human Appeal International | Manchester, England |
| Human Relief Foundation | Bradford, England |
| International Islamic Council for Da'wah and Aid | Egypt |
| International Islamic Relief Organization | Riyadh, Saudi Arabia |
| INTERPAL (Palestinian Relief and Development Fund) | London, England |
| Islamic Alms Support Committee for the Palestinian People | Jordan |
| Islamic Da'wah Organization | Sudan |
| Islamic Relief | Birmingham, England |
| Jamiatul Ulama (KZN) | Durban, South Africa |
| Jamiatul Ulama Transvaal | Fordsburg, South Africa |
| Muslim Aid | London, England |
| Muslim Hands | Nottingham, England |
| Muslim Judicial Council | Capetown, South Africa |
| Palestine League | Novara, Austria |
| Palestine Relief Committee | Basel, Switzerland |
| Palestine Youth Committee | Riyadh, Saudi Arabia |
| Saudi Arabian Committee for Support of the Al-Quds Intifada | Riyadh, Saudi Arabia |
| South African National Zakkah Fund | Capetown, South Africa |
| Soweto Muslim Association | South Africa |
| The Committee for Charitable Aid | Kuwait |
| The Emirates Red Cross | United Arab Emirates |
| The Fatwa House Zakat fund | Lebanon |
| The Institute for Family Aid | United Kingdom |
| The Institute for Humanitarian Aid | |
| The Islah Party | San'a, Yemen |
| The Islamic Association | Bahrain |
| The Palestine Charity Committee | Kuwait |
| Unification and Reform Movement | Morocco |
| Waqf Religious Endowment to Protect Palestinian and Lebanese Prisoners | Lebanon |
| World Association of Muslim Youth | Tampa, Florida |

15 July 2003

Information from: International: Union for Good Organizes International Charities for Palestinian Relief, 07 March 2002, FBIS, Available: https://199.221.15.237/servlet/Repository?encoded=legacy_products:GMP20020307000266N.html.

UNCLASSIFIED

UNCLASSIFIED

BUR-PEC-078468

UNCLASSIFIED

# Arab Bank—UPITT Hamas

| World-Wide Locations of Arab Bank | | | |
|---|---|---|---|
| Country | Branches | Country | Branches |
| Algeria | 3 | Morocco | 10 |
| Australia | 9 | Oman | 8 |
| Austria | 1 | Palestine | 19 |
| Bahrain | 4 | Qatar | 3 |
| China | 2 | Saudi Arabia | 7 |
| Cyprus | 4 | Singapore | 1 |
| Egypt | 11 | Spain | 2 |
| France | 2 | Switzerland | 3 |
| Germany | 1 | Tunisia | 8 |
| Greece | 1 | UAE | 8 |
| Italy | 1 | United Kingdom | 2 |
| Jordan | 86 | United States of America | 1 |
| Korea | 1 | Yemen | 10 |
| Lebanon | 12 | | |
| Total Arab Bank Branches ........................ 220 | | | |

| ARAB BANK GROUP | Percentage of Ownership |
|---|---|
| Arab Bank (Switzerland)-Zurich, Geneva | Fully owned by Arab Bank Shareholders |
| Arab Bank Australia Ltd-Sydney | 100% |
| Arab Bank (Austria) AG-Vienna | 100% |
| Arab Bank AG-Frankfurt, Germany | 100% |
| Islamic International Arab Bank-Jordan | 100% |
| Arab National Leasing Company-Jordan | 100% |
| Arab Investment Bank S.A.L.-Beirut | 66.60% |
| Arab Tunisian Bank-Tunis | 64.20% |
| Arab Palestinian Investment Bank-Ramallah | 55% |
| Oman Arab Bank S.A.O.-Oman | 49% |
| Arab National Bank-Saudi Arabia | 40% |
| Arabia Insurance Co.-Lebanon | 36.70% |
| Commercial Building Co.-Lebanon | 30.10% |

From Arab Bank's FAQs:

"**What is the best way to transfer funds to my account with the Arab Bank in Palestine?** You may transfer funds to your Arab Bank account in Palestine by requesting your bank to make the transfer through the Arab Bank branch located in your area, or directly to the "Central Transfer Unit of the Arab Bank-Palestine (ARABPS22XXX)". You should indicate your full name, account number and name of your branch, and cover the transfer by the Arab Bank branch in your area or in New York."

