**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001** | **03-MD-1570 (GBD)(FM)** <br> **ECF Case** |

This document relates to:

*Ashton, et al. v. Al Qaeda Islamic Army, et al.* No. 02-CV-6977
*Burnett, et al. v. Al Baraka Investment & Development Corp., et al.,* No. 03-CV-5738
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.,* No. 04-CV-05970
*Euro Brokers v. Al Baraka Investment and Development Corp., et al,* No. 04-CV-7279
*Estate of O'Neill, et al. v. Al Baraka Investment and Development Corp., et al,* No. 04-CV-1923
*Federal Insurance Col, et al. v. Al Qaida, et al.,* No. 03-CV-6978

## DECLARATION OF TALHAH Al JARAD

I, Talhah Al Jarad, being duly sworn, hereby declare under penalty of perjury that the following is true and correct:

1.  I am not a party in the above captioned matter.

2.  My background is in computer science and engineering including a Masters Degree of Science in Computer Engineering and Networking.

3.  I lived in Canada from 1997 to 2004.

4.  When I lived in Canada I worked for different information technology companies.

5.  Prior to going to Canada, I had not heard of the World Assembly of Muslim Youth ("WAMY").

6.  I began to volunteer for WAMY Canada in the spring of 2001.

7.  In the spring of 2001, Ibrahim Abdullah, executive director of WAMY USA, called me and told me about WAMY. He told me about WAMY as an organization, the good deeds

1



EXHIBIT

WAMY EX. 175

they perform for the youth, and the humanitarian aid they provide to those most in need. He asked whether I would like to participate in WAMY Canada's activities as executive director.

8. I told him I could do this provided that I only serve as a volunteer for a maximum of two years and 3-4 hours per week and that I did not want to be compensated.

9. Ibrahim Abdullah told me that he was the Director of WAMY in the United States and said that he needed a professional person to handle administrative matters for WAMY Canada.

10. I sensed he was not happy with the performance of the then Director of WAMY Canada, Mohammed Al Khatib. I did not ask for any details nor did he share any with me.

11. To the best of my knowledge, Mr. Al Khatib was being asked to relinquish his role with WAMY Canada, and I would transition into replacing him.

12. When I started volunteering with WAMY Canada, I met Mohammed Al Khatib as part of the transition. I knew him from the community as a leader of several organizations.

13. WAMY Canada did not have an office at this point. Al Khatib was operating the chapter from his home address.

14. While I was executive director of WAMY Canada, WAMY Canada never received donations of any kind. It only received its funding from WAMY Saudi Arabia through wire transfer and, one a few occasions, from WAMY USA. We never received any funds in cash.

15. The funds received from WAMY Saudi Arabia were for various programs and projects in the community such as events, youth gatherings, mini-conferences, Eid festivals, Iftar Sayem (a community meal during Ramadan), and one big conference. We also received money for operating costs for the WAMY Canada office including rent, utilities, communications, office equipment and the salary for a part time office assistant.

2

T-J

16. WAMY Saudi Arabia would also send, by wire transfer, donor directed funds for specific projects and programs including funding for community centers and schools in Canada. For all project specific funds received from WAMY Saudi Arabia, there would later be a report on the project.

17. When I began as executive director of WAMY Canada, I asked that the prior executive director, Mr. Al Khatib, close all of the existing bank accounts. I did not know what accounts he had or where they were. This was simply my preference starting as the new executive director. I wanted to start with a clean slate.

18. He told me he would take care of this. He also told me there was only a few hundred dollars left in the accounts and that they would be used to cover any remaining expenses. Thus, there was no carry over of funds from the accounts Mr. Al Khatib maintained for WAMY Canada and the accounts I opened.

19. In early 2004, I was approached by the Canadian Revenue Authority (CRA) asking for documents pertaining to WAMY Canada. I told them that I had resigned by that point but that I would cooperate and produce to them whatever WAMY Canada documents I had access to.

20. I later met with officials from the CRA. I gave them the materials I had. They said they had specific questions about events before I became executive director of WAMY Canada including about something called "BIF." I told them I did not know anything about this, I had never heard of BIF up to that point, but that they should speak to Mr. Al Khatib. I then called Mr. Al Khatib who agreed to come and also speak with the CRA officials.

3

T·J

21.    Al Khatib told me that there was a program with BIF, an organization of which he was also the director, and he stated the funds came from a special program that raised money in Canada for orphans and were going to be used to buy shoes for needy orphans.

22.    I officially resigned as Executive Director of WAMY Canada in October of 2003.

23.    Again, I declare under penalty of perjury that all of the above statements are true and based upon my personal knowledge.

Dated: _Mar 02, 2019_

_____
Talhah Al Jarad

4