III

109TH CONGRESS
1ST SESSION

# S. RES. 134

Expressing the sense of the Senate regarding the massacre at Srebrenica in July 1995.

---

## IN THE SENATE OF THE UNITED STATES

MAY 9, 2005

Mr. SMITH (for himself, Mr. BIDEN, Mr. LEVIN, Mr. KENNEDY, Mr. HATCH, Mr. BROWNBACK, Mr. LIEBERMAN, and Mr. DURBIN) submitted the following resolution; which was referred to the Committee on Foreign Relations

JUNE 22, 2005

Committee discharged; considered and agreed to

---

# RESOLUTION

Expressing the sense of the Senate regarding the massacre at Srebrenica in July 1995.

Whereas, in July 1995, thousands of men and boys who had sought safety in the United Nations-designated "safe area" of Srebrenica in Bosnia and Herzegovina under the protection of the United Nations Protection Force (UNPROFOR) were massacred by Serb forces operating in that country;

Whereas, beginning in April 1992, aggression and ethnic cleansing perpetrated by Bosnian Serb forces, while taking control of the surrounding territory, resulted in a massive influx of Bosniaks seeking protection in



EXHIBIT

WAMY EX. 201

2

Srebrenica and its environs, which the United Nations Security Council designated a "safe area" in Security Council Resolution 819 on April 16, 1993;

Whereas the UNPROFOR presence in Srebrenica consisted of a Dutch peacekeeping battalion, with representatives of the United Nations High Commissioner for Refugees, the International Committee of the Red Cross, and the humanitarian medical aid agency Medecins Sans Frontiers (Doctors Without Borders) helping to provide humanitarian relief to the displaced population living in conditions of massive overcrowding, destitution, and disease;

Whereas Bosnian Serb forces blockaded the enclave early in 1995, depriving the entire population of humanitarian aid and outside communication and contact, and effectively reducing the ability of the Dutch peacekeeping battalion to deter aggression or otherwise respond effectively to a deteriorating situation;

Whereas, beginning on July 6, 1995, Bosnian Serb forces attacked UNPROFOR outposts, seized control of the isolated enclave, held captured Dutch soldiers hostage and, after skirmishes with local defenders, ultimately took control of the town of Srebrenica on July 11, 1995;

Whereas an estimated one-third of the population of Srebrenica, including a relatively small number of soldiers, made a desperate attempt to pass through the lines of Bosnian Serb forces to the relative safety of Bosnian-held territory, but many were killed by patrols and ambushes;

Whereas the remaining population sought protection with the Dutch peacekeeping battalion at its headquarters in the

**SRES 134 ATS**

3

village of Potocari north of Srebrenica but many of these individuals were randomly seized by Bosnian Serb forces to be beaten, raped, or murdered;

Whereas Bosnian Serb forces deported women, children, and the elderly in buses, held Bosniak males over 16 years of age at collection points and sites in northeastern Bosnia and Herzegovina under their control, and then summarily murdered and buried the captives in mass graves;

Whereas approximately 20 percent of Srebrenica's total population at the time—at least 7,000 and perhaps thousands more—was murdered;

Whereas the United Nations and its member states have largely acknowledged their failure to take actions and decisions that could have deterred the assault on Srebrenica and prevented the subsequent massacre, including the lengthy report issued by the Government of the Netherlands on April 10, 2002, entitled "Srebrenica, a 'safe' area—Reconstruction, background, consequences and analyses of the fall of a safe area";

Whereas Bosnian Serb forces, hoping to conceal evidence of the massacre at Srebrenica, subsequently moved corpses from initial mass grave sites to many secondary sites scattered throughout parts of northeastern Bosnia and Herzegovina under their control;

Whereas the massacre at Srebrenica was among the worst of many horrible atrocities to occur in the conflict in Bosnia and Herzegovina from April 1992 to November 1995, during which the policies of aggression and ethnic cleansing pursued by Bosnian Serb forces with the direct support of authorities in the Federal Republic of Yugoslavia (Serbia and Montenegro) ultimately led to the displace-

