USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/27/2023__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**

------------------------------------------------------------------X

**03-MD-01570 (GBD)(SN)**

**<u>OPINION & ORDER</u>**

**SARAH NETBURN, United States Magistrate Judge:**

      The Court ordered the Plaintiffs' Executive Committees ("PECs" or "Plaintiffs") and Defendants Dubai Islamic Bank ("DIB"), World Assembly of Muslim Youth and World Assembly of Muslim Youth International (together, "WAMY"), International Islamic Relief Organization ("IIRO"), Muslim World League ("MWL"), Abdullah Omar Naseef ("Naseef"), Abdullah bin Saleh al Obaid ("Obaid"), Abdullah Abdelmohsen al Turki ("Turki"), Adnan Basha ("Basha"), and Yassin Kadi ("Kadi") (collectively, "Defendants") to file bellwether <u>Daubert</u> challenges to the opposing parties' proffered experts. ECF No. 7160. Between them, the parties moved to exclude the testimony of six witnesses. ECF Nos. 7342, 7345. Upon reviewing these witnesses' credentials, depositions, and the nine reports and declarations they produced, the Court grants in part and denies in part these motions.

**BACKGROUND**

      The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background.

      The parties retained a range of experts to opine on Defendants' alleged material support for al Qaeda and the 9/11 Attacks. During the expert discovery period ending August 6, 2021, they exchanged 23 proposed expert reports and conducted 16 depositions. <u>See</u> ECF No. 6815. These experts come from different professions, hold different degrees, use different


EXHIBIT
WAMY EX. 254

One could forgive Freeman for relying on an anonymous internet source. As other courts have recognized, terrorism experts "must, perforce, rely often on hearsay" to learn information about inherently clandestine organizations. Abu-Jihaad, 553 F. Supp. 2d at 126. But one cannot absolve Freeman for "mischaracterize[ing]" the provenance of the quote. In re Taxotere (Docetaxel) Prods. Liab. Litig., No. 16-md-02740 (JTM), 2019 WL 3554211, at *2 (E.D. La. 2019). Academic integrity requires us to cite our sources.[4] It is a rule every student knows, but one Freeman violated. He replaced a standard citation to a blog comment with an unverified, third-hand description of its author as an intelligence officer. That decision does not reflect the "level of intellectual rigor" Rule 702 contemplated. Zaremba, 360 F.3d at 358.

The Court is concerned both by Freeman's failure to cite credible sources and his stubborn defense of his choice to whitewash the author of his endnote text. His intellectual dishonesty undermines the Court's confidence that Freeman has "reliably applied" "reliable principles and methods" "to the facts of the case." Fed. R. Evid. 702. What remains is only Freeman's assertion that his opinions are accurate. But an expert's "*ipse dixit*" is not enough. Joiner, 522 U.S. at 146. These defects taint all of Freeman's testimony, so the Court excludes it in its entirety.

## V. Jonathan Marks

Jonathan Marks is a certified public accountant and a partner at Baker Tilley US, LLP who works on "global and cross-border fraud and misconduct investigations." ECF No. 7351-4 at 41. He has certifications in financial forensics, information technology, chartered global

---

[4] See, e.g., Brown University, The Academic Code 6 (2012) https://college.brown.edu/sites/default/files/2022-04/Academic-Code.pdf ("Word-for-word inclusion of any part of someone else's written or oral sentence . . . requires citation in quotation marks and use of the appropriate conventions for attribution.").

management, and fraud examination. See id. at 3. He has taught auditing and forensic accounting and served on various professional task forces and boards. See id. at 4, 43–44.

Defendants engaged Marks as a rebuttal witness. See id. at 3. Together, he and his firm analyzed "primary source documents, including financial documentation from WAMY and its chapters and uses of WAMY's funding for the period 1992 through 2002." Id.

Plaintiffs move to exclude Marks's testimony on three grounds. They argue that: (1) he lacks the counterterrorism experience to opine on this case; (2) his methodology was unreliable; and (3) he improperly testifies to states of mind.

**First**, Plaintiffs protest that Marks has no experience with counterterrorism, al Qaeda, or charitable programs assisting refugees and orphans. See ECF No. 7346 at 22–23, 43. Consequently, they argue, Marks cannot evaluate whether WAMY diverted funds from its charitable endeavors to al Qaeda. See id. Here, the pork analogy is again instructive. "Just as a proposed religious expert wouldn't need to be a biologist to opine that eating pork violates Islam," a proposed forensic accountant does not need to operate a refugee camp to analyze misuse of charitable funding. Tate, 2021 WL 4972444, at *1; see ECF No. 7351-4 at 41 (listing Marks's certifications in financial forensics and fraud examination, among others).

During his thirty years in the field, Marks has conducted multiple Foreign Corrupt Practices Act investigations; led a special audit related to a $400 million fraud; and worked directly with the United States Attorney's Office, the Federal Bureau of Investigation, the Internal Revenue Service's Criminal Investigation Division, and United States Customs and Border Protection to investigate individuals and companies engaged in fraud, concealment, and conversion schemes. See ECF No. 7351-4 at 41–43. His technical skill, education, and experience amply qualify him to review WAMY's financial records for signs of diversion. See,

33

e.g., In re Bayou Group, LLC, 439 B.R. 284, 331–32 (S.D.N.Y. 2010) (approving forensic accountant as expert witness).

His lack of experience auditing refugee programs or terrorist accounts does not prevent him from helping the jury understand reams of financial information and potential signs of fraud. See F.D.S. Marine, LLC v. Brix Mar. Co., 211 F.R.D. 396, 402 (D. Or. 2001) (observing that an accountant's testimony would assist jurors in understanding evidence). Furthermore, where he has opined that practices are not consistent with terrorist financing, he has provided citation to the relevant standards. See, e.g., ECF No. 7351-4 at 10 (citing FATF publications in support of conclusion that "the institution of centralized controls is not reflective of 'typical terrorist financing modes and methodologies'"). Marks is qualified to testify as an expert, and any further questions about his qualifications can be raised on cross examination. See SR Int'l Bus. Ins. Co., 467 F.3d at 134.

**Second**, Plaintiffs attack the methodology Marks used and the evidence he considered when reaching his conclusions. See ECF No. 7346 at 14, 36–43. They object to his relying on others' analyses and claim his findings are only weakly supported by the documentary evidence. See id. They assert that Marks identified no methodology, did not have a list of red flags, could not answer operational questions about WAMY, and could not identify gaps in WAMY's financial documentation. See ECF No. 7346 at 50–52.

Marks testified that his methodology was guided by the principles set out in FATF publications, those identified by former FBI Agent Dennis Lormel, and his own forensic accounting experience. See ECF Nos. 7351-4 at 10, 21, 32, 7604-18 at 38 (noting "small" list of "reg flags"). His inability to respond to operational questions or identify gaps in financial documentation can be explained by the volume of evidence he and his team reviewed.

34