**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- x
                                                        :
                                                        :
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 :    MEMORANDUM OF LAW
                                                        :    IN SUPPORT OF MOTION
                                                        :    TO PERMIT ATTACHMENT
                                                        :    AND EXECUTION PURSUANT
                                                        :    TO 28 U.S.C. 1610(c)
                                                        :
                                                        :    03-md-01570
                                                        :
---------------------------------------------------------------- x
This Document Relates to:

*Havlish v. bin Laden*, No. 03-cv-09848
*Hoglan v. Islamic Republic of Iran*, No. 11-cv-07550
*Ray v. Islamic Republic of Iran*, No. 19-cv-00012
*Maher v. Islamic Republic of Iran*, No. 22-cv-00266
*Bauer v. Islamic Republic of Iran*, No. 02-cv-07236
*Parker v. Islamic Republic of Iran*, No. 18-cv-11416

The *Havlish*, *Hoglan*, *Ray*, *Maher*, *Bauer* and *Parker* Judgment Creditors (collectively, "Havlish Judgment Creditors"), through counsel, hereby respectfully submit this Memorandum of Law in Support of Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. § 1610(c).

## I.    FACTUAL BACKGROUND

The *Havlish* Judgment Creditors collectively hold over $7 billion in outstanding compensatory damages against the Islamic Republic of Iran ("Iran") and, in some cases, various other agencies and instrumentalities of Iran and entities associated with Iran's international terrorism apparatus, including the Central Bank of Iran. These judgments, issued by the Honorable George B. Daniels pursuant to the terrorism exception in the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1605A (formerly § 1605(a)(7)) are final, enforceable, not fully satisfied, and continue to accrue post-judgment interest.

On April 24, 2026, U.S. Treasury Secretary Scott Bessent posted on X that:

Under Economic Fury, @USTreasury will continue to systematically degrade Tehran's ability to generate, move, and repatriate funds. Treasury's Office of Foreign Assets Control is sanctioning multiple wallets tied to Iran — resulting in the freeze of $344 million in cryptocurrency. We will follow the money that Tehran is desperately attempting to move outside of the country and target all financial lifelines tied to the regime. 2:15 PM · Apr 24, 2026 375.5K Views [1]

That day, the U.S. announced the U.S. Department of the Treasury, Office of Foreign Assets Control, announced an Iran-related sanctions designation update. The announcement involved two digital cryptocurrency wallets that were added to the sanctions designation of the Central Bank of Iran:

The following changes have been made to OFAC's SDN List:

BANK MARKAZI JOMHOURI ISLAMI IRAN (a.k.a. BANK MARKAZI IRAN; a.k.a. CENTRAL BANK OF IRAN; a.k.a. CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN * * * **Digital Currency Address - TRX TNiq9AXBp9EjUqhDhrwrfvAA8U3GUQZH81; alt. Digital Currency Address - TRX TTiDLWE6fZK8okMJv6ijg42yrH6W2pjSr9 [IRAN] [SDGT] [IRGC] [IFSR] (Linked To: ISLAMIC REVOLUTIONARY GUARD CORPS (IRGC)-QODS FORCE; Linked To: HIZBALLAH).** [2]

These frozen, sanctioned wallets hold approximately $344 million in Tether cryptocurrency tokens ("USDT") on the Tron blockchain. Tether is a company based in San Salvador, El Salvador that issues the USDT token, which has a net circulation of $189,769,026,016 as of May 22, 2026. Tron is one of 13 discreet blockchains that Tether has approved to engaged in USDT transactions.[3] Tether's USDT is a "stablecoin," which means it is

---

[1] https://x.com/SecScottBessent/status/2047741124853502012?s=20

[2] *See* footnote 1. (bold typeface added).

[3] Tether, Assurance Report, Financial Figures & Reserves Report, at ¶ 2.3, p. 6 at
https://assets.ctfassets.net/vyse88cgwfbl/6crn1tXbl6AtWZBWucZnfg/c4ff472d70c1b48c2f689f27b54c84f5
/ISAE_3000R_-_Opinion_Tether_International_Financial_Figure_31-03-2026.pdf

"a cryptocurrency whose value is designed to be stable, typically by being pegged to a fiat currency like the U.S. dollar. On paper, they aim to offer the benefits of cryptocurrency — high-speed, low-cost and decentralized transactions — with the stability of traditional assets." [4]

As a stablecoin, USDT must be backed by U.S. dollar reserves to maintain its stated value as a 1-to-1 peg to the U.S. dollar. Tether's stated Reserves include U.S. Treasury Bills in the amount of approximately $117 billion as of March 31, 2026, and most of that amount is held by a custodian in this District, Cantor Fitzgerald LP.[5]

Senators Warren and Wyden recently characterized Tether as follows:

Tether, headquartered in El Salvador, is the largest stablecoin issuer in the world. Tether is seen as a 'dream currency' for money launderers. It has reportedly served as the preferred financing vehicle for black market Russian weapons dealers, Hezbollah and other terrorist organizations, human traffickers, and state actors in North Korea and Iran. UK law enforcement dismantled a multi-billion Tether-based laundering scheme with links to Russian oligarchs and drug trafficking networks, and said that Tether has replaced Bitcoin to become the "cryptocurrency du jour" for illicit actors. A United Nations report also described Tether as the "preferred choice for Asian crime syndicates engaged in cyber-enabled fraud and money laundering operations servicing a wide range of criminal actors operating in the region.

