**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army*, *et al.,* 02-cv-6977 (GBD)(SN)
*Bauer, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-7236 (GBD)(SN)

# MEMORANDUM OF LAW IN SUPPORT OF *BAUER III* PLAINTIFFS' MOTION FOR PARTIAL FINAL DAMAGES' JUDGMENTS AGAINST THE TALIBAN ON BEHALF OF NON-U.S. NATIONALS

BAUMEISTER & SAMUELS, P.C.
Dorothea M. Capone, Esq.
Michel F. Baumeister, Esq.
200 Vesey Street, 24th Floor
New York, New York 10281
Tel: (212) 363-1200
**Attorneys for *Bauer III* Plaintiffs**

Table of Contents

Table of Authorities.................................................................................................................. 1

    Cases .................................................................................................................................. 1

    Statutes ............................................................................................................................. 2

    Rules.................................................................................................................................. 2

I.     Introduction ..................................................................................................................... 3

II.    Background ...................................................................................................................... 4

    A. Applicable Orders....................................................................................................... 7

    B. Related Cases ............................................................................................................. 8

III.   This Court Has Already Determined It Has Subject Matter and Personal Jurisdiction Over the Taliban for Claims Brought by Non-U.S. Nationals ......................................................... 9

IV.   The Taliban is liable to the *Bauer III* Non-U.S. National Plaintiffs under New York law... 14

V.    The *Bauer III* Plaintiffs Are Entitled to Receive Damage Awards for their IIED Claims .... 16

VI.   The *Bauer III* Plaintiffs are Entitled to Punitive Damages and Prejudgment Interest ......... 17

VII.  Conclusion ..................................................................................................................... 18

Table of Authorities

**Cases**

Pages

*Achtman v. Kirby, McInerney & Squire, LLP,*
464 F.3d 328, 335 (2d Cir. 2006)……………………………………………………………11

*Baker v. Socialist People's Libyan Arab Jamahirya,*
775 F. Supp. 2d 48 (D.D.C. 2011)……………………………………………...……..18

*Burnett v. Al Baraka Inv. & Dev. Corp.,*
274 F. Supp. 2d 86, 108 (D.D.C. 2003)…………………………………...………16

*Calder v. Jones,*
465 U.S. 783 (1984)…………………………………………………………………...14

*Charles Schwab Corp. v. Bank of Am. Corp.,*
883 F.3d 68, 88 (2d Cir. 2018)………………………………………………………...12

*City of Chicago v. Int'l Coll. of Surgeons,*
522 U.S. 156, 165 (1997)……………………………………………………………...11

*City of New York v. Mickalis Pawn Shop, LLC,*
645 F.3d 114, 133 (2d Cir. 2011)……………………………………………………...11

*DiMarco Constructors, LLC v. Sinacola, Inc.,*
407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006)…………………………………………...14

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,*
40 F. 4th 56, 68-69 (2d Cir. 2022)…………………………………………………...12

*Fed. Trade Comm'n v. Quincy Bioscience Holding Co.,*
389 F. Supp. 3d 211, 219 (S.D.N.Y. 1029)…………………………………………12

*Howell v. NY Post Co.,*
81 N.Y.2d 115 (1993)………………………………………………………………..15

*In re Magnetic Audiotape Antitrust Litig.,*
334 F.3d 204 (2d Cir. 2003)…………………………………………….…...14

*IUE AFL-CIO Pension Fund v. Herrman,*
9 F.3d 1049, 1056 (2d Cir. 1993)…………………………………………………...12

1

*Lyndonville Sav. Bank & Trust Co. v. Lussier*,
211 F.3d 697, 704 (2d Cir. 2000)…………………………………………………………....11

*Maney v. Maloney*,
101 A.D.2d 403, 404 (3d Dep't 1984)…………………………………………………….....15

*Merck Eprova AG v. Gnosis S.p.A.*,
No. 07 CIV. 5898 (RJS), 2008 WL 5336587 (S.D.N.Y. Dec. 12, 2008)………………………...13

*Rich v. Fox News Network, LLC,*
No. 18 Civ. 2223 (GBD), 2020 WL 5768430 (S.D.N.Y. Sept. 25, 2020)………………………..15

*Salazar v. Islamic Rep. of Iran*,
370 F. Supp. 2d 105 (D.D.C. 2005)…………………………………………………………...16

*Sinoying Logistics Pte Ltd. v. Yi D Xin Trading Corp.*,
619 F.3d 207, 213 & n. 7 (2d Cir. 2010)…………………………………………………………11

