**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In Re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)


**VIA ECF**

June 29, 2026

The Honorable Sarah Netburn
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

We write on behalf of the Plaintiffs pursuing claims against defendant the Republic of the Sudan ("Sudan") concerning the Court's January 8, 2026 Order (ECF No. 11452) establishing the schedule for fact discovery. In light of recent discussions with the Department of Justice ("DOJ") concerning the Agencies' efforts to complete their reviews and productions of records responsive to Plaintiffs' subpoenas, the Court's anticipated decisions on the parties' pending motions to compel the CIA to comply with their subpoenas, and other related matters, we respectfully submit that good cause exists to extend the discovery deadlines set forth in the Order.

1.      **<u>The Discovery Deadlines Should Be Extended To Provide The Agencies With Additional Time To Substantially Complete Their Document Productions</u>**

From the outset of discovery in these proceedings, Plaintiffs have sought to obtain contemporaneous Sudanese government records bearing on Sudan's cooperative relationship with Osama bin Laden and al Qaeda. Sudan has, however, conceded that it is unable to produce responsive documents because Sudan's government repositories have been destroyed during the ongoing civil war in that country and there are no electronic or archived records available.

As Plaintiffs previously summarized for the Court at ECF No. 10967, Sudan's first production on May 2, 2025 consisted of 486 disorderly-produced pages of documents that were derived substantially from the public domain (with multiple duplicates), in addition to many documents Sudan had received from plaintiffs in other terrorism cases. Sudan's second (and last) production of an additional 7,333 pages on May 23, 2025, were again culled largely from public domain documents and included, *inter alia*: media reports, pleadings and exhibits from other terrorism cases, U.S. diplomatic cables, multiple versions of the U.S. State Department's annual publication of "Patterns of Global Terrorism," U.N. Resolutions, and more than 4,000 pages of trial transcripts from terrorism cases. Many of these documents were already cited in Plaintiffs' Consolidated Amended Complaint. More importantly, Sudan's productions were devoid of any meaningful records originating from its own government files.

When Plaintiffs raised spoliation concerns at the May 30, 2025 hearing, the Court emphasized that, before assessing spoliation, the Court first needed to consider whether the complete destruction of Sudan's documents would prejudice Plaintiffs or whether Plaintiffs might

The Honorable Sarah Netburn
June 29, 2026
Page 2

_____

obtain substitute evidence from alternative sources, including the United States government. *See* Hr'g Tr. at 6:4-19 (reasoning that Plaintiffs must first pursue discovery from the U.S. government for the Court to evaluate prejudice, otherwise the Court would be "left wondering … is there really prejudice?"). The Court further indicated that it "ma[d]e sense" to the Court "to wait until you've seen what the government can produce because those documents may be relevant and helpful," *id.* at 35:1-5, and directed Plaintiffs to make sure "every stone has been turned over," *id.* at 37:23, including pursuing documents from "nonparties or organizations or charitable groups or banks that might have appropriate discovery that would be relevant." *Id.* at 36:12-17.

Against that backdrop, the parties submitted a proposed schedule for fact discovery with a document discovery deadline of June 30, 2026, which this Court endorsed, which contemplated that the Agencies (CIA, FBI, State) would have substantially completed their document productions in advance of that deadline. *See* Order at ECF No. 11452. However, recent discussions with the DOJ make clear that the Agencies are unable to complete their productions by the June 30 deadline and will need a number of months to do so.

First, during a recent meet-and-confer with Plaintiffs on June 22, 2026, DOJ confirmed that State is presently reviewing approximately 200 documents for production, 100 of which are the subject of consultations with other U.S. government agencies. State is not expected to complete its review and production until the end of August. *See* ECF No. 12153 at 1.

Second, DOJ contends that the FBI will complete its review of responsive records and produce them to the parties by the end of June. However, DOJ simultaneously acknowledges that it needs additional time to respond to Plaintiffs' inquiries concerning a number of missing records that are responsive to Plaintiffs' subpoena. *Id.* On May 27, 2026, Plaintiffs submitted a letter to the FBI detailing several categories of missing documents and other omissions from the FBI's productions, and asked the FBI to confirm that it is searching for and collecting those important materials. *See* Attachment A. During the recent meet-and-confer, DOJ advised that the FBI is reviewing Plaintiffs' letter and will be conducting searches for the missing documents, but cannot presently predict when those productions will be completed. *See* ECF No. 12153 at 1.

