# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEE
# FOR PERSONAL INJURY AND DEATH CLAIMS
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

Ronald L. Motley (1944-2013)
Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*
MOTLEY RICE LLC

Robert T. Haefele, *Co-Liaison Counsel*
MOTLEY RICE LLC

**VIA ECF**

June 30, 2026

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re:     *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Pursuant to the Court's June 15, 2026 Order (ECF No. 12127), the Plaintiffs' Executive Committee for Personal Injury and Death Claims ("PEC") respectfully submit the following views regarding a proposed framework for assessing damages for the intentional infliction of emotional distress ("IIED") claims recognized by the Court of Appeals in *Rivelli* and *Rowenhorst*.

The issue presented asks how to value a narrow but profound category of injury: the acute emotional distress experienced from the conscious awareness of a spouse's imminent death under catastrophic circumstances, contemporaneous with one's own impending death.[1] That experience implicates the core interests protected by solatium damages—human connection, relational loss, and emotional devastation—compressed into an acute and inescapable moment.

The Court has consistently treated IIED claims as the functionally indistinguishable from FSIA solatium claims, applying the same damages principles articulated in *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998), and *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), as incorporated into this MDL. *See, e.g.* ECF No. 2618 at 10 (July 30, 2012), adopted at ECF No. 2623 (Oct. 3, 2012); ECF No. 3363 at 2 (Oct. 14, 2016), adopted at ECF No. 3384 (Oct. 31, 2016); ECF No. 11870 at 27 (Mar. 12, 2026), adopted at ECF No. 11927 (Mar. 26, 2026).

Under the applied framework, the injury is "mental anguish, bereavement and grief" resulting from a loved one's death. ECF No. 2618 at 10 (July 30, 2012), adopted at ECF No. 2623 at n. 1 (Oct. 3, 2012). Here, the injury at issue—awareness of a spouse's imminent death—is the most concentrated and immediate experience of that injury—placing it well within the core of solatium damages and application of the same basic framework.

---

[1] The PEC's proposal here focuses on the Court's query specific to the spousal relationship identified in the *Rivelli* and *Rowenhorst* matters. However, we note that the same approach proposed here applies likewise in the context of other family relations—that is, where acute emotional distress was experienced from the conscious awareness of a close family members' imminent death under catastrophic circumstances, contemporaneous with one's own impending death.

The Honorable Sarah Netburn
June 30, 2026
Page 2

_____

However, while the solatium framework that this Court has applied in this MDL provides an appropriate doctrinal starting point, it may be adapted to account for three controlling distinctions: decreased duration/persistence, increased intensity, and avoidance of double recovery.

In evaluating IIED/solatium injuries, this Court has considered the nature of the relationship, the extent of the emotional harm, and the anticipated duration and persistence of the resulting anguish. *See* ECF No. 2618 at 11, adopted at ECF No. 2623; *see also Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 234 (S.D.N.Y. 2003) (citing *Stethem v. Islamic Republic of Iran*, 201 F.Supp.2d 78, 90 (D.D.C.2002) (listing factors considered for loss of solatium)). This Court has already recognized that the unique circumstances of September 11 warrant enhanced awards, including $12.5 million for a spouse's loss, based on the profound and enduring impact of the attacks. ECF No. 2618 at 11.

The injury at issue here differs in the following several respects. *First*, the injury was experienced before death, not afterward. *Second*, the injury was inherently time-limited, lacking the component of persistence associated with traditional solatium claims. *Third*, the injury occurs in a compressed, intense experience. And *fourth*, under the circumstances, the Court must avoid double recovery.

The PEC therefore proposes a tailored application of the solatium framework that preserves the Court's prior damages principles while accounting for the unusual temporal and evidentiary features of these claims.

A. <u>Duration</u>. As the Court has recognized, governing authorities emphasize that the duration and persistence of emotional harm are central to valuation. ECF No. 12127 at 2 (June 15, 2026). Here, in contrast to other solatium claims, the injury necessarily occurred over a compressed interval, did not persist beyond death, and lacks the lifelong sequelae that justify traditional solatium awards. Although diminished duration is relevant to valuation, it does not materially reduce the value of the relational injury itself.

In this unique context, however, duration should not be treated as dispositive for three reasons. *First*, the solatium framework protects the experience of loss, not merely its aftermath. It compensates the emotional reality of losing a loved one, not simply the passage of time following that loss. Here, that loss was fully known and experienced at the moment it occurred. *Second*, the intensity and concentration of harm is exceptional—simultaneous awareness of one's own death and that of a spouse, coupled with the inability to intervene or provide comfort, and the imminent collapse of the marital relationship under extreme circumstances. While occurring over a compressed time period, this remains an exceptionally intense form of relational trauma. *Third*, treating duration as controlling would undervalue the most complete and immediate realization of loss, by privileging prolonged suffering over acute but total emotional devastation. The Court's framework does not require that result.

