**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON                       03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------------X

**DECLARATION OF ROBERT T. HAEFELE AND STEVEN POUNIAN IN SUPPORT OF PLAINTIFFS' REQUEST FOR A CONFERENCE AND LEAVE TO SERVE A LIMITED DEPOSITION SUBPOENA ON STEVEN GOLDBERG**

We, Robert T. Haefele and Steven Pounian, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1.  We are attorneys for Plaintiffs in the above-captioned action and make this declaration based upon our respective personal knowledge.

**May 4, 2026 Telephone Conversation (by Robert T. Haefele)**

2.  On May 4, 2026, at approximately 12:50 p.m., Robert T. Haefele spoke by telephone with Steven Goldberg for approximately thirty minutes. Mr. Pounian did not participate in this call.

3.  At the start of the call, Mr. Haefele identified himself as an attorney with Motley Rice LLC and explained that he represented Plaintiffs in the September 11 litigation pending before this Court.

4.  Before any substantive discussion occurred, Mr. Haefele asked whether Mr. Goldberg was represented by counsel in connection with the 9/11 litigation, Jonathan Marks's July 2021 deposition, or any related matter.

5.  Mr. Goldberg stated that he was not represented by counsel concerning those matters.

6. Before proceeding further with the discussion, Mr. Haefele advised Mr. Goldberg that:

    a. Mr. Haefele represented Plaintiffs in the above-referenced litigation and not Mr. Goldberg;

    b. Mr. Haefele could not provide legal advice to Mr. Goldberg;

    c. Mr. Goldberg was not required to speak with Plaintiffs' counsel and could terminate the conversation at any time; and

    d. Mr. Goldberg should not disclose privileged communications, attorney work product, litigation strategy, or confidential communications involving counsel.

7. Mr. Goldberg indicated that he understood those limitations and agreed to proceed.

8. Before substantive discussion continued, Mr. Haefele asked Mr. Goldberg to provide an email address. Mr. Goldberg did so, and Mr. Haefele sent an email confirming the matters described above. Mr. Goldberg reviewed the email and confirmed its contents both orally and by return email.

9. During the ensuing discussion, Mr. Goldberg stated, among other things, that:

    a. he formerly worked for Baker Tilly but no longer did so;

    b. he attended and was physically present during Jonathan Marks's July 22, 2021 deposition, together with Jonathan Marks, Omar Mohammedi, Frederick Goetz, and Andy Guzman, and they were the only people physically present in the room for the deposition, which others attended by remote means;

    c. he was not the author of the anonymous letter sent to Plaintiffs' counsel but became aware of that letter from an October 2024 media article published on the *Florida Bulldog* website, attached as **Exhibit 1**;

d. the allegations concerning coaching during the deposition as reported in the *Florida Bulldog* article were substantially consistent with what he personally observed;

e. most of the substantive work relating to the engagement was performed by Mr. Goldberg and Mr. Guzman; and

f. Mr. Marks's expert report was not authored by Mr. Marks, Mr. Goldberg, Mr. Guzman, or anyone else at Baker Tilly.

**May 27, 2026 Meeting (by Robert T. Haefele and Steven R. Pounian)**

10. On May 27, 2026, Mr. Haefele and Mr. Pounian met with Mr. Goldberg at the Motley Rice office in New York City.

11. Before any substantive discussion occurred, Mr. Goldberg executed a written acknowledgment confirming that:

a. Plaintiffs' counsel represented Plaintiffs and not him;

b. Plaintiffs' counsel could not provide legal advice;

c. Mr. Goldberg was participating voluntarily;

d. Mr. Goldberg was not represented by counsel concerning the matters to be discussed; and

e. Mr. Goldberg would not disclose privileged communications, attorney work product, litigation strategy, or confidential attorney communications.

12. During the interview, Mr. Goldberg stated that:

a. from approximately October 2019 through July 2023, he served as a Director at Baker Tilly;

3

b. he possessed extensive experience in anti-money-laundering investigations, financial compliance, and related fields;

c. beginning in 2020, he worked extensively on the WAMY engagement involving Mr. Marks;

d. most of the substantive work relating to the engagement was performed by Mr. Goldberg and Andy Guzman;

e. Mr. Marks devoted little time to the engagement and had limited involvement in the underlying work;

f. the report ultimately signed and submitted by Mr. Marks was not authored by him or anyone else at Baker Tilly;

g. he attended Mr. Marks's July 22, 2021 deposition in person;

h. he personally observed Mr. Mohammedi provide coaching and direction to Mr. Marks while questions were pending;

i. such coaching included notes written by Mr. Mohammedi on a large Post-it Super Sticky Easel Pad (the "Easel Pad");

j. the written notes were placed by Mr. Mohammedi on the Easel Pad within Mr. Marks's view before Mr. Marks provided answers;

k. Mr. Marks's subsequent deposition answers reflected the information and guidance communicated through those written notes;

l. Mr. Mohammedi at times solicited information from individuals present in the room and incorporated that information into notes he wrote on the Easel Pad;

m. Mr. Marks repeatedly looked toward Mr. Mohammedi for guidance while questions were pending;

4

n.  the coaching by Mr. Mohammedi using the Easel Pad occurred repeatedly throughout the deposition; and

o.  based on his personal observations, representations subsequently made before this Court concerning the absence of deposition coaching were untrue or misleading.

