LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

233 BROADWAY, SUITE 820
WOOLWORTH BUILDING
NEW YORK, NY 10279
PHONE (212) 725-3846
FACSIMILE (212) 202-7621
WWW.OTMLAW.COM

OMAR T. MOHAMMEDI, ESQ.
DIRECT DIAL: (212) 725-3846 X101
EMAIL: OMOHAMMEDI@OTMLAW.COM

ADMITTED: NEW YORK, EIGHTH CIRCUIT
SECOND CIRCUIT,
US COURT ON INTERNATIONAL TRADE

August 13, 2026

**VIA ECF**

The Honorable Sarah Netburn, U.S. Magistrate Judge
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

**Re: In Re: Terrorist Attacks on September 11, 2001, 03 MDL 1570 (GBD) (SN)**

Dear Judge Netburn:

Defendants World Assembly of Muslim Youth and World Assembly of Muslim Youth-International (USA) ("WAMY") respectfully submit this opposition to the Plaintiffs' Executive Committees' ("PECs") August 10, 2026 letter motion requesting a conference and leave to serve a deposition subpoena on non-party Steven Goldberg (ECF 12231 at 1), supported by the declaration of Robert T. Haefele and Steven Pounian on behalf of Motley Rice LLP and Kreindler & Kreindler LLP[1] (ECF 12232) (the "Haefele/Pounian Declaration").

Haefele and Pounian's latest filing seeks to relitigate issues raised in Haefele's October 9, 2024 filing on the same subject (ECF 10416), and is inconsistent with the letter and spirit of this Court's March 5, 2025 Order ("Order'). (ECF 10762 at 6). In that Order, the Court (among other things) denied Mr. Haefele's request to seek the sworn statements of Steven Golberg and Andy Guzman. In making its ruling, the Court had before it multiple independent sources of evidence, including the contemporaneous video recording of the deposition at issue, as well as detailed reports of the thorough investigations conducted by two former federal prosecutors, which investigations included the interviews of various witnesses of the underlying facts, including four of the five people in the room at Marks' deposition. The Court was aware that the investigator for WAMY had sought on multiple occasions to speak with Golberg, the only person not interviewed, but that Goldberg repeatedly failed to respond to his inquiries. (ECF 10529 at 2). The Court also held a hearing on February 28, 2025, at which it heard from counsel for all parties, as well as from the outside counsel Marcus Asner who handled the investigations for WAMY.[2]

The Court issued the Order after carefully considering the evidence in its entirety and the arguments of all parties. Haefele and Pounian's instant request presents nothing new, and certainly nothing reliable, that warrants reopening this previously vigorously contested and thoroughly investigated issue. Accordingly, WAMY respectfully requests that the Court deny

---

[1] Sean Cartner from Cozen & O'Connor did not participate in the application and the previous one.
[2] See Exhibit A, a copy of the hearing transcript.

LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

---

Haefele and Pounian's application. WAMY also requests that this Court permit it to file for attorneys' fees and costs and other available remedies against the filer.

### Statement of Facts: The Chronology Leading to the Court's March 5, 2025 Order

In July 2024, an anonymous letter (the "Anonymous Letter") surfaced alleging misconduct by Jonathan Marks, WAMY's forensic-accounting expert, and by Baker Tilly US, LLP ("Baker Tilly"), Marks's former employer, and WAMY's counsel in connection with Marks's July 22, 2021, deposition and expert engagement. On October 9, 2024, Robert T. Haefele of Motley Rice LLC, filed the Anonymous Letter and sought discovery under an accompanying Addendum A. (ECF 10416; Anonymous Letter, ECF 10416-1).

WAMY denied wrongdoing and requested time to investigate. (ECF 10418). WAMY and Baker Tilly each retained separate outside counsel, both with prior experience as federal prosecutors, to investigate the allegations independently. On November 12, 2024, WAMY's outside counsel, Marcus A. Asner of Arnold & Porter, filed a detailed report describing interviews with WAMY's counsel and Guzman, and a careful review of the Marks deposition video, as well as information received from counsel from Baker Tilly. (ECF 10529). Golberg refused to participate in the investigation, despite multiple requests that he do so. (ECF 10529 at 2). That same day, WAMY's longtime counsel, Omar T. Mohammedi and Frederick Goetz, filed a merits response categorically denying the coaching, concealment, and false-testimony allegations (ECF 10533).

