**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEE**
**FOR PERSONAL INJURY AND DEATH CLAIMS**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

Ronald L. Motley (1944-2013)
Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*
MOTLEY RICE LLC

Robert T. Haefele, *Co-Liaison Counsel*
MOTLEY RICE LLC

**VIA ECF**

August 17, 2026

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Plaintiffs respectfully submit this reply to address arguments newly raised in WAMY's opposition (ECF No. 12245) to Plaintiffs' request for leave to serve a limited deposition subpoena on Steven Goldberg (ECF No. 12231). WAMY's opposition—notably unsupported by any sworn declaration from counsel or any percipient witness and lacking authority for its fee request—does not address the substance of Mr. Goldberg's firsthand account.

**I. Plaintiffs' Motion is Consistent with the Court's March 5, 2025 Order and Is Not a Summary Judgment Tactic**

WAMY's assertion that Plaintiffs are acting in bad faith by seeking testimony from Mr. Goldberg is unfounded. Nothing about Plaintiffs' measured approach to serious allegations suggests bad faith. The Court itself described the underlying allegations as "serious" and acknowledged that Plaintiffs acted appropriately in bringing them to the Court's attention. Tr. 26 (Feb. 28, 2025 hearing). Plaintiffs' presentation of the new information to the Court's attention was no less measured and no less appropriate.

The seriousness of the allegations warrants the prudent and deliberative course Plaintiffs have charted. After Plaintiffs received information from a witness who was physically present during Jonathan Marks's deposition—and who had not participated in the prior investigation—Plaintiffs appropriately followed up, sought a voluntary sworn statement, and ultimately informed the Court.

Contrary to WAMY's mischaracterization of the Court's March 5 Order (ECF No. 10762), the Order did not prohibit Plaintiffs from communicating with Mr. Goldberg. The issue before the Court that resulted in that Order was whether, based on the record then before the Court (which included that Mr. Goldberg had wholly declined to speak with WAMY's investigators), the Court would require Mr. Goldberg (and Mr. Guzman) to provide sworn declarations. *Id.* at 2; Tr. 27.

Based on the record available at the time, the Court determined that it would not order either Mr. Goldberg or Mr. Guzman to provide a sworn declaration. ECF No. 10762 at 6.

WAMY also mischaracterizes the Court's March 5 decision as a determination that the underlying allegations were false. The Court made no such finding. Rather, on the record then before it, the Court concluded that further inquiry was not warranted at that time because the allegations had not been "convincingly established." (ECF No. 10762 at 2)

Critically, that record did not include any account from Mr. Goldberg. Nor did it establish what Mr. Guzman actually said regarding the coaching allegations. Although WAMY's outside counsel interviewed Mr. Guzman, neither their written report to the Court nor counsel's presentation at the hearing disclosed Mr. Guzman's actual responses. Instead, while representing that "no witness substantiated" the allegations, counsel characterized Mr. Guzman's statements as "an unknown." Tr. 13, 43.

The record now before the Court is markedly different. Although WAMY's outside counsel previously represented that "no witness substantiated the explosive allegations," Tr. 43, Plaintiffs supply information from a percipient witness whose account was entirely absent from the prior record and, if credited, substantiates those allegations. The limited deposition Plaintiffs seek would permit that account to be tested under oath.

WAMY's speculation that Plaintiffs sought an extension of the summary judgment schedule to pursue Mr. Goldberg's testimony is likewise untrue and unsupported by the chronology. By the time Plaintiffs requested that extension, they had already met with Mr. Goldberg and were working to obtain a voluntary declaration.

More fundamentally, the requested deposition is not necessary for Plaintiffs to oppose WAMY's summary judgment motion. To the extent WAMY relies on Mr. Marks's opinions, those opinions are already challenged and contradicted by admissible expert testimony, including the testimony of Plaintiffs' expert, Mr. Winer. Plaintiffs do not need Mr. Goldberg's testimony to establish disputes of fact sufficient to oppose WAMY's motion.

But the testimony is relevant both to preserve previously unavailable evidence and to protect the integrity of the Court's proceedings. It preserves for trial the testimony of a firsthand witness concerning matters that bear directly on the credibility, reliability, and weight of Mr. Marks's testimony, which WAMY has indicated it intends to present at trial. Mr. Goldberg's testimony furnishes evidence from which the factfinder could assess the credibility and weight , if any, to attribute to Mr. Marks's testimony. The testimony also bears on a separate concern: protecting the integrity of the judicial process itself. If substantiated, the conduct at issue would implicate the fairness and truth-seeking function of these proceedings. Mr. Goldberg's testimony therefore is relevant not only because it may affect the evaluation of evidence at trial, but also because it enables the Court to discharge its obligation to ensure that its proceedings remain fair, transparent, and free from conduct inimical to the administration of justice.

