**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN)
(and member case *Burlingame v. Bin Laden, et al.*, 02-cv-7230 (GBD)(SN))

**MEMORANDUM OF LAW IN SUPPORT OF *BURLINGAME IV* PLAINTIFFS' MOTION FOR PARTIAL FINAL DAMAGES' JUDGMENTS AGAINST THE TALIBAN ON BEHALF OF NON-U.S. NATIONALS**

**SPEISER KRAUSE, PC**
Frank H. Granito, III, Esq. (FG9760)
Douglas A. Latto, Esq. (DL3649)
Jeanne M. O'Grady, Esq. (JO3362)
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333

*Attorneys for Burlingame Plaintiffs*

# Table of Contents


I. Introduction .....1

II. Background .....2

A. Applicable Orders .....7

B. Related Cases .....10

III. The Court Has Personal and Subject Matter Jurisdiction Over the Taliban .....11

IV. Damages Should Be Awarded Against the Taliban Jointly and Severally for Non-U.S. Nationals .....13

A. New York Law Applies to the Common Law Claims at Issue Here .....15

B. Wrongful Death .....16

C. Survival Claims for Pain and Suffering .....17

D. Intentional Infliction of Emotional Distress / Solatium .....19

E. The *Burlingame IV* Plaintiffs with Claims Arising Under Common Law Seek Application of Uniform Damages Principles as Those Employed Under the ATA .....24

F. Economic Damages for Estates .....25

G. Punitive Damages .....27

H. Prejudgment Interest .....27

V. CONCLUSION .....28

# Table of Authorities

## Cases

*Armstead v. Nat'l R.R. Passenger Corp.*, 954 F. Supp. 111 (S.D.N.Y. 1997) .......... 16
*Baker v. Socialist People's Libyan Arab Jamahiriya*, 775 F. Supp. 2d 48 (D.D.C. 2011) .......... 28
*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363 (S.D.N.Y. 2013) .......... 16
*Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006) .......... 26
*Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20 (D.D.C. 2009) .......... 22
*Estates of Ungar ex rel. Strachman v. Palestinian Authority*, 304 F. Supp. 2d 232 (D.R.I. 2004) .......... 25
*Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93 (D.D.C. 2015) .......... 21, 24
*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998) .......... 25
*Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348 (D.C. Cir. 2018) .......... 24
*Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993) .......... 20
*In re Sept. 11th Litig.*, 494 F. Supp. 2d 232 (S.D.N.Y. 2007) .......... 15
*In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) .......... 17
*Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27 (D.D.C. 2001) .......... 22
*Johnson v. N.Y. State Police*, 659 F. Supp. 3d 237 (N.D.N.Y. 2023) .......... 18
*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) .......... 16
*Menowitz v. Brown*, 991 F.2d 36 (2d Cir. 1993) .......... 15
*Oveissi v. Islamic Republic of Iran*, 573 F.3d 835 (D.C. Cir. 2009) .......... 20
*Rich v. Fox News Network, LLC*, No. 18 Civ. 2223 (GBD), 2020 WL 5768430 (S.D.N.Y. Sept. 25, 2020) .......... 20
*Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379 (D.D.C. 2015) .......... 26
*Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105 (D.D.C. 2005) .......... 22
*Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002) .......... 22
*Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260 (D.D.C. 2002) .......... 21
*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014) .......... 23
*Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010) .......... 25, 26
*Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128 (D.D.C. 2001) .......... 21
*Zonshayn v. Sackler Sch. of Med. (N.Y.)*, 648 F. Supp. 3d 485 (S.D.N.Y. 2023) .......... 20

## Statutes and Rules

18 U.S.C. § 2333 .......... 25
28 U.S.C. § 1367(a) .......... 11
28 U.S.C. § 1605A(c) .......... 25
N.Y. C.P.L.R. § 302(a)(2), (a)(3)(ii) .......... 12
N.Y. C.P.L.R. § 3017 .......... 20
N.Y. E.P.T.L. § 5-4.1 .......... 16, 17, 18
N.Y. E.P.T.L. § 11-3.2(b) .......... 18

## Other Authorities

Restatement (Second) of Torts § 46 (1965) .......... 22

## I. Introduction

Plaintiffs in the above-captioned case include the personal representatives of non-U.S. nationals killed on September 11, 2001 in the terrorist attacks ("9/11 Decedents") and non-U.S. national immediate family members of 9/11 Decedents ("non-U.S. National Plaintiffs"). The non-U.S. National Plaintiffs in Exhibits B1, B2[1] and C (the "*Burlingame IV* Plaintiffs") to the Declaration of Frank H. Granito, III ("Granito Declaration"), with a proposed order at Exhibit A to the Declaration, by and through their counsel, Speiser Krause, PC ("Speiser Krause"), respectfully submit this Memorandum of Law in support of their Motion for Partial Final Judgments as to Damages against the Taliban.

