USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/3/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**---------------------------------------------------------------X**

**In re:**

**TERRORIST ATTACKS ON SEPTEMBER 11, 2001**

**---------------------------------------------------------------X**

**03-MD-01570 (GBD)(SN)**

**REPORT & RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

Desimone v. Islamic Republic of Iran, No. 21-cv-07679 (GBD)(SN)

Stephanie Desimone was three months pregnant when the attack on the Pentagon claimed the life of her husband, Commander Patrick Dunn. Their daughter, Alexandria Desimone, was born in March 2002—six months after the 9/11 Attacks. Alexandria now seeks compensation from the Islamic Republic of Iran ("Iran") for supporting the Attacks that deprived her of a father. Specifically, she moves for partial default judgment against Iran under the Foreign Sovereign Immunities Act ("FSIA"). See ECF No. 11481.[1] She requests $8.5 million in solatium damages, on par with those typically awarded to the children of 9/11 decedents.

This motion requires the Court to decide whether children *in utero* during the 9/11 Attacks may recover solatium damages under § 1605A of the FSIA. Because well-established state law permits after-born children to recover solatium damages on the same basis as children already born, Alexandria may recover solatium damages from Iran. The Court recommends assessing her damages at half of the baseline award, however, because Alexandria did not

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

contemporaneously experience her father's death. Accordingly, the Court should grant Alexandria's default judgment motion and award her $4.25 million in solatium damages.

**BACKGROUND**

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background.

On September 11, 2001, Patrick Dunn was a Commander in the United States Navy and assigned to the Pentagon's Naval Command Center in Arlington, VA. ECF No. 11483 ¶ 5. He perished as a result of the airplane crash into the Pentagon at the age of 39. Id. He left behind his spouse, Stephanie Desimone, and an unborn daughter, Alexandria Desimone. Alexandria was born six months after the 9/11 Attacks, in March 2002. See ECF No. 11483-2 at 1 (birth certificate from the State of Maryland filed on March 19, 2002, and listing Dunn as Alexandria's father). Alexandria is a United States citizen. Id.

Like many families, Stephanie and Alexandria Desimone (the "Desimone Plaintiffs") sought to hold Iran accountable for the 9/11 Attacks. They filed their lawsuit against Iran on September 27, 2021, through a Short Form Complaint. No. 21-cv-7679, ECF No. 4 (the "Complaint"); see ECF Nos. 4045, 5234 (approving Iran short form complaint process). The Complaint alleged that Iran materially and knowingly supported al Qaeda before and after the 9/11 Attacks, and that Iran's support directly enabled and assisted al Qaeda in carrying out the Attacks that killed Dunn. Specifically, the Complaint adopted the allegations and causes of action set out in the consolidated complaint in Ashton v. al Qaeda Islamic Army, No. 02-cv-6977, and Federal Insurance Co. v. al Qaida, No. 03-cv-6978, as well as the Court's rulings and the other filings associated with those complaints. No. 21-cv-7679, ECF No. 4 at 2–3. The Complaint likewise incorporated the factual allegations and findings in those pleadings and

orders filed in Havlish v. Bin Laden, No. 03-cv-9848, and the main MDL docket, plus the evidence submitted in the Havlish proceedings before Judge Daniels in December 2011. Id. at 2.

The Desimone Plaintiffs proceeded to serve Iran consistent with the methods used in other member cases. They initially attempted to serve Iran via mail, but Iran refused service. See No. 21-cv-76679, ECF No. 29; ECF No. 11482 at 11. After 30 days elapsed following this attempt, the Desimone Plaintiffs commenced the process to service Iran via diplomatic channels. See No. 21-cv-7679, ECF No. 37; ECF No. 11482 at 11. That service was successfully completed on May 23, 2023. See No. 21-cv-7679, ECF No. 54-1 at 1. Iran never appeared or answered the Complaint. The Clerk of Court thus entered Iran's default on August 14, 2023. See No. 21-cv-7679, ECF No. 59.

