**ANDERSON KILL P.C.**
7 TIMES SQUARE, 15TH FLOOR / NEW YORK, NY 10036 / 212.278.1000 / www.andersonkill.com

Jerry S. Goldman, Esq.
Jgoldman@andersonkill.com
212.278.1569

*VIA ECF* October 2, 2026

The Honorable George B. Daniels
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse.
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
United States Magistrate Judge
United States District Court
for the Southern District of New York
Thurgood Marshall United States Courthouse,
400 Foley Square
New York, NY 10007

**Re: *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(SN) - 9/11 Plaintiffs' Update to Court Regarding *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 1:25-cv-07093-RPK-CHK (E.D.N.Y) and *United States v. Approximately 127,271 Bitcoin*, No. 1:25-cv-05745-RPK-CHK (E.D.N.Y)**

The undersigned counsel for the 9/11 Plaintiffs,[1] who represent approximately ninety-five percent of the wrongful death and serious physical injury plaintiffs in this MDL proceeding, respectfully write to advise of significant recent developments bearing directly on the related proceedings contemplated by the pending motion for an order permitting attachment and execution pursuant to 28 U.S.C. 1610(c). *See* ECF No. 12138 (June 18, 2026).

On September 29, 2026, Judge Rachel P. Kovner of the Eastern District of New York granted the 9/11 Plaintiffs' motion to intervene in *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 1:25-cv-07093-RPK-CHK (E.D.N.Y.) ("*Fritz*"). *Fritz*, No. 25-cv-7093, ECF No. 133. *See* Exhibit A. The Court held that the intervenors, as judgment creditors of Iran seeking to execute against the same 127,271 Bitcoin ("Bitcoin"), possess a direct and legally protectable interest in the Bitcoin and are entitled to intervene as of right under Rule 24. Further, the Court discusses the relevance of an order under 28 U.S.C. § 1610(c) in the context of the parties' competing efforts to attach and execute against the Bitcoin. *Id.* at 8-10.

[1] The *O'Neill*, *Burnett*, *Ashton*, *and Ashton-Burlingame* Plaintiffs are referred to herein as the "9/11 Plaintiffs." The terms "*O'Neill* Plaintiffs," "*Burnett* Plaintiffs," "*Ashton* Plaintiffs," and "*Ashton-Burlingame* Plaintiffs," are defined, respectively, in the Declaration of Jerry S. Goldman (ECF No. 12143), Declaration of John M. Eubanks (ECF No. 12141), Declaration of Andrew J. Maloney, III (ECF No. 12144), and Declaration of Jeanne M. O'Grady (ECF No. 12142). On July 15, 2026, the *Fritz* court issued a Docket Text Order directing undersigned counsel, consisting of the *O'Neill*, *Burnett*, *Ashton*, *and Ashton-Burlingame* Plaintiffs, to file in that action under the party name "*O'Neill* Intervenors."

Further, on September 30, 2026, Judge Kovner granted the 9/11 Plaintiffs' February 2, 2026 motion for leave to file claims in the Bitcoin forfeiture proceeding, *United States v. Approximately 127,271 Bitcoin*, No. 1:25-cv-05745-RPK-CHK (E.D.N.Y) (the "Forfeiture Action").

Additionally, earlier today, counsel for the Breitweiser Intervenors filed a letter motion in *Fritz* seeking an order of attachment "to preserve, to the fullest extent permitted by New York law, the Breitweiser Intervenors' chronological priority position among competing judgment creditors." *Fritz*, No. 25-cv-7093, ECF No. 137. That is, the Breitweiser Intervenors seek to position themselves ahead of all other 9/11 Families – an outcome that this group of 9/11 Plaintiffs is hoping to avoid by working collectively together to maintain parity amongst all 9/11 Families.

