USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/2/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**----------------------------------------------------------------X**

**In re:**

**TERRORIST ATTACKS ON SEPTEMBER 11, 2001**

**----------------------------------------------------------------X**

**03-MD-01570 (GBD)(SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Non-party Steven Goldberg will soon sit for a deposition about alleged misconduct by expert witness Jonathan Marks pursuant to a subpoena authorized by the Court. The World Assembly of Muslim Youth and the World Assembly of Muslim Youth-International (USA) (together, "WAMY") hired Marks, assisted by Goldberg and non-party Andy Guzman, to testify to WAMY's charitable finances. WAMY has moved to limit the scope of Goldberg's deposition. See ECF No. 12273.[1] The Plaintiffs' Executive Committee for Personal Injury and Death Claims (the "PEC") and the Ashton Plaintiffs (together, the "Plaintiffs") oppose this motion. See ECF No. 12282. Separately, WAMY seeks to subpoena Goldberg for documents and information, see ECF No. 12277, and to compel the Plaintiffs to turn over documents and information on contacts between their counsel and Guzman, see ECF No. 12327. WAMY's document discovery motions allege misconduct by Plaintiffs' counsel in these proceedings.

The Court grants WAMY's request to narrow the scope of Goldberg's deposition but otherwise denies WAMY's motions. The parties must conduct Goldberg's deposition subject to the guidance in this Opinion & Order. The parties may also depose Guzman on similar terms.

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

In light of the misconduct allegations raised in WAMY's motions, the Court orders Plaintiffs' counsel to file a declaration and materials related to these allegations.

## BACKGROUND

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background.

### I. Previous Disputes about Marks's Expert Opinion

WAMY retained Jonathan Marks from Baker Tilly as an expert witness in this litigation. Steven Goldberg was a member of Marks's team and former Baker Tilly employee. See ECF No. 12232 ¶¶ 9(a), 12(a), (c). Marks was deposed on July 22, 2021, and Goldberg attended. Id. ¶ 9(b). Andy Guzman, another member of Marks's expert team and former Baker Tilly employee, attended as well. Id. ¶ 9(b), (e). This deposition has been the source of various disputes since October 2024. The Court previously considered serious allegations, sent anonymously to the PECs, about possibly misconduct—by Marks, by Goldberg and other Baker Tilly employees, or by WAMY counsel—during the preparation of the expert report signed by Marks and during Marks's deposition. See generally ECF Nos. 10664, 10762.

These allegations prompted two reports by outside counsel for WAMY, ECF No. 10529, and for Baker Tilly, ECF Nos. 10639 (sealed), 10776 (public). During their investigations, outside counsel did not speak with Goldberg, who declined repeated communications from outside counsel. See ECF Nos. 10529 at 2, 10776 at 4. Based on its review of the developed record on these issues, including the investigations, the Court confirmed that two Baker Tilly associates (Goldberg and Guzman) attended Marks's deposition without their appearances being noted on the record, in violation of the Deposition Protocol. See ECF No. 10762 at 1. But the Court found that no other violations had been convincingly established and, as a result, held that

no further inquiry was warranted. See id. at 2; ECF No. 10664 at 2. It denied the Plaintiffs' requests for additional "sworn witness statements." ECF No. 10762 at 6.

## II. Recent Allegations & Goldberg Deposition

These allegations, plus some new information, resurfaced recently after Plaintiffs' counsel spoke with Goldberg. It is unclear which party initiated contact. But Robert Haefele, Plaintiffs' counsel, spoke by telephone with Goldberg on May 4, 2026. ECF No. 12232 ¶ 2. During that call, Goldberg stated that he is not represented by counsel in this litigation. Id. ¶¶ 4–5. Goldberg confirmed, by email and orally, that he understood that Haefele was not his lawyer, and that Goldberg "should not disclose privileged communications, attorney work product, litigation strategy, or confidential communications involving counsel." Id. ¶ 6. Goldberg then met with Haefele and attorney Steven Pounian on May 27, 2026, at Motley Rice's office. Goldberg executed a written acknowledgement attesting to the same representations he made during his phone call with Haefele. Id. ¶¶ 10, 11.

During the phone call and meeting, Goldberg purportedly alleged that (1) during Marks's deposition, counsel for WAMY (Omar Mohammedi) provided coaching and direction to Marks—including through notes written on a large Post-it Super Sticky Easel Pad—while questions were pending, and Marks relied on this guidance in his answers; (2) most of the substantive work relating to the WAMY engagement was performed by Goldberg and Guzman, and Marks devoted little time and had limited involvement with the engagement; and (3) the expert report signed and submitted by Marks was not authored by him or anyone else at Baker Tilly. See ECF No. 12272 ¶¶ 12–13. Goldberg apparently stated that, based on his personal involvement and knowledge, portions of Marks's deposition testimony were thus "inaccurate or materially overstated" Marks's role in the expert report he submitted. Id. ¶ 13.

Goldberg apparently "agreed that Plaintiffs' counsel would prepare a draft declaration based on the information provided during the [May 27] meeting," subject to Goldberg's review and any revisions. Id. ¶ 15. Haefele requested Goldberg's review of a proposed declaration a few days after the meeting. Id. ¶ 16. But after "at least eight follow-up attempts by email and voicemail," Haefele could not obtain Goldberg's voluntary sworn testimony. Id. ¶¶ 17–18, 21.

The Plaintiffs therefore moved to serve a deposition subpoena on Goldberg. See ECF Nos. 12231, 12232. The proposed "limited deposition subpoena" concerned three topics: (1) "[Goldberg's] work on the WAMY engagement at Baker Tilly," (2) "the preparation and authorship of [Jonathan Marks's] expert report," and (3) "events personally observed by [Goldberg] during [Marks's] July 22, 2021 deposition." ECF No. 12231 at 5. WAMY opposed this deposition on multiple grounds. See ECF No. 12245. The Court overruled WAMY's objections and permitted the deposition of Goldberg on August 20, 2026 (the "August 20 Order"). ECF No. 12249.

Pursuant to the August 20 Order, the Plaintiffs served the deposition subpoena on Goldberg. See ECF No. 12282 at 5. The Plaintiffs also provided notice of the deposition by email to all parties. See ECF No. 12273-2. WAMY asked, however, for a copy of the deposition subpoena and proof of service on Goldberg. See ECF Nos. 12273-2 at 1, 12273-1 at 2. The Plaintiffs responded to WAMY's letters but did not address this request or send WAMY the deposition subpoena or proof of service. See ECF Nos. 12282-1 at 2, 12273 at 5 n.3.

