WHITE & CASE

October 13, 2026

**VIA ECF**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

Honorable Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

**RE: *In re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)**

Dear Judge Netburn:

Based on recent developments, Sudan seeks leave to file this supplemental letter in support of its motion to compel the CIA to comply with the subpoena that Sudan served on the CIA on April 25, 2025. *See* ECF 11854 (Letter-Mot.), 11899 (Opp'n), 11995 (Reply Ltr.).

In recent weeks, the CIA released 71 previously classified Presidential Daily Briefs (PDBs) related to the 9/11 Attacks, showing that its generalized burden and national-security objections are unfounded, and that the CIA can indeed search for, review, and declassify documents related to the 9/11 Attacks without compromising current intelligence activity. *See* Press Release, *CIA Releases President's Daily Briefs in Commemoration of the 25th Anniversary of 9/11* (Sept. 11, 2026), *available at* https://www.cia.gov/stories/story/cia-releases-presidents-daily-briefs-in-commemoration-of-the-25th-anniversary-of-9-11/ (attached as Ex. N); *see also* Reply Ltr. 1–4 (rebutting CIA's burden and national-security objections).

Meanwhile, the State Department has produced documents in this litigation, and the National Archives has released newly declassified memoranda prepared by the 9/11 Commission, that further establish that the CIA holds unique information, highly relevant to Sudan's defenses to this litigation, that the CIA's alternative document-production proposal would not capture. *See* Reply Ltr. 4–5.

These recent developments strongly support Sudan's motion to compel, as discussed below.

The United States "does not oppose [Sudan's] request to bring these developments to the court's attention," noting that the CIA may wish to submit a response. Plaintiffs "do not object to the request for leave to file the supplemental letter but reserve all rights to join, oppose, or otherwise respond to same." Sudan does not oppose any request by the CIA or Plaintiffs to respond to Sudan's supplemental letter.

**A. The CIA's recent declassification project undermines the agency's burden and national-security objections**

By reviewing, declassifying, and releasing the 71 PDBs, unprompted by any order from this Court, the CIA has exposed the deficiency of its generalized burden and national-security objections. *See* Ex. N; *see also* Reply Ltr. 1–4.

The CIA publicly stated that the release of these PDBs was "the most thorough declassification effort—unprecedented in size and transparency—since the 9/11 Commission's in 2004," and described the release as "consistent with President Donald Trump's historic transparency initiative." *See* Ex. N. Yet in this litigation, the CIA objected on burden grounds to searching for and reviewing *any* classified material, contending that document review and production to comply with Sudan's and Plaintiffs' requests could take "days" and require "100 hours" of work by multiple reviewers. *See* Reply Ltr. 2 (citing Opp'n 11–13). That is a modest effort, given the complexity and importance of this case, and far less burdensome than the "unprecedented in size" declassification effort that the CIA undertook of its own accord.

The CIA's recent declassification project also reinforces Sudan's argument (Reply Ltr. 2) that, contrary to the CIA's Opposition (at 11–13), any workforce disruption is overstated and is not undue. The CIA plainly has "search professionals" whose duties include searching for, reviewing, and declassifying documents, including documents relating to the 9/11 Attacks. *See id.*

The CIA's declassification of PDBs — which the CIA describes as "America's *most sensitive intelligence publication*" (*see* Ex. N (emphasis added)) — also undermines the CIA's unsupported national-security objections. *See* Reply Ltr. 4. If the CIA can review, declassify, and make public some of the "most sensitive intelligence" on the 9/11 Attacks, then it cannot plausibly maintain a blanket "national security" objection to all of Sudan's requests.

