# EXHIBIT “2”

# EXHIBIT 1

Case 1:03-md-01570-GBD-SN Document 3783-4 Filed 11/09/17 Page 2 of 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)<br>ECF Case |

This document relates to: *All Actions*

**AFFIRMATION OF JOSEPH ROBERT "BOB" KERREY**

I, Bob Kerrey, being duly sworn, declare and state as follows:

1. My full name is Joseph Robert Kerrey. Between 1983 and 1987, I served as the 35th Governor of the State of Nebraska. Between 1989 and 2001, I served as United States Senator for the State of Nebraska. From December of 2003 through August 21, 2004, I served as a Member of the bi-partisan National Commission on Terrorist Attacks Upon the United States (the "9/11 Commission"), by appointment of then Senate Majority Leader Thomas A. Daschle.

2. I submit this affirmation on behalf of the Plaintiffs, to address certain statements in the January 30, 2012 Memorandum of Law of the Kingdom of Saudi Arabia and Saudi High Commission for Relief of Bosnia & Herzegovina ("SHC") in Opposition to Plaintiffs' Motion for Relief of Final Judgments (the "Kingdom's Memorandum of Law"), concerning the investigation and findings of the 9/11 Commission. The views expressed in this Affirmation are my own, based on my experience as a Member of the 9/11 Commission.

3. Congress established the 9/11 Commission through H.R. 4628, the "Intelligence Authorization Act for Fiscal Year 2003" (the "IAA"), which was signed into law by then President George W. Bush on November 27, 2003.

4. Under the IAA, the 9/11 Commission was given broad authority and responsibility to investigate the facts and circumstances concerning the terrorist attacks of

September 11, 2001, and to make recommendations to the President and Congress for corrective measures that could be taken to prevent future acts of terrorism.

5. The 9/11 Commission was comprised of ten Members, all of whom were appointed to their positions in accordance with the IAA. The 9/11 Commission carried out its work with the assistance of a staff of approximately eighty (80) full-time employees, contractors, and detailees.

6. In accordance with the requirements under law concerning the focus and scope of the 9/11 Commission's work, the 9/11 Commission organized work teams to address each of the following eight topics:

- al Qaeda and the organization of the 9/11 Attack:
- intelligence collection, analysis, and management (including oversight and resource allocation);
- international counter-terrorism policy, including states that harbor or harbor terrorists, or offer or offered terrorists safe havens;
- terrorist financing;
- border security and foreign visitors;
- law enforcement and intelligence collection inside the United States;
- commercial aviation and transportation security, including an investigation into the circumstances of the four hijackings;
- the immediate response to the attacks at the national, state and local levels, including issues of continuity of government.

7. The 9/11 Commission held its first meeting on January 11, 2003, and issued its Final Report on July 22, 2004. The 9/11 Commission formally closed its operations on August 21, 2004, and on that same day released a staff monograph on the subject of terrorist financing.

8. The Kingdom's Memorandum of Law contains several misleading statements concerning the investigation and findings of the 9/11 Commission relative to possible Saudi culpability for the sponsorship of al Qaeda and the events of September 11, 2001 that should not go unaddressed. First, the Kingdom and SHC state "[following an exhaustive and authoritative investigation, the National Commission on Terrorist Attacks Upon the United States (the "9/11 Commission") concluded that the Government of Saudi Arabia had no role in the attacks of September 11, 2001, declaring: '[W]e have found no evidence that the Saudi government as an institution or senior Saudi officials individually funded' al Qaeda." MDL DKT. #2542 at p.1. Second, the Kingdom and SHC assert that "[even before this Court dismissed them, Plaintiffs' claims against Saudi Arabia had been directly rebutted by facts found by the United States government. The 9/11 Commission concluded that Saudi Arabia did not assist the September 11 terrorists. Although it did not rule out the possibility that some independent (non-sovereign) charities may have diverted funds to al Qaeda, the 9/11 Commission 'found no evidence that the Saudi government as an institution or senor Saudi officials individually funded' al Qaeda. 9/11 Report at 171. The 9/11 Report further concluded that 'we have seen no evidence that any foreign government – or foreign government official – supplied any funding' to the September 11 hijackers." MDL DKT. #2542 at p. 4.

