# EXHIBIT "75"




Currently released so far...
251287 / 251,287

**Articles**

Brazil
Sri Lanka
United Kingdom
Sweden
Global
United States
Latin America
Egypt
Jordan
Yemen
Thailand

**Browse latest releases**

2011/08

**Browse by creation date**

66 72 73 75 78 79 85 86
87 88 89 90 91 92 93 94
95 96 97 98 99 00 01 02
03 04 05 06 07 08 09 10

**Browse by origin**

A B C D F G H I
J K L M N O P Q
R S T U V W Y Z

**Browse by tag**

A B C D E F G H
I J K L M N O P
Q R S T U V W X
Y Z

**Browse by classification**

CONFIDENTIAL
CONFIDENTIAL//NOFORN
SECRET
SECRET//NOFORN
UNCLASSIFIED
UNCLASSIFIED//FOR OFFICIAL USE ONLY

**Community resources**

Follow us on Twitter

**Viewing cable 08DHAKA1146, INTERNATIONAL ISLAMIC RELIEF ORGANIZATION (IIRO)**

If you are new to these pages, please read an introduction on the structure of a cable as well as how to discuss them with others. See also the FAQs

| Reference ID | Created | Released | Classification | Origin |
| --- | --- | --- | --- | --- |
| 08DHAKA1146 | 2008-11-03 11:06 | 2011-08-30 01:44 | CONFIDENTIAL | Embassy Dhaka |

```
VZCZCXRO1569
OO RUEHCI
DE RUEHKA #1146/01 3081106
ZNY CCCCC ZZH
O 031106Z NOV 08
FM AMEMBASSY DHAKA
TO RUEHC/SECSTATE WASHDC IMMEDIATE 7659
INFO RUEHLM/AMEMBASSY COLOMBO 8696
RUEHIL/AMEMBASSY ISLAMABAD 2423
RUEHJA/AMEMBASSY JAKARTA 0268
RUEHBUL/AMEMBASSY KABUL 0123
RUEHKT/AMEMBASSY KATHMANDU 9934
RUEHML/AMEMBASSY MANILA 1479
RUEHNE/AMEMBASSY NEW DELHI 0912
RUEHCI/AMCONSUL KOLKATA 1534
RUEATRS/DEPT OF TREASURY WASHDC
RUEAWJA/DEPT OF JUSTICE WASHDC
RHHMUNA/USCINCPAC HONOLULU HI
```

C O N F I D E N T I A L SECTION 01 OF 02 DHAKA 001146

SIPDIS

TREASURY FOR OFAC
DEPT FOR SCA/PB AND EEB/ESC/TP
JUSTICE FOR OPDAT

E.O. 12958: DECL: 11/03/2018
TAGS: EFIN PINR PREL PTER KTFN BG UN
SUBJECT: INTERNATIONAL ISLAMIC RELIEF ORGANIZATION (IIRO)
SEEKS TO ACCESS FUNDS FROZEN BY ISLAMI BANK BANGLADESH

Classified By: Ambassador James F. Moriarty. Reasons 1.4(b) and (d)

Summary
--------

¶1. (C) Recent press accounts suggested that Islami Bank of Bangladesh had recently released money frozen for two years belonging to the International Islamic Relief Organization (IIRO). Sister organizations of the IIRO have ties to al-Qaida and have been listed as terrorist-affiliated by the United Nations and the United States. In 2006, the United States made clear to the Bangladesh Bank (BB) our concerns regarding the IIRO. The BB at that time relayed these concerns to the Islami Bank, which froze the IIRO,s accounts. Post,s recent discussions with the BB have proven the press reports to be false and the IIRO accounts with Islami Bank remain frozen. During this dialogue, the BB raised a larger question beyond Bangladesh. Specifically, when certain branches of an organization have been listed as terrorist- affiliated, what legal sanctions, if any, can be applied against unnamed branches of that entity?

Background 2006-2007
--------------------

¶2. (C) The International Islamic Relief Organization (IIRO) is a Saudi-based charity with branches throughout the world. Abd Al-Hamid Sulaiman Al-Mujil is the Executive Director of the International Islamic Relief Organization (IIRO) Eastern Province branch office in the Kingdom of Saudi Arabia. The IIRO Indonesia and IIRO Philippines branch offices have received support from IIRO Eastern Province (EP) offices, which are controlled by Al-Mujil, a major fund-raiser for Jemaah Islamiyah (JI) and Abu Sayyaf Group (ASG), two UNSCR 1267 listed groups.

