# EXHIBIT 220

The State Department web site below is a permanent electronic archive of information released online from January 1, 1997 to January 20, 2001. Please see www.state.gov for current material from the Department of State. Or visit http://2001-2009.state.gov for information from that period. Archive sites are not updated, so external links may no longer function. Contact us with any questions about finding information. NOTE: External links to other Internet sites should not be construed as an endorsement of the views contained therein.

# Foreign Terrorist Organizations

Department Seal

**Designations by Secretary of State Madeleine K. Albright**
Released by the Office of the Coordinator for Counterterrorism
October 8, 1999

---

**1999 Report Index**
(*Compiled every 2 years*)

The Designation
Changes
Effects of Designation
Three Criteria for Designation
Foreign Terrorist Organizations
The Process
Background
Frequently Asked Questions
Background Information on Foreign Terrorist Organizations
Definition of Terrorist Activity Used in These Designations
Briefing by Ambassador Sheehan

**Note:** This document is intended as a guide for the general reader. Those requiring the greatest precision should check the complete relevant statutes as well as the dsignations published in the *Federal Register* on October 8, 1999.

---

## The Designation

Secretary of State Albright today designated 28 organizations as Foreign Terrorist Organizations.

Of these, 27 were redesignations, organizations placed on the list two years ago and remaining on the list. Redesignation is a positive act and represents a decision by the Secretary of State that the organization still meets the criteria specified in law. In the absence of action by the Secretary, the organization would be removed from the list.

Three organizations were dropped from the list because they no longer meet the criteria.

One organization was added to the list because it now meets the criteria.

The Antiterrorism and Effective Death Penalty Act of 1996 authorizes the Secretary of State to make these designations every two years. The Secretary of State may add organizations to the list at any time.

## Changes

### Deletions:

The Manuel Rodriguez Patriotic Front Dissidents (FPMR/D) and the Democratic Front for the Liberation of Palestine (DFLP)* were dropped primarily because of the absence of terrorist activity, as defined by relevant law, by those groups during the past two years. The Khmer Rouge was dropped because it no longer exists as a viable terrorist organization.

### Addition:

Al-Qaida, led by Usama bin Ladin, was added because it is responsible for several major terrorist attacks, including the August 1998 bombings of the U.S. embassies in Nairobi, Kenya and Dar Es Salaam, Tanzania.

* The DFLP is still subject to the provisions of an Executive Order signed by President Clinton in January 1995 aimed at terrorist groups that threaten to disrupt the Middle East peace process. The Executive Order prohibits financial transactions with these terrorist groups and blocks their assets in the United States.

## Effects of Designation

### Legal

1. It is unlawful for a person in the United States or subject to the jurisdiction of the United States to provide funds or other material support to a designated FTO.

2. Representatives and certain members of a designated FTO, if they are aliens, can be denied visas or excluded from the United States.

3. U.S. financial institutions must block funds of designated FTOs and their agents and report the blockage to the Office of Foreign Assets Control, U.S. Department of the Treasury.

### Other Effects

1. Deter donations

2. Increase awareness and knowledge of terrorist organizations

## Three Criteria for Designation

1. The organization must be foreign.

2. The organization must engage in terrorist activity as defined in Section 212 (a)(3)(B) of the Immigration and Nationality Act. (See attachment for text.)

3. The organization's activities must threaten the security of U.S. nationals or the national security (national defense, foreign relations, or the economic interests) of the United States.

## Foreign Terrorist Organizations as of October 8, 1999

(See Narrative descriptions of each organization and a complete listing of their aliases.)

- Abu Nidal Organization (ANO)
- Abu Sayyaf Group (ASG)
- Armed Islamic Group (GIA)
- Aum Shinriykyo
- Basque Fatherland and Liberty (ETA)
- HAMAS (Islamic Resistance Movement)
- Harakat ul-Mujahidin (HUM)
- Hizballah (Party of God)
- Gama'a al-Islamiyya (Islamic Group, IG)
- Japanese Red Army (JRA)
- al-Jihad
- Kach
- Kahane Chai
- Kurdistan Workers' Party (PKK)
- Liberation Tigers of Tamil Elam (LTTE)
- Mujahedin-e Khalq Organization (MEK, MKO, NCR, and many others)
- National Liberation Army (ELN)
- Palestine Islamic Jihad-Shaqaqi Faction (PIJ)
- Palestine Liberation Front-Abu Abbas Faction (PLF)
- Popular Front for the Liberation of Palestine (PFLP)
- Popular Front for the Liberation of Palestine-General Command (PFLP-GC)
- al-Qa'ida
- Revolutionary Armed Forces of Colombia (FARC)
- Revolutionary Organization 17 November (17 November)
- Revolutionary People's Liberation Army/Front (DHKP/C)
- Revolutionary People's Struggle (ELA)
- Shining Path (Sendero Luminoso, SL)
- Tupac Amaru Revolutionary Movement (MRTA)

## The Process

**Designations Subject to Judicial Review and Congressional Revocation**
Under the statute, designations are subject to judicial review. The Secretary of State made her designations following an exhaustive interagency effort. We have kept an administrative record of each recommendation to the Secretary. Because the records would reveal intelligence sources and methods, they are classified.

