LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441 - Fax: (917) 591-5980
john@johnschutty.com

November 10, 2026 **Via ECF**

Honorable George B. Daniels, U.S. District Court Judge
Honorable Sarah Netburn, U.S. Magistrate Judge

Re: *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD)(SN)
*Romero, et al. v. Islamic Republic of Iran, et al.*, 1:25-CV-07935 (GBD)(SN)
**Proposed Intervenors' Opposition to Plaintiffs' Letter-Motion for a Stay**

Dear Judge Daniels and Magistrate Judge Netburn:

This office represents the Proposed Intervenors (the "*Burlingame* Plaintiffs"). We respectfully submit this letter in opposition to the *Romero* Plaintiffs' letter-motion dated November 6, 2026 (MDL ECF No. 12458), which seeks to stay this Court's consideration of Proposed Intervenors' Motion to Intervene and Motion to Dismiss (MDL ECF Nos. 12450–12452). For the reasons set forth below, a stay is entirely unwarranted under controlling Second Circuit and Southern District of New York jurisprudence.

## I. APPLICABLE LEGAL STANDARD

A district court's authority to stay proceedings is an exercise of its inherent power to control its own docket. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). However, a stay is an *extraordinary* remedy, and the moving party bears a *heavy burden* to demonstrate a "clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay... will work damage to someone else." *Landis*, 299 U.S. at 255.

To determine whether a stay pending an appellate decision in a related matter is appropriate, courts in this District apply a strict five-factor balancing test evaluating: (1) the private interests of the plaintiffs; (2) the private interests of and burden on the defendants; (3) the interests of the courts (judicial economy); (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *See Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (citing *Volmar Distributors v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). Balancing these factors here overwhelmingly requires denial of the stay.

## II. ARGUMENT

### A. The *Romero* Plaintiffs Cannot Meet Their Heavy Burden of Showing Hardship

The *Romero* Plaintiffs fail to demonstrate any legally cognizable hardship or inequity under *Landis* if required to go forward. Being required to defend against a threshold motion to intervene or motion to dismiss is a standard feature of civil litigation, not a legal prejudice. A stay should not be granted where its sole purpose is to shelter a fundamentally flawed complaint from mandatory statutory screening.

### B. A Stay Inflicts Severe and Irreparable Financial Injury on Third Parties (Factor 4)

A stay would work immediate and permanent damage upon the *Burlingame* Plaintiffs. As legitimate, timely judgment creditors under 28 U.S.C. §§ 1606 and 1608(e), the *Burlingame* Plaintiffs possess an exclusive priority interest in the finite pro rata distributions of the United States Victims of State Sponsored Terrorism Fund ("USVSST Fund") and asset execution in the EDNY litigation over alleged Iranian Bitcoin assets. Every day that this look-alike, extra-statutory action remains unaddressed, the available pool of recovery assets faces severe economic dilution from parasitic, piggybacking claims. Under *Landis*, because there is a "fair possibility" of real damage to the *Burlingame* Plaintiffs, the *Romero* Plaintiffs' failure to show hardship is fatal to their motion.

### C. Judicial Economy Mandates the Immediate Dismissal of a Face-Barred Complaint (Factor 3)

Granting a stay would actively subvert judicial economy. The *Romero* action is built upon an extraordinary, extra-statutory expansion of recovery parameters, initiated over fourteen years after the absolute expiration of the FSIA terrorism exception's ten-year statute of limitations (28 U.S.C. § 1605A(b)). Furthermore, the action features many non-heir extended family members who possess zero right to recovery under controlling state substantive laws.

Rather than letting a legally dead-on-arrival, multi-billion-dollar docket linger, resolving these fatal pleading defects right now at the threshold stage promotes institutional efficiency. Because the *Romero* action is in its absolute infancy and the foreign state defendant (Iran) is in default, this Court's evaluation of the pending motions will definitively settle controlling questions of law under 28 U.S.C. §§ 1606 and 1608(e).

### D. The *Romero* Plaintiffs Misconstrue the Posture of Case No. 26-666-cv

The *Romero* Plaintiffs assert that this Court should pause because the Second Circuit has not issued a formal written mandate. However, during the October 7, 2026 oral argument, the panel explicitly questioned how timely heirs could maintain standing to

appeal extra-statutory district court rulings without having formally intervened in any of the specific target dockets below. The panel's clear guidance established that formal intervention *at the district court level* is the mandatory vehicle required to preserve appellate standing. Waiting for a formal ruling would completely defeat the purpose of establishing a clean, contemporaneous record of intervention in this active, newly initiated docket. Parallel appellate tracks should not act as an automatic regulatory drag on active district court dockets. *Cf. McCue v City of NY (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007).

## III. CONCLUSION

For the foregoing reasons, the *Burlingame* Plaintiffs, Proposed Intervenors, respectfully request that this Court: (1) deny the *Romero* Plaintiffs' request for a stay, (2) direct the *Romero* Plaintiffs to file their substantive opposition to the Motion to Intervene and Motion to Dismiss within an expedited timeframe, and (3) proceed to resolve the two motions on the merits.

Respectfully submitted,

*John F. Schutty*