# EXHIBIT A

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM:CBB
F. #2024R00105

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 20, 2026

By ECF

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Approximately 127,271 Bitcoin
Civil Docket No. 25-5745 (RPK) (CHK)

Dear Judge Kovner:

Pursuant to Rule G(8)(c)(ii)(B) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"), the government moves to strike the claims and answers filed by victims of Iranian terrorism (the "TRIA Claimants")[1] pursuant to the Terrorism Risk Insurance Act (TRIA), Pub. L. No. 107-297, 116 Stat. 2322 (2012) (codified at 28 U.S.C. § 1610 note), under the mistaken belief that the Defendant Cryptocurrency constitutes property of Iran. Even if they were correct about the Defendant Cryptocurrency, the TRIA Claimants are unsecured judgment creditors who lack both constitutional standing under Article III and statutory standing as innocent owners to contest the instant forfeiture action. The Court should strike their claims and answers for lack of standing.

---

[1] ECF 73, 193 (Havlish); 29, 74 (Fritz); 30, 77 (Baxter); 525, 148 (Chairnoff); 537, 176 (Iranian Terrorism Victims); 160, 501 (9/11 Claimants); 86, 204 (Gold Star Claimants); 132, 215 (Bauer and Parker); 391, 216 (Breitweiser); 112, 222 (Fishbeck); 223, 303 (Greenbaum, Acosta, Beer, and Kirschenbaum); 605, 225 (Hamen); 125, 226 (Federal Insurance Claimants ); 159, 236 (IBHLAW); 146, 241 (Christie and Gration); 686, 242 (Swinney); 169, 250 (Relvas and Rusnak); 685, 253 (Ambush); 218, 298 (Henkin); 249, 350 (Aceto); 305, 373 (Heiser); 354, 365, 358, 365, 399 (Weinstock, Mustard, Johnson, and Heching); 367, 406 (Mark and Hirshfeld); 491, 593 (Owens); 493 (Additional O'Neill Claimants); 542, 676 (Pennington and Driscoll). On November 20, 2026, the date of this filing, another group of TRIA claimants filed a motion for leave to file an untimely claim. *See* ECF 692 (Claimants with Successful Judgments Against Iran). To the extent the Court grants leave for their untimely filing, *but see* Minute Order (Sept. 30, 2026) ("But it is unlikely to find that future claims filed by putative claimants will meet the 'excusable neglect' or 'good cause' standards, considering that nearly a year has now passed since the government filed this case."), the government moves to strike this claim as well.

## APPLICABLE LAW

### I. Motion To Strike a Claim or Answer Under Rule G(8)(c)

Civil forfeiture actions arising under federal law are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Rule G(8)(c)(i) authorizes the United States to "move to strike a claim or answer at any time before trial" for (1) lack of standing, or (2) failure to comply with Rule G(5) or (6). Claimants in a civil forfeiture action need both "standing under the statute or statutes governing their claims" (statutory standing) and "standing under Article III of the Constitution" (Article III standing). *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999). The claimant bears the burden of proving standing. *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 644 (2d Cir. 1989). The government's challenge to a claimant's standing "may be presented as a motion for judgment on the pleadings," Supp. R. G(8)(c)(ii)(B), which, in turn, is governed by Rule 12(c) of the Federal Rules of Civil Procedure, *United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, 2015 WL 5178121, at *5 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents,* 682 F. App'x 17 (2d Cir. 2017). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Generally speaking, a Rule 12(b)(6) motion to dismiss should be granted if the complaint does not "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

### II. Standing in Civil Forfeiture Actions

In order to assert a claim over property that is subject to a civil forfeiture action, a claimant "must have both standing under the statute or statutes governing [its] claims and standing under Article III of the Constitution as required for any action brought in federal court." *Cambio Exacto*, 166 F.3d at 526 (emphasis added); *see also, e.g., United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025); *United States v. Technodyne*, 753 F.3d 368, 380 (2d Cir. 2014). Standing is "a prerequisite to challenging the forfeiture." *Vazquez-Alvarez*, 760 F.3d at 197; *accord United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57 (1st Cir. 2013) ("Standing is a threshold consideration in all cases, including civil forfeiture cases"); *United States v. $38,570 in U.S. Currency*, 950 F.2d 1108, 1111–13 (5th Cir. 1992) ("Unless claimant can first establish his standing he has no right to put the government to its proof."). The burden of proof to establish standing rests with the claimant, *Mercado*, 873 F.2d at 644; *United States v. The M/Y Amadea*, 770 F. Supp. 3d 558, 606 (S.D.N.Y. 2025). "Without standing, the claimant lacks the right to bring any motion, regardless of the basis." *Vazquez-Alvarez*, 760 F.3d at 197.

#### A. Constitutional Standing

To establish Article III standing, a claimant must demonstrate (1) an injury-in-fact; (2) that is fairly traceable to the complained-of conduct; and (3) that can likely be redressed by a favorable decision. *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015); *see also Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). This typically requires the claimant to establish an ownership or possessory interest in the specific property at issue. *See Cambio Exacto*, 166 F.3d at 527; *In re 650 Fifth Ave. & Related Props.*, No. 08-CV-10934 (KBF), 2013 WL 4572527, at *4 (S.D.N.Y. Aug. 27, 2013), *aff'd*, 581 F. App'x 61 (2d Cir. 2014); *cf. United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2004) (finding that standing in a civil forfeiture action requires a showing of an ownership interest in the forfeited property, not merely a right to payment). In this context, "an interest 'in' property must be an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account." *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997). "[B]ecause the likelihood of false claims of ownership in civil forfeiture actions—where the government must publish notice of the proceedings—is high, the Second Circuit has held that 'a naked claim of possession . . . is not enough' to establish standing." *United States v. $421,090.00 in U.S. Currency*, No. 11-CV-00341 (JG), 2011 WL 3235632, at *4 (E.D.N.Y. July 27, 2011) (quoting *Mercado*, 873 F.2d at 644-45). The standing inquiry therefore "ensure[s] that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." *United States v. $557,993.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002).