All information—Source: Arab Bank, 10 July 2003, Online, Internet, Available: http://www.arabbank.com and http://www.arabbank.com/user_faq_detail.asp?cat=15#id116          15 July 2003

UNCLASSIFIED

BUR-PEC-078469

RELEASED IN FULL

UNCLASSIFIED

## Yemen Financial Networks Report



The research on financial networks of organizations operating in Yemen focused on four major specific terrorist entities and on the state of Yemen itself as a sponsor and recipient or illegal and/or terrorist financial flows. The Yemen Islamic Jihad, the Islamic Army of Aden, Al Qaeda, and various splinter cells operate within the borders of Yemen and reveal an interconnected web of financial ties. Funding for the Yemen Islamic Jihad and Al Qaeda is characterized by the presence of commercial enterprises and direct financing from the Osama bin Laden network. The Islamic Army of Aden maintains substantial financial support from the Supporters of Shariah group in England, led by the cleric Abu Hamzah al-Masri. Finally, splinter cells and the Yemeni state have an array of support from a multitude of actors, including the groups mentioned above, as well as being the sponsor of terrorist organizations and revolutionary groups.

### Yemen Islamic Jihad (YIJ)

The Islamic Jihad group, founded in 1981, has been characterized by its membership of many former Afghan-Arabs who fought with the mujahdeen against the Soviets. The group had been funded directly by Osama bin Laden in the early years of its existence, continuing until 1994 when the Yemen Civil War erupted and the organization seemed to fulfill its purpose by overthrowing the Socialists. The group now requires mandatory subscription fees of its members, collecting a substantial portion of money from this practice. The Jihad faction also has been known to cooperate with the Islamic Army of Aden in kidnappings and other terrorist actions. There have been reports that the two groups have merged operations in Yemen.

### Islamic Army of Aden (IAA)

The Islamic Army of Aden, reported to be an offshoot of Yemen Islamic Jihad, has indirect financial ties to the Supporters of Shariah (SOS) organization that operates in London, United Kingdom. Money from SOS bank accounts has been funneled from the UK using various methods, including couriers sent by Abu Hamzah al-Masri. The founder and leader of the SOS, al-Masri, is an active recruiter and financier of jihad volunteers. Based out of the North London Central Mosque (Finsbury Park), he has been arrested but never prosecuted for terrorist connections. The Hamzah-IAA link was revealed in 1998 when a group of eight British men were arrested in Yemen with former Islamic Army leader Abu Hassan. They were found to be in possession of explosives and weapons, with the intent to bomb targets in Yemen. Further interrogation revealed that Abu Hamzah had financed the group. In 2002, Hamzah formally declared that the Islamic Army of Aden had joined the ranks of Al Qaeda in purpose and operation. The IAA claimed responsibility for the bombing of the USS Cole in 2000 and a French oil tanker in 2001.

### Al Qaeda

Al Qaeda has maintained an active presence in Yemen for more than a decade now. Along with receiving money from commercial enterprises in the state, foreign Al Qaeda cells have received shipments of weapons and resources from elements within Yemen. The accounts of several commercial businesses registered on the US OFAC list are being investigated by the Yemen Central Bank, including the Al-Hamati Sweets Bakeries, Al-Nur Honey Press Shops, and the Al-Shifa Honey Press for Industry and Commerce. The US believes these shops are fronts for moving arms and money for Osama bin Laden and al Qaeda. Al Qaeda has various training camps embedded throughout the country and continues to maintain a large presence of Afghan-Arab sleeper cells as well.

### Splinter Cells

UPITT—Yemen
15 July 2003

UNCLASSIFIED

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 21 JUN 2004   200301298

UNCLASSIFIED

A large number of cells operate within the borders of Yemen that have relatively loose affiliations with many different organizations, including those mentioned above.