4

ment of more than 2,000,000 people, an estimated 200,000 killed, tens of thousands raped or otherwise tortured and abused, and the innocent civilians of Sarajevo and other urban centers repeatedly subjected to shelling and sniper attacks;

Whereas Article 2 of the Convention on the Prevention and Punishment of the Crime of Genocide, done at Paris December 9, 1948, and entered into force January 12, 1951, defines genocide as "any of the following acts committed with intent to destroy, in whole or in part, a national, ethnical, racial or religious group, as such: (a) killing members of the group; (b) causing serious bodily or mental harm to members of the group; (c) deliberately inflicting on the group conditions of life calculated to bring about its physical destruction in whole or in part; (d) imposing measures intended to prevent births within the group; (e) forcibly transferring children of the group to another group";

Whereas, on May 25, 1993, the United Nations Security Council adopted Security Council Resolution 827, establishing the world's first international war crimes tribunal, the International Criminal Tribunal for the former Yugoslavia (ICTY), based in The Hague, the Netherlands, and charging the ICTY with responsibility for investigating and prosecuting individuals suspected of committing war crimes, genocide, crimes against humanity, and grave breaches of the 1949 Geneva Conventions on the territory of the former Yugoslavia since 1991;

Whereas numerous members of the Bosnian Serb forces and political leaders at various levels of responsibility have been indicted for grave breaches of the 1949 Geneva Conventions, violations of the laws or customs of war,

5

crimes against humanity, genocide, and complicity in genocide associated with the massacre at Srebrenica, some of whom have been tried and sentenced while others, including Radovan Karadzic and Ratko Mladic, remain at large; and

Whereas the international community, including the United States, has continued to provide personnel and resources, including through direct military intervention, to prevent further aggression and ethnic cleansing, to negotiate and help ensure the full implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina, initialled at Dayton, Ohio, November 21, 1995, and done at Paris December 14, 1995, including cooperation with the International Criminal Tribunal for the former Yugoslavia: Now, therefore, be it

*Resolved,* That it is the sense of the Senate that—

(1) the thousands of innocent people murdered at Srebrenica in Bosnia and Herzegovina in July 1995, along with all individuals who were victimized during the conflict and genocide in Bosnia and Herzegovina from 1992 to 1995, should be solemnly remembered and honored;

(2) the policies of aggression and ethnic cleansing as implemented by Serb forces in Bosnia and Herzegovina from 1992 to 1995 meet the terms defining the crime of genocide in Article 2 of the Convention on the Prevention and Punishment of the

SRES 134 ATS

6

Crime of Genocide, done at Paris December 9, 1948, and entered into force January 12, 1951;

(3) foreign nationals, including United States citizens, who have risked, and in some cases lost, their lives in Bosnia and Herzegovina while working toward peace should be solemnly remembered and honored;

(4) the United Nations and its member states should accept their share of responsibility for allowing the Srebrenica massacre and genocide to occur in Bosnia and Herzegovina from 1992 to 1995 by failing to take sufficient, decisive, and timely action, and the United Nations and its member states should constantly seek to ensure that this failure is not repeated in future crises and conflicts;

(5) it is in the national interest of the United States that those individuals who are responsible for war crimes, genocide, crimes against humanity, and grave breaches of the 1949 Geneva Conventions committed in Bosnia and Herzegovina should be held accountable for their actions;

(6) all persons indicted by the International Criminal Tribunal for the former Yugoslavia (ICTY) should be apprehended and transferred to The Hague without further delay, and all countries

**SRES 134 ATS**

7

should meet their obligations to cooperate fully with the ICTY at all times; and

(7) the United States should continue to support—

(A) the independence and territorial integrity of Bosnia and Herzegovina;

(B) peace and stability in southeastern Europe as a whole; and

(C) the right of all people living in southeastern Europe, regardless of national, racial, ethnic or religious background—

(i) to return to their homes and enjoy the benefits of democratic institutions, the rule of law, and economic opportunity; and

(ii) to know the fate of missing relatives and friends.

○