The company has also faced legal scrutiny in the United States for its conduct. In 2021, the New York State Attorney General's Office found that "Tether's claims that its virtual currency was fully backed by U.S. dollars at all times was a lie." The Commodity Futures Trading Commission similarly took an enforcement action against Tether for "falsely represent[ing]" that its reserves have 1:1 backing and that they underwent financial audits of those reserves. In 2024, the Department of Justice was reportedly investigating Tether…for potential violations of sanctions and anti-money laundering rules.[6]

---

[4] Manley, Jack, J.P.Morgan Asset Management, *What is a stablecoin?* Jul. 9. 2025, at https://am.jpmorgan.com/us/en/asset-management/institutional/insights/market-insights/market-updates/on-the-minds-of-investors/what-is-a-stablecoin/

[5] Faux, Zeke and Gillespie, Todd, Bloomberg, *Commerce Nominee Lutnick Is Backer of Outlaws' Favorite Cryptocurrency* on Jan. 18 2025, at https://www.bloomberg.com/news/features/2025-01-18/trump-commerce-nominee-lutnick-is-backer-of-outlaws-favorite-cryptocurrency

[6] Letter by Senators Elizabeth Warren and Ron Wyden to the Honorable Harold Lutnick on April 29, 2026, at https://www.banking.senate.gov/imo/media/doc/20260429warrenwydenlettertolutnickretethercantorfitzgeraldloan.pdf (internal citations omitted)(typographical error in original omitted and replaced with ellipses).



*One of the two frozen, sanctioned Tron wallets holding the approximately $344 million in Tether USDT tokens.*[7]



*The second of two frozen, sanctioned Tron wallets holding the approximately $344 million in Tether USDT tokens.*[8]

## II.    LEGAL ARGUMENT

### A.    The Havlish Judgment Creditors Have Provided Notice to Iran in Accordance with § 1608(e).

Section 1610(c) of the FSIA contains a condition precedent that must be satisfied before attempting to attach and execution upon the assets of a foreign sovereign such as Iran.

---

[7] https://tronscan.org/#/address/TNiq9AXBp9EjUqhDhrwrfvAA8U3GUQZH81

[8] https://tronscan.org/#/address/TTiDLWE6fZK8okMJv6ijg42yrH6W2pjSr9

It is not a large hurdle. "Plaintiffs must establish only § 1610(c)'s two requirements: (1) that notice as required under § 1608(e) has been given, and (2) that a reasonable period of time has elapsed following entry of their Iran Judgments and the provision of notice." Opinion & Order, ECF 11973, (S.D.N.Y. Apr. 14, 2026) p. 10.

Section § 1608 of the FSIA contains its service provisions. This Court recently held that the *Havlish*, *Hoglan*, *Ray*, *Maher*, *Bauer*, and *Parker* Plaintiffs properly served Iran in accordance with § 1608. Opinion & Order on April 14, 2026, at ECF 11973 at pp. 11-12; 15-16; 20. The Court also noted:

> The Court previously granted orders pursuant to § 1610(c) for certain Plaintiffs on their Iran Judgments. For the Havlish Plaintiffs, the Court granted a § 1610(c) order to generally pursue attachment and execution on any Iranian assets, as well as a specific order related to Bank Markazi assets held by Clearstream. See ECF Nos. 2778 (general), 6134 (specific). Likewise, the Court granted multiple § 1610(c) orders (general and specific to Bank Markazi assets) for the Hoglan Plaintiffs. See ECF Nos. 6092, 6129.

> *Id* at p. 4.

### B.      A Reasonable Period of Time Has Elapsed Since the Provision of Notice under 1608(e).

With respect to all *Havlish* Judgment Creditors, this Court recently held, upon applications for an order under 28 U.S.C. 1610(c) to commence litigation against 127,271 Bitcoin subject to civil forfeiture proceedings in the Eastern District of New York, that:

> A reasonable period of time has elapsed since the entry of each of these Plaintiffs' Iran Judgments and the provision of notice of each Iran Judgment to the Iranian Defendants. The Plaintiffs…are authorized, under 28 U.S.C. § 1610(c), to enforce the Iran Judgments by any lawful means, including the attachment of, or execution on, the Bitcoin.

*Id*., Conclusion, p. 20 (internal citation to Appendix omitted).

**WHEREFORE,** the *Havlish* Judgment Creditors respectfully request that this Honorable Court enter the proposed Order attached to the accompanying Motion

GRANTING the *Havlish* Judgment Creditors' Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. § 1610(c) on the $344 million in Tether currently frozen by the U.S. Government, and all proceeds traceable thereto, or their cash equivalent.

Dated: June 8, 2026

/s/ *Douglass A. Mitchell*
Douglass A. Mitchell (NV Bar No. 3775)
MITCHELL ALLYN, LTD.
1000 N. Green Valley Pkwy, Suite 440-575
Henderson, NV 89074
Tel: (702) 350-1208
dmitchell@mitchellallyn.com

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC  (*Lead Counsel*)
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 314-0500

Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, PLLC
2202 18th Street, NW, #110
Washington, DC 20009-1813
(202) 467-4489

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
951 N. Delaware St.
Indianapolis, IN 46202
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
(630) 232-7450

*Attorneys for the* Havlish *Judgment Creditors*

Andrew C. Levitt (New York Bar No. 2734465)
O'HARE PARNAGIAN LLP
20 Vesey Street, Suite 300
New York, NY  10007
(212) 425-1401

*Co-Counsel for* Ray *Judgment Creditors Harley DiNardo; Harley DiNardo as Personal Representative of the Estate of Esterina DiNardo a/k/a Ester DiNardo; Pio DiNardo; Andrew Economos; Andrew Economos and Olga Valinotti as Co-Personal Representatives of the Estate of Leon Economos; Olga Valinotti; Constance Finnicum; George Gabrielle a/k/a Gabe Gabrielle; Mary Ellen Murach; Mary Ellen Murach, as Personal Representative of the Estate of Edward John Murach; Richard J. Murach; and Katharine Tynion*

7