*Stethem v. Islamic Rep. of Iran*,
201 F. Supp. 2d 78 (D.D.C. 2002)…………………………………………………………..15

**Statutes**

28 U.S.C. § 1367(a)…………………………………………………………………………12

28 U.S.C. § 2333………………………………………………………………………… 4

**Rules**

CPLR § 302(a)(2)…………………………………………………………………………..9

CPLR § 302(a)(3)(ii)…………………………………………………………………..…13

NY EPTL § 5-4.1……………………….…………………………………………………..14

NY EPTL § 11-3.2(b)……………………………………………………………………….17

NY EPTL §5-4.3(B)…………………………………………………………...….…17

## I.      Introduction

The eight (8) Plaintiffs seeking relief from the Court in this motion as *Bauer III* Plaintiffs are all immediate family members of 9/11 decedents who were naturalized U.S. citizens when they were killed in the September 11, 2001 terror attacks.  None of these eight Plaintiffs are U.S. citizens, and they are collectively referred to in this motion as "Non-US National Plaintiffs or *Bauer III* Plaintiffs."  Each of them are identified in Exhibit A to the Declaration of Dorothea M. Capone ("Capone Declaration") and in the Proposed Order attached as Exhibit B to the Capone Declaration.[1]  By and through their counsel, Baumeister & Samuels, P.C., the *Bauer III* Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for Partial Final Judgments against the Taliban.

On September 10, 2002, the *Bauer* Plaintiffs filed their first Complaint against the alleged participants, sponsors, co-conspirators, and aiders and abettors of the September 11, 2001 terror attacks, which included claims against defendants Al Qaeda Islamic Army (Al Qaeda), the Islamic Republic of Iran (Iran), and the Taliban, among others.  *See* 02-cv-7236 (S.D.N.Y.)(ECF No. 1).[2]  The *Bauer* Complaint was consolidated by the Court with *Ashton v. al Qaeda Islamic Army, et al.* on November 19, 2002 (*Ashton*, 02-cv-6977, ECF No. 5) and the *Ashton* Consolidated Master Complaint was amended several times.  *See,* 02-cv-6977 (S.D.N.Y.)(*See, e.g.,* ECF Nos. 2, 11, 32, 38, 111, 465, 1463).

---

[1] Each of the Non-US National *Bauer III* Plaintiffs identified on Exhibit A to the Capone Declaration and Exhibit B to the Proposed Order accompanying this motion seek judgments against the Taliban in this motion consistent with those that were previously awarded to them by this Court against the Islamic Republic of Iran.  (ECF  No. 3387).

[2] References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by ECF number; references to individual civil case docket entries are preceded by the case number.

Each of the *Bauer III* Plaintiffs obtained a default against the Taliban on May 12, 2006 (ECF No. 1797),[3] and each of them now seek partial final judgments as to their state law claims against the Taliban, and each seeks approval of the Proposed Order attached as Exhibit B to the Capone Declaration. The *Bauer III* Plaintiffs also seek damage determinations consistent with those granted to prior subsets of plaintiffs in this MDL which were based on state law.

## II.    Background

On July 29, 2022, our firm filed a motion seeking final partial judgments against the Taliban on behalf of estates and all immediate family members of those decedents who were killed in the 9/11 terror attacks. (ECF No. 8298). Other firms representing the families of the victims of the 9/11 attacks sought similar relief in July and August 2022. (*See, e.g.,* ECF Nos. 8274 (*Ashton*), 8335 (*Burlingame*), and 8363 (*Burlingame II*). On March 15, 2023, Magistrate Judge Netburn addressed the requests made by six sets of plaintiffs (including this firm's *Bauer* motion) and recommended that the Court grant the requested default judgments and award damages pursuant to the Anti-Terrorism Act ("ATA") to the *Bauer* Plaintiffs who were U.S. Nationals.[4] (ECF No. 8929, at 6). She also recommended that the Court deny, without prejudice, the relief sought by Non-U.S. National Plaintiffs, concluding that they were not legally able to