Third, the parties await the Court's decisions on (1) Plaintiffs' motion to compel the CIA to comply with Plaintiffs' March 18, 2025 subpoena and produce responsive records (ECF Nos. 11796-11799, 11983),[1] and (2) Sudan's motion to compel the CIA to comply with Sudan's subpoena served on the CIA on April 25, 2025 (ECF Nos. 11854-11855, 11995).

Given the important nature of the evidence presently under review by the Agencies, and in the absence of any meaningful production of evidence from Sudan itself, Plaintiffs respectfully submit that good cause exists to extend the present fact discovery deadlines to allow the Agencies to substantially complete their reviews and productions of the requested records, and further provide Plaintiffs with the opportunity to review this evidence before proceeding with depositions. Many of the records to be produced concern U.S. government investigations of the Sudanese government's relationship and support for Osama bin Laden and al Qaeda. Those records will bear

_____

[1] Plaintiffs requested oral argument with respect to their motion to compel. *See* ECF No. 12024.

The Honorable Sarah Netburn
June 29, 2026
Page 3

_____

directly on the Plaintiffs' ability to both identify potential key witnesses (former and current Sudanese government officials) who possess personal knowledge and information relevant to Plaintiffs' claims, and conduct those depositions in an effective manner. As Plaintiffs previously expressed, it will be impracticable to move forward with depositions "without a very fulsome set of government records." Hr'g Tr. at 35:13-17. This evidence is essential to ensuring that Plaintiffs understand the witnesses' scope of knowledge and have access to documentary evidence that is likely to be essential to testing the completeness and accuracy of witnesses' testimony.

**2.      U.S. Bank Subpoenas**

As noted above, the Court specifically encouraged Plaintiffs to pursue documents from nonparties, charitable groups, and banks that might have relevant discovery. *Supra* at 2. Consistent with that directive, Plaintiffs have scoured the Agencies' productions to identify third parties that may be in possession of relevant information and subject to the Court's subpoena power. As a result of those efforts, Plaintiffs served subpoenas at the start of June on several U.S. banks that had correspondent banking relationships with Sudanese banks (Al Shamal Islamic Bank, Faisal Islamic Bank-Sudan, Tadamon Islamic Bank, and others) during the relevant time periods. Plaintiffs served the bank subpoenas in furtherance of the Court's admonition to take steps to ameliorate prejudice from the destruction of Sudan's documents.

Negotiations between the U.S. banks and Plaintiffs' counsel are ongoing, but early dialogue with the banks has indicated that the banks will need several months to search for, collect, and produce documents and that the additional time will allow Plaintiffs and the banks to address certain objections raised by the banks. Plaintiffs respectfully submit that an extension of the discovery deadlines will benefit the U.S. banks' efforts to conduct their searches for relevant documentation and allow time for resolution of disputed objections.

**3.      Proposed Modifications to the Discovery Schedule**

For the foregoing reasons, Plaintiffs are proposing a modified discovery schedule that contemplates that all of the Agencies will substantially complete their document productions by September 30, 2026, with an additional thirty days for Plaintiffs to pursue follow-up inquiries, requests, and/or motion practice if needed, based on their review of the Agencies' productions. Accordingly, Plaintiffs propose that the deadline for document discovery should be extended from June 30, 2026 to October 30, 2026, and respectfully ask the Court to encourage the Agencies to meet that deadline. Plaintiffs further propose that the deadline for fact depositions should be extended from October 15, 2026 to February 15, 2027.

Plaintiffs have conferred with Sudan's counsel and "Sudan does not oppose Plaintiffs' request for an extension."

The DOJ has authorized Plaintiffs to represent to the Court that the U.S. government "supports [Plaintiffs'] application but maintains its position that the fact discovery deadline applies to the parties and it is not a party to this case."