B. <u>Intensity</u>. A spouse's awareness of the other spouse's imminent death under catastrophic circumstances produces immediate, concentrated, extraordinarily acute distress. The entire relational loss is realized at once, with the decedent experiencing, in real time, the irreversible destruction of the marital relationship. Even more, where spouses leave children behind (underage or adult), the

The Honorable Sarah Netburn
June 30, 2026
Page 3

concentrated realization in the moments before death is that the children are left with no parents and the irreversible destruction is to the entire family relationship. That awareness is inescapable, contemporaneous, and total. Although temporally compressed, the injury fully implicates the same protected interests underlying spousal solatium awards. That concentration of trauma is consistent with, and indeed reflects in extreme form, the very considerations that led this Court to enhance solatium awards in this litigation based on the unique and catastrophic nature of the September 11 attacks.

C. <u>Avoidance of Double Recovery</u>. The Court of Appeals specifically directed consideration of whether the existing pain-and-suffering awards already encompass the injuries underlying the IIED claims. But they do not. The existing awards compensate the decedent's pain and suffering arising from awareness of the decedent's own impending death. The IIED claims, by contrast, compensate an additional and distinctly relational injury: the emotional devastation caused by awareness of the spouse's impending death, the imminent destruction of the marital and familial relationships, and the helpless inability to protect or comfort the spouse in the final moments. These injuries are not merely different in degree but differ in kind, as one arises from the decedent's own mortality, while the other arises from the imminent and perceived loss of a spouse and the destruction of the marital relationship.

To adhere to the Second Circuit's mandate, the Court may account for any limited overlap by ensuring the award reflects the distinct emotional injury attributable to the spouse's imminent death, while recognizing that this injury is substantial and independently compensable, and is not subsumed within the decedent's own pain-and-suffering award.

Consistent with the foregoing, the Court should consider:

1. The nature and closeness of the spousal relationship;
2. The decedent's awareness of the spouse's presence and peril;
3. The available evidence concerning the duration and circumstances of awareness;
4. The degree to which the decedent comprehended the inevitability of the spouse's death;
5. The intensity and immediacy of the emotional harm;
6. The total realization of relational loss in that moment; and
7. Any limited overlap with pain-and-suffering damages.

These factors align with, but appropriately tailor, the Court's established solatium framework.

Applying these principles, the PEC respectfully proposes that the $12.5 million benchmark remains an appropriate starting point. That figure reflects the Court's considered valuation of spousal loss in the context of the September 11 attacks and therefore supplies the proper reference point for valuing the relational injury at issue here. At most, a limited downward adjustment is warranted solely to account for the absence of post-loss persistence, not because the underlying nature of the loss differs. This approach ensures consistency with the Court's established damages framework while appropriately accounting for the distinct category of injury recognized by the Court of Appeals.

A principled range under the Court's framework is $2,000,000 to $3,000,000 per Estate for IIED. This range reflects a principled application of the Court's existing framework: it is below the

The Honorable Sarah Netburn
June 30, 2026
Page 4

_____

full spousal-solatium benchmark to account for the absence of post-loss duration, but at or above the established $2 million pain-and-suffering awards (which compensate intense pre-death injuries occurring over compressed time periods) to reflect the distinct and substantial relational injury recognized by the Court of Appeals. That range reflects not only a reduction from the spousal-solatium benchmark, but also a floor established by the Court's existing $2 million pain-and-suffering awards, which compensate a distinct category of harm and should not be understood to limit or exhaust the separately compensable relational injury at issue here. Awards at the upper end of this range are particularly appropriate, for example, where the evidence demonstrates contemporaneous awareness of the spouse's presence, peril, and imminent death under circumstances permitting shared perception of the unfolding events.

The PEC continues to evaluate whether other plaintiffs in the MDL present materially similar circumstances, including spouses or other close relations traveling together, or other instances of near-simultaneous exposure to fatal harm. An addendum to this letter lists additional cases identified to date, although the PEC has not yet canvassed all plaintiffs' counsel to identify every potentially relevant case. To ensure consistency, any such cases should be evaluated under the same framework. Applying that framework across similarly situated plaintiffs will support awards within this range and help avoid under-compensation for this distinct category of injury.

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*Liaison Counsel for the Plaintiffs' Executive Committee for Personal Injury and Death Claims*

cc:     The Honorable George B. Daniels, via ECF
        All Counsel of Record via ECF