13.  Mr. Goldberg further stated that, based upon his personal involvement in the engagement and his firsthand knowledge of the work performed, certain portions of Mr. Marks's deposition testimony concerning the preparation and authorship of the report, and the extent of Mr. Marks's participation in that work, were inaccurate and materially overstated Mr. Marks's role in the work reflected in the report.

14.  During the interview, no one acting on behalf of Plaintiffs offered, promised, or provided Mr. Goldberg anything of value in exchange for information or testimony.

15.  During the May 27, 2026 meeting, the factual points summarized above were specifically reviewed with Mr. Goldberg, who confirmed that they accurately reflected the information he intended to convey. Plaintiffs' counsel and Mr. Goldberg also discussed reducing his statements to a written declaration. Mr. Goldberg agreed that Plaintiffs' counsel would prepare a draft declaration based on the information provided during the meeting. Mr. Goldberg would then review and revise the draft as he deemed appropriate, after which he would determine whether to sign it.

**Subsequent Efforts To Obtain Voluntary Cooperation (by Robert T. Haefele)**

16.  On June 4, 2026, Mr. Haefele contacted Mr. Goldberg to follow up on the parties' May 27, 2026 discussion and to request Mr. Goldberg's review of a proposed declaration memorializing the information he had provided during that meeting.

17. Thereafter, Mr. Haefele made multiple additional attempts to contact Mr. Goldberg to secure his sworn statement, including at least eight follow-up attempts by email and voicemail.

18. Although Mr. Goldberg has not indicated that the information he provided during our May 27, 2026 meeting was inaccurate or untrue, our subsequent efforts to obtain his voluntary declaration have been unsuccessful, making formal process necessary to obtain his sworn testimony.

* * *

19. Prior to May 2026, Plaintiffs had not obtained a declaration, sworn testimony, or other direct evidence from Mr. Goldberg concerning the matters described above. Nor had Mr. Goldberg previously agreed to discuss those matters with counsel. In fact, before May 2026, the information available to Plaintiffs regarding Mr. Goldberg was that he had been approached by WAMY counsel and had declined to speak to them. During the May 27, 2026 meeting, Mr. Goldberg confirmed that, prior to speaking with Plaintiffs' counsel in May 2026, he had been unwilling to discuss these matters with counsel.

20. Based upon the information provided by Mr. Goldberg during the communications described above, Mr. Goldberg possesses unique firsthand knowledge concerning:

a. work performed in connection with the WAMY expert engagement;

b. preparation and authorship of Mr. Marks's expert report;

c. the extent of Mr. Marks's participation in that work; and

d. events occurring during Mr. Marks's July 22, 2021 deposition.

21. In light of Plaintiffs' inability to obtain Mr. Goldberg's voluntary sworn testimony despite repeated efforts to do so, a subpoena is the only practical mechanism available to obtain and preserve that testimony.

22. Plaintiffs seek only a limited deposition concerning matters within Mr. Goldberg's personal knowledge. Plaintiffs do not presently seek a broader reopening of fact discovery, additional expert discovery, supplemental expert reports, additional document discovery, or any other expansion of the discovery record. Plaintiffs therefore seek leave to obtain Mr. Goldberg's testimony through the limited deposition described in the accompanying letter-motion.

23. The parties have previously conferred on multiple occasions regarding whether depositions should be permitted and could not reach agreement. WAMY's position on the issue of whether discovery of this nature should be permitted has been set forth in previous meet-and-confers, correspondence, and filings with the Court. WAMY has unequivocally stated that it will not alter its position.

24. Plaintiffs provided WAMY advance notice of this motion on August 7, 2026, and WAMY's counsel responded on August 8, 2026, confirming that WAMY intends to oppose the request. Plaintiffs understand that any further meet-and-confer efforts would be futile.

25. Plaintiffs are also sending a courtesy copy of the motion to the contact email for Mr. Goldberg.

We declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2026.


/s/ Robert T. Haefele_____          /s/ Steven Pounian_____
Robert T. Haefele                              Steven Pounian

7