On December 18, 2024, the Court ordered Baker Tilly (ECF 10635) to submit its own internal investigation report *ex parte* and under seal, which Baker Tilly did on December 23, 2024. (ECF 10639). On January 13, 2025, the Court issued its first ruling. (ECF 10664). The Court found that Baker Tilly had internal billing disputes resolved without notice to WAMY. The Court further found that the "more explosive allegations" of coaching and evidence-burying were unsubstantiated and that the videotaped deposition was not "indicative of cheating." (see, ECF 10762 at 3 [recounting the findings of ECF 10664 at 2]). The Court denied Mr. Haefele's Addendum A discovery request but invited him to request a conference if he wished to pursue the issue further. (ECF 10664 at 2).

The Court held a hearing on February 28, 2025.[3] On March 5, 2025, the Court issued the Order that governs this dispute. (ECF 10762). After reviewing the video and considering the results of the extensive outside investigations initiated by WAMY and Baker Tilly, together with the in-court summary provided by the investigator for WAMY, and the other evidence presented, the Court reaffirmed its previous decision that the allegations were not substantiated and no further inquiry was warranted (ECF 10762 at 3, 6). Crucially for the present motion, Mr. Haefele's request for sworn witness statements from Guzman and Goldberg was "DENIED." (ECF 10762 at 6).

---

[3] *Id.*

2

LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

Nearly fourteen months of quiet on this issue followed. On April 15, 2026, WAMY moved for summary judgment. Only nineteen days later, on May 4, 2026, without regard to the Order, Robert Haefele apparently contacted Goldberg[4], the very witness who declined to speak during the 2024-25 inquiry and as to whom the Order denied Plaintiff's request for sworn testimony. (ECF 12232 ¶¶ 2–9; ECF 10762 at 2). Haefele and Pounian met with Goldberg at Hafele's New York office, Motley Rice LLP, on May 27, 2026. Upon information and belief, Haefele et al did this surreptitiously without any notice to WAMY or Baker Tilly. Haefele and Pounian's own declaration shows that they then attempted at least eight additional times beginning June 4, 2026 to obtain Goldberg's sworn testimony, which this Court previously had denied, without success. (ECF 12232 ¶¶ 10–18).

Meanwhile, on or about July 23, 2026, Plaintiffs sought and obtained WAMY's and other charity defendants' consent to a sixty-day extension of Plaintiffs' deadline to oppose WAMY's summary judgment motion, representing that the extension was necessary because of travel and other matters.[5] WAMY and other charity defendants, in good faith, agreed to Plaintiffs' counsel request. Haefele and Pounian did not disclose that they were simultaneously about to seek to relitigate the very allegations this Court had already resolved.[6] Not until Friday, August 7th, one business day before Haefele and Pounian's filing, did Haefele and Pounian's send an email to WAMY's counsel to inform them that they allegedly had obtained "new information," not evidence, which they assert was unavailable when the Court issued its decision on March 5, 2025, and that they were filing a motion to subpoena Golberg to a deposition along with other requests.[7] Contrary to Haefele and Pounian's submission, on August 7th, WAMY's counsel asked for specifics on the unavailable information before responding to their email and urged Mr. Haefele to concentrate on the merits of this case rather than to keep raising unfounded collateral issues that were already decided.[8] Haefele and Pounian did not respond to WAMY's counsel requests, and, on August 10, 2026, filed the instant letter motion and the Haefele/Pounian Declaration, seeking leave to subpoena Goldberg. (ECF 12231; ECF 12232).

### Haefele and Pounian's August 10, 2026 Motion Is Made in Bad Faith

Haefele and Pounian's attempt to relitigate issues on which the Court has already ruled under Federal Rule of Civil Procedure 16(b)(4) is mistaken. The Rule applies to modification of scheduling orders, not reopening and relitigating claims that this Court previously adjudicated and dismissed approximately seventeen months ago. Haefele and Pounian concede that their proposed discovery bears on the same three subjects the Court already considered: the authorship of Marks's report, the accuracy of his deposition testimony, and "the truthfulness of representations made to the Court regarding events during Mr. Marks's July 22, 2021 deposition." (ECF 12231 at 1). Those are exactly the "explosive allegations" of coaching and

---

[4] The Declaration of Haefele and Pounian is silent on who instigated the contact with Mr. Goldberg. We believe that if Golberg was the one who had reached out, Plaintiffs' counsel would not hesitate to say it.
[5] See Exhibit B, communications regarding request for extension.
[6] *Id*.
[7] See Exhibit C, August 7 – 8 email communication between Haefele and Pounian and WAMY counsel
[8] *Id*.

concealment that the Court found unsubstantiated in the January 13, 2025 Order (ECF 10664) and again in the March 5, 2025 Order. (ECF 10762 at 3, 6).