**II. Mr. Goldberg's Information Is Not Merely a "Repackaging" of the Anonymous Letter**

WAMY misses the point where it dismisses Mr. Goldberg as the "likely…source of the anonymous letter" and contends he offers no "new information" but merely "repackaged" allegations. Mr. Goldberg expressly denied authoring the anonymous letter. ECF No. 12232 ¶ 9(c). In any event, authorship is immaterial to the relief Plaintiffs seek. Mr. Goldberg's significance is that he is one of only two witnesses in the deposition room who were neither WAMY's lawyers nor its expert,[1] he has provided a firsthand account of what occurred, and that account contradicts WAMY's investigations and confirms the original allegations of serious wrongdoing.

WAMY previously represented that "we did not uncover evidence that substantiated the…explosive allegations," Tr. 11, and that "no witness substantiated" the allegations, Tr. 43. Mr. Goldberg's firsthand account undermines those representations. Unlike WAMY's outside counsel's report, Mr. Goldberg's account substantiates the allegations. Unlike the anonymous letter, his account can be examined under oath and tested through questioning.

The significance of this previously unavailable firsthand account is illustrated by comparing WAMY's prior representations with Mr. Goldberg's account, as summarized in Addendum A. For example, WAMY's defense focused heavily on representations that its investigation uncovered no evidence of writing on a "white board." Tr. 11. Mr. Goldberg, however, describes a different device—a large Post-it Easel Pad on which WAMY's counsel allegedly wrote notes and placed them within Mr. Marks's view while questions were pending. ECF No. 12232 ¶ 12(h)–(n). Mr. Goldberg's account raises the question whether WAMY's denials relied improperly on specific terminology rather than substance, as both devices allegedly served the same functional purpose.

**III. WAMY's Sanctions Request Underscores Why Sworn Testimony Is Appropriate**

WAMY's request for sanctions reinforces why the limited relief Plaintiffs seek is appropriate. WAMY contends that the allegations are demonstrably false and that Plaintiffs acted improperly by bringing the matter before the Court. Yet it submits no sworn testimony from a percipient witness contradicting Mr. Goldberg's account. If WAMY is correct that Mr. Goldberg's account is false, sworn testimony provides the most direct and orderly means to establish that. Plaintiffs' application seeks precisely such an evidentiary record.

Far from demonstrating bad faith, Plaintiffs' request reflects their measured approach since the outset: bringing serious information to the Court's attention and seeking a limited, orderly means to determine what occurred. The requested deposition would allow the relevant firsthand account to be preserved and tested under oath rather than resolved through competing assertions of counsel.

Finally, WAMY identifies neither a legal basis nor record support for its request for attorneys' fees and costs, which rests on its unsupported assertion that Plaintiffs acted in bad faith.

[1] The only individuals physically present were Mr. Marks, WAMY's two lawyers, and Messrs. Goldberg and Guzman; no court reporter was physically present in the deposition room during the remote deposition.

For those reasons, the Court should grant Plaintiffs leave to serve the limited deposition subpoena and deny WAMY's request for fees, costs, or sanctions.

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com

*For the Plaintiffs' Exec. Committee for Personal Injury and Death Claims*

KREINDLER & KREINDLER LLP

By: /s/ Steven R. Pounian
STEVEN R. POUNIAN
485 Lexington Avenue
New York, NY 10017
Tel.: (212) 973-3477
Email: spounian@kreindler.com

*Counsel For the Ashton Plaintiffs*

cc: The Honorable George B. Daniels, via ECF
All Counsel of Record via ECF

**Addendum A –**
**Comparison of WAMY's Representations and Mr. Goldberg's Firsthand Account**

| **WAMY's Representations** | **Goldberg's Firsthand Account** |
|---|---|
| "We uncovered no evidence that there was writing on a white board. People didn't really remember a white board, if I recall correctly." Hearing Tr. at 11:10–12; ECF No. 10529 at 5. | Mr. Goldberg explained that WAMY counsel used a Post-it Super Sticky Easel Pad—not a "white board"—to provide written coaching and direction to Mr. Marks during the deposition. ECF No. 12232 ¶ 12(i)–(k). |
| WAMY counsel "categorically den[ied] the coaching, concealment, and false-testimony allegations." ECF No. 10533 at 1–2. | Mr. Goldberg said that he observed Mr. Mohammedi "provide coaching and direction to Mr. Marks while questions were pending" through written notes on the Easel Pad placed within Mr. Marks's view. ECF No. 12232 ¶ 12(h)–(n). |
| Mr. Marks was the author of his expert report. ECF No. 10533 at 2, 8-9; WAMY SJ Motion. | Mr. Goldberg said that Mr. Marks's expert report "was not authored by him or anyone else at Baker Tilly." ECF No. 12232 ¶ 12(f) |
| Mr. Marks "was actively involved both in the preparation of the report and in his own preparation for his deposition." Hearing Tr. at 10:19–21; *see* ECF No. 10529. | Mr. Goldberg said that "Mr. Marks devoted little time to the engagement and had limited involvement in the underlying work…," ECF No. 12232 ¶ 12(e), and that he and Mr. Guzman did "most of the substantive work…." ECF No. 12232 ¶ 12(d). |
| Mr. Goldberg was "likely the source of the anonymous letter…." ECF No. 12245 at 4. | Mr. Goldberg denied authoring the anonymous letter to Plaintiffs' counsel. ECF No. 12232 ¶ 9(c). |