The *Burlingame IV* Plaintiffs, all non-U.S. Nationals, previously obtained a default liability judgment against the Taliban (ECF No. 1797) and now seek partial final judgments as to their common law claims of intentional murder and intentional infliction of emotional distress (solatium) and survival claims against the Taliban and seek approval of the proposed Order attached as Exhibit A to the Granito Declaration.[2] The *Burlingame IV* Plaintiffs also seek a damages' determination consistent with the determinations of prior subsets of plaintiffs in this MDL based on state law, including this Court's recent determination on behalf of the *Ashton* non-U.S. National Plaintiffs. (ECF No. 11927).

[1] Exhibit B lists estates of non-U.S. National 9/11 Decedents who have default judgments against the Taliban and is subdivided into B1 for pain and suffering and B2 for economic losses where available for some of those estates; Exhibit C lists immediate family members of 9/11 Decedents where the 9/11 decedent was not a U.S. National *and/or* the immediate family member was not a U.S. National on September 11, 2001.

[2] Each of the Non-US National *Burlingame IV* Plaintiffs identified on Exhibit A to the Granito Declaration and Exhibits B1, B2 and C to the Proposed Order accompanying this motion seek judgments against the Taliban in this motion consistent with those that were previously awarded to them by this Court against the Islamic Republic of Iran. (ECF Nos. 3226, 3987, 4087, 4707, 5857; 02-cv-7230 (S.D.N.Y) ECF No. 78).

## II. Background

The *Burlingame* Plaintiffs represented by Speiser Krause filed their first complaint on September 10, 2002 against the alleged sponsors of the September 11, 2001 terrorist attacks, which included claims against the Taliban, among others. *See* 02-cv-7230 (S.D.N.Y.), ECF No. 1.[3] The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were consolidated for liability purposes and mandated to proceed under the *Ashton* master docket, with the filing of a consolidated master complaint. *See* 02-cv-6977, ECF No. 5 (entered 11/25/2002). The *Burlingame* plaintiffs remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket number and counsel. *See*, e.g., 02-cv-6977, ECF No. 465 (Sixth Amended Complaint, filed 09/30/2005).

On July 27, 2022, other firms representing 9/11 victims filed motions for final partial judgments against the Taliban on behalf of estates and immediate family members of decedents killed in the September 11, 2001 Terrorist Attacks. (ECF Nos. 8274 & 8298). Speiser Krause filed three motions for final partial judgments against the Taliban on behalf of the *Burlingame* Plaintiffs: *Burlingame I* (ECF No. 8335, filed August 12, 2022), *Burlingame II* (ECF No. 8363, filed August 16, 2022), and *Burlingame III* (ECF No. 8737, filed November 11, 2022). On March 15, 2023, Magistrate Judge Netburn recommended that the pending motions be granted as to default damages' judgments pursuant to the Anti-Terrorism Act ("ATA") on behalf of the U.S. Nationals, but denied without prejudice the request for damages judgments made by non-U.S. Nationals, concluding that they were not eligible to rely on the ATA. (ECF No. 8929 at 5-6). The District Court agreed and, on March 30, 2023 (ECF No. 8973), granted judgment to the U.S. Nationals only — resolving *Burlingame I* and *Burlingame II* — and invited the non-U.S. Nationals to re-file

[3] References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by ECF number; references to individual civil case docket entries are preceded by the case number.

a motion that cited state laws authorizing a cause of action and addressed the basis for jurisdiction, the allegations in the complaint, and the scope of damages under the relevant law. *Id.*

This Court subsequently issued the Final Judgment on Behalf of the *Burlingame III* Plaintiffs Against the Taliban Defendants on June 27, 2023 (ECF No. 9167), resolving the third *Burlingame* motion and awarding pain and suffering, economic loss, and solatium damages to *Burlingame* U.S. Nationals, together with treble damages under the ATA and prejudgment interest at 4.96 percent per annum, compounded annually.

On August 27, 2025, counsel for the *Ashton* Plaintiffs filed a Memorandum of Law and Declaration by Andrew J. Maloney, III, in compliance with Judge Daniels' March 30, 2023 Order, seeking partial final damages judgments against the Taliban for a number of *Ashton* non-U.S. National Plaintiffs based on state law. (ECF Nos. 11173, 11179). Following that filing, Magistrate Judge Netburn issued a Report and Recommendation on March 12, 2026 (ECF No. 11870), recommending that the Court grant partial final judgments in favor of the *Ashton* non-U.S. National Plaintiffs. After conducting a thorough analysis of the Court's subject matter and personal jurisdiction, as well as a choice-of-law analysis, Magistrate Judge Netburn concluded that the Taliban is liable to non-U.S. Nationals and recommended that the Court grant partial final judgments with economic, conscious pain and suffering, solatium damages, and pre-judgment interest consistent with those previously set by the Court in judgments issued against Iran. (*Id.* at 18, 19-23, 25-28).