After certain decisions in this litigation addressed the availability of solatium damages to immediate family members, Alexandria voluntarily dismissed her claim without prejudice on May 28, 2024. See ECF Nos. 9836 at 1–2, 11454 at 2. Almost a year later, however, the Court of Appeals for the District of Columbia Circuit issued its decision in K.E.F.V. ex rel. Vickers v. Islamic Republic of Iran, 135 F.4th 988 (D.C. Cir. 2025), which addressed solatium damages for after-born children like Alexandria. In that appeal, the district court had denied a request for solatium damages under the FSIA § 1605A from a child born two months after her parent's death in a terrorist attack. Cabrera v. Islamic Republic of Iran ("Cabrera I"), No. 19-cv-3835 (JDB), 2023 WL 3496303, at *7–8 (D.D.C. May 16, 2023). The Court of Appeals reversed and held that "children who are in utero at the time a parent is killed in a terrorist attacks and who are later born may seek solatium under the FSIA." K.E.F.V., 135 F.4th at 996. Based on K.E.F.V., Alexandria asked the Court to reinstate her claim under the FSIA for solatium damages. See ECF No. 11454 at 3. The Court granted her amendment and allowed her to present her solatium claim

as originally pleaded. See ECF No. 11457 at 2–3 (making "no decision on the merits of Alexandria's solatium claim"). Alexandria now seeks partial default judgment on liability against Iran and requests solatium damages consistent with those the Court has typically awarded to the children of 9/11 decedents. See ECF No. 11484 at 1.

**DISCUSSION**

Alexandria Desimone is a United States national who brings her claim under § 1605A of the FSIA. To establish her "claim or right to relief by evidence satisfactory to the court," 28 U.S.C. § 1608(e), she filed a declaration from counsel and her birth certificate from the State of Maryland. See ECF Nos. 11483, 11483-2. The Court may "accept as true the plaintiffs' uncontroverted evidence," including their affidavits. Elahi v. Islamic Republic of Iran, 124 F. Supp. 2d 97, 100 (D.D.C. 2000); see Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13, 16–17 (D.D.C. 2002).

To grant Alexandria's requested relief, the Court must resolve (1) whether it has jurisdiction over her claims; (2) whether Iran defaulted; (3) whether Iran is liable to her; and (4) if all else is true, what damages are appropriate.

**I. The Court Has Jurisdiction Under the FSIA**

The Foreign Sovereign Immunities Act ("FSIA") "supplies the ground rules for 'obtaining jurisdiction over a foreign state in the courts of this country.'" Federal Republic of Germany v. Philipp, 592 U.S. 169, 175 (2021) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989)). As its name suggests, the FSIA makes foreign states immune from suit by default and confers jurisdiction over actions only if they meet strict requirements. Alexandria's claim clears these hurdles, so the Court has jurisdiction over it.

First, the Court has subject matter jurisdiction over her claims. Under the FSIA, district courts have subject matter jurisdiction over nonjury civil actions brought *in personam* against

foreign states if "one of several enumerated exceptions to immunity applies." Republic of Sudan v. Harrison, 587 U.S. 1, 4 (2019); see 28 U.S.C. §§ 1330(a), 1604. Alexandria relies on the immunity exception codified at 28 U.S.C. § 1605A(a),[2] which allows U.S. nationals to hold a foreign state sponsor of terrorism accountable for "acts of terrorism or the provision of material support or resources for acts of terrorism" when those acts or support are undertaken "by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency." ECF No. 5879 at 2 (citing 28 U.S.C. § 1605A(a)(1)). The Court previously found that it possesses subject matter jurisdiction over Iran for claims under § 1605A. See In re Terrorist Attacks on Sept. 11, 2001, No. 03-md-1570 (GBD), 2011 WL 13244047, at *36 (S.D.N.Y. Dec. 22, 2011) ("Havlish I"). And in the Desimone member case, the Court has entered partial default judgments against Iran under § 1605A for other plaintiffs. See ECF No. 9926 at 1. These decisions govern Alexandria's claim. Thus, the Court has subject matter jurisdiction under § 1605A.

Second, the Court has personal jurisdiction over Iran. With subject matter jurisdiction established, personal jurisdiction is simply a matter of showing "valid service of process." Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela, 863 F.3d 96, 104 (2d Cir. 2017) (cleaned up); accord 28 U.S.C. § 1330(b). The FSIA specifies four methods of serving foreign states in descending order of preference. See 28 U.S.C. § 1608(a). The first two methods were not possible because the Desimone Plaintiffs have no "special arrangement" with Iran, id.