As set forth in the § 1610(c) motion pending at ECF No. 12138, the 9/11 Plaintiffs request a determination that the requirements of § 1610(c) have been satisfied and an order authorizing the 9/11 Plaintiffs to pursue attachment and execution proceedings against, among other assets, the 127,271 Bitcoin currently at issue in *Fritz* and the Forfeiture Proceeding.

Accordingly, in light of the significant recent developments in the Eastern District, the 9/11 Plaintiffs respectfully request that the Court adjudicate the § 1610(c) motion pending at ECF No. 12138.

We thank the Court for its consideration of this matter.

Very truly yours,

**ANDERSON KILL P.C.**
By: */s/ Jerry S. Goldman*

Jerry S. Goldman, Esq.
Ethan Greenberg, Esq.
7 Times Square, 15th Floor
New York, New York 10036
jgoldman@andersonkill.com
Tel: (212) 278-1000
Fax: (212) 278-1733
*Attorneys for the O'Neill Plaintiffs*

**KREINDLER & KREINDLER LLP**
By: */s/ Megan Wolfe Benett*
Megan Wolfe Benett, Esq.
485 Lexington Ave
New York, NY 10017
mbenett@kreindler.com
Tel.: (212) 973-3438
Fax: (212) 972-9432
*Attorneys for the Ashton Plaintiffs*

**MOTLEY RICE LLC**
By: */s/ John M. Eubanks*
John M. Eubanks, Esq.
John C. Duane, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
jeubanks@motleyrice.com
jduane@motleyrice.com
Tel.: (843) 216-9184
Fax: (843) 216-9450
*Attorneys for the Burnett Plaintiffs*

**SPEISER KRAUSE, P.C.**
By: */s/ Jeanne M. O'Grady*
Jeanne M. O'Grady, Esq.
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
jog@speiserkrause.com
Tel.: (914) 220-5333
Fax: (914) 220-5334
*Attorneys for the Ashton-Burlingame Plaintiffs*

Enclosure
Cc: All Counsel of Record (via PACER)

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

NOALA FRITZ, *et al.*,

Plaintiffs,

v.

IRAN AND CHINA INVESTMENT DEVELOPMENT GROUP d/b/a LUBIAN.COM,

Defendant.

---------------------------------------------------x

**MEMORANDUM AND ORDER**
1:25-CV-7093 (RPK) (CHK)

RACHEL P. KOVNER, United States District Judge:

Plaintiffs are victims or family members of victims of Iran-sponsored terrorism who have been awarded over $20 billion in damages against Iran, which Iran has not paid. They bring this action under the Terrorism Risk Insurance Act (TRIA) and New York law against the Iran and China Investment Development Group, d/b/a Lubian.com, seeking to attach and execute their judgments against 127,271 Bitcoin that is currently in the possession of the United States. Two other groups of victims of Iranian terrorism with judgments against Iran—the "Breitweiser Intervenors" and the "O'Neill Intervenors"—moved to intervene in this action under Federal Rule of Civil Procedure 24. For the reasons that follow, the intervenors' motions are granted.

## BACKGROUND

Plaintiffs are judgment creditors of Iran, who were awarded over $20 billion dollars in compensatory and punitive damages for injuries relating to terrorist attacks between 1983 and 2007. Am. Compl. ¶ 7 (Dkt. #122). Plaintiffs state that Iran has never paid these judgments. *Id.* ¶ 13.

Plaintiffs allege that they can now recover their judgments against defendant Iran and China Investment Development Group ("Iran-China Group"), d/b/a Lubian.com. According to plaintiffs, the Iran-China Group is "an Iranian joint-stock company," which was formed in 2016 to mine cryptocurrency, to facilitate Iran's efforts to evade sanctions imposed by the United States. *Id.* ¶¶ 3, 76–77, 87–88. The Iran-China Group in turn established a "massive Bitcoin mining farm"—*i.e.*, a facility for mining Bitcoin—in Iran, and a Bitcoin "mining pool"—*i.e.*, a network of Bitcoin miners. *Id.* ¶¶ 72, 90. Plaintiffs allege that the Iran-China Group's Bitcoin mining pool is known as "LuBian," and that by December 2020, LuBian had "accumulated . . . 127,271 Bitcoin." *Id.* ¶¶ 3, 108. This Bitcoin was "worth approximately $11.4 billion" at the time the plaintiffs filed their complaint. *Id.* ¶¶ 108, 111.