WAMY then moved to "clarify and limit the scope" of Goldberg's deposition. ECF No. 12273 (the "Goldberg Deposition Motion"). Specifically, WAMY seeks to prohibit the Plaintiffs from questioning Goldberg about the first topic: his "work on the WAMY engagement at Baker Tilly." Id. at 2. But WAMY "does not contest [the Plaintiffs'] subjects 2 and 3 as they are clearly

defined and pertinent to the claims Plaintiffs raise against concerning the deposition of Jonathan Marks." Id. at 1–2. WAMY thus asks the Court to limit the subjects of Goldberg's deposition to only topics two and three. Id. at 4. WAMY also seeks the appointment of a special master, or another judicial officer or mechanism, to supervise Goldberg's deposition. Id. at 4–5. And WAMY asks the Court to compel the Plaintiffs to produce "a copy of the subpoena" served on Goldberg "or the purposed proof/certificate of service." Id. at 5. The Plaintiffs object to each of these requests on substantive and procedural grounds. See ECF No. 12282. WAMY filed a reply. See ECF No. 12286.

## III. Requests for Additional Discovery

WAMY has separately moved to subpoena Goldberg for "documents, communications, and information relevant to the circumstances underlying [P]laintiffs' counsel Haefele and Pounian's request to subpoena and depose Mr. Goldberg." ECF No. 12277 (the "Goldberg Documents Motion"). WAMY generally seeks all communications, in any medium, between Goldberg and any member of Plaintiffs' counsel, including Haefele and Pounian. See ECF No. 12277-2 at 3. Specifically, WAMY focuses on communications and materials exchanged before or during the telephone call between Haefele and Goldberg on May 4, 2026; during the meeting between Plaintiffs' counsel and Goldberg on May 27, 2026; and during the attempts by Plaintiffs' counsel to contact Goldberg about a proposed declaration or affidavit from Goldberg. See ECF No. 12277-2 at 4. WAMY's final request also seeks any communications between Goldberg and "any third party" related to any of the above. Id. WAMY initially asked Plaintiffs' counsel for the same documents and information. See ECF No. 12277-1. But a week later, the Plaintiffs objected to WAMY's document demands in their entirety. See ECF No. 12285-1. The Plaintiffs thus oppose all of WAMY's requests. See ECF No. 12285. WAMY filed a reply. See ECF No. 12292.

Goldberg subsequently obtained his own counsel for the purpose of his upcoming deposition. See ECF No. 12297. This counsel requested guidance from the Court on their ethical and professional obligations during the deposition—particularly with respect to "privilege and work-product objections that may be asserted by other parties." Id. at 1. The Court adjourned Goldberg's scheduled deposition to consider all parties' filings and provide guidance for the deposition. See ECF No. 12301.

Most recently, WAMY moved to subpoena Plaintiffs' counsel for information and documents related to contacts between Plaintiffs' counsel and Guzman. ECF No. 12327 (the "Guzman Documents Motion"). WAMY alleges that Plaintiffs' counsel interviewed Guzman around the same time it met with Goldberg, and that "the subject of the interview included privileged communications between WAMY's counsel and its expert." Id. at 1–2. WAMY's request also seeks information and documents regarding other communications between Plaintiffs' counsel and (1) any current or former employee of Baker Tilly or the Law Firm of Omar T. Mohammedi, LLC regarding Marks's report or deposition; and (2) "any other person" regarding Marks's report or deposition. Id. at 3. Finally, WAMY seeks turnover of a "second anonymous letter" purportedly received by Plaintiffs' counsel that concerns Marks's deposition and report. Id. Plaintiffs oppose the Guzman Documents Motion. See ECF No. 12338.

## LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure states that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Generally, litigants "may, by oral questions, depose any person, including a party." Fed. R. Civ. P. 30(a)(1). District courts, however, maintain the authority to issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by preventing their deposition from being

taken, forbidding inquiry into certain matters, or limiting the scope of questions to certain matters. Fed. R. Civ. P. 26(c). Courts thus have "broad discretion" to "decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also SEC. v. Daspin, 557 F. App'x 46, 48 (2d Cir. 2014) ("Federal Rule of Civil Procedure 26(c) allows a district court to control a deposition by means of a protective order. 'The grant and nature of protection is singularly within the discretion of the district court . . . .'" (quoting Gallela v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973))).

The parties dispute whether certain privileges must limit Goldberg's testimony. The Court thus addresses the protections for attorney work product and for expert witnesses in the following sections.

**I. Work Product Doctrine**

A litigant ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed R. Civ. P. 26(b)(3)(A); see also Hickman v. Taylor, 329 U.S. 495 (1947) (establishing work product doctrine). This protection "preserve[s] a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by [her] adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman, 329 U.S. at 510–11). But work production protection is a qualified privilege. Otherwise relevant work product "may be discovered if . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed R. Civ. P. 26(b)(3)(A); see Adlman, 134 F.3d at 1197 (stating that Rule 26(b)(3)(A) codifies the principles established in Hickman).

Protected work product falls into two general categories. "Fact work product," including the results of a factual investigation, may be discoverable under the conditions in Rule

26(b)(3)(A). See In re Grand Jury Subpoena Dated Oct. 22, 2001, 282 F.3d 156, 161 (2d Cir. 2002). "Opinion work product," by contrast, consists of the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). This type of work product is "entitled to greater protection than fact work product." In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007) (reviewing "two types of work product"). Specific rules apply to the work product of expert witnesses and are discussed below.

Work product protections extend to materials created by attorneys, their clients, and agents of the attorney or client. See Fed. R. Civ. P. 26(b)(3)(A) (protecting materials prepared "by or for another party or its representative (including the other party's attorney, consultant, . . . or agent)"); United States v. Nobles, 422 U.S. 225, 238–39 (1975) (protecting materials "prepared by agents for the attorney as well as those prepared by the attorney himself"). Either the attorney or the client may thus invoke the work product privilege related to their litigation. See Hobley v. Burge, 433 F.3d 946, 949 (7th Cir. 2006); In re Grand Jury Subpoenas Dated Mar. 19 and Aug. 2, 2002, No. M 11-189, 2002 WL 31040322, at *3 (S.D.N.Y. Sept. 12, 2002), aff'd, 318 F.3d 379 (2d Cir. 2003). In the attorney's case, her "independent interest in privacy" justifies invoking the privilege, "even when the client has waived its own claim, as long as invoking the privilege would not harm the client's interests." Hobley, 433 F.3d at 949 (citing Restatement (Third) of the Law Governing Lawyers § 90 cmt. c (Am. L. Inst. 2000)); accord Martin v. Valley Nat. Bank of Arizona, 140 F.R.D. 291, 321 (S.D.N.Y. 1991).