The CIA has proposed an alternative by which it would search *only* reports and arbitrarily cap the number of responsive documents produced at 15 (or 20). *See* Reply Ltr. 4–5. This alternative is deficient for reasons that Sudan has explained (*see id.*) and that the CIA's recent declassification effort magnifies. For instance, the CIA's alternative approach would not have captured the PDBs at all — documents that, according to the CIA, "trace the story of CIA analysts' evolving understanding of al-Qa'ida and efforts to highlight and warn of Usama Bin Ladin's attack plotting despite sparse, vague, and imperfect information." *See* Ex. N. And the disclosure of 71 PDBs demonstrates the volume of responsive information, confirming the inadequacy of the CIA's proposal to cap the number of produced documents at 15 or 20.

The CIA has shown that it can conduct a document review and declassification exercise when needed. The seriousness of the subject matter of this litigation certainly warrants such a review and declassification exercise. Accordingly, this Court should grant Sudan's motion to compel.

**B. The State Department's production confirms that the CIA holds unique, relevant information that the CIA's alternative proposal would not capture**

The CIA has never denied that it holds unique and relevant information that its alternative proposal would not capture, a fact confirmed by documents produced by the State Department in this litigation.

For example, the State Department's production confirms the CIA has relevant records concerning discredited intelligence reports pertaining to Sudan.

Specifically, the State Department produced an email from a State Department official dated August 20, 1998 — the same day that the United States launched strikes destroying the El Shifa pharmaceutical factory in Sudan — stating:

> "My fear is that decisions were made on evidence kept so close-hold that it was never subjected to scrutiny by some of us who may not be CW experts but who remember the [redacted] faith in the ***discredited reports*** of the '***fabricator***' and '***embellisher***.' Because of the strong feelings Sudan generates within the policy community, it behooves the [redacted] to be especially careful before it annoints [*sic*] reports likely to produce a military response."

STATE-000909 (attached as Ex. O) (emphases added).

This email, and its references to "discredited reports" in which an entity (whose name is redacted) placed "faith," strongly suggests that the CIA has unique records concerning the "discredited reports," particularly those reports that relied on "the fabricator" or "the embellisher" for sourcing intelligence. And as discussed below, recently declassified memoranda prepared by the 9/11 Commission, based on interviews conducted under oath, confirm that the CIA was involved in selecting El Shifa as a target and vetting the purported "evidence" behind that determination.

As Sudan has explained, the CIA's proposal does not include searches for records of withdrawn or "discredited reports." Ltr. Mot. 3; Reply Ltr. 4; *see also* Ex. I at 1, Carney & Ijaz, *Intelligence Failure* (ECF 11855-9) (former U.S. ambassador to Sudan recounting that in 1996 the CIA "scrapped more than 100 of its reports on Sudan" after uncovering faulty intelligence). The Court should compel the CIA to search for records concerning them.

**C. Newly declassified 9/11 Commission memoranda also confirm that the CIA holds unique, relevant information that its alternative proposal would not capture**

The National Archives recently released newly declassified Memoranda for the Record prepared by the 9/11 Commission and summarizing the Commission's interviews with key intelligence figures, including from the CIA. *See* National Archives Public Interest Declassification Board, *Long-Sought 9/11 Records Now Declassified and Available to the Public* (Sept. 11, 2026), *available at* https://transforming-classification.blogs.archives.gov/2026/09/11/long-sought-9-11-records-now-declassified-and-available-to-the-public/ (Ex. U). These interviews, which were conducted under oath, also confirm that the CIA holds unique information, responsive to Sudan's requests, that would likely not appear in final reports. For example:

- **Request Nos. 5-7, seeking information on offers made by Sudan to extradite or otherwise deliver Bin Laden to the United States, Saudi Arabia, or any other country:** In an under-oath interview with the 9/11 Commission, Michael Scheuer, who led the CIA's Bin Laden unit known as "Alec Station," discussed "an opportunity to render UBL to the U.S." from Sudan, and stated that he was "unaware" of an arrest warrant on Bin Laden "issued by the Saudis." *See* Mem. for the Record, Interview with Mike Scheuer, at 3 (Dec. 11, 2003), https://www.archives.gov/files/declassification/iscap/ pdf/2026-201-document-6-release-508.pdf (Ex. P). Samuel ("Sandy") Berger, who served as Deputy National Security Advisor from 1993-96 and as National Security Advisory from 1996-2000, stated that "[t]he USG and Sudan started to discuss the idea of turning UBL over to someone who could deal with him . . . . CIA seems to have asked [redacted] if they would take UBL; all said no. ***This was handled by the CIA*** . . . ." Mem. for the Record, Interview with Samuel Berger, at 4 (Jan. 14, 2004), https://www.archives.gov/files/declassification/iscap/pdf/2026-201-document-1-release-508.pdf (Ex. R) (emphasis