9. To the extent the Kingdom and SHC offer those statements in support of the proposition that the 9/11 Commission fully exonerated Saudi Arabia and any Saudi government charities for any potential culpability for the financing and emergence of al Qaeda or the events of September 11, 2001, following a comprehensive evaluation of all potentially relevant evidence, the Kingdom and SHC are incorrect. To the contrary, significant questions remain unanswered concerning the possible involvement of Saudi government institutions and actors in

the financing and sponsorship of al Qaeda, and evidence relating to the plausible involvement of possible Saudi government agents in the September 11th Attacks has never been fully pursued.

10. Although the 9/11 Commission conducted an investigation of historic scale into the facts and circumstances surrounding the events of September 11, 2001, our investigation and findings were subject to certain inherent challenges and unavoidable limitations. The challenges included the sweeping scope of our mandate itself, which required us to conduct inquiries into a broad range of complex and disciplinarily distinct issues relating to intelligence agencies, law enforcement agencies, diplomacy, immigration and border control, the flow of assets to terrorist organizations, commercial aviation, the role of Congressional oversight and resource allocation, and other issues identified by the 9/11 Commission during the course of its work. And although we were assisted in our work by a singularly dedicated and capable staff, our investigation was subject to the limitations of available resources and time, as well as our access to witnesses and evidence outside of the United States.

11. The 9/11 Commission noted these limitations in the Preface to our Final Report, stating:

> We want to note what we have done, and not done. We have endeavored to provide the most complete account we can of the events of September 11th, what happened and why. This final report is only a summary of what we have done, citing only a fraction of the sources we have consulted. But in an event of this scale, touching so many issues and organizations, we are conscience of our limits. We have not interviewed every knowledgeable person or found every relevant piece of paper. New information will inevitably come to light. We present this report as a foundation for a better understanding of a landmark in the history our nation.

9/11 Final Report at xvii.

12. Given the limits of the investigation conducted by the 9/11 Commission, as acknowledged in the Preface of our Final Report, it is fundamentally inaccurate to characterize our investigation and findings as "exhaustive" with respect to any of the issues within the scope of our mandate, and most certainly incorrect to characterize our investigation into potential Saudi culpability for the sponsorship of al Qaeda and the September 11th Attacks as exhaustive or conclusive.

13. Stated simply, the 9/11 Commission did not have the time, opportunity or resources to pursue all potentially relevant evidence on that important question, and the American public deserves a more comprehensive inquiry into the issue.

14. In portraying the 9/11 Commission's findings concerning the government of Saudi Arabia in the Memorandum of Law, the Kingdom overstates not only the comprehensiveness of our inquiry, but the character of our findings as well.

15. Although the Kingdom accurately quotes a few statements from our Final Report relating to the Kingdom, it presents them out of context and without reference to our finding that there was a "likelihood that charities with significant Saudi government sponsorship diverted funds to al Qaeda." 9/11 Commission Final Report at p. 171.

16. Importantly, our Final Report did not address in any further detail the character of the Kingdom's relationships to the charities in question, and there is no statement in the 9/11 Final Report identifying those charities as "independent (non-sovereign)" entities as the Kingdom and SHC suggest in their Memorandum of Law. As a corollary, our Final Report also did not address at all whether the actions of those purported charities would be attributable to the government of Saudi Arabia under governing legal standards, a question that was beyond the scope of the 9/11 Commission's mandate.

Case 1:03-md-01570-GBD-SN Document 3783-4 Filed 11/09/15 Page 7 of 7

17. Finally, neither our Final Report nor the Staff Monograph on Terrorist Financing contain a single reference to the SHC.