Check our Reddit
Twitter this
Digg this page
Contact us on IRC

*courage is contagious*

¶3. (C) Because of their association with the al-Qaida network, including JI and ASG, the United Nations in 2006 included Al-Mujil and the IIRO Indonesia and Philippines branches on the UN 1267 Committee list of individuals/ entities subject to sanctions pursuant to UNSC Resolution ¶1267. The United States Treasury Department also designated domestically these names pursuant to US Counter-Terrorism authorities (Executive Order 13224). The United Nations and the United States did not specifically designate the Bangladesh branch of IIRO under their respective authorities.

¶4. (C) As of August 2006, all three names had been designated by the United States and the United Nations with the sole exception being the then-pending request at the United Nations to designate the IIRO Indonesian branch. At that time, the US Embassy in Bangladesh sent a letter to the GOB regarding the then-ongoing designation process involving the IIRO branches and director. The Embassy urged the GOB to take action to freeze the assets of and block any transactions by this individual and these two branches and implement the other sanctions (arms embargo and travel ban). In the case of IIRO-Indonesia, the Embassy urged immediate action because of its involvement with JI and al Qaida. Furthermore, the Embassy encouraged the GOB to check carefully for any funds, financial assets or economic resources, including property or interests in property owned or controlled directly or indirectly by Al-Mujill and these branches in Bangladesh. The Embassy urged the GOB to share relevant information concerning actions undertaken by the GOB or the activities of the individual or entities in Bangladesh.

Confusing Media Reports in October 2008
---------------------------------------

¶5. (U) In early October, a Bangladesh newspaper, The Daily Star, issued a report entitled "Bangladesh Bank Wants to

DHAKA 00001146 002 OF 002

Activate IIRO Accounts Frozen for Alleged Terrorist Link." The report indicated that the Islami Bank of Bangladesh, which held IIRO accounts, had lodged a request with the Bangladesh Bank to re-activate the frozen accounts of IIRO. According to the media, the Islami Bank had voluntarily frozen the IIRO bank accounts, which the IIRO now wished to use to fund a recently-approved Bangladesh charity project.

¶6. (U) Toward the end of October, a subsequent article appeared in another Bangladesh newspaper, Dainik Ittefaq, with the title, "Islami Bank Unfreezes Account of International Islamic Relief Organization" According to the report, the Islami Bank had allowed IIRO to withdraw about 100 million Taka (approximately 143,000 USD) from previously frozen accounts without the approval of the BB. In response, the BB stated at a press conference that all Bangladesh accounts of the IIRO remained frozen, noting the BB had not given permission to Islami Bank to unfreeze the accounts and had asked the Islami Bank to investigate the matter. Media reports also confirmed that the Islami Bank had described the report of the unfreezing of the IIRO account as baseless and fabricated.

Clarifications from the BB
--------------------------

¶7. (C) Since the publication of the first article in early October 2008, the Embassy has communicated directly and on a regular basis with BB leadership concerning the status of the IIRO accounts, culminating in an October 28, 2008, meeting between Embassy and Bank officials. According to officials,

based on the United Nation's 1207 designation of Al-Mujil and IIRO Indonesia and Philippines branch offices in 2006-2007, BB advised Islami Bank in 2006 to "handle carefully" the IIRO bank accounts. BB representatives confided to us on October 28 that they did not freeze the IIRO's Bangladesh accounts because the United Nation's designation list did not contain a specific reference to individuals or entities associated with IIRO in Bangladesh, thereby making the use of sanctions pursuant to 1267 problematic. The BB speculated that the Islami Bank had frozen the accounts unilaterally.

¶8. (C) According to the BB, Islami Bank made a request to the BB for permission to access the IIRO accounts in Bangladesh earlier this year. The BB asked for guidance on the request from the Foreign Ministry and received a vague response which did little to help with their deliberations. The BB also has involved the Home Affairs Ministry in discussions. The GOB has not yet made a final determination, but the accounts remain frozen pending further investigation. After seeing media reports earlier in October, we registered our grave concern and opposition to moves which would allow IIRO access to its bank accounts at Islami Bank, given IIRO's ties to al-Qaida.

Comment
-------

¶9. (C) The BB has shown itself to be a positive actor in what has been a confusing situation. The Bank has proven open and frank in discussing this sensitive matter. The Embassy will continue to engage the BB closely. Although perhaps not required to do so legally, the Ismali Bank may be seeking the GOB,s blessing to unfreeze the accounts in order to prevent future accusations that it was acting alone in giving IIRO access to its controversial assets. The Embassy will be contacting the NGO Affairs Bureau of the GOB, which overseas the Bangladesh activities of IIRO and other NGOs. The non-designation of the IIRO Bangladesh branch could drive the discussion of the future available options. The issue has already sparked a spirited e-mail exchange between the concerned US agencies and Post. We look forward to final guidance from Washington regarding U.S. policy towards non-designated entities clearly affiliated with entities listed under UNSCR 1267 and under U.S. domestic law.
Moriarty