The designations expire in two years unless renewed. The law also allows groups to be added at any time following a decision by the Secretary, in consultation with the Attorney General and the Secretary of the Treasury. Designations can also be revoked if the Secretary determines that there are grounds for doing so and notifies Congress. Congress can also pass legislation to revoke designations.

## Background

The law responds to concerns about foreign terrorist organizations raising funds in the United States.

Some terrorist organizations have tried to portray themselves as raising money solely for charitable activities such as clinics or schools. These activities have helped recruit supporters and activists and provided support to terrorists.

Congress was quite aware that terrorist organizations might cloak their activities with professions of good works and addressed the matter squarely:

> Foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct. (Section 301(a)(7)).

Therefore, any contribution to a designated foreign terrorist organization, regardless of the intended purpose, is prohibited by the statute, unless the contribution is limited to medicine or religious materials.

## Frequently Asked Questions

**Q: Are any of the designated groups actually raising funds in the United States?**

That is always possible, but such an activity would be unlawful.

**Q: What if people want to contribute to medical clinics or mosques that may be run by HAMAS or another designated group? How can they provide charitable contributions to, say, Palestinians living in Gaza?**

There are numerous ways of contributing to charitable works through private voluntary agencies that are not designated foreign terrorist organizations. Additionally, donations of medicine and religious materials are not prohibited.

**Q: Some of these groups seem to have been dormant for some time. Is it appropriate to continue designating them as Foreign Terrorist Organizations?**

We note that "engaging in terrorist activities" includes soliciting funds, training, and planning. It is not unusual for groups to remain publicly dormant for long periods while continuing to engage in terrorist activity and then resume terrorist attacks.

We are confident that every organization on the list belongs there. The Secretary's determinations have been tested in court and prevailed, and we believe they would prevail again.

**Q: Why isn't the IRA on the list?**

There is a strong body of evidence documenting historic IRA involvement in terrorist activity. This evidence precedes the time, two years ago, when we first considered designating the IRA as an FTO.

At that time, the Secretary of State took note of the IRA's unequivocal cease-fire, as well as the subsequent decision by the British government that the cease-fire was "genuine in word and deed." This permitted Sinn Fein to join inclusive, all-party talks in Belfast.

The peace process in Northern Ireland continues, albeit not without obvious difficulties, and we have again determined that the IRA should not be designated at this time. We are, however, concerned over recent indications of increased terrorist activity in Northern Ireland, and we will continue to monitor closely the activities of all paramilitary groups.

**Q: What happens if the IRA carries out another act of terrorism, such as killing a police officer or blowing up a police station?**

We will not speculate on hypothetical situations. We expect the IRA to adhere to its responsibility to maintain the cease-fire. Obviously, any resumption of violence by the IRA would have a direct impact on the ongoing review.

**Q: Are the Administrative records going to be made available to Congress or the public? If not, why not?**

Classified summaries of the administrative records were provided to Congress. Each administrative record contains classified information. Some are hundreds of pages long.

Unclassified descriptions of terrorist organizations (including all those designated) appear in the annex of the Department's annual report Patterns of Global Terrorism. We can make copies available. Patterns of Global Terrorism is also available on the State Department's web site.

**Q: Since there already was a list of terrorist organizations in Patterns, why not just use the Patterns material?**

The designations made under the legislation are based on specific legal criteria, including the requirement for an administrative record. Congressionally mandated administrative records require detailed documentation. This is a much more complicated and time-consuming process than developing the appendix to Patterns.

**Q: Why was the MEK designated? They largely target other Iranians. Is this some kind of a grudge match because some of their leaders were involved in the seizure of the U.S. Embassy in Teheran 20 years ago?**

We have sufficient grounds for concluding that they are a terrorist organization and continue to engage in terrorist violence. The designation is based on activities much more recent than the takeover of our embassy.

Additionally, directing terrorism against a government or entity with whom we have differences does not exclude an organization from designation as an FTO.

MEK is designated as a Foreign Terrorist Organization because of the acts they commit, not who they act against and not who they are.

**Q: There are groups mentioned in Patterns of Global Terrorism that do not appear here. Why is this? Are there foreign policy considerations involved?**

This list responds to the requirements of U.S. law, not policy interests.

We are entirely aware that formally designating groups as terrorists invites controversy about those designated and not designated. This list represents our best judgment based on all available information.

**Q: How do you plan to disseminate this information to American citizens resident abroad and to U.S. businesses abroad?**

While these organizations by definition threaten U.S. nationals or interests or national security, that does not mean we have information that there is going to be an attack in a specific place or at a specific time.

Information about that kind of threats is disseminated in other ways, including Consular Information Sheets, which discuss conditions in individual countries or other mechanisms operated by the Department.

**Q: What is the status of the two legal challenges by groups that were designated as FTOs?**

On June 25, 1999, the U.S. Court of Appeals for the D.C. Circuit issued a unanimous opinion upholding the Secretary's designation of the LTTE and MEK as Foreign Terrorist Organizations and rejecting various due process and other challenges to the designation statute.

On August 27, the court denied the LTTE and MEK's motions for rehearing and rehearing en banc.

We are still awaiting a decision from the Ninth Circuit in a separate constitutional challenge to the designation statute brought by individuals and groups seeking to make contributions to designated organizations.

[end of document]

---