B. Statutory Standing

In addition to constitutional standing, a claimant also must establish statutory standing by following the procedural and pleading requirements set forth in Rule G. *See Cambio Exacto*, 166 F.3d at 526. "[S]trict compliance . . . is typically required." *United States v. Conolly*, 694 F. App'x 10, 13 (2d Cir. 2017) (*quoting Cambio Exacto*, 166 F.3d at 529); *see also United States v. $27,601.00 U.S. Currency*, 800 F. Supp. 2d 465, 467 (W.D.N.Y. 2011) ("Courts generally expect claimants to adhere strictly to those requirements.") (internal quotation marks omitted); *accord United States v. Approximately $3,275.20 Seized From Bank of Am. Acct. No. XXXXXXXXXXXX*, No. 24-14253, 2025 WL 3565098, at *3 (11th Cir. Dec. 12, 2025) ("Courts consistently require claimants to follow the language of the Supplemental Rules to the letter.") (internal quotation marks omitted).

This is because statutory standing is not merely a technicality but rather a critical tool in providing clarity, ensuring fairness, and protecting judicial resources throughout civil forfeiture cases. Thus, "the procedures prescribed by the Supplemental Rules play an important role in structuring forfeiture suits and ensuring that they proceed efficiently," *United States v. All Assets Held at Bank Julius Baer & Co.*, 664 F. Supp. 2d 97, 101 (D.D.C. 2009), including by requiring an answer in which "claimant[s] . . . state defenses and admit or deny the allegations in the government's complaint," so "the government can[ ] know what issues to prepare for trial," *$3,275.20*, 2025 WL 3565098, at *3.

As relevant here, Rule G requires that a claim "identify the specific property claimed" and "state the claimant's interest in the property." R. G(5)(a)(i)(A)–(B). Of note, blanket assertions of ownership are insufficient to identify a claimant's interest in the property to be forfeited. *See, e.g., United States v. $100,348.00 in U.S. Currency*, F.3d 1110, 1118–19 (9th Cir. 2004) (underscoring that "the danger of false claims in [civil forfeiture] proceedings is substantial" and therefore requiring that claimants provide "more than conclusory or hearsay allegations of some 'interest' in the forfeited property") (alteration and internal quotation marks omitted); *United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 563 (D. Md. 2013) (explaining that

"a bald assertion of ownership is insufficient to comply with [Rule G]" in part because "[c]ivil forfeiture cases are in rem proceedings in which anyone could conceivably file a claim to the defendant property") (internal quotation marks omitted); *United States v. $39,557.00, More or Less, in U.S. Currency*, 683 F. Supp. 2d 335, 339 (D.N.J. 2010) (concluding that a claimant's "bald assertion of ownership" "fail[ed] to sufficiently identify [his] interest in the currency [to be forfeited]").

## ARGUMENT

The claims filed by the TRIA Claimants must be struck for lack of standing. First, the TRIA Claimants lack constitutional standing to assert a claim because they are unsecured judgment creditors without a lien or other secured interest in the Defendant Cryptocurrency. Second, they lack statutory standing because, even accepting their well-pleaded allegations as true, they cannot state a valid "innocent owner" defense under the civil forfeiture statute, 18 U.S.C. § 983(d). In neither case can TRIA's "notwithstanding" clause remedy their lack of constitutional or statutory standing.

### I. The TRIA Claimants Lack Article III Standing

#### A. The TRIA Claimants Are Unsecured Judgment Creditors Without a Specific Interest in the Defendant Cryptocurrency

As this Court has already recognized, unsecured creditors do not have Article III standing to make a claim in a civil forfeiture case. *See* ECF 506 at 8 (dismissing claims of fraud victims because they, "like other general, unsecured creditors . . . lack Article III standing as such to contest the government's forfeiture of the Bitcoin"); *accord DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (affirming denial of third-party claim in criminal case because claimant, "[a]s a general creditor . . . does not possess a 'legal right, title, or interest in the property' that [is] forfeited as required for standing") (quoting 21 U.S.C. § 853(n)(6)(A)).

Article III standing requires a legal interest in the specific property that is subject to forfeiture. *See Ribadeneira*, 105 F.3d at 836 ("[A]n interest 'in' property must be an interest in a particular, specific asset . . . ."). Unsecured general creditors, however, do not have specific legal interest in the "particular asset subject to forfeiture." *United States v. $20,193.39 U.S. Currency*, 16 F.3d at 346; *accord United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 205, 212 (D.D.C. 2011). As the Second Circuit has explained: "A general creditor has no interest in a particular asset or particular funds . . . . He may have a right to receive payment, but he does not have a property interest superior to defendant's in any particular asset or funds until he has obtained some judgment and secures that asset or those funds." *United States v. Schwimmer*, 968 F.2d 1570, 1581 (2d Cir. 1992).