1. For example, Al Islah party members have been active in recruiting volunteers for the war in Chechnya, and many of these recruits were sent to Islamic Army of Aden military bases for training. An extremist cell that broke from the Islah party was responsible for the assassination of three American doctors in 2002.

2. Egyptian Islamic Jihad maintains safe houses and training camps in Yemen. Egyptian IJ members, among others, are taught a variety of topics, including passport forgery, in these camps.

3. The Al Aqsa Charity Foundation has offices in Sanaa, and its members have met with Hamas representatives often in the past. The Yemen branch of the Foundation has made financial contributions to the Palestinian Islamic Jihad and Hamas movements in Israel. In addition, authorities in Germany arrested the head of the Al Aqsa branch in Yemen, Sheik Mohammed Ali Hasan al-Moayad, in 2003 on charges of providing support to terrorist organizations including Al Qaeda and Hamas.

**Yemen as a Sponsor**

The Republic of Yemen and groups within its borders have been active in funding different terrorist organizations in the Middle East and Africa.

1. The ruling General Popular Conference has funded and trained three Eritrean groups: the Eritrean Liberation Front (ELF), the Eritrean Islamic Jihad Movement (EIJM), and the Eritrean Liberation Front - Revolution Council (ELF-RC). The actual routes of the money transfers to the Etritrean groups are at present unclear.

2. Subsequently, the government of Yemen pledged monetary and military support to Yasir Arafat and the Palestinian people in Jenin. The nongovernmental Supreme Committee for Supporting Intifadah raised YR 1.7 billion to be sent to Jenin. In addition, the government of Yemen encouraged Jordan and Syria to open a passage to the Yemeni army to fight with the Palestinian people against Israel.

**Yemen as Recipient**

Organizations within Yemen have been the recipients of sizable monetary flows from various parts of the world.

1. For example, there have been reports that three Saudi intelligence officials have funded operations against Yemeni security forces in Ma'rib and Al-Khuf governorates. Furthermore, a group of men in Dearborn, MI, were arrested as part of Operation Green Quest for illegally sending $50 million annually to Yemen via hawalas. It is unclear whether the recipients of the funds were actual government officials or entities with no political affiliation.

**Concluding Remarks**

The Yemeni factions, with the possible exception of Al Qaeda, are rarely the recipients of state-sponsored or charitable donations because many of their actions support a larger objective of regional militant Islamic governance while their goals align closer with secessionists. The Yemen Islamic Jihad and Islamic Army of Aden groups have promised support for the creation of Muslim states around the Middle East, and therefore have set up training camps for Muslim guerrillas to wage war in Chechnya, Yemen, and Afghanistan. The boundaries between terrorist organizations operating in Yemen are frequently blurred because of similar objectives and collusive relationships. It is more efficient in terms of cost, planning, and safety, for two entities to work together for a single operation, such as the bombing of the USS Cole involving both Al Qaeda elements and the IAA. Upon completion of these operations, the members can disperse throughout the region and continue to remain threats.

UPITT—Yemen
15 July 2003

UNCLASSIFIED

2

BUR-PEC-078471

UNCLASSIFIED    *Holly*

08/01/2003 15:11 FAX 202 228 1071                                                              @002

                                                                                              8/04/03

OLYMPIA J. SNOWE    RELEASED IN FULL                                          COMMITTEE:
MAINE                                                                          COMMERCE, SCIENCE, AND
154 RUSSELL SENATE OFFICE BUILDING                                            TRANSPORTATION
(202) 224-5344
E-Mail: Olympia@snowe.senate.gov                                             CHAIR, OCEANS AND FISHERIES
Web Site: http://snowe.senate.gov                                            SUBCOMMITTEE

                        **United States Senate**                             FINANCE

                        WASHINGTON, DC 20510-1903                            * INTELLIGENCE

                                                                              CHAIR, SMALL BUSINESS
                           August 1, 2003

                                                                              D 97

Dear Secretary Powell:

        I am writing regarding the Department's implementation of a law I originally authored in
1993 to exclude members of known terrorist organizations from entry into the United States.