---

[3] The default entered against the Taliban in *Ashton* in 2006 also applies to Plaintiffs added later. (*See* ECF No. 11870, at 4, citing ECF No. 8929 (adopted by ECF No. 8973), ECF No. 1797, and ECF No. 5234 (October 28, 2019 Order establishing an MDL process by which plaintiffs added via notice of amendment "need not re-serve defendants who have already been served" and binding them to prior Court orders). On May 3, 2017, Magistrate Judge Netburn established procedures for filing Notices to Conform and Short Form Complaints. (ECF No. 3543). On July 10, 2018, she replaced this Order with ECF No. 4045 which revised the procedures for filings Notices to Conform, Short Form Complaints and added procedures for filing Notices to Amend. This Court granted the *Bauer* Plaintiffs' motion to add parties against the Taliban on November 7, 2022 (ECF No. 8721).
Although the 2006 default entered by the Court included the defendant Muhammad Omar ("Omar"), in her March 15, 2023 Report, Magistrate Judge Netburn recommended that the Court deny all claims against defendant Omar who is deceased. (ECF 8929 at 4). Judge Daniels agreed with this conclusion and dismissed all claims against Omar in his March 30, 2023 Order. (ECF No. 8972 at 5).
[4] 28 U.S.C. § 2333 *et. seq*.

rely on the ATA. (*Id.*, at 5-6).[5] Judge Daniels agreed with Magistrate Judge Netburn's conclusions, and on March 30, 2023 he granted default judgments against the Taliban to the U.S. National Plaintiffs and awarded treble damages against the Taliban as provided for under the ATA. (ECF No. 8973, at 9). In his Order, Judge Daniels invited the Non-U.S. National Plaintiffs to re-file a motion citing state laws that authorized a cause of action for these plaintiffs' claims and address the basis for jurisdiction, the allegations in the complaint and the scope of damages under the relevant law. (*Id.*, at 5-6).

On May 30, 2024, our firm filed a second motion (*Bauer II*) seeking identical relief for final partial judgments against the Taliban for a subset of its clients who are all U.S. Nationals, and whose claims were not included in the initial *Bauer* motion. (ECF No. 9843). On October 28, 2024, Judge Daniels granted judgments against the Taliban to the *Bauer II* Plaintiffs. (ECF No. 10468).

On August 27, 2025, counsel for the *Ashton* Plaintiffs filed a Memorandum of Law and a Declaration by Andrew J. Maloney, III, in compliance with Judge Daniels' March 30, 2023 Order seeking partial final damages judgments against the Taliban for a number of its Non-US National Plaintiffs based upon state law. (ECF No. 11173, 11179).[6]

Although the Court had previously established the Taliban's primary and aiding and abetting liability for the 9/11 terror attacks for U.S. Nationals (ECF No. 8973) its liability to Non-U.S. National Plaintiffs under state law was determined by this Court for the very first time

---

[5] Magistrate Judge Netburn issued her initial Report and Recommendation on March 14, 2023 (ECF No. 8925) before issuing an Amended Report and Recommendation on March 15, 2023 (ECF No. 8929) with updated exhibit numbers and a revised appendix.

[6] On January 29, 2026, Magistrate Judge Netburn requested that *Ashton* counsel provide the Court with additional information as to the applicable law to be applied where Non-US National victims of the terror attacks were killed on board the planes that crashed in Pennsylvania and Virginia. (ECF No. 11550 at 2). *Ashton* counsel responded to the Court's inquiry by letter brief on February 9, 2026. (ECF No. 11709). Since the *Bauer III* Plaintiffs' motion only includes claims brought by Non-U.S. Nationals whose immediate family members were killed at the World Trade Center in New York, no reference is made in this motion to this complicated choice of law issue.

5

in a Report & Recommendation issued by Magistrate Judge Netburn on March 12, 2026. (ECF No. 11870). After conducting a thorough analysis of the Court's subject matter and personal jurisdiction, as well as a complicated choice of law analysis, Magistrate Judge Netburn ultimately concluded that the Taliban are liable to Non-U.S. Nationals and she recommended that the Court grant partial final judgments with economic, conscious pain and suffering, solatium damages and pre-judgment interest consistent with those previously set by the Court in judgments issued against Iran. (*Id.*, at 18, 19-23, 25-28). On March 26, 2026, Judge Daniels adopted Magistrate Judge Netburn's Report in its entirety (ECF No. 11927, at 14) holding that it had supplemental jurisdiction over the Non-U.S. National Plaintiffs' claims (*Id.*, at 4-5). He found the Taliban liable to Non-U.S. National Plaintiffs who were killed or injured under New York law (*Id.*, at 11), and he determined the Non-U.S. National Plaintiffs referenced in the *Ashton* motion before him were entitled to receive damages for their intentional infliction of emotional distress claims (*Id.*, at 13) and also ordered prejudgment interest at the rate of 4.96 percent per annum compounded annually from the period of September 11, 2001 until the date of judgment (*Id.*, at 14).