The Honorable Sarah Netburn
June 29, 2026
Page 4

_____

Respectfully submitted,

COZEN O'CONNOR                          MOTLEY RICE LLC

By:   /s/  Sean P. Carter                By:   /s/  Robert T. Haefele
Sean P. Carter                          Robert T. Haefele
Cozen O'Connor                          Motley Rice LLC
One Liberty Place                       28 Bridgeside Boulevard
1650 Market Street, Suite 2800          Mount Pleasant, SC 29465
Philadelphia, Pennsylvania 19103        Tel: (843) 216-9184
Tel: (215) 665-2105                     Email: rhaefele@motleyrice.com
Email: scarter1@cozen.com

*On behalf of the MDL 1570 Plaintiffs' Exec.*   *On behalf of the MDL 1570 Plaintiffs' Exec.*
*Committees*                                    *Committees*


KREINDLER & KREINDLER LLP

By:  /s/  Steven R. Pounian
Steven R. Pounian
Kreindler & Kreindler LLP
750 Third Avenue
New York, New York 10017
Tel: (212) 687-8181
Email: spounian@kreindler.com

*On behalf of the Ashton Plaintiffs*



cc:     The Honorable George B. Daniels (via ECF)
        All MDL Counsel of Record (via ECF)



LEGAL\116252693\1

# Attachment A

# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

**VIA EMAIL**

May 27, 2026

Jean-David Barnea, Assistant U.S. Attorney
Jennifer Jude, Assistant U.S. Attorney
Office of the United States Attorney for the
Southern District of New York
86 Chambers Street
New York, NY 10007

>      RE:     *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear J.D. and Jen:

In anticipation of the June 30, 2026 deadline set by the Court for the FBI to complete its production in response to Plaintiffs' subpoena, we write to identify several issues and categories of relevant documentation that have not yet been addressed by the FBI's productions to date. We are hopeful that the FBI's forthcoming production(s) will resolve these issues, and it is in furtherance of that outcome that we are conveying this information. As always, Plaintiffs remain available to confer regarding all issues relating to the FBI's response to our March 21, 2025 subpoena.

1.      **Subpoena Request No. 1 – Sudanese Intelligence Files Concerning Osama Bin Ladin and Al Qaeda Provided to the FBI**

During the meet and confer process last summer, the FBI agreed to search for and produce all Sudanese intelligence files and records concerning Osama bin Laden and al Qaeda that were collected and provided to the FBI by the government of Sudan. *See* Subpoena Request No. 1. One of the reports produced in the FBI's Tranche No. 3 describes extensive post-9/11 cooperation between the FBI and the Sudanese Intelligence Bureau ("SIB") concerning the investigation and collection of information and records relating to Osama bin Laden and al Qaeda operatives, bin Laden and al Qaeda-controlled companies operating in Sudan (*e.g.*, Wadi al Aqiq, Khartoum Tannery), purported charities in Sudan (*e.g.*, Al Haramain Islamic Foundation, Third World Relief Agency), and other individuals and organizations in Sudan associated with bin Laden and al Qaeda. *See* FBI 14373-14381 (September 29, 2001 FBI Report, *This EC Contains All Investigation to Date in Khartoum, Sudan, PENTTBOMB, Major Case 182*). As detailed in that report, the SIB agreed to conduct investigations and hand over specific categories of records and information at the request of the FBI, including but not limited to the following:

•  Financial records (bank accounts and statements, ledgers, tax records, money transfer/transactions, property or real estate records, vehicle records) (FBI 14374, 14376, 14378);

Office of the United States Attorney
May 27, 2026
Page | 2

• Immigration/border crossing information (FBI 14374, 14375, 14379, 14380);

• Passports for each individual identified in the report, to include any used under an alias (FBI 14374);[1]

• Personal telephone and address books (FBI 14374);

• Criminal histories and information pertaining to their affiliation with extremist or terrorist groups (FBI 14374);

• Lists of employees/owners, managers, and consultants for any company or business enterprise with whom Osama bin Laden and others were associated with since their arrival in Sudan (FBI 14375);

• Computers (FBI 14375);

• Telephone numbers and toll records for individuals and companies (*passim*);[2] and

• Files and documents SIB may possess for Osama bin Laden, al Qaeda, Islamic Jihad, and Islamic Gamat, and the organizations' members (FBI 14378).

With the exception of a few redacted toll record reports,[3] the SIB's official responses to the FBI investigation requests, and all materials produced by the SIB, do not appear in the FBI's productions to date. Please confirm the FBI is searching for and collecting this information responsive to Subpoena Request No. 1, and provide a date for its production.