There is no new information. Though he claims not to be, Goldberg, the only person in the room who refused to be interviewed, is likely the source of the anonymous letter and is simply providing the same allegations in a repackaged format. The video of the deposition and other evidence that this Court reviewed and concluded did not support the very same allegations has not changed and demonstrates the unreliability of Goldberg/anonymous' contentions. The Court Order of March 5, 2025 still stands, denying Haefele's prior request to submit sworn testimony from Goldberg and Guzman. (ECF 10762 at 6).

Haefele and Pounian effort to reopen discovery seventeen months after this Court's decision, while WAMY's summary judgment motion is pending, is in bad faith. The attempt to re-litigate the admissibility of Marks' opinions, would not serve the interests of justice, judicial economy, the parties, or the efficient administration of this Court's docket. It would instead reward collateral litigation and delay and would permit a party to accomplish indirectly what it could not obtain directly from the Court. The integrity of the judicial process requires that a judicial determination be respected unless and until it is properly reconsidered through an authorized procedural mechanism. Haefele and Pounian's application undermines finality and invites endless collateral investigations whenever a party is dissatisfied with a determination previously reached by the Court.

> **Haefele and Pounian's Latest Claims Are Substantively the Same as Those Made in the October 9, 2024 Application, and This Court's March 5, 2025 Order Should Not Be Disturbed**

Haefele and Pounian's letter motion concedes what a side-by-side comparison between the claimed "new" information and the allegations raised in the anonymous letter confirms: Goldberg's 2026 account is not new information but a repackaging of old allegations. The Anonymous Letter alleged in 2024 that two undisclosed Baker Tilly employees "coached Marks in real time to shape his responses." (ECF 10416-1 ¶¶ 1, 8). Goldberg's 2026 account alleges that Mr. Mohammedi "provided real-time coaching and direction to Mr. Marks while questions were pending." (ECF 12232 ¶ 12(h)–(n)).

A side-by-side comparison of what was known and alleged at each stage makes the point starkly:

- **What Goldberg allegedly observed in 2021:** according to Plaintiffs' own filing, the identical events now described—Mohammedi's alleged real-time coaching of Marks during the July 22, 2021 deposition. (ECF 12232 ¶¶ 9, 12).
- **What this Court found in 2025:** that the coaching and evidence-concealment allegations were unsubstantiated, that the videotaped deposition was not indicative of cheating, and that no further inquiry was warranted. (ECF 10762 at 3, 6).
- **What Goldberg told Haefele in May 2026:** the same coaching allegation, attributed now to Mohammedi and an easel pad rather than an unnamed writer and a whiteboard,

The substance is the allegations across 2024 and 2026 are the same. The only "new" fact is the source's willingness to be named, but only in private meetings with Haefele and Pounian. Haefele and Pounian's own motion effectively admits this. Plaintiffs distinguish their present application from the March 5, 2025 Order only on the ground that "[n]either investigation included sworn testimony of any witness, and specifically, Mr. Goldberg declined to participate at the time." (ECF 12231 at 3). But the Court's Order expressly accounted for that very fact: it recorded that "Goldberg refused any outreach to participate in this investigation" (ECF 10762 at 2). Nonetheless, it found the allegations unsubstantiated and ordered that no further inquiry was warranted. (*Id*. at 6). And crucially for the present motion, the Court specifically refused Haefele's request for Guzman and Golberg to submit sworn statements as not warranted (*Id*.).

**Haefele and Pounian's Conduct Appears Calculated to Place WAMY and Their Counsel in an Unfair and Prejudicial Position**

Rather than advancing the resolution of the substantive issues presently before the Court, this renewed inquiry has generated yet another collateral dispute, on an issue that the Court has already resolved. Granting Haefele and Pounian's requested relief will further increase costs, delay this litigation and expose WAMY's lead counsel to extreme hostility by attempting to place him in false light. And it will unfairly prejudice the fair litigation of WAMY's pending motion for summary judgment.