On March 26, 2026, Judge Daniels adopted Magistrate Judge Netburn's Report in its entirety. (ECF No. 11927 at 14). Judge Daniels held that the Court has supplemental jurisdiction over the non-U.S. National Plaintiffs' claims (*id.* at 4-5), found the Taliban liable to non-U.S. National Plaintiffs who were killed or injured under New York law (*id.* at 11), determined that the

non-U.S. National Plaintiffs referenced in the *Ashton* motion were entitled to receive damages for their intentional infliction of emotional distress claims (*id.* at 13), and ordered prejudgment interest at 4.96 percent per annum, compounded annually — running from September 11, 2001 until the date of judgment for the pain and suffering and solatium damages, and from the date of the economic report until the date of judgment for the economic damages (*id.* at 14).

The *Burlingame IV* Plaintiffs are similarly situated in every material respect to the *Ashton* non-U.S. National Plaintiffs on whose behalf the Court entered partial final judgments. (ECF No. 11927). Both groups are: (i) non-U.S. Nationals whose non-U.S. National decedents were killed in the September 11 Terrorist Attacks at the World Trade Center; (ii) already the subject of the May 12, 2006 default liability judgment against the Taliban (ECF No. 1797); (iii) properly served by publication pursuant to this Court's Order (ECF No. 445); and (iv) proceeding under the Sixth Amended Complaint (ECF No. 465), which pleads state-law causes of action including intentional murder, wrongful death, survival, and non-economic damages akin to solatium.

For the reasons set forth below, and in the Granito Declaration, as well as those presented in prior motions submitted to this Court, the *Burlingame IV* Plaintiffs now respectfully move this Court for an Order:

(1) Confirming that service of process in the above-captioned matter was properly effected upon the Taliban;

(2) Confirming that this Court possesses personal jurisdiction over the Taliban for the instant claims;

(3) Determining that this Court has subject-matter jurisdiction over the Taliban under state common law for actions arising out of intentional murder and intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that targeted innocent civilians resulting in death, personal injury, and significant grief sustained by family members of those killed in the attacks, and there is no just reason for delay in the entry of partial final judgments against the Taliban;

(4) Awarding damages under applicable New York common law to the non-U.S. National *Burlingame IV* Plaintiffs listed in Exhibits B1, B2, and C to the Granito Declaration against the Taliban — pain and suffering of $2,000,000 per decedent (Exhibit B1); economic loss in the amounts previously awarded to those Estates against co-tortfeasor and co-defendant Iran (Exhibit B2); and solatium of $12,500,000 per spouse, $8,500,000 per parent, $8,500,000 per child, and $4,250,000 per sibling (Exhibit C) — consistent with the awards this Court recently entered for the similarly-situated *Ashton* non-U.S. National Plaintiffs (ECF No. 11927);

(5) Awarding the *Burlingame IV* Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

(6) Denying without prejudice an award of punitive damages and granting Burlingame *IV* Plaintiffs permission to seek punitive damages and other appropriate damages at a later date;

(7) Granting permission for all other Plaintiffs not appearing in Exhibits B1, B2 and C to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; and

(8) Granting Plaintiffs such other and further relief as this honorable Court deems just and proper.

The awards set forth in the attached Proposed Order (Exhibit A to the Granito Declaration) represent the only direct recovery against the Taliban on behalf of the *Burlingame IV* Plaintiffs for the claims herein and will constitute partial final awards and judgments against the Taliban for the *Burlingame IV* Plaintiffs.

### A. Applicable Orders

This motion is being submitted in accordance with various procedural orders entered by this Court, and the form of this motion and the relief requested herein are intended to comply with various orders of this Court, including the following:

a. The Court's January 24, 2017 Order (ECF No. 3435) requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee, ECF No. 3433] and (2) personally verified

that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

b. Magistrate Judge Maas' July 30, 2012 Report & Recommendation (ECF No. 2618) and this Court's October 3, 2012 Order (ECF No. 2623) adopting the Report & Recommendation in its entirety concerning the award of damages;

c. The Court's October 14, 2016 Order (ECF No. 3363) concerning the amounts of solatium damage awards;

d. The Court's October 14, 2016 Order (ECF No. 3362) related to Bauer v. Al Qaeda Islamic Army, 02-CV-7236 (GBD)(SN) and Ashton v. al Qaeda Islamic Army, 02-CV-6977 (GBD)(SN);

e. The Court's October 28, 2019 Order (ECF No. 5234) setting forth updated procedural rules;

f. The Court's April 11, 2022 Order (ECF No. 7870) setting forth specific procedures regarding seeking judgments for damages as to the Taliban;

g. The Court's July 11, 2022 Order (ECF No. 8198) setting forth requirements for motions for default judgments against non-sovereign defendants;

h. The Court's June 25, 2025 Order modifying the tables and columns for damages' calculations with interest (ECF No. 11036).