[2] As the Court has previously explained, the elements of § 1605A(a) "almost total[ly] overlap" with the § 1605A(c) cause of action that Alexandria asserts here. See, e.g., ECF No. 11400 at 7 n.4 (quoting Force v. Islamic Republic of Iran, 464 F. Supp. 3d 323, 369 (D.D.C. 2020)). The only relevant distinction is that § 1605A(c) applies to a more limited set of plaintiffs than § 1605A(a). See Force, 464 F. Supp. 3d at 369. But a qualifying "plaintiff that offers proof" of one "has also established" the other. Id. The Court has accordingly collapsed the jurisdictional and liability inquiries for § 1605A and discusses both below. It exercises jurisdiction over claims for which it finds the liability requirements satisfied.

§ 1608(a)(1), and Iran is not party to an "international convention on service of judicial documents." Id. § 1608(a)(2); see ECF No. 11482 at 11. The third, service by registered "mail" proved ineffective; the Clerk of Court mailed the requisite documents, but Iran failed to acknowledge receipt or refused service. 28 U.S.C. § 1608(a)(3); see No. 21-cv-7679, ECF No. 29; ECF No. 11482 at 11. But service via the fourth method, through "diplomatic channels," proved successful on May 23, 2023. 28 U.S.C. § 1608(a)(4); No. 21-cv-7679, ECF No. 54-1 at 1 (diplomatic note). Because the Desimone Plaintiffs properly served Iran, the Court may exercise personal jurisdiction over Iran. See ECF No. 9926 at 1 (finding service of process was properly effectuated in this member case).

Accordingly, because the Desimone Plaintiffs properly effectuated service on claims within the Court's subject matter jurisdiction, jurisdiction poses no barrier to the Court granting default judgment on Alexandria's claims.

## II. Iran Defaulted

After the Desimone Plaintiffs effectuated service, Iran had "sixty days" to "serve an answer or other responsive pleading" in their member case. 28 U.S.C. § 1608(d). Iran did not respond or otherwise appear within that time (or since) in this case. The Clerk thus entered a Certificate of Default against Iran on August 14, 2023. See No. 21-cv-7679, ECF No. 59.

## III. Desimone Establishes Liability under § 1605A

Alexandria requests a default judgment as to liability. See ECF Nos. 11482 at 9, 11484-1 at 2. Section 1605A(c) of the FSIA provides a cause of action for claims (1) brought by a United States national or her representative (2) against a designated foreign state sponsor of terrorism that (3) directly, or through a state official, employee, or agent, committed or provided material

support or resources for (4) "an act of torture, extrajudicial killing, aircraft sabotage, or hostage taking" that (5) caused (6) personal injury or death.[3] 28 U.S.C. § 1605A(a)(1), (c).

Alexandria's claim meets all six elements. First, she is a United States citizen, and Dunn was a member of U.S. armed forces on September 11, 2001. ECF Nos. 11483 ¶¶ 5–6, 11483-2; see 28 U.S.C. § 1605A(a)(2)(A)(ii). Second, Iran has been designated a state sponsor of terrorism since 1984. State Sponsors of Terrorism, Bureau of Counterterrorism, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism (last visited Aug. 25, 2026). Third, the Court held a hearing on the adequacy of the evidence of Iran's culpability and found that "Iran provided direct support to Al Qaeda specifically for the [9/11 Attacks]." Havlish I at *40. The Court then held that the evidence satisfied 28 U.S.C. § 1608(e)'s requirements for a default judgment. See id. at *39. Alexandria's motion incorporates that evidence. See ECF No. 11482 at 5–7, 17–18; see also Anderson v. Islamic Republic of Iran, 753 F. Supp. 2d 68, 75 (D.D.C. 2010) (permitting courts "in subsequent related cases to rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced" (quoting