According to plaintiffs, the 127,271 Bitcoin has not been possessed by LuBian since December 2020. That month, a hacker "breached LuBian's pool and stole approximately 127,271 Bitcoin that LuBian had accumulated." *Id.* ¶ 5; *see also id.* ¶ 110. The breach was unreported for nearly five years, during which the hacker "handed over the keys to the Iran-China Group's, *i.e.*, LuBian's, cryptocurrency wallets . . . to the U.S. government." *Id.* ¶¶ 5, 110.

In October 2025, the United States commenced a civil forfeiture action against the Bitcoin in this Court. *See* Complaint, *United States v. Approximately 127,271 Bitcoin (BTC) Previously Stored At The Virtual Currency Addresses Listed In Attachment A, And All Proceeds Traceable Thereto*, No. 25-cv-5745 (E.D.N.Y. Oct. 14, 2025). In the civil forfeiture action, the United States alleged that the Bitcoin is subject to forfeiture as proceeds of wire fraud or conspiracy to commit wire fraud under 18 U.S.C. § 1343, or as property traceable to money laundering transactions or their attempt and conspiracy under 18 U.S.C. § 1956. *Ibid.* Plaintiffs, intervenors, and numerous

other parties have all filed claims of interest in the Bitcoin—or motions for extensions of time to file such claims—in the civil forfeiture action.

Plaintiffs brought this action on December 26, 2025, over two months after the United States filed the civil forfeiture action. Plaintiffs assert a right to "execute on the Iran-China Group's—*i.e.*, LuBian's—127,271 Bitcoin in the government's custody" pursuant to the Terrorism Risk Insurance Act (TRIA). Am. Compl. ¶ 6. The TRIA permits "a person [who] has obtained a judgment against a terrorist party on a claim based upon an act of terrorism" to execute or attach their judgments against "the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) . . . in order to satisfy [their] judgment[s]." TRIA § 201(a), Pub. L. No. 107-297, 116 Stat. 2322 (2002) (codified at 28 U.S.C. § 1610 note). Plaintiffs allege that the TRIA authorizes them to execute their judgments against the Bitcoin because: (1) "Iran has been designated a state sponsor of terrorism"; (2) "[p]laintiffs hold judgments . . . against Iran based on an act of terrorism"; (3) "the Bitcoin at issue constitute 'blocked' assets" of the Iran-China Group under the TRIA; and (4) "the Iran-China Group, doing business as LuBian, functioned as an Iranian agency or instrumentality." Am. Compl. ¶¶ 118–21. Plaintiffs also bring a turnover claim under New York law. *Id.* ¶¶ 124–27.

Days after filing their Complaint, plaintiffs moved for an emergency *ex parte* order of attachment. Emergency Motion (Dkt. #69). The Court declined to rule on plaintiffs' motion before the government responded. *See* Feb. 2, 2026 Order. The government opposed plaintiffs' motion, disputing the factual allegations and legal contentions in plaintiffs' complaint and arguing that plaintiffs had not met the statutory criteria to attach property under New York law. *See* Gov't Opp'n to Plaintiffs' Emergency Mot. (Dkt. #96). The government requested leave to move to

dismiss plaintiffs' complaint for the same reasons. Gov't Mot. for a Pre-Motion Conference (Dkt. #97). These motions remain *sub judice*.