Two burdens fall on the attorney or client invoking work product protections. First, the invoking party "bears the burden of establishing facts to demonstrate applicability of the protective rule." Urthtech LLC v. Gojo Indus., Inc., No. 22-cv-6727 (PKC)(KHP), 2024 WL

3898179, at *4 (S.D.N.Y. Aug. 26, 2024) (citing In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224–25 (2d Cir. 1984)). This entails "expressly mak[ing] the claim" and describing the privileged material "in a manner that, without revealing information itself protected or privileged, will enable others to assess the claim." Fed. R. Civ. P. 26(b)(5). In the context of a deposition, the party invoking a work product protection "may instruct a deponent not to answer only when necessary to preserve [the] privilege." Fed. R. Civ. P. 30(c)(2) (also permitting no-answer instruction "to enforce a limitation ordered by the court" or to present a motion to terminate or limit the deposition under Rule 30(d)(3)).

Second, the invoking party bears the burden of establishing that no waiver occurred. Urthtech, 2024 WL 3898179 at *5. Waiver of work product protection may occur through voluntary disclosure. When there is "deliberate, affirmative, and selective use of privileged work-product materials by a party," protection is waived. In re Grand Jury Proceedings, 219 F.3d 175, 191 (2d Cir. 2000). As to third parties, waiver occurs when a litigant disclosed protected materials "to anyone without 'common interests in developing legal theories and analyses of documents.'" SEC v. Gupta, 281 F.R.D. 169, 171 (S.D.N.Y. 2012) (quoting In re Sealed Case, 676 F.2d 793, 817 & n.97 (D.C. Cir. 1982)). Such disclosures are inconsistent with the purpose of work product protection: "to keep counsel's work from his opponent in the litigation so that it will not be used against him." In re Visa Check/MasterMoney Antitrust Litig., 190 F.R.D. 309, 314 (E.D.N.Y. 2000) (citing 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2024 (2d ed. 1994)).

## II. Expert Witnesses

Expert witnesses who will testify at trial and are "retained or specially employed to provide expert testimony in the case" must file a written report "prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). These reports must include the "basis and reasons" for the

expert witness's opinions and the "facts or data considered" in forming the opinion. Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). The expert may then be deposed following their report. See Fed. R. Civ. P. 26(b)(4)(A).

Rule 26(b)(4) specifically addresses work product protections for expert witnesses. See Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1191–92 (11th Cir. 2013); Deangelis v. Corzine, No. 11-cv-7866 (VM)(JCF), 2016 WL 93862, at *2–3 (S.D.N.Y. Jan. 7, 2016). It protects "drafts of any [expert] report or disclosure . . . regardless of the form in which the draft is recorded." Fed. R. Civ. P. 26(b)(4)(B). Additionally, "communications between the party's attorney and any [expert] witness" that provides a written report, "regardless of the form of the communications," are protected from disclosure as a general matter. Fed. R. Civ. P. 26(b)(4)(C). This protection extends to communications between a party's attorney and "assistants of the expert witness." Fed. R. Civ. P. 26, Committee Comments to Subdivision (b)(4), 2010 Amendment. But some narrow exceptions apply. For example, communications that identify "facts or data" provided by the party's attorney and "considered" by the expert, or that identify "assumptions" provided by the party's attorney and "relied on" by the expert, are not covered by work product protection. Fed. R. Civ. P. 26(b)(4)(C)(ii), (iii).

## DISCUSSION

### I. The Goldberg Deposition Motion

#### A. WAMY Does Not Seek Reconsideration of the August 20 Order

The Plaintiffs first argue that WAMY's Goldberg Deposition Motion impermissibly seeks reconsideration of the August 20 Order, which authorized Goldberg's deposition. See ECF No. 12282 at 2 (citing Local Civ. R. 6.3). The Order, however, did not rule on the scope of the deposition topics. The Court granted the Plaintiffs' "request to serve a deposition subpoena on Goldberg," set a deadline for that deposition, and mandated that the Plaintiffs and WAMY "must

receive equal time to question Goldberg." ECF No. 12249. While the Court's approval of the Plaintiffs' subpoena request implicitly authorized the proposed deposition topics, the Court did not comment on their scope—which the Court now addresses in detail below. Thus, WAMY's Goldberg Deposition Motion is not properly considered a motion for reconsideration. In addition, the Plaintiffs themselves suggested that WAMY "should consider bringing the issue [of its privilege or protection objections] to the Court's attention in advance" of Goldberg's deposition. ECF No. 12282-1 at 2. The Plaintiffs should not object to WAMY now pursing that proper course of action.

### B. The Scope of Goldberg's Deposition is Limited to Investigating Alleged Misconduct

Goldberg will testify as both a percipient witness of alleged misconduct and a former member of WAMY's expert team. The parties disagree over the scope of permissible questions. For the reasons stated below, the parties may question Goldberg about only two topics: (1) the preparation and authorship of Marks's expert report and (2) what Goldberg personally observed during Marks's expert deposition. The Plaintiffs may not question Goldberg about his work on the WAMY engagement beyond the above two topics.

#### 1. The Parties Must Question Goldberg About Marks's Expert Report and Conduct During Marks's Deposition

During his deposition, Goldberg will primarily function as a percipient fact witness to alleged misconduct. The purpose of Goldberg's deposition—and the reason the Court permitted it—is to investigate serious allegations purportedly raised by him. Specifically, these allegations relate to coaching during Marks's deposition and whether Marks or any employee at Baker Tilly worked on the expert report signed by Marks. See ECF No. 12272 ¶¶ 12–13. This line of inquiry is "discovery on discovery." It should be the narrow focus of Goldberg's deposition.