added). These sworn statements from Scheuer and Berger show that the CIA assessed whether to extradite or otherwise deliver Bin Laden to another country in 1996, likely through communications with other governments that would not be captured in the CIA's intelligence reports.

- **Request No. 10, seeking information on the bombing of the El-Shifa pharmaceutical factory on August 20, 1998 by the United States:** Scheuer "recalled a 'tremendous debate'" over the U.S. intelligence used to justify the attack. Mem. for the Record, Interview with Mike Scheuer, at 6 (Jan. 6, 2004), https://www.archives.gov/files/declassification/iscap/pdf/2026-201-document-7-release-508.pdf (Ex. Q). Richard Clarke, a senior counterterrorism official with the National Security Council, described the CIA's role in selecting and vetting targets for the August 20, 1998 strikes, and stated that then-CIA Director George Tenet "probably also still thinks the intel about al-Shifa was right, but *President Clinton came to have some doubts.*" Mem. for the Record, Interview with Richard Clarke, at 18–20 (Dec. 18, 2003), https://www.archives.gov/files/declassification/iscap/pdf/2026-201-document-2-release-508.pdf (Ex. S) (emphasis added). The State Department's production, as discussed above, demonstrates that the "debate" over the intelligence used to justify the El Shifa attack would most likely have come in the form of emails and other communications, not final intelligence reports, and so would not be captured by the CIA's proposal.

- **Request No. 11, seeking information on Jamal al Fadl's activities in Sudan and his cooperation as a government witness for the United States:** Scheuer stated that Fadl "was debriefed [redacted] by multiple teams," and "gave CIA insight" into Al Qaeda and its leaders. Ex. P at 4; *see also* Mem. for the Record, Interview with George Tenet, at 1 (Jan. 22, 2004), https://www.archives.gov/files/declassification/iscap/pdf/2026-201-document-6-release-508.pdf (Ex. T) (former CIA Director Tenet discussing intelligence that the CIA gleaned from an "al Qaeda operative" that the 9/11 Commission determined was "likely el Fadl"). Discussing Fadl's description of a purported attempt by Al Qaeda to acquire nuclear material, Scheuer concluded that this episode "was most likely a scam conducted by the sellers." *Id.* at 4–5. Specific information from the debriefings by "multiple teams," particularly any discrepancies in Fadl's statements during these debriefings, is unlikely to appear in final reports, as are deliberations about the credibility of Fadl's statements.

* * *

Given the recent developments described above and for the reasons set forth in Sudan's motion, Sudan respectfully requests that the Court grant both Sudan's request for leave to file this supplemental letter and its motion to compel. Sudan reserves all rights with regard to any objections or disputes that may arise over the course of the CIA's document production. Sudan also preserves and expressly does not waive any of its rights, defenses, privileges, and immunities, including those based on jurisdiction and sovereign immunity.

Respectfully submitted,

WHITE & CASE

/s/ *Nicole Erb*
Christopher M. Curran
Nicole Erb
Nicolle Kownacki
Celia McLaughlin
Michael Mahaffey
701 Thirteenth Street, NW
Washington, DC 20005
Phone: (202) 626-3600
Fax: (202) 639-9355
ccurran@whitecase.com
nerb@whitecase.com
nkownacki@whitecase.com
cmclaughlin@whitecase.com
michael.mahaffey@whitecase.com

*Counsel for the Republic of the Sudan*

cc: Counsel of Record (via ECF)