18. For all of the reasons set forth above, it is fundamentally inaccurate and misleading for the Kingdom and SHC to suggest that the 9/11 Commission's investigation exonerated them for the events of September 11, 2001, or that the 9/11 Commission's investigation directly rebutted Plaintiffs' claims.

Bob Kerrey

Executed on this 24th day of February, 2012.



PHILADELPHIA\6343162\1

# EXHIBIT 2

Case 1:03-md-01570-GBD-SN Document 3783-2 Filed 11/09/17 Page 2 of 9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (FM)<br>ECF Case |

*This document relates to: All Actions*

**AFFIRMATION OF JOHN F. LEHMAN**

I, John F. Lehman, being duly sworn, declare and state as follows:

1. My name is John F. Lehman. From 1969 through 1974, I served as a staff member to Dr. Henry Kissinger at the National Security Council. In 1981, President Ronald Reagan appointed me to serve as the 65th Secretary of the United States Navy. I served as Secretary of the Navy for six years, from 1981 to 1987, and in that position was responsible for the management of 1.2 million people, and an annual budget of $95 billion. On December 16, 2002, I was appointed to serve as a member of the bi-partisan National Commission on Terrorist Attacks Upon the United States ("9/11 Commission"). I served as a member of the 9/11 Commission from the date of my appointment through the conclusion of the Commission's work, on August 21, 2004. I served as a national security and foreign policy advisor to Senator John McCain during the 2008 presidential race, and for Governor Mitt Romney in his 2012 presidential campaign. I am the author of several books, including *On Seas of Glory*, *Command of the Seas*, *Making War*, and *America the Vulnerable*.

2. I offer this Affirmation based on my experience as a member of the 9/11 Commission, and my work for more than four decades in the national security arena.

3. In briefs filed earlier this year with the Supreme Court of the United States, the Kingdom of Saudi Arabia argued that the 9/11 Commission "concluded that the Kingdom of Saudi Arabia had no role in the attacks of September 11, 2001," and "found that Saudi Arabia

Case 1:03-md-01570-GBD-SN Document 3723-2 Filed 11/09/19 Page 3 of 9

did not provide financial or material assistance to the September 11 terrorists or their al Qaeda organization." The Kingdom further asserted that the allegations offered by the plaintiffs in support of their claims against Saudi Arabia "were considered and rejected years ago as factually untrue by the 9/11 Commission." The Kingdom has offered similar arguments in submissions to this Court, including in its Renewed Motion to Dismiss filed on September 15, 2014.

4. Contrary to the view advocated by the Kingdom, the 9/11 Commission did not exonerate Saudi Arabia of culpability for the events of September 11, 2001, or the financing of al Qaeda in the years leading up to the September 11th attacks. In addition, the Kingdom is fundamentally incorrect in suggesting that our Commission in some way "considered and rejected as factually untrue" the allegations or claims that have been advanced by the 9/11 plaintiffs against Saudi Arabia.

5. As a member of the 9/11 Commission with several decades of experience in national security matters, I was (and remain) deeply troubled by the evidence our Commission developed concerning the support 9/11 hijackers Nawaf al Hazmi and Khalid al Mihdhar received in Southern California upon their arrival in the United States. This evidence centered on the activities of a Saudi citizen who was then living in San Diego, Omar al Bayoumi, and a Saudi religious cleric who served as an official of the Islamic Affairs Department of the Saudi consulate in Los Angeles, Fahad al Thumairy. I was (and remain) equally disturbed by the evidence our Commission developed concerning "charity" payments that issued from an account associated with members of the Saudi Embassy to persons closely associated with al Mihdhar and al Hazmi.