Accordingly, because unsecured creditors lack an interest in the specific property being forfeited, they do not suffer any Article III injury from the forfeiture of the defendant *res*. *See In re 650 Fifth Ave. & Related Props.*, 581 F. App'x 61, 62 (2d Cir. 2014) (affirming dismissal of forfeiture claims brought by parties with general claims against Iranian government because "a party that holds no more than a claim against the owner or possessor lacks [Article III] standing to challenge a property forfeiture"); *see generally Cambio Exacto*, 166 F. 3d at 527 (explaining that

"[i]t is because of the lack of proven injury that we have, for example, denied standing to 'straw' owners" because "[s]uch owners do not themselves suffer an injury when the property is taken").

The TRIA Claimants in this case are unsecured judgment creditors who lack Article III standing. They hold unsatisfied default judgments against the government of Iran. But these judgments are general obligations. They do not confer a property interest in any specific assets belonging to Iran (let alone assets which do not belong to Iran, such as the Defendant Cryptocurrency). *See In re Ideal Mortgage Bankers, Ltd.*, 539 B.R. 409, 427 (Bankr. E.D.N.Y. 2015), *aff'd sub nom. Holzer v. Barnard*, No. 15 Civ. 6277 (JFB), 2016 WL 4046767 (E.D.N.Y. July 27, 2016) (holding under New York law that "the judgment itself does not give the judgment creditor an interest in the judgment debtor's property," and "[t]he judgment creditor remains unsecured until either 'execution' is obtained on the judgment or a judgment lien against real property is obtained by recording the judgment in the county in which the judgment debtor owns real property"); *Havlish v. Hegna*, 673 F. App'x 34 (2d Cir. 2016) (affirming striking of forfeiture claims brought in civil forfeiture action by parties with general claims against the Iranian government "[b]ecause the [claimants] lack a specific property interest in the defendant properties, [so] they are general creditors who cannot be owners for the purposes of the innocent owner statute"). Under straightforward application of Second Circuit precedent and this Court's prior rulings, *see* ECF 506, the TRIA Claimants' claims must be struck for lack of standing.

Indeed, the TRIA Claimants appear to be well aware that they lack Article III standing. That is why many of them have scrambled to file separate "attachment and turnover" actions targeting the Defendant Cryptocurrency—*after* the government initiated this civil forfeiture proceeding—in order to manufacture standing after the fact and forestall the dismissal of their deficient claims. *See, e.g.*, 10/13/26 Hr'g Tr. at 29 (TRIA plaintiffs' counsel stating that government "[i]s going to move to strike our claim"); *Fritz, et al. v. Iran & China Inv. Dev. Grp. d/b/a Lubian.com*, No. 25-cv-7093 (RPK), ECF 162, at 19 (citing *DSI Assocs. LLC* for proposition that "levying an attachment would make a party no longer merely a general creditor and give it a security interest that would confer upon it standing") (cleaned up). These collateral actions fail on their own merits, but they also represent an unfair attempt to circumvent the rules of Article III standing after the fact. As the Second Circuit has recognized, standing is "the threshold question in every federal case" that "determin[es] the power of the court to entertain suit." *Cambio Exacto*, 166 F.3d at 526 (quoting *In re Gucci*, 126 F.3d 380, 387-88 (2d Cir. 1997)).

### B. <u>TRIA's Notwithstanding Clause Cannot Confer Article III Standing</u>

TRIA's "notwithstanding" clause cannot supply the missing Article III injury. Whatever authority Congress has to prescribe substantive rights and remedies, it cannot eliminate the requirement that a litigant demonstrate a concrete, legally protected interest in the matter before the Court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.") (internal quotation omitted). A statute such as TRIA cannot alter the constitutional requirements of Article III standing.

The only conceivable argument TRIA Claimants might make is that TRIA confers upon them a property right in the Defendant Cryptocurrency by operation of law. But that argument

is belied by the plain text of the statute. Section 201(a) of TRIA says nothing about transferring title, vesting ownership, creating liens, or otherwise conferring property rights on judgment creditors. Instead, the text of § 201(a) speaks only about making certain property available for "execution or attachment"—in other words, making such property available for further legal proceedings:

> Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to *execution or attachment in aid of execution* in order to satisfy such judgment . . . .

TRIA § 201(a) (emphasis added). Indeed, the statutory text expressly presupposes that the assets made available to satisfy terrorism claims remain the assets "of that terrorist party." *Id.*

The Second Circuit implicitly rejected the idea that TRIA transfers ownership rights in *Smith ex rel. Estate of Smith v. Federal Reserve Bank of New York*, 346 F.3d 264 (2d Cir. 2003), when it held that TRIA plaintiffs could not attach previously blocked Iraqi assets after the President exercised his wartime authority to confiscate the assets pursuant to the International Emergency Economic Powers Act (IEEPA). *Id.* at 271-72. If TRIA's notwithstanding clause transferred *ownership* of the blocked Iraqi assets to the TRIA plaintiffs by operation of law, then the assets would no longer count as Iraqi assets and they would have fallen outside the President's confiscation authority. The Second Circuit, however, rejected the contention that "section 201 of TRIA segregated the Assets specifically for [the TRIA plaintiffs'] use," and it found that title ownership changed hands only when "the President had vested title in the confiscated assets in the United States Department of the Treasury" by exercising his confiscation authority. *Id.* at 272. *Smith* thus closes the door on any argument that TRIA automatically confers property rights in the blocked property of a terrorist entity.

As *Smith* well illustrates, Congress knows how to enact statutes that alter ownership interests by operation of law. *E.g.*, 50 U.S.C. § 1702(a)(1)(C) (authorizing President to "confiscate any property" of an enemy belligerent and providing that "all right, title, and interest in any property so confiscated shall vest, when, as, and upon the terms directed by the President, in such agency or person as the President may designate . . ."). TRIA contains nothing remotely close to such a statute that explicitly "vest[s]" "all right, title, and interest" in the target property by operation of law.