        In the wake of the 1993 World Trade Center bombing, I was astounded to learn that, with
only limited exceptions, membership in a terrorist organization in and of itself was not sufficient
grounds for visa denial. Instead, burden was placed on the U.S. government to prove that an
individual was either personally involved in a terrorist act, or planning one – a threshold that
made it virtually impossible to block dangerous aliens such as Sheikh Omar Rahman, the
mastermind of that 1993 bombing, from entering the country legally.

        To remove this bureaucratic and legal obstacle, I introduced H.R. 2041, the Terrorist
Interdiction Act of 1993. I re-introduced this measure as a component of S. 347, the Terrorist
Exclusion Act of 1995. The provision was included in S. 735, the Antiterrorism and Effective
Death Penalty Act of 1996 (P.L.104-132).

        The intended effect of the legislation was to ensure that members of foreign terrorist
organizations – *as designated by the Secretary of State under Section 219 of the Immigration and
Nationality Act* – could be excluded from the United States solely on the basis of such
membership.

        I am writing to request that your Department provide me with information on precisely
*how* the provision I authored is being implemented. More specifically, through what policies,
processes and mechanisms are waivers granted to those seeking visas who are members of
"foreign terrorist organizations"? Are reports documenting any and all such waivers being
forwarded to Congress? I would like your Department to provide me with the complete list of
waivers – including so-called "silent waivers" – granted since implementation. Further, I
understand that a review of foreign terrorist organization designees is currently required to be
conducted every two years. Have any foreign terrorist organizations ever been removed from the
designation list subsequent to a review? If so, please provide that organization.

        I also request that you precisely and completely detail the processes, criteria, and
decision-making deliberations that result in an assessment as to whether a particular organization
is officially designated a "foreign terrorist organization" for the purposes of P.L.104-132. For
example, how would the Department assess groups such as the World Assembly of Muslim
Youth, and the International Islamic Relief Organization, two organizations that were referred to

| AUBURN | AUGUSTA | BANGOR | BIDDEFORD | PORTLAND | PRESQUE ISLE |
|---|---|---|---|---|---|
| TWO GREAT FALLS PLAZA | 40 WESTERN AVENUE, SUITE 406C | ONE CUMBERLAND PLACE, SUITE 306 | 231 MAIN STREET, SUITE 2 | 3 CANAL PLAZA, SUITE 601 | 169 ACADEMY STREET, SUITE 3 |
| SUITE 7B | AUGUSTA, ME 04330 | BANGOR, ME 04401 | BIDDEFORD, ME 04005 | PORTLAND, ME 04101 | PRESQUE ISLE, ME 04769 |
| AUBURN, ME 04210 | (207) 622-8292 | (207) 945-0432 | (207) 282-4144 | (207) 874-0833 | (207) 764-5124 |
| (207) 786-2451 | | | | MAINE RELAY SERVICE | |
| | | | | TDD 1-855-3323 | |

UNITED STATES DEPARTMENT OF STATE IN MAINE CALL TOLL-FREE 1-800-432-1599
REVIEW AUTHORITY: DONALD A JOHNSTON PRINTED ON RECYCLED PAPER UNCLASSIFIED
DATE/CASE ID: 21 JUN 2004   200301298

BUR-PEC-078472

UNCLASSIFIED

Secretary Colin Powell
August 1, 2003
Page Two

in an August 1, 2003 *New York Times* article? Please detail in your response the Department's definition of "terrorist" as it is employed in such assessments made under Section 219.

Finally, I understand that when an organization is designated by the Secretary, such designation is published in the Federal Register for comment and potential challenge. I would appreciate your Department sharing with me information on which groups, if any, have challenged a designation published in the Federal Register, and what the disposition of those challenges have been.

I thank you for your prompt consideration of, and response to, my questions and concerns. I believe – especially in light of the most serious attacks ever perpetrated on American soil – that the public has the right to a full understanding of the processes and criteria by which the Department of State permits or denies the entry of foreign nationals who are members of "foreign terrorist organizations", and the processes and criteria by which the Department classifies "foreign terrorist organizations."