For the reasons set forth below, and those contained in the Capone Declaration, as well as those presented in prior motions submitted to this Court, the *Bauer III* Plaintiffs now respectfully move this Court for an Order:

(1)    confirming that service of process in the above-captioned matter was properly made upon the Taliban;

(2)    determining that this Court has subject-matter jurisdiction over the Taliban under New York law for actions arising out of intentional murder and intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that targeted innocent civilians resulting in death, personal injury, and significant grief sustained by family members of those killed in the attacks at the World Trade Center;

(3)     determining that this Court possesses personal jurisdiction over the Taliban for the claims of the *Bauer III* Plaintiffs;

(4)     determining that the Taliban is liable to the *Bauer III* Plaintiffs under New York law;

(5)     determining that the *Bauer III* Plaintiffs are entitled to receive damage awards for their IIED claims;

(6)     awarding damage judgments to the *Bauer III* Plaintiffs identified in Exhibit A against the Taliban in the same amounts previously awarded by this Court to the *Bauer III* Plaintiffs as against co-tortfeasor and co-defendant Iran;

(7)     granting the *Bauer III* Plaintiffs permission to seek punitive damages at a later date;

(8)     awarding the *Bauer III* Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

(9)     granting the *Bauer III* Plaintiffs such other and further relief as this Court deems just and proper.

The awards set forth in the Proposed Order (Capone Declaration Exhibit B) represent the only direct recovery against the Taliban on behalf of the *Bauer III* Plaintiffs for their claims and will constitute partial final awards and judgments against the Taliban for the *Bauer III* Plaintiffs.

## A.     Applicable Orders

This motion is being submitted in accordance with various procedural orders entered by this Court, and the form of this motion and the relief requested herein are intended to comply with various orders of this Court, including the following:

a.     The Court's January 24, 2017 Order (ECF No. 3435) requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee, ECF No. 3433] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

b.     Magistrate Judge Maas' July 30, 2012 Report & Recommendation (ECF No. 2618) and this Court's October 3, 2012 Order (ECF No. 2623)

7

adopting the Report & Recommendation in its entirety concerning the award of damages;

c.  The Court's October 14, 2016 Order (ECF No. 3363) concerning the amounts of solatium damages awards;

d.  The Court's October 14, 2016 Order (ECF No. 3362) related to *Bauer, et al. v. Al Qaeda Islamic Army, et al.*, 02-CV-7236 (GBD)(SN) and *Ashton, et al. v. al Qaeda Islamic Army, et al.*, 02-CV-6977 (GBD)(SN), addressing the issues of punitive damages;

e.  The Court's October 28, 2019 Order (ECF No. 5234) setting forth updated procedural rules related to Notices to Conform, Short Form Complaints and Notices of Amendment as to the Kingdom of Saudi Arabia and Iran;

f.  The Court's April 11, 2022 Order (ECF No. 7870) setting forth specific procedures regarding seeking judgments for damages as to the Taliban;

g.  The Court's July 11, 2022 Order (ECF No. 8198) setting forth requirements for motions for default judgments against non-sovereign defendants; and

h.  The Court's June 25, 2025 Order modifying the tables and columns for damages' calculations with interest. (ECF No. 11036).

**B.    Related Cases**

As referenced above, on March 30, 2023 and October 28, 2024 this Court granted Orders of partial final judgment against the Taliban under the ATA for U.S. National Plaintiffs represented by Baumeister & Samuels (ECF Nos. 8973 and 10468), for the estates of the victims represented by this firm and those decedents' immediate family members who are referred to as the *Bauer* and *Bauer II* Plaintiffs.  These Orders directed that U.S. National Plaintiffs receive awards for conscious pain and suffering and economic damages for the estates of those killed in the 9/11 terror attacks, prejudgment interest at a rate of 4.96 percent per annum, compounded annually from September 11, 2001 until the date of the judgment (ECF No. 8973, at 9, 11 and ECF No. 10468, at 2) and these Orders awarded solatium damages to the 9/11 decedents' immediate family members in accordance with the determination made by this Court in its

October 3, 2012 Order (ECF No. 2623)(adopting Magistrate Frank Maas' July 30, 2012 Report (ECF No. 2618) which are presented in summary form below.

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

(ECF No. 8973, at 9, ECF No. 10468, at 2).