2.  **Subpoena Request No. 2 – FBI Interviews of Al Qaeda Members and Associated Individuals**

The FBI also agreed during the meet and confer process to search for and produce all records concerning FBI interviews of members of al Qaeda and associated individuals. *See* Subpoena Request No. 2. Our review of the FBI's productions has identified interviews conducted both before and after the 9/11 attacks that appear to be missing.

• In a post-9/11 report detailing the FBI's interview of al Qaeda member Mohammed Loay Bayazid (a/k/a Abu Rida al Suri), Bazayid "identifies the accountant who did the accounting work for all of Usama Bin Laden's companies while in Sudan" and "suggested the FBI talk with the accountant and obtain records pertaining to UBL's finances from him." *See* FBI Tranche No. 4, PDF Pages 49-54 at 50 – FBI Report, *Situation Report at Khartoum, October 15-20, 2001* (October 20, 2001). FBI interviews of any such individuals identified as bin Laden's accountant—including but not limited to Sheikh Said

---

[1] The FBI indicates that the SIB produced passports for Mohammed Lu'ay Bayazid (a/k/a Abu Rida al Suri), Midhat Abd al Salam Sha'bana, Abu Burbani, and Marwan Taha Ahmad. *See* FBI 14374. All passports in the possession of the FBI are responsive to Subpoena Request No. 9.
[2] *See also* FBI Tranche No. 4, PDF Pages 49-54 – FBI Report, *Situation Report at Khartoum, October 15-20, 2001* (October 20, 2001) (indicating that the SIB produced other toll records to the FBI).
[3] *See* FBI 14268-14272 and Tranche 4 PDF pp. 3-10.

Office of the United States Attorney
May 27, 2026
Page | 3

(a/k/a Mustafa), "the accountant for Al Qaeda;"[4] Abu Salama, "an accountant who worked for Bin Ladin's companies in Saudi Arabia" and was brought to Sudan;[5] Khalid Walid, "the accountant to Bin Laden's companies in the early nineties;"[6] Abu Hamam, "an accountant for the companies;[7] and "Bin Ladin's accountant, a Tunisian man,"[8]—should be promptly produced.

• The FBI also identifies several individuals it interviewed in Sudan with cooperation from the SIB, including Salman Adam Salman Huballah, Midhat Shabana, Muhammad Rashid Ba'bud, and Hussein Ubud Mohammad Ba'bud. *See id.* at PDF Pages 51-54. Although the FBI clearly indicates that reports detailing those interviews were generated (*e.g.*, "the results of the interview will be forwarded under separate cover"), those documents have so far not appeared in the FBI's productions.

• At the conclusion of the FBI's interview of Ali Abouelsaud Mohamed, Mohamed "stated he wanted to discuss the following topics *in a separate interview*: Training camps in Sudan; training objectives; the Sudanese government's relationship with Bin Ladin; the Shura Council; Al Jihad; his role in Al Qaeda, and money/bank accounts associated with Zawahiri." *See* FBI 14044-14070 at 14070 – FBI Report, *Interview of Ali Abouelsaud Mohamed* (September 13, 1999) (emphasis added). Searches of the FBI's productions have not identified any separate interviews of Mohamed or other records relating to same. Plaintiffs respectfully submit that Mohamed's interview(s) concerning the topics described at FBI 14070 should be located and produced.

• At the outset of the FBI report concerning the August 18, 2000 interview of a potential cooperating witness ("Subject"), it states that "the Subject remembered additional information on topics *discussed on the previous day*." *See* FBI 14141-14170 at 14141– FBI 302, *"Subject" Potential Cooperating Witness* (August 28, 2000) (emphasis added); *see also id.* (stating that interviewing officials "asked a series of questions, seeking to clarify information the Subject had *previously provided*") (emphasis added). Searches of the FBI's productions have not identified any interview of the Subject on "the previous day," which would have taken place on August 17, 2000.

Please confirm the FBI is searching for and collecting these interviews responsive to Subpoena Request No. 2, and provide a date for their production.