Haefele and Pounian attach a two-year-old newspaper article that WAMY's counsel has previously identified as part of a broader pattern of extrajudicial, inflammatory attempts to try this case in the press rather than in this Court. (ECF 12232-1; ECF 10533 at 12). WAMY reiterates its previously stated concern, made a part of this record since November 2024, that the recurring, unsubstantiated attacks on a Muslim attorney through anonymous letters and press leaks may not be wholly free of animus unrelated to the merits of this litigation as is fully demonstrated since October 2024 where Counsel Omar T. Mohammedi has been specifically targeted. (ECF 10533 at 14 & n.89). That concern is only heightened by Haefele and Pounian's renewed reliance on the same press coverage two years later and repeating the name of Omar Mohammedi in association with allegations of serious misconduct. The pattern of disproportionate focus on Mr. Mohammedi has become apparent when the record is considered as a whole.

This pattern is not limited to the present filing. It was evident in the prior application and in the correspondence and submissions that preceded it. From the beginning of this fabricated controversy through the present filing, the allegations have repeatedly centered upon Mohammedi's conduct as counsel. While counsels are entitled to challenge conduct when there is a legitimate factual basis to do so, there must be a meaningful distinction between legitimate scrutiny and a continuing effort to make one particular officer of the Court the subject of allegations that are unsupported by competent evidence.

The seriousness of this concern is reflected in the record itself. Other counsel involved in this matter have previously communicated with the Court expressing concern and outrage

LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

regarding the manner in which Mohammedi was being treated and the nature of the allegations directed against him.[9]

**The Timing of Haefele and Pounian's Renewed Investigation Confirms an Improper Purpose**

The sequence of events in Haefele and Pounian's August 10 letter-motion cannot be dismissed as coincidence. WAMY filed its summary judgment motion on April 15, 2026. The basis for the motion included, in part, the opinions of expert forensic accountant Jonathan Marks. Nineteen days later, on May 4, 2026, Haefele contacted Goldberg, Haefele and Pounian then met with Goldberg again on May 27, 2026. This is not a scenario where a party stumbled upon new evidence and promptly brought it to the Court's attention. Dissatisfied with a ruling nearly two years old, Haefele and Pounian unilaterally sought to reopen this matter that the Court had directed be closed and did so at the precise moment WAMY's dispositive motion placed the merits of this twenty-four year old case before the Court.

**Attorneys' Fees, and Costs Are Warranted**

First, we respectfully submit that Haefele and Pounian's August 10, 2026 motion is made in bad faith. It is improper attempt to reopen a matter this Court has already decided twice. Haefele and Pounian knew of this Court's March 5, 2025, Order denying sworn statements from Guzman and Goldberg. Nevertheless, Haefele and Pounian counsel directly contacted Mr. Golberg and allegedly met with him in their office with the intent to again relitigate a Court decided issue. This conduct, the timing of an undisclosed sixty-day extension of Plaintiffs' summary judgment opposition deadline, and culminating in this motion only weeks before that opposition was initially due, supports the inference that this application was interposed, at least in part, to delay resolution of the merits and to again force WAMY's Counsel to defend their professional integrity

Second, WAMY and its counsel have now been required, for the third time since October 2024, to expend substantial resources defending against unfounded and unsubstantiated allegations. The resulting prejudice is both financial and reputational, and it falls not only on WAMY but personally on Mr. Mohammedi, whose integrity as an officer of this Court has now been publicly compromised three times based on a single, twice-rejected allegation. Sanctions are warranted not merely to compensate WAMY for the cost of defending this renewed motion and the past proceeding, but to protect the finality of this Court's orders and to deter the use of collateral issues of previously resolved allegations as a litigation tactic.

For the foregoing reasons, WAMY respectfully requests that the Court deny Haefele and Pounian's application for leave to serve a deposition subpoena on Steven Goldberg. WAMY thanks the Court for its consideration of this matter and remains available at the Court's convenience.

---

[9] See, Exhibit D, February 27, 2025 Lewis Baach Kaufman Middlemiss (co-defendant counsel) letter of concern.

6

LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

Respectfully submitted,

/s/ *Omar Mohammedi*
_____

Omar T. Mohammedi

/s/ *Frederick Goetz*
_____

Frederick Goetz

Counsel for Defendants World Assembly of Muslim Youth and World
Assembly of Muslim Youth-International (USA)

cc:  The Honorable George B. Daniels (via ECF)
     All Counsel of Record (via ECF)
     Marcus Asner, Esq.
     Daniel Flaherty, Esq.