**B. Related Cases**

As referenced above, on March 30, 2023 and October 28, 2024 this Court granted Orders of partial final judgment against the Taliban under the ATA for U.S. National Plaintiffs represented by Speiser Krause (ECF Nos. 8973 and 9167), for the estates of the victims represented by this firm and those decedents' immediate family members who are referred to as the *Burlingame I-III* Plaintiffs. These Orders directed that U.S. National Plaintiffs receive awards for conscious pain and suffering and economic damages for the estates of those killed in the 9/11 terror attacks, prejudgment interest at a rate of 4.96 percent per annum, compounded annually from September 11, 2001 until the date of the judgment (ECF No. 8973, at 9, 11 and ECF No. 9167, at 2) and these Orders awarded solatium damages to the 9/11 decedents' immediate family members in

accordance with the determination made by this Court in its October 3, 2012 Order (ECF No. 2623)(adopting Magistrate Frank Maas' July 30, 2012 Report (ECF No. 2618) which are presented in summary form below.

| Relationship of Decedent | Solatium Award |
|---|---:|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

The Court further awarded the *Ashton* and *Burlingame* Plaintiffs who were U.S. citizens prejudgment interest of 4.96 percent per annum, compounded annually. ECF Nos. 8973, 9167; 3383 at 2, 3384 at 6. The Court applied that interest rate, 4.96 percent per annum, to other plaintiffs' awards throughout the MDL, and, most recently, to the *Ashton* non-U.S. National Plaintiffs' awards under state common law. (ECF No. 11927 at 14).

## III. The Court Has Personal and Subject Matter Jurisdiction Over the Taliban

This Court has already determined that it has personal and subject-matter jurisdiction over the Taliban for the claims of non-U.S. National plaintiffs. On March 26, 2026, Judge Daniels adopted Magistrate Judge Netburn's March 12, 2026 Report and Recommendation and held that the Court possesses supplemental jurisdiction over non-U.S. National Plaintiffs' claims under 28 U.S.C. § 1367(a) because those claims derive from the same common nucleus of operative fact as the U.S. Nationals' ATA claims. (ECF No. 11927 at 4-5; ECF No. 11870 at 9-11). The Court further adopted the Magistrate Judge's conclusion that personal jurisdiction over the Taliban is proper both on a pendent-personal-jurisdiction theory and under a *prima facie* analysis satisfying

New York's long-arm statute, CPLR § 302(a)(2) and (a)(3)(ii), and constitutional due process. (ECF No. 11927 at 4-5; ECF No. 11870 at 9-11).

The *Burlingame IV* Plaintiffs are part of the same *Ashton* group on whose non-U.S. National claims the Court made those findings: they proceed under the *Ashton* Consolidated Master Complaint, the Taliban was served by publication and thereafter defaulted (ECF Nos. 445, 1797), and the Court has entered liability judgments against the Taliban for the *Ashton* non-U.S. Nationals under state common law (ECF No. 11927 at 4). Because the *Burlingame IV* Plaintiffs are non-U.S. Nationals whose decedents were killed at the World Trade Center and who proceed within that same adjudicated *Ashton* group, their jurisdictional posture is indistinguishable in every material respect, and the *Burlingame IV* Plaintiffs respectfully request that the Court extend the subject-matter and personal jurisdictional findings set forth in ECF Nos. 11870 and 11927 to their claims.

## IV. Damages Should Be Awarded Against the Taliban Jointly and Severally for Non-U.S. Nationals

On March 30, 2023, this Court granted the *Ashton* Plaintiffs who were U.S. citizens motion for partial final judgment for damages (ECF No. 8973), and on June 27, 2023, entered corresponding Final Judgment for the *Burlingame III* U.S. National Plaintiffs (ECF No. 9167). Most recently, on March 26, 2026, this Court entered partial final judgments in favor of the *Ashton* non-U.S. National Plaintiffs under state common law (ECF No. 11927). By way of the instant motion, the *Burlingame IV* Plaintiffs respectfully request that partial final judgments for damages be entered in their favor and against the Taliban jointly and severally. This Court's jurisdiction reaches the claims of these non-nationals who were injured or killed and their family members by virtue of the fact that the terrorist attacks took place on U.S. soil with the largest number of victims being injured or killed only blocks from this courthouse at the World Trade Center complex in

lower Manhattan. The *Burlingame IV* Plaintiffs identified on Exhibit B1 and B2 to the Granito Declaration are the Estates of 9/11 decedents where the 9/11 decedent was known not to be a United States National on September 11, 2001, while Exhibit C to the Declaration identifies immediate family members of 9/11 decedents where the 9/11 decedent was not a U.S. National *and/or* the immediate family member was not a U.S. National on September 11, 2001.

The terrorists who carried out the attacks on September 11, 2001 did not differentiate their victims by nationality. Individuals working in the North Tower of the World Trade Center when it was hit were not somehow sequestered based on their citizenship status. The terrorists attacked the United States, and while the vast majority of those who were killed in the orchestrated attacks against the United States were U.S. Nationals, a significant percentage of the victims were not. This does not mean that they were treated differently by the terrorists or that their loved ones did not experience the grief and loss that U.S. Nationals did. This disparity between U.S. Nationals and foreign nationals is reflected in the two statutes addressing the provision of support by foreign sovereigns' acts of terrorism, and in the instant case against Iran, this Court has treated the non-U.S. Nationals the same in applying similar damage awards. Most recently, in ECF No. 11927, this Court applied that same principle to non-U.S. Nationals' claims against the Taliban under state common law. The *Burlingame IV* Plaintiffs seek a determination from the Court that they are entitled to the same level of damages as U.S. National plaintiffs with claims against the Taliban, with the exception of treble damages under the ATA for U.S. citizens.