---

[3] The courts are split as to the requirements of § 1605A(c). Some say that the provision requires plaintiffs to articulate a claim sounding in tort. In Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran, 313 F. Supp. 3d 50 (D.D.C. 2018), for example, the district court explained that "[i]n order to satisfy the statutory elements of causation and injury, plaintiffs in actions arising under companion [§] 1605A(c) 'must articulate the justification for such recovery, generally through the lens of civil tort liability.'" Id. at 61 (quoting Rimkus v. Islamic Republic of Iran, 750 F. Supp. 2d 163, 176 (D.D.C. 2010)). On this interpretation, "a claimant 'must identify a particular theory of tort liability—*e.g.*, intentional infliction of emotional distress, wrongful death, [or] battery'"—to properly pursue a § 1605A(c) claim. Id. (quoting Stansell v. Republic of Cuba, 217 F. Supp. 3d 320, 341 (D.D.C. 2016)). Other courts simply analyze the elements of § 1605A(c) as written in the statute, using background tort principles where necessary or useful. See, e.g., Roberts v. Islamic Republic of Iran, 581 F. Supp. 3d 152, 173 (D.D.C. 2022) (analyzing § 1605A(c) claims without referencing theory of tort liability).

The decision in K.E.F.V. seems to falls into the latter camp. The Court of Appeals applied the elements of § 1605A(c) as written to determine whether an after-born child could establish Iran's liability. K.E.F.V., 135 F.4th at 991. It then addressed the "question of remedy," id., including whether after-born children could recover solatium damage at all, through a separate analysis that drew on tort principles "well-established" in state law. Id. at 992–96. The Court follows the Court of Appeals' approach in K.E.F.V. in assessing the liability and remedy aspects of Alexandria's claim.

Rimkus, 750 F. Supp. 2d at 172)). Fourth, "the 9/11 attacks and the resulting death[s] constitute 'extrajudicial killings.'" Havlish I at *39 (quoting 28 U.S.C. § 1605A(c)). As for the fifth and sixth elements, Iran's material support for the 9/11 Attacks caused Alexandria's father's death. See ECF No. 11483 ¶ 5; K.E.F.V., 135 F.4th at 991 (finding that child born two months after father's death satisfied all elements of § 1605A(c)).

Accordingly, Alexandria establishes Iran's liability under § 1605A. The main issue is what remedy she should receive.

## IV. Desimone Is Entitled to Solatium Damages

Section 1605A permits plaintiffs to recover damages for "death" and specifically allows the award of "solatium . . . and punitive damages." 28 U.S.C. § 1605A(c)(4). Solatium claims involve two main elements. The "preponderant element" is the "mental anguish, bereavement and grief resulting from the fact of [a] decedent's death." Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 30 (D.D.C. 1998). The remainder of a solatium claim then stems from a claimant's inability "to resolve the sense of anguish" that "haunt[s]" them long after their loved one has died, as well as the "loss of [a] decedent's society and comfort." Id. at 30, 31; see Fraenkel v. Islamic Republic of Iran, 892 F.3d 348, 356 (D.C. Cir. 2018).

The Court has awarded solatium damages to those who lost immediate family members in the 9/11 Attacks pursuant to the following framework: $12,500,000 to spouses of 9/11 decedents, $8,500,000 to parents and children, and $4,250,000 to siblings. See ECF Nos. 2618 at 11, adopted by 2623 at 4. Consistent with this framework, Alexandria's mother, Stephanie, was awarded solatium damages of $12.5 million. See ECF No. 9926 at 2, 6.

The Court has not addressed, however, whether solatium damages are available to the children of 9/11 decedents born after their parents' deaths. See ECF No. 11482 at 22. Based on the reasoning in K.E.F.V. v. Iran, the Court permits Alexandria and the other children who were

*in utero* at the time of the 9/11 Attacks and born afterwards to recover solatium damages. The Court then determines that the appropriate damages amount for this group is half the baseline award given to the children of 9/11 decedents: $4.25 million.

**A. After-Born Children May Recover Solatium Damages under § 1605A**

Section 1605A is silent as to whether after-born children, if they satisfy all other elements, may recover solatium damages. 28 U.S.C. § 1605A(c). In interpreting this federal cause of action, the Court therefore looks to "the well-established standards of state common law." ECF No. 3363 at 2 (quoting Estate of Heiser v. Islamic Republic of Iran, 659 F. Supp. 2d 20, 24 (D.D.C. 2009)). This approach is necessary because the "generally accepted legal standards of the states provide the only steady foundation for the rules of decision" and "promot[e] uniformity of determinations" related to state-sponsored terrorist attacks. Id. (quoting Heiser, 659 F. Supp. 2d at 24–25).