Meanwhile, in February 2026, two other groups of victims of Iranian terrorism who hold judgments against Iran moved to intervene in this action. *See* Breitweiser Letter Serving Motion to Intervene (Dkt. #93); O'Neill Letter Serving Motion to Intervene (Dkt. #94). Relying significantly on plaintiffs' allegations, the intervenors assert that they have the same right as plaintiffs to execute their judgments against the Bitcoin. *See* Breitweiser Mem. of L. in Supp. of Mot. to Intervene (Dkt. #104); O'Neill Mem. of L. in Supp. of Mot. to Intervene (Dkt. #115-2). Both sets of intervenors move to intervene as of right under Federal Rule of Civil Procedure 24(a)(2); the O'Neill Intervenors also seek permissive intervention under Rule 24(b)(1)(B). *See ibid.*

**DISCUSSION**

The motions to intervene are granted because the intervenors have established their right to intervene under Rule 24(a)(2). Rule 24(a)(2) requires the court on "timely motion" to "permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." To be granted intervention as of right, an applicant thus must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (citation omitted). The intervenors here have satisfied each requirement.

First, both sets of intervenors timely filed motions to intervene. Rule 24's timeliness requirement is "flexible," and assessed with respect to the following factors: "(a) the length of time

the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Id.* at 1058 (citations omitted). The first factor, which is especially important in the timeliness analysis, *see Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996), favors the proposed intervenors. The Breitweiser Intervenors served their motion to intervene roughly six weeks after this action was filed, and the O'Neill Intervenors served their motion two weeks later. "[C]ourts have found motions to intervene timely where . . . the[] motions were brought a few months after the claims," so the motions here, filed weeks after the complaint, were likewise timely under the first factor. *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) (internal quotation marks omitted); *see Granite State Ins. Co. v. KM Tactical, LLC*, No. 23-CV-7769 (ALC) (GS), 2025 WL 1502019, at *5 (S.D.N.Y. May 27, 2025) (concluding five-month delay was "modest," and collecting similar cases).

Plaintiffs' contrary arguments are unpersuasive. The cases plaintiffs cite to argue that the Court should fault intervenors for failing to move sooner do not support plaintiff's argument because they involved much longer delays. *See, e.g.*, *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, No. 18-CV-11642 (VM) (DF), 2020 WL 5350271, at *19 (S.D.N.Y. Sept. 4, 2020) (10.5-month delay from filing); *Andrews v. Sony/ATV Music Publ'g, LLC*, No. 15-CV-7544 (AJN), 2017 WL 770614, at *9–10 (S.D.N.Y. Feb. 24, 2017) (year-long delay); *Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Markets*, 847 F.2d 1038, 1042 (2d Cir. 1988) (six-month delay). And the fact that intervenors' motions came "roughly six months after the [first] public report of the [Bitcoin] heist," and "four months after the [government's] forfeiture case was filed," is irrelevant. Opp'n to Breitweiser Mot. to Intervene 11 (Dkt. #105). Intervenors could not

have moved to intervene in this case before it was filed, so the timeliness of their motions cannot be assessed with reference to dates that precede plaintiffs' complaint.

None of the remaining timeliness factors undercuts the finding that intervenors' motions were timely. Plaintiffs argue that they will suffer "prejudice . . . resulting from the applicant[s'] delay," *Floyd*, 770 F.3d at 1058 (citation omitted), because their "interest and priority in the Bitcoin remains unprotected," Opp'n to Breitweiser Mot. to Intervene 12. But this is not a prejudice "resulting *from the applicant[s'] delay*" in moving to intervene. *Floyd*, 770 F.3d at 1058 (citation omitted and emphasis added). It is a prejudice resulting from the existence of a competing claim, filed before plaintiffs attached or executed their judgments, which is not the sort of prejudice that courts weigh against intervention. *Cf. In re 650 Fifth Ave. & Related Props.*, No. 08-CV-10934 (KBF), 2015 WL 13700951, at *2 (S.D.N.Y. Mar. 12, 2015) (rejecting intervention that "would complicate the current settlement agreement" and "undermine plaintiffs' extensive [litigation] efforts over several years"), *aff'd sub nom. Levin v. United States*, 633 F. App'x 69 (2d Cir. 2016). Regardless, plaintiffs acknowledge that the Court can exercise its docket-management authority to award any judgments in an order that grants priority to earlier filed attachment requests—as plaintiffs have already asked the Court to do. *See* Opp'n to Breitweiser Mot. to Intervene 15 (asking the Court to adopt a "structured, priority-preserving framework"). Given the Court's ability to adopt this approach, plaintiffs have not identified prejudice that would flow simply from granting the motions for intervention.