The Court permitted Goldberg's deposition because he will describe under oath what he witnessed during his work on the WAMY engagement with Marks's expert team. Outside counsel investigated, and the Court previously dismissed as unsupported, anonymous allegations that Marks misrepresented his work on the expert report and was coached during his deposition by someone in the room. See ECF Nos. 10664 at 2, 10762 at 1–2 (reviewing conclusions of outside investigations). The Court also rejected the Plaintiffs' arguments that Marks's expert report did not meet the standards of Rule 26(a)(2)(B). See ECF No. 9060 at 34–35 (rejecting argument that Marks's expert report should be excluded because he lacked experience and he relied on others' analyses).

Goldberg's purported allegations present new information from a source not previously considered. Despite making efforts to reach Goldberg, neither set of outside counsel interviewed him as part of their investigations. See ECF Nos. 10529 at 2, 10776 at 4. Goldberg's allegations, as relayed by Plaintiffs' counsel, provide new details about who purportedly coached Marks during his deposition (Mohammedi) and how the coaching was accomplished (through a Post-it Super Sticky Easel Pad and written prompts rather than a whiteboard). See ECF No. 12272 ¶¶ 12–13; cf. ECF No. 10529 at 4 (outside counsel finding "no evidence supporting the allegations that Marks was coached during the deposition or that answers were written out for him on a whiteboard"). The Court recognizes that related allegations were previously investigated and dismissed. See ECF No. 10762 at 6. But given that a percipient witness may offer direct evidence about Marks's deposition, the Court must permit further, limited inquiry.

Goldberg also apparently claims that neither Marks nor anyone at Baker Tilly authored Marks's report. See ECF No. 12232 ¶¶ 9(f), 12(f). This authorship allegation was not addressed in the outside investigations, which focused on billing issues, see ECF Nos. 10529 at 2, 10776 at

6, and it potentially contradicts Marks's deposition statements and interview responses with outside counsel. See ECF No. 12232 ¶ 13. This allegations, if credited, would bear on whether the expert report filed by Marks was properly "prepared and signed by the witness" and must therefore be investigated. Fed. R. Civ. P. 26(a)(2)(B). Importantly, Goldberg will answer questions under oath. While the Court reviewed letters from counsel to the parties and outside counsel, these did not include sworn statements from WAMY counsel, and the investigations themselves relied on unsworn interviews with counsel and Baker Tilly employees. See ECF Nos. 10529 at 1–2, 10776 at 4 (listing interviews conducted); ECF No. 10533 (WAMY response to anonymous allegations); see also ECF No. 10762 at 6 (rejecting, based on the available record, the Plaintiffs' request for sworn witness statements).

For all these reasons, Goldberg's deposition is not an expert deposition but a deposition about serious allegations of wrongdoing. Goldberg will function as a fact witness attesting to his first-hand observations and personal knowledge. See Fed. R. Evid. 701; Fed. R. Civ. P. 30(c)(1) (examination and cross-examination at deposition proceed under Federal Rules of Evidence). The parties seem to agree on this point. See ECF Nos. 12282 at 4, 12286 at 2. Moreover, the parties agree on two of the three proposed deposition topics: "the preparation and authorship of the expert report signed by Mr. Marks," and "events personally observed by Mr. Goldberg during Mr. Marks's July 22, 2021 deposition." ECF No. 12273 at 1. The questioning must therefore focus on these undisputed topics.[2] They are key to documenting and assessing the allegations that Goldberg purportedly provided to the Plaintiffs during their prior meetings. See

[2] WAMY "does not contest subjects 2 and 3 as they are clearly defined and pertinent to the claims Plaintiffs raise again concerning the deposition of Jonathan Marks." ECF No. 12273 at 1–2. But WAMY still "vehemently maintains its position that any claims by Steven Goldberg that Marks was coached by Omar Mohamedi or anyone else at his deposition while a question was pending or that Jonathan Marks and his team at Baker Tilly did not write his report are false." Id. at 2 n.2.

ECF No. 12232 ¶¶ 9, 12–13. As explained below, the Court will not permit deviations from the two undisputed topics.

### 2. The Plaintiffs May Not Separately Question Goldberg About His Work on the WAMY Engagement

WAMY and the Plaintiffs dispute whether Goldberg may answer questions on one topic: his "work on the WAMY engagement at Baker Tilly." ECF Nos. 12231 at 5, 12273 at 1. WAMY objects that this topic is too broad, would implicate privileged or protected materials and communications, and should be prohibited. The Plaintiffs disagree and argue that some factual inquiries into Goldberg's work and the basis for Marks's expert opinion are still permitted. Given the work product protections applicable to Goldberg, and the limited purpose of his deposition, the Court bars the Plaintiffs from separately questioning Goldberg about his work on the WAMY engagement.

As an initial matter, WAMY and its counsel may properly invoke the work product doctrine. They assert that the work product protections for expert witnesses apply to Goldberg. ECF No. 12273 at 2–4. Goldberg was a member of WAMY's expert team and a "representative" of a client in this litigation, and he communicated with the client's attorneys. Fed. R. Civ. P. 26(b)(3). Thus, either WAMY or its counsel may assert an interest in protecting their fact and opinion work product from disclosure during Goldberg's deposition. See Hobley, 433 F.3d at 949; In re Grand Jury Subpoenas Dated Mar. 19 and Aug. 2, 2002, 2002 WL 31040322, at *3. Goldberg's counsel is correct, then, that Goldberg "holds no personal privilege over communications between WAMY's counsel and Baker Tilly's expert team." ECF No. 12297 at 2. Subject to the guidance below, Goldberg's counsel must honor the privilege assertions of WAMY and its counsel during the deposition.

The specific work product protections afforded to expert witnesses under Rule 26(b)(4) apply to Goldberg because he was a member of the expert team assisting Marks. As the party invoking work product protection, WAMY must (1) establish facts to demonstrate applicability of this privilege and (2) show that no waiver occurred. See Urthtech, 2024 WL 3898179 at *4–5. These steps are straightforward in Goldberg's case. Marks was a witness "retained . . . to provide expert testimony in [this] case" for WAMY, and he signed and submitted a written report. Fed. R. Civ. P. 26(a)(2); see ECF No. 12232 ¶ 12(c), (f). By the terms of Rule 26(b)(4), "drafts of [this] report" and "communications between the party's attorney and any witness required to provide a report" (Marks) are presumptively protected from disclosure. Fed. R. Civ. P. 26(b)(4)(B), (C). This protection for "communications" extends to "those between the party's attorney and assistants of the expert witness," like Goldberg. Fed. R. Civ. P. 26, Committee Comments to Subdivision (b)(4), 2010 Amendment. The Plaintiffs do not argue, and WAMY does not address, waiver in this context. Thus, Goldberg's questioning must remain within these applicable work product protections. Specifically, the Plaintiffs' questions to Goldberg may not solicit or result in the disclosure of communications between WAMY counsel and their retained experts, Marks and his team at Baker Tilly. And Goldberg may not disclose any drafts of the expert reports or disclosures signed by Marks, regardless of the form in which those drafts were recorded. See Fed. R. Civ. P. 26(b)(4)(B), (C).