6. At least until September 11, 2001, the Islamic Affairs Departments of Saudi Arabia's diplomatic missions throughout the world were populated and controlled by Wahhabi

imams from the Kingdom's Ministry of Islamic Affairs, like Fahad al Thumairy. Wahhabism is a puritanical, intolerant and virulently anti-American strand of Islam, and the state religion of the Kingdom of Saudi Arabia. The Kingdom has dedicated vast sums over the last several decades to promote the Islamist agenda of Saudi Arabia's Wahhabi clerics. This vast Saudi funding has been deployed to promote Wahhabi teachings throughout the world, fueling the jihadist tide that now confronts the civilized world. Wahhabi teachings form the ideological foundation for al Qaeda and a host of other jihad organizations that threaten our national security, including the so-called Islamic State of Iraq and the Levant (ISIL, a/k/a ISIS).

7. The links between Saudi Arabia's Wahhabi clerics and al Qaeda did not exist solely at the ideological level, but rather also involved collaboration on financial and logistical fronts. Saudi clerics, paid by the government of the Kingdom and preaching at state funded mosques, issued fatwas that provided religious justification for al Qaeda's terrorist actions. By the time our Commission began its work, it was already well known in intelligence circles that the Islamic Affairs Departments of Saudi Arabia's diplomatic missions were deeply involved in supporting Islamic extremists.

8. Especially when viewed within this broader context, it is implausible to suggest that the broad spectrum of evidence developed by the 9/11 Commission concerning the relationships among Omar al Bayoumi, Fahad al Thumairy, the Islamic Affairs Departments of Saudi diplomatic missions, and 9/11 hijackers Nawaf al Hazmi and Khalid al Mihdhar can be explained away as merely coincidental. To the contrary, I believe Nawaf al Hazmi and Khalid al Mihdhar knew who to go to for support, and that their initial encounter with Omar al Bayoumi immediately following al Bayoumi's meeting with Fahad al Thumairy was not at all coincidental. I also believe that Fahad al Thumairy and Omar al Bayoumi knew that al Mihdhar

and al Hazmi were bad actors who intended to do harm to the United States, and that the evidence concerning the activities of these principal actors in the events surrounding the terrorist attacks of September 11, 2001 warrants further examination.

9. Finally, as a member of the 9/11 Commission, I personally read the 28 classified pages of the report issued by the Congressional Joint Inquiry Into Intelligence Activities Before and After the Terrorist Attacks of September 11, 2001. In my view, the release of those pages would in no way implicate or harm our national security interests. To the contrary, I believe the disclosure of those 28 pages of the Joint Inquiry report would greatly assist policymakers and the public in better understanding many of the threats that we now confront. For those reasons, I fully support the 9/11 plaintiffs in their efforts to secure public disclosure of the 28 pages of the Joint Inquiry report, and of the many records relating to the 9/11 Commission's work that still have not been released, despite our Commission's urging that its records be made available, to the greatest extent possible, by January 2, 2009.

Dated:

John F. Lehman

# EXHIBIT 3

Case 1:03-md-01570-GBD-SN Document 3783-3 Filed 11/09/17 Page 2 of 2

Declaration of Richard Ben-Veniste

I served as a member of the bipartisan National Commission on Terrorist Attacks upon the United States.

The 9/11 Commission's purpose was to provide an accounting to the President, Congress and the public of the 9/11 attacks, and provide recommendations to prevent future attacks. Since our resources and time were limited, at the time we filed our final Report I believed that further fact-finding was appropriate, and that investigation of various aspects of the 9/11 attacks should and would continue.

Among the areas warranting further investigation was the relationship between the hijackers of Saudi Arabian national origin and certain other Saudi individuals and entities – particularly, whether knowing assistance, aid or comfort was provided to the hijackers while they were in the United States, and, if so, whether any official representative or entity related to the government of Saudi Arabia either authorized or knew of the provision of any such assistance, aid or comfort.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Oct 12, 2017

Richard Ben-Veniste

District of Columbia: SS

Subscribed and sworn to before me, in my presence,

this 12th day of October, 2017

by______________________

Mary McCuffus, Notary Public

My Commission Expires 2-14-2019

MARY ANN MCCUFFUS
NOTARY
EXPIRES FEB 14 2019
PUBLIC
DISTRICT OF COLUMBIA