By contrast, TRIA's language is limited to making certain property "subject to execution or attachment in aid of execution." That language concerns remedies and collection procedures, not ownership. Indeed, the very remedy contemplated by TRIA demonstrates that no present property interest exists. TRIA provides that blocked assets of a terrorist party are "subject to execution or attachment in aid of execution." TRIA § 201(a). Attachment is necessary precisely because the judgment creditor does not already possess a legal interest in the property. Were ownership to transfer automatically upon entry of a terrorism judgment, there would be no need

for attachment proceedings, execution process, turnover litigation, or any of the other collection mechanisms that courts routinely require TRIA plaintiffs to undertake.

The legislative history of TRIA confirms this understanding. As the Second Circuit has explained in reviewing the legislative history, the purpose of TRIA was to remove sovereign immunity obstacles by making blocked assets "available for attachment and/or execution" and "strip[ping] a terrorist state of its immunity." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) (quoting 148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002) (statement of Sen. Harkin)). Other courts likewise have understood TRIA's "notwithstanding" clause as addressing conflicts arising from sovereign immunity, not as creating new ownership rights in blocked property. *See Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 531 (S.D.N.Y. 2010) (collecting cases and noting that "[o]ther courts examining the scope of TRIA § 201(a) have concluded that the Notwithstanding Clause specifically addresses potential conflicts of sovereign immunity"); *Weininger v. Castro*, 462 F. Supp. 2d 457, 488 (S.D.N.Y. 2006) (holding that "it makes sense to interpret § 201(a) of TRIA to indeed provide such an exception to immunity," based on TRIA's codification as a note to the FSIA and its legislative history).

Consistent with its text and legislative history, courts have repeatedly described TRIA as an execution statute rather than a property-rights statute. The Second Circuit has characterized TRIA as providing "authorization of the *attachment* of the property of terrorist parties and that of their agencies or instrumentalities to satisfy certain judgments issued against them." *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 211 (2d Cir. 2014) (emphasis added). Authorization to pursue attachment, however, is not the same thing as ownership.

As the Second Circuit has emphasized, TRIA "provides no procedures for enforcement," and a judgment creditor must still invoke the applicable state legal process before becoming entitled to property. *Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 97 (2d Cir. 2022). Indeed, the Second Circuit has expressly recognized that TRIA does not create property rights. In *Levin v. JPMorgan Chase Bank, N.A.*, the court explained that neither TRIA nor the FSIA contains a federal definition of property and that, absent congressional creation of new property rights, courts must look to background law to determine the nature of any interest asserted by a creditor. 751 F. App'x 143, 147 (2d Cir. 2018). TRIA therefore attaches consequences to preexisting property rights; it does not create those rights in the first place.

The text of TRIA § 201(a) means what it says. It renders certain assets *available* for attachment and execution. But it does not itself confer title, create an ownership interest, or otherwise transform unsecured judgment creditors into owners of blocked property. TRIA therefore cannot supply the missing Article III injury to the TRIA Claimants.

## II. <u>The TRIA Claimants Lack Statutory Standing</u>

### A. <u>The TRIA Claimants Are Not "Innocent Owners" of the Defendant Cryptocurrency</u>

Even if the TRIA Claimants could establish Article III standing, the Court should strike their claims for the independent reason that they cannot state a valid claim as "innocent owners" under 18 U.S.C. § 983(d) and therefore lack statutory standing.

Congress chose to recognize only a limited class of parties as proper claimants in a civil forfeiture proceeding. As the Third Circuit has explained, prior to passage of the Comprehensive Forfeiture Act of 1984, "all third parties" were required to "petition[] the Attorney General for remission or mitigation of forfeiture." *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991) (internal quotations omitted). In response to concerns raised by the Department of Justice among others, Congress enacted the innocent owner provisions in the criminal forfeiture statute, 21 U.S.C. § 853(n).[2] *Id.* However:

> Congress did not intend section 853(n) to serve as a vehicle by which all innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief. Rather, . . . [Congress] intended to accord standing to only two narrow classes of third parties, and intended to require all other third parties to petition the Attorney General for relief.

*DSI Assocs. LLC*, 496 F.3d at 186 (quoting *Lavin*, 942 F.2d at 185).

Consistent with this scheme, civil forfeiture law permits a claimant to contest forfeiture only if it can establish that it is an "innocent owner" within the meaning of 18 U.S.C. § 983(d). The innocent owner defense is an affirmative defense on which the claimant bears the burden of proof. 18 U.S.C. § 983(d)(1). Thus, to survive a motion to strike at the pleading stage, claimants must plead facts sufficient to allege that they are an "innocent owner" of the property that is subject to forfeiture.[3]

---

[2] Courts construe the third-party claim provisions in the criminal forfeiture statute, 21 U.S.C. § 853(n), as substantively identical to the innocent owner defense in the civil forfeiture statute, 18 U.S.C. § 983(d). *See Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004) ("Although . . . the criminal and civil forfeiture provisions are not identical, . . . Congress' intention [was] to vest in the government the same substantive rights under the two statutes, notwithstanding their technical differences."); *United States v. One 2003 Ferrari Enzo Ab Version E*, 2026 WL 764639 at *5 (N.D.N.Y. March 18, 2026) (applying case law regarding criminal definition of bona fide purchaser for value provision as "persuasive" in civil forfeiture proceeding).