Sincerely,

OLYMPIA J. SNOWE
United States Senator

UNCLASSIFIED

BUR-PEC-078473

UNCLASSIFIED

**United States Department of State**

**RELEASED IN FULL**

*Washington, D.C.*   20520

(D 136)

**MEMORANDUM**

UNCLASSIFIED

DEC 18 2003

To:        S/CT - William Pope, Acting

From:      EB - E. Anthony Wayne

Subject:   Item for New Terrorism Report

In response to your request for updated information for the section entitled "Countering Terrorism on the Economic Front" of the of the Department's annual report to Congress on international terrorism, we recommend the following:

Recommendations for the section on highlights for 2003:

- On January 9, the U.S. designated Lajnat al-Daawa al Islamiyya, a Kuwaiti-based charity with links to al Qaida, after France submitted this charity's name to the UN 1267 Sanctions Committee for worldwide asset-freezing.

- On January 24, the U.S. designated two key members of. Jemaah Islamiyah, Nurjaman Riduan Isamuddin (a.k.a. Hambali) and Mohamad Iqbal Abdurrahman (a.k.a. Abu Jibril). Both names were also listed by the UNSCR 1267 Sanctions Committee.

- On January 30, under the authority of both the EO and the FTO, the United States designated Lashkar I Jhangvi, which was involved in the killing of Wall Street Journal reporter Daniel Pearl. The UNSCR 1267 Sanctions Committee also included this group on its consolidated list.

- On February 20, the U.S. designated Ansar al-Islam, a terrorist group operating in northeastern Iraq with close links to and support from al-Qaida. The group was added to the UN 1267 list four days later.

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 22 JUN 2004  200301298

UNCLASSIFIED
UNCLASSIFIED

BUR-PEC-078474

UNCLASSIFIED

UNCLASSIFIED

-2-

- On May 29, the U.S. designated the Al Aqsa Foundation, a major fund-raiser for HAMAS.

- On August 22, the U.S. designated six top HAMAS leaders (Sheik Ahmed Ismail Yassin, Imad Khalil al-Alami, Usama Hamdan, Khalid Mishaal, Musa Abu Marzouk, and Abdel Azia Rantisi) and five HAMAS-supporting charities (Comite de Bienfaisance et de Secours aux Palestinians; Association De Secours Palestinien (ASP); Palestinian Association of Austria (PVOE); Palestinian Relief and Development Fund (Interpal); and Sanibil Association for Relief and Development).

- On September 19, the U.S. designated Abu Musa'ab al-ZARQAWI, a terrorist with ties to al-Qa'ida, Asbat al-Ansar, Ansar al-Islam and Hizballah who provided financial and material support for the assassination of a U.S. diplomat and was cited in the international press as a suspect in the bombing of the Jordanian embassy in Baghdad.  Germany and the U.S. submitted his name jointly to the UN 1267 Sanctions Committee.

As of December 18, 2003 the total number of individuals and entities designated under EO 13224 is 344.  The U.S. Government has blocked over $36.5 million in assets of the Taliban, al-Qaida, and other terrorist entities and supporters.  Other nations have blocked more than $100.3 million in assets.

UNCLASSIFIED

UNCLASSIFIED

BUR-PEC-078475

UNCLASSIFIED

UNCLASSIFIED
-3-

Drafted: EB/TFS:NRothstein
Cleared: EB:Psimons ok
         EB/TFS:GGlass ok
         EB/TFS:Egoff (info)

UNCLASSIFIED
UNCLASSIFIED

BUR-PEC-078476

UNCLASSIFIED

ORIG LETTER TO ADDRESSEE VIA COURIER PICK UP          200301642

ORIG ACTMEM TO IPS RELEASED IN FULL

COPIES TO                                    **United States Department of State**

S
D                    SCANNED                 *Under Secretary of State*
P     2003 JAN 27 P 2 32                      *for Political Affairs*
E                   JAN 2 7 2003
T                                             *Washington, D.C. 20520*
M                                             January 27, 2003
G
R
SP          Dear Andrew:
SES
SESS              I understand that the Global Relief Foundation, Inc.
PA          (GRF) is currently registered with the United States Agency
PARB        for International Development (USAID) as a private and
S/CT        voluntary organization (PVO) and that the Benevolence
L           International Foundation (BIF) has applied to USAID for
EB          registration as a PVO.  I also understand that registration
USAID       as a PVO is a condition of eligibility to compete for
SESCR       direct grant assistance from USAID from development
(JM)        assistance funds.