As detailed above, on March 12, 2026, Magistrate Judge Netburn issued a Report recommending that the Court grant a motion filed by certain *Ashton* Plaintiffs who are Non-U.S. Nationals seeking partial default judgments against the Taliban under state law (ECF No. 11870) which was adopted in its entirety by Judge Daniels on March 26, 2026 (ECF No. 11927). In this Order, Judge Daniels specifically held that the Court has supplemental jurisdiction over the Taliban for the claims of Non-U.S. Nationals, that the Taliban is liable to Non-U.S. Nationals under state law, and it awarded damages for Non-U.S. Nationals in accordance with the framework the Court has been utilizing for well over a decade.

III.    **This Court Has Already Determined It Has Subject Matter and Personal Jurisdiction Over the Taliban for Claims Brought by Non-U.S. Nationals**

In her March 15, 2023 Report, Magistrate Judge Netburn noted that the *Bauer* Plaintiffs (as part of the *Ashton* group of plaintiffs) had properly served the Taliban by publication and appropriately filed their verifications of this service in 2005.[7] (*See* ECF No. 709 and 735). The

---

[7] The Court authorized the *Ashton* Plaintiffs to serve the Taliban by publication. (ECF No. 445).

9

publication notices directed the Taliban to answer the original complaint filed in the multidistrict litigation. After effecting service on the Taliban, the *Ashton* Plaintiffs filed their 6th Amended Consolidated Master Complaint incorporating the same factual allegations asserting the bases for jurisdiction and liability against the Taliban. (ECF No. 1463). Several months later, having received no response or appearance from counsel representing the Taliban, the *Ashton/Bauer* Plaintiffs moved for a default (ECF No. 1782) which was granted by the Court on May 12, 2006 (ECF No. 1797). Judge Daniels adopted Magistrate Netburn's findings in his March 30, 2023 Order (ECF No. 8973) and he reiterated this conclusion in his March 26, 2026 Order granting partial final judgments against the Taliban for Non-U.S. Nationals. (ECF No. 11927).

The next step for the Court was to address the grounds for jurisdiction over the claims of Non-U.S. Nationals. Judge Daniels agreed with Magistrate Judge Netburn's recommendation and held that the Court has supplemental jurisdiction over the Non-U.S. National Plaintiffs' claims under state law, and specifically New York law for the claims arising out of the deaths of individuals or those injured at the World Trade Center. (ECF 11927, at 4).

Addressing the Court's supplemental jurisdiction over the Non-U.S. National Plaintiffs' claims, Judge Daniels cited that such jurisdiction "exists 'over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy' under Article III of the U.S. Constitution." (*Id.*, at 4, citing 28 U.S.C. § 1367(a)). He referred to his previous confirmation of the Court's subject matter jurisdiction against the Taliban in his 2023 Order under the ATA in which he awarded judgments against the Taliban to U.S. Nationals based upon the plaintiffs' allegations that the Taliban provided material support, training and safe harbor to Al Qaeda and the 9/11 hijackers with knowledge of the hijacker's planned attacks on U.S. targets, and this material support caused the deaths, physical injuries and

10

emotional harm to thousands of victims of the 9/11 terror attacks and their immediate family members.  (*See Ashton* Sixth Amended Complaint (ECF No. 1463 ¶¶ 10-158).  Applying that jurisdictional analysis to the claims of the Non-U.S. National Plaintiffs, Judge Daniels concluded that these plaintiffs' claims derive "from the same common nucleus of operative facts as the *Ashton* Plaintiffs' ATA claims because the claims 'substantially overlap[] or the federal claim necessarily brought the facts underlying the state claim before the court'".  (*Id.*, citing *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 335 (2d. Cir. 2006)(cleaned up)).  *See, also, City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)(claims form part of the same case or controversy when they derive from a common nucleus of operative fact), *see also, Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)(Court of Appeals routinely upheld the exercise of [supplemental] jurisdiction where the facts underlying the federal and state law claims substantially overlapped).

While Judge Daniels noted that there is an open question as to whether the Court must analyze personal jurisdiction over a non-appearing defendant since it is an element that may be "purposely waived or inadvertently forfeited" by a defendant (ECF No. 11870, at 8, citing *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 133 (2d Cir. 2011); *see also Sinoying Logistics Pte Ltd. v. Yi D Xin Trading Corp.*, 619 F.3d 207, 213 & n. 7 (2d Cir. 2010)(courts "may" analyze personal jurisdiction but leaving open the question whether they "must" do so before entering default judgment), he nevertheless adopted Magistrate Judge Netburn's conclusion that personal jurisdiction over the Taliban is available through pendent personal jurisdiction.  (*Id.*, at 4-5, and ECF No. 11870, at 9-11).