3.    **Subpoena Request No. 4 – Videotaped Interviews of Jamal al Fadl**

FBI's Tranche No. 4 includes transcripts for six videotaped interviews of Jamal al Fadl,[9] but reporting indicates there were seventeen separate teleconferences between U.S. prosecutors,

---

[4] *See* FBI 14083, 14099, 14105.
[5] *See* FBI 14161.
[6] *See* FBI 14236, 14250.
[7] *See* FBI 14243.
[8] *See* FBI 14233.
[9] *See* Tranche No. 4 PDF pages 55-269 (Videotape #1), 270-535 (Videotape #2), 536-778 (Videotape #3), 779-888 (Videotape #4), 889-1168 (Videotape #5), 1169-1236 (Videotape #6).

Office of the United States Attorney
May 27, 2026
Page | 4

FBI agents, and Fadl. *See* Phil Hirschkorn, *Former Bin Laden Aide Seeks New Trial*, CNN (February 18, 2005) ("Defense attorneys are seeking a retrial because of the government's failure to disclose 28 hours of tape of 17 teleconferences between prosecutors and FBI agents and Al-Fadl. Twelve occurred before or during the trial."). Please confirm that the FBI will be producing *all* videotaped interviews of Fadl prior to the document discovery deadline. Plaintiffs reiterate their position that all videos and audio recordings of the interviews, not just the transcripts, are highly relevant and must be produced.

With respect to the six transcripts already produced, there are hundreds of redactions and blank pages throughout each of the transcripts (now more than 20 years old), without adequate explanation from the FBI. For example, in the Videotape #1 transcript, 88 of the 215 pages have large black magic marker redactions, and another 24 pages are simply blank where the text of the transcript has been removed. *See e.g.*, deleted text at p. 28 of Videotape #1 transcript; *see also* entire pages of deleted text at pp. 29-71 of Videotape #6 transcript. These vast redactions cannot be justified at this juncture. Please advise whether the FBI will revisit these extensive redactions.

### 4.     Subpoena Request No. 5 – Saidi Madani al Tayyib (a/k/a Abu Fadil, Abu Faid al Makki)

FBI's Tranche No. 2 includes a FBI report concerning "top Al-Qa'ida finance officer," Saidi Madani al Tayyib, and provides details relating to Tayyib's early years in al Qaeda, his rise in the terror organization's leadership hierarchy, his control over bin Laden's money and accounts in Sudan, and his involvement in al Qaeda activities in Sudan. *See* FBI 14071-14076, *Information Regarding Sidi Al-Madani Al-Tayyib Collected in the Course of FBI Investigations*, April 16, 2004. The FBI explicitly states that "[a]ll information contained within the report was collected through interviews of FBI sources and Cooperating Witnesses." *See* FBI 14071. Plaintiffs respectfully submit that all such interviews providing the foundational support for the April 16, 2004 report are highly relevant and responsive to Subpoena Request No. 5 and should be produced, including all FBI 302s ("FD-302"), interview reports or summaries, intelligence reports, or other records relating to same. Please confirm the FBI is searching for and collecting these interviews responsive to Subpoena Request No. 5, and provide a date for their production.

### 5.     Subpoena Request Nos. 7 and 8 – Al Shamal Islamic Bank

According to FBI reporting, soon after the 9/11 attacks, Major Tariq al Shukri from the SIB "reiterated unequivocally that the Government of Sudan welcomed FBI experts to travel to Sudan to examine the records of the Al [Shamal] Islamic Bank." *See* FBI Tranche No. 4, PDF Pages 49-54 at 53 – FBI Report, *Situation Report at Khartoum, October 15-20, 2001* (October 20, 2001). Plaintiffs respectfully submit that all reports and documents in the possession of the FBI concerning any examination, inspection, or review of Al Shamal Islamic Bank conducted by the FBI, including copies of the underlying banking records themselves, are highly relevant and responsive to Subpoena Request Nos. 7 and 8, and should be produced to Plaintiffs. Please confirm that the FBI is searching for those documents for production and provide a date for their production.

Office of the United States Attorney
May 27, 2026
Page | 5

6.    **Subpoena Request No. 14 – FBI Reports Cited in the Endnotes to the 9/11 Commission Final Report**

Despite our best efforts to compare the FBI interview reports identified in Request No. 14 with the FBI 302 reports and other records in the FBI's productions to date, we are having difficulty determining which interviews have been produced and which have not, and welcome any clarification the FBI can provide. Please see our comments below.

a)  FBI report of investigation, interview of Jamal al Fadl, November 10, 1996.