**A. New York Law Applies to the Common Law Claims at Issue Here**

In applying state law, this Court recently, after determining that Iran was not entitled to sovereign immunity, treated Iran like any other defendant [like the Taliban] and evaluated the state law claims against Iran brought by non-U.S. Nationals. *See* ECF No. 9931 (Memorandum Decision

and Order, June 17, 2024). This Court then extended that analysis to the Taliban in ECF No. 11927 and confirmed that New York common law governs the claims of non-U.S. National Plaintiffs whose decedents were killed at the World Trade Center.

> Analyzing its liability for state torts requires the Court to first conduct a choice-of-law analysis. Multidistrict litigation courts apply the choice-of-law rules "that would have been applied by a state court in the jurisdiction in which a case was filed." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993).
>
> Since all [Plaintiffs'] actions were filed in New York, New York's choice-of-law rules govern. Distilled down, those rules essentially prescribe "an evaluation of the 'place of the tort - *i.e.*, 'the jurisdiction where the "last event necessary" to make the defendant liable occurred.'" (ECF No. 9666, at 7 (internal citation omitted)) (quoting *In re Sept. 11th Litig.*, 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007)). For these Plaintiffs, the estates of people killed at the World Trade Center and their family members, the relevant events occurred in New York City. This Court therefore analyzes their wrongful death, survival, and intentional infliction of emotional distress claims under New York law. (*See id.* at 7 & n.5.) *Id.* at 3.

The *Burlingame IV* Plaintiffs all lost a loved one on September 11, 2001 in New York and have brought claims here in New York to redress their injuries. As this Court has already recognized, federal courts apply the choice-of-law rules of the state in which they sit. *Armstead v. National RR Passenger Corp.*, 954 F. Supp. 111, 112 (S.D.N.Y. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). In this instance, this Court should apply *lex loci delicti*. *See Armstead*, 954 F. Supp. at 112-13 (stating "if…the tort did not occur in the domicile of either party, the *lex loci delicti* — law of the situs of the tort — will normally apply, unless displacing it [with another relevant jurisdiction's law] 'will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.'"). Following *Armstead*, Plaintiffs' common-law claims would be analyzed under the laws of New York as the situses of the tort.

**B. Wrongful Death**

This Court has previously addressed the claims of plaintiffs in this MDL under New York common law for wrongful death and determined that

> Section 5-4.1 of New York's Estates, Powers, and Trusts Law imposes liability for (1) the "death of a human being" where (2) "a wrongful act, neglect or default … caused the decedent's death," (3) the decedent's survivors "suffered pecuniary loss by reason of the decedent's death," and (4) a "personal representative" has been appointed to represent the decedent. *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013). ECF No. 9931 at 3.

The *Burlingame IV* Plaintiffs in Exhibit B2 seeking economic damages for their Estates meet these requirements. First, they assert claims on behalf of people killed in the 9/11 Attacks; Second, as this Court previously determined, the Taliban's default has essentially admitted the allegations in the *Ashton* complaint that alleged that the Taliban's provision of material support to al Qaeda proximately caused the 9/11 Attacks and the decedents' deaths. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), (ECF No. 8929 at 5-6). As the Taliban's "actions support liability for personal injuries, they satisfy the core requirement that wrongful death claims be predicated on conduct for which the defendant 'would have been liable to the decedent … if death had not ensued.'" N.Y. Est. Powers & Trusts Law § 5-4.1(1) (McKinney 2023); *see In re Terrorist Attacks of Sept. 11, 2001*, 349 F. Supp. 2d 765, 829 (S.D.N.Y. 2005). Decedents' estates are also entitled to an award for their pre-death pain and suffering under New York law in the amounts listed at Exhibit B1. Third, the decedents' survivors suffered pecuniary losses, in the amounts this Court previously awarded to these Estates against Iran, as reflected in Exhibit B2. And fourth, each of the estates is represented by a court-appointed personal representative.

> The Moving Plaintiffs are therefore entitled to "pecuniary" damages. Their economic losses were calculated in the economic expert reports previously submitted to this Court in connection with the claims against Iran, upon which this Court previously awarded economic damages, and Moving Plaintiffs seek the same amounts here. ECF No. 9931 at 4; *see also* ECF No. 11927 at 12.

### C. Survival Claims for Pain and Suffering

Section 11-3.2(b) of New York's Estates, Powers, and Trusts Law preserves causes of action "for injury to [a] person" after the injured person's death. N.Y. Est. Powers & Trusts Law § 11-3.2(b) (McKinney 2016). Claims brought under this statute are used in tandem with Section 5-4.1 wrongful death claims and permit estates to recover for "pain and suffering prior to death" due to a "decedent's injuries." *Johnson v. N.Y. State Police*, 659 F. Supp. 3d 237, 261 (N.D.N.Y. 2023).