Before the decision in K.E.F.V., courts used the Restatement (Second) of Torts § 46, on the intentional infliction of emotional distress, as a guide for deciding who possesses standing to recover solatium damages under § 1605A. The prevailing rule was that "a plaintiff . . . must have been alive at the time of the attack in order to collect solatium damages," otherwise terrorist attacks were not "directed" at them. Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 15 (D.D.C. 2012); see Goldstein v. Islamic Republic of Iran, 383 F. Supp. 3d 15, 22 (D.D.C. 2019) ("The bulk of authority in FSIA cases adopts the view that children born after a terrorist incident are not entitled to solatium damages."). When no Court of Appeals decision had yet addressed this issue, district courts in this circuit typically followed the weight of authority and denied after-born children recovery. See, e.g., ECF No. 8901 at 14–15 (suggesting, based on Davis, that after-born children could not recover solatium); cf. Raanan v. Binance Holdings Ltd., No. 24-cv-697 (JGK), 2025 WL 605594, at *10 (S.D.N.Y. Feb. 25, 2025) (finding child born after Hamas-

perpetrated attacks injured her parents could not sue for emotional distress under the Anti-Terrorism Act because her injuries are not "reasonably foreseeable"). But see Smith ex rel. Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 237, 239 (S.D.N.Y. 2003) (awarding solatium for child who was born three months after 9/11).

Last year, the Court of Appeals for the District of Columbia Circuit addressed this issue and held that children *in utero* when a parent is killed in a terrorist attack may recover solatium. That opinion begins by reasoning that "[t]he FSIA does not expressly provide for after-born plaintiffs to recover solatium. But neither does it expressly preclude their recovery." K.E.F.V., 135 F.4th at 992. The Court of Appeals thus relied on "well-established statements of common law"—found in state reporters, state statutes, the Restatement of Torts, and other respected treatises—to "provide guideposts for whether solatium is available" to the plaintiff. Id. at 992 (citing Fraenkel, 892 F.3d at 353). It determined that state wrongful death statutes provide the "best analogue" to the FSIA's private cause of action because (1) that provision itself resembles a wrongful death statute, and (2) solatium damages are commonly awarded as a remedy in wrongful death suits. Id.; see Flatow, 999 F. Supp. at 29–32.

The Court of Appeals then surveyed 13 jurisdictions that have interpreted wrongful death statutes for after-born children. It found that all decisions applying state law to this issue "firmly establish that children born after the death of a parent can recover for that parent's wrongful death" and recover solatium damages. K.E.F.V., 135 F.4th at 992–93, 995. In particular, the Court of Appeals examined decisions that interpreted Virigina and New York law to permit recovery. Id. at 993–94. In Chick Transit Corp. v. Edenton, the Virginia Supreme Court of Appeals affirmed a damages award to an after-born child whose father was killed in a car crash. See 170 Va. 361, 368 (1938). The Chick Transit court explained that the after-born child "will

miss the solace and comfort usually provided by a father to his child no less by reason of the fact that he was born after his father was killed." Id. Likewise, an appellate court in New York permitted a child born one day after her father was run over by a train to maintain an action under the state's dram shop act for her father's death. See Quinlen v. Welch, 23 N.Y.S. 963, 963–65 (N.Y. Gen. Term. 1893) ("An unborn child, if subsequently born alive, if deprived of a parent, suffers in its means of support equally with the children that were living at the time of the decease of such parent."). Based on this survey, the Court of Appeals found it unnecessary to assess whether state intentional infliction of emotion distress law, loss of parental consortium, or provisions of the Restatement (Second) of Torts provided "potential common law analogues." K.E.F.V., 135 F.4th at 995 n.7. And the Court of Appeals thus concluded that K.E.F.V. and other "children who are in utero at the time a parent is killed in a terrorist attack and who are later born" may recover solatium damages under the FSIA. Id. at 996.