Next, it is true that the intervenors could have "file[d] a separate action"—as some other judgment creditors of Iran have done as to the Bitcoin at issue here—potentially mitigating prejudice to the intervenors if intervention were denied. *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000); *see Floyd*, 770 F.3d at 1058 (prejudice to applicant as a timeliness

factor). But plaintiffs' stated goal of attaching their judgments to the Bitcoin to the exclusion of other creditors suggests that intervenors could nevertheless be prejudiced if their motions are denied. And plaintiffs are wrong to suggest that intervenors will not be prejudiced because they have "not shown that these Bitcoin are the only assets available to satisfy their judgments." Opp'n to Breitweiser Mot. to Intervene 13. As other courts have acknowledged, the "difficulty of locating assets of Iran subject to execution in the United States" favors a finding of prejudice in this context. *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 58 (S.D.N.Y. 2013). Finally, none of the parties have identified compelling "unusual circumstances militating for or against a finding of timeliness." *Floyd*, 770 F.3d at 1058 (citation omitted). In the aggregate—and especially considering the short delay between plaintiffs' complaint and the intervenors' motions—the timeliness factors indicate that the intervenors' motions were timely filed.

Second, the intervenors have established "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). "[F]or an interest to be 'cognizable' under Rule 24, it must be 'direct, substantial, and legally protectable.'" *Floyd*, 770 F.3d at 1060 (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). But this test is "one of inclusion rather than exclusion." *XL Specialty Ins. Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015) (quoting 7C Charles Alan Wright *et al.*, Federal Practice & Procedure § 1908.1, at 309 (3d ed. 2007)). A proposed intervenor need not "identify a narrow interest amounting to a legal entitlement," because "an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *In re N.Y.C.*

*Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 800, 801 (2d Cir. 2022) (citation omitted). And "a defense to an intervenor's claims 'carries no weight in the determination of whether an interest is sufficient for intervention under Rule 24(a).'" *XL Specialty Ins.*, 632 F. App'x at 669 (quoting *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129–30 (2d Cir. 2001)); *see also Brennan*, 260 F.3d at 130 ("An interest that is otherwise sufficient under Rule 24(a)(2) does not become insufficient because the court deems the claim to be legally or factually weak.").

Intervenors have a direct, substantial, and legally protectable interest in this case. As judgment creditors of Iran, seeking to attach and execute their judgments against the same Bitcoin as plaintiffs, intervenors' interest in this suit is almost identical to plaintiffs' interest. Plaintiffs nevertheless argue that intervenors lack sufficient interests to intervene because infirmities in intervenors' judgments will bar their recovery. Specifically, plaintiffs argue that intervenors cannot recover under the TRIA because, when they moved to intervene, their judgments against Iran had not been certified as final under Rule 54(b), and intervenors had not followed post-judgment procedures under the Foreign Sovereign Immunities Act, *see* 28 U.S.C. §§ 1608(e), 1610(c), which are necessary for attachment and execution. *See* Opp'n to Breitweiser Mot. to Intervene 6–9 & n.2; Opp'n to O'Neill Mot. to Intervene 7–10 (Dkt. #116). But these arguments have been largely overtaken by later events: in March 2026, the district court certified some of intervenors' judgments as final under Rule 54(b), and in April 2026, the district court granted intervenors' motion for execution and attachment of some judgments under 28 U.S.C. § 1610(c). *See* Memorandum & Order, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570 (S.D.N.Y. Mar. 18, 2026); Opinion & Order, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570 (S.D.N.Y. Apr. 14, 2026).