The exceptions to work product protections for expert witnesses under Rule 26(b)(4) do not apply to Goldberg's deposition. Typically, under Rule 26(b)(4), the PECs could ask Goldberg about communications between WAMY counsel and Marks's expert team that (1) "relate to compensation" for Marks's study or testimony, (2) "identify facts or data" that WAMY counsel provided and that Marks and his team "considered in forming the opinions to be

expressed," or (3) "identify assumptions" that WAMY counsel provided and that Marks and his team "relied on in forming" the expert opinion. Fed. R. Civ. P. 26(b)(4)(C)(i)–(iii). As long as these questions do not seek disclosure of the "mental impressions, conclusions, opinions, or legal theories" of WAMY counsel or their representatives, they are usually permitted. Fed. R. Civ. P. 26, Committee Comments to Subdivision (b)(4), 2010 Amendment; see Fed. R. Civ. P. 26(b)(3)(B) (protecting same).

While appropriate for an expert deposition, the above exceptions are not appropriate for Goldberg's deposition. As explained above, the purpose of Goldberg's deposition is investigating the serious allegations of misconduct purportedly raised by him. Goldberg's deposition is not an expert deposition. The Plaintiffs already conducted that deposition of Marks, pursuant to Rule 26(b)(3), on July 22, 2021. See ECF No. 7691-4 (deposition transcript). Marks's expert report, the materials on which he relied, the outside counsel investigations into his deposition, and the Court's orders related to all of these topics are easily available to the parties. See ECF Nos. 7351-4 (Marks's expert report dated Aug. 7, 2020), 10529, 10776 (outside counsel investigations), 9060, 10664, 10762 (Court's prior orders). No reason exists for the Plaintiffs to again probe, during Goldberg's deposition, "the development, foundation, or basis" of the opinion submitted by Marks. In re Application of the Republic of Ecuador, 735 F.3d 1179, 1187 (10th Cir. 2013). Moreover, as explained above, the parties have separately agreed to questioning about "the preparation and authorship of the expert report signed by [Marks]." ECF No. 12231 at 5; see ECF Nos. 12282 at 4, 12286 at 2. Thus, the Court will not permit the Plaintiffs to question Goldberg about compensation, facts, data, and assumptions pursuant to Rule 26(b)(4).

Accordingly, the Plaintiffs may not separately question Goldberg about "his work on the WAMY engagement." Communications between WAMY's counsel and the expert team at Baker Tilly, as well as drafts of Marks's expert report, are generally protected by the work product doctrine. And the limited exceptions to these protections under Rule 26(b)(4) are not applicable to Goldberg's deposition, which must focus on investigating alleged misconduct. As a result, the Plaintiffs questions will be confined to *only* two undisputed topics: "the preparation and authorship of the expert report signed by Mr. Marks," and "events personally observed by Mr. Goldberg during Mr. Marks's July 22, 2021 deposition." WAMY's request to limit the scope of the deposition is therefore GRANTED. If disputes related to specific questions arise during the deposition, the Court will be available to adjudicate them.

**C. A Special Master Is Not Necessary**

As part of its Goldberg Deposition Motion, WAMY asks the Court to appoint a special master to supervise Goldberg's deposition. See ECF No. 12273 at 4–5. Goldberg's counsel echoes this request. See ECF No. 12297 at 2. The Plaintiffs oppose any appointment, but they note that "the Court's involvement may be necessary to promptly resolve privilege assertions to allow the deposition to proceed as scheduled." ECF No. 12282 at 4–5. Because the Court will be available, and no exceptional condition exists, a special master is not necessary for Goldberg's deposition.

Rule 53 provides that without the parties' consent, a district court may appoint a special master only if warranted by "some exceptional condition" or to address "matters that cannot be effectively and timely addressed" by an available judge. Fed. R. Civ. P. 53(a)(1). Neither reason justifies a special master for this deposition. The Court acknowledges that Goldberg's deposition will occur in the midst of summary judgment briefing and concern a collateral (but important) issue. Privilege and work product objections are, however, typical deposition disputes, and the

parties should address them pursuant to the applicable Federal Rules and the Court's above guidance. See also Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."); id. 30(d)(3)(A) (noting grounds for motion to terminate or limit deposition, which may be presented "[a]t any time during a deposition"). For these reasons, WAMY's generalized allegations about "a fishing expedition," "extreme harassment," and "personal animosity" between counsel, see ECF Nos. 12273 at 4, 12286 at 3, do not establish an "exceptional condition" warranting a special master. The parties should promptly notify the Court about the date of Goldberg's deposition. The Court will make every effort to be available to resolve any disputes. Accordingly, the Court DENIES WAMY's request for a special master.

### D. The Plaintiffs Need Not Provide WAMY with a Copy of the Deposition Subpoena or Proof of Service

As part of its Goldberg Deposition Motion, WAMY asks the Court to order the Plaintiffs to turn over a copy of the deposition subpoena that the Plaintiffs sent to Goldberg (and proof or a certificate of service on Goldberg). See ECF No. 12273 at 5. Because the Plaintiffs served a testimony-only subpoena, the Federal Rules do not require this type of notice.

Rule 30(b) requires that a party deposing a person "by oral questions must give reasonable written notice to every other party." Fed. R. Civ. P. 30(b)(1). That notice must include "the time and place of the deposition" and "the deponents name and address." Id. If a subpoena commands the production of documents or information, however, then Rule 45(a) applies. The party seeking the production must then serve "notice and a copy of the subpoena . . . on each party." Fed. R. Civ. P. 45(a). Because the Plaintiffs' subpoena to Goldberg did not seek documents or information, Rule 45(a) is inapplicable. Prior service of a copy of the subpoena to WAMY and all other parties is not required. Instead, Plaintiffs' notice by email on August 24

included all information required by Rule 30(b). Moreover, given the parties' disputes about the scope of Goldberg's deposition, WAMY is plainly aware of the topics that the Plaintiffs intend to cover. And this Opinion & Order provides additional guidance to all parties about what questions they may ask. Accordingly, the Court DENIES WAMY's request for a copy of the deposition subpoena sent to Goldberg.