[3] In recent years, the Second Circuit has noted that "statutory standing" should more appropriately be considered "a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Ross*, 161 F.4th at 109 n.8 (quoting *Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016), and *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128, (2014)). But the Second Circuit continues to use the term in the context of a Rule G(8)(c) motion "[b]ecause the Supplemental Rules . . . use the word 'standing.'" *Ross*, 161 F.4th 100, 109 n.8. Therefore, for a claimant to establish statutory standing—in other words, that the claimant has a cause of action under the statute—it must be able to establish that it is an innocent owner. *See, e.g.*, *United States v. 74.05 Acres*, 428 F. Supp. 2d 57, 65–66 (D. Conn. 2006) (granting government's motion to dismiss claim in civil forfeiture action, and finding that claimant could not meet the statutory definition of an "owner" and therefore lacking statutory standing); *United States v. Bearden*, 328 F.3d 1011, 1014 (8th Cir. 2003) (reversing and remanding where district court found claimants had Article III standing but had not determined whether they met

Section 983(d) divides innocent owners into two categories: (1) those who had an "property interest" that was "in existence at the time the illegal conduct giving rise to forfeiture took place," 18 U.S.C. § 983(d)(2)(A), (d)(6)(A)—or, in other words, predated the government's title; and (2) those whose property interest "was acquired after the conduct giving rise to the forfeiture has taken place," 18 U.S.C. § 983(d)(3)(A). *See Havlish* 673 F. App'x at 40 ("Section 983(d) classifies innocent owners by whether their property interest was in existence when the illegal conduct giving rise to the forfeiture took place."). For a claimant who has only an after-acquired interest, § 983(d) requires that the claim be brought by a "bona fide purchaser or seller for value" who "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A)(i)-(ii). The TRIA Claimants have not alleged facts sufficient to fit into either category of innocent owner.

1. <u>The TRIA Claimants Have Not Alleged a Preexisting Property Interest in the Defendant Cryptocurrency</u>

First, the TRIA Claimants cannot claim that they possessed a property interest in the Defendant Cryptocurrency at the time of the illegal conduct giving rise to forfeiture. As alleged in the Government's Complaint, the Defendant Cryptocurrency had been amassed as "a vast sum of fraud proceeds packaged as heavily laundered cryptocurrency" as early as 2020. ECF No. 1 ¶ 44. None of the TRIA Claimants allege that they had a preexisting property interest in the Defendant Cryptocurrency prior to 2020. Nor can they. The civil forfeiture statute specifically excludes the claims of unsecured judgment creditors from its definition of cognizable property interests. *See* 18 U.S.C. § 983(d)(6)(A)-(B)(i) (defining "owner" as one who has "an ownership interest in the specific property sought to be forfeited" but caveating that an owner "does not include— . . . a person with only a general unsecured interest in, or claim against, the property or estate of another").

The TRIA Claimants may argue that they can acquire a property interest in the Defendant Cryptocurrency at some point in the future by obtaining and serving an order of attachment for it under New York law. Even assuming an attachment order falls within the statutory definition of recognized property interests, the Claimants have not obtained any attachment *yet*, and if they did, the attachment would necessarily post-date the Cambodian scam center activity that constitutes the basis for the government's forfeiture case. Such an after-acquired attachment could not qualify as "a property interest in existence at the time the illegal conduct giving rise to forfeiture took place." 18 U.S.C. § 983(d)(2)(A).

---

the innocent owner defense, reasoning that "when claimants have Article III standing but fail to prove an ownership interest that meets [§ 983's innocent ownership] statutory criteria, the statement that Claimants lacked 'standing' is simply another way of stating that Claimants had failed to establish on the merits a property interest entitling them to relief") (internal quotations omitted).

2. The TRIA Claimants Have Not Alleged They Are Bona Fide Purchasers for Value

As to the second category of "innocent owner" with an after-acquired interest, the TRIA Claimants fare no better. The bona fide purchaser or seller for value prong requires that two elements be satisfied: the claimant must be (1) "a bona fide purchaser or seller for value," who (2) "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A)(i)-(ii). The TRIA Claimants fail at both steps.

First, the TRIA Claimants are not bona fide purchasers for value because they did not "purchase[]" any interest in the Defendant Cryptocurrency "for value" as required by the plain text of 18 U.S.C. § 983(d)(3)(A)(i). Under New York Law,[4] a bona fide purchaser for value is one who acquires a property interest through a voluntary exchange of consideration, in good faith, and without notice of competing claims. *See, e.g.*, *Bank of New York Mellon Tr. Co., N.A. v. Universal Dev.*, LLC, 252 A.D.3d 713, 715 (N.Y. App. Div. 2026); N.Y. Pers. Prop. Law § 40. Consistent with this definition, the Second Circuit has held that "a judgment creditor is not a bona fide purchaser for value" because "'he has given nothing of value in exchange for the property interest.'" *United States v. Egan*, 654 F. App'x 520, 522 (2d Cir. 2016) (quoting *United States v. BCCI Holdings, Lux.*, S.A., 69 F. Supp. 2d 36, 62 (D.D.C. 1999)); *see also Ferrari*, 2026 WL 764639, at *19 ("Under New York Law, '[t]he judgment creditor is simply not a 'purchaser,' and therefore does not get the benefit of the equitable doctrine of bona fide purchaser for value without notice.'") (quoting Mortgages: Basic rules, 36 N.Y. PRAC., Lien Priorities in New York § 2:12); *In re Euro-Swiss Int'l Corp.*, 33 B.R. 872, 880-81 (Bankr. S.D.N.Y. 1983) ("In New York, judgment lien and execution creditors do not enjoy the protection of the recording statute") (collecting state cases).