            On October 17, 2002 the Secretary of the Treasury, in
            consultation with the Secretary of State and the
            Attorney General, designated the GRF under Executive Order
            13224 of September 23, 2001 Blocking Property and
            Prohibiting Transactions with Persons Who Commit, Threaten
            to Commit, or Support Terrorism.  Pursuant to section 2(a)
            of E.O. 13224, any transaction or dealing by United States
            persons or within the United States in property or
            interests in property blocked under the order is
            prohibited, including, but not limited to, the making or
            receiving of any contribution of funds, goods, or services
            to or for the benefit of the GRF, with certain limited
            exceptions set forth in the Order or as authorized by the
            Office of Foreign Assets Control (OFAC) of the Department
            of the Treasury.

            The GRF has connections to, has provided support for,
            and has provided assistance to, Usama Bin Ladin, al-Qa'ida,
            and other designated terrorist organizations and
            individuals.  In particular, the GRF has received funding
            from individuals associated with Usama Bin Ladin, and GRF
            officials have had extensive contacts with close associates
            of Usama Bin Ladin.  The GRF also has connections with

            The Honorable
                Andrew S. Natsios,
                    Administrator,
                        U.S. Agency for International Development.

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON
DATE/CASE ID: 21 JUN 2004  200301298

UNCLASSIFIED                          JAN 2 8 2003

BUR-PEC-078477

- 2 -

designated terrorist organizations and supporters of terrorist organizations, including with a Texas-based charitable organization, the Holy Land Foundation.

On November 19, 2002, the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, designated the Benevolence International Foundation and related entities (BIF) under Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism.  Pursuant to section 2(a) of E.O. 13224, any transaction or dealing by United States persons or within the United States in property or interests in property blocked under the order is prohibited, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of the BIF, with limited exceptions set forth in the Order or as authorized by the Office of Foreign Assets Control (OFAC) of the Department of the Treasury.

The BIF has connections to and has provided support for and assistance to, Usama Bin Ladin, al-Qa'ida, and other designated terrorist organizations and entities. Substantial evidence documents the close relationship between BIF Executive Director Enaam Arnaout and Usama Bin Laden.  Various documents also establish that Arnaout, while employed by BIF's predecessor organization, worked with others – including members of al-Qa'ida – to purchase rockets, mortars, rifles, and offensive and defensive bombs, and to distribute them to various mujahideen camps, including camps run by al-Qa'ida.  BIF also has provided additional support for and has been linked in other ways to al-Qa'ida and its operatives.

Accordingly, I have determined that continued registration of the GRF and registration of the BIF are contrary to the national security and foreign policy interests of the United States.  I respectfully request that USAID take whatever actions are necessary, in accordance with USAID policies and procedures, to terminate USAID's registration of the GRF as a PVO and to deny the application for registration of the BIF as a PVO immediately.

BUR-PEC-078478

UNCLASSIFIED

- 3 -

I have further determined that the registration as a PVO of any organization or individual designated under Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism is contrary to the national security and foreign policy interests of the United States. I respectfully request that USAID take whatever actions are necessary, in accordance with USAID policies and procedures, to ensure that any entity so designated not be permitted to establish or maintain registration as a PVO.

Thank you for USAID's cooperation.

Sincerely,

Marc Grossman

Attachments:
   Tab 1 - Treasury Statement Regarding Designation of GRF
           dated 10-18-02.
   Tab 2 - Treasury Statement Regarding Designation of BIF
           and Related Entities, dated 11-19-02.