Magistrate Judge Netburn noted two options through which the Court might exercise personal jurisdiction over the Taliban analyzing (1) whether there is pendant personal jurisdiction

11

over the Non-U.S. National Plaintiffs' state law claims against the Taliban; and (2) whether plaintiffs' allegations offer a "prima facie" case that the Taliban are subject to the Court's jurisdiction. (*Id.*, at 9-10). Under the first analysis, Magistrate Judge Netburn found that a court may look to whether there is a federal statute in place that authorizes nationwide service of process and, if so, a court must then determine whether the federal and state claims derive from a common nucleus of operative fact. If so, the district court "may assert personal jurisdiction over the parties to the related state law claims, even if personal jurisdiction is not otherwise available." (*Id.*, at 9, citing *Charles Schwab Corp. v. Bank of Am. Corp.,* 883 F.3d 68, 88 (2d Cir. 2018)(quoting *IUE AFL-CIO Pension Fund v. Herrman*, 9 F.3d 1049, 1056 (2d Cir. 1993)).

Magistrate Judge Netburn found that the ATA specifically authorized nationwide service of process for plaintiffs' claims against the Taliban (*Id.*, at 9) and concluded that the Non-U.S. National Plaintiffs' state law claims "derive from the same operative facts" as the U.S. National Plaintiffs' claims based upon the ATA. (*Id.*, citing *Fed. Trade Comm'n v. Quincy Bioscience Holding Co.*, 389 F. Supp. 3d 211, 219 (S.D.N.Y. 2019)(concluding that plaintiffs' federal and New York state law claims derived from the same set of operative facts, and the district court therefore had personal jurisdiction over the defendants for both the federal and state claims).

Magistrate Judge Netburn also undertook a review of whether the Non-U.S. National Plaintiffs offer a "prima facie" case such that the Taliban may be subject to the Court's jurisdiction. (*Id.*, at 10). The *Ashton* Sixth Amended Complaint (ECF No. 1463 ¶10) describes the Taliban is a non-sovereign unincorporated association so it will be subject to the Court's jurisdiction if (1) it was properly served; (2) there is a statutory basis for jurisdiction; and (3) the exercise of jurisdiction is consistent with due process. (*Id.*, at 10, citing *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F. 4th 56, 68-69 (2d Cir. 2022))(cleaned up).

12

Magistrate Judge Netburn concluded that the Non-U.S. National Plaintiffs' allegations satisfied all three prongs. She noted that the first prong was easily satisfied when the Sixth Amended Complaint was served pursuant to this Court's Orders. (*Id.*, at 10). In the *Ashton* Plaintiffs' recent motion for partial final judgments against the Taliban for Non-U.S. Nationals (ECF No. 11173) *Ashton* counsel pointed out to the Court that the Taliban's "pervasive intentional and material support for, and conspiracy with Al Qaeda, an organization committed to attacking U.S. interests, including attacks on U.S. soil" satisfies two separate provisions of New York's long arm statute. (ECF No. 11173, at 10-11). It is indisputable that the Taliban "was a witting participant in Al Qaeda's attack on the United States" on September 11, 2001 (ECF No. 11173, at 10), and part of a worldwide terror conspiracy against this country which easily satisfies a jurisdictional finding against the Taliban under New York's long arm statute.

Magistrate Judge Netburn noted this satisfaction of the second prong of the Court's jurisdictional analysis in her Report which was adopted in its entirety by Judge Daniels. (ECF No. 11173, at 9-12; ECF No. 11870, at 11; N.Y. CPLR § 302(a)(2) (personal jurisdiction exists over a person who, personally or through an agent, "commits a tortious act within the state); and 302(a)(3)(ii) (personal jurisdiction exists over a person who, personally or through an agent, "commits a tortious act without the state causing injury to person or property within the state" and "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce); *see also Merck Eprova AG v. Gnosis S.p.A.*, No. 07 CIV 5898 (RJS), 2008 WL 5336587, at *3 (S.D.N.Y. Dec. 12, 2008). Finally, Magistrate Judge Netburn found that the last prong of the jurisdictional test was satisfied because the Court's exercise of jurisdiction over the Taliban is consistent with due process under the Fourteenth Amendment because it is "a primary participant in intentional wrongdoing –

13

albeit extraterritorially – expressly directed at [the] forum." (*Id*., at 11, citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003)(citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)); (ECF No. 8911 at 17 & n.9 (explaining due process analysis under state long-arm statutes which "considers only contacts with the *forum*")). (*Id.*).