• We have not identified a November 10, 1996 interview in the production. Please confirm this report has not been produced, and provide a date for its production.

b)  FBI reports of investigation, interview of [Jamal al] Fadl; November 12, 1996.

• There is a FBI 302 at FBI 14011-14020 concerning interviews of Fadl conducted on November 6-8, 1998. The document also identifies a date of transcription as November 12, 1998. Please clarify whether we have the correct November 12, 1998 interview cited by the 9/11 Commission.

c)  FBI reports of investigation, interview of [Jamal al] Fadl; December 21, 1998.

• We have not identified a December 21, 1998 interview in the production. Please confirm this report has not been produced, and provide a date for its production.

d)  FBI report of investigation, interview of [Jamal al] Fadl, February 4, 1998.

• There is a FBI 302 at FBI 13955-13968 concerning interviews of Fadl conducted on January 8, January 14, January 23, and February 20, 1998. The document also identifies a date of transcription as February 4, 1998. Please clarify whether we have the correct February 4, 1998 interview cited by the 9/11 Commission.

e)  FBI reports investigation, interview of confidential source, September 16, 1999.

• There is a FBI report at FBI 14044-14070 concerning an interview of Ali Abouelsaud Mohamed conducted on September 14, 1999. The document identifies two additional dates on the first page: September 13, 1999 and September 16, 1999. Please clarify whether we have the correct September 16, 1999 interview cited by the 9/11 Commission.

f)  FBI reports of investigation, interview of [Jamal al] Fadl, February 13, 1998.

• We have not identified a February 13, 1998 interview in the production. Please confirm this report has not been produced, and provide a date for its production.

g)  FBI report of investigation, interview of [Jamal al] Fadl, November 4, 1997.

Office of the United States Attorney
May 27, 2026
Page | 6

       • There is a FBI report at <u>FBI 14039-14043</u> concerning an interview of a "Cooperating Witness" on November 4, 1997. The document also identifies a date of transcription as November 18, 1997. Please clarify whether Fadl is the "Cooperating Witness" and that we have the correct November 4, 1997 interview cited by the 9/11 Commission.

h) FBI report of investigation, interview of L'Houssaine Kherchtou, <u>October 15, 2000</u>.

       • There is a FBI report at <u>FBI 14135-14138</u> concerning an interview of "a Cooperating Witness" on October 11, 2000. The document also identifies a date of transcription as October 15, 2000. Please clarify whether L'Houssaine Kherchtou is the "Cooperating Witness" and that we have the correct October 15, 2000 interview cited by the 9/11 Commission.

i) FBI investigation, interview of former al Qaeda associate, <u>March 19, 2001</u>.

       • There is a FBI report at <u>FBI 14077-14126</u> concerning an interview of Ihab Ali on March 16-17, 2001. The document also identifies a date of March 19, 2001. Please clarify whether the "former al Qaeda associate" is Ihab Ali and that we have the correct March 19, 2001 interview cited by the 9/11 Commission.

j) FBI report of investigation, interview of [Jamal al] Fadl, <u>March 10, 1997</u>.

       • We have not identified a March 10, 1997 interview in the production. Please confirm this report has not been produced, and provide a date for its production.

**7.**    <u>**Bates-Numbering**</u>

Finally, we note that the FBI's Tranche No. 4 production is not bates-numbered. For purposes of consistency and other important reasons, we believe all of the Agency productions should be properly bates-numbered. *See* ECF No. 2442 (ordering that "any documents produced by any party shall bear a unique Bates number").

The CIA's two productions, dated March 20, 2026 and May 19, 2026, also do not have bates-numbers and we request that those productions are properly bates-numbered and reproduced. To avoid confusion with prior CIA productions in this litigation, Plaintiffs recommend that the starting bates-number for the CIA documents should be CIA-SUD_0001.

Please let us know when you can provide these updated versions of the FBI and CIA productions with bates-numbering.

6

Office of the United States Attorney
May 27, 2026
Page | 7


Respectfully,

COZEN O'CONNOR

By: /s/ Sean P. Carter
SEAN P. CARTER
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-2105
Email: scarter1@cozen.com

*For the Plaintiffs' Executive Committees*

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*For the Plaintiffs' Executive Committees*


KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
ANDREW J. MALONEY, III
JAMES GAVIN SIMPSON
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com

*For the Ashton Plaintiffs*


LEGAL\115578254\1