The 9/11 victims' estates have satisfied this theory of liability. The decedents sustained fatal injuries in the attacks on the World Trade Center. As this Court explained in granting a personal injury judgment, the Taliban is liable for aiding and abetting the assault and battery that produced those injuries. (*See* ECF No. 8929.) The same facts warrant holding the Taliban liable for injuries that proved fatal under Section 11-3.2(b).

Accordingly, the *Burlingame IV* Plaintiffs listed in Exhibit B1 to the Granito Declaration, all of whom are Estates of non-U.S. National 9/11 Decedents, request that the Court award damages for the decedents' pain and suffering. This Court has consistently awarded $2,000,000 for pain and suffering to the Estates of 9/11 victims, including to the U.S. National Estates in *Burlingame I-II* (ECF No. 8973) and *Burlingame III* (ECF No. 9167), and most recently to the *Ashton* non-U.S. National Estates in ECF No. 11927. It should do so again here, in the amounts set forth in Exhibit B1 to the Granito Declaration.

### D. Intentional Infliction of Emotional Distress / Solatium

The *Burlingame IV* Plaintiffs at Count One of their complaint alleged not simply a wrongful death cause of action, which covers a potential claim for negligence, rather "Wrongful Death Based on Intentional Murder," and because the acts were "intentional and malicious acts of

terrorism on September 11, 2001, defendants have caused plaintiffs' decedents' family members to suffer severe and permanent injuries, damages and losses, including but not limited to the following:

> Non-economic damages, including but not limited to, the loss of consortium, solatium, society, companionship, care, comfort and love suffered by plaintiffs and decedents' other survivors." (Sixth Am. Master Complaint at ¶¶463-466).

This provided the Taliban with notice that the *Burlingame IV* Plaintiffs were seeking these particular non-economic damages that are akin to a loss of solatium. While it is true that the *Burlingame IV* Plaintiffs in Exhibit C to the Granito Declaration did not plead a separate cause of action in the complaint for intentional infliction of emotional distress, this Court can and has permitted other 9/11 Plaintiffs to make the claim for relief in their motions for final judgment that were not explicitly enumerated as a separate cause of action or count in their complaint. *See, e.g.*, ECF No. 9666, March 26, 2024 Memorandum Decision and Order at 5-6 ("In the FSIA context, '[w]hile [plaintiffs] d[o] not have to identify the specific source of law in [their] complaint,' they must 'do so at an appropriate time in the litigation.' *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 840 (D.C. Cir. 2009)"). The Court determined in the related *Burnett* action that did not specifically plead a separate cause of action for assault and battery, nonetheless adequately did so in their motion for final judgment. ECF No. 9666 at 5-6. Indeed, under New York law, a "court may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded, imposing such terms as may be just." N.Y. C.P.L.R. §3017 ("Relief in the alternative or of several different types may be demanded"). The *Burlingame IV* Plaintiffs seek relief for the non-economic damages incurred and described above (and in their complaint) that are otherwise afforded under New York law for the tort of intentional infliction of emotional distress.

This Court has held that:

> The tort of intentional infliction of emotional distress ("IIED") "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. NY Post Co.*, 81 N.Y.2d 115, 121 (1993); accord *Zonshayn v. Sackler Sch. of Med. (New York)*, 648 F. Supp. 3d 485, 498 (S.D.N.Y. 2023). Liability for intentional infliction of emotional distress extends to those who aid and abet the primary tortfeasor. *See Rich v. Fox News Network, LLC*, No. 18 Civ. 2223 (GBD), 2020 WL 5768430, at *5-6 (S.D.N.Y. Sept. 25, 2020) (analyzing claim for aiding and abetting IIED). ECF No. 9931 at 5-6, Memorandum Decision and Order, June 17, 2024; *see also* ECF No. 11927 at 13.

Here the *Burlingame IV* Plaintiffs, whose family members were killed in the 9/11 Attacks, have established the Taliban's liability for aiding and abetting IIED. The Taliban aided and abetted al Qaeda by knowingly providing substantial assistance in plotting the 9/11 Attacks. (*See* ECF No. 8973). And by carrying out the 9/11 Attacks, al Qaeda committed IIED. In satisfaction of the first two elements, the 9/11 Attacks, as "[a]cts of terrorism[,] [were] by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 116 (D.D.C. 2015). In satisfaction of the final two elements, the 9/11 Attacks publicly murdered the Plaintiffs' family members, thereby intentionally inflicting extreme emotional distress.

But within the context of the claims against Iran, and in the same Report and Recommendation, this Court held, "[b]ecause of the extreme and outrageous conduct inherent in acts of terrorism, courts have held that solatium claims in FSIA terrorism cases are 'indistinguishable' from claims of intentional infliction of emotional distress." ECF No. 3358 at 8 (citing *Surette v. Islamic Rep. of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (quoting *Wagner v. Islamic Rep. of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001))).