The Court finds the reasoning in K.E.F.V. persuasive. Courts in the District of Columbia Circuit regularly analyze and apply the FSIA's terrorism exceptions, including the private right of action provision in § 1605A(c). See, e.g., In re Islamic Republic of Iran Terrorism Litig., 659 F. Supp. 2d 31, 59 (D.D.C. 2009) (applying "new cause of action included with the new terrorism exception of § 1605A"); Heiser, 659 F. Supp. 2d at 24, 31 (awarding compensatory damages under § 1605A just after its passage). Thus, the Court has frequently relied on these decisions in interpreting the FSIA in this litigation. See, e.g., ECF No. 2618 at 10–11 (establishing upward departures from the solatium damages framework articulated in Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229 (D.D.C. 2006)), adopted by ECF No. 2623 at 4; ECF No. 3363 at 2–16 (assessing non-immediate family members' solatium claims by relying on multiple decisions in the D.C. Circuit), adopted by ECF No. 3384 at 6. In addition, as

analyzed in K.E.F.V., Virginia and New York law support the Court of Appeals' holding. See K.E.F.V., 135 F.4th at 993–94. The statements of Virigina and New York law in Chick Transit and Quinlen, respectively, are relevant in this case because Alexandria's father perished at the Pentagon site in Arlington, Virginia, ECF No. 11483 ¶ 5, and the Desimone Plaintiffs filed their case in New York. If Alexandria had pursued recovery under state tort law, then regardless of whether the Court applied Virginia or New York law to her claim against Iran, she would have been permitted to recover. The Court therefore recommends adopting the conclusion stated in K.E.F.V.: "[C]hildren who are in utero at the time a parent is killed in a terrorist attack and who are later born may seek solatium under the FSIA." K.E.F.V., 135 F.4th at 996. It applies this decision below to Alexandria's claim.

The K.E.F.V. ruling is not contrary to the Court's prior decisions in this litigation. The Court previously denied the solatium damages claims of the surviving family members of latent injury decedents. ECF Nos. 8901 at 16, adopted by 9274 at 4–5. The surviving family members included "people who . . . were born after 2001." ECF No. 8901 at 14. In the process, the Court suggested that "terrorist acts are not directed at family members who lacked a relationship with the victim at the time of the attack." Id. (citing Davis, 882 F. Supp. 2d at 15). It also raised concerns that permitting recovery for surviving family members who "were born after 2001" would create a "potentially unlimited class" that could "remain open for decades after a terrorist attack." Id. (quoting Davis, 882 F. Supp. 2d at 15). The Court did not rule, however, that children born after the 9/11 Attacks, but *in utero* at the time of the Attacks, could not recover solatium for their parent's death on September 11, 2001. Its recommendation applied only to latent injury decedents who perished in the months and years following the 9/11 Attacks from fatal conditions. ECF Nos. 8901 at 14, 16, adopted by 9274 at 4–5. In K.E.F.V., the Court of Appeals

also addressed these arguments. Because solatium damages compensate plaintiffs for both the "injury to the feelings of a family member caused by the circumstances of a decedents death" *and* "the loss of the decedent's comfort and society," terrorist attack still cause an after-born child to suffer the second injury. K.E.F.V., 135 F.4th at 995. Limiting solatium recovery "to plaintiffs who are *in utero* at the time of the terrorist attack and born later," as K.E.F.V. establishes, id. at 996, also cabins the class of eligible plaintiffs and prevents "expansive and indefinite scope of liability." ECF No. 8901 at 14.

Thus, Alexandria may recover solatium damages. Alexandria was *in utero* at the time her father was killed in the 9/11 Attacks at the Pentagon site. She was born six months later. ECF Nos. 11483 ¶¶ 5–6, 11483-2. As a result of the Attacks, she was "forced to grow up without the 'love, affection, care, attention, companionship, comfort and protection' that [her] father[] would have provided." K.E.F.V., 135 F.4th at 996 (quoting Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 585 (1974)). While the Court does not have an individual declaration from Alexandria, counsel confirms these basic facts.[4] See ECF No. 11483. They are sufficient to establish Alexandria's eligibility for solatium damages. See K.E.F.V., 135 F.4th at 996.