Even considering the state of affairs at the time the intervenors' motions were filed, the intervenors' failure to obtain final judgments and 28 U.S.C. § 1610(c) certifications at that time did not mean they lacked an interest in the subject-matter of the litigation. Plaintiffs' argument is instead a potential "defense to [intervenors'] claims," *XL Specialty Ins.*, 632 F. App'x at 669, as their own pleadings suggest by arguing that *they* can execute on a judgment without a Section 1610(c) certification. *See* Am. Compl. ¶ 71; *see also* Gov't Opp'n to Plaintiffs' Emergency Mot. 16–17 (arguing that plaintiffs failed to obtain an adequate Section 1610(c) certification). So even though plaintiffs may have been correct that intervenors' non-final judgments and other procedural deficiencies in their case would "entitle them to nothing," "plaintiffs [had] not demonstrated that this is inevitably the case, nor do the [i]ntervenors have a burden of proof on the merits at this stage." *Peterson*, 290 F.R.D. at 59. Thus, as other courts have concluded, potential infirmities in intervenors' case would not mean that they lack an interest in the subject matter of the litigation under Rule 24(a)(2). *See ibid.*; *Oneida Indian Nation of Wis. v. State of N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984) (granting intervention even though support for entitlement to relief was "somewhat vague"); *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 1:22-CV-08842 (JLR), 2026 WL 1078381, at *5 (S.D.N.Y. Apr. 21, 2026) (granting intervention even though plaintiff raised merits questions about intervenors' entitlement to relief).

Likewise, the fact that intervenors had not yet secured final judgments against Iran when they moved to intervene does not warrant denying their motion because their interest was too "contingent upon the occurrence of a sequence of events" to be "described as direct or substantial." *Wash. Elec. Co-op.*, 922 F.2d at 97. Courts have denied motions to intervene when an intervenor's interest was based on a prospective judgment in another case that the intervenor had yet to win—not when the intervenor had a judgment that was not denominated as final. *See, e.g.*, *ibid.*

(intervenor's interest insufficient because it was based on a "double contingency," including that the intervenor "first must win a judgment" in another action); *Penn-Am. Ins. Co. v. Allied Homes, LLC*, No. 3:11CV1023 SRU, 2012 WL 3727959, at *1 (D. Conn. Jan. 18, 2012) (intervenor's interest insufficient because it was "wholly contingent upon his ultimate success" in another action) (collecting cases); *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 593 (S.D.N.Y. 2018) (similar).

Intervenors have thus established the first two prerequisites to intervention as of right: a timely motion and an interest in the subject-matter of the litigation. *See Floyd*, 770 F.3d at 1058. And plaintiffs do not dispute that the intervenors have met the next two prerequisites: an interest that "may be impaired by the disposition of the action," and which "is not protected adequately by the parties to the action." *Ibid.* (citation omitted). *See* Opp'n to O'Neill Mot. to Intervene 6–19; Opp'n to Breitweiser Mot. to Intervene 6–15. These are plainly met here, given plaintiffs' and intervenors' competing claims to the Bitcoin. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180–81 (2d Cir. 2001) (noting that the "burden to demonstrate inadequacy of representation" is "minimal" when "the putative intervenor and a named party [do not] have the same ultimate objective" (citations omitted)). Intervenors are thus entitled to intervene as of right under Rule 24(a)(2), and the Court does not reach the O'Neill Intervenors' request to intervene by permission under Rule 24(b)(1)(B).

**CONCLUSION**

For the reasons stated above, the motions to intervene are granted.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 29, 2026
Brooklyn, New York