## II. The Goldberg Documents Motion

### A. WAMY's Request to Subpoena Documents from Goldberg Is Denied

WAMY requests to serve a subpoena on Goldberg for documents, communications, and information related to his contacts and meetings with Plaintiffs' counsel. See ECF No. 12277 at 1. Because WAMY may question Goldberg about these topics during his upcoming deposition, subject to certain limits, the Court DENIES this request.

In its August 20 Order, the Court permitted a limited, one-day deposition of Goldberg, during which the Plaintiffs and WAMY would have equal opportunity to ask him questions. The Court has not authorized further discovery beyond the deposition. Goldberg's purported allegations must first be put on the record, and then the Court will assess whether additional discovery or hearings are warranted. See, e.g., ECF Nos. 7011, 7082, 7277 (in response to breach of protective order, directing parties to file declarations, granting discovery, and then scheduling evidentiary hearing). Separate document discovery would be disproportionate to the current needs of this collateral matter. See Fed. R. Civ. P. 26(b)(1). In fact, WAMY's proposed document discovery may result in the "further creation of collateral issues," which WAMY seeks to avoid. See ECF No. 12273 at 4. Moreover, WAMY will be able to question Goldberg about his contacts and meetings with Plaintiffs' counsel during his deposition—subject to the guidance below. At this stage, Goldberg's deposition is the most convenient and least burdensome method for WAMY to obtain discovery into the topics in the proposed subpoena. See Fed. R. Civ. P.

26(b)(2)(C)(i) (requiring court to "limit the frequency or extent of discovery" when the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Accordingly, the Court denies WAMY's motion to serve the proposed subpoena on Goldberg.

### B. WAMY May Question Goldberg About His Contacts and Meetings with Plaintiffs' Counsel, Subject to Narrow Exceptions

Because the Court allows WAMY to question Goldberg about his meetings and contacts with Plaintiffs' counsel, it must address any protections applicable to this information. WAMY and the Plaintiffs agree that Goldberg is a former, but not current, member of WAMY's expert team. See ECF Nos. 12231 at 1, 12292 at 2–3. The Court thus considers him a third party in this context. See ECF No. 12292 at 2 (stating that Goldberg is "a third-party witness"). The parties dispute whether work product protections prevent WAMY from questioning Goldberg about the communications between, or documents exchanged by, Plaintiffs' counsel and Goldberg over the course of their recent telephone call and meeting. See ECF Nos. 12285 at 2, 12292 at 2–3. The Court determines that WAMY may question Goldberg about his meetings and contacts with Plaintiffs' counsel, except that WAMY may not inquire about protected communications relating to the preparation of a draft declaration for Goldberg.

Plaintiffs' counsel assert work product protection over communications and documents related to their contacts with Goldberg. ECF No. 12285 at 2. As an initial matter, Plaintiffs' counsel may invoke work product protection because they are attorneys who were investigating misconduct. See Fed. R. Civ. P. 26(b)(3); In re Grand Jury Subpoenas Dated Mar. 19 and Aug. 2, 2002, 2002 WL 31040322, at *3. The results of their factual investigation and their opinion work product may be protected. See In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d at 183. As the parties invoking the privilege, however, Plaintiffs' counsel must (1) establish facts to

demonstrate applicability of this privilege and (2) show that no waiver occurred. See Urthtech, 2024 WL 3898179 at *4–5.

First, whether a privilege applies depends on the type of communications and documents exchanged by Plaintiffs' counsel and Goldberg as a third-party. On the one hand, "communications from non-parties to counsel for parties in a lawsuit do not generally qualify as work product." Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, No. 08-AP-1789 (SMB), 2017 WL 4685525, at *5 (Bankr. S.D.N.Y. Oct. 17, 2017) (citing Ricoh Co. v. Aeroflex Inc., 219 F.R.D. 66, 69 (S.D.N.Y. 2003)). But on the other hand, work product protection typically "extends to an attorney's communications with a third party witness relating to the party's completion of [an] affidavit." Mitura v. Finco Servs., Inc., 347 F.R.D. 299, 301 (S.D.N.Y. 2024) (quoting Madoff Inv. Sec., 2017 WL 4685525 at *5 (citing cases)). This protection exists because an attorney's drafts of an affidavit or declaration are "classic work product," and the protection covers "drafts that are not 'adopted or executed by [a] non-party witness.'" Mitura, 347 F.R.D. at 301 (quoting Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals, 272 F.R.D. 124, 125 (S.D.N.Y. 2011)). Communications "from attorney to percipient third-party witness seeking information," Ricoh, 219 F.R.D. at 70, fall somewhere in the middle. To the extent they "reflect counsel's strategy" for establishing a claim or defense, "they would constitute protected attorney work product." Id. But see Plew v. Limited Brands, Inc., No. 08-cv-3741 (LTS)(MHC), 2009 WL 1119414, at *3 (S.D.N.Y. Apr. 23, 2009) (finding e-mail traffic between litigant and third-party "fit squarely within the protective ambit of Rule 26(b)(3)").

Second, Plaintiffs' counsel may have waived any protection through voluntary disclosure to Goldberg. Waiver occurs when a litigant discloses protected materials to a third party without

a "common interest" in the litigation. Gupta, 281 F.R.D. at 171 (S.D.N.Y. 2012). Such disclosure is inconsistent with the purpose of work product protection and may allow counsel's opponent to use the materials against her. See In re Visa Check/MasterMoney Antitrust Litig., 190 F.R.D. at 314. The SEC v. Gupta case is particularly instructive on this scenario. In that case, defendant Gupta's attorneys asked a third-party witness what he discussed with the government attorneys, and what documents he was shown, during a predeposition meeting. The district court characterized these questions as "plainly directed at witness credibility." 281 F.R.D. at 173. The government attorneys objected, invoked their work-product protection, and told the third-party witness not to answer the questions. On review of the defendants' motion to compel, the court rejected the government's assertion of work product protection, finding that the SEC's attorney had waived the protection by disclosing their work product "to prepare a non-party witness for a deposition, and that witness does not share a common interest with the attorney's client." Id. The court reasoned that masking "the entire preparation session in the cloak of work product protection" would facilitate "even the most blatant coaching of a witness" and leave the party taking a deposition "with no remedy to determine how, if at all, a witness's testimony was influenced . . . by suggestions from the questioner's adversary." Id. The court thus ordered the third-party witness "to answer any and all questions concerning his predeposition meetings with attorneys from the SEC and USAO." Id.