The exception for bona fide purchasers was intended to codify the "common-law rule" that "protect[s] the title of a purchaser who acquires property for valuable consideration and who, at the time of the purchase, is without notice that the seller lacks valid and transferable title in the property." *Lavin*, 942 F.2d at 186. The bona fide purchaser exception "promote[s] finality in commercial transactions" and "foster[s] commerce." *Id.* Because Congress was concerned about "sham or fraudulent transfers," the bona fide purchaser exception was limited to claimants who "give value . . . in an arms'-length transaction with the expectation that they would receive equivalent value in return." *United States v. Reckmeyer*, 836 F.2d 200, 208 (4th Cir. 1987); *see also United States v. Mendez*, Case No. 07-107, 2008 WL 3874318, at 13-14 (E.D.N.Y. Aug. 19, 2008) (citing *Reckmeyer*'s examination of the legislative history of 21 U.S.C. § 853). The statute therefore excludes claimants who acquired their interest without exchanging value in an arms-

[4] Courts in this Circuit look to state law when determining whether a claimant is to be treated as a "bona fide purchaser for value." *See Pacheco*, 393 F.3d at 353 (applying New York state law to question of whether party was a "bona fide purchaser," citing *United States v. Harris*, 246 F.3d 566, 571 (6th Cir. 2001)); *United States v. Mann*, 729 F. Supp. 3d 257, 267 (N.D.N.Y. 2024) (same); *Mendez*, 2008 WL 3874318 (same); *In re Mosello*, 193 B.R. 147, 151 (S.D.N.Y. 1996) (noting that, in this Circuit, "[t]he definition and powers of a 'bona fide purchaser' are governed by substantive state law pertaining to the subject property.").

length transaction—such as a gift, inheritance, quitclaim deed, or, as here, by obtaining a court judgment.

Therefore, because the TRIA Claimants' asserted interests arise, if at all, by operation of law rather than through an arms-length purchase for value, they cannot satisfy § 983(d)(3). *See Egan*, 654 F. App'x at 522 (finding argument that a judgment creditor was a bona fide purchaser for value "borders on frivolous").

Second, the TRIA Claimants also cannot show that they "did not know and [were] reasonably without cause to believe that the property was subject to forfeiture" when they acquired any interest in the Defendant Cryptocurrency. 18 U.S.C. § 983(d)(3)(A)(ii).

The TRIA Claimants acknowledge that they first learned of the Defendant Cryptocurrency through this forfeiture proceeding and related litigation concerning the same property. *See, e.g.*, ECF 29 ¶ 39 (citing to the government's forfeiture complaint, ECF No. 1); ECF 73-1 at 2 (admitting that the Havlish Claimants "learned from the allegations" in the *Fritz* proceeding and "from the Notice of Claim filed by the Fritz Claimants in this proceeding" about the Defendant Cryptocurrency). Those who have filed separate attachment and turnover actions, or who have filed claims in this forfeiture proceeding seeking attachment, have all done so after the government initiated the civil forfeiture proceeding and with obvious knowledge of it. They cannot plausibly allege that they acquired (or seek to acquire) their interests without reason to know the property was subject to forfeiture.

In short, the TRIA Claimants cannot satisfy either element of § 983(d)(3). They are not bona fide purchasers for value, and they indisputably became aware of the Defendant Cryptocurrency only in connection with the government's forfeiture action.

B. <u>TRIA Does Not Override the Requirements of the Innocent Owner Defense</u>

TRIA's "notwithstanding" clause does not override the statutory requirements of the innocent owner defense under § 983(d). The "notwithstanding" clause does "not mean . . . that the TRIA covers the entire field and nullifies all previous statutes that pertain to blocked assets." *Smith v. Fed. Rsrv. Bank of New York*, 280 F. Supp. 2d 314, 319 (S.D.N.Y.), *aff'd*, 75 F. App'x 860 (2d Cir. 2003), and 346 F.3d 264 (2d Cir. 2003). As the Second Circuit has explained, "the 'notwithstanding' clause applies only when some 'other provision of law' conflicts with TRIA." *Smith*, 346 F.3d at 271. While the Second Circuit has sometimes used florid language in describing the impact of the "notwithstanding" clause, it has rarely found any direct conflict, sufficient to nullify another statutory provision, outside the scope of the Foreign Sovereign Immunities Act (FSIA). *See, e.g.*, *Havlish v. Taliban*, 152 F.4th 339 (2d Cir. 2025) (FSIA); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010) (FSIA).

That is because § 201(a) addresses a narrow question: what assets may be subject to "execution or attachment in aid of execution" by qualified terrorism judgment creditors. TRIA provides "authorization of the attachment" of certain blocked assets. *Hausler*, 770 F.3d at 211. But "TRIA itself . . . provides no procedures for enforcement." *Levinson*, 44 F.4th at 97. Nor does it create new ownership interests in blocked property. *See Levin*, 751 F. App'x at 147 (characterizing TRIA as a statute that does not "create[] any new property rights, but 'merely attaches

consequences, federally defined, to rights created under state law'") (quoting *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1001 (2d Cir. 2014)). Accordingly, the scope of the "notwithstanding" clause is limited to § 201(a)'s provisions for attachment and execution, not the procedures for obtaining recovery or substantive property rights. *See generally Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 433 (D.C. Cir. 2023) ("The reach of the notwithstanding clause is therefore necessarily determined by the substantive text that follows it . . . .").

Section 983(d), by contrast, addresses an entirely different subject. It defines which categories of third-party ownership interests may defeat the Government's forfeiture interest and therefore may be recognized in a forfeiture proceeding. It is a rule about ownership and title.