UNCLASSIFIED

BUR-PEC-078479

UNCLASSIFIED

RELEASED IN FULL





**PRESS ROOM**

## FROM THE OFFICE OF PUBLIC AFFAIRS

October 18, 2002
PO-3553

### Treasury Department Statement Regarding the Designation of the Global Relief Foundation

We continue to wage our relentless war on terror – both here in the U.S. and overseas. We are harvesting information, coordinating with our allies, and taking action against terrorist networks. We are seeing progress. We have frozen dollars and the assets of organizations, deterred donors and supporters, and forced terrorist backers to use riskier, more vulnerable methods of raising and moving money.

Our efforts are having real-world effects. Al-Qaida and other terrorist organizations are suffering financially as a result of our actions. Potential donors are being more cautious about giving money to organizations where they fear that the money might wind up in the hands of terrorists. In addition, greater regulatory scrutiny in financial systems around the world is further marginalizing those who would support terrorist groups and activities.

The war on terrorism is only beginning, and it is certain to demand constant vigilance. In the year since that terrible day, we have hit them hard. Our goal is to bankrupt their institutions and beggar their bombers. This war - the financial war against terrorism – is complicated and much more remains to be done. We are off to a good start, but this is a long-term war of attrition that we are waging. We will not relent.

As part of this campaign, today the Treasury Department designated the Global Relief Foundation under the authority of Executive Order 13224.

The Global Relief Foundation (GRF), has connections to, has provided support for, and has provided assistance to Usama Bin Ladin, the al Qaida Network, and other known terrorist groups.

One of the founders of GRF was previously a member of the Makhtab Al-Khidamat, the precursor organization to al Qaida. The GRF has received funding from individuals associated with al Qaida. GRF officials have had extensive contacts with a close associate of Usama Bin Ladin, who has been convicted in a U.S. court for his role in the 1998 bombings of the U.S. embassies in Kenya and Tanzania.

GRF members have dealt with officials of the Taliban, while the Taliban was subject to
international sanctions.
PO-3553
The GRF has connections with known terrorist organizations and with known supporters of terrorist organizations, including the shipment of materiel to a terrorist organization operating in the Kashmir region and through financial transactions with a Texas-based charitable organization.

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DONALD A JOHNSTON       UNCLASSIFIED
DATE/CASE ID: 21 JUN 2004   200301298

UNCLASSIFIED

The United States today submitted this group's name to the UN sanctions committee for inclusion in its' consolidated list of entities and individuals whose assets UN member states are obligated to freeze pursuant to UN security council resolutions 1267 and 1390.

### TREASURY DEPARTMENT FACT SHEET ON THE GLOBAL RELIEF FOUNDATION

The Global Relief Foundation (GRF), also known as Fondation Secours Mondial (FSM), and its officers and directors have connections to, and have provided support for and assistance to, Usama bin Ladin (UBL), al Qaida, and other known terrorist groups. These include groups previously designated by the United States under President Bush's September 2001 Executive Order 13224 regarding terrorism and included on the United Nations 1267 Sanctions Committee's consolidated list of individuals and entities whose assets are required to be frozen pursuant to UN Security Council Resolutions (UNSCRs) 1267 and 1390.

Links to UBL and al Qaida:

Rabih Haddad, a senior GRF official who co-founded GRF and served as its president throughout the 1990s and in the year 2000, worked for Makhtab al-Khidamat (MAK) in Pakistan in the early 1990s. MAK was co-founded by Sheikh Abdullah Azzam and UBL in the 1980s and served as the precursor organization to al Qaida. MAK was designated by President Bush in E.O. 13224 and was subsequently included on the UN 1267 Sanctions Committee's consolidated list. The organization has helped funnel fighters and money to the Afghan resistance in Peshawar, Pakistan, and established recruitment centers worldwide to fight the Soviets. Azzam, who served as a mentor to UBL, was killed in 1989. He is also regarded as a historical leader of HAMAS, which was designated under E.O. 13224. At a recent immigration hearing, Haddad conceded that he met Azzam in Pakistan and characterized him as a "hero."