The *Bauer III* Plaintiffs respectfully ask this Court to extend its subject matter and personal jurisdictional findings made to the *Ashton* Non-U.S. National Plaintiffs on March 26, 2026 to their claims through this motion.

**IV.     The Taliban is liable to the *Bauer III* Non-U.S. National Plaintiffs under New York law**.

As referenced throughout this motion, this Court has already determined that the Taliban is liable to Non-U.S. National Plaintiffs under state law. (ECF No. 11927). Since the *Bauer III* Plaintiffs are Non-U.S. National siblings and parents of U.S. Nationals who perished at the World Trade Center site, the Court's March 26, 2026 determination that New York law applies to the claims of victims and their family members killed or injured in New York is equally applicable here.

In its analysis of the Taliban's liability to Non-U.S. National Plaintiffs, Magistrate Judge Netburn looked to whether there is "a sufficient basis in the pleadings" or an assessment of plaintiffs' factual allegations to establish liability under state law. (ECF No. 11870, at 11, citing *DiMarco Constructors, LLC v. Sinacola, Inc.*, 407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006)). In assessing a Non-U.S. Plaintiff's allegations, the Court must (1) conduct a choice of law analysis; and (2) determine whether the Taliban are liable under the governing law for each type of alleged tort. (*Id.*, at 12, ECF No. 9931 at 2-6 (evaluating state law claims by Non-U.S. Nationals against Iran). Following a detailed choice of law analysis presented by multiple *Ashton* Non-U.S. National Plaintiffs, Magistrate Judge Netburn concluded that New York law is applicable to the

14

Non-U.S. National Plaintiffs' claims related to New York decedents. (*Id.*, at 18). These claims include claims for wrongful death (N.Y. EPTL § 5-4.1), survival or pain and suffering of the decedent prior to death (N.Y. EPTL § 11-3.2(b)), and the tort of intentional infliction of emotional distress (IIED) for which an individual may recover non-economic damages including, but not limited to, loss of consortium, solarium, society, companionship, care, comfort, and love suffered by the decedent's immediate family members. (*See* ECF No. 1463 ¶ 466 (*Ashton* Sixth Amended Complaint)). Since the *Bauer III* Plaintiffs are all siblings or parents of victims killed at the World Trade Center, they limit the relief sought in this motion to awards for IIED damages.

To reach her findings as to whether the Taliban are liable to Non-U.S. Nationals for their IIED claims, Magistrate Judge Netburn considered the allegations against the Taliban in the *Ashton* Plaintiffs Sixth Amended Complaint. (ECF No. 11870, at 21-23). Before concluding that the Taliban are liable, Magistrate Judge Netburn focused her inquiry on the four elements of the New York IIED tort -- (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. (*Id.*, at 21, citing *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)). She noted that liability for IIED may extend to those who aid and abet the primary tortfeasor (*Id.*, citing *Rich v. Fox News Network, LLC*, No. 18-cv-2223 (GBD), 2020 WL 5768430, at *5-6 (S.D.N.Y. Sept. 25, 2020)), and it may also extend to conduct that "causes injury to a third person, thereby intentionally or recklessly causing severe emotional distress to a member of such person's family who is present at the time." (*Id.*, citing *Maney v. Maloney*, 101 A.D.2d 403, 404 (3d Dep't 1984)). Observing that courts have addressed these requirements in other terrorist attacks (*Id.*, at 22, citing *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002)) and dispensed with the presence requirement for third-party

15

IIED claims because "a terrorist attack – by its nature – is directed not only at the victims but also at the victims' families (*Id.*, ECF No. 3363 at 3 (quoting *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n. 12 (D.D.C. 2005)), Magistrate Judge Netburn found that while the immediate family members of the victims were not present at the World Trade Center, they, along with the whole world watched and were "virtually present" and she concluded that is enough to state an IIED claim arising out of the 9/11 terror attacks under New York law.  (*Id.*, citing *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 108 (D.D.C. 2003)(concluding that plaintiffs had stated an IIED claim under NY law against charity that aided and abetted the 9/11 hijackers)).

Judge Daniels adopted Magistrate Judge Netburn's findings as to the Taliban's liability to Non-U.S. Nationals (ECF No. 11927), including the claims of NY decedents' immediate family member for IIED claims.  (*Id.*, at 10).  Accordingly, the *Bauer III* Plaintiffs respectfully ask that the Court apply New York law to their IIED claims following the murder of their siblings and their son at the World Trade Center on September 11, 2001 and hold the Taliban liable for their losses.