This Court has held that "the common law of intentional infliction of emotional distress governs questions of who is entitled to recover damages.... This is necessarily so because of the

'interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]' and the fact that generally accepted legal standards of the states provide the only steady foundation for the rules of decision." ECF No. 3363 at 2 (emphasis added) (quoting *Estate of Heiser v. Islamic Rep. of Iran*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009)). In fact, the courts addressing solatium damages have relied on the Restatement (Second) of Torts § 46 (1965), which is the precise source of the law in each of New York, Virginia, and Pennsylvania. *Id.* at 3. While physical proximity to the incident giving rise to the emotional distress is typically a required element of negligent infliction of emotional distress claims, not so for a public and highly televised intentional murder and "courts have uniformly held that a terrorist attack — by its nature — is directed not only at the victims but also at the victims' families." *Id.* (quoting *Salazar v. Islamic Rep. of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)); *Jenco v. Islamic Rep. of Iran*, 154 F. Supp. 2d 27, 35 (D.D.C. 2001). Acts of terrorism are, by their very definition, extreme and outrageous and intended to cause the highest degree of emotional distress. *Stethem v. Islamic Rep. of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002).

The *Burlingame IV* Plaintiffs' intentional infliction of emotional distress claims mirror the solatium claims actionable under the ATA for U.S. National plaintiffs arising from the same attacks, and mirror those the Court recently adjudicated for the *Ashton* non-U.S. National Plaintiffs. Their recovery under the common law should therefore be identical to the solatium framework this Court established against Iran, applied under the ATA against the Taliban, and just applied — on the same "well-established standards of state common law" reasoning — to the *Ashton* non-U.S. National immediate family members. (ECF No. 11927 at 13).

Here, each decedent listed on Exhibits B1 and B2 to the Granito Declaration died on 9/11. As set forth above, the Taliban committed several intentional acts which resulted in the 9/11 attacks.

The elements of intentional murder and infliction of emotional distress are satisfied here. The non-U.S. National 9/11 Decedents listed on Exhibits B1 and B2, who were born alive, were killed as a direct result of the Taliban's wrongful acts and its intentional material support for al Qaeda which resulted in the 9/11 attacks. The immediate family members of those decedents, listed on Exhibit C, suffered severe emotional distress as a direct and proximate result. Granito Declaration at ¶¶ 11; 13. And as detailed in the Declaration of Frank H. Granito, III, a personal representative has been appointed to administer each of those decedents' estates. Granito Declaration at ¶ 8.

This Court should grant the *Burlingame IV* Plaintiffs' request for compensatory damages for IIED. *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 146-47 (2d Cir. 2014) (approving compensatory damages for IIED claim). This Court should award damages to immediate family members of non-U.S. National 9/11 victims according to an established framework developed for solatium claims. (*See* ECF No. 2623). As IIED claims are "nearly indistinguishable from" solatium claims, the Court should therefore award damages here pursuant to the same framework, as set forth in Exhibit C. *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 357 (D.C. Cir. 2018) (quoting *Flanagan*, 87 F. Supp. 3d at 115). This is the same framework this Court just applied to the *Ashton* non-U.S. National Plaintiffs. (ECF No. 11927 at 13).

### E. The *Burlingame IV* Plaintiffs Are Entitled To Receive Damage Awards for their IIED Claims

Recently, this Court awarded damages to Non-U.S. National Plaintiffs based upon their state law claims. (ECF No. 11927, at 12-13). The *Burlingame IV* Plaintiffs seek default judgment

awards for their IIED claims based upon the damages framework previously established by this Court in the 9/11 litigation. In Judge Daniels' March 26, 2026 Order, the Court held that IIED claims are "nearly indistinguishable from" solatium claims (ECF No. 11927, at 13) and awarded damages pursuant to the now-familiar framework which awards $12,500,000 for spouses, $8,500,000 for children, $8,500,000 for parents, and $4,250,000 for siblings of the 9/11 decedents. (*Id.*, citing ECF 9931, at 6 (Order granting partial final judgments for Non-U.S. Nationals against Iran pursuant to state law); *see also,* ECF No. 2623 (2012 Order establishing the solatium damage framework). These same amounts were awarded to *Burlingame* Plaintiffs (who are U.S. Nationals) against the Taliban in 2023 (ECF No. 8973), and the Court awarded each of the *Burlingame IV* Plaintiffs before it in this motion these same solatium damage awards against Iran. (ECF No. 3387).

The *Burlingame IV* Plaintiffs identified in Exhibit C to the Granito Declaration are the immediate family members of two decedents who perished at the World Trade Center. They respectfully request that this Court approve solatium damage awards to each of them based upon their relationship with each of their decedents, also set out in Exhibit C to the Granito Declaration.