**B. The Appropriate Damages Amount Is Half the Baseline Award**

The only issue remaining is the amount of solatium damages that appropriately compensates Alexandria. While K.E.F.V. permitted *in utero* children to recover, it did not specify what amount of solatium damages is appropriate.

In assessing solatium damages, the Court must "account for various facts and circumstances" and "use those factors to arrive at an appropriate numerical expression of total

[4] Any future motions by plaintiffs *in utero* at the time of the 9/11 Attacks should include an individual declaration from the plaintiff. This declaration should address the plaintiff's experience of losing a parent as a result of the 9/11 Attacks. See, e.g., ECF No. 3363 at 12 (reviewing declarations submitted by non-immediate family members describing their relationships with 9/11 decedents).

pain and grief—encapsulated in the solatium award." Oveissi v. Islamic Republic of Iran, 768 F. Supp. 2d 16, 25 (D.D.C. 2011). Solatium compensates family members for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." ECF No. 2618 at 10 (quoting Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105, 196 (D.D.C. 2003)). Based on these dual harms, the district court in Estate of Heiser v. Iran, 466 F. Supp. 2d 229 (D.D.C), established a baseline award of $5 million for the children of decedents. In this MDL, the Court has granted an upward departure from the Heiser figure based on facts and circumstances specific to the 9/11 Attacks. Given the "extraordinarily tragic circumstances surrounding the September 11th attacks," "their indelible impact on the lives of the victims' families," and the "frequent reminders of the events of that day," a baseline award of $8.5 million for the children of 9/11 decedents was appropriate. ECF Nos. 2618 at 11, adopted by 2623 at 4. Alexandria requests this baseline award. See ECF No. 11484-2 at 1.

Considering all the relevant circumstances, however, the appropriate damages award for after-born children is *half* the baseline award given to the children of 9/11 decedents.

In K.E.F.V., the court noted that the after-born plaintiff's "recovery may well be smaller than if [she] had also suffered mental anguish at the time of her father's death as a result of terrorists directing an attack at her" and, therefore, she may "recover less solatium damages than her older siblings recovered." K.E.F.V., 135 F.4th at 995 (cleaned up). Courts have adopted and refined this reasoning in the wake of K.E.F.V. On remand, the district court awarded K.E.F.V. and other *in-utero* plaintiffs solatium damages corresponding to "a 50% downward departure from the . . . baseline for children of deceased victims." See Cabrera v. Islamic Republic of Iran, No. 19-cv-3835 (JDB), ECF No. 302 at 1–2 (D.D.C. May 12, 2025). In the same case, the district court

awarded solatium damages to a child born two months after her father was injured in a terrorist attack (but survived); this award also reflected a 50 percent downward departure from the baseline award for similarly situated children. Cabrera v. Islamic Republic of Iran ("Cabrera III"), No. 19-cv-3835 (JDB), 2025 WL 1423739, at *16 (D.D.C. May 16, 2025). The district court reasoned that because the Court of Appeals permitted after-born children to recover, it would "vary downward from the . . . baseline by 50 percent for in-utero plaintiffs because they have 'not suffered the same mental anguish as most plaintiffs that experienced the loss of a parent.'" Id. at *16; see Cabrera v. Islamic Republic of Iran ("Cabrera II"), No. 19-cv-3835 (JDB), 2024 WL 864092, at *3 n.2 (D.D.C. Feb. 29, 2024) ("A 50% downward departure is thus appropriate here and maintains consistency among awards."). Other recent decisions align with this 50-percent approach. See Karcher v. Islamic Republic of Iran, No. 16-cv-232 (CKK), 2026 WL 179315, at *2–4 (D.D.C. Jan. 23, 2026) (reducing solatium award to half the baseline for a child born five months after their father perished in a non-9/11 Iranian terrorist attack); Goldstein, 383 F. Supp. 3d at 22–23 (awarding "half the amount the other siblings are to receive" to a child born two days after their brother was injured in a bus bombing).