Putting all of this together, the Court finds that communications and materials exchanged by Goldberg and Plaintiffs' counsel are not protected—except for a narrow subset. The protected subset includes two types of materials: (1) Plaintiffs' counsel's communications with Goldberg "relating to [his] completion of [an] affidavit," and (2) the drafts of that affidavit or declaration itself. Mitura, 347 F.R.D. at 301. Goldberg did not sign, and may not have even reviewed,

Plaintiffs' counsel's proffered declaration. See ECF No. 12232 ¶¶ 16–18. But work product protection presumptively protects these materials from disclosure. While WAMY may demonstrate a "substantial need" for such information, Fed. R. Civ. P. 26(b)(3)(A)(ii), the Court cannot decide that issue based on the current record.

Otherwise, WAMY may freely inquire about the contacts between Goldberg and Plaintiffs' counsel. Work product protection does not apply to communications from Goldberg to Plaintiffs' counsel. See Madoff Inv. Sec., 2017 WL 4685525 at *5. The Plaintiffs do not argue otherwise. See ECF No. 12285 at 2 (addressing only "attorney communications with a third-party witness concerning preparation of a declaration"). Communications from Plaintiffs' counsel to Goldberg—other than those related to affidavit completion—are also fair game. Assuming all such communications are protected by the work product doctrine, see Plew, 2009 WL 1119414 at *3, Plaintiffs' counsel later waived any protection. Goldberg does "not share a common interest" with the Plaintiffs as a former member of the expert witness team for the Plaintiffs' adversary. Gupta, 281 F.R.D. at 173. When Plaintiffs' counsel met with Goldberg and disclosed any protected work product to him, their disclosure functioned as a waiver of privilege over the questions posed to Goldberg and the documents shared with Goldberg. See Gupta, 281 F.R.D. at 173 (S.D.N.Y. 2012) (finding waiver over the "questions posed to [third party] to prepare him for his deposition" and the "documents [counsel] believed were important when they showed those documents to [third party] during their prep sessions"). Thus, WAMY should be able to ask Goldberg about his predeposition sessions with Plaintiffs' counsel to determine how Goldberg's testimony may have been influenced and, importantly, assess Goldberg's credibility. See id. Moreover, the Plaintiffs already publicly filed a declaration from counsel and a letter recounting large portions of their communications with Goldberg before, during, and

after their telephone call and meeting. See ECF Nos. 12231, 12232. That public disclosure also favors permitting WAMY to ask questions that would probe the circumstances of these communications.

Accordingly, WAMY may generally question Goldberg about his meetings and contacts with Plaintiffs' counsel. WAMY may not inquire about protected communications relating to the preparation of a draft declaration for Goldberg or ask for copies of any such drafts. Moreover, if privilege disputes related to specific communications arise during the deposition, the Court will be available to consider them.

## III. The Guzman Documents Motion

### A. The Court Permits the Parties to Depose Guzman Consistent with the Rules for Goldberg's Deposition

The Guzman Documents Motion includes new allegations that the Court must consider. WAMY raises concerns about Plaintiffs' counsel's *ex parte* contacts with Guzman and failure to disclose these contacts and a purported second anonymous letter to the parties and the Court. See ECF No. 12327 at 1. Relying on "information and belief," WAMY asserts that Plaintiffs' counsel contacted and interviewed Guzman, discussed WAMY "counsel's litigation strategy and mental impressions," and received from Guzman "information concerning the Marks' deposition [sic] and the Baker Tilly report that was materially different from the information Plaintiffs' Counsel provided to the Court in support of their request to depose [Goldberg]." Id. at 1–2. As the Plaintiffs note, however, WAMY's assertions are unsupported by any sworn statements or specific factual allegations. See ECF No. 12338 at 1.

The Court still takes these allegations seriously. In their opposition, Plaintiffs' counsel does not deny contacting and meeting with Guzman, receiving a second letter, or any other of WAMY's specific allegations. Instead, Plaintiffs' counsel insist that their "actions were proper

and [that] WAMY has identified no rule Plaintiffs violated, no privileged communication Plaintiffs received, and no factual basis to invade counsel's investigative files." ECF No. 12338 at 1. Given this response and the limited support for WAMY's allegations, the Court is left with only the suspicion that Plaintiffs' counsel was not forthcoming about all information related to their investigation of Marks's alleged misconduct. This situation favors deposing Guzman, discussed below, and directing Plaintiffs' counsel to make certain filings, which the next section addresses. See, e.g., ECF Nos. 7011 (in response to breach of protective order, directing parties to file declarations).

The Court permits Guzman's deposition for the same reasons that it granted Goldberg's deposition. Guzman is a percipient fact witness to alleged misconduct twice over: first as relates to WAMY's above allegations against Plaintiffs' counsel, and second as relates to misconduct during Marks's deposition and the preparation of his expert report. See ECF No. 12232 ¶ 9(b), (e). While Guzman, unlike Goldberg, spoke to outside counsel during the prior investigation, see ECF Nos. 10529 at 2, 10776 at 4, Guzman would answer questions under oath during any deposition. Guzman would thus function as a fact witness attesting to his first-hand observations and personal knowledge. This would further the Court's investigation into both sets of alleged misconduct. For these reasons, to the extent any party seeks information from Guzman, the Court orders the parties to schedule Guzman's deposition.

During Guzman's deposition, the parties should follow the rules and guidance that the Court has provided for Goldberg's deposition, to the extent applicable. The deposition may last only one day, and WAMY and the Plaintiffs must receive equal time for questioning. See ECF No. 12249. Assuming Guzman communicated with Plaintiffs' counsel in any way, or met with

them, Guzman would be a third-party witness like Goldberg. The Plaintiffs may assert work product protections consistent with the Court's guidance for Goldberg's deposition.