The two statutes therefore operate in different spheres. Because the statutes address different questions, there is no conflict for TRIA's notwithstanding clause to overcome. *See United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 687-89 (5th Cir. 2013) (holding that "§ 201 of the TRIA does not trump the criminal forfeiture provisions of 21 U.S.C. § 853"); *United States v. Sun*, No. 21-CR-343 (SHS), 2025 WL 1591868, at *3 (S.D.N.Y. June 5, 2025) (holding that, "[a]s other circuit courts have concluded, TRIA does not conflict with section 853").[5]

The government is aware that two out-of-circuit decisions have found that TRIA's "notwithstanding" clause does overcome § 983(d)'s substantive innocent owner requirement. But those decisions relied on nakedly ends-based reasoning, concluding that § 983(d) must be overridden only because it stands in the way of TRIA plaintiffs' winning their civil forfeiture claims. *See United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 620-21 (7th Cir. 2015) ("[O]nce the United States commences a forfeiture action, it is impossible for qualified albeit unrelated victims of terror . . . to comply with civil forfeiture's innocent owner requirement and, at the same time, execute against the blocked funds. This conflict requires the innocent owner provision to yield in the face of TRIA's broad 'notwithstanding' clause."); *United States v. All Petroleum-Prod. Cargo Aboard the Achilleas*, No. CV 21-0305 (PLF), 2026 WL 2618380, at *8-9 (D.D.C. Sept. 4, 2026) (adopting *R.J. O'Brien*). The Second Circuit rejected that mode of reasoning in *Smith*—declining to find that TRIA's "notwithstanding" clause nullified the President's IEEPA confiscation authority just because it would make it impossible for TRIA plaintiffs to recover the disputed funds. *See Smith*, 346 F.3d at 271 ("We see no conflict here. . . . [TRIA] imposes no obligation on the President to maintain such funds for future attachment.").[6]

---

[5] The D.C. Circuit's decision in *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632 (D.C. Cir. 2025), is not to the contrary. In a footnote, the D.C. Circuit found that TRIA's "notwithstanding" clause overrides a particular civil forfeiture provision barring replevin of property seized under civil forfeiture authority, 18 U.S.C. § 981(c), because "TRIA specifically allows attachments that the civil-forfeiture statute specifically prohibits." *Id.* at 643 n.1. Whatever its merits, the narrowness of that holding only underscores the limited scope of the "notwithstanding" clause. Nothing in *Estate of Levin* remotely suggests that TRIA's "notwithstanding" clause sweeps away all of civil forfeiture law.

[6] Further, even if TRIA's "notwithstanding" clause could override § 983(d)'s innocent owner provision, the TRIA Claimants would then have to plead sufficient facts to establish—as a matter of statutory standing—that TRIA § 201(a) applies on its own terms to the Defendant Cryptocurrency. For the reasons articulated in the government's submissions in the

This Court should follow the Second Circuit's lead in reserving TRIA's "notwithstanding" clause for statutes that contravene § 201(a)'s specific provisions regarding "execution or attachment" of blocked property, rather than using it as a magic wand to clear away any legal obstacles standing between TRIA Claimants and their hoped-for recoveries.

Accordingly, even if the TRIA Claimants could establish Article III standing, their claims would still fail because they cannot satisfy either innocent owner category recognized by § 983(d). They possessed no interest in the Defendant Cryptocurrency at the time of the conduct giving rise to forfeiture, and they cannot qualify as bona fide purchasers for value. As the Second Circuit held in *Havlish*, claimants who "lack a specific property interest in the defendant properties" are merely general creditors and "cannot be owners for the purposes of the innocent owner statute." 673 F. App'x at 41. The TRIA Claimants therefore lack statutory standing, and their claims should be struck.

## III. <u>The Court Should Grant the Motion To Strike Without Waiting To Resolve Pending Motions To Dismiss in Parallel Attachment Proceedings</u>

The government further responds to Court's order that, in reference to "the claimants that have moved for an order of attachment in parallel proceedings," the parties "should address whether issues in those proceedings should be addressed before the Court rules on the government's motion to strike." Minute Order (Oct. 20, 2026).

The Court should grant the instant motion to strike the claims of the TRIA Claimants in this civil forfeiture proceeding without waiting to resolve the pending motions in parallel proceedings including the *Fritz* (No. 25-cv-7093) and *Havlish* (26-cv-3555) actions. Standing is a "threshold question" under both Article III and the civil forfeiture statutes. *Cambio Exacto*, 166 F.3d at 526. If the TRIA Claimants are unable to establish standing at this point—which they cannot, as explained above—then the Court should not wait to strike them from this proceeding.

The TRIA Claimants would no doubt prefer to hold the civil forfeiture proceeding in abeyance while they seek to obtain a cognizable property interest in the Defendant Cryptocurrency through their parallel attachment actions. That makes little sense. First, it only highlights the TRIA Claimants' present lack of standing. *Bost v. Illinois State Bd. of Elections*,

---

*Fritz* action, TRIA does not apply because the Defendant Property is not a "blocked asset" that belongs to a "terrorist party" within the meaning of TRIA. *See Fritz*, ECF 96, at 10-16; *see also United States v. Gutierrez-Ochoa*, No. CR 25-035 (BAH), 2026 WL 1157964, at *13-16 (D.D.C. Apr. 29, 2026) (holding that "[n]one of the Forfeited Assets were 'seized or frozen' under TWEA, IEEPA, or the Narcotics Kingpin Act, as required by the TRIA" because the assets "were seized and then forfeited in connection with a criminal action, pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853, and those criminal forfeiture statutes appear nowhere in the definition of 'blocked assets' subject to TRIA § 201"); *United States v. Fifty-Three Virtual Currency Accts.*, No. 20-2227 (RC), 2026 WL 2690073, at *6 (D.D.C. Sept. 14, 2026) (rejecting arguments that property in question was a "blocked asset" pursuant to TRIA because the property was seized pursuant to forfeiture statutes and "[t]hese statutes appear nowhere in the TRIA's definition of 'blocked asset'").

607 U.S. 71, 84 (2026) (Barrett, J., concurring in the judgment) ("A plaintiff must establish standing at the time of filing and maintain it throughout litigation."). Second, it is far from certain that they will be successful in obtaining any attachment order in those parallel actions: they would have to overcome the government's jurisdictional objections *and* carry their burden of establishing probability of success on the merits and necessity for an attachment order. *See Fritz*, ECF 96 (Gov't Opp. to Emergency Mot. for *Ex Parte* Order of Attachment); ECF 159 (Gov't Mot. for Limited Intervention by Special Appearance and Mot. To Dismiss). Third, even if any of the TRIA Claimants were to obtain an attachment order, they still would not be able to plead a valid claim as an "innocent owner" with statutory standing in the forfeiture proceeding. Fourth, as a matter of basic fairness to the other parties, the Court should not delay the first-filed civil forfeiture proceeding (which is now well underway), nor should it favor one class of claimants with multiple opportunities to belatedly cure their lack of standing when other claimants have been properly dismissed on the same grounds.

It is no argument to say that striking the TRIA claims would leave the TRIA Claimants with no path to winning the Defendant Cryptocurrency. Article III standing and statutory standing are not matters left to the Court's discretion. And the Court is not obligated to ensure that the TRIA Claimants (or any claimants) are able to recover from the Defendant Cryptocurrency. *Cf. Levin v. Miller*, No. 21-1116, 2022 WL 17574574, at *3 (2d Cir. Dec. 12, 2022) ("[T]he TRIA does not require the Government 'to maintain . . . funds for future attachment.'") (quoting *Smith*, 346 F.3d at 271).

In any event, the TRIA Claimants are not without recourse. If they are correct in their (mistaken) belief that the Defendant Cryptocurrency belongs to LuBian and that LuBian is an instrumentality of Iran, then they will be able to assert their claims against LuBian and its property at the conclusion of the forfeiture proceeding. *See Fritz*, ECF 159, at 9-10.[7] They can file post-forfeiture petitions for remission pursuant to 18 U.S.C. § 981(d). *See* ECF 506, at 12 (explaining that remission "is the avenue of relief available to [fraud victim] claimants" who lack standing in the forfeiture proceeding). And they can apply to participate in the U.S. Victims of State Sponsored Terrorism Fund. *See* 34 U.S.C. § 20144. That Fund "has paid out over $10 billion to eligible claimants" and "continue[s] to work to ensure that all available funds reach victims and their families." U.S. Victims of State Sponsored Terrorism Fund, http://www.usvsst.com/index.php (last visited Nov. 10, 2026). What they cannot do is ask this Court to bend the rules of Article III and statutory standing in order to guarantee their own recovery.

---

[7] The Fritz Claimants have suggested that LuBian might establish ownership but still lose in the forfeiture proceeding because it cannot be an "innocent owner" if it is an Iranian instrumentality. *See Fritz*, ECF 162, at 14-15. That is a non sequitur. The word "innocent" in 18 U.S.C. § 983(d) is not used in its colloquial sense, but as a statutory term of art referring to the claimant's knowledge of the conduct giving rise to forfeiture, *see* 18 U.S.C. § 983(d)(2)(A)(i)-(ii), (d)(3)(A)(ii)—meaning, here, knowledge of the wire fraud and money laundering conspiracy arising out of the Prince Group's operation of scam compounds in Cambodia.

## Conclusion

For the foregoing reasons, the Court should strike the claims and answers filed by the TRIA Claimants, ECF 73, 193 (Havlish); 29, 74 (Fritz); 30, 77 (Baxter); 525, 148 (Chairnoff); 537, 176 (Iranian Terrorism Victims); 160, 501 (9/11 Claimants); 86, 204 (Gold Star Claimants); 132, 215 (Bauer and Parker); 391, 216 (Breitweiser); 112, 222 (Fishbeck); 223, 303 (Greenbaum, Acosta, Beer, and Kirschenbaum); 605, 225 (Hamen); 125, 226 (Federal Insurance Claimants ); 159, 236 (IBHLAW); 146, 241 (Christie and Gration); 686, 242 (Swinney); 169, 250 (Relvas and Rusnak); 685, 253 (Ambush); 218, 298 (Henkin); 249, 350 (Aceto); 305, 373 (Heiser); 354, 365, 358, 365, 399 (Weinstock, Mustard, Johnson, and Heching); 367, 406 (Mark and Hirshfeld); 491, 593 (Owens); 493 (Additional O'Neill Claimants); 542, 676 (Pennington and Driscoll); 692 (Claimants with Successful Judgments Against Iran), for lack of Article III and statutory standing. The Court should further dismiss as moot any pending motion, cross-claim, and counterclaim asserted by the stricken claimants.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Alexander F. Mindlin
Tanisha R. Payne
Benjamin Weintraub
Andrew D. Reich
Alessandra V. Rafalson
Assistant U.S. Attorneys
(718) 254-7000

Christopher B. Brown
Supervisory Trial Attorney
Noah Simmons
Trial Attorney
National Security Cyber Section
National Security Division
U.S. Department of Justice

cc: Clerk of Court (CHK)
Counsel of Record