In addition, GRF has provided financial and other assistance to, and received funding from, individuals associated with al Qaida. Mohammed Galeb Kalaje Zouaydi, a suspected financier of al Qaida's worldwide terrorist efforts, was arrested in Europe in April 2002. GRF has admitted receiving funds from Zouaydi.

GRF and FSM personnel had multiple contacts with Wadih El-Hage, UBL's personal secretary when UBL was in Sudan. El-Hage was convicted in a U.S. district court in May 2001, for his role in the UBL-directed 1998 bombings of the U.S. embassies in Kenya and Tanzania. At the time that El-Hage was playing an active role in an al Qaida terrorist cell in Kenya, he was in contact with GRF. For example, documents recovered from a search in Kenya indicated that El-Hage was in contact with GRF after he returned from visiting al Qaida leadership in Afghanistan in February 1997. GRF has acknowledged that El-Hage and Nabil Sayadi, FSM's Director in Belgium, were in contact during this period.

Links to Taliban and Other Entities and Background:

A GRF employee also dealt with officials of the Taliban, which at the time was an entity subject to U.S. sanctions pursuant to United States E.O. 13129 (prohibiting trade and most transactions with the Taliban because it provided a safe haven and base of operations for UBL and al Qaida) and subject to international sanctions pursuant to UNSCRs 1267 and 1333. In November 2001, during the airstrikes in Afghanistan, a GRF medical relief coordinator

UNCLASSIFIED

BUR-PEC-078481

UNCLASSIFIED

traveled to Kabul, against the advice of the U.S. Department of State, and engaged in dealings and negotiations with Taliban officials until the collapse of the Taliban regime.

A set of photographs and negatives discovered in 1997 in a trash dumpster outside of GRF's office in Illinois depict large shipping boxes displayed under a GRF banner. The boxes were full of sophisticated communications equipment, including approximately 200 handheld radio transceivers, long-range radio antennas, and portable power packs, with an estimated total value of $120,000. Other photographs depict fighters armed with automatic rifles, a sand bagged bunker with a radio antenna mounted outside, and mutilated corpses with the name "KPI" (Kashmir Press International) printed alongside. Yet another photograph displays two dead men with the caption "Hizbul Mujahideen," a known terrorist organization operating in the Kashmir region. On the reverse side of the photograph was handwritten in Arabic, "two martyrs killed by the Indian government."

GRF has stocked and promoted audio tapes and books authored by Sheikh Abdullah Azzam, discussed above, which glorify armed jihad, including "The international conspiracy against Jihad" and "The Jihad in its present stage." Despite Azzam's terrorist background, GRF has enthusiastically promoted Azzam's materials to the public: "His [Azzam's] theology is a sea, his words are jewels, and his thoughts are a light for those who are holding the smoldering embers. He lived the Jihad experiences of the 20th century in Afghanistan . . . and Palestine, and produced a new theory for saving the [Islamic] Nation from disgrace, shame, weakness, and submission to others."

GRF has published several Arabic newsletters and pamphlets that advocate armed action through jihad against groups perceived to be un-Islamic. For example, one 1995 GRF pamphlet reads "God equated martyrdom through JIHAD with supplying funds for the JIHAD effort. All contributions should be mailed to: GRF." Another GRF newsletter requested donations "for God's cause – they [the Zakat funds] are disbursed for equipping the raiders, for the purchase of ammunition and food, and for their [the Mujahideen's] transportation so that they can raise God the Almighty's word . . . it is likely that the most important of disbursement of Zakat in our times is on the jihad for God's cause . . . ."

GRF received $18,521 from the Holy Land Foundation for Relief and Development (HLF) in 2000. HLF, a Dallas, Texas based Islamic charitable organization, was designated under E.O. 13224 on December 4, 2001, and under the European Union's Regulation (EC) No. 2580/2001 on June 17, 2002, for its ties to terrorism. HLF's designation was upheld in a recent decision by a U.S. district court.

Gurule Statement

UNCLASSIFIED

BUR-PEC-078482