## V.    The *Bauer III* Plaintiffs Are Entitled to Receive Damage Awards for their IIED Claims

Recently, this Court awarded damages to Non-U.S. National Plaintiffs based upon their state law claims.  (ECF No. 11927, at 12-13).  The *Bauer III*  Plaintiffs seek default judgment awards for their IIED claims based upon the damages framework previously established by this Court in the 9/11 litigation.  In Judge Daniels' March 26, 2026 Order, he held that IIED claims are "nearly indistinguishable from" solatium claims (ECF No. 11927, at 13) and he awarded damages pursuant to the now-familiar framework which awards $12,500,000 for spouses,

$8,500,000 for children, $8,500,000 for parents, and $4,250,000 for siblings of the 9/11

decedents.  (*Id.*, citing ECF 9931, at 6 (Order granting partial final judgments for Non-U.S.

Nationals against Iran pursuant to state law); *see also,* ECF No. 2623 (2012 Order establishing

the solatium damage framework).  These same amounts were awarded to *Bauer* Plaintiffs (who

are U.S. Nationals) against the Taliban in 2023 (ECF No. 8973), and the Court awarded each of

the *Bauer III* Plaintiffs before it in this motion these same solatium damage awards against Iran.

(ECF No. 3387).

The *Bauer III* Plaintiffs identified in Exhibit A to the Capone Declaration are the

immediate family members of two decedents who perished at the World Trade Center.  They

respectfully request that this Court approve solatium damage awards to each of them based upon

their relationship with each of their decedents, also set out in Exhibit A to the Capone

Declaration.

**VI.      The *Bauer III* Plaintiffs are Entitled to Punitive Damages and Prejudgment Interest**

While the *Bauer III* Plaintiffs note that New York law permits the recovery of punitive

damages based on their state law claims (N.Y. EPTL §§ 5-4.3(B), 11-3.2(b)), in light of the

Court's decision in related litigation to defer determination of punitive damage issues until a later

stage of the litigation, *Bauer III* Plaintiffs herein request permission to address the issue of

punitive damages at a later date.  They note that the Court gave them similar relief in the default

judgment awards issued by the Court related to their claims against Iran.  (*See*, e.g., ECF No.

3387 (Judge Daniels' October 31, 2016 Order in *Bauer II* granting partial final judgments against

Iran and authorizing plaintiffs to make an application for punitive damages at a later date

consistent with any future rulings of the Court)).

17

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). Recently, this Court awarded prejudgment interest at a rate of 4.96%, compounded annually, from September 11, 2001 until the date of judgment to the *Ashton* Non-U.S. Nationals against the Taliban. (ECF No. 11927, at 14). The *Bauer III* Plaintiffs respectfully request that the Court award them prejudgment interest on their awards at the same rate.

## VII.    Conclusion

For the reasons set forth herein, the statements contained in the Capone Declaration, as well as those set forth in prior motions for damages, the *Bauer III* Plaintiffs respectfully request that the Court grant an Order:

(1)    confirming that service of process in the above-captioned matter was properly made upon the Taliban;

(2)    determining that this Court has subject-matter jurisdiction over the Taliban under New York law for actions arising out of intentional murder and intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that targeted innocent civilians resulting in death, personal injury, and significant grief sustained by family members of those killed in the attacks at the World Trade Center;

(3)    determining that this Court possesses personal jurisdiction over the Taliban for the claims of the *Bauer III* Plaintiffs;

(4)    determining that the Taliban is liable to the *Bauer III* Plaintiffs under New York law;

(5)    determining that the *Bauer III* Plaintiffs are entitled to receive damage awards for their IIED claims;

(6)    awarding damages judgments to the *Bauer III* Plaintiffs identified in Exhibit A against the Taliban in the same amounts previously awarded by this Court to the *Bauer III* Plaintiffs as against co-tortfeasor and co-defendant Iran;

(7)    granting *Bauer III* Plaintiffs permission to seek punitive damages at a later date;

(8)     awarding *Bauer III* Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

(9)     Granting Plaintiffs such other and further relief as this honorable Court deems just and proper.

Dated: New York, New York
         June 15, 2026

Respectfully submitted,

BAUMEISTER & SAMUELS, P.C.
By: /s/ *Dorothea M. Capone*
Dorothea M. Capone, Esq.
Michel F. Baumeister, Esq.
200 Vesey Street, 24th Floor
New York, New York 10281
Tel: (212) 363-1200
**Attorneys for *Bauer III* Plaintiffs**

19