**F. Economic Damages for Estates**

Economic damages are specifically contemplated in terrorism litigation, whether under the FSIA, the ATA or the common law. The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1998); *see also Estates of Ungar ex rel. Strachman v. Palestinian Authority*, 304 F. Supp. 2d 232, 264-65 (D.R.I. 2004) (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "'empowers victims with all the weapons available in civil

litigation,'" suggesting "that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to § 2333(a)."). Accordingly, the beneficiaries of each decedent's estate are entitled to recover the economic damages, including lost wages, resulting from the decedent's wrongful death. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 82-83 (D.D.C. 2010); *see also Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 337 (D.D.C. 2006) (estate entitled to recover "the present value of compensatory damages, including lost wages that the decedent might reasonably have been expected to earn but for the wrongful death"). Thus, sponsors of terrorist attacks that kill victims are routinely "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015) (quoting *Valore*, 700 F. Supp. 2d at 78). Previously, this Court awarded economic damages in the Iran and Taliban cases under NY law for the "economic losses stemming from the wrongful death of the decedent." *See, e.g.*, ECF No. 2623 at 2-3. And most recently, this Court awarded economic damages to non-U.S. National estates under state common law against the Taliban. (ECF No. 11927 at 12).

In doing so, this Court adopted the economic loss calculations set forth in the plaintiffs' economic expert reports previously submitted in connection with the claims against Iran. The Estates set forth in Exhibit B2 seek economic damages in the same amounts this Court previously awarded to those same Estates against co-tortfeasor and co-defendant Iran — amounts this Court has already reviewed and found proper — as reflected in Exhibit B2 to the Granito Declaration. Granito Declaration at ¶¶ 11-12.

The *Burlingame IV* Plaintiffs do not submit a new economic expert affidavit with this motion and do not seek to relitigate the economic-loss amounts. They seek only the same

economic-loss amounts that this Court already reviewed, found proper, and awarded to these same Estates in its final judgments against co-tortfeasor Iran, as set out in Exhibit B2.

Based on the foregoing, the *Burlingame IV* Plaintiffs respectfully ask that this Court award economic damages to the estates set forth in Exhibit B2 of the Granito Declaration in the amounts stated therein, being the same amounts previously awarded to those Estates by this Court against co-tortfeasor Iran.

### G. Punitive Damages

The *Burlingame IV* Plaintiffs are also entitled to punitive damages. In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request deny punitive damages without prejudice and grant the Burlingame Plaintiffs permission to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels' Order in *Burnett* authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### H. Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahiriya*, 775 F. Supp. 2d 48, 86-87 (D.D.C. 2011). This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001, until the date of judgment. ECF No. 2618 at 13-14. This Court, recognizing that prejudgment interest was appropriate in cases such as these cases, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%.

In *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Magistrate Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually, to all of the claims. ECF No. 3384 at 6. Most recently, in ECF No. 11927 (at 14), this Court applied the same 4.96 percent per annum, compounded annually, to the *Ashton* non-U.S. National Plaintiffs' awards under state common law. The same rate should apply here.

## V. CONCLUSION

For the reasons set forth herein, the statements contained in the Granito Declaration, and those set forth in prior motions for damages, the *Burlingame IV* Plaintiffs respectfully request that the Court grant an Order:

(1) Confirming that service of process in the above-captioned matter was properly effected upon the Taliban;

(2) Confirming that this Court possesses personal jurisdiction over the Taliban for the instant claims;

(3) Determining that this Court has subject-matter jurisdiction over the Taliban under state common law for actions arising out of intentional murder and intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that targeted innocent civilians resulting in death, personal injury, and significant grief sustained by family members of those killed in the attacks and there is no just reason for delay in the entry of partial final judgments against the Taliban;

(4) Awarding damages under applicable common law to the non-U.S. National the *Burlingame IV* Plaintiffs listed in Exhibits B1, B2, and C to the Granito Declaration against the Taliban — pain and suffering of $2,000,000 per decedent (Exhibit B1); economic loss in the amounts previously awarded to those Estates against co-tortfeasor and co-defendant Iran (Exhibit B2); and solatium of $12,500,000 per spouse, $8,500,000 per parent, $8,500,000 per child, and $4,250,000 per sibling (Exhibit C) — consistent with the awards this Court recently entered for the similarly-situated *Ashton* non-U.S. National Plaintiffs (ECF No. 11927);

(5) Awarding the *Burlingame IV* Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

(6) Denying without prejudice an award of punitive damages and granting Burlingame *IV* Plaintiffs permission to seek punitive damages and other appropriate damages at a later date;

(7) Granting permission for all other Plaintiffs not appearing in Exhibits B1, B2 and C to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; and

(8) Granting Plaintiffs such other and further relief as this honorable Court deems just and proper.

Dated: Rye Brook, New York
August 31, 2026

Respectfully submitted,

**SPEISER KRAUSE, PC**

By: /s/ *Frank H. Granito, III*
Frank H. Granito, III, Esq. (FG9760)
Douglas A. Latto, Esq. (DL3649)
Jeanne M. O'Grady, Esq. (JO3362)
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333
Fax: (914) 220-5334
f3g@speiserkrause.com
dal@speiserkrause.com
jog@speiserkrause.com

*Attorneys for Burlingame Plaintiffs*