Halving the baseline award also aligns with the dual harms addressed by solatium damages. After-born children typically experience only one of the two harms: the "loss of [a] decedent's society and comfort," but not the "mental anguish, bereavement, and grief" at the time of a decedent's death. Flatow, 999 F. Supp. at 30, 31; see Fraenkel, 892 F.3d at 356. Recent district court cases from the D.C. Circuit, cited above, follow this reasoning. Moreover, in other circumstances in this litigation, the Court has adjusted baseline damages downward to account for factors unique to certain subsets of family member plaintiffs. See, e.g., ECF No. 3363 at 22 (recommending a stepmother receive half the normal award because she entered the decedent's

life when he was 11 years old); ECF No. 5387 at 7 (recommending a stepsibling receive half the normal award because he began living with the decedent at age 14).

The Court thus recommends awarding Alexandria $4.25 million in solatium damages. This amount corresponds to half of $8.5 million, the baseline award typically given to the children of 9/11 decedents. Alexandria was not alive at the time of Dunn's death in the 9/11 Attacks. She could not have felt "mental anguish, bereavement, and grief" in losing her father on that day. Fraenkel, 892 F.3d at 356. Because of the 9/11 Attacks, however, Alexandria grew up without the "'love, affection, care, attention, companionship, comfort and protection' that [her] father[] would have provided." K.E.F.V., 135 F.4th at 996 (quoting Sea-Land Services, Inc., 414 U.S. at 585). This is a serious loss that will affect her throughout her life; the Court does not minimize it. But the Court must account for the relevant "facts and circumstances" and "use those factors to arrive at an appropriate numerical expression of total pain and grief." Oveissi, 768 F. Supp. 2d at 25. Alexandria's experience is meaningfully different from those children who were alive and contemporaneously aware, even at a young age, of the death of their parent. The Court acknowledges that this 50-percent downward adjustment could make the amount of solatium damages "turn on the mere happenstance of being in utero or ex utero at the time of the [9/11 Attacks]." K.E.F.V., 135 F.4th at 996. But in a litigation of this size and complexity, "[s]ome lines must be drawn." Davis, 882 F. Supp. 2d at 15 (quoting Heiser, 659 F. Supp. 2d at 27). Awarding Alexandria half the baseline award for children fairly compensates her for the loss of her father.[5]

---

[5] In certain cases, courts have justified higher awards based on "special circumstances." Goldstein, 383 F. Supp. 3d at 22–23. In one case, the district court adjusted upward solatium damages for an after-born plaintiff because "her father's death set in motion a chain of events that destroyed her mother and left her orphaned." Karcher, 2026 WL 179315 at *3 (cleaned up) (awarding $7.5 million, three times the baseline award, to a child born less than three months after her father's death). And in Goldstein, the district court awarded a plaintiff born two days after a bus bombing that injured his sibling $312,500 in solatium

## CONCLUSION

The Court recommends GRANTING Alexandria Desimone's motion for partial default judgment against Iran. ECF No. 11481. Specifically, the Court recommends finding that Alexandria—and other children who were *in utero* when their parent was killed in the 9/11 Attacks and who were later born—may recover solatium damages under the FSIA. The Court then recommends awarding Alexandria solatium damages of $4.25 million, consistent with a 50-percent downward variation from its established damages award for children of 9/11 decedents of $8.5 million. The Court also recommends awarding Alexandria prejudgment interest assessed at a rate of 4.96% per annum, compounded annually for the period from September 11, 2001, until the date of judgment. Alexandria should be able to submit future applications for punitive damages or other damages not addressed in this Order. Additionally, the Court should permit the remaining Desimone Plaintiffs, not identified in this Order, to submit future applications for compensatory, economic, punitive, and other damages, to the extent such awards have not been previously addressed by the Court.

SARAH NETBURN
United States Magistrate Judge

DATED: September 3, 2026
New York, New York

damages because his mother gave birth prematurely due to emotional shock and distress caused by the bombing. Goldstein, 383 F. Supp. 3d at 23. The Goldstein court held that this "fact alone makes this an exceptional case justifying a solatium award to [the brother], despite the prevailing approach in this district to deny such awards for after-born plaintiffs." Id. Alexandria's motion raises no such circumstances or factors that would warrant departure from the new $4.25 million baseline.

* * *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Daniels. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).