**B. WAMY's Request for Document Discovery from the Plaintiffs Is Denied, but Plaintiffs' Counsel Must File Certain Documents**

WAMY requests from the Plaintiffs an expansive set of documents related to their contacts with Guzman, any current or former employes of Baker Tilly or the Law Firm of Omar T. Mohammedi, LLC, and "any other person" with whom they discussed Marks's report or deposition. See ECF No. 12327 at 3. They also seek the second anonymous letter that Plaintiffs' counsel purportedly received. Id. Because WAMY may question Guzman about most of these communications at his deposition, and the Court directs Plaintiffs' counsel to file certain information, the Court DENIES WAMY's request for document discovery.

This set of collateral matters all arose from the Court's granting a one-day deposition of Goldberg. WAMY's proposed document discovery would add disproportionate layers of discovery on top of what is already "discovery on discovery." This is especially true because the Plaintiffs seek "reciprocal discovery" in return. See ECF Nos. 12338 at 1, 12285 at 2–3. Given the Court's concern that the record of Plaintiffs' counsel's contacts is incomplete, and Guzman's role on WAMY's expert team, Guzman should be deposed pursuant to this Opinion & Order. The Court maintains that WAMY's proposed document discovery is disproportionate to the current needs of these collateral matters. See Fed. R. Civ. P. 26(b)(1). WAMY will be able to question Guzman about his contacts and meetings with Plaintiffs' counsel during his deposition—just like they will be able to question Goldberg. Guzman's deposition is a convenient and less burdensome method for WAMY to obtain discovery on most topics it raises. See Fed. R. Civ. P. 26(b)(2)(C)(i).

For certain topics, however, the Court seeks more information from Plaintiffs' counsel. The most concerning aspects of WAMY's allegations are that Plaintiffs' counsel met or communicated *ex parte* with Guzman and failed to discloses these contacts or a second anonymous letter to the parties and the Court. See ECF No. 12327 at 1. Plaintiffs' counsel must respond to these allegations. First, the Court orders Plaintiffs' counsel to file a declaration recounting the factual details of:

- any communications or meetings that Haefele, Pounian, or any member of their teams had with Guzman;
- any communications or meetings that Haefele, Pounian, or any member of their teams had with current or former employees of Baker Tilly or the Law Firm of Omar T. Mohammedi, LLC, regarding Marks's report or deposition;
- how any anonymous letters concerning Marks's report and deposition received by Haefele, Pounian, or any member of their teams since the first anonymous letter, see ECF No. 10416-1, were sent or received, including any information identify the source(s) of any letters; and
- any subsequent communications (whether written or oral; whether direct or indirect) with the author(s) of any letters.

This declaration should be similar in style and content to the declaration that Plaintiffs' counsel submitted as support for their motion to depose Goldberg. See ECF No. 12232. It should not include privileged material. Second, the Plaintiffs must file copies of any anonymous letters. The Court will consider proper requests, under its Individual Rules & Practices, to file copies of any anonymous letters under seal.

These targeted submission are warranted given the severity of the allegations raised in WAMY's motion. They align with the Court's response to the first anonymous letter sent to Plaintiffs' counsel, see ECF No. 10421, and the information that Plaintiffs' counsel disclosed about their meetings and contacts with Goldberg. Combined with Guzman's deposition and the filings on the docket to date, an appropriate record on the alleged misconduct will exist. The

Court can then assess whether additional discovery or hearings are warranted. See, e.g., ECF Nos. 7011, 7082, 7277. Finally, the Court's approach balances, on the one hand, the need to thoroughly investigate the underlying allegations and, on the other hand, the goal of the "just, speedy, and inexpensive determination" of these issues. Fed. R. Civ. P. 1.

**CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART the Goldberg Deposition Motion. See ECF No. 12273. In the August 20 Order, ECF No. 12249, the Court did not address the scope of deposition topics for Goldberg's deposition, and thus WAMY does not seek reconsideration of that Order. The Court GRANTS WAMY's request to limit the scope of Goldberg's deposition. The parties may question Goldberg about only two topics: (1) the preparation and authorship of Marks's expert report and (2) what Goldberg personally observed during Marks's expert deposition. The Plaintiffs may not question Goldberg about his work on the WAMY engagement beyond the above two topics. The Court DENIES the remaining requests in WAMY's motion. Because the Court will be available to resolve disputes arising from the deposition, and no exceptional condition exists, a special master is not necessary for Goldberg's deposition. In addition, the Federal Rules do not require the Plaintiffs to provide WAMY with a copy of the deposition subpoena sent to Goldberg or proof of service.

The Court DENIES the Goldberg Documents Motion. See ECF No. 12277. Because WAMY may question Goldberg about his contacts and meetings with Plaintiffs' counsel during the upcoming deposition, the Court determines that document discovery on the same topics would be disproportionate and burdensome at this stage. The Court also addresses the permissible scope of WAMY's questions. As a general matter, WAMY may ask Goldberg about his meetings and contacts with Plaintiffs' counsel. But WAMY may not inquire about protected communications relating to the preparation of a draft declaration for Goldberg. The Court will

consider work product protection disputes related to specific communications between Goldberg and the Plaintiffs that may arise during the deposition.

The Court DENIES the Guzman Documents Motion. See ECF No. 12327. Instead, to the extent any party seeks information from Guzman, the Court orders the parties to depose Guzman consistent with the rules established for Goldberg's deposition. The Court also orders Plaintiffs' counsel to file (1) a declaration on their meetings and contacts with Guzman and others, plus anonymous letters received; and (2) copies of any anonymous letters. These submissions are due by Wednesday, October 7, 2026.

Consistent with the rulings and guidance in this Opinion & Order, Goldberg's deposition must take place by Friday, October 16, 2026. If scheduled, Guzman's deposition must take place by the same date. Each deposition may last only one day. The Plaintiffs and WAMY must receive equal time for questioning in each deposition. See ECF No. 12249. Once the depositions are scheduled, the parties must immediately notify the Court.

Additionally, the parties must file on the public docket the final transcripts of Goldberg's deposition and, if applicable, Guzman's deposition. The Court reserves the right to *sua sponte* sanction parties that fail to follow the directions in this Opinion & Order, raise unreasonable objections, or otherwise impede the progress of the depositions. See Fed. R. Civ. P. 37(b).

The Clerk of the Court is respectfully directed to terminate the letter motions at ECF Nos. 12273, 12277, and 12327